MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

Attorneys for Plaintiffs.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JCS

C 07 0943

| | |
|---|---|
| BERNARD PAUL PARRISH and HERBERT ANTHONY ADDERLEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC., a Virginia corporation,<br><br>Defendant. | CIVIL ACTION NO. _____<br><br>**COMPLAINT FOR BREACH OF FIDUCIARY DUTY, UNJUST ENRICHMENT AND AN ACCOUNTING**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs BERNARD PAUL PARRISH and HERBERT ANTHONY ADDERLEY, on behalf of themselves and all others similarly situated, complain and allege on information and belief as follows:

I.

### NATURE OF THE CASE

1. Plaintiffs bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on their own behalf and as representatives of a class of persons consisting of those

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

CLASS ACTION COMPLAINT FOR BREACH OF
FIDUCIARY DUTY, UNJUST ENRICHMENT
AND AN ACCOUNTING

Dockets.Justia.com

approximately 3,500 retired players (the "Class") of the National Football League ("NFL") whom Defendant National Football League Players Incorporated d/b/a/ Players Inc. ("PLAYERS INC.") claims to represent. PLAYERS INC. also claims 1) to generate more than $100 million annually from promoting and marketing active and retired NFL players, and 2) to have a $750 million retail licensing business (see **Exhibit A**, a PLAYERS INC. press release). PLAYERS INC., according to a Form 990 filed by the National Football League Players Association ("NFLPA" or the "Players Union"), is 79% owned by the NFLPA (see **Exhibit G**). Plaintiffs do not know at this time who owns the remaining 21% of PLAYERS INC.

2. Defendant derives substantial benefits by claiming to represent 3500 retired players. As a letter (**Exhibit B**) from the Chairman of Defendant to a retired player states: "PLAYERS INC.'S licensees such as EA Sports are permitted to secure retired NFL player rights only from PLAYERS INC., not from any other source, contrary to what others may have told you. This offer will be your only opportunity to participate in NFL player video games and get paid."

3. Defendant owed and owes each represented player a fiduciary duty to seek to obtain for that player licensing and marketing opportunities in a fair and equitable manner consistent with the best interests of that player. Instead, Defendant has acted in an arbitrary, capricious and inequitable manner, contrary to its fiduciary obligations. For example, an email from the then-president of Defendant (**Exhibit C**) states that only 358 of the 3,500 retired players received payments in 2005. These payments amounted to less than 1% of Defendant's claimed $750 million retail licensing business. Plaintiffs believe that a fair and objective accounting regarding this $750 million business will demonstrate that they are owed tens of millions of dollars.

4. As a result of the unlawful conduct complained of above, Plaintiffs seek an accounting of the funds received and distributed by Defendant in connection with its claimed representation of them. Plaintiffs also seek damages, in an amount to be proven at trial, which, on information and belief, exceed the jurisdictional amount of $5 million.

## II.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because one or more Class members is a citizen of a state different from Defendant, there are more than 100 class members, and, on information and belief, the aggregate amount in controversy exceeds the jurisdictional amount of $5 million.

6. Venue in this Court is proper under 28 U.S.C. §§ 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III.

## INTRADISTRICT ASSIGNMENT

7. Pursuant to Local Civil Rule 3-2, assignment of this action to the San Francisco division of this Court is proper because a substantial part of the events or omissions giving rise to the claims herein occurred in San Mateo county.

## IV.

## PARTIES

A. **PLAINTIFFS**

8. Plaintiff BERNARD PAUL PARRISH, a resident of Florida, is a former defensive back who starred with the Cleveland Browns from 1959 through 1966. Mr. Parrish graduated with a degree in Building Construction from the University of Florida, School of Architecture and fine Arts. He was the CEO and President of a commercial construction company for over 20 years that employed over 3,000 tradesmen, laborers and engineers both union and non –union, building hotels, medical and office buildings, housing for officer and enlisted men on AFB's in eight states. Prior to entering the NFL, Mr. Parrish was a baseball All American at the University of Florida (where he is also a member of the school's Hall of Fame) and played one year of professional baseball. As a pro football player, Mr. Parrish played in two Pro Bowl games. In 1964, Mr. Parrish led the Browns to an NFL World Championship, beating Johnny Unitas and Coach Don Shula's heavily-favored Colts 27-0. Mr. Parrish has been an advocate for retired players for many years. He is the author of a best selling book about the same NFL player

management issues this suit involves. It is entitled *They Call It A Game* which brought to light some of the same issues that are the subject of this suit.

9. Plaintiff HERBERT ANTHONY ADDERLEY, a resident of New Jersey, is a former NFL cornerback who starred for the Green Bay Packers and the Dallas Cowboys from 1961 through 1972. Mr. Adderley played in five Pro Bowl games during the 1960's. He also played in seven NFL championship games, including four of the first six Super Bowl games. Mr. Adderley is one of only two players in pro football history to play on six World Championship teams. Mr. Adderley's 60-yard interception return for a clinching touchdown for the Packers in Super Bowl II was the first touchdown scored by a defensive player in Super Bowl history. He was enshrined in the Pro Football Hall of Fame in 1980. In 1999, Mr. Adderley was ranked number 45 on *The Sporting News'* list of the 100 Greatest Football Players. His pension payment from the NFLPA is $176.85 per month.

**B.   DEFENDANT**

10. Formed in 1994, PLAYERS INC. is the licensing and marketing subsidiary of the NFLPA (see **Exhibit A**). PLAYERS INC. is a Virginia corporation with its principal place of business at 2021 L Street, Washington, D.C. It claims to market active and retired players through licensed products such as trading cards and video games, television and radio programming, personal appearances, autograph signings, an Internet site, and events such as the Super Bowl. During 2006, on information and belief, the following officers resigned from Defendant: its President, its Executive Vice President, its Senior Vice President, and its Vice President.

V.

**SUBSTANTIVE ALLEGATIONS**

11. Defendant currently indicates on its website at www.nflplayers.com that it represents "over 3,000 retired players." Defendant's press release in **Exhibit A** states that it represents "3,500 retired NFL players."

12. Defendant has actively solicited retired players. For example, **Exhibit D** is a letter from Defendant's then-President to a retired player, urging him to "[j]oin the thousands of retired

NFL players who have provided their name and image rights to the NFLPA and Player's Inc." **Exhibit D** also states that "...**every** retired player has benefited from PLAYERS INC'S creation... [b]ecause 40% of PLAYERS INC.'S. operating revenue is paid to the NFLPA as a royalty...This allows the NFLPA to provide extensive services and benefits to retired players..."

13.     Tragically, nothing is further from the truth. In addition to poverty-level NFPLA pension payments and the failure to disburse meaningful royalty payments from PLAYERS INC. to 90% of the retired players, the situation regarding disability payments is a rapidly growing tragedy. Although professional football is an extremely violent game, an extremely low percentage of retired players receive disability payments. *See*, for example, **Exhibit E**.

14.     The callous disregard for retired NFL players is demonstrated most clearly in the refusal to compensate many who are severely disabled and who played before the era of high salaries. A recent example is that of the late Mike Webster, a Hall of Fame Center who played for the Pittsburgh Steelers. As a result of playing football, Mr. Webster suffered from chronic pain and dementia. He was homeless as a result of these debilitating conditions, but, nonetheless, as stated in a December, 2006 Federal appellate court opinion, the NFL Supplemental Disability Plan denied him the "...benefits reserved for those whose disabilities begin while they are still actively playing football." This Court went on to hold that the Board administering the Plan "...ignored the unanimous medical evidence, including that of its own expert, disregarded the conclusion of its own appointed investigator, and relied for its decision on factors disallowed by the Plan." Arguing against Mr. Webster's estate was a law firm that has done and is doing extensive work for the NFLPA; a partner of that law firm is a board member of PLAYERS INC.

15.     Mr. Webster is not an exception. As a January 21, 2007 *New York Times* article states: "...the more physiologists learn about the damage sustained by football players during their careers, the more it seems the parallels should be drawn not between football and other sports, but between football and dangerous working-class labor like working with asbestos and mining coal." A February 12, 2007 *Sports Illustrated* article describes a study by the University of North Carolina's Center for the Study of Retired Athletes, which looked at 2,552 retired NFL players "... and found that 24% had sustained at least three concussions. Those who had were two to

three times more likely to suffer from depression and three times as likely to have mild cognitive impairment, a precursor of Alzheimer's disease."

16. With respect to the vast sums of money that PLAYERS INC. is able to obtain through its claim to represent 3500 retired NFL players, Defendant purports to have the sole and exclusive control over licensing contracts with vendors and yet provides no meaningful information to retired NFL players on such contracts. PLAYERS INC. controls all of the material information and accounting for funds due and owing to Plaintiffs. More specifically, Defendant has a continuing duty to Plaintiffs to serve the best interests of all NFL players, current and retired; to maximize the collection of revenue, portions of which belong to Plaintiffs; to accurately report such revenues and other material to Plaintiffs; to accurately account for such monies; and to remit such monies to Plaintiffs in a timely fashion. By virtue of, among other things, Defendant's position of control and Plaintiffs' lack of information, Defendant stands in the position of fiduciary to Plaintiffs and thus must account for amounts due and owing to Plaintiffs.

17. Defendant has violated its fiduciary duties to the 3,500 players it says it represents in several ways:

a) Although Defendant has a complete monopoly on the basic information relevant to Plaintiffs (including, for example, sources of revenue, principles for division of monies, revenues, principles for division of opportunities, efforts to develop business, and other basic business facts), Defendant has revealed only sketchy and inadequate information to Plaintiffs in spite of numerous requests (see, for example, **Exhibit F**, regarding Mr. Adderley's unsuccessful attempts to get a response to his phone calls and written communications) dating as far back as 1994. Only in 2006, when the United States Department of Labor imposed new disclosure requirements on the NFLPA, were the Plaintiffs able to obtain any more than the sketchiest information. However, even the expanded Form LM-2 Labor Organization Annual Report, required by the United States Department of Labor and filed by the NFLPA in 2006, does not provide all the information that Plaintiffs need to determine that Defendant is observing its fiduciary duties

despite Plaintiffs' numerous efforts to discover that information since 1994. It was at or around the time of the NFLPA's filing of this LM-2 (which states that the NFLPA has 3,700 retired members) that four of the top officers of Defendant announced their resignations. The then-president of PLAYERS INC. was quoted in the November 6-12, 2006 edition of SportsBusiness Journal on the increased Department of Labor reporting requirements as follows: "It's a real problem. We will have to deal with the consequences and we are not happy about it."

b) Defendant has not made diligent efforts to generate revenue for Plaintiffs; almost 90% of the Class receive no money.

c) Defendant has not allocated opportunities to Plaintiffs in any fair or equitable manner.

d) Defendant has not, on information and belief, distributed revenues to Plaintiffs that should have been distributed, even to the small percentage of Plaintiffs who have received some monies.

e) Defendant has distributed monies to the NFLPA that have not benefited Plaintiffs at all. For example, the NFLPA uses the same exact law firm that challenges the disability claims of disabled retired players, including the claim of Mike Webster described above.

## VI.

## CLASS ACTION ALLEGATIONS

18. Plaintiffs bring this class action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action is maintainable as a class action pursuant to Rule 23(a), (b) and (d).

19. The Class in this case is defined to include those approximately 3,500 retired NFL players whom Defendant claims to represent.

20. Excluded from the Class are Defendant and its directors, officers and employees.

21. The Class meets the numerosity standard in Rule 23(a)(1) because it consists of approximately 3,500 retired NFL players who are geographically dispersed throughout the United States and perhaps elsewhere. The joinder of each of these approximately 3,500 players is impracticable. The disposition of their claims through this class action will provide substantial benefits to both the parties and the Court.

22. The size of the Class and the identities of its individual members are ascertainable through Defendant's records.

23. Members of the Class may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

24. There is a well-defined community of interest and common questions of law and fact affecting the members of the Class as required by 23(a)(2). The questions of law and fact common to the Class predominate over any questions affecting only individual members and include, but are not limited to, the following:

(a) Whether Defendant has breached its fiduciary duties to each player member of the Class by the acts and omissions, among others described above;

(b) Whether Plaintiffs and the Class are entitled to an accounting showing all revenue received by Defendant and whether and how that revenue was distributed among the members of the Class;

(c) Whether Defendant has been unjustly enriched at the expense of Plaintiffs and the Class; and

(d) Whether Plaintiffs and the Class are entitled to damages, punitive damages, costs and attorneys' fees as a result of the unlawful conduct of Defendant.

25. Plaintiffs' claims are typical of the claims of the entire Class as required by Rule 23(a)(3). The claims of Plaintiffs and members of the Class are based on the same legal theories and arise from the same unlawful conduct.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

8    CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY
DUTY, UNJUST ENRICHMENT AND AN ACCOUNTING

26. Plaintiffs are adequate representatives of the Class pursuant to Rule 23(a)(4) because their interests do not conflict with the interests of the Class members they seek to represent, and, in fact, they are similarly situated with the members of the Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation.

27. This action is maintainable under Rule 23(b)(1)(A) because the prosecution of separate actions could create the risk of inconsistent adjudication, which could establish incompatible standards of conduct for the party opposing the Class. As an example, separate actions for breach of fiduciary duty by Defendant could result in different adjudications as to the scope or enforceability of that duty.

28. This action also is maintainable under Rule 23(b)(1)(B) because the prosecution of separate actions could create the risk of adjudication that could, as a practical matter, be dispositive of the interests of others. As an example, separate actions for breach of the fiduciary duty by Defendant could result in an adjudication concerning the scope or enforceability of that duty that would be binding on those not a party to such actions.

29. A class action is superior to all methods for the fair and efficient adjudication of this controversy pursuant to Rule 23(b)(3). Although the aggregate damages which may be awarded to Plaintiffs and the Class are likely to be in the tens of millions of dollars, the actual damages suffered by the individual damages could be small in comparison. Accordingly, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each retired player member of the Class to seek redress for the wrongs done to them. Plaintiffs are unaware of any other litigation concerning this controversy already commenced by or against any member of the Class. Allowing this matter to proceed as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and is the only method whereby Plaintiffs and the Class can efficiently seek redress and obtain a uniform adjudication of their claims. Plaintiffs do not anticipate difficulties with the management of this action.

## VII.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty)

Plaintiffs allege against Defendant as follows:

30. Plaintiffs incorporate by reference paragraphs 1 through 30 above as though set forth fully herein.

31. Defendant has a fiduciary duty to the 3,500 retired players it claims to represent, a representation that generates hundreds of millions of dollars for Defendant.

32. Defendant has breached that duty by, among others, the acts and omissions described above.

33. As a direct and proximate result of Defendant's breach of fiduciary duty, each member of the Class has suffered damages in an amount subject to proof that, collectively, exceeds the jurisdictional minimum of the Court.

34. As a result of Defendant's breach, Plaintiffs and the Class are entitled to recover their actual damages, punitive damages, and attorneys' fees.

### SECOND CAUSE OF ACTION

### (Unjust Enrichment)

Plaintiffs allege against Defendant as follows:

35. Plaintiffs incorporate by reference paragraphs 1 through 35 above as though set forth fully herein.

36. Defendant has unjustly retained the benefit of its purported "representation" of each member of the class without paying fair compensation to the plaintiffs for this benefit.

37. Plaintiffs' status as former players in the NFL has provided significant value to the Defendant which benefited the Defendant, and it would be unjust to allow the Defendant to retain this benefit without providing compensation to the Plaintiffs.

38.  Defendant has retained the money or property of the class members against the fundamental principles of justice or equity and good conscience and Plaintiffs have been harmed by this conduct.

### THIRD CAUSE OF ACTION

(Accounting)

Plaintiffs allege against Defendant as follows:

39.  Plaintiffs incorporate by reference paragraphs 1 through 39 above as though set forth fully herein.

40.  By virtue of the acts and omissions described above, Plaintiffs do not have adequate information to determine what monies are attributable to and distributable from the Defendant's representation of them.

41.  The exact amount of money received and distributed by Defendant in connection with the licensing and marketing of Plaintiffs and the Class is unknown and cannot be ascertained without an accounting of the funds.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray as follows:

a.  That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and that Ronald S. Katz of MANATT, PHELPS & PHILLIPS, LLP be appointed as lead class counsel.

b.  That Plaintiffs and each and every member of the Class recover damages, as provided by law, determined to have been sustained by each of them, including punitive damages, and that joint and several judgments in favor of Plaintiffs and each and every member of the Class, respectively, be entered against the Defendant.

c. That an accounting by accountants of the Plaintiffs' choice be ordered by the Court at the expense of the Defendant.

d. That Plaintiffs and other members of the Class recover their costs of this suit, including reasonable attorneys' fees, as provided by law.

e. That Plaintiffs and the other members of the Class be granted such other, further and different relief as the nature of the case may require or as may seem just and proper to this Court.

Dated: February 14, 2007

Respectfully submitted,

Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
Noel S. Cohen (SBN 219645)
MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone:   (650) 812-1300
Facsimile:   (650) 213-0260
*Attorneys for Plaintiffs*

**OF COUNSEL**

Lewis T. LeClair, Esq.
Jill C. Adler, Esq.
McKool Smith
A Professional Corporation
300 Crescent Court
Dallas, TX 75201
214-978-4984
214-978-4044 (fax)

Samuel A. Mutch Esq.
SAMUEL A. MUTCH, P.A.
2114 N.W. 40th Terrace, Suite A-1
Gainesville, FL 32605
Telephone:   (352) 378-5599
Facsimile:   (352) 378-3388

## JURY DEMAND

PLEASE TAKE NOTICE that Plaintiffs demand a trial by jury, pursuant to rule 38(b) of the Federal Rules of Civil Procedure, of all issues triable as of right by jury.

Dated: February 14, 2007

Respectfully submitted,

Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
Noel S. Cohen (SBN 219645)
MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone:  (650) 812-1300
Facsimile:   (650) 213-0260
*Attorneys for Plaintiffs*

**OF COUNSEL**

Lewis T. LeClair, Esq.
Jill C. Adler, Esq.
McKool Smith
A Professional Corporation
300 Crescent Court
Dallas, TX 75201
214-978-4984
214-978-4044 (fax)

Samuel A. Mutch Esq.
SAMUEL A. MUTCH, P.A.
2114 N.W. 40th Terrace, Suite A-1
Gainesville, FL 32605
Telephone:  (352) 378-5599
Facsimile:   (352) 378-3388

## CERTIFICATE OF INTERESTED ENTITIES OR PERSONS

Pursuant to Local Rule 3-16, Plaintiffs hereby certify that they know of no persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities, other than the parties themselves and the putative class, to have either: (i) a financial interest (of any kind) in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

Respectfully submitted,

Dated: February 14, 2007

Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
Noel S. Cohen (SBN 219645)
MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone:   (650) 812-1300
Facsimile:   (650) 213-0260
*Attorneys for Plaintiffs*

**OF COUNSEL**

Lewis T. LeClair, Esq.
Jill C. Adler, Esq.
McKool Smith
A Professional Corporation
300 Crescent Court
Dallas, TX 75201
214-978-4984
214-978-4044 (fax)

Samuel A. Mutch Esq.
SAMUEL A. MUTCH, P.A.
2114 N.W. 40th Terrace, Suite A-1
Gainesville, FL 32605
Telephone:   (352) 378-5599
Facsimile:   (352) 378-3388

20175853.1

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

CLASS ACTION COMPLAINT FOR BREACH OF
FIDUCIARY DUTY, UNJUST ENRICHMENT
AND AN ACCOUNTING