1   Jeannine Y. Sano (SBN: 174190)
    DEWEY BALLANTINE LLP
2   1950 University Avenue, Suite 500
3   East Palo Alto, California 94303-2225
    Telephone: 650 845-7000
4   Facsimile: 650 845-7333

5   Jeffrey L. Kessler (pro hac vice)
    jkessler@deweyballantine.com
6   David G. Feher (pro hac vice)
    Eamon O'Kelly (pro hac vice)
7   DEWEY BALLANTINE LLP
8   1301 Avenue of the Americas
    New York, New York 10019-6092
9   Telephone: 212 259-8000
    Facsimile: 212 259-6333

10  Kenneth L. Steinthal (pro hac vice pending)
11  Joseph R. Wetzel (SBN: 238008)
    WEIL, GOTSHAL & MANGES LLP
12  201 Redwood Shores Parkway
    Redwood Shores, CA 94065
    Telephone: (650) 802-3000
13  Facsimile: (650) 802-3100

14  Bruce S. Meyer (pro hac vice pending)
15  WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
16  New York, New York 10153
    Telephone: (212) 310 8000
17  Facsimile: (212) 310 8007

18  Attorneys for Defendant
    NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED
19  d/b/a PLAYERS INC, a Virginia corporation.

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

20              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
21                SAN FRANCISCO DIVISION

22  BERNARD PAUL PARRISH, HERBERT          )   Civil Action No. C07 0943 WHA
    ANTHONY ADDERLEY, and WALTER            )
23  ROBERTS III on behalf of themselves and all )   Honorable William H. Alsup
    others similarly situated,               )
24                                           )   **PLAYERS INC'S NOTICE OF**
                    Plaintiffs,               )   **MOTION AND MOTION FOR**
25                                           )   **SANCTIONS PURSUANT TO RULE 11,**
            v.                               )   **28 U.S.C. § 1927, AND THE COURT'S**
26  NATIONAL FOOTBALL LEAGUE              )   **INHERENT POWERS**
    PLAYERS INCORPORATED d/b/a PLAYERS )
27  INC, a Virginia corporation,            )
                                             )
28              Defendant.                   )
    _____)

    Players Inc's Motion for Sanctions                        Civ. Action No. C07 0943 WHA

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 17, 2007 at 8 a.m., or as soon thereafter as this matter may be heard, in Courtroom 9 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant National Football League Players Incorporated d/b/a Players Inc ("Players Inc") will and hereby does move for sanctions against Plaintiffs Bernard Paul Parrish ("Parrish"), Herbert Anthony Adderley ("Adderley"), and Walter Roberts III ("Roberts") (collectively "Plaintiffs") and their counsel, pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the Court's inherent powers.

As set forth in the accompanying Memorandum of Points and Authorities, there can be no question that Plaintiffs and their counsel did not have sufficient factual or legal bases for the claims by Parrish and Roberts against Players Inc. Despite the allegations in the Complaint and Amended Complaint concerning such things as pension and disability benefits, it is undisputed that Players Inc is not a union and does not represent retired players (or any other players) in collective bargaining. Players Inc is a for-profit licensing, sponsorship, marketing, and content development company that licenses names and images of current and certain retired National Football League ("NFL") players who sign group licensing authorizations. The only duty that Players Inc could have to any individual player (or class of players) would be as the result of an individually bargained contract with that player. As Plaintiffs know, Parrish and Roberts have never signed any group licensing authorizations and have no licensing relationship with Players Inc, so these persons cannot have any claims against Players Inc as to its licensing activities. Moreover, Plaintiffs' counsel failed to conduct the reasonable investigation as to the facts and the law required by Rule 11.

Upon information and belief, Plaintiffs and their counsel filed the Complaint and, thereafter, the Amended Complaint, with the improper purpose of harassing an entity affiliated with Players Inc, the National Football League Players Association ("NFLPA"), about the level of pensions and other benefits provided to former NFL players in collective bargaining agreements entered into by the NFLPA – matters wholly unrelated to the allegations in this lawsuit. Pursuant to the Labor Management Relations Act, 29 U.S.C. § 185, Plaintiffs can file

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-1-

no lawsuit regarding such matters against the NFLPA (and any such lawsuit would long since be time barred in any event).  Having no valid claim against the NFLPA, Plaintiffs have filed a baseless suit against Players Inc, naming as putative class representatives two individuals – Parrish and Roberts – who are not even members of the class they purport to represent, to garner publicity in their campaign against the NFLPA.  In addition, it appears that Plaintiffs and their counsel filed this lawsuit with the improper purpose of generating publicity and benefiting a new enterprise that will compete directly with the licensing activities of Players Inc in relation to retired NFL players.  This Court should not countenance such abuses of the judicial process.

        As a result of the conduct of Plaintiffs and their counsel, Players Inc has incurred significant legal fees and costs for preparing this motion and preparing a response to Plaintiffs' baseless Complaint and Amended Complaint.  Accordingly, Players Inc moves, pursuant to Rule 11, 28 U.S.C. § 1927, and the Court's inherent powers, for an Order dismissing the Amended Complaint (or, at a minimum, dismissing Parrish and Roberts as Plaintiffs) and awarding Players Inc monetary sanctions for its reasonable attorneys' fees and costs.

        In accordance with Fed. R. Civ. P. 11(c)(1)(A), Players Inc served Plaintiffs with this Motion more than 21 days prior to filing it with the Court.  Plaintiffs did not withdraw or correct the allegations at issue during the 21 day period and thus Players Inc hereby files this Motion.

        Players Inc's Motion for Sanctions is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, and the Declarations of Gene Upshaw and Eamon O'Kelly submitted herewith.

Date:  April 4, 2007                                    DEWEY BALLANTINE LLP


                                                        BY:  ___s/Jeffrey L. Kessler_____
                                                              Jeffrey L. Kessler
                                                        Attorneys for Defendant Players Inc

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-2-

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

    I.      THE PARTIES ............................................................................................ 3

    II.     PLAINTIFFS' IMPROPER PURPOSE IN FILING THE
           LAWSUIT ................................................................................................. 4

ARGUMENT .................................................................................................................... 7

    I.      RULE 11 SANCTIONS ARE WARRANTED BECAUSE
           PLAINTIFFS' CLAIMS LACK EVIDENTIARY SUPPORT AND
           ARE BASELESS AS A MATTER OF LAW ........................................... 8

    II.     RULE 11 SANCTIONS ARE APPROPRIATE BECAUSE
           PLAINTIFFS HAD THE IMPROPER PURPOSE TO HARASS
           THE NFLPA ........................................................................................... 11

    III.    RULE 11 SANCTIONS ARE APPROPRIATE BECAUSE
           PLAINTIFFS' COUNSEL FILED THE COMPLAINT FOR AN
           IMPROPER PURPOSE ......................................................................... 13

    IV.    RULE 11 SANCTIONS ARE WARRANTED ...................................... 14

    V.     SANCTIONS ARE ALSO WARRANTED UNDER 28 U.S.C. §
           1927 AND THE COURT'S INHERENT POWERS ........................... 15

CONCLUSION ............................................................................................................... 17

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

Players Inc's Motion for Sanctions          Civ. Action No. C07 0943 WHA

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

Adelman v. Conotti Corp.,
    213 S.E.2d 774 (Va. 1975) .................................................................... 9

5

6

Allis-Chalmers Corp. v. Lueck,
    471 U.S. 200 (1985) .............................................................................. 12

7

B.K.B. v. Maui Police Dep't,
    276 F.3d 1091 (9th Cir. 2002) .............................................................. 16

8

9

Bryant v. Brooklyn Barbecue Corp.,
    932 F.2d 697 (8th Cir. 1991) ................................................................ 13

10

Chambers v. NASCO, Inc.,
    209 F.R.D. 169 (C.D. Cal. 2002) ......................................................... 16

11

12

Cohen v. Mastie,
    31 Va. Cir. 96 (1993) ............................................................................ 9

13

Davis v. PRC, Inc.,
    161 F.R.D. 326 (E.D. Va. 1995) ........................................................... 15

14

15

Edwards v. Gen. Motors Corp.,
    153 F.3d 242 (5th Cir. 1998) ................................................................ 15

16

Fink v. Gomez,
    239 F.3d 989 (9th Cir. 2001) ................................................................ 16

17

18

Henderson v. Office & Prof'l Employees Int'l Union,
    143 Fed. Appx. 741 (9th Cir. 2005) ..................................................... 11-12

19

Hudson v. Moore Bus. Forms Inc.,
    836 F.2d 1156 (9th Cir. 1987) .............................................................. 7, 12

20

21

In re Kunstler,
    914 F.2d 505 (4th Cir. 1990) ................................................................ 7, 13

22

Jimenez v. Madison Area Tech. Coll.,
    321 F.3d 652 (7th Cir. 2003) ................................................................ 14

23

24

Kendrick v. Zanides,
    609 F. Supp. 1162 (N.D. Cal. 1985) ..................................................... 14

25

Lierboe v. State Farm Mut. Auto. Ins. Co.,
    350 F.3d 1018 (9th Cir. 2003) .............................................................. 10

26

27

McClung v. Smith,
    870 F. Supp. 1384 (E.D. Va. 1994) ...................................................... 10

28

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-ii-

1   *McMahon v. Randolph-Macon Academy,*
        42 Va. Cir. 417 (1997) ............................................................... 9, 10
2

3   *Oakland Raiders v. Nat'l Football League,*
        131 Cal. App. 4th 621 (2005) ..................................................... 9, 10

4   *Paciulan v. George,*
        38 F. Supp. 2d 1128 (N.D. Cal. 1999) ............................................. 7
5

6   *Richelle L. v. Roman Catholic Archbishop of San Francisco,*
        106 Cal. App. 4th 257 (2003) ........................................................ 10

7   *Townsend v. Holman Consulting Corp.,*
        929 F.2d 1358 (9th Cir. 1991) ........................................................ 12
8

9   *Truesdell v. S. Cal. Permanente Med. Group,*
        209 F.R.D. 169 (C.D. Cal. 2002) ................................................. 7, 14

10  *Trulis v. Barton,*
        107 F.3d 685 (9th Cir. 1995) ......................................................... 15
11

12  *United States v. Blodgett,*
        709 F.2d 608 (9th Cir. 1983) ......................................................... 16

13  *Val-Land Farms, Inc. v. Third Nat'l Bank,*
        937 F.2d 1110 (6th Cir. 1991) ....................................................... 15
14

15  *Whitehead v. Food Max of Miss.,*
        332 F.3d 796 (5th Cir. 2003) ......................................................... 13

16  **Statutes and Rules**

17  Fed. R. Civ. P. 11 ..............................................................................passim

18  Fed. R. Civ. P. 11 advisory committee notes to 1993 Amendments ....... 14-15

19  Fed. R. Civ. P. 12(b)(6) ............................................................................. 1

20  28 U.S.C. § 1927 ............................................................................... 15, 16

21  **Secondary Sources**

22  Alan Schwarz, *2 Former N.F.L. Players Sue Over Sharing of Fees,*
        N.Y. Times, Feb. 15, 2007, at D2 ........................................ 5-6, 12, 13
23

24  Bob Glauber, *Upshaw finally starts barking, but not at Bryant Gumbel,*
        Newsday, Aug. 27, 2006, at B13 .................................................. 4-5

25  Charles Chandler, *NFL Improves Player Benefits; Announcement Draws Mixed
        Reaction From Retired Players,*
26      Charlotte Observer, July 28, 2006, at 6C ......................................... 4

27  D. Orlando Ledbetter, *Inside the NFL: House Tackles NFLPA.,*
        The Atlanta Journal-Constitution, Dec. 10, 2006, at 6F ...................... 4
28

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

Daniel Kaplan, New Group May Seek Retired NFLers' Rights,
       Sports Bus. J., Feb. 26-Mar. 4, 2007, at 5 .................................................. 6, 12, 14

Daniel Kaplan, Retired NFLers Delay Announcement of Group,
       Sports Bus. J., Mar. 5-11, 2007, at 8 ............................................................ 6, 13

Neil Hays and Roman Modrowski, Ditka: Owners Should be Ashamed: Former
       NFL Greats Speak Out Against League's Pension Plan,
       Chicago Sun-Times, Feb. 2, 2007, at 100 ............................................................. 11

Press Release, Manatt, Phelps & Phillips LLP,
       Manatt and McKool Smith Help Retired Professional Football Players
       Kick Off Class-Action Lawsuit; Only 10 Percent Of Those Represented By
       Union's Commercial Licensing Arm Receive Payments, (Feb. 15, 2007) .................. 13

"Retired Professional Football Players for Justice,"
       http://www.playersforjustice.org (last visited Mar. 9, 2007) ........................... 6, 14

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-iv-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

## MEMORANDUM OF POINTS AND AUTHORITIES

This case presents a clear abuse of the judicial process, a violation of Rule 11 that calls for stringent sanctions. On February 14, 2007, Plaintiffs Parrish and Adderley filed this lawsuit against Players Inc, alleging breach of fiduciary duty and unjust enrichment arising out of the group licensing activities of Players Inc in relation to former NFL players, and demanding certification of a class, an accounting, and compensatory and punitive damages. As discussed herein, had Plaintiffs' counsel conducted a reasonable investigation of the facts and controlling law, or adhered to their Rule 11 obligations if such an investigation was in fact made, they would have concluded that at least as to Parrish, the claims asserted in the initial Complaint were without any possible foundation because Parrish never participated in any Players Inc group licensing programs and had no relationship – at all – with Players Inc. On February 23, 2007, Plaintiffs filed the Amended Complaint, adding Roberts as an additional plaintiff – and compounding their Rule 11 violations, because Roberts also never participated in any Players Inc group licensing programs and thus had no relationship with Players Inc. Moreover, public statements by Plaintiffs and their counsel demonstrate their improper purposes in filing these claims, i.e., to engage in a fishing expedition for public relations purposes, to attack unrelated collective bargaining activities of the NFLPA (an entity affiliated with Players Inc), and to promote a new entity "Retired Professional Football Players for Justice," whose stated purposes include engaging in licensing activities with respect to former NFL players (and, thus, competing directly with Players Inc).

Plaintiffs' claims are baseless, and sanctions are warranted, for several independent reasons. <u>First</u>, because Players Inc has never had any relationship with Parrish and Roberts relating to group licensing or any other activities, Players Inc simply does not owe and could not owe any duties to Parrish or Roberts, fiduciary or otherwise.[1] Thus, Plaintiffs' contention that Players Inc has breached such duties is frivolous. Neither Parrish nor Roberts

---

[1] For the reasons set forth in Players Inc's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which is being filed concurrently with the instant motion, Players Inc does not owe any fiduciary duties to Adderley either. Players Inc is not seeking sanctions at this time with respect to the claims asserted on behalf of Adderley but reserves its right to do so.

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

1    ever signed a GLA that would have authorized Players Inc to license their names or images to

2    licensees such as video game or sports merchandise companies, and they never participated in

3    any Players Inc group licensing programs. In short, Parrish and Roberts are not members of the

4    class they would purportedly represent. Plaintiffs knew these facts when they filed the

5    Complaint and Amended Complaint. Likewise, Plaintiffs' counsel either knew these facts or

6    ignored their Rule 11 obligation to conduct a reasonable inquiry into the facts and law when

7    signing the Complaint and Amended Complaint.

8           Second, upon information and belief, Plaintiffs brought this lawsuit for improper

9    purposes. For several years, Parrish has pursued a highly visible public campaign against the

10    entity that primarily owns Players Inc, the NFLPA, concerning the pension and other benefits of

11    retired NFL players. It appears that Plaintiffs filed this lawsuit (and sought the attendant

12    publicity) simply as a stunt to gain further attention in Parrish's campaign in the media for

13    increased pension and other collective bargaining benefits, a matter that is not within the

14    jurisdiction of this or any other court. Moreover, Plaintiffs apparently also filed the lawsuit to

15    promote a new entity that names Plaintiffs Parrish and Adderley as its "Co-Presidents" and that

16    will compete directly with Players Inc in retired player licensing activities.

17           Finally, Plaintiffs' counsel apparently also had an improper purpose in filing this

18    action. As part of the publicity campaign that Plaintiffs and their counsel launched when this

19    case was filed, counsel of record, Ronald S. Katz, was reported in the press to have bragged that,

20    by filing suit, "We're picking up a rock and seeing what's crawling underneath." In the words of

21    plaintiffs' own counsel, this suit is thus a fishing expedition, which is an abuse of the judicial

22    process.

23           For all of the above reasons, this case presents a clear violation of Rule 11.

24    Dismissal alone is an insufficient remedy if Plaintiffs and their counsel are not to be rewarded for

25    their conduct. The only appropriate response to such conduct is to sanction Plaintiffs; their

26    counsel of record Ronald S. Katz, and his law firm Manatt, Phelps & Phillips LLP ("Manatt");

27    co-counsel Lewis T. LeClair and his law firm, McKool Smith P.C. ("McKool Smith"); and co-

28    counsel Samuel A. Mutch and his law firm, Samuel A. Mutch, P.A. ("Mutch"), by striking

-2-

1  Parrish and Roberts as plaintiffs, dismissing the Amended Complaint, and ordering payment of

2  Players Inc's attorney fees and costs for filing this motion, for responding to the Amended

3  Complaint, and any other fees and costs incurred in connection with this lawsuit.

<strong>STATEMENT OF FACTS</strong>

## I.    THE PARTIES

Defendant Players Inc, a Virginia corporation, is a for-profit licensing, sponsorship, marketing, and content development company affiliated with and primarily owned by the NFLPA, the union representing athletes who play in the NFL. Declaration of Gene Upshaw dated April 3, 2007 ("Upshaw Decl.") ¶ 3. Despite the allegations in the Complaint and Amended Complaint concerning such things as pension and disability benefits, it is undisputed that Players Inc is not a union and does not represent retired players (or any other players) in collective bargaining. Players Inc is a for-profit company that competes with a multitude of other entities in the commercial market place. Id. ¶ 4. The only duty that Players Inc could have to any individual player (or class of players) would be as the result of an individually bargained contract with that player.

The NFLPA signs current and former NFL players to GLAs, whereby a player agrees to assign rights to his name, image and other attributes to the NFLPA for licensing in groups of six or more players to entities such as video game companies, trading card companies, and sports merchandise companies. Upshaw Decl. ¶ 5. The NFLPA, in turn, assigns the GLAs to Players Inc for group licensing activities. Id. Individual retired players may also enter into ad hoc licensing agreements with Players Inc from time to time, whereby a player licenses rights to his name or image to Players Inc for use in a specific group licensing program. Id. ¶ 6. If a retired player does not sign a GLA or ad hoc licensing agreement, Players Inc has no relationship with him, does not license the retired player's name or image, and does not include the retired player in its group licensing programs. Id. ¶ 7.

Plaintiff Parrish is a retired NFL player. He played in the NFL from 1959 to 1966. Amended Complaint ¶ 8. Although Parrish, like all former NFL players, was eligible to

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

sign a GLA and participate in Players Inc licensing programs, he never did so.  Upshaw Decl. ¶ 8.

Plaintiff Roberts played in the NFL from 1964 to 1970 and was a teammate of Parrish.  Amended Complaint ¶ 10.  Like Parrish, although eligible to do so, Roberts never signed a GLA and never participated in any Players Inc's licensing programs.  Upshaw Decl. ¶ 9.

Plaintiff Adderley played in the NFL from 1961 through 1972.  Amended Complaint ¶ 9.  In contrast to Parrish and Roberts, Adderley signed GLAs and participated in certain Players Inc licensing programs for which he received more than $13,000 in payments.  Upshaw Decl. ¶ 10.  Adderley's last GLA expired at the end of 2005.  Id.

## II.    PLAINTIFFS' IMPROPER PURPOSE IN FILING THE LAWSUIT

Parrish is an outspoken and persistent critic of the NFLPA, and in particular its relations with retired players.  Parrish is the author of a book entitled They Call It A Game, in which he publicly criticizes the NFLPA.  Amended Complaint ¶ 8.  Parrish recently testified against the NFLPA in Congressional hearings, and separately called on Congress to conduct an "investigation of the NFLPA and how it's operated."  D. Orlando Ledbetter, Inside the NFL: House tackles NFLPA, The Atlanta Journal-Constitution, Dec. 10, 2006, at 6F; see also Bob Glauber, Upshaw finally starts barking, but not at Bryant Gumbel, Newsday, Aug. 27, 2006, at B13 (discussing Parrish's demands for a Congressional investigation regarding the NFLPA's player agent regulations).

Parrish has been vehement in criticizing the NFLPA's Executive Director, Gene Upshaw, stating, for example, that "Upshaw's 25 percent increase announcement [i.e., announcing an increase of 25 percent in pension benefits for retired players] is an insult.  He means for it to be."  Charles Chandler, NFL Improves Player Benefits; Announcement Draws Mixed Reaction From Retired Players, Charlotte Observer, July 28, 2006, at 6C; see also Bob Glauber, Upshaw finally starts barking, but not at Bryant Gumbel, Newsday, Aug. 27, 2006, at B13 ("Parrish also criticizes the union's failure to sufficiently improve benefits for retired players, even though Upshaw and his group recently won large increases.").

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-4-

1     On February 14, 2007, Manatt filed a Complaint, signed by Ronald S. Katz, and

2  with McKool Smith and Mutch listed as co-counsel, on behalf of a purported class of retired

3  players to whom Players Inc had allegedly breached some unspecified fiduciary duty, and

4  naming Parrish and Adderley as representatives of the purported class.  A little over a week later,

5  on February 23, 2007, Manatt filed the Amended Complaint (also signed by Katz), with McKool

6  Smith and Mutch as co-counsel, which added Parrish's former teammate Roberts as a plaintiff

7  and as a representative of the purported class.

8     Although Plaintiffs' counsel knew (or should have known through "an inquiry

9  reasonable under the circumstances") that Parrish and Roberts had never signed GLAs and never

10  participated in Players Inc licensing activities (and thus could assert no claims against Players

11  Inc), Plaintiffs' counsel stated in the Complaint and Amended Complaint signed by Katz that

12  "Plaintiffs' claims are typical of the claims of the entire Class as required by Rule 23(a)(3).  The

13  claims of Plaintiffs and members of the Class are based on the same legal theories and arise from

14  the same unlawful conduct."  Complaint ¶ 25; Amended Complaint ¶ 26.

15     The Complaint and Amended Complaint contain numerous allegations

16  complaining about the pension, disability and other benefits retired players receive through the

17  NFLPA's collective bargaining efforts, even though these allegations have nothing to do with

18  group licensing.  See, e.g., Amended Complaint ¶ 9 (Adderley's "pension payment from the

19  NFLPA is $176.85 per month"); id. ¶ 14 (complaining about "poverty-level NFLPA pension

20  payments"); id. ("the situation regarding disability payments is a rapidly growing tragedy"); id.

21  ("an extremely low percentage of retired players receive disability payments"); id. ¶ 15

22  (complaining about disability status of former player Mike Webster).

23     In an interview with the New York Times on the day that the Complaint was filed,

24  Plaintiffs' attorney Katz stated that "We're picking up a rock and seeing what's crawling

25  underneath."  Alan Schwarz, 2 Former N.F.L. Players Sue Over Sharing Of Fees, N.Y. Times,

26  Feb. 15, 2007, at D2 (attached hereto as Declaration of Eamon O'Kelly dated April 4, 2007

27  ("O'Kelly Decl.") Ex. A).  Mr. Katz and his firm, Manatt, subsequently announced that they had

28  formed an entity named "Retired Professional Football Players for Justice," which purportedly

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-5-

1    will enter into group licensing contracts with retired players, competing directly with Players Inc

2    "in deals with commercial interests, such as video game and apparel companies." Daniel

3    Kaplan, <u>New Group May Seek Retired NFLers' Rights</u>, Sports Bus. J., Feb. 26-Mar. 4, 2007, at

4    5 (attached hereto as O'Kelly Decl. Ex. B). A later article directly linked the filing of this class

5    action lawsuit to the formation of Retired Professional Football Players for Justice, and reported

6    that the "formal announcement of the creation of [the] organization" had been delayed "in hopes

7    of capturing media attention during [NFL] draft week in New York." Daniel Kaplan, <u>Retired</u>

8    <u>NFLers Delay Announcement of Group</u>, Sports Bus. J., Mar. 5-11, 2007, at 8 (attached hereto as

9    O'Kelly Decl. Ex. C).

10           A website established in the name "Retired Professional Football Players For

11    Justice" (www.playersforjustice.org), identifies Parrish and Adderley as "Co-Presidents." It also

12    lists Ronald S. Katz of Manatt and Lewis LeClair of McKool Smith on the "Officers &

13    Directors" webpage as "Outside Litigation Counsel." The stated purposes of the organization

14    include "bringing class action lawsuits," "establish[ing] an alternative to the current marketing

15    and licensing system which will empower players," and providing "an organized voice to all

16    retired NFL players on issues such as royalties, pensions and disability payments." A statement

17    in the names of Parrish and Adderley declares that "our first step in righting these wrongs has

18    been to file a class action lawsuit," and a further step "is for the players to take control of their

19    publicity rights, which will be marketed through a retired players licensing and retailing

20    organization." As to control of the monies generated by this commercial licensing business,

21    Samuel A. Mutch, counsel in this action, is listed as "Secretary and Treasurer" of the

22    organization. <u>See</u> "Retired Professional Football Players for Justice,"

23    http://www.playersforjustice.org (last visited Mar. 9, 2007) (attached hereto as O'Kelly Decl. Ex.

24    D).

## ARGUMENT

26           Fed. R. Civ. P. 11(a) provides in relevant part that "[e]very pleading, written

27    motion, and other paper shall be signed by at least one attorney of record in the attorney's

28    individual name...." By signing a pleading, an attorney certifies that:

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

[T]o the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —

(1) it is not being presented for any improper purpose, such as to harass …;

(2) the claims … and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

(3) the allegations and other factual contentions have evidentiary support….

Fed. R. Civ. P. 11(b).  Thus, sanctions under Rule 11 are appropriate if a complaint is not grounded in fact or if it sets forth frivolous legal contentions.  See Truesdell v. S. Cal. Permanente Med. Group, 209 F.R.D. 169, 174-75 (C.D. Cal. 2002).  Moreover, sanctions are appropriate where a complaint is filed for a purpose other than to vindicate rights in court, such as to harass or obtain discovery to support another matter.  See In re Kunstler, 914 F.2d 505, 518-20 (4th Cir. 1990).

A violation of Rule 11 occurs where "a reasonable attorney, having conducted an objectively reasonable inquiry into the facts and law" would determine that the complaint was not well founded.  Truesdale, 209 F.R.D. at 174 (citation omitted).  Complaints that are based on frivolous legal contentions or unsupported factual allegations may also violate Rule 11's "improper purpose" standard, regardless of plaintiffs' subjective intent.  See Hudson v. Moore Bus. Forms Inc., 836 F.2d 1156, 1163 (9th Cir. 1987); Paciulan v. George, 38 F. Supp. 2d 1128, 1144 (N.D. Cal. 1999); see also In re Kunstler, 914 F.2d at 519.

Where any such violation is found, Rule 11 authorizes Courts to impose sanctions upon plaintiffs, their attorneys of record, and their attorneys' law firms.  Fed. R. Civ. P. 11(c); see Truesdale, 209 F.R.D. at 175.  Players Inc respectfully submits that this Court should impose such sanctions against Plaintiffs, their attorney of record, Ronald S. Katz (who signed the complaint), Mr. Katz's law firm, Manatt, and co-counsel McKool Smith and Mutch.  The claims on behalf of Parrish and Roberts set forth in the Complaint and repeated in the Amended Complaint are neither "warranted by existing law [n]or by a nonfrivolous argument for the

-7-

extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b). Not only is there no evidentiary support for those claims, the claims are contradicted by indisputable facts that were known to these Plaintiffs when they commenced the lawsuit.

Moreover, upon information and belief, Plaintiffs brought the claims for improper purposes – to harass Players Inc and the NFLPA about collective bargaining benefits provided to retired NFL players, to engage in a fishing expedition for publicity purposes, and to advance the commercial interests of the new entity formed by Plaintiffs and their counsel that will compete directly with Players Inc for the licensing of retired players' images. Plaintiffs' counsel could have readily ascertained through "an inquiry reasonable under the circumstances" that any claims on behalf of Parrish or Roberts were baseless and lacked evidentiary support. Thus, counsel either failed to conduct the inquiry required by Rule 11 or, worse, knew that these claims were baseless and were brought for an improper purpose when they filed the Complaint and Amended Complaint.

## I.  RULE 11 SANCTIONS ARE WARRANTED BECAUSE PLAINTIFFS' CLAIMS LACK ANY EVIDENTIARY SUPPORT AND ARE BASELESS AS A MATTER OF LAW

Plaintiffs' claims are grounded in a single legal theory: that Players Inc owed them some unspecified fiduciary duty and breached that duty. Not only is there no evidentiary support for such a claim as required by Rule 11, this claim is directly contradicted by indisputable facts with regard to Parrish and Roberts, since neither of them has ever had any licensing relationship with Players Inc. Moreover, there is no support for such claims in the law or any reasonable extension of existing law. Players Inc is a for-profit company that competes in the commercial market place for the licensing of players' images (Upshaw Decl. ¶ 3); therefore, the only duty that Players Inc could have to any individual player (or class of players) would be as the result of an individually bargained contract with that player. For these reasons alone, Plaintiffs and their counsel should be sanctioned under Rule 11.

Certain types of relationship (such as attorney-client, trustee-beneficiary, and corporate officer-shareholder) give rise to a fiduciary duty. See McMahon v. Randolph-Macon

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-8-

1  Academy, 42 Va. Cir. 417, 419 (1997) (listing relationships where a fiduciary duty exists);

2  Cohen v. Mastie, 31 Va. Cir. 96 (1993) (same); see also Adelman v. Conotti Corp., 213 S.E.2d

3  774, 779 (Va. 1975).[2]  As Plaintiffs know, there never was a relationship of any kind between

4  Players Inc and either Parrish or Roberts, much less a relationship that could give rise to a

5  fiduciary duty.  Neither Parrish nor Roberts ever executed a GLA or participated in any Players

6  Inc licensing programs.  Upshaw Decl. ¶¶ 8-9.  Thus, on its face, the allegation that Players Inc

7  owed – and breached – a fiduciary duty to Parrish or Roberts is frivolous.

8           Not only is there no evidentiary support for the claims brought by Parrish and

9  Roberts, such claims have no support in the law.  For example, Plaintiffs contend in wholly

10  conclusory fashion that Players Inc "owed and owe each represented player a fiduciary duty to

11  seek to obtain for that player licensing and marketing opportunities in a fair and equitable

12  manner consistent with the best interests of that player."  Amended Complaint ¶ 3 (emphasis

13  added); see also id. ¶ 17 (contending, without explanation, that Players Inc owes a fiduciary duty

14  to retired players with respect to revenues paid by licensees).  Plaintiffs cannot not allege any

15  facts, however, that Players Inc ever "represented" Parrish or Roberts in any licensing effort or

16  that they were entitled to share in any revenues paid by licensees, because neither Parrish nor

17  Roberts ever signed GLAs or participated in any Players Inc licensing programs.  Upshaw Decl.

18  ¶¶ 8-9.

19           Being unable to pretend that there is a legally cognizable fiduciary relationship

20  between Players Inc and Parrish or Roberts, see McMahon, 42 Va. Cir. at 419; Oakland Raiders,

21  131 Cal. App. 4th at 632-33, Plaintiffs contend that "Defendant's position of control and

22  Plaintiffs' lack of information" somehow gives rise to a fiduciary duty.  Amended Complaint ¶

23  17.  This contention is clearly frivolous as a matter of law.  In certain rare instances, where there

24  are marked inequalities of power or education between the two parties in a close relationship,

25  

26  [2] Because Players Inc is a Virginia corporation, the substantive law of Virginia regarding
    fiduciary duties applies here.  The law in California with respect to fiduciary duty, however, is

27  substantially the same for purposes of the instant motion.  See Oakland Raiders v. Nat'l Football
    League, 131 Cal. App. 4th 621, 632-33 (2005) (listing relationships where there are fiduciary

28  duties).

Players Inc's Motion for Sanctions                                    Civ. Action No. C07 0943 WHA

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

courts have found such relationships to be "special" or "confidential" and imposed fiduciary duties. See, e.g., McClung v. Smith, 870 F. Supp. 1384, 1400, 1400 n.6 (E.D. Va. 1994) (finding a "special" relationship under Virginia law where a woman, unsophisticated in financial matters and weakened by alcohol dependence, entrusted her finances to a family friend, a lawyer who was especially knowledgeable about land investing); Richelle L. v. Roman Catholic Archbishop of San Francisco, 106 Cal. App. 4th 257, 270-74 (2003) (addressing whether there was a "confidential" relationship under California law where a devout, sexually inexperienced parishioner had been seduced by her pastor). But there can be no "special" or "confidential" relationship unless there is a relationship in the first place, and there is not, and never was, any relationship between Players Inc and Parrish or Roberts – much less a "special" or "confidential" relationship. See Amended Complaint ¶ 8 (noting that Parrish was CEO of a commercial construction company for over 20 years that employed more than 3,000 employees).

Finally, the contention that Plaintiffs are adequate representatives of a plaintiff class (Amended Complaint ¶ 27) is frivolous and lacks any support in the law. Parrish and Roberts, having never executed GLAs or participated in Players Inc licensing programs (Upshaw Decl. ¶¶ 8-9), are not members of the class they purport to represent. See Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003) (holding that a plaintiff who does not have the alleged claim "cannot represent others who may have such a claim, and [plaintiff's] bid to serve as a class representative must fail"). Thus, Plaintiffs and their counsel knew from the outset that the contention that Parrish and Roberts are adequate representatives of the class alleged in the Complaint and the Amended Complaint is unsupportable. This also violates Rule 11.

In sum, not only do "the allegations and other factual contentions" in the Amended Complaint lack "evidentiary support," see Fed. R. Civ. P. 11(b)(3), they are demonstrably untrue and Plaintiffs knew them to be untrue, thereby violating Rule 11. By signing the Complaint and the subsequent Amended Complaint that contain such blatantly false allegations, Plaintiffs' counsel, at a minimum, failed to conduct the inquiry mandated by Rule 11. In addition, Plaintiffs' claims are not warranted by existing law or by the extension,

-10-

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

1  modification, or reversal of existing law or the establishment of new law.  See Fed. R. Civ. P.

2  11(b)(2).

3  **II.    RULE 11 SANCTIONS ARE APPROPRIATE BECAUSE PLAINTIFFS HAD THE**

4  **IMPROPER PURPOSE TO HARASS THE NFLPA**

5          Parrish has long been critical of the NFLPA and its treatment of retired players.

6  He has criticized the players' union in his book on the NFL, lobbied Congress concerning retired

7  players' pension and disability rights, and for several years conducted a media campaign against

8  the NFLPA.  Adderley has also been vocal in his expressing his "disgust[] with the way [retired

9  NFL players] have been treated."  Neil Hays and Roman Modrowski, <u>Ditka: Owners Should be</u>

10 <u>Ashamed: Former NFL Greats Speak Out Against League's Pension Plan</u>, Chicago Sun-Times,

11 Feb. 2, 2007, at 100.  As noted (<u>supra</u> p.5), these public criticisms are reiterated in the Amended

12 Complaint, in which Plaintiffs allege that retired players receive "poverty-level pension

13 payments" and that an "extremely low percentage of retired players receive disability payments."

14 Amended Complaint ¶ 14; <u>see</u> <u>also</u> <u>id.</u> ¶¶ 15-16 (relating the unfortunate story of retired player

15 Mike Webster).

16          Plaintiffs are well aware that the pension and disability benefits of which they

17 complain are negotiated by the NFLPA (the players union), not Players Inc (a for-profit

18 corporation), and are controlled by the collective bargaining agreements between the NFLPA

19 and the NFL.  Upshaw Decl. ¶ 4.  Plaintiffs, however, have no cause of action that would permit

20 them to challenge the NFLPA's collective bargaining activities in any court, being limited under

21 the Labor Management Relations Act, 29 U.S.C. § 185(a), to claims for breach of duty of fair

22 representation that are long since time-barred.  <u>See</u>, <u>e.g.</u>, <u>Henderson v. Office & Prof'l</u>

23 <u>Employees Int'l Union</u>, 143 Fed. Appx. 741, 743 (9th Cir. 2005); <u>see</u> <u>also</u> <u>Allis-Chalmers Corp.</u>

24 <u>v. Lueck</u>, 471 U.S. 202, 210-11 (1985).  Thus, any issues that Plaintiffs may have with the

25 NFLPA concerning these retired player benefits are wholly irrelevant to any purported breach of

26 fiduciary duty allegations against Players Inc.

27          The prominent place given to these legally irrelevant criticisms in the Amended

28 Complaint (<u>see</u> ¶¶ 14, 15, 16, 18), combined with the complete lack of factual and legal support

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-11-

1  for Plaintiffs' breach of fiduciary claims regarding Parrish and Roberts, demonstrates the

2  improper purpose for which the Complaint and the Amended Complaint were filed. This is

3  reinforced by statements on the website of Retired Professional Football Players for Justice, the

4  new group of which Parrish and Adderley are Co-Presidents, that the group "will engage in

5  activities like bringing class action lawsuits, testifying before Congress, and providing

6  information to the media highlighting the situation of those whose former physically demanding

7  careers have resulted in long-term damage to their health." O'Kelly Decl. Ex. D. Thus, it

8  appears that this lawsuit represents nothing more than the latest round in Parrish's media

9  campaign and lobbying of Congress. This is a clear violation of Rule 11. See Hudson, 836 F.2d

10 at 1162 (holding that "the absence of any reasonable support for the damage claim and the nature

11 of the justification offered warrant a conclusion that Littler filed the counterclaim to harass

12 Hudson"); see also Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1366-67 (9th Cir.

13 1990) (affirming district court's determination that an improper purpose can be inferred from the

14 fact that the allegations were frivolous and that plaintiffs claim was "essentially vindictive").

15      That Plaintiffs hope to use this baseless lawsuit against Players Inc as another

16 weapon to publicly harass the NFLPA is further reinforced by the aggressive publicity campaign

17 undertaken by Plaintiffs and their lawyers. See, e.g., Alan Schwarz, 2 Former N.F.L. Players

18 Sue Over Sharing of Fees, N.Y. Times, Feb. 15, 2007, at D2 (reporting on public statements by

19 Plaintiffs and their counsel, Ronald S. Katz, on day that lawsuit was filed); Daniel Kaplan, New

20 Group May Seek Retired NFLers' Rights, Sports Bus. J., Feb. 26-Mar. 4, 2007, at 5 (linking the

21 formation of Retired Professional Footballers for Justice directly to the lawsuit to and reporting

22 that the "group is expected to formally announce its creation as early as this week at a news

23 conference at Manatt's New York office....") (attached hereto as O'Kelly Decl. Ex. B); Daniel

24 Kaplan, Retired NFLers Delay Announcement of Group, Sports Bus. J., Mar. 5-11, 2007, at 8

25 (reporting that the "formal announcement of the creation of [the] organization" had been delayed

26 "in hopes of capturing media attention during [NFL] draft week in New York") (attached hereto

27 as O'Kelly Decl. Ex. C). This aggressive pursuit of publicity exacerbates Plaintiffs' Rule 11

28 violation. See Whitehead v. Food Max of Miss., Inc., 332 F.3d 796, 807 (5th Cir. 2003) (holding

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-12-

1   that the intent to embarrass a person and attract media attention through service of a signed filing

2   is an improper purpose under Rule 11); Bryant v. Brooklyn Barbecue Corp., 932 F.2d 697, 698

3   (8th Cir. 1991) (affirming Rule 11 sanctions where the trial court "concluded the original

4   complaint was filed solely for an improper purpose, namely to attract publicity and to harass the

5   defendants").

6   **III.    RULE 11 SANCTIONS ARE APPROPRIATE BECAUSE PLAINTIFFS'
         COUNSEL FILED THE COMPLAINT FOR AN IMPROPER PURPOSE**

7

8               Plaintiffs' attorney, Ronald S. Katz, told the New York Times with regard to this

9   lawsuit that "[w]e're picking up a rock and seeing what's crawling underneath."  Alan Schwarz,

10  2 Former N.F.L. Players Sue Over Sharing Of Fees, N.Y. Times, Feb. 15, 2007, at D2 (attached

11  hereto as O'Kelly Decl. Ex. A).  Such a fishing expedition is a clear abuse of the judicial process

12  and sanctionable under Rule 11.  See In re. Kunstler, 914 F.2d at 520 (affirming finding of

13  improper purpose where plaintiffs filed a baseless civil suit in part to obtain discovery for use in

14  criminal proceedings).

15              Mr. Katz's law firm also openly supports the improper purposes for which this

16  lawsuit was filed. As stated by Mr. Katz in a press release issued by his firm, Manatt:

17        Because the pensions they receive from the Union are not enough to live on and
          because many of these players are disabled, they need these royalty payments just
18        to make ends meet.  Given the Players Inc documents attached to the complaint, I
          would not be surprised to see a congressional investigation of the Union.
19

20  Press Release, Manatt, Phelps & Phillips LLP, Manatt and McKool Smith Help Retired

21  Professional Football Players Kick Off Class-Action Lawsuit; Only 10 Percent Of Those

22  Represented By Union's Commercial Licensing Arm Receive Payments, (Feb. 15, 2007)

23  (attached hereto as O'Kelly Decl. Ex. E).  This, too, is sanctionable under Rule 11.  See, e.g., In

24  re Kunstler, 914 F.2d at 520.

25              In addition, Mr. Katz and Manatt announced shortly after this lawsuit was filed

26  that "they were taking the lead in starting Retired Professional Football Players for Justice,"

27  which purportedly will compete directly with Players Inc "in deals with commercial interests,

28  such as video game and apparel companies."  Daniel Kaplan, New Group May Seek Retired

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-13-

NFLers' Rights, Sports Bus. J., Feb. 26-Mar. 4, 2007, at 5 (attached hereto as O'Kelly Decl. Ex. B). The group's website identifies Samuel A. Mutch (who represents Plaintiffs in this lawsuit) as its Treasurer and also names Mr. Katz and Lewis LeClair of McKool Smith on its "Officers & Directors" webpage. O'Kelly Decl. Ex. D. The group's goals include "bringing class action lawsuits" and "establish[ing] an alternative to the current marketing and licensing system which will empower players." Id. Using a class action lawsuit to seek discovery of Players Inc for competitive purposes is another Rule 11 violation.

## IV. RULE 11 SANCTIONS ARE WARRANTED.

Courts impose sanctions under Rule 11 to the degree necessary "to deter repetition of such conduct" and may take the form of monetary and/or nonmonetary sanctions. Fed. R. Civ. P. 11(c)(2). Monetary sanctions are often the reasonable attorney's fees and costs incurred as a result of the violation. See, e.g., Truesdell, 209 F.R.D. at 178. Nonmonetary sanctions may include striking the offending paper. See, e.g., Jimenez v. Madison Area Tech. Coll., 321 F.3d 652, 656-57 (7th Cir. 2003) (affirming dismissal of the complaint where it was founded on the very allegations that violated Rule 11). Courts should consider the degree of the Rule 11 violations when determining sanctions. See, e.g., Kendrick v. Zanides, 609 F. Supp. 1162, 1173 (N.D. Cal. 1985) ("Because of the egregiousness of the conduct involved, the sanctions imposed will not be limited to expenses and attorneys' fees").

Here, Players Inc requests that Plaintiffs' baseless allegations concerning a breach of a nonexistent fiduciary duty allegedly owed to Parrish and Roberts be stricken and that the Amended Complaint be dismissed with prejudice with respect to these Plaintiffs. As for monetary sanctions, Players Inc requests an award in the full amount of the reasonable attorney's fees and costs incurred in filing this motion, in responding to the Amended Complaint, and any other fees and costs incurred in connection with this lawsuit. These expenses are a direct result of the violations of Rule 11 by Plaintiffs, their counsel of record, and their law firms as set forth above. As is appropriate under Rule 11, Players Inc requests that these sanctions be levied jointly against Plaintiffs; their counsel, Ronald S. Katz and his law firm, Manatt, Phelps & Phillips LLP; co-counsel Lewis T. LeClair and his law firm McKool Smith P.C.; and co-counsel Samuel A.

-14-

Mutch and his law firm Samuel A. Mutch P.A.  See Fed. R. Civ. P. 11(c); see also Fed. R. Civ. P. 11 advisory committee notes to 1993 Amendments ("Absent exceptional circumstances, a law firm is to be held also responsible when … one of its partners, associates, or employees is determined to have violated the rule. … The revision permits the court to consider whether other attorneys in the firm, co-counsel, other law firms, or the party itself should be held accountable for their part in causing a violation."); Davis v. PRC, Inc., 161 F.R.D. 326, 327 (E.D. Va. 1995) (imposing sanctions on litigant's personal attorney as well as co-counsel hired to advise on employment discrimination claim); Val-Land Farms, Inc. v. Third Nat'l Bank, 937 F.2d 1110, 1117-18 (6th Cir. 1991) (upholding sanctions under Rule 11 against primary Illinois firm and local Tennessee counsel).

## V.   SANCTIONS ARE ALSO WARRANTED UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWERS.

Under 28 U.S.C. § 1927, "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Unreasonable" and "vexatious" conduct is demonstrated by a showing of "bad faith, improper motive, or reckless disregard of the duty owed to the court." Edwards v. Gen. Motors Corp., 153 F.3d 242, 246 (5th Cir. 1998).  Bad faith exists "when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." Trulis v. Barton, 107 F.3d 685, 694 (9th Cir. 1995).  Section 1927 authorizes the Court to award costs reasonably incurred because of an attorney's unreasonable and vexatious conduct. United States v. Blodgett, 709 F.2d 608, 610-611 (9th Cir. 1983).

As described above,  Mr. Katz and his co-counsel have filed the Complaint and the Amended Complaint, which are replete with frivolous contentions.  Mr. Katz's desire to "see[ ] what's crawling underneath" a rock is not an appropriate use of the litigation process and demonstrates bad faith.  Accordingly, Players Inc requests an award of reasonable attorney's fees and costs pursuant to Section 1927 against Mr. Katz, his law firm Manatt, and co-counsel McKool Smith and Mutch, who joined in the Complaint and Amended Complaint.

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-15-

1    In addition to Rule 11 and Section 1927, federal courts have inherent power to

2    impose sanctions against both attorneys and parties for bad faith conduct in litigation. <u>Chambers</u>

3    <u>v. NASCO, Inc.</u>, 501 U.S. 32, 35 (1991); <u>see</u> <u>also</u> <u>Fink v. Gomez</u>, 239 F.3d 989 (9th Cir. 2001).

4    Recklessness coupled with an additional factor, such as frivolousness, harassment, or an

5    improper purpose, may be deemed to constitute bad faith. <u>See</u> <u>Fink</u>, 239 F.3d at 994. The Court

6    has broad discretion in its choice of sanctions, including awards of attorneys' fees and dismissal,

7    and awards to compensate parties for reputational injuries. <u>Chambers</u>, 501 U.S. at 44-45; <u>B.K.B.</u>

8    <u>v. Maui Police Dep't</u>, 276 F.3d 1091, 1108-1109 (9th Cir. 2002) (affirming sanctions for

9    reputational damage). Players Inc requests such sanctions that the Court deems appropriate

10    pursuant to its inherent powers.

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-16-

1

**CONCLUSION**

2        For all of the foregoing reasons, Players Inc respectfully requests that the Court

3   enter a judgment:  (1) declaring Plaintiffs, their counsel of record Ronald S. Katz, and his law

4   firm Manatt, Phelps & Phillips LLP, co-counsel Lewis T. LeClair and his law firm McKool

5   Smith P.C., and co-counsel Samuel A. Mutch and his law firm Samuel A. Mutch P.A., to be in

6   violation of Rule 11; (2) declaring Plaintiffs' counsel to be in violation of 28 U.S.C. § 1927; and

7   (3) pursuant to Rule 11, 28 U.S.C. § 1927, and/or the Court's inherent powers, striking the

8   offending allegations and the Amended Complaint, awarding Players Inc monetary sanctions in

9   the amount of its reasonable attorney's fees and costs, and any other relief that the Court may

10  deem appropriate.

11

12      Date:   April 4, 2007

13                                          DEWEY BALLANTINE LLP

14

15                                  BY:  ___s/Jeffrey L. Kessler_____

16                                          Jeffrey L. Kessler
                                            Attorneys for Defendant Players Inc
17

18

19

20

21

22

23

24

25

26

27

28

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-17-