1  Mark Malin (Bar No. 199757)
   *mmalin@deweyballantine.com*
2  DEWEY BALLANTINE LLP
   1950 University Avenue, Suite 500
3  East Palo Alto, CA  94303
   Tel:  (650) 845-7000; Fax:  (650) 845-7333
4
   Jeffrey L. Kessler (*pro hac vice*)
5  *jkessler@deweyballantine.com*
   David G. Feher (*pro hac vice*)
6  *dfeher@deweyballantine.com*
   Eamon O'Kelly (*pro hac vice*)
7  *eokelly@deweyballantine.com*
   DEWEY BALLANTINE LLP
8  1301 Avenue of the Americas
   New York, NY  10019-6092
9  Tel:  (212) 259-8000; Fax:  (212) 259-6333

10 Kenneth L. Steinthal (*pro hac vice*)
   *kenneth.steinthal@weil.com*
11 Claire E. Goldstein (Bar No. 237979)
   *claire.goldstein@weil.com*
12 WEIL, GOTSHAL & MANGES LLP
   201 Redwood Shores Parkway
13 Redwood Shores, CA  94065
   Tel:  (650) 802-3000; Fax:  (650) 802-3100
14
   Bruce S. Meyer (*pro hac vice*)
15 *bruce.meyer@weil.com*
   WEIL, GOTSHAL & MANGES LLP
16 767 Fifth Avenue
   New York, NY  10153
17 Tel:  (212) 310-8000; Fax:  (212) 310-8007

18 Attorneys for Defendant National Football League Players
   Incorporated d/b/a Players Inc., a Virginia Corporation
19

**UNITED STATES DISTRICT COURT**
20  **NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION**

21 | BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III on behalf of themselves and all others similarly situated, | Case No.  C 07 00943 WHA |
22 | | **PLAYERS INC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SANCTIONS** |
23 | Plaintiffs, | |
24 | v. | Date: May 31, 2007 |
25 | | Time: 8:00 am |
   | NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC., a Virginia Corporation, | Ctrm: 9 |
26 | | Judge:  William H. Alsup |
27 | Defendant. | |
28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ................................................................................................................... 1

    I.    PLAINTIFFS' CLAIMS FOR BREACH OF A FIDUCIARY DUTY TO MESSRS. PARRISH AND ROBERTS ARE UTTERLY FRIVOLOUS ................................................................. 4

    II.   AN AWARD OF RULE 11 SANCTIONS IS SUPPORTED BY THE IMPROPER PURPOSE OF PLAINTIFFS AND THEIR COUNSEL ............................................................................ 8

    III.  RULE 11 SANCTIONS ARE APPROPRIATE WHERE EVEN ONE OF PLAINTIFFS' CLAIMS IS FRIVOLOUS ................ 10

CONCLUSION ..................................................................................................................... 12

**DEWEY BALLANTINE LLP**
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

# TABLE OF AUTHORITIES

Page

**Cases**

Carpenter Found. v. Oakes,
    26 Cal. App. 3d 784 (1972) .................................................................................................. 6

Holgate v. Baldwin,
    425 F.3d 671 (9th Cir. 2005) ............................................................................................... 10

In re Keegan Mgmt. Co. Securities Litig.,
    78 F.3d 431 (9th Cir. 1996) ................................................................................................... 9

In re Pozsga,
    158 F.R.D. 435 (D. Ariz. 1994) ............................................................................................ 7

Kinderstart.com v. Google Inc.,
    No. C 06-2057 JF (RS), 2007 WL 831811 (N.D. Cal. Mar. 16, 2007) .............................. 10

Lloyd v. Schlag,
    884 F.2d 409 (9th Cir. 1989) ............................................................................................... 10

Patterson v. Aiken,
    841 F.2d 386 (11th Cir. 1988) ............................................................................................ 11

People v. Robertson,
    6 Cal. App. 514 (1907) .......................................................................................................... 6

Recorded Picture Co. v. Nelson Entm't, Inc.,
    53 Cal. App. 4th 350 (1997) .................................................................................................. 6

Townsend v. Holman Consulting Corp.,
    929 F.2d 1358 (9th Cir. 1990) ...................................................................................... 8, 9, 10

Truesdell v. S. Cal. Permanente Med. Group,
    209 F.R.D. 169 (C.D. Cal. 2002) .......................................................................................... 3

Whittaker v. Otto,
    188 Cal. App. 2d 619 (1981) ................................................................................................. 6

**Statutes and Rules**

Fed. R. Civ. P. 11 ........................................................................................................................ passim

Fed. R. Civ. P. 12(c) .................................................................................................................... passim

**Secondary Sources**

Restatement (Second) of Agency § 15 cmt. e (1958) ...................................................................... 6

Restatement (Second) of Agency § 430 (1958) .............................................................................. 6

Restatement (Third) of Agency § 8.02 (2005) ................................................................................ 6

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

1   Defendant National Football League Players Incorporated d/b/a Players Inc
2   ("Players Inc") hereby submits this Reply Brief in Support of its Motion for Sanctions.

## INTRODUCTION

4   This is not a case in which plaintiffs had a good faith legal basis to make the
5   claims asserted in the complaint. Instead, plaintiffs filed the complaint in this action with
6   complete disregard as to whether they actually have cognizable legal claims against Players Inc,
7   as part of a political battle with the NFLPA to try to secure increased pension, disability and
8   other benefits for the plaintiffs. In such circumstances, sanctions against plaintiffs and their
9   counsel are warranted.

10  While plaintiffs are desperately trying to obfuscate the issue at the heart of this
11  case, the complaint suffers from a fundamental flaw in the claims of Messrs. Parrish and Roberts
12  that plaintiffs know they cannot cure. The complaint has not alleged, and cannot allege, that
13  Players Inc ever licensed the intellectual property rights of retired players -- such as Messrs.
14  Parrish and Roberts -- who did not enter into a GLA or other licensing contract with the NFLPA
15  or Players Inc.[1] Thus, no matter how many ways plaintiffs try to spin or obscure the point,
16  neither Mr. Parrish nor Mr. Roberts can make any claim that Players Inc ever used or licensed
17  their intellectual property rights to anyone during the limitations period. Plaintiffs accordingly
18  knew there was never any use of their property that could support a claim for unjust enrichment,
19  an accounting, breach of fiduciary duty, or any other claim. Plaintiffs have always been well
20  aware of this undeniable fact, but they nonetheless proceeded to file this action against Players
21  Inc as part of a publicity campaign against the NFLPA, with complete disregard of the clear legal
22  deficiency that neither of them was ever in any legal or other type of relationship with Players
23  Inc during the limitations period.

24  Further, plaintiffs know that they cannot allege in good faith, after reasonable
25  investigation, that Players Inc held itself out as the purported agent for "all" retired players, and

---

[1] Plaintiffs now claim that Mr. Parrish signed two one-year GLAs with the NFLPA in the late 1990's. See Declaration of Bernard Paul Parrish in Support of Plaintiffs' Opposition to Defendant's Motion For Sanctions dated May 8, 2007, ¶ 8. However, those GLAs expired well before the applicable limitations period in this case, so those newly-discovered GLAs are legally irrelevant to this action. See Reply in Support of Rule 12(c) Mot. at 6 n.4.

1

Case No. C 07-00943 WHA
Reply in Support of Motion for Sanctions

**DEWEY BALLANTINE LLP**
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

that this purported class consists of "approximately 3,500" persons.  See Opposition at 6; Amended Complaint ¶ 1.  Anyone with even cursory knowledge of the number of teams in the NFL in recent history (about 30), the roster size of NFL teams (about 53), and the relatively short careers of NFL players would know that the number of retired NFL players is multiples of 3,500.  In fact, just a few months before this action was filed, Mr. Parrish stated to the media that there are more than 7,500 retired NFL players just since the 1960's.  See Declaration of Eamon O'Kelly ("O'Kelly Decl.") in Further Support of Defendant's Motion for Sanctions, Ex. F ("Parrish said former Miami running back Mercury Morris filed a Freedom of Information Act request and found that of the 7,561 former NFL players since the 1960s, only 1 percent were receiving disability") (emphasis added).

Plaintiffs also know that they cannot allege any harm that they suffered, or any economic benefit that Players Inc received, as a result of any statements by Players Inc that it represented 3,500 or any other number of retired players.  Indeed, the various cases that plaintiffs rely upon to try to gin up a claim based on these references are not close to being on point.  In those cases, the plaintiff alleged that the defendant in fact used some property of the plaintiff and was unjustly enriched by that unauthorized usage, in breach of the duties that the defendant assumed by the unauthorized use of the plaintiff's property.  See Reply in Support of Rule 12(c) Mot. at 6-7.  That is not remotely the case here, where plaintiffs have not alleged, and cannot allege, that Players Inc ever used the intellectual property rights of Messrs. Parrish or Roberts within the limitations period.

Plaintiffs are well aware that their true "complaints" are political (not legal) issues against the NFLPA -- not Players Inc -- for which they are seeking publicity and media pressure.  That is clear from plaintiffs' attempt at repeated futile amendments, the allegations in their complaint attacking the NFLPA that have nothing to do with their purported licensing claims against Players Inc, and their public comments that betray a desire to use the courts to conduct a harassing fishing expedition.  Backed into a corner, plaintiffs' briefing is an exercise in obfuscation, trying to divert the Court from the undisputable fact that Players Inc never licensed intellectual property rights for players who did not sign a GLA or other contract with the NFLPA

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

1 or Players Inc, and thus never engaged in any economic conduct or relationship with respect to
2 Messrs. Parrish or Roberts during the limitations period.[2]  Without any relationship with Players
3 Inc or use by Players Inc of any assets of Parrish or Roberts during the limitations period, neither
4 of which the First Amended Complaint even tries to allege, Parrish and Roberts have no claims
5 against Players Inc.  As reviewed in Players Inc' moving brief, in these circumstances, where "a
6 reasonable attorney, having conducted an objectively reasonable inquiry into the facts and law"
7 would determine that the complaint was not well founded, Rule 11 is violated and sanctions are
8 appropriate.  See Truesdell v. S. Cal. Permanente Med. Group, 209 F.R.D. 169, 174-75 (C.D.
9 Cal. 2002); Moving Br. at 7.

10 Plaintiffs are also wrong when they assert that evidence of their improper purpose
11 in filing this action is not cognizable.  Players Inc does not and has not argued that plaintiffs
12 should be sanctioned purely on the basis of their improper purpose.  Rather, sanctions are
13 appropriate here because of the combination of that improper purpose with the fact that the
14 claims of the complaint are objectively baseless.  In this case, there is a wealth of evidence both
15 of the objectively baseless nature of the claims, and plaintiffs' improper purpose in filing the
16 action.

17 Indeed, plaintiffs do not and cannot dispute that:  (i) Parrish and Adderley have
18 been engaged in a longstanding public relations campaign against the NFLPA to increase
19 retirement, disability and other benefits for retired players such as themselves; (ii) the complaint
20 contains repeated allegations criticizing the NFLPA's pension and disability plans; (iii)
21 plaintiffs' lead counsel publicly announced that this suit was filed as a fishing expedition to
22 "pick[] up a rock and see[] what's crawling underneath"; and (iv) plaintiffs and their counsel
23 filed this case contemporaneously with the public launch of the "Retired Professional Football
24 Players For Justice" that -- regardless of its tax status -- intends to compete with Players Inc in
25 commercial licensing activities.  The Ninth Circuit case law cited in Players Inc's moving brief is

---

[2] Plaintiffs are not seeking sanctions as to the breach of fiduciary duty claims asserted by Mr. Adderley, because he was a party to GLAs and other licensing agreements with Players Inc during the limitations period.  But, for the reasons stated in Players Inc's Rule 12(c) motion, Mr. Adderley's claims are legally infirm and must be dismissed as well.  See Moving Br. in Support of Rule 12(c) Mot. at 12.

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

1  clear that such evidence of an improper purpose is directly relevant to whether sanctions are

2  warranted, as is the case here.  <u>See</u> Moving Br. at 7; <u>see</u> also Section III, <u>infra</u>, at 10-11.

3         Plaintiffs are similarly wrong when they argue that monetary sanctions should not

4  be recoverable because Players Inc cannot show that the baseless claims asserted on behalf of

5  Messrs. Parrish and Roberts have increased its cost of litigation.  To begin with, Players Inc

6  would not have incurred the costs of this motion absent the bad faith claims that have been

7  asserted.  Further, plaintiffs erroneously assert that Players Inc has not challenged the unjust

8  enrichment and accounting claims in the complaint.  As a matter of law, those claims cannot

9  stand on an independent basis from the bad faith fiduciary duty claim, and thus the sanctions

10 motion relates to those claims as well.  Plaintiffs' assertion that Players Inc's costs "would not

11 have been any different" (Opposition at 17) even absent the fiduciary duty claim is not correct,

12 and Players Inc will support its claim for costs with appropriate supporting materials upon an

13 award of sanctions.

14        In sum, plaintiffs' complaint is an abuse of the judicial process.  Plaintiffs are

15 making bad faith legal claims to support a public relations campaign to try to coerce the NFLPA

16 to increase their pension, disability and other benefits.  Whatever issue plaintiffs may have with

17 the NFLPA about these collectively bargained benefits, filing a lawsuit against a different entity

18 for an alleged breach of fiduciary duty claim, when two of the three purported class

19 representatives for that class never had any economic relationship with the defendant, and the

20 defendant never used any property of those plaintiffs in the limitations period, is not a good faith

21 action consistent with Rule 11.  In the absence of sanctions, future plaintiffs will be encouraged

22 to file suits purely to exert pressure in the media, regardless of whether they have a good faith

23 basis for their claims.

24 **I. PLAINTIFFS' CLAIMS FOR BREACH OF A FIDUCIARY DUTY TO MESSRS. PARRISH AND ROBERTS ARE UTTERLY FRIVOLOUS**

25

26        In order to fully appreciate the sanctionable nature of plaintiffs' complaint, it is

27 necessary to first review the political situation plaintiffs faced, and the choice they made to

28 disregard the law.  As shown in Players Inc's moving papers, plaintiffs Parrish and Adderley

*DEWEY BALLANTINE LLP*
*1950 University Avenue, Suite 500*
*East Palo Alto, California 94303-2225*

4

Case No. C 07-00943 WHA
Reply in Support of Motion for Sanctions

1 have been engaged in a public campaign against the NFLPA for years to try to pressure the
2 NFLPA to increase collectively bargained pension, disability and other benefits for retired NFL
3 players. See Moving Br. at 11-14. However, Messrs. Parrish and Adderley do not have any
4 legal basis to contest these collective bargaining issues under the applicable labor laws. See id.
5 at 11.

6 Thus, Messrs. Parrish and Adderley embarked on this litigation, which tries to
7 pressure the NFLPA indirectly by attacking the group licensing activities of Players Inc as to
8 retired NFL players. However, Mr. Parrish was never a party to a GLA or other licensing
9 contract with Players Inc or the NFLPA during the limitations period (which was also the case
10 with Mr. Roberts, who was added as a California plaintiff only after this case was filed in this
11 court with no connection to this District). Plaintiffs and their lawyers thus had to consider the
12 fact that Messrs. Parrish and Roberts had no relationship with Players Inc at all during the
13 limitations period. Further, while Mr. Adderley did enter into a few GLAs with Players Inc
14 during the limitations period, he was fully paid pursuant to the terms of those contracts, and
15 plaintiffs themselves admit that they would have no legal claim against Players Inc arising out of
16 those contractual relationships.

17 So, facing this dilemma of wanting to bring a legal claim against Players Inc to
18 put additional public pressure on the NFLPA with respect to the pension, disability and other
19 benefit issues that are repeatedly mentioned -- without any connection -- in the complaint, but
20 having lead plaintiffs who had no relationship with Players Inc that could support a cognizable
21 claim, plaintiffs and their counsel advanced an outlandish theory that a breach of fiduciary duty
22 claim can be asserted against Players Inc by all retired players regardless of whether the player
23 ever entered into a GLA or other licensing contract with Players Inc. There is no cognizable
24 legal basis for such a claim, and plaintiffs' experienced counsel had to know that. Yet, they
25 pursued the case to "pick[] up a rock and see[] what's crawling underneath." See Moving Br. at
26 13 (quoting plaintiffs' counsel, Mr. Katz).

27 This is not a proper basis for a legal action consistent with Rule 11. Indeed,
28 plaintiffs had to know that it is hornbook law that plaintiffs can have no claim against Players Inc

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

1    for breach of fiduciary duty unless Players Inc actually had a relationship with plaintiffs, or at the

2    very least used the group licensing rights or other property of the plaintiffs for Players Inc's

3    benefit. <u>See</u>, <u>e.g.</u>, Restatement (Third) of Agency § 8.02 (2005) ("An agent has a duty not to

4    acquire a material benefit from a third party <u>in connection with transactions conducted</u> or other

5    <u>actions taken on behalf of the principal</u> or otherwise <u>through the agent's use</u> of the agent's

6    position") (emphases added); Restatement (Second) of Agency § 430 (1958) ("One who, without

7    the consent or manifestation of consent of another, purports to act as the agent for such other is

8    subject to liability for <u>loss occasioned to the other by such conduct</u> or for the value of anything

9    belonging to the purported principal <u>which he has improperly used</u>") (emphases added);

10    Restatement (Second) of Agency § 15 cmt. e (1958) ("one who purports to act on behalf of

11    another but without the authority to do so is subject to liability to the other as if he were a

12    disobedient agent <u>if</u> he affects the principal's interests <u>either by binding the principal to a third</u>

13    <u>party</u> where he has apparent authority, <u>or by disposing of or meddling with the principal's</u>

14    <u>assets</u>") (emphases added).

15        In fact, plaintiffs themselves concede this principle and repeatedly quote these

16    authorities in their brief. <u>See</u> Opposition at 9 (<u>quoting</u> Restatement provisions). Further, all of

17    the cases that plaintiffs cite in their brief go no further. <u>See</u>, <u>e.g.</u>, <u>Carpenter Found. v. Oakes</u>, 26

18    Cal. App. 3d 784, 792 (1972) (defendant misappropriated intellectual property that had been

19    entrusted to him by the plaintiff); <u>People v. Robertson</u>, 6 Cal. App. 514, 517 (1907) (defendant

20    tax official embezzled funds received from a taxpayer); <u>Whittaker v. Otto</u>, 188 Cal. App. 2d 619,

21    625 (1981) (defendant had taken possession of real property by agreement with the trustee in

22    order to act as caretaker and find a buyer, but later transferred the property into his own name);

23    <u>Recorded Picture Co. v. Nelson Entm't, Inc.</u>, 53 Cal. App. 4th 350, 370 (1997) (a "fiduciary

24    relationship is created where a person reposes trust and confidence in another and the person in

25    whom such confidence is reposed <u>obtains control over the other person's affairs</u>") (emphasis

26    added) (quotation omitted); Opposition at 8-11.

27        In this case, plaintiffs had to know that they could not make any allegation that

28    Players Inc ever had a relationship with Messrs. Parrish or Roberts, or ever used their group

**DEWEY BALLANTINE LLP**
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

1 licensing rights or other property during the limitations period.  This known defect was fatal to
2 plaintiffs' purported claims, because there cannot be any allegation that Players Inc ever took
3 action that infringed on any property rights of retired NFL players, like Messrs. Parrish and
4 Roberts, who never signed a GLA or other contract with Players Inc during the limitations
5 period.  Nonetheless, plaintiffs proceeded to allege a purported breach of fiduciary duty claim in
6 their complaint, but without <u>any</u> good faith allegation of <u>any</u> relationship between Players Inc
7 and Messrs. Parrish or Roberts or <u>any</u> use or misappropriation of their property.  Making such a
8 legally deficient claim -- after being given fair warning and notice by defendant -- is a clear
9 Rule 11 violation.[3]

10    Indeed, plaintiffs' bad faith is evident from their attempted reliance on references
11 by Players Inc to "3,500" retired players whom it may have represented.  Plaintiffs allege that
12 these references indicate that Players Inc has purported to represent "all" retired NFL players,
13 and that they therefore would be within this class of players.  However, plaintiffs are well aware
14 that Players Inc has never purported to act as the licensing agent on behalf of all retired NFL
15 players, and that there are far more than 3,500 retired NFL players alive today.  Specifically,
16 plaintiffs know that, with approximately 53 players on the roster of each NFL Club, with
17 approximately 30 Clubs in the NFL over the past several decades, and with relatively short
18 careers for players, there are many thousand more persons who are retired NFL players than
19 3,500.  Indeed, in December 2006, just a few months before filing this action, Mr. Parrish was
20 quoted in the media as stating that there are more than twice that many retired NFL players just
21 since the 1960's.  See O'Kelly Decl., Ex. F ("Parrish said former Miami running back Mercury
22 Morris filed a Freedom of Information Act request and found that of the <u>7,561 former NFL
23 players since the 1960s</u>, only 1 percent were receiving disability") (emphasis added).[4]  Plaintiffs

---

[3] Plaintiffs' argument that they filed the Parrish and Roberts claims only after making an "extensive investigation" (Opposition at 8) is no excuse.  <u>See</u>, e.g., <u>In re Pozsga</u>, 158 F.R.D. 435, 437 (D. Ariz. 1994) ("The fact that counsel may have conducted a reasonable amount of legal research does not satisfy the requirements of Rule 11 if the conclusion drawn from that research is itself indefensible").

[4] In fact, as described in the declaration of Gene Upshaw, submitted herewith, the number of retired NFL players is at least 13,000, an amount consistent with the partial number of 7,561 cited by Mr. Parrish, which went back only to the 1960s.  <u>See</u> Declaration of Gene Upshaw in Further Support of Defendant's Motion for Sanctions, dated May 16, 2007, ¶ 3.

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

nonetheless alleged in their complaint, in bad faith, that the reference by Players Inc to 3,500 NFL players must constitute "all" retired NFL players, in a baseless effort to argue that Players Inc purports to represent Messrs. Parrish and Roberts, even without a GLA or other relationship. Plaintiffs knew that this allegation had no good faith basis, but they still included it in their complaint.

This is clearly not a case in which reasonable people could differ as to the legal or factual merits of a claim. Here, Parrish and Roberts filed their complaint knowing they had no valid legal claim, and that there was no colorable basis for the factual and legal allegations in their complaint.

## II. AN AWARD OF RULE 11 SANCTIONS IS SUPPORTED BY THE IMPROPER PURPOSE OF PLAINTIFFS AND THEIR COUNSEL

Plaintiffs argue that Players Inc "ignored" applicable Ninth Circuit law that sanctions can be awarded only if Players Inc first establishes that the complaint is objectively frivolous. Opposition at 13 (citing Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1366 (9th Cir. 1990)). This argument is a straw man, since Players never argued in its motions that sanctions would be appropriate if plaintiffs' claims had objective merit (they do not). Rather, consistent with Ninth Circuit law, which Players Inc cited in its moving brief (including the Townsend case), the clear evidence of plaintiffs' improper purpose, combined with the objectively baseless nature of the asserted claims, supports an award of sanctions. See Moving Br. at 12 ("The prominent place given to these legally irrelevant criticisms in the Amended Complaint, combined with the complete lack of factual and legal support for Plaintiffs' breach of fiduciary duty claims regarding Parrish and Roberts, demonstrates the improper purpose for which the Complaint and Amended Complaint were filed"); id. ("Thus, it appears that this lawsuit represents nothing more than the latest round in Parrish's media campaign and lobbying of Congress").[5] Indeed, the Townsend decision is clear that the "frivolousness and improper

---

[5] Plaintiffs argue that two cases from the Fifth and Eighth Circuits cited by Players Inc are inapposite, because the Ninth Circuit does not follow the view of those circuits that sanctions can be imposed under Rule 11 solely on the basis of an improper purpose. See Opposition at 13. However, Players Inc properly cited those cases for the principle that aggressively publicizing an otherwise baseless complaint is evidence of, and exacerbates, a Rule 11 violation. See Moving Br. at 13; see also id. at 12.

8

**DEWEY BALLANTINE LLP**
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

1  purpose inquiries overlap." 929 F.2d at 1365. That is the case here, where the objectively

2  baseless nature of the claims by Messrs. Parrish and Roberts is reinforced by the evidence of

3  plaintiffs' improper purpose in filing this case as part of a public campaign to harass the NFLPA.

4        Plaintiffs argue that the launch of their licensing organization in competition with

5  Players Inc at the same time as the filing of this action should be ignored because (i) the

6  organization assertedly is a not-for-profit organization, (ii) no one "receives" any compensation

7  from it, (iii) any future licensing activities would be done by it on a "non-profit basis in which all

8  retired players share equally," (iv) "counsel have also derived no financial gain from any

9  association" with the new licensing organization; and (v) the counsel who "serves in the strictly

10 administrative position of secretary-treasurer" is "being replaced." Opposition at 15-16. Players

11 Inc notes that these statements are all carefully parsed, and that any "non-profit" status of this

12 licensing company does not resolve the issue of the extent to which this licensing organization

13 will be in direct competition with Players Inc and thus benefit from this lawsuit at the expense of

14 the purported class.

15       Plaintiffs also argue that numerous public comments by plaintiffs and their

16 counsel regarding their true purpose should be ignored, because "none of those statements was

17 made in a paper filed with this Court" (Opposition at 14) and they are "*all* protected under the

18 First Amendment." Id. at 16 (italics in original). These arguments are red hearings. It is the

19 filing of the First Amended Complaint, not the out-of-court statements, that is the sanctionable

20 conduct. But that does not render the out of court statements irrelevant, because they are clear

21 evidence of plaintiffs' improper purpose in filing this lawsuit in the first place.[6] Under plaintiffs'

22 view of the law, a plaintiff could admit out of court to the media that a complaint he or she filed

23 had no merit, and was filed as an act of pure extortion, but that statement could not be considered

24 by the court on a sanctions motion because it did not appear in the complaint itself and is speech

---

[6] See, e.g., Townsend, 929 F.2d at 1366 (affirming the imposition of Rule 11 sanctions where "[i]t is apparent from the record that the court inferred from the fact that the allegations were frivolous and from the fact that Wilson & Reitman had been the law firm which opposed Wright in the state court action that the naming of Wilson was essentially vindictive"). In the Ninth Circuit, the standard to be applied in considering whether the plaintiff had an improper purpose is objective, not subjective. See In re Keegan Mgmt. Co. Securities Litig., 78 F.3d 431, 434 (9th Cir. 1996) ("We have subsequently reconfirmed Townsend's objective-objective approach").

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

protected by the First Amendment. Plaintiffs have every right under the First Amendment to make their statements to the press about the purpose of their complaint, but those statements are then admissions as to which the Court may take notice in considering whether an objectively baseless complaint was filed for an improper purpose.[7]

### III. RULE 11 SANCTIONS ARE APPROPRIATE WHERE EVEN ONE OF PLAINTIFFS' CLAIMS IS FRIVOLOUS

Plaintiffs argue that "monetary sanctions are recoverable only if the party seeking them can establish that the frivolous claim alone (as opposed to any meritorious claims) increased the cost of litigation." Opposition p.16. However, as Judge Fogel of this court recently held, "[t]he presence of one non-frivolous claim in the complaint does not insulate the remainder of the complaint from a motion for Rule 11 sanctions." Kinderstart.com v. Google Inc., No. C 06-2057 JF (RS), 2007 WL 831811, *1 (N.D. Cal. Mar. 16, 2007) (citing Townsend, 929 F.2d at 1364). The Ninth Circuit recently applied this basic principle. See Holgate v. Baldwin, 425 F.3d 671, 677 (9th Cir. 2005) ("[w]e have held that 'the mere existence of one non-frivolous claim' in a complaint does not immunize it from Rule 11 sanctions") (quoting Townsend, 929 F.2d at 1364). Both this court and the Ninth Circuit have also held that the appropriate amount of monetary sanctions under Rule 11 is that amount necessary to "deter repetition of such conduct or comparable conduct by others similarly situated." Kinderstart.com, 2007 WL 831811, *6 (quoting Fed. R. Civ. P. 11(c)(2)); see also Holgate, 425 F.3d at 680 (affirming sanctions and remanding for district court to determine if amount "is sufficient to deter Levinson or others like him").[8]

---

[7] Plaintiffs' briefing reinforces the point that this case was filed as a fishing expedition. See Opposition at 18 (asserting that counsel's statement merely evidences "the confidence that Plaintiffs' lawsuit will finally expose PLAYERS INC's unlawful tactics, previously kept hidden by PLAYERS INC's refusal to provide relevant information and/or promised revenue to retired NFL players"). As plaintiffs should know, they may file an action only after they have a good faith basis to allege facts that state a claim, rather than filing suit first with the hope of later finding facts to support a claim.

[8] The cases plaintiffs cite to support their argument are simply inapposite. In Lloyd v. Schlag, 884 F.2d 409 (9th Cir. 1989), the court affirmed sanctions for the premature filing of the complaint. Id. at 412-14. Instead of denying monetary sanctions related to some non-frivolous portion of the complaint, as plaintiffs suggest (see Opposition at 16-17), the Lloyd court only refused to award monetary sanctions associated with defending a later filed Rule 60(b) motion, which the court found not to be frivolous. Id. at 414. The other case plaintiffs cite merely states that a district court does not abuse its discretion where the effect and cost of a single frivolous

10

Reply in Support of Motion for Sanctions

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

1         Plaintiffs also are wrong when they assert that Players Inc cannot recover sanctions for their unjust enrichment and accounting claims. See Opposition at 16-17. This ignores the simple fact that plaintiffs' unjust enrichment and accounting claims do not have an independent legal existence, and cannot be asserted in the absence of a valid fiduciary duty claim, which could not possibly exist for Messrs. Parrish and Roberts. Without their fiduciary duty claims -- which are frivolous -- the claims of Messrs. Parrish and Roberts could never have been filed. Thus, plaintiffs should be held to account for all of the costs and expenses that Players Inc has been wrongfully forced to incur in responding to the frivolous Parrish and Roberts claims.

         In this context, plaintiffs' assertion that, even if the fiduciary duty claims were frivolous, Players Inc "could not show that this claim alone has increased its cost of litigation" (Opposition at 17) is absurd. Players Inc obviously has incurred and will incur substantial costs and expenses defending these baseless claims, including the costs of this motion. Players Inc will support the amount of those costs and expenses which plaintiffs should bear for filing frivolous claims regardless of their legal merits, both for political purposes and to benefit their own licensing organization.[9]

---

count can be separated from that of other counts. See Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988).

[9] Plaintiffs assert that, apart from Rule 11, sanctions are not appropriate under the Court's inherent powers because Players Inc has not shown that plaintiffs acted in bad faith or with recklessness. See Opposition at 17-18. Plaintiffs' claim that the only evidence of bad faith that Players Inc has proffered is the statement by plaintiffs' counsel indicating that the suit was initiated as a fishing expedition, but that characterizing counsel's comment in this way is "pure speculation" and that plaintiffs' claims are "well-founded." Id. at 18. As reviewed in detail above, and in Players Inc's moving papers, plaintiffs' repeated assertions that they believe their claims are well founded are not a substitute for good faith allegations that Parrish and Roberts ever had a relationship with Players Inc, or that Players Inc ever used any of their intellectual property, during the limitations period. Such allegations have not and cannot be made, and the filing of the Parrish and Roberts claims without them, as part of a political campaign against the NFLPA and with the launch of plaintiffs' licensing business, shows more than enough bad faith to support an award of sanctions. As to 28 U.S.C. § 1927, Players Inc is not pursuing sanctions under that provision at this time, because the only conduct at issue currently is the filing of an initial pleading.

11

**DEWEY BALLANTINE LLP**
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

## **CONCLUSION**

For all the foregoing reasons, and those set forth in Players Inc's moving papers, Players Inc respectfully requests that the Court enter a judgment: (1) declaring plaintiffs, their counsel of record Ronald S. Katz, and his law firm Manatt, Phelps & Phillips LLP, co-counsel Lewis T. LeClair and his law firm McKool Smith P.C., and co-counsel Samuel A. Mutch and his law firm Samuel A. Mutch P.A., to be in violation of Rule 11; and (2) pursuant to Rule 11, and/or the Court's inherent powers, striking the offending allegations in the First Amended Complaint, awarding Players Inc monetary sanctions in the amount of its reasonable attorney's fees and costs in presenting this motion, and any other relief that the Court may deem appropriate.

Date: May 17, 2007                                    DEWEY BALLANTINE LLP


BY:   s/ Jeffrey L. Kessler
Jeffrey L. Kessler
Attorneys for Defendant Players Inc

**DEWEY BALLANTINE LLP**
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225