

United States District Court

For the Northern District of California

1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   BERNARD PAUL PARRISH,                    No. C 07-00943 WHA
     HERBERT ANTHONY ADDERLEY,
11   WALTER ROBERTS III, on behalf of
     themselves and all others similarly
12   situated,                               **ORDER (1) DENYING DEFENDANT'S
                                             MOTION FOR JUDGMENT ON THE
13                Plaintiffs,                PLEADINGS; (2) DENYING
                                             DEFENDANT'S MOTION FOR
14         v.                                SANCTIONS; (3) DENYING
                                             DEFENDANT'S MOTION FOR
15   NATIONAL FOOTBALL LEAGUE                TRANSFER; AND (4) DENYING
     PLAYERS INCORPORATED d/b/a              PLAINTIFFS' MOTION TO APPOINT
16   PLAYERS INC., a Virginia                INTERIM CLASS COUNSEL**
     corporation,
17
                 Defendant.
18   _____/

19

20                          **INTRODUCTION**

21      In this putative class action dealing with licensing revenue for retired professional

22   football players, defendant moves for judgment on the pleadings pursuant to Rule 12(c), for

23   sanctions against plaintiffs and plaintiffs' counsel, and to transfer this action to the United

24   States District Court for the Eastern District of Virginia or alternatively, the United States

25   District Court for the District of Columbia. Plaintiffs move to appoint Manatt, Phelps &

26   Phillips LLP as interim class counsel. In response to defendant's motion for judgment on the

27   pleadings, plaintiffs have requested leave to file an amended complaint. They will be allowed

28   to do so. As to defendant's motion for sanctions, defendant has not shown the complaint to be

     so frivolous as

**United States District Court**
For the Northern District of California

1  to warrant sanctions under Rule 11 or the Court's inherent powers.  Finally, it is unnecessary at

2  this stage to appoint interim class counsel because this is not a particularly large or complex

3  action.  Accordingly, defendant's motion for judgment on the pleadings is **DENIED** without

4  prejudice to its being brought again after plaintiffs file an amended complaint, defendant's

5  motion for sanctions is **DENIED**, and defendant's motion to transfer is **DENIED**.  Plaintiffs'

6  motion to appoint interim class counsel is **DENIED**.

**STATEMENT**

8      Plaintiffs are retired professional football players.  Plaintiff Bernard Paul Parrish played

9  professionally in the National Football League from 1959 to 1966 (Compl. ¶8).  He is a resident

10  of Florida (*ibid*.).  Plaintiff Herbert Anthony Adderley played professionally in the NFL from

11  1964 to 1970 and is currently a resident of New Jersey (Compl. ¶ 9).  Plaintiff Walter Roberts

12  III played professionally in the NFL from 1961 to1972 and currently resides in Northern

13  California (Compl. ¶ 10).  Plaintiffs purport to bring this action on behalf of a class of retired

14  NFL players.

15      National Football League Players Association is the union that represents active NFL

16  players (*id*. at Exh. G).  The NFLPA is not a party to this action.  Defendant Players Inc is 79%

17  owned by the NFLPA.  Defendant is incorporated in Virginia and is a for-profit company that

18  negotiates and facilitates group licensing and marketing opportunities for active and some

19  retired NFL players (*id*. at ¶ 11).   It deals in retail licensing, corporate sponsorships,

20  promotions, media projects and publishing (*id*. at Exh. A).   The NFLPA has its principal place

21  of business in Washington, D.C. (Nahra Decl. ¶ 3).  Most of Players Inc's licensing efforts are

22  run out of that office (Upshaw Decl. ¶ 4).

23      The NFLPA offers retired NFL players an opportunity to sign group licensing

24  agreements.  Under these agreements, the player agrees to assign the rights to his name, image

25  and other attributes for group licensing to video game companies, trading card companies and

26  other sports merchandising companies (Compl. Exh. D).  The NFLPA then assigns these

27  agreements to Players Inc. to pursue group licensing opportunities (*ibid*.).  The agreements are

28  not exclusive, and retired players may enter into other licensing or promotional opportunities.

1  Retired players who sign group licensing agreements may have an opportunity to receive

2  licensing fees for their images or appearance fees based on the agreements.

3      Plaintiffs do not allege that Parrish or Roberts ever signed group licensing agreements or

4  participated in the Players Inc licensing programs. Adderley, however, is alleged to have

5  signed agreements and participated in licensing programs, receiving upwards of $13,000 in

6  payments. The last agreement he signed expired at the end of 2005 (Upshaw Decl. ¶ 9–10).

7      Over the years, Parrish has publicly criticized the manner in which the NFL has treated

8  its retired players particularly on the issues of compensation and pensions. The day that the

9  first complaint in this action was filed, plaintiffs' attorney Ronald S. Katz stated in an interview

10  with the New York Times that "[w]e're picking up a rock and seeing what's crawling

11  underneath" (O'Kelly Sanctions Decl. Exh. A). Shortly thereafter, Katz and his law firm,

12  Manatt, Phelps & Phillips LLP, announced that they were involved in the formation of an entity

13  known as "Retired Professional Football Players for Justice" (*id*. at Exh. B). One of the group's

14  purposes was to enter into group licensing contracts with retired players possibly in competition

15  with Players Inc (*ibid*.). Parrish and Adderley were named on the group's website as

16  co-presidents (*id*. at Exh. D). Ronald S. Katz and Lewis LeClair of McKool Smith were named

17  as "outside litigation counsel" (*ibid*.).

18      Plaintiffs filed this action on February 14, 2007, alleging claims of breach of fiduciary

19  duty, unjust enrichment, and accounting. More specifically, plaintiffs alleged that Players Inc

20  breached a fiduciary duty by not providing adequate disclosures regarding licensing and not

21  diligently pursuing plaintiffs' marketing and licensing rights. Plaintiffs filed an amended

22  complaint on February 23, 2007. Defendant answered on April 2, 2007.

23                                    **ANALYSIS**

24      Defendant has filed three motions: a motion for judgment on the pleadings, a motion for

25  sanctions under Rule 11 or the Court's inherent powers and a motion to transfer. Plaintiffs have

26  filed a motion to appoint Manatt, Phelps & Phillips LLP as interim class counsel in this action.

27  These motions will be addressed in that order.

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    **1.    DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS.**

2    "After the pleadings are closed but within such time as not to delay the trial, any party

3    may move for judgment on the pleadings."  FRCP 12(c).  A motion for judgment on the

4    pleadings is evaluated according to virtually the same legal standard as a motion to dismiss

5    under Rule 12(b)(6), in that the pleadings are construed in the light most favorable to the

6    non-moving party.  *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1130-31 (N.D. Cal.

7    2005).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

8    detailed factual allegations, a plaintiffs' obligation to provide the 'grounds' of his 'entitlement

9    to relief' requires more than labels and conclusions, and a formulaic recitation of the elements

10    of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 125 S.Ct. 1955, 1964–65

11    (May 21, 2007) (internal citations omitted).  "Conclusory allegations of law and unwarranted

12    inferences" are insufficient to defeat a Rule 12 motion.  *Epstein v. Washington Energy Co.*, 83

13    F.3d 1136, 1140 (9th Cir. 1996).  "Judgment on the pleadings is proper when the moving party

14    clearly establishes on the face of the pleadings that no material issue of fact remains to be

15    resolved and that it is entitled to judgment as a matter of law."  *Hal Roach Studios, Inc. v.

16    Richard Feiner and Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

17    **A.    Applicable Law.**

18    First, parties disagree on whether Virginia law or California law applies to this action.

19    When a federal district court is sitting in a diversity action, it must apply the choice-of-law rules

20    of the state in which it sits.  *Klaxon Co. v. Stentor Elec. Manufacturing Co., Inc.*, 313 U.S. 487,

21    496 (1941).  California courts apply a governmental interest approach.  *ABF Capital Corp. v.

22    Grove Properties*, 126 Cal. App. 4th 204, 215 (2005).  Under the governmental interests test,

23    the Court must consider: (1) whether the states' laws differ; (2) each state's interest in having its

24    laws applied; and (3) whether there is a conflict between application of the laws.  *Kearney v.

25    Salomon Smith-Barney, Inc.*, 39 Cal. 4th 95, 107–08 (2006).

26    The thrust of defendant's motion for judgment on the pleadings is that plaintiffs have

27    not pleaded a claim for breach of fiduciary duty.  Defendant, in its reply, identifies two ways in

28    which the laws of Virginia and California differ on breach of fiduciary duty.  First, both

4

United States District Court

For the Northern District of California

1    jurisdictions recognize fiduciary duty based on a theory of agency by estoppel.  In Virginia,

2    estoppel must be proven by clear and convincing evidence.  *Employers Comm. Union Ins. Co.*

3    *of Am. v. Great Am. Ins. Co.*, 200 S.E.2d 560, 564 (Va. 1973).  In California, agency by

4    estoppel can be proven by a preponderance of the evidence.  *See Golden Day Schools, Inc. v.*

5    *Dept. of Ed.*, 69 Cal. App. 4th 682, 692–93 (1999).  Second, Virginia law caps punitive damage

6    awards at $350,000.  Va. Code § 8.01-38.1.  No such cap exists in California.

7         Neither of these perceived differences in the laws of the two states is implicated in the

8    extant motion.  Burdens of proof for the elements of a fiduciary relationship will probably only

9    come up at trial.  Punitive damages are further away still; they will only be addressed if there is

10   a verdict for plaintiff.  Furthermore, defendant admits that for purposes of this motion, the law

11   of California is substantially the same as the law of Virginia on fiduciary duty (Br. 6 n.5).  Thus

12   it is difficult to see that there is an actual conflict of laws, at least at this time.  In turn, it is

13   difficult to see that either state has an interest in applying its law.  When there is no true conflict

14   of laws, the forum may apply its own law.  *Ins. Co. of N. Am. v. Fed. Express Corp.*, 189 F.3d

15   914, 921 (9th Cir. 1999).  For the purposes of this motion, California law applies.

16                        **B.    Breach of Fiduciary Duty.**

17        Plaintiffs allege that Players Inc breached a fiduciary duty to all represented players by

18   failing to provide information on its licensing practices and failing to pursue licensing

19   opportunities in a fair and equitable manner.  "A fiduciary relationship is a recognized legal

20   relationship such as a guardian and ward, trustee and beneficiary, agent and principal, or

21   attorney and client."  *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 271

22   (Ct. App. 2003).  "Before a person can be charged with a fiduciary obligation, he must either

23   knowingly undertake to act on behalf and for the benefit of another, or enter into a relationship

24   which imposes that undertaking as a matter of law."  *Comm. on Children's Television v. Gen.*

25   *Foods Corp.*, 35 Cal. 3d 197, 221 (1983).

26        Agency relationships may be inferred or implied from the conduct of parties and

27   circumstances surrounding the events.  *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1579–80

28   (Ct. App. 1994).  Under principles of agency by estoppel "when one assumes to act as an agent

5

United States District Court

For the Northern District of California

1  for another, he may not, when challenged for these acts, deny his agency . . . ." *People v.*

2  *Robertson*, 6 Cal. App. 514, 517 (1907).  Mere contractual relationships, without more, do not

3  give rise to fiduciary relationships. *Oakland Raiders v. Nat'l Football League*, 131 Cal. App.

4  4th 621, 633–34 (Ct. App. 2005).

5      In their complaint, plaintiffs allege that Players Inc held itself out as representing all

6  retired professional players, and accordingly, was acting as an agent for all represented players

7  (Compl. ¶¶ 1–3).  Appended to the complaint is a letter from Players Inc which plaintiffs claim

8  shows that Players Inc purported to represent all retired players.  The address block is redacted

9  from the letter, and plaintiffs do not allege that any of them received such a letter.  A portion of

10  the letter reads "PLAYERS INC'S licensees such as EA Sports are permitted to secure retired

11  NFL player rights only from PLAYERS INC, not from any other source, contrary to what

12  others may have told you.  This offer will be your only opportunity to participate in NFL player

13  video games and get paid" (Compl. Exh. B).

14      The letter makes clear that in order to get revenues from the license with EA Sports,

15  former players will have to sign a contract with Players Inc.  The letter implies that EA Sports

16  can go to Players Inc only for licenses to use the names and images of NFL alumni.  Read

17  charitably, it suggests that Players Inc has effectively cut off any avenues for EA Sports and

18  former NFL players to deal with one another directly.  Another attachment to the complaint, a

19  letter regarding group licenses, states that "[t]his agreement is non-exclusive and will not

20  interfere with any other licensing or endorsement opportunities that you may have" (Compl.

21  Exh. D).  Though somewhat contradictory to the first letter, it still appears that Players Inc was

22  at least attempting to interpose itself between former players and potential licensees.

23      Next, plaintiffs argue that Players Inc had a special or confidential relationship with

24  retired NFL players that gave rise to a fiduciary relationship.  Such a confidential relationship

25  can occur where "(1) the vulnerability of one party to the other, (2) results in the empowerment

26  of the stronger party by the weaker which (3) empowerment has been solicited or accepted by

27  the stronger party and (4) prevents the weaker party from effectively protecting itself." *Richelle*

28  *L.*, 106 Cal. App. 4th at 272.

6

United States District Court

For the Northern District of California

1    Plaintiffs argue that they were vulnerable to Players Inc because it held itself out to

2  potential licensees as the only entity to deal with to get the rights to their names and likenesses.

3  Thus, agreements with Players Inc were the only means by which they could capitalize on the

4  licensing of their name and likeness.  They could not effectively protect themselves because

5  they were, in effect, forced to accept Players Inc's terms or get nothing.

6    At this point, plaintiffs have expressed a desire to file a second amended complaint.

7  Accordingly, defendant's motion for judgment on the pleadings is **DENIED** without prejudice to

8  being brought again after plaintiffs file a second amended complaint.  This order does not

9  address plaintiffs' claims for unjust enrichment and an accounting because they depend in large

10  part on the claim for breach of fiduciary duty.  In opposing this motion, plaintiffs attached a

11  proposed amended complaint to a declaration.  They will be given the option of filing that

12  complaint, however, plaintiffs are advised to plead their best possible case in the second

13  amended complaint, taking nothing for granted.

14    Defendant also moved for sanctions under Rule 11, 28 U.S.C. 1927, and the Court's

15  inherent powers for filing a frivolous complaint.  The upshot of defendant's argument for

16  sanctions is that the complaint was filed for an improper purpose — continuing a public

17  campaign to raise awareness about the NFL's treatment of its alumni.  Plaintiffs will be granted

18  leave to file an amended complaint, so the merits of plaintiffs' claims have not yet been

19  reached.  This order cannot yet determine if plaintiffs' complaint was so frivolous as to warrant

20  sanctions.  Accordingly, defendant's motion for sanctions is **DENIED**.

21    **2.    DEFENDANTS' MOTION TO TRANSFER.**

22    "For the convenience of parties and witnesses, in the interest of justice, a district court

23  may transfer any civil action to any other district or division where it might have been brought."

24  28 U.S.C. 1404(a).  This section's purpose is "to prevent the waste of time, energy, and money

25  and to protect litigants, witnesses and the public against unnecessary inconvenience and

26  expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation omitted).  A

27  district court has discretion "to adjudicate motions for transfer according to an individualized,

28  case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*,

7

United States District Court
For the Northern District of California

1    487 U.S. 22, 29 (1988) (citation omitted).  The district court must consider both public factors

2    which go to the interests of justice, and private factors, which go to the convenience of the

3    parties and witnesses.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th

4    Cir. 1986).

5          Defendant moves to transfer this action either to the United States District Court for the

6    District of Columbia or the United States District Court for the Eastern District of Virginia.

7    Plaintiff concedes that this action could have been brought in either of those districts, thus this

8    order now turns to the convenience and fairness factors.

9                    **A.     Convenience and Fairness Factors.**

10         The district court must consider private convenience and fairness factors, including ease

11   of access to sources of proof, plaintiff's choice of forum, relative convenience to parties, and

12   relative convenience to witnesses.  *Decker Coal*, 805 F.2d at 843.

13         The first factor largely involves the location of relevant sources of proof.  With

14   technological advances in document storage and retrieval, transporting documents does not

15   generally create a burden.  *Vitria Tech. Inc. v. Cincinnati Ins. Co.*, 2005 WL 2431192, *3 (N.D.

16   Cal. 2005).  Defendant argues that the relevant sources of proof will largely be the business

17   records and documents stored at Players Inc's primary place of business in the District of

18   Columbia.  Any files that plaintiffs would have would be in various locations across the

19   country.  Defendant does not contend that transporting documents or converting them into

20   electronic form would cause them a significant hardship.  This factor is of diminished

21   importance and neither favors nor disfavors transfer.

22         Normally, a plaintiff's choice of forum is given considerable deference.  "Although

23   great weight is generally accorded to a plaintiff's choice of forum, when an individual brings a

24   derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."

25   *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (internal citations omitted).  Plaintiffs here

26   purport to represent a nationwide class of former professional football players.  One named

27   plaintiff resides in this district while the other two live in Florida and New Jersey.  Defendant

28   argues that because the class will include thousands of former professional football players

8

United States District Court
For the Northern District of California

1   spread throughout the country, less deference should be given to plaintiff's choice of forum. No

2   class has yet been certified in this action. If the class is certified, and Parrish, Adderley and

3   Roberts are certified as class representatives, they will still bear a great deal of responsibility in

4   representing the class. In contrast, the thousands of other putative class members will not need

5   to appear in this action. Some of them may decide to intervene at some point, however, that has

6   not yet happened. It remains that plaintiffs chose to bring this action in this forum, so plaintiffs'

7   choice of forum still deserves deference, and this factor weighs against transfer.

8          Turning now to the convenience of the parties, defendants point out that Players Inc is

9   incorporated in Virginia and has its principal place of business in the District of Columbia.

10  Transferring this action would certainly be more convenient for defendant. It also points out

11  that two of the named plaintiffs reside on the East Coast, one in New Jersey and one in Florida.

12  Even if this action is transferred to the District of Columbia or the District of Virginia, the

13  named plaintiffs on the East Coast will have to travel. The distance may be shorter, but it will

14  still require some time and expense. These plaintiffs have already chosen the Northern District

15  of California as their forum, meaning that they have tacitly agreed to litigating here.

16         Plaintiffs also point out that the NFLPA has an office in San Francisco (Hilbert Decl.

17  Exh. 1). Because the NFLPA has a presence in the Northern District of California, so the

18  argument goes, litigating this action there will be less of a hardship for Players Inc. Plaintiffs

19  concede that the NFLPA is not named as a party in this action, but argue that the NFLPA owns

20  a very large chunk of Players Inc and that the two organizations have a common officer in Gene

21  Upshaw (*id*. at Exhs. 1, 3). Neither party reveals where Upshaw is located. Defendant argues

22  that this office's existence is irrelevant. Mary Moran, the NFLPA's human resources director,

23  declares that no Players Inc employee has ever worked out of the San Francisco office and that

24  it currently houses no full-time employees (Moran Decl. ¶¶ 3–5). The NFLPA has a presence

25  on the West Coast, but the majority of defendant's operations occur on the East Coast. Overall,

26  defendants are largely located on the East Coast, while a named plaintiff resides in California.

27  Convenience of the parties is neutral toward transfer.

28

9

United States District Court

For the Northern District of California

1    Finally, the convenience to potential witnesses must be considered.  Courts must

2  consider the effect of transfer on the availability of witnesses to testify at trial, particularly for

3  third-party witnesses.  *DeFazio v. Hollister Employee Ownership Trust*, 406 F. Supp. 2d 1085,

4  1090 (E.D. Cal. 2005).  Though discovery is still in the early stages of this action, defendant

5  contends that the most important witnesses in this action will likely be its current and former

6  employees responsible for licensing.  By trial, this list will be pared down considerably.  Still,

7  most of these witnesses reside near the District of Columbia.  In response, plaintiffs argue that

8  because at least some of the witnesses are still defendant's employees, defendant can compel

9  their attendance at trial.  This is true; defendant can likely secure the attendance of the witnesses

10  they wish to call at trial.  If these employees' testimony is not favorable to defendants, however,

11  defendants are under no obligation to make them appear where they cannot be compelled to

12  testify by the Court's subpoena power.  Plaintiffs could still present their testimony through

13  deposition, but live testimony is favored as it is easier to follow and to comprehend.  The facts

14  might not be fully developed at the time of the deposition, so it may not cover every topic on

15  which the plaintiffs want to question the witness.

16    Third-party witnesses, including defendant's former employees, are an important factor.

17  Neither side will be able to guarantee their appearance at trial unless they are within the Court's

18  subpoena range.  Plaintiffs identify some key third-party witnesses residing in California.

19  These include Doug Allen, former president of Players Inc, and Pat Allen, former vice-president

20  of Players Inc.  They both now reside in Los Angeles (Hilbert Decl. ¶ 4).  Additionally, Howard

21  Skall, defendant's former vice president, is now employed by a company located in Los

22  Angeles (*id*. at ¶ 5).  Defendants present Skall's own declaration in which he states that he

23  resides in Maryland near the District of Columbia (Skall Decl. ¶ 2).  Doug and Pat Allen, as

24  former officers of Players Inc, would likely have considerable information on defendant's

25  licensing practices, making them important potential witnesses.  Because they reside in

26  California, they would be subject to subpoena power and could be compelled to appear to

27  testify at trial in this district.  They could *not* be made to appear in the District of Columbia or

28

10

United States District Court

For the Northern District of California

1    the Eastern District of Virginia.  Because it is preferable that witnesses appear live rather than

2    by deposition, the location of third-party witnesses favors transfer.

3         Plaintiffs also point out that Electronic Arts, a video game company and one of Players

4    Inc's largest licensees, is located in this district (*id*. at ¶ 6).  It too would be likely to have some

5    important information regarding the terms of the licenses it entered into with Players Inc.  Thus,

6    plaintiffs have identified a number of third-party witnesses who could be made to appear in this

7    district, but not in either proposed transferee district.  Accordingly, the location of witnesses,

8    particularly third-party witnesses, favors keeping this action in the Northern District of

9    California.  Taking into account all of the convenience and fairness factors, those factors

10   militate against transfer.

11            **B.    Interests of Justice.**

12        A district court hearing a motion to transfer must also consider public-interest factors

13   such as relative degrees of court congestion, local interest in deciding local controversies,

14   potential conflicts of laws, and burdening citizens of an unrelated forum with jury duty.  *Decker*

15   *Coal*, 805 F.2d at 843.

16        As to court congestion, defendants point out that judges in both the Eastern District of

17   Virginia and the District of Columbia have fewer cases pending before them than judges in the

18   Northern District of California.  Defendants also point out the Eastern District of Virginia is

19   known as the "rocket docket" because of its reputation for getting cases to trial quickly.  On the

20   other hand, plaintiffs point out that the median time to trial in the Northern District of California

21   is 27.5 months, while the median time to trial in the District of Columbia is 34.5 months, almost

22   three years.  The undersigned's own practice, however, is to bring civil cases to trial within 12

23   to 14 months of the first appearance.

24        Turning now to local interest, defendant argues that the District of Columbia has a

25   considerable local interest in this dispute as most of Players Inc's licensing activities were

26   carried out there.  Virginia also has an interest in this dispute because defendant is a Virginia

27   corporation.  Plaintiffs contend that the locus of this dispute resides with the named plaintiffs

28   themselves because the alleged injuries accrued to them.  Additionally, plaintiffs chose this

11

**United States District Court**
For the Northern District of California

1  forum, and one of the named plaintiffs has significant ties to Northern California.  If a

2  nationwide class is certified, plaintiffs will represent a class of individuals across the nation

3  who were harmed by defendant's conduct.  It is true that defendant's conducted most of their

4  licensing activities from their  offices, but they were acting on behalf of former professional

5  football players across the nation.  Furthermore, it is likely that Players Inc entered into

6  licensing agreements with organizations across the country.  It is difficult to say, precisely, that

7  the District of Columbia or the Eastern District of Virginia has an interest in this action over

8  and above any other district.  This factor does not favor transfer.

9       By extension, burdening jurors of a forum unconnected to the action disfavors transfer.

10  Defendant has shown no great local interest in the dispute for the District of Columbia or the

11  Eastern District of Virginia.  On the other hand, one of the named plaintiffs resides in the

12  Northern District of California and has considerable ties to this area.  Thus, this factor does not

13  favor transfer.

14       Finally, as to potential conflicts of laws, plaintiffs and defendant disagree as to whether

15  California or Virginia state law should apply to this action.  As described above in defendant's

16  motion for judgment of the pleadings, there appears to be little conflict between the two sets of

17  laws, at least for purposes of this motion.  With regard to a breach of duty claim, the differences

18  that defendant identifies involve the ultimate burden of proof for agency by estoppel and

19  whether or not punitive damages are capped.  To the extent that there is a conflict, it will exist

20  whether or not this action is transferred.  Thus, this factor is neutral, neither favoring nor

21  disfavoring transfer.  Taking all of the interests of justice factors into consideration, however,

22  they do not, on balance, favor transferring this action.

23       In sum, both the private and public factors militate against transferring this action to the

24  Eastern District of Virginia or the District of Columbia.  Defendant has not made the strong

25  showing necessary to warrant transfer.  Accordingly, defendant's motion to transfer this action

26  is **DENIED**.

27

28

12

**United States District Court**
For the Northern District of California

1    **3.    PLAINTIFFS' MOTION TO APPOINT INTERIM CLASS COUNSEL.**

2       Finally, plaintiffs move to appoint Manatt, Phelps & Phillips LLP as interim class

3    counsel.  Under Rule 23(g)(2)(A), the district court is permitted to appoint interim counsel to

4    act on behalf of a putative class before determining whether to certify a class.

5       The appointment of interim class counsel is discretionary by the Court and is

6    particularly suited to complex actions.  The *Manual for Complex Litigation Fourth* § 21.11

7    (2004) explains:

8           If the lawyer who filed the suit is likely to be the only lawyer
            seeking appointment as class counsel, appointing interim class
9           counsel may be unnecessary.  If, however, there are a number of
            overlapping, duplicative, or competing suits pending in other
10          courts, and some or all of those suits may be consolidated, a
            number of lawyers may compete for class counsel appointment.
11          In such cases, designation of interim counsel clarifies
            responsibility for protecting the interests of the class during
12          precertification activities . . . .

13   Here, there is a single action and a single law firm who has moved to be appointed as interim

14   counsel.  There are not multiple complaints, nor is there a gaggle of law firms jockeying to be

15   appointed class counsel.  No consolidation with other actions is on the horizon.  A single group

16   of counsel represents that class, so responsibility for protecting the class' rights is clear.

17   Because of this there is no need to appoint interim class counsel at this time.  Accordingly,

18   plaintiffs' motion to appoint interim class counsel is **DENIED**.

19                                    **CONCLUSION**

20      For all of the above-stated reasons, defendant's motion for judgment on the pleadings is

21   **DENIED**.  Plaintiffs will be granted leave to file an amended complaint.  This should be done no

22   later than **JUNE 21, 2007**.  Defendant's motion for sanctions is **DENIED**.  Defendant's motion to

23   transfer venue is **DENIED**.  Plaintiffs' motion for appointment of interim class counsel is

24   **DENIED**.

25      **IT IS SO ORDERED.**

26

27   Dated:  June 4, 2007.

                                    _____
28                                  WILLIAM ALSUP
                                    UNITED STATES DISTRICT JUDGE