Mark Malin (Bar No. 199757)
mmalin@deweyballantine.com
DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303
Tel: (650) 845-7000; Fax: (650) 845-7333

Jeffrey L. Kessler (*pro hac vice*)
jkessler@deweyballantine.com
David G. Feher (*pro hac vice*)
dfeher@deweyballantine.com
Eamon O'Kelly (*pro hac vice*)
eokelly@deweyballantine.com
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 259-8000; Fax: (212) 259-6333

Kenneth L. Steinthal (*pro hac vice*)
kenneth.steinthal@weil.com
Claire E. Goldstein (Bar No. 237979)
claire.goldstein@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000; Fax: (650) 802-3100

Bruce S. Meyer (*pro hac vice*)
bruce.meyer@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000; Fax: (212) 310-8007

Attorneys for Defendant
National Football League Players Association

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC,<br><br>Defendants. | Case No. C 07 0943 WHA<br><br>**NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Date: August 16, 2007<br>Time: 8:00 am<br>Ctrm: 9<br>Judge: William H. Alsup |

NFLPA's Motion to Dismiss the Second Amended Complaint                    Civ. Action No. C07 0943 WHA

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 16, 2007 at 8 a.m., or as soon thereafter as this matter may be heard, in Courtroom 9 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant National Football League Players Association (the "NFLPA") will and hereby does move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all claims against the NFLPA alleged by Plaintiffs Bernard Paul Parrish ("Parrish"), Herbert Anthony Adderley ("Adderley"), and Walter Roberts III ("Roberts") (collectively "Plaintiffs") in their Second Amended Complaint (the "Second Amended Complaint" or "SAC").

First, Plaintiffs' unfair competition claims against the NFLPA under California Business and Professions Code § 17200 are based on allegations that the NFLPA monopolizes NFL player group licensing rights by virtue of its position as the union for all active NFL players and the terms of the collective bargaining agreement ("CBA") between the National Football League and the NFLPA. All such state law claims directed at the NFLPA's collective bargaining status and CBA rights are preempted under the federal labor laws. Plaintiffs also fail to allege facts to satisfy any of the legal requirements for claiming an "unlawful" or "fraudulent" business practice in violation of Section 17200, or even for asserting California subject matter jurisdiction under that statute.

Second, as to Plaintiffs' breach of contract claims, the Second Amended Complaint does not identify the terms of any particular group licensing agreement ("GLA") any of the Plaintiffs was a party to with the NFLPA during the applicable four year statute of limitations period, or how the NFLPA allegedly breached those terms. To the contrary, the only GLAs specifically identified in the Second Amended Complaint are either from 1998 – and thus clearly time barred – or from a "Sample GLA" that Plaintiffs do <u>not</u> allege they signed.

Third, all of Plaintiffs' other claims against the NFLPA – i.e., unjust enrichment, breach of fiduciary duty, and for an accounting – must be dismissed for the same reasons set forth in the Motion to Dismiss filed by co-defendant National Football League Players Incorporated d/b/a Players Inc. All of these arguments are incorporated herein by reference.

The NFLPA's Motion to Dismiss is based upon this Notice of Motion, and the accompanying Memorandum of Points and Authorities.

Date: July 6, 2007

DEWEY BALLANTINE LLP

BY:   /S/ Jeffrey L. Kessler
      Jeffrey L. Kessler

Attorneys for Defendant
National Football League Players Association

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................................1

STATEMENT OF FACTS ............................................................................................................3

ARGUMENT .................................................................................................................................4

I. PLAINTIFFS' UNFAIR BUSINESS PRACTICES CLAIMS AGAINST THE NFLPA FOR ALLEGEDLY ABUSING PLAYER RIGHTS "UNDER THE CBA" ARE PREEMPTED BY FEDERAL LABOR LAW ..............................................4

II. PLAINTIFFS' SECTION 17200 CLAIMS AGAINST THE NFLPA ALSO FAIL FOR NUMEROUS OTHER REASONS ..........................................................7

III. PLAINTIFFS' BREACH OF CONTRACT CLAIMS AGAINST THE NFLPA MUST ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM ....................8

IV. ALL OF PLAINTIFFS' OTHER CLAIMS AGAINST THE NFLPA MUST ALSO BE DISMISSED ....................................................................................11

CONCLUSION ............................................................................................................................12

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

# TABLE OF AUTHORITIES

Page

**Cases**

Aguilera v. Pirelli Armstrong Tire Corp.,
    223 F.3d 1010 (9th Cir. 2000) .................................................................. 5, 6

Am. Fed'n of Musicians v. Carroll,
    391 U.S. 99 (1968) ............................................................................................ 5

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007) .................................................................................. 9, 11

Black v. Nat'l Football League Players Ass'n,
    87 F. Supp. 2d 1 (D.D.C. 2000) ............................................................................ 7

Boyle v. Madigan,
    492 F.2d 1180 (9th Cir. 1974) ............................................................................ 10

Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,
    222 Cal. App. 3d 1371 (1990) ......................................................................... 8, 10

Caterpillar Inc. v. Williams,
    482 U.S. 386 (1987) .................................................................................... 5, 6

Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100,
    421 U.S. 616 (1975) ........................................................................................ 5

Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co.,
    29 Cal. 4th 189 (2002) ...................................................................................... 8

Elec. Workers v. Hechler,
    481 U.S. 851 (1987) ........................................................................................ 5

Falstaff Brewing Co. v. Stroh Brewery Co.,
    628 F. Supp. 822 (N.D. Cal. 1986) ..................................................................... 10

Foley v. Bates,
    No. C 07-0402 PJH, 2007 WL 1430096 (N.D. Cal. May 14, 2007) ......................... 11

Gridiron.com v. Nat'l Football League Players Ass'n,
    106 F. Supp. 2d 1309 (S.D. Fla. 2000) ................................................................. 6

H.A. Artists & Assocs. v. Actors' Equity Ass'n,
    451 U.S. 704 (1981) ........................................................................................ 5

Harris v. Rudin, Richman & Appel,
    74 Cal. App. 4th 299 (1999) ........................................................................ 8, 10

Holmes v. Nat'l Football League,
    939 F. Supp. 517 (N.D. Tex. 1996) ...................................................................... 7

McKeever v. Block,
    932 F.2d 795 (9th Cir. 1991) ............................................................................ 11

Putkowski v. Irwin Home Equity Corp.,
   423 F. Supp. 2d 1053 (N.D. Cal. 2006) ... 10

Rambus Inc. v. Samsung Electronics Co., Ltd., No. C-05-02298 RMW, 2007 WL 39374,
   at *6 (N.D. Cal. Jan. 4. 2007) ... 8

Smith v. Houston Oilers, Inc.,
   87 F.3d 717 (5th Cir. 1996) ... 7

United States v. Hutcheson,
   312 U.S. 219 (1941) ... 5

United States v. Tulare Lake Canal Co.,
   535 F.2d 1093 (9th Cir. 1976) ... 11

Vargas v. Geologistics Americas, Inc.,
   284 F.3d 232 (1st Cir. 2002) ... 6

**Statutes and Rules**

Fed. R. Civ. P. 9(b) ... 7

Fed. R. Civ. P. 12(b)(6) ... passim

15 U.S.C. § 17 (2006) ... 5

29 U.S.C. § 185 (2006) ... 4-7

Cal. Bus. & Prof. Code § 17200 (2006) ... 2, 4, 7

Cal. Code Civ. Proc. § 337 (2006) ... 8

**Secondary Sources**

N. Peter Lareau, 2 Labor & Employment Law § 43.02 (2005) ... 5

William C. Holmes, Antitrust Law Handbook § 8.3 (2006) ... 5

## MEMORANDUM AND POINTS OF AUTHORITIES

This is the fourth complaint that Plaintiffs have submitted in this action. The three prior complaints were asserted solely against Players Inc – the licensing affiliate of the National Football League Players Association ("NFLPA") – and were either withdrawn, or offered but not filed. Plaintiffs' earlier complaints were primarily a litany of legally deficient assertions that Players Inc (but not the NFLPA) breached alleged fiduciary duties to Plaintiffs and other retired players relating to the group licensing activities of Players Inc, but not based upon their having signed any Group Licensing Authorization ("GLA"). For example, Plaintiffs asserted breach of fiduciary claims against Players Inc even though two of the three Plaintiffs had no claimed GLA at all with Players Inc during the limitations period, and there was no allegation that Players Inc ever used any of Plaintiffs' intellectual property rights without compensation during the limitations period.

Now, given a last chance by the Court to give it their best shot, Plaintiffs have filed a Second Amended Complaint ("SAC"), in a fourth attempt to concoct a claim that can justify the discovery fishing expedition and public harassment that is the true object of this action. This time, Plaintiffs have joined the NFLPA – the union for all active NFL players – as an additional defendant. However, there is no more basis for Plaintiffs to assert a claim against the NFLPA related to retired player group licensing than there is for Plaintiffs to assert such a claim against Players Inc.

Indeed, the new claim in the Second Amended Complaint that the NFLPA has engaged in unfair competition in violation of California Business and Professions Code § 17200 – because the NFLPA is "unfairly dominating and controlling (or attempting to control) licensing and marketing opportunities for NFL player rights" – is expressly premised on the NFLPA's collective bargaining role and is thus preempted by federal labor law. Specifically, Plaintiffs have alleged that the NFLPA's purported domination and control over player marketing rights occurred "under the Collective Bargaining Agreement with the NFL." SAC ¶ 9; see also id. ¶ 30 ("the NFLPA dominates the market for NFL player marketing by virtue of its representation of

almost all current NFL players under the CBA"). It is well established that federal labor law completely preempts such state law unfair competition claims directed at union activities.[1]

Apart from federal labor law preemption, Plaintiffs' Section 17200 claims against the NFLPA also fail for the same litany of legal defects that doom Plaintiffs' Section 17200 claims against Players Inc. See Players Inc's Notice of Motion and Motion to Dismiss the Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), dated July 6, 2007 ("Players Inc Br."), § II. Simply put, Plaintiffs have failed to allege the most rudimentary facts necessary to plead either unlawful or fraudulent business activities, and most of the acts they point to – such as the "Gene Upshaw letter" that they relied upon before this Court – are completely time barred.

There is similarly no basis for Plaintiffs' breach of contract claims against the NFLPA. Plaintiffs do not identify the terms of any particular GLA any of them was a party to with the NFLPA within the four year limitations period, which only extends to February 2003, or how the NFLPA allegedly breached those terms. Instead, Plaintiffs only identify the 1998 GLA – which is five years outside of the limitations period – and a 2007 "Sample GLA" that <u>none</u> of the named Plaintiffs claims to have signed. These allegations about contracts which are either time barred or to which Plaintiffs were not parties are not actionable by Plaintiffs and cannot state a breach of contract claim.

Finally, Plaintiffs' claims against the NFLPA for breach of fiduciary duty, unjust enrichment, and for an accounting are equally without any basis. The many legal deficiencies in

---

[1] Plaintiffs may have added these allegations concerning the NFLPA purportedly controlling active player licensing rights – even though none of the Plaintiffs is an active NFL player – because Plaintiffs could not allege that Players Inc or the NFLPA holds anywhere near a dominant position as to retired player licensing rights. As reviewed in the motion for sanctions concerning Plaintiffs' First Amended Complaint, there are over 13,000 retired NFL players, and Plaintiffs have not alleged and cannot allege that Players Inc or the NFLPA ever claimed to represent more than 3,500 retired players. See Declaration of Gene Upshaw in Further Support of Defendant's Motion for Sanctions, dated May 16, 2007, ¶ 3; SAC ¶ 12. Plaintiffs apparently are trying to avoid this factual dead end by conflating retired player licensing rights with active player licensing rights, even though the latter are conceded to be intimately related to the union's collective bargaining activities.

these claims – including statute of limitations – are described in detail in the motion to dismiss submitted by Players Inc, all of which arguments are incorporated herein by reference.

## STATEMENT OF FACTS[2]

The Second Amended Complaint contains very few allegations specific to the NFLPA. And, those allegations specifically made as to the NFLPA undermine, rather than support, Plaintiffs' complaint.

Plaintiffs allege that the NFLPA is the labor union representing all active football players in the NFL and that "[a]lmost all active NFL players grant the right to market their names and images to the NFLPA <u>under the Collective Bargaining Agreement with the NFL</u> (the 'CBA')." SAC ¶ 9 (emphasis added). Plaintiffs further allege that "the NFLPA dominates the market for NFL player marketing by virtue of its representation of almost all current NFL players <u>under the CBA</u> and thousands of retired players pursuant to GLAs." <u>Id.</u> ¶ 30 (emphasis added). Plaintiffs also allege that the NFLPA has engaged "in an abusive and unlawful exercise of its power" by having a clause in its licensing agreements with "one or more" licensees that requires the licensee to deal for all player rights with the NFLPA. <u>Id.</u> However, the only "exclusive" agreements identified in the SAC are one between the NFLPA and a trading card company, TOPPS Company, Inc. (<u>id.</u> ¶ 14), and one between Players Inc and Electronic Arts. <u>Id.</u> ¶ 32.

Plaintiffs allege that Parrish entered into a GLA with the NFLPA in 1998 that expired on December 31, 1998. SAC, Ex. D. Plaintiffs further allege that Parrish "believes" he signed other GLAs "in recent years" but there is no specific allegation about when this occurred or what the terms were of these purported GLAs. <u>Id.</u> ¶ 54. Adderley alleges that he signed the same 1998 GLA form that Parrish signed, without any further specifics. <u>Id.</u> ¶ 56. No allegation is made that Roberts signed a GLA with the NFLPA or Players Inc at any time. The conclusory allegation is made that "[o]n information and belief, Adderley [and] Parrish . . . entered into one or more versions of Group Licensing Agreement(s) with PLAYERS INC and/or the NFLPA

---

[2] The NFLPA also incorporates herein by reference the additional facts set forth in the Motion to Dismiss filed by Players Inc. <u>See</u> Players Inc Br., Statement of Facts.

-3-

within the period of the statute of limitations, which has been tolled by Defendants' conduct," but Plaintiffs allege no specific facts to support these assertions. Id. ¶ 54; see also id. ¶ 16. The Second Amended Complaint attaches a document referencing an individual licensing contract between Adderley and the NFLPA concerning his participation in a specific licensing program with Reebok, but there is no allegation that Adderley was not paid any money he was due for his participation in that program. Id., Ex. I.

Apart from the above allegations specific to the NFLPA, the Second Amended Complaint repeatedly lumps the NFLPA together with Players Inc, as part of the plural term, "Defendants" (see, e.g., SAC ¶¶ 20, 22-23, 25, 35, 62, 74-76), and often refers to both the NFLPA and Players Inc jointly without distinction (see, e.g., SAC ¶¶ 26, 29, 59, 68 ).

## ARGUMENT

### I. PLAINTIFFS' UNFAIR BUSINESS PRACTICES CLAIMS AGAINST THE NFLPA FOR ALLEGEDLY ABUSING PLAYER RIGHTS "UNDER THE CBA" ARE PREEMPTED BY FEDERAL LABOR LAW

The Second Amended Complaint alleges an unfair business practices claim against the NFLPA under California Business and Professions Code § 17200 based on the assertion that the collective bargaining agreement between the NFLPA – a labor union – and the National Football League provides the NFLPA with the power to control active NFL player rights. See, e.g., SAC ¶ 9 ("Almost all active NFL players grant the right to market their names and images to the NFLPA under the Collective Bargaining Agreement with the NFL"); id., ¶ 30 ("Because the NFLPA dominates the market for NFL players marketing by virtue of its representation of almost all current NFL players under the [collective bargaining agreement]"). Challenging these CBA rights, Plaintiffs allege that the NFLPA has committed "unfair practices [that] threaten an incipient violation of federal and state antitrust laws" and that "violate both the policy and spirit of the Sherman Act's prohibition on unlawful restraints of trade, monopolization, and attempted monopolization, and the Cartwright Act's prohibition on contracts or combinations in restraint of trade and otherwise significantly harm or threaten competition." Id., ¶ 77. These claims are completely preempted by federal labor law.

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Specifically, it is well established that labor unions such as the NFLPA are exempt from suits under the federal antitrust laws for engaging in activities that fall within union interests. See, e.g., H.A. Artists & Assocs., Inc. v. Actors' Equity Ass'n, 451 U.S. 704, 713-714 (1981) ("Section 6 of the Clayton Act, 15 U.S.C. § 17 . . . immunizes from antitrust liability labor organizations and their members 'lawfully carrying out' their 'legitimate object[ives]."); United States v. Hutcheson, 312 U.S. 219, 232 (1941); N. Peter Lareau, 2 Labor & Employment Law § 43.02 (2005); William C. Holmes, Antitrust Law Handbook § 8.3 (2006). This exemption further extends to any organization working with the union that shares an "economic interrelationship affecting legitimate union interests." Am. Fed'n of Musicians v. Carroll, 391 U.S. 99, 105-06 (1968). In this case, there can be no question that the group licensing rights of active NFL players, which are alleged to be part of the CBA, concern "legitimate union interests" and that the NFLPA is protected by the statutory union exemption from antitrust laws provided in Section 6 of the Clayton Act.

Plaintiffs cannot avoid this federal labor exemption by bringing a complaint under a state law unfair competition statute instead of federal antitrust law, because such state law claims are preempted. See, e.g., Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100, 421 U.S. 616, 635-36 (1975). In fact, the Connell Court recognized that state law antitrust claims against labor organizations may be preempted even where the Section 6 exemption to federal antitrust law does not apply. Id. at 635. This is because "the accommodation between federal labor and antitrust policy is delicate" and to allow state antitrust law to intrude "may represent a totally different balance between labor and antitrust policies." Id. at 636.

It also is black letter law that federal labor law preempts both (i) "claims founded directly on rights created by collective bargaining agreements" and (ii) "claims 'substantially dependent on analysis of a collective bargaining agreement.'" Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (quoting Elec. Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987)); see also Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1014 (9th Cir. 2000) ("Section 301 of

the [Labor Management Relations Act] preempts state law claims that are based directly on rights created by a collective bargaining agreement, and also preempts claims that are substantially dependant on an interpretation of a collective bargaining agreement") (citations omitted). In this case, Plaintiffs' state law unfair business practices claims against the NFLPA are barred under both prongs of Section 301 preemption.

Specifically, Plaintiffs have alleged unfair business practices claims based on their allegation that the NFLPA dominates NFL player marketing "by virtue of its representation of almost all current NFL players under the CBA." SAC ¶ 30; see also id. ¶ 9 ("Almost all active NFL players grant the right to market their names and images to the NFLPA under the Collective Bargaining Agreement with the NFL."). Thus, Plaintiffs' complaint alleges that the NFLPA's use of active players' group licensing rights "under the CBA" has caused Plaintiffs' injury. See, e.g., SAC ¶¶ 26-27, 59. Indeed, the 2007 "Sample GLA," which Plaintiffs attack, is a provision in the standard form NFL Player Contract, which is an appendix to and a part of the CBA in the NFL. See SAC, Ex. C (NFLPA represents players "who have entered into a Group Licensing Assignment, either in the form attached hereto as Attachment 'A' or through the assignment contained in Paragraph 4(b) of the NFL Player Contract") (emphasis added); see also Gridiron.com v. Nat'l Football League Players Ass'n, 106 F. Supp. 2d 1309, 1313 (S.D. Fla. 2000) ("The NFLPA is the exclusive representative of the players, with the authority to bind them. Players can choose not to be bound by the provisions of the GLA, by crossing out paragraph 4(b) of the standard NFL Player Contract before signing. Defendant NFLPA and the NFL Players were involved in collective bargaining agreements ('CBA') and the word 'product' was used in the CBA's to include products of an electronic type, including Internet websites. The NFLPA has the authority to bind the members of its union, and Courts have consistently held that a union's interpretation of the collectively bargained provisions is determinative.") (GLA provision in Paragraph 4(b) of NFL Player Contract covered internet websites) (emphasis added).

Plaintiffs' state law unfair business practices claims against the NFLPA are therefore preempted by Section 301 of the LMRA. See Caterpillar Inc., 482 U.S. at 394; Aguilera, 223 F.3d at 1014; see also Vargas v. Geologistics Americas, Inc., 284 F.3d 232, 235 (1st Cir. 2002) (affirming preemption of a state law breach of contract claim based on a letter that was "confirmatory of and founded on CBA rights"). Indeed, numerous courts have held that state law claims challenging conduct that is the subject of the NFL CBA are preempted. See, e.g., Smith v. Houston Oilers, Inc., 87 F.3d 717 (5th Cir. 1996); Holmes v. Nat'l Football League, 939 F. Supp. 517 (N.D. Tex. 1996); Black v. Nat'l Football League Players Ass'n, 87 F. Supp. 2d 1 (D.D.C. 2000).

## II. PLAINTIFFS' SECTION 17200 CLAIMS AGAINST THE NFLPA ALSO FAIL FOR NUMEROUS OTHER REASONS

Apart from federal labor law preemption, Plaintiffs' claims against the NFLPA under Section 17200 also fail for the same reasons discussed in the motion to dismiss filed by Players Inc, which arguments are incorporated herein by reference. Players Inc Br., §§ I, II.A-D. These failures include the following:

(i) a statute of limitations bar against all conduct occurring more than four years before the filing of this case – including the "Gene Upshaw letter" concerning EA Sports that Plaintiffs pointed to as their salvation in the May 31 hearing;[3]

(ii) a failure to plead facts showing the required injury-in-fact for a Section 17200 claim;

(iii) a failure to plead facts showing any of the required elements of an exclusive dealing antitrust violation, including relevant market and market power;

(iv) a failure to plead fraud with facts showing individual reliance by Plaintiffs with the particularity required by Fed. R. Civ. P. 9(b) – indeed, there are no fraudulent statements specifically attributed to the NFLPA; and

---

[3] Plaintiffs failed to inform the Court at the hearing that, while the "Gene Upshaw letter" is undated, its text calls for a response before March 2000 – well before the applicable limitations period. See SAC, Ex. B ("Please respond no later than March 10, 2000.")

-7-

(v) a failure to establish subject matter jurisdiction under Section 17200, particularly for the purported Section 17200 claims by non-California residents Parrish and Adderley.

For all of the above reasons, as set forth in the brief of Players Inc (Players Inc Br., §§ I-II), Plaintiffs' claims under Section 17200 are devoid of any legal merit and must be dismissed.

### III. PLAINTIFFS' BREACH OF CONTRACT CLAIMS AGAINST THE NFLPA MUST ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM

To state a claim for breach of contract, a plaintiff must plead (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) the resulting damages to plaintiff. Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990). To plead the existence of a written contract, Plaintiffs must either "set out verbatim in the body of the complaint" the terms of the contract, or attach and incorporate by reference a copy of the written agreement. Harris v. Rudin, Richman & Appel, 74 Cal. App. 4th 299, 307 (1999). Plaintiffs must also plead "the legal effect of the contract" the defendant allegedly breached. Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co., 29 Cal. 4th 189, 199 (2002).

Plaintiffs' breach of contract claim against the NFLPA is based on a conclusory "class" allegation of purported breaches of "various Group Licensing Agreement(s) with retired NFL players," (SAC ¶ 59), and Plaintiffs further allege that the NFLPA has contractual obligations to unspecified players "who have signed a GLA" (id. ¶ 16). However, the Second Amended Complaint specifically identifies only two GLAs – a 1998 GLA purportedly signed by Parrish and Adderley (which by its terms expired on December 31, 1998), and a 2007 "Sample GLA" attached to the TOPPS license. SAC, Exs. D & E.[4] Neither of these GLAs can support a breach of contract claim by Plaintiffs.

To begin with, the 1998 GLA, on its face, falls well outside the applicable four year statute of limitations period for breach of contract claims under California law (see Cal.

---

[4] There is no allegation in the Second Amended Complaint that Roberts ever entered into any GLA or other contract with the NFLPA. Obviously, then, Roberts has not stated a claim for breach of contract against the NFLPA.

Code Civ. Proc. § 337), and therefore cannot be the basis for any breach of contract claim by the Plaintiffs here.[5] Even if the statute of limitations did not bar these claims, however, Plaintiffs have not alleged how the terms of the 1998 GLA were breached. To the contrary, Plaintiffs' counsel has previously admitted to the Court that the 1998 GLAs "don't require any specific payment, [and] don't require [Plaintiffs] to get anything." May 31, 2007 Hearing Transcript ("Hearing Tr.") at 41:25-42:6. This assertion is borne out by the express terms of the 1998 GLA, which only require payment if the player's licensing rights are in fact utilized in a group licensing program. SAC, Ex. D (referring to the disposition of any "monies generated by such licensing").

Similarly, the 2007 "Sample GLA" is legally incapable of supporting Plaintiffs' breach of contract claim against the NFLPA, because Plaintiffs <u>do not allege that any of them ever entered into that GLA form</u>. Compare SAC ¶ 18 ("A version of the Group Licensing Agreement, executed by members of the GLA Class including Parrish and Adderley (Exhibit D), provided, in relevant part, that . . . .") with id., ¶ 19 ("On information and belief, a 2007 version of the Group Licensing Agreement – attached as a 'Sample GLA' to the NFLPA's Licensing Agreement with TOPPS (Exhibit C) – provides, in relevant part, that . . . ."). Plaintiffs' allegations about the 2007 "Sample GLA" (SAC ¶¶ 19, 57, 59) cannot support any breach of contract claim by Plaintiffs here, since Plaintiffs have not alleged that any of them was a party to this purported contract.

Further, while Adderley and Parrish allege, in conclusory fashion, that they "signed a number of GLAs with the NFLPA" (SAC ¶¶ 4, 5) and that they entered into "one or more versions of Group Licensing Agreement(s) with Players Inc and/or the NFLPA within the period of the statute of limitations" (id., ¶¶ 16, 54), they do not allege the specific terms of any

---

[5] Plaintiffs conclusorily allege that the statute of limitations has been tolled. SAC ¶ 54. However, as discussed in detail by Players Inc in its motion to dismiss (Players Inc Br., § I), Plaintiffs utterly fail to plead any of the specific facts they need to satisfy the applicable fraudulent concealment tolling requirements which are subject to a heightened particularity pleading standard as with Rule 9(b). See, e.g., Rambus Inc. v. Samsung Electronics Co., Ltd., No. C-05-02298 RMW, 2007 WL 39374, at *6 (N.D. Cal. Jan. 4. 2007) ("because fraud is the underlying theory of the doctrine of fraudulent concealment, the heightened pleading requirements of Fed. R. Civ. P. 9(b) applies.").

-9-

GLA they allegedly were a party to with the NFLPA during the limitations period or how the NFLPA allegedly breached those terms. Plaintiffs do not allege what specific agreement they entered into or who – either the NFLPA or Players Inc – was a party to the alleged agreement. Such conclusory allegations are not sufficient to state a claim under the federal pleading requirements reaffirmed in the Supreme Court's recent decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007).

Indeed, the Second Amended Complaint itself alleges numerous differences in the terms and conditions of the various GLA forms. For instance, the 2007 "Sample GLA" (which Plaintiffs do not allege any of them signed) states that the NFLPA will use its "best efforts to promote the use of NFL player images in group licensing programs," while the 1998 version of the GLA (which Adderley and Parrish claim to have signed) contains no such language. Compare SAC, Ex. C, Attachment A with SAC, Ex. D. Without alleging the specific terms of any unidentified GLAs Plaintiffs claim to have been a party to during the limitations period, and how the NFLPA allegedly breached those terms, Plaintiffs cannot state a claim for breach. See Careau & Co., 222 Cal. App. 3d at 1388; Harris, 74 Cal. App. 4th at 307 (discussed supra p. 8). Further, while Parrish claims to believe that he signed additional GLAs in "recent years," he does not even allege whether the term "recent years" encompasses the four year limitations period.

There are no factual allegations identifying the terms of any GLA that a Plaintiff was allegedly a party to during the limitations period, or how the NFLPA breached those terms. There are no factual allegations that the NFLPA failed to pay any money due under a GLA to a specific plaintiff during the limitations period. While Plaintiffs conclusorily allege that "Defendants failed to make royalty payments…to all players, and diverted funds…in breach of the GLA" (SAC ¶ 59), Plaintiffs do not allege that they did not receive any payment that was due to them under a GLA that they were a party to during the limitations period. Plaintiffs' vague allegations of unspecified GLA breaches and harm to other hypothetical class members cannot support a breach of contract claim as to them. See Boyle v. Madigan, 492 F.2d 1180, 1182 (9th

-10-

NFLPA's Motion to Dismiss the Second Amended Complaint   Case No. C 07-00943 WHA

-11-

Cir. 1974); Putkowski v. Irwin Home Equity Corp., 423 F. Supp. 2d 1053, 1063 (N.D. Cal. 2006).

While a court must accept all well-pleaded factual allegations in a complaint as true on a Rule 12(b)(6) motion, conclusory allegations should be ignored. See, e.g., Falstaff Brewing Co. v. Stroh Brewery Co., 628 F. Supp. 822, 826 (N.D. Cal. 1986) ("The Court, however, does not have to accept every allegation in the complaint as true. Conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted for purposes of a Rule 12(b)(6) motion.") (citing United States v. Tulare Lake Canal Co., 535 F.2d 1093, 1097 (9th Cir. 1976)). Indeed, as this Court noted after the May 31 hearing, the Supreme Court has recently reemphasized this very principle in Twombly. See Order, dated June 4, 2007, at 4. As the Supreme Court stated in Twombly: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, Plaintiffs obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (citations omitted).

Finally, the basic pleading standard that a plaintiff make "sufficient allegations to put defendants on notice of the claims against him," McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991), includes the requirement to make specific allegations against specific defendants rather than lumping defendants together in general allegations, see Foley v. Bates, No. C 07-0402 PJH, 2007 WL 1430096, *3 (N.D. Cal. May 14, 2007). Here, Plaintiffs' repeated use of the phrase "defendants" to try to avoid alleging specific conduct by the NFLPA runs afoul of this requirement.

## IV.    ALL OF PLAINTIFFS' OTHER CLAIMS AGAINST THE NFLPA MUST ALSO BE DISMISSED

As to the remainder of Plaintiffs' claims against the NFLPA, they all must be dismissed for the identical reasons as set forth in Players Inc's motion to dismiss. See Players Inc. Br., §§ IV-VI. The numerous legal defects detailed by Players Inc concerning Plaintiffs' claims of breach of fiduciary duty, unjust enrichment, and for an accounting apply equally to

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

these same claims against the NFLPA. Among other things, Plaintiffs' fiduciary duty claims are now premised exclusively on the GLAs – a complete legal reversal from Plaintiffs' prior complaints – and fail as a matter of law. Nor do Plaintiffs provide any legal basis for the Court to find a fiduciary duty in the terms of the GLA or under any agency theory, since Plaintiffs do not and cannot allege that they had any contractual control over the NFLPA as their agent. See Players Inc Br., § IV.

Similarly, Plaintiffs' unjust enrichment claim and claim for an accounting fail because these causes of action are entirely derivative of Plaintiffs' failed breach of fiduciary duty claims. Plaintiffs also do not allege that the NFLPA or Players Inc used any of their intellectual property without compensation, and do not dispute that, under California law, a claim for unjust enrichment cannot be simultaneously maintained with a breach of contract claim under the GLA. Players Inc Br., § V. For all of these reasons, Plaintiffs have stated no legally valid claims against the NFLPA.

## CONCLUSION

The Second Amended Complaint against the NFLPA should be dismissed with prejudice. Plaintiffs have had four bites at the apple, and there is no basis to permit them to prolong this litigation any further while they pursue their discovery fishing expedition against the Defendants. Indeed, the one document that persuaded the Court to give Plaintiffs one more chance to replead their case – the "Gene Upshaw letter" relating to EA Sports – is not within the limitations period and was never even claimed to have been received by any of the Plaintiffs. It thus cannot possibly be the basis for any claim in this case. It is time to put this baseless litigation to an end.

Date: July 6, 2007

DEWEY BALLANTINE LLP

BY: __/S/ Jeffrey L. Kessler__
Jeffrey L. Kessler

Attorneys for Defendant
National Football League Players Association

I hereby attest that I have on file all holographic signatures for any signatures indicated by a "conformed" signature (/S/) within this e-filed document.

Dated: July 6, 2007                    By: /S/ Claire E. Goldstein
                                            Claire E. Goldstein

                                        Attorneys for Defendant
                                        National Football League Players Association

-13-

NFLPA's Motion to Dismiss the Second Amended Complaint                    Case No. C 07-00943 WHA