1  Mark Malin (Bar No. 199757)
   *mmalin@deweyballantine.com*
2  DEWEY BALLANTINE LLP
   1950 University Avenue, Suite 500
3  East Palo Alto, CA 94303
   Tel: (650) 845-7000; Fax: (650) 845-7333

4  Jeffrey L. Kessler (*pro hac vice*)
   *jkessler@deweyballantine.com*
5  David G. Feher (*pro hac vice*)
   *dfeher@deweyballantine.com*
6  Eamon O'Kelly (*pro hac vice*)
   *eokelly@deweyballantine.com*
7  DEWEY BALLANTINE LLP
   1301 Avenue of the Americas
8  New York, NY 10019
   Tel: (212) 259-8000; Fax: (212) 259-6333

9
   Kenneth L. Steinthal (*pro hac vice*)
10 *kenneth.steinthal@weil.com*
   Claire E. Goldstein (Bar No. 237979)
11 *claire.goldstein@weil.com*
   WEIL, GOTSHAL & MANGES LLP
12 201 Redwood Shores Parkway
   Redwood Shores, CA 94065
13 Tel: (650) 802-3000; Fax: (650) 802-3100

14 Bruce S. Meyer (*pro hac vice*)
   *bruce.meyer@weil.com*
15 WEIL, GOTSHAL & MANGES LLP
   767 Fifth Avenue
16 New York, NY 10153
   Tel: (212) 310-8000; Fax: (212) 310-8007

17
   Attorneys for Defendant National Football League Players
18 Incorporated d/b/a Players Inc,

19         **UNITED STATES DISTRICT COURT**
          **NORTHERN DISTRICT OF CALIFORNIA**
20             **SAN FRANCISCO DIVISION**

21 BERNARD PAUL PARRISH, HERBERT        Case No.  C 07 0943 WHA
   ANTHONY ADDERLEY, WALTER
22 ROBERTS III,                         **PLAYERS INC'S NOTICE OF
                                        MOTION AND MOTION TO
23         Plaintiffs,                  DISMISS PLAINTIFFS' SECOND
                                        AMENDED COMPLAINT
24     v.                              PURSUANT TO FED. R. CIV. P.
                                        12(b)(6)**
25 NATIONAL FOOTBALL LEAGUE
   PLAYERS ASSOCIATION and NATIONAL     Date: August 16, 2007
26 FOOTBALL LEAGUE PLAYERS              Time: 8:00 am
   INCORPORATED d/b/a/ PLAYERS INC,     Ctrm: 9
27                                      Judge: William H. Alsup
           Defendants.
28

Players Inc's Motion to Dismiss the Second Amended Complaint          Civ. Action No. C07 0943 WHA

Dockets.Justia.com

*(left margin, vertical text)* DEWEY BALLANTINE LLP / 1950 University Avenue / East Palo Alto, California 94303-2225

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 16, 2007 at 8 a.m., or as soon thereafter as this matter may be heard, in Courtroom 9 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant National Football League Players Incorporated d/b/a Players Inc ("Players Inc") will and hereby does move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all causes of action alleged against it by Plaintiffs Bernard Parrish, Herbert Adderley, and Walter Roberts III (collectively "Plaintiffs") in their Second Amended Complaint (the "SAC").

As set forth in the accompanying Memorandum of Points and Authorities ("Memorandum"), the SAC should be dismissed against Players Inc in its entirety. <u>First</u>, Plaintiffs' California Unfair Competition Law ("Section 17200") claims fail because Plaintiffs have not pled facts sufficient to support a claim of "injury in fact." Plaintiffs' Section 17200 claims further fail because their allegations do not support a claim of either "unfair" or "fraudulent" business practices. Moreover, Plaintiffs do not allege in-state conduct or other facts necessary to state a claim under Section 17200. <u>Second</u>, Plaintiffs' breach of contract claims fail because they do not identify either (i) the terms of any particular contract any of the Plaintiffs was a party to with Players Inc during the statute of limitations period, or (ii) how Players Inc allegedly breached such terms. <u>Third</u>, in addition to being time-barred, Plaintiffs' breach of fiduciary duty claims fail because (i) the alleged relationship between Plaintiffs and Players Inc cannot give rise to any fiduciary duties as a matter of law, and (ii) Plaintiffs' allegations do not support a claim of breach of any such duty. <u>Fourth</u>, Plaintiffs' unjust enrichment claims fail because their factual allegations do not support such a claim, and because unjust enrichment is derivative of Plaintiffs' failed fiduciary duty claims. <u>Fifth</u>, there is no independent "cause of action" for an accounting under California law. For all of these reasons, and as set forth in the Memorandum, the claims in the SAC against Players Inc should be dismissed with prejudice.

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-2-

Date: July 6, 2007

DEWEY BALLANTINE LLP

BY:  ___/S/ Jeffrey L. Kessler_____
               Jeffrey L. Kessler

Attorneys for Defendant Players Inc

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEWEY BALLANTINE LLP**
1950 University Avenue
East Palo Alto, California 94303-2225

Players Inc's Motion to Dismiss the Second Amended Complaint        Civ. Action No. C07 0943 WHA

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

STATEMENT OF FACTS ....................................................................................................... 3

I.      THE PARTIES ............................................................................................................ 3

II.     THE RED HERRING DOCUMENTS ................................................................. 5

ARGUMENT ............................................................................................................................... 6

I.      NONE OF PLAINTIFFS' CLAIMS HAS BEEN TOLLED, AND MOST ARE
        BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS ............... 7

II.     PLAINTIFFS' SECTION 17200 CLAIMS MUST BE DISMISSED ............... 9

        A.      PLAINTIFFS' CLAIMS OF "UNFAIR" BUSINESS PRACTICES
                UNDER SECTION 17200 MUST BE DISMISSED ................................ 9

                1.      PLAINTIFFS HAVE NOT PLED ANY INJURY IN FACT ....... 9

                2.      PLAINTIFFS HAVE NOT PLED AN ACTUAL OR INCIPIENT
                        ANTITRUST VIOLATION ......................................................... 11

        B.      PLAINTIFFS' CLAIMS OF "FRAUDULENT" BUSINESS
                PRACTICES UNDER SECTION 17200 MUST BE DISMISSED ....... 15

                1.      PLAINTIFFS HAVE NOT PLED ANY INJURY IN FACT ..... 15

                2.      PLAINTIFFS HAVE NOT MET THE REQUIREMENTS FOR
                        PLEADING FRAUD UNDER RULE 9(B) ................................. 16

        C.      PLAINTIFFS' SECTION 17200 CLAIMS MUST ALSO BE
                DISMISSED BECAUSE THOSE CLAIMS ARE BASED UPON
                ALLEGED CONTRACTS WITH CHOICE OF LAW CLAUSES
                SELECTING ANOTHER STATE'S LAW ............................................ 18

        D       PARRISH AND ADDERLEY, AS OUT-OF-STATE RESIDENTS
                WHO DO NOT ALLEGE ANY IN-STATE CONDUCT, CANNOT
                STATE CLAIMS UNDER SECTION 17200 ......................................... 18

III.    PLAINTIFFS' BREACH OF CONTRACT CLAIMS MUST BE DISMISSED ...... 19

IV.     PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIMS MUST BE
        DISMISSED ................................................................................................................ 20

V.      PLAINTIFFS' UNJUST ENRICHMENT/RESTITUTION CLAIMS
        MUST BE DISMISSED ............................................................................................ 22

VI.     PLAINTIFFS' CLAIMS FOR AN ACCOUNTING MUST BE DISMISSED ....... 23

CONCLUSION ........................................................................................................................... 23

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Players Inc's Motion to Dismiss the Second Amended Complaint          Civ. Action No. C07 0943 WHA

# TABLE OF AUTHORITIES

Page

**Cases**

Aguilar v. Atlantic Richfield Co.,
        25 Cal. 4th 826 (2001) ..................................................................................11

Ancora-Verde Corp. v. Gulf Oil Corp.,
        846 F.2d 1382 (9th Cir. 1988) .......................................................................8

Anheuser-Busch, Inc. v. G.T. Britts Distrib., Inc.,
        44 F. Supp. 2d 172 (N.D.N.Y. 1999) ...........................................................14

Atlantic Richfield Co. v. U.S.A. Petroleum Co.,
        495 U.S. 328 (1990) ......................................................................................10

Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.,
        784 F.2d 1325 (7th Cir. 1986) .......................................................................13

Bell Atlantic Corp. v. Twombly,
        127 S. Ct. 1955 (2007) ........................................................................1, 6, 9, 14

Big Bear Lodging Ass'n v. Snow Summit, Inc.,
        187 F.3d 1096 (9th Cir. 1999) .......................................................................15

Boyle v. Madigan,
        492 F.2d 1180 (9th Cir. 1974) .......................................................................7

Brothers v. Hewlett-Packard Co.,
        No. C-06-02254 RMW, 2006 WL 3093685 (N.D. Cal. Oct. 31, 2006) ..........17

Californians for Disability Rights v. Mervyn's, LLC,
        39 Cal. 4th 223 (2006) ..................................................................................9

Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,
        222 Cal. App. 3d 1371 (1990) .......................................................................19

Cattie v. Wal-Mart Stores, Inc.,
        No. 06CV0897-LAB (CAB), 2007 WL 335582 (S.D. Cal. Mar. 21, 2007) ..........15, 16

Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
        20 Cal. 4th 163 (1999) ..................................................................11, 12, 13

Chang v. Redding Bank,
        29 Cal. App. 4th 673 (1994) .........................................................................21

Chavez v. Whirlpool Corp.,
        93 Cal. App. 4th 363 (2001) .........................................................................12, 13

Chicago Title Ins. Co. v. Great Western Fin. Corp.,
        69 Cal. 2d 305 (1968) ...................................................................................13

Churchill Village, L.L.C. v. Gen. Elec. Co.,
        169 F. Supp. 2d 1119 (N.D. Cal. 2000) ........................................................18

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-ii-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

City of Oakland v. Comcast Corp.,
    No. C. 06-5380 CW, 2007 WL 518868 (N.D. Cal. Feb. 14, 2007) ................22, 23

Continental Airlines, Inc. v. Mundo Travel Corp.,
    412 F. Supp. 2d 1059 (E.D. Cal. 2006) ................................................18

Continental T.V., Inc. v. GTE Sylvania Inc.,
    433 U.S. 36 (1977) ................................................................13

Copperweld Corp. v. Independence Tube Corp.,
    467 U.S. 752 (1984) ..............................................................13

Cryoport Sys. v. CNA Ins. Cos.,
    149 Cal. App. 4th 627 (2007) ..................................................9, 10

Cusano v. Klein,
    280 F. Supp. 2d 1035 (C.D. Cal. 2003) ..........................................21

Datagate, Inc. v. Hewlett-Packard Co.,
    60 F.3d 1421 (9th Cir. 1995) ....................................................15

Dayton Time Lock Serv., Inc. v. The Silent Watchman Corp.,
    52 Cal. App. 3d 1 (1975) ......................................................13, 14

Deitz v. Comcast Corp.,
    No. C 06-06352 WHA, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) ..............7

Delphine Software v. Elec. Arts Inc.,
    No. 99 Civ. 4454 AGAS, 1999 WL 627413 (S.D.N.Y. Aug. 18, 1999) ............19

DeVoto v. Pac. Fidelity Ins. Co.,
    512 F.2d 1264 (9th Cir. 1975) ..................................................14

Doe v. Texaco, Inc.,
    No. C 06-02820, 2006 WL 2053504 (N.D. Cal. July 21, 2006) ..................15

Easter v. Am. West Financial,
    381 F.3d 948 (9th Cir. 2004) ......................................................8

Eastman Kodak Co. v. Image Tech. Servs., Inc.,
    504 U.S. 451 (1992) ..............................................................15

Emrich v. Touche Ross & Co.,
    846 F.2d 1190 (9th Cir. 1988) ....................................................8

Epstein v. Wash. Energy Co.,
    83 F.3d 1136 (9th Cir. 1996) ......................................................6

Faigman v. Cingular Wireless, LLC,
    No. C. 06-04622 MHP, 2007 WL 708554 (N.D. Cal. Mar. 2, 2007) ..............22

Foley v. Bates,
    No. C 07-0402 PJH, 2007 WL 1430096 (N.D. Cal. May 14, 2007) ............6, 17

Freeman v. San Diego Ass'n of Realtors,
    77 Cal. App. 4th 171 (2000) ..................................................10, 12

-iii-

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Glue-Fold, Inc. v. Slauterback Corp.,
    82 Cal. App. 4th 1018 (2000) ............................................................... 7

Goodworth Holdings, Inc v. Suh,
    239 F. Supp. 2d 947 (N.D. Cal. 2002) .............................................. 21

Gregory v. Albertson's Inc.,
    104 Cal. App. 4th 845 (2003) ....................................................... 12, 14

Hal Roach Studios, Inc. v. Richard Feiner & Co.,
    No. C 03-3719 SI, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ............. 6

Hughes Auto., Inc. v. Mid-Atlantic Toyota Distribs.,
    543 F. Supp. 1056 (D. Md. 1982) ...................................................... 15

Huynh v. Chase Manhattan Bank,
    465 F.3d 992 (9th Cir. 2006) ............................................................. 8

In re Stac Elecs. Sec. Litig.,
    89 F.3d 1542 (9th Cir. 1996) ............................................................. 6

Jefferson Parrish Hosp. Dist. No. 2 v. Hyde,
    466 U.S. 2 (1984) .......................................................................... 13

Korea Supply Co. v. Lockheed Martin Corp.,
    29 Cal. 4th 1134 (2003) ................................................................... 9

Laster v. T-Mobile USA, Inc.,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005) ........................................... 15, 16

Lutge v. Eskanos & Adler, P.C.,
    No. C 06-07128 JSW, 2007 WL 1521551 (N.D. Cal. May 21, 2007) ......... 16

McKeever v. Block,
    932 F.2d 795 (9th Cir. 1991) ............................................................. 6

Medimatch, Inc. v. Lucent Tech. Inc.,
    120 F. Supp. 2d 842 (N.D. Cal. 2000) .............................................. 18

Meinhard v. Sprint Spectrum L.P.,
    No. CIV. S-07-00456 FCD EFB, 2007 WL 1456141 (E.D. Cal. May 16, 2007) ...... 17

Melchior v. New Line Prods., Inc.,
    106 Cal. App. 4th 779 (2003) ....................................................... 22, 23

Meyer v. Sprint Spectrum L.P.,
    150 Cal. App. 4th 1136 (2007) ........................................................ 15

Misc. Serv. Workers v. Philco-Ford Corp.,
    661 F.2d 776 (9th Cir. 1981) ............................................................ 17

Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Solutions, Inc.,
    C04-01661 WHA, 2004 WL 1888769 (N.D. Cal. July 21, 2004) ............... 13

Newcal Indus., Inc. v. Ikon Office Solutions, Inc.,
    C04-2776 FMS, 2004 WL 3017002 (N.D. Cal. Dec. 23, 2004) ........... 14, 15

Players Inc's Motion to Dismiss the Second Amended Complaint    Civ. Action No. C07 0943 WHA

Norwest Mortgage, Inc. v. Superior Court,
    72 Cal. App. 4th 214 (1999) ............................................................... 18

O'Shea v. Littleton,
    414 U.S. 488 (1974) ............................................................................ 7

Oakland Raiders v. Nat'l Football League,
    131 Cal. App. 4th 621 (2005) ............................................................. 21

Omega Env't, Inc. v. Gilbarco, Inc.,
    127 F.3d 1157 (9th Cir. 1997) ............................................................ 13

Ott v. Home Sav. & Loan Ass'n,
    265 F.2d 643 (9th Cir. 1958) .............................................................. 6

Palmer v. Stassinos,
    419 F. Supp. 2d 1151 (N.D. Cal. 2005) .............................................. 9

People's Choice Wireless, Inc. v. Verizon Wireless,
    131 Cal. App. 4th 656 (2005) ............................................................. 13

Picnay v. Andrews,
    238 F.3d 1106 (9th Cir. 2001) ............................................................ 8

Putkowski v. Irwin Home Equity Corp.,
    423 F. Supp. 2d 1053 (N.D. Cal. 2006) .......................................... 1, 7

Rebel Oil Co. v. Atlantic Richfield Co.,
    51 F.3d 1421 (9th Cir. 1995) .............................................................. 15

Redding v. St. Francis Med. Ctr.,
    208 Cal. App. 3d 98 (1989) ................................................................ 13

RLH Indus., Inc v. SBC Commc'ns, Inc.,
    133 Cal. App. 4th 1277 (2005) ..................................................... 11, 13

Roth v. Garcia-Marquez,
    942 F.2d 617 (9th Cir. 1991) .............................................................. 6

Schmidt v. Found. Health,
    35 Cal. App. 4th 1702 (1995) ............................................................. 15

Shvarts v. Budget Group, Inc.,
    81 Cal. App. 4th 1153 (2000) ............................................................. 22

Spectrum Sports, Inc. v. McQuillan,
    506 U.S. 447 (1993) ............................................................................ 15

Speyer v. Avis Rent A Car Sys., Inc.,
    415 F. Supp. 2d 1090 (S.D. Cal. 2005) .............................................. 19

Standfacts Credit Servs., Inc. v. Experian Info. Solutions, Inc.,
    405 F. Supp. 2d 1141 (C.D. Cal. 2005) ......................................... 18, 19

State Oil Co. v. Khan,
    522 U.S. 3 (1997) ............................................................................... 14

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.,
      138 Cal. App. 4th 1215 (2006) .................................................................... 11, 13

Tanaka v. Univ. of S. Cal.,
      252 F.3d 1059 (9th Cir. 2001) ...................................................................... 14, 15

Twin City Sportservice, Inc. v. Charles O. Finley & Co.,
      512 F.2d 1264 (9th Cir. 1975) ...................................................................... 14

Van't Rood v. County of Santa Clara,
      113 Cal. App. 4th 549 (2003) ...................................................................... 21

Vess v. Ciba-Geigy Corp., USA,
      317 F.3d 1097 (9th Cir. 2003) ...................................................................... 17

Violette v. Shoup,
      16 Cal. App. 4th 611 (1993) ........................................................................ 21

Volk v. D.A. Davidson & Co.,
      816 F.2d 1406 (9th Cir. 1987) ...................................................................... 8

Watson Labs., Inc. v. Rhône-Poulenc Rorer, Inc.,
      178 F. Supp. 2d 1099 (C.D. Cal. 2001) ...................................................... 12

Wolf v. Superior Court,
      107 Cal. App. 4th 25 (2003) ........................................................................ 21

**Statutes and Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... passim

Fed. R. Civ. P. 9(b) ............................................................................................ 2, 17

Cal. Bus. & Prof. Code § 17200 (West 2007) ................................................... 9, 10

Cal. Bus. & Prof. Code § 17204 (West 2007) ................................................... 9, 10

Cal. Bus. & Prof. Code § 17208 (West 2007) ................................................... 7

Cal. Code Civ. Proc. § 337 (West 2007) ........................................................... 7

Cal. Code Civ. Proc. § 339 (West 2007) ........................................................... 7

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-vi-

### MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' Second Amended Complaint ("SAC") – the <u>fourth</u> proposed Complaint in this action[1] – abandons Plaintiffs' prior claims and concocts entirely new legal theories, but still fails to allege facts sufficient to state a claim. Plaintiffs continue to rely upon conclusory assertions and legal rhetoric instead of the required factual allegations. For example, Plaintiffs trumpet antitrust buzz words such as "exclusive dealing," but do not allege facts to establish a relevant antitrust market or to support a claim that they suffered any cognizable harm from Players Inc's alleged exclusive licensing agreements. To the contrary, Plaintiffs allege that an exclusive licensing agreement with EA Sports generated <u>more</u> royalties – not less – for the rights of retired NFL players. The Supreme Court has made it clear that the mere assertion of legal "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action" is insufficient to withstand a motion to dismiss. <u>Bell Atlantic Corp v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007).

Plaintiffs, however, are unable to offer more than conclusory assertions, and repeatedly resort to conflating their purported individual claims with the claims of hypothetical, putative class members. Underscoring this fatal defect, many of Plaintiffs' claims rely upon a "Sample" Group Licensing Agreement ("GLA") from a Topps licensing agreement that <u>none</u> of the Plaintiffs even claims to have signed. SAC ¶ 19, Ex. C. It is axiomatic that the named plaintiffs in a putative class action – not non-existent, hypothetical class members – must <u>each</u> be able to state <u>independent</u> causes of action that they share with the purported class for their case to withstand dismissal. <u>See Putkowski v. Irwin Home Equity Corp.</u>, 423 F. Supp. 2d 1053, 1063 (N.D. Cal. 2006). Here, Plaintiffs Parrish, Roberts, and Adderley fail to allege any facts to support their individual claims against Players Inc. Nor are they able to state a claim based upon the so-called "Gene Upshaw letter" regarding EA Sports, which Plaintiffs pointed to as their

---

[1] After filing an initial Complaint on February 14, 2007, and the First Amended Complaint on February 23, 2007, Plaintiffs moved for leave to file a Second Amended Complaint (which they submitted to the Court). Plaintiffs then drafted a new version of the SAC (the currently operative complaint herein) after being granted leave by the Court to do so, and being instructed "to plead their best possible case, … taking nothing for granted." (Order Denying Defs.' Mot. for Judgment on the Pleadings ("Order") at 7 (June 4, 2007)).

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

-1-

purported salvation in the prior hearing before the Court. In the SAC, Plaintiffs do not even claim to have previously seen or received this letter, which, in any event, indicates on its face that it was sent years prior to all applicable limitations periods.

First, with respect to Plaintiffs' Section 17200 claims, Plaintiffs allege two categories of purported misconduct: (i) "unfair" business practices; and (ii) "fraudulent" business practices. Plaintiffs' Section 17200 claims fail under both theories because they do not allege facts to establish the "injury in fact" and resulting "loss of money or property" that is necessary to support such claims. Moreover, with respect to Plaintiffs' "unfair" business practices claim, Plaintiffs fail to allege even the most rudimentary elements of an exclusive dealing cause of action, such as facts defining the relevant market in which competition was supposedly harmed. Plaintiffs' "fraudulent" business practices claim fares no better, since Plaintiffs do not allege that they were aware of, deceived by, or relied on, any of the purportedly fraudulent statements. In addition, Plaintiffs do not come close to meeting the heightened pleading requirements of Rule 9(b) for making such "fraud" claims. Finally, Plaintiffs' Section 17200 claims fail because Plaintiffs Parrish and Adderley do not allege any actionable conduct or injury in California, and because all of Plaintiffs' claims are based, in significant part, upon alleged contracts expressly governed by non-California law.

Second, Plaintiffs' breach of contract claims are fundamentally flawed. Parrish and Roberts do not allege or specifically identify any particular contract in any particular year within the four-year statutory period that they entered into with Players Inc. Further, none of the Plaintiffs alleges a breach of any specific term of any alleged contract within the four-year statutory period. In a futile attempt to avoid this fatal limitations problem, Plaintiffs, incredibly, rest their breach of contract claims in large part upon a "Sample GLA" that none of them claims to have signed. Suffice it to say, Plaintiffs cannot state a claim for breach of a contract they never entered into.

Third, in a desperate attempt to salvage their breach of fiduciary duty claims, Plaintiffs have taken a 180 degree about-face and now claim that Players Inc owes fiduciary duties to a purported class of players who have signed a GLA during the four-year limitations

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-2-

period.  See SAC ¶ 23.  Because Plaintiffs' new breach of fiduciary duty claims are premised on entering into a GLA, and only one Plaintiff (Parrish) has identified a specific GLA that he signed, and that GLA is outside of the four-year limitations period, those claims fail as a matter of law.  Moreover, it is axiomatic that an ordinary commercial contract, such as a GLA, cannot give rise to a fiduciary obligation.

Fourth, Plaintiffs' unjust enrichment claims are legally derivative of their breach of fiduciary duty claims and thus fail for the same reasons.  Further, Plaintiffs still do not allege that, during the limitations period, they granted any intellectual property rights to Players Inc for which Players Inc did not provide any agreed upon compensation.  The only benefit allegedly conferred upon Players Inc by any Plaintiff within the limitations period is Adderley's granting of certain rights to Players Inc so that he could participate in a Reebok group licensing program.  But Adderley does not claim that he failed to receive any money he was due from that program.

Finally, Plaintiffs' renewed "cause of action" for an accounting merely seeks an additional remedy for Players Inc's alleged breach of fiduciary duty.  Because the substantive breach of fiduciary duty claim fails, the derivative claim for an accounting fails as well.

This Court gave Plaintiffs the option to "live or die" by the first iteration of the SAC, but Plaintiffs chose to rewrite completely that proposed complaint.  See May 31, 2007 Hearing Transcript ("Hearing Tr.") at 54:10-55:7.  In its Order denying Players Inc's Motion for Judgment on the Pleadings, the Court further instructed Plaintiffs to "plead their best possible case in the [SAC], taking nothing for granted."  Order at 7.  Plaintiffs have now taken their best shot, but have once again failed to state a claim.  It is time to dismiss this case with prejudice.

## STATEMENT OF FACTS

### I.     THE PARTIES

Defendant Players Inc, a Virginia corporation, is a for-profit licensing, sponsorship, marketing, and content development company that negotiates and facilitates group licensing and marketing opportunities for active and certain retired NFL players.  SAC ¶ 8; Ex. F.  Players Inc's activities include retail licensing, corporate sponsorships and promotions, special events, radio and television projects, publishing and Internet.  SAC, Ex. F.

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-3-

The National Football League Players Association ("NFLPA"), which, unlike in Plaintiffs' three prior complaints, is now a named Defendant in this action, owns 79% of Players Inc. SAC ¶ 10. The NFLPA is the union that represents all active NFL players. See id. ¶ 7. Plaintiffs continue to try to use the pressure of high profile litigation – this time through the SAC – as part of a campaign to obtain increased pension and disability benefits from the collective bargaining activities of the NFLPA. Players Inc, by contrast, is not a union, does not represent any players in collective bargaining, and has no role in negotiating or providing any pension or disability benefits to Plaintiffs or other retired players.

Plaintiff Parrish is a retired NFL player. See SAC ¶ 4. For years, he has campaigned against the NFLPA on pension and disability issues. See id. Parrish attaches to the SAC a GLA he signed in 1998 (which expired that same year), and asserts that he "believes, and therefore alleges" that he has signed other GLAs since that time. See id. ¶ 54, Ex. D. Putting aside the vagueness and implausibility of his sudden "belief" that he signed other GLAs in unspecified "recent years," Parrish does not allege that he entered into any specific GLA after February 14, 2003, the outer limit of the four-year statute of limitations. Parrish also fails to allege facts to show that he (as opposed to other persons) suffered any injury due to Players Inc's purportedly unfair and/or fraudulent conduct, or in any way received or relied upon any of Players Inc's purportedly fraudulent statements. Moreover, Parrish, as a non-California resident (see id. ¶ 4), does not allege that he suffered any injury within the State of California.

Plaintiff Roberts is a retired NFL player. See SAC ¶ 6. The SAC, like each of its predecessor complaints, contains no allegation that Roberts ever signed a GLA or ever participated in any Players Inc group licensing program. Moreover, like Parrish, Roberts does not allege facts to show that he suffered any injury as a result of Players Inc's purportedly unfair and/or fraudulent acts, and Roberts does not allege that he received or relied on any purportedly fraudulent statements by Players Inc.

Plaintiff Adderley is also a retired NFL player. See SAC ¶ 5. Adderley attaches to the SAC a copy of a letter agreement evidencing Adderley's participation in a single Players Inc licensing program with Reebok. See id., Ex. I. As this letter agreement states, the Reebok

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-4-

program was non-exclusive. See id. Adderley does not allege any breach of any term of this letter agreement. Nor does Adderley allege a breach of any provision of any other GLA that he purportedly entered into within the limitations period. Further, just like the other two Plaintiffs, Adderley does not allege facts to show any injury from any of Players Inc's purportedly unfair and/or fraudulent acts, and does not claim that he received or relied upon any of Players Inc's allegedly fraudulent statements. In addition, like Parrish, Adderley is a non-California resident (see id. ¶ 5) and does not allege that he suffered any injury within the State of California.

## II.    THE RED HERRING DOCUMENTS

In the SAC, Plaintiffs prominently (and primarily) rely upon three documents, but none of them supports Plaintiffs' claims. First, Plaintiffs cite the "Gene Upshaw letter" regarding a licensing agreement with EA Sports as purported evidence of "exclusive dealing" in violation of Section 17200. See SAC, Ex. B. However, none of the Plaintiffs alleges that he received (or even saw) this letter. Moreover, the letter indicates, on its face, that it was written and sent prior to March, 2000 (i.e., three years before 17200's four-year statute of limitations period),[2] and none of the Plaintiffs alleges facts to show that he has suffered any injury as a result of Players Inc's exclusive licensing agreements with EA Sports or other companies. To the contrary, Plaintiffs allege that both the EA Sports and other purported exclusive licensing agreements by Players Inc led to an "increase" in the amount of royalties paid for retired player rights. Id. ¶ 32.

Second, Plaintiffs premise a substantial portion of their causes of action (including their breach of contract and breach of fiduciary duty claims) upon a "Sample" GLA from a Topps licensing agreement containing language that the NFLPA would use "best efforts" to promote group licensing opportunities for NFL players who sign the "Sample" GLA. SAC ¶ 57, Ex. C. However, none of the Plaintiffs allege that they ever signed (or even saw) this "Sample GLA." They thus cannot assert any legal claim based upon it.

Third, Plaintiffs rely upon a 1998 GLA that only two Plaintiffs, Parrish and Adderley, claim to have signed. See SAC ¶ 56, Ex. D. The 1998 GLA – which expired almost

---

[2] Although there is no sending date on the "Gene Upshaw letter," it expressly requests a response from the unidentified recipient "no later than March 10, 2000." SAC, Ex. B.

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Players Inc's Motion to Dismiss the Second Amended Complaint          Civ. Action No. C07 0943 WHA

<u>nine</u> years ago – is, suffice it to say, outside the four year statute of limitations period applicable to Plaintiffs' breach of contract, fiduciary duty, and other claims. In addition, Plaintiffs defy both the language of the 1998 GLA and basic principles of contractual construction with their baseless assertion that the 1998 GLA "promis[es]" royalty payments to "all players." SAC ¶ 59. In fact, Plaintiffs' own counsel previously acknowledged that the "GLAs [] don't require any specific payment, don't require [Plaintiffs] to get anything." Hearing Tr. at 41:25-42:6.

In granting Plaintiffs leave to amend, this Court "advised [them] to plead their best possible case in the second amended complaint, taking nothing for granted." Order at 7. As set forth below, however, Plaintiffs have again failed to plead any legally cognizable case.

## ARGUMENT

As this Court noted in its Order Denying Players Inc's Motion for Judgment on the Pleadings, the Supreme Court recently clarified the pleading standard required to withstand a motion to dismiss under Rule 12(b)(6). <u>See</u> Order at 4 (citing <u>Twombly</u>). In particular, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 127 S. Ct. at 1964-65 (internal citations omitted); <u>Epstein v. Wash. Energy Co.</u>, 83 F.3d 1136, 1140 (9th Cir. 1996) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim").[3]

Even prior to <u>Twombly</u>, plaintiffs were required to make "sufficient allegations to put defendants fairly on notice of the claims against them," <u>McKeever v. Block</u>, 932 F.2d 795, 798 (9th Cir. 1991), including allegations directed at <u>specific</u> defendants (as opposed to lumping multiple defendants into general allegations). <u>See</u> <u>Foley v. Bates</u>, No. C 07-0402 PJH, 2007 WL 1430096, *3 (N.D. Cal. May 14, 2007). Plaintiffs repeatedly violate this rule in the SAC by

---

[3] For purposes of a motion to dismiss, exhibits to the complaint are treated as a part of the complaint, and the court may consider the full text of any document referenced in the complaint. <u>See</u> <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989); <u>In re Stac Elecs. Sec. Litig.</u>, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996). To the extent that complaint allegations conflict with the facts in an attachment, the text of the attachment controls. <u>See</u> <u>Roth v. Garcia-Marquez</u>, 942 F.2d 617, 625 n.1 (9th Cir. 1991) (citing <u>Ott v. Home Sav. & Loan Ass'n</u>, 265 F.2d 643, 646 n.1 (9th Cir. 1958)).

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

making numerous allegations regarding "Defendants" generically, or against the NFLPA and Players Inc without distinction.  SAC ¶¶ 20, 22-23, 25-26, 29, 35, 59, 62, 68, 74-76.

Another pleading requirement of relevance to this Motion is that, in a putative class action, "dismissal of the action ... is the proper course to follow where the named plaintiffs have failed to state a claim in themselves for the relief they seek." Boyle v. Madigan, 492 F.2d 1180, 1182 (9th Cir. 1974); O'Shea v. Littleton, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class").  The named Plaintiffs must be able to state their claims individually, without relying on allegations concerning injury to other unnamed, purported class members. See Boyle, 492 F.2d at 1182; Putkowski, 423 F. Supp. 2d at 1063.[4]

**I.    NONE OF PLAINTIFFS' CLAIMS HAS BEEN TOLLED, AND MOST ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS**

Plaintiffs' causes of actions each has a four-year statute of limitations, with the exception of the unjust enrichment claim, which has a two-year statute of limitations.[5]  There are thus no actionable facts or claims from the period before February 14, 2003, i.e., four years prior to Plaintiffs' first-filed Complaint.  For this reason, as set forth below in each section dealing with the particular causes of action, Plaintiffs' claims for breach of contract and fiduciary duty are predicated entirely on facts outside of the limitations periods, and many of Plaintiffs' claims in support of their Section 17200 cause of action are also outside of the limitations period.  This includes, for example, the "Gene Upshaw letter," which Plaintiffs used to convince the Court to give them another chance to plead their case (without even mentioning that this letter was sent more than seven years ago).

---

[4] As this Court has held, "[u]nless the named plaintiff is himself entitled to seek injunctive relief, he may not represent a class seeking that relief." Deitz v. Comcast Corp., No. C 06-06352 WHA, 2006 WL 3782902, *4 (N.D. Cal. Dec. 21, 2006) (Alsup, J.) (internal citations omitted).

[5] See Cal. Code Civ. Proc. § 337 (2006) (four-year limitations periods for breach of contract and breach of fiduciary duty claims); § 339 (two-year limitations period for unjust enrichment claims); Cal. Bus. & Prof. Code § 17208 (2006) (four-year limitations period for Section 17200 claim).  With respect to Plaintiffs' remaining cause of action, accounting, it is "treated as a cause of action available to a wronged fiduciary ... which is subject to the statute of limitations governing the nature of the underlying wrong," i.e., breach of fiduciary duty. Glue-Fold, Inc. v. Slauterback Corp., 82 Cal. App. 4th 1018, 1023 n.3 (2000).

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-7-

Players Inc's Motion to Dismiss the Second Amended Complaint          Civ. Action No. C07 0943 WHA

In an effort to avoid the limitations bar inherent in most of their claims, Plaintiffs allege, in conclusory fashion, that the statute of limitations "has been tolled by Defendants' conduct."[6] SAC ¶¶ 54; 27 ("Before [the LM-2 Labor Organization Annual Report] was filed, however, Plaintiffs did not discover (and in the exercise of reasonable diligence, could not have discovered) that facts had been concealed."). However, conclusory assertions of fraudulent concealment are insufficient to toll any of the applicable limitations periods.[7]

To invoke the doctrine of fraudulent concealment, a plaintiff must allege "affirmative conduct…which would…lead a reasonable person to believe that he did not have a claim for relief." Picnay v. Andrews, 238 F.3d 1106, 1110 (9th Cir. 2001). Such affirmative conduct must be "above and beyond the wrongdoing upon which the plaintiff's claim is filed." Easter v. Am. West Financial, 381 F.3d 948, 963 n.8 (9th Cir. 2004). In addition, a plaintiff claiming fraudulent concealment must establish that he had neither actual nor constructive notice of the facts constituting his claims. See Picnay, 238 F.3d at 1110; Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1004 (9th Cir. 2006). Underlying each of these required elements is the rule that plaintiffs must "plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in trying to uncover the facts." Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1415-16 (9th Cir. 1987) (holding that, under the tolling doctrine, the defendant's alleged failure to disclose the contents of certain reports did not support a claim of an affirmative action to mislead or conceal) (emphasis added).

Just as in Volk, Plaintiffs do not allege any particular facts to show any affirmative action on the part of Players Inc to conceal its purportedly wrongful conduct. Indeed, Plaintiffs do not allege which Defendant purportedly concealed facts, which specific facts were purportedly concealed, how such facts were concealed, when such facts were concealed, or

---

[6] Plaintiffs do not identify which applicable statutes of limitations have been tolled, or which Defendant committed any alleged fraudulent concealment.

[7] A federal court sitting in diversity applies the limitations rules, including the equitable exceptions, of the forum state. See Ancora-Verde Corp. v. Gulf Oil Corp., 846 F.2d 1382, 1382 (9th Cir. 1988); Emrich v. Touche Ross & Co., 846 F.2d 1190, 1199 (9th Cir. 1988).

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-8-

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1  where such facts were concealed.  Nor have Plaintiffs alleged any facts to show that they did not

2  have constructive knowledge of their purported claims within the limitations period.[8]

## II.    PLAINTIFFS' SECTION 17200 CLAIM MUST BE DISMISSED

Section 17200 defines "unfair competition" to include "any unlawful, unfair, or

fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Here, Plaintiffs' Section

17200 claims are based upon allegedly "unfair" business practices, and allegedly "fraudulent"

business practices.  SAC ¶¶ 72, 74.  As set forth below, none of the three Plaintiffs has stated a

claim under either the "unfair" or "fraudulent" business practices prongs of Section 17200.

### A.    PLAINTIFFS' CLAIMS OF "UNFAIR" BUSINESS PRACTICES UNDER SECTION 17200 MUST BE DISMISSED

#### 1.    PLAINTIFFS HAVE NOT PLED ANY INJURY IN FACT

In 2004, Section 17200 was amended to limit private plaintiffs' standing to sue to

those who have "suffered injury in fact <u>and</u> [] lost money or property as a result of such unfair

competition."  Cal. Bus. & Prof. Code § 17204 (emphasis added).[9]  Moreover, relief under the

unfair competition law is limited to injunctive relief and restitution; damages are not available.

<u>See</u> <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1144 (2003); <u>Mervyn's</u>, 39

Cal. 4th at 233.  Section 17200 specifically "prevent[s] <u>uninjured</u> private persons from suing for

restitution on behalf of others."  <u>Mervyn's</u>, 39 Cal. 4th at 232 (emphasis added).

Plaintiffs' claims of "unfair" business practices stem from purported exclusive

licensing agreements entered into by Players Inc and the NFLPA.  <u>See</u> SAC ¶¶ 30, 32, 35, 74,

76-77.  However, other than the completely conclusory assertion (in a single paragraph) that

"Plaintiffs … have suffered injury in fact, and have lost money or property (including but not

limited to dues payments to the NFLPA)," Plaintiffs never allege any facts to explain <u>how</u> they

suffered any injury from the purported exclusive agreements.  This is clearly deficient under the

law.  <u>Twombly</u>, 127 S.Ct. at 1964-65.

---

[8] For example, the non-receipt of any payments allegedly owed to Plaintiffs by Players Inc, SAC ¶¶ 20-21, should have put them on notice of any alleged breach of contractual or fiduciary duty.

[9] <u>See also</u> <u>Californians for Disability Rights v. Mervyn's, LLC</u>, 39 Cal. 4th 223, 228 (2006); <u>Cryoport Sys. v. CNA Ins. Cos.</u>, 149 Cal. App. 4th 627, 633 (2007); <u>Palmer v. Stassinos</u>, 419 F. Supp. 2d 1151, 1154 (N.D. Cal. 2005).

-9-

For example, Plaintiffs chiefly rely on the pre-March, 2000 "Gene Upshaw letter" – which no Plaintiff alleges to have received – referring to a licensing agreement in which Players Inc granted EA Sports the rights to use NFL players in the Madden NFL Football video game. See SAC ¶ 32. Plaintiffs quote several media reports criticizing the EA license, using antitrust catch-phrases such as "kill[s] competition" and "unfair restriction." Id. But a review of these quoted comments reveals that the only harm asserted by them is to video game consumers and video game producers – not active or retired NFL players. Id. (e.g., "Video game players fear a new corporate deal will kill the ingenuity in their favorite football title" and "effectively killing off the NFL 2K series"). Section 17200, however, requires that each Plaintiff allege his own "injury in fact and ... lost money or property." Cal. Bus. & Prof. Code § 17204 (emphasis added). Far from alleging such an injury in fact, Plaintiffs instead claim that Players Inc's exclusive agreement with EA Sports increased royalty payments for NFL players' rights. See SAC ¶ 32 ("Annualized, the contract brings the NFL and players; [sic] union roughly twice what they got in the past from multiple licensees....").[10]

Plaintiffs also do not allege that they even attempted to – much less were unable to – license their rights because of any exclusive deal entered into by Players Inc. For example, Plaintiffs do not allege that they tried to license their rights directly to EA Sports, or that they tried to license their rights to any other Players Inc licensee. By failing to allege that the EA Sports contract or any other exclusive license injured their own licensing efforts, Plaintiffs have failed to allege any injury in fact. See Cryoport, 149 Cal. App. 4th at 631 (Plaintiff that failed to allege it had tried to reinstate its canceled insurance policy had not alleged injury from the purported unfair conduct). Indeed, there is no allegation that any Plaintiff has ever tried to enter into any retired player licensing agreement on his own.

Similarly, with respect to the only other identified exclusive dealing agreement, an agreement between the NFLPA and the trading card company Topps, the exclusive terms identified in the Topps agreement are expressly limited to "the licensed products herein." SAC ¶

---

[10] The fact that retired NFL players are alleged beneficiaries of Defendants' purported exclusive agreements is another reason why Plaintiffs lack standing to assert an unfair business practices claim. See Atlantic Richfield Co. v. U.S.A. Petroleum Co., 495 U.S. 328, 336-337 (1990); Freeman v. San Diego Ass'n of Realtors, 77 Cal. App. 4th 171, 199 n.30 (Cal. App. 2000).

**DEWEY BALLANTINE LLP**
1950 University Avenue
East Palo Alto, California 94303-2225

30, Ex. C. Thus, the face of the agreement indicates that Topps could license retired player rights from other sources for other Topps products. Plaintiffs also do not allege that they were in any way restricted by the Topps license from licensing their rights to any other company and do not allege that they ever undertook any licensing efforts. Plaintiffs thus do not (and cannot) plead the required injury in fact under Section 17200.

The closest that Plaintiffs come to alleging any individual harm – albeit in a conclusory fashion – is their allegation that they have lost "dues payments to the NFLPA." SAC ¶ 79. Plaintiffs, however, do not allege how a purported loss of NFLPA dues relates to any of the purported Section 17200 conduct, let alone to any alleged conduct of Players Inc.

### 2. PLAINTIFFS HAVE NOT PLED AN ACTUAL OR INCIPIENT ANTITRUST VIOLATION

Plaintiffs allege that they each compete with Players Inc and the NFLPA. See SAC ¶¶ 4-6. In <u>Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.</u>, 20 Cal. 4th 163 (1999), the California Supreme Court set forth the following test for determining whether allegedly anticompetitive conduct constitutes an "unfair" business practice in cases, such as this one, involving claims by purported competitors:

> [W]e must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition …. When a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, <u>the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition</u>.

<u>Id.</u> at 186-87 (emphasis added).

Following <u>Cel-Tech</u>, California courts have disposed of claims alleging unfair anticompetitive conduct under Section 17200 where there was no viable antitrust claim or significant threat of harm to competition in a relevant market.[11] Here, Plaintiffs claim that

---

[11] See <u>Aguilar v. Atlantic Richfield Co.</u>, 25 Cal. 4th 826, 866 (2001) (no issue of conspiracy in restraint of trade under the Cartwright Act or Section 17200); <u>Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs. Inc.</u>, 138 Cal. App. 4th 1215, 1225 (2006) (complaint did not allege violation of antitrust law or the policy or spirit of antitrust law); <u>RLH Indus., Inc. v. SBC Commc'ns, Inc.</u>, 133 Cal. App. 4th 1277, 1286 (2005) (summary judgment granted on

-11-

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defendants have violated the antitrust laws, but, in a transparent attempt to avoid antitrust requirements that they cannot possibly satisfy, Plaintiffs conspicuously fail to identify any specific cause of action under the Sherman or Cartwright Acts.  See SAC ¶ 77 ("[Defendants'] unfair practices threaten an incipient violation of federal and state antitrust laws, and violate the spirit and policy of those laws....  Defendants' practices violated both the policy and the spirit of the Sherman Act[] ....  These unfair practices are comparable to or the same as a violation of the antitrust laws.") (emphasis added).

California courts reject such attempts to avoid antitrust requirements by asserting a claim under Section 17200 based on allegedly anticompetitive conduct.  See Cel-Tech, 20 Cal. 4th at 182 (A plaintiff may not "plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition") (internal quotations omitted); Freeman, 77 Cal. App. 4th at 196 ("California requires a 'high degree of particularity' in the pleading of Cartwright Act violations and therefore generalized allegations of antitrust violations are usually insufficient") (internal citation omitted).  Plaintiffs' uncertain and amorphous claims of "unfair" anticompetitive conduct are precisely what the court in Cel-Tech held was not permissible:

> If the same conduct is alleged to be both an antitrust violation and an "unfair" business act or practice for the same reason – because it unreasonably restrains competition and harms consumers – the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not "unfair" toward consumers.  To permit a separate inquiry into essentially the same question under [Section 17200] would only invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct.

Chavez, 93 Cal. App. 4th at 375 (citing Cel-Tech, 20 Cal. 4th at 185).

In the context of a motion for remand, this Court applied the principle that a "Section 17200 claim requires an interpretation of the Sherman Act" when it is based on allegations that defendant's conduct "violates state and federal antitrust laws and threatens

Section 17200 claims when Cartwright Act claims failed); Gregory v. Albertson's, Inc., 104 Cal. App. 4th 845, 856 (2003) (complaint's allegation of injury to competition was vague and conclusory); Chavez v. Whirlpool Corp., 93 Cal. App. 4th 363, 375 (2001) (Section 17200 claim dismissed because conduct "is not 'unfair' if the conduct is deemed reasonable and condoned under the antitrust laws."); Watson Labs., Inc. v. Rhône-Poulenc Rorer, Inc., 178 F. Supp. 2d 1099, 1119 (C.D. Cal. 2001) (granting summary judgment on plaintiff's Section 17200 claim under "federal antitrust decisions" for failure to show harm to competition).

-12-

Players Inc's Motion to Dismiss the Second Amended Complaint          Civ. Action No. C07 0943 WHA

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

incipient violation of those laws and violates the policy and spirit of those laws because the effects of Defendants' conduct are comparable to or the same as a violation of those laws." Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Solutions, Inc., C04-01661 WHA, 2004 WL 1888769, *1-2 (N.D. Cal. July 21, 2004) (Alsup, J.).[12] Here, just as in Nat'l Credit Reporting Ass'n, Plaintiffs have expressly claimed that Defendants' conduct violates both federal and state antitrust laws, and thus Plaintiffs' "Section 17200 claim requires an interpretation of the Sherman Act." Id. Indeed, California courts often look to federal antitrust cases when interpreting Section 17200 and/or the Cartwright Act.[13]

Plaintiffs, however, have not pleaded even the most rudimentary elements of an exclusive dealing claim under the Sherman or Cartwright Acts.[14] Under federal (and California) antitrust law, exclusive dealing arrangements are evaluated under the rule of reason.[15] The rule of reason applies to such agreements because there are "well-recognized economic benefits to exclusive dealing arrangements." Omega, 127 F.3d at 1162; Dayton Time, 52 Cal. App. 3d at 6. A rule of reason examination requires an economic analysis, focusing on market definition and

---

[12] In Nat'l Credit Reporting Ass'n, the only cause of action asserted on the face of the complaint was Section 17200, but the Court held that the plaintiff could not avoid antitrust requirements by artful pleading. Id.

[13] See Cel-Tech, 20 Cal. 4th at 185 (looking to FTC jurisprudence); Chicago Title Ins. Co. v. Great Western Fin. Corp., 69 Cal. 2d 305, 315 (1968) (California law is patterned on the Sherman Act and Clayton Act); RLH, 133 Cal. App. 4th at 1284 n.1 ("When reviewing alleged tying agreements, California courts may seek guidance from federal law"); Chavez, 93 Cal. App. 4th at 369 ("California courts often look to federal precedents under the Sherman Act for guidance" with Cartwright Act claims).

[14] See Stevenson Real Estate Servs., 138 Cal. App. 4th at 1225 (dismissing complaint that "alleges no conduct even remotely approaching a violation of an antitrust law or the policy or spirit of antitrust laws"); People's Choice Wireless, Inc. v. Verizon Wireless, 131 Cal. App. 4th 656, 668 (2005) (dismissing Section 17200 claim where the "allegations here are simply too far removed from cognizable antitrust evils").

[15] See Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2 (1984) (O'Connor, J. concurring) ("Exclusive dealing is an unreasonable restraint on trade only when a significant fraction of buyers or sellers are frozen out of a market by the exclusive deal"); Continental T.V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 58 (1977) (holding that the rule of reason governs vertical restraints); Omega Env't, Inc. v. Gilbarco, Inc., 127 F.3d 1157, 1162 (9th Cir. 1997) ("We thus analyze challenges to exclusive dealing arrangements under the antitrust rule of reason"); Redding v. St. Francis Med. Ctr., 208 Cal. App. 3d 98, 107 (1989) (holding that Defendant's decision to contract exclusively with one surgeon was not anti-competitive or unfair); Dayton Time Lock Serv., Inc. v. The Silent Watchman Corp., 52 Cal. App. 3d 1, 6 (1975) ("Exclusive-dealing contracts are not necessarily invalid").

-13-

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

market power, without which there is no basis to assess competitive effects.[16] Thus, "it is necessary to establish the proper relevant market before it can be determined whether a particular exclusive dealing arrangement unreasonably restrained competition." Twin City Sportservice, Inc. v. Charles O. Finley & Co., 512 F.2d 1264, 1274 (9th Cir. 1975).[17] Moreover, a restraint violates the rule of reason only if the harm to competition outweighs its procompetitive effects. State Oil Co. v. Khan, 522 U.S. 3, 10 (1997); Tanaka, 252 F.3d at 1063.

Here, Plaintiffs' have alleged none of the required elements of an exclusive dealing claim under the rule of reason. They do not even attempt to allege facts to define a relevant product market or a relevant geographic market.[18] Equally fatal to their claims, Plaintiffs do not make a single non-conclusory factual assertion to support the existence of Defendants' alleged market power. Nor do Plaintiffs allege facts to support a contention that the alleged exclusive dealing agreements are not justified by procompetitive effects. These pleading gaps are fatal under Twombly. Indeed, it is well-established that a plaintiff may not rely upon vague or conclusory allegations that the defendant's conduct harms competition. See Gregory, 104 Cal. App. 4th at 856 (holding that "the allegation that defendants' actions 'reduce market choices otherwise available to consumers' does not imply a diminution of competition"). Here, the SAC is devoid of any theory or factual allegation about how Defendants' conduct poses a significant threat or harm to competition in any relevant market.

Plaintiffs also make a failed attempt at accusing Defendants of actual or attempted monopolization. See SAC ¶ 34 ("In addition, the NFLPA, by and through PLAYERS INC, has made false and misleading statements designed to attain a monopoly over retired NFL player marketing...."). To the extent Plaintiffs are attempting to state such a claim, it too fails because

---

[16] See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 768 (1984); Tanaka v. Univ. of S. Cal., 252 F.3d 1059, 1063 (9th Cir. 2001); Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc., 784 F.2d 1325, 1334-1335 (7th Cir. 1986).

[17] See also DeVoto v. Pac. Fidelity Life Ins. Co., 618 F.2d 1340, 1345 (9th Cir. 1980) ("competitive injuries must be defined in terms of a discrete market"); Dayton Time, 52 Cal. App. 3d at 7 ("determination of illegality requires knowledge and analysis of the line of commerce, the market area, and the affected share of the relevant market").

[18] See Tanaka, 252 F.3d at 1062 ("Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim"); Newcal Indus., Inc. v. Ikon Office Solutions, Inc., C04-2776 FMS, 2004 WL 3017002, *3 (N.D. Cal. Dec. 23, 2004); Anheuser-Busch, Inc. v. G.T. Britts Distrib., Inc., 44 F. Supp. 2d 172, 175 (N.D.N.Y. 1999).

-14-

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

of the total absence of any factual allegations to support a relevant market definition or the existence of market or monopoly power by Defendants.[19]  In addition, Plaintiffs do not allege any facts to establish a "dangerous probability of success" of achieving monopoly power.[20]

### B.  PLAINTIFFS' CLAIMS OF "FRAUDULENT" BUSINESS PRACTICES UNDER SECTION 17200 MUST BE DISMISSED

#### 1.  PLAINTIFFS HAVE NOT PLED ANY INJURY IN FACT

As discussed above, "[t]he language of [Section 17200], as amended [], makes clear that a showing of causation is <u>required</u> as to each representative plaintiff." <u>Meyer v. Sprint Spectrum L.P.</u>, 150 Cal. App. 4th 1136, 1145 (2007) (quoting <u>Laster v. T-Mobile USA, Inc.</u>, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005)) (emphasis in original).  In the context of allegations of "fraudulent" business practices in violation of Section 17200, this Court has held that unless a plaintiff was aware of defendant's statements, <u>and</u> deceived by defendant's statements, <u>and</u> relied on defendant's statements, such plaintiff did "not suffer injury in fact 'as a result of' the alleged fraudulent business practice." <u>Doe v. Texaco, Inc.</u>, No. C 06-02820, 2006 WL 2053504, *3 (N.D. Cal. July 21, 2006) (Alsup, J.); <u>Laster</u>, 407 F. Supp. 2d at 1194; <u>Cattie v. Wal-Mart Stores, Inc.</u>, No. 06CV0897-LAB (CAB), 2007 WL 935582, *7 (S.D. Cal. Mar. 21, 2007) ("Requiring a plaintiff merely to show that she [entered into a transaction with defendant] and that [defendant's claims were false] would not...show harm occurred 'as a result of' the false advertisement").  Here, none of the Plaintiffs has alleged facts sufficient to establish <u>any</u> of these requirements.

<u>First</u>, none of the "named Plaintiffs allege that they saw, read, or in any way relied on the [allegedly misleading statements]." <u>Laster</u>, 407 F. Supp. 2d at 1194.  In <u>Laster</u>, although the plaintiffs "meticulously describe[d]" the allegedly misleading advertisements, the court dismissed the complaint because the named plaintiffs failed to identify which advertisements they were exposed to. <u>Id.</u> Here, Plaintiffs describe five allegedly fraudulent statements by

---

[19] <u>See</u> <u>Tanaka</u>, 252 F.3d 1065; <u>Big Bear Lodging Ass'n v. Snow Summit, Inc.</u>, 182 F.3d 1096, 1104 (9th Cir. 1999); <u>Newcal Indus.</u>, 2004 WL 3017002 at *2; <u>Hughes Automotive, Inc. v. Mid-Atlantic Toyota Distribs.</u>, 543 F. Supp. 1056, 1059 (D. Md. 1982).

[20] <u>See</u> <u>Spectrum Sports, Inc. v. McQuillan</u>, 506 U.S. 447, 456 (1993); <u>Eastman Kodak Co. v. Image Tech. Servs., Inc.</u>, 504 U.S. 451, 481 (1992); <u>Rebel Oil Co., Inc. v. Atlantic Richfield Co.</u>, 51 F.3d 1421, 1444 (9th Cir. 1995); <u>Datagate, Inc. v. Hewlett-Packard Co.</u>, 60 F.3d 1421, 1423 (9th Cir. 1995); <u>Schmidt v. Found. Health</u>, 35 Cal. App. 4th 1702, 1714 (1995).

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defendants, see SAC ¶¶ 34, 72-73, but do not allege that they saw or read any of these statements within the limitations period. See Laster, 407 F. Supp. 2d at 1194.[21]

Second, Plaintiffs "fail to allege they actually relied on false or misleading" statements, and thus "they fail to adequately allege causation as required by [Section 17200]." Cattie, 2007 WL 935582 (citing Laster, 407 F. Supp. 2d at 1194) (emphasis added); Lutge v. Eskanos & Adler, P.C., No. C 06-07128 JSW, 2007 WL 1521551, *5 (N.D. Cal. May 24, 2007) (granting motion to strike Section 17200 claim where plaintiff did not show that "but for Defendants' alleged conduct," he would have entered into a certain transaction). The SAC lacks any factual allegations that any named Plaintiff entered into any transaction "as a result of" his reliance on any of the allegedly false statements listed in the SAC. For example, no Plaintiff alleges that he signed a GLA as a result of any such statements.

Third, Plaintiffs do not allege that they were deceived by any of the purportedly fraudulent statements. For example, Plaintiffs do not claim that they believed that Players Inc represented 3,500 retired players, or that they were deceived by the purported statement that "the activities of Players Inc benefit every retired player." SAC ¶ 34. This is another ground for dismissing Plaintiffs' claims for "fraudulent" business practices under Section 17200.

Fourth, other than rote recitation of the terms injury in fact and "loss of money or property," Plaintiffs do not allege any facts to show how they suffered any injury as a result of relying on Defendants' supposedly fraudulent statements. See, e.g., SAC ¶ 79. In Cattie, the district court rejected virtually identical language because it was "conclusory and d[id] not adequately allege reliance." Cattie, 2007 WL 935582, *6.

## 2. PLAINTIFFS HAVE NOT MET THE REQUIREMENTS FOR PLEADING FRAUD UNDER RULE 9(B)

Where, as here, a plaintiff alleges a "unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim" under Section 17200, that claim

---

[21] The SAC cites Exhibit D – a 1998 GLA signed by Parrish – as the source of the allegedly fraudulent statement that "all retired players, including but not limited to those who signed a GLA, will effectively receive a guaranteed minimum payment." SAC ¶¶ 20, 72. Putting aside the fact that the plain language of the 1998 GLA does not support Plaintiffs' assertion, and was never even received by Roberts, the "statements" contained in the 1998 GLA are five years outside of Section 17200's four-year statute of limitations.

-16-

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

is "grounded in fraud" and must satisfy the particularity requirements of Rule 9(b). <u>Vess v. Ciba-Geigy Corp., USA</u>, 317 F.3d 1097, 1103 (9th Cir. 2003) (applying Rule 9(b) to fraud claims brought under Section 17200).[22] Even where common-law fraud is not an "essential element" of a claim, allegations of fraud must satisfy the heightened pleading requirements of Rule 9(b). <u>Id.</u> at 1105. Specifically, the "pleader must state the time, place, and specific content of the false representations as well as the identities of the parties." <u>Misc. Serv. Workers v. Philco-Ford Corp.</u>, 661 F.2d 776, 782 (9th Cir. 1981). All allegations of fraud that are not pled with particularity should be "disregarded." <u>Vess</u>, 317 F.3d at 1105.

Plaintiffs' allegations of "fraudulent conduct" under Section 17200 are subject to the particularity requirements of Rule 9(b), and yet Plaintiffs fail to allege which fraudulent representations were made to them (if any), when such representations were made to them, where they heard or saw such representations, and why such representations were fraudulent. <u>See Vess</u>, 317 F.3d at 1106; <u>Meinhard</u>, 2007 WL 1456141, *6; <u>Brothers</u>, 2006 WL 3093685, *6-7. Indeed, with respect to some of the purportedly "false representations" – those relating to the number of retired NFL players represented by Players Inc – Plaintiffs admit that they do not know whether the representations are true or not. <u>See</u> SAC ¶ 12.

Moreover, Plaintiffs fail to even specify <u>which</u> Defendant made each allegedly fraudulent statement. <u>See</u> SAC ¶ 34 (referring without distinction to "Defendants'" false and misleading statements). Not only do such vague and conclusory allegations fail Rule 9(b)'s heightened pleading standards, they do not even meet the basic pleading requirements under Rule 8. <u>See Foley</u>, 2007 WL 1430096, *15 (rejecting complaint allegations that improperly lump multiple defendants into one).

---

[22] <u>See also Meinhard v. Sprint Spectrum L.P.</u>, No. CIV. S-07-00456 FCD EFB, 2007 WL 1456141, *6 (E.D. Cal. May 16, 2007) (dismissing Section 17200 claim under Rule 9(b) where plaintiff "does not identify what [statements by defendant] she is referring to, when she saw them, where she saw them, or how the statements…were untrue or misleading"); <u>Brothers v. Hewlett-Packard Co.</u>, No. C-06-02254 RMW, 2006 WL 3093685, *6-7 (N.D. Cal. Oct. 31, 2006) (applying Rule 9(b) where "at least some of plaintiff's allegations supporting his Section 17200 claim sound in fraud").

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-17-

**C.    PLAINTIFFS' SECTION 17200 CLAIMS MUST ALSO BE
DISMISSED BECAUSE THOSE CLAIMS ARE BASED
UPON ALLEGED CONTRACTS WITH CHOICE OF LAW
CLAUSES SELECTING ANOTHER STATE'S LAW**

"A valid choice-of-law provision selecting another state's law is grounds to

dismiss a claim under California's UCL." Continental Airlines, Inc. v. Mundo Travel Corp., 412

F. Supp. 2d 1059, 1070 (E.D. Cal. 2006); Medimatch, Inc. v. Lucent Tech. Inc., 120 F. Supp. 2d

842, 861 (N.D. Cal. 2000) (dismissing plaintiffs' California UCL claim with prejudice after

enforcing the parties' choice of law agreement invoking New Jersey law).    Here, there is no

allegation in the SAC that the GLAs are governed by California law.  To the contrary, the

alleged "Sample" GLA, upon which Plaintiffs base many of their claims, has a New York choice

of law provision.  SAC ¶¶ 14, 19, Ex. C at 14.  Further, Parrish, Adderley, and both Defendants

are non-California residents and there is no claim that any GLA was executed in California by

Plaintiffs or that California law would for any other reason govern any GLA signed by a

Plaintiff.[23]  Thus, to the extent that Plaintiffs' Section 17200 claim is based upon Defendants'

use or alleged abuse of the GLAs, such claims must be dismissed because California law does

not apply to those agreements.

**D.    PARRISH AND ADDERLEY, AS OUT-OF-STATE RESIDENTS
WHO DO NOT ALLEGE ANY IN-STATE CONDUCT,
CANNOT STATE CLAIMS UNDER SECTION 17200**

Section 17200 also cannot be applied to claims by non-California residents based

on conduct occurring outside of California.[24]  Plaintiffs Parrish and Adderley are non-California

residents, see SAC ¶¶ 4, 5, and thus they must allege in-state misconduct for Section 17200 to be

applied.  With respect to their claims of "unfair" business practices under Section 17200, they

make no factual claim that any alleged exclusive dealing agreement was entered into in

---

[23] Roberts, the lone California resident, does not claim to have entered into any GLA.

[24] See Norwest Mortgage, Inc. v. Superior Court, 72 Cal. App. 4th 214, 222 (1999); Standfacts
Credit Servs., Inc. v. Experian Info. Solutions, Inc., 405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005)
("the UCL does not apply to actions occurring outside of California that injure non-residents");
Churchill Village, L.L.C. v. Gen. Elec. Co., 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000) ("With
respect to the UCL specifically, section 17200 does not support claims by non-California
residents where none of the alleged misconduct or injuries occurred in California").

Players Inc's Motion to Dismiss the Second Amended Complaint          Civ. Action No. C07 0943 WHA

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

California.[25]  Regarding Parrish's and Adderley's claims of "fraudulent" business practices under Section 17200, again, there are no allegations of any specific California misconduct.  Indeed, the SAC does not allege where any of the purportedly fraudulent statements were made, much less allege that such statements were made or seen by Parrish or Adderley in California.[26]  See SAC ¶¶ 34, 72.  Nor could any such inference be drawn from the SAC since both Defendants are Virginia corporations with principal places of business in Washington, D.C.  See id. ¶¶ 7, 8.

## III.    PLAINTIFFS' BREACH OF CONTRACT CLAIMS MUST BE DISMISSED

Plaintiffs' legally deficient breach of contract claims are more fully discussed in the NFLPA's Memorandum of Points and Authorities because it was the NFLPA that allegedly entered into the GLAs before assigning them to Players Inc.  See SAC ¶ 17.  The fundamental legal flaws with Plaintiffs' breach of contract claims, however, are equally applicable to Players Inc.

First, Plaintiffs do not allege the specific terms of any GLA that they allegedly were a party during the limitations period or how that contract was specifically breached.[27]  Instead, Plaintiffs' claim rests upon allegations relating to two versions of the GLA, one of which (the 1998 version signed by Parrish) expired, by its terms, five years outside the limitations period, and the other of which (the 2007 "Sample" GLA), no named Plaintiff is even alleged to have signed.

---

[25] Although the SAC alleges that EA Sports is headquartered in California, id. ¶ 32, EA Sports is a Delaware Corporation and there is no complaint allegation that Players Inc entered into the allegedly "unfair" exclusive dealing arrangement with EA Sports in California.  See Delphine Software v. Elec. Arts Inc., No. 99 Civ. 4454 AGAS, 1999 WL 627413, *1 (S.D.N.Y. Aug. 18, 1999) (stating that EA Sports is a Delaware corporation).  There is similarly no allegation that the Topps agreement was entered into in California, and, in fact, the Topps agreement is expressly governed by New York law.  See SAC, Ex. C.

[26] See Standfacts Credit Servs., 405 F. Supp. 2d at 1148 (dismissing non-resident plaintiffs' claims under Section 17200 because "complaint did not specifically allege wrongful acts that occurred in California" by defendants); Speyer v. Avis Rent A Car Sys., Inc., 415 F. Supp. 2d 1090, 1099-1100 (S.D. Cal. 2005) (dismissing claims under Section 17200 because, as alleged, any injury suffered by plaintiffs occurred outside California).

[27] Breach of contract claims must allege (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) the resulting damages to plaintiff.  Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (Cal. App. 1990).

-19-

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Second, Plaintiffs also fail to allege a breach of any specific term of any particular contract that was in effect during the limitations period. Plaintiffs claim that they were improperly denied purportedly "guaranteed" payments under the 1998 version of the GLA, but the terms of that agreement say nothing about any such obligation on the Defendants' part, and, in any event, claims relating to the 1998 GLA are clearly time-barred.[28] As for the "best efforts" language of the 2007 "Sample" GLA, no Plaintiff claims to have entered into that agreement.[29]

## IV.    PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIMS MUST BE DISMISSED

In opposing Players Inc's Motion for Judgment on the Pleadings, Plaintiffs vehemently denied that their breach of fiduciary duty claims stemmed from the GLAs. (See Pls.' Opp'n to Defs.' Mot. for Judgment on the Pleadings at 1 ("Plaintiffs have not alleged a relationship with PLAYERS INC based upon the GLA"); 13 ("The GLA is not a PLAYERS INC document and is not alleged to be the basis of the fiduciary relationship") (emphases added).) In a desperate attempt to salvage their breach of fiduciary duty claims, Plaintiffs have now taken a 180 degree about-face and rest their breach of fiduciary duty claims entirely on the GLAs: "The NFLPA and Players Inc Have Fiduciary Obligations To Those Retired Players Who Have Signed A GLA." E.g., SAC § V.B (title of section); ¶ 62 ("Defendants have a fiduciary duty to the retired players that at any time signed a GLA with the NFLPA ....") (emphases added). Even this reversal, however, cannot rehabilitate Plaintiffs' breach of fiduciary duty claims.

First, Plaintiff Roberts does not allege that he "at any time signed a GLA." SAC ¶ 62. Thus, he does not allege that he is owed any fiduciary duty.

Second, Plaintiffs Parrish and Adderley do not allege that they entered into any particular GLA in any particular year within the four-year statutory period. Parrish merely asserts that he "believes" he entered into unidentified GLAs in unidentified "recent years."

---

[28] The reference in the 1998 GLA to "monies generated by such licensing" on its face refers to monies generated by the licensing of the rights of the player signing the GLA, which would not require any payment unless that player's rights were used by a particular group licensee that paid for "such" rights. SAC, Ex. D (emphasis added). Indeed, Plaintiffs' own counsel has stated to the Court: "But what they do is they tender GLAs that don't require any specific payment, don't require [Plaintiffs] to get anything." Hearing Tr. at 41:25-42:6.

[29] Plaintiff Adderley also does not allege that he was not paid any money due to him under the Reebok agreement he entered into.

-20-

Adderley only makes the entirely conclusory assertion that he (along with Parrish) "entered into one or more versions of [GLAs] with PLAYERS INC <u>and/or</u> the NFLPA[30] within the period of the statute of limitations." The conclusory claim that they entered into unidentified agreements, with unidentified Defendants, in unidentified "recent" years, does not satisfy federal pleading requirements under <u>Twombly</u>.

  <u>Third</u>, the GLAs, which, on their face, are ordinary commercial contracts, do not give rise to any fiduciary obligations as a matter of law.[31] A fiduciary relationship only arises out of an ordinary contractual relationship when it is so stated. <u>Goodworth Holdings, Inc. v. Suh</u>, 239 F. Supp. 2d 947, 960 (N.D. Cal. 2002) (Alsup, J.) ("A confidentiality agreement does not give rise to a fiduciary relationship unless it does so expressly") (citations omitted). There is no such fiduciary relationship stated in any of the GLAs cited in the SAC.

  <u>Fourth</u>, Plaintiffs' conclusory assertion that "Defendants" serve as the agents of retired players who have signed GLAs is unavailing. SAC ¶ 23. To establish the existence of an agency relationship requires a showing that the purported principal had the right to control the purported agent.[32] Yet, Plaintiffs own allegations regarding "Players Inc's and/or the NFLPA's position of control," SAC ¶ 26, and the Plaintiffs' supposed inability to obtain information from Defendants, <u>see</u> SAC ¶ 25, 27, are <u>contrary</u> to – rather than supportive of – any claim that Plaintiffs had the contractual or legal right to control Players Inc as their agent. <u>See</u> <u>Oakland Raiders v. Nat'l Football League</u>, 131 Cal. App. 4th 621, 642 (2005) (Club's allegations that league commissioner was their agent failed because their own claims demonstrated that they did not have the right to control him); <u>Chang v. Redding Bank</u>, 29 Cal App. 4th 673, 684 (1994).

---

[30] The "and/or" indicates that Parrish and Adderley cannot even allege which Defendant they supposedly entered into a GLA with, and thus which Defendant owes them a fiduciary duty. <u>See</u> <u>Foley</u>, 2007 WL 1430096, *3 (complaint allegations cannot lump multiple defendants into one).

[31] <u>See</u> <u>Cusano v. Klein</u>, 280 F. Supp. 2d 1035, 1040 (C.D. Cal. 2003) (applying New York law but noting California law was in accord) (holding agreement with party to collect, account for, and pass on royalties did not create fiduciary obligations); <u>Wolf v. Superior Court</u>, 107 Cal. App. 4th 25, 30-31 (2003) ("Contrary to [Plaintiff's] contention, the contractual right to contingent compensation in the control of another has never, by itself, been sufficient to create a fiduciary relationship where one would not otherwise exist.") (citations omitted).

[32] <u>See</u> <u>Van't Rood v. County of Santa Clara</u>, 113 Cal. App. 4th 549, 572 (2003) ("In the absence of the essential characteristic of the right of control, there is no true agency"); <u>Violette v. Shoup</u>, 16 Cal. App. 4th 611, 620 (1993) ("The significant test of an agency relationship is the principal's right to control the activities of the agent").

Players Inc's Motion to Dismiss the Second Amended Complaint    Civ. Action No. C07 0943 WHA

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Indeed, there is no allegation in the SAC that Plaintiffs had the right to control the Defendants, and Plaintiffs' own counsel dismissed the notion that the GLAs created an agency relationship, see Hearing Tr. at 35:23-36:1, and further admitted at the hearing before this Court that they imposed no royalty obligations on Players Inc. Id. at 41:25-42:6.[33]

## V.    PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT/ RESTITUTION MUST BE DISMISSED

As with respect to Plaintiffs' other causes of action, Plaintiffs' claims for unjust enrichment/restitution must be dismissed on several, independent grounds. First, as this Court noted in its Order, Plaintiffs' unjust enrichment claim "depend[s] in large part on the claim for breach of fiduciary duty." Order at 7:9-10; see also Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2003); Faigman v. Cingular Wireless, LLC, No. C. 06-04622 MHP, 2007 WL 708554, *6 (N.D. Cal. Mar. 2, 2007) (dismissing unjust enrichment claim where plaintiffs "failed to plead a substantive claim for relief"). Thus, because Plaintiffs have failed to state a claim for breach of fiduciary duty or Section 17200 violation (see Argument, Points II and IV, supra), their derivative claim for unjust enrichment/restitution also fails.

Second, with respect to Parrish and Adderley, their claims for breach of contract preclude a claim for unjust enrichment/restitution. Indeed, in opposing Players Inc's Motion for Judgment on the Pleadings, Plaintiffs themselves acknowledged that California courts will "dismiss an unjust enrichment claim because the parties' written contract preclude[s] such quasi-contractual relief." (Pls.' Opp'n to Defs.' Mot. for Judgment on the Pleadings at 15 (citing City of Oakland v. Comcast Corp., No. C 06-5380 CW, 2007 WL 518868, *4 (N.D. Cal. Feb. 14, 2007)); Shvarts v. Budget Group, Inc., 81 Cal. App. 4th 1153, 1160 (2000).[34]

---

[33] Plaintiffs make a series of conclusory allegations about the purported "vulnerability" of "all" retired players. SAC ¶ 23. In typical fashion, however, Plaintiffs make no allegations about their own purported vulnerability. See id. In fact, whereas "many retired players" are alleged to "suffer from mental and physical disabilities," Parrish is claimed to be the president of a company with 3,000 employees, Plaintiff Roberts is claimed to have been the co-owner of a building supplies company, and Plaintiff Adderley claims to have been one of the greatest football players of all time. See SAC ¶¶ 4-6.

[34] Because Parrish and Adderley apparently recognize that their breach of contract claims are fatal to their claims for unjust enrichment, they "alternatively allege" that the GLAs are "illusory." SAC ¶¶ 67, 68. However, Parrish and Adderley nowhere explain how or what is supposedly illusory about the GLAs – upon which they premise their claims for both breach of contract and breach of fiduciary duty.

-22-

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Third, the SAC fails to identify any "benefit" that Parrish, Adderley, or Roberts purportedly conferred on Players Inc (independent of any alleged GLAs, which, as stated above, negate an unjust enrichment claim). For example, there is no claim that Players Inc actually granted any licensee the purported right to use any of the Plaintiff's images or names without compensation to them. In fact, the only allegation in the SAC about Players Inc licensing one of the Plaintiff's rights is with respect to a Reebok group licensing program (see SAC, Ex. I), for which there is no allegation that Adderley was not paid.[35]

## VI.   **PLAINTIFFS' CLAIMS FOR AN ACCOUNTING MUST BE DISMISSED**

At the May 31, 2007, hearing on Players Inc's Motion for Judgment on the Pleadings, the Court correctly found that "there's no primary cause of action, there's no claim for an accounting." Hearing Tr. at 30:9-11. There is nothing in the SAC to change that conclusion.

## **CONCLUSION**

Plaintiffs have presented four legally deficient complaints to the Court, and, respectfully, should not be given another bite at the apple. The Court made it clear that Plaintiffs must give it "their best shot," and the SAC is it. All of Plaintiffs' claims should thus be dismissed with prejudice. Indeed, it is apparent that Plaintiffs are using this lawsuit as a vehicle to publicize their campaign for greater retirement and disability benefits, even though these collective bargaining claims have nothing to do with this lawsuit. For example, almost immediately after the Court issued its Order denying Players Inc's motion for judgment on the pleadings, Plaintiff Adderley issued a statement declaring that the Court had held that the case would be going to trial, without any mention of the fact that the Court actually indicated that Plaintiffs were being given one more chance to replead their claims.[36] The judicial process is simply not the appropriate forum for Plaintiffs' political attacks upon a union and attempted fishing expedition. Having failed to state a legally viable cause of action in four attempts, Plaintiffs' claims should now be put to rest for good.

---

[35] An additional basis for dismissing Plaintiffs' unjust enrichment claim is the principle that unjust enrichment does not constitute a stand alone cause of action. See, e.g., Melchior, 106 Cal. App. 4th at 785; City of Oakland, 2007 WL 518868, *4.

[36] Adderley's statement is attached as Exhibit A to the Declaration of Claire Goldstein, filed concurrently herewith.

-23-

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1    Date: July 6, 2007                                    DEWEY BALLANTINE LLP

2

3                                               BY:    /S/ Jeffrey L. Kessler

4                                                      Jeffrey L. Kessler
                                                Attorneys for Defendant Players Inc
5

6           I hereby attest that I have on file all holographic signatures for any signatures

7    indicated by a "conformed" signature (/S/) within this e-filed document.

8    Dated: July 6, 2007                          By: /S/ Claire E. Goldstein

9                                                     Claire E. Goldstein

10                                                 Attorneys for Defendant
                                                        Players Inc
11

**DEWEY BALLANTINE LLP**
**1950 University Avenue**
**East Palo Alto, California 94303-2225**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-24-

Players Inc's Motion to Dismiss the Second Amended Complaint          Civ. Action No. C07 0943 WHA