1    MANATT, PHELPS & PHILLIPS, LLP
     RONALD S. KATZ (Bar No. CA 085713)
2    E-mail:  rkatz@manatt.com
     RYAN S. HILBERT (California Bar No. 210549)
3    E-mail:  rhilbert@manatt.com
     NOEL S. COHEN (California Bar No. 219645)
4    E-mail:  ncohen@manatt.com
     1001 Page Mill Road, Building 2
5    Palo Alto, CA   94304-1006
     Telephone:   (650) 812-1300
6    Facsimile:   (650) 213-0260

7    MCKOOL SMITH, P.C.
     LEWIS T. LECLAIR (Bar No. CA 077136)
8    E-mail:  lleclair@mckoolsmith.com
     JILL C. ADLER (Bar No. CA 150783)
9    E-mail:  jadler@mckoolsmith.com
     300 Crescent Court
10   Dallas, TX 75201
     Telephone:   (214) 978-4984
11   Facsimile:   (214) 978-4044

12   *Attorneys for Plaintiffs*

13

14                   UNITED STATES DISTRICT COURT

15                       NORTHERN DISTRICT

16                   SAN FRANCISCO DIVISION

17

18   BERNARD PAUL PARRISH, HERBERT          CIVIL ACTION NO. C07 0943 WHA
     ANTHONY ADDERLEY, and WALTER
19   ROBERTS III, on behalf of themselves and
     all others similarly situated,
20                                           **CONSOLIDATED OPPOSITION TO**
                   Plaintiffs,               **PLAYERS INC'S AND NATIONAL**
21                                           **FOOTBALL LEAGUE PLAYERS**
             vs.                             **ASSOCIATION'S MOTIONS TO DISMISS**
22                                           **PLAINTIFFS' SECOND AMENDED**
     NATIONAL FOOTBALL LEAGUE               **COMPLAINT**
23   PLAYERS ASSOCIATION, a Virginia
     corporation, and NATIONAL FOOTBALL
24   LEAGUE PLAYERS INCORPORATED
     d/b/a PLAYERS INC, a Virginia           Date:  Thursday, August 30, 2007
25   corporation,                            Time:  2:00 pm
                                             Judge:  Honorable William H. Alsup
26                 Defendants.

27

28

MANATT, PHELPS &
PHILLIPS, LLP                                        CONSOLIDATED OPPOSITION -
ATTORNEYS AT LAW                                       CASE NO. C07-0943 WHA
PALO ALTO

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  SUMMARY OF ARGUMENT .................................................................................... 3

III. ARGUMENT ................................................................................................................. 5

A.   Legal Standard on Motion to Dismiss ............................................................. 5

B.   The Breach of Contract Claim is Sufficiently Pled On Behalf of the GLA
     Class ....................................................................................................................... 5

C.   Plaintiffs Have Sufficiently Alleged Breaches Of Fiduciary Obligations On
     Behalf of the GLA Class .................................................................................... 9

D.   Plaintiffs Have Adequately Alleged Claims For Unfair and/or Fraudulent
     Business Practices Under Section 17200 on Behalf of All Retired Players ........ 15

     1.   Plaintiffs Have Sufficiently Alleged Conduct Under The "Unfair"
          Prong of Section 17200 ........................................................................... 16

          a.   Plaintiffs Need Not Satisfy The Pleading Requirements Of
               The Federal Or State Antitrust Laws To State An Unfairness
               Claim Under Section 17200 ........................................................ 17

          b.   The Vast Majority Of Defendants' Authority Is Irrelevant
               To Whether Plaintiffs Have Adequately Alleged A Claim
               Under The Unfairness Prong ....................................................... 19

          c.   The Handful Of Defendants' Cases Which Dismissed A
               Claim Under The Unfair Prong Are Inapt ................................. 20

     2.   Plaintiffs' Allegations Are Sufficiently Specific To State A Claim
          Under The "Fraudulent" Prong Of Section 17200 ................................... 24

     3.   Plaintiffs Have Adequately Alleged Injury In Fact ................................. 26

     4.   No Contractual Choice Of Law Provision Compels Dismissal Of
          Plaintiffs' Section 17200 Claim ............................................................... 29

     5.   Non-Californians Parrish and Adderley Have Sufficiently Pled A
          Section 17200 Claim ................................................................................ 30

     6.   The 17200 Claims Against the NFLPA Are Not Preempted by
          Federal Labor Laws .................................................................................. 31

          a.   The Statutory Exemption Is Inapplicable ................................... 32

          b.   The Non-Statutory Exemption Does Not Apply .......................... 33

E.   The GLA Plaintiffs Are Entitled To Bring An Unjust Enrichment Claim As
     An Alternative To Their Breach Of Contract Claim ............................................. 36

F.   Plaintiffs Have The Right To An Accounting ................................................... 37

G.   Plaintiffs' Claims Are Not Barred By Limitations ........................................... 38

IV.  CONCLUSION ............................................................................................................. 42

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

i

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Agair Inc. v. Shaeffer,*
   232 Cal. App. 2d 513 (Cal. App. 1965) ................................................................ 14

5

*Aguilar v. Atlantic Richfield Co.,*
   25 Cal. 4th 826 (Cal. 2001) ........................................................................................ 20

6

7

*Aguilera v. Pirelli Armstrong Tire Co.,*
   223 F.3d 1010 (9th Cir. 2000) .................................................................................. 35

8

*American Philatelic Soc. v. Claibourne,*
   Cal. 2d 689, 698 (1935) .............................................................................................. 18

9

*April Enter., Inc. v. KTTV,*
   147 Cal. App. 3d 805 (Cal. App. 1983) ........................................ 15, 39, 40

10

*Bank of the West v. Superior Court,*
   2 Cal. 4th 1254 (Cal. 1992) ...................................................................................... 17

11

*Beck v. Wecht,*
   28 Cal. 4th 289 (2002) ................................................................................................ 10

12

*Beery v. State Bar,*
   43 Cal. 3d 802 (1987) .................................................................................................. 10

13

*Bell Atl. Corp. v. Twombly,*
   --- U.S. ----, 127 S.Ct. 1955 (2007) ........................................................ 3, 5, 41

14

*Black v. NFLPA,*
   87 F. Supp. 2d 1 (D. D.C. 2000) .......................................................................... 35

15

*Bly-Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001) ................................................................................ 24

16

*Borders Online, LLC v. State Board of Equalization,*
   129 Cal. App. 4th 1179 (2005) .............................................................................. 10

17

*Boyle v. Madigan,*
   492 F.2d 1180 (9th Cir. 1974), .......................................................................... 8, 9

18

*Brothers v. Hewlett-Packard Co.,*
   2006 WL 3093685, *6 (N.D. Cal. Oct. 31, 2006) .............................. 25, 26

19

*Browning v. Yahoo! Inc.,*
   2004 WL 2496183 (N.D. Cal. Nov. 4, 2004) ................................................ 12

20

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.,*
   213 F.3d 474 (9th Cir. 2000) .................................................................................. 12

21

*Cahill v. Liberty Mut. Ins. Co.,*
   80 F.3d 336 (9th Cir. 1996) ...................................................................................... 5

22

*Carpenter Foundation,*
   26 Cal. App. 3d 784 (Cal. App. 1972) .............................................................. 14

23

*Cattie v. Wal-Mart Stores, Inc.,*
   2007 WL 935582, at *7-9 (S.D. Cal. 2007) .................................................. 28

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

ii

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

**TABLE OF AUTHORITIES**
(continued)

Page

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal. 4th 163 (Cal. 1999) ........................................................................................ passim

*Chavez v. Whirlpool*,
93 Cal. App. 4th 363 (Cal. App. 2001) ...................................................................... passim

*City of Oakland v. Comcast Corp.*,
2007 WL 518868 at *4 (N.D. Cal. Feb. 14, 2007) .......................................................... 36, 37

*Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100*,
421 U.S. 616 (1975) ...................................................................................................... passim

*Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co.*,
29 Cal. 4th 189 (Cal. 2002) .................................................................................................. 6

*Continental Airlines, Inc. v. Mundo Travel Corp.*,
412 F. Supp. 2d 1059 (E.D. Cal. 2006) ............................................................................... 30

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) .......................................................................................... 24, 26

*County of Santa Clara v. Astra USA, Inc.*,
401 F. Supp. 2d 1022 (N.D. Cal. 2005) ........................................................................... 18, 37

*Cruz v. United States*,
219 F. Supp. 2d 1027, 1041 (N.D. Cal. 2002) ..................................................................... 37

*Cryoport Sys. v. CNA Ins. Cos.*,
149 Cal. App. 4th 627 (Cal. App. 2007) ............................................................................. 27

*Diamond Multimedia Systems, Inc. v. Superior Court*,
19 Cal. 4th 1036 (Cal. 1999) ....................................................................................... 30, 31

*Doe v. Texaco, Inc.*,
2006 WL 2053504, at *3 (N.D. Cal. 2006) ........................................................................ 28

*Easter v. Am. West Financial*,
381 F.3d 948 (9th Cir. 2004) ............................................................................................. 41

*Estate of Migliaccio v. Midland National Life Ins. Co.*,
436 F. Supp. 2d 1095 (C.D. Cal. 2006) .............................................................................. 12

*Faigman v. Cingular Wireless, LLC*,
2007 WL 708554, at *6 (N.D. Cal. 2007) ........................................................................... 37

*Falk v. General Motors Corp.*,
_F. Supp. 2d _, 2007 WL 1970123 (N.D. Cal. July 3, 2007) ................................................ 5

*Foley v. Bates*,
2007 WL 1430096 (N.D.Cal. 2007) ................................................................................... 8, 9

*Goodworth Holdings Inc. v. Suh*,
239 F. Supp. 2d 947 (N.D. Cal. 2002) ................................................................................ 15

*Gregory v. Albertson's, Inc.*,
104 Cal. App. 4th 845 (Cal. App. 2002) ......................................................... 17, 20, 21, 22

*Gridiron.com v. National Football League Players Association*,
106 F. Supp. 2d 1309 (S.D. Fla. 2000) .............................................................................. 35

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Gryczman v. 4550 Pico Partners, Ltd.*,
    107 Cal. App. 4th 1 (Cal. App. 2003) .......................................................................... 39, 40, 41

4

*Holland v. Westport Ins. Corp.*,
    Slip Op., 2007 WL 951826 (N.D. Cal. March 28, 2007)....................................................... 12

5

*Holmes v. National Football League*,
    139 F. Supp. 517 (N.D. Tex. 1996)........................................................................................ 35

6

*Huynh v. Chase Manhattan Bank*,
    465 F.3d 992 (9th Cir. 2006).................................................................................................. 41

7

*In re Acacia Media Technologies Corp.*,
    2005 WL 16883660 (N.D. Cal. 2005) ............................................................................... 18, 19

8

*In re Daisy Sys. Corp.*,
    97 F.3d 1171 (9th Cir. 1996)............................................................................................ 10, 12

9

10

*In re HP Inkjet Printer Litigation*,
    2006 WL 563048, at *7 (N.D. Cal. 2006)............................................................................... 37

11

*Kudokas v. Balkus*,
    26 Cal. App. 3d 744 (Cal. App. 1972) ................................................................................... 12

12

*Lantzy v. Centex Homes*,
    31 Cal. 4th 363 (Cal. 2003)................................................................................................... 39

13

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005) .................................................................................. 28

14

*Lectrodryer v. SeoulBank*,
    77 Cal. App. 4th 723 (Cal. App. 2000) .................................................................................. 36

15

16

*Lynch v. Cruttenden & Co.*,
    18 Cal. App. 4th 802 (1993) ................................................................................................... 10

17

*Mackey v. National Football League*,
    543 F.2d 606 (8th Cir. 1976).......................................................................................... 34, 35

18

*Medimatch, Inc. v. Lucent Tech. Inc.*,
    120 F. Supp. 2d 842 (N.D. Cal. 2000) .................................................................................... 30

19

20

*Meinhold v. Spectrum*,
    2007 WL 1456141, at *2 (E.D.Cal. May 16, 2007)................................................... 24, 25, 26

21

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779 (Cal. App. 2004) ................................................................................ 36

22

*Michelson v. Hamada*,
    29 Cal. App. 4th 1566 (1994) .................................................................................... 10, 12, 14

23

*Moreno v. Sanchez*,
    106 Cal. App. 4th 1415 (Cal. App. 2003) .............................................................................. 39

24

25

*Motors, Inc. v. Times Mirror Co.*,
    102 Cal. App. 3d 735, 740 (Cal. App. 1980) ............................................................. 15, 18, 19

26

*N.L.R.B. v. Borg Warner Corp.*,
    356 U.S. 342 (1958)................................................................................................................ 34

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

iv

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Solutions, Inc.*,
   2004 WL 1888769 (N.D. Cal. 2004)..............................................................19, 20

4

*Nordberg v. Trilegiant Corp.*,
   445 F. Supp. 2d 1082 (N.D. Cal. 2006) ...............................................................37

5

*Norwest Mortgage, Inc. v. Superior Court*,
   72 Cal. App. 4th 214 (Cal. App. 1999)..................................................29, 30, 31

6

*Oakland Raiders v. Nat'l Football League*,
   131 Cal. App. 4th 621 (2005) ...............................................................................13

7

*People ex rel. Mosk v. National Research Co. of Cal.*,
   201 Cal. App. 2d 765 (Cal. App. 1962)................................................................17

8

*People v. Cobler*,
   108 Cal. 541 (1895) ...............................................................................................11

9

*People v. McKale*,
   25 Cal. 3d 626 (Cal. 1979) ....................................................................................22

10

*People v. Oldham*,
   111 Cal. 648 (1896) ...............................................................................................11

11

*People v. Robertson*,
   6 Cal. App. 514 (1907)...........................................................................................11

12

*People v. Royce*,
   106 Cal. 187 (1894) ...............................................................................................11

13

*People v. Treadwell*,
   69 Cal. 22d (1986) .................................................................................................11

14

*People's Choice Wireless, Inc. v. Verizon, Inc.*,
   131 Cal. App. 4th 656 (Cal. App. 2005) ..............................................18, 20, 23, 24

15

*Perez-Encinas v. AmerUs Life Ins. Co.*,
   468 F. Supp. 2d 1127 (N.D. Cal. 2006) ..........................................................39, 40

16

*Persson v. Smart Inventions, Inc*,
   125 Cal. App. 4th 1141 (Cal. App. 2005) ............................................................12

17

*Phoenix Electric Co. v. National Electric Contractors Ass'n*,
   81 F.3d 858 (9th Cir. 1996)...................................................................32, 34, 35

18

*Pincay v. Andrews*,
   238 F.3d 1106 (9th Cir. (Cal.) 2001) ...................................................................41

19

*Pollack v. Lytle*,
   120 Cal. App. 3d 931 (1981)..................................................................................10

20

*Professional Collection Consultants v. Hanada*,
   53 Cal. App. 4th 1016 (1997) .................................................................................8

21

*Putkowski v. Irwin Home Equity Corp.*,
   423 F. Supp. 2d 1053 (N.D. Cal. 2006) ..............................................................8, 9

22

*Quelimane Co., Inc. v. Stewart Title Guar. Co.*,
   19 Cal. 4th 26 (Cal. 1998)......................................................................................19

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

v

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

**TABLE OF AUTHORITIES**
(continued)

Page

*Recorded Picture Co. v. Nelson Entertainment, Inc.,*
  53 Cal. App. 4th 350 (1997) ................................................................................ 10

*Redding v. St. Francis Med. Ctr.,*
  208 Cal. App. 3d 98 (Cal. App. 1989) ................................................................ 20

*Richelle L. v. Roman Catholic Archbishop,*
  106 Cal. App. 4th 257, 272 (Cal App. 2003) .................................................... 10

*RLH Indus., Inc. v. SBC Communications, Inc.,*
  133 Cal. App. 4th 1277 (Cal. App. 2005) .......................................................... 20

*Rosary-Take One Production Co. Ltd. Partnership v. New Line Distribution, Inc.,*
  1996 WL 79327, at *1 (S.D.N.Y. 1996) ...................................................... 14, 15

*Rubin v. Green,*
  4 Cal. 4th 1187 (Cal. 1993) ................................................................................ 17

*San Francisco Bay Area Rapid Transit Dist. v. Spencer,*
  Slip Copy, 2007 WL 81899 *1 (N.D. Cal. 2007) ............................................. 36

*Silicon Image,*
  2007 WL 1455903 (N.D. Cal. May 16, 2007) .................................................. 18

*Smith v. Houston Oilers,*
  87 F.3d 717 (5th Cir. 1996).................................................................................. 35

*Southern Pacific Thrift & Loan Assn. v. Savings Assn. Mortgage Co.,*
  70 Cal. App. 4th 634 (Cal. App. 1999) .............................................................. 13

*Speyer v. Avis Rent A Car Sys., Inc.,*
  415 F. Supp. 2d 1090 (S.D. Cal. 2005) .............................................................. 31

*Standfacts Credit Servs., Inc. v. Experian Info Solutions, Inc.,*
  405 F. Supp. 2d 1141 (C.D. Cal. 2005) .............................................................. 31

*Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.,*
  138 Cal. App. 4th 1215 (Cal. App 2006) .............................................. 20, 21, 23

*Stokes v. Henson,*
  217 Cal. App. 3d 187 (Cal. App. 1990) ............................................................. 13

*Sun Microsystems Inc. v. Microsoft Corp.,*
  87 F. Supp. 2d 992 (N.D. Cal. 2000) ................................................................. 17

*Tampa Electric Co. v. Nashville Coal Co.,*
  365 U.S. 320 (1961) ...................................................................................... 23, 24

*The American Ins. Co. v. American Re-Ins. Co., Slip. Op.,*
  2006 WL 3412079, at *3 (N.D. Cal. 2006)......................................................... 29

*United Mine Workers of America v. Pennington,*
  381 U.S. 657 (1965).............................................................................. 32, 34, 35

*United States v. Colgate & Co.,*
  250 U.S. 300 (1919).............................................................................................. 22

*United States v. Hutcheson,*
  312 U.S. 219 (1941)................................................................................ 32, 33, 36

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

vi

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

*United States v. Microsoft Corp.*,
   253 F.3d 34 (D. D.C. 2001) ............................................................................................... 23

4

*USS-POSCO Industries v. Contra Costa County Bldg. & Const. Trades Council,*
   *AFL-CIO*,

5

   31 F.3d 800, 808 (9th Cir. 1994)........................................................................................ 33

6

*Vargas v. Geologistics Americas Inc.*,
   284 F.3d 232 (1st Cir. 2002)............................................................................................... 35

7

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003)............................................................................................ 24

8

*Volk v. D.A. Davidson & Co.*,
   816 F.2d 1406 (9th Cir. 1987)............................................................................................ 41

9

*Wang & Wang LLP v. Banco Do Brasil, S.A.*,
   2007 WL 915232 (E.D. Cal. 2007) ................................................................................. 6, 8

10

*Watson Labs., Inc. v. Rhone-Poulene Rorer, Inc.*,
   178 F. Supp. 2d 1099 (C.D. Cal. 2001) ............................................................................. 20

11

*Whittaker v. Otto*,
   188 Cal. App. 2d 619 (Cal. App. 1961) ............................................................................. 14

12

*Willson v. Bank of America*,
   2004 WL 1811148 (N.D. Cal. 2004).................................................................................... 6

13

*Wolf v. Superior Court*,
   107 Cal.App. 4th 25 (Cal. App. 2003) ............................................................................... 14

14

15

**STATUTES**

16

15 U.S.C. § 14 .............................................................................................................. 23, 24

17

15 U.S.C. § 45(n) ................................................................................................................. 17

18

9 U.S.C. § 158(d) ................................................................................................................. 34

19

Business and Professions Code §17200 ...................................................................... passim

20

Health and Safety Code Section 33035............................................................................... 21

Labor Management and Relations Act Section 301 ............................................................. 35

21

National Labor Relations Act Section 8(d) ......................................................................... 34

22

**OTHER AUTHORITIES**

23

1 Cal. Jur. 3d Accounts and Accounting § 85 (2006) ........................................................ 37

12 Cal. Jur. 3d Conflict of Laws § 29 ................................................................................ 29

24

5 Witkin Cal. Procedure 4th, Pleading § 776, p. 233 (1997) ............................................. 37

25

C.J.S. Agency § 47 .............................................................................................................. 10

26

C.J.S., Agency § 43 ............................................................................................................. 10

Cal. Jur., Agency, § 11 ........................................................................................................ 10

27

CJS Agency § 48 (2007) ...................................................................................................... 14

28

Restatement (First) Agency, § 15, Comment d (1933) ....................................................... 13

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

vii

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

**TABLE OF AUTHORITIES**
**(continued)**

Page

Restatement (First) Agency, § 430 (same)................................................................. 13, 27

Restatement (Second) Agency, § 15, Comment e (1958)............................................ 13

Restatement (Second) Agency, § 430 ........................................................................ 13

Restatement (Third) Agency, § 8.02 .......................................................................... 13

Restatement (Third) Agency, § 8.09, Comment b ...................................................... 14

William W Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 8:23 ............................................................................... 6, 7

**RULES**

Fed. R. Civ. P. 12(b)(6)............................................................................................. 5

Fed. R. Civ. P. 8(a)................................................................................................... 6

Fed. R. Civ. P. 8(a)(2)............................................................................................... 5

Fed. R. Civ. P. 9(b) ................................................................................... 4, 24, 25, 26

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

viii

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

## I.   **INTRODUCTION**

Plaintiffs' Second Amended Complaint ("SAC") states claims brought on behalf of all retired NFL players against Defendants National Football League Players Association ("NFLPA") and National Football League Players Incorporated d/b/a Players Inc ("PLAYERS INC") (collectively, "Defendants") for violations of California's Business and Professions Code §17200 and a claim for an accounting.   The SAC also seeks remedies for breaches of contract, breaches of fiduciary duty, and unjust enrichment against Defendants on behalf of a more narrow class, the GLA Class (defined as those retired players who have executed a Group Licensing Authorization ("GLA") with the Defendants since 1997).   Defendants' Motions[1] seek dismissal of all Plaintiffs' claims.

After the hearing on Defendant PLAYERS INC's Motions for Judgment on the Pleadings and for Sanctions earlier this year, Plaintiffs amended their complaint to state a more narrow GLA class.   At that hearing, PLAYERS INC's counsel strenuously urged that Plaintiffs could not in good faith argue a fiduciary relationship in the absence of a signed GLA with the NFLPA. *See, e.g.*, Motion for Sanctions, pp. 8-10 (*e.g.*, p. 9: "Plaintiffs cannot not [sic] allege any facts, however, that Players Inc ever 'represented' Parrish or Roberts in any licensing effort or that they were entitled to share in any revenues paid by licensees, because neither Parrish nor Roberts ever signed GLAs or participated in any Players Inc licensing programs."   (*citing* Upshaw Decl., ¶¶ 8-9)); *see also* May 31, 2007 Hearing Transcript, 21:2-8 (" . . . with respect to those plaintiffs [Mr. Parrish and Mr. Roberts] there is no relationship").

To the utter amazement of Plaintiffs and their counsel, PLAYERS INC has now admitted that it claimed to represent retired players who were members of the NFLPA Retired Players Association, *whether or not they ever signed a GLA*, because those players were "available" to PLAYERS INC:

> PLAYERS INC admits that it has previously made statements
> regarding "representing" specific numbers of retired players.   In

---

[1]    Because each of Defendants' Motions to Dismiss adopt and incorporate the other, with the exception of the preemption issue raised by the NFLPA, this response is a consolidated Opposition intended to apply to each, for which the Court has granted leave.   Defendants' Motions are referred to together but specified separately for citations.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1
2
3
4

making such statements, Players Inc was indicating that it had
access to certain numbers of retired players via the NFLPA Retired
Players Association, and that Players Inc had the ability to solicit
the participation of such players in licensing activities to the extent
that potential third-party licensees indicated an interest in pursuing
licensing opportunities with such players.

5   *See* Declaration of Ryan S. Hilbert in Support of Plaintiffs' Consolidated Opposition to

6   Defendants' Motions to Dismiss ("Hilbert Decl."), Ex. 1 (PLAYERS INC's Responses to

7   Requests for Admissions, Request Nos. 10-13).[2]

8        Thus, despite claiming that it was absurd for Plaintiff Parrish to argue that he was

9   represented by PLAYERS INC, it now appears that PLAYERS INC itself has claimed to

10  represent Parrish and all others who chose to join the NFLPA Retired Player Membership

11  program during the limitations period.

12       Defendants have chosen to exceed the bounds of fair and appropriate advocacy in other

13  ways as well.   In addition to their inexplicable positions regarding representation of retired

14  players, PLAYERS INC states on page 21 of its Memorandum of Points and Authorities that

15  "Adderley only makes the entirely conclusory assertion that he (along with Parrish) 'entered into

16  one or more versions of [GLAs] with PLAYERS INC <u>and/or</u> the NFLPA within the period of the

17  statute of limitations.'"   Putting aside the specific allegations of the SAC regarding Adderley's

18  Reebok contract and why the 3- or 4-year statutes of limitations have been tolled (questions of

19  fact that cannot be resolved on a motion to dismiss), Defendants completely ignore the April 3,

20  2007 Declaration of Gene Upshaw (PLAYERS INC's Chairman and the Executive Director of

21  the NFLPA), which affirmed that: "Adderley's last GLA expired at the end of 2005."   Hilbert

22  Decl., Ex. 2 (Upshaw's April 3, 2007 Declaration, ¶ 10).   This is clearly within the statutes of

23  limitations that Defendants are trying to invoke   Given this sworn admission, Defendants are in

24  no position to argue that Plaintiff Adderley has not stated a claim under a GLA.[3]

25
26

[2]      Defendants' startling revelation will likely require further changes to the definition of the
class prior to the filing of any motion for class certification.

27
28

[3]      Indeed, on August 1, 2007, Defendants produced two GLAs signed by Mr. Adderley
expiring on December 31, 2005 and December 31, 2003, respectively, both within the 3- and 4-
year statutes of limitations they seek to invoke.   *See* Hilbert Decl., Exs. 3 and 4.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    As another example, Defendants refer to Plaintiffs' "three prior complaints" repeatedly, in

2    attempt to cast aspersions on Plaintiffs' attempts to replead.   *See e.g.*, PLAYERS INC Motion,

3    pp. 1, 4.   In fact, however, one of Plaintiffs' amended complaints was merely to add another

4    named plaintiff without any other changes.

5    The SAC adequately states each of its claims under Federal pleading standards.   This is

6    so despite Defendants' overzealous arguments.    Furthermore, the Motions would require the

7    resolution of fact-specific issues that are improper at this stage.   For these reasons, and under the

8    *Twombly*[4] plausibility standard, the Court should deny the Defendants' motions.

9    **II.    SUMMARY OF ARGUMENT**

10    There are numerous reasons why Defendants' Motions to Dismiss must be denied in their

11    entirety.

12    First, with respect to Plaintiffs' claims for breach of contract, Defendants argue that

13    Plaintiffs have failed to allege either an agreement between them or its breach.   This argument

14    ignores both the specific allegations of the SAC and applicable authority.   Plaintiffs have

15    attached at least one of the contracts in dispute, even though this not required under either

16    California or Federal pleading standards.   Moreover, as explained below, Plaintiffs have pled

17    more than enough facts to put each of the Defendants on notice of their breach of contract claims.

18    Second, Plaintiffs also have alleged valid claims for breach of fiduciary duty.   Defendants

19    complain that Plaintiffs rest their ". . . breach of fiduciary claims <u>entirely</u> on the GLA."   This is

20    simply not true.   As in their prior pleadings, Plaintiffs still do not allege a fiduciary relationship

21    arising solely from the execution of a GLA.   Instead, consistent with this Court's June 4, 2007

22    Order, Plaintiffs have alleged that a fiduciary or special relationship arises from the entirety of the

23    relationship, including the execution of a GLA.   Defendants also argue that the existence of a

24    contract precludes a fiduciary duty between the parties.   As explained below, however, it is

25    possible for a fiduciary relationship to develop between contracting parties.   Indeed, even a

26    contract that *denies* the existence of a fiduciary relationship is not dispositive of whether a

27    fiduciary relationship exists.

28    ———————————
[4]    *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).

1    Third, with respect to Plaintiffs' claims under Section 17200, Defendants claim that

2  Plaintiffs have not alleged sufficient facts to establish harm to competition, false and misleading

3  statements, and "injury in fact" – all of which are fact-specific matters that cannot be decided on

4  these motions.   Putting this aside, Plaintiffs have pled more than sufficient facts to support their

5  claims under 17200.   For example, Plaintiffs have sufficiently alleged conduct that violates the

6  policy or spirit of the antitrust laws, which, despite Defendants' misguided attempt to apply

7  heightened pleading requirements never contemplated or adopted by the California courts or

8  legislature, is all that is required to state a claim under the "unfair" prong of 17200.   Plaintiffs

9  also have sufficiently stated a claim under the "fraudulent" prong of 17200 by putting Defendants

10  on notice of their misconduct as required by F.R.C.P. 9(b).   In addition, Plaintiffs have

11  sufficiently pled "injury in fact," including but not limited to, a loss of dues as a result of

12  Defendants' unfair competition.   Contrary to Defendants' argument, there is no basis for

13  dismissal of Plaintiffs' Section 17200 claim based on a contractual choice of law provision in a

14  sample GLA, especially since this Court has already determined that California law applies.

15  Lastly, Plaintiffs have sufficiently alleged actionable conduct in this State, not the least of which

16  is the harm that was caused by Defendants' exclusive agreement with Redwood City, California-

17  based EA Sports.

18    In an attempt to avoid Plaintiffs' 17200 claims, the NFLPA argues that it should receive

19  immunity because it is a union, notwithstanding its exclusionary practices to benefit a commercial

20  company which it partially owns.   This is a red herring.   Labor unions potentially benefit from

21  two distinct exceptions under the antitrust laws – a statutory exception and an non-statutory

22  exception.   As explained below, neither of these exceptions applies to the NFLPA's unfair and

23  fraudulent conduct.

24    The fourth reason to deny Defendants' motions concerns Plaintiffs' unjust enrichment

25  claims.   As before, Plaintiffs have sufficiently pled an unjust enrichment claim as an alternative

26  to their breach of contract claim.   At least one federal court in California has acknowledged this

27  possibility.   Moreover, none of the cases cited by Defendants are to the contrary.

28    The fifth and final reason to deny Defendants' motions is that Plaintiffs' have adequately

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

4

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    pled a claim for an accounting.    Accounting claims have been consistently recognized by

2    California courts.    Here, Plaintiffs allege that they need an accounting because for years

3    Defendants have revealed only sketchy and inadequate information to Plaintiffs despite numerous

4    requests dating as far back as 1994.    These facts are more than sufficient to sustain such a claim.

5        In addition to the arguments referred to above, Defendants seek to attack Plaintiffs' claims

6    – and, in particular, their claims for breach of contract, breach of fiduciary duty and unfair

7    competition under Section 17200 – on the ground that such claims are predicated on facts outside

8    the statute of limitations period.    This is untrue.    Many of the claims alleged by Plaintiffs fall

9    squarely within the four year statute of limitations period.    To the extent any of Plaintiffs' claims

10    involve conduct before the statute of limitations period, Plaintiffs have sufficiently alleged facts

11    to justify the tolling of such a period.

12        In sum, the SAC adequately states each of its claims under Federal pleading standards.

13    For this reason, and in light of Defendants' numerous mischaracterizations of fact and law, the

14    Court should deny the Defendants' motions.

15    **III.    ARGUMENT**

16        **A.    Legal Standard on Motion to Dismiss**

17        A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

18    the complaint.    *Falk v. General Motors Corp.*, ____ F. Supp. 2d __, 2007 WL 1970123, *2 (N.D.

19    Cal. July 3, 2007).    In considering a Rule 12(b)(6) motion, the court accepts all allegations of

20    material fact as true and construes them in the light most favorable to the nonmoving party.

21    *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).    A complaint attacked by a

22    Rule 12(b)(6) motion does not need detailed factual allegations.    However, a plaintiff must

23    proffer "enough facts to state a claim to relief that is plausible on its face."    *Bell Atl. Corp. v.*

24    *Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1960 (2007); *see also Falk*, 2007 WL 1970123 at *2

25    (citing, *inter alia*, Fed. R. Civ. P. 8(a)(2)).

26        **B.    The Breach of Contract Claim is Sufficiently Pled On Behalf of the GLA
                Class**

27

28    In seeking to dismiss the breach of contract claim, Defendants argue that Plaintiffs have

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

5

1  failed to allege either an agreement between them or its breach.   This argument ignores both the

2  specific allegations of the SAC and applicable authority.

3      Plaintiffs have attached at least one of the contracts in dispute (see Exhibit D to the SAC),

4  but this is not even necessary.   "In an action based on a written contract, a plaintiff may plead the

5  legal effect of the contract rather than its precise language."  *Wang & Wang LLP v. Banco Do*

6  *Brasil, S.A.*, 2007 WL 915232, * 3 (E.D. Cal. 2007) (Slip Copy) (Wang's claim is not defective

7  just because it does not state the contract terms verbatim or attach a copy of the contract) (*citing*

8  *Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co.*, 29 Cal. 4th 189, 198-99 (Cal. 2002)); *see*

9  *also Willson v. Bank of America*, 2004 WL 1811148, *4 (N.D. Cal. 2004) (denying motion to

10 dismiss claim for breach of contract observing plaintiff "need not allege specific terms of the

11 contract under federal notice pleading standards").

12     Like Defendants in this case, the defendant in *Banco* argued that "to state a claim under

13 California law for breach of written contract, the plaintiff must attach a copy of the contract or set

14 out its terms verbatim in the complaint."   *See, e.g.*, PLAYERS INC's Motion, p. 8; *see also*

15 *Banco*, 2007 WL 915232 at *3.   The court rejected the argument, determining instead that "better

16 California authority supports the contrary proposition."   *Banco* at *3.   Thus, "in an action based

17 on a written contract, a plaintiff may plead the legal effect of the contract rather than its precise

18 language."   *Banco* at *3 (citing *Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co.*, 29

19 Cal.4th 189, 198-99 (Cal. 2002)). [5]

20     Furthermore, in federal court, " . . . the relaxed pleading standard of Fed. R. Civ. P. 8(a) -

21 not the California standard  –  applies."   *Banco* at *3 (citing William W Schwarzer, A. Wallace

22 Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 8:23 ("[T]he *manner* in

23 which [state law] claims or defenses are raised [in federal court] is governed by the Federal

24 _____

[5]     Defendants attempt to escape the "better California authority" by piggybacking these
25 contrary authorities.   *See* NFLPA Motion to Dismiss, p. 8 ("Plaintiffs must either 'set out
   verbatim in the body of the complaint' the terms of the contract or attach and incorporate by
26 reference a copy of the written agreement . . . . Plaintiffs must *also* plead the legal effect of the
   contract.") *citing*, *Constr. Protective Servs., Inc. v. TIG Speciality Ins. Co.*   But *Constr.*
27 *Protective Servs., Inc. v. TIG Speciality Ins. Co.* actually holds:   "In an action based on a written
   contract, a plaintiff may plead the legal effect of the contract *rather than* its precise language."
28 *Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co.,* 29 Cal.4th 189, 198-99.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

6                    CONSOLIDATED OPPOSITION -
                     CASE NO. C07-0943 WHA

Rules.")).   Under this relevant standard, Plaintiffs' claim is not defective simply because it fails

to state the contract terms verbatim or attach a copy of the contract.   *Id.*

The SAC pleads the contract claim adequately, as follows:

- On information and belief, Adderley, Parrish and other members of the GLA Class (see Paragraphs 37-38 for a definition of the GLA Class) entered into one or more versions of Group Licensing Agreement(s) with PLAYERS INC and/or the NFLPA within the period of the statute of limitations.   The GLA form signed by Plaintiff Parrish in 1998 is attached as an example of one such agreement (**Exhibit D**). (SAC, ¶ 16);

- On information and belief, some NFL players may have also signed Group Licensing Agreement(s) directly with PLAYERS INC.   (SAC, ¶ 17);

- A version of the Group Licensing Agreement, *executed by members of the GLA Class including Parrish and Adderley* (**Exhibit D**), provided, in relevant part, that " . . . the monies generated by such licensing of retired player group rights <u>will be divided among the player</u>, the Players Assistance Trust and, to the extent necessary, may be used to cover the cost of administering the Retired Player Group Licensing Program." (SAC, ¶ 18) (emphasis added).

Moreover, Plaintiffs sufficiently allege their grievances in the SAC:

- With respect to those retired NFL players who signed GLAs with the NFLPA that have in turn been assigned to PLAYERS INC, PLAYERS INC has and had an obligation to provide payment regardless of whether a specific player's image is or was used (*see* **Exhibit D**, which was drafted solely by PLAYERS INC); as PLAYERS INC's website as of February 6, 2007 (**Exhibit F**) stated:

  ○ PLAYERS INC has become a fully integrated marketing company <u>for active and retired</u> NFL players.   These activities generate <u>guaranteed</u> <u>royalties</u> to PLAYERS INC and the players in addition to providing financial support to the NFLPA.   The organization is committed to meeting the needs of <u>all NFL players</u> in the National Football League by creating player marketing opportunities, increasing brand awareness and developing valuable business partnerships.

  ○ PLAYERS INC has positioned itself in the marketplace as a "brand" and has adopted the slogan "PLAYERS INC MEANS NFL PLAYERS."   The highly recognizable PLAYERS INC logo, which represents <u>all players in the NFL</u>, has become a valuable and recognizable icon that appears on <u>all licensed products</u> and is used in connection with <u>all sponsorships, promotions and PLAYERS INC events and properties.</u>   **Exhibit F** (emphasis added).   (SAC, ¶ 20);

- Each represented player should have received some payment as a result of signing a GLA.   (PLAYERS INC's website as of February 6, 2007 states: "Any players who are singled out to promote licensed products are paid <u>additional fees</u> for being highlighted on product packaging, point of sale, print ads or other collateral material, for autographs, appearances, product endorsements and commercials."   (emphasis added)).   Instead of providing payments to all retired players who signed a GLA, PLAYERS INC has, on information and belief, diverted millions of dollars from PLAYERS INC to the NFLPA in order to support the overhead, substantial salaries and perquisites of NFLPA management and employees.   Plaintiffs have an ownership interest in these funds.   (SAC, ¶ 21);

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

7

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

- Despite Defendants' obligations to Plaintiffs, an email from the then-president of PLAYERS INC (**Exhibit E**) states that only 358 of 3,500 retired players received payments in 2005. These payments amounted to a fraction of PLAYERS INC's NFL player licensing business. (SAC, ¶ 20).

Under the Federal Rules, these allegations sufficiently plead a breach of contract. *Banco*, at *3.[6] Furthermore, Defendants concede that: "Plaintiff Herbert Adderley ('Adderley') has signed GLAs and has participated in certain PLAYERS INC licensing programs for which he has received more than $13,000 in payments. Adderley's last GLA expired at the end of 2005." Hilbert Decl., Ex. 2 (Upshaw's April 3, 2007 Declaration, ¶ 10). More detail is not necessary to defeat a motion to dismiss.

Defendants also complain that the SAC lumps them together in their misdeeds. But a fair reading of the SAC demonstrates not only that each Defendant is on notice of the claims against it (*see, e.g.*, SAC, ¶¶ 12, 20, 25-27, 30, 33-35), but that Plaintiffs have brought each claim against each Defendant. *See* SAC, First through Fifth Causes of Action. Moreover, Defendants are operating as assignor and assignee with regard to the GLAs and, additionally, operate as parent and subsidiary. *See* SAC, ¶ 30 ("Through its assignment of the rights of the NFLPA, PLAYERS INC carries the power of the NFLPA."); *see also Professional Collection Consultants v. Hanada*, 53 Cal. App. 4th 1016, 1018-19 (1997) ("An assignee stands in the shoes of the assignor, acquiring all rights and liabilities"). Under relevant authority, the SAC thus fairly meets the standard of notice pleading.[7]

Furthermore, unlike in the *Boyle* and *Putkowski* cases cited by Defendants and discussed immediately below, the GLA Plaintiffs can show that they are entitled to the relief sought and that they have standing to assert their breach of contract claim. In *Boyle v. Madigan*, 492 F.2d 1180,

---

[6]    Indeed, despite their feigned confusion, Defendants seem clear on at least some of the express terms of their contracts. The NFLPA states: "the express terms of the 1998 GLA [] only require payment if the player's licensing rights are in fact utilized in a group licensing program." NFLPA Motion to Dismiss, pp. 9-10. Moreover the NFLPA states, with respect to the 2007 GLA, that "the NFLPA will use its 'best efforts to promote the use of NFL player images in group licensing programs' while the 1998 version of the GLA . . . contains no such language." *Id.*

[7]    At pages 6 and 17 of its brief, PLAYERS INC cites *Foley v. Bates*, 2007 WL 1430096 (N.D. Cal. 2007) to the contrary, but that case is inapt because, unlike the case at bar, it involved claims that could not even be asserted against some plaintiffs. *Id.* at *10

1182 (9th Cir. 1974), the court dismissed an injunctive action brought by plaintiffs on behalf of "themselves and all other persons who are now, have been, or will be incarcerated in the Santa Rita Rehabilitation Center, and who are now, or have in the past, or will suffer from physical or mental illnesses while so incarcerated."   The court found that, because on commencement of the action none of the named plaintiffs were incarcerated in Santa Rita Rehabilitation Center, and, therefore, none of the named plaintiffs would directly benefit from the injunction sought, the case should be dismissed.   *Id*.[8]   By contrast, the GLA Plaintiffs can show that they are entitled to the relief sought   –   *i.e.*, payments due under the GLAs.

Similarly, in *Putkowski v. Irwin Home Equity Corp.*, 423 F. Supp. 2d 1053 (N.D. Cal. 2006), the court dismissed a Fair Credit Reporting Act ("FCRA") claim because the plaintiff could not say what she received, if anything, and there was no way to determine whether she did or did not receive a firm offer of credit, as defined by the statute.   *Id.* at 1063.   By contrast, the GLA Plaintiffs need not comply with the statutory requirements of the FCRA, and they have also alleged that they are entitled to specific relief in the form of payments under the GLAs.   Any detail that might be lacking in the SAC as to the specific amounts due under the GLAs is the result of Defendants' refusal to account or otherwise provide information to Plaintiffs and is not a basis for dismissal of this claim.   Indeed, Defendants' refusal to provide information forms part of the basis of Plaintiffs' fiduciary duty claim.

### C.   Plaintiffs Have Sufficiently Alleged Breaches Of Fiduciary Obligations On Behalf of the GLA Class.

PLAYERS INC complains that Plaintiffs rest their ". . . breach of fiduciary claims <u>entirely</u> on the GLA."   PLAYERS INC's Motion, p. 20.   To the contrary, and consistent with their prior pleadings, Plaintiffs still do not allege a fiduciary relationship arising solely from the execution of a GLA.   Instead, Plaintiffs have alleged that a fiduciary or special relationship arises from the entirety of the relationship, including the execution of a GLA.   In addition, Plaintiffs have alleged a fiduciary relationship existing by virtue of an informal confidential relationship and/or

---

[8]      The court granted leave to amend to the plaintiff that sought money damages, but ultimately dismissed that claim *only* because that plaintiff failed to amend. *Id.* at 1182, n.1.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

9

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    agency.

2        In its June 4, 2007 Order denying, *inter alia*, PLAYERS INC's Motion for Judgment on

3    the Pleadings, this Court recognized that a special or confidential relationship giving rise to a

4    fiduciary relationship can occur where:   "(1) the vulnerability of one party to the other, (2)

5    results in the empowerment of the stronger party by the weaker which (3) empowerment has been

6    solicited or accepted by the stronger party and (4) prevents the weaker party from effectively

7    protecting itself."   June 4, 2007 Order, pp. 6-7 (citing *Richelle L. v. Roman Catholic Archbishop*,

8    106 Cal. App. 4th 257, 272 (Cal. App. 2003); *see also Recorded Picture Co. v. Nelson*

9    *Entertainment, Inc.*, 53 Cal. App. 4th 350, 370 (1997) (*citing Lynch v. Cruttenden & Co.*, 18 Cal.

10   App. 4th 802, 809 (1993) (a fiduciary duty is created where a person reposes trust and confidence

11   in another and the person in whom such confidence is reposed obtains control over the other

12   person's affairs); *Beery v. State Bar*, 43 Cal. 3d 802, 813 (1987) (The essence of a fiduciary or

13   confidential relationship is that the parties do not deal on equal terms, because the person in

14   whom trust and confidence is reposed and who accepts that trust and confidence is in a superior

15   position to exert unique influence over the dependent party.); *In re Daisy Sys. Corp.*, 97 F.3d

16   1171, 1178 (9th Cir. 1996) (Even though both parties were sophisticated corporations, the fact

17   that Bear Stearns was retained to advise Daisy in a type of transaction with which Daisy had no

18   experience suggests that the requisite degree of   "superiority" may have existed to support a

19   confidential relationship.).

20       The Court further recognized that "[a]gency relationships may be inferred or implied from

21   the conduct of the parties and the circumstances surrounding the events."   June 4, 2007 Order, p.

22   5 (citing *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1579-80 (1994)); *see also Borders*

23   *Online, LLC v. State Board of Equalization*, 129 Cal. App. 4th 1179, 1190-92 (2005); *Pollack v.*

24   *Lytle*, 120 Cal. App. 3d 931, 940 (1981), *overruled on other grounds; Beck v. Wecht*, 28 Cal. 4th

25   289 (2002); *see also* C.J.S., Agency § 43 and Cal. Jur., Agency, § 11 (an agency may be inferred

26   or implied as a matter of law from the words and conduct of the parties or the circumstance of a

27   particular case); C.J.S. Agency § 47 (an agency relationship may arise by operation of law and/or

28   be implied by law); *Michelson*, 29 Cal. App. 4th at 1575-76 (holding that "[t]he existence of an

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

10

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

agency is a factual question within the province of the trier of fact whose determination may not be disturbed on appeal if supported by substantial evidence")); *People v. Robertson*, 6 Cal. App. 514, 517 (1907) (citing, *inter alia*, *People v. Treadwell*, 69 Cal. 22d (1986); *People v. Royce*, 106 Cal. 187 (1894); *People v. Cobler*, 108 Cal. 541 (1895); *People v. Oldham*, 111 Cal. 648 (1896) ("[W]hen one assumes to act as agent for another, he may not, when challenged for these acts, deny his agency; that he is estopped not merely as against his assumed principal, but also against [third parties].").

Consistent with the Court's Order, Plaintiffs allege facts and conduct sufficient to give rise to an agency or confidential relationship:

- Defendants have created an agency relationship between themselves and the retired players, either by operation of law and/or as can be inferred or implied based on the conduct of the parties and the circumstances of the case. . . . *Defendants have enjoyed substantial benefits from these agency relationships, and Defendants should now be estopped from disavowing their resulting obligations.* (SAC, ¶ 22) (emphasis added);

- As the agent of those retired players who have signed a GLA, Defendants have assumed a confidential relationship with the retired players and are obligated to act with the highest duty of loyalty and regard for the interests of the retired players. . . . Those *retired players* who have signed GLAs for any given year are all, as individuals, *vulnerable to the size and economic power of Defendants*; their vulnerability empowers Defendants; this empowerment has been solicited and/or accepted by Defendants; and Plaintiffs and the putative class they represent are unable to effectively protect themselves from Defendants. Many retired players suffer from mental and physical disabilities as a result of their NFL careers. It would be *unfair and contrary to law to allow PLAYERS INC to reap the benefits of its purported representation – i.e.,* obtaining sole and exclusive right to negotiate with third parties like EA Sports – *but then disavow that relationship for purposes of avoiding the need to account for and/or fairly represent the retired players* who signed GLAs. (SAC, ¶ 23) (emphasis added);

- Defendants purport to have the sole and exclusive control over licensing contracts with vendors and yet provide no meaningful information to retired NFL players on such contracts. With respect to the vast sums of money that Defendants are able to obtain through their claim to represent retired NFL players who have signed GLAs, *Defendants control all of the material information and accounting* for funds due and owing to members of the GLA Class. (SAC, ¶ 25) (emphasis added);

- PLAYERS INC and the NFLPA have a continuing duty to GLA Class members (see Paragraphs 37-38) to serve the best interests of all retired NFL players who have signed GLAs, to maximize the collection of revenue, portions of which belong to members of the GLA Class; to accurately report such revenues and other material to members of the GLA Class; to accurately account for such monies; and to remit such monies to the members of the GLA Class in a timely fashion. *By virtue of, among other things, PLAYERS INC's and/or the NFLPA's position of control and the lack of information in the possession of GLA Class members*, Defendants stand in the position

of fiduciary to Plaintiffs and thus must account for amounts due and owing to Plaintiffs.   (SAC, ¶ 26) (emphasis added);

• PLAYERS INC and/or the NFLPA have *violated their fiduciary duties* to the retired players who signed GLAs in several additional ways:

○ Although Defendants have a complete monopoly on the basic information relevant to Plaintiffs . . . *Defendants have revealed only sketchy and inadequate information to Plaintiffs* in spite of numerous requests . . . ;

○ *PLAYERS INC has not, on information and belief, made diligent efforts to generate revenue* for members of the GLA Class; almost 90% of the GLA Class receive no money;

○ *PLAYERS INC has not, on information and belief, allocated opportunities to the members of the GLA Class* in any fair or equitable manner;

○ *PLAYERS INC and/or the NFLPA has not, on information and belief, distributed revenues to the members of the GLA Class that should have been distributed*, even to the small percentage of GLA Class members who have received some monies; and

○ PLAYERS INC has distributed monies to the NFLPA that have not benefited GLA Class members and in contravention of their duties to the Class.

(SAC, ¶ 27) (emphasis added).

    As a matter of law, these allegations support an inference that Defendants breached their fiduciary duties.   *See, e.g.*, June 4, 2007 Order, pp. 5-7; *see also Browning v. Yahoo! Inc.*, 2004 WL 2496183 at *3; *Holland*, 2007 WL 951826 at *4.   Furthermore, whether a fiduciary relationship exists between the parties and/or whether Defendants actually breached their fiduciary duties are questions of fact not properly resolved on this motion.   *See, e.g.*, *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474 (9th Cir. 2000); *see also*, *Holland v. Westport Ins. Corp.*, 2007 WL 951826 at *4 (Slip Copy) (N.D. Cal. March 28, 2007); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1575-76 (Cal. App. 1994); *Estate of Migliaccio v. Midland National Life Ins. Co.*, 436 F. Supp. 2d 1095, 1107 (C.D. Cal. 2006) (whether such a fiduciary or confidential relationship exists is typically a question of fact, not properly resolved on a Motion to Dismiss); *Persson v. Smart Inventions, Inc*, 125 Cal. App. 4th 1141, 1161 (Cal. App. 2005); (same); *see also In re Daisy Sys. Corp.*, 97 F.3d at 1178 ("[T]he existence of a fiduciary relation is a question of fact which properly should be resolved by looking to the particular facts and circumstances of the relationship at issue."); *Kudokas v. Balkus*, 26 Cal. App.

1   3d 744 (Cal. App. 1972) (the "[e]xistence of a confidential or fiduciary relationship depends on

2   the circumstances of each case and is a question of fact for the fact trier."); *Stokes v. Henson*, 217

3   Cal. App. 3d 187 (Cal. App. 1990) (inferring the existence of a fiduciary relationship between an

4   investment advisor and his clients on the basis of the surrounding facts).

5       Defendants' reliance on *Oakland Raiders v. Nat'l Football League,* 131 Cal. App. 4th

6   621, 642 (2005) is inapposite.   In that case, the court found "no merit to the argument that

7   Tagliabue was the Raiders' fiduciary because he signed a 1996 settlement agreement as

8   commissioner of the NFL on the League's behalf and on behalf of the NFL's member clubs.

9   This lone matter does not, of itself, constitute an agreement on Tagliabue's part to act as agent for

10  the Raiders." *Id.* (*citing Southern Pacific Thrift & Loan Assn. v. Savings Assn. Mortgage Co.*, 70

11  Cal. App. 4th 634, 639 (Cal. App. 1999) (mere use of word "trustee" in loan participation

12  agreement did not result in loan originator becoming fiduciary to financial institution)).   By

13  contrast, Plaintiffs have alleged more than the "lone matter" of the contract.   Furthermore, while

14  Plaintiffs concede that they did not have control over Defendants (other than choosing to enter or

15  terminate the GLA), Plaintiffs believe that an agency relationship can still be established by

16  estoppel.   Comments to both the Restatement (First) and (Second) of Agency note that:

> [O]ne acting for the benefit of another, without a manifestation of
> consent by the other, may subject himself to the liabilities of an
> agent at the election of   the principal.   Thus, one who purports to
> act on behalf of another but without the authority to do so is subject
> to liability to the other as if he were a disobedient agent if he affects
> the principal's interests either by binding the principal to a third
> person where he has apparent authority, or by disposing of or
> meddling with the principal's assets.

22  *See*, *e.g.*, Restatement (Second) Agency, § 15, Comment e (1958) (emphasis added); Restatement

23  (First) Agency, § 15, Comment d (1933) (same); *see also* Restatement (Second) Agency, § 430

24  ("One who, without the consent or manifestation of consent of another, purports to act as the

25  agent for such other is subject to liability for loss occasioned to the other by such conduct or for

26  the value of anything belonging to the purported principal which he has improperly used.");

27  Restatement (First) Agency, § 430 (same); Restatement (Third) Agency, § 8.02 ("An agent has a

28  duty not to acquire a material benefit from a third party in connection with transactions conducted

13

1   or other actions taken on behalf of the principal or otherwise through the agent's use of the

2   agent's position."); Restatement (Third) Agency, § 8.09, Comment b ("If an agent takes action

3   beyond the scope of the agent's actual authority [such as without the principal's consent] the

4   agent is subject to liability to the principal for loss caused the principal."); s*ee also Carpenter*

5   *Foundation*, 26 Cal. App. 3d 784, 791-92 (Cal. App. 1972) (implied agency formed through

6   conduct of party holding himself out as agent of another); *Whittaker v. Otto*, 188 Cal. App. 2d

7   619, 625 (Cal. App. 1961) (by holding oneself out as an agent, a party is later estopped from

8   using anything gained thereby as against its purported principle); CJS Agency § 48 (2007) (An

9   agency by estoppel may arise even where actual authority is absent; one professing to act as agent

10  for another may be estopped to deny his or her agency both as against the asserted principal and

11  third persons interested in the transaction in which he or she engaged.).

12          Defendants disregard this authority and argue that a contractual relationship – without

13  more – will not amount to a fiduciary relationship.   *See, e.g.*, PLAYERS INC's Motion to

14  Dismiss, p. 21 (citing *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 30-31 ("[T]he contractual

15  right to contingent compensation in the control of another has never, *by itself*, been sufficient to

16  create a fiduciary relationship *where one would not otherwise exist*.").   Plaintiffs have never

17  disputed this position, but, as detailed above, Plaintiffs do not allege a fiduciary relationship

18  based on the GLA standing alone.

19          Absent any authority, Defendants also suggest that the existence of a contract precludes a

20  fiduciary duty between the parties.   PLAYERS INC's Motion, p. 21.   To the contrary, it is

21  possible for a fiduciary relationship to develop between contracting parties.   *See*, *e.g.*, *Michelson*,

22  29 Cal. App. 4th at 1579 (fiduciary relationship exists where a contracting party became agent of

23  other contracting party); *see also Rosary-Take One Production Co. Ltd. Partnership v. New Line*

24  *Distribution, Inc.*, 1996 WL 79327, *1 (S.D.N.Y. 1996) (construing California law) ("Plaintiff

25  correctly asserts that it is possible, as a matter of law, for a fiduciary relationship to develop

26  between contracting parties."); *see also Agair Inc. v. Shaeffer*, 232 Cal. App. 2d 513, 517 (Cal.

27  App. 1965).

28          Indeed, even a contract that *denies* the existence of a fiduciary relationship is not

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

14

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    dispositive of whether or not a fiduciary relationship exists. *April Enter., Inc. v. KTTV*, 147 Cal.

2    App. 3d 805, 820 (Cal. App. 1983). In *April Enter*, respondents denied the existence of a joint

3    venture and fiduciary duty because the contract explicitly denied the existence of a joint venture.

4    The court rejected this argument "since the conduct of the parties may create a joint venture

5    despite an express declaration to the contrary." *April Enter.*, 147 Cal. App. 3d at 820.

6    Similarly, in *Rosary-Take One Prod.*, the court held "[t]hat plaintiff's claim of breach of fiduciary

7    duty is not barred as a matter of law by the language in the parties' Distribution Agreement

8    deeming their relationship to be one of independent contractors." *Rosary-Take One Prod.*, 1996

9    WL 79327, at *1.

10        Despite Defendants' misreading of *Goodworth Holdings Inc. v. Suh*, 239 F. Supp. 2d 947

11    (N.D. Cal. 2002), this Court has not concluded otherwise. In *Goodworth Holdings*, this Court

12    held that "[a] confidentiality agreement does not give rise to a fiduciary relationship unless it does

13    so expressly." *Id*. at 960. The Court did not hold, as Defendants argue, that a fiduciary

14    relationship only arises out of an ordinary contractual relationship when it is so stated. *See*

15    PLAYERS INC's Motion, p. 21. Likewise, the decision offers no support for Defendants'

16    argument that Plaintiffs cannot plead a fiduciary duty claim simply because "[t]here is no such

17    fiduciary relationship stated in any of the GLAs cited in the SAC." *Id*.

18        **D.    Plaintiffs Have Adequately Alleged Claims For Unfair and/or Fraudulent**
         **Business Practices Under Section 17200 on Behalf of All Retired Players**
19

20        Plaintiffs have alleged harm to competition, false and misleading statements, and "injury

21    in fact" in support of their unfair competition claim, claims which must be taken as true at the

22    pleading stage. SAC, ¶¶ 12-15, 25, 30-35, 71-80. Whether Defendants have actually harmed

23    competition or engaged in fraudulent business practices and/or whether Plaintiffs have actually

24    suffered loss of money or property are matters that cannot be decided on this motion. *See, e.g.*,

25    *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (Cal. App. 1980) (" . . . if [the]

26    pleading states a prima facie case of harm, having its genesis in an apparently unfair business

27    practice, the defendant should be made to present its side of the story.")). Because Defendants'

28    motions would require the resolution of these fact-specific issues, the Court should deny them.

**1.    Plaintiffs Have Sufficiently Alleged Conduct Under The "Unfair" Prong of Section 17200.**

In support of their unfair competition claim, Plaintiffs specifically allege conduct that violates the policy or spirit of the antitrust laws and has harmed, or threatens to harm, competition for the marketing and licensing of NFL player images:

- PLAYERS INC purports to have the sole and exclusive control over licensing contracts with vendors (SAC, ¶¶ 12, 25);

- PLAYERS INC has sought to become the *exclusive representative for active and retired players with respect to licensed products, informing retired NFL players that " . . . licensees such as EA Sports are permitted to secure retired NFL player rights only from PLAYERS INC, not from any other source . . . "* (SAC, ¶¶ 13, 32, 74, 76 and Ex. B) (emphasis added);

- PLAYERS INC's licenses with vendors emphasize exclusivity, *precluding licensees from seeking to secure rights from any other source* (including the players themselves) thereby increasing PLAYERS INC's economic dominance (SAC, ¶¶ 14-15, 30-32 and Exs. C, D) (emphasis added);

- *PLAYERS INC has engaged in predatory and unlawful conduct in connection with marketing of retired NFL player image and downstream markets like videogames.* This conduct affects all retired players, regardless of whether or not they have signed a GLA (SAC, ¶ 27) (emphasis added);

- The NFLPA *dominates the market for NFL player marketing* by virtue of its representing almost all current NFL players under the CBA and thousands of retired players pursuant to GLAs, *those potential licensees who seek to use the names and likenesses of current and former NFL players are forced to deal with the NFLPA. Through its assignment of the rights of the NFLPA, PLAYERS INC carries the power of the NFLPA.* (SAC, ¶ 30 (emphasis added));

- PLAYERS INC's exclusive licenses have significant anti-competitive effects, (particularly PLAYERS INC's license with Electronic Arts) by:

  ○ reducing price competition

  ○ limiting choices to consumers

  ○ curbing creativity

  ○ raising prices to the consumer (SAC, ¶ 32).

- PLAYERS INC's restraints are unreasonable and are designed to exclude competitors from the market and enhance the economic domination of PLAYERS INC. PLAYERS INC's unfair conduct *has retrained competition by raising prices, decreasing competition for the marketing or licensing of NFL player images and by depriving potential licensees, as well as retired NFL players, of free and open competition for licensing and marketing opportunities.* (SAC, ¶¶ 33-35, 74-77) (emphasis added).

1    As detailed below, these allegations are more than sufficient to state a claim under Section

2    17200.

3                    a.    **Plaintiffs Need Not Satisfy The Pleading Requirements Of The**
                          **Federal Or State Antitrust Laws To State An Unfairness Claim**
4                          **Under Section 17200.**

5    Defendants disregard the SAC allegations and attempt to dismiss Plaintiffs' unfair

6    competition claim under heightened pleading requirements never contemplated or adopted by the

7    California courts or legislature.   Defendants ignore, for example, that Section 17200 was enacted

8    as a broad and sweeping statute, embracing not just violations of the antitrust laws but also:

9                    . . . anything that can properly be called a business practice and that
                    at the same time is forbidden by law.   [Citations.] It governs 'anti-
10                   competitive business   practices' as well as injuries to consumers,
                    and has as a major purpose 'the preservation of fair business
11                   competition.' [Citations.]"

12   *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 851 (Cal. App. 2002) (citing *Cel-Tech*

13   *Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (Cal. 1999)

14   (Cel-Tech)); *see also Rubin v. Green*, 4 Cal. 4th 1187, 1200 (Cal. 1993) and *Bank of the West v.*

15   *Superior Court*, 2 Cal. 4th 1254, 1263-64 (Cal. 1992) (Section 17200 was "one of the so-called

16   'little FTC Acts' of the 1930's, enacted by many states in the wake of amendments to the Federal

17   Trade Commission Act enlarging the commission's regulatory jurisdiction to include unfair

18   business practices that harmed, not merely the interests of business competitors, but of the general

19   public as well."); *People ex rel. Mosk v. National Research Co. of Cal.*, 201 Cal. App. 2d 765,

20   770-74 (Cal. App. 1962) (in construing the unfair competition law, courts have drawn upon

21   judicial interpretation of the closely parallel provisions of the Federal Trade Commission Act); 15

22   U.S.C. § 45(n) (under FTC Act Amendments of 1994, unfair acts and practices are broadly

23   defined to include anything that "causes or is likely to cause substantial injury to consumers

24   which is not reasonably avoidable by consumers themselves and not outweighed by

25   countervailing benefits to consumers or to competition."); *Cel-Tech*, 20 Cal. 4th at 185 (in

26   determining what constitutes unfair practices " . . . we may turn for guidance to the jurisprudence

27   arising under the 'parallel' . . . section 5 of the Federal Trade Commission Act."); *Sun*

28   *Microsystems Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992, 999 (N.D. Cal. 2000) (Section 5 of the

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

17

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    FTC is not confined to antitrust violations).

2        As the court in *Cel-Tech* explained, Section 17200 has a broad scope for a reason:

3            [t]he Legislature ... intended by this sweeping language to permit
             tribunals to enjoin on-going wrongful business conduct in whatever
4            context such activity might occur.   Indeed, the section was
             intentionally framed in its broad, sweeping language, precisely to
5            enable judicial tribunals to deal with the innumerable 'new schemes
             which the fertility of man's invention would contrive.'
6

7    *Cel-Tech*, 20 Cal. 4th at 181 (citing, *inter alia*, *American Philatelic Soc. v. Claibourne*, Cal. 2d

8    689, 698 (1935)); *see also In re Acacia Media Technologies Corp.*, 2005 WL 16883660, *5 (N.D.

9    Cal. 2005) (citing *Motors*, 102 Cal. App. 3d at 740) (the unfair prong of Section 17200 is

10   "intentionally broad, allowing courts maximum discretion to prohibit new schemes to defraud.").

11       Unlike the unlawful prong of Section 17200, which requires a plaintiff to allege the

12   predicate acts of the statute or law allegedly violated, the unfair prong does not require violations

13   of a separate law.   *See*, *e.g.*, *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022,

14   1026 (N.D. Cal. 2005).   In particular, the unfair prong does not require a violation of the antitrust

15   laws.   *See*, *e.g.*, *Cel-Tech*, 20 Cal. 4th at 185-87; *see also Chavez v. Whirlpool*, 93 Cal. App. 4th

16   363, 375 (Cal. App. 2001) (an "unfair" practice need not violate an antitrust law to be actionable

17   under Section 17200); *People's Choice Wireless, Inc. v. Verizon, Inc.*, 131 Cal. App. 4th 656, 668

18   (Cal. App. 2005) ("*Cel-Tech* does not require an antitrust violation in order to state a Section

19   1720[0] claim.").   Indeed, if an antitrust violation were required to satisfy the unfair prong of

20   17200, there would be no need for that prong, and the authoritative language of *Cel-Tech*

21   regarding incipient antitrust violations, violations of the spirit of the anti-trust laws, and/or

22   violations comparable to the antitrust laws would be rendered meaningless.

23       In short, no California court has agreed with Defendants' contention that a plaintiff must

24   allege the elements of an antitrust claim in order to state a Section 17200 claim, nor would it

25   make any sense to eviscerate this broad statute through such a reading.   To the contrary, several

26   courts have confirmed that unfair claims were sufficiently pled even absent allegations

27   concerning the specific elements of an antitrust claim.   *See*, *e.g.*, *Silicon Image*, 2007 WL

28   1455903 at *1-2 (finding that plaintiff had alleged claim for unfair competition, despite lack of

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

18

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    any allegations of the specific elements of an antitrust claim); *Acacia Media*, 2005 WL 16883660

2    at *5 (denying motion to dismiss 17200; under *Cel-Tech* standards, plaintiff sufficiently alleged

3    "unfairness" not by alleging detailed elements of antitrust claim, but rather by alleging that

4    defendant initiated a patent infringement lawsuit in bad faith; the effect of such conduct was

5    comparable to a violation of the antitrust laws); *see also Quelimane Co., Inc. v. Stewart Title*

6    *Guar. Co*., 19 Cal. 4th 26, 47-48 (Cal. 1998) (particularized allegations of unfair competition

7    based on a refusal to deal not required to state a claim under Section 17200); *Motors, Inc*., 102

8    Cal. App. 3d at 742 (allegations of price discrimination were sufficient to state a claim under

9    17200 even though they would not state a cause of action under Cartwright Act).

10                          **b.      The Vast Majority Of Defendants' Authority Is Irrelevant To**
                                    **Whether Plaintiffs Have Adequately Alleged A Claim Under**
11                                  **The Unfairness Prong.**

12          Instead of addressing this relevant authority, Defendants attempt to distract the Court with

13    cases that have nothing to do with the central issue on these motions – *i.e.*, whether Plaintiffs

14    have sufficiently alleged a claim under Section 17200.   PLAYERS INC's Motion to Dismiss, pp.

15    11-15.   Most of Defendants' cases do not even address a Section 17200 claim, let alone the

16    pleading requirements for a Section 17200 claim.   *Id*.   Other cases cited by Defendants address

17    the pleading requirements for an antitrust claim, but they do not address a Section 17200 claim,

18    and they do not hold that antitrust pleading requirements would apply to a Section 17200 claim,

19    as PLAYERS INC suggests.   *Id*.

20          A handful of cases cited by Defendants address a Section 17200 claim, but they also do

21    not evaluate whether a plaintiff has properly pled such a claim.   Instead, those cases evaluate

22    whether a Section 17200 claim could withstand summary judgment and/or whether a Section

23    17200 claim was properly removed to federal court – questions not relevant to these motions.

24          For example, Defendants cite to this Court's decision in *Nat'l Credit Reporting*, and

25    misleadingly suggest that it requires Plaintiffs to allege the elements of an antitrust claim in order

26    to state a claim under Section 17200.   PLAYERS INC's Motion to Dismiss, p. 13, and n. 12

27    (citing *Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Solutions, Inc*., 2004 WL 1888769,

28    *1-2 (N.D. Cal. 2004)).   To the contrary, this Court in *Nat'l Credit Reporting* did not address the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

19

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    pleading requirements for a Section 17200 claim.   Rather, the Court concluded that a plaintiff

2    could not avoid removal of state law claim when the conduct underlying that claim would violate

3    federal antitrust claims.   *Nat'l Credit Reporting,* 2004 WL 1888769, at *1-2.

4            Unlike in *National Credit Reporting,* federal jurisdiction is not at issue, nor do Plaintiffs

5    dispute that the underlying conduct at issue violates the policy and spirit of the antitrust laws.

6    *Id.,* 2004 WL 1888769 at *1-2; *see also Cel-Tech Communications,* 20 Cal. 4th at 186-87 (Cal.

7    1999)   (court remanded unfair competition claim for re-trial); *Aguilar v. Atlantic Richfield Co.,*

8    25 Cal. 4th 826 (Cal. 2001) (cited at PLAYERS INC's Motion, p. 11, n. 11) (on summary

9    judgment, court evaluated whether triable issues of fact existed as to Section 17200; court did not

10   address pleading requirements for such a claim); *RLH Indus., Inc. v. SBC Communications, Inc.,*

11   133 Cal. App. 4th 1277 (Cal. App. 2005) (cited at PLAYERS INC's Motion, pp. 11-12, n. 11; p.

12   13, n. 13) (holding that there was no evidence of harm to competition, and on that basis granting

13   summary judgment on 17200); *Watson Labs., Inc. v. Rhone-Poulene Rorer, Inc.,* 178 F. Supp. 2d

14   1099, 1117-18 (C.D. Cal. 2001) (cited at PLAYERS INC's Motion, p. 12, n. 11) (on summary

15   judgment, court held that evidence of harm to competition was not sufficient to survive summary

16   judgment; court noted that it had "already ruled that the § 17200 claim could proceed beyond the

17   pleading stage.   Now the question is whether this claim must go to trial."); *Redding v. St. Francis*

18   *Med. Ctr.,* 208 Cal. App. 3d 98 (Cal. App. 1989) (cited at PLAYERS INC's Motion, p. 13, n. 15)

19   (court affirmed denial of preliminary injunction after balancing evidence supporting plaintiff's

20   claim against evidence of pro-competitive effects; court did not address pleading requirements for

21   such a claim).

22            **c.      The Handful Of Defendants' Cases Which Dismissed A  Claim
                        Under The Unfair Prong Are Inapt.**
23

24           Of the thirty-plus cases cited by Defendants in this Section, only four actually evaluated

25   whether a plaintiff had properly *pled* a Section 17200 claim.   PLAYERS INC's Motion, pp. 11-

26   15 (citing *Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.,* 138 Cal.

27   App. 4th 1215 (Cal. App 2006); *Gregory,* 104 Cal. App. 4th 845; *Chavez,* 93 Cal. App. 4th 363;

28   *People's Choice Wireless,* 131 Cal. App. 4th 656).   But none of these cases support dismissal of

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

20

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    Plaintiffs' claim.   In fact, not one of them dismissed a Section 17200 claim because the plaintiff

2    failed to allege the technical elements of a state or federal antitrust claim.   Instead, the courts

3    dismissed the Section 17200 claims on grounds not at issue here -- because the plaintiff either

4    failed to allege harm to competition and/or alleged conduct that had been found "permissible as a

5    matter of law" under the antitrust laws.

6          In *Stevenson*, for example, the court dismissed a 17200 claim because the gist of

7    plaintiff's complaint was that defendant engaged in pro-competitive conduct, harmful not to

8    competition but *only* to the plaintiff.   *Stevenson*, 138 Cal. App. 4th at 1225.   Relying on *Cel-

9    Tech*, the court noted that "[i]njury to a competitor is not equivalent to injury to competition; only

10   the latter is the proper focus of antitrust laws."   *Id*., 138 Cal. App. 4th at 1225 (citing *Cel-Tech*,

11   20 Cal. 4th at 186)).

12         By contrast to the *Stevenson* allegations, Plaintiffs *have* alleged harm not just to

13   themselves, but to competition as a whole.   *See*, *e.g.*, SAC, ¶¶ 30-35, 74-77 (through dominant

14   power over the marketing of retired NFL player images, PLAYERS INC has forced potential

15   licensees to deal exclusively with it; exclusive agreements have limited consumer choice, curbed

16   creativity and led to higher prices; PLAYERS INC's restrictions are designed to exclude

17   competitors from the market and enhance PLAYER INC's economic domination; unfair conduct

18   has increased prices for the consumer, decreased competition for marketing or licensing of NFL

19   player images, and deprives potential licensees and retired NFL players of free and open

20   competition for licensing and marketing opportunities).

21         Similarly, in *Gregory,* the plaintiff did not even allege a theory that violated the policy or

22   spirit of the antitrust laws.   Rather, it alleged that defendant's refusal to offer a lease violated

23   Health and Safety Code Section 33035 (which generally prohibits urban blight and sprawl) and

24   was thus unfair under Section 17200.   *Gregory*, 104 Cal. App. 4th at 855-56.   Section 33035

25   does not allow for a private remedy, however, and, because plaintiff alleged no other theory in

26   support of its Section 17200 claim, the court dismissed it.   *Id*., at 856.   In doing so, the court

27   explicitly noted that:

28          [the plaintiff] . . .   was given an opportunity to state an alternative

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

21

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1

theory under the antitrust laws, *which might indeed present a fact-intensive issue*, but made no legally cognizable effort to do so.

2

*Id.*, 104 Cal. App. 4th at 857 (emphasis added).    The *only* allegation in *Gregory* related to

3

conduct that violated the spirit or policy of the antitrust laws was the statement that defendant

4

"unfairly restrain[ed] market competitors and economic competition based on price, service and

5

quality."   *See*, *e.g.*, *Gregory*, 104 Cal. App. 4th at 856.    By contrast, Plaintiffs have alleged far

6

more than one conclusory sentence in support of their unfair competition theory.    SAC, ¶¶ 12-15,

7

25, 30-35, 74-77.

8

Under *Gregory* or any other relevant standard, Plaintiffs have sufficiently alleged a

9

violation of the "policy or spirit of the antitrust laws".    *Gregory*, 104 Cal. App. 4th at 856-57; *see*

10

*also Cel-Tech*, 20 Cal. 4th at 187 (conduct whose effect is comparable to or the same as a

11

violation of the antitrust laws violates Section 17200).    Whether Plaintiffs ultimately prove such

12

harm to competition is irrelevant to the inquiry on this motion.    *See*, *e.g.*, *Gregory's*, 104 Cal.

13

App. 4th at 856 ("The determination of unfair competition often involves a weighing process that

14

requires a full examination of the relevant facts."); *see also People v. McKale*, 25 Cal. 3d 626,

15

635 (Cal. 1979) ("'What constitutes "unfair competition"   ... under any given set of

16

circumstances is a question of fact ....' [Citation.]").

17

Likewise, the *Chavez* decision is readily distinguished.    The *Chavez* court did not discuss

18

the specific pleading requirements of Section 17200.    Instead, it held that because the only

19

allegedly wrongful conduct had been determined *permissible as a matter of law* under the

20

antitrust laws, it could not be considered "unfair" under Section 17200.    *Chavez*, 93 Cal. App.

21

4th at 374.    In *Chavez*, the only allegedly wrongful conduct at issue was that the defendant

22

manufacturer unilaterally suggested a minimum resale price and that its re-seller unilaterally

23

decided to comply.    *Id.*    Under the Supreme Court's decision in *Colgate*, such conduct alone

24

could not possibly be considered unlawful or harmful to competition and thus could not be

25

considered "unfair" under Section 17200.    *Id.* at 375 (referencing *United States v. Colgate & Co.*,

26

250 U.S. 300, 307 (1919) (upholding right of manufacturer to unilaterally determine price and

27

refuse to do business with distributors who depart from it); *Cel-Tech*, 20 Cal. 4th at 186-87

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

22

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1  (noting that plaintiff may not plead around an "absolute bar to relief" simply by recasting a claim

2  under Section 17200; but, the rule does not prohibit an unfair competition claim merely because

3  some other statute, such as an antitrust statute, does not prohibit the challenged conduct)).

4      By contrast, Plaintiffs have not alleged that PLAYERS INC engaged in unilateral resale

5  price maintenance or any other conduct that is considered presumptively reasonable or condoned

6  under the antitrust laws.   *See, e.g.*, SAC, ¶¶ 30-35, 74-77; *see also* 15 U.S.C. § 14 (exclusive

7  dealing is explicitly prohibited under the Clayton Act when the effect of the arrangement may be

8  to lessen competition or tend to create a monopoly); *Tampa Electric Co. v. Nashville Coal Co.*,

9  365 U.S. 320, 327-29 (1961) (exclusive dealing arrangements are not *per se* lawful under the

10 Sherman Act); *United States v. Microsoft Corp.*, 253 F.3d 34 (D. D.C. 2001) (no safe harbor for

11 exclusive dealing arrangements under antitrust laws; rather, monopolistic use or exclusive dealing

12 may give rise to Sherman Act violation)).

13     PLAYERS INC also ignores that the *Chavez* court explicitly held:

14          We do not hold that in all circumstances an "unfair" business act
            or practice must violate an antitrust law to be actionable under the
15          unfair competition law.  Instead we hold that conduct alleged to be
            "unfair" because it unreasonably restrains competition and harms
16          consumers, such as the resale price maintenance agreement alleged
            here, is not "unfair" if the conduct is deemed reasonable and
17          condoned under the antitrust laws.

18 *Chavez*, 93 Cal. App. 4th at 375 (emphasis added).   If anything, the *Chavez* decision – like *Cel-*

19 *Tech* – confirms that Plaintiffs need *not* establish or allege a violation of the antitrust claims to

20 fall under Section 17200.

21     For several reasons, Defendants' reliance on *People's Choice* is also misplaced.   Unlike

22 the case at bar, the plaintiffs in *People's Choice* made no allegation that defendant's conduct

23 threatened an incipient violation of the antitrust laws, and thus the claims at issue here are not

24 analogous.   *People's Choice Wireless*, 131 Cal. App. 4th at 663, n. 2.   As in *Stevenson*, the

25 plaintiff in *People's Choice* complained of conduct which harmed only it, not the consumer and

26 not competition:

27          [w]hat shines through most clearly in the complaint is that
            Verizon's conduct has injured the Independent Dealers.   But, as
28          Cel-Tech teaches, injury to competitors is not the same thing as

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

23

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

injury to competition, and we may only consider the latter.

*People's Choice*, 131 Cal. App. 4th at 666.   By contrast, Plaintiffs have alleged harm to competition and to the consumer – precisely the type of conduct that violates the policy and spirit of the antitrust laws.   *Cel-Tech*, 20 Cal. 4th at 186-87; *see also* SAC, ¶¶ 12, 25, 30-35, 74-77.

As in *Chavez*, the *People's Choice* court further recognized that "*Cel-Tech* does not require an antitrust violation in order to state a Section 172[00] claim." *Id.*, 131 Cal. App. 4th at 668.   It held, however, that because a mere refusal to deal with a competitor (the only allegedly wrongful conduct at issue) did not violate the spirit or policy of the antitrust laws, such conduct could not trigger an "unfair" violation under Section 17200 either.   *Id.*, 131 Cal. App. 4th at 667 ("[u]nless there is an exception, the right to refuse to deal remains sacrosanct.").   Plaintiffs have not alleged a "sacrosanct" refusal to deal, but rather conduct that squarely violates the policy and spirit of the antitrust laws.   *See*, *e.g.*, *Cel-Tech*, 20 Cal. 4th at 182; *see also* 15 U.S.C. § 14; *Tampa Electric Co.*, 365 U.S. at 327-29.

### 2.    Plaintiffs' Allegations Are Sufficiently Specific To State A Claim Under The "Fraudulent" Prong Of Section 17200.

Contrary to Defendants' argument, Plaintiffs' Section 17200 claim has also more than met the particularity requirement of Rule 9(b).   Rule 9(b) of the Federal Rules of Civil Procedure provides that in all averments of fraud, the circumstances constituting fraud shall be stated with particularity.   *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-1104 (9th Cir. 2003).   In order to comply with the requirements of Rule 9(b), the circumstances constituting the alleged fraud need only be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."   *See Meinhold v. Spectrum*, 2007 WL 1456141, *2 (E.D. Cal. May 16, 2007) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)); *see also Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) (To satisfy Rule 9(b), "a plaintiff must set forth more than neutral facts necessary to identify the transaction.   The plaintiff must set forth what is false or misleading about a statement and why it is false.").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

24

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    Here, Plaintiffs have provided Defendants with sufficiently specific allegations to give it

2    "notice of the particular misconduct" they must defend against.   These statements, many of

3    which appeared on the NFLPA's and/or PLAYERS INC's websites – *see*, *e.g.*, SAC, ¶ 8 – are

4    hardly secret, and it is alleged clearly that, like all statements on websites, they were intended to

5    be viewed by the public including plaintiffs.   SAC, ¶ 34.   Specifically, Plaintiffs allege that

6    Defendants have made the following fraudulent claims to retired players and the general public

7    (including potential licensees such as EA Sports):

8    • the activities of PLAYERS INC benefit every retired player by paying "... 40% of [its]
     revenue to [Defendant] NFL Players Association as a royalty ". . . allow[ing] the

9    NFLPA to provide extensive services and benefits to retired NFL players."

10   • the GLAs are "non-exclusive," whereas the language of one or more of the forms of
     the GLAs purports to "exclusively" grant certain rights to the NFLPA;

11

12   • all retired players, including but not limited to those who signed a GLA, will
     effectively receive a guaranteed minimum payment;

13   • PLAYERS INC represents specific numbers of retired NFL players, which numbers
     are inconsistent and not reconcilable;

14

15   • promises that all retired players would receive royalty payments pursuant to the
     GLAs;

16   • Defendants were the sole and exclusive representative of all NFL players with regard
     to commercial marketing and licensing opportunities;

17

18   • the only opportunity to get paid for marketing or licensing opportunities was to enter
     into a GLA with PLAYERS INC and/or the NFLPA.

19   *See*, *e.g.*, SAC, ¶¶ 34, 59, 72, and 75.   That such statements are fraudulent has now been

20   established by PLAYERS INC'S Response to Request for Admission No. 1 on August 1, 2007:

21   "With respect to its previous statements regarding 'representing' specific numbers of retired

22   players, Players Inc was indicating that it had access to certain numbers of retired players via the

23   NFLPA Retired Players Association, and that Players Inc had the ability to solicit the

24   participation of such players in licensing activities to the extent that potential third-party licensees

25   indicated an interest in pursuing licensing opportunities with such players."   Hilbert Decl., Ex. 1.

26   Defendants rely primarily on *Meinhold v. Spectrum* and *Brothers v. Hewlett-Packard Co.*

27   for their contention that Plaintiffs' allegations above are inadequate under Rule 9(b).   But they

28   disregard that the plaintiff in *Meinhold* did not meet the Rule 9(b) requirement because he "failed

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

25

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    to identify any specific statement made by defendant, let alone explain why such statements were

2    fraudulent." *Meinhold*, 2007 WL 1456141, *6 (emphasis added).   As detailed above, unlike the

3    plaintiff in *Meinhold*, Plaintiffs have identified a litany of misrepresentations made by the

4    NFLPA and/or PLAYERS INC.

5        Similarly, the *Brothers* court dismissed a complaint pursuant to Rule 9(b) where the

6    plaintiff failed to allege that "HP made *any* alleged misrepresentation with knowledge that the

7    statement was false."  *Brothers*, 2006 WL 3093685, *6 (emphasis added).   Here, Plaintiffs have

8    repeatedly alleged that the NFLPA and/or PLAYERS INC knowingly made false and misleading

9    statements to retired players and third parties, and have even gone one step further in alleging

10   their purpose for making these false statements.   *See*, *e.g.* SAC, ¶¶ 34, 72, 73, and 75.

11       As set forth above, Plaintiffs have identified with specificity the statements upon which its

12   Section 17200 claim are based and whom those statements were intended to mislead.   Plaintiffs

13   have thus met the specificity requirements of Rule 9(b), because both the NFLPA and PLAYERS

14   INC are on notice of the particular misconduct alleged.   *See*, *e.g. Cooper*, 137 F.3d at 627

15   (holding that particularity requirements were met because "the complaint identifies circumstances

16   of the alleged fraud so that defendants can prepare an adequate answer" despite the fact that the

17   complaint "does not describe in detail a single specific transaction" or "a precise time frame.")

18   Because the policy concerns of Rule 9(b) have been met, Defendants' Rule 9(b) argument should

19   be rejected.

20           **3.    Plaintiffs Have Adequately Alleged Injury In Fact.**

21       Defendants offer no basis for dismissal of Plaintiffs' Section 17200 claim based on a lack

22   of standing.   PLAYERS INC's Motion, pp. 9-11, 15.   Plaintiffs do not dispute the need to allege

23   "injury in fact" in order to establish a Section 17200 claim.   However, Plaintiffs' SAC contains

24   specific allegations related to injury in fact:

25    • Parrish, Adderley and Roberts are competitors and/or potential competitors with the
         NFLPA and PLAYERS INC for the marketing of their respective images (SAC, ¶¶ 4-
26       6);

27    • PLAYERS INC represented that " . . . every retired player has benefited from
         PLAYERS INC's creation . . . [b]ecause 40% of PLAYERS INC's operating revenue
28       is paid to the NFLPA as a royalty . . . This allows the NFLPA to provide extensive

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

26

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

services and benefits to retired players . . ."   But, the NFLPA does not provide "extensive" services and benefits to retired players, even to those retired players who have chosen to pay the $100 annual fee to join the NFLPA's retired member program (SAC, ¶¶ 24, 34);

• Plaintiffs have lost money and property, including the opportunity for licensing and marketing opportunities foreclosed via PLAYERS INC's exclusive licensing agreements (SAC, ¶ 33);

• Members of the public, including Plaintiffs, *have been deceived* by Defendants' false and misleading statements (SAC, ¶¶ 34, 78);

• PLAYERS INC has . . . effectively cut off any avenues for retired NFL players to deal directly with licensees or sponsors such as TOPPS and Electronic Arts (which, according to PLAYERS INC's website as of February 6, 2007, is the world's largest video game software manufacturer) (SAC, ¶ 35);

• Plaintiffs, and each member of the two Section 17200 Classes, have suffered injury in fact, and have lost money or property (including but not limited to dues payments to the NFLPA) *as a result of Defendants' unfair competition*. (SAC, ¶ 79 (emphasis added).

Defendants offer no authority that Plaintiffs need to allege anything more to survive this motion.

In fact, Defendants cite only one case where an unfairness claim was dismissed for lack of alleged "injury in fact."   PLAYERS INC's Motion, pp. 9-10 (citing *Cryoport Sys. v. CNA Ins. Cos.*, 149 Cal. App. 4th 627, 633 (Cal. App. 2007)).   In *Cryoport*, however, the plaintiffs actually conceded that they suffered no "injury in fact" in connection with their Section 17200 claim.   *Id.*, 149 Cal. App. 4th at 632.   The plaintiffs unsuccessfully argued that because they filed their complaint one day before Proposition 64 passed – the California law imposing the "injury in fact" standing requirement on plaintiffs – they did not have to satisfy the new standing requirement. *Id.*, 149 Cal. App. 4th at 632-33.   By contrast, Plaintiffs do not concede a lack of "injury in fact", nor do they argue that Proposition 64 is inapplicable to them.

Defendants also misleadingly argue that Plaintiffs' SAC confirms that the exclusive licensing agreements actually *benefit* them through increased royalty payments.   PLAYERS INC's Motion, p. 10 (citing SAC, ¶ 32 (referencing *Wall Street Journal* article which noted that "Annualized, the contract brings the NFL and players (sic) union roughly twice what they got in the past from multiple licensees.")).   Of course, this article in no way suggests that the NFLPA or PLAYERS INC has paid this extra revenue to retired NFL players.   Indeed, Plaintiffs allege that

1    PLAYERS INC and the NFLPA have garnered increased payments through exclusive licensing

2    agreements, but have unfairly and unlawfully *failed* to pass on that money to Plaintiffs (through

3    the payment of royalties promised to all players) and/or have diverted funds to the NFLPA that

4    should have been used to provide promised benefits and services.   SAC, ¶¶ 24-27, 32, 59-60,

5    71-80.

6         Defendants also suggest that Plaintiffs do not allege how a purported loss of dues relates

7    to their unfair competition claim.   PLAYERS INC's Motion, pp. 9-10.   To the contrary,

8    Plaintiffs explicitly allege that Defendants engaged in unfair competition by making claims that:

9              dues payments to the NFLPA entitled retired players, among other
                things, to licensing opportunities that generate guaranteed minimum
10             payments.

11   SAC, ¶ 72.

12        Defendants further argue that Plaintiffs are also required to allege the elements of fraud –

13   *i.e.*, deception and reliance – in order to allege "injury in fact" under Section 17200.   PLAYERS

14   INC's Motion, p. 15 (citing *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal.

15   2005); *Cattie v. Wal-Mart Stores, Inc.*, 2007 WL 935582, at *7-9 (S.D. Cal. 2007); *Doe v.

16   Texaco, Inc.*, 2006 WL 2053504, *3 (N.D. Cal. 2006) (Alsup, J.)).   In *Doe v. Texaco*, this Court

17   dismissed a 17200 claim because ". . . plaintiffs do not allege that they lost money or property as

18   a result of [defendant's] false statements."   *Id.*, 2006 WL 2053504 at *3.   The Court noted that

19   in order to state injury in fact, the plaintiffs would have to make the "patently absurd" contention

20   that their cancer caused them to lose money or property and that defendant's false statements

21   caused the cancer.   *Id.*

22        Here, by contrast, Plaintiffs do allege causation – *i.e.*, loss of money or property *as a

23   result* of the Defendants' unfair competition.   According to Paragraph 72 of the SAC, Defendant

24   promised that dues payments to the NFLPA would generate licensing opportunities, and

25   according to Paragraph 79 of the SAC, those dues payments were made and lost "as a result of

26   defendants' unfair competition".   Plaintiffs have also alleged that they were *actually* deceived as

27   a result of such fraudulent and misleading conduct.   SAC, ¶¶ 34, 79.   These allegations are

28   sufficient to support the inference of reliance necessary to allege "injury in fact" under the

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

28

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    fraudulent prong of Section 17200.

2    **4.    No Contractual Choice Of Law Provision Compels Dismissal Of Plaintiffs' Section 17200 Claim.**

3

4    Defendants also offer no basis for dismissal of the Section 17200 claim based on a

5    contractual choice of law provision appearing in a Sample GLA attached to a third-party license.

6    PLAYERS INC's Motion, p. 18.   Defendants ignore that this Court has already determined that

7    California law governs this dispute.   Defendants overlook that, as the party seeking to apply non-

8    forum law, Defendants would have to offer a compelling reason to do so.   *See*, *e.g.*, *The*

9    *American Ins. Co. v. American Re-Ins. Co.*, *Slip. Op.*, 2006 WL 3412079, *3 (N.D. Cal. 2006);

10    *see also* 12 Cal. Jur. 3d Conflict of Laws § 29 (under governmental interest approach, court

11    places primary emphasis on the interests of California, and will apply foreign law only if the

12    proponent offers a compelling reason to do so).   Defendants offer no reason to re-visit this choice

13    of law issue at this stage in the case, particularly when Defendants have yet to provide relevant

14    GLAs to the Plaintiffs in response to recent discovery requests.

15    In addition, Defendants overlook that Plaintiffs' Section 17200 claims *do not* rely on the

16    existence of a GLA at all:

17            . . . the NFLPA and PLAYERS INC have engaged in predatory and
        unlawful conduct in connection with the marketing of retired NFL
18        player images and downstream markets like videogames.   This
        conduct affects all retired players, regardless of whether or not they
19        have signed a GLA.

20    SAC, ¶ 29.

21    Thus, whether Plaintiffs have alleged that the GLAs are governed by California law is

22    irrelevant to whether the two Section 17200 classes can maintain their claims against Defendants.

23    Plaintiffs have alleged that they have either been "harmed by conduct occurring in California that

24    is violative of Business & Professions Code 17200" and/or that they are "former NFL players

25    who live in California and who have been harmed by violations of Business & Professions Code

26    17200 nationwide."   *See*, *e.g.*, SAC, ¶¶ 40, 42.   Plaintiffs need allege no more to survive this

27    motion.   *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 224 (Cal. App. 1999).

28    Neither of Defendants' cited cases supports dismissal on these grounds either.   In

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

29

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    *Continental Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1070 (E.D. Cal. 2006)

2    and *Medimatch, Inc. v. Lucent Tech. Inc.*, 120 F. Supp. 2d 842, 861 (N.D. Cal. 2000), the courts

3    simply determined that a contractual choice of law provision made by sophisticated parties,

4    through arms length negotiations will be enforced unless it conflicts with the fundamental public

5    policy of California.    *Continental*, 412 F. Supp. 2d at 1070; *Medimatch*, 120 F. Supp. 2d at 861-

6    62.    As noted above, whether Defendants and Plaintiffs have agreed to a non-California choice of

7    law provision in certain GLAs is not only irrelevant to the outcome of the Section 17200 claims,

8    but an issue that cannot be resolved until discovery has progressed.

9           **5.    Non-Californians Parrish and Adderley Have Sufficiently Pled A
                     Section 17200 Claim.**
10

11           Defendants offer no basis for dismissal of Parrish and Adderley's Section 17200 claim on

12    the basis of their non-resident status.    PLAYERS INC's Motion, pp. 18-19.    California courts

13    have confirmed that a plaintiff need not reside in California in order to state a claim under Section

14    17200.    *See, e.g.*, *Norwest Mortgage*, 72 Cal. App. 4th at 224 (the court held that non-California

15    residents who alleged they had been harmed by wrongful conduct occurring in California – *i.e.*,

16    the Category II class – could state a claim under Section 17200); *see also id.*, at 224-25 (citing

17    *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036, 1058-59 (Cal. 1999)

18    ("The linchpin of *Diamond's* analysis is that *the state statutory remedies may be invoked by out-*

19    *of-state parties when they are harmed by wrongful conduct occurring in California*.") (emphasis

20    added)).

21           In the SAC, Parrish and Adderley allege that they, along with a class of retired NFL

22    players " . . . have been harmed by conduct . . . that has occurred in California."    SAC, ¶ 39.

23    Plaintiffs also allege that PLAYERS INC has entered into an exclusive agreement with EA Sports

24    – whose primary place of business is in Redwood City, California – and they provide extensive

25    allegations concerning the harmful effect that this agreement has had on competition as a whole.

26    SAC, ¶ 32.

27           Where the agreement between PLAYERS INC and EA Sports was technically signed is

28    irrelevant.    Plaintiffs have alleged that EA Sports is headquartered in California, that PLAYERS

1    INC has an office in California and that they were harmed by conduct occurring in California.

2    Plaintiffs need allege no more to withstand this motion.   *Norwest*, 72 Cal. App. 4th at 224-25;

3    *Diamond*, 19 Cal. 4th at 1059.

4        Defendant's authority offers no basis for dismissal of claims alleged by Parrish or

5    Adderley.   In *Standfacts Credit Servs., Inc. v. Experian Info Solutions, Inc.*, 405 F. Supp. 2d

6    1141, 1148 (C.D. Cal. 2005), for example, there was no allegation that non-resident defendants

7    engaged in wrongful conduct in California.   Instead, plaintiffs sought to assert a claim against

8    non-resident defendants under a civil conspiracy theory whereby non-resident defendants would

9    be held liable for the actions of a resident defendant and co-conspirator.   *Id.*, 405 F. Supp. 2d at

10   1148.   By contrast, Plaintiffs do not rely on a conspiracy theory, and they have alleged that they

11   were harmed by conduct which occurred in California.

12       Similarly, in *Speyer v. Avis Rent A Car Sys., Inc*., 415 F. Supp. 2d 1090, 1099-1100 (S.D.

13   Cal. 2005), the court considered whether Section 17200 would extend to conduct that occurred

14   outside California, *not* whether Section 17200 would apply to conduct that occurred in California

15   (the allegation at issue here).   In fact, the *Speyer* court noted that while the "UCL applies to out-

16   of-state conduct that injures someone in California", it did not need to resolve the question of

17   whether plaintiff had alleged such conduct because the plaintiff otherwise failed to state a claim

18   for relief.   *Id.*, 415 F. Supp. 2d at 1100.

19           **6.    The 17200 Claims Against the NFLPA Are Not Preempted by Federal
                     Labor Laws.**
20

21       Finally, the claims against the NFLPA are not pre-empted by federal labor laws.   The

22   facts alleged in the SAC demonstrate that the NFLPA uses exclusionary practices to benefit a

23   commercial company which it partially owns, by preventing third parties from doing business

24   with retired NFL players other than through this commercial company.   This conduct violates

25   Section 17200) of California's Unfair Competition Law and, with respect to this conduct, the

26   NFLPA enjoys no antitrust exemption.

27       Labor unions potentially benefit from two distinct exemptions under the antitrust laws –

28   statutory exemptions (*i.e.*, those arising under Section 6 of the Clayton Act aimed at certain

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

31

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    conduct arising out of a labor dispute) and non-statutory exemptions (*i.e.*, those created by the

2    courts to allow meaningful collective bargaining activities to take place by certain non-labor

3    groups).    *See, e.g.*, *Phoenix Electric Co. v. National Electric Contractors Ass'n*, 81 F.3d 858, 860

4    (9th Cir. 1996) (citing, *inter alia*, *United States v. Hutcheson*, 312 U.S. 219, 232 (1941); *Connell*

5    *Constr. Co. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616, 635 (1975); *United*

6    *Mine Workers of America v. Pennington*, 381 U.S. 657 (1965)).    Neither exemption is absolute,

7    and neither applies to the conduct at issue here.    *See, e.g.*, *Connell*, 421 U.S. at 622 (the antitrust

8    exemptions have never been regarded as open-ended invitations for unions to restrain trade).

9                             **a.       The Statutory Exemption Is Inapplicable**

10           The statutory exemption for unions extends only to legitimate labor activities unilaterally

11    undertaken by a union in furtherance of its own interests.    *Hutcheson,* 312 U.S. at 232.    It does

12    *not* apply to agreements between a union and non-labor parties.    *Connell,* 421 U.S. at 622; *see*

13    *also Hutcheson,* 312 U.S. at 232.

14           In this case, Plaintiffs' Section 17200 claims do not concern activities unilaterally

15    undertaken by the NFLPA in furtherance of its own interests.    In fact, Plaintiffs do not allege any

16    collective bargaining activity as the basis for its Section 17200 claims.

17           Plaintiffs explicitly state that their Section 17200 claims do *not* turn on the existence of a

18    GLA – the only arguable fact that might otherwise require construction or application of the terms

19    of the NFLPA's collective bargaining agreement.    *See, e.g.*, SAC, ¶ 29 (". . . the NFLPA and

20    PLAYERS INC have engaged in predatory conduct and unlawful conduct in connection with the

21    marketing of *retired* NFL player images and downstream markets like videogames.    This

22    conduct affects all retired players, *regardless of whether or not they have signed a GLA*.").

23           Likewise, Plaintiffs do not allege unfair competition based on the unilateral collective

24    bargaining activities of the NFLPA – *i.e.,* the group licensing rights of *active* NFL players who

25    are subject to the CBA.    Rather, Plaintiffs allege that " . . . the NFLPA has engaged in predatory

26    and unlawful conduct in connection with the marketing of *retired* NFL player images and

27    downstream markets like videogames."    SAC ¶ 29.

28           The NFLPA does not argue, nor could it, that group licensing rights of retired NFL

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

32

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    players are part of the CBA.[9]   Therefore, the NFLPA cannot legitimately contend that the

2    activity in question falls within the statutory antitrust exemption.   *See, e.g., Connell,* 412 U.S. at

3    622; *Hutcheson,* 312 U.S. at 232.

4            Plaintiffs do allege that "[b]ecause the NFLPA dominates the market for NFL player

5    marketing by virtue of its representation of almost all current NFL players under the CBA and

6    thousands of retired players pursuant to GLAs, those potential licensees who seek to use the

7    names and likenesses of current and former NFL players are forced to deal with the NFLPA."

8    SAC, ¶ 30.   Even if the marketing of active player rights were considered "legitimate collective

9    bargaining activity," however, Plaintiffs do not allege that the NFLPA was unilaterally engaging

10   in such activity with regard to active player rights.   Instead, Plaintiffs allege that the NFLPA has

11   assigned licensing rights to PLAYERS INC – a for-profit company, only 79% owned by the

12   NFLPA.   SAC, ¶¶ 10, 30.   Plaintiffs further allege that the NFLPA and PLAYERS INC have

13   agreed upon unfair, unreasonable and restrictive clauses *in its licensing agreements with one or*

14   *more potential licensees* that violate the spirit and policy of the antitrust laws.   *Id.*, ¶¶ 30-33,

15   74-77.

16           At a bare minimum, PLAYERS INC is not a labor organization and does not engage in

17   collective bargaining activities.   Similarly, potential or existing licensees such as EA Sports and

18   The Topps Company are not unions and do not engage in collective bargaining activities.

19   Accordingly, the statutory exemption is inapplicable.   *See, e.g., Connell*, 421 U.S. at 622; *see*

20   *also USS-POSCO Industries v. Contra Costa County Bldg. & Const. Trades Council, AFL-CIO,*

21   31 F.3d 800, 808 (9th Cir. 1994) (exemption does not apply with respect to activities of a union

22   that involve "combin[ing] with a non-labor group.").

23                          **b.    The Non-Statutory Exemption Does Not Apply**

24           The non-statutory exemption is likewise inapplicable.   In determining whether the non-

25   statutory exemption applies, the Ninth Circuit has adopted the three-part *Mackey* test.   *See, e.g.,*

26   *Phoenix,* 81 F.3d at 861 (citing *Mackey v. National Football League,* 543 F.2d 606, 614 (8th Cir.

---

27   [9]  Instead, the NFLPA argues that "there can be no question that the group licensing rights of
28   *active* NFL players which are alleged to be part of the CBA, concern 'legitimate union interests.'"
     *See, e.g.,* NFLPA Motion p. 5 (emphasis added).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

33

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1976)).   Under *Mackey,* activity is exempt from scrutiny under the antitrust laws only if all of the

following are met:

> (1)   the activity primarily affects the parties to the collective bargaining agreement and
>        no one else;
>
> (2)   the activity concerns wages, hours or conditions of employment (*i.e.,* mandatory
>        subjects of the bargaining agreement), and
>
> (3)   the activity or agreement is produced from bona fide arm's length collective
>        bargaining.

*Phoenix,* 81 F.3d at 861.

The restraint at issue here fails to satisfy any of these criteria.   First, the restraints at issue

do *not* primarily affect those parties to the NFL CBA – *i.e.,* the NFLPA, active players and/or

team owners.   Rather, Plaintiffs allege that they affect third-party vendors and licensees –

including Electronic Arts and The Topps Company, *retired* NFL players, and the consumer –

none of whom are subject to the CBA.   SAC, ¶¶ 29-33, 74-77.   For this reason alone, the non-

statutory exemption is inapplicable.   *See, e.g., Phoenix,* 81 F.3d at 861 (citing *Pennington,* 381

U.S. at 665 (agreement between union and some employers was not exempt from antitrust

scrutiny because the effect of the agreement was to impose wage scales on those not party to the

collective bargaining agreement)); *Connell*, 421 U.S. at 622-23 (non-statutory exemption is

inapplicable to actions between union and non-union employers; not directed at collective

bargaining activity).

In addition, the activities at issue do not concern wages, hours or "mandatory conditions

of the CBA" as the NFLPA suggests.   *See* NFLPA Motion, p. 5.   As noted above, the NFLPA

does not argue, and could not argue, that group licensing of *retired* NFL player rights and/or

licenses with non-labor parties is a part of the union's CBA.   Under Section 8(d) of the National

Labor Relations Act, mandatory subjects of bargaining pertain to "wages, hours and other terms

and conditions of employment."   *See, e.g.,* 9 U.S.C. § 158(d); *see also N.L.R.B. v. Borg Warner

Corp.*, 356 U.S. 342 (1958)).   Even as to active players – *i.e.,* parties to the CBA – exclusive

licensing agreements with third parties such as Electronic Arts or The Topps Company do not

pertain to wages, hours or other "terms and conditions of employment", and thus fall outside the

1    scope of the non-statutory exemption.    *See, e.g., Phoenix*, 81 F.3d at 862 (citing *Mackey*, 543

2    F.2d at 614).

3         Finally, the agreements at issue are not the product of collective bargaining between the

4    NFLPA and a non-labor party.    Indeed, as detailed above, they are not the product of collective

5    bargaining at all.    By assignment through the NFLPA, PLAYERS INC – *not* a union or party

6    otherwise governed by the CBA – has exercised the power of the NFLPA, and has forced existing

7    and potential licensees – *not* a union or party otherwise governed by the CBA – to enter into

8    agreement requiring them only to deal with the NFLPA, and not with any retired NFL players.

9    SAC, ¶ 30.    *Connell*, 421 U.S. at 622-23; *Pennington*, 381 U.S. at 665.

10        The NFLPA ignores this compelling authority, and largely relies on cases that did not

11   address the scope or application of the antitrust exemption for labor activities.    NFLPA Motion at

12   pp. 5-7 (citing, *inter alia, Gridiron.com v. National Football League Players Association*, 106 F.

13   Supp. 2d 1309 (S.D. Fla. 2000) (not discussing whether NFLPA's activities would be exempt

14   from scrutiny under the antitrust laws; noting that GLA with active players was subject to

15   interpretation given by the union); *Aguilera v. Pirelli Armstrong Tire Co.*, 223 F.3d 1010 (9th Cir.

16   2000) (not discussing whether unions activities would be exempt under the antitrust laws, but

17   rather the scope of the statutory exemption under Section 301 of the Labor Management and

18   Relations Act); *Vargas v. Geologistics Americas Inc.*, 284 F.3d 232 (1st Cir. 2002) (whether

19   union activities were subject to antitrust exemption was not at issue; activity underlying state law

20   claims – based on breach of collective bargaining agreement – was preempted by federal labor

21   laws); *Smith v. Houston Oilers*, 87 F.3d 717 (5th Cir. 1996) (same); *Holmes v. National Football

22   League*, 139 F. Supp. 517 (N.D. Tex. 1996) (same); *Black v. NFLPA,* 87 F. Supp. 2d 1 (D. D.C.

23   2000) (antitrust claim initially at issue, but whether it was exempt was never addressed by court;

24   plaintiff dropped its antitrust claims in the amended complaint; court merely determined that a

25   state law claim which relied on construction and application of the terms of the CBA was

26   preempted).    Contrary to the NFLPA's suggestion, these cases offer no guidance as to whether

27   the activities underlying Plaintiffs' Section 17200 are exempt from antitrust scrutiny under the

28   Federal labor laws.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

35

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    In fact, the only cases cited by Defendants that actually evaluate whether union activities

2    would be exempt from antitrust scrutiny concluded that the type of activity at issue here would

3    not be exempt.   *See*, *e.g.*, *Hutcheson*, 312 U.S. at 232 (statutory exemption does not extend to

4    conduct between union and non-labor groups such as PLAYERS INC or licensees); *Connell*, 412

5    U.S. at 622-23 (neither statutory nor non-statutory exemption apply to conduct and/or agreements

6    between a union and various non-labor parties (*i.e.*, construction contractors) requiring the

7    contracts not to deal with subcontractors who did not have a current contract with the union).

8    The NFLPA cannot dispute this authority and cannot escape scrutiny for conduct which violates

9    the "policy and spirit of the antitrust laws."

10   **E.    The GLA Plaintiffs Are Entitled To Bring An Unjust Enrichment Claim As
            An Alternative To Their Breach Of Contract Claim.**

11

12   Under California law the elements of a claim for unjust enrichment are: (1) the receipt of a

13   benefit and (2) unjust retention of the benefit at the expense of another.   *San Francisco Bay Area*

14   *Rapid Transit Dist. v. Spencer*, 2007 WL 81899 *1 (Slip Copy) (N.D. Cal. 2007); *Lectrodryer v.*

15   *SeoulBank*, 77 Cal. App. 4th 723, 726 (Cal. App. 2000).   The GLA Plaintiffs have alleged that:

16   - Defendant has unjustly retained the benefit of its purported "representation" of each
       member of the class without paying fair compensation to the plaintiffs for this benefit.

17     (SAC ¶ 68).

18   - Plaintiffs' status as former players in the NFL has provided significant value to the
       Defendant which benefited the Defendant, and it would be unjust to allow the

19     Defendant to retain this benefit without providing compensation to the Plaintiffs.
       (SAC ¶ 69).

20

21   - PLAYERS INC and/or the NFLPA have retained the money or property of the GLA
       Class members against the fundamental principles of justice or equity and good

22     conscience, and plaintiffs have been harmed by this conduct and are entitled to
       restitution . . . .   (SAC ¶70).

23

24   The cases cited do not support dismissal of this claim.   The *Melchior* court dismissed an

25   unjust enrichment claim because it was preempted by federal law, and the *City of Oakland* court

26   dismissed an unjust enrichment claim because the parties' written contract precluded such quasi-

27   contractual relief.   *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (Cal. App.

28   2004) ("Since Melchior's cause of action for unjust enrichment has the same basis as his cause of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

36

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1    action for conversion, the Copyright Act also preempts it."); *City of Oakland v. Comcast Corp.*,

2    2007 WL 518868 at *4 (N.D. Cal. Feb. 14, 2007) ("The City's claim that Comcast Corp. has been

3    unjustly enriched by receiving control of the franchise fails because unjust enrichment cannot be

4    claimed where a written contract covers the same issue."); *see also Nordberg v. Trilegiant Corp*.,

5    445 F. Supp. 2d 1082, 1101 (N.D. Cal. 2006) (criticizing courts that have questioned the viability

6    of a cause of action for unjust enrichment, noting that those courts have largely relied on

7    improper, semantic arguments); *Faigman v. Cingular Wireless, LLC,* 2007 WL 708554, *6 (N.D.

8    Cal. 2007) (recognizing the holding of *Nordberg* that allows causes of action pled as "unjust

9    enrichment" to proceed as restitution claims; but dismissing the claim in that case because there

10   were no substantive allegations).

11        Furthermore there is nothing improper about the SAC pleading the unjust enrichment

12   claim in the alternative to a breach of contract claim (see SAC ¶¶ 67, 68) despite Defendants'

13   lament to the contrary.[10]    *See In re HP Inkjet Printer Litigation*, 2006 WL 563048, *7 (N.D. Cal.

14   2006) ("[A]lthough the terms of HP's written warranty agreements may govern the relationship

15   between HP and Plaintiffs, Plaintiffs may plead an unjust enrichment claim in the alternative.

16   Accordingly, HP's motion to dismiss Plaintiffs' unjust enrichment claim will be denied.").

17        **F.    Plaintiffs Have The Right To An Accounting**

18        Accounting claims have been consistently recognized by California courts.   *See, e.g.*,

19   *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1026 (N.D. Cal. 2005)

20   (providing overview of elements of a "claim for accounting" under California law, including an

21   allegation that there is a balance due from defendant that can be ascertained only by an

22   accounting; *Cruz v. United States*, 219 F. Supp. 2d 1027, 1041 (N.D. Cal. 2002) (citing 5 Witkin

23   Cal. Procedure 4th, Pleading § 776, p. 233 (1997) ("[A]n element of a cause of action for

24   accounting is 'a balance due from defendant to the plaintiff that can only be ascertained by an

25   accounting.'"); 1 Cal. Jur. 3d Accounts and Accounting § 85 (2006) (to state an equitable claim

26   for accounting, a complaint need only state facts showing the nature of the relationship that

27   requires an accounting and that some balance is due to plaintiff).

28   _____
     [10]  *See* PLAYERS INC Motion p. 22.

1    The   SAC alleges:

2    •   By virtue of the acts and omissions described above, Plaintiffs do not have adequate
         information to determine what monies are attributable to them, and distributable to
3        them, as a result of Defendants' purported representation of them.

4    •   The exact amount of money received and distributed by PLAYERS INC in connection
         with the licensing and marketing of Plaintiffs and the GLA Class, including monies
5        distributed to the NFLPA, is unknown and cannot be ascertained without an
         accounting of the funds.

6

7    SAC ¶¶ 82, 83.   *See also*, SAC ¶¶ 25, 26 (alleging that because of PLAYERS INC's failure to

8    provide adequate information to Plaintiffs, the exact amount of money received and distributed by

9    PLAYERS INC in connection with the licensing and marketing of Plaintiffs is not known and

10   cannot be ascertained without an accounting).   With these allegations, Plaintiffs have sufficiently

11   stated a claim for an accounting.

12        **G.    Plaintiffs' Claims Are Not Barred By Limitations.**

13        Defendants inaccurately argue that Plaintiffs' breach of contract and breach of fiduciary

14   duty claims "are predicated entirely on facts outside of the limitations period."   PLAYERS

15   INC's Motion, p. 7; *see also id*. ("[M]any of the Plaintiffs' claims in support of their Section

16   17200 case of action are also outside of the limitations period.").   Many of the breaches

17   complained of fall squarely within the four year statute of limitations.   Any claims based upon

18   payments due the players over the last four years (but not paid) are not barred by limitations.

19   Likewise, any breaches of fiduciary duties or violations of 17200 committed over the past four

20   years are not barred.   Similarly, breaches stemming from the March 1, 2007 Topps Agreement

21   accrued just recently and/or are ongoing, and breaches stemming from the December, 2004

22   Electronic Arts agreement are relatively recent, ongoing and timely as well.

23        Defendants further claim that none of the Plaintiffs signed GLAs in the past four years.

24   However, it is alleged that Parrish and Adderley signed a GLA within the period of the statue of

25   limitations.   *See*, *e.g.*, SAC ¶¶ 16, 54.   Not only has PLAYERS INC conceded that "Adderley's

26   last GLA expired at the end of 2005", but it has produced two GLAs signed by Adderley within

27   the past four years.   Hilbert Decl., Ex. 2 (Upshaw Decl., ¶ 10), Exs. 3 and 4 (Adderley GLAs).

28        Plaintiffs' claims regarding their older injuries are not stale either.   The harshness of

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

38

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1   limitations has been ameliorated in cases such as this where it would be manifestly unjust to

2   deprive Plaintiffs of a cause of action before they are aware that they have been injured by the

3   discovery rule or equitable estoppel.  *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d

4   1127, 1134 (N.D. Cal. 2006) (citing *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1423 (Cal. App.

5   2003)).   Under the "discovery rule" recognized by California courts, a cause of action accrues

6   when the plaintiff discovers or should have discovered, through the exercise of reasonable

7   diligence, all of the facts essential to his cause of action.  *Id.*, *citing April Enterprises*, 147 Cal.

8   App. 3d at 826.   Similarly, equitable estoppel is based on the principle that no man should profit

9   from his own wrongdoing, and is available "where the delay in commencing action is induced by

10  the conduct of the defendant."  *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 383-84 (Cal. 2003).

11       California courts have long applied the delayed discovery rule to claims involving fraud,

12  difficult-to-detect injuries, or the breach of a fiduciary relationship.  *Perez-Encinas*, 468 F. Supp.

13  2d at 1134.   In *April Enterprises*, for example, the court extended the discovery rule beyond the

14  plaintiff's breach of fiduciary duty cause of action to encompass its breach of contract action as

15  well.  *April Enterprises*, 147 Cal. App. 3d at 832 (discovery rule was properly applied to

16  "breaches which can be, and are committed in secret and, moreover, where the harm flowing

17  from those breaches will not be reasonably discoverable by plaintiffs until a future time.").

18       Expanding on its decision in *April Enterprises*, the court in *Rickman* noted that it had

19  applied the discovery rule in that earlier breach of contract action because it found that "[a]

20  common thread seems to run through all the types of actions where courts have applied the

21  discovery rule."  *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 5-6 (Cal. App.

22  2003) (citing *April Enterprises*, 147 Cal. App. 3d at 831).   The *Gryczman* court identified three

23  characteristics of appropriate applications of the discovery rule:

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

39

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1       (1)    [t]he injury or the act causing the injury, or both, have been difficult for the plaintiff to detect;

2

3       (2)    the defendant has been in a far superior position to comprehend the act and the injury; and

4       (3)    the defendant had reason to believe the plaintiff remained ignorant he had been wronged.

5

6    *Id.*, 107 Cal. App. 4th at 5-6.

7         The *Gryczman* court emphasized that two overarching principles guide a court in

8    assessing whether the discovery rule should apply in a given case.   First, "plaintiffs should not

9    suffer where circumstances prevent them from knowing they have been harmed."   *Gryczman*,

10   107 Cal. App. 4th at 5-6; *see also Perez-Encinas*, 468 F. Supp. 2d at 1135.   Second, "defendants

11   should not be allowed to knowingly profit from their injuree's ignorance."   *Id.*   The rule is

12   applied in cases like this where Defendants took actions to hide, mask, or keep secret the facts

13   needed by Plaintiffs, Defendants are in a far superior position to comprehend the alleged breach,

14   and Defendants had a basis for believing that Plaintiffs remained ignorant about the alleged

15   breaches.   *Perez-Encinas*, 468 F. Supp. 2d 1127, 1134-1136 (*distinguishing Gryczman* and *April*

16   *Enterprises* where the defendant was not responsible for the plaintiffs' lack of knowledge, there

17   was no evidence that defendant had sought to knowingly profit from such ignorance, the

18   defendant had already made payments of the annuity at issue to another, and there was no

19   fiduciary relationship).

20         Under this relevant authority, Plaintiffs have sufficiently alleged facts that would support

21   tolling of the limitations period.   The SAC asserts that PLAYERS INC and the NFLPA have

22   revealed only sketchy and inadequate information to Plaintiffs despite numerous requests dating

23   as far back as 1994.   SAC, ¶ 27; *see also* SAC, Exhibit I (regarding Adderley's unsuccessful

24   attempts to get a response to his phone calls and written communications).

25         It was only in 2006, when the United States Department of Labor imposed new disclosure

26   requirements on the NFLPA, that Plaintiffs were able to obtain any more than the sketchiest

27   information.   SAC, ¶ 27.   Before that document was filed, however, Plaintiffs did not discover

28   (and, in the exercise of reasonable diligence, could not have discovered) their injuries.   *Id.*

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

40

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1   PLAYERS INC and the NFLPA were in a far superior position to hide this information, knew

2   that it was not available to Plaintiffs through any other source, and should not be allowed to profit

3   based on their secrecy — especially given their position of power and trust.

4        Defendants' contention that the discovery rule does not apply because Plaintiffs "knew

5   that they did not receive payments" is disingenuous at best, especially when this information was

6   denied to Plaintiffs after numerous requests such as those made by Mr. Adderley in Exhibit I of

7   the SAC.   This is the type of case where Defendants effectively hid, masked and kept secret the

8   information necessary for plaintiffs to know about their right to payments.   At a minimum,

9   Plaintiffs have adequately raised a fact issue as to tolling.   *See*, *Gryczman*, 107 Cal. App. 4th at

10   5-6.

11        Defendants' reliance on the fraudulent concealment doctrine is also misplaced.   *See*, *e.g.*,

12   NFLPA Motion to Dismiss, pp. 7-9.   The doctrine is not at issue in this case, but even if it were,

13   in each case cited by Defendants, the plaintiffs clearly had early notice of their claims.   As a

14   result, Defendant's cases are not only irrelevant, but factually inapposite.   *See*, *e.g.*, *Pincay v.*

15   *Andrews*, 238 F.3d 1106, 1110 (9th Cir. (Cal.) 2001) (where the plaintiffs failed to act upon

16   repeated written notices of their injury, court commenting that "[i]t is hard to imagine what would

17   constitute 'enough information to warrant an investigation' if receiving a written disclosure of

18   one's purported injury does not.");   *Easter v. Am. West Financial*, 381 F.3d 948 (9th Cir. 2004)

19   (retired loans);   *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1004 (9th Cir. 2006) ("it is clear

20   that Appellants have had the information necessary to bring suit (i.e., that the banks refused to

21   return their deposits) for many years");   *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1412-13

22   (9th Cir. 1987) ("Appellants should have brought their action once they discovered or should

23   have discovered the facts constituting their claim.   Defrauded securities purchasers are not

24   permitted to delay bringing an action while avoidable damages accrue.").

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    CONCLUSION

The Second Amended Complaint ("SAC") adequately states each of its claims under Federal pleading standards.   For this reason, the *Twombly* plausibility standard, and in light of Defendants' numerous mischaracterizations of fact and law, the Court should deny Defendants' motions.

Respectfully submitted,

Dated: August 9, 2007

/s/ Ryan S. Hilbert
Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
Noel S. Cohen (SBN 219645)
MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Building 2
Palo Alto, CA   94304-1006
Telephone:    (650) 812-1300
Facsimile:    (650) 213-0260
*Attorneys for Plaintiffs*

Lewis T. LeClair, Esq.
Jill C. Adler, Esq.
McKool Smith
A Professional Corporation
300 Crescent Court
Dallas, TX 75201
214-978-4984
214-978-4044 (fax)

**OF COUNSEL**

Samuel A. Mutch Esq.
SAMUEL A. MUTCH, P.A.
2114 N.W. 40th Terrace, Suite A-1
Gainesville, FL   32605
Telephone:    (352) 378-5599
Facsimile:    (352) 378-3388

20186346.1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

42

CONSOLIDATED OPPOSITION -
CASE NO. C07-0943 WHA