

**Ronald S. Katz**
Manatt, Phelps & Phillips, LLP
Direct Dial:  (650) 812-1346
E-mail:  rkatz@manatt.com

August 10, 2007

Client-Matter:  29749-060

**VIA ELECTRONIC FILING**

The Honorable William Alsup
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA  94102

>        **Re:**  ***Parrish v. National Football League Players Association***
>                 **Case No. C07-0943 WHA**

Dear Judge Alsup:

        We represent Plaintiffs Bernard Paul Parrish, Herbert Anthony Adderley, and Walter Roberts III (collectively, "Plaintiffs") in the above-referenced class action.  Plaintiffs submit this letter brief pursuant to Paragraph 26 of the Court's Supplemental Standing Order.  Plaintiffs respectfully request an Order from this Court compelling Defendant National Football League Players Incorporated d/b/a Players Inc ("PLAYERS INC") to produce the documents identified below in response to Plaintiffs' June 15, 2007 Document Requests.

PLAYERS INC's Financial Statements

        Document Request No. 12 calls for "PLAYERS INC's financial statements from January 1, 1997 to the date of production."  PLAYERS INC objected to this Request on the ground that, among other things, the term "financial statements" is vague and ambiguous.  PLAYERS INC has indicated that it will only produce documents that are specifically related to retired NFL player rights (as unilaterally determined by PLAYERS INC).  Plaintiffs respectfully request that this Court order PLAYERS INC to produce those financial statements responsive to this clear and narrow request, and not just those documents that PLAYERS INC considers to be related to retired NFL players.

        The information sought in this Request is not only relevant, it goes to the heart of Plaintiffs' claims.  The crux of Plaintiffs' Second Amended Complaint is that Defendants have failed to accurately account for and properly distribute revenues to retired players.  *See* Second Amended Complaint ("SAC") ¶¶ 26-27.  Plaintiffs also claim that PLAYERS INC took millions of dollars that should have gone to retired players and wrongfully diverted that money to the NFLPA in order to support the overhead, substantial salaries and perquisites of NFLPA management and employees.  *See id.* ¶ 21.  The only way Plaintiffs can effectively pursue and prove these claims is by knowing how much money collectively came into PLAYERS INC and where that money went.  PLAYERS INC's financial statements provide the easiest and best way to obtain this information.[1]  Plaintiffs respectfully request that PLAYERS INC be ordered to produce them.

---

[1]   It is worth noting that no accounting information has *ever* been provided by PLAYERS INC except the payment to the retired player that was unilaterally calculated by PLAYERS INC.  PLAYERS INC recently responded to Plaintiffs' Request for Admissions No. 15 ("Admit that you have made no accounting to Retired Players of licensing and/or marketing distributions.") as follows:  "Request No. 15 is denied in that PLAYERS INC accounted to retired players by providing them with appropriate distributions of licensing monies."

1001 Page Mill Road, Building 2, Palo Alto, California  94304-1006   Telephone: 650.812.1300  Fax: 650.213.0260

Albany  |  Los Angeles  |  New York  |  Orange County  |  Palo Alto  |  Sacramento  |  Washington, D.C.

Dockets.Justia.com



Honorable William Alsup
August 10, 2007
Page 2

PLAYERS INC's Expenditures

Document Request No. 11 calls for "[a]ll documents that summarize or describe expenditures attributable to Licensee Income or paid from Licensee Income."  PLAYERS INC originally objected to this Request on numerous grounds, and refused to produce any documents responsive to this Request.  Following the parties' efforts to meet and confer, PLAYERS INC indicated that it would produce revenue and expense information so long as it is specifically related to retired players rights (as unilaterally determined by PLAYERS INC).

The primary difference between Request No. 12 and Request No. 11 is that the latter seeks information and documents specifically related to how PLAYERS INC expended the income or license fees it received from license agreements, not counting the distributions it made to retired NFL players (which is addressed elsewhere in Plaintiffs' Requests).  As with Request No. 12, this information is directly relevant to Plaintiffs' core allegations concerning PLAYERS INC's failure to properly account for and distribute revenues to retired players, and its wrongful diversion of millions of dollars to the NFLPA.  *See* SAC ¶¶ 21, 26-27.

Also like Request No. 12, PLAYERS INC should not be allowed to unilaterally determine which documents it chooses to make responsive.  As an example, PLAYERS INC recently produced its licensing agreement with Electronic Arts.[2]  This agreement does not distinguish between royalties owing for the use of an active player's rights versus a retired player's rights.  This is also true of PLAYERS INC's licensing agreement with The Topps Company.   *See* SAC, Ex. C.   Under PLAYERS INC's interpretation of its discovery obligations, it is far from clear that any financial documents produced would reflect these payments from EA and Topps – a huge issue in the case.  Because PLAYERS INC's licensing agreements do not appear to be separated into retired/active player royalties and/or payments, it would be unfair to allow PLAYERS INC to limit their production in such an artificial way.

Plaintiffs are entitled to know how much money PLAYERS INC received from licensees, what percentage of that money PLAYERS INC attributed to the licensing of retired players versus active players, and how that money was ultimately expended and/or distributed.   Plaintiffs respectfully request that PLAYERS INC be ordered to produce all such documents, and not just those PLAYERS INC unilaterally determines are related to retired NFL players.

PLAYERS INC Documents Before February 2003

Document Request No. 13 calls for "[d]ocuments that summarize or describe payments, distributions, or transfers of money from PLAYERS INC to the NFLPA from January 1, 1997 to the date of production."   Similarly, Document Request No. 14 calls for "[d]ocuments that summarize, describe or refer to payments, distributions, or transfers of money from the NFLPA to PLAYERS INC from January 1, 1997 to the date of production."   PLAYERS INC has repeatedly indicated that it will not produce information or documents prior to February 14, 2003 – including with respect to these

---

[2]   The agreement with Electronic Arts was among the 149 pages of documents PLAYERS INC produced on August 1, 2007 in response to Plaintiffs' June 15 Document Requests.   PLAYERS INC has represented that it will produce a "substantial volume" of documents on August 15, with additional documents to be produced on a "rolling" basis.



Honorable William Alsup
August 10, 2007
Page 3

Requests – on the grounds that February 14, 2003 is the start of the earliest applicable statute of limitations for any claim asserted in the SAC. This argument is unavailing.

As an initial matter, Plaintiffs have specifically pled the tolling of the statute of limitations in this case, allegations that must be taken as true at this point in the litigation. The SAC asserts that PLAYERS INC and the NFLPA have revealed only sketchy and inadequate information to Plaintiffs despite numerous requests dating as far back as 1994. *See* SAC ¶ 27 and Ex. I (letter from Herb Adderley requesting accounting information). For years, PLAYERS INC effectively hid, masked and kept secret the information necessary for Plaintiffs to know about their right to payments. PLAYERS INC cannot further hide this information on the ground that it has now become too old.

Information responsive to Request Nos. 13-14 and dated before February 2003 is directly relevant to Plaintiffs' claims against PLAYERS INC. For example, Plaintiffs have specifically alleged that PLAYERS INC breached the version of the GLA that Bernie Parrish signed in 1997 and 1998. *See* SAC ¶¶ 54-60. Whether, how and why PLAYERS INC transferred money to/from the NFLPA while this GLA was in effect, and whether these transfers changed under the version of the GLA that Herb Adderley signed (and which expired as late as December 31, 2005), is clearly relevant to the alleged breaches by Defendants and the amount of Plaintiffs' damages.

Information dated before February 2003 also is directly relevant to Plaintiffs' other claims, including their claim that PLAYERS INC purports and has purported to be the exclusive representative for retired players with respect to licensed products. *See* SAC ¶ 13. In its recent Responses to Plaintiffs' First Set of Requests for Admissions, PLAYERS INC denied Request Nos. 2-3 concerning its purported exclusivity "during the limitations period," a negative pregnant. Information before February 2003 will reveal how and why those policies evolved from seeming exclusivity to alleged non-exclusivity. Similarly, in Response to Requests for Admissions Nos. 10-13, PLAYERS INC revealed that it "does not currently claim to represent any specific number of retired players" notwithstanding its previous statements to the contrary. Information dating back to 1997 could shed light on when and why PLAYERS INC decided to make this change, and how it operated before.

As this Court is aware, the standard for relevancy is quite broad. Courts generally permit discovery "'for a reasonable period'" of time antedating the earliest possible date of the actionable wrong complained of." *Quonset Real Estate Corp. v. Paramount Film Distributing Corp.*, 50 F.R.D. 240, 242 (S.D.N.Y. 1970). In this case, discovery dating back to 1997 is certainly reasonable, especially in light of PLAYERS INC's efforts to hide such information throughout the years. At a minimum, information dated before February 2003 is likely to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). For these reasons, and the reasons given above, Plaintiffs respectfully request that PLAYERS INC be ordered to produce all responsive documents from 1997 to the present, including those documents responsive to Request Nos. 13-14.

Respectfully submitted,


 /s/ Ronald S. Katz
Ronald S. Katz
Counsel for Plaintiffs