# DEWEY BALLANTINE LLP

1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6092
TEL 212 259-8000   FAX 212 259-6333

EAMON O'KELLY
212 259 6342
eokelly@deweyballantine.com

August 15, 2007

VIA ELECTRONIC FILING

The Honorable William Alsup
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Judge Alsup:

       We represent Defendants National Football League Players Incorporated ("Players Inc") in the above-referenced lawsuit. Players Inc submits this letter brief in opposition to Plaintiffs' letter brief of August 10, 2007 ("LB"), and pursuant to this Court's Order dated August 13, 2007. Plaintiffs seek an order compelling Players Inc to produce two very broad categories of documents, neither of which is relevant to Plaintiffs' claims in this lawsuit and both of which would be extremely burdensome to produce.

       First, Plaintiffs seek production of financial documents related to the licensing of images of active NFL players. Plaintiffs' claims in this lawsuit as to Players Inc, however, are directed only to retired player licensing, something that (1) is separate and distinct from active player licensing and (2) constitutes only a tiny part of Players Inc's business. Thus, financial documents related to active player licensing are irrelevant to Plaintiffs' claims and producing such documents would greatly increase the burden on Players Inc.

       Second, Plaintiffs seek production of all documents from January 1, 1997 to the date of production. Plaintiffs' claims from before February 14, 2003 are barred by the applicable statutes of limitations, however, and Plaintiffs have not alleged any facts that would warrant tolling the statutes. Plaintiffs have served 22 separate and very sweeping document requests on Players Inc so far in this litigation and have indicated that they intend to serve many more. Players Inc has began producing documents responsive to the initial requests for the period from February 2003 to the date of production. If Players Inc was required to produce documents in response to those 22 document requests (and other future requests) covering a further period of over six years that is barred by the statute of limitations, that would increase dramatically the scale of the document production and the burden on Players Inc.

Moreover, Plaintiffs' motion is premature. Plaintiffs acknowledge in the letter brief that they have yet to receive the first significant document production in this case – incidentally scheduled for today. See LB at 2 n.2 (referencing agreement to produce a "substantial volume" of documents on August 15, 2007). Without the benefit of having reviewed this production, and further documents being collected by Players Inc for production in the near future, Plaintiffs' letter brief is rife with misunderstandings about the business of retired player licensing and what documents will be available. Thus, Plaintiffs' unfounded speculations about the claimed inadequacy of Players Inc's production of retired player financial document productions is simply wrong. At a minimum, they should have waited to review the documents that they will be receiving before running to the Court with a discovery dispute that is not yet ripe.

There is no mystery as to why Plaintiffs and their counsel are seeking production of a vast amount of information (including highly sensitive financial information) that is not relevant to the claims they have asserted in this lawsuit. As described in Players Inc's motions for sanctions filed on April 4, 2007 ("Sanctions Motion"), Plaintiffs Parrish and Adderley have spent many years publicly attacking Players Inc and the NFLPA. Moreover, they recently became Co-Presidents of an organization named Retired Professional Football Players for Justice ("RPFPJ"), with the stated objective of engaging in commercial licensing of retired NFL players' images in direct competition with Players Inc. Their motives for engaging in a far-reaching fishing expedition are obvious. Indeed, Plaintiffs' lead counsel made no secret of the fact that this lawsuit represents a discovery fishing expedition, characterizing it as "picking up a rock and seeing what's crawling underneath." See Alan Schwarz, 2 Former N.F.L. Players Sue Over Sharing of Fees, N.Y. Times, Feb. 15, 2007, at D2 (cited in Sanctions Motion at 5).

Players Inc therefore respectfully requests this Court (i) to deny Plaintiffs' request for an Order compelling Players Inc to produce the two categories of irrelevant documents identified in Plaintiffs' letter brief, and (ii) to enter a protective Order limiting the scope of discovery to (a) information related to retired (as opposed to active) NFL player licensing and (b) information either created or in effect during the statute of limitations period from February 14, 2003.

### Rule 26 Affords This Court Broad Discretion to Limit Discovery to Relevant Documents or Documents Likely to Lead to Relevant Information

Rule 26 provides district courts with wide discretion to limit discovery "for good cause" and "to protect a party from annoyance, embarrassment, oppression or undue burden or expense." See Fed. R. Civ. P. 26(c); see also U.S. v. Columbia Broadcasting System, Inc., 666 F.2d 364, 368-69 (9th Cir. 1982). "Good cause" to limit discovery exists here because (1) even if Plaintiffs have sufficiently stated any actionable claims, they have asserted claims only related to Players Inc's retired player licensing activities and thus documents related to active player licensing are irrelevant; (2) the documents they seek with respect to active player licensing contain highly sensitive

financial information and are voluminous, and thus requiring production would be both unfair and burdensome; and (3) Plaintiffs have no actionable claims based on conduct that occurred before February 14, 2003, and thus requiring production of documents from before that date would neither promote fairness nor efficiency in this litigation.

### Documents Related to Active-Player Licensing Are Wholly Irrelevant to this Action

On August 1, 2007, Players Inc produced a small number of documents specifically identified by Plaintiffs, who claimed that they needed those specific documents for purposes of their opposition to Defendants' motions to dismiss. Referring to a couple of agreements between Players Inc and licensees that were part of that courtesy production, Plaintiffs contend that such agreements do "not distinguish between royalties owing for the use of an active player's rights versus a retired player's rights," LB at 2, and thus that they require production of all documents related to all of Players Inc's licensing activities for active players. That contention rests on the false premise that those agreements implicate "royalties owing" to retired players. Had Plaintiffs waited to review the more substantial document production that Players Inc is making today, they would have seen that most retired player licensing is conducted through ad hoc agreements between individual retired players and various licensees. Agreements involving royalty payments to active players typically have no relation to retired players because the licensees do not use retired player rights, and such agreements are therefore irrelevant to this matter.

A good example is provided by the relationship with the The Topps Company, to which Plaintiffs refer in their letter brief. <u>Active</u> NFL players sign GLAs, pursuant to which Players Inc licenses their images and other intellectual property rights for use in group licensing by commercial licensees such as Topps, a supplier of trading cards. Typically, in such licensing agreements, the licensee pays royalties for the active player rights based, at least in part, on the sales volume of licensed products. However, unlike active players, who are licensed to Topps en masse pursuant to the active player GLAs, retired players included in Topps products sign individual agreements providing for a one-time fixed payment, usually for the use of a retired player's image and his autograph on a specified number of trading cards. Thus, whereas active players are compensated via royalties based on product sales that are deposited into a shared-royalty pool, retired players – by individual contract – receive their fixed payments from Topps up front. In other words, it is ad hoc agreements between retired players and Topps that govern the terms of payment.

Players Inc acts as an intermediary in the relationship between retired players and licensees such as Topps. Topps pays to Players Inc the amount that was

agreed between Topps and the retired player for the use of his image and autograph, and Players Inc passes on to the retired player 100 percent of that money.[1]

Players Inc has produced today ad hoc agreements between licensees such as Topps and individual retired players, as well as documents that show (1) the sum agreed between the licensee and retired player that was paid to Players Inc, and (2) the sum that was passed on to the retired player. Further, Players Inc has repeatedly assured Plaintiffs' counsel that it will produce "any documents that summarize or describe the income and/or license fees that Players Inc received from the licensing of the rights of retired NFL players, and how such money was distributed," and "any documents referring specifically to expenditures attributable to the licensing of the rights of retired NFL players (if such documents exist)." See Lts. from David Greenspan to Ryan Hilbert dd. July 27, 2007 and Aug. 6, 2007, attached hereto as Exs. A and B, respectively. Plaintiffs are not entitled to anything more.

In addition, in order to place Plaintiffs' requests in their proper context, the Court should be aware that retired player licensing activities represent only a very small portion of Players Inc's business, because (1) most Players Inc licensees use only active players' images and do not use retired players' images in their products at all, and (2) with respect even to those licensees who do use retired player images (for example, Topps), retired player images represent only a tiny portion of *their* dealings with Players Inc.

Finally, Players Inc's company-wide financials, in which retired-player licensing revenues represent an undifferentiated fraction of a line item, provide no information relevant to Plaintiffs' claims that is not provided in much greater and clearer detail in the retired player-specific financial documents that Players Inc is producing. The company-wide financials do, however, contain much highly sensitive information about Players Inc's business activities that have no relevance to the claims in this lawsuit. In other words, Players Inc's financials are of much more interest to Plaintiffs and their counsel as prospective competitors to Players Inc (through their involvement with RPFPJ) than they are to Plaintiffs as litigants in this case.

**Plaintiffs Are Not Entitled to Any Documents from Outside of the Applicable Statutes of Limitations Period**

As is discussed in detail in Players Inc's motion to dismiss, much of the conduct challenged by Plaintiffs is barred by the applicable statutes of limitations. See Players Inc's Motion to Dismiss Plaintiffs' Second Amended Complaint filed July 6, 2007, at 7. Specifically, there are no actionable facts or claims prior to February 14, 2003

---

[1] In a very limited number of instances, Players Inc may also be paid an administrative fee by the licensee, which it retains. Players Inc will produce documents related to such transactions involving retired players, if there were any such transactions during the statute of limitations period.

(i.e., four years prior to the first-filed Complaint). Indeed, Plaintiffs do not deny that much of the conduct they complain of is outside the statute of limitations. Therefore, documents relating solely to conduct before February 14, 2003 are irrelevant to their claims and there is no basis for imposing the burden on Players Inc of producing documents spanning an additional six years.

In their opposition to Defendants' motions to dismiss, Plaintiffs contend that the Court should "ameliorate[]" the "harshness of limitations" by applying the discovery rule. Consolidated Opposition to Players Inc's and NFLPA's Motions to Dismiss Plaintiffs' Second Amended Complaint filed August 9, 2007, at 38-39. Under this equitable doctrine, a cause of action does not begin to accrue until the plaintiff discovers, or has reason to discover, the cause of action. See Grisham v. Philip Morris U.S.A., Inc., 40 Cal. 4th 623, 634 (2007). A plaintiff "has reason to discover" a cause of action when he or she "has reason at least to suspect a factual basis for its elements." See id. To successfully invoke this limited exception to the principle that statutes of limitations begin to run when the conduct complained of occurred, a plaintiff must specifically allege facts to show (1) the time and manner of discovery of otherwise time-barred claims and (2) his inability to have made earlier discovery of these claims despite reasonable diligence. See id. at 638.

Plaintiffs have not satisfied the requirements for invoking the discovery rule. The Second Amended Complaint ("SAC") alleges no facts at all with respect to "the time and manner of discovery" of their claims, an essential requirement for any attempt to invoke the discovery rule. Further, Plaintiffs do not "specifically plead facts to show" that they could not have discovered their claims earlier "despite reasonable diligence." Plaintiffs cannot allege, and have not alleged, that they did not have reason to "at least to suspect a factual basis for [the] elements" of their claims when: (1) Mr. Adderley made requests for information about the subject matter of this case to Players Inc dating back to 1994 (SAC ¶ 27); (2) Mr. Parrish began publicly attacking the NFLPA and Players Inc about the subject matter of his claims long before the limitations period (SAC ¶ 4); and (3) Plaintiffs did not receive monies allegedly owed to them by Players Inc dating back to at least 1998, when Mr. Parrish alleges he signed a GLA. (SAC ¶¶ 56, 59).

Instead, Plaintiffs rely on the conclusory assertion that "[f]or years, PLAYERS INC effectively hid, masked and kept secret the information necessary for Plaintiffs to know about their right to payments." LB at 3; SAC ¶ 27. Such assertions satisfy neither the pleading standards set forth in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) nor the Grisham court's requirement for tolling the statute of limitations. Thus, because claims based on conduct before February 14, 2003 are time-barred, Plaintiffs' discovery should be limited to documents relevant to claims arising after this date. See Breon v. Coca-Cola Bottling Co. of New England, 232 F.R.D. 49, 55 (D. Conn. 2005); see also Fleming v. City of N.Y., 233 F. Supp. 2d 613, 614-15 (S.D.N.Y. 2002). In sum, the assertions in Plaintiffs' letter brief setting forth various

reasons why they would like to get their hands on documents related to conduct that occurred outside the limitations period are inapposite. See LB at 3.

Players Inc takes issue, however, with Plaintiffs' assertion that "PLAYERS INC has repeatedly indicated that it will not produce information or documents prior to February 14, 2003...." See LB at 2. That assertion is untrue. Players Inc has agreed from the outset to "produce agreements that were entered into prior to February 14, 2003, but which were in effect during the statute of limitations period." See Letter from David Greenspan to Ryan S. Hilbert, dated July 27, 2007, at 3, attached hereto as Ex. A. Thus, Players Inc produced GLAs signed by Plaintiff Adderley before 2003 that remained in effect during the statute of limitations period. Players Inc has also produced other retired player GLAs and Players Inc agreements with licensees that were signed before February 2003 but that remained in effect after that date.

For the reasons set forth herein, Players Inc requests that Plaintiffs' motion be denied and a protective order be entered limiting discovery to retired, as opposed to active, player licensing and to information related to the statute of limitations period beginning February 14, 2007.

Respectfully yours,

Eamon O'Kelly

EO'K:lk

cc:   Counsel of Record for Plaintiffs