1   Mark Malin (Bar No. 199757)
    mmalin@deweyballantine.com
2   DEWEY BALLANTINE LLP
    1950 University Avenue, Suite 500
3   East Palo Alto, CA  94303
    Tel:  (650) 845-7000; Fax:  (650) 845-7333
4
    Jeffrey L. Kessler (pro hac vice)
5   jkessler@deweyballantine.com
    David G. Feher (pro hac vice)
6   dfeher@deweyballantine.com
    Eamon O'Kelly (pro hac vice)
7   eokelly@deweyballantine.com
    DEWEY BALLANTINE LLP
8   1301 Avenue of the Americas
    New York, NY  10019
9   Tel:  (212) 259-8000; Fax:  (212) 259-6333

10  Kenneth L. Steinthal (pro hac vice)
    kenneth.steinthal@weil.com
11  Claire E. Goldstein (Bar No. 237979)
    claire.goldstein@weil.com
12  WEIL, GOTSHAL & MANGES LLP
    201 Redwood Shores Parkway
13  Redwood Shores, CA  94065
    Tel:  (650) 802-3000; Fax:   (650) 802-3100
14
    Bruce S. Meyer (pro hac vice)
15  bruce.meyer@weil.com
    WEIL, GOTSHAL & MANGES LLP
16  767 Fifth Avenue
    New York, NY  10153
17  Tel:  (212) 310-8000; Fax:  (212) 310-8007

18  Attorneys for Defendants National Football League Players Association
    and National Football League Players Incorporated d/b/a Players Inc
19

20          UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF CALIFORNIA
21              SAN FRANCISCO DIVISION

22  BERNARD PAUL PARRISH, HERBERT          Case No.  C 07 0943 WHA
    ANTHONY ADDERLEY, WALTER
23  ROBERTS III,                           DEFENDANTS' REPLY
                                           MEMORANDUM OF LAW IN
24          Plaintiffs,                    SUPPORT OF THEIR RESPECTIVE
                                           MOTIONS TO DISMISS
25      v.                                 PLAINTIFFS' SECOND AMENDED
                                           COMPLAINT PURSUANT TO
26  NATIONAL FOOTBALL LEAGUE               FED. R. CIV. P. 12(b)(6)
    PLAYERS ASSOCIATION and NATIONAL
27  FOOTBALL LEAGUE PLAYERS                Date: August 30, 2007
    INCORPORATED d/b/a/ PLAYERS INC,       Time: 2:00 pm
28                                         Ctrm: 9
            Defendants.                    Judge: William H. Alsup

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defendants' Reply Memorandum in Support of Their Motions to Dismiss       Civ. Action No. C07 0943 WHA

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

ARGUMENT ........................................................................................................ 3

I.    NONE OF THE APPLICABLE STATUTES OF LIMITATIONS HAVE BEEN
      TOLLED .................................................................................................... 3

II.   PLAINTIFFS' SECTION 17200 CLAIMS MUST BE DISMISSED ........................ 6

      A.    PLAINTIFFS' UNFAIR BUSINESS PRACTICES CLAIMS UNDER
            SECTION 17200 MUST BE DISMISSED ................................................ 6

            1.    Plaintiffs Have Not Alleged Any Injury in Fact Resulting From
                  Unfair Business Practices ...................................................... 6

            2.    Plaintiffs Have Not Alleged An Incipient Antitrust Violation ........ 8

      B.    PLAINTIFFS' FRAUDULENT BUSINESS PRACTICES CLAIMS
            UNDER SECTION 17200 MUST BE DISMISSED .................................... 12

            1.    Plaintiff's Have Not Alleged Any Injury in Fact Resulting From
                  Fraudulent Business Practices ................................................ 12

            2.    Plaintiffs Have Not Met the Requirements for Alleging Fraud
                  with Particularity Under Rule 9(b) .......................................... 13

      C.    PLAINTIFFS' UNFAIR BUSINESS PRACTICES CLAIMS AGAINST
            THE NFLPA ARE PREMISED ON UNION ACTIVITIES AND THUS
            PREEMPTED UNDER FEDERAL LABOR LAW ........................................ 14

      D.    PLAINTIFFS' SECTION 17200 CLAIMS MUST ALSO BE
            DISMISSED TO THE EXTENT THOSE CLAIMS ARE BASED UPON
            ALLEGED CONTRACTS WITH CHOICE OF LAW CLAUSES
            SELECTING ANOTHER STATE'S LAW .................................................. 17

      E.    PARRISH AND ADDERLEY, AS OUT-OF-STATE RESIDENTS
            WHO DO NOT ALLEGE ANY IN-STATE ACTIONABLE
            CONDUCT, CANNOT STATE CLAIMS UNDER SECTION 17200 ............. 18

III.  PLAINTIFFS' BREACH OF CONTRACT CLAIMS MUST BE DISMISSED ........... 19

IV.   PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIMS MUST BE
      DISMISSED .............................................................................................. 23

V.    PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT/RESTITUTION
      MUST BE DISMISSED ................................................................................ 27

VI.   PLAINTIFFS' CLAIMS FOR AN ACCOUNTING MUST BE DISMISSED ............. 29

CONCLUSION ...................................................................................................... 30

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-i-

# TABLE OF AUTHORITIES

Page

## Cases

Agair, Inc. v. Shaeffer,
    232 Cal. App. 2d 513 (1965) .......................................................................... 24

Am. Fed'n of Musicians v. Carroll,
    391 U.S. 99 (1968) ...................................................................................... 17

April Enterprises, Inc. v. KTTV,
    147 Cal. App. 3d 805 (1983) ................................................................. 4, 24

Bank of the West v. Superior Court,
    2 Cal. 4th 1254 (1992) ............................................................................... 10

Beery v. State Bar,
    43 Cal. 3d 802 (1987) ................................................................................ 25

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007) ........................................................................ passim

Boyle v. Madigan,
    492 F.2d 1180 (9th Cir. 1974) ................................................. 1, 18, 19, 22, 26

Brown v. Pro Football, Inc.,
    518 U.S. 231 (1996) .................................................................................. 16

California ex rel. Lockyer v. Safeway, Inc.,
    371 F. Supp. 2d 1179 (2005) ..................................................................... 16

Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,
    222 Cal. App. 3d 1371 (1990) ................................................................... 20

Carpenter Foundation v. Oakes,
    26 Cal. App. 3d 784 (1972) ....................................................................... 27

Caterpillar, Inc. v. Williams,
    482 U.S. 386 (1987) .................................................................................. 15

Cattie v. Wal-Mart Stores, Inc.,
    No. 06CV0897-LAB (CAB), 2007 WL 335582 (S.D. Cal. Mar. 21, 2007) ....... 6, 13

Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
    20 Cal. 4th 163 (1999) ........................................................................ 9, 10, 11

Chavez v. Whirlpool Corp.,
    93 Cal. App. 4th 363 (2001) ......................................................................... 9

Chirico v. Merrill Lynch, Pierce, Fedder & Smith, Inc.,
    No. C99-2263 CRB, 1999 WL 1285458 (N.D. Cal. Dec. 13, 1999) ................. 20

Continental Airlines, Inc. v. Mundo Travel Corp.,
    412 F. Supp. 2d 1059 (E.D. Cal. 2006) ........................................................ 17

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defendants' Reply Memorandum in Support of Their Motions to Dismiss      Civ. Action No. C07 0943 WHA

Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100,
    421 U.S. 616 (1975) .................................................................................. 15, 16

Cooper v. Pickett,
    137 F.3d 1097 (9th Cir. 1997) .......................................................................... 13

County of Santa Clara v. Astra USA, Inc.,
    401 F. Supp. 2d 1022 (2005) ............................................................................ 29

County of Santa Clara v. Astra USA, Inc.,
    No. C 05-03740 WHA, 2006 WL 2193343 (N.D. Cal. July 28, 2006) ............... 29

Cruz v. United States,
    219 F. Supp. 2d 1027 (2002) ............................................................................ 29

Cryoport Sys. v. CNA Ins. Cos.,
    149 Cal. App. 4th 627 (2007) ............................................................................. 8

Deitz v. Comcast Corp.,
    No. C 06-06352 WHA, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) ........... 7, 19

Diamond Multimedia Sys., Inc. v. Superior Court,
    19 Cal. 4th 1036 (1999) ................................................................................... 18

Doe v. Texaco, Inc.,
    No. C 06-02820 WHA, 2006 WL 2053504 (N.D. Cal. July 21, 2006) .......... 13, 28

Faigman v. Cingular Wireless, LLC,
    No. C. 06-04622 MHP, 2007 WL 708554 (N.D. Cal. Mar. 2, 2007) ................ 28

Foley v. Bates,
    No. C 07-0402 PJH, 2007 WL 1430096 (N.D. Cal. May 14, 2007) ......... 12, 14, 22

Gautier v. Gen. Tel. Co.,
    234 Cal. App. 2d 302 (1965) ............................................................................ 20

Golden Day Schools, Inc. v. Dep't of Educ.,
    69 Cal. App. 681 (1999) ................................................................................... 27

Gregory v. Albertson's Inc.,
    104 Cal. App. 4th 845 (2003) ........................................................................... 10

Grisham v. Philip Morris U.S.A., Inc.,
    40 Cal. App. 4th 623 (2007) ......................................................................... 4, 5, 6

Hal Roach Studios, Inc. v. Richard Feiner & Co.,
    896 F.2d 1542 (1990) ...................................................................................... 14

Halicki v. Carroll Shelby Int'l, Inc.,
    No. CV 04 8813 SJO (PJWX), 2005 WL 5253338 (C.D. Cal. Nov. 14, 2005) ...... 6

IB Melchior v. New Line Prods., Inc.,
    106 Cal. App. 4th 779 (2003) ........................................................................... 28

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-iii-

In re Daisy Sys. Corp.,
      97 F.3d 1171 (1996)...............................................................................................25

Jefferson Parish Hosp. Dist. No. 2 v. Hyde,
      466 U.S. 2 (1984).................................................................................................10

Korea Supply Co. v. Lockheed Martin Corp.,
      29 Cal. 4th 1134 (2003)..........................................................................................8

Lectodryer v. Seoulbank,
      77 Cal. App. 4th 723 (2000)..................................................................................28

Leaf v. City of San Mateo,
      104 Cal. App. 3d 398 (1980)....................................................................................4

Lutge v. Eskanos & Adler, P.C.,
      No. C 06-07128 JSW, 2007 WL 1521551 (N.D. Cal. May 24, 2007)....................13

Lynch v. Cruttenden & Co.,
      18 Cal. App. 4th 802 (1993)..................................................................................25

Mackey v. Nat'l Football League,
      543 F.2d 606 (1976)..............................................................................................16

Mass. Mut. Life Ins. Co. v. Superior Court,
      97 Cal. App. 4th 1282 (2002)..................................................................................6

McKeever v. Block,
      932 F.2d 795 (9th Cir. 1991).................................................................................22

McKell v. Wash. Mut., Inc.,
      142 Cal. App. 4th 1457 (2006)..............................................................................21

Medimatch, Inc. v. Lucent Tech. Inc.,
      120 F. Supp. 2d 842 (N.D. Cal. 2000)...................................................................17

Meinhold v. Sprint Spectrum L.P.,
      No. CIV. S-07-00456 FCD EFB, 2007 WL 1456141 (E.D. Cal. May 16, 2007)...13

Meyer v. Sprint Spectrum L.P.,
      150 Cal. App. 4th 1136 (2007)...........................................................................7, 13

Michelson v. Hamada,
      29 Cal. App. 4th 1566 (1994)................................................................................24

Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Solutions, Inc.,
      C04-01661 WHA, 2004 WL 1888769 (N.D. Cal. July 21, 2004) .........................11

Nelloyd Lines B.V. v. Superior Court,
      3 Cal. 4th 459 (1992)............................................................................................17

Norgart v. UpJohn Co.,
      21 Cal. App. 4th 383 (1996)....................................................................................4

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-iv-

Norwest Mortgage, Inc. v. Superior Court,
　　72 Cal. 4th 214 (1999).................................................................................18

O'Shea v. Littleton,
　　414 U.S. 488 (1974)..........................................................................1, 19, 22

Oakland Raiders v. Nat'l Football League,
　　131 Cal. App. 4th 621 (2005).........................................................................24

Omega Env't, Inc. v. Gilbarco, Inc.,
　　127 F.3d 1157 (9th Cir. 1997)........................................................................10

People ex rel. Mosk v. Nat'l Research Co. of Cal.,
　　201 Cal. App. 2d 765 (1962).........................................................................10

People's Choice Wireless, Inc. v. Verizon Wireless,
　　131 Cal. App. 4th 656 (2005)...........................................................................9

Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n,
　　81 F.3d 858 (1996).......................................................................................16

Recorded Picture Co. v. Nelson Entm't, Inc.,
　　53 Cal. App. 4th 350 (1997).........................................................................25

Redding v. St. Francis Med. Ctr.,
　　208 Cal. App. 3d 98 (1989)...........................................................................11

Richelle L. v. Roman Catholic Archbishop,
　　106 Cal. App. 4th 257 (2003).......................................................................25

Robinson v. Fair Employment & Hous. Comm'n,
　　2 Cal. 4th 226 (1992)...................................................................................27

Rosary-Take One Prod. Co. Ltd. P'ship v. New Line Distrib., Inc.,
　　No. 89 Civ. 1905 (CSH), 1996 WL 79327  (S.D.N.Y. Feb. 23, 1996)................24

Rubin v. Green,
　　4 Cal. 4th 1187 (1993)..................................................................................10

San Francisco Bay Area Rapid Transit Dist. v. Spencer,
　　No. C 04-04632 SI, 2007 WL 81899 (N.D. Cal. Jan. 9, 2007)..........................28

Snapp & Assocs. Ins. Servs, Inc. v. Robertson,
　　96 Cal. App. 4th 884 (2002)............................................................................6

Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.,
　　138 Cal. App. 4th 1215 (2006).........................................................................9

Twaite v. Allstate Ins. Co.,
　　216 Cal. App. 3d 239 (1989).........................................................................21

USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Const. Trades Council,
　　31 F.3d 800 (9th Cir. 1994).........................................................................17

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-v-

Vess v. Ciba-Geigy Corp., USA,
       317 F.3d 1097 (9th Cir. 2003) ................................................................13

Wang & Wang LLP v. Banco Do Brasil, S.A.,
       No. Civ. S-06-00761 DFL KJM, 2007 WL 915232 (E.D. Cal. Mar. 26, 2007) ............21

Whittaker v. Otto,
       188 Cal. App. 2d 619 (1981) ..................................................................27

Wood v. Carpenter,
       101 U.S. 135 (1879) .............................................................................4

Woods v. Asset Resources,
       No. 1:06-cv-00398-SMS, 2006 WL 3782704 (E.D. Cal. Dec. 21, 2006) ................21

Wolf v. Superior Court,
       107 Cal. App. 4th 25 (2003) ...................................................................26

## Statutes and Rules

Fed. R. Civ. P. 8 ................................................................................12, 21

Fed. R. Civ. P. 11 ..................................................................................24

Fed. R. Civ. P. 9(b) ...........................................................................2, 4, 12, 13

Fed. R. Civ. P. 12(b)(6) .........................................................................passim

29 U.S.C § 187 (West 2007) ........................................................................15

15 U.S.C § 17 (West 2007) .........................................................................16

Cal. Bus. & Prof. Code § 17200 (West 2007) .....................................................passim

Cal. Bus. & Prof. Code § 17204 (West 2007) .......................................................6, 7

## Secondary Sources

1 Cal. Jur. 3d Accounts & Accounting § 77 .........................................................29

1 Cal. Jur. 3d Accounts & Accounting § 85 .........................................................29

4 Witkin, Cal. P. § 480 (4th ed. 1997) .............................................................21

31 C.J.S. Estoppel & Waiver § 88 (2007) ...........................................................27

Restatement (Second) of Agency § 15 (1958) .......................................................27

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defendants' Reply Memorandum in Support of Their Motions to Dismiss          Civ. Action No. C07 0943 WHA

DEWEY BALLANTINE LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

# MEMORANDUM OF POINTS AND AUTHORITIES

Despite having been directed by the Court to plead their "best case" in what is now the fourth version of the complaint submitted in this lawsuit, Plaintiffs still have failed to allege facts that would plausibly support a claim that they are entitled to relief.  As the Supreme Court has made clear, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal quotations omitted).  In their Opposition ("Opp'n Br."), Plaintiffs offer no credible defense of their failure – they simply fall back upon the same conclusory allegations and characterizations that were insufficient in the first place.

Moreover, Plaintiffs' Opposition cannot escape the rule that, even in a putative class action, a complaint must be dismissed if the named plaintiffs have not individually stated a claim. Boyle v. Madigan, 492 F.2d 1180, 1182 (9th Cir. 1974); O'Shea v. Littleton, 414 U.S. 488, 494 (1974).  Unable to state claims "in themselves for the relief they seek," Plaintiffs repeatedly rely "on allegations concerning injury to other unnamed, purported class members," something that mandates dismissal.  See Boyle, 492 F.2d at 1182.

Plaintiffs' Opposition also cannot obscure the fact that much of the alleged conduct that Plaintiffs complain of occurred outside the statute of limitations period.  Plaintiffs' response – that the Court should apply the equitable "discovery rule" – is completely without merit.  Indeed, Plaintiffs cannot allege, and have not alleged, that they did not have reason "at least to suspect a factual basis for [the] elements" of their claims when: (1) Mr. Adderley made requests for information to Players Inc concerning the subject of this lawsuit dating back to 1994 (SAC ¶ 27); (2) Mr. Parrish began publicly attacking the NFLPA and Players Inc about the subject matter of his claims long before the limitations period began (SAC ¶ 4); and (3) Plaintiffs did not receive monies allegedly owed to them by Players Inc dating back to at least 1998, when Mr. Parrish alleges he signed a GLA.  SAC ¶¶ 56, 59.

More specifically, Plaintiffs' Opposition cannot overcome any of the following fatal defects in Plaintiffs' claims:

-1-

First, the Opposition only confirms that Plaintiffs' claims under California Unfair Competition Law (Section 17200) fail for numerous independent reasons: (1) the SAC does not allege facts capable of supporting a claim of injury in fact under either the unfair competition or fraudulent business practices prongs of the statute; (2) the SAC does not allege any facts to support a viable antitrust claim under the "unfairness" prong; (3) the SAC does not allege any facts (much less with the particularity required by Rule 9(b)) to support Plaintiffs' fraud claims; (4) Plaintiffs' antitrust/unfairness claims against the NFLPA are preempted under federal law because they are premised on a challenge to the NFLPA's CBA rights to represent active NFL players; (5) Plaintiffs' Section 17200 claims are inapplicable to the extent that they are based on contracts with choice of law clauses selecting non-California law; and (6) Parrish and Adderley, non-California residents, have not alleged any specific unlawful or fraudulent acts by Defendants in California to state a claim under Section 17200.

Second, Plaintiffs' Opposition cannot change the fact that Plaintiffs do not allege that Parrish or Roberts signed any identified GLA within the statute of limitations period, clearly requiring dismissal of their individual breach of contract claims. And, although Adderley signed two GLAs within the limitations period, the SAC does not identify which terms of those GLAs were allegedly breached by which defendant, and, more importantly, does not allege any facts that would plausibly support a claim for breach. For example, Mr. Adderley does not allege that his image was used in a licensed product by Players Inc for which he was not paid.

Third, having first argued that their breach of fiduciary duty claims were not based on the GLAs, only to switch positions to contend that those claims rested entirely on the GLAs, Plaintiffs have changed their theory in the Opposition Brief again. Plaintiffs now contend that their breach of fiduciary duty claims are based in part on the GLAs and in part on … something else, which they never identify. In all events and under any theory, Plaintiffs' breach of fiduciary duty claims fail because: (1) the SAC does not allege facts to show any relationship between Parrish or Roberts and any Defendant during the limitations period, much less a fiduciary relationship; (2) the SAC alleges only a contractual GLA relationship between Adderley and Defendants, which, without more, cannot give rise to fiduciary duties; (3) the SAC

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-2-

1   does not allege that Defendants misused or misappropriated the intellectual property or other

2   assets of any of the Plaintiffs to support an implied agency theory; and (4) the SAC does not

3   allege <u>any facts</u> that would plausibly support a "theory" of fiduciary duty based on a

4   "confidential relationship" or agency by estoppel.

5          <u>Fourth</u>, because all of the Plaintiffs' substantive claims fail, their derivative unjust

6   enrichment claim fails.  The SAC also does not allege any facts to show that any of the Plaintiffs

7   conferred any benefit on Players Inc or the NFLPA, much less a benefit from which either

8   Defendant was unjustly enriched.

9          <u>Finally</u>, Plaintiffs' demand for an accounting seeks an equitable remedy without

10  any substantive cause of action to support it.  Further amendment would be futile and the SAC

11  should be dismissed with prejudice before it inflicts any more costs on the parties or the Court.

12                          <u>**ARGUMENT**</u>

13  **I.     <u>NONE OF THE APPLICABLE STATUTES OF LIMITATIONS HAS BEEN
        TOLLED</u>**

14

15         As shown in Players Inc's moving brief ("Players Inc Br."), much of the conduct

16  challenged by Plaintiffs is barred by the applicable statutes of limitations.  <u>See</u> Players Inc Br. at

17  7.  Specifically, there are no actionable facts or claims prior to February 14, 2003 (<u>i.e.</u>, four years

    prior to the first-filed Complaint).  Plaintiffs do not deny that much of the conduct they complain

18  of is outside the statute of limitations.  <u>See</u>, <u>e.g.</u>, SAC ¶ 16 (GLA signed by Parrish expired in

19  1998); <u>id.</u> ¶ 13 (letter signed by Gene Upshaw in 2000).  Instead, in a futile effort to salvage their

20  time-barred claims, Plaintiffs claim that "[b]efore [the 2006 LM-2 Labor Organization Annual

21  Report] was filed," Defendants had concealed the facts underlying Plaintiffs' claims so that the

22  statutes of limitations were "tolled by Defendants' conduct."  <u>See</u> SAC ¶¶ 27, 54.

23         In its moving brief, Players Inc demonstrated that such conclusory allegations

24  could not provide a basis for invoking the fraudulent concealment doctrine.  <u>See</u> Players Inc Br.

25  at 7-9.  Unable to respond to this fatal defect, Plaintiffs have now abandoned their fraudulent

26  concealment claim altogether:  "The [fraudulent concealment] doctrine is not at issue in this

27

28

-3-

case." Opp'n Br. at 41.[1]  Instead, Plaintiffs now contend that the Court should "ameliorate[]" the

"harshness of limitations" by applying the equitable discovery rule.  See id. at 38-39.  The

problem for Plaintiffs, however, is that the SAC is utterly devoid of any factual allegations that

could possibly justify invocation of this narrow exception to the statute of limitations.

Indeed, under California law, there is a strong presumption in favor of the strict

application of statutes of limitations.  As discussed in Norgart v. Upjohn Co., the statute of

limitations has two purposes: (1) to protect defendants from the "stale claims of dilatory

plaintiffs," and (2) to stimulate plaintiffs to "assert fresh claims against defendants in a diligent

fashion."  21 Cal. 4th 383, 395 (1999).  These purposes, in accord with public policy, promote

"repose by giving security and stability to human affairs."  Id. at 396 (quoting Wood v.

Carpenter, 101 U.S. 135, 139 (1879)).

A very limited exception to this principle is provided by the discovery rule.

Under this equitable doctrine, a cause of action does not begin to accrue until the plaintiff

discovers, or has reason to discover, the cause of action.  See Grisham v. Philip Morris U.S.A.,

Inc., 40 Cal. 4th 623, 634 (2007).  A plaintiff "has reason to discover" a cause of action when he

or she "has reason at least to suspect a factual basis for its elements."  Id. (emphasis added)

(internal citations omitted).  The discovery rule applies only in rare and exceptional

circumstances where "it is manifestly unjust to deprive plaintiffs of a cause of action before they

are aware that they have been injured."  April Enters. Inc. v. KTTV, 147 Cal. App. 3d 805, 826

(1983) (citing Leaf v. City of San Mateo, 104 Cal. App. 3d 398, 406 (1980)).

The California Supreme Court recently confirmed the strict pleading requirements

for invoking the discovery rule:  A plaintiff whose complaint "shows on its face that his claim

would be barred without the benefit of the discovery rule must specifically plead facts to show

---

[1] Plaintiffs half-heartedly contend that the fraudulent concealment cases discussed in Players Inc's moving brief are "irrelevant" and "inapposite."  Opp'n Br. at 41.  However, as Players Inc demonstrated in its moving brief (at 8-9), Plaintiffs cannot rely on the fraudulent concealment doctrine because they do not allege any facts to show any affirmative actions on the part of Defendants to conceal their purportedly wrongful conduct, as required under controlling California law and Rule 9(b).

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-4-

(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite

reasonable diligence." Grisham, 40 Cal. 4th at 638 (emphasis added).  Here, Plaintiffs allege no

facts at all with respect to "the time and manner of discovery" of their claims, an essential

requirement for any attempt to invoke the discovery rule.  See id.  Further, Plaintiffs do not

"specifically plead facts to show" that they could not have discovered their claims earlier

"despite reasonable diligence."  See id.

       Indeed, Plaintiffs do not and could not allege that they did not have reason "at

least to suspect a factual basis for [the] elements" of their claims prior to the limitations period.

See id. at 634.  They admit in the SAC that Adderley made numerous requests to Defendants for

information about the subject matter of the litigation dating back to 1994 (SAC ¶ 27), clearly

indicating that he had reason "at least to suspect" the grounds for his claims many years ago.

See Grisham, 40 Cal. 4th at 638 (plaintiff "at the very least had reason to suspect that she was

addicted to cigarettes").  Moreover, it is undisputed that Parrish has spent decades attacking the

NFLPA and Players Inc for a myriad of alleged wrongs, making it impossible for him to advance

any allegation that he had no reason "to suspect" the basis for his claims prior to the limitations

period.  See Players Inc's Notice of Mot. and Mot. for Sanctions Pursuant to R. 11, 28 U.S.C.

§ 1927, and the Court's Inherent Powers ("Sanctions Motion") at 11-13.  Most damaging of all,

Plaintiffs allege that since at least 1998, they have not received monies allegedly owed to them

by Players Inc (SAC ¶¶ 20-21); if true, this failure would clearly have given Plaintiffs reason to

"at least to suspect" that they were injured and had a claim.

       None of the alleged "facts" to which Plaintiffs point in their Opposition comes

close to satisfying the strict requirements for invocation of the discovery rule.  For example, the

conclusory assertion that "Defendants took actions to hide, mask, or keep secret the facts needed

by Plaintiffs" (Opp'n Br. at 40) is clearly inadequate in light of both Twombly and Grisham's

requirement that plaintiffs seeking to invoke the discovery rule "specifically plead facts."  The

only "fact" that Plaintiffs allege in support of this assertion is that "PLAYERS INC and the

NFLPA have revealed only sketchy and inadequate information to Plaintiffs despite numerous

requests dating as far back as 1994."  See id. (citing SAC ¶ 27).  However, this assertion only

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-5-

confirms that Plaintiffs had reason to suspect that they had a claim for over a decade, but that they did nothing to file an action to pursue their purported rights.  "[T]he burden [is] on the plaintiff to show diligence; <u>conclusory allegations will not withstand demurrer</u>."  <u>Grisham</u>, 40 Cal. 4th at 638 (emphasis added) (internal quotations omitted).

Finally, although Plaintiffs try to invoke the discovery rule for all their untimely claims, the rule should not even be available for statutory claims under Section 17200.  <u>See Snapp & Assocs. Ins. Servs., Inc. v. Robertson</u>, 96 Cal. App. 4th 884, 891 (2002) (holding that the discovery rule, which is equitable in nature, should not apply to statutory unfair competition claims); <u>but see Mass. Mut. Life Ins. Co. v. Superior Ct.</u>, 97 Cal. App. 4th 1282, 1295 (2002).

## II.    PLAINTIFFS' SECTION 17200 CLAIMS MUST BE DISMISSED

### A.    PLAINTIFFS' UNFAIR BUSINESS PRACTICES CLAIM UNDER SECTION 17200 MUST BE DISMISSED

#### 1.    Plaintiffs Have Not Alleged Any Injury in Fact Resulting From Unfair Business Practices

"Plaintiffs do not dispute the need to allege 'injury in fact' in order to establish a Section 17200 claim."  Opp'n Br. at 26.  As Plaintiffs concede, for private plaintiffs to have standing under Section 17200, they must have "suffered injury in fact <u>and</u> [have] lost money or property as a result of such unfair competition."  Cal. Bus. & Prof. Code § 17204 (emphasis added).  Other than simply reciting this standard in conclusory fashion, however, the SAC alleges nothing to indicate how Defendants' purported unfair business practices resulted in a loss of Plaintiffs' money or property.  <u>See</u> <u>Twombly</u>, 127 S.Ct. at 1964-65 ("[Such] a formulaic recitation of the elements of a cause of action will not do"); <u>Cattie v. Wal-Mart Stores, Inc.</u>, No. 06CV0897-LAB (CAB), 2007 WL 935582, *6 (S.D. Cal. Mar. 21, 2007) (dismissing complaint alleging that plaintiffs "have been injured in their money or property as a result of Defendants' [conduct]" because such allegations are "conclusory"); <u>Halicki v. Carroll Shelby Int'l, Inc.</u>, No. CV 04 8813 SJO (PJWX), 2005 WL 5253338, *16 (C.D. Cal. Nov. 14, 2005) (dismissing Section 17200 claim where Plaintiff "failed to establish that she has 'suffered injury in fact and has lost money or property'").

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-6-

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1    Plaintiffs try to overcome this fatal pleading defect by identifying in their

2   opposition brief two types of harm that purportedly resulted from Defendants' allegedly unfair

3   business practices: (1) lost dues; and (2) lost licensing "opportunities."  See Opp'n Br. at 26-28.

4   With respect to "lost dues," Plaintiffs allege that "dues payments to the NFLPA entitled retired

5   players, among other things, to licensing opportunities that generate guaranteed minimum

6   payments." Id. at 28 (citing SAC ¶ 72).  However, Plaintiffs identify no factual nexus between

7   any lost dues and the purported conduct which is the subject of Plaintiffs' unfair business

8   practices claim.  Put another way, Plaintiffs do not allege that they lost dues "because of" any

9   alleged exclusive dealing agreements or other alleged unfair competition by Defendants and thus

10  they do not and cannot allege injury in fact from this conduct.  See Cal. Bus. & Prof. Code §

11  17204 (requiring "suffered injury in fact and [ ] lost money or property as a result of such unfair

12  competition") (emphasis added).

13    Equally fatal, Plaintiffs fail to identify what "dues" they are referring to, or

14  whether they paid such dues.  If Plaintiffs' allegation about "dues payments to the NFLPA"

15  refers to their union dues, suffice it to say that their claims are time-barred since Adderley retired

16  in 1972 (SAC ¶ 5), Parrish retired in 1966 (SAC ¶ 4), and Roberts retired in 1970 (SAC ¶ 6).  If

17  Plaintiffs are referring to dues paid to the NFLPA Retired Players Association, none of the

18  Plaintiffs allege that he paid any such dues in the SAC.  Rather, Plaintiffs only allege that "the

19  NFLPA does not provide 'extensive' services and benefits to retired players, even to those

20  retired players who have chosen to pay the $100 annual fee to join the NFLPA's retired player

21  program." SAC ¶ 24 (emphasis added).  Plaintiffs, of course, cannot remedy their own failure to

22  allege "lost money or property" by piggy-backing on the claims of "those" hypothetical class

23  members who did pay dues to the NFLPA Retired Players Association.[2]

24

25  [2] Meyer v. Sprint Spectrum L.P., 150 Cal. App. 4th 1136, 1145 (2007) ("The language of
    [Section 17200], as amended [], makes clear that a showing of causation is required as to each
26  representative plaintiff"); Deitz v. Comcast Corp., No. C 06-06352 WHA, 2006 WL 3782902, *4
    (N.D. Cal. Dec. 21, 2006) (Alsup, J.) ("Any injury that unnamed members of the proposed class
27  may have suffered is irrelevant to the question whether our named plaintiff is entitled to the . . .
    relief he seeks").
28

Defendants' Reply Memorandum in Support of Their Motions to Dismiss    Civ. Action No. C07 0943 WHA

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Plaintiffs also purport to have suffered injury in fact as a result of "lost licensing opportunities." Opp'n Br. at 26-28 (emphasis added). Even taking Plaintiffs' allegations at face value, a claim for lost licensing "opportunities" does not equate to a claim for "lost money or property" justifying restitution, which is the only monetary award available under Section 17200. See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1144 (2003). Moreover, although Plaintiffs allege that "Players Inc has … effectively cut off any avenues for retired players to deal directly with licensees or sponsors such as TOPPS and Electronic Arts" (Opp'n Br. at 27 (citing SAC ¶ 35)), Plaintiffs do not allege that they individually made any attempt to license their intellectual property rights to Topps, EA Sports, or any other potential third-party licensee and, thus, have not adequately alleged any injury. See Cryoport Sys. v. CNA Ins. Co., 149 Cal. App. 4th 627, 631-32 (2007) (plaintiff failed to allege it had tried to reinstate canceled insurance policy and thus had not alleged injury from purported unfair conduct). Nor do Plaintiffs allege that Topps, EA Sports, or any other potential third-party licensee has ever expressed any interest in acquiring Plaintiffs' intellectual property rights from them or anyone else (which, of course, is the only way that there could be a "lost opportunity").

Tellingly, Plaintiffs no longer cite the so-called "Gene Upshaw letter" (the document that Plaintiffs' counsel used at the May 31, 2007 hearing in order to persuade the Court to give Plaintiffs one more chance to amend their complaint) as the basis for their unfair business practices claim. That is because (as Players Inc pointed out in its moving brief), the letter was sent before March of 2000, i.e., at least three years prior to the commencement of Section 17200's four-year statute of limitations period, and is not alleged to have been received, read, or relied upon by any of the Plaintiffs.

### 2.    Plaintiffs Have Not Alleged An Incipient Antitrust Violation

As set forth in Players Inc's moving brief, Plaintiffs' unfair business practices claim rests entirely on antitrust buzz words, rather than substantive antitrust allegations. For example, Plaintiffs allege "harm to competition," but do not allege the existence of any relevant product market or geographic market in which such alleged harm could take place. Players Inc. Br. at 14. Likewise, Plaintiffs allege that Defendants "designed to attain a monopoly" (SAC ¶

-8-

34), but do not allege that the Defendants currently possess market or monopoly power or have a dangerous probability of achieving such power in any identified market.[3]  In their Opposition Brief, Plaintiffs do not deny that they have made no such substantive antitrust allegations. Instead, they contend that their formulaic recitation of hornbook unfair competition law elements is all that is required.[4]  See Opp'n Br. at 15.  Plaintiffs are wrong.  See Twombly, 127 S.Ct. at 1964-65.

In fact, the position advocated by Plaintiffs was expressly rejected by the California Supreme Court in Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163 (1999).  Where, as here, a plaintiff brings suit against an asserted competitor (see SAC ¶¶ 4-6), the plaintiff cannot allege conduct that purportedly "violate[s] both the policy and spirit of the Sherman Act[] … and Cartwright Act" (SAC ¶ 77), and then try to evade basic antitrust pleading requirements by labeling the allegedly anticompetitive conduct "unfair."  See Cel-Tech, 20 Cal. 4th at 182 ("A plaintiff may thus not plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition") (internal quotations omitted); see also Chavez, 93 Cal. App. 4th at 375 ("To permit a separate inquiry into essentially the same question under [Section 17200 and the antitrust laws] would only invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct").

_____

[3] See, e.g., Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estates Servs., Inc., 138 Cal. App. 4th 1215, 1225 (2006) (dismissing complaint that "alleges no conduct even remotely approaching a violation of an antitrust law or the policy or spirit of antitrust laws"); People's Choice Wireless, Inc. v. Verizon Wireless, 131 Cal. App. 4th 656, 667 (2005) ("[T]he mere refusal to deal does not violate the spirit or policy of antitrust law.  In the absence of an abuse of monopoly power in a relevant market, this case involves nothing more than a permissible refusal to deal….") (emphasis added); Chavez v. Whirlpool Corp., 93 Cal. App. 4th 363, 375 (2001) (dismissing unfair competition law claims where plaintiff could not allege as a matter of law that defendant's conduct was an unreasonable restraint of competition).

[4] Plaintiffs also argue that "[w]hether Defendants have actually harmed competition … cannot be decided on this motion."  Opp'n Br. at 15.  This argument is based on a fundamental misunderstanding of Rule 12(b)(6).  It goes without saying that the merits of Plaintiffs' claim will not be decided on this motion; the issue is whether Plaintiffs have adequately alleged facts that would support their claims of harm to competition, which, of course, must be decided on this motion.

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defendants' Reply Memorandum in Support of Their Motions to Dismiss    Civ. Action No. C07 0943 WHA

1    Plaintiffs try to distort these settled principles by arguing "that Section 17200 was

2   enacted as a broad and sweeping statute. . . ." Opp'n Br. at 17. But they cannot dispute that <u>Cel-</u>

3   <u>Tech</u> limited the application of Section 17200 with respect to lawsuits, such as this one, brought

4   by alleged <u>competitors</u> (as opposed to consumers). That is why Plaintiffs resort to relying on

5   cases that either were decided before <u>Cel-Tech</u> or involved claims by consumers (not

6   competitors).[5] <u>See</u> <u>Gregory v. Albertson's, Inc.</u>, 104 Cal. App. 4th 845, 853 (2002) (observing

7   that a Section 17200 suit brought by a consumer "does not fall within the procedural context to

8   which the new [<u>Cel-Tech</u>] test applies").

9    Indeed, the quote about the "broad, sweeping language" of Section 17200 that

10  Plaintiffs' recite from <u>Cel-Tech</u> (<u>see</u> Opp'n Br. at 18), is misleading in light of the fact that, just

11  pages later, the <u>Cel-Tech</u> court <u>rejected</u> the "definitions" of "unfair" acts that had previously

12  been applied because they were "too amorphous and provide too little guidance to courts and

13  businesses." <u>Cel-Tech</u>, 20 Cal. 4th at 185. The California Supreme Court explained that in order

14  to "devise a more precise test for determining what is unfair conduct under [Section 17200]" in

15  cases involving competition it would look to the jurisprudence 'arising under section 5 [of the

16  FTC Act]'s prohibition against unfair methods of competition.'" <u>Id.</u> at 185-86. Thus, the Court

17  went on to "require that any finding of unfairness to competitors under section 17200 be tethered

18  to some legislatively declared policy or proof of some actual or threatened impact on

19  competition." <u>Id.</u> at 186-87.

20   Because there are "well-recognized economic benefits to exclusive dealing

21  arrangements," federal (and state) antitrust laws require an analysis of the affected market and

22  deem exclusive dealing to be unreasonable restraints "only when a significant fraction of buyers

23  or sellers are frozen out of a market by the exclusive deal." <u>Jefferson Parish Hosp. Dist. No. 2 v.</u>

24  <u>Hyde</u>, 466 U.S. 2, 45 (1984) (O'Connor, J., concurring); <u>Omega Envtl. Inc. v. Gilbarco, Inc.</u>, 127

25

26  _____

    [5] <u>See</u> Opp'n Br. at 17-18 (citing <u>Gregory</u>, 104 Cal. App. 4th at 851 (consumer lawsuit); <u>Rubin v.</u>
27  <u>Green</u>, 4 Cal. 4th 1187 (1993) (pre-<u>Cel-Tech</u>); <u>Bank of the West v. Superior Ct.</u>, 2 Cal. 4th 1254
    (1992) (same); <u>People ex rel. Mosk v. Nat'l Research Co. of Cal.</u>, 201 Cal. App. 2d 765 (1962)
28  (same)).

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defendants' Reply Memorandum in Support of Their Motions to Dismiss    Civ. Action No. C07 0943 WHA

F.3d 1157, 1162 (9th Cir. 1997); <u>Redding v. St. Francis Med. Ctr.</u>, 208 Cal. App. 3d 98, 107

(1989).  Thus, to state an unfair competition claim based on exclusive dealing arrangements as

Plaintiffs purport to do here, a plaintiff must allege facts with respect to the relevant product and

geographic markets, and the defendants' market share, among other things.  Here, however,

Plaintiffs rest entirely on their amorphous, conclusory allegations of harm to competition.  <u>See</u>,

<u>e.g.</u>, SAC ¶¶ 33, 76, 77.  Allowing Plaintiffs an end-run around the antitrust pleading

requirements would disturb the balance set forth by the <u>Cel-Tech</u> court.  <u>See</u> <u>Cel-Tech</u>, 20 Cal.

4th at 185 ("An unidentified standard of what is 'unfair' fails to give businesses adequate

guidelines as to what conduct may be challenged and … [i]n some cases, it may even lead to the

enjoining of <u>pro</u>-competitive conduct and thereby undermine consumer protection, the primary

purpose of the antitrust laws") (emphasis in original).

       Plaintiffs' attack on Defendants' citation to this Court's decision in <u>National</u>

<u>Credit Reporting Association, Inc. v. Experian Information Solutions, Inc.</u>, No. C04-01661

WHA, 2004 WL 1888769, *1-2 (N.D. Cal. Jul. 21, 2004) (Alsup, J.), is equally misplaced.

Players Inc specifically noted in its moving brief that the decision was "[i]n the context of a

motion for remand," and not a motion to dismiss.  Players Inc Br. at 12-13.  That said, the

Court's holding in <u>National Credit Reporting</u> is instructive here.  The Court applied the principle

that, even where a plaintiff has not asserted a cause of action under the Sherman Act, its "Section

17200 claim requires an interpretation of the Sherman Act" if based on allegations that

defendant's conduct "violates state and federal antitrust laws and threatens incipient violation of

those laws and violates the policy and spirit of those laws because the effects of Defendants'

conduct are comparable to or the same as a violation of those laws."  <u>Nat'l Credit Reporting</u>,

2004 WL 1888769, *1-2.  Here, Plaintiffs have expressly claimed that Defendants' conduct

violates the policy and spirit of both federal and state antitrust laws.  Thus, as the Court has

previously stated, "Plaintiff has made a Sherman Act bed and must now lie in it."  <u>Id.</u> at *5.

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-11-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEWEY BALLANTINE LLP**
1950 University Avenue
East Palo Alto, California 94303-2225

**B.    PLAINTIFFS' FRAUDULENT BUSINESS PRACTICES CLAIMS UNDER SECTION 17200 MUST BE DISMISSED**

**1.    Plaintiffs Have Not Alleged Any Injury in Fact Resulting From Fraudulent Business Practices**

With respect to their fraudulent business practices claim under Section 17200, Plaintiffs contend that they adequately pleaded "injury in fact" by alleging that they were "deceived."  Opp'n Br. at 28-29.  But pleading injury in fact under Section 17200 requires allegations of a "loss of money or property," and Plaintiffs' conclusory allegations that they were "deceived" in no way indicate how such purported deception resulted in a "loss of money or property."

Plaintiffs' fraudulent business practices claim also fails on the independent ground that the SAC lacks any factual allegation that any Plaintiff saw or heard, much less relied upon, the allegedly fraudulent statements.  In its moving brief, Players Inc highlighted this critical pleading deficiency, <u>see</u> Players Inc Br. at 15-16, and Plaintiffs' response simply confirms Defendants' point:

> These [allegedly fraudulent] statements, many of which appeared on the NFLPA's <u>and/or</u>[6] Players Inc's websites … are hardly secret, and it is alleged clearly that, <u>like all statements on websites, they were intended to be viewed by the public including plaintiffs</u>.

Opp'n Br. at 25 (emphasis added).  The relevant issue is not whether "all statements on websites" are "intended" to be viewed by "the public including plaintiffs," but whether Plaintiffs actually were aware of, and relied upon, the statements on the Players Inc website so that they could allegedly be "deceived."  Plaintiffs, however, carefully (and conspicuously) avoid alleging that they personally saw and relied upon any of the allegedly fraudulent statements.  They never allege, for example, that any them ever saw (much less relied upon) the time-barred "Gene Upshaw letter" or the statement on Defendants' websites concerning Players Inc's representation

---

[6] In violation of Rule 9(b), and even the basic pleading requirements under Rule 8, Plaintiffs do not even allege <u>which</u> Defendant is alleged to have made each purportedly fraudulent statement. See <u>Foley v. Bates</u>, No. C 07-0402 PHS, 2007 WL 1430096, *15 (N.D. Cal. May 14, 2007).

of certain numbers of retired players. These pleading defects cannot be cured and are fatal to Plaintiffs' fraudulent business practices claim.[7]

### 2.    Plaintiffs Have Not Met the Requirements for Alleging Fraud with Particularity Under Rule 9(b)

Plaintiffs concede that they must allege their fraudulent business practices claims with the particularity required by Rule 9(b). Opp'n Br. at 24. However, because Plaintiffs' allegations fall so far short of Rule 9(b)'s standards, they resort to trying to rewrite the Rule. It is hornbook law that compliance with Rule 9(b) requires, among other things, alleging the who, what, where, when, and how of any alleged fraudulent conduct. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) (applying Rule 9(b) to fraud claims brought under Section 17200). Nonetheless, Plaintiffs argue that they must merely "give defendants notice of the particular misconduct." Opp'n Br. at 24 (citing Cooper v. Pickett, 137 F.3d 616 (9th Cir. 1997) and Meinhold v. Sprint Spectrum LP, No. CIV. S-09-00456 FCD, EFA, 2007 WL 1456141 (E.D. Cal. Mar. 16, 2007)). If Rule 9(b) required Plaintiffs only to give simple notice of their fraud claims, however, it would be no more demanding than Rule 8, and thus it comes as no surprise that Cooper and Meinhold do not actually support Plaintiffs' position.

For example, whereas Plaintiffs quote Meinhold as stating that fraud allegations must "give defendants notice of the particular misconduct," the court goes on to state that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." Meinhold, 2007 WL 1456141, *2 (emphasis added). Similarly, Plaintiffs take out of context language in Cooper stating that "[i]t is not fatal to the complaint that it does not describe in detail a single specific [shipment] … by customer, amount, and precise method," when the Cooper plaintiff had in fact, alleged the "who," "what," "when," and "where" of the alleged fraud. Cooper, 137 F.3d at 627.

---

[7] See Cattie, 2007 WL 935582, *7 ("[w]here plaintiffs fail to allege they actually relied on false or misleading [statements], they fail to adequately allege causation as required by [Section 17200]."); Lutge v. Eskanos & Adler, P.C., No. C 06-07128 JSW, 2007 WL 1521551, *5 (N.D. Cal. May 24, 2007); Doe v. Texaco, Inc., No. C 06-02820 WHA, 2006 WL 2053504, *3 (N.D. Cal. Jul. 21, 2006) (Alsup, J.); Meyer, 150 Cal. App. 4th at 1145 (dismissing Section 17200 claim where "Plaintiffs fail to allege they actually relied on false or misleading advertisements").

---

-13-

In a final attempt to salvage their fraudulent business practices claim, Plaintiffs contend that the fraudulent nature of Defendants' statements "has now been established by Players Inc's Response to Request for Admission No. 1." Opp'n Br. 25. This contention simply makes no sense. Plaintiffs do not explain what they believe is supportive of their fraud claims in Players Inc's Response to Request for Admission No. 1, in which Players Inc denied Plaintiffs' assertion that Players Inc had purported to represent all retired players. Indeed, on its face, there is nothing supportive of any claim of fraud in this response. See Hilbert Declaration in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, Ex. 1 (Players Inc's Responses and Objections to Plaintiffs' First Set of Requests for Admissions at 5:8-17). Moreover, any discovery evidence from beyond the four corners of the SAC is irrelevant and may not be considered on Defendants' motions. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

### C.    PLAINTIFFS UNFAIR BUSINESS PRACTICES CLAIMS AGAINST THE NFLPA ARE PREMISED ON UNION ACTIVITIES AND THUS PREEMPTED UNDER FEDERAL LABOR LAW

The SAC contains very few factual allegations that are specific to the NFLPA. As discussed in the NFLPA's moving brief ("NFLPA Br."), Plaintiffs' vague allegations concerning conduct by undifferentiated "Defendants" or "the NFLPA and/or Players Inc" are insufficient as a matter of law to survive a motion to dismiss. See Foley, 2007 WL 1430096, *3. The handful of allegations of purportedly unfair business practices that are addressed specifically to the NFLPA, however, are premised upon its role as the exclusive collective bargaining representative of active NFL players and thus Plaintiffs' unfair competition claims are preempted by the federal labor laws. See SAC ¶ 9 (the NFLPA is the labor union representing all active football players in the NFL and "[a]lmost all active NFL players grant the right to market their names and images to the NFLPA under the Collective Bargaining Agreement with the NFL (the 'CBA')") (emphasis added); ¶ 30 ("the NFLPA dominates the market for NFL player marketing by virtue of its representation of almost all current NFL players under the CBA and thousands of retired players pursuant to GLAs") (emphasis added); ¶ 14 ("NFLPA has confirmed its desire and intention to become the exclusive group licensing representative for active and retired NFL

-14-

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1    Players"), (emphasis added); see also SAC, Ex. C (TOPPS license agreement, by its terms,

2    applies to current members of the NFLPA).

3            In an effort to avoid preemption, Plaintiffs now contend that despite the plain

4    language of the SAC, their Section 17200 claim against the NFLPA has nothing to do with the

5    licensing of active players' rights, and that the unfair business practices that are alleged relate

6    solely to the union's "group licensing rights of retired players." Opp'n Br. at 32 (citing SAC ¶

7    29, which alleges only, in conclusory fashion, that the "NFLPA has engaged in predatory and

8    unlawful conduct"). Plaintiffs cannot ignore the fact, however, that the only explicit allegations

9    in the SAC relating to claimed unfair competition by the NFLPA focus upon its representation,

10   pursuant to the CBA, of active NFL players. See e.g., SAC ¶ 30. Plaintiffs do not seriously

11   dispute that any state law challenge to the union's representation of such active players is

12   preempted. See Opp'n Br. at 32.

13           Further, as shown in the NFLPA's moving brief, there are two independent

14   reasons why Plaintiffs' state law unfair business practice claims against the NFLPA's

15   representation of active NFL players are preempted: (1) under Section 301 of the Labor

16   Management Relations Act, 29 U.S.C. § 187 ("LMRA"); and (2) under the principles of Connell

17   Construction Co. v. Plumbers & Steamfitters Local Union No. 100, 421 U.S. 616 (1975). See

18   NFLPA Br. at 4-7. In their Opposition Brief, Plaintiffs confuse these two separate bases for

19   preemption. Although they purport to address the "statutory" and "non-statutory" exemptions

20   from the federal antitrust laws, for example, neither exemption has anything to do with Section

21   301 preemption.

22           As set forth in the NFLPA's moving brief, Section 301 preempts all state law

23   claims that are based on rights created by a collective bargaining agreement, and all state law

24   claims that are substantially dependent on an interpretation of a collective bargaining agreement.

25   See Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987). Plaintiffs' only response is to argue

26   that the Section 301 cases cited by the NFLPA are irrelevant because they do "not address the

27   scope or application of the antitrust exemption for labor activities" under Section 6 of the

28   Clayton Act, 15 U.S.C. § 17. Opp'n Br. at 35 (emphasis added). That misses the point entirely.

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-15-

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Section 301 provides an _independent_ ground for preempting Plaintiffs' claims, apart from any antitrust exemption.  Thus, having no answer to the NFLPA's Section 301 preemption argument, Plaintiffs simply ignore it.

Plaintiffs also miss the mark with respect to _Connell_ preemption by focusing solely on whether their Section 17200 claims are subject to the statutory labor exemption under Section 6 of the Clayton Act or the non-statutory labor exemption discussed in _Phoenix Elec. Co. v. Nat'l Electric Contractors Ass'n_, 81 F.3d 858 (9th Cir. 1996).[8]  Plaintiffs completely ignore the larger point that _Connell_ preempts state law claims against union activities even where the specific exemptions to federal antitrust law do not apply.  Thus, _Connell_ makes clear that preemption of _state_ antitrust law claims (such as Plaintiffs' California unfair business practices claims) is broader than the statutory and non-statutory exemptions which apply to _federal_ antitrust claims:

> In this area, the accommodation between federal labor and antitrust policy is delicate.  Congress and this Court have carefully tailored the antitrust statutes to avoid conflict with the labor policy favoring lawful employee organization, not only by delineating exemptions from antitrust coverage but also by adjusting the scope of the antitrust remedies themselves. . . . State antitrust laws generally have not been subjected to this process of accommodation.

421 U.S. at 636 (citation omitted).  Under _Connell_, "[t]he use of state antitrust law to regulate union activities in aid of organization _must_ also be pre-empted because it creates a substantial risk of conflict with policies central to federal labor law."  _Id._ at 635-36 (emphasis added).  Because Plaintiffs' unfair competition claims against the NFLPA are predicated on its

---

[8] Plaintiffs' entire argument regarding the non-statutory labor exemption, as discussed in _Mackey v. Nat'l Football League_, 543 F.2d 606 (8th Cir. 1976) and _Phoenix Elec._, Opp'n Br. at 33-35, is off point.  _Phoenix_ and _Mackey_ have both been undermined by the Supreme Court's decision in _Brown v. Pro Football, Inc._, 518 U.S. 231 (1996).  _See California ex rel. Lockyer v. Safeway, Inc._, 371 F. Supp. 2d 1179, 1185 n.5 (C.D. Cal. 2005) (recognizing the abrogation of _Phoenix_ – "Prior to the Supreme Court's decision in _Brown_, the Ninth Circuit used a three-factor test to determine whether this exemption applied…[W]hile the _Mackey_ test required all three factors to be present, _Brown_ does not adopt such a rigid test.").  Moreover, it is irrelevant whether Defendants' activities fall within the purview of the non-statutory labor exemption – _Connell_ preemption of state law claims against union activities is available regardless of whether the non-statutory federal antitrust exemption applies.

1   representation of active players under the CBA (see, e.g., SAC ¶ 30), these claims are

2   preempted.[9]

3           D.      **PLAINTIFFS' SECTION 17200 CLAIMS MUST ALSO BE**
                    **DISMISSED TO THE EXTENT THOSE CLAIMS ARE**
4                   **BASED UPON ALLEGED CONTRACTS WITH CHOICE OF**
                    **LAW CLAUSES SELECTING ANOTHER STATE'S LAW**
5
            Plaintiffs do not dispute the principle that "[a] valid choice-of-law provision
6
    selecting another state's law is grounds to dismiss a claim under California's UCL." Cont'l
7
    Airlines, Inc. v. Mundo Travel Corp., 412 F. Supp. 2d 1059, 1070 (E.D. Cal. 2006); Medimatch,
8
    Inc. v. Lucent Tech. Inc., 120 F. Supp. 2d 842, 861-62 (N.D. Cal. 2000).  Plaintiffs contend,
9
    however, that "this Court has already determined that California law governs this dispute."
10
    Opp'n Br. at 29.  Plaintiffs are wrong.  The Court held that California law, as opposed to
11
    Virginia law, applied to Plaintiffs' breach of fiduciary duty claim for the limited purpose of
12
    Players Inc's motion for judgment on the pleadings.  See Court's Order dated June 4, 2007
13
    ("Order") at 5:15 (applying California law "[f]or purposes of this motion.").  Plaintiffs' Section
14
    17200 claim has never previously been before the Court.
15
            Plaintiffs erroneously contend that the Court should apply the California
16
    governmental approach interest test, but that test applies only in the absence of an express choice
17
    of law provision.  See Nelloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 481-82 (1992).  As
18
    Players Inc demonstrated in its moving brief, at least one of the GLAs upon which Plaintiffs rely
19
    in the SAC – the "Sample GLA" – has a New York choice of law provision.[10]  SAC, Ex. C at 19.
20
    Moreover, to the extent that Plaintiffs claim "that [their] Section 17200 claims do not rely on the
21

22  _____

23  [9] Although the inquiry ends there, the federal statutory antitrust exemption under Section 6 of the
    Clayton Act does in fact also apply.  In particular, there is no factual allegation in the SAC that
24  the NFLPA has combined with any group that is properly considered a "non-labor group." See
    Am. Fed'n of Musicians v. Carroll, 391 U.S. 99, 105 (1968).  A "non-labor group" does not
25  encompass an entity (such as Players Inc) that has an "economic interrelationship" with the
    union.  USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Const. Trades Council, 31 F.3d 800,
26  807 n.5 (9th Cir. 1994).

27  [10] Even if the governmental interest test were applied to the Adderley GLA (or the time-barred
    Parrish GLA), such GLAs were entered into between non-California residents and non-
28  California corporations, and thus there would be no basis for applying California law.

Defendants' Reply Memorandum in Support of Their Motions to Dismiss          Civ. Action No. C07 0943 WHA

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

existence of a GLA at all," but instead rely on Players Inc's alleged exclusive contracts, Opp'n

Br. at 29 (emphasis omitted), Plaintiffs still do not – and cannot – allege that the EA Sports,

Topps, or any other alleged exclusive licensing agreement are governed by California law. In

fact, the Topps licensing agreement attached to the SAC is expressly governed by New York

law. See SAC, Ex. C at 19.

**E.    PARRISH AND ADDERLEY, AS OUT-OF-STATE RESIDENTS WHO DO NOT ALLEGE ANY IN-STATE ACTIONABLE CONDUCT, CANNOT STATE CLAIMS UNDER SECTION 17200**

Plaintiffs do not dispute the controlling legal principle that in order for non-

California residents, such as Parrish and Adderley, to state a claim under Section 17200, they

must allege in-state misconduct. Opp'n Br. at 18-19. Instead, Plaintiffs argue that they have

sufficiently alleged such in-state conduct by asserting that Plaintiffs Parrish and Adderley,

"along with a class of retired NFL players . . . have been harmed by conduct … that has occurred

in California." Opp'n Br. at 30 (citing SAC ¶ 39). But once again, conclusory allegations

concerning a purported class of retired NFL Players are insufficient to state a claim for the

named Plaintiffs. See Boyle, 492 F.2d at 1182.

With respect to Plaintiffs' fraudulent business practices claim, the SAC makes no

claim of in-state conduct, i.e., that any of the purported misrepresentations specifically occurred

in California.[11] Regarding their unfair business practices claim, Plaintiffs' only allegation

relating to California is that EA Sports's primary place of business is in California. See Opp'n

Br. at 30. The SAC does not allege, however, that the agreement between EA Sports and Players

Inc was negotiated in California or signed in California, much less that Defendants' allegedly

unfair business practices vis-à-vis Parrish and Adderley occurred in California.[12] In addition,

---

[11] This is not surprising given that (i) Plaintiffs failed to plead the "where" of the alleged fraud; (ii) Players Inc and the NFLPA are incorporated in Virginia and domiciled in Washington D.C.; and (iii) Adderley and Parrish reside in New Jersey and Florida, respectively. See SAC ¶¶ 4, 5, 7, 8.

[12] Plaintiffs rely on Norwest Mortgage, Inc. v. Superior Court to support their claim of 17200 jurisdiction, but in that case, there were specific factual allegations that functions relating to the mortgages at issue had taken place in California. 72 Cal. App. 4th 214, 218-19 (1999). Plaintiffs' other purported "authority" is not even a Section 17200 case. See Opp'n Br. at 30 (citing Diamond Multimedia Sys., Inc. v. Superior Court, 19 Cal. 4th 1036, 1058-59 (1999)).

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1  none of the other allegedly unfair conduct challenged in the SAC has any purported connection

2  with California.

3  ## III.    PLAINTIFFS' BREACH OF CONTRACT CLAIMS MUST BE DISMISSED

4           Plaintiffs contend that their "Breach of Contract Claim is Sufficiently Pled <u>On

5  Behalf of the GLA Class</u>."  Opp'n Br. at 5 (emphasis added).  This statement alone demonstrates

6  why their breach of contract claims must be dismissed.  Unless <u>Parrish</u>, <u>Adderley</u> and <u>Roberts</u> –

7  not putative class members – have each stated an individual claim for breach of contract, then

8  their claims cannot withstand this motion.  <u>See</u> <u>O'Shea</u>, 414 U.S. at 494; <u>Boyle</u>, 492 F.2d at

9  1182; <u>see also</u> <u>Deitz</u>, 2006 WL 3782902, *4 (Alsup, J.).

10          With respect to Roberts and Parrish, their failure to state individual breach of

11 contract claims could not be more plain.  Roberts does not allege that he entered into <u>any</u>

12 contract, with <u>any</u> Defendant, at <u>any</u> time.  Similarly, Parrish alleges only that he entered into a

13 1998 GLA (which cannot give rise to any claim under the applicable four-year statute of

14 limitations), and that he "believes" that he entered into unidentified GLAs in unidentified "recent

15 years." SAC ¶ 54.[13]  Even Plaintiffs concede that they must, at the very least, "plead the legal

16 effect of a contract" in order to state a claim for breach, (Opp'n Br. at 6), but Parrish does not

17 allege that he entered into <u>any</u> particular contract which he can identify within the limitations

18 period.  Moreover, even if Parrish and Roberts had alleged that they signed identified GLAs

19 during the limitations period, they do not allege that Players Inc ever licensed their images

20 pursuant to such a GLA, or failed to pay them any monies owed to them as a result of such

21 licensing, during the limitations period.  Absent such Plaintiff-specific allegations, there can be

22 no claim by these plaintiffs for breach of contract.

23 _____

   [13] Consistent with their Rule 11 obligations, Plaintiffs cannot continue to allege that Parrish
24 "believes" he signed GLAs in unidentified "recent years."  On August 1, 2007, Players Inc
   produced to Plaintiffs all GLAs signed by Plaintiffs.  <u>See</u> Aug. 1, 2007 email from D. Greenspan
25 to R. Hilbert (attached as Ex. A to the Declaration of Eamon O'Kelly in Support of Defendants'
   Motion to Dismiss Plaintiffs' Second Amended Complaint, filed concurrently herewith).
26 Whereas Plaintiffs are quick to point out that this discovery has produced the two GLAs that
   Adderley signed within the limitations period (even though Adderley does not allege a breach of
27 any provision of those GLAs in the SAC), their opposition brief is conspicuously silent with
   respect to the absence of any GLAs during the limitations period for Parrish or Roberts.
28

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defendants' Reply Memorandum in Support of Their Motions to Dismiss    Civ. Action No. C07 0943 WHA

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Adderley is the only Plaintiff who claims to have signed a specific GLA during the statute of limitations period.[14] Adderley, however, fails to allege one of the most fundamental elements of any breach of contract claim: what provision, of which contract, was allegedly breached. See Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990). This fatal defect is highlighted by Plaintiffs' own argument:

> Defendants concede that: '[Adderley] has signed GLAs and has participated in certain Players Inc licensing programs for which he has received more than $13,000 in payments. Adderley's last GLA expired at the end of 2005. . . .' More detail is not necessary to defeat a motion to dismiss.

Opp'n Br. at 8 (emphasis added). To the contrary, because Plaintiffs do not dispute that Adderley received the more than $13,000 that he bargained for, more detail is not necessary to prevail on a motion to dismiss. Merely alleging that Adderley entered into a contract during the statute of limitations period, and that Adderley was paid money under that contract, does not state a claim for breach. In particular, Adderley does not advance any factual allegation that he was owed more than the approximately $13,000 he received; nor does he identify any conduct in breach of any provision of any contract that he, as opposed to other class members, allegedly entered into.

In an attempt to salvage their breach of contract claim, Plaintiffs argue that they can "plead the legal effect of the contract rather than its precise language." Opp'n Br. at 6. While it is true that in order to plead the existence of a contract, the "legal effect" of the contract may be pleaded instead of reciting the contract terms verbatim, that does not relieve a plaintiff from alleging facts to support a plausible claim that the contract was breached. See Chirico v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. C99-2263 CRB, 1999 WL 1285458, *1-2 (N.D. Cal. Dec. 13, 1999) (to plead breach of a contract, a plaintiff must identify both the contract and the provision that the defendant allegedly breached); Gautier v. Gen. Tel. Co., 234 Cal. App. 2d

---

[14] Plaintiffs appear to have abandoned their frivolous attempt to base breach of contract claims on the 2007 "Sample GLA," Attachment A of Exhibit C to the SAC, which no Plaintiff claims to have signed.

1    302, 305 (1965) (a plaintiff is required to separately plead both the existence of a contract, by

2    setting out its terms verbatim or by pleading its legal effect, <u>and</u> a breach).

3    　　　　　Moreover, Plaintiffs' misplaced reliance on the "legal effect" doctrine simply

4    underscores their failure to identify the contracts that Plaintiffs claim were breached.  To plead

5    the "legal effect" of a contract requires allegations regarding the substance of the contract's

6    relevant terms, which is "more difficult [than setting forth terms of the contract verbatim or by

7    attaching it to the complaint], for it requires a careful analysis of the instrument,

8    comprehensiveness in statement, and avoidance of legal conclusions." <u>McKell v. Wash. Mut.,</u>

9    <u>Inc.</u>, 142 Cal. App. 4th 1457, 1489 (2006) (quoting 4 Witkin, Cal. P. § 480 (4th ed. 1997)).

10    　　　　　Plaintiffs do not begin to satisfy this standard.  They offer <u>no</u> analysis of <u>any</u>

11    contract in effect during the statute of limitations period, much less "a careful analysis of the

12    instrument . . . comprehensive[] in statement." <u>Id.</u>  To the contrary, Adderley and Parrish rest on

13    the conclusory allegation that they signed "one or more" unspecified versions of GLAs in

14    unspecified years.  SAC ¶ 54.  Such vague allegations simply do not suffice to allege the "legal

15    effect" of a contract.  <u>See</u> <u>Woods v. Asset Res.</u>, No. 1:06-cv-00398-SMS, 2006 WL 3782704,

16    *7-8 (E.D. Cal. Dec. 21, 2006) ("Plaintiffs did not refer to the precise terms of the contracts in

17    question" but "have merely stated that an obligation arose pursuant to the contract. . . .  [The]

18    claim fails to give adequate notice to the Defendant of the precise contractual basis for the

19    claim"); <u>Twaite v. Allstate Ins. Co.</u>, 216 Cal. App. 3d 239, 252-53 (1989) ("[I]t is absolutely

20    essential to plead the terms of the contract either [verbatim] or according to legal effect.

21    Nowhere … did plaintiff allege the terms of the insurance policy which [he] contended have

22    been breached").[15]

23

24

25    [15] Plaintiffs contend that, under <u>Wang & Wang LLP v. Banco Do Brasil, S.A.</u>, No. Civ. S-06-
26    00761 DFL KJM, 2007 WL 915232 (E.D. Cal. March 26, 2007), they adequately alleged the
      existence of a contract under Rule 8(a).  <u>See</u> Opp'n Br. at 6.  But in <u>Wang</u>, the plaintiff alleged
27    that it entered into a contract that was identical in terms to a pre-existing contract between itself
      and the defendant, and specifically described each party's obligations under the contract and how
28    the contract had been breached.  2007 WL 915232, *3.

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defendants' Reply Memorandum in Support of Their Motions to Dismiss    Civ. Action No. C07 0943 WHA

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1    In fact, the only "legal effect" analysis of any GLA that Plaintiffs have offered

2    was when their counsel represented in open court that "GLAs [] don't require any specific

3    payment, don't require [Plaintiffs] to get anything." May 31, 2007 Hearing Tr. ("Hearing Tr.")

4    at 41:25-42:6. This admission, of course, flies in the face of Plaintiffs' newly-minted and

5    conclusory allegation that unspecified GLAs somehow guarantee payments to all retired players

6    who signed GLAs (SAC ¶¶ 34, 72) regardless of whether such players' intellectual property

7    rights were ever used by a third-party licensee. Plaintiffs fail to identify any term of any GLA

8    signed by any Plaintiff during the limitations period that would support this conclusory assertion.

9    Because Plaintiffs have not alleged the breach of any specific contract signed by

10   any one of them during the limitations period, they attempt to confuse the issue by relying on a

11   plethora of class allegations that are wholly irrelevant to an individual breach of contract claim.

12   They allege, for example, that "members of the GLA class … entered into one or more versions

13   of Group Licensing Agreement(s) with PLAYERS INC and/or the NFLPA within the period of

14   the statute of limitations," that "some NFL players may also have signed Group Licensing

15   Agreement(s) directly with PLAYERS INC," and that a "version of the Group Licensing

16   Agreement [was] executed by members of the GLA Class including Parrish and Adderley." See

17   Opp'n Br. at 7 (emphasis in original). As already discussed, conclusory allegations concerning

18   "members of the GLA class" or "some NFL players" are legally insufficient to state a claim on

19   behalf of Parrish, Adderley or Roberts. See O'Shea, 414 U.S. at 494; Boyle, 492 F.2d at 1182.

20   Moreover, vague allegations concerning unidentified GLAs "entered into … with PLAYERS

21   INC and/or the NFLPA" are equally incapable of defeating a motion to dismiss. See McKeever

22   v. Block, 932 F.2d 795, 798 (9th Cir. 1991); Foley, 2007 WL 1430096, *3. As for the "version

23   of the Group Licensing Agreement" allegedly "executed by members of the GLA Class

24   including Parrish and Adderley," this is identified in the SAC as the GLA signed by Parrish in

25   1998 – five years prior to the commencement of the applicable statute of limitations. Finally,

26   Plaintiffs refer to several block quotes allegedly from Players Inc's website that discuss NFL

27   player licensing generally (SAC ¶¶ 20, 21), but none of these general quotes are relevant to

28

Defendants' Reply Memorandum in Support of Their Motions to Dismiss        Civ. Action No. C07 0943 WHA

whether Plaintiffs entered into any contracts with Players Inc (or the NFLPA) during the statute

of limitations period, or whether any such contracts were breached.[16]

## IV.  PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIMS MUST BE DISMISSED

In their Opposition to Players Inc's motion for judgment on their First Amended

Complaint, Plaintiffs argued vehemently that their breach of fiduciary claims were not based on

the GLAs.  See Opp'n Br. at 1, 13.  In the SAC, Plaintiffs did a 180-degree about-face to argue

that their fiduciary duty claims did in fact rest on the GLAs.  See SAC § V.B (title of section); ¶¶

22, 62; Players Inc Br. at 20.  Now, unable to respond to the showing in Defendants' opening

briefs that this reversal only further undermines their claims, Plaintiffs change their story again.

This time, Plaintiffs contend that a purported fiduciary duty "arises from the entirety of the

relationship, including the execution of a GLA."  Opp'n Br. at 9.  No matter how many times

Plaintiffs change their theory, however, they have not alleged, and cannot allege, any facts that

would plausibly support the existence of a fiduciary duty owed to any of the Plaintiffs by either

of the Defendants, or the breach of any such duty.

First, Plaintiffs do not even attempt to answer Defendants' argument that because

Roberts does not allege that he ever signed a GLA or had any relationship with Defendants, he

does not state a claim for breach of any fiduciary duty.  See Players Inc Br. at 20.  Indeed,

Roberts does not allege that his intellectual property rights were ever granted to, or licensed to

anyone by, Defendants.  Thus, Roberts' breach of fiduciary duty claim clearly must be

dismissed.

Second, as discussed in footnote 13, supra, Plaintiffs can no longer allege,

consistent with their Rule 11 obligations, that Parrish "believed" he signed a GLA within any

relevant statute of limitations period.  But even accepting his vague allegation of "belief," Parrish

does not allege that his intellectual property rights were ever licensed by Players Inc to anyone

---

[16] Plaintiffs also cite email correspondence between a Players Inc employee and an unidentified third party, but that document, on its face, has no relation to any individual breach of contract claim by Plaintiffs.  See Opp'n Br. at 8 (relying on SAC, Ex. E).

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1   during the limitations period.  Thus, Parrish's breach of fiduciary duty claim should similarly be

2   dismissed without the need for any further analysis.

3           This brings us to Adderley, who did sign GLAs during the limitations period.  His

4   breach of fiduciary duty claim must be dismissed because, as Plaintiffs' opposition makes clear,

5   those claims rest on theories of "confidential relationship" and "implied agency" that are

6   unsupported by <u>any</u> factual allegations in the SAC.

7           As a threshold matter, contrary to Plaintiffs' assertion, Defendants have never

8   argued "that the existence of a contract precludes a fiduciary duty between the parties."  Opp'n

9   Br. at 14.  As this Court noted it its June 4, 2007 Order, however, "[m]ere contractual

10  relationships, <u>without more</u>, do not give rise to fiduciary relationships."  Order at 6:2-3 (quoting

11  <u>Oakland Raiders v. Nat'l Football League</u>, 131 Cal. App. 4th 621, 633-34 (2005) (emphasis

12  added)).  None of the cases that Plaintiffs cite are to the contrary.  <u>See</u>, <u>e.g.</u>, <u>Rosary-Take One</u>

13  <u>Prod. Co. Ltd. P'ship v. New Line Distrib., Inc.</u>, No. 89 Civ. 1905 (CSH), 1996 WL 79327

14  (S.D.N.Y. Feb. 23, 1996) (noting that a contract could theoretically give rise to a fiduciary

15  relationship if, for example, it established a partnership or joint venture, but finding that

16  relationship was "one of simple contract" and not fiduciary); <u>Michelson v. Hamada</u>, 29 Cal. App.

17  4th 1566, 1575-76 (1994) (finding a fiduciary relationship where there was a written <u>agency</u>

18  agreement between the parties); <u>April Enters.</u>, 147 Cal. App. 3d at 820 (finding a fiduciary duty

19  between parties that contracted to form a <u>joint venture</u>).[17]  Here, by contrast, Plaintiffs do not

20  allege any purported written agency or joint venture agreement between the NFLPA or Players

21  Inc and the Plaintiffs.  Nor do they allege any other facts that would convert a simple GLA

22  contractual relationship between any of Plaintiffs and Defendants into a fiduciary relationship.

23          As this Court stated in its June 4, 2007 Order, a confidential relationship giving

24  rise to a fiduciary duty can occur where "(1) the vulnerability of one party to the other (2) results

25  in the empowerment of the stronger party by the weaker which (3) empowerment has been

26  solicited or accepted by the stronger party and (4) prevents the weaker party from effectively

27  ─────────────

    [17] Plaintiffs' citation to <u>Agair Inc. v. Shaeffer</u>, 232 Cal. App. 2d 513 (1965), is puzzling because
28  the case does not address the fiduciary duty issue at all.

Defendants' Reply Memorandum in Support of Their Motions to Dismiss          Civ. Action No. C07 0943 WHA

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

protecting itself." See Order at 6:25-27 (quoting Richelle L. v. Roman Catholic Archbishop, 106 Cal. App. 4th 257, 272 (2003)).  Plaintiffs, however, simply do not allege any facts in the SAC from which the existence of such a confidential relationship can be inferred.

It bears repeating that the sine qua non of any confidential relationship is that there first be a relationship.  Indeed, this is borne out by the very cases that Plaintiffs rely upon. See, e.g., In re Daisy Sys. Corp., 97 F.3d 1171, 1178 (9th Cir. 1996) (financial advisor retained to provide guidance on transaction was possible fiduciary); Beery v. State Bar, 43 Cal. 3d 802, 813 (1987) (attorney-client relationship creates fiduciary duty); Recorded Picture Co. v. Nelson Entm't, Inc., 53 Cal. App. 4th 350, 370-71 (1997) (holding there was no confidential relationship where there was no direct relationship between plaintiffs and defendant); Lynch v. Cruttenden & Co., 18 Cal. App. 4th 802, 809 (1993) (investment advisor who was given control over plaintiff's finances was possible fiduciary).  The only one of the three Plaintiffs who identified specific GLAs to establish any kind of relationship with either of the Defendants during the statute of limitations period was Adderley.  Thus, Plaintiffs allege no facts that would support a claim of a confidential or any other relationship between Parrish or Roberts and Defendants during the limitations period.[18]

As for Adderley, the SAC alleges no facts that would support a claim that Adderley was uniquely "vulnerable" with respect to his GLA relationship with the NFLPA or Players Inc, that either of the Defendants was "empowered" as a result of such vulnerability, or that Defendants solicited or accepted such empowerment such that Adderley could not protect himself.  What Adderley alleges, at most, is an arms-length contractual relationship for the purpose of licensing Adderley's image – and Adderley does not even contend in the SAC that he was not paid any monies he may have been owed arising out of such a contractual relationship. Opp'n Br. at 8.

---

[18] As previously mentioned, Parrish's erroneous "belief" that he signed an unidentified GLA during the limitations period is not sufficient to state any type of claim under Twombly, 127 S. Ct. at 1964-65.

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defendants' Reply Memorandum in Support of Their Motions to Dismiss    Civ. Action No. C07 0943 WHA

1    Plaintiffs' litany of conclusory allegations about the vulnerability and lack of

2 economic sophistication of unidentified "retired players who have signed GLAs" (see Opp'n Br.

3 at 11-12), even if true, are irrelevant to this motion.  Other than Adderley, none of the "retired

4 players who have signed GLAs" are before the court.  See e.g., Boyle, 492 F.2d at 1182.

5    Further, Plaintiffs now concede that the GLA itself does not create a fiduciary

6 relationship.  Opp'n Br. at 14.  Instead, they rely on the GLA plus unidentified circumstances.

7 Id. at 9.  However, when the SAC is stripped of its conclusory assertions, allegations about

8 hypothetical class members, and legal conclusions, all that remains are the two arms-length

9 GLAs between Defendants with Adderley, which cannot be the source of a fiduciary duty claim.

10    Plaintiffs cite no authority for the proposition that disparities in "size and

11 economic power" between retired players and the Defendants (SAC ¶ 23) or relative differences

12 in their access to information (SAC ¶¶ 25, 26) give rise to the type of "vulnerability" that is

13 necessary for a fiduciary relationship.  Opp'n Br. at 10.  Nor could they, for the law is to the

14 contrary.  In Wolf v. Superior Court, for example, the court squarely rejected the plaintiff's

15 contention that "because [royalty] revenues and their sources are in the exclusive knowledge and

16 control of Disney … the relationship is 'confidential' in nature and necessarily imposes a

17 fiduciary duty upon Disney."  107 Cal. App. 4th 25, 30 (2003).  And, although Disney also

18 possessed significantly greater size and economic power than the individual plaintiff, this too did

19 not give rise to a fiduciary relationship.  Id.

20    Plaintiffs' contention that a fiduciary duty arises because there is a relationship of

21 implied agency or agency by estoppel is equally unavailing.  Plaintiffs "concede that they did not

22 have control over Defendants," but purport to "believe" nonetheless that "an agency relationship

23 can still be established by estoppel."  Opp'n Br. at 13.  There are no factual allegations in the

24 SAC, however, to support such a claim.

25    As Plaintiffs admit, under applicable law, "one who purports to act on behalf of

26 another but without the authority to do so" may be subject to the fiduciary duty obligations of an

27 agent only "if he affects the principal's interests either by binding the principal to a third party

28 where he has apparent authority, or by disposing of or meddling with the principal's assets."

**DEWEY BALLANTINE LLP**
**1950 University Avenue**
**East Palo Alto, California 94303-2225**

-26-

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1   Opp'n Br. at 13 (citing Restatement (Second) of Agency § 15, cmt. e (1958) (emphasis added)).

2   These requirements are fatal to Plaintiffs' claims.  Plaintiffs do not allege any facts in the SAC

3   that would support a claim that Players Inc or the NFLPA, "without authority to do so," bound

4   any of the Plaintiffs "to a third party" or "dispos[ed] of or meddl[ed] with" any of the Plaintiffs'

5   intellectual property rights or other assets.  To the contrary, Plaintiffs do not (and can not) allege

6   that Players Inc ever licensed the images of any retired players during the limitations period,

7   including Parrish and Roberts, who did not sign agreements authorizing Players Inc to do so.

8   They also do not allege in the SAC that Adderley did not receive any monies he was entitled to

9   with respect to the licensing of his image under any GLAs or other agreements.  Opp'n Br. at 8.

10          The cases cited by Plaintiffs – all of which involved the misappropriation by a

11  purported agent of the principal's property – are simply inapposite.  See, e.g., Whittaker v. Otto,

12  188 Cal. App. 2d 619 (1981) (agent liable where there was both an express agency agreement

13  and misappropriation of the principal's property); Carpenter Found. v. Oakes, 26 Cal. App. 3d

14  784 (1972) (defendant misappropriated property that had been entrusted to him by the plaintiff).

15  There are no allegations of such a misappropriation of Plaintiffs' property in the SAC.

16          Finally, Plaintiffs' invocation of the doctrine of estoppel also highlights another

17  critical failing in their claim of implied agency.  It is hornbook law that for estoppel to apply, a

18  plaintiff must have relied to his detriment on some action by the defendant.  31 C.J.S. Estoppel &

19  Waiver § 88 (2007) ("detrimental reliance … is an essential element of estoppel"); see also

20  Robinson v. Fair Employment & Hous. Comm'n, 2 Cal. 4th 226, 244-45 (1992); Golden Day

21  Schs, Inc. v. Dep't of Educ., 69 Cal. App. 4th 681, 692-93 (1999).  Plaintiffs, however, do not

22  allege any facts in the SAC to support a claim that they relied to their detriment on any action by

23  the NFLPA or Players Inc.

24  **V.    PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT/
25         RESTITUTION MUST BE DISMISSED**

26          The Court has already found that Plaintiffs' unjust enrichment claim "depend[s]

27  in large part on the claim for breach of fiduciary duty."  Order at 7:9-10.  Moreover, Plaintiffs'

28  own authorities make clear that an unjust enrichment claim must be dismissed where "there [are]

-27-

no substantive allegations [in support of the underlying claims]." <u>Faigman v. Cingular Wireless, LLC</u>, No. C 06-04622 MHP, 2007 WL 708554, *6 (N.D. Cal. Mar. 2, 2007), <u>IB Melchior v. New Line Prods., Inc.</u>, 106 Cal. App. 4th 779, 793 (2003). Thus, because Plaintiffs have failed to state any underlying substantive claim, their derivative claim for unjust enrichment/restitution must also fail.

Even if Plaintiffs' unjust enrichment claims could stand on their own, however, those claims would still be fundamentally flawed. As the cases cited by Plaintiffs make clear, to state a claim for unjust enrichment under California law, a plaintiff must allege that he conferred a benefit upon the defendant, which the defendant unjustly retained at the expense of the plaintiff. <u>See</u> Opp'n Br. at 36 (citing <u>San Francisco Bay Area Rapid Transit Dist. v. Spencer</u>, No. C 04-04632 SI, 2007 WL 81899, *1 (N.D. Cal. Jan. 9, 2007); <u>Lectrodryer v. Seoulbank</u>, 77 Cal. App. 4th 723, 726 (2000)). "Additionally, plaintiffs [must] adequately plead or argue that they have no adequate remedy at law." <u>Doe</u>, 2006 WL 2053504, *3 (Alsup, J.). Plaintiffs do not allege any fact to show that Parrish, Adderley or Roberts conferred any benefit on Players Inc or the NFLPA, much less a benefit that either Defendant improperly retained. The three complaint allegations that Plaintiffs' rest their unjust enrichment claims upon, (<u>see</u> Opp'n Br. at 36 (citing SAC ¶¶ 68-70)), are little more than a rote recitation of the legal elements of unjust enrichment, and thus deficient under <u>Twombly</u>. For example, Plaintiffs allege that their "status as former players in the NFL has provided significant value to Players Inc which has benefited Players Inc and/or the NFLPA, and … it would be unjust to allow Players Inc and/or the NFLPA to retain this benefit without providing restitution to Plaintiffs." SAC ¶ 69. This conclusory allegation fails to explain how any benefit was provided to Defendants by Plaintiffs' "status" as former NFL players and does not allege that Defendants ever received any revenue from licensing the names or images of Plaintiffs without authorization, or that Defendants unjustly retained any monies due to Plaintiffs. Moreover, the SAC does not allege any facts to support the contention that Plaintiffs have no adequate remedy at law.

Plaintiffs make a last-ditch effort to salvage their unjust enrichment claim by purporting to plead "in the alternative" to their breach of contract claim. <u>See</u> Opp'n Br. at 37.

-28-

1    Plaintiffs alleged in the SAC that "[t]o the extent that Defendants dispute that they have any such

2    duties under the Group Licensing Agreement(s) – and/or claim they have not breached any terms

3    of those Agreements – Plaintiffs allege that those Agreements would thus be considered illusory,

4    null and void and/or voidable." See SAC ¶ 67.  Characteristically, the SAC asserts a legal

5    conclusion that the GLAs are "illusory," but fails to set forth any factual basis as to why the

6    GLAs should be held illusory.  Moreover, Plaintiffs' allegation that the contracts are illusory is

7    made contingent upon Defendants' response.  It simply cannot be the case that *Party A* can

8    allege that a contract is "illusory" if and only if *Party B* disagrees with *Party A's* interpretation of

9    the contract.  Plaintiffs cite no authority for this novel proposition.

10   **VI.    PLAINTIFFS' CLAIMS FOR AN ACCOUNTING MUST BE DISMISSED**

11          Finally, the Court has already found that if "there's no primary cause of action,

12   there's no claim for an accounting."  Hearing Tr. at 25:9-11.  Indeed, Plaintiffs' own authorities

13   confirm that an accounting in California is derivative of other claims.  See Opp'n Br. at 37

14   (citing County of Santa Clara v. Astra USA, Inc., 401 F. Supp. 2d 1022, 1032 (N.D. Cal. 2005);

15   Cruz v. United States, 219 F. Supp. 2d 1027, 1040 (N.D. Cal. 2002)).  Because, as set forth

16   above, each of Plaintiffs' substantive claims fails as a matter of law, their action for an

17   accounting must also be dismissed.

18          Even if Plaintiffs' substantive claims were to proceed, however, Plaintiffs'

19   attempt to state a claim for an accounting still would fail.  To obtain the equitable remedy of an

20   accounting, a plaintiff must allege facts showing that (1) the nature of the relationship requires an

21   accounting, (2) some balance is due the plaintiff, and (3) there is no other adequate remedy at

22   law.  See 1 Cal. Jur. 3d Accounts & Accounting §§ 77, 85.  "The omission of any necessary

23   element is fatal."  Id. at § 85.  In addition to Plaintiffs' failure to allege facts that would support

24   the first two elements (for all of the reasons discussed above), Plaintiffs allege that they are

25   entitled to monetary damages to redress their substantive claims.  SAC ¶ 1.  Thus, "even if there

26   were viable claims, the accounting claim would not survive because no action for accounting

27   may be maintained if there is an adequate remedy at law."  See County of Santa Clara v. Astra

28

DEWEY BALLANTINE LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defendants' Reply Memorandum in Support of Their Motions to Dismiss          Civ. Action No. C07 0943 WHA

USA, Inc., No. C 05-03740 WHA, 2006 WL 2193343, *5 (N.D. Cal. July 28, 2006) (Alsup, J.) (citations omitted).

## CONCLUSION

For all of the foregoing reasons, the SAC should be dismissed with prejudice. Plaintiffs have already submitted four complaints to the Court, but still cannot state a single actionable claim against either Players Inc or the NFLPA. It is time to put to an end this baseless suit and discovery fishing expedition, which is inflicting enormous costs on the Defendants and the Court.

Date: August 16, 2007                                   DEWEY BALLANTINE LLP


                                                        BY:   /S/Jeffrey L. Kessler
                                                              Jeffrey L. Kessler
                                                              *Attorneys for Defendants*

I hereby attest that I have on file all holographic signatures for any signatures indicated by a "conformed" signature (/S/) within this e-filed document

Date: August 16, 2007                    BY:   /S/Joseph R. Wetzel
                                               Joseph R. Wetzel
                                               *Attorneys for Defendants*

Defendants' Reply Memorandum in Support of Their Motions to Dismiss    Civ. Action No. C07 0943 WHA