**manatt**
manatt | phelps | phillips

**Ronald S. Katz**
Manatt, Phelps & Phillips, LLP
Direct Dial: (650) 812-1346
E-mail: rkatz@manatt.com

August 29, 2007

Client-Matter: 29749-060

**VIA ELECTRONIC FILING**

The Honorable William Alsup
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:   *Parrish v. National Football League Players Association*
           Case No. C07-0943 WHA

Dear Judge Alsup:

On August 10, 2007, Plaintiffs Bernard Paul Parrish, Herbert Anthony Adderley, and Walter Roberts III (collectively, "Plaintiffs") filed a letter brief ("Discovery Motion") in which they requested that the Court order Defendant National Football League Players Incorporated d/b/a PLAYERS INC ("PLAYERS INC") to produce certain documents in response to Plaintiffs' first set of document requests. On August 15, 2007, Defendant filed a letter brief opposing Plaintiffs' Discovery Motion and requesting a protective order limiting discovery. A hearing on the parties' letter briefs was held on August 17, 2007.

The Court made several rulings during the hearing. At the conclusion of the hearing, the Court ordered Plaintiffs to prepare an order capturing the Court's rulings and to submit it to PLAYERS INC for review. Though the parties are in agreement on the majority of the Court's rulings, a dispute has arisen over the scope and definition of an additional category of "accounting documents" that the Court ordered PLAYERS INC to produce. The parties met and conferred in good faith on this issue, but were unable to resolve their differences. Rather than continue to debate the issue, especially since they were in agreement on the Court's other rulings, the parties decided to submit their respective understandings of the Court's ruling in the draft order that is being filed concurrently herewith. The parties also submit this joint letter in support of their respective understandings.

Plaintiffs' Position

Plaintiffs believe that the genesis for the Court's ruling on an additional category of "accounting documents" can be traced back to their allegation that PLAYERS INC's licensing agreement with Electronic Arts ("EA") and The Topps Company ("Topps") do not distinguish between revenues PLAYERS INC receives for the licensing of an active player's rights versus a retired player's rights. Based on this ambiguity, and PLAYERS INC's statement that, as a practical matter, "most retired player licensing is conducted through ad hoc agreements between individual retired players and various licensees," the Court surmised during the August 17 hearing that there could be three possible flows of income from EA and Topps to PLAYERS INC: (1) one that is earmarked for retired NFL players; (2) one that is earmarked for active NFL players; and (3) a middle category that is "undesignated, general" and that is "not specifically earmarked for active and [is] not specifically earmarked for retired." Hearing Tr. at 27. It is the third category of documents that is the subject of the present dispute.

1001 Page Mill Road, Building 2, Palo Alto, California 94304-1006  Telephone: 650.812.1300  Fax: 650.213.0260
Albany | Los Angeles | New York | Orange County | Palo Alto | Sacramento | Washington, D.C.



Honorable William Alsup
August 29, 2007
Page 2

As an initial matter, Plaintiffs have no present desire to see which active players receive payments or the individual amounts of such payments. However, PLAYERS INC has indicated in documents produced in this case, as well as in a letter that is attached as Exhibit G to the Second Amended Complaint, that it distributes 40% of the general licensing revenue it receives from Topps and EA to the NFLPA (with the other 60% going to active players). At the same time, PLAYERS INC has not shown other than through statements made by its counsel that this revenue was generated solely through the licensing of active players. Plaintiffs believe that the funds PLAYERS INC re-directs to the NFLPA – which are not specifically earmarked for active or retired players – constitute the "undesignated, general" fund referenced by the Court.

Following the August 17 hearing, the parties exchanged drafts of the proposed order. Upon receiving PLAYERS INC's version on the afternoon of August 23, Plaintiffs quickly realized that the parties had two different interpretations of the Court's order as it related to the "undesignated" category of documents. Accordingly, even though Plaintiffs' counsel was on vacation in Tahoe, Plaintiffs' counsel scheduled a meet and confer for the very next day, August 24. Based on comments made by PLAYERS INC's counsel during the meet and confer, including references made to documents that have yet-to-be-produced and that Plaintiffs still have not seen, Plaintiffs' counsel was optimistic that an agreement could be reached. It was only after Plaintiffs' counsel re-reviewed the Topps and EA agreements, among other things, that he determined that the parties would have to agree to disagree and that a draft order with both parties' proposed language was preferable. PLAYERS INC's counsel agreed with this assessment in a call yesterday afternoon.

Given the timing of this dispute, Plaintiffs' counsel has once again sought to work in good faith with PLAYERS INC's counsel to address their concerns. Realizing that the Court's deadline to trace the "undesignated" category of documents is today, Plaintiffs' counsel voluntarily agreed to give PLAYERS INC until September 7 to produce these documents. Considering that PLAYERS INC has been aware of Plaintiffs' proposed language since August 21, and that Plaintiffs are only seeking documents related to Topps and EA from February 2003, Plaintiffs believe this proposal to be fair. The fact that Plaintiffs have yet to produce their documents is completely irrelevant, especially since (1) Plaintiffs just submitted their document responses one week ago on August 22 and PLAYERS INC recently requested that Plaintiffs produce documents by September 7; and (2) even though it has been over six weeks since PLAYERS INC submitted its document responses, it still has not completed its production and recently indicated that it is highly unlikely it will do so by September 7.

Plaintiffs respectfully request that the Court adopt their proposed language of the Court's ruling so that they can trace the flow of funds from Topps and EA to the "undesignated, general" fund. Only then can Plaintiffs properly determine whether there is anything improper going on as the Court suggested during the August 17 hearing, and assess whether additional discovery on this issue is warranted. More importantly, Plaintiffs need the Court's narrowly defined category of information to determine whether Plaintiffs are rightfully entitled to a share of these funds.



Honorable William Alsup
August 29, 2007
Page 3

PLAYERS INC's Position

On August 24, 2007, the parties agreed in principle to a joint proposed order, and Plaintiffs' counsel stated that he was "confident" that he could draft a proposed order consistent with the parties' meet and confer. Four days later, on the eve of Players Inc's Court-ordered August 29th document production, Plaintiffs unilaterally declared that the parties were at an impasse. The "dispute" now presented by Plaintiffs is merely an attempt to re-litigate Plaintiffs' original motion to compel.

Plaintiffs contend that Players Inc's licensing agreements with EA Sports and Topps, if read in isolation from other information produced by Players Inc, "do not distinguish between revenues PLAYERS INC receives for the licensing of an active player's rights versus a retired player's rights," and therefore Players Inc should be required to account for the revenues it derives from licensing active NFL players' rights. Plaintiffs raised precisely the same argument at the August 17th hearing. See, e.g., Transcript of Proceedings ("Tr.") 21:10-23:11. The Court rejected that argument then and there is no reason why the Court should revisit it now.

Plaintiffs heavily rely upon the bald assertion that "PLAYERS INC indicates in documents produced in this case … that it distributes 40% of the general licensing revenue it receives from Topps and EA to the NFLPA (with the other 60% going to active players)." Plaintiffs' assertion is a red herring. In fact, the one document that Plaintiffs rely upon for "support" – Exhibit G to the SAC – makes it clear that the money Plaintiffs misleadingly refer to as "general licensing revenue" is simply the money that Players Inc receives from Topps and EA as a result of active NFL player licensing.

Having heard from both sides on August 17th, the Court noted that "[t]here could be three possible flows of income from Topps to the defendant. One is specifically earmarked for retirees. One is specifically earmarked that Topps is paying for active; but what is slipping under the rug here is the middle category, which is undesignated, general." Tr. 27:3-8. The Court directed Players Inc to produce certain documents relating specifically to the first of these three categories, retired player licensing. Tr. 25:11-19, 15:22-16:23. The Court also directed Players Inc to "give a full accounting within the statute of limitations" for that third, "undesignated" category with respect to Topps and EA Sports. Tr. 27:12-15.

Since the August 17th hearing, Players Inc and its counsel have worked virtually around the clock to produce by August 29, 2007 (1) documents relating specifically to retired player licensing, and (2) documents to account for payments received from Topps and EA that could fall into the "undesignated" category. Players Inc has not arranged to produce, however, any documents related to monies paid by Topps and EA for active player licensing, because the Court did not direct Players Inc to do so. Plaintiffs have had their day in court on this issue and their request for an accounting of active player licensing revenues should again be denied.

If, however, the Court were to reconsider its decision of August 17th and order Players Inc to account for active player licensing revenue, Players Inc respectfully requests that it be given adequate time to do so. Plaintiffs' proposed order would require the production of these likely voluminous materials by next Friday, September 7, 2007. However, the offices of Players Inc will be closed for the Labor Day holiday from early on Friday, August 31, 2007 until Tuesday, September 4, 2007. It would



Honorable William Alsup
August 29, 2007
Page 4

be an extreme – if not impossible – burden to provide an accounting of active player revenues by September 7th. In any event, Plaintiffs have not even attempted to demonstrate why they would need such an accounting on an emergency basis. Indeed, Plaintiffs' repeated demands for the expedited production of large volumes of documents are especially unreasonable in light of the fact that they have yet to produce a single document in this lawsuit.

        Respectfully submitted,

        /s/ Ronald S. Katz
        Ronald S. Katz
        Counsel for Plaintiffs