**Exhibit R**
**to the**
**Third Amended Complaint for Breach of**
**Contract, Breach of Fiduciary Duty, an**
**Accounting and Violation of California Business**
**& Professions Code § 17200**

Dockets.Justia.com

Copyright 2007 The New York Times Company
The New York Times

February 16, 2007 Friday
Late Edition - Final

SECTION: Section D; Column 1; Sports Desk; PRO FOOTBALL; Pg. 7

LENGTH: 823 words

HEADLINE: Upshaw Maintains Royalties Were Distributed Properly

BYLINE: By ALAN SCHWARZ

BODY:

Gene Upshaw, the executive director of the National Football League Players Association, has denied allegations in a federal class-action lawsuit that maintained that the licensing arm of the union has improperly represented retired players and could owe them tens of millions of dollars.

Upshaw said yesterday that the union had correctly paid royalties to all deserving former players.

The lawsuit was brought Wednesday by the former players Bernie Parrish and Herb Adderley on behalf of the 3,500 retired players whom Players Inc. -- the union's licensing subsidiary -- claims in its literature to represent. It questions why only 358 players received any licensing revenue in 2005 from licensees like apparel and video-game companies.

Upshaw said that only players whose names and likenesses were actually employed by licensees were entitled to royalties under Players Inc.'s voluntary group licensing arrangement with retired players. (This agreement does not delineate how royalties are distributed; Upshaw said paying players only to the extent they were used was longstanding practice.)

Upshaw said that barring human error, all deserving former players had been paid, and that the other 90 percent generated no income due them for 2005.

"If you generate revenue, you get it -- it's that simple," Upshaw said in a telephone interview. Upshaw, who recently has been criticized by some retired players over what they claim to be low pension and disability benefits, said that the marketplace determined which players received money.

"We could have the greatest dog food in the world," he said, "but if the dogs don't like it, we can't sell it. Put that at the top of the story."

Upshaw and his outside counsel, Jeffrey Kessler, responded to other accusations made in the suit.

Adderley, a Hall of Fame defensive back for the Green Bay Packers and Dallas Cowboys, said that he had never been sent royalties for a deal he signed with Players Inc. allowing his name to be included on a line of Reebok apparel. Upshaw said he checked Players Inc. records and learned that Reebok had decided not to use Adderley and, therefore, no money was due him. (Documents filed with the United States Department of Labor indicate that Adderley did receive a check for $12,220 from Players Inc. in 2005, which Upshaw said was for his inclusion in an Upper Deck trading card set.)

Adderley also asserted that his phone calls and letters to Players Inc. to inquire about any Reebok royalties went unreturned, which the lawyer for the 3,500 retired players claimed was part of a longstanding pattern of keeping information from players.

Upshaw Maintains Royalties Were Distributed Properly The New York Times February 16, 2007 Friday

Adderley offered as an illustration a July 2004 letter he wrote to Howard Skall, then the vice president of Players Inc. for player marketing. Reached yesterday, Skall, who resigned from Players Inc. last July and is now a marketing agent for Creative Artists Agency, declined to comment because he no longer works for Players Inc.

In response to the lawsuit's allegation about poor communication between Players Inc. and players, Upshaw said, "I don't agree with that because I can tell you that when players or anyone else called me, I called them back."

Kessler said that Parrish, a former defensive back, primarily for the Cleveland Browns in the 1960s, and the founder of the players association, had never signed the group licensing agreement and so was not due royalties from Players Inc. licensing deals. But Parrish said Wednesday that video games such as Madden 2007, by EA Sports, in depicting old-time teams such as the 1965 Browns, inherently use the former players' personas, regardless of whether their names are used.

Kessler said: "Did you look at that game and find his name? His image? His face? Anything? Of course not. If you look at the 1922 Browns, you are going to see my image there. I looked at that and it looks just like me. Forget about the fact that I didn't play N.F.L. football. I mean, this is an absurd claim. I can understand Mr. Parrish if they used the name 'Parrish' there, or they even used his statistics, but none of that is there."

Ronald Katz, the lawyer for the retired players, said yesterday that even if names of such players are not displayed, Players Inc. behaves in the marketplace as if it represents all former players. As an illustration, he cited a form letter in which Upshaw warned retirees that his deals with EA Sports and some others forbid those companies from using former players not under contract with Players Inc.

Katz said that created an economic benefit for Players Inc. for which all players should be compensated.

"That would be true," Upshaw said, "if we were using 3,500 players' names and we were actually collecting revenues and not paying them. That ain't the case."

Players Inc.'s official response to the lawsuit will probably be filed in three to eight weeks, with any subsequent trial beginning in late 2008.

URL: http://www.nytimes.com

GRAPHIC: Photo: Herb Adderley, with Packers Coach Vince Lombardi, says Players Inc. did not respond to his inquiries about payment he thought he was due. (Photo by Leonard McCombe/Time Life Pictures -- Getty Images)

LOAD-DATE: February 16, 2007