1   Mark Malin (Bar No. 199757)
     *mmalin@dl.com*
2   DEWEY & LEBOEUF LLP
     1950 University Avenue, Suite 500
3   East Palo Alto, CA 94303
     Tel: (650) 845-7000; Fax: (650) 845-7333
4

5   Jeffrey L. Kessler (*pro hac vice*)
     *jkessler@dl.com*
     David G. Feher (*pro hac vice*)
6   *dfeher@dl.com*
     Eamon O'Kelly (*pro hac vice*)
7   *eokelly@dl.com*
     DEWEY & LEBOEUF LLP
8   1301 Avenue of the Americas
     New York, NY 10019
9   Tel: (212) 259-8000; Fax: (212) 259-6333

10   Kenneth L. Steinthal (*pro hac vice*)
     *kenneth.steinthal@weil.com*
11   Claire E. Goldstein (Bar No. 237979)
     *claire.goldstein@weil.com*
12   WEIL, GOTSHAL & MANGES LLP
     201 Redwood Shores Parkway
13   Redwood Shores, CA 94065
     Tel: (650) 802-3000; Fax: (650) 802-3100
14

15   Bruce S. Meyer (*pro hac vice*)
     *bruce.meyer@weil.com*
     WEIL, GOTSHAL & MANGES LLP
16   767 Fifth Avenue
     New York, NY 10153
17   Tel: (212) 310-8000; Fax: (212) 310-8007

18   Attorneys for Defendants National Football League Players Association
     and National Football League Players Incorporated d/b/a Players Inc

19

20             **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
21                 **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 22   BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III, | Case No. C 07 0943 WHA |
| 23 | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN** |
| 24        Plaintiffs, | **OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A** |
| 25       v. | **THIRD AMENDED COMPLAINT** |
| 26   NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and NATIONAL | Date: |
|      FOOTBALL LEAGUE PLAYERS | Time: |
| 27   INCORPORATED d/b/a/ PLAYERS INC, | Ctrm: |
| | Judge: William H. Alsup |
| 28        Defendants. | **PUBLIC VERSION** |

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defs.' Memo. of Points & Authorities in Opp'n to            Civ. Action No. C07 0943 WHA
Pls.' Mot. for Leave to File a Third Am. Compl.

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

ARGUMENT ...........................................................................................................................4

I.   ADDERLEY CANNOT STATE A GOOD FAITH CLAIM FOR BREACH OF
     CONTRACT ...............................................................................................................4

     A.   ███████████████ Is Paid Solely For Active Player Group Licensing Rights ...............5

          1.   The Plain Language of ████████ Establishes That Those Agreements Do Not Grant ███ Any Retired Player Rights ...............5

          2.   ██████ Entered Into Separate Deals and Paid Additional Money to Acquire Retired Players' Intellectual Property Rights ...............8

          3.   Allen Did Not Testify That █████████████ License Retired Player GLA Rights to ██████ ...............9

     B.   There Is No Good Faith Basis For Plaintiffs To Allege That █████████ Were In Any Way Attributable To Retired Player Licensing ...............10

     C.   ████████████ Further Demonstrates That Adderley Is Seeking Active Player Money Through The Proposed TAC ...............11

     D.   The $8 Million Allocation Is Another Red Herring ...............13

     E.   Adderley's Money Was Not Put Into An Escrow Account Because It Was Passed Through 100% To Adderley ...............13

II.  ADDERLEY CANNOT, STATE A GOOD FAITH CLAIM FOR BREACH OF
     FIDUCIARY DUTY ...............14

     A.   Adderley Cannot, In Good Faith, Allege A Breach Of Fiduciary Duty, Or Damages Resulting From Any Such An Alleged Breach ...............14

     B.   Adderley Cannot, In Good Faith, Allege a Fiduciary Relationship Based on the GLA ...............17

     C.   Plaintiffs' Claim That The GLAs Are Exclusive Has No Good Faith Basis ...............18

III. PARRISH CANNOT STATE A GOOD FAITH CLAIM FOR BREACH OF
     FIDUCIARY DUTY ...............20

     A.   Parrish Cannot, In Good Faith, Allege A Breach Of Fiduciary Duty Or Damages ...............21

     B.   Parrish Cannot, In Good Faith, Allege Any Fiduciary Relationship Based On His Membership In The NFLPA Retired Players Association ...............23

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-i-

1

    C.    Parrish's Breach Of Fiduciary Duty Claim Cannot Stand On Its Own ................ 25

2    CONCLUSION ................................................................................................................. 25

3

4

5

6

7

8

9

10

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Memo. of Points & Authorities in Opp'n to          Civ. Action No. C07 0943 WHA
Pls.' Mot. for Leave to File a Third Am. Compl.

1

**TABLE OF AUTHORITIES**

Page

**Cases**

Abramowitz v. Pipher,
    No. 2963 Civil 2006, 2006 WL 4722437 (Pa. Com. Pl. Aug. 22, 2006) .................. 17

Bowoto v. Chevron Corp.,
    No. C 00-02506-SI, 2007 WL 2349336 (N.D. Cal. Aug. 14, 2007) .................. 17

Hatchwell v. Blue Shield of Cal.,
    198 Cal. App. 3d 1027 (1988) .................. 12

Liimatta v. V & H Truck, Inc.,
    No. Civ. 03-5112JNERLE, 2005 WL 2105497 (D. Minn. Aug. 30, 2005) .................. 17

Markowitz v. Fidelity Nat'l Title Co.,
    142 Cal. App. 4th 508 (2006) .................. 12

Matsushita Elec. Corp. v. Loral Corp.,
    36 F.3d 1115, 1994 WL 497955 (Fed. Cir. Sept. 13, 1994) .................. 7

Moore v. Kayport Package Exp., Inc.,
    885 F.2d 531 (9th Cir. 1989) .................. 4

Simon v. Behavioral Health, Inc.,
    208 F.3d 1073 (9th Cir. 2000) .................. 4

Smith v. Microskills San Diego L.P.,
    153 Cal. App. 4th 508 (2007) .................. 12

Waddy v. Sears, Roebuck & Co.,
    Nos. C-92-2903-VRW, 1994 WL 392483 (N.D. Cal. July 8, 1994) .................. 7

**Statutes**

Cal. Civ. Code § 1559 .................. 12

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-iii-

Defs.' Memo. of Points & Authorities in Opp'n to
Pls.' Mot. for Leave to File a Third Am. Compl.

Civ. Action No. C07 0943 WHA

Dewey & LeBoeuf LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303-2225

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs seek leave to file a Third Amended Complaint ("TAC") without any good faith basis for doing so. The focal point of the proposed TAC – just as with Plainitffs' prior complaints – is the baseless claim that Plaintiffs have not received monies allegedly due to them for licensing their names or images as retired NFL players. But the undisputed fact is that Defendants have produced documents conclusively demonstrating what Defendants have been saying since the first complaint: that Adderley is the <u>only</u> Plaintiff whose name or image was licensed, and that 100% of the revenue generated from the licensing of Adderley's name or image – whether by GLAs or by "ad hoc" agreements – was passed through to Adderley.

Prior to Plaintiffs filing this Motion, Defendants sent Plaintiffs a sworn affidavit from Players Inc's Chief Operating Officer, Andrew Feffer, who attested to these facts.[1] Specifically, Feffer attested that "whenever Mr. Adderley's image or autograph was used pursuant to any agreement involving Players Inc, <u>one hundred percent of the funds were passed on to Mr. Adderley</u>." Feffer Aff. ¶ 10 (emphasis added). Moreover, "Players Inc did <u>not</u> license the image of Mr. Parrish [or Mr. Roberts] with or without [their] authorization and <u>never received any payments from any licensee with respect to the licensing of Mr. Parrish's [or Mr. Roberts's] image or other intellectual property during [the statute of limitations]</u>." <u>Id.</u> ¶¶ 12, 14 (emphasis added). The Feffer Affidavit was accompanied by documents substantiating the 100% pass through to Adderley. All of these documents have been produced to Plaintiffs.

In a futile effort to avoid these undisputed facts, which preclude Plaintiffs from filing a complaint in good faith, Plaintiffs now advance the brand new claim "that Defendants have failed to pay Mr. Adderley and other retired players [who signed a GLA] ███████ ████████████████████████████████████████████████████ Mot. at 4 n.1. The fatal problem with this new allegation, which is the premise of Adderley's breach of contract and breach of fiduciary duty claims, is that Adderley has no good faith basis for

---

[1] <u>See</u> Affidavit of Andrew Feffer ("Feffer Aff.") (Sept. 21, 2007) (Ex. A to the Declaration of David Greenspan ("Greenspan Decl.") filed concurrently herewith).

-1-

Defs.' Memo. of Points & Authorities in Opp'n to
Pls.' Mot. for Leave to File a Third Am. Compl.

Civ. Action No. C07 0943 WHA

claiming entitlement to the revenues at issue (whether from ██████████████ or any
other licensee), because they are 100% attributable to <u>active</u> – not retired – player licensing.  The
proposed TAC is, in essence, an attempt by Adderley to recover money that belongs to <u>active</u>
players; money to which Adderley has no legal entitlement under any theory.  Indeed,
Adderley's GLAs are expressly limited to "moneys generated by such licensing of <u>retired</u> player
group rights."  TAC, Exs. B, C (Adderley GLAs) (emphasis added).  Adderley thus has no good
faith basis to state any claim for active player licensing income from █ or any other licensee.

    In this regard, Plaintiffs have no good faith basis to allege that the revenues from
Players Inc's ████████████████████████████████████ are in
any way attributable to retired player licensing.  To the contrary, the express terms of those
agreements makes clear that ████████████████████████



None of this money was retained by Defendants.

    If there was any doubt about the lack of a good faith basis for Plaintiffs' proposed
TAC, that doubt is eliminated by ████████████████████████

**Dewey & LeBoeuf LLP**
1950 University Avenue
East Palo Alto, California 94303-2225

-2-

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1 ███████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████

3          Plaintiffs' attempt to state a claim with respect to ██████████

4 ███████████████████████████ suffers from the same fatal defect in that, in each case

5 identified by Plaintiffs, the licensee acquired only <u>active</u> players' rights.  For example, the

6 proposed TAC alleges that Adderley's rights were licensed to ████████████████

7 pursuant to an unidentified, group licensing agreement.  <u>See</u> TAC ¶ 28.  But the undisputed

8 documents show that Adderley participated in a "designated" licensing program with ███████

9 ██████ in which ██████████ paid Players Inc <u>additional</u> money for the right to use Adderley's

10 image.  Such payments were 100% passed through to Adderley.  Once again, there is no good

11 faith explanation for why ██████████ would make additional payments to Adderley for retired

12 player rights that, according to Plaintiffs, ████████ had already acquired.

13          The claims in the proposed TAC that Adderley is entitled to an "equal share"

14 royalty ███████████████████████████████████████████████

15 and to a portion of the $8 million allocation of royalties ██████████████████

16 ████████████████████████████, also have no good faith basis.  <u>See</u> TAC ¶¶ 29-39.

17 ███████████████████████████████████████████████████████

18 ███████████████████████████████████████████████████████

19 ███████████████████████████████████████████████████████

20 ████████████████████████████ Adderley thus has no good faith basis to assert

21 any claim for a share of such "gross licensing revenues."  Indeed, Adderley's allegations simply

22 highlight the fact that what Adderley is seeking via the proposed TAC is <u>active</u> players' money.

23          With respect to Parrish, Plaintiffs concoct yet another new theory because of the

24 undisputed fact that Parrish never signed a GLA during the limitations period, and never had his

25 name or image licensed by Defendants.  This time around, Plaintiffs allege that a fiduciary

26 relationship regarding licensing arose between Defendants and Parrish because, in a single year

27 within the limitations period, Parrish paid $50 in NFLPA Retired Players Association dues.  <u>See</u>

28 Mot. at 13-16.  Plaintiffs then allege that Defendants breached their purported fiduciary duties by

1   failing to provide Parrish with unspecified "information," and by virtue of Gene Upshaw's

2   statements that he works for NFLPA active members (i.e., active, as opposed to retired, players)

3   in collective bargaining. Id. These allegations do not state a claim for breach of fiduciary duty.

4           Finally, we note that even Plaintiffs have given up trying to state a claim for

5   Roberts. Instead, Plaintiffs ask the Court to permit them to submit a Section 17200 claim on

6   behalf of Roberts solely so that it can be dismissed with prejudice and preserved for appeal.

7                                        **ARGUMENT**

8           Plaintiffs were ordered to submit a declaration "that explains … the good-faith

9   basis on which the amendments were made." Order Granting Motions to Dismiss ("Order") at

10  24. Despite making a series of new allegations which represent an about-face from their prior

11  complaints, Plaintiffs, tellingly, do not submit any declaration from Adderley, Parrish or Roberts.

12  The failure of Plaintiffs to try to "explain[] … the good-faith basis on which the amendments

13  were made," combined with their continued reliance on "smoke-and-mirrors" pleading, (Order at

14  4), requires that this Motion be denied. Indeed, as the undisputed evidence presented herein

15  demonstrates, Plaintiffs have disregarded the specific procedure put in place by the Court, and

16  now seek leave to file an amended complaint based on allegations that have not been made in

17  good faith. It is well established that a court should deny a motion for leave where there is such

18  "bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue

19  prejudice to the opposing party," or where allowing the amendment would be futile. Moore v.

20  Kayport Package Exp., Inc., 885 F.2d 531, 538 (9th Cir. 1989). In this case, the Court's

21  discretion is "particularly broad [because] the plaintiff previously has been granted leave to

22  amend." Simon v. Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000).

23  **I.    ADDERLEY CANNOT STATE A GOOD FAITH CLAIM FOR BREACH OF CONTRACT**

24

25          Plaintiffs allege that Defendants breached Adderley's GLAs by failing to

26  distribute to Adderley "moneys generated by such licensing of retired player group rights." TAC
    ¶ 19 (quoting Adderley's GLAs) (emphasis added). As set forth below, however, Adderley

27  cannot, in good faith, allege any such breach because the money he is seeking is 100%

28

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-4-

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1  attributable to <u>active</u> – not retired – player licensing.  Moreover, the undisputed documents

2  produced to Plaintiffs establish that Defendants have paid Adderley 100% of the money

3  attributable to the licensing of his name and image.  <u>See</u> Feffer Aff. ¶¶ 2-10 (Greenspan Decl.,

4  Ex. A); <u>see also</u> Mot. at 4 n.1 (expressly disavowing any claim that Adderley or any other

5  Plaintiff is owed any money pursuant to any designated, "ad hoc" agreement).

6      **A.**      ███████████████████████ **Is Paid <u>Solely</u> For <u>Active</u> Player Group Licensing Rights**

7

8      The proposed TAC is based on the bad faith claim that "Defendants have licensed

9  retired player rights to many of its licensees" without payment to Adderley and other retired

10  players who have signed GLAs.  TAC ¶ 20.  Plaintiffs contend that ███████████████████

11  ███████████████████████

12      **1.      The Plain Language of the** ████████████████ **Establishes That Those Agreements Do Not Grant** ███ **<u>Any</u> Retired Player Rights**

13      The TAC alleges that, ██████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████ Plaintiffs' attempt to advance this contractual

17  "interpretation" ignores the plain language of the provisions, and is not made in good faith.  With

18  respect to ██████████████████████████████████████

19   ████████████ Plaintiffs thus rely upon ████████████

20  ████████████████████████████████████████████████

21  ─────────────

22  [2] The TAC contains specific allegations about only two other licensees: ████████████████
    Defendants respond to these bad faith allegations in Point I.B, <u>infra</u>.

23  [3] 

24

25

26

27

28

─────────────────────────────────────

Defs.' Memo. of Points & Authorities in Opp'n to          Civ. Action No. C07 0943 WHA
Pls.' Mot. for Leave to File a Third Am. Compl.



But that is not what the plain language of that sentence provides:

There is thus no good faith basis for Adderley to allege that the guaranteed minimum or any other royalty payments were for anything other than <u>active</u> players' rights.

Indeed, any question about the lack of good faith basis for the TAC allegations about is conclusively put to rest by

**Dewey & LeBoeuf LLP**
1950 University Avenue
East Palo Alto, California 94303-2225

-6-

Defs.' Memo. of Points & Authorities in Opp'n to
Pls.' Mot. for Leave to File a Third Am. Compl.

Civ. Action No. C07 0943 WHA



1
2
3
4
5
6
7
8
9
10
11
12
13
14          As a matter of law, any purported ambiguity in
15          is legally resolved by the undisputed understanding of the parties' to those
16  agreements; not by a third parties' contrary "interpretation."[4]

17          There is similarly no good faith basis for Adderley's allegation that he is entitled
18  to an "equal share" – or, for that matter, any share – of the payments under
19                                          TAC ¶¶ 20, 27.  In making this
20  argument, Adderley relies on                            but that provision
21  states that
22
23                  Since                              do not include any
24  retired players' rights, that provision does not apply to Adderley.  Id.

25  ———————————————————————————————
26  [4] See, e.g., Matsushita Elec. Corp. v. Loral Corp., 36 F.3d 1115, 1994 WL 497955, *2 (Fed. Cir.
    1994) (rejecting a third party's interpretation of a license agreement where the original
    contracting parties both understood the contract to have a different meaning); Waddy v. Sears,
27  Roebuck & Co., Nos. C-92-2903-VRW, 1994 WL 392483, *11 (N.D. Cal. Jul. 8, 1994)
    ("Tucker's employment contract is defined by the understanding and intent of Sears and Tucker,
28  not thirdparties [sic] to the contract.").

Defs.' Memo. of Points & Authorities in Opp'n to                    Civ. Action No. C07 0943 WHA
Pls.' Mot. for Leave to File a Third Am. Compl.

**Dewey & LeBoeuf LLP**
1950 University Avenue
East Palo Alto, California 94303-2225

2.    ███████  **Entered Into <u>Separate</u> Deals and Paid <u>Additional</u> Money to Acquire Retired Players' Intellectual Property Rights**

The lack of any good faith basis for Adderley's breach of contract claim is further demonstrated by the undisputed fact that ███████ entered into separate, designated agreements, and paid additional money, for retired players' rights which, according to the TAC,

Defs.' Memo. of Points & Authorities in Opp'n to        Civ. Action No. C07 0943 WHA
Pls.' Mot. for Leave to File a Third Am. Compl.

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225



Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

In the face of this indisputable evidence, which was produced to Plaintiffs months ago, there is simply no good faith basis for Plaintiffs to allege that ▮▮▮ ▮▮▮ licensed the rights of retired players who had signed a GLA.

      **3.**    **Allen did Not Testify That** ▮▮▮▮▮▮ **License Retired Player GLA Rights to** ▮▮▮

The Court previously observed that "[t]ime and again in the briefs and at the hearing, plaintiffs argued that they had alleged a key element. On examining the complaint, however, the actual allegations did not go nearly so far." Order at 4. Plaintiffs' shell game continues. In their Motion, Plaintiffs state that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ In fact, neither Paragraphs 22 and 24, nor any other Paragraph in the TAC, quotes (or cites or attaches) testimony from Allen regarding any purported grant of retired players' rights in ▮▮▮▮▮▮▮ That is not surprising, since Allen's testimony is, in fact, contrary to the allegations in the TAC. In particular, while Allen testified that ▮▮▮▮▮▮▮

[8] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████  Plaintiffs never asked Allen about the
meaning of "designated programs" (presumably because their "interpretation" of
█████████████  depends on ignoring that term).

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

**B.** **There Is No Good Faith Basis For Plaintiffs To Allege That █████████
██████████████████ Were In Any Way Attributable To Retired Player Licensing**

Apart from ██████████████████████████, the TAC makes the conclusory assertion that "Defendants have licensed retired players' rights and images ... to other licensees, including, but not limited to ███████████████████████████" TAC ¶ 28. There is no good faith basis for this allegation. With respect to ████████████, Adderley entered into three "designated" agreements pursuant to which he was separately paid additional money to grant ██████████ the right to ███████████████████████████████████
██████████████████  If Players Inc had already licensed Adderley's rights to ██████████
— as Plaintiffs allege — then ██████████ would not have entered into separate agreements, and made additional payments for those rights.[9]  Plaintiffs' attempt to ignore these undisputed facts is the height of <u>bad</u> faith because, prior to the filing of this Motion, Defendants specifically pointed out these documents to Plaintiffs to demonstrate that there was no good faith basis on which Adderley could state a claim. ████████████████████████████

[9] ██████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████

Dewey &amp; LeBoeuf LLP<br>1950 University Avenue<br>East Palo Alto, California 94303-2225

-10-

1    Plaintiffs' allegation about ▉▉▉▉▉▉▉▉ is similarly without any good

2    faith basis.  Again, Defendants produced documents to Plaintiffs evidencing designated

3    programs in which ▉▉▉▉ paid additional money to acquire the rights of certain retired players

4    who had signed the same GLA as Adderley.[10]  Such agreements and payments belie Plaintiffs'

5    claim that Defendants granted retired players' GLA rights to ▉▉▉▉ as part of a general licensing

6    agreement.  As attested to by ▉▉▉▉▉▉▉▉▉▉▉

7

8

9

10

11

12

13

14    ▉▉▉▉▉▉▉▉ In the

15    face of such undisputed evidence, there is no good faith basis for Adderley's claims.

16    C.    ▉▉▉▉▉▉▉▉▉▉▉▉ **Further Demonstrates That Adderley Is Seeking**
      **<u>Active</u> Player Money Through The Proposed TAC**

17    Adderley's reliance ▉▉▉▉▉▉▉▉▉▉▉

18    ▉▉▉▉▉▉ only further confirms that what Adderley is seeking via the TAC is

19    <u>active</u> player licensing revenues. ▉▉▉▉▉▉▉▉

20    ▉▉▉▉▉▉▉▉▉▉▉

21    Adderley nevertheless alleges that he is somehow entitled to an "equal share" of such "gross

22    licensing revenues."  <u>E.g.</u>, <u>id.</u> ¶ 33.  The lack of good faith basis, and fatal flaw, in Adderley's

23    claim is that ▉▉▉▉▉▉▉▉▉▉▉

24    ▉▉▉▉▉▉▉▉

25    _____

26    [10] ▉▉▉▉▉▉▉▉▉▉▉

27    [11] ▉▉▉▉▉▉▉▉▉▉▉

28    ▉▉▉▉▉▉▉▉▉▉▉

-11-

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225



Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1

2

3

4

5

6

7   Adderley's claim for a share of "gross licensing revenues" is thus just another way of seeking to

8   recover a share of <u>active</u> player licensing revenues.[12]

9         The TAC also alleges, in a single, conclusory Paragraph, that ███████ "gross

10  licensing revenues ██████████████████████████ should also have

11  been "paid directly to players or paid out as additional royalty to NFLPA members." TAC ¶ 37.

12  But this is no different than Plaintiffs' claim for ██████ "gross licensing revenues" ████

13  ████ <u>i.e.</u>, it is a bad faith claim for <u>active</u> player money to be redistributed to retired

14  players. Indeed, as Plaintiffs know, a Fall 2003 letter which Adderley and Parrish received from

15  Players Inc, <u>see</u> TAC ¶ 58, Ex. L, explained that the dues paid by NFLPA Retired Players

16  Association members are insufficient to cover the costs of the services offered to retired NFL

17  players by the NFLPA, but that Players Inc subsidizes these costs "[b]ecause 40% of Players

18  Inc's operating revenue is paid to the NFLPA as a royalty for the <u>active</u> player name and image

19  rights secured by the NFLPA and licensed to Players Inc." <u>Id.</u> (emphasis added).[13]

20  ─────────────

    [12] ███████████████████████████████████████

21  ████████████████████████████████████████████████

22  ████████████████████████████████████████████████

23

    [13] This Fall 2003 letter belies Adderley's unsupported allegation that ██████████████

24  ████████████████████████████████ TAC ¶ 31.
    Moreover, Adderley alleges no reason why he should have been privy to an agreement to which

25  he is not a party and has no standing to enforce. <u>Hatchwell v. Blue Shield</u>, 198 Cal. App. 3d
    1027, 1034 (1988). Nor does (or could) Adderley allege that he is a third-party beneficiary to the

26  agreement. It "is insufficient that [a purported third party beneficiary] would also benefit from
    [the contract]." <u>Markowitz v. Fidelity Nat'l Title Co.</u>, 142 Cal. App. 4th 508, 527 (2006). Under

27  California law, third party beneficiaries are recognized only where the contract is "expressly" for
    their benefit. Cal. Civ. Code § 1559; <u>Smith v. Microskills San Diego L.P.</u>, 153 Cal. App. 4th

28  892, 898 (2007).

Defs.' Memo. of Points & Authorities in Opp'n to          Civ. Action No. C07 0943 WHA
Pls.' Mot. for Leave to File a Third Am. Compl.

**D.    The $8 Million Allocation Is Another Red Herring**

There is also no good faith basis for Plaintiffs' allegation that, ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendants improperly "reallocated" $8 million which should have been distributed to retired players (such as Adderley) who signed GLAs.  TAC ¶¶ 38, 39.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**E.    Adderley's Money Was Not Put Into An Escrow Account Because It Was Passed Through 100% To Adderley**

It is undisputed that Adderley received 100% of the money generated by licensing his intellectual property rights, which should be the end of any claim by Adderley against Defendants for this money.  See Feffer Aff. ¶¶ 2-10 (Greenspan Decl., Ex. A).  Adderley, however, in another effort to seek a share of the revenues attributable solely to active player licensing, claims that the "escrow account" referenced in Adderley's GLAs is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ TAC ¶¶ 29-30; Mot. at 7.  There is simply no good faith basis for this claim.  As Allen testified, there is no retired player licensing money in this account or any "other escrow account" because all of the revenue generated from retired player licensing was distributed to the retired players:

> Q.   When it refers to an escrow account for all eligible NFLPA members who have signed a Group Licensing Authorization Form, was there such an account created?
>
> A.   No, because all of the money was distributed to the players who participated.
>
> Q.   So you did not divide the money at all between the player and an escrow account.  You didn't even create an escrow account?
>
> A.   There was no money to create it with.  We wouldn't have been able to get the players to do it in the first place if they weren't getting paid.  We learned that lesson.  And all of the money secured for retired player licensing was distributed to the players who were involved in those license programs.  There was no other money to escrow.  There was no other money to divide.

-13-

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1    Allen Depo. Tr. at 148:16-149:10 (emphasis added) (Greenspan Decl., Ex. L).

2         As to the ███████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████

6    ███████████████████████████████████████████████  Adderley's claim for the revenues ██

7    ████████████  is just another bad faith claim for revenue generated solely by active players.

**II.    ADDERLEY CANNOT STATE A GOOD FAITH CLAIM FOR BREACH OF FIDUCIARY DUTY**

9         In order to state a claim for breach of fiduciary duty, Adderley must allege facts

10   supporting (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages

11   proximately caused by such breach. See Order at 18. As set forth below, Adderley cannot, in

12   good faith, make such allegations in the TAC.

**A.    Adderley Cannot, In Good Faith, Allege A Breach Of Fiduciary Duty Or Damages Resulting From Such An Alleged Breach**

15        The Court previously held that "plaintiffs have failed to plead detrimental

16   reliance," and, as a consequence, dismissed Adderley's breach of fiduciary duty claim on the

17   "breach and damages" prongs. Order at 22. In particular, the Court held that Plaintiffs had

18   failed to allege that Adderley: (i) "did not receive licensing royalties owed to him"; (ii) "relied

19   to his detriment on specific information withheld by the NFLPA or Players Inc"; or (iii) "failed

20   to pursue individual, non-group licensing opportunities on his own because he believed Players

21   Inc was representing him." Order at 22. Adderley cannot, in good faith, cure these deficiencies.

22        First, Plaintiffs attempt to cure their prior failure to allege that Adderley "did not

23   receive licensing royalties owed to him" (id.) by now claiming that "the rights to Mr. Adderley's

24   image ██████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████████████

26   Declaration of Ronald Katz ("Katz Decl.") ¶ 11. But, as demonstrated above, Adderley cannot,

27   in good faith, claim any entitlement to the guaranteed minimum payments by ███ or other

28   licensees, which are exclusively generated by active player licensing. See Point I, supra.

-14-

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defs.' Memo. of Points & Authorities in Opp'n to
Pls.' Mot. for Leave to File a Third Am. Compl.

Civ. Action No. C07 0943 WHA

1            Second, Plaintiffs attempt to cure their prior failure to allege that Adderley "relied

2    to his detriment on specific information withheld by the NFLPA or Players Inc" (Order at 22) by

3    now averring that, "[w]ithout the knowledge of retired players such as Adderley,

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ████████████ TAC ¶¶ 52, 53.  As set forth in Point I, however, there is simply no good

7    faith basis for these allegations, which are based on a bad faith interpretation of the ████ and other

8    licensing agreements.  Nor is there even a declaration from Adderley stating that he did not know

9    about ███████████████ or that he did not know that he was not receiving a share of any

10   guaranteed minimum payments from ██████████████  This failure is glaring given Plaintiffs'

11   prior allegations that █████████████████ was "extensively reported" by the media (which

12   also demonstrates that Defendants were not "withholding" information about the deal).[14]  In

13   addition, it defies logic for Adderley to allege that he was unaware that he was not receiving an

14   "equal share" royalty with active players since he obviously knew that he was not receiving any

15   licensing money from Players Inc beyond what he was owed pursuant to his "ad hoc" deals.

16           Third, the TAC alleges that, as a result of Defendants' purported failure to

17   "represent [GLA retired players'] best interest in connection with group licensing

18   opportunities,"[15] "Adderley and other members of the GLA Class did not pursue licensing

19   opportunities on their behalf."  TAC ¶ 48.  In contravention of the Court's Order, however,

20   Plaintiffs offer no declaration from Adderley to show that these allegations are being made in

21   good faith (e.g., a declaration from Adderley stating that he did not pursue any licensing

22   opportunities on his own because of Defendants' alleged conduct).  Nor do Plaintiffs offer any

23   good faith basis for their claim that "[any such individual licensing] efforts would have been

24

---

25   [14] Plaintiffs' Second Amended Complaint ("SAC") extensively quoted press releases and
26   numerous newspaper articles discussing ████████████████ including the significant
     amount of royalties involved in that deal.  See SAC ¶ 32.
27   [15] Plaintiffs make this claim despite stating that "[t]he TAC no longer alleges that Defendants
     failed to pursue licensing opportunities on behalf of Adderley and other GLA Class members."
28   Mot. at 13.

-15-

Defs.' Memo. of Points & Authorities in Opp'n to                    Civ. Action No. C07 0943 WHA
Pls.' Mot. for Leave to File a Third Am. Compl.

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1  highly unlikely to succeed" because █████████████████████████████████

2  ██████████████████████████████████████████████████████████████

3  In fact, publicly available information establishes that many retired players who signed GLAs

4  did successfully market themselves without the involvement of Players Inc.  Take-Two

5  Interactive, a video game company with which Defendants have no licensing relationship,

6  recently launched a video game called "All-Pro Football" featuring retired players,

7  approximately ██ of whom signed the same GLA as Adderley.  See Feffer Decl. ¶ 8.  This belies

8  Plaintiffs' unsupported and bad faith allegation that "other members of the GLA Class did not

9  pursue licensing opportunities" and that retired players who signed GLAs are ████████████

10 ███████████ TAC ¶ 48.  Indeed, the undisputed evidence establishes that retired players,

11 such as Adderley, have benefited greatly from Players Inc's licensing activities.  Adderley

12 himself collected from Players Inc ████████ in licensing fees for participating in designated EA

13 and Upper Deck programs.  See Feffer Aff. ¶ 3 (Greenspan Decl., Ex. A).  Moreover, the

14 documents produced to Plaintiffs demonstrate that ███████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████

18       There is also no good faith basis for Plaintiffs' allegation that "Adderley and other

19 members of the GLA Class [] relied on the language of the GLAs ... in deciding to participate in

20 the Retired Players Group Licensing Program, and in authorizing Defendants to represent them

21 in connection with group licensing opportunities," and "reasonably expected ... ███████████

22 ████████████████████████████████████████████████████████████

23 ████████ TAC ¶ 49.  Indeed, these allegations fly in the face of the language of Adderley's

24 GLAs, which are expressly limited to "moneys generated by ... licensing of retired player group

25 rights."  TAC, Exs. B, C (Adderley GLAs) (emphasis added).  Moreover, how can Adderley

26 allege, in good faith, that he relied "on [the] language of the GLAs," when he did not have the

27 GLAs in his possession, and Plaintiffs could not even plead the legal effect of those GLAs, until

28 Players Inc produced the GLAs to Adderley a few months ago?

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-16-

**B.    Adderley Cannot, In Good Faith, Allege a Fiduciary Relationship Based on the GLA**

In a complete reversal from Plaintiffs' prior statement that they "do not allege a fiduciary relationship based on the GLA standing alone" (Opp'n to Mot. to Dismiss SAC at 14), Plaintiffs now allege in the TAC that the GLAs create "an express agency relationship between [Defendants] and the retired players." TAC ¶ 45. Plaintiffs offer no good faith basis for this about-face. As the Court previously held, the GLAs themselves do not create a fiduciary relationship. See Order at 19-20. Similarly, despite previously admitting "that they cannot plead, either by implication or contract, that they had the ability to control the actions of defendants," Order at 20, Plaintiffs now reverse course and allege – based on unidentified, "newly discovered facts" – that Adderley had "control" over Defendants by virtue of his ability to decline to participate in retired player group licensing programs. TAC ¶ 45; Mot. at 10.[16] Adderley's new claim that he controlled Defendants' licensing activities all along, but did not know it, defies both logic and the law, and is not in good faith.[17]

In its Order dismissing the SAC, the Court also ruled that Plaintiffs had failed to allege a "confidential relationship," noting that "[m]issing is any allegation that plaintiffs have suffered disability." Order at 19. But the only new allegation in the TAC on this point is the conclusory allegation that Adderley was "vulnerable" to Defendants because he suffers from unidentified "physical disabilities."[18] TAC ¶ 51. Further, there is no declaration from Adderley

---

[16] The "newly discovered facts" which Plaintiffs contend they are relying upon is ██████████ ████████████████████. However, there is no discussion ██████████████ of Adderley, much less any GLA retired player, controlling Player Inc's licensing actions.

[17] See, e.g., Bowoto v. Chevron Corp., No. C. 99-02506-SI, 2007 WL 2349336, *16 (N.D. Cal. Aug. 14, 2007) ("To establish actual agency a party must demonstrate [among other things] an understanding between the parties that the principal is to be in control of the undertaking.") (emphasis added and internal quotations omitted); Abramowitz v. Pipher, No. 2963 Civil 2006, 2006 WL 4722437, *220 (Pa. Com. Pl. Aug. 22, 2006) ("The basic elements of an agency relationship [include, among other things,] the understanding of the parties' principal to be in control of the undertaking.") (emphasis added); Liimatta v. V & H Truck, Inc., No. Civ. 03-5112JNERLE, 2005 WL 2105497, *2 (D. Minn. Aug. 30, 2005) (holding there is no agency relationship where the purported principal "has no control over (or even knowledge of)" the activities of its purported agent) (emphasis added).

[18] Plaintiffs also allege that Adderley is a senior citizen with a $180 monthly pension, but this same allegation appeared in the SAC (n.1), and the Court rejected Plaintiffs' argument that "defendants' mere economic power alone created a fiduciary duty." Order at 19-20. Moreover, there is no allegation in the TAC that describes Adderley's overall financial resources.

-17-

Defs.' Memo. of Points & Authorities in Opp'n to
Pls.' Mot. for Leave to File a Third Am. Compl.

Civ. Action No. C07 0943 WHA

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1  to "explain[] … the good-faith basis" for his new allegations.  Order at 24.  Nor, in any event, do

2  unsupported allegations about unspecified "physical disabilities" give rise to the type of

3  vulnerabilities recognized by the courts as providing the "necessary predicate of a confidential

4  relationship."  Id. at 19 (identifying, e.g., "lack of education" and "weakness of mind").

5           Regarding Adderley's "agency by estoppel" claim, the Court previously held that

6  "[d]etrimental reliance on some action taken by the defendant is required if estoppel is to apply."

7  Order at 22 (citation omitted).  Adderley, however, has failed to make good faith allegations

8  sufficient to plead any form of detrimental reliance.  In particular, Adderley has failed to make

9  good faith allegations (i) that he was denied any retired player licensing royalties generated from

10  the use of his intellectual property rights; (ii) that any false information was given to him which

11  he relied upon to his detriment; or (iii) that he did not, or could not, pursue any licensing

12  opportunities on his own as a result of misrepresentations by Defendants.  See Point II.A, supra.

13  **C.    Plaintiffs' Claim That ███████████ Has No Good Faith Basis**

14           Plaintiffs allege that "although the GLA signed by Adderley, and by other

15  members of the GLA Class during the limitations period, are purportedly 'non-exclusive',

16  ████████████████████████████████████████████

17  ████████████████████████████████████████████

18  ████████████████████████████████ TAC ¶ 48.  It is not

19  clear from the TAC, or as a matter of law, how this allegation is relevant to Adderley's  fiduciary

20  duty claim.  In any event, Plaintiffs' allegations are not in good faith.  For example, Plaintiffs

21  ignore Allen's undisputed testimony on this point:

22           Q:  Was a retired player, as you understood it, free to license his rights to
           anybody for anything at any time after signing this Group Licensing
23           Authorization form?

24           A:  I think for the most part, that was true.

25  Allen Depo. Tr. at 145:1-12 (interceding colloquy omitted), 78:6-18 ("For active players, for

26  group licensing, they're exclusive; for retired players, they're not.") (Greenspan Decl., Ex. L).

27  Plaintiffs further ignore the plain text of the GLA itself, which the Court held "make[s] clear that

28  retired players are granting the rights to the NFLPA only for the purpose of licenses for groups

-18-

of six or more. The GLAs are silent on the licensing for individual players."[19] Order at 21.

In fact, as has been repeatedly explained to Plaintiffs, the only way in which retired player group licensing is exclusive is with respect to products or promotions already licensed by Defendants. See TAC ¶ 42 ███████████████████████████████████

███████████████████████████████████████ see also Feffer Decl. ¶ 15 (explaining that a participating retired player is not excluded from signing a licensing authorization with another entity). Thus, for example, retired players who signed GLAs would not be precluded from licensing their rights to EA for a non-licensed product, or from licensing their rights to any other video game company. Indeed, as discussed above, ███ retired players who signed the same GLA as Adderley licensed their images for use in Take-Two's All-Pro Football video game. See Feffer Decl. ¶ 7.

Plaintiffs make similarly bad faith allegations about the scope of ████████

████████████████████████████████████████████ [20]

████████████████████████████████████████████ However, NFL sponsors sometimes also request, and Players Inc sometimes arranges for, appearances and participation by individual retired NFL players on an "ad hoc" basis, with a separate fee paid to those players. See Feffer Decl. ¶ 19. Plaintiffs allege that ████████████████

█████████████████████████████████ In fact, NFL sponsors need only go through Players Inc to secure players for participation in NFL sponsorship programs already licensed to Players Inc.

---

[19] Plaintiffs disingenuously cite language from the NFLPA website that discusses the exclusive nature of the "NFLPA Group Licensing Assignment," and allege that such discussion does not distinguish between active and retired players. See TAC ¶¶ 40, 41, Ex. E. But the website plainly refers to active player GLAs. By contrast, Adderley signed a "Retired Player Group Licensing Authorization Form," not the "NFLPA Group Licensing Assignment" being discussed on the NFLPA website. Compare TAC, Exs. B and C (emphasis added) with Ex. E.

[20] The memorandum which Plaintiffs rely on to "support" their interpretation of ████████████ ███████ was written about the use of active player rights under that agreement. See Allen Depo. Tr. at 76:14-78:5 ("in this memo, we were essentially referring to active players...") (Greenspan Decl., Ex. L).

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1  See Feffer Decl. ¶ 20.  Moreover, there is usually only one NFL sponsor in each business

2  category at any one time.  See id.  Thus, whereas General Motors is the current NFL automobile

3  sponsor, a retired player would still have the opportunity to separately license his rights to Ford,

4  Chrysler, Toyota, or any other automotive company.  See id.

5  **III.    PARRISH CANNOT STATE A GOOD FAITH CLAIM FOR BREACH OF**

6  **FIDUCIARY DUTY**

7              Recognizing that he cannot state a claim under any of the myriad theories

8  advanced in the four prior complaints, Parrish seeks to advance an entirely new fiduciary duty

9  claim on behalf of himself and a putative class of "retired NFL players who joined the NFLPA as

   retired members and paid dues to the NFLPA within the statute of limitations, but, according to

10  the records of the NFLPA, did not sign a GLA."[21]  TAC ¶ 87 (emphasis added).  The thrust of

11  Parrish's claim is that Defendants owed him a fiduciary duty because, in a single year within the

12  statute of limitations, Parrish paid $50 in NFLPA Retired Players Association membership dues.

13  The TAC then alleges that Defendants breached their purported fiduciary obligations and harmed

14  Parrish by: (1) withholding unidentified information regarding benefits and licensing; and (2) by

15  virtue of Gene Upshaw's statement in a newspaper article that "I don't work for [retired

16  players]."  TAC ¶¶ 57-81.  As set forth below, this new fiduciary duty theory is frivolous on its

17  face and, moreover, Parrish has not come forward with any declaration to "explain[] … the

18  good-faith basis on which [these] amendments were made."  Order at 24.

19        **A.    Parrish Cannot, In Good Faith, Allege A Breach Of Fiduciary Duty Or**

20        **Damages**

              Parrish's failure to plead good faith facts establishing detrimental reliance is fatal

21  to his ability to plead a breach of fiduciary duty or damages (as well as to his agency by estoppel

22  claim (see Point III.B, infra)).  First, Plaintiffs allege that Defendants breached their purported

23  fiduciary obligations, and damaged Parrish, by "fail[ing] to provide Parrish … with information

24  affecting other benefits to which [he] may be entitled, including but not limited to the fact that

25

26

27  [21]  Adderley does not assert any breach of fiduciary duty claim based upon his membership in the
NFLPA Retired Players Association.  Plaintiffs' Fourth Cause of Action is specifically limited to

28  individuals who paid NFLPA Retired Players Association dues within the limitations period, but
did not sign a GLA within that timeframe.  E.g., TAC § VI (title of section), ¶ 87, ¶ 111.

-20-

1  Players Inc was ██████████████████████████████████████

2  █████████████████████████  TAC ¶¶ 79, 80.  As a threshold matter, there is no good faith

3  basis for the claim that Defendants were ███████████████████████████████

4  ██████████████████████████████████  See Point I, supra.  Moreover,

5  Parrish cannot, in good faith, allege that he was entitled to any information relating to retired

6  player licensing since there is no allegation that Parrish's name or image was ever used or

7  licensed by Defendants.[22]  See TAC ¶¶ 57-81.  There is also no good faith basis for Plaintiffs to

8  allege that Defendants somehow breached a fiduciary duty, or injured Parrish, "by failing … [to]

9  pursu[e] commercial and marketing opportunities" on his behalf, since Parrish did not sign a

10 GLA or any "ad hoc" agreement authorizing Defendants to do so.  TAC ¶ 80.

11          With respect to Defendants allegedly withholding information about unspecified

12 "other benefits," Plaintiffs cite to a provision in the NFLPA Constitution that states that NFLPA

13 Retired Players Association members have the right to "[r]eceive NFLPA publications, the

14 retired player publications, and other information which may affect [Parrish's] retirement

15 benefits or other benefits he may be entitled to as an NFL player."  TAC ¶ 60 (quoting Ex. K

16 (NFLPA Constitution)), Art. II, p.7.  But Parrish does not allege that, in the single year within

17 the statute of limitations in which he was a NFLPA Retired Players Association member, he did

18 not receive "NFLPA publications" or "retired player publications."  Nor does he allege what

19 "other information" affecting his "benefits" was purportedly withheld, how he was injured from

20 such non-disclosure, or that he relied upon (or even read) the NFLPA Constitution in deciding to

21 become a NFLPA Retired Players Association member.  As set forth in the Declaration of the

22 NFLPA's General Counsel, Richard Berthelsen ("Berthelsen Decl."), the NFLPA Retired

23 Players Association members' right to receive information affecting "retirement benefits or other

24 benefits" refers to information regarding retired player benefits available by virtue of the NFL

25 Collective Bargaining Agreement ("CBA") (e.g., disability benefits).  See Berthelsen Decl. ¶ 9

26

27 [22] Plaintiffs allege that Defendants licensed the rights of retired players who signed a GLA or
other agreement.  There is no allegation that Defendants licensed the rights of retired players
28 (such as Parrish) who did not sign a GLA or "ad hoc" agreement.

-21-

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

1   (Oct. 10, 2007).  Parrish cannot, in good faith, allege that information regarding these benefits

2   had any relationship to retired player licensing, nor can he allege that this information was

3   "withheld" from him since the CBA is publicly available via the NFLPA's website.  See id.

4   Moreover, Parrish does not allege that he was denied any other service or benefit afforded to

5   retired players who pay dues to the NFLPA Retired Players Association.[23]  Indeed, there is

6   simply no good faith basis for Parrish to claim that he did not receive services for his $50 dues

7   payment.  As set forth in the Berthelsen Declaration, the total amount of dues paid by retired

8   players does not come close to covering the cost of the services provided to those players by the

9   NFLPA.  See id. ¶ 7; see also TAC, Ex. L (the Fall 2003 letter).  Nor can Parrish claim that the

10  $50 had anything to do with retired player licensing – which is conducted by Players Inc, not the

11  NFLPA Retired Players Association.

12          The second category of allegations in purported "support" of the breach of

13  fiduciary duty and damages component of Parrish's claim pertains to Defendants' alleged failure

14  "to act in good faith towards retired NFLPA members by acknowledging that they do not work

15  for retired members."  TAC ¶ 80.  However, there is no allegation – good faith or otherwise –

16  that Parrish was damaged by Upshaw's statement that "I don't work for them," or that such

17  words could, standing alone, constitute a breach.  Id. ¶ 74 (quoting Charlotte Observer article

18  (Ex. P)).  Indeed, as set forth in the preceding paragraphs, there are no good faith allegations of a

19  breach of fiduciary duty or damages to Parrish, and nothing Upshaw said can change that.

20  Moreover, in typical fashion, the TAC selectively quotes Upshaw, who indicated that he and the

21  NFLPA do not represent retired players in the context of collective bargaining:

22

23  _____

    [23] As set forth in the NFLPA Constitution (TAC, Ex. K) and the Berthelsen Declaration, a
24  NFLPA Retired Association member has the right to: (i) attend an annual NFLPA convention
    and participate in convention activities (except for events designated for active players only); (ii)
25  receive NFLPA publications, retired players publications, and other information affecting
    retirement benefits or other benefits he may be entitled to; (iii) participate in NFLPA special
26  events; (iv) participate in any group insurance plan offered through the NFLPA on the retired
    player's behalf; (v) be represented on the NFLPA Retirement Board; and (vi) affiliate with a
27  local chapter of the NFLPA retired players organization.  See Berthelsen Decl. ¶ 8.  The only
    such right that Parrish complains about is an alleged failure to receive certain information and, as
28  set forth above, his claims to that effect are not in good faith.

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

-22-

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

> The bottom line is I don't work for them …. They don't hire me and they can't fire me. They can complain about me all day long. They can have their opinion. But the active players have the vote. That's who pays my salary. <u>They (retirees) say they don't have anybody in the (bargaining) room. Well, they don't and they never will. I'm the only one in that room. They're not in the bargaining unit.</u>

<u>See</u> TAC, Ex. P, p.2 (underscored text omitted from the TAC).  Collective bargaining activities do not include the licensing of retired players' rights, and Upshaw's comments thus had nothing to do with licensing activities.[24]  <u>See</u> Berthelsen Decl. ¶¶ 10-14.

### B. Parrish Cannot, In Good Faith, Allege Any Fiduciary Relationship Based On His Membership In The NFLPA Retired Players Association

Plaintiffs' "agency by estoppel" theory fails at the outset because, as set forth above, Parrish has not, in good faith, pled detrimental reliance.  <u>See</u> Order at 22 ("[d]etrimental reliance on some action taken by the defendant is required if estoppel is to apply.") (citation omitted).  Thus, even if the NFLPA had held itself out to be Parrish's licensing agent in exchange for $50 in dues – which is <u>not</u> alleged in the TAC – Parrish still could not establish "agency by estoppel" giving rise to a fiduciary relationship.

That said, Plaintiffs' allegations about the NFLPA Retired Players Association are without any good faith basis.  Plaintiffs allege that Parrish's decision to join the NFLPA Retired Players Association was based on two purported "solicitation" letters, and that such letters support their "agency by estoppel" theory.  Mot. at 14; TAC ¶¶ 58, 68.  The first of the two letters was sent in 2003, two years <u>before</u> Parrish became an NFLPA Retired Players Association member.  <u>See</u> TAC, Ex. L.  Even if Parrish did receive and read this letter – and there is no declaration from Parrish to attest that he did – Plaintiffs cannot, in good faith, allege that Parrish relied on a 2003 letter in becoming a member in <u>2005</u> (which is the only year in the limitations period in which he paid dues).  Moreover, the letter, on its face, has nothing to do with soliciting dues for NFLPA Retired Players Association membership.  <u>See id.</u>  Rather, the letter encourages the recipient to sign a GLA, which Parrish did not do.  With respect to the second letter (dated

---

[24] Plaintiffs repeatedly misrepresent the NFLPA Constitution by conflating NFLPA Retired Players Association membership with being a member of the union's bargaining unit, but retired players are specifically excluded from the bargaining unit, which consists of <u>current</u> and <u>future</u> NFL players.  <u>See</u> Berthelsen Decl. ¶¶ 3, 13; <u>see also</u> CBA, Preamble (Berthelsen Decl., Ex. A).

Defs.' Memo. of Points & Authorities in Opp'n to Pls.' Mot. for Leave to File a Third Am. Compl.          Civ. Action No. C07 0943 WHA

1  March 15, 2006), it is addressed to Parrish, and asks him to rejoin the NFLPA Retired Players

2  Association because his membership was expiring. See id., Ex. M. Parrish cannot, in good faith,

3  allege that he relied on a 2006 letter in deciding to join the NFLPA Retired Players Association

4  in 2005. Moreover, this letter does not say anything about retired player licensing activities.

5  Instead, it talks about "car rental and sports equipment discounts," "access to Union Plus

6  programs/services," and other benefits which Parrish does not allege that he did not receive.

7          Incredibly, Plaintiffs allege that "Players Inc has now conceded that it 'represents'

8  all retired NFLPA members," and then quote Players Inc's statement that "a reasonable inquiry

9  has not disclosed any statements in which Players Inc purported to represent 'all' retired

10  players." TAC ¶ 62 (emphasis added). What Players Inc did say in response to Plaintiffs'

11  request for admission was that Players Inc had "access to certain numbers of retired players via

12  the NFLPA Retired Players Association" and that it could "solicit the participation of such

13  players in licensing activities" if licensees were interested in acquiring their rights. Id. (emphasis

14  added). Players Inc stating that it could get in touch with NFLPA Retired Players Association

15  members and ask them to participate in licensing programs is clearly not the same thing as

16  holding itself out as the agent of "all" retired NFL players.[25]

17          With respect to the claim that Parrish had a "confidential relationship" with the

18  NFLPA giving rise to a fiduciary duty, the TAC rests on two wholly conclusory allegations.

19  First, the TAC alleges that "[t]he retired NFLPA members, including Parrish, are all, as

20  individuals, vulnerable to the size and economic power of Defendants." TAC ¶ 72. This

21  "economic disparity" argument has already been rejected by the Court, see Order at 19-20, and,

22  in any event, is not supported by any declaration from Parrish. The second allegation, that

23  "Parrish is further vulnerable in that he suffers from some disabilities as a result of his career in

24  professional football," is also not supported by any declaration. TAC ¶ 72. Nor is there any

25  explanation about how Parrish, "the CEO and President of a commercial construction company

26  _____

27  [25] In Paragraph 63 of the TAC, Plaintiffs again resort to distorting Allen's testimony. Allen
testified that Players Inc's statements about "representing" retired players was accurate and that
what Players Inc meant was that "we had access to those players and knew where they were and

28  how to reach them and contact them." Allen Depo. Tr. at 58:2-59:23 (Greenspan Decl., Ex. L).

Dewey & LeBoeuf LLP
1950 University Avenue
East Palo Alto, California 94303-2225

Defs.' Memo. of Points & Authorities in Opp'n to                    Civ. Action No. C07 0943 WHA
Pls.' Mot. for Leave to File a Third Am. Compl.

1  for over 20 years that employed over 3,000 [workers]," would be vulnerable to Defendants

2  because of any unidentified disabilities. TAC ¶ 4. Combine this with the fact that Plaintiffs

3  cannot plead any connection between the $50 dues payment and licensing activities, and it is

4  clear that Parrish cannot, in good faith, allege any fiduciary relationship.

5       **C.**    **Parrish's Breach Of Fiduciary Duty Claim Cannot Stand On Its Own**

6       Finally, Defendants note that Parrish's breach of fiduciary duty claim cannot be

7  pursued in federal court on its own because it does not satisfy the $5 million jurisdictional

8  amount for the putative Parrish class under the Class Action Fairness Act.[26] Thus, if Adderley is

9  not granted leave to file either of his claims, then Parrish's claim fails for this reason as well.[27]

10                   **CONCLUSION**

11       For the foregoing reasons, Plaintiffs' Motion for Leave should be denied. It is

12  time to bring this baseless case to an end.

13  Date: October 11, 2007             Dewey & LeBoeuf LLP

14                                    BY:    /S/ Jeffrey L. Kessler

15                                      Jeffrey L. Kessler
                                    *Attorneys for Defendants*

16       I hereby attest that I have on file all holographic signatures for any signatures

17  indicated by a "conformed" signature (/S/) within this e-filed document.

18  Date: October 11, 2007             BY:   /S/ Claire E. Goldstein

19                                      Claire E. Goldstein
                                    *Attorneys for Defendants*

20

21

22

23

---

24  [26] For the Parrish class, Plaintiffs seek only the return of NFLPA Retired Players Association

25  dues, but the total amount of such dues since 2003 is not even close to $5 million. E.g., TAC ¶ 115 ("Parrish and other members of the Retired NFLPA Member Class have suffered damages, up to and including the amount of dues paid to the NFLPA) (emphasis added). To illustrate this

26  point, even if there were 4,000 members of the NFLPA Retired Players Association in each of the past five years (there were fewer), and even if each member paid $100 in annual dues (in

27  fact, the dues were $50 for much of the period, before rising to $100), the total amount at stake would be $2 million.

28  [27] Defendants also note that the TAC has no allegations to support the punitive damages claim.

Defs.' Memo. of Points & Authorities in Opp'n to                       Civ. Action No. C07 0943 WHA
Pls.' Mot. for Leave to File a Third Am. Compl.

*Dewey & LeBoeuf LLP*
*1950 University Avenue*
*East Palo Alto, California 94303-2225*