Manatt, Phelps & Phillips, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
noel s. cohen (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

McKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER (Bar No. CA 150783)
E-mail: jadler@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS, III on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** |

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. THE STANDARDS FOR GRANTING LEAVE TO AMEND ..... 2

III. DEFENDANTS MISAPPLY THE STANDARDS FOR GRANTING LEAVE TO AMEND, AND INSTEAD SEEK TO CONVERT PLAINTIFFS' MOTION INTO A MOTION FOR SUMMARY JUDGMENT ..... 3

IV. THE COURT SHOULD GRANT ADDERLEY LEAVE TO FILE HIS AMENDED CONTRACT CLAIM ..... 5

A. The Plain Language of the GLA and Third Party Licenses Supports Adderley's Claim for a Share of the Guaranteed Minimum Revenue ..... 5

B. Doug Allen's Testimony Confirms Adderley's Good Faith Amendment ..... 7

1. Allen Confirmed [REDACTED] ..... 7

2. Allen Confirmed [REDACTED] ..... 9

3. Allen Confirmed [REDACTED] ..... 10

4. Ad Hoc Payments Are Separate from, And Irrelevant To, Whether Adderley Is Entitled To A Share of Guaranteed Minimum Revenue ..... 11

V. THE COURT SHOULD ALLOW ADDERLEY LEAVE TO FILE HIS AMENDED FIDUCIARY DUTY CLAIM ..... 12

A. Adderley alleges relationships giving rise to a fiduciary duty ..... 12

VI. THE COURT SHOULD ALLOW PARRISH LEAVE TO FILE HIS AMENDED FIDUCIARY DUTY CLAIM ..... 14

VII. CONCLUSION ..... 15

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

i

REPLY BRIEF ISO MOTION FOR LEAVE
CASE NO. C07 0943 WHA

## TABLE OF AUTHORITIES

**Page**

### CASES

*Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152 (N.D. Cal. 2005) ........ 3

*Abromowitz v. Pipher*, 2006 WL 4722437, *220 (Pa. Comm. Pl. 2006) ........ 13

*Aprin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912 (9th Cir. 2001) ........ 3

*Bowoto v. Chevron Corp.*, Slip. Op. 2007 WL 2349336, *16-17 (N.D. Cal. 2007) ........ 13

*Dale v. Preg*, 204 F.2d 434 (9th Cir. 1953) ........ 4

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987) ........ 3

*Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ........ 2

*Liimatta v. V & H Truck, Inc.*, 2005 WL 2105497, *2 (D. Minn. 2005) ........ 13

*Malloy v. Fong*, 37 Cal. 2d 356 (Cal. 1951) ........ 13

*Matshushita Elec. Corp v. Loral Corp.*, 36 F. 3d 1115 (Fed. Cir. 1994) ........ 5

*Michelson v. Hamada*, 29 Cal. App. 4th 1566 (Cal. App. 1994) ........ 13

*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209 (9th Cir. 1988) ........ 3

*Moore v. Kayport Package Express*, 885 F.2d 531 (9th Cir. 1989) ........ 3

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998) ........ 3

*Paulsen v. CNF, Inc.*, 391 F. Supp. 2d 804 (N.D. Cal. 2005) ........ 3

*Radobenko v. Automated Equipment Corp.*, 520 F.2d 540 (9th Cir. 1975) ........ 4

*Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257 (Cal. App. 2003) ........ 13, 15

*SDR Capital Management, Inc. v. American Intern. Specialty Lines Ins. Co.*, 320 F. Supp. 2d 1043 (S.D. Cal. 2004) ........ 4

*Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir. 1987) ........ 3

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

ii

REPLY BRIEF ISO MOTION FOR LEAVE
CASE NO. C07 0943 WHA

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Waddy v. Sears, Roebuck & Co.*, 1994 WL 392483 (N.D. Cal. 1994) ..... 5

*Wang v. Chinese Daily News Inc.*, 435 F.2d 1042, fn. 1 (C.D. Cal. 2006) ..... 4

**OTHER AUTHORITIES**

3 Moore's Federal Practice § 15.15 ..... 3

**RULES**

Fed. R. Civ. P. 11 ..... 2

Fed. R. Civ. P. 15(a) ..... 1, 2

41167979.1

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

iii

REPLY BRIEF ISO MOTION FOR LEAVE
CASE NO. C07 0943 WHA

## I. INTRODUCTION

Fed. R. Civ. P. 15(a) provides that leave to amend should be freely given when justice so requires. Defendants cannot show that leave to amend at this time should be denied, particularly given this Court's September 6, 2007 Order ("Order"), which specifically identified what Plaintiffs needed to allege in order to state a valid legal claim. Plaintiffs' motion for leave and accompanying documents more than meet these standards.

Defendants do not dispute this point, nor can they show that a single amended cause of action would be subject to a motion to dismiss. Defendants find themselves in the unenviable position of attempting to disavow contract language that the NFLPA itself wrote. Defendants promised to share licensing revenue for retired players "between the player and an escrow account for all eligible NFLPA members who have signed a group licensing authorization." But Defendants now contend that the retired player licensing was done only pursuant to "ad hoc" GLAs for which all money was paid directly to the player. Thus, Defendants render the contract language meaningless. Defendants choose to ignore [REDACTED] under numerous license agreements, asserting, despite evidence to the contrary, that it relates only to active player licensing. Plaintiffs contend that such revenue should have been shared with the retired players who signed a GLA, [REDACTED] [REDACTED]. Such sharing of the guaranteed minimum revenue makes meaningful the GLA language and would have complied with Defendants' contractual and fiduciary obligations.

Instead, Defendants have levied an entirely new attack suggesting that Plaintiffs' claims are asserted in "bad faith." This attack, based largely on the declarations of individuals who have not yet been deposed, is both procedurally and substantively wrong. Plaintiffs' good faith is supported by the agreements in question and testimony from the single witness who has been deposed in this case. Plaintiffs' allegations are based upon the plain language of the GLAs as well as the plain language of license agreement(s) with third parties [REDACTED].

Before filing the motion for leave, Plaintiffs took the deposition of Doug Allen, [REDACTED] [REDACTED], to confirm their understanding of the license agreement(s) and relied, and continue to rely, on the testimony

that Mr. Allen provided at the time of the deposition.[1] Although Defendants now attempt to explain Mr. Allen's testimony in a new declaration, Plaintiffs' reliance on such information for their interpretation of the language in the license agreement(s) is unquestionably a good faith interpretation supporting Plaintiffs' claims.

By attempting to interject new evidence from witnesses who have not been deposed, Defendants put the cart before the horse. It is *Defendants* who sought a stay of discovery in this matter. If evidence from new undeposed witnesses is to be considered, even Defendants must acknowledge that Plaintiffs are entitled to discovery from such witnesses. Thus, the very nature of Defendants' response supports and requires the filing of the complaint and the reopening of discovery.

Plaintiffs have complied with this Court's Order, which required Plaintiffs to state "how the amended complaint is different from prior complaints and the good-faith basis on which the amendments were made." The signed declaration from Plaintiffs' counsel, Ronald Katz, precisely complies with the Order's directive Plaintiffs' counsel also signed the proposed Third Amended Complaint ("TAC"), a certification that he has done the factual and legal research to comply with Fed. R. Civ. P. 11, which is all that is required at the pleading stage. Because Plaintiffs have complied with the Order and the standards set forth above, they respectfully request that their motion for leave be granted and that the TAC be deemed filed.

## II. THE STANDARDS FOR GRANTING LEAVE TO AMEND

Leave to amend a complaint shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). The strong policy permitting amendment is to be applied with "extreme liberality." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted) (reversing denial of leave to amend because, among other reasons, "plaintiffs were endeavoring in good faith to meet the heightened pleading requirements and to comply with court guidance").

In assessing whether to grant leave to amend, the Court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure

[1] The quotations from Mr. Allen that support the allegations of the TAC are set forth in the Declaration of Lewis T. LeClair, filed simultaneously with this Reply.

deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989). "Prejudice to the moving party if leave is denied [also] should be considered, even if there is substantial reason to deny leave based on the other factors." 3 Moore's Federal Practice § 15.15. Generally, this determination should be performed with all inferences in favor of granting the motion. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

Defendants argue that leave to amend should be denied based on a finding of bad faith. The standard for assessing a motion for leave based on bad faith is whether leave is being sought for an improper purpose. *See, e.g., Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (leave to amend denied where plaintiff's amended pleading sought to add a defendant merely to destroy diversity jurisdiction). Defendants do not even allege such a purpose, nor could they because Plaintiffs are explicitly complying with the Order, which is the opposite of bad faith.

Defendants also suggest that Plaintiffs' Third Amended Complaint is futile because it cannot survive a motion to dismiss. But, Defendants cannot succeed in making such an argument because they cannot show that Plaintiffs have failed to meet each of the elements for each of their claims. "A proposed amendment is futile only if 'no set of facts can be proved under the amendment that would constitute a valid claim or defense.'" *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *see also Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152, 157 (N.D. Cal. 2005). In ruling on a motion to dismiss, the Court cannot consider material outside the complaint like Defendants' declarations. *Aprin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 935 (9th Cir. 2001); *Paulsen v. CNF, Inc.*, 391 F. Supp. 2d 804, 807 (N.D. Cal. 2005); *see also Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). At best, Defendants' Opposition and declarations create genuine issues of material fact with respect to Plaintiffs' claims, which is precisely why there is litigation.

## III. DEFENDANTS MISAPPLY THE STANDARDS FOR GRANTING LEAVE TO AMEND, AND INSTEAD SEEK TO CONVERT PLAINTIFFS' MOTION INTO A MOTION FOR SUMMARY JUDGMENT

Because Defendants cannot legitimately challenge Plaintiffs' motion for leave under the standards set forth above, they instead submit a variety of evidence, including declarations of

undeposed third parties, in an effort to convert Plaintiffs' motion into a motion for summary judgment. There are several reasons why these declarations should not be considered at this stage of the litigation. First, Defendants' Opposition noticeably does not include a citation to a single case in which a court permits a defendant to oppose a motion for leave in this manner.

Second, the declarations are improper because Plaintiffs have not had the opportunity to depose the declarants on their testimony. Indeed, it is *Defendants* who sought and obtained a stay of discovery in this matter, but who now wish to bring in evidence outside the pleadings. During the discovery process, Plaintiffs intend to depose each of the declarants, many of whom seem to have ulterior motives to cooperate with Defendants. [redacted]

Third, the Declaration of Doug Allen cannot be used to contradict his deposition. Declarations such as these are typically referred to as "sham" declarations by the courts, and have long been ruled to be inadmissible. *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543-544 (9th Cir. 1975); *Wang v. Chinese Daily News Inc.*, 435 F.2d 1042, fn. 1 (C.D. Cal. 2006).

Fourth, Defendants have not argued that the relevant agreements are ambiguous; these declarations are thus irrelevant, and would remain so even if this motion were the proper vehicle for resolving Defendants' fact-specific arguments. *See, e.g., SDR Capital Management, Inc. v. American Intern. Specialty Lines Ins. Co.*, 320 F. Supp. 2d 1043, 1046 (S.D. Cal. 2004) *citing*, *Dale v. Preg*, 204 F.2d 434, 435 (9th Cir. 1953) (if a contract is "free from ambiguity, its meaning is a question of law to be determined by the court solely from its language."). As set out below, the plain language of the Adderley GLAs, third party licenses, and the PLAYERS INC license support Plaintiffs' good faith basis for their amended claims.

## IV. THE COURT SHOULD GRANT ADDERLEY LEAVE TO FILE HIS AMENDED CONTRACT CLAIM

In good faith reliance on agreements (produced by Defendants *after* Plaintiffs filed their SAC), [redacted], Adderley alleges that Defendants participated in licensing both active and retired players, but then chose not to share the guaranteed minimum revenue under such licenses with the retired players as they were required to do by the GLAs. Proposed TAC, ¶¶ 17-39. In doing so, Adderley has explicitly addressed the Court's concerns that elements were missing with the prior breach of contract claim. Order, pp. 14-18.

Defendants ignore these facts, and argue that "[a]s a matter of law, any purported ambiguity [[redacted]] is legally resolved by the undisputed understanding of the parties' to those agreements; not by a third parties' contrary 'interpretation'". Opposition, p. 7. Defendants have grossly misstated the law and, in fact, offer no authority that their untested assertions as to the meaning of certain contract provisions are controlling, particularly before Plaintiffs have had any opportunity for full discovery. Defendants improperly cite the unpublished *Matshushita Elec. Corp v. Loral Corp.*, 36 F. 3d 1115 (Fed. Cir. 1994) (table),and the completely inapt *Waddy v. Sears, Roebuck & Co.*, 1994 WL 392483 (N.D. Cal. 1994), both of which are summary judgment cases with a much fuller record than the case at bar. *See, e.g. Waddy*, 1994 WL 392483 (summary judgment holding that "the understandings of other employees as to the nature of *their* employments . . . are irrelevant to the question of whether Tucker himself had an implied for-cause employment contract.").

### A. The Plain Language of the GLA and Third Party Licenses Supports Adderley's Claim for a Share of the Guaranteed Minimum Revenue

The crux of Adderley's contract claim is that the GLA he signed entitles him to share in the guaranteed minimum revenue payable under PLAYERS INC's licensing agreements with third parties – [redacted]. Proposed TAC, ¶¶ 17-39.

First, Adderley alleges that his GLA provided that " . . . money generated by *such licensing of retired player group rights* will be divided between the player and an escrow account for all eligible NFLPA members who have signed a group licensing authorization (*Id.*, ¶¶ 17-19).

Second, Adderley alleges that, [redacted] [2] [redacted]

[redacted]

[redacted]

[redacted]

Third, Adderley alleges that Defendants breached Adderley's GLA by failing to divide this guaranteed minimum licensing revenue to retired players (*Id.*, ¶¶ 29-35).

---

[2] [redacted]

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

6

REPLY BRIEF ISO MOTION FOR LEAVE
CASE NO. C07 0943 WHA

Fourth, [redacted].

Adderley made these allegations in good faith reliance on the plain language of the GLA, third party licenses and NFLPA-PLAYERS INC Agreements (*all* of which Defendants produced after the SAC was filed), and explicitly addressed the Court's concerns with the breach of contract claim as previously alleged. Proposed TAC, ¶¶ 17-39, 94-99; *see also* Order, pp. 14-18. On this basis alone, the Court should grant Adderley's motion for leave to amend.

**B. Doug Allen's Testimony Confirms Adderley's Good Faith Amendment**

Adderley also referenced deposition testimony from Doug Allen, not only to confirm the salient points alleged above, but to further support his good faith basis for filing the TAC. Proposed TAC, ¶¶ 22, 24, 33-34. Defendants attempt to explain away Allen's testimony, but their efforts in no way demonstrate that Adderley filed his amended claim in "bad faith". In fact, as detailed below, Defendants' arguments largely mischaracterize Allen's testimony.

**1. Allen confirmed [redacted]**

[redacted]

[redacted]

[redacted]

[redacted]





[3]

[4]

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

8

REPLY BRIEF ISO MOTION FOR LEAVE
CASE NO. C07 0943 WHA



[redacted]

**2. Allen Confirmed** [redacted]

[redacted]

[redacted]

[redacted]

---

5 [redacted]

3. **Allen Confirmed** [redacted]

[redacted]

[redacted]

[redacted] Adderley's incentive to enter into the GLA was Defendants' promise of a share of royalties. *See, e.g.*, Proposed TAC, Exs. B and C. Under the circumstances, Defendants cannot legitimately question Adderley's "good faith" basis for alleging a breach on the basis that royalties were not shared as promised.

[redacted] Contrary to Defendants' arguments, [redacted]

[redacted]

Furthermore, [redacted][6]

4. **Ad Hoc Payments Are Separate from, And Irrelevant To, Whether Adderley Is Entitled To A Share of Guaranteed Minimum Revenue**

Adderley's receipt of additional payments for specific deals is irrelevant to whether retired players who signed GLAs are entitled to a portion of the guaranteed minimum revenue. [redacted] Defendants also ignore that additional payments made to Adderley were, at least in part, for specific services such as signing cards.

---

[6] [redacted]

Defendants argue it would be nonsensical to require retirees to enter into *ad hoc* agreements if they had already acquired their rights via the GLAs. Opposition, pp. 8-9. [redacted][7] These additional payments in no way undercut (nor are they even relevant to) Adderley's claim to a share of the guaranteed minimum revenue. They are clearly *ad hoc* agreements for being singled out[8]

At any rate, these *ad hoc* payments for the individual use of a player are independent from – *i.e.*, in "addition to" – the granting of rights in Defendants' third party licenses, [redacted]. The guaranteed minimum payments under such licenses are paid *without regard to whether any individual's images or rights are used.* Proposed TAC, Ex. G, ¶ 6(C).

## V. THE COURT SHOULD ALLOW ADDERLEY LEAVE TO FILE HIS AMENDED FIDUCIARY DUTY CLAIM

Adderley's fiduciary duty theory does not "defy logic" simply because it contradicts Defendants' self-serving declarations and arguments. Opposition, pp. 15-16. By the same token, even if it were true that Defendants' ad hoc programs had generated *some* revenue for *some* retired players that fact would not, as a matter of law, immunize Defendants from Adderley's fiduciary duty claims based on the GLAs. *Id.*

### A. Adderley alleges relationships giving rise to a fiduciary duty

Defendants cannot dispute that Adderley has addressed all of the Court's concerns regarding damages and detrimental reliance in connection with his agency by estoppel theory,

[7] [redacted]

[8] PLAYERS INC website clearly provides for both GLA's *and* ad hoc agreements if a player is "singled out" in a particular game: "Any players who are singled out to promote licensed products are paid *additional fees* for being highlighted on product packaging, point of sale, print ads or other collateral material, for autographs, appearances, product endorsements and commercials." TAC, Ex. E (emphasis added). Even a cursory review of EA webpage for the NFL Street 2 program (a copy of which is attached as Ex. B to the LeClair Decl.) confirms that both [redacted] have been "singled out", and thus according to Defendants own policies, Defendants were required to procure *ad hoc* agreements with them, in addition to the GLAs they had already signed.

and, for reasons detailed above, their "bad faith" challenges to this theory are ineffective. Proposed TAC, ¶¶ 20-28, 40-56; *see also* Order, pp. 21-22.

Defendants attack Adderley's direct agency theory on the grounds that he cannot, in good faith, allege that "he controlled Defendants' licensing activities all along, but didn't know it". Opposition, p. 17. Defendants offer no authority for resolving the question of control at this pleading stage. *See, e.g., id.*, n. 17. Two of their three cases do not concern California law, and none of them denied plaintiff leave to file an amended agency claim. *See, e.g., Liimatta v. V & H Truck, Inc.*, 2005 WL 2105497, *2 (D. Minn. 2005); *Abromowitz v. Pipher,* 2006 WL 4722437, *220 (Pa. Comm. Pl. 2006); *Bowoto v. Chevron Corp.*, Slip. Op. 2007 WL 2349336, *16-17 (N.D. Cal. 2007) (unlike here, court addressed plaintiff's agency claim in the context of a summary judgment motion; in any event, court concluded that disputed issues of fact precluded summary judgment). Defendants also ignore that this question will ultimately turn on Adderley's *right* to control – *i.e.,* his ability to withdraw his GLA or opt out of signing another – not his *actual exercise* of control or supervision over Defendants. *See, e.g., Michelson v. Hamada,* 29 Cal. App. 4th 1566, 1580 (Cal. App. 1994) (the power to terminate the services of the agent gives principle the means of control); *see also Malloy v. Fong,* 37 Cal. 2d 356, 370 (Cal. 1951) ("[it] is not essential that the right of control be exercised or that there be actual supervision . . . ").

Only *after* filing his SAC, Adderley discovered Defendants' concession that they represented all retired NFLPA players (including those who had signed GLAs), and that Defendants had licensed retired players' rights pursuant to the GLAs. In light of these new facts, Adderley has a good faith basis for alleging their legal significance.

Finally, Defendants' opposition to Adderley's "bad faith" confidential relationship theory ignores that his physical disability is merely one factor giving rise to that relationship in this case. *See, e.g.,* Opposition, p. 18; *see also* Order, p. 19 (citing *Richelle L. v. Roman Catholic Archbishop,* 106 Cal. App. 4th 257, 272 (Cal. App. 2003)). Consistent with the factors in *Richelle L.*, Adderley has alleged a confidential relationship based on: physical disability; economic disparity; Defendants' complete monopoly over information relevant to retired players' licensing revenues; Defendants' solicited execution of GLAs from retired players;

Defendants' ability to bar retired players who had signed GLAs from pursuing individual deals (the effective "exclusivity" of the GLAs); and Defendants' ability to exploit the vulnerability of retired players by failing to provide them with relevant information about the operation of the GLAs or receipt of licensing revenue. Proposed TAC, ¶¶ 40-44, 50-51, 53-55.

Defendants' trivialization of these Adderley's allegations of exclusivity is also misguided. *See, e.g.*, Opposition, pp. 16, 18-20. Defendants argue that *certain* retired players have licensed their rights to Take Two Interactive, an entity that has no licensing relationship with Defendants. *Id.*, p. 16. [redacted] Defendants' opposition to the exclusivity argument would not justify summary judgment, let alone denial of Adderley's leave to amend.

## VI. THE COURT SHOULD ALLOW PARRISH LEAVE TO FILE HIS AMENDED FIDUCIARY DUTY CLAIM

Absent any authority, Defendants also ask the Court to deny Parrish leave to file his amended fiduciary duty claim based on his purported "bad faith" in bringing it. Opposition, pp. 20-25. As detailed above, whether Defendants' self-serving declarations contradict Parrish's claims, or whether Parrish can prevail, is irrelevant to whether he is entitled to amend.

Defendants argue that Parrish has no "good faith" basis for alleging that he was entitled to any information relating to retired player licensing, has not identified information withheld from him, and has not identified a relationship giving rise to a fiduciary duty. Opposition, pp. 21-25. To the contrary, Parrish has identified the information allegedly withheld; namely, accurate and complete information relevant to retirement benefits, or any other benefits to which he might be entitled, including information regarding retired player licensing rights. Proposed TAC, ¶¶ 79-80. Indeed, Defendants concede as much, arguing instead that Parrish was not entitled to receive that information. Opposition, p. 21. Whether Parrish was entitled to this identified information is a disputed issue of fact not properly resolved on this motion.

Defendants also dispute the impact of Upshaw's admission that he "does not work for" retired players. Opposition, pp. 22-23. That, however, is a question of fact irrelevant to this motion. Proposed TAC, ¶¶ 74-77.

Finally, Parrish has properly alleged a fiduciary relationship. On their face, Parrish's allegations support an implied agency theory by virtue of Defendants' recent concession that they represented all retired NFLPA players, as well as Parrish's alleged reliance on Defendants' solicitation of retirees and the terms and provisions of the NFLPA Constitution. Proposed TAC, ¶¶ 66-77. Defendants ignore Parrish's allegations regarding the Constitution, and their post-hoc revision of Allen's admissions is both improper and irrelevant. Opposition, p. 24, n. 25.

Parrish's allegations also support a confidential relationship. Proposed TAC, ¶¶ 57-65, 71-77; *see also* Order, p. 19 (citing *Richelle L.*, 106 Cal. App. 4th at 272). Parrish has alleged not only that he suffers from physical disabilities and/or is vulnerable to the economic size of Defendants, but also that Defendants solicited his membership in the NFLPA, and that "because retired players enjoy no voting rights in the NFLPA pursuant to their retired status, nor do they receive information from PLAYERS INC regarding commercial or other opportunities pursued on their behalf, they are particularly vulnerable to the good faith dealings of the NFLPA and PLAYERS INC." *Id.* This vulnerability is exacerbated by Upshaw's admission that he does not work for these retired players. *Id.*, ¶¶ 74-75.

## VII. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant this motion.

Respectfully submitted,

Dated: October 18, 2007

/s/Ronald S. Katz

Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
Noel S. Cohen (SBN 219645)
MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

*Attorneys for Plaintiffs*

Lewis T. LeClair, Esq.
Jill Adler, Esq.
McKOOL SMITH, P.C.
300 Crescent Court
Suite 1500
Dallas, TX 75201
214-978-4984
214-978-4044 (fax)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

16

REPLY BRIEF ISO MOTION FOR LEAVE
CASE NO. C07 0943 WHA