1   MANATT, PHELPS & PHILLIPS, LLP
    RONALD S. KATZ (Bar No. CA 085713)
2   E-mail: rkatz@manatt.com
    RYAN S. HILBERT (California Bar No. 210549)
3   E-mail: rhilbert@manatt.com
    NOEL S. COHEN (California Bar No. 219645)
4   E-mail: ncohen@manatt.com
    1001 Page Mill Road, Building 2
5   Palo Alto, CA 94304-1006
    Telephone: (650) 812-1300
6   Facsimile: (650) 213-0260

7   McKOOL SMITH, P.C.
    LEWIS T. LECLAIR (Bar No. CA 077136)
8   E-mail: lleclair@mckoolsmith
    300 Crescent Court, Suite 1500
9   Dallas, TX 75201
    Telephone: (214) 978-4000
10  Facsimile: (214) 978-4044

11  Attorneys for Plaintiffs

12

13                  UNITED STATES DISTRICT COURT

14                      NORTHERN DISTRICT

15                   SAN FRANCISCO DIVISION

16

17  BERNARD PAUL PARRISH, HERBERT          CIVIL ACTION NO. C07 0943 WHA
    ANTHONY ADDERLEY, and WALTER
18  ROBERTS, III on behalf of themselves and
    all others similarly situated,
19                                         PLAINTIFFS' NOTICE OF MOTION AND
              Plaintiffs                    MOTION FOR CLASS CERTIFICATION
20                                          AND BRIEF IN SUPPORT THEREOF
    vs.
21                                         Date:    April 24, 2008
    NATIONAL FOOTBALL LEAGUE               Time:    8:00 a.m.
22  PLAYERS ASSOCIATION, a Virginia        Place:   Courtroom 9, 19th Floor
    corporation, and NATIONAL FOOTBALL     Judge:   Hon. William H. Alsup
23  LEAGUE PLAYERS INCORPORATED
    d/b/a PLAYERS INC, a Virginia
24  corporation,                           FILED UNDER SEAL

25            Defendants.

26

27              ***PUBLIC VERSION***

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO
20198340.1                              MOTION FOR CLASS CERTIFICATION AND
                                        BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

                                        Dockets.Justia.com

1  TO DEFENDANTS NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION

2  ("NFLPA") AND NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a

3  PLAYERS INC ("PLAYERS INC") (collectively, "Defendants") AND THEIR ATTORNEYS

4  OF RECORD:

5      PLEASE TAKE NOTICE that on Thursday, April 24, 2008 at 8:00 a.m., or as soon

6  thereafter as the matter may be heard in the above-referenced Court, Plaintiffs Bernard Parrish

7  and Herbert Adderley (collectively, "Plaintiffs"), respectively, will move the Court to certify as a

8  class action pursuant to Federal Rule of Civil Procedure 23 the claims asserted by two groups of

9  potential claimants: (i) retired NFL players who paid dues during the statute of limitations period

10  to join the NFL Players Association as a retired member; and (ii) retired NFL players who at any

11  time executed a particular form of licensing agreement in effect during the statute of limitations

12  period.

13      This Motion is based on the accompanying Memorandum of Points and Authorities, the

14  accompanying declarations, the pleadings in this matter, and on such further evidence and

15  argument as may be presented at the hearing on this motion.

16  Dated:   March 14, 2008        MANATT, PHELPS & PHILLIPS, LLP

17                       By: /s/Ronald S. Katz
                          Ronald S. Katz (SBN 085713)

18                            Ryan S. Hilbert (SBN 210549)
                          Noel S. Cohen (SBN 219645)

19                       MANATT, PHELPS & PHILLIPS, LLP
                     1001 Page Mill Road, Building 2

20                       Palo Alto, CA  94304-1006
                     Telephone:   (650) 812-1300

21                       Facsimile:   (650) 213-0260

22                       McKOOL SMITH, P.C.
                     Lewis T. LeClair, Esq.

23                       Sam Baxter
                     Jill Adler Naylor

24                       300 Crescent Court
                     Suite 1500

25                       Dallas, TX 75201
                     214-978-4984

26                       214-978-4044 (fax)

27                       *Attorneys for Plaintiffs*

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

**TABLE OF CONTENTS**

Page

I.    STATEMENT OF ISSUES ........................................................................ 1

II.   INTRODUCTION .................................................................................... 1

III.  CLASS DEFINITIONS ............................................................................ 3

      A.   The GLA Class............................................................................ 3

      B.   The Retired Member Class ......................................................... 3

IV.   BACKGROUND FACTS ......................................................................... 4

      A.   Overview..................................................................................... 4

      B.   Mr. Adderley Entered Into Several GLAs with the NFLPA................... 4

      C.   Mr. Parrish Joined the NFLPA as a Retired Member ........................... 4

      D.   NFLPA Solicits Retired Players................................................... 5

      E.   Defendants Established Retired Player Group Licensing Programs....................... 5

      F.   The GLAs Provide for Sharing Licensing Revenues with Retired Players
           and the NFLPA Itself ███████████████████████
           █████████ ............................................................................ 7

      G.   Third Party Licenses Incorporated Retired Players' Group Rights ........................ 8

V.    CLASS CLAIMS .................................................................................... 10

      A.   Defendants Breached Their Contract With, And Fiduciary Duties To, The
           GLA Class By Failing To Share Licensing Revenues With Them....................... 10

      B.   Defendants Breached Their Fiduciary Duties To The Retired Member
           Class ......................................................................................... 13

VI.   THIS COURT SHOULD CERTIFY THE CLAIMS OF THE GLA CLASS AND
      RETIRED MEMBER CLASS ................................................................ 13

      A.   Plaintiffs Meet the Numerosity Requirement ....................................... 14

           1.   The GLA Class has more than 3000 members located throughout
                the U.S........................................................................... 14

           2.   The Retired Members Class has over 3,500 members located
                throughout the U.S .......................................................... 15

      B.   Plaintiffs Meet the Commonality Requirement ..................................... 15

           1.   The facts and law are common to the claims of all GLA Class
                members ........................................................................ 15

           2.   The facts and law are common to the claims of all Retired Member
                Class members ................................................................ 17

      C.   Plaintiffs' Claims Are Typical of the Respective Class Members' Claims.......... 18

           1.   Mr. Adderley's claims are typical of those of the GLA Class................. 18

           2.   Mr. Parrish's claims are typical of those of the Retired Member
                Class ............................................................................. 20

      D.   Plaintiffs Meet the Adequacy Requirement ......................................... 21

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1. The law firms are qualified to act as class counsel .................................... 21

2. The named representatives have no conflict of interest or antagonism with other class members ........................................ 23

E. Plaintiffs Meet The Requirements Of 23(b)(3) ..................................... 24

1. Common questions predominate ........................................... 25

2. A class action is the superior method of adjudication .............................. 27

3. The four factors noted in Rule 23(b)(3) favor certification ...................... 27

VII. CONCLUSION ...................................................................................... 28

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

# TABLE OF AUTHORITIES

Page

## CASES

*Amchem Prod. v. Windsor,*
   521 U.S. 591 (1997) ..................................................................... 24, 25, 27

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir. 1975) ............................................................. 14

*Blake v. Arnett,*
   663 F.2d 906 (9th Cir.1981) .............................................................. 14

*Breeden v. Benchmark Lending Group, Inc.,*
   229 F.R.D. 623 (N.D. Cal. 2005) .............................................. 14, 15, 25

*Browning v. Yahoo! Inc.,*
   2006 WL 3826714 (N.D. Cal. 2006) .................................................... 22

*Crown Cork & Seal Co. v. Parker,*
   462 U.S. 345 (1983) ......................................................................... 1

*Deposit Guar. Nat'l Bank v. Roper,*
   445 U.S. 326 (1980) ......................................................................... 1

*Dukes v. Wal-Mart, Inc.,*
   509 F.3d 1168 (9th Cir. 2007) ........................................................... 18

*Dupler v. Costco Wholesale Corp.,*
   2008 WL 321776 (E.D.N.Y.) ............................................................ 16

*Ericsson GE Mobile Communs., Inc. v. Motorola Communs. & Elecs., Inc.,*
   120 F.3d 216 (11th Cir. 1997) ........................................................... 26

*Flanagan v. Allstate Ins. Co.,*
   242 F.R.D. 421 (N.D. Ill. 2007) ......................................................... 16

*Gen. Tel. Co. of the NW, Inc. v. EEOC,*
   446 U.S. 318 (1980) ....................................................................... 14

*General Tel. Co. of the S.W. v. Falcon,*
   457 U.S. 157 (1982) .................................................................... 15, 18

*Haley v. Medtronic, Inc.,*
   169 F.R.D. 643 (C.D. Cal. 1996) ....................................................... 19

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1988) ................................................. 15, 17, 18, 25

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1985) ............................................................. 18

*Harmsen v. Smith,*
   693 F.2d 932 (9th Cir. 1982) ............................................................. 26

*Haroco, Inc. v. Am. Nat'l Bank & Trust Co.,*
   121 F.R.D. 664 (N.D.Ill. 1988) .......................................................... 16

*Hunt v. Check Recovery Sys., Inc.,*
   241 F.R.D. 505 (N.D. Cal. 2007) ....................................................... 21

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

iii

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

*In re Cavanaugh,*
   306 F.3d 726 (9th Cir. 2002)................................................................. 21

*In re Commc'ns Sys., Inc.,*
   2003 WL 21383824 (N.D. Cal. 2003) ..................................................... 24

*In re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000).................................................................. 24

*In re Tri-State Crematory Litig.,*
   215 F.R.D. 660 (N.D. Ga. 2003) ............................................................ 16

*In re Unioil Securities Litig.,*
   107 F.R.D. 615 (C.D. Cal. 1985) ............................................................ 14

*In re Universal Serv. Fund Tel. Billing Practices Litig.,*
   219 F.R.D. 661 (D.Kan. 2004) ............................................................... 16

*In Re Wells Fargo Home Mortgage Overtime Pay Litigation,*
   527 F. Supp. 2d. 1053 (N.D. Cal. 2007) ................................................. 14

*In re Worlds of Wonder Sec. Litig.,*
   1990 WL 61951 (N.D. Cal.) .................................................................... 25

*Indianer v. Franklin Life Ins. Co.,*
   113 F.R.D. 595 (S.D. Fla. 1986) ............................................................. 26

*Jennings Oil Co., Inc. v. Mobil Oil Corp.,*
   80 F.R.D. 124 (S.D.N.Y. 1978) .............................................................. 26

*Jones v. Am. Gen. Life & Acc. Ins. Co.,*
   213 F.R.D. 689 (S.D. Ga. 2002)............................................................. 16

*Klay v. Humana, Inc.,*
   382 F.3d 1241 (11th Cir. 2004)......................................................... 16, 26

*Kleiner v. First Nat'l Bank of Atlanta,*
   97 F.R.D. 683 (N.D. Ga. 1983) .............................................................. 26

*Leszczynski v. Allianz Ins.,*
   176 F.R.D. 659 (S.D. Fla. 1997) ............................................................ 26

*Lewis v. NFL,*
   146 F.R.D. 5 (D.D.C. 1992) ................................................................... 24

*Molski v. Gleich,*
   318 F.3d 937 (9th Cir. 2003) ................................................................. 21

*Morton v. Valley Farm Transp., Inc.,*
   2007 WL 1113999 (N.D. Cal. 2007)....................................................... 18

*Nat'l Fed'n of Blind v. Target Corp.,*
   2007 WL 2846462 (N.D. Cal.)................................................................ 18

*Negrete v. Allianz Life Ins. Co. of N. Am.,*
   238 F.R.D. 482 (C.D. Cal. 2006) ........................................................... 20

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985)....................................................................... 1, 26, 27

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

*Robert v. Heim,*
670 F. Supp. 1466 (N.D. Cal. 1987) .............................................................. 25, 27

*Schwartz v. Harp,*
108 F.R.D. 279 (C.D. Cal. 1985) .......................................................................... 18

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003).................................................................................. 21

*Steinberg v. Nationwide Mut. Ins. Co.,*
224 F.R.D. 67 (E.D.N.Y. 2004) ............................................................................ 16

*Surowitz v. Hilton Hotels,*
383 U.S. 363 (1966) ............................................................................................... 24

*U.S. Parole Comm'n v. Geraghty,*
445 U.S. 388 (1980) ................................................................................................. 1

*Yamner v. Boich,*
1994 WL 514035 (N.D. Cal.).................................................................................. 24

## OTHER AUTHORITIES

1 *Newberg on Class Actions* § 3:6 (4th ed.) ........................................................ 14

1 *Newberg on Class Actions* § 22:26 (4th ed.) ...................................................... 19

3 *Newberg on Class Actions* § 7:24 (4th ed.) ........................................................ 21

8 *Newberg on Class Actions* § 24:16 (4th ed.) ................................................ 14, 15

7A Wright, Miller & Kane *Federal Practice and Procedure: Civil* 3d § 1762
(2005) .................................................................................................................... 14

## RULES

Fed. R. Civ. P. 23 ........................................................................................................ 1

Fed. R. Civ. P. 23(a)............................................................................. 1, 2, 13, 14, 24

Fed. R. Civ. P. 23(a)(1)........................................................................................ 2, 14

Fed. R. Civ. P. 23(a)(2).................................................................................. 2, 15, 17

Fed. R. Civ. P. 23(a)(3).............................................................................................. 2

Fed. R. Civ. P. 23(a)(4)................................................................................ 2, 21, 24

Fed. R. Civ. P. 23(b)(1).......................................................................................... 24

Fed. R. Civ. P. 23(b)(2).......................................................................................... 24

Fed. R. Civ. P. 23(b)(3)........................................................................ 2, 24, 25, 27, 28

Fed. R. Civ. P. 23(g)(1)(A)..................................................................................... 21

Fed. R. Civ. P. 23(g)(1)(B)..................................................................................... 21

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

# I.  STATEMENT OF ISSUES

The sole issue presented in this motion is whether to certify as a class action pursuant to Federal Rule of Civil Procedure 23 the claims asserted by the named plaintiffs herein, Herbert Adderley and Bernard Parrish ("Plaintiffs"), on behalf of, respectively, two groups of potential claimants: (i) retired NFL players who at any time executed a particular form of licensing agreement in effect during the statute of limitations period; and (ii) retired NFL players who paid dues during the statute of limitations period to join the NFL Players Association as a retired member.

# II.  INTRODUCTION

This case is an ideal candidate for class certification.[1]  Plaintiffs, two former NFL players, have brought breach of contract and breach of fiduciary duty claims against the National Football League Players Association ("NFLPA") and National Football League Players Incorporated ("PLAYERS INC"), the commercial and marketing arm of the NFLPA.  Consistent with the requirements set forth in Rule 23(a), Plaintiffs adequately represent two classes of thousands of similarly situated retired NFL players, and assert claims typical of those held by these class members, all of which share common, if not identical, issues of fact and law.

Specifically, Mr. Adderley's claims, on behalf of a class of retired NFL players who signed group licensing agreements ("GLAs") with Defendants (the "GLA Class"), satisfy each element of Rule 23(a).  The GLA Class consists of over 3000 members whose GLAs share substantially similar language.  *See* Declaration of Jill Naylor in Support of Plaintiffs' Motion for Class Certification ("Naylor Decl."), ¶ 25, Ex.Z.  Mr. Adderley's claims are typical of those

---

[1]  Class action suits serve several purposes – they promote judicial economy and efficiency by avoiding multiple adjudications of the same issues, they afford aggrieved persons a remedy when it is not economically feasible to obtain relief through the traditional framework of multiple individual actions, and they enhance access to the courts by spreading litigation costs among numerous litigants with similar claims. *See, e.g., Crown Cork & Seal Co. v. Parker,* 462 U.S. 345, 349 (1983); *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985); *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 402-403 (1980).  From the defendant's perspective, a class action also provides a single proceeding in which to determine the merits of similar claims and may protect defendants from repeated and potentially inconsistent adjudications. *Id.*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

1

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

possessed by other GLA Class members, all of which share common issues of fact and law, including, but not limited to: (i) whether the GLAs entitle the GLA Class to an equal share of guaranteed minimum group licensing revenues paid without regard to specific use of player images (the "Equal Share Royalty"); (ii) whether and to what extent Defendants have licensed retired players' group rights to third parties; (iii) whether Defendants breached the GLAs by failing to pay an Equal Share Royalty to the GLA Class and/or failing to set up any escrow account for them; and (iv) whether Defendants breached their fiduciary duties to the GLA Class by arbitrarily ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ Fed. R. Civ. P. 23(a)(1)-(3).

Similarly, Mr. Parrish's claim, on behalf of a class of retired football players who joined the NFLPA (the "Retired Members Class"), satisfies each element of Rule 23(a). The Retired Members Class consists of over three thousand members, all of whom paid yearly dues to the NFLPA. Mr. Parrish's breach of fiduciary duty claim is typical, and all claims held by the Retired Members Class share common issues of fact and law, including, but not limited to: (i) whether Defendants owe their retired members a fiduciary duty; (ii) whether Defendants breached that duty by disavowing retired members, failing to provide them with information regarding benefits to which they might be entitled, and/or committing themselves to groups with conflicting interests; and (iii) whether the Retired Member Class is entitled to a refund of annual dues. Fed. R. Civ. P. 23(a)(1)-(3).

Both Plaintiffs have retained qualified class counsel, have no animosity with other class members, and have vigorously pursued claims on behalf of the respective classes, thus satisfying the adequacy requirement of Rule 23(a)(4).

Both Plaintiffs have also satisfied the requirements of Rule 23(b)(3). Common, if not identical, questions of fact and law dominate their claims. Moreover, a class action is the superior method for adjudicating these claims because, at a minimum, the individual damages suffered by each class member are relatively small, thus making the expense and burden of individual

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1    litigation economically and procedurally impracticable. Accordingly, certification should be

2    granted.

3    **III.   CLASS DEFINITIONS**

4          Plaintiffs seek to represent two separate classes against Defendants: Plaintiff Adderley

5    will represent the GLA Class and Plaintiff Parrish will represent the Retired Member Class.

6          **A.   The GLA Class**

7          Herbert Adderley is a Hall of Fame NFL cornerback who played for the Green Bay

8    Packers and the Dallas Cowboys for over a decade. Third Amended Complaint ("TAC"), ¶ 5.

9    Mr. Adderley brings claims of breach of contract and breach of fiduciary duty on behalf of a

10   nationwide class seeking damages and an accounting. This class – the GLA Class – is defined as

11   all retired NFL players who at any time executed a GLA that was in effect during the period of

12   the statute of limitations and which contain language substantially similar to the following:

13          [T]he moneys generated by such licensing of retired player group rights will be
            divided between the player and an escrow account for all eligible NFLPA
14          members who have signed a group licensing authorization form.

15   *See* Naylor Decl., Ex. A (Adderley 2002 GLA).

16          **B.   The Retired Member Class**

17          Bernard Parrish is a former Cleveland Brown defensive back. TAC, ¶ 4. Since his

18   retirement from the NFL, he has devoted considerable time to advocating for retired players'

19   rights, and was a pioneer of the NFLPA. Naylor Decl., Ex. D (November 26, 2007 Bill Rhoden

20   article). He has recently been endorsed by a *New York Times* sports columnist as a good

21   candidate for Executive Director of the NFLPA. *Id.* Mr. Parrish brings a claim of breach of

22   fiduciary duty on behalf of a nationwide class seeking damages. Mr. Parrish's class – the Retired

23   Member Class – is defined as those retired NFL players who joined the NFLPA as retired

24   members and paid dues within the statute of limitations but who, according to the records of the

25   NFLPA, did not sign a GLA.

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

3

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

## IV.   BACKGROUND FACTS

### A.   Overview

These classes grow out of the fact that the NFLPA has tried to benefit itself by obtaining retired members' dues and claiming to represent both active and retired players in licensing. As the foremost expert in sports unions, Marvin Miller, states in his declaration, in order to vindicate the pre-eminent union value of solidarity, ". . . professional sports unions that include both active and retired players have a duty to treat all members equally and may not favor one group of members over another group of members." Declaration of Marvin Miller in Support of Plaintiffs' Motion for Class Certification ("Miller Decl."), ¶ 8. Further, ". . . once the NFLPA invited retired players to participate in its group licensing program alongside active players, it was incumbent upon the NFLPA to treat all of the participants in the group licensing program equally in terms of opportunities, information, revenues and any other aspect of group licensing." *Id.* ¶ 10.

### B.   Mr. Adderley Entered Into Several GLAs with the NFLPA

Mr. Adderley entered into at least two GLAs with the NFLPA during the relevant statute of limitations (the "Adderley GLAs"). He executed the first GLA in 2001, and that GLA expired on December 31, 2003 (within the statute of limitations period for this action). Naylor Decl., Ex. B (Adderley 2001 GLA). On November 22, 2002, Mr. Adderley signed another GLA that was in effect until December 31, 2005. *Id.*, Ex. A (Adderley 2002 GLA). The Adderley GLAs contain substantially identical language which grants the NFLPA the "right to use [Adderley's] name, signature, facsimile, voice, picture, photograph, likeness and/or biographical information (collectively "image") in the NFLPA Retired Player Group Licensing Program." *Id.*, ¶ 2. As noted above, the GLAs promise that ". . . the moneys generated by such licensing of retired player group rights will be divided between the player and an escrow account for all eligible NFLPA members who have signed a group licensing authorization form." *Id.* ¶ 5.

### C.   Mr. Parrish Joined the NFLPA as a Retired Member

In 2005, Mr. Parrish paid $50 to the NFLPA to become a retired player member of that organization. Naylor Decl., Ex. E (Kessler Letter). Mr. Parrrish's membership expired in April

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

4

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1   2006. *Id.* According to Defendants' records, Mr. Parrish never entered into a GLA. Naylor

2   Decl., Ex. Z (NFLPA's Response to Interrogatory No. 1, ¶ 25).

3         **D.     NFLPA Solicits Retired Players**

4         The NFLPA solicits retired NFL players like Mr. Parrish to become members of the

5   NFLPA and purports to provide "extensive services and benefits" to such players in exchange for

6   annual dues. Naylor Decl., Ex. F (2003 Letter from Doug Allen to NFLPA); Ex. G (Deposition

7   of Gene Upshaw ("Upshaw Depo.")) at 70:24 – 71:5. Indeed, the NFLPA's Constitution

8   recognizes that "retired players still have a stake in the actions of the NFLPA" and provides

9   retired members with the right to "receive NFLPA publications . . . and other information which

10   may affect [their] retirement benefits or other benefits [they] may be entitled to as an NFL

11   player." Naylor Decl., Ex. H (NFLPA Constitution, Art. II, ¶ 6). In short, the NFLPA promised

12   to represent retired players members like Mr. Parrish and to provide them with information and

13   further opportunities through their membership. Naylor Decl., Ex. G (Upshaw Depo.) at 63:1-7.

14         The NFLPA has enjoyed benefits from its relationship with Mr. Parrish and other

15   members of the Retired Member Class. In addition to the collection of annual dues, Defendants

16   benefit by having access to those dues-paying retired members for purposes of pursuing

17   commercial and marketing opportunities with existing and potential NFL sponsors and

18   PLAYERS INC licensees. Naylor Decl., Ex. I (Deposition of Doug Allen ("Allen Depo.")) at

19   36:19-37; 58:13 – 15; 59:18-23.

20         **E.     Defendants Established Retired Player Group Licensing Programs**

21         The NFLPA also solicits retired players such as Mr. Adderley to enter into GLAs. As

22   noted in the 2004-2006 NFLPA Retired Members Directory:

23         PLAYERS INC, the for-profit licensing company of the NFL Players Association,
          is constantly working to develop retired players programs. ***The NFLPA Retired***

24         ***Players Department has obtained group licensing assignment agreements***
          ***(GLAs) from more than 2,900 retired NFL players, and is in the process of***

25         ***building up our list*** so that PLAYERS INC can provide more opportunities to
          retirees.

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

5

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

Naylor Decl., Ex. J, p. 7 (emphasis added).[2] Defendants define their group licensing programs as "programs in which a licensee utilizes a total of six (6) or more *present or former* NFL player images in conjunction with or on products that are sold at retail or used as promotional or premium items." Naylor Decl., Exs. A and B (Adderley GLAs, ¶ 2) (emphasis added).

Once a retired player signs a GLA, the NFLPA assigns the rights contained in that GLA to PLAYERS INC. Naylor Decl., Ex. I (Allen Depo.) at 49:7 – 50:16; 105:23 – 107:11; *see also id.*, Ex. K (NFLPA – PLAYERS INC Agreement, ¶ 1(A)



Ex. L (NFLPA's Response to Request for Admissions No. 8).

Ex. G (Upshaw Depo.) at 20:18-23 ("A GLA is a licensing agreement or assignment that the retired players grant us the right to represent them in group licensing.").



---

[2] No GLA was negotiated. It is undisputed that the GLAs were offered to the retired players on a take-it-or-leave-it basis. Of the over 3000 signed GLA forms produced by Defendants, none diverge from the form language drafted by the NFLPA. Naylor Decl. ¶ 25.

[3]

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

6

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

## F. The GLAs Provide for Sharing Licensing Revenues with Retired Players and the NFLPA Itself Implemented the Equal Share Royalty Payment from such Revenue

The Adderley GLAs provide, in critical part, that each player will share in the licensing revenue of group rights:

> [T]he moneys generated by such licensing of retired player group rights will be divided between the player and an escrow account for all eligible NFLPA members who have signed a group licensing authorization form.

Naylor Decl., Exs. A and B, ¶ 5. Stated differently, the GLAs signed by Mr. Adderley and other members of the GLA Class promised a share of revenue derived from revenues PLAYERS INC received from third-party licensees. *Id.*[4]

Defendants certainly understood what was required under this GLA – the shared revenue was to be distributed in the form of an Equal Share Royalty.



Naylor Decl., Ex. K, § 4(B); *see also id.*, Ex. I (Allen Depo.) at 133:19 – 134:3. Defendants also

---

[4] In 2005, Defendants substantively changed the language of the retired player GLA, eliminating the escrow and royalty language, and providing instead that "[i]n consideration for this assignment of right, the NFLPA agrees to use the revenues it receives from group licensing programs to support the objectives as set forth in the By-laws of the NFLPA. The NFLPA further agrees to use its best efforts to promote the use of NFL player images in group licensing programs, to provide group licensing opportunities to all NFL players and to ensure that no entity engages in a group licensing program without first obtaining a license from the NFLPA." Naylor Decl., Ex. S (2006 retired player GLA).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

7

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

admit that [REDACTED]

Ex. T (Eyrich Depo.) at 150:23 – 151:19.

In addition [REDACTED]

Naylor Decl., Ex. V (Addendum, p. 2); *see also id.*, Ex. T (Eyrich Depo.) at 94:3-18; 100:18 – 101:1; 104:3-7; 114:14 – 115:15; 141:24 – 142:25); Ex. G (Upshaw Depo.) at 93:4 – 94:25.

**G.    Third Party Licenses Incorporated Retired Players' Group Rights**

PLAYERS INC generates [REDACTED]

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

As part of both the ██████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

On its face, the second sentence of Paragraph 1(A) includes those retired players who, like Mr. Adderley, did not sign "such Group Licensing Authorization" ██████████████████████████████████████████████████████ but who instead signed a GLA with slightly different language. *Id.; see also id.*, Ex. I (Allen Depo.) at 205:25 – 206:7.

Moreover, in both the ██████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

Ex. I (Allen Depo.) at 208:11 – 208:22.

Virtually identical language appears in numerous other ████████████████████████████████████████
████████████████████████████████████████████████████ [5]

---

[5] *See* fn. 3, *supra*, for a detailed list of agreements containing similar language.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

## V.   CLASS CLAIMS

### A.   Defendants Breached Their Contract With, And Fiduciary Duties To, The GLA Class By Failing To Share Licensing Revenues With Them

Defendants' failure to compensate the GLA Class is both a breach of contract and breach of fiduciary duty, and Plaintiffs seek an accounting, their Equal Share Royalty of group licensing revenue, as well as punitive damages and attorneys' fees. TAC, ¶¶ 93-109.

Under the Adderley GLAs, any monies derived from a group licensing program were to be "divided between the player and an escrow account for all eligible NFLPA members who have signed a group licensing authorization form." Naylor Decl., Exs. A and B (Adderley GLAs).

*Id.*, § 4(B); Ex. I (Allen Depo.) at 120:18 – 121:22.

Ex. R (Feffer Declaration, ¶¶ 17-19).

Defendants concede that they have failed to pay retired players who signed GLAs, like Mr. Adderley, Naylor Decl., Ex. G (Upshaw Depo.) at 22:22 – 23:5; 40:11-16.[6] Either way, Defendants have breached

---

[6] Defendants claim that retired players are entitled only to Naylor Decl., Ex. I (Allen Depo.) at 148:16-21); *see also* Ex. G (Upshaw Depo.) at 48:17-25. Mr. Adderley does not dispute that he and other GLA Class members

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

MOTION FOR CLASS CERTIFICATION AND BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1   the Adderley GLAs and have caused Mr. Adderley and the GLA Class to lose licensing fees to

2   which they are entitled.[7]

3        Even assuming that Defendants drafted the Adderley GLAs and relevant third party

4   licenses to exclude retired players from a portion of this Equal Share Royalty, Defendants have

5   nevertheless breached their fiduciary duty by disfavoring retired players over active players;

6   failing to disclose their actions; and by diverting the substantial licensing revenue earned from

7   group licensing programs to themselves. For example, the NFLPA Board arbitrarily (and without

8   the knowledge of retired players) ████████████████████████████████████████

9   ███████████████████████████ Naylor Decl., Ex. I (Allen Depo.) at 112-16; 123:5 –

10  124:23.[8] Under Defendants' self-serving version of events, it is still a breach of fiduciary duty for

11  an agent to ██████████████████████████████████████████

12

13  ██████████ Instead, he contends that (along with active players) the GLA Class is entitled to
    share equally in the licensing revenue derived from group licensing programs.

14
    [7] The Adderley GLAs on their face provide that group licensing programs may consist of "six (6)
15  or more *present or former* NFL players images" and that any "moneys generated by *such*
    licensing of retired player group rights will be divided between the player and an escrow account
16  for all eligible players who signed a group licensing authorization form." Naylor Decl. Exs. A, B
    (emphasis added). By their own account, ███████████████████████████████
17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████ Even assuming that the plain language of the GLAs at issue
    does not require Defendants to include licensing revenues from all group licensing programs in
21  the pool from which the Equal Share Royalty is drawn, █████████████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████ *See id.*, Exs. A, B (Adderley GLAs) and Exs. M-P
    (license agreements); *see also supra*, fn 3.

24  [8] Defendants provided that ████████████████████████████████████
25  ████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████

27  ████████████████████ *Id.*, Ex. I (Allen Depo.) at 121:23 – 122:7; 124:2-23; Ex. G
28  (Upshaw Depo.) at 24:7-11.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1                                          11          MOTION FOR CLASS CERTIFICATION AND
                                                               BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1

2

Additionally, without the knowledge of retired players, in a February 2006 agreement,

4

5

6                    Naylor Decl., Ex. T (Eyrich Depo.) at 49:18-22; 94:3-18; 100:18 –

7   101:1; 104:3-7; 114:14 – 115:15; 141:24 – 142:25; Ex. G (Upshaw Depo.) at 93:4 – 95:25.

8            Defendants also concede that

9                                                Naylor Decl., Ex. G (Upshaw Depo.) at 48:17-

10  25; 95:1 – 96:16; Ex. I (Allen Depo.) at 121:10-16. By contrast, Defendants concede that none of

11  the retired players have received any portion of the promised Equal Share Royalty. *Id.* Ex. T

12  (Eyrich Depo.) at 50:8 – 51:2 and 11:22-25

13

14  Defendants have no good faith reason for excluding Mr. Adderley and the GLA Class from a

15  portion of this Equal Share Royalty.

16

17

18

19

20

21

22  Indeed, by failing to do so, Defendants placed themselves in a position of conflict. Apparently

23  Defendants agree, as they changed the "escrow" language found in the Adderley GLAs –

24  purportedly to eliminate their obligations to pay the retired players an Equal Share Royalty – and

25  then hid behind attorney-client privilege when asked why they changed the GLA language.

26  Naylor Decl., Ex. I (Allen Depo.) at 170: 3 – 181:15; Ex. S (2006 retired player GLA).

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

12

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

**B.  Defendants Breached Their Fiduciary Duties To The Retired Member Class**

Defendants have also breached their fiduciary duties to the Retired Member Class by failing to provide them with accurate and complete information about benefits to which they might be entitled, including licensing and marketing benefits, and Plaintiffs seek the return of their membership fees. TAC, ¶¶ 66-70, 78-81; *see also* November 14, 2007, Order, p. 12 (setting forth basis for agency by estoppel relationship between Defendants and retired NFLPA members they undertook to represent).  Despite its representations to Mr. Parrish and the Retired Member Class, and despite the fact that Defendants have benefited and continue to benefit from their relationship with retired members, the NFLPA has failed to act in their interests.

Defendants have failed to provide members of the Retired Member Class with information about benefits to which they may be entitled, including the fact that PLAYERS INC was licensing retired player rights to licensees like EA and that retired players could share in royalties by signing a GLA. Declaration of Bernard Parrish in Support of Plaintiffs' Motion for Class Certification ("Parrish Decl."), ¶ 3.  In fact, Defendants made clear their failure to act in the interests of retired players when Gene Upshaw, Executive Director of the NFLPA and Chairman of PLAYERS INC, insisted that he does not represent retired members:

> The bottom line is I don't work for them.  They don't hire me and they can't fire me.  They can complain about me all day long.  They can have their opinion, but the active players have the vote.  That's who pays my salary.  They (retirees) say they don't have anybody in the (bargaining) room.  Well, they don't and they never will.  I'm the only one in that room.  They're not even in the bargaining unit. They don't even have a vote.

Naylor Decl., Ex. W (Charlotte Observer article); *see also id.,* Ex. G (Upshaw Depo.) at 57:23-25, 59:2-4 (confirming that he made the quoted statements); Ex. X (Upshaw memo to retired players confirming comments); Ex. L (Player's Inc. Response to Request for Admission, No. 19).

**VI.  THIS COURT SHOULD CERTIFY THE CLAIMS OF THE GLA CLASS AND RETIRED MEMBER CLASS**

Rule 23(a) sets forth four requirements for class certification:  (1) numerosity of parties; (2) commonality of legal and factual issues; (3) typicality of claims and defenses of the class

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

13

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1  representatives with the putative class; and (4) adequacy of representation. *Blake v. Arnett*, 663

2  F.2d 906, 912 (9th Cir.1981).[9]

3  ### A.  Plaintiffs Meet the Numerosity Requirement

4  Rule 23(a) requires a class to be sufficiently numerous that joinder of all members

5  individually would be impracticable. Fed. R. Civ. P. 23(a)(1). There is no minimum number of

6  plaintiffs necessary to demonstrate numerosity, and the precise number of class members need

7  not be known before certification. 8 *Newberg on Class Actions* § 24:16 (4th ed.) ("*Newberg*");

8  *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 628 (N.D. Cal. 2005) (236 potential

9  class members sufficient to satisfy numerosity requirement) (citing *Gen. Tel. Co. of the NW, Inc.*

10 *v. EEOC*, 446 U.S. 318, 330 (1980)). Joinder has been held to be impracticable in cases

11 involving as few as 25 class members, and classes consisting of more than 75 members are

12 generally found to satisfy this requirement. *Breeden*, 229 F.R.D. at 628; 7A Wright, Miller &

13 Kane *Federal Practice and Procedure: Civil* 3d § 1762 (2005). Numerosity considerations also

14 include dispersement of members and their ability to initiate suit. *See* generally, 1 *Newberg* §

15 3:6; *see also In re Unioil Securities Litig.*, 107 F.R.D. 615, 618 (C.D. Cal. 1985) (joinder

16 impracticable given widespread geographic dispersion of potential class members and the amount

17 of individual claims is small).

18 ### 1.  The GLA Class has more than 3000 members located throughout the
19 U.S.

20 Defendants have produced GLAs from more than 3000 individual GLA Class members.

21 Naylor Decl., Ex. Z. Each class member's GLA contains language similar, if not identical, to that

22 in the Adderley GLAs. *Id.* The GLA Class meets the numerosity standard because the alleged

23 class consists of thousands of retired NFL players who signed a GLA that was in effect during the

24

25 [9] Although this motion presents a strong case for the merits, Plaintiffs are not required to prove
   the class claim on a motion for certification, or even to establish a probability that the claim will
26 be successful. *In Re Wells Fargo Home Mortgage Overtime Pay Litigation*, 527 F. Supp. 2d.
   1053, 1061 (N.D. Cal. 2007). Rather, this Court must accept the allegations in the Third
27 Amended Complaint as true for purposes of adjudicating this motion. *Id. (citing Blackie v.
   Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975)).
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

14

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1  statute of limitation period. *See Breeden*, 229 F.R.D. at 628. Further, although Defendants have,

2  so far, refused to reveal the locations of each class member, Plaintiffs believe that they are located

3  throughout the country, making joinder of each class member impracticable.

4        **2.    The Retired Members Class has over 3,500 members located**

5               **throughout the U.S.**

6       Defendants have produced documents identifying at least 3,631 retired members who, like

7  Mr. Parrish, paid dues to the NFLPA during the relevant time period. Naylor Decl., Ex. ¶ 26, Ex.

8  AA. Thus, this class also meets the numerosity requirement. 8 *Newberg* § 24:16; *Breeden*, 229

9  F.R.D. at 628. As with the GLA Class, while Defendants have failed to identify the location of

10  the class members it has identified, Plaintiffs believe that they are located throughout the country,

11  making joinder of each class member impracticable.

12      **B.    Plaintiffs Meet the Commonality Requirement**

13       Rule 23(a)(2) requires that there be questions of fact and law common to the entire class.

14  This "commonality" requirement serves the dual purposes of ensuring (i) fair and adequate

15  representation of the interests of absentee members, and (ii) practical and efficient case

16  management. *General Tel. Co. of the S.W. v. Falcon*, 457 U.S. 157 n.13 (1982) (commonality

17  serves as a "guidepost" about whether class action is economical and whether absentee members

18  will be fairly represented). In the Ninth Circuit, the commonality requirement has been

19  "construed permissively," and may be satisfied by *either* "shared legal issues with divergent

20  factual predicates," or "a common core of salient facts coupled with disparate legal remedies."

21  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988). Indeed, the Ninth Circuit

22  considers the requirements for finding commonality under Rule 23(a)(2) to be "minimal." *Id.* at

23  1020. Here, Plaintiffs have demonstrated that the putative class members share common

24  questions of law and fact with respect to their claims against Defendants. *Breeden*, 229 F.R.D. at

25  629.

26      **1.    The facts and law are common to the claims of all GLA Class members**

27       Adjudication of the GLA Class' claims will require the Court to interpret the GLA in light

28  of various license agreements and the NFLPA–PLAYERS INC Agreement. Because the terms of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

15

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1  the GLAs are substantively similar (if not identical) they may be considered akin to "form

2  contracts" – the classic type of agreement routinely certified for class action treatment. *Dupler v.*

3  *Costco Wholesale Corp.*, 2008 WL 321776, *14 (E.D.N.Y.); *Steinberg v. Nationwide Mut. Ins.*

4  *Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) (citing *Klay v. Humana, Inc.*, 2004 WL 1938845, *17

5  (11th Cir.)); *see also Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 428 (N.D. Ill. 2007) ("Claims

6  arising out of form contracts are particularly appropriate for class action treatment . . . .

7  Additionally, our courts have often found a common nucleus of operative facts when the

8  defendants are, as here, alleged to have directed standardized conduct toward the putative class

9  members"); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 667 (D.Kan.

10  2004) (commonality satisfied where claims arose from allegations of breaches in consumer

11  contracts); *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 692 (N.D. Ga. 2003) (commonality

12  requirement satisfied in breach of contract claim involving form contracts); *Jones v. Am. Gen.*

13  *Life & Acc. Ins. Co.*, 213 F.R.D. 689, 694-95 (S.D. Ga. 2002) (same); *Haroco, Inc. v. Am. Nat'l*

14  *Bank & Trust Co.*, 121 F.R.D. 664, 669 (N.D.Ill. 1988) (commonality satisfied where claims

15  arose from allegation of common practice and rights derived from form contracts). Defendants'

16  treatment of all retired players in the same manner further demonstrates that common questions of

17  fact exist among the GLA Class. *Steinberg*, 224 F.R.D. at 74; *Haroco*, 121 F.R.D. at 669.

18      Moreover, there is a common factual background for all GLA Class members: each

19  member signed a GLA substantially identical to the Adderley GLAs and thus each member was

20  entitled to an Equal Share Royalty derived from an escrow account holding monies earned

21  through Defendants' group licensing programs. Defendants concede that they failed to pay an

22  Equal Share Royalty from the GRLD account or any other escrow account to any retired player.

23  *See, e.g.,* Naylor Decl., Ex. T (Eyrich Depo) at 50:8 – 51:2 and 11:22-25; *see also id.*, Ex. I (Allen

24  Depo) at 120:12 – 121:22; Ex. G (Upshaw Depo) at 48:17-25, 95:14 – 96:16.

25

26                                            Finally, without the approval of

27  retired players, Defendants unilaterally voted to

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

16

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1   ███  Naylor Decl., Ex. T (Eyrich Depo.) at 49:18-22, 94:3-18; 100:18 – 101:1; 104:3-7;

2   114:14 – 115:15; 141:24 – 142:25; Ex. G (Upshaw Depo.) at 93:4 – 95:25.

3   From these common facts flow the same questions of law for each GLA Class member,

4   including:

- Whether Defendants' failure to pay to any retired player an Equal Share Royalty from the GRLD account, or any other escrow account established solely for payments to retired players constitutes a breach of the GLA.

- Whether those same actions constitute a breach of the fiduciary obligations Defendants owed to retired players with an executed GLA.

- Whether Defendants' ███ ███ constitutes a breach of the GLA, as well as a breach of the fiduciary obligations owed to retired players with an executed GLA.

- Whether Defendants' ███ constitutes a breach of the fiduciary obligations owed to retired players with an executed GLA.

- The extent of damages Plaintiffs suffered as a result of Defendants' conduct.

14  The number of common questions of fact and law at issue here far surpass what is

15  required under relevant law. *See, e.g., Hanlon,* 150 F.3d at 1019-20. Indeed, because there are

16  no significant divergent facts or legal issues regarding individual members of this class, Rule

17  23(a)(2) is readily satisfied. *Id.* at 1019 (commonality can be satisfied either by shared legal

18  theories with divergent facts or common core facts with disparate remedies).

### 2.  The facts and law are common to the claims of all Retired Member Class members

21  Likewise, the Retired Members Class' claims have a homogeneous factual predicate:

22  Each member joined the NFLPA; each failed to sign a GLA (according to the records of the

23  NFLPA); the NFLPA did not inform them of the potential benefits of its licensing agreements

24  with third parties; and the NFLPA's representation of each was effectively disavowed by the

25  NFLPA's Executive Director. Naylor Decl., Ex. E (Kessler letter); Ex. H (NFLPA Constitution,

26  Art. II, ¶ 6); Ex. G (Upshaw Depo.) at 57:23-25, 59:2-4, 63:1-7, 70:24 – 71:5; Ex. W (Charlotte

27  Observer article); *see also id.,* Ex. X (Upshaw memo to retired players confirming comments);

28  Ex. L (Players Inc Response to Request for Admission, No. 19).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

17

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

Questions of law common to the Retired Members Class include:

- Whether PLAYERS INC is a fiduciary to the retired players.

- Whether Defendants' failure to provide retired NFLPA members with accurate and complete information relevant to benefits to which they might be entitled constitutes a breach of the fiduciary duties owed to such members.

- Whether Defendants' public statements and actions vis-à-vis the retired NFLPA members evidence a breach of the fiduciary duties owed to such members.

- Whether Mr. Parrish and the Retired Member Class deserve a return of their membership fees.

The number of common questions of fact and law at issue here again surpasses what is required under the commonality requirement. *Hanlon*, 150 F.3d at 1019-20. Moreover, there are there any significant divergent facts or legal issues regarding individual members of this class pertinent to their claims. *Id.*

### C. Plaintiffs' Claims Are Typical of the Respective Class Members' Claims

Rule 23(a)(3) requires that the named plaintiff's claims be typical of the class' claims. This requirement merges with the commonality requirement and tests "whether other members have the same or similar injuries, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1985) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)); *see also Morton v. Valley Farm Transp., Inc.*, 2007 WL 1113999, *4 (N.D. Cal. 2007). Representative claims are "typical" if they are reasonably coextensive with those of absent class members; they need not be substantively identical. *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007); *Morton*, 2007 WL 1113999, *4; *see also Nat'l Fed'n of Blind v. Target Corp.*, 2007 WL 2846462, *14 (N.D. Cal.) (citing *General Tel. Co. of S.W.*, 457 U.S. at 156).

#### 1. Mr. Adderley's claims are typical of those of the GLA Class

Mr. Adderley's breach of contract and breach of fiduciary duty claims in fact are substantively identical to those of the other GLA Class members. Mr. Adderley signed a GLA

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

18

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1  containing language identical to that of the other GLA Class members.[10] Defendants' "course of

2  conduct" with respect to all of the GLA Class members was also identical: Defendants failed to

3  account for and disburse to each of the retired players the licensing revenues identified in the

4  GLA.[11] With respect to Plaintiffs' breach of fiduciary duty claim, Defendants ███████

5  ████████████████████████████████████████████████ thereby depriving Mr.

6  Adderley and the GLA Class members of their share of that money.

7        Indeed, because the Equal Share Royalty called for an equal share for each participant, the

8  damages analysis is the same for each class member, and it is inherently simple – each GLA

9  Class member is entitled to the very same share of group licensing revenue. Plaintiffs' damages

10  expert will establish that members of the GLA Class are entitled to an Equal Share Royalty

11  similar to the royalty that Defendants pay to active players. *See* generally, Declaration of Phillip

12  Rowley in Support of Motion for Class Certification ("Rowley Decl."). Plaintiffs' expert will

13  calculate the royalty owed to members of the GLA Class similar to the way that Defendants

14  calculate the royalty paid to active players. Rowley Decl., ¶ 5. ████████████████

15  ██████████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████████

17

18  [10] For purposes of class certification, it is irrelevant that the GLAs of the putative class members

19  may have been executed at different times (although all within the statute of limitations). A
   plaintiff's claim may still be typical even if the class members' injuries were suffered at different

20  times. *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 649 (C.D. Cal. 1996). *See also*, 1 Newberg at §
   22:26. ("Defendants in securities class actions have often argued that a plaintiff's claim cannot be

21  typical of the claims of class members who purchased at different times in reliance on different
   documents. It is now settled, however, that the claims of such a plaintiff are typical of the claims

22  of the class if all the documents relied upon are part of a common course of conduct or common

23  scheme to defraud.").

   [11] It is also irrelevant that some of the retired players, including Mr. Adderley, may have been

24  ██████████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████████

26  ███████ are of no consequence to the Equal Share Royalty claim related to group licensing
   programs.

27  [12] Although Plaintiffs' investigation is still ongoing, they contend that these monies include

28  payments from such licensees as ████████████████ among others. *See* fn. 3, *supra*.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

19

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA



*Id.*[13] Mr. Adderley's claims are more than simply "typical" of the GLA Class members, they are nearly identical.

###### 2. Mr. Parrish's claims are typical of those of the Retired Member Class

Likewise, Mr. Parrish's claims are typical of the claims of each member of the Retired Member Class. Like his fellow class members, he joined the NFLPA pursuant to its overtures, paid $50 for membership, and received the same substandard representation. Parrish Decl., ¶¶ 3-4. Specifically, neither Mr. Parrish nor any other class member, was told of the many opportunities, including potential licensing deals such as those with ████████ Parrish Decl., ¶ 3. Like the other Retired Member Class members, Mr. Parrish learned that the Defendants were not acting on behalf of retired players only *after* he paid his dues. Naylor Decl., Ex. G (Upshaw Depo.), 57:23-25, 59:2-4; Ex. W (Charlotte Observer article). Additionally, Mr. Parrish's damages are identical to those of the other class members – the $50 paid to the NFLPA as dues. Mr. Parrish's claims thus satisfy the typicality requirement.

---

[13] In assessing whether to certify a class, Plaintiffs need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis. *Negrete v. Allianz Life Ins. Co. of N. Am.,* 238 F.R.D. 482, 494 (C.D. Cal. 2006). Certification may be denied only if the proposed methods for computing damages are so insubstantial as to amount to no method at all.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

20

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

### D. Plaintiffs Meet the Adequacy Requirement

Under Rule 23(a)(4), the person representing the class must "fairly and adequately protect the interests" of all class members. Adequacy requires: "(1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 511 (N.D. Cal. 2007). This test is often analyzed in four segments: (i) qualifications of counsel for the representatives; (ii) absence of antagonism; (iii) sharing of interests between representatives and absentees; and (iv) unlikelihood that the suit is collusive. *See e.g., Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003).

Plaintiffs are afforded several presumptions regarding adequacy. First, it is presumed that there is no conflict among the class members. 3 *Newberg* § 7:24 (citations omitted). Second, class counsel that are good standing members of the bar are presumed competent. *Id.* Third, it is presumed that counsel and the class representatives intend to prosecute the litigation vigorously. *Id.* Finally, if there are any doubts about adequate representation or potential conflicts, they should be resolved in favor of upholding the class. *Id.*

#### 1. The law firms are qualified to act as class counsel

Courts typically do not disturb a plaintiff's choice of counsel, and because the Manatt and McKool Smith firms are well-qualified, this Court should not do so here. *See In re Cavanaugh*, 306 F.3d 726, 733 (9th Cir. 2002). The criteria in appointing class counsel are (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). In addition, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B).

Ronald Katz of the Manatt firm first discussed with Mr. Parrish the possibility of a lawsuit in October 2006. Parrish Decl. ¶ 4. Before filing this action, Plaintiffs' counsel spent numerous

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

21

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1    hours conducting a pre-filing investigation; including meeting with the class representatives and
2    other potential class members; obtaining pertinent documents; evaluating various causes of
3    action; consulting with experts; reviewing the NFLPA and PLAYERS INC records, Department
4    of Labor Records, and extensive correspondence among networks of retired NFL players; crafting
5    class definitions; developing theories of recovery; and preparing a litigation strategy. *See*
6    Declaration of Ronald Katz in Support of Plaintiffs' Motion for Class Certification ("Katz
7    Decl."), ¶¶ 3-5; Declaration of Lewis LeClair in Support of Plaintiffs' Motion for Class
8    Certification ("LeClair Decl."), ¶ 6. Since this action was filed, both Mr. Adderley and Mr.
9    Parrish have exchanged dozens of emails with Mr. Katz, as well as with co-counsel Lewis
10   LeClair of the McKool Smith firm in Dallas, Texas. Katz Decl. ¶¶ 3-5; LeClair Decl., ¶ 4.

11          Mr. Katz and Mr. LeClair supplemented their extensive initial research with an in-person
12   meeting with Mr. Parrish in December 2006; LeClair Decl. ¶ 4; and Mr. Katz has had many
13   additional meetings with the named Plaintiffs. Katz Decl., ¶ 5;  Counsel have also reviewed
14   countless documents from both the parties and third parties; hired economic experts; and
15   conducted or attended several party and third-party depositions, including those of Doug Allen,
16   Joel Linzer, Glenn Eyrich, Herbert Adderley, Gene Upshaw, and Pat Allen. *Id.* ¶ 5. Further, each
17   firm has responded to several briefs (including several Motions to Dismiss and other oppositions
18   to pleadings, sanctions motions, an attempt to transfer venue, and discovery requests), and
19   representatives from each firm have attended hearings in this matter, including a February 2008
20   Settlement Conference. *See Browning v. Yahoo! Inc.*, 2006 WL 3826714, *2 (N.D. Cal. 2006)
21   (class representative and class counsel had shown appropriate vigor in prosecution of the class
22   claims where they conducted the initial factual investigation and engaged in significant discovery
23   and motion practice prior to certification).

24          Plaintiffs' counsel also has extensive experience in handling class actions and is
25   knowledgeable of the applicable law. The Manatt firm, a national full-service law firm of
26   approximately 400 lawyers, is experienced in handling class actions and other complex litigation,
27   as well as claims of the type asserted here. Mr. Katz, a Manatt partner, is a Rhodes Scholar and
28   1972 Harvard Law Graduate whose practice focuses on complex commercial litigation, including

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

22

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1   two actions on behalf of certified classes. *See* Katz Decl., Ex. A (Katz C.V.). Mr. Katz was lead

2   counsel in a class action of approximately 400 retired Major League Baseball Players (*Coscarart*

3   *v. Major League Baseball*, No. CV A092225, in which Mr. Katz won a jury verdict on behalf of

4   the class in Alameda Superior Court. *Id.* Mr. Katz also was class counsel in *Mark Leonard and*

5   *All Those Similarly Situated v. Hewlett Packard Co.*, No. CV 795599, in Santa Clara Superior

6   Court in 2002. That case settled after class certification. *Id.*

7        The McKool firm is equally qualified. McKool's practice is comprised of complex

8   commercial and intellectual property litigation. Mr. LeClair has been lead counsel or co-lead

9   counsel in many major class action or derivative lawsuits in state and federal courts across the

10  country. *See* LeClair Decl., ¶¶ 2-3, Ex. A (Le Clair C.V.).

11       The determination and ability of Manatt and McKool to adequately represent these

12  Plaintiffs and these classes is not disputed. Both law firms already have committed substantial

13  resources to this litigation and hundreds of thousands of dollars in attorneys' fees and costs.

14  Further, Manatt and McKool are willing and able to expend whatever resources (both financial

15  and non-financial) are needed in the future, and to aggressively pursue this action. Katz Decl.

16  ¶ 6; LeClair Decl. ¶ 7. They have agreed to represent both classes on a contingency basis and to

17  advance the costs of litigation, including the compensation of expert witnesses. *Id.* Both firms

18  have committed sufficient resources to provide both classes with first class representation.

19              2.    **The named representatives have no conflict of interest or antagonism**
                      **with other class members**

20

21       Mr. Adderley and Mr. Parrish are interested in the litigation, wish to serve as named

22  plaintiffs, and have pursued their roles with vigor. Katz Decl., ¶¶ 3-4; Parrish Decl., ¶ 4. Both

23  Plaintiffs have worked diligently with counsel in bringing this action. Mr. Parrish first contacted

24  the Manatt firm for this representation in October 2006. Parrish Decl., ¶ 4. Since January 2006,

25  both Mr. Parrish and Mr. Adderley have had frequent communications with counsel and various

26  members of the proposed class regarding this litigation. Katz Decl., ¶¶ 2-5, Ex. A; Parrish Decl.,

27  ¶¶ 4-5. Both have personally responded to discovery, have been deposed, and have stayed the

28  course through numerous attempts by Defendants to have the action dismissed. Naylor Decl., Ex.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

23

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1   BB, (Deposition of Herbert Adderley ("Adderley Depo.")) at 181:11 – 182:19. Although

2   Defendants have precluded Mr. Adderley and Mr. Parrish from reviewing much of the underlying

3   evidence relevant to their claims (by designating much of the material "Confidential – Attorneys'

4   Eyes Only"), both have nevertheless reviewed redacted pleadings and documents, approved of the

5   claims, and agreed to be named representatives. *Id.* at 199:16 – 203:24; Parrish Decl., ¶ 5; Katz

6   Decl., ¶¶ 3-4 .

7         As named representatives, both Mr. Adderley and Mr. Parrish understand that they

8   represent similarly situated retired players. Naylor Decl., Ex. BB (Adderley Depo.) at 28:5-11;

9   180:4 – 181:7; 195:7 – 196:5; Parrish Decl., ¶ 4. Although the legal theories of liability have

10  evolved over the course of the lawsuit in response to Court Orders, Mr. Adderley is aware that his

11  claim regards his execution of the GLA, the promise of compensation, and the failure to receive

12  any compensation, and Mr. Parrish understands that his claims result from substandard

13  representations by the NFLPA which resulted in him receiving little, if any, value for his dues.

14  Naylor Decl., Ex. BB (Adderley Depo.) at 195:7 – 196:8; 100:22 – 101:6; 136:3-13; 229:1 –

15  230:16; Parrish Decl., ¶ 4.[14] Accordingly, all requirements of Rule 23(a)(4) are satisfied for both

16  classes.

17      **E.**    **Plaintiffs Meet The Requirements Of 23(b)(3)**

18        In addition to satisfying the requirements of Rule 23(a), parties seeking class certification

19  must show that their action is maintainable under Rule 23(b)(1), (2), or (3). *In re Mego Fin.*

20  *Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Amchem Prod. v. Windsor*, 521 U.S.

21  591, 614 (1997)). To qualify for certification under Rule 23(b)(3), a class must meet two

22  requirements: (i) common questions must "predominate over any questions affecting only

23

24  [14] In *Lewis v. NFL*, 146 F.R.D. 5, 10 (D.D.C. 1992), the court noted that Rule 23(a)(4) does not
     require that the class representatives have extensive knowledge of their case. *See also Surowitz v.*

25  *Hilton Hotels*, 383 U.S. 363, 372-74 (1966); *In re Commc'ns Sys., Inc.*, 2003 WL 21383824
     (N.D. Cal. 2003) ("It is sufficient for a class representative to be 'aware of the general nature of

26  the allegations, and ... have some familiarity with the underlying legal principles'"); *Yamner v.*
     *Boich*, 1994 WL 514035, *6-7 (N.D. Cal.). In this case, lack of specific knowledge with regard

27  to a particular claim is at least partly the result of Defendants' designation of numerous
     documents, including pleadings, as "Confidential Attorneys' Eyes Only." Katz Decl. ¶ 4

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

24

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1    individual members"; and (ii) class resolution must be "superior to other available methods for

2    the fair and efficient adjudication of the controversy." *See, e.g., Amchem*, 521 U.S. at 615. As set

3    forth in Rule 23(b)(3), four factors are relevant to this analysis: (i) the interest of members of the

4    class in individually controlling the prosecution or defense of separate actions; (ii) the extent and

5    nature of any litigation concerning the controversy already commenced by or against members of

6    the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the

7    particular forum; and (iv) the difficulties likely to be encountered in the management of a class

8    action). Fed. R. Civ. P. 23(b)(3).

9            **1.     Common questions predominate**

10       The predominance inquiry tests whether proposed classes are sufficiently cohesive to

11    warrant adjudication by representation. *Amchem*, 521 U.S. at 623. When common questions

12    present a significant aspect of the case and they can be resolved for all members of the class in a

13    single adjudication, there is clear justification for handling the dispute on a class action basis.

14    *Breeden*, 229 F.R.D. at 628 (citing *Hanlon*, 150 F.3d at 1022). Here, as described above, the

15    common questions of law for the respective classes predominate over any individual issues that

16    may exist in this case.

17       Further, the applicable law will be uniform across all class members. For class

18    certification purposes, California law is presumed to apply. *See In re Worlds of Wonder Sec.*

19    *Litig.*, No. 1990 WL 61951, *4 (N.D. Cal.) (California law applies where the defendants have not

20    successfully argued prior to the class certification motion that foreign law will apply); *Robert v.*

21    *Heim*, 670 F. Supp. 1466, 1494 (N.D. Cal. 1987) (same). Defendants have not requested that this

22    Court apply the law of another jurisdiction, nor have they met their burden to show that another

23    states' interests would be more impaired than California's if this Court were to use California

24    law.

25       Even if they had, California law would prevail. Under California choice-of-law rules, the

26    burden is on the proponent of foreign law to show: (i) that a true conflict exists; (ii) that each state

27    has an interest in applying its own law; and (iii) if each state has an interest, which state's interest

28    would be more impaired if its law were not applied. *Harmsen v. Smith*, 693 F.2d 932, 946-47

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

25

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

(9th Cir. 1982). However, there are no relevant differences in the applicable laws of the fifty

states with regard to the breach of contract claims:

> A breach is a breach is a breach, whether you are on the sunny shores of California
> or enjoying a sweet autumn breeze in New Jersey.

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004). "Whether [a] contract[ ] ... has been

breached is a pure and simple question of contract interpretation which should not vary from state

to state." *Id.* (citing *Indianer v. Franklin Life Ins. Co.*, 113 F.R.D. 595, 607 (S.D. Fla. 1986)

(overruled in part on other grounds by *Ericsson GE Mobile Communs., Inc. v. Motorola*

*Communs. & Elecs., Inc.*, 120 F.3d 216, 219 n.12 (11th Cir. 1997)); accord *Leszczynski v. Allianz*

*Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997). "The application of various state laws would not be a

bar [to certification] where, as here, the general policies underlying common law rules of contract

interpretation tend to be uniform." *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 694

(N.D. Ga. 1983); *see Jennings Oil Co., Inc. v. Mobil Oil Corp.*, 80 F.R.D. 124, 130 (S.D.N.Y.

1978). Thus, the applicable state laws governing contract interpretation are sufficiently identical

to justify all class members' claims being adjudicated under California law.

Further, the Defendants have conceded that there is no significant difference in the laws of

fiduciary duty between California and its home state, Virginia. In its Motion for Judgment on the

Pleadings, PLAYERS INC argued that Plaintiffs' entire case was premised on a breach of

fiduciary duty claim, and asserted that:

> [b]ecause Players Inc is a Virginia corporation, the substantive law of Virginia
> regarding fiduciary duties applies here. *The law in California with respect to*
> *fiduciary duty, however, is substantially the same for purposes of the instant*
> *motion.*

PLAYERS INC's Motion for Judgment on the Pleadings, 6:4-5 and n.5 (emphasis added). Thus,

by PLAYERS INC's own account, California law appropriately governs the resolution of the

fiduciary duty claims.[15]

---

[15] Moreover, applying California law to this class action would not violate due process. In
*Phillips Petroleum*, 472 U.S. at 821-22, the Supreme Court formulated a two-step test for
determining whether a state may constitutionally apply its law to all of the claims of a nationwide
class. First, the court must determine if a conflict exists; second, if there is a conflict, the court
must determine whether the state has "a 'significant contact or aggregation of contacts' to the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

26

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

## 2. A class action is the superior method of adjudication

Under relevant standards, a class action is superior to all other methods for the fair and efficient adjudication of this controversy. *Amchem*, 521 U.S at 615 (class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results"); *see also Phillips Petroleum*, 472 U.S. at 809 (class action allows plaintiffs to "pool claims which would be uneconomical to litigate individually"); Fed. R. Civ. P. 23(b)(3).

Although the aggregate damages which may be awarded to Plaintiffs and the classes are likely to be large, the actual damages suffered by each class member are small in comparison.[16] The expense and burden of individual litigation thus makes it economically and procedurally impracticable for each retired player member of the classes to pursue individual claims.

## 3. The four factors noted in Rule 23(b)(3) favor certification

Indeed, each of the four factors set forth in Rule 23(b)(3) also compels class certification. Fed. R. Civ. P. 23(b)(3) (explicitly noting relevance of: individual interest in pursuing claims, prior commencement of related litigation, desirability of consolidating claims in one forum, and potential difficulties in managing the class claims). Plaintiffs are unaware of any other litigation concerning this controversy already commenced by or against any member of the classes, suggesting that the individual class members do not have the means to prosecute their claims individually. *Id.* Consolidating these claims in one forum would conserve the resources of the

---

claims asserted by each member of the plaintiff class, contacts 'creating state interests in order to ensure that the choice of law is not arbitrary or unfair.'" *Id.* Given that there appears to be significant contact between Plaintiffs' claims and California (where the NFLPA has an office, and where both Defendants conduct business, including with ▇▇▇▇ the application of California law would not be arbitrary or fundamentally unfair. *See Heim*, 670 F. Supp. at 1494; *see also* Naylor Decl., Ex. UU (NFLPA office); Ex.VV ▇▇▇▇▇

[16] For example, each member of the Retired Members Class would be entitled to $50 or $100 in actual damages, and each member of the GLA Class would receive ▇▇▇▇▇ This would not result in a number that per individual would be economic to litigate in Federal Court. *See* generally, Rowley Decl.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

27

1   parties and the court system, and is the only method whereby Plaintiffs and their respective

2   classes can efficiently seek redress and obtain a uniform adjudication of their claims. *Id.*

3        Finally, a class action would present far fewer management difficulties than if thousands

4   of claims were to proceed individually. Fed. R. Civ. P. 23(b)(3). Members of the GLA Class and

5   Retired Member Class may be notified of the pendency of this action by techniques and forms

6   commonly used in class actions, such as by published notice, e-mail notice, website notice, first

7   class mail, or combinations thereof, or by other methods suitable to these classes and deemed

8   necessary and/or appropriate by the Court. *Id.*

9   **VII.   CONCLUSION**

10       Herbert Adderley signed a GLA and was not paid; Bernard Parrish joined an organization

11  and was not represented. Both claims are simple and uniform, and they are brought by respected

12  representatives who have spoken out for retired players for years. These players all have valid

13  claims that are not economic to bring as individual lawsuits, but it would be unjust if Defendants'

14  wrongful behavior went unchallenged for that reason. This class action is therefore the only

15  appropriate vehicle for these claims. Accordingly, for the reasons set forth above, Plaintiffs

16  respectfully request that this Court certify the claims asserted by the GLA Class and by the

17  Retired Member Class.

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

28

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA

1  Dated:   March 14, 2008         MANATT, PHELPS & PHILLIPS, LLP

2

3                                  By: /s/ Ronald S. Katz
                                        Ronald S. Katz (SBN 085713)
4                                       Ryan S. Hilbert (SBN 210549)
                                        Noel S. Cohen (SBN 219645)
5                                  MANATT, PHELPS & PHILLIPS, LLP
                                   1001 Page Mill Road, Building 2
6                                  Palo Alto, CA  94304-1006
                                   Telephone:    (650) 812-1300
7                                  Facsimile:    (650) 213-0260

8                                  McKOOL SMITH, P.C.
                                   Lewis T. LeClair
9                                  Sam Baxter
                                   Jill Adler Naylor
10                                 300 Crescent Court
                                   Suite 1500
11                                 Dallas, TX 75201
                                   214-978-4984
12                                 214-978-4044 (fax)

13                                 *Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20198340.1

29

MOTION FOR CLASS CERTIFICATION AND
BRIEF IN SUPPORT - CASE NO. C07 0943 WHA