MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

McKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS, III on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**<br><br>Date: April 24, 2008<br>Time: 8:00 A.M.<br>Place: Courtroom 9, 19th Floor<br>Judge: Hon. William H. Alsup<br><br>**\*\*PUBLIC VERSION\*\*** |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION -
CASE NO. C07 0943 WHA

Dockets.Justia.com

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 23(A) | 1 |
|     A. Mr. Parrish Is An Adequate Representative | 1 |
|     B. Adderley Is An Adequate Representative | 4 |
| II. PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 23(B)(3) | 7 |
|     A. Defendants Concede That Plaintiffs Have Satisfied Their Rule 23(b)(3) Burden On The Breach Of Contract Claim | 8 |
|     B. Common Questions of Fact Predominate The Fiduciary Duty Claims | 8 |
|     C. Defendants Have Not Satisfied Their Burden To Establish That Non-California Law Should Apply To Plaintiffs' Fiduciary Duty Claims | 10 |
|         1. Plaintiffs Have Established The Requisite Minimum Contacts With California | 10 |
|         2. Defendants Have Not Attempted To Satisfy Their Burden Of Demonstrating That The Laws Of Other States Will Apply | 12 |
| III. CONCLUSION | 15 |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

i

REPLY IN SUPPORT OF PLAINTIFFS
MOTION FOR CLASS CERTIFICATION -
CASE NO. C07 0943 WHA

# TABLE OF AUTHORITIES

Page

## CASES

*Alfus v. Pyramid Tech. Corp.*,
  764 F. Supp. 598 (N.D. Cal. 1991) .................................................................. 9

*Allapattah Services, Inc. v. Exxon Corp.*,
  188 F.R.D. 667 (S.D. Fla. 1999), *aff'd* 333 F.3d 1248 (11th Cir. 2003) .......... 15

*Amchem Prod. v. Windsor*,
  521 U.S. 591 (1997) .......................................................................................... 8

*Azoiani v. Love's Travel Stops and Country Stores, Inc.*,
  2007 WL 4811627 (S.D. Cal. Dec. 18, 2007) .................................................. 6

*Burkhalter Travel Agency v. MacFarms Intern., Inc.*,
  141 F.R.D. 144 (N.D. Cal. 1991) ...................................................................... 7

*Californians for Disability Rights, Inc. v. California Dept. of Transp.*,
  2008 WL 697065, 17 (N.D. Cal., March 13, 2008) .......................................... 1

*County of San Bernardino v. Walsh*,
  158 Cal.App.4th 533 (2007) ............................................................................ 10

*Greenspan v. Brassler*,
  78 F.R.D. 130 (S.D.N.Y. 1978) ........................................................................ 7

*Haley v. Medtronic, Inc.*,
  169 F.R.D. 643 (C.D. Cal. 1996) ...................................................................... 9

*Hurdato v. Superior Court*,
  11 Cal. 3d 574 (1974) ...................................................................................... 13

*In re Activision Sec. Lit.*,
  621 F. Supp. 415 (N.D. Cal. 1985) .............................................................. 12, 13

*In re Communications Systems, Inc.*,
  2003 WL 21383824 (N.D. Cal. 2003) ............................................................ 6

*In re Computer Memories Sec. Lit.*,
  111 F.R.D. 675 (N.D. Cal. 1986) .................................................................... 13

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) .......................................................... 10

*In re Pizza Time Theatre Sec. Lit.*,
  112 F.R.D 15 (N.D. Cal. 1986) ...................................................................... 13

*In re Quarterdeck Office Sys., Inc. Sec. Litig.*,
  1993 WL 623310 (C.D. Cal.) .......................................................................... 6

*In re Telectronics Pacing Systems, Inc.*,
  172 F.R.D. 271 (S.D. Ohio 1997) .................................................................. 14

*In re Worlds of Wonder Sec. Lit.*,
  1990 WL 61951 (N.D. Cal. 1990) .................................................................. 12

*Kamerman v. Ockap Corp.*,
  112 F.R.D. 195 (S.D.N.Y. 1986) ...................................................................... 1

*Kayes v. Pacific Lumber Co.*,
  51 F.3d 1449 (9th Cir. 1995) ............................................................................................. 1

*Kessler v. Ikea U.S., Inc.*,
  2008 WL 413268 (C.D. Cal. 2008) ................................................................................ 6, 7

*Klay v. Humana Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ......................................................................................... 8

*Kleiner v. First Nat'l Bank of Atlanta*,
  97 F.R.D. 683 (N.D. Ga. 1983) ......................................................................................... 8

*Krzesniak v. Cendant Corp.*,
  2007 WL 1795703 (N.D. Cal. 2007) ............................................................................. 2, 4

*Lim v. Citizens Savings and Loan Ass'n*,
  430 F.Supp. 802 (N.D. Cal. 1976) ..................................................................................... 2

*Lockwood Motors, Inc. v. Gen. Motors Corp.*,
  162 F.R.D. 469 (D. Minn. 1995) ....................................................................................... 8

*Love v. Wilson*,
  2007 WL 4928035 (C.D. Cal. Nov. 15, 2007) ................................................................... 1

*Lubin v. Sybedon Corp.*,
  688 F. Supp. 1425 (S.D. Cal. 1988) .................................................................................. 7

*Nedlloyd Lines B.V. v. Superior Court*,
  3 Cal. 4th 459 (1994) ...................................................................................................... 15

*Nelson v. Tiffany Industries, Inc.*,
  788 F.2d 533 (9th Cir. 1985) ........................................................................................... 13

*Norman v. Arcs Equities Corp.*,
  72 F.R.D. 502 (S.D.N.Y. 1976) ......................................................................................... 1

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ........................................................................................ 7, 10, 11, 12

*Robert v. Heim*,
  670 F. Supp. 1466 (N.D. Cal. 1987) ................................................................................ 12

*Simon v. Ashworth, Inc.*,
  2007 WL 4811932 (C.D. Cal. Sept. 28, 2007) .................................................................. 6

*Smith v. Ayres*,
  977 F.2d 946 (5th Cir. 1992) ............................................................................................. 1

*Sun Oil v. Wortman*,
  486 U.S. 717 (1988) ........................................................................................................ 14

*Surowitz v. Hilton Hotels Corp.*,
  383 U.S. 363 (1966) .......................................................................................................... 6

*Washington Mutual Bank, FA v. Superior Court of Orange County*,
  24 Cal. 4th 906 (2001) .................................................................................................... 13

*Yamner v. Boich*,
  1994 WL 514035 (N.D. Cal. 1994) ................................................................................... 6

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

iii

REPLY IN SUPPORT OF PLAINTIFFS
MOTION FOR CLASS CERTIFICATION -
CASE NO. C07 0943 WHA

*Zinser v. Accufix Research Inst., Inc.*
  253 F.2d 1180 (9th Cir. 2001) .................................................................................... 13

**OTHER AUTHORITIES**

*Newberg on Class Actions* § 9.68 ...................................................................................... 15

*Newberg on Class Actions* § 22:26 .................................................................................... 10

**RULES**

Fed. Rule Civ. Proc. 23(a) .................................................................................................. 1

Fed. Rule Civ. Proc. 23(b)(3) ........................................................................................ 7, 8

Fed. Rule Civ. Proc. 23.1 ................................................................................................... 1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

iv

REPLY IN SUPPORT OF PLAINTIFFS
MOTION FOR CLASS CERTIFICATION -
CASE NO. C07 0943 WHA

# I. PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 23(a)

Although quick to disparage Plaintiffs for reasons not relevant to class certification, Defendants do not dispute and therefore concede that Plaintiffs have met the following key requirements of Rule 23(a): numerosity, commonality, and typicality. Recognizing that Plaintiffs' claims are entirely suitable for class treatment, Defendants are forced to rely on *ad hominem* attacks and on comments on the merits (which Defendants concede at page 3 of their Opposition to Plaintiff's Motion for Class Certification ("Opp.") are not pertinent to the present motion). Stripped of these red herrings, Defendants' principal complaint regarding Rule 23(a) is that Plaintiffs will not adequately represent their respective classes.[1]

## A. Mr. Parrish Is An Adequate Representative.

Defendants devote considerable discussion to the history of Mr. Parrish's disputes and "animus" towards the NFLPA. Opp. at 7-12.[2] However, courts in this Circuit generally do not consider vindictiveness of a class representative, unless it is in the context of a derivative action under Rule 23.1. *See e.g., Love v. Wilson*, 2007 WL 4928035, *7 (C.D. Cal. Nov. 15, 2007) *cited* in Opp. at 12 ("animosity, on its own, is insufficient to establish inadequate representation"). In fact, in *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995), the Court recognized that there was no case in the Ninth Circuit in which a vengeful plaintiff was considered an inadequate representative.[3] *Id.* at 1464.

---

[1] Adequacy requires that (1) the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and (2) plaintiffs are represented by qualified and competent counsel." *Californians for Disability Rights, Inc. v. California Dept. of Transp.*, 2008 WL 697065, *17 (N.D. Cal. March 13, 2008). Defendants do not dispute and therefore concede that the Plaintiffs are represented by qualified and competent counsel.

[2] Among players retired from this violent sport, Mr. Parrish would hardly have a monopoly on animus; the current NFLPA Executive Director has compared retired players to "dog food" and was widely reported to have threatened to break the neck of a retired Hall of Fame player who is a board member of Retired Professional Football Players for Justice. Declaration of Ronald Katz in Further Support of Plaintiffs' Motion for Class Certification ("Katz Decl."), Exs. 1 and 2.

[3] None of the cases securities fraud cited by Defendants for the proposition that a vengeful plaintiff is an inadequate class representative are within the Ninth Circuit, and each is distinguishable. *See* Opp. at 9, n. 20, *citing Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 S.D.N.Y. 1976) (class representative found inadequate because it was controlled by a non-party individual who offered to advance the expenses of the litigation and to whom the majority of the damages would eventually be paid, concerning the court over "maintenance" issue); *Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir. 1992) (class representative had no support from putative class members, and claimed he would represent himself as "class of one"); and *Kamerman v. Ockap*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

1

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION -
CASE NO. C07 0943 WHA

In *Lim v. Citizens Savings and Loan Ass'n*, 430 F.Supp. 802, 811 (N.D. Cal. 1976), the defendant argued that "plaintiff's professed 'revenge' motive create[d] clear potential conflicts with the class because, in this frame of mind, plaintiff [was] likely to by-pass favorable settlement offers." The Court, however, considered plaintiff's "professed 'revenge' motive" a benefit to class representation: "Indeed, the vengeance of an aggrieved person more often engenders the zealous prosecution essential to a class action than the over-zealous prosecution which may threaten to strangle a class action." *Id.* at 812. *See* also, *Krzesniak v. Cendant Corp.*, 2007 WL 1795703, *12 (N.D. Cal. 2007).

The same is true in this matter. Mr. Parrish has been advocating for retired players since 1959. *See* Katz Decl., Ex. 3 (Deposition of Bernard Parrish ("Parrish Depo.")) at 11:11-13; 188: 15-18 (Parrish works on retired players issue "night and day; seven days a week"); 270:15-271:20 (describing Parrish's opposition to NFLPA policies for last 30 years). Although Mr. Parrish has hostile feelings towards the Defendants and their officers,[4] he has testified that as a class representative, he will, regarding settlement, "do what is right for the class."[5] *Id.* at 39:8-12.

Mr. Parrish well understands and promotes the issues of his class in this lawsuit. Katz Decl., Ex. 3 (Parrish Depo.) at 13:12-15 (Parrish contemplated lawsuit in January 2006, after hearing Mr. Upshaw deny representation of retired players). Mr. Parrish hired Mr. Katz based on the latter's experience in other similar litigation. *Id.* at 192:15-193:6. Mr. Parrish filed this lawsuit to "get at the truth" about the NFLPA's failure to represent him. *Id.* at 61:9-16; 149: 1-14

---

*Corp.*, 112 F.R.D. 195, 197 (S.D.N.Y. 1986) (class representative was executor of estate of deceased plaintiff who had engaged in litigation with defendants for over ten years).

[4] *See* Opp. at 8-9. Defendants state that Mr. Parrish's remarks have "racially divisive undertones," ignoring that Mr. Parrish's two co-Plaintiffs are African Americans and that he has been urged to seek the Executive Directorship of the NFLPA by another African American, William Rhoden of the New York Times. *See* Third Amended Complaint ¶¶ 5-6; Katz Decl., Ex. 3 (Parrish Depo.) at 217:10-219:6.

[5] Defendants' complaint that Mr. Parrish will not settle a class action with them rings hollow in that, so far, it is the Defendants who have failed to participate in any meaningful settlement discussions. The Defendants sought to postpone the settlement conference, refused to participate in the settlement process, and refused to lift confidentiality designations to the extent necessary to permit Plaintiffs' counsel to convey a settlement offer to the Plaintiffs for their approval. Katz Decl., Exs. 4-6.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

2

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -
CASE NO. C07 0943 WHA

(stating that the point of lawsuit is that the retired members are promised representation, pay their dues, and then are not represented).

Nor does Mr. Parrish's interest in promoting the plight of the retired players create any conflict of interest. Although Defendants attempt to make a case of Mr. Parrish's "litigiousness" against them, in fact, they cannot cite to any other filed lawsuit. Defendants' statement that it is "obvious" that Parrish is using his claim "as a guise for pursuing information and complaints about retired player collective bargaining benefits that have nothing to do with this case" (*see* Opp. at 6) is unsupported by any evidence. Nor can Defendants point to any "wasteful and abusive discovery." *Id.* at 10.

Defendants also raise the spectre that Mr. Parrish's interests conflict with the interests of the class because of his alleged personal agenda. Mr. Parrish's personal disagreement with two out of 3,000 class members (Opp. at 12), however, hardly creates a fundamental intra-class conflict. Mr. Parrish's other activities always have been consistent with his goals in this lawsuit. *See, e.g.,* Katz Decl., Ex. 3 (Parrish Depo.) at 361:1-18. Mr. Parrish has specifically testified that his outside interests, such as running for executive director of the NFLPA, are contingent upon his actions not adversely affecting this lawsuit. *Id.* at 317:11-318:19; *see* also Declaration of David Greenspan in Opposition to Plaintiffs' Motion for Class Certification, Ex. 21.

There also is no evidence that Mr. Parrish used the limited funds of Retired Professional Football Players for Justice ("RPFPJ") for any purpose other than the purposes of that organization. Excerpts from the RPFPJ's Secretary and Treasurer, Margaret Parrish, make clear that there were no improper expenses. Katz Decl., Ex. 7 (Deposition of Retired Professional Football Players for Justice) at 106:9-15 . Indeed, Defendants did not ask Mr. Parrish at his deposition a single question about any charge. *Id.*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

3

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION -
CASE NO. C07 0943 WHA

### B. Adderley Is An Adequate Representative

Defendants next complain that Mr. Adderley lacks knowledge of his own claims and is unable to testify effectively. *See* Opp. at 13-15. But Mr. Adderley has testified clearly that he understands the GLA Class claims, that he signed a GLA and that he had never gotten any money from signing a GLA.[6] He has also testified that his claim is brought on behalf of those persons that signed GLAs in the same form as his.[7] He further testified that he understands his role as class representative.[8]

Defendants' criticism of Mr. Adderley is particularly disingenuous in that Defendants' confidentiality designations preclude Mr. Adderley from reviewing most of the documents produced by Defendants in this case, including the License Agreements, as well as most of the allegations of the Third Amended Complaint.[9] Indeed, at his deposition, Mr. Adderley testified that the redactions have hindered his ability to be an effective class representative. *See* Katz Decl., Ex. 8 (Adderley Tr.) at 204:17 – 206:11. Further, the theories in this case have changed appropriately as discovery evolved, and as the Court issued Orders. Mr. Adderley's testimony

---

[6] *See, e.g.,* Katz Decl., Ex. 8 (Adderley Depo.) at 71:9-19 (Q. . . . In some of the e-mails we looked at, that you wrote, you said the reason you were bringing the lawsuit is because you believed that you had signed a group license agreement with Players, Inc. and that you weren't getting the money you were entitled to. Is that true? A. Yes.). For additional supporting excerpts, *see id.*

[7] Katz Decl., Ex. 8 (Adderley Depo.) at 28:5-11 (Q. Okay. Did anyone tell you that your claim now is only for people who have signed the same group licensing form as you've signed? A. Yes. Q. Did you know that? A. Yes.).

[8] *See, e.g.,* Katz Decl., Ex. 8 (Adderley Depo.) at 179:23--180:16 (Q. You've received all the documents in this case, as far as you know? A. As far as I know, yes. Q. Do you have an understanding, sir, of your duties as a class representative? A. Yes. Q. And can you tell us what those are? A. As a class representative, I got to get the best deal that I can for the class. Q. In what area of endeavor? On what subject? A. On compensation. Q. On the licensing? A. On the licensing.).

[9] Plaintiffs dispute any allegations of false testimony, and in particular, that anything improper happened during what Defendants characterize as an "hour-long break" (otherwise known as lunch). *See* Opp. at 16. The problems experienced by Mr. Adderley at his deposition resulted, unfortunately, in large part, from the questioner's harassing and bullying manner, which Mr. Adderley's counsel detailed in a March 12, 2008 letter. Katz Decl., Ex. 9. Other problems occurred because of objectionable questions (that primarily called for legal opinions or that were impermissibly vague). Mr. Adderley's errata, which primarily clarified that he saw drafts of the complaint rather than actual copies of the complaints, was far less substantive than those of the NFLPA's Executive Director. Katz Decl., Ex. 15. At any rate, any potential credibility challenges are not relevant to the Court's preliminary class certification ruling. *Krzesniak,* 2007 WL 1795703 at *9.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

4

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION -
CASE NO. C07 0943 WHA

regarding differentiation of licensing fees, which the defendants wrongly mischaracterize as "disavow[ing] Plaintiffs theory" (see Opp. at 15), is actually true as a general proposition: more marketable players earn more licensing fees. *Id., citing* Adderley Depo. at 83:3 – 84:1; 255:7 – 256:11; 256: 20-23. However, under the Licensing Agreements at issue in this case – which he has not been permitted to view – no such differentiation was made.[10]

Defendants similarly mischaracterize the following exchange (where they improperly ask for Mr. Adderley's legal opinion) as a disavowal of the current GLA Class claims:

> Q: And what you thought you were agreeing to get was that if your rights were licensed *and used* you would get some money; correct?
>
> A: Correct.

Opp. at 14 (emphasis added). Mr. Adderley's answer again is correct. However, Defendants' question is not very clear and contains a subtle but important distinction. Had Mr. Adderley been aware that Defendants were profiting from his mere license *without use*, it is certain that he would agree with the Third Amended Complaint in this regard (if only he were able to view it).

Defendants asked similarly confusing questions throughout Mr. Adderley's deposition. For instance, although Mr. Adderley reviewed draft pleadings,[11] the very question posed by Defendants and cited in their Opposition as a model of clarity ("Did you review the complaints in this case before they were filed?") was confusing to Mr. Adderley because "filed" is a legal term and because the pre-filing documents Mr. Adderley reviewed were technically still in draft form. It is easy to understand how a layperson could become confused.[12] Opp. at 19, *citing* Adderley

---

[10] *See*, Plaintiffs' Motion for Class Certification ("Motion") at 8; Declaration of Jill Naylor in Support of Plaintiffs' Motion, ("Naylor Decl."), ███████████████

[11] Katz Decl, Ex. 9 (March 12, 2008 letter from Mr. Katz to Mr. Kessler).

[12] *See e.g.*, Katz Decl., Ex. 8 (Adderley Depo.) at 81:4-- 82:2 (Q. . . . But let me just ask you now, have you read -- before it was filed, did you read a redacted version of this complaint. A. No. MR. KATZ: Explain, redacted means blacked out. Do you understand that? THE WITNESS: No, I didn't. MR. KESSLER: Q. Did you read any version of this complaint before it was filed, blacked out or not? A. Yes. Q. Yes what? Explain, please. A. I saw the complaint and it was blacked out. Q. When did you see it? A. I don't know. I guess a few days after it was printed. Q. Okay. So, after it was filed in court? A. Yes.).

Depo. at 20:7-9. Mr. Adderley seeks to represent a class of retired professional football players, not a class of legally trained individuals.

Adopting Defendants' position on Mr. Adderley's adequacy would contravene well-settled law that lack of knowledge of the case is not enough to defeat class certification. *See e.g., Kesler v. Ikea U.S., Inc.*, 2008 WL 413268, *6 (C.D. Cal. 2008) (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-74 (1966).[13] In *Kesler*, the court noted that defendants did not point to any testimony or other evidence that suggested that Kesler had been uninvolved in the proceedings, that she did not understand her responsibilities as class representative, or that she had ceded control of the case to class counsel – noting, in fact, that "she has demonstrated her commitment thus far by sitting for her deposition"). Kesler, 2008 WL 413268, *6; *see also In re Communications Systems, Inc.*, 2003 WL 21383824 (N.D. Cal. 2003) ("It is sufficient for a class representative to be 'aware of the general nature of the allegations, and . . . have some familiarity with the underlying legal principles'"); *Yamner v. Boich*, 1994 WL 514035, *6-7 (N.D. Cal. 1994) (noting that since *Surowitz*, courts have consistently refused to deny class certification on the basis of defendant's contention that a plaintiff is uninformed).

Defendants' cases on this point are factually distinguishable in that the proposed class representatives were either inactive participants or unwilling to perform the duties of a class representative.[14] Indeed, Mr. Adderley has testified to his knowledge of and involvement in the

---

[13] In *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-74 (1966) – a case cited by numerous courts on the issue of adequacy – the Supreme Court confirmed that a plaintiff could not be disqualified from acting as a named representative in a shareholders' derivative suit even though she was ignorant of the factual details of her complaint, could not explain the statements in it, was advised of the claim by a trusted representative, and did not know the nature of the misconduct of the defendants; noting that if such elements were required, uneducated, less intelligent people would be barred from obtaining judicial relief. Under the Court's logic set forth in *Surowitz*, the Defendants' attacks on Mr. Adderley (factually similar to those made against the representative in *Surowitz*) are likewise insufficient to preclude Mr. Adderley from serving as a class representative. *Id.*, 363 U.S. at 370-74.

[14] *See* Opp. at 15 n.37 and cases cited therein: *Azoiani v. Love's Travel Stops and Country Stores, Inc.*, 2007 WL 4811627, *2 (S.D. Cal. Dec. 18, 2007) (plaintiff admitted that all he did was travel 140 miles to fetch a Love's receipt to give it to his attorney); *Simon v. Ashworth, Inc.*, 2007 WL 4811932, *3 (C.D. Cal. Sept. 28, 2007) (plaintiff had a "total lack of knowledge" about the case, testified that he had spent no more than "an hour involved with this case," and perjured himself); *In re Quarterdeck Office Sys., Inc. Sec. Litig.*, 1993 WL 623310, *5 (C.D. Cal.) (plaintiffs were "merely stand-in parties" who did not care to pursue case and abdicated decisions to counsel); *Burkhalter Travel Agency v. MacFarms Intern., Inc.*, 141 F.R.D. 144, 154 (N.D. Cal.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

6

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION –
CASE NO. C07 0943 WHA

case, and Defendants cannot claim that by sitting for his deposition, he has evidenced any lack of commitment by sitting for his deposition. *Kessler*, 2008 WL 413268, *6.

Nor is there evidence that Mr. Adderley is "simply along for the ride with Parrish." Opp. at 23. First, the classes and the claims are distinct. Second, Mr. Adderley has testified that Mr. Parrish does not control him and that he does not always agree with him. Katz Decl., Ex. 8 (Adderley Depo.) at 63:17 – 64:4; 187:15-21; 194:17-20; 253:4 – 254:11. The vehemence of Mr. Adderley's communications to what he calls his "brother" retirees provide ample evidence of Mr. Adderley's independence and commitment to the case. *id* (Mr. Adderley's emails).

Finally, Defendants complain that both Plaintiffs have failed to adequately represent the retired players of RPFPJ. Opp. at 19. Even if this were this true, it is simply irrelevant. The RPFPJ is not a putative class member. There is simply no evidence of any complaints by any RPFPJ member.

## II. **PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 23(b)(3)**

Defendants assert that Plaintiffs have not met their burden under Rule 23(b)(3). Yet, Defendants concede not only that common issues of law dominate the GLA Class' contract claim, but that common questions of fact underlie the Retired Member Class' fiduciary claim. *See, e.g.*, Opp. at 29-34.

Likewise, Defendants fail to dispute that the class action is the superior method for resolving the claims at issue here because it would allow for pooling of relatively small claims, and would achieve economies of time, effort and expense. *See, e.g.*, Rule 23(b)(3); Plaintiffs' Motion, Section VI(E)(2) (citing *Shutts*, 478 U.S. at 809 (class action superior method in allowing plaintiffs to "pool claims which would be uneconomical to litigate individually"); *Amchem Prod. v. Windsor*, 521 U.S. 591, 615 (1997) (class action is superior method of resolving claims if it will "achieve economies of time, effort, and expense . . . ").

---

1991) (plaintiff was not prepared to exercise the requisite fiduciary duties on behalf of class); *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1462 (S.D. Cal. 1988) (plaintiff had never seen or read prospectus that was basis of fraud claim and was not willing to fund cost of dispute); *Greenspan v. Brassler*, 78 F.R.D. 130, 133 (S.D.N.Y. 1978) (plaintiff did not meet with his attorney "until the basic groundwork of the action had been laid").

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

7

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION -
CASE NO. C07 0943 WHA

As to the issues addressed by Defendants – *i.e.*, that Rule 23(b)(3) is not satisfied because individual questions of fact and law dominate the fiduciary claims – they have misapplied legal standards and relevant burdens of proof. In particular, Defendants ignore that they, not Plaintiffs, bear the burden of proving that non-California law should apply to the fiduciary claims at issue.

### A. Defendants Concede That Plaintiffs Have Satisfied Their Rule 23(b)(3) Burden On The Breach Of Contract Claim

Defendants' concessions regarding Plaintiffs' breach of contract claim are compelled by the fact that courts have routinely found that common issues of law and fact predominate such claims. *See, e.g.,* Motion at 26 (citing, *inter alia, Klay v. Humana Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) ("Whether [a] contract [ ] . . . has been breached is a pure and simple question of contract interpretations which should not vary from state to state."); *see also Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 694 (N.D. Ga. 1983).

### B. Common Questions of Fact Predominate The Fiduciary Duty Claims

Defendants cannot legitimately dispute that common questions of fact predominate the GLA and Retired Member Class' fiduciary claims. *See, e.g.,* Motion at 14-17, 24-25. When, as here, standardized forms and/or uniform practices predominate the fiduciary duty claims, numerous courts have found that Rule 23(b)(3) (or the analogous state rule) has been satisfied. *See, e.g., Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 580 (D. Minn. 1995) ("a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position").

Defendants complain that common questions of fact do not dominate over individual questions with respect to the GLA Class claims. Specifically, Defendants complain that *ad hoc* agreements create variable damages and that more recognizable players would be entitled to more damages than others, creating a class conflict. Opp. at 26-29. But this purposely misstates the claims in this lawsuit. This lawsuit seeks the equal share royalties from an escrow fund that is promised in the GLA but that Defendants incredibly state never existed.

However, the escrow fund did exist. 

Naylor Decl., Ex. K (NFLPA– PLAYERS INC Agreement, § 4(B)); Ex. I (Deposition of Doug Allen) at 120:18 – 121:22.

That the damages in this case are each in an equal amount, applies to the fiduciary damages as well because equal shares are what Plaintiffs are claiming they did not get. As a result, there is no individual question or conflict which predominates over the common questions.

Defendants continually ignore the salient fact that it is the Defendants themselves who created and implemented the equal share royalty. Mr. Adderley merely seeks a fair application of that structure.

Defendants also argue that, because the Retired Members Class claims include retired players whose membership period did not overlap with the period of time in which Upshaw made his statement or in which Parrish was denied representations, it is over-inclusive. Opp. at 35. But it is well settled that a plaintiff's claim may still be typical even if class members' injuries were suffered at different times. *Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 649 (C.D. Cal. 1996). *See also* 1 *Newberg* at § 22:26 ("Defendants in securities class actions have often argued that a plaintiff's claim cannot be typical of the claims of class members who purchased at different times in reliance on different

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

9

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION -
CASE NO. C07 0943 WHA

documents. It is now settled, however, that the claims of such a plaintiff are typical of the claims of the class if all the documents relied upon are part of a common course of conduct or common scheme to defraud."). Additionally, the fact that some putative class members may have received some benefit from their $50 (*see* Opp. at n.66) is irrelevant. A fiduciary may not profit from his malfeasance, regardless of whether his principle suffered any damage. *See, e.g., County of San Bernardino v. Walsh*, 158 Cal.App.4th 533, 543 (2007).

C. **Defendants Have Not Satisfied Their Burden To Establish That Non-California Law Should Apply To Plaintiffs' Fiduciary Duty Claims**

1. **Plaintiffs Have Established The Requisite Minimum Contacts With California**

Under *Shutts*, Plaintiffs bear the burden of establishing that California has a "significant aggregation of contacts to the claims of each class member such that application of [California] law is 'not arbitrary or unfair.'" *Phillips Petroleum Co. v. Shutts ("Shutts")*, 472 U.S. 797, 821-22 (1985). Although Defendants suggest otherwise (*see* Opp. at 31-32), this Court in the *In re Graphics* case did *not* alter the relevant burdens of proof under *Shutts*, nor did it undermine well-established California precedent that courts presume in class certification motions that California law will apply unless the *defendants* demonstrate conclusively that the laws of other states will apply. *See In re Graphics Processing Units Antitrust Litig. ("GPU")*, 527 F. Supp. 2d 1011, 1027-28 (N.D. Cal. 2007).

Defendants try to muddle the distinction between jurisdictional standards for absent class action plaintiffs and absent non-class-action defendants, but it is clear that the *Shutts* and *GPU* cases deal only with absent class action plaintiffs. It is also clear that the jurisdictional standard for such plaintiffs is less than minimal contacts: "Because States place fewer burdens upon absent class plaintiffs than they do upon absent defendants in nonclass suits, the Due Process Clause need not and does not afford the former as much protection from state-court jurisdiction as it does the latter." *Shutts*, 472 U.S. at 811. Primarily this is true because of the opt-out provisions in class actions, as *Shutts* pointed out: "In most class actions an absent plaintiff is provided at least with an opportunity to 'opt out' of the class, and if he takes advantage of that opportunity he is

removed from the litigation entirely. This was true of the Kansas proceedings in this case." *Id.* at 810-811. That reason, which would apply in the case at bar, was an important factor in the Supreme Court holding that Kansas had jurisdiction over the plaintiffs.

Moreover, in *GPU*, unlike the case at bar, "plaintiffs have never alleged the specific locations of any of the meetings between defendants." Because those conspiratorial meetings had to have occurred in California for there to have been an antitrust violation, ". . . plaintiffs have not pleaded or otherwise shown sufficient contacts to warrant the application of California law to other states." *Id.*

Here that is not at all the case. Far from "sweeping *Shutts* under the rug", Plaintiffs have satisfied their burden by establishing that application of California law to the instant claims would be neither arbitrary nor unfair, and, in fact, would be entirely consistent with the constitutional requirements of due process and full faith and credit. As this Court has previously recognized, California has significant contacts with both Plaintiffs and Defendants such that basic constitutional and jurisdictional standards have been satisfied. *See, e.g.,* Katz Decl., Ex. 11 (Order Denying Motion to Transfer at 8-11). Among other things, the NFLPA has conceded that it has an office in this district (*see* Opp. at 31); Defendants conduct business in California by, among other things, licensing active and retired players' images to California-based licensees, including but not limited to ████████████████████████████████████████ ████████████████████████████ (Naylor Decl., Exs. EE, II, KK, LL, SS, TT); and ██████████ Defendants' largest licensee by far, is headquartered in Northern California. Naylor Decl., Exs. O, P. Indeed, the publicly available LM-2 Form filed in 2006 by the NFLPA states that over $33 million was paid by Electronic Arts to Defendants in 2006 alone. Katz Decl. ¶ 16. It is important to note that these licenses provide for payment to players whether or not their images are used. Thus all plaintiffs are impacted sufficiently by this contract alone to meet the jurisdictional standards for plaintiffs of *Shutts* and *GPU*.

Defendants' claim that Plaintiffs have not alleged how many putative class members reside in California is also misleading. In response to Plaintiffs' discovery requests for addresses of the putative class members, Defendants expressly and repeatedly refused to provide this

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

11

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION -
CASE NO. C07 0943 WHA

information ██████████████████████████████████████ *See*
Katz Decl., Ex. 12 (Defendants' Supplemental Responses and Objections to Plaintiffs' Amended Interrogatories). According to paragraph 16 of this Court's rules, Defendants are therefore precluded from denying that putative class members reside in California.

Defendants' dispute as to their own contacts with California are disingenuous at best. Specifically, even though they concede that they still maintain and use an office in San Francisco, they conveniently removed all evidence of this office from their website shortly before filing their Opposition. *Compare* Naylor Decl. Ex. UU (*www.nflplayers.com* website) with the current *www.nflplayers.com* website.

2. **Defendants Have Not Attempted To Satisfy Their Burden Of Demonstrating That The Laws Of Other States Will Apply**

Defendants simply ignore that where, as here, Plaintiffs have met their constitutional burden under *Shutts*, "courts in this district generally presume in class certification motions that California law will apply unless the *defendants demonstrate conclusively* that the laws of other states will apply." *In re Worlds of Wonder Sec. Lit.*, 1990 WL 61951, * 4 (N.D. Cal. 1990) (citing *Robert v. Heim*, 670 F. Supp. 1466, 1494 (N.D. Cal. 1987) (emphasis added); *see also In re Activision Sec. Lit.*, 621 F. Supp. 415, 430 (N.D. Cal. 1985) (even if there were material variances between the laws of the states involved, California law should apply to plaintiffs' state law claims *when defendant failed to demonstrate* why California's law should not be applied to the entire class) (emphasis added); *In re Pizza Time Theatre Sec. Lit.*, 112 F.R.D 15 (N.D. Cal. 1986); *In re Computer Memories Sec. Lit.*, 111 F.R.D. 675 (N.D. Cal. 1986)); *Nelson v. Tiffany Industries, Inc.*, 788 F.2d 533, 534 (9th Cir. 1985) (California will decline to apply its own law to a case brought in California *only* if it is shown that another state has a greater interest in having its law applied); *Hurdato v. Superior Court*, 11 Cal. 3d 574, 581 (1974) (same); *Washington Mutual Bank, FA v. Superior Court of Orange County*, 24 Cal. 4th 906, 919 (2001) ("so long as the requisite significant contacts to California exist, a showing that is properly borne by the class

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

12

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION -
CASE NO. C07 0943 WHA

action proponent, California may constitutionally require the other side to shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims").

Defendants have not even attempted to satisfy this "substantial burden", and have effectively conceded they cannot satisfy it by trying to shift this burden onto the Plaintiffs under the guise of "constitutionality". *See, e.g.,* Opp. at 30 ("Plaintiffs relegate to a mere footnote their discussion of the constitutionality of applying California law to a putative, 'nationwide' class."); *see also In re Activision*, 621 F. Supp. at 430 (Defendants bear a substantial burden to not only show that conflicts exist, but that other states' interest in having their laws followed is greater than California's in applying its own laws). Indeed, *Zinser* confirms that Defendants, not Plaintiffs, bear the burden to show that California law conflicts with the law of another jurisdiction that has an interest in the case. *Zinser v. Accufix Research Inst., Inc.*, 253 F.2d 1180, 1187 (9th Cir. 2001). In that case, Zinser sought to apply the law of a state other than California to a nationwide class claim she was asserting. The court reasoned that "[b]ecause *Zinser* seeks to invoke the law of a jurisdiction other than California, she bears the burden of proof." *Id.*

Defendants make a feeble attempt to show that individual issues of law predominate the fiduciary duty claims because the laws governing agency relationships differ from state to state. *See* Opp. at 31-34. Not only do these arguments fall far short of the conflicts burden borne by Defendants as set forth above, but Defendants' current claim that the law of multiple jurisdictions would apply flatly contradicts Defendants' earlier representations to this Court that the law of only *one* state, Virginia, would apply.[15] As the Court has previously held:

> Defendant admits that for purposes of this motion, the law of California is substantively the same as the law of Virginia on fiduciary duty. Thus it is difficult to see that there is an actual conflict of laws, at least at this time . . . Where there is no true conflict of laws, the forum may apply its own law.

Katz Decl., Ex. 11 (Order Denying Motion to Transfer at 5:7-15); *see also id.*, Ex. 13 (PLAYERS INC's Motion for Judgment on the Pleadings at 6:4-5 and n. 5).

---

[15] The Defendants stated earlier that the breach of fiduciary duty claims should be governed by the law of one state – Virginia: "Because Players Inc is a Virginia corporation, the substantive law of Virginia regarding fiduciary duties applies here." Katz Decl., Ex. 13 (PLAYERS INC's Motion for Judgment on the Pleadings) at 6, n.5.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20199442.1

13

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION -
CASE NO. C07 0943 WHA

It is not likely that Defendants could ever show that any jurisdiction has a greater interest in applying its own law than in assuring the maintenance of a class action as all states have the shared goals of deterring breaches of fiduciary duties, providing a remedy for those who are injured and, no doubt, each state would prefer that its citizens' claims be litigated under California law than not at all. *See In re Seagate*, 115 F.R.D. at 270 (because plaintiffs face the choice of pursuing their pendant claims as part of the class action, or not at all, defendants cannot show that any jurisdiction has a greater interest in applying its own law than in assuring the maintenance of the class action).

In any event, even if Defendant could establish that the laws of multiple other jurisdictions should apply to the fiduciary claims, that fact alone would not necessarily destroy the basis for class certification in this case. *See, e.g., In re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271, 291-94 (S.D. Ohio 1997) ("state law does not need to be universal in order to justify nationwide class certification"). It is well-settled that differences in state law on issues such as relevant burdens of proof,[16] damages or statutes of limitations will not necessarily defeat nationwide class certification. *See, e.g., Sun Oil v. Wortman*, 486 U.S. 717, 722 (1988) (Supreme Court affirmed its long-standing holding that there is no constitutional bar to application of the forum state's statute of limitations to claims that in their substance are and must be governed by the law of a different state); *Allapattah Services, Inc. v. Exxon Corp.*, 188 F.R.D. 667, 678-79 (S.D. Fla. 1999), *aff'd* 333 F.3d 1248 (11th Cir. 2003) ("[a]lthough application of the laws of multiple states to a common set of claims certainly has potential complexities, [] on analysis, procedures and litigation devices are available, in common usage, to render these tasks manifestly manageable for the court, the jury and all the parties); *id.* (citing *Newberg on Class Actions* § 9.68 at 9-184) (the Court would simply instruct the jury as to both preponderance of the evidence and clear and convincing standards); *see also Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 470-71

---

[16] Defendants suggest that the Court determined that there was a conflict between California and other jurisdictions as to relevant burdens of proof. Opp. at 33, n.79. In fact, this Court did not determine that a conflict existed as to burdens of proof on fiduciary duty, but instead simply noted the arguments made by Defendants on this point. *See* Katz Decl., Ex. 11 (Order) at 4-5. Indeed, based on the very same arguments repeated by Defendants in its Opposition, (at n.79), the Court found that no "true" conflict existed on this issue. *Id.* at 5:12-15.

(1994) (even were there a difference among various states with regard to any damages issue, where contract contained choice of law clause, not only breach of contract claim, but also breach of fiduciary duty claim (where fiduciary duty arose from contract), would also be governed by the parties' choice of law).

## III. CONCLUSION

Based on the foregoing, each of the required elements for certification have been met. As a result, this Court should certify the classes and their claims.

Dated: April 4, 2008       MANATT, PHELPS & PHILLIPS, LLP

By: /s/Ronald S. Katz
Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
Noel S. Cohen (SBN 219645)
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone:   (650) 812-1300
Facsimile:   (650) 213-0260

McKOOL SMITH, P.C.
Lewis T. LeClair
Sam Baxter
Jill Adler Naylor
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: 214-978-4984
Facsimile: 214-978-4044

*Attorneys for Plaintiff*