# DEWEY & LEBOEUF

Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019-6092

tel +1 212 259 8050
fax +1 212 259 7013
jkessler@dl.com

April 9, 2008

VIA ELECTRONIC FILING

The Honorable William H. Alsup
United States District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

Re: Parrish v. National Football League Players Association, Case No. C07-0943 WHA

Dear Judge Alsup:

Plaintiffs' April 7 letter brief is nothing more than an attempt to fabricate discovery disputes that either do not exist or are not ripe for judicial intervention. Defendants have expended millions of dollars and a massive amount of attorney and paralegal time to comply with Plaintiffs' discovery requests, and have bent over backwards to act reasonably throughout the discovery process. Contrary to Plaintiffs' contentions, Defendants have more than fulfilled their discovery obligations, and the items Plaintiffs are raising now are designed to harass Defendants on the eve of the class certification hearing with issues the parties had already resolved, or are being raised with the Court even though the parties have not finished, or even begun, the meet and confer process. Indeed, this submission is being made just a few hours before the time when a meet and confer conference call was scheduled to take place to discuss for the first time many of these so-called issues (see Plaintiffs' Ex. A at 4). Plaintiffs apparently decided they would rather rush to court than participate in a good faith meet and confer process, and engage in posturing rather than obtain answers from Defendants. We respectfully request that the Court treat Plaintiffs' motion as the pretext it is, and reject it in its entirety.

Plaintiffs' Document Requests

Plaintiffs served their first, essentially identical document requests on June 15, 2007 and July 17, 2007, to Players Inc and the NFLPA, respectively (the "June 2007 Requests"). These requests were initially made almost a week before Plaintiffs filed the Second Amended Complaint ("SAC") in this action. On July 16, 2007, and on subsequent occasions, Plaintiffs requested that specific categories of documents be prioritized over the June 2007 Requests and produced before the August 30 hearing on the Motion to Dismiss the SAC (e.g., all group licensing agreements, all retired player "ad hoc" agreements, and all retired player GLAs). Despite concerns about disruption to the orderly and efficient collection of documents, on July 26, 2007, Defendants agreed, as a courtesy, to Plaintiffs' request. Furthermore, on August 29, 2007, the Court entered an Order regarding categories of documents to be produced. Defendants complied with this agreement and the Court's Order, producing over 95,000 pages of documents to Plaintiffs by the end of August 2007. Then, on September 6, 2007, the Court granted Defendants' Motion to Dismiss the SAC and stayed discovery, thus placing a hold on productions under the June 2007 Requests.

Plaintiffs filed their Third Amended Complaint ("TAC") on November 15, 2007, after the Court granted them leave to do so and lifted the stay of discovery. On November 26, the parties met and conferred regarding various scheduling issues. During the following two weeks, the parties continued

NEW YORK | LONDON multinationalpartnership | WASHINGTON, DC
ALBANY | ALMATY | AUSTIN | BEIJING | BOSTON | BRUSSELS | CHARLOTTE | CHICAGO | DUBAI
EAST PALO ALTO | FRANKFURT | HARTFORD | HONG KONG | HOUSTON | JACKSONVILLE | JOHANNESBURG (PTY)LTD.
LOS ANGELES | MILAN | MOSCOW | PARIS multinationalpartnership | RIYADH affiliated office | ROME | SAN FRANCISCO | WARSAW

dockets.Justia.com

to discuss the date for the class certification motion deadline, and its impact on the timing of further document production. Defendants objected to Plaintiffs' demand that Defendants respond to all outstanding documents requests (which were based on complaints that had since been dismissed) virtually immediately when Plaintiffs were also demanding that the class certification motion be briefed and heard immediately as well, and especially when Plaintiffs had advised Defendants that they expected to serve substantial additional document requests.[1] On December 6, 2007, Plaintiffs agreed "to limit their existing requests to the following [six] categories of documents." With minor agreed upon modifications, Defendants agreed to produce documents in response to these six requests. The quid pro quo was that Plaintiffs would again be able to prioritize certain categories of documents (including certain documents that they had never previously requested) in exchange for limiting their June 2007 Requests (while reserving the right to revisit those Requests). Defendants then devoted a large group of attorneys and paralegals to reviewing and producing all responsive documents by the end of February, and completed the production on time after strenuous effort. Specifically, Defendants reviewed hundreds of thousands of documents and emails and had a team of over ten attorneys working around the clock to timely complete this production – which they did.[2]

On February 26, 2008, after this massive production was essentially complete, Plaintiffs reversed course and demanded production of all documents responsive to their vastly overbroad June 2007 Requests. Defendants objected to such a new production based on requests relevant to a complaint that had been dismissed and subsequently changed, especially since Plaintiffs indicated they still intended to propound yet additional requests on Defendants. Defendants advised Plaintiffs that they would object to repeated comprehensive productions, and that one additional comprehensive production should be agreed to. On March 6, 2008, the parties met and conferred. As Plaintiffs acknowledge, Defendants advised Plaintiffs that all documents responsive to many of their original June 2007 Requests had already been produced under either the discrete productions ordered by the Court or Plaintiffs' revised December 2007 Requests. Defendants sought to reach a reasonable agreement as to the remaining documents to be produced. Defendants tentatively agreed to produce sixteen categories of documents in addition to the six revised December Requests, and sent Plaintiffs a letter the day after the meet and confer itemizing those requests, stating the terms of the tentative agreement, and noting that Plaintiffs were still considering whether to add certain additional requests to the sixteen identified in the request, but also noting that Defendants understood from the meet and confer that any additional requests would only seek discrete categories of documents. Ex. 1 passim; id. at 4. The letter confirmed, as the parties discussed in the meet and confer, that the new requests would be "replacing the earlier requests made before the TAC was filed." Id. at 1. Based on the representations made in the meet and confer, Defendants began immediately collecting and reviewing documents responsive to the sixteen new requests, yet another massive (and costly) undertaking. On March 14, as confirmed by an email from Plaintiffs on March 21, Defendants confirmed, and Plaintiffs accepted, that Defendants would soon begin the "rolling production stemming from our March 6 meet and confer." See Ex. 2. However, Plaintiffs then served, later on March 14, twenty-three new requests, several of which were wholly outside the scope of the sixteen requests discussed on March 6. Then, on March 17, Plaintiffs advised Defendants that they disagreed that the new supplemental requests would serve as a "substitute" for the June 2007 Requests previously propounded by Plaintiffs.

Plaintiffs are abusing the discovery process and engaging in litigation gamesmanship by shifting from the supplemental requests Defendants have agreed to produce, back to the June 2007 Requests, which

---

[1] This scheduling impasse was placed before this Court on a motion as to the class certification hearing schedule. On December 7, 2007, the Court denied Plaintiffs' request for an immediate class certification briefing schedule, and adopted Defendants' proposed schedule.

[2] During this time, depositions by Plaintiffs also commenced, and Plaintiffs have since completed eight separate depositions, with a ninth deposition by Plaintiffs scheduled for tomorrow.

were propounded (and objected to) under a complaint that has long since been dismissed. Plaintiffs are deliberately subjecting Defendants to gigantic and unnecessary discovery costs as Defendants are attempting to complete one final supplemental production so that the costs and burdens of this case are not wildly out of control. Moreover, Plaintiffs have refused to meet and confer in good faith over reasonable reformulations of vastly overbroad requests. Indeed, as indicated on the chart submitted herewith as Exhibit 3, and as reviewed with Plaintiffs in the March 6 meet and confer, Defendants have already produced documents that are complete productions in response to 18 of the 22 requests originally propounded in June 2007. Defendants simply wish to get this final supplemental production done in an organized fashion, without undue expense, and without having to refer back to document requests that were based on a complaint that is no longer in effect. Defendants respectfully urge the Court to reject Plaintiffs' demand that the June 2007 requests be further responded to, and put an end to this effort at harassment which is disrupting Defendants' effort to complete the supplemental production agreed upon on March 6 and to respond to Plaintiffs' new requests.

Post-Complaint Supplementation

On March 4, 2008, Plaintiffs requested that Players Inc monthly reports be produced for December 2007 to the present. Defendants explained in their March 5 letter and during the March 6 meet and confer that Plaintiffs' requests for documents about Defendants' ongoing and future business created well after plaintiffs either had a GLA in force (not since December 31, 2005) or were a member of the retired players association (not since April 30, 2006) sought documents that are not in any way relevant to Plaintiffs' claims. Defendants thought this issue was settled, but, when Plaintiffs recently raised supplementation again on April 2, 2008, Defendants reiterated their position. See Ex. 4 at 3. Plaintiffs now assert that, based on their understanding that GLAs are no longer being accepted by Defendants from retired players, Plaintiffs are entitled to communications on this issue. This is another example of Plaintiffs' shifting positions and failure to meet and confer. Plaintiffs acknowledge that they have not even asked Defendants whether any such documents exist. Plaintiffs fall far short of demonstrating that Defendants' production is incomplete or incorrect in any material respect, as required by Rule 26(e)(1)(A). Plaintiffs' request should be denied.

Plaintiffs' Demand for Declarations About Defendants' Production

There is no basis for Plaintiffs' request that each Defendant provide declarations about their document search and preservation efforts. The only reason that Plaintiffs voluntarily provided a declaration from Mr. Adderley was in connection with a meet and confer process regarding Defendants' concerns that Mr. Adderley has failed to stop the automatic deletion of his emails. Plaintiffs have never propounded any formal discovery request to Defendants about e-mail or website preservation. Nevertheless, Defendants voluntarily provided to Plaintiffs a letter from counsel detailing all of the steps taken to guarantee the preservation of Defendants' websites and e-mail (a fact which Plaintiffs bury in a footnote at the end of their letter brief). Ex. 4 at 2-3. This letter more than satisfied Plaintiffs' requests for information about this subject.

Finally, there is also no basis for Plaintiffs' complaints about the level of specificity Defendants provided as to the files searched, or information as to the fact that attorneys, paralegals and/or staff persons properly searched the files of certain of Defendants' executives. Plaintiffs have not discussed these issues in a meet and confer, as is required before bringing any such matter to the Court, and indeed a meet and confer was scheduled for this very afternoon before Plaintiffs aborted that process by filing their letter brief. As to the search of the executives' files, it is standard practice to have attorneys, paralegals and staff persons conduct such searches, and there is nothing untoward in the fact that someone other than Mr. Upshaw and Mr. Feffer searched all of their files for relevant responsive documents. Plaintiffs' request appears to be nothing other than a desire to personally harass Mr. Upshaw and Mr. Feffer.

Respectfully submitted,


/s/ Jeffrey L. Kessler
Jeffrey L. Kessler
Counsel for Defendants