

Ronald S. Katz
Manatt, Phelps & Phillips, LLP
Direct Dial: (650) 812-1346
E-mail: rkatz@manatt.com

June 4, 2008                                                                                                    Client-Matter: 29749-060

**VIA ELECTRONIC FILING**

The Honorable William Alsup
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      **Re:** *Parrish v. National Football League Players Association*, **Case No. C07-0943 WHA**

Dear Judge Alsup:

    We represent Plaintiffs Herbert Anthony Adderley, Bernard Paul Parrish and Walter Roberts III (collectively, "Plaintiffs") in the above-referenced class action. Plaintiffs submit this letter brief pursuant to Paragraph 26 of the Court's Supplemental Standing Order. Plaintiffs respectfully request an Order from this Court compelling Defendants to produce the employment contracts and compensation information of Gene Upshaw, the Executive Director of Defendant National Football League Players Association ("NFLPA") and Chairman of Defendant National Football League Players Incorporated d/b/a Players Inc ("PLAYERS INC").[1]

### I.      Procedural Background

    Document Request No. 46 to PLAYERS INC and Document Request No. 48 to the NFLPA each call for "[a]ll employment contracts of Gene Upshaw." Similarly, Document Request No. 47 to PLAYERS INC and Document Request No. 49 to the NFLPA each call for "[d]ocuments sufficient to show all monies received by Gene Upshaw in connection with his employment by Defendants."

    Defendants originally refused to produce any documents responsive to these requests on the ground that Plaintiffs are allegedly motivated by a "political agenda." Defendants, however, offered no explanation about this alleged agenda much less any facts to support their baseless allegation. Defendants appear no longer to be pressing this argument.

    Defendants also originally refused to produce any documents responsive to these requests on the ground that such documents are irrelevant. This argument is without merit, as explained in Section II below.

    Defendants did not raise a burdensomeness objection to these responses, nor could they, considering the small amount of responsive documents called for. Moreover, to the extent Defendants are or were worried about the sensitive nature of any responsive documents, they have the right under the parties' protective order (which right they have already exercised repeatedly) to designate any documents produced in discovery "Highly Confidential – Attorneys' Eyes Only."

---

[1] This is the third discovery motion brought by the parties in this matter. The parties have exchanged correspondence on the issues raised in this motion, but were unable to reach a resolution. *See* **Exhibits A-C**. The close of discovery was May 23, 2008, and the last day to file motions to compel is today.

1001 Page Mill Road, Building 2, Palo Alto, California  94304-1006   Telephone: 650.812.1300  Fax: 650.213.0260
Albany  |  Los Angeles  |  New York  |  Orange County  |  Palo Alto  |  Sacramento  |  Washington, D.C.

Dockets.Justia.com



On May 30, 2008, Plaintiffs sent Defendants a 2½-page letter addressing in detail each of Defendants' objections.  *See* **Exhibit A**.  Defendants responded on June 2, 2008 with a letter that consisted of only two paragraphs of argument with no legal citations.  *See* **Exhibit B**.  Defendants' June 2 letter made clear that they would not be producing responsive documents for the reasons stated in their letter.  *See id.*  Plaintiffs replied to Defendants' letter on June 3, this time carefully addressing each of the points raised in Defendants' two paragraphs of argument.  *See* **Exhibit C**.  Once Defendants confirmed that they intended to stand by their objections in a single-line e-mail dated today, June 4, Plaintiffs had no choice but to file this letter brief.

## II.  Mr. Upshaw's Employment Contracts and Related Documents Are Highly Relevant

As this Court is aware, and as Plaintiffs informed Defendants on May 30, 2008, the standard for determining relevance is quite broad.  When determining whether certain information sought by a party is "relevant", the question is whether "there is *any possibility* that the information sought may be relevant to the subject matter of [the] action."  *Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993) (emphasis added).  "Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have *no possible bearing* upon the subject matter of [the] action."  *Id*. (emphasis added).

Documents concerning Mr. Upshaw's employment with both Defendants, and his compensation in connection with such employment, are relevant to this dispute.  Plaintiffs have expressly alleged in their Third Amended Complaint that, "instead of complying with the express terms of the GLAs signed by Adderley and other retired members of the NFLPA, PLAYERS INC has . . . with the concurrence of or at the direction of the NFLPA, diverted millions of dollars from the licensing revenue depository account to PLAYERS INC and the NFLPA."  Third Amended Complaint ¶ 39.  Plaintiffs have further alleged that "this money was used to support the overhead, substantial salaries and perquisites of those entities," including the salary of Gene Upshaw.  *Id.*

Plaintiffs are entitled to conduct discovery into these allegations and to determine, for example, whether and what percentage of Mr. Upshaw's compensation is dependent on or tied to revenues derived from player licensing.[2]  Plaintiffs are also entitled to learn how much of the money they should have received went into the pockets of Mr. Upshaw.

Plaintiffs also have alleged that Defendants breached their fiduciary duty to Plaintiffs by, among other things, failing to represent their best interests in pursuing licensing opportunities.  *See generally* TAC ¶¶ 40-55.  Mr. Upshaw inserted himself into this issue by offering inconsistent deposition testimony on his personal efforts to promote retired players in connection with licensing opportunities. *See* fourth paragraph of Exhibit C.  Plaintiffs are entitled to learn whether Mr. Upshaw's efforts on behalf of retired players, or lack thereof, are somehow tied to the amount of his compensation or to the terms of his employment.

---

[2]  Defendants have previously claimed that there cannot be any connection between the amount of Mr. Upshaw's compensation and Defendants' licensing revenue because Defendants' audited statements show that Defendants derive revenue from other sources.  *See* **Exhibit B**.  However, simply because Defendants receive revenue from sources other than player licensing does not mean that Mr. Upshaw's employment and compensation must come from these other sources.  Nowhere in the audited reports is Mr. Upshaw's compensation tied directly to any one source – licensing revenue or otherwise – nor have Defendants made such an allegation.



Mr. Upshaw's employment with both Defendants, and his compensation in connection with such employment, also are relevant to conclusions made by Plaintiffs' sports economics expert, Daniel A. Rascher, Ph.D. Dr. Rascher recently determined that, over the period 2003-2007, Mr. Upshaw received 1.8 to 3.5 times more than his counterparts at the National Basketball Players Association ("NBPA") and at the Major League Baseball Players Association ("MLBPA"). Moreover, in 2007 alone, Mr. Upshaw's compensation was between 2.9 and 6.7 times higher than what Billy Hunter (NBPA) and Donald Fehr (MLBPA) received, respectively. Mr. Rascher stated that, in his professional opinion, he knew of "no reason why Mr. Upshaw's total compensation should be so far in excess of that of the other unions' executive directors."

Plaintiffs anticipate Defendants attacking Dr. Rascher's findings on this issue. Dr. Rascher needs the documents requested by Plaintiffs so that he can further support his findings and defend them against Defendants' expected attacks.[3] Eventually Plaintiffs intend to show that a percentage of Mr. Upshaw's salary should be re-allocated to those retired players whose rights were or should have been licensed to third parties.

Defendants have stated that Plaintiffs do not need Mr. Upshaw's employment contracts and compensation information because the amounts paid to Mr. Upshaw are already publicly available in Defendants' LM-2 reports. *See* **Exhibit B**. This argument is unavailing. According to Dr. Rascher – who has juxtaposed the LM-2 reports with Defendants' own financial documents – the numbers submitted by Defendants in their LM-2 reports (which are unverified) are a poor proxy for the numbers in Defendants' financial documents. As an example, when compared to Defendants' financial documents, the LM-2 reports understate the amount of Defendants' licensing revenues and overstate the amounts distributed to players. This creates serious concerns about the accuracy of the LM-2s.

Moreover, although the LM-2 reports purport to identify the amount of Mr. Upshaw's compensation, they do not go so far as to explain how Mr. Upshaw's compensation is determined. To give a specific example, although the LM-2 reports show that Mr. Upshaw's annual compensation averaged $3.5 million per year from 2003 to 2007, they do not explain why Mr. Upshaw's salary suddenly and unexpectedly skyrocketed to $6.7 million in 2007. They also do not explain whether this meteoric rise in Mr. Upshaw's salary is somehow related to the extremely lucrative licensing arrangement he entered into with Electronic Arts, which is an important part of this case.

For the reasons given above and in Plaintiffs' earlier letters to Defendants, Plaintiffs respectfully request that Defendants be compelled to produce documents responsive to Document Request Nos. 46 and 47 to PLAYERS INC and Document Request Nos. 48 and 49 to the NFLPA

Respectfully submitted,
   /s/ Ronald S. Katz
Ronald S. Katz
Counsel for Plaintiffs

20202153.1

---

[3] In his report, Dr. Rascher raised several questions about the details of Mr. Upshaw's compensation based on information provided in the LM-2s and elsewhere. In the event Defendants are ordered to produce the documents requested by Plaintiffs, Dr. Rascher expects that he will be able to update his calculations, which he has expressly reserved his right to do.