MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS III, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' MOTION TO STRIKE THE DECLARATIONS OF LINDA CASTILLON, ADAM SULLINS, JASON BRENNER, CHRISTINE FINCH AND STEVE BYRD FILED IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20203327.1

Plaintiffs ask the Court to strike the declarations of Linda Castillon, Adam Sullins, Jason Brenner, Steve Byrd, and Christine Finch (the "Declarations"), filed by Defendants in support of their Motion for Summary Judgment, dated June 13, 2008, from the summary judgment record.

**BACKGROUND**

At the outset of the case, Plaintiffs requested that the Court allow the parties to take twenty depositions per side.[1] Plaintiffs argued that significant discovery was warranted in this case due to "the complex nature of this action and the anticipated need to conduct depositions of third party witnesses." *Id.* Defendants, however, opposed Plaintiffs' request. *Id.* at 6-7. Defendants represented to the Court that this case "was not especially complex"[2] and successfully argued that the Court limit each party to ten depositions. *Id.*

On the very same day that it requested that the Court limit the number of depositions in this case, Defendant National Football League Players Incorporated ("Players Inc") served its Rule 26(a)(1) disclosures in which it identified <u>nineteen</u> present and former employees that were likely to have discoverable information about the facts and circumstances of this case.[3] Notably, Players Inc did not provide Plaintiffs with any background information regarding the nineteen witnesses that it disclosed, other than to state whether each individual was currently employed by Players Inc. In addition, Players Inc did not identify any third-party witnesses as part of its June 7, 2007 disclosures.

Three weeks later, on June 29, 2007, the National Football League Players Association (the "NFLPA") and Players Inc jointly served initial disclosures.[4] Defendants' June 29, 2007 disclosures identified an additional thirteen (third-party) witnesses, bringing the total number of

---

[1] *See* June 7, 2007 Joint Case Management Statement at 5-6, attached as Exhibit A to the Declaration of Brett Charhon filed herewith ("Charhon Decl.").

[2] Ironically, on June 4, 2008, Defendants reversed course and characterized this case as "varied and complex" in its request for a page extension. Defendants' Unopposed Miscellaneous Administrative Motion to Exceed Page Limits at 2 (Rec. Doc. 284).

[3] Defendant Players Inc's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) ("Charhon Decl. Ex. B").

[4] Initial Disclosures of Defendants NFLPA and Players Inc Pursuant to Fed. R. Civ P. 26(a)(1) (Charhon Decl. Ex. C).

witnesses disclosed by Defendants to thirty-two. Again, Defendants failed to comply with disclosure requirements by failing to disclose (i) the type of discoverable information that each witness possessed and (ii) an address and telephone number for each witness.

Despite these failures, Plaintiffs identified the witnesses that they believed to be most relevant to this case and diligently began noticing and taking their depositions. Plaintiffs took the deposition of Doug Allen on September 7, 2007; Joel Linzner on February 8, 2008; Glenn Eyrich on February 12, 2008; Gene Upshaw on February 13, 2008; and Howard Skall on February 14, 2008. In addition, Plaintiffs continued negotiating deposition dates for the depositions of Pat Allen which it had noticed on August 6, 2007, and the Topps Company which it had subpoenaed on January 4, 2008.[5] By mid-February, Plaintiffs had noticed or taken seven depositions toward the ten-deposition limit.

Nevertheless, on February 19, 2008, Defendants again supplemented their Rule 26(a) disclosures, identifying ten additional third-party witnesses, for a total of forty-two disclosed witnesses.[6] These disclosures, for the first time, identified Linda Castillon, Adam Sullins, Steve Byrd and Christine Finch -- four of the five witnesses whose declarations are the subject of this motion.[7] Once again, however, Defendants failed to identify the witnesses' contact information.

Over the next month, Plaintiffs continued to diligently conduct depositions. Plaintiffs deposed Patricia Allen on February 28, 2008 and took the depositions of two of Topps' 30(b)(6) witnesses, Warren Friss and Adam Zucker, on April 4, 2008. In addition, Plaintiffs deposed Defendants' in-house counsel, Joseph Nahra, on April 16, 2007.

Having reached the ten-deposition limit with more than thirty of Defendants' witnesses yet to be deposed, Plaintiffs approached Defendants regarding the need for additional depositions.

---

[5] *See*, *e.g.*, August 6, 2007 Deposition Notice of Pat Allen (Charhon Decl. Ex. D); August 6, 2007 Deposition Notice of Howard Skall (Charhon Decl. Ex. M) and January 4, 2008 Subpoena of the Topps Company (Charhon Decl. Ex. E).

[6] Defendants' Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) (Charhon Decl. Ex. F).

[7] Defendants never disclosed Jason Brenner, the fifth declarant whom Plaintiffs seek to strike.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20203327.1     3

On May 7, 2008, Plaintiffs sent Defendants a letter in which they identified all of Defendants' witnesses who had yet to be deposed, including Steve Byrd, Linda Castillon, Adam Sullins, and Christine Finch.[8] In an effort to streamline the remaining discovery, Plaintiffs' May 7, 2008 letter requested that Defendants stipulate which undeposed witnesses would not be called at trial, and to provide deposition dates for any remaining witnesses.

On May 9, 2008, Defendants sent Plaintiffs a letter refusing to pare down their disclosure list.[9] In addition, Defendants refused to consider any agreement that allowed for Plaintiffs to take more than "one or two additional depositions." *Id.* Yet, on the very same day, Defendants again supplemented their disclosures -- identifying two additional witnesses.[10] As of May 9, 2008, Defendants had disclosed a total of forty-four witnesses.

In the hopes of reaching some form of agreement, Plaintiffs next proposed that the parties postpone any additional depositions until closer to trial, but agree that if any undeposed witness were to testify at trial, that the other party would be entitled to a half-day deposition.[11] Plaintiffs explained that this proposal "would be both efficient and cost-effective." *Id.* Defendants again rejected Plaintiffs proposal.[12]

Defendants reiterated that they were only willing to permit Plaintiffs to take two additional depositions despite the fact the more than thirty of the witnesses that Defendants disclosed had yet to be deposed. Plaintiffs refused to agree to a proposal that allowed for Defendants to ambush Plaintiffs at trial with testimony from undeposed witnesses and declined to accept Defendants' proposal. In letters dated May 22, 2008 and May 30, 2008, Plaintiffs explained that Defendants' unwillingness to be reasonable had left Plaintiffs with no choice but to

---

[8] May 7, 2008 Letter from Laura Franco to David Greenspan (Charhon Decl. Ex. G).

[9] May 9, 2008 Letter from David Greenspan to Laura Franco (Charhon Decl. Ex. H).

[10] See Defendants' (May 9, 2008) Supplemental Disclosures Pursuant to Fed. R. Civ P. 26(a)(1) (identifying Richard Berthelson and Steve Saxon for the first time) (Charhon Decl. Ex. I).

[11] May 13 Email from Ron Katz to David Greenspan (Charhon Decl. Ex. J); *see also* May 22, 2008 Letter from Lewis LeClair to David Greenspan (Charhon Decl. Ex. K).

[12] May 14, 2008 Letter from David Greenspan to Ron Katz (Charhon Decl. Ex. L).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

object to Defendants' reliance on any undeposed witness for whom proper disclosure was not timely made.[13]

Despite the obvious prejudice to Plaintiffs, on June 13, 2008, Defendants filed five declarations in support of their Motion for Summary Judgment from witnesses who have not been deposed.

## ARGUMENT

**A. The Court has Discretion, Under Rule 37, to Fashion Appropriate Sanctions to Support the Discovery Process**

Under Rule 37(c)(1), if a party does not properly disclose its witnesses, the party is precluded from using the testimony of that witness, unless the failure to properly disclose was harmless or substantially justified.[14] *See Yeti by Molly Ltd. v. Deckers Outdoors Corp.*, 259 F.3d

---

[13] May 22, 2008 letter from Lew LeClair to David Greenspan (Charhon Decl. Ex. K) and May 30 Letter for Lew LeClair to David Greenspan (Charhon Decl. Ex. N). *See also* Plaintiffs' June 10, 2008 letter to Defendants ("As I have repeatedly explained, Defendants position of 'hide the ball' has left Plaintiffs with little choice but to insist that Defendants use only those witnesses who were fully and adequately disclosed and to challenge the adequacy and timeliness of Defendants' disclosures. Had Defendants properly disclosed its witness and/or agreed to a reasonable number of depositions from the outset, none of this would be an issue.") (Charhon Decl. Ex. O).

[14] Rule 37(c)(1) states:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Rule 26(a)(1)(A) states, in part:

> (A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
>
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information -- along with the subjects of that

1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."). The burden rests with Defendants to prove that such failure was harmless or substantially justified. *See id.* at 1107 (citing *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001) ("It is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with [Rule 26] was either justified or harmless . . . ." )).

**B. Defendants Failed to Timely Disclose the Names and Contact Information of their Witnesses, Prejudicing Plaintiffs**

At Defendants' request, the Court limited the parties to ten depositions per side. *After* Plaintiffs had already chosen and deposed multiple individuals identified on Defendants' disclosures, Defendants belatedly disclosed four of the five witnesses who authored Declarations. Courts recognize the prejudice wreaked by such late disclosure:

> Here, the harm to defendant in plaintiff's failure to disclose Molina as a potential witness is not that he does not now have access to her, but that he did not know plaintiff viewed Molina as a potential witness in the case. At this late stage in the proceedings, he does not have the opportunity to propound discovery to plaintiff to determine his view of Molina's relevance or what he may seek to elicit from her as a witness.

*Green v. Baca*, 226 F.R.D. 624, 655-56 (C.D. Cal. 2005).[15] Here, the prejudice is heightened: Defendants had already identified <u>thirty-two</u> witnesses by June 29, 2007, forcing Plaintiffs to choose, to the best of their ability, the few most appropriate for deposition.[16] After engaging in that analysis, and after serving deposition notices for seven of those depositions, Defendants changed the playing field by identifying an additional <u>ten</u> witnesses.

---

information -- that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

[15] The Court in *Sender v. Mann* noted similar problems caused by late disclosure of witnesses. *See* 225 F.R.D. 645, 656-57 (D. Colo. 2004) (suggesting that belated disclosures prevent opposing litigants to make intelligent decisions regarding how they will efficiently use the limited number of depositions permitted under a scheduling order, and increase the time before a litigant can depose that witness, allowing the witness's memory to further dim).

[16] This choice was also hampered by Defendants' failure to provide the type of discoverable information that each witness possessed, and an address and telephone number for each witness.

Given the deposition limits advocated by Defendants, they cannot credibly claim surprise that this late addition would prejudice Plaintiffs. All the same, Plaintiffs informed Defendants of their prejudice, and asked for additional depositions to cure this prejudice. *See* Exs. G, J. Defendants refused Plaintiffs' overtures.

Furthermore, Plaintiffs are specifically prejudiced by their inability to question these witnesses on the substance of the Declarations. For example, the declaration of Adam Sullins states that "the 2004 [Upper Deck] License Agreement includes the rights of active players only." *See* Defs.' MSJ Ex. 28. At a deposition, Plaintiffs would have asked Mr. Sullins to explain this statement, in light of the representations to the contrary in the license agreement. *See* Defs.' MSJ, Ex. MM to the Hilbert Decl.[17]

Similarly, the declaration of Linda Castillion states that "Fathead's and Players Inc's mutual understanding that the 2005 License Agreement only included active players was discussed orally and is also reflected in the language of the 2005 License Agreement." *See* Defs.' MSJ Ex. 11. At deposition, Plaintiffs would have asked Ms. Castillon to describe what she and Defendants discussed about Defendants' ability to license the group rights of 2,100 retired players, including the price of such a license grant. Plaintiffs would also ask Ms. Castillon to explain how her discussion with Defendants concerning retired player rights is reflected in the parties' agreement when there is absolutely no mention of the parties' discussions.

As yet another example, Steve Byrd -- who was *never* disclosed by Defendants -- wrote that "The fantasy games operated by STATS under the 2006 License Agreement did not involve any retired players." *See* Defs.' MSJ Ex. 31. However, according to STAT's own website (biz.stats.com/historicaldata.asp), STATS offers an in-depth historical database consisting of retired NFL player data, including "player and team statistics, leaderboards, schedules, standings, awards, draft information, injuries and transactional data." *See* Defs' MSJ, Ex. CCC to the

---

[17] "NFLPA represents that the NFLPA has been duly appointed and is acting on behalf of the active and retired football players . . . who have entered into a Group Licensing Assignment . . . . NFLPA also on occasion secures authorization . . . from players, including but not limited to retired players, who . . . nevertheless, authorize NFLPA to represent such players for designated NFLPA licensed programs."

Hilbert Decl. At a deposition, Plaintiffs could have explored these seemingly contradictory positions; now, Plaintiffs have no such opportunity.

Defendants' failure to identify the five witnesses listed above on a timely basis violates Rule 26 and precluded Plaintiffs' ability to obtain timely discovery. Defendants are gaming the system: Plaintiffs embarked on their discovery plan based on a potential pool of thirty-two witnesses, and Defendants slipped in ten additional witnesses once the majority of Plaintiffs' deposition slots had been filled. It is no wonder that Defendants only submitted declarations from <u>three</u> of their originally-disclosed thirty-two witnesses, while submitting declarations from <u>four</u> of the ten late-disclosed witnesses. Plaintiffs' inability to cross examine the witnesses that Defendants now rely on in support of Summary Judgment is prejudicial.

**C. Striking the Declarations Is an Appropriate Sanction**

Rule 37 sets out the appropriate sanction for failure to properly disclose witnesses: forbidding the use of the testimony of these witnesses. This is supported by Ninth Circuit authority. *See Yeti*, 259 F.3d at 1106 (Rule 37 is a "self-executing, automatic sanction" (internal citations omitted) (quoting Fed. R. Civ. P. 37 Advisory Committee Notes 1993)). As Summary Judgment briefing is pending, ordering further depositions of third parties at this point presents logistical issues, and implicitly rewards Defendants for their actions. *Cf. Sender*, 225 F.R.D. at 657 ("To suggest that sanctions are not appropriate simply because the trial court can provide a further extension of time or delay the trial would effectively reward Sender's non-compliance."). Thus, Plaintiffs respectfully request that the Court apply Rule 37 and strike the declarations of the late-disclosed witnesses.[18]

**CONCLUSION**

Plaintiffs respectfully request that the Court strike the declarations of Linda Castillon, Adam Sullins, Jason Brenner, Steve Byrd, and Christine Finch from the summary judgment record.

---

[18] Plaintiffs expect that Defendants may attempt to call a number of these late-disclosed witnesses at trial. As a result, Plaintiffs intend to request similar relief at that time. Alternatively, Plaintiffs are amenable to exploring the possibility of the Court ordering depositions of any witnesses Defendants plan to call at trial, so that Plaintiffs may adequately prepare for their testimony.

| | |
|---|---|
| | Respectfully submitted, |
| Dated: July 1, 2008 | MANATT, PHELPS & PHILLIPS, LLP |

By:_____/s/ Ryan S. Hilbert_____
　　　Ronald S. Katz (SBN 085713)
　　　Ryan S. Hilbert (SBN 210549)
　　　Noel S. Cohen (SBN 219645)
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
Lewis T. LeClair (SBN 077136)
Jill Adler Naylor (SBN 150783)
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*