Parrish et al v. National Football League Players Incorporated Doc. 312

Todd Padnos (Bar No. 208202)
*tpadnos@dl.com*
DEWEY & LEBOEUF LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Tel: (415) 951-1100; Fax: (415) 951-1180

Jeffrey L. Kessler (*pro hac vice*)
*jkessler@dl.com*
David G. Feher (*pro hac vice*)
*dfeher@dl.com*
David Greenspan (*pro hac vice*)
*dgreenspan@dl.com*
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 259-8000; Fax: (212) 259-6333

Kenneth L. Steinthal (*pro hac vice*)
*kenneth.steinthal@weil.com*
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000; Fax: (650) 802-3100

Bruce S. Meyer (*pro hac vice*)
*bruce.meyer@weil.com*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000; Fax: (212) 310-8007

Attorneys for Defendants National Football League Players Association and National Football League Players Incorporated d/b/a Players Inc

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III,

Plaintiffs,

v.

NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC,

Defendants.

Case No. C 07 0943 WHA

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Judge: Honorable William H. Alsup
Date: July 24, 2008
Time: 8:00 a.m.
Place: Courtroom 9, 19th Floor

**[PUBLIC VERSION]**

Dockets.Justia.com

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

I.   SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST THE GLA
     CLASS'S BREACH OF CONTRACT CLAIM .............................................................. 2

     A.   Plaintiffs Do Not Dispute That Defendants Generated And Paid Over
          [REDACTED] In Licensing Revenues To Retired Players .................................. 2

     B.   The Adderley GLA Is Expressly Limited To "Moneys Generated By Such
          Licensing Of Retired" – Not Active – "Player Group Rights" ............................ 4

     C.   The Revenues Generated By The [REDACTED] License Agreements At
          Issue Were Generated Solely By Active Player Group Licensing ....................... 6

          1.   The Four Corners of the License Agreements Establish That Only
               Active Player Rights Were Licensed ........................................................ 6

          2.   The Extrinsic Evidence Also Establishes That Only Active Player
               Rights Were Licensed ............................................................................... 7

     D.   Plaintiffs Are Even Seeking Revenues From License Agreements That, On
          Their Face, Do Not Mention Retired Players ...................................................... 9

     E.   There Is No Triable Issue Of Fact As To Breach Of Contract Or Damages ........ 10

II.  SUMMARY JUDGMENT SHOULD ALSO BE GRANTED AGAINST THE
     GLA CLASS'S BREACH OF FIDUCIARY DUTY CLAIM ......................................... 13

     A.   There Is No Evidence That The GLAs Gave Rise To A Fiduciary Duty ............. 13

     B.   There Is No Evidence To Support A Claim That Defendants Breached
          Any Alleged Fiduciary Duty ............................................................................... 16

     C.   There Is No Triable Issue Of Fact With Respect To Injury Or Damages ............. 19

CONCLUSION ............................................................................................................................ 20

Defs.' Reply Br. in Support of Their Mot. for Summary Judgment        Civ. Action No. C07 0943 WHA

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**


Ames v. Yellow Cab of D.C., Inc., No. 00-3116 (RWR)(DAR), 2006 WL 2711546 (D.D.C. Sept. 21, 2006) ........ 14

Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano, No. 03 Civ. 0015 (RWS), 2004 U.S. Dist. LEXIS 25235 (S.D.N.Y. Sept 13, 2004) ........ 15

Black v. Nat'l Football League Players Ass'n, 87 F. Supp. 2d 1 (D.D.C. 2000) ........ 10

Copenhaver v. Rogers, 238 Va. 361 (1989) ........ 8

Day v. Avery, 548 F.2d 1018 (D.C. Cir. 1976) ........ 19

Far Out Prods., Inc. v. Oskar, 247 F.3d 986 (9th Cir. 2001) ........ 8, 17

Ft. Lincoln Civic Ass'n, Inc. v. Ft. Lincoln New Town Corp., 944 A.2d 1055 (D.C. 2008) ........ 8

Hager v. Gibson, 109 F.3d 201 (4th Cir. 1997) ........ 19

German Alliance Ins. Co. v. Home Water Supply Co., 226 U.S. 220 (1912) ........ 8

Jackson v. Loews Wash. Cinemas, Inc., 944 A.2d 1088 (D.C. 2008) ........ 14, 15

In re Leisure Corp., No. C-03-03012 RMW, 2007 WL 607696 (N.D. Cal. Feb 23, 2007) ........ 8

Mackey v. Pioneer Nat'l Bank., 867 F.2d 520 (9th Cir. 1989) ........ 10

Murphy v. Holiday Inns, Inc., 216 Va. 490 (1975) ........ 14, 15

Nellis v. Air Line Pilots Ass'n, 144 F.R.D. 68 (E.D. Va. 1992) ........ 15

Pfingston v. Ronan Eng'g Co., 284 F.3d 999 (9th Cir. 2002) ........ 10

Vaca v. Sipes, 386 U.S. 171 (1967) ........ 15

ViChip Corp. v. Lee, 438 F. Supp. 2d 1087 (N.D. Cal. 2006) ........ 8

Wells v. Whitaker, 207 Va. 616 (1966) ........ 14

**OTHER AUTHORITIES** **Page(s)**

29 C.F.R. § 403.8(b)(1)........................................................................................................ 13

**Dewey & LeBoeuf LLP**
**One Embarcadero Center, Suite 400**
**San Francisco, CA 94111**

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

## PRELIMINARY STATEMENT

Plaintiffs' Opposition Brief is saturated with rhetoric, unsupported lawyer's arguments, and unfounded accusations about the integrity of Defendants and their officers – but it is fatally deficient when it comes to probative and admissible evidence to support the GLA Class's breach of contract and fiduciary duty claims. Far from satisfying their burden in opposing summary judgment, Plaintiffs' Opposition simply confirms the absence of evidence to contest the undisputed facts that:

(i) Every GLA Class member was fully paid whenever his rights were utilized by Defendants or their licensees, and such payments, including royalties for numerous "ad hoc" programs involving six or more retired players – i.e., "group licensing" – have totaled more than [REDACTED] for retired players since 2003 (Point I.A);

(ii) The Adderley GLA does not provide for the GLA Class to recover money generated by active player licensing, much less provide for an "equal share" [REDACTED] (Points I.B, D);

(iii) [REDACTED] parties to the license agreements whose revenues Plaintiffs are seeking have [REDACTED] (Point I.C);

(iv) Plaintiffs never had the type of "day-to-day" control over Defendants' licensing operations to create a fiduciary duty arising out of the GLA – the only fiduciary duty theory that the Court permitted the GLA Class to pursue (Point II.A);

(v) There is no evidence to support Plaintiffs' brand new claim – which contradicts the essential premise of their other claims – that Defendants breached their purported fiduciary duties because they did not license, but "should have" licensed, the GLA Class's rights to [REDACTED] licensees (Point II.B); and

(vi) Plaintiffs have not even tried to prove fact of injury or damages for individual class members, even though they do not dispute that the economic values of the licensing rights of the individual class members are widely variable, with most GLA Class members' rights having no value at all (Point II.C).

In effect, Plaintiffs are trying to go to trial on the basis of nothing more than unsupported allegations and attorney conjecture that all of the witnesses who testified under oath, including numerous third parties, were lying. This strategy is insufficient as a matter of law, and does not come close to meeting Plaintiffs' burden to come forward with evidence raising at least

a genuine issue of material fact in support of their claims.

Confronted with this complete absence of proof, Plaintiffs continue their "smoke-and-mirrors" pattern of changing their factual and legal theories on the fly, and ignoring their irreconcilable contradictions and lack of evidence in favor of bold new pronouncements to the Court. For example, because 18 months of fact discovery did not yield a shred of evidence that Defendants licensed GLA Class members' rights pursuant to the [REDACTED] license agreements at issue, Plaintiffs now feature at the outset of their Opposition a few e-mails that they use to attack a license agreement between [REDACTED] Opp'n at 3-4. But later in their Opposition, Plaintiffs admit that the [REDACTED] Agreement is one of the very "ad hoc" deals that Plaintiffs have declared to be "irrelevant," "not in dispute in this case," and not covered by their claims. Id. at 21-24. Similarly, since Plaintiffs have no support for their "direct agency" fiduciary duty theory, they try to resuscitate the non-GLA based theories of fiduciary duty that the Court has either stricken or declined to certify for class treatment. Id. at 30-35.

Summary judgment is the time when the factual record is closed and Plaintiffs must stop shifting. This Court afforded Plaintiffs the opportunity to plead five different complaints, and every possible chance to discover evidence to support their claims. But at this juncture, when allegations and rhetoric must give way to evidence, Plaintiffs cannot meet their burden for one simple reason: the undisputed facts establish that the legal rights of the GLA Class were never violated by Defendants, and that this entire case is nothing more than an unabashed grab for active player money, and an unfounded political attack upon Gene Upshaw and the NFLPA, which has no place before this Court.

## ARGUMENT

### I. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST THE GLA CLASS'S BREACH OF CONTRACT CLAIM

#### A. Plaintiffs Do Not Dispute That Defendants Generated And Paid Over [REDACTED] In Licensing Revenues To Retired Players

Despite Adderley's testimony that he filed this lawsuit because he believed that he was not properly paid pursuant to "ad hoc" agreements to license the images of various retired

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

players to Reebok,[1] Plaintiffs have disavowed "any claims based on an 'ad hoc' agreement."[2] This is not surprising, since Plaintiffs have no response to the undisputed evidence that Defendants have generated over [REDACTED] in retired player licensing revenues pursuant to such agreements, [REDACTED]
Mot. at 7-9. Nor do Plaintiffs dispute that Defendants lost money generating these licensing opportunities for retired players, since the minimal administrative fees kept by Players Inc were not nearly enough to cover the costs of, among other things, the staff who worked on the retired player deals. Id. at 7 n.22.

Although both parties agree that ad hoc agreements are not the subject of the GLA Class's claims (Opp'n at 21-24), the undisputed evidence that retired players were fully compensated under these deals – most of which involved six or more players and thus constituted "group licensing" – confirms the fundamental point that when retired players' group licensing rights were utilized, they were paid. Plaintiffs' Opposition tries to obfuscate this undisputed fact with unsupported rhetoric that the GLA Class has been "mistreated for years," and by asking the Court to ignore the over [REDACTED] that Defendants generated for retired players. Specifically, Plaintiffs argue that "[t]his case is not about individually negotiated 'ad hoc' agreements, … [i]t is about collective group licensing …." Opp'n at 7. But the Adderley GLA expressly defines "group licensing" as "programs in which a licensee utilizes a total of six (6) or more present or former players," and Plaintiffs do not dispute that most ad hoc deals arranged by Players Inc involved "a licensee utiliz[ing] six (6) or more present or former players" in connection with the same program. E.g., Mot. at 8, 11; Adderley GLAs (Greenspan Decl. Ex. 5).

Plaintiffs point out that "third-party licensees' proven use of retired players in

---

[1] E.g., Adderley Depo. 77:13-78:5 (attached as Exhibit 1 to the Declaration of David Greenspan in Further Support of Defendants' Motion for Summary Judgment ("2d Greenspan Decl.") filed concurrently herewith). The Declaration of David Greenspan in Support of Defendants' Motion for Summary Judgment (which was submitted with Defendants' opening brief (the "Motion")) is hereinafter referred to as "Greenspan Decl."

[2] Pls.' Mot. For Leave To File TAC at 4 n.1 (Nov. 27, 2007) (Rec. Doc. 190); see also Opp'n at 21 (section entitled "The Irrelevance of the Individually Negotiated 'Ad Hoc' Agreements").

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

individually negotiated ad hoc agreements" shows that the rights of at least some GLA Class members had value. Opp'n at 15. This is true. But the undisputed facts establish that the GLA Class members whose group licensing rights had value and were used were fully paid for their rights (Mot. at 7-9), and Plaintiffs offer no evidence that the remaining GLA Class members' rights – which were never utilized or desired by any licensee – had any economic value.

**B. The Adderley GLA Is Expressly Limited To "Moneys Generated By Such Licensing Of Retired" – Not Active – "Player Group Rights"**

Although Plaintiffs seize upon the Court's observation that the Adderley GLA is not a model of clarity, the plain language of the GLA is unambiguous as to the most fundamental issue in this case: that the only moneys that were to be "divided between the player and an escrow account" were "moneys generated by such licensing of retired player group rights." Adderley GLAs (emphasis added) (Greenspan Decl. Ex. 5). Thus, the GLA Class has no contractual entitlement to revenues generated by active player licensing. This conclusion is established, as a matter of law, by the plain language of the GLA (quoted above), and also by Adderley's sworn admissions:

> Q: Sir, do you believe, as a retired player, you're entitled to any money that's generated by the licensing of active players?
> A: No.
>
> * * *
>
> Q: And what you thought you were agreeing to get [in the GLA] was that if your rights were licensed and used, you would get some money; correct?
> A: Correct.[3]

Even the TAC alleges only that "the Adderley GLAs provide that moneys generated by licensing of retired player rights" are to be divided, and the Court itself has observed that "[t]he GLA did not describe how the money would be divided or whether everyone who signed a GLA was entitled to any licensing distribution even if their image or likeness was not used."[4]

Faced with an undisputed evidentiary record establishing that [REDACTED] of the money generated by the licensing of retired player rights was, in fact, paid to the retired

---

[3] Adderley Depo. 96:13-18, 92:7-17 (emphases added), 89:13-90:7 (Greenspan Decl. Ex. 4); see also Opp'n at 29 ("The GLA Class is not seeking active player money ….").

[4] TAC ¶ 29 (emphasis added); Opp'n at 20-21 (quoting Class Certification Order at 6).

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

players whose rights were licensed, Plaintiffs advance [REDACTED]

[5]

[REDACTED]

[6]

[REDACTED]

Opp'n at 12-13. In fact, it has <u>never</u> been Defendants' position that if the GLA Class's rights were licensed under the [REDACTED] license agreements, Defendants could have chosen not to share the resulting retired player licensing revenues with the GLA Class. Rather, the only reason why Defendants did not share the [REDACTED] licensing revenues at issue with the GLA Class

[5] Put another way, "such licensing" does not, as Plaintiffs contend, refer back to the definition of "[g]roup licensing" set forth three paragraphs above in the Adderley GLA, but instead refers to the remainder of the sentence in which those words appear: "such licensing <u>of *retired* player group rights</u>." <u>Compare</u> Opp'n at 6 n.10 <u>with</u> Adderley GLAs (emphasis added).

[6] [REDACTED]

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

was because, as the undisputed evidence establishes, not one penny of that active player licensing money was in any way attributable to retired player licensing.

### C. The Revenues Generated By The [REDACTED] License Agreements At Issue Were Generated Solely By Active Player Group Licensing

#### 1. The Four Corners of the License Agreements Establish That Only Active Player Rights Were Licensed

Eighteen months of fact discovery has yielded no evidence of [REDACTED] or any other licensee ever once using the rights of any of the thousands of GLA Class members without making a separate payment for the use of such rights. As a result, Plaintiffs must rest their breach of contract claim entirely upon a distortion of the boilerplate reference

[REDACTED]

[7]

[REDACTED]

[8]

[REDACTED]

---

[7] See also Rowley Report, Ex. 8 [REDACTED] (Greenspan Decl. Ex. 20).

[8] [REDACTED]

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

[REDACTED]

.[9]

**2. The Extrinsic Evidence Also Establishes That Only Active Player Rights Were Licensed**

[REDACTED]

[10]

[REDACTED]

[11]

[REDACTED]

[9] [REDACTED]

[10] [REDACTED]

[11] [REDACTED]

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

[12]

[REDACTED]

[13]

[REDACTED]

[14]

[REDACTED]

[15] [REDACTED]

[16]

---

[12] [REDACTED]

[13]. [REDACTED]

[14] Copenhaver v. Rogers, 238 Va. 361, 367 (1989); Ft. Lincoln Civic Ass'n, Inc. v. Ft. Lincoln New Town Corp., 944 A.2d 1055, 1064 (D.C. 2008); see also German Alliance Ins. Co. v. Home Water Supply Co., 226 U.S. 220, 230 (1912) (holding that "an indirect interest in the performance of the undertakings" is insufficient). The case law that Plaintiffs cite in "support" of their argument that they are "not strangers" to the third party license agreements do not deal with third-party beneficiaries, but with the unrelated issue of whether defendants were strangers to a business relationship in tortious interference claims (not breach of contract). See Opp'n at 28 (citing In re Leisure Corp., No. C-03-03012 RMW, 2007 WL 607696, *13 (N.D. Cal. Feb. 23, 2007) and ViChip Corp. v. Lee, 438 F. Supp. 2d 1087, 1097-98 (N.D. Cal. 2006)).

[15] [REDACTED]

[16] See Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

**Dewey & LeBoeuf LLP**
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1

2

[REDACTED]

3

4

5

6

7

8    17

9

[REDACTED]

10   18

11

[REDACTED]

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

[17] [REDACTED]

27

28   [18] [REDACTED]

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1

2                                         [REDACTED]

3

4

5

6

7   [19]

8

9                                         [REDACTED]

10  [20]

11

12                                        [REDACTED]

13  [21]

14

15                                        [REDACTED]

16  [22]

17  **E.      There Is No Triable Issue Of Fact As To Breach of Contract Or Damages**

18

19

20

21                                        [REDACTED]

22

23

24

25  _____

26  [19] [REDACTED]

27  [20] [REDACTED]
    [21] [REDACTED]
28  [22] [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

---

[23] [REDACTED]

[24] [REDACTED]

[25] [REDACTED]

Defs.' Reply Br. in Support of Their Mot. for Summary Judgment     Civ. Action No. C07 0943 WHA

-11-

[REDACTED]

[26]

[REDACTED]

[27]

[REDACTED]

[26] [REDACTED]

[27] [REDACTED]

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Defs.' Reply Br. in Support of Their Mot. for Summary Judgment Civ. Action No. C07 0943 WHA
-12-

[REDACTED]

Lastly, Defendants note that Plaintiffs' "everything but the kitchen sink" strategy for opposing summary judgment includes a reincarnation of their Section 17200 Unfair Competition claim and related allegations about purported "exclusivity" that the Court dismissed last year.[29] These unfounded arguments, which were not permitted to be asserted in the TAC, are irrelevant to Defendants' Motion.

## II.   SUMMARY JUDGMENT SHOULD ALSO BE GRANTED AGAINST THE GLA CLASS'S BREACH OF FIDUCIARY DUTY CLAIM

### A.   There Is No Evidence That The GLAs Gave Rise To A Fiduciary Duty

The TAC alleges two different fiduciary duty theories:  (i) an "express" or "direct" agency theory (fiduciary duty arising out of the GLA); and (ii) an "agency by estoppel" theory (fiduciary duty arising out of Defendants' alleged "representation" of all retired players ). See TAC ¶¶ 45, 46-50.  In its Class Certification Order, the Court held, in no uncertain terms, that the GLA Class's breach of fiduciary duty claim was certified "only insofar as [it] arises out of the GLAs between the NFLPA and retired players," and Plaintiffs have since conceded that

---

[28] [REDACTED]

[29] Compare, e.g., Opp'n at 10, 11 (arguments about "an effort to lock up the market," "the exclusivity of this arrangement," and "Defendants [seeking] to eliminate competition") with Order Granting Motions to Dismiss at 7-14 (Sept. 9, 2007) (Rec. Doc. 133).

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

"there is no longer an 'agency by estoppel' claim at issue" in this case. See Mot. at 29 n.89.[30] Accordingly, the only fiduciary duty theory that Plaintiffs may pursue is an "express" or "direct" agency relationship purportedly arising out of the GLA.

As set forth in Defendants' Motion, both Virginia and D.C. law provide that "the critical test" in determining whether such an agency relationship exists "is the nature and extent of the control agreed upon."[31] Specifically, the level of control necessary to establish a direct agency relationship is "control over the day-to-day operations of the alleged [agent]" and the "right to control the methods or details of doing the work."[32] Plaintiffs, however, have come forward with no evidence to show that the GLA Class had the requisite "day-to-day" control over, or the "right to control the methods or details of," Defendants' licensing operations.

[REDACTED]

[33]

[REDACTED]

[34]

[REDACTED]

---

[30] Class Cert. Order at 14 & 10 (Apr. 29, 2008) (Rec. Doc. 275); Pls' Opp'n to Pet. for Permission to Appeal Under Fed. R. Civ. P. 23(f) at 10 (Greenspan Decl. Ex. 47).

[31] Jackson v. Loews Wash. Cinemas, Inc., 944 A.2d 1088, 1097 (D.C. 2008); Murphy v. Holiday Inns, Inc., 216 Va. 490, 493 (1975).

[32] Ames v. Yellow Cab of D.C., Inc., No. 00-3116 (RWR)(DAR), 2006 WL 2711546, *5 (D.D.C. Sept. 21, 2006) (applying D.C. law); Wells v. Whitaker, 207 Va. 616, 624 (1966).

[33] See also Adderley Depo. 97:8-99:2 (testifying that the only "control" he had over Players Inc was "to ask" to be excluded from a particular program if there was a conflict); Mot. at 30-31

[34] Plaintiffs attempt to distinguish the numerous cases cited by Defendants on the basis that most of the cases involved the doctrine of respondeat superior. See Opp'n at 33, n.119. But there are many decisions from Virginia, D.C., and elsewhere requiring the same level of control over a purported agent to establish a fiduciary duty, as is required in the respondeat superior cases. See, e.g., Murphy, 216 Va. at 495; Jackson, 944 A.2d at 1097-98; see also Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano, No. 03 Civ. 0015 (RWS), 2004 U.S. Dist. LEXIS 25235, *17-20 (S.D.N.Y. Sept. 13, 2004) ("A standard license agreement such as the one at issue here, in and of itself, does not provide the type of direct and day-to-day control necessary to establish an actual agency relationship between the licensor and the licensee.") (citing Murphy, 216 Va. at 495).

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Apparently recognizing that they cannot raise a genuine issue of material fact in support of an agency relationship arising out of the GLA, Plaintiffs improperly revert to arguing the existence of a fiduciary relationship based upon "sources" other than the GLA, such as statements on Players Inc's website. Opp'n at 32, 33, 34 ("Defendants cannot gain the benefit of that representation and disavow the resulting agency obligations"). But, as set forth above, this "agency by estoppel" theory did not survive class certification. Supra, n.30 and accompanying text. Similarly, Plaintiffs try to resuscitate their fiduciary duty claim by rehashing unsupported allegations that the allegedly "exclusive" effect of the GLA creates a "confidential," fiduciary relationship. Opp'n at 34-35. The Court, however, has already dismissed Plaintiffs' allegations about "exclusivity" and any claimed "confidential" relationship.[35]

Finally, Plaintiffs make the brand new claim that "[f]ederal courts in Virginia and D.C. recognize that unions owe fiduciary duties to their members." Opp'n at 33. This theory is utterly disingenuous since it was the putative Parrish ("Retired Member") class – not the GLA Class – whose claims were based upon alleged membership in the NFLPA. TAC ¶¶ 108-113. Further, even if the GLA Class (which consists of many members who are not NFLPA members) had asserted a fiduciary duty based on alleged "union membership,"[36] such allegations would fail to state a claim because: (i) retired players are not part of the NFLPA collective bargaining unit; and (ii) duty of fair representation claims against a union must be brought under Section 9 of the National Labor Relations Act, which preempts state law claims for breach of fiduciary duty.[37]

---

[35] Order Granting in Part and Denying in Part Pls' Mot. for Leave to File an Amended Complaint at 10 (Nov. 14, 2007) (Rec. Dec. 176) ("Adderley has pleaded a fiduciary relationship based on contract, but has failed to plead fiduciary duty based on a confidential relationship").

[36] See Opp'n at 33 (citing Nellis v. Air Line Pilots Ass'n, 144 F.R.D. 68, 71 (E.D. Va. 1992) ("The 'duty of fair representation is . . . akin to the duty owed by other fiduciaries to their beneficiaries.'")).

[37] E.g., Vaca v. Sipes, 386 U.S. 171, 177 (1967) (a union's duty of fair representation arises from Section 9 of the NLRA, and alleged breaches of that duty are governed by federal labor law).

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

**B. There is No Evidence to Support a Claim That Defendants Breached Any Alleged Fiduciary Duty**

[REDACTED]

[REDACTED]

[38]

[REDACTED]

[39]

[38] [REDACTED]

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Defs.' Reply Br. in Support of Their Mot. for Summary Judgment Civ. Action No. C07 0943 WHA
-16-

[REDACTED]

[REDACTED]

[REDACTED]

---

[39] [REDACTED]

[40] See Far Out Prods., 247 F.3d at 997.

[41] [REDACTED]

Defs.' Reply Br. in Support of Their Mot. for Summary Judgment          Civ. Action No. C07 0943 WHA

-17-

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

---

[42] Pls.' Mot. For Leave To File TAC at 4 n.1 (Nov. 27, 2007) (Rec. Doc. 190).

[43] [REDACTED]

[44] [REDACTED

Defs.' Reply Br. in Support of Their Mot. for Summary Judgment          Civ. Action No. C07 0943 WHA

-18-

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

**C. There Is No Triable Issue Of Fact With Respect To Injury Or Damages**

Summary judgment should also be granted against Plaintiffs' breach of fiduciary duty claim for the additional reason that Plaintiffs have failed to raise any genuine issue of material fact in support of a claim of injury or damages to individual GLA Class members. See Mot. at 34-35.[45] [REDACTED]

[46]

[REDACTED]

[47]

[REDACTED]

Plaintiffs seem to have finally recognized this fatal evidentiary gap in their damages claim, because they improperly offer yet another new theory for the first time on summary judgment: that "no proof of specified damages is necessary for this Court to require disgorgement of profits" for breach of fiduciary duty. Opp'n at 39. Plaintiffs, however, submitted their initial and rebuttal expert damages reports weeks ago, and there has been no damages evidence presented that even discusses the issue of profits disgorgement, or how such profits would be calculated. Instead, the only remedy that Plaintiffs have been seeking for their breach of fiduciary duty claim is an award of damages in the form of an "equal share" of

---

[45] See, e.g., Hager v. Gibson, 109 F.3d 201, 212 (4th Cir. 1997) (affirming summary judgment where supposed breach of fiduciary duty "caused no injury"(applying Virginia law)); Day v. Avery, 548 F.2d 1018, 1029 n.56 (D.C. Cir. 1976) (same under D.C. law).

[46] [REDACTED]

[47] [REDACTED]

Defendants' licensing revenues:

> The damages for breach of fiduciary duty include all the royalties generated from those third-party licenses that include the retired players in their express terms [or,] alternatively, those damages include all the royalties generated by all the licenses that could have included retired players….

Opp'n at 39 (emphases added). There has thus been no evidence presented for Plaintiffs to seek any profits disgorgement in this case.

[REDACTED]

**CONCLUSION**

For all of the foregoing reasons, Defendants' Motion should be granted. It is time to bring this baseless litigation, which has no evidentiary support, to an end.

Date: July 10, 2008

DEWEY & LEBOEUF LLP

BY: /s/ Jeffrey Kessler
Jeffrey L. Kessler
*Attorneys for Defendants*

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111