Todd Padnos (Bar No. 208202)
*tpadnos@dl.com*
DEWEY & LEBOEUF LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Tel: (415) 951-1100; Fax: (415) 951-1180

Jeffrey L. Kessler (*pro hac vice*)
*jkessler@dl.com*
David G. Feher (*pro hac vice*)
*dfeher@dl.com*
David Greenspan (*pro hac vice*)
*dgreenspan@dl.com*
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 259-8000; Fax: (212) 259-6333

Kenneth L. Steinthal (*pro hac vice*)
*kenneth.steinthal@weil.com*
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000; Fax: (650) 802-3100

Bruce S. Meyer (*pro hac vice*)
*bruce.meyer@weil.com*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000; Fax: (212) 310-8007

Attorneys for Defendants National Football League Players Association
and National Football League Players Incorporated d/b/a Players Inc

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC, <br><br> Defendants. | Case No. C 07 0943 WHA <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE THE DECLARATIONS OF LINDA CASTILLON, ADAM SULLINS, JASON BRENNER, CHRISTINE FINCH AND STEVE BYRD** <br><br> **PUBLIC VERSION** |

Defs.' Opp'n to Pls.' Motion to Strike Declarations — Civ. Action No. C07 0943 WHA

Dockets.Justia.com

# TABLE OF CONTENTS

|     | Page(s) |
| --- | --- |
| TABLE OF AUTHORITIES | iii |
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 2 |
| ARGUMENT | 7 |
| I. The Failure Of Plaintiffs To Depose These Witnesses Or To Obtain Further Information Concerning Their Potential Testimony Was Not Due To Any Behavior By Defendants, But The Result Of A Deliberate Stategy By Plaintiffs To Avoid The Expense Of Pursuing Such Discovery | 8 |
| II. Precluding The Important Testimony Of The Declarants Would Be An Inappropriate Remedy As A Matter Of Law | 11 |
| CONCLUSION | 12 |

Defs.' Opp'n to Pls.' Motion to Strike Declarations     Civ. Action No. C07 0943 WHA

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Atkins v. County of Orange,
  372 F. Supp. 2d 377 (S.D.N.Y. 2005) .................................................................................. 10, 11

Finley v. Hartford Life and Accident Ins. Co.,
  No. 06-6247, 2008 U.S. Dist. LEXIS 29029, (N.D. Cal. Feb. 22, 2008) ................................... 7

Green v. Baca,
  226 F.R.D. 624 (C.D. Cal. 2005) .............................................................................................. 9

Int'l Truck and Engine Corp. v. Caterpillar, Inc.,
  No. 1:03-CV-265, 2004 U.S. Dist. LEXIS 27447 (N.D. Ind. May 26, 2004) ....................... 8, 9

Lesser v. Camp Wildwood,
  No. 01 Civ. 4209 (RWS), 2003 U.S. Dist. LEXIS 16921 (S.D.N.Y. Sept. 30, 2003).............. 11

McKesson Info. Solutions Inc. v. Bridge Med. Inc.,
  434 F. Supp. 2d 810 (E.D. Cal. 2006) ................................................................................... 7, 9

Sender v. Mann,
  225 F.R.D. 645 (D. Colo. 2004) ................................................................................................ 9

Stanley v. Woodford,
  No. Civ. S-95-1500 FCD GGH P, 2006 U.S. Dist. LEXIS 26924 (E.D. Cal. Nov. 8, 2005). 8, 9

U.S. ex rel. O'Connell v. Chapman Univ.,
  245 F.R.D. 652 (C.D. Cal. 2007) ......................................................................................... 7, 11

Yeti By Molly Ltd v. Dockers Outdoor Corp.,
  259 F.3d 1101 (9th Cir. 2001) ................................................................................................... 7

**RULES**

Fed. R. Civ. P. 26(a)(1)(A)(i) ........................................................................................................ 7

Fed. R. Civ. P. 26(a)(1)(E)............................................................................................................. 7

-iii-

Defs.' Opp'n to Pls.' Motion to Strike Declarations                    Civ. Action No. C07 0943 WHA

## PRELIMINARY STATEMENT

Plaintiffs have moved this Court to strike the Declarations of Linda Castillon, Adam Sullins, Jason Brenner, Christine Finch and Steve Byrd (collectively, "the Declarants") ("Pls.' Mtn to Strike"), on the purported ground that Defendants did not timely disclose these persons as potential witnesses. However, <u>all</u> of these persons were disclosed as potential witnesses by February 19, 2008 – more than <u>three months</u> before the close of fact discovery – and one of them, Jason Brenner, who Plaintiffs misrepresent was never disclosed, was, in fact, disclosed as a potential witness on June 29, 2007, more than one year ago, and <u>eleven months</u> before the close of fact discovery.

Plaintiffs' motion reflects a conscious litigation strategy to avoid the economic investment of taking additional depositions, and then seeking to preclude the testimony of critical witnesses Plaintiffs chose not to depose. This is not mere speculation. Plaintiffs' counsel has stated that Plaintiffs did not seek the depositions of these and other witnesses as part of a strategy by Plaintiffs to limit their investment in this case prior to the Court deciding class certification:

> [I]t would have been premature and wasteful for <u>Plaintiffs to seek time-consuming and costly depositions</u> of dozens of additional witnesses when it was not known which issues would survive class certification. Indeed, the Court's recent order denying certification to the Retired NFLPA Member class…confirms the <u>efficiency of Plaintiffs' approach</u>.

Email from Ron Katz to David Greenspan, May 13, 2008, attached as Exhibit G to the Declaration of Roy Taub ("Taub Decl.") (emphases added).

Even after class certification, Plaintiffs did not pursue depositions of these witnesses. Instead, after taking the depositions of Electronic Arts, Inc. ("EA") and the Topps Company ("Topps") – [ REDACTED .] Plaintiffs decided to turn a blind eye to, rather than further discover, [ REDACTED ].

Defs.' Opp'n to Pls.' Motion to Strike Declarations      Civ. Action No. C07 0943 WHA

- 1 -

To cover up their strategy, Plaintiffs have asserted the red-herring excuse that they were limited to only ten depositions and therefore could not depose all of these additional witnesses. However, while the presumptive ten deposition limit is a creature of the Federal Rules, it is specifically subject to change by order of the court. Fed. R. Civ. P. 30(a)(2) ( a party "must obtain leave of court . . . if the parties have not stipulated to the deposition and . . . the deposition would result in more than 10 depositions being taken under this rule.") (emphasis added). Plaintiffs never asked this Court to increase the deposition limit so they have no basis now to use that limit as an excuse for not taking depositions of the disclosed witnesses in this case.

Plaintiffs' additional argument that testimony from these witnesses should be precluded because Defendants allegedly failed to provide their contact information, or did not describe in sufficient detail the areas of their potential testimony, is equally specious. Defendants specifically disclosed that these individuals had information about, inter alia, "their respective licensing agreements with Players Inc and/or the NFLPA," (the very subject of the declarations that Plaintiffs now seek to strike) and Plaintiffs never sought, until one week before the end of fact discovery, to ask Defendants for any further contact information or detail for the Declarants, which, in any event, was available in various documents produced to Plaintiffs during discovery.

In short, Plaintiffs have no colorable ground to seek the exclusion of testimony from critical witnesses who were identified to Plaintiffs in Defendants' disclosures months before the fact discovery cutoff, and who Plaintiffs simply chose not to depose.

## BACKGROUND

On June 7, 2007, the parties filed with the Court a Joint Management Statement. See Joint Management Statement, Rec. Doc. 81, June 7, 2007 (Taub Decl. Ex. A). At that time – over five months before the Court granted Plaintiffs leave to file the currently operative Third Amended Complaint ("TAC") – Defendants proposed that "because this case is not especially

complex," each side be allowed to take 10 depositions.[1] Joint Management Statement at 7. Plaintiffs, on the other hand, proposed that each side be permitted to take 20 depositions. Id. at 6. Contrary to Plaintiffs' representation that Defendants "successfully argued that the Court limit each party to ten depositions" (see Pls.' Mtn to Strike at 2), the Court never issued any ruling on the issue of the deposition limit. Thus, the presumptive limit in the Federal Rules of ten depositions per side is controlling as a default. See Fed. R. Civ. P. 30(a)(2).

On June 7, 2007, Players Inc – the sole named Defendant at the time – served its initial disclosures, which included 19 of its current and former employees. See Players Inc's Initial Disclosures, June 7, 2007 (Taub Decl. Ex. B). On June 29, 2007 – only eight days after Plaintiffs filed the SAC naming for the first time the NFLPA as Defendant – Players Inc and the NFLPA served joint initial disclosures identifying the same 19 current and former employees, as well as 13 non-party witnesses. The non-party witnesses included Jason Brenner, identifying him as the Vice President of MBI Inc. See Defs.' Initial Disclosures, June 29, 2007, at 2 ("June Disclosures") (Taub Decl. Ex. C). Defendants' representation to the contrary – that "Defendants never disclosed Jason Brenner" (Pls.' Mtn to Strike at 3 n.7 (emphasis in original)) – is simply not true.

On February 19, 2008 – after Plaintiffs filed the TAC, an entirely new complaint – Defendants served supplemental disclosures identifying, among others, Linda Castillon (Vice President of Licensing, Fathead, LLC), Christine Finch (President, Todd McFarlane Entertainment) and Adam Sullins (Vice President and General Counsel, The Upper Deck Company). Defs.' Supp. Disclosures, February 19, 2008 at 2 ("February, 2008 Disclosures") (Taub Decl. Ex. D). And, despite Plaintiffs' statement to the Court that Defendants "never disclosed" Steve Byrd," (Pls.' Mtn to Strike at 7), the February, 2008 Disclosures also expressly

---

[1] Plaintiffs state that "[i]ronically, on June 4, 2008," in an administrative request for a page extension, "Defendants reversed course and characterized this case as 'varied and complex.'" Pls.' Mtn to Strike at 2 n.2. Plaintiffs forget, however, that one year lapsed between the Joint Management Statement and Defendants' request for a page extension. During that year, Plaintiffs filed three complaints (the SAC, the proposed TAC, and the TAC), which dramatically changed the allegations at issue in this case.

identified Mr. Byrd (Executive Vice President of Sales & Marketing, STATS, LLC).[2]

The February, 2008 Disclosures further disclosed that Byrd, Castillon, Finch and Sullins are "representatives of licensees that do business with Players Inc, and are likely to have discoverable information on the subject of their respective licensing agreements with Players Inc and/or the NFLPA." Id. "The subject of their respective licensing agreements with Players Inc and/or the NFLPA" is, of course, the very subject of the declarations that Plaintiffs are seeking to strike.

Thus, by February 19, 2008 – more than three months before the end of fact discovery – Defendants had disclosed to Plaintiffs all five witnesses at issue in Plaintiffs' motion. Indeed, Jason Brenner – one of the witnesses Plaintiffs claim was "never" disclosed – was identified to Plaintiffs more than one year ago.

However, it was not until May 7, 2008 – <u>only two weeks before the close of fact discovery</u> – that Plaintiffs for the first time raised any purported interest in taking the depositions of these witnesses. Specifically, on May 7th (a few weeks after the GLA Class was certified), Plaintiffs asked to take up to 24 additional depositions in a two week period prior to the close of fact discovery, and further asked that Defendants consent to these two dozen additional depositions and stated that if Defendants did not consent, "Plaintiffs shall seek the Court's approval." Letter from Laura Franco to David Greenspan, May 7, 2008, at 1-2 (Taub Decl. Ex. E). Plaintiffs stated that alternatively, in an effort to "streamline discovery," they would be willing to forego the depositions of any witnesses whom Defendants would stipulate not to call at trial. Id. at 1.

On May 9, 2008, Defendants noted the unreasonableness of Plaintiffs' untimely request to depose 24 witnesses in a two-week time period just prior to the end of fact discovery, but agreed nevertheless to stipulate that Plaintiffs could depose one or two additional witnesses above the ten person limit who Plaintiffs could identify. Letter from David Greenspan to Laura Franco, May 9, 2008, at 1 (Taub Decl. Ex. F). At that time, Defendants could not stipulate

---

[2] Plaintiffs apparently are confused – earlier in their brief, they admitted Byrd was, in fact, disclosed. Pls. Mtn to Strike at 3.

Defs.' Opp'n to Pls.' Motion to Strike Declarations     Civ. Action No. C07 0943 WHA
-4-

which witnesses they would use at trial because Defendants had "not yet determined which witnesses would be called at any trial, and there is nothing in Judge Alsup's or the Federal Rules that requires a defendant to make such determinations five months in advance of trial." Id. at 2.

In response, Plaintiffs "justified" their untimely request to seek to exceed the deposition limit and take 24 additional depositions with the following candid explanation:

> [I]t would have been premature and wasteful for Plaintiffs to seek <u>time-consuming</u> and <u>costly</u> depositions of dozens of additional witnesses when it was not known which issues would survive class certification. Indeed, the Court's recent order denying certification to the Retired NFLPA Member class…confirms the efficiency of Plaintiffs' approach.

Email from Ron Katz to David Greenspan, May 13, 2008 (Taub Decl. Ex. G) (emphasis added).[3] Tellingly, class counsel said nothing at that time about any purported inadequacy with Defendants' disclosures. But, in any event, Plaintiffs accepted Defendants' offer to an increase in the deposition limit because they wished to take immediately the depositions of Steve Saxon of Groom Law Group (outside counsel to Defendants) and Brig Owens (a former player), but <u>not</u> any of the Declarants. Id.

On May 14, 2008, Defendants agreed to make Mr. Saxon available for deposition prior to the close of fact discovery and also to consent to the deposition of Mr. Owens (a third-party beyond Defendants' control), even if that deposition were to occur beyond the close of fact discovery. Letter from Greenspan to Ron Katz, May 14, 2008, at 2 (Taub Decl. Ex. H).[4]

Suddenly, however, Plaintiffs shifted gears, stating that "further depositions will not be necessary." Letter from Lew LeClair to David Greenspan at 2, May 22, 2008 (Taub Decl. Ex. I). In addition, Plaintiffs for the first time – only one <u>day</u> prior to the fact discovery cutoff –

---

[3] Plaintiffs also proposed in this letter that to avoid a "burdensome deposition schedule" (i.e., 24 depositions in two weeks) at the close of fact discovery, the "parties simply agree to postpone any additional depositions to a time closer to trial" and for the "parties to agree that any person identified as a trial witness . . . be available for at least a half-day deposition prior to trial." Id.

[4] Defendants, however, could not agree to Plaintiffs' proposal to make trial witnesses available for at least a half-day deposition prior to trial because that proposal would merely "postpone a burdensome deposition schedule until the midst of trial preparation" and "eliminate the Court's fact-discovery cutoff date . . . ." Id.

advanced a new purported complaint that: "[h]ad defendants properly disclosed the information required…none of this would be an issue." Id. at 1. Plaintiffs, however, failed to specify in their letter any purported deficiencies in Defendants' disclosures. Instead, Plaintiffs stated only that they were somehow forced to use this purported deficiency as a reason to seek the exclusion of important witnesses: we have "no choice but to object to the defendants attempt to call any witness at trial for whom proper disclosure was not timely made . . . ." Id. at 2.

It was not until May 15, 2008 – three <u>months after</u> Defendants served their February, 2008 Disclosures – that Plaintiffs first raised any purported concerns about the content of those disclosures for the witnesses at issue:

> We have reviewed Defendants' Supplemental Initial Disclosures of February 19, 2008 and May 9, 2008…and neither complies with Rule 26(a)(1)(A) . . . . Specifically, the February Disclosures fail to identify the address and phone number of each individual . . .

Letter from Noel Cohen to David Greenspan, May 15, 2008 (Taub Decl. Ex. J).

Despite the untimeliness of Plaintiffs' request, Defendants quickly agreed to amend their disclosures to provide this additional information. Email from David Greenspan to Jill Serena, May 19, 2008 (Taub Decl. Ex. K). Defendants' amended disclosures provided, as Plaintiffs requested, the declarants' contact information. <u>See</u> Defs.' Supp. Disclosures, May 20, 2008 (Taub Decl. Ex. L). Defendants also pointed out in a separate letter that this contact information was ascertainable to Plaintiffs through various documents produced to Plaintiffs (such as the license agreements themselves). Letter from David Greenspan to Lew LeClair, June 5, 2008, at 2 (Taub Decl. Ex. O).

On May 29, 2008, Defendants reiterated their willingness to make additional witnesses available for deposition. Letter from David Greenspan to Lew LeClair, May 29, 2008 at 3 (Taub Decl. Ex. M). But Plaintiffs declined the offer and stated that they considered this matter to be "resolved for the time being." Letter from Lew LeClair to David Greenspan, May 30, 2008, at 2 (Taub Decl. Ex. N). On June 5, 2008, Defendants again repeated their offer to make "anyone else" – including the Declarants here – available for deposition, (<u>see</u> Letter from David Greenspan to Lew LeClair, June 5, 2008, at 2 (Taub Decl. Ex. O)), but Plaintiffs once

Defs.' Opp'n to Pls.' Motion to Strike Declarations     Civ. Action No. C07 0943 WHA

-6-

again declined the offer. Letter from Lew LeClair to David Greenspan, June 10, 2008, at 2 (Taub Decl. Ex. P).

On June 13, 2008, Defendants submitted in support of their Motion for Summary Judgment the declarations of Brenner, Castillon, Finch, Sullins and Byrd, all of whom were disclosed to Plaintiffs no later than February 19, 2008 – more than three months before the close of fact discovery. [ REDACTED

.] Because Plaintiffs have no substantive response to this testimony, they now move to strike the declarations. As set forth below, Plaintiffs' motion is completely without merit and should be denied in its entirety.

## ARGUMENT

Rule 26 provides that a party must disclose – based on the information then reasonably available to it – "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(i) & 26(a)(1)(E). Any information not properly disclosed may still be introduced if the parties' failure to disclose the required information is "substantially justified or harmless." Yeti By Molly Ltd v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).

Trial courts have wide latitude in determining whether there has been a disclosure violation and whether it was substantially justified or harmless. See id. The standard for sanctionable misconduct is one of "objective reasonableness," Finley v. Hartford Life and Accident Ins. Co., No. 06-6247, 2008 U.S. Dist. LEXIS 29029, at *4 (N.D. Cal. Feb. 22, 2008), and courts generally look for evidence of bad faith, rather than mere negligence, before imposing sanctions. See U.S. ex rel. O'Connell v. Chapman Univ., 245 F.R.D. 652, 655 (C.D. Cal. 2007).

A disclosure error is harmless, for example, if the information was made known to the moving party during discovery through some other means. In McKesson Information Solutions, Inc. v. Bridge Medical Inc., 434 F. Supp. 2d 810, 811 (E.D. Cal. 2006), the non-moving party failed to disclose ten witnesses in its Rule 26 disclosures. However, the witnesses

were otherwise identified in various documents produced during discovery. Id. at 813. The court held that "[b]ecause these witnesses were otherwise made known to [the moving party] during the course of litigation, there is no prejudice to [the moving party] in allowing the witnesses' testimony at trial." Id.

The timing of disclosures is also a factor in evaluating harmlessness. In Stanley, the court found that there was no prejudice to a moving party since disclosures were made two weeks before the close of discovery, during which time the moving party could have deposed the witnesses at issue. Stanley v. Woodford, No. Civ. S-95-1500 FCD GGH P, 2006 U.S. Dist. LEXIS 26924, at *4 (E.D. Cal. Nov. 8, 2005). See also Int'l Truck & Engine Corp. v. Caterpillar, Inc., No. 1:03-CV-265, 2004 U.S. Dist. LEXIS 27447, at *5 (N.D. Ind. May 26, 2004) (a party's delay in disclosing information was harmless because discovery was ongoing).

## I. The Failure Of Plaintiffs To Depose These Witnesses Or To Obtain Further Information Concerning Their Potential Testimony Was Not Due To Any Behavior By Defendants, But The Result Of A Deliberate Strategy By Plaintiffs To Avoid The Expense Of Pursuing Such Discovery

It is beyond dispute that all the witnesses at issue in this motion were disclosed to Plaintiffs no later than February 19, 2008, more than three months before the close of fact discovery. And, Jason Brenner (who Plaintiffs erroneously claim was "never" disclosed) was identified to Plaintiffs on June 29, 2007, more than eleven months before the close of fact discovery.[5]

It is well established that, under these circumstances, Plaintiffs are not harmed, Defendants' disclosures were not "late," and sanctions are not in any way warranted. See Stanley, 2006 U.S. Dist. LEXIS 26924, at *4 (no harm where disclosures were made only two

---

[5] It is of no moment that Castillon, Sullins, Finch and Byrd were not also disclosed in June 2007 when Defendants made their initial disclosures. For one thing, a party is in any case permitted to supplement its initial disclosures "in a timely manner" if that party "learns that…disclosure or response is incomplete . . . ." Fed. R. Civ. P. 26(e)(1). Moreover, the need to make supplemental disclosures is especially great in cases where, as here, Plaintiffs have filed three complaints (the SAC, the proposed TAC and the TAC) after Defendants made their initial disclosures.

weeks before the close of discovery); Int'l Truck & Engine Corp., 2004 U.S. Dist. LEXIS 27447, at *5 (no harm where discovery was ongoing and the trial date was months away).

Plaintiffs cite Green v. Baca, 226 F.R.D. 624, 655 (C.D. Cal. 2005), for the asserted proposition that "courts recognize the prejudice wreaked" by disclosures that are made "late." See Pls.' Mtn to Strike at 6. Green, however, is not at all on point. In Green, the non-moving party did not disclose its witnesses until <u>one year after</u> the close of fact discovery. Green, 226 F.R.D. at 654. Here, of course, <u>all</u> of Defendants' disclosures at issue were made <u>months before</u> the close of fact discovery. Green, therefore, gets Plaintiffs nowhere.

The same is true with respect to Sender v. Mann, 225 F.R.D. 645 (D. Colo. 2004), which Plaintiffs mischaracterize as a "late disclosure" case. See Pls.' Mtn. to Strike at 6 n.15. There, an issue arose with respect to the completeness of a party's initial disclosures that were made with one year of fact discovery remaining. Sender, 225 F.R.D. at 648. Thus, the issue in that case was not one of timeliness. Instead, the disclosures in Sender identified over 300 witnesses and were not, in the context of that case, claimed to be sufficiently detailed. Id. at 655. Sender is thus inapposite and, in any event, the court in Sender denied the request to strike witness testimony. Id. at 657.

Indeed, despite Plaintiffs' unsupported assertion that Defendants' disclosures were "belated," there is no precedent anywhere of a court sanctioning a party on timeliness grounds where, as here, the witnesses at issue were disclosed at least three months in advance of the fact discovery cutoff.

Putting aside the issue of timeliness, Plaintiffs also were not prejudiced by any failure on Defendants' part to disclose contact information for the Declarants. This information with respect to the Declarants was contained within various sources otherwise produced to Plaintiffs (such as the license agreements themselves and/or emails sent or received by the Declarants). See McKesson Info. Solutions, Inc., 434 F. Supp. 2d at 813 (no prejudice where undisclosed information was otherwise provided to the moving party in discovery).

In addition, Defendants' disclosures with respect to the type of discoverable information possessed by the Declarants – that they are "representatives of licensees that do

business with Players Inc, and are likely to have discoverable information on the subject of their respective licensing agreements with Players Inc and/or the NFLPA" – clearly were adequate. More fundamentally, however, if the details of the disclosure were a true concern for Plaintiffs, they would not have waited nearly three months (and a <u>year</u> in the case of Mr. Brenner) to complain about this issue. Cf. <u>Atkins v. County of Orange</u>, 372 F. Supp. 2d 377, 397 (S.D.N.Y. 2005) (criticizing a party seeking sanctions for not objecting to a deficient expert report or requesting that the report be supplemented, and delaying until a few months prior to trial before raising these concerns in the form of a sanctions motion).

In reality, as Mr. Katz stated, the reason class counsel did not pursue these depositions had nothing to do with Defendants' disclosures. Instead, class counsel simply did not want to invest the time or money to do so:

> [I]t would have been premature and wasteful for Plaintiffs to seek <u>time-consuming</u> and <u>costly</u> depositions of dozens of additional witnesses when it was not known which issues would survive class certification. Indeed, the Court's recent order denying certification to the Retired NFLPA Member class…confirms the efficiency of Plaintiffs' approach.

Email from Ron Katz to David Greenspan, May 13, 2008 (Taub Decl. Ex. G). Plaintiffs' failure to depose these Declarants thus was a product of Plaintiffs own litigation strategy.

The reason that Plaintiffs had no desire to take these additional depositions is apparent. Plaintiffs knew that the testimony would only further undermine their case. Plaintiffs deposed three representatives of licensees in this case – Warren Friss of Topps, Adam Zucker of Topps and Joel Linzner of EA. [          REDACTED

Defs.' Opp'n to Pls.' Motion to Strike Declarations

-10-

Civ. Action No. C07 0943 WHA

.] Thereafter, Plaintiffs made the strategic decision not to depose any other licensees, e.g., the Declarants, because Plaintiffs did not wish to elicit further adverse testimony undermining their case.

In sum, there is no conceivable Rule 37 violation here. Defendants disclosed all of the Declarants well in advance of the close of fact discovery, and Plaintiffs never even bothered to ask for additional information concerning them until they decided to "manufacture" this exclusion motion. Plaintiffs knew the depositions of the Declarants would not help their case, so Plaintiffs adopted a strategy of not taking additional depositions as a cost savings, and then seeking to preclude critical testimony which they cannot rebut. The Court should reject Plaintiffs' motion for sanctions out of hand.

## II. Precluding The Important Testimony Of The Declarants Would Be An Inappropriate Remedy As A Matter Of Law

Even if the Court were to find a disclosure error that harmed Plaintiffs (there was none), the extreme sanction of precluding witness testimony would not be appropriate in this case. See, e.g., U.S. ex rel. O'Connell, 245 F.R.D. at 655 (excluding evidence is "the ultimate sanction under Rule 37(c)" and is not appropriate where the purported prejudice can be ameliorated by any other means); Atkins, 372 F. Supp. 2d at 396 ("the imposition of sanctions under [Rule 37] is discretionary, and preclusion is not generally ordered;" refusing to preclude expert witness testimony because, among other things, the moving party did not bring the deficiencies to the non-moving party's attention until a few months before trial.); Lesser v. Camp Wildwood, No. 01 Civ. 4209 (RWS), 2003 U.S. Dist. LEXIS 16921 (S.D.N.Y. Sept. 30, 2003) ("The preclusion of evidence not disclosed in discovery is 'a drastic remedy and will apply only in situations where the failure to disclose represents . . . flagrant bad faith and callous disregard of the rules.'").

Here, the only harm Plaintiffs claim is their "inability to question these witnesses on the substance of the Declarations." Pls.' Mtn to Strike at 7. This is nonsense. Plaintiffs had ample opportunity to depose the Declarants. At the time Defendants disclosed Jason Brenner in June 2007, for example, Plaintiffs had yet to take a single deposition in this case and had more

than one year in which to conduct fact discovery. When Defendants disclosed Castillon, Sullins, Finch and Byrd in February 2008, Plaintiffs had more than three months in which to conduct discovery. At that time, Plaintiffs could have – but chose not to – select any or all of the Declarants for deposition. Plaintiffs also chose not to ask the Court for permission to take additional depositions beyond the presumptive ten person limit. And, even on May 9, 2008, when Defendants agreed that Plaintiffs could depose one or two additional witnesses beyond the ten person limit without going to the Court, Plaintiffs again decided not to depose any of the Declarants or to ask the Court for permission to take additional depositions. See Letter from David Greenspan to Lew LeClair (Taub Decl. Ex. F); see also Letter from Lew LeClair to David Greenspan, May 30, 2008 (Taub Decl. Ex. N). Finally, when Defendants offered on June 5, 2008, to make "anyone else" available for deposition, Plaintiffs again declined to depose any of the Declarants (or any other witness for that matter). See Letter from David Greenspan to Lew LeClair, June 5, 2008 (Taub Decl. Ex. O); see also Letter from Lew LeClair to David Greenspan, June 10, 2008 (Taub Decl. Ex. P). Plaintiffs were always free to ask the Court – pursuant to the Federal Rules – for permission to take depositions beyond the ten person limit. Tellingly, Plaintiffs never did so. Any harm to Plaintiffs is thus their own fault, and not the fault of Defendants. The extreme remedy Plaintiffs seek – to preclude the testimony of these important witnesses – is not proper as a matter of law.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion to Strike the Declarations of Linda Castillon, Adam Sullins, Jason Brenner, Christine Finch and Steve Byrd.

Date: July 10, 2008

DEWEY & LEBOEUF LLP

BY: __/s/ Jeffrey L. Kessler_____

Jeffrey L. Kessler
*Attorneys for Defendants*