# manatt

manatt | phelps | phillips

**Ronald S. Katz**
Manatt, Phelps & Phillips, LLP
Direct Dial: (650) 812-1346
E-mail: rkatz@manatt.com

July 30, 2008

Client-Matter: 29749-060

**VIA ELECTRONIC FILING**

The Honorable William Alsup
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      **Re:**    *Parrish v. National Football League Players Association*, **Case No. C07-0943 WHA**

Dear Judge Alsup:

     This letter responds directly to questions this Court raised at the July 24, 2008 hearing on Defendants' Motion for Summary Judgment. It details admissible evidence, demonstrating the existence of genuine issues of material fact that Defendants acted deliberately to violate the class members' contract rights under the Group Licensing Authorizations ("GLAs") and breached fiduciary duties they owed to retired NFL players who signed GLAs.

     In their Motion, Defendants argued essentially that they are entitled to summary judgment on both certified claims because (1) licensees such as Electronic Arts ("EA") (maker of the popular Madden football video game during all relevant times) never wanted to license and therefore never actually did license retired player rights under the GLAs, so that (2) no monies received from such licensees (█████████████████████████████) are due to the class of retired players who signed GLAs. Contrary to Defendants' arguments, the Madden video game, in its varying iterations during the class period (2003-2007), stands as dispositive evidence refuting these basic defense premises and requires that this case proceed to trial.

     *Madden NFL* is an American football role-playing-game series developed by EA. The game is named after Pro Football Hall of Famer John Madden, a well-known color commentator for NFL television broadcasts and formerly a successful Super Bowl winning coach during the 1970s with the Oakland Raiders. The game is among the most successful and profitable video games in history. The game was first released in 1988 and new versions are released each year. In the game, players can choose to compete using teams with current NFL rosters, with all-star teams or with "historic" or "vintage" NFL teams. Through this technology and vintage team offering, videogamers can, for example, play a simulated NFL video football game between the undefeated 1972 Miami Dolphins and the Super Bowl champion 1984 San Francisco 49ers or between any two teams that the videogamers would choose from the 143 available now and from the dozens available from 2003-2007.

     The product ("Product") for which EA licenses images is called out in paragraph 2(a) of the license agreement: █████████████████████████████████████████████████████████████
█████████████████ (*See* Declaration of Ryan Hilbert filed with Plaintiffs' Opposition to Defendants' Motion ("Hilbert Decl.") at Ex. D.) It is undisputed that this Product includes 148 Hall of Fame players and other famous non-Hall of Fame players, *e.g.*, Randall Cunningham, "Mean" Joe Greene, and others. ██████████████████████████████████████████████████████████████

1001 Page Mill Road, Building 2, Palo Alto, California 94304-1006 Telephone: 650.812.1300 Fax: 650.213.0260

Albany | Los Angeles | New York | Orange County | Palo Alto | Sacramento | Washington, D.C.

Dockets.Justia.com



**manatt**
manatt | phelps | phillips

Honorable William Alsup
July 30, 2008
Page 2

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, including the use of video clips of Hall of Fame players in the "All Star" edition of the Madden game. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮, for whom just statistics and a picture are included. For example, video clips of the Hall of Fame players are included in addition to their statistics and picture.

For purposes of triggering the payment provisions of the GLA, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. What is relevant is that there are more than six such players because that triggers the GLA payment provisions for ALL players who signed a GLA, not just for those whose images are used. Because no payment was divided between the retired player who signed a GLA and an escrow fund for all eligible NFLPA members, it is undisputed that a breach of the GLA contract has occurred. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are simply not relevant to this breach of the GLA contract.

Of equal importance, there are also retired players who are in vintage games that are part of the Product, but whose identities have been scrambled. By way of example only, Exhibit "A" attached to this letter shows the numerous vintage teams that can be played in the 2007 version of Madden NFL alone – some 143 teams.[1] Each such vintage team contains readily identifiable retired players with slightly scrambled identities.

These identities have been (and still are) scrambled since a May 31, 2001 letter from LaShun Lawson, a marketing executive of Defendants, to Jeremy Strauser of EA, with copies to the second-in-command of Defendants, Doug Allen, and the EA executive with responsibility over the Madden games, Joel Linzner:



---

[1]      Federal Rule of Evidence 1006 provides, in relevant part that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place." Exhibit A is a summary of information contained in the Madden 2007 (PC edition) video game. Plaintiffs will provide the Court with an actual copy of that version of the game (or any other version, like X-Box) if the Court requests that.



(*See,* Declaration of Laura Franco filed herewith ("Franco Decl."), ¶¶ 2-3, Ex. A.)

These retired players whose identities have been scrambled are necessary to fill out the rosters for offense and defense and special teams – all required to play a true-to-life simulated game. In the Madden video game, those retired players are not identified by name or number; HOWEVER, the game lists the exact rostered weight, height, years in the league, and position for hundreds of retired players.[2] Thus, for example, if a videogamer chose to use the 1992 49ers, he or she would know that one of the starting tight ends was Brent Jones (class member), even though his name and jersey number have been "stripped" by the game maker.

In the 2007 version of Madden NFL (PC edition) alone, plaintiffs have identified **more than 600 retired players** who signed GLAs (class members) whose names and numbers had been deliberately "scrambled" in this way. Pursuant to Fed. R. Ev. 1006, attached as Exhibit "B" to this letter is a summary of those players. This is the list specifically requested by the Court at the July 24, 2008 hearing. (*See,* Hearing Transcript at 56:3-13.) It proves that EA in fact needed GLA retired players in the Madden game and did in fact put those players in those games – stripped of data (name, number, and facial likeness).

**Why did EA "scramble" the names and numbers of GLA members who are unquestionably included in the Madden NFL game, and for which the Defendants had the unquestionably right to license as a group for all relevant Madden versions?** The LaShun Lawson letter from Defendants to EA in 2001 provides the answer: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Franco Decl. Ex. A.) As explained at the hearing, such funds went only to the Defendants and current players (*i.e.*, "voting") NFLPA members.

The numbers at stake are substantial. For each contract year governed by the most recent agreement that the Defendants signed with EA (the "2005 EA Agreement"), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Of course, EA was completely indifferent to how the Defendants divided up the proceeds of the group license payments. What is undisputed is that the GLA retired players, even though many more than six of them (the triggering number of the GLA contract) were used in both an identifiable fashion (Madden Hall of Fame and NFL Street games) and in scrambled fashion (vintage team games), received NOTHING except payments for side agreements.

Mr. Adderley is a good example of this. He received payments for his Hall of Fame side agreement, but he received nothing for his scrambled identity appearing in vintage games, and he

---

[2]     All 17 retired players identified in Exhibit MMM of the Hilbert Declaration filed with Plaintiffs' Opposition to Defendants' Motion, which was handed to the Court at the July 24, 2008 hearing, including Brent Jones (the former Tight End for the 49ers), are members of the Adderley Class. Exhibit MMM identifies only a fraction of the players whose identities were "scrambled" ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. For the full number of scrambled players (at least 612), *see* Exhibit B attached to this letter.



received nothing for signing a GLA that provided that, if at least six retired players were used, monies would be divided between him and an escrow fund for all eligible NFLPA members who signed GLAs. The only eligible members in that fund, of course, are active players because the ████████████████████████████████████████████████ does not mean that they cannot share with eligible players.

The language of the GLA that defines group licensing by product requires that the Adderley Class share in at least that EA revenue because the GLA required that such revenue be shared between the "player and an escrow account for all eligible NFLPA members who have signed a group licensing authorization form." EA wanted to produce a video game that included both active and retired players because they knew it would generate ████████████. Whatever the specific structure of the license agreements arranged by the Defendants with EA, the game is a single product and retired players are a significant component. The fact that the Defendants chose to ██ ████████████████████████████ was a breach of contract (because six or more retired player images were used and the NFLPA did not share the revenue with class members who signed a GLA) and a gross breach of fiduciary duty (because the Defendants denied payment to the retired players who had signed a GLA without telling the retired players the truth of what they were doing). It was Defendants who drafted the GLA, and any ambiguities must be construed against them.

The conduct of Players, Inc with the knowledge of its President, Doug Allen (who also served as the Assistant Executive Director of the NFLPA), was particularly egregious because the Defendants knew something very important that EA did not[3], *i.e.*, Defendants knew that they in fact possessed and were freely able to grant the license rights of a significant number of these players they were suggesting be stripped of identity. EA and the Defendants referenced and included in the EA license agreement ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

At the hearing, Mr. Kessler took the position that the actions of Defendants were proper and that Defendants were merely telling EA not to exploit the rights that Defendants did not possess.[4] That statement, which led to a comment from the Court[5], was clearly a misrepresentation. In fact, there are at least 612 class members with stripped identities in the Madden 2007 PC game alone.[6]

---

[3]     *See*, Deposition of Joel Linzner at 40:5 – 41:14, 49:1 – 55:11 (Hilbert Decl. Ex. QQQ).
[4]     *See*, Hearing Transcript at p. 51:1-7.
[5]     Court: "If it turns out it's for the people that are-if it's just for those people they didn't have GLAs on, that supports Mr. Kessler." Hearing Transcript at 56:4-6.
[6]     The stripped class members are divided into two categories: (i) 276 class members whose position, height, weight, and years in the league were an exact match to the information in the game, and (ii) 336 class members whose position, height and years in the league were an exact match to the information in the game and whose weight varied by a few pounds (less than 5% of the players' total weight). In either case, however, this "scrambling" of identities worked a grievous wrong to



Furthermore, the damage accrues to all members of the certified Class because the inclusion of more than six retired players in the EA Madden game requires that the revenue be shared with all of them whether or not ██████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████

      Mr. Kessler was also clearly wrong at the hearing when he took the position that LaShun Lawson's activity was all pre-statute of limitations and therefore irrelevant. This led to the following statement by the Court: "Mr. Kessler comes back and says this was a long time ago, it has nothing to do with this lawsuit . . . ." (Hearing Transcript at 55:2-5.) However, at the time LaShun Lawson's letter was written, 162 GLAs of Class members were in effect that remained in effect until after February 14, 2003, when the statute of limitations period began. (*See* Franco Decl. ¶ 4.) Moreover, ███████████████████████████████████ continues to this day.

      We have focused in this letter on the EA Madden game because of the stripping of identities that occurred, and because it is the single most important product that included the use of retired players and for which █████████████████████████. For many other products and licenses (including The Topps Company and Upper Deck), the Adderley Class also has breach of contract claims based on the conduct of the Defendants in including retired players in the license agreements through ███████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████ The Class also has viable breach of fiduciary duty claims arising from the Defendants' conduct related to other licensees in failing to inform the licensees of the identity of retired players for whom they possessed GLAs[7], failing to market them when they could have[8], and failing to try to maximize the compensation paid to retired players that they were representing.[9]

      We appreciate the Court's consideration of this matter and request that the Defendants' Motion for Summary Judgment be denied.

                      Respectfully submitted,
                        /s/ Ronald S. Katz
                      Ronald S. Katz
                      Counsel for Plaintiffs

20204774.1

---

each retired player who had signed a GLA at the solicitation of the NFLPA in order to share in revenue. *See*, Ex. B hereto.

[7]    *See*, Deposition of Warren Friss at 19:25 – 20:17, 34:9-14 (Hilbert Decl. Ex. QQ).
[8]    *See*, Deposition of Warren Friss at 77:2-14 (Hilbert Decl. Ex. QQ).
[9]    *See*, Deposition of Joseph Nahra at 6919 – 72:21, 224:3-18 (Hilbert Decl. Ex. M).