1   Todd Padnos (Bar No. 208202)
    *tpadnos@dl.com*
2   DEWEY & LEBOEUF LLP
    One Embarcadero Center, Suite 400
3   San Francisco, CA 94111
    Tel: (415) 951-1100; Fax: (415) 951-1180
4
    Jeffrey L. Kessler (*pro hac vice*)
5   *jkessler@dl.com*
    David G. Feher (*pro hac vice*)
6   *dfeher@dl.com*
    David Greenspan (*pro hac vice*)
7   *dgreenspan@dl.com*
    DEWEY & LEBOEUF LLP
8   1301 Avenue of the Americas
    New York, NY 10019
9   Tel: (212) 259-8000; Fax: (212) 259-6333

10  Kenneth L. Steinthal (*pro hac vice*)
    *kenneth.steinthal@weil.com*
11  WEIL, GOTSHAL & MANGES LLP
    201 Redwood Shores Parkway
12  Redwood Shores, CA 94065
    Tel: (650) 802-3000; Fax: (650) 802-3100
13
    Bruce S. Meyer (*pro hac vice*)
14  *bruce.meyer@weil.com*
    WEIL, GOTSHAL & MANGES LLP
15  767 Fifth Avenue
    New York, NY 10153
16  Tel: (212) 310-8000; Fax: (212) 310-8007

17  Attorneys for Defendants National Football League Players Association
    and National Football League Players Incorporated d/b/a Players Inc

18
                    **UNITED STATES DISTRICT COURT**
19                **NORTHERN DISTRICT OF CALIFORNIA**
                     **SAN FRANCISCO DIVISION**
20

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III, | Case No. C 07 0943 WHA |
| Plaintiffs, | **DEFENDANTS' MOTION TO DECERTIFY THE GLA CLASS** |
| v. | Date: September 8, 2008 |
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC, | Time: 2:00 p.m. Ctrm: 9 Judge: William H. Alsup |
| Defendants. | |

**Dewey & LeBoeuf LLP**
**One Embarcadero Center, Suite 400**
**San Francisco, CA 94111**

**Dewey & LeBoeuf LLP**
**One Embarcadero Center, Suite 400**
**San Francisco, CA 94111**

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Monday, September 8, 2008 at 2:00 p.m., the date and time the pre-trial conference in this matter is to be held, or as soon thereafter as the matter may be heard in the above-referenced Court, Defendants National Football League Players Association ("NFLPA") and National Football League Players Incorporated d/b/a Players Inc ("Players Inc") (collectively, "Defendants"), will and hereby do move, pursuant to Federal Rule of Civil Procedure 23(c), to decertify the GLA Class certified in this Court's Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification of April 29, 2008.

This Motion is based on the accompanying Memorandum of Points and Authorities, the accompanying declarations, the pleadings in this matter, and on such further evidence and argument as may be presented at the hearing on this Motion.

Date: August 15, 2008                                  DEWEY & LEBOEUF LLP


                                        BY: ___/s/Jeffrey L. Kessler_____
                                                  Jeffrey L. Kessler

                                              *Attorneys for Defendants*

---

Pursuant to Federal Rule of Civil Procedure 23(c), Defendants National Football League Players Association ("NFLPA") and National Football League Players Incorporated ("Players Inc") move to decertify the GLA Class certified in this Court's Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification ("Certification Order").

**PRELIMINARY STATEMENT**

In its Summary Judgment Order, the Court ruled that Defendants' practice of using individually negotiated ad hoc agreements in the group licensing of small groups of retired players' rights created "a genuine issue of material fact whether defendants had a duty, created by the plain wording of the GLA, to ensure that retired players' rights were licensed primarily through the GLAs rather than through ad hoc agreements and that retired players, like active players, shared in a pool of money generated by those group licensing deals." This newly-identified legal claim of the GLA Class members – which the Court just described in its Summary Judgment Order and which the Class representatives cannot choose to not pursue – is rife with conflicts of interests among the Class members, requiring that the Class be decertified. The claim pits the approximately one-fifth of the GLA Class that received ad hoc payments – including the only class representative, Mr. Adderley – against the remaining GLA Class members who did not participate in any ad hoc deals. Although class counsel and Adderley have not previously pursued this claim, apparently to sidestep the conflict even though doing so was clearly adverse to the interests of the vast majority of the class, the Court's Summary Judgment Order means that this conflict of interest cannot continue. Class counsel and Mr. Adderley may not, as set forth below, ignore a claim that the Court has recognized as cognizable simply to salvage the Class. The only remedy is to decertify.

**ARGUMENT**

Under Federal Rule of Civil Procedure 23(c), "[a]n order that grants . . . class certification may be altered or amended before final judgment." "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 160 (1982). This applies even after, as here, a court has ruled on motions for summary judgment. See, e.g., Forehand v. Fla.

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1  State Hosp. at Chattahoochee, 89 F.3d 1562, 1566-67 (11th Cir. 1996) (affirming decertification

2  in case filed ten years earlier and that had already gone to trial); O'Connor v. Boeing N. Am.,

3  Inc., 197 F.R.D. 404, 410 (C.D. Cal. 2000) ("[T]he Court is free to rely on [its] rulings [on

4  summary judgment] even though the rulings go to the merits of Plaintiffs' case.").

5  Decertification is required here because of new developments in the case – namely the Court's

6  recognition of a cognizable legal claim based on the ad hoc group licensing of GLA Class

7  members' rights.

8          Previously, the Court had stated that ad hoc agreements "have no effect on the

9  class," Certification Order at 10, based upon class counsel's misstatements at the class

10 certification hearing that ad hoc agreements do not involve group licensing of six or more

11 players.  More specifically, the Court mistakenly believed that "[i]ndividual retired players (and

12 groups of five or less) can still license their image and likeness independently under their own

13 'ad hoc' agreements. . . .  The star athletes of the class would thus still be able to license their

14 celebrity on an individual basis for whatever amount they choose.  Such [ad hoc] licensing would

15 have no effect on the class.  What is at stake here is the group license."  Certification Order at 9-

16 10.

17          In their summary judgment papers, Defendants explained that although ad hoc

18 licensing agreements are negotiated and executed on an individual basis, they are usually entered

19 into by six or more retired players and thus constitute group licensing:

20          [M]uch of [the] $30 million in ad hoc licensing revenues constituted 'group'
           licensing of retired player rights, not 'individual' licensing.  To give just one
21         example, in March 2005, Defendants licensed the rights of 30 retired players –
           including [. . .] Adderley – to Upper Deck.  It is undisputed that Defendants
22         generated approximately $301,175 through this group licensing program and
           passed every penny of it through to [. . .] Adderley [. . .] and the other retired
23         players whose group rights were licensed.

24 Defs.' Mot. for Summ. J. at 8 (June 13, 2008) (Doc. Rec. 305); see also Declaration of David

25 Greenspan in Support of Defendants' Motion for Summary Judgment (June 13, 2008)

26 ("Greenspan Summ. J. Decl.") ¶ 18, Ex. 17 (ad hoc agreements for March 2005 Upper Deck

27 program); Greenspan Summ. J. Decl. ¶ 19, Ex. 18 (Expert Report of Roger G. Noll) at 47-50

28 (determining, after a review of Defendants' records and comparing "revenues from group (six or

**Dewey & LeBoeuf LLP**
**One Embarcadero Center, Suite 400**
**San Francisco, CA 94111**

1   more) and individual (five or less) licenses, it is likely that the latter category accounts for a

2   small fraction of total licensing revenues").

3          Defendants further explained that group licensing of small groups of retired

4   players' rights generally occurred through the use of ad hoc agreements because although some

5   of the retired players whose licensing rights were desired by licensees had signed GLAs, many

6   had not. Ad hoc license agreements were thus typically used for the small groups of retired

7   players designated by the licensees, even for those who had a GLA in effect, so that they all

8   could individually negotiate the terms for the licensing of their rights, just like the non-GLA

9   retired players could. See Defs.' Mot. for Summ. J. at 8-9.

10          In its recently-issued Order Denying Defendants' Motion for Summary Judgment,

11   dated August 6, 2008 ("Summary Judgment Order"), the Court held that Defendants' group

12   licensing of GLA Class members through ad hoc agreements (instead of pursuant to their GLAs)

13   raises triable issues of fact with respect to Plaintiffs' breach of contract and breach of fiduciary

14   duty claims. Specifically, the Court ruled that:

15          A reasonable jury could interpret [the language of the GLA] as requiring that,
             whenever retired players' images were licensed in groups of six or more and those
16          retired players had signed GLAs, the money generated by that licensing had to be
             divided between the player and an escrow account. That is not, however, what
17          happened. Instead of paying the retired players under the GLAs, EA engaged in
             *ad hoc* licensing deals with retired players whose identities it wanted to use in the
18          game, including players who had signed GLAs.

19                          *       *       *       *       *

20          It remains a genuine issue of material fact whether defendants had a duty, created
             by the plain wording of the GLA, to ensure that retired players' rights were
21          licensed primarily through the GLAs rather than through ad hoc agreements and
             that retired players, like active players, shared in a pool of money generated by
22          those group licensing deals.

23                          *       *       *       *       *

24          If the GLA was triggered anytime defendants obtained licensing deals for groups
             of six or more retired players who had signed GLAs, and defendants did indeed
25          obtain such licensing deals but failed to pay the retired players as per the GLA's
             instructions, the GLA was breached – or so a reasonable jury could find.
26
     Summary Judgment Order at 6-7.
27

28

---

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1    The Court thus ruled that GLA Class members have available to them a possible

2  legal claim challenging the use in retired player group licensing of ad hoc agreements, rather

3  than GLAs, to the alleged detriment of the GLA Class members who did not participate in ad hoc

4  deals, as none of the ad hoc moneys received by the other GLA Class members (including

5  Adderley himself) were put into an escrow account and divided among the GLA Class.  Rather,

6  the ad hoc money was paid out to those GLA Class members who participated in ad hoc deals.

7    Class counsel and Adderley have never previously pursued this theory,

8  presumably because they are fully cognizant of the pervasive and irreconcilable conflicts it

9  presents to the Class.  Indeed, Adderley and the other 378 GLA Class members who entered into

10  ad hoc deals have no interest at all – in fact, they have contrary interests – in pursuing a claim

11  that the approximately $8 million in ad hoc money that they received should have instead been

12  divided between them and an escrow account for all 2,100 GLA Class members (including the

13  roughly 1,700 GLA Class members whose licensing rights were not in demand and were never

14  selected by licensees).[1]

15    Adderley, a Hall of Fame retired player who received over $12,000 during the

16  limitations period from ad hoc agreements, and the GLA Class's only representative, testified

17  that <u>he does not believe</u> that ad hoc "monies should be shared with anyone else when you make

18  an ad hoc agreement."  Declaration of Roy Taub in Support of Defendants' Motion to Decertify

19  Class ¶ 2, Ex. 1 (Adderley Depo. Tr.) at 205:14-20; <u>see also</u> Greenspan Summ. J. Decl. ¶ 46, Ex.

20  45 (Pls.' Objs. and Resps. to Defs.' First Set of Interrogs.) at Resp. No. 3 ("To the extent that

21  Defendants are referring to the amounts of money paid to Adderley pursuant to Ad Hoc

22  Agreements, <u>Plaintiffs do not contend that such amounts should have been divided</u>. . . .  Thus,

23  Adderley was entitled to an 'equal share' royalty, <u>as were all other GLA signers</u>, <u>in addition</u> to

24  the amounts paid to him under the Ad Hoc Agreements.") (emphases added); Pls.' Mot. for

25  Leave to File Third Amended Complaint at 4 n.1 (Nov. 27, 2007) (Doc. Rec. 190) ("Plaintiffs

26

27  ───────────────
[1] <u>See</u> Greenspan Summ. J. Decl. ¶ 19, Ex. 18 (Expert Report of Roger G. Noll) at 21-23
(determining that ad hoc agreement payments to GLA Class members during the limitations

28  period amounted to about $7.84 million).

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1  [have not] alleged any claims based on an 'ad hoc' agreement."). Although class counsel and

2  Adderley may not wish to pursue the claim for GLA Class members found to be cognizable by

3  the Court, presumably because doing so would highlight the irreconcilable conflicts within the

4  class, the approximately 1,700 GLA Class members who did not receive any ad hoc payments

5  have an obvious (and conflicting) interest in pursuing such a claim.

6  There is simply no way to reconcile this conflict of interest between the GLA

7  Class members who participated in ad hoc deals and the GLA Class members who did not share

8  in such ad hoc group licensing revenues. As a result, the GLA Class must be decertified. See

9  Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 339 (4th Cir. 1998)

10  (reversing class certification where class representatives disavowed any claim for restitution "at

11  the expense of the EDP franchisees who made up half of the class"); NCAA I-A Walk-On

12  Football Players Litig., No. C04-1254C, 2006 WL 1207915, *8-9 (W.D. Wash. May 3, 2006)

13  (declining to certify the class where the claims would pit the class members against each other);

14  W. States Wholesale, Inc. v. Synthetic Indus., Inc., 206 F.R.D. 271, 277 (C.D. Cal. 2002) (same).

15  Decertification is further required because Adderley is conflicted with, and thus

16  inadequate to serve as the sole class representative of, the 1,700 GLA Class members who did

17  not participate in ad hoc deals, as made clear by Adderley's explicit disavowal of their claims for

18  a share of the ad hoc group licensing revenues. See, e.g., 7A Charles Alan Wright, Arthur A.

19  Miller & Mary Kay Kane, Federal Practice and Procedure § 1768 (2008) ("It is axiomatic that a

20  putative representative cannot adequately protect the class if the representative's interests are

21  antagonistic to or in conflict with the objectives of those being represented.").

22  Moreover, Adderley's claims can no longer be found typical of all GLA Class

23  members' claims since he himself has no claim for any ad hoc group licensing revenues. See

24  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (finding lack of typicality

25  and adequacy of representation where "[n]o named plaintiff has experienced aplastic anemia as a

26  result of taking the drug, even though this condition is one of the most serious of the alleged

27  adverse consequences. The named plaintiffs thus may not be able to provide adequate

28  representation for those who have suffered different injuries.").

Defendants' Motion to Decertify the GLA Class                    Civ. Action No. C07 0943 WHA

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1           It is very likely because of these conflicts of interest that class counsel has

2   repeatedly disavowed any claim for ad hoc group licensing revenues paid to GLA Class

3   members, and none of Plaintiffs' experts has attempted to measure any alleged damages for such

4   a claim.[2]  For example, class counsel signed an interrogatory response attesting that "[t]o the

5   extent that Defendants are referring to the amounts of money paid to Adderley pursuant to Ad

6   Hoc Agreements, <u>Plaintiffs do not contend that such amounts should have been divided</u>. . . .

7   Thus, Adderley was entitled to an 'equal share' royalty, <u>as were all other GLA signers</u>, <u>in</u>

8   <u>addition</u> to the amounts paid to him under the Ad Hoc Agreements."  Greenspan Summ. J. Decl.,

9   Ex. 45 (Pls.' Objs. and Resps. to Defs.' First Set of Interrogs.) at Resp. No. 3 (emphases added).

10  It is therefore readily apparent that both class counsel and Mr. Adderley have not adequately

11  represented and cannot adequately represent the interests of the 1,700 GLA Class members who

12  did not share in the revenues generated by certain GLA Class members' ad hoc group licensing

13  deals, further requiring decertification.  See <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 626

14  n.20 (1997) ("The adequacy heading also factors in . . . conflicts of class counsel."); <u>Piambino v.</u>

15  <u>Bailey</u>, 757 F.2d 1112, 1144-45 (11th Cir. 1985) (disqualifying class counsel in conflict of

16  interest with class members arising from settlement by which "their rights were being

17  compromised, if not foreclosed altogether").

18          It is also settled law that class counsel may not ignore what the Court has

19  identified to be a cognizable claim in order to salvage class certification.  Indeed, while such a

20  tactic may benefit class counsel's and Adderley's economic interests in this case, it would violate

21  the absent class members' due process rights, as res judicata would apply to any judgment and

22  preclude any claims that the GLA Class could have raised against Defendants concerning ad hoc

23  agreements, especially a claim specifically identified in the Court's Summary Judgment Order.

24  See <u>Feinstein v. Firestone Rubber and Tire Co.</u>, 535 F. Supp. 595, 606-607 & n.16 (S.D.N.Y.

25  ---

26  [2] <u>See</u>, <u>e.g.</u>, Pls.' Mot. for Leave to File Third Amended Complaint at 4 n.1 (Nov. 27, 2007) (Doc. Rec. 190) ("Plaintiffs are not claiming that Defendants failed to pay Mr. Adderley pursuant to an 'ad hoc' agreement, nor have they alleged any claims based on an 'ad hoc' agreement."); Pls'

27  Opp'n to Defs.' Mot. for Summ. J. at 7 n.12 (July 1, 2008) (Doc. Rec. 310) ("Defendants concede that Plaintiffs are not asserting any claim with respect to individually negotiated ad hoc

28  agreements.").

---

Defendants' Motion to Decertify the GLA Class          Civ. Action No. C07 0943 WHA

**Dewey & LeBoeuf LLP**
**One Embarcadero Center, Suite 400**
**San Francisco, CA 94111**

1  1982) (rejecting plaintiffs' withdrawal of particular claims on behalf of class "to improve the

2  possibility of demonstrating commonality" because "[t]he sacrifice by a putative class

3  representative of the rights of absent class members implicates due process considerations as

4  well as the Rule 23(a)(4) requirement of 'adequate representation.'") (internal citation omitted);

5  Augusta v. Marshall Motor Co., 453 F. Supp. 912, 919 (N.D. Ohio 1977) (finding proposed class

6  representative who did not pursue statutory damages claim on behalf of class inadequate because

7  "his fundamental disregard . . . for the statutory interests of persons similarly situated is in

8  conflict with the essential aspects of the class action device"); see also Hansberry v. Lee, 311

9  U.S. 32, 41-45 (1940).

10  ## CONCLUSION

11       For all of the foregoing reasons, Defendants' Motion to Decertify the GLA Class

12  should be granted.   Any other result would violate both Defendants' and the absent class

13  members' due process rights.

14

15  Date: August 15, 2008                 DEWEY & LEBOEUF LLP

16                        BY: __/s/Jeffrey L. Kessler_____

17                          Jeffrey L. Kessler

18                      *Attorneys for Defendants*

19

20

21

22

23

24

25

26

27

28

---