MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS III, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DECERTIFY THE GLA CLASS**<br><br>Judge: Honorable William H. Alsup<br>Date: August 21, 2008<br>Time: 12:00 p.m. |

## I. Introduction

Defendants' Motion for Decertification is simply a last-minute attempt to avoid their day in court with the GLA Class, interrupt Plaintiffs' pretrial preparations, and disrupt the orderly and efficient proceedings of this Court. Defendants' willingness to misstate the positions of the parties, to incorrectly criticize this Court's rulings[1], and to proffer, as they have done before, a conflict argument that is wholly without merit should not be countenanced by the Court.

Nothing has changed since the Court certified the Class that would necessitate a re-examination of that decision. The Defendants have proffered no new evidence, no new legal decisions, and no new material issue. As before, all class members have the same interest in getting equal share payments from GLAs, and all have an equal interest in the Defendants honoring their obligations under the GLA. As the Court stated in its Order denying Defendants' Motion for Summary Judgment at page 9, "The retired players have a common interest in establishing whether the GLAs entitled them to something." That is the essence of why the Court certified the class, and it remains unchanged.

Repeatedly, Defendants have taken the frivolous position that retired players who signed GLAs do not get paid anything unless they sign a second <u>ad hoc</u> or side agreement not even mentioned in the GLA. Defendants' position makes no sense and is unsupported by fact or law. As the Court stated at page 4 of its summary judgment denial, "The $30 million in revenues that Defendants paid out to <u>certain</u> retired players under <u>ad hoc</u> licensing deals is not at issue here" (emphasis in original).

Defendants then use their own frivolous position to create a "conflict." The fact that some retired players sign side agreements that are actually honored by Defendants (as opposed to what the Court has called the "empty promise" of the GLA) does not lessen the interest of those players in getting what they (and the other class members) were promised by the GLAs. As repeatedly

---

[1] Defendants claim the Court's clear understanding of the case is a "mistaken belief". *See* Defendants' Motion for Decertification at 4. It is noteworthy that the Appellate Court rejected their last attempt to criticize this Court's ruling on certification. *See*, Order Denying Permission to Appeal, June 21, 2008, Docket No. 334.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

noted by Plaintiffs (but ignored by Defendants), the active players also signed ad hoc agreements and still were compensated for group licensing. The payment of one has no effect on payment of the other.

As noted by the Court, all active players get an equal share from a GLA and some derive additional benefits from side agreements. For some inexplicable reason, Defendants take the position that retired players can derive benefits from side agreements but not from GLAs, even though, as the Court has also noted, Defendants assiduously solicited GLAs from class members year after year.

Further, whether these side agreements are group licenses or individual licenses is irrelevant. Defendants have interjected themselves into essentially all licensing by their broad definition of "group licensing", even though the Defendants themselves draw a clear distinction between the individually negotiated ad hoc agreements signed by both active and retired players, and the collective licensing that becomes the source of the "equal share royalty" that the NFLPA calculates and distributes to active players each year. As the Court has noted, and as Plaintiffs have consistently maintained, these side agreements and the payments related thereto do not diminish the claim for a share of the royalties paid in equal shares to some "eligible" NFLPA members, but not to retired NFLPA members who signed a GLA. Such side payments are therefore not relevant to this lawsuit or to the certified class.

The side agreements simply provide the better known retired players an avenue to exploit their fame separate and apart from the equal share royalty generated by Defendants' collective licensing program. Again, quoting the Court's summary judgment denial, "[W]hat is at issue is the collective group licensing that Defendants engaged in, for which Defendants paid active players an 'equal share' royalty but paid class members nothing." *Id.* (emphasis in original).

Defendants have never taken the position in administering the ad hoc agreement payments for many years that these payments must be shared with an escrow fund. Suggesting at this time that Plaintiffs must embrace this unrealistic and unsupported position is frivolous. Defendants'

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

attempt to create a class conflict where none exists is completely without merit and should be summarily rejected by this Court.

## II. Argument

Contrary to Defendants' claim, there is no conflict that warrants decertification of the GLA Class. It is irrelevant that Mr. Adderley was compensated under several ad hoc agreements because those agreements are not part of the GLA, nor does payment under the GLA depend on or otherwise relate to ad hoc agreements.

Instead, the main contention of this case from its earliest stages has been that the GLAs promised the GLA Class members a share of collective group licensing royalties. Because Mr. Adderley, like the rest of the GLA Class members, did not receive any payment under the GLA, all of the class members "have a common interest in establishing whether the GLAs entitled them to something." Order Denying Motion for Summary Judgment at 4.

Defendants' burden in urging decertification is a heavy one, and "doubts regarding the propriety of class certification should be resolved in favor of certification." *See, Slaven v. BP America, Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000) (citations omitted); 3 A. Conte, H. B. Newberg, *Newberg on Class Actions*, § 7.47 (4th ed. 1992) ("[i]n the absence of materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent, courts should not condone a series of rearguments on the class issues by either the proponent or the opponent of the class, in the guise of motions to reconsider the class ruling"); *Kramer v. Scientific Control Corp.*, 67 F.R.D. 98 (E.D. Pa. 1975) (unless the proponent of decertification demonstrates newly discovered facts or law (or facts that they otherwise did not know existed) supporting their position, a certification order should stand), *rev'd in part on other grounds*. Because Defendants have not established a credible conflict among the GLA Class members, decertification is not appropriate.

Further, the true motives of defendants in challenging the adequacy or typicality of class representatives has not escaped judicial recognition:

> It is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should

be certified. When it comes, for instance, to determining whether the "representative parties will fairly and adequately protect the interests of the class," . . . it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.

*In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 451 (N.D. Cal. 1984), citing *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981). *See also Sley v. Jamaica Water & Utilities, Inc.*, 77 F.R.D. 391, 394 (E.D. Pa. 1977):

> [D]efendants who take such a position [ostensibly grounded on a concern for the adequacy of the plaintiffs' representation of the class] on class certification or decertification motions are realistically not concerned with the "best" representation for the plaintiff class but rather their goal is to ensure "no" representation.

At the eve of trial, those motivations are evident here.

In a motion for summary judgment context, Defendants have suggested a baseless theory that they say creates an intra-class conflict. Defendants then leap to the conclusion that Plaintiffs have some obligation to embrace this unrealistic and unsupported theory. Defendants, however, cite no authority for this absurd proposition, and there is none. That is precisely why the judiciary has prevented, in the words of the *Diasonics* court, *supra*, the fox from taking over the henhouse.

### A. This Case Is And Has Always Been About the GLAs, Which Do Not Create A Conflict Among The Class Members.

The definition of the GLA Class (to which Defendants stipulated) defines the main contention:

> All retired NFL players who executed a group licensing authorization form ("GLA") with the NFLPA that was in effect at any time between February 14, 2003 and February 14, 2007 and which contains the following language: "[T]he moneys generated by such licensing of retired player group rights will be divided between the player and an escrow account for all eligible NFLPA members who have signed a group licensing authorization form."

*See* June 9, 2008 Order Revising Class Definition. The class definition not only identifies the sole agreement at issue in this case, but also it identifies precise language that must be contained in that agreement to ensure a commonality and typicality of interests among the GLA Class members. Fed. R. Civ. P. 23(a).

It is self-evident that the GLAs do not raise a conflict among the GLA Class members. Rather, the GLA Class members have a common interest in pursuing the claims in this case because <u>not one</u> of them has ever been paid pursuant to the GLA. The GLA requires that upon
MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20205622.2                                    5

the licensing of six or more present or former player images on a product, monies should be divided between the player and an escrow account for all eligible NFLPA members who signed GLAs. *See* Third Amended Complaint ("TAC"), Ex. B (Adderley GLA). Although Defendants did create an account from which they paid active players an equal share royalty, Defendants failed to pay retired players any portion of the license revenues pursuant to the terms of the GLA. Defs. Motion for Summary Judgment ("MSJ") at 14-15.

Plaintiffs have consistently advocated this position:

- "The TAC clearly alleges that instead of honoring their obligations under the GLAs, the Defendants entered into a scheme designed to deprive the GLA class of their rightful share of the funds by arbitrarily, unnecessarily and wrongfully excluding them and, instead appropriating to the Defendants substantial sums." Plaintiffs' Motion to File TAC at 9.

- "Mr. Adderley signed a GLA containing language identical to that of the other GLA Class members. Defendants' 'course of conduct' with respect to all of the GLA Class members was also identical: Defendants failed to account for and disburse to each of the retired players the licensing revenues identified in the GLA." Plaintiffs' Motion for Class Cert. at 18-19.

- "Although Defendants did create an escrow account (from which they paid an 'equal share' royalty to active players), Defendants failed to pay retired players any portion of the license revenues pursuant to the terms of their GLAs." Plaintiffs' Opposition to MSJ at 12.

The Court has accepted Plaintiffs' position, holding that "<u>all retired players have a common interest in determining their GLA rights</u>." Order Granting Class Cert. at 7 (emphasis added). This is still the same case; nothing has changed which would provide any justification for decertification.

**B. This Case Is Not And Never Has Been About Payments Made Pursuant To <u>Ad Hoc</u> Agreements, Which Cannot Create A Class Conflict Because They Are Not Related To Collective Licensing Through The GLAs.**

Defendants' arguments are nothing more than a variation on Defendants' previously-rejected attempts to create a class conflict by focusing on the varying celebrity of the retired players. Because the Court has already heard and rejected their arguments, they cannot be the basis for decertification of the class. *Cf. O'Connor v. Boeing North American, Inc.*, 197 F.R.D.

404, 410 (C.D. Cal. 2000).[2] And, as previously asserted *ad nauseum*, the existence of "ad hoc" agreements does not create a conflict among the GLA Class members because the payments made under ad hoc agreements are in addition to – not in conflict with – the payment under the GLA. As explained numerous times, ad hoc agreements are negotiated individually with specific players and are separate from and not governed by GLAs. *See* Opp. to MSJ at 7, n. 12. This case is not about the payments made pursuant to individually negotiated ad hoc agreements, of which there are many for both active and retired players.

Rather, this case is about collective group licensing for which the Defendants paid all active players an "equal share" royalty, but arbitrarily excluded retired players from the same royalty pool. *Id*. Indeed, the GLA does not contain any indication that an ad hoc agreement must be signed to receive payment under the GLA. *See*, TAC, Ex. B (Adderley GLA).

This Court has recognized that the GLAs and the individually negotiated ad hoc agreements are separate programs designed to accomplish two separate goals. For instance, at the certification stage, the Court stated that ad hoc agreements "have no effect on the class." Cert. Order at 9-10. In its Order Denying Summary Judgment, the Court reiterated its understanding of the distinction between collective group licensing through the GLAs and the ad hoc programs:

> [D]espite the varying celebrity of the retired players, the class as a whole has a common interest in determining what, if any, rights they have under the GLAs they signed. Thousands of players who signed GLAs have yet to receive a penny from defendants. The $30 million in revenues that defendants paid out to certain retired players under ad hoc licensing deals is not at issue here. Rather, what is at issue is the collective group licensing that defendants engaged in, for which defendants paid active players an "equal share" royalty but paid class members nothing. The retired players have a common interest in establishing whether the GLAs entitled them to something.

Order Denying MSJ at 4.

---

[2] Defendants' own citation supports this. *See, O'Connor v. Boeing North American, Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000) (explaining that although courts should not consider the merits of the case in deciding a motion to certify, this rule "cannot possibly mean that the Court must ignore its rulings and the case history" in considering a motion to decertify because "the Court has made legal and factual rulings that, absent good cause, will not change. It is apparent that the Court is free to rely on these rulings even though the rulings go to the merits of Plaintiffs' case.").

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

That the GLA and ad hoc programs were distinct (despite the fact that Defendants may negotiate "groups" of ad hoc agreements) was made clear by Defendants' counsel at the class certification hearing:

> All the other money for retired players have been licensees coming in and saying: I'd like this specific retired player. I don't want the whole group."
>
> So for that specific retired player we would negotiate an individual what is called ad hoc agreement. And, in fact, sometimes Mr. Adderley got some of those ad hoc deals and got paid money where they utilized him for that.
>
> We have not been able to generate retired player group licensing programs, which is why this whole case, frankly, makes absolutely no sense.
>
> \*       \*       \*
>
> The few times they asked for retired players they did a separate program when they said: "Oh, now we'd like some retired players," and they'd run some retired player program in which we did individual agreements with those specific retired players who were in the programs and got paid for it.

Class Cert. Hearing Tr. at 25:23 – 26:8; 27:11-16. *See also id.* at 22:15-17 (Defendants' counsel confirmed that the payments under ad hoc agreements were "in fact, pursuant to <u>additional agreements that they entered into</u>, not under this GLA." (emphasis added)).

Plaintiffs have maintained consistently that payments made pursuant to individually negotiated ad hoc agreements are not at issue in this case. *See*, *e.g.*, Mot. to File TAC at 4, n. 1 ("Plaintiffs are not claiming that Defendants failed to pay Mr. Adderley pursuant to any "ad hoc" agreement, nor have they alleged any claims based on an "ad hoc" agreement."); Opp. to MSJ at 7 ("This case is not about individually negotiated "*ad hoc*" agreements . . . It is about collective group licensing").[3]

Given the Court's recognition that the GLAs and the ad hoc agreements are two separate programs, there simply is no factual or legal basis for Defendants' current suggestion that monies

---

[3]     Defendants do not dispute that Plaintiffs have been consistent in their position that the payments made pursuant to individually negotiated ad hoc agreements are not relevant to the present action. *See*, *e.g.*, Decertification Motion at 4, citing, *e.g.*, Plaintiffs' Response to Interrogatory No. 3 ("To the extent that Defendants are referring to the amounts of money paid to Adderley pursuant to Ad hoc Agreements, Plaintiffs do not contend that such amounts should have been divided. . . . Thus, Adderley was entitled to an 'equal share' royalty, as were all other GLA signers, in addition to the amounts paid to him under the Ad hoc Agreements.").

received by retired players through ad hoc agreements should have been put in an escrow account and distributed to other GLA Class members. The system created and administered by the Defendant using two different programs for licensing is the very method by which the active players collect money: both from equal share GLA payments and from individually negotiated ad hoc agreements. *See*, *e.g.*, Class Cert. Hearing Tr. at 12:3-15.

The system that has been in use by the Defendants is one that comports with both logic and common sense: all players receive a share of collective revenue, and more famous players (both active and retired) receive additional payments that are individually negotiated. The wrong that has occurred is that Defendants and their officers have corrupted the system by favoring active players over retired players and by arbitrarily excluding retired players from the collective revenue sharing. Plaintiffs are not required to assert a frivolous legal theory concocted by Defendants that is contrary to actual practice, history, and common sense, and Plaintiffs have not done so in this case.

Rather than raising a new intra-class conflict,[4] the language in the Court's Order Denying Summary Judgment echoes what Plaintiffs and the Court have been saying about this case all along: the GLA Class members have a common interest in determining whether the GLA entitled them to payment from the collective licensing revenues. The Court has consistently rejected the Defendants' persistent efforts to try to make this case one that addresses payment under individual agreements. It is not about that, and there is no conflict among class members in this case. *See*, *Sley v. Jamaica Water & Utility, Inc.*, *supra*, 77 F.R.D. at 394 (the atypicality or conflict must be clear and must be such that the interests of the class are placed in significant jeopardy. The defenses and counterclaims peculiar to [the named plaintiff] are premised upon allegations yet to be proven. As the court is not permitted to inquire into the merits in considering class action matters, for purposes of this motion the conflict does not exist). Nor has Mr. Adderley suddenly become "inadequate" as a result of defendants' illusory "conflict."

---

[4] Defendants' intra-class conflict cases are inapposite to the present case, as there is no conflict or antagonism among the GLA Class members. *See*, *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20205622.2                           9

Defendants imply that the Court adopted a position by quoting the following language on page 3 of their Decertification Motion: "It remains a genuine issue of material fact whether defendants had a duty, created by the plain wording of the GLA, to ensure that retired players' rights were licensed primarily through the GLAs rather than though ad hoc agreements and that retired players, like active players, shared in a pool of money generated by those group licensing deals." This sentence does no more than recognize what Plaintiffs have been saying all along and what the Court has ruled in its Class Certification and Summary Judgment Orders: that licensing occurs primarily through the GLAs, *i.e.*, ad hoc licensing is in addition to and separate from that. Neither the Court nor Plaintiffs have suggested that individual ad hoc agreements themselves are improper or that they require sharing of the individually negotiated payments, nor are such payments shared by famous active players. The Defendants have one position (*i.e.*, that a player must sign two contracts – a GLA and an ad hoc agreement – to get paid), whereas the Plaintiffs have another position (*i.e.*, that the GLA itself should generate equal share payments). This Court has properly certified the latter claim for trial.

## III. Conclusion

Defendants' Motion to Decertify the GLA Class offers no new issue or evidence or legal authority and should be denied.

| | |
|---|---|
| Dated: August 21, 2008 | Respectfully submitted,<br><br>MANATT, PHELPS & PHILLIPS, LLP<br><br>By: /s/Ronald S. Katz<br>　　　Ronald S. Katz (SBN 085713)<br>　　　Ryan S. Hilbert (SBN 210549)<br>1001 Page Mill Road, Building 2<br>Palo Alto, CA 94304-1006<br>Telephone: (650) 812-1300<br>Facsimile: (650) 213-0260<br><br>MCKOOL SMITH, P.C.<br>Lewis T. LeClair (SBN 077136)<br>Jill Adler Naylor (SBN 150783)<br>300 Crescent Court<br>Dallas, TX 75201<br>Telephone: (214) 978-4984<br>Facsimile: (214) 978-4044<br><br>*Attorneys for Plaintiffs* |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES