Todd Padnos (Bar No. 208202)
*tpadnos@dl.com*
DEWEY & LEBOEUF LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Tel: (415) 951-1100; Fax: (415) 951-1180

Jeffrey L. Kessler (*pro hac vice*)
*jkessler@dl.com*
David G. Feher (*pro hac vice*)
*dfeher@dl.com*
David Greenspan (*pro hac vice*)
*dgreenspan@dl.com*
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 259-8000; Fax: (212) 259-6333

Kenneth L. Steinthal (*pro hac vice*)
*kenneth.steinthal@weil.com*
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000; Fax: (650) 802-3100

Bruce S. Meyer (*pro hac vice*)
*bruce.meyer@weil.com*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000; Fax: (212) 310-8007

Attorneys for Defendants National Football League Players Association
and National Football League Players Incorporated d/b/a Players Inc

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC,<br><br>Defendants. | Case No. C 07 0943 WHA<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DECERTIFY THE GLA CLASS**<br><br>Date: September 8, 2008<br>Time: 2:00 p.m.<br>Ctrm: 9<br>Judge: William H. Alsup |

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Pursuant to Federal Rule of Civil Procedure 23(c), Defendants National Football League Players Association ("NFLPA") and National Football League Players Incorporated ("Players Inc") submit this reply brief in support of their motion to decertify the GLA Class certified in this Court's Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification ("Certification Order").

## ARGUMENT

Plaintiffs' opposition – which accuses Defendants of making up an issue not in the case – simply sidesteps the new ruling of the Court that raises the need for class decertification. It was this Court – not Defendants – that, for the first time, raised the issue of the GLA Class claims encompassing the claim that "defendants had a duty, created by the plain wording of the GLA, to ensure that retired players' rights were licensed primarily through the GLAs rather than through ad hoc agreements and that retired players, like active players, shared in a pool of money generated by those group licensing deals." Order Denying Defs.' Mot. for Summ. J. ("SJ Order"), at 7 (Aug. 6, 2008); see also id. ("If the GLA was triggered anytime defendants obtained licensing deals for groups of six or more retired players who had signed GLAs, and defendants did indeed obtain such licensing deals but failed to pay the retired players as per the GLA's instructions, the GLA was breached – or so a reasonable jury could find.").

The Court raised this new claim after it noted in its summary judgment order that numerous retired player *ad hoc* licensing deals involved the licensing of rights of six or more players. Indeed, nearly $8 million was paid out in *ad hoc* licensing deals during the class period to retired players who are GLA Class members. See Expert Report of Roger Noll, dated June 12, 2008, at 22 (attached as Exhibit 18 to the Declaration of David Greenspan in Support of Defs.' Mot. for Summ. J. ("Greenspan Summ. J. Decl.") (June 13, 2008) (Rec. Doc. 381)). Further, it is undisputed that the sole GLA Class representative in this action – Mr. Adderley – received more than $12,000 during the class period in *ad hoc* licensing deals with Upper Deck and Electronic Arts, Inc. ("EA") that involved licensing the rights of six or more players. See, e.g., Affidavit of Andrew Feffer ¶¶ 3-9 (Sept. 21, 2007) (Rec. Doc. 151). Given the Court's ruling that the trial of Plaintiffs' claims in this action should include the issue of whether the amounts paid to GLA

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Class members under *ad hoc* group licensing deals should have been shared with all retired players who signed GLAs – instead of being paid in full to those GLA Class members, such as Mr. Adderley, who were parties to those *ad hoc* deals – the resulting conflict between those GLA Class members who had *ad hoc* licensing deals and received such money (such as Mr. Adderley) and those who did not (the majority of the GLA Class members) is clear. It cannot be swept under the rug.

Despite this conflict, Plaintiffs do not even try to contest the extensive case law Defendants cited in their opening brief that establishes that decertification is the required remedy when an irreconcilable conflict exists between the class representative and the class. See authorities cited in Defs.' Mot. to Decertify the GLA Class ("Decertification Motion"), at 5-7 (Aug. 15, 2008); 7A Charles Alan Wright, Arthur A. Miller & Mary Kay Kane, Federal Practice and Procedure § 1768 (2008) ("It is axiomatic that a putative representative cannot adequately protect the class if the representative's interests are antagonistic to or in conflict with the objectives of those being represented."). As these authorities make clear, there is no way to compromise this issue – a class action is not permitted if the only representative and class counsel have interests adverse to the class.

Plaintiffs spend almost the entirety of their brief trying to divert the Court from the dispositive conflict issue, claiming that "[n]othing has changed since the Court certified the Class . . . ." Pls.' Opp'n to Defs.' Mot. to Decertify the GLA Class ("Opposition"), at 2 (Aug. 21, 2008). In fact, at the time the Court certified the GLA Class, it premised its decision on the incorrect belief that Retired Player GLAs involved "group" licensing of six or more players, while *ad hoc* deals, by contrast, only involved licensing done on an "individual" basis with groups of five or fewer players:

> It is also important to note that the GLAs only cover *group* licensing – *i.e.*, licensing of *six or more* players at once. Individual retired players (and groups of five or less) can still license their image and likeness independently under their *own "ad hoc" agreements*. For instance, Adderley received over $12,000 in licensing revenues from Players Inc. over roughly four years under *such ad hoc agreements*. During that same period, other more famed retired players such as Archie Manning, Roger Craig, and Randall Cunningham received $450,000, $190,000, and $175,000, respectively under their own ad hoc agreements. The star athletes of the class would thus still be able to license their celebrity on an

-2-

individual basis for whatever amount they choose. <u>Such licensing would have no affect on the class. What is at stake here is the *group* license.</u>

Certification Order at 9-10 (italics in original; underlining added; citations omitted).

Since that time, the Court has been able to review the summary judgment record and now recognizes that *ad hoc* licensing deals by Mr. Adderley and certain other GLA Class members frequently involved six or more players. It was this new recognition that led the Court to state, in its summary judgment decision, that another GLA Class claim for the jury to determine at trial is whether "defendants had a duty, created by the plain wording of the GLA, to ensure that retired players' rights were licensed primarily through the GLAs rather than through *ad hoc* agreements and that retired players, like active players, shared in a pool of money generated by those group licensing deals." SJ Order at 7.

Plaintiffs do not seriously dispute that such a GLA Class claim would cause a conflict between Mr. Adderley and numerous other GLA class members. Nor could they do so. Indeed, Walter Beach, a GLA Class member whom Plaintiffs have identified as a witness expected to testify at trial, readily identified this conflict at his recent deposition. As Mr. Beach testified, it is his belief that he and other GLA Class members who did not enter into *ad hoc* group licensing deals should be entitled to a share of the money that Mr. Adderley and certain other GLA Class members kept for themselves in such *ad hoc* deals:

> Q. If there was a program whereby the NFLPA was able to sell the rights to six or more just retired players who had signed GLAs, was it your understanding that you would be entitled to a share of that money, regardless of whether you were one of the six players included in that group?
>
> MR. CHARHON: Object to form.
>
> A. Yes, correct. Regardless of whether I was a member – if I were the six or not, it didn't –
>
> Q. <u>So if, for example, Herb Adderley was licensed along with five other retired players, not including you, your expectation is that you should have received a share of the money generated by the licensing of Herb Adderley and the other five retired players' rights?</u>
>
> A. <u>That's correct.</u>

Walter Beach III Depo. Tr. 76:7-25 (attached as Exhibit 1 to the Declaration of Ian Papendick in Further Support of Defs.' Mot. to Decertify the GLA Class, submitted herewith) (emphasis

-3-

added).

The conflict between Mr. Adderley, on the one hand, who received more than $12,000 under such *ad hoc* group licensing deals, and Mr. Beach and other GLA Class members who did not receive any such *ad hoc* monies, and whom Mr. Beach believes should receive a share of the money paid to Mr. Adderley, could not be starker. That conflict cannot be eliminated except by decertification of the class. In fact, the repeated efforts of Mr. Adderley and class counsel to disclaim any complaint in this action against the ad hoc license agreements only underscores their conflict. See, e.g., Opposition at 3 ("Defendants have never taken the position in administering the ad hoc agreement payments for many years that these payments must be shared with an escrow fund. Suggesting at this time that Plaintiffs must embrace this unrealistic and unsupported position is frivolous."); id. at 4 ("[i]t is irrelevant that Mr. Adderley was compensated under several ad hoc agreements"). Mr. Adderley and class counsel have already betrayed the interests of numerous GLA Class members to protect the interests of Mr. Adderley and other GLA Class members who entered into *ad hoc* group licensing deals in which they kept all of those licensing payments.

The extent to which Mr. Adderley and class counsel have sacrificed the interests of many GLA Class members is shown by the single paragraph at the end of their brief in which they finally quote and discuss the Court's statement in its summary judgment decision regarding the possible GLA Class claim against Defendants for engaging in group licensing with retired players through *ad hoc* arrangements. Instead of embracing this new class claim that the Court identified, Mr. Adderley and class counsel disavow it, and assert that it does not exist, as if the words of the Court have no meaning: "This sentence does no more than recognize what Plaintiffs have been saying all along and what the Court has ruled in its Class Certification and Summary Judgment Orders: that licensing occurs primarily through the GLAs, *i.e.*, ad hoc licensing is in addition to and separate from that." Opposition at 10. The Court's statement could not have been more clearly the opposite – i.e., that many members of the GLA Class can claim at trial that the *ad hoc* group licensing monies paid to some GLA Class members such as Mr. Adderley should have been shared with those GLA Class members who did not enter into

-4-

such *ad hoc* deals.

Plaintiffs try to deny any conflict by referring to the co-existence of <u>active</u> player *ad hoc* agreements and <u>active</u> player group licensing. Opposition at 2-3. However, this argument ignores a fundamental difference between the retired player GLAs at issue in this action and active player GLAs – there is <u>no</u> provision in active player GLAs for any money to be "divided" or for any "escrow account," so there would never be any possible conflict between active players who only signed GLAs and active players who also did *ad hoc* group licensing deals. <u>See</u>, <u>e.g.</u>, Greenspan Summ. J. Decl., Ex. 44 at PI006372 (active player GLA only provides that "[i]n consideration of this assignment of right, the NFLPA agrees to use the revenues it receives from group licensing programs to support the objectives as set forth in the By-laws of the NFLPA"). The active player GLA is thus inapposite.

Similarly, Mr. Adderley and class counsel cannot avoid the conflict by arguing that the Retired Player GLA only requires the equal sharing of "collective" licensing, as opposed to group licensing. Opposition at 3-4, 7. In fact, there is no reference to any concept of "collective licensing" in the Retired Player GLA. The <u>only</u> reference is to "group licensing programs," which are defined as "programs in which a licensee uses a total of six (6) or more present or former NFL player images in conjunction with or on products that are sold at retail or used as promotional or premium items." <u>See</u> Third Amended Complaint, Exs. B & C (Nov. 15, 2007) (Rec. Doc. 192). Because the *ad hoc* licensing deals of Mr. Adderley and certain other GLA Class members involved six or more players, the class conflict raised by the Court's summary judgment decision exists and cannot be avoided except through decertification.

This Court has already disqualified Mr. Parrish as a class representative for his vendetta against Mr. Upshaw and the NFLPA. Mr. Adderley and class counsel, as well as all GLA Class members who entered into *ad hoc* group licensing deals, suffer from no less a disability because of their conflict with the majority of GLA Class members who did <u>not</u> enter into any *ad hoc* group licensing agreements. Mr. Adderley benefited from *ad hoc* group licensing to the tune of more than $12,000, and certain other GLA Class members benefited from *ad hoc* licensing in a total amount of nearly $8 million. This is money that, according to the

-5-

Defendants' Reply Brief In Support of Motion to Decertify the GLA Class     Civ. Action No. C07 0943 WHA

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Court, can be subject to a legal claim by those GLA Class members who did not enter into *ad hoc* licensing deals, such as Mr. Beach. There is, in short, an irreconcilable conflict of interest among the GLA Class members, class counsel, and Mr. Adderley, and no alternative other than to decertify the conflicted GLA Class.

**CONCLUSION**

For all of the foregoing reasons, Defendants' Motion to Decertify the GLA Class should be granted.

Date: August 28, 2008

DEWEY & LEBOEUF LLP

BY: \_\_/s/Jeffrey L. Kessler_____

Jeffrey L. Kessler

*Attorneys for Defendants*

-6-