

**Ronald S. Katz**
Manatt, Phelps & Phillips, LLP
Direct Dial: (650) 812-1346
E-mail: rkatz@manatt.com

October 8, 2008

Client-Matter: 29749-060

**VIA ELECTRONIC FILING**

The Honorable William Alsup
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:   *Parrish v. National Football League Players Association*
             Case No. C07-0943 WHA

Dear Judge Alsup:

      The parties respectfully submit this joint letter brief concerning Plaintiffs' request for an Order from this Court compelling Doug Allen to appear as a witness at trial pursuant to duly served trial subpoena on October 21, 2008. The parties request that the Court take up this matter at the pre-trial conference on October 15.

      The parties' respective positions on this issue are set forth below.

**Plaintiffs' Position**

      The purpose of this letter brief is to compel Doug Allen, a crucial witness in this case, a resident of California, and who is under compulsory process pursuant to a valid trial subpoena, to appear at trial on October 21, 2008, as either the first or second witness in Plaintiffs' case in chief. Defendants have steadfastly refused this request even though they concede Mr. Allen does not have any pre-existing, binding commitments that day.

      Doug Allen is the former Assistant Executive Director of the NFLPA and the President of Players Inc. He is the key surviving executive of both Defendants for all relevant times. Mr. Allen and the late Gene Upshaw were the two highest-ranking officers in both the NFLPA and Players Inc. Mr. Allen executed nearly all of the Players Inc licensing agreements that are at issue in this dispute, including several agreements with Electronic Arts relating to the Madden video game franchise. Moreover, Messrs. Allen and Upshaw were the only signatories on several agreements between the NFLPA and Players Inc. that Plaintiffs assert were not arms-lengths transactions, including a March 2001 agreement in which Mr. Allen (on behalf of Players Inc) and Mr. Upshaw (on behalf of the NFLPA) unilaterally agreed to re-allocate $8 million of gross licensing revenue to Defendants. Because of Mr. Allen's pervasive and dominant role in this case, Plaintiffs intend to call him as their first or second witness.

11355 West Olympic Boulevard, Los Angeles, California 90064-1614 Telephone: 310.312.4000 Fax: 310.312.4224
Albany | Los Angeles | New York | Orange County | Palo Alto | Sacramento | San Francisco | Washington, D.C.



Plaintiffs personally served Mr. Allen with a valid trial subpoena on September 12, 2008.[1]  *See* Exh. A, attached proof of service.  Once Mr. Allen was under a valid subpoena, Plaintiffs informed Defendants that they expected Mr. Allen to testify at trial on October 21, 2008.  Defendants have since claimed that Mr. Allen is "unavailable" on October 21, claiming that he is currently scheduled to participate in meetings (relating to the potential Screen Actors' Guild strike) which are to last until October 20 – the day **BEFORE** he is needed to testify.  Defendants claim he is unable to attend trial that day, however, because he purportedly must "return to his office [on October 21] . . . in order to address the business he will have missed while consumed by his quarterly board meetings during the prior five days."  (*See* Exh. B, email from Defendants' counsel.)

Plaintiffs have already been very accommodating to Mr. Allen's business commitments, agreeing that he could appear in the trial only once, and that Defendants could actually conduct their direct examination of him during Plaintiffs' case in chief.  However, Defendants wanted more – to dictate precisely *when* Mr. Allen would appear, even in the absence of a valid excuse.  During a meet and confer call with opposing counsel on September 29, Plaintiffs attempted to accommodate Mr. Allen's schedule even further by offering to stipulate that the parties request that this Court allow opening statements to take place on October 21 so that Mr. Allen would not have to appear until the morning of October 22.  Defendants refused this request, too, stating that Mr. Allen would only be produced on October 22 if Plaintiffs agreed that Mr. Allen – who would also be subject to at least 2 hours of direct testimony from Defendants on *any* relevant subject matter[2] – would not have to return to court for any additional days.  Defendants did agree that Mr. Allen could appear on two consecutive days on October 23 and 24, near the very end of Plaintiffs' case in chief  presentation.  While Plaintiffs do not anticipate Mr. Allen's testimony lasting longer than one day, they cannot agree to this request given both Mr. Allen's vital importance to the case and because they have no way of knowing how long Defendants' questioning (which will also include "friendly" direct) will last.  Mr. Allen can best offer the jury an early, overall picture of the Defendants' conduct at issue in this case.

---

[1] Even though Defendants previously indicated that Mr. Allen's trial subpoena was "factually inaccurate", they have since indicated that they will not challenge the service of the subpoena.  Mr. Allen did effectively evade service of process for more than a week prior to effective service and now apparently asserts that he was not properly served because of some dispute about how he received witness fees.

[2] Defendants also have demanded that they be able to cross-examine Mr. Allen beyond the scope of Plaintiffs' direct examination on any relevant subject matter on which Defendants could have otherwise questioned Mr. Allen if he was also called during Defendants' case.  Plaintiffs have informed Defendants that they do not object to this request.



Although Defendants refuse to admit it, respectfully, Plaintiffs suggest that what is really going here is tactical – Defendants want Tuesday, October 21, to prepare Mr. Allen for testimony; there is no valid business reason for delay.

Mr. Allen's stated desire to "work" in his office in Los Angeles is not an adequate excuse to disregard a valid, enforceable subpoena and disrupt Plaintiffs' planned order of proof. Mr. Allen should be compelled to appear on October 21.[3] A subpoena is a lawfully issued mandate of the court, and it is the responsibility of every citizen to respond to such mandate. *R.L. Fisher, v. Marubeni Cotton Corp.,* 526 F.2d 1338, 1340 (8th Cir. 1975). Failure to comply with a subpoena without adequate excuse is a contempt of court. Fed. R. Civ. Proc. 45(e). While the Rule itself does not explain what constitutes an "adequate excuse", "it seems beyond a doubt that the desire of a subpoenaed individual to work . . . is not an 'adequate excuse' that would justify disobeying a subpoena." *Higgenbottom v. KCS Int'l, Inc.*, 202 F.R.D. 444, 455 (2001). As the court in *Higgenbottom* notes, if work were considered a valid excuse, "the very purpose of subpoenas would be undermined." *Id.*

Defendants have made it clear that Mr. Allen does not have any previously-scheduled commitments on October 21, but, rather, would like to attend to potentially missed "business." In the event Defendants' counsel is unwilling to provide Mr. Allen working space in either their San Francisco or Palo Alto offices, Plaintiffs are more than willing to accommodate Mr. Allen and provide him with an office near the courthouse so that he may answer emails or return missed phone calls. Indeed, because trial will conclude at 1:30 p.m. on October 21, Mr. Allen will have all afternoon to do so. Mr. Allen also has the option of taking a short flight back to Los Angeles if he would prefer to work out of his own office that day.

In sum, Plaintiffs have already agreed to allow Defendants to question Mr. Allen outside the scope of Plaintiffs' case so that he only has to attend trial once. Plaintiffs also have attempted to accommodate Mr. Allen's schedule by suggesting ways Mr. Allen may appear on a date of his choosing without disrupting Plaintiffs' order of proof. Despite these attempts, Defendants refuse to produce Mr. Allen on the date requested by Plaintiffs, October 21. Plaintiffs should not be required to re-arrange the order of their proof at trial simply because it may be inconvenient to Mr. Allen. This Court has wide discretion in determining the order in which the parties adduce proof at trial. *Geders v. United States*, 425 U.S. 80, 86 (1976). Plaintiffs respectfully request that the Court exercise this discretion and order Mr. Allen to appear at trial on October 21, 2008.

---

[3] Of course, the scheduling problem is actually the result of Defendants' request to continue the trial date because of Mr. Upshaw's death. Plaintiffs have already had to accommodate several defense witness conflicts caused thereby.



The Honorable William Alsup
October 8, 2008
Page 4

**Mr. Allen's Position**

Doug Allen, a non-party to this case, requests that the Court modify the trial subpoena addressed to him, dated August 29, 2008 ("Subpoena").[4] Mr. Allen has offered to make himself available on any of three of the first four days of Plaintiffs' case-in-chief, but Plaintiffs have steadfastly refused to make <u>any</u> effort to accommodate Mr. Allen and the persons for whom he works, instead insisting that Mr. Allen testify beginning on October 21, 2008. However, as Plaintiffs know, this is the <u>only</u> date during Plaintiffs' expected four-day case-in-chief that Mr. Allen is unavailable to testify because of longstanding commitments relating to his service as National Executive Director and Chief Negotiator for the Screen Actors Guild ("SAG") during a critical time for SAG.[5]

SAG represents approximately 120,000 members, and Mr. Allen is responsible for negotiating on behalf of SAG eight separate collective bargaining agreements, all of which are set to expire by the end of this year. <u>See</u> Allen Decl. ¶ 2. Mr. Allen is currently engaged in active and ongoing negotiations for the possible renewal of two of these collective bargaining agreements. <u>Id.</u> ¶¶ 2,3. These negotiations are at a critical and time-sensitive stage, especially in light of the substantial impact on the entertainment industry caused by similar negotiations between the Writers Guild of America and their collective bargaining parties, which resulted in a three-month-long strike that shut down productions nationwide. <u>Id.</u> ¶ 3. In addition to Mr. Allen's role as Chief Negotiator in these ongoing labor negotiations, he is also the person principally responsible for SAG's headquarters office operations in Los Angeles, including the supervision of approximately 300 employees, as well as a staff of approximately 150 additional employees in branch offices across the country. <u>Id.</u> ¶ 2.

Contrary to Plaintiffs' claim that "Mr. Allen does not have any pre-existing, binding commitments" during the week of October 20, Mr. Allen is required to attend pre-scheduled quarterly board meetings of the regional and national boards of SAG through Monday, October 20. <u>Id.</u> ¶ 4. Those meetings begin the prior Thursday, October 16, and will extend into the evenings, throughout the weekend, and finally conclude on the evening of October 20th (the first day of trial). <u>Id.</u> As National Executive Director of SAG, it is essential that Mr. Allen attend all

---

[4] As a courtesy to Plaintiffs, Mr. Allen is not challenging the service of the Subpoena even though the process server did not tender the witness fee concurrently with the Subpoena, which renders service invalid. <u>See</u> Declaration of Doug Allen ("Allen Decl.") ¶ 7 (filed concurrently herewith); <u>San Francisco Bay Area Rapid Transit Dist. v. Spencer</u>, No. C 04-04632 SI, 2006 WL 2734284, *1 (N.D. Cal. Sept. 25, 2006).

[5] Plaintiffs have indicated that they intend to conclude their case-in-chief by Friday, October 24, 2008.



of these meetings.  Id.  Indeed, Mr. Allen's absence could substantially impair SAG's ability to efficiently plan for and conduct its collective bargaining negotiations, with potential resulting harm to SAG's members and others who depend on entertainment productions that could not go forward without the participation of SAG's membership.  Id.

Thus, SAG board meetings will prevent Mr. Allen from traveling from Los Angeles to San Francisco until, at the earliest, Tuesday, October 21 (i.e., the very day that Plaintiffs are demanding that he testify at trial).  Id. ¶ 5.  Plaintiffs' offer to provide Mr. Allen with office space on October 21 does not address the fact that Mr. Allen will need to fly from Los Angeles to San Francisco on the 21st, which by itself renders it impossible as a practical matter for Mr. Allen to testify that day, especially since the trial days start at 7:30 a.m. and end at 1:00 p.m.

Mr. Allen also needs to spend at least a few hours on October 21 in SAG's office in Los Angeles to conduct a wrap-up meeting with his senior staff, and to try to catch-up on any day-to-day supervisory responsibilities that he will have been unable to fulfill while participating in the SAG board meetings for the prior five days.  Id.  Mr. Allen merely seeks to have October 21 to spend a few hours in SAG's office after his extended absence, and to travel to San Francisco that same day, and then testify on Wednesday, October 22, which is just one day after the date Plaintiffs' desire.  In contrast, Plaintiffs' demand that Mr. Allen testify the same day he would fly from Los Angeles to San Francisco, immediately after he was closeted for five days in intensive SAG board meetings, appears to be a transparent attempt to ambush Mr. Allen regardless of the potential consequences to Mr. Allen and SAG's membership.

In the event Mr. Allen testifies on Wednesday, October 22, Mr. Allen believes he would need to return to Los Angeles the following day so he can attend to matters that are sure to have accumulated during the prior week, and which Mr. Allen will not have been able to address during a few hour visit to his office on the 21st.  Id. ¶ 6.  If Plaintiffs intend to have Mr. Allen on the stand for more than one full day (including Defendants' examination), then Mr. Allen requests that he testify on October 23 and 24, which would give Mr. Allen a full day in SAG's Los Angeles office (October 22) to tend to SAG business which will have been delayed during Mr. Allen's absence from the office since the prior week.  Id.  If Mr. Allen were forced to testify on both October 22 and 23, then more than a full week would have passed without his presence for a full day in SAG's offices, which is likely to adversely affect SAG's operations and its ability to conduct its work on behalf of SAG members during this critical period.  Id.

Plaintiffs' dismissive response to Mr. Allen's obligations as the head of a major union that is in the midst of sensitive collective bargaining negotiations – which could have an impact on the entire entertainment industry – speaks for itself.  Plaintiffs' "authority" for why the Court should enforce the Subpoena is an inapposite case about a retained expert's refusal to appear at a deposition for longer than an hour.  See Higgenbotham v. KCS Int'l, Inc., 202 FRD 444, 454-55



(D. Md. 2001). Mr. Allen is not a paid expert making unreasonable demands. Id. Rather, he is a non-party with responsibilities to approximately 120,000 other people, who is respectfully requesting that the Court modify a subpoena so as not to impose undue burdens on his obligations to the SAG members he represents. See Exxon Shipping Co. v. Dep't of the Interior, 34 F.3d 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas.") (citing Fed. R. Civ. P. 45(c)(3)(A)(ii)).

Defendants also note that Plaintiffs have offered no legitimate reason as to how they could possibly be prejudiced by Mr. Allen testifying on a day other than the first day of trial. Indeed, Plaintiffs intend to call, among other witnesses, four retired players, two proffered experts, and the former Chief Operating Officer of Players Inc, and play various deposition testimony. Surely Plaintiffs can present an "overall picture of Defendants' conduct" through their other witnesses, and, in any event, Mr. Allen has agreed to make himself available as early as the second day of Plaintiffs' case-in-chief.

Rule 45 provides that "the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv); see Nocal, Inc. v. Sabercat Ventures, Inc., No. C 04-0240 PJH(JL), 2004 WL 3174427, *3-4 (N.D. Cal. Nov. 15, 2004) (quashing subpoena for attorney's deposition because it placed an undue burden on him); Scottsdale Ins. Co. v. Education Management, Inc., No. 04-1053, 2007 WL 2127798, *2-4 (E.D. La. July 25, 2007) (modifying a subpoena that subjected a party's employee to the undue burden of traveling to testify for a deposition when other testimony was available). The Subpoena clearly imposes such an undue burden, Mr. Allen has offered a reasonable alternative (i.e., making himself available on the 22nd, or the 23rd and 24th), and the Subpoena should be modified accordingly.

          Respectfully submitted,

          /s/ Ronald S. Katz

          Ronald S. Katz
          Counsel for Plaintiffs

          /s/ Jeffrey Kessler

          Jeffrey Kessler
          Counsel for Defendants

*Filer's Attestation: Pursuant to General Order No. 45, Section X(B) regarding signatures, Ronald S. Katz hereby attests that concurrence in the filing of this document has been obtained.*