Manatt, Phelps & Phillips, LLP
RONALD S. KATZ (Bar number CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar number 210549)
E-mail: rhilbert@manatt.com
noel s. cohen (California Bar number 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar number CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar number CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS III, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF DISPUTED JURY INSTRUCTIONS OFFERED BY PLAINTIFFS**<br><br>Judge: Honorable William H. Alsup<br>Date: October 15, 2008 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISPUTED INSTRUCTION NO. 1 OFFERED BY PLAINTIFFS
RE DESCRIPTION OF GLA CLASS CLAIMS AND PARTIES . . . . . . . . . . . . . . . . . . . . . 2

DISPUTED INSTRUCTION NO. 2 OFFERED BY PLAINTIFFS
RE BURDEN OF PROOF – BREACH OF CONTRACT . . . . . . . . . . . . . . . . . . . . . . . . . 4

DISPUTED INSTRUCTION NO. 3 OFFERED BY PLAINTIFFS
RE BREACH OF CONTRACT CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

DISPUTED INSTRUCTION NO. 4 OFFERED BY PLAINTIFFS
RE BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING . . . . . . . . . . . . . 15

DISPUTED INSTRUCTION NO. 5 OFFERED BY PLAINTIFFS RE
INTERPRETING THE TERMS OF THE RETIRED PLAYER GLA CONTRACT
–CONTRACT CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

DISPUTED INSTRUCTION NO. 6 OFFERED BY PLAINTIFFS RE CONTRACT
INTERPRETATION – CONSTRUCTION AGAINST DRAFTER . . . . . . . . . . . . . . . . . . . 19

DISPUTED INSTRUCTION NO. 7 OFFERED BY PLAINTIFFS
RE CONTRACT INTERPRETATION – DEFENDANTS' LICENSE AGREEMENTS . . . . 20

DISPUTED INSTRUCTION NO. 8 OFFERED BY PLAINTIFFS
RE BREACH OF CONTRACT - STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . . . . . 23

DISPUTED INSTRUCTION NO. 9 OFFERED BY PLAINTIFFS
RE BURDEN OF PROOF - BREACH OF FIDUCIARY DUTY . . . . . . . . . . . . . . . . . . . 25

DISPUTED INSTRUCTION NO. 10 OFFERED BY PLAINTIFFS
RE FIDUCIARY RELATIONSHIP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

DISPUTED INSTRUCTION NO. 11 OFFERED BY PLAINTIFFS
RE DUTIES OF A FIDUCIARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

DISPUTED INSTRUCTION NO. 12 OFFERED BY PLAINTIFFS
RE BREACH OF FIDUCIARY DUTY - STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . 37

DISPUTED INSTRUCTION NO. 13 OFFERED BY PLAINTIFFS
RE DAMAGES – INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

DISPUTED INSTRUCTION NO. 14 OFFERED BY PLAINTIFFS
RE COMPENSATORY DAMAGES –BREACH OF CONTRACT CLAIM . . . . . . . . . . . . 41

DISPUTED INSTRUCTION NO. 15 OFFERED BY PLAINTIFFS
RE COMPENSATORY DAMAGES – BREACH OF FIDUCIARY DUTY . . . . . . . . . . . . 43

DISPUTED INSTRUCTION NO. 16 OFFERED BY PLAINTIFFS
RE NOMINAL DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

DISPUTED INSTRUCTION NO. 17 OFFERED BY PLAINTIFFS RE DAMAGES – DISGORGEMENT BREACH OF FIDUCIARY DUTY CLAIM  . . . . . . . . . . . . . . . . . . . . . .  46

DISPUTED INSTRUCTION NO. 18 OFFERED BY PLAINTIFFS RE PLAINTIFF MAY NOT RECOVER DUPLICATE CONTRACT AND TORT DAMAGES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  48

DISPUTED INSTRUCTION NO. 20 OFFERED BY PLAINTIFFS RE GENERAL PUNITIVE DAMAGES – BREACH OF FIDUCIARY DUTY  . . . . . . . . . . .  50

DISPUTED INSTRUCTION NO. 21 OFFERED BY PLAINTIFFS RE COMPUTATION OF PUNITIVE DAMAGES – BREACH OF FIDUCIARY DUTY . . .  51

II.      CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  53

MEMORANDUM ISO DISPUTED JURY
INSTRUCTIONS OFFERED BY PLAINTIFFS
C07 0943 WHA

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abuan v. Gen. Elec. Co.,*
3 F.3d 329 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Affordable Elegance Travel, Inc. v. Worldspan, L.P.,*
774 A.2d 320 (D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Allapattah Servs. v. Exxon Corp.,*
157 F. Supp. 2d 1291 (S.D. Fla. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Allen Realty,*
318 S.E.2d 592 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Allworth v. Howard Univ.,*
890 A.2d 194 (D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Aronoff v. Lenkin Co.,*
618 A.2d 669 (D.C. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

*Belmar v. Garza,*
319 B.R. 748 (Bankr. D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bolling Fed. Credit Union v. Cumis Ins. Soc'y, Inc.,*
475 A.2d 382 (D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Breezevale Ltd. v. Dickinson,*
879 A.2d 957 (D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Brown v. Pro Football,*
146 F.R.D. 1 (D.D.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Burdett v. Miller,*
957 F.2d 1375 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Burtoff v. Faris,*
935 A.2d 1086 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*C&E Servs., Inc. v. Ashland, Inc.,*
498 F. Supp. 2d 242 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Cambridge Holdings Grp., Inc. v. Federal Ins. Co.,*
357 F. Supp.2d 89 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Capitol Place I Assoc. L.P. v. George Hyman Constr. Co.,*
672 A.2d 194 (D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Chandler & Taylor Co. v. Norwood,*
14 App. D.C. 357 (1899) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Church of Scientology, Int'l v. Eli Lilly & Co.,*
848 F. Supp. 1018 (D.D.C. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Colbert v. Georgetown University,*
641 A.2d 469 (D.C. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Construction Interior Sys., Inc. v. Donohoe Cos.,*
813 F. Supp. 29 (D.D.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Crown Cork & Seal Co. v. Parker,*
    462 U.S. 345 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Doe v. Georgetown Center (II), Inc.,*
    708 A.2d 255 (D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Farris v. Compton,*
    652 A.2d 49 (D.C. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Fowler v. A & A Company,*
    262 A.2d 344 (D.C. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Franklin Inv. Co., Inc. v. Smith,*
    383 A.2d 355 (D.C. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 49

*Gandal v. Telemundo Group,*
    23 F.3d 539 (App. D.C. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Garcia v. Llerena,*
    599 A.2d 1138 (D.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*George Washington University v. Weintraub,*
    458 A.2d 43 (D.C. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Greenwich Ins. Co. v. Ice Contrs., Inc.,*
    541 F. Supp. 2d 327 (D.D.C. 2008 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hais v. Smith,*
    547 A.2d 986 (D.C. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Halvonik v. Dudas,*
    398 F.Supp.2d 115 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Hammett v. Minar,*
    53 F.2d 144 (D.C. 1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Haralson v. Federal Home Loan Bank Board,*
    655 F. Supp. 1550 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hendry v. Pelland,*
    73 F.3d 397 (D.C.Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 47

*In re Bailey,*
    883 A.2d 106 (D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*In re Leisure Corp.,*
    2007 WL 607696 (N.D. Cal) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Jenkins v. Strauss,*
    931 A.2d 1026 (D.C. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Judah v. Burton Reiner and Morris Mgmt., Inc.,*
    744 A.2d 1037 (D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Kline v. Coldwell, Banker & Co.,*
    508 F.2d 226 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*LAK, Inc. v. Deer Creek Enterprises,*
    1986 U.S. Dist. LEXIS 18270 ( E.D. Mich. Oct. 31, 1986) . . . . . . . . . . . . . . . . . . . . . . . 4

*Lucas v. U.S. Army Corps of Eng'rs,*
    789 F. Supp. 14 (D.D.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Martin & Martin, Inc. v. Bradley Enters., Inc.,*
    504 S.E.2d 849 (Va. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,*
    146 F.3d 983 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Mullin v. Washington Free Weekly, Inc.,*
    785 A.2d 298-88 (D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Murray v. Wells Fargo Home Mortg.,*
    953 A.2d 308 (D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Park v. Arnott,*
    1992 U.S. Dist. LEXIS 9903, 1992 WL 184521 (D.D.C. 1992) . . . . . . . . . . . . . . . . . 4

*Paul v. Judicial Watch, Inc.,*
    543 F. Supp. 2d 1 (D.D.C. February 6, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Peterson v. Davenport Community School Dist.,*
    626 N.W.2d 99 (Iowa 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Quadros & Assocs., P. C. v. City of Hampton,*
    268 Va. 50, 597 S.E.2d 90 (Va. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Retail Clerks Int'l Ass'n v. NLRB,*
    510 F.2d 802 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Rolinksi v. Lewis,*
    828 A.2d 739 (D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Roth v. Speck,*
    126 A.2d 153 (D.C. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 44

*Safeway Stores, Inc. v. Kelley,*
    448 A.2d 856 (D.C. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Segal Wholesale, Inc. v. United Drug Service,*
    933 A.2d 780 (D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Seton v. United Gold Network, LLC,*
    2008 U.S. Dist. LEXIS 35440 (D. Md. Apr. 30, 2008) . . . . . . . . . . . . . . . . . . . . . 4, 39

*Shafford v. Otto Sales Co.,*
    119 Cal. App. 2d 849 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Shapiro, Lifschitz & Schram, P.C. v. Hazard,*
    24 F. Supp.2d 66 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Smilow v. Southwestern Bell Mobile Sys.,*
    323 F.3d 32 (1st Cir. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Smith v. Jenkins,*
    452 A.2d 333 (D.C. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Sobelsohn v. American Rental Management Co.,*
    926 A.2d 713 (D.C. 2007.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tolbert v. National Harmony Memorial Park,*
    520 F. Supp. 2d 209 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*TransAmerica Leasing, Inc. v. Venezuela,*
    200 F.3d 843 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Travis v. Travis,*
    203 A.2d 173 (D.C. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Baroid Corp.,*
    346 F. Supp. 2d 138 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

202078844.1

*United States v. Carter,*
    217 U.S. 286 (1910) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*ViChip Corp. v. Lee,*
    438 F.Supp.2d 1087 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Vicki Bagley Realty, Inc. v. Laufer,*
    482 A.2d 359 (D.C. App. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 35

*Wagman v. Lee,*
    457 A.2d 401 (D.C. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 50

*Washington Props., Inc. v. Chin, Inc.,*
    760 A.2d 546 (D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Windham v. American Brands, Inc.,*
    565 F.2d 59 (4th Cir. 1977), *cert. denied*, 435 U.S. 968, 98 S. Ct. 1605, 56 L. Ed.
    2d 58 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*WMATA v. Mergentime Corp.,*
    200 U.S. App. D.C. 95, 626 F.2d 959 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . 17

### STATUTES

D.C. Code § 12-301(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

### RULES

Fed. R. Civ. Pro. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rule 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

### OTHER AUTHORITIES

17A Am. Jur.2d *Contracts* § 562 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 Moore's Federal Practice § 23.45[2][b] at 23-223 (3d ed. 2008) . . . . . . . . . . . . . . . . 6

Herbert B. Newberg, 3 *Newberg on Class Actions* § 10.02 at 477 (4th Ed. 2002) . . . . . . . 6, 7, 9

*Restatement (Second) of Agency,* § 388 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Restatement (Second) of Contracts § 236 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Restatement (Second) of Contracts § 346(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Restatement (Third) of Agency,* § 8.02 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Restatement (Third) of Agency,* § 8.08 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Standardized Civil Jury Instructions for the District of Columbia § 11.02 . . . . . . . . . . . . . 14

Standardized Civil Jury Instructions for the District of Columbia § 11.17 . . . . . . . . . . 4, 13, 14

Standardized Jury Instructions for the District of Columbia, § 11:14 . . . . . . . . . . . . . . . 17

*Standardized Jury Instructions for the District of Columbia,* § 1132 . . . . . . . . . . . . . . . 44

Standardized Jury Instructions for the District of Columbia, § 16.03 . . . . . . . . . . . . . . . . 51

## I. **INTRODUCTION**

Plaintiffs submit this Memorandum of Law in Support of the Disputed Jury Instructions Offered by Plaintiffs.

## DISPUTED INSTRUCTION NO. 1 OFFERED BY PLAINTIFFS
## RE DESCRIPTION OF GLA CLASS CLAIMS AND PARTIES

Plaintiffs do not believe any Instruction of this type is necessary. After at least two hours of opening statements, approximately three weeks of testimony and evidence, dozens of witnesses, around four hours of closing statements, and hearing the Stipulated Facts, Plaintiffs do not believe that the lawyers need to tell it what it just heard. Plaintiffs are also aware of this Court's discouragement of preliminary instructions in Paragraph 2(b) of its pre-trial order and thus did not originally offer any instruction of this type to Defendants.

However, when Defendants presented Plaintiffs with this draft instruction and indicated their strong desire to have it included, Plaintiffs worked with Defendants to determine language on which the parties could agree. Assuming the Court chooses to adopt this preliminary instruction, Plaintiffs respectfully request that their version of this instruction be adopted. Defendants have indicated that they do not object to any of the language proposed by Plaintiffs.[1] There are no legal authorities implicated by this instruction.

The only difference between Plaintiffs' version of this instruction and Defendants' version is the inclusion of additional words and a paragraph that Plaintiffs believe to be extraneous and unnecessary. This is really Defendants' attempt to recharacterize evidence after trial.

Specifically, Plaintiffs do not believe it is necessary to include the qualifier "**Retired Player**" before the term "GLA." There is no other GLA at issue in this dispute. Nor do Plaintiffs believe it is necessary to identify Defendant National Football League Players Association ("NFLPA") as a labor union or Defendant National Football League Players Incorporated d/b/a Players Inc ("PLAYERS INC") as the NFLPA's subsidiary. Defendants seek to include the following language in this regard: "**which is a labor union**" and "**which is a**

---

[1] As explained in the parties' Joint Proposed Jury Instructions, the bolded and bracketed language in the instructions is the only language that the parties dispute. The parties have stipulated to all language in normal typeface that is not bolded and bracketed. If any part of an instruction is disputed, the parties have designated it a "disputed instruction" notwithstanding the fact that some, or even most, of the instruction might be stipulated.

1  **subsidiary of the NFLPA**." Plaintiffs even have reason to believe these statements are not

2  wholly accurate.

3       Plaintiffs also do not believe it is necessary or appropriate to include the following

4  paragraph specifically addressing "ad hoc" or individual license agreements: **"Plaintiffs are not**

5  **asserting any complaint or claim against Defendants regarding what have been referred to**

6  **as the "ad hoc" license agreements for retired player rights, under which the retired**

7  **players whose rights were licensed were paid. Plaintiffs are also not seeking any damages**

8  **in connection with the ad hoc agreements."** One of the reasons for this is the same as the

9  reason given above – *i.e.*, after three weeks of trial, the jury should be well aware of the parties'

10  positions concerning "ad hoc" or individual license agreements vis-à-vis the GLA. There is no

11  need to remind jurors of this fact.

12       Another reason is that without a corresponding paragraph on the GLAs, a paragraph on

13  "ad hoc" or individual license agreements is prejudicial to Plaintiffs. In order to counter-balance

14  Defendants' proposed paragraph, the Court would have to include an instruction explaining that

15  the GLA is a group licensing agreement under which Defendants obtained the right to license

16  retired players in "programs in which a licensee utilizes a total of six (6) or more present or

17  former NFL player images in conjunction with or on products sold at retail or used as

18  promotional or premium items." Just as Defendants' proposed instruction states that retired

19  players whose rights were licensed under "ad hoc" or individual license agreements were paid, so

20  too should a countervailing instruction on the GLAs indicate that Defendants did not license any

21  retired players under a GLA, and that no retired player was paid pursuant to a GLA. Rather than

22  go down this road, Plaintiffs respectfully suggest that the Court simply adopt their neutral, basic,

23  and already-agreed-upon proposed instruction or none at all.

24

25

26

27

28

# DISPUTED INSTRUCTION NO. 2 OFFERED BY PLAINTIFFS

## RE BURDEN OF PROOF – BREACH OF CONTRACT

Even though the parties were able to agree with the majority of this instruction, there remain four differences between Plaintiffs' version of this instruction and Defendants' version. Each of these differences is addressed below.

      1.      <u>Contrary to Defendants' Instruction, the Specific Amount of Damages Suffered is Not a Prerequisite to a Breach of Contract Claim, And May Be Proven Later</u>

Plaintiffs' instruction is based on the principle that Plaintiffs only need to show that they were damaged (in an amount to be proven later) in order to prove breach of contract. Plaintiffs propose that they prove damages only to **"the GLA Class members."** Conversely, Defendants' instruction requires Plaintiffs to prove the specific amount of damages suffered before a breach can be found. Defendants incorrectly suggest that Plaintiffs must prove the **"amount of damages, if any, suffered."**

It is a general rule that one need only show that they have been damaged, not the specific amount of damages, before a breach of contract can be established. *Greenwich Ins. Co. v. Ice Contrs., Inc.*, 541 F. Supp. 2d 327, 333 (D.D.C. 2008 ) (stating that the fourth element of breach of contract under D.C. law is merely "'that plaintiff[] suffered damages due to the breach.'"); *Belmar v. Garza*, 319 B.R. 748, 759-60 (Bankr. D.D.C. 2004) (citing *Park v. Arnott*, 1992 U.S. Dist. LEXIS 9903, 1992 WL 184521, *4 (D.D.C. 1992)) (same); Standardized Civil Jury Instructions for the District of Columbia § 11.17 ("Under the law, if one party, without legal excuse, fails to fully perform a duty owed under a contract, then that party has breached the contract.").

"The amount of damage from the breach of contract may be greater or less; but the cause or ground of action is independent of the matter of the amount of damage." *Chandler & Taylor Co. v. Norwood*, 14 App. D.C. 357 (1899) (cited in *Belmar v. Garza*, 319 B.R. 748, 759-60 (Bankr. D.D.C. 2004)). Indeed, "<u>damages are a result of a breach – not an element of proof of a breach</u>." *LAK, Inc. v. Deer Creek Enterprises*, 1986 U.S. Dist. LEXIS 18270, *8 ( E.D. Mich. Oct. 31, 1986) (emphasis added); *see also Seton v. United Gold Network, LLC*, 2008 U.S. Dist.

1 LEXIS 35440, \*9 (D. Md. Apr. 30, 2008) ("In order to calculate Plaintiff's damages under a
2 breach of contract theory, the Court should first decide whether Plaintiff can recover for the
3 losses incurred by corporations in which she is the sole shareholder. Next, the Court should
4 determine the proper measure of damages given the terms of the contract and the injuries that
5 Plaintiff sustained.").

6      Plaintiffs' proposed language in this instruction is supported by the parties' decision to
7 include instruction number 13, which asks the jury to consider the amount of Plaintiffs' damages
8 *after* they have proven that the Defendants have breached the GLA.

9      In contrast, Defendants' proposed language is belied by their request for nominal
10 damages in instruction number 16. Nominal damages arise when a plaintiff can show that a
11 contract has been breached, but is unable to prove actual damages. *Roth v. Speck*, 126 A.2d 153,
12 155 (D.C. 1956) ("[W]here a plaintiff proves a breach of contractual duty he is entitled to
13 damages; however, when he offers no proof of actual damages or the proof is vague and
14 speculative, he is entitled to no more than nominal damages."); Restatement (Second) of
15 Contracts § 346(2) ("If the breach caused no loss . . ., a small sum fixed without regard to the
16 amount of loss will be awarded as nominal damages."). If proof of the exact amount of damages
17 was prerequisite to a breach of contract claim, there would never be a need for nominal damages.
18

19      Unlike Defendants' instruction, Plaintiffs' instruction accurately states the fundamental
20 elements one must show in order to prevail on a breach of contract claim. Plaintiffs respectfully
21 request that their version of this instruction be adopted.

22     2.   <u>Plaintiffs Do Not Need to Prove Individual Damages</u>

23      Plaintiffs' proposed instruction states that they only need to show that **"the GLA Class**
24 **members"** suffered damages as a result of Defendants' breach of the GLAs. Defendants'
25 proposed language wrongly requires Plaintiffs to prove individualized damages **"by each**
26 **individual GLA Class member."** For the reasons given below, Plaintiffs respectfully request
27 that their version of this instruction be adopted.

28

1            a.      <u>The Court Has Already Rejected Defendants' Claim That Individualized</u>
2                          <u>Damages Must be Proven</u>

3         This is not the first time Defendants have raised the issue of individualized damages by

4 Plaintiffs. As the Court will recall, one of the arguments raised by Defendants in their

5 Opposition to Plaintiffs' Motion for Class Certification was that "determining whether and by

6 how much each of the thousands of individual retired players was damaged is simply not

7 possible on a class-wide basis." Defendants' Opposition to Plaintiffs' Motion for Class

8 Certification at 25. However, as the Court also will recall, it expressly considered and rejected

9 this argument in its April 29, 2008 Order certifying the GLA Class.

10         Issues of individual proof damages are typically raised in the context of class

11 certification. *See, e.g., Brown v. Pro Football*, 146 F.R.D. 1, 3 (D.D.C. 1992). "[T]he presence

12 of individual damages issues may require a court to deny certification of a Rule 23(b)(3) class

13 action." 5 Moore's Federal Practice § 23.45[2][b] at 23-223 (3d ed. 2008). The fact that the

14 Court has already considered and rejected this possibility is telling. Having already lost on this

15 issue once, Defendants should not now be allowed to raise it again in the context of the jury

16 instructions.

17            b.      <u>Damages Can And Should Be Calculated On a Class-Wide Basis</u>

18         "[I]n traditional individual suits, individual proof of damages is the only relevant means

19 to determine the defendant's liability for lawful damages." Herbert B. Newberg, 3 *Newberg on*

20 *Class Actions* ("Newberg") § 10.02 at 477 (4th Ed. 2002). However, "the ultimate goal in class

21 actions is to determine the aggregate sum, which fairly represents the collective value of claims

22 of individual class members." *Id.* (citing *Peterson v. Davenport Community School Dist.*, 626

23 N.W.2d 99 (Iowa 2001) ("The goal in all instances is to determine the aggregate sum, which

24 fairly represents the claims of the individual class members.")).

25         Even if Plaintiffs were required to individually prove their damages, Defendants' liability

26 would be the total of all their liabilities to individual members. Newberg § 10.02 at 477. To

27 require Plaintiffs to individually prove their damages, however, would be impracticable and

28 frustrate the purpose for allowing class actions in the first place. *Id.* ("In a class action suit,

202078844.1

joinder is impracticable by the definition of what suits are maintainable as class actions. Accordingly, proofs of damages are often similarly impracticable."); *see also, e.g., Crown Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983) (among the purposes for class action suits is to promote judicial economy and efficiency by affording aggrieved persons a remedy when it is not economically feasible to obtain relief through the traditional framework of multiple individual actions).

When, as here, monetary relief is sought, the class representative can "develop and prove common guidelines or formulae that will apply to determine the measure of recovery for each individual proof of claim." *Allapattah Servs. v. Exxon Corp.*, 157 F. Supp. 2d 1291, 1313 (S.D. Fla. 2001) (citing Newberg § 10.01 at 476). Although such formulae are most frequently found in securities fraud actions and antitrust suits -- including in an unrelated class action brought by the NFLPA on behalf of its active player members (see below) -- such a formula is entirely appropriate here. *See Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. Mass. 2003) (rejecting individual damages issues on the grounds that they "can be accomplished using computer records, clerical assistance, and objective criteria.").

"[I]t is not unusual, and probably more likely in many types of cases, that aggregate evidence of the [D]efendant's liability is more accurate and precise than would be so with individual proofs of loss." Newberg § 10.02 at 479. "The paradigmatic example is aggregate proof based on an inspection of the defendant's records of sales and transactions, which would obviously be the best evidence when compared to estimates of loss by individual [retired player] class members who have not maintained their personal records of the relevant transactions." *Id.* This is especially the case here where Defendants have admitted in discovery that they did not provide any accountings to retired players except through the actual disbursement of funds, if any.

"One acknowledged occasion for aggregate proof of monetary relief is the situation in which monetary liability can be demonstrated by a mathematical computation based on a formula common to an identified class." Newberg § 10.03 at 479; *see also Allapattah Servs. v. Exxon Corp.*, 157 F. Supp. 2d 1291, 1313 (S.D. Fla. 2001) ("The case law supports the calculation of

1 compensatory damages . . . through a common mathematical factor in a class context."");

2 *Windham v. American Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977), *cert. denied*, 435 U.S. 968,

3 98 S. Ct. 1605, 56 L. Ed. 2d 58 (1978) (rejecting individualized damages "in cases where the fact

4 of injury and damage breaks down in what may be characterized as 'virtually a mechanical task,'

5 'capable of mathematical or formula calculation'"). *Brown v. Pro Football* is illustrative on this

6 issue.

7      In *Brown*, the NFL defendants sought to de-certify a class action brought by the NFLPA

8 on behalf of its professional football player members. *Brown v. Pro Football*, 146 F.R.D. 1, 3

9 (D.D.C. 1992). Like Defendants here, the NFL alleged that "[t]he injury and damage

10 determinations will require separate proof as to each class member; thus, common issues no

11 longer predominate over individual issues as required by Fed. R. Civ. Pro. 23." *Id.* at 3. In a

12 page from Defendants' playbook in this case, the NFL defendants sought to support this

13 allegation by "examining several members of the class and highlighting the differences among

14 them." *Id.* Nonetheless, the court noted that there existed numerous common issues of fact,

15 including that "[e]ach member of the plaintiff class signed a similar contract to play on similarly-

16 developed and -operated Development Squads for the same weekly salary." *Id.* at 7. With

17 respect to damages, the court also noted that there was a "common method of proof of damages."

18 *Id.* The court stated: "Although individual circumstances necessarily exist among the members

19 of the plaintiff class, a reasonable approximation of damages is achievable through a common

20 formula. Thus, the factual basis of the damages is common to all members." *Id.*

21      As with the players in *Brown*, "a reasonable approximation of [the] damages [suffered by

22 Plaintiffs in this case] is achievable through a common formula." *Brown v. Pro Football*, 146

23 F.R.D. 1, 3 (D.D.C. 1992). The damages Plaintiffs are seeking are based on acts by Defendants

24 that affect the GLA Class as whole, and are to be shared among the GLA Class members equally,

25 no matter how many times Defendants seek to re-characterize Plaintiffs' claims. This point has

26 been repeatedly acknowledged by the Court. *See* April 29, 2008 Order Granting in Part and

27 Denying in Part Plaintiffs' Motion for Class Certification at 5 (Plaintiffs "have a common

28 interest in establishing an entitlement to something more than the whim of defendants" and in

1    determining whether they are entitled to more than just the "complete mercy and whim of the

2    NFLPA."); August 6, 2008 Order Denying Defendants' Motion for Summary Judgment

3    (Plaintiffs have a common interest in determining "whether the GLAs guaranteed retired players

4    something more than an empty promise."); September 2, 2008 Order Denying Defendants'

5    Motion to De-Certify the Class (quoting from Order Denying Summary Judgment and stating:

6    "Significantly, the Court has made repeatedly clear that the class has a common interest in

7    determining what rights, if any, they were entitled to under the GLA.").

8        Plaintiffs' damages also are "demonstrated by a mathematical computation based on a

9    formula common to an identified class." Newberg § 10.03 at 479. As the report of Plaintiffs'

10    damages expert, Phil Rowley, makes clear, Plaintiffs are seeking damages to the GLA Class as a

11    whole based on revenues received by Defendants in their financial documents. *See generally*

12    Expert Report of Philip Y. Rowley. Significantly, the methodology employed by Mr. Rowley in

13    his damages analysis – *i.e.*, distribution to each retired player on an equal share basis – is the

14    same methodology Defendants themselves use for active players. Such class-wide calculations

15    are clearly appropriate, and should be reflected in the jury instructions.

16        c.    <u>None of the Cases Cited by Defendants Support the Proposition of</u>
<u>Individualized Damages</u>

17    Defendants rely on two cases to support their belief that damages must be proven on an

18    individualized rather than class-wide basis: *Abuan v. Gen. Elec. Co.*, 3 F.3d 329, 334 (9th Cir.

19    1993) and *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 238 n.8 (9th Cir. 1974). Each of

20    these cases is distinguishable.

21        In *Abuan*, the court considered whether each member of a class of workers who claimed

22    to be exposed to toxic chemicals was actually exposed to such materials. *Abuan v. Gen. Elec.*

23    *Co.*, 3 F.3d 329 (9th Cir. 1993). The fundamental issue was not damages as Defendants suggest,

24    but rather causation between the toxic source and the victims' injuries. This point would have

25    been clear had Defendants not deleted the word "causation" from their parenthetical. *Id.* at 334

26    (9th Cir. 1993) (stating in dicta "It is clear that at some point in the litigation Plaintiffs would be

27    required to prove <u>individual causation</u> and damages") (emphasis added). The problem in *Abuan*

28    was that plaintiffs' expert did not prove the causation element, even though "precise data on the

1   exact degree of exposure" was not required. *Id.* at 333. There was no discussion of the need for

2   individualized damages aside from the vague reference in dicta mentioned above.

3       The second case cited by Defendants, *Kline*, is equally distinguishable. In *Kline*, the

4   court re-considered the district court's decision to certify a class of residential home sellers.

5   *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 228 (9th Cir. 1974). The court determined that

6   the case could not be maintained as a class action on the ground that, among other things, the

7   individualized nature of each Plaintiff's claim made the class action unmanageable. As in

8   *Abuan*, the *Kline* court's reference to "damages" was merely in passing – it was only mentioned

9   in a footnote. Notably, the Court did not even raise much less discuss the possibility of proving

10   aggregate damages as would be the case here.

11       3.   Plaintiffs' Explanation of the "Preponderance of the Evidence" Standard Comes

12           Verbatim From the *Standardized Civil Jury Instructions for the District of Columbia.*

13       Plaintiffs' proposed jury instruction includes *verbatim* four paragraphs from the

14   "preponderance of the evidence" standard set forth in the *Standardized Civil Jury Instructions*

15   *for the District of Columbia*:

16       **"To establish a fact by a preponderance of the evidence is to prove that it is more**

17   **likely so than not so. In other words, a preponderance of the evidence means that the**

18   **evidence produces in your mind the belief that the thing in question is more likely true**

19   **than not true.**

20       **"If, after considering all of the evidence, the evidence favoring the plaintiff's side of**

21   **an issue is more convincing to you, and causes you to believe that the probability of truth**

22   **favors the plaintiff on that issue, then the plaintiff will have succeeded in carrying the**

23   **burden of proof on that issue.**

24       **"The term "preponderance of the evidence" does not mean that the proof must**

25   **produce absolute or mathematical certainty. For example, it does not mean proof beyond a**

26   **reasonable doubt as is required in criminal cases.**

27       **"Whether there is a preponderance of the evidence depends on the quality, and not**

28   **the quantity, of evidence. In other words, merely having a greater number of witnesses or**

documents bearing on a certain version of the facts does not necessarily constitute a preponderance of the evidence."

In contrast, Defendants propose a more concise version with roots in the model jury instructions of other jurisdictions:

**"When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.**

**"You should base your decision on all of the evidence, regardless of which party presented it."**

Tellingly, those sections Defendants have chosen *not* to include favor Defendants. For example, unlike Plaintiffs, Defendants do not include an instruction clarifying the differences between the relatively lax "preponderance of the evidence" standard that is found in civil cases and the incredibly high "beyond a reasonable doubt" standard found in criminal cases. Because jurors are likely more familiar with the "beyond a reasonable doubt" standard from the press and on television, Defendants obviously hope that the jury will confuse the two standards and apply, either mistakenly or at least subconsciously, the higher standard with which they are more familiar.

Similarly, unlike Plaintiffs, Defendants do not include an instruction on the quantity of evidence versus the quality of evidence. Clearly Defendants intend to produce numerous witnesses at trial, all of whom will parrot Defendants' position and, more specifically, Defendants' interpretation of the various agreements at issue. This is the same tactic Defendants have already employed numerous times in this case. Defendants also hope to intimidate the jury by the sheer number of their witnesses, just as they have tried to do to Plaintiffs by designating several times as many witnesses as Plaintiffs in their Rule 26 disclosures. Plaintiffs' paragraph on this subject, which, again, comes verbatim from the *Standardized Civil Jury Instructions for the District of Columbia*, is more than appropriate and should be adopted.

    4.   Defendants' Final Sentence Reminding the Jury of Plaintiffs' Burden is Superfluous

1        Unlike Plaintiffs, Defendants seek to add the following to the end of this instruction: **"If**

2 **you find that Plaintiffs have not met their burden of proof on any single element of the**

3 **claim, then you must find for Defendants on that claim."** Plaintiffs assert that this statement

4 is unnecessary, especially since this instruction already makes clear that Plaintiffs bear the

5 burden of proving two conjunctive elements. Plaintiffs respectfully request that it not be

6 included.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DISPUTED INSTRUCTION NO. 3 OFFERED BY PLAINTIFFS
## RE BREACH OF CONTRACT CLAIM

Plaintiffs respectfully request that their version of this instruction be adopted. Defendants have indicated that they do not object to any of the language proposed by Plaintiffs.

There are only two differences between Plaintiffs' version of this instruction and the lengthier instruction suggested by Defendants. The first is that, unlike Defendants, Plaintiffs do not believe it is necessary to include the qualifier "**Retired Player**" before the term "GLA." As explained above in connection with instruction number 1, there is no other GLA Plaintiffs claim to have been breached in this dispute that might make this term confusing.

The second difference concerns Defendants' deliberate mischaracterization of a material breach. Defendants incorrectly seek to include the following language: "**However, damages beyond nominal damages can be awarded only if a material breach occurred. A material breach of contract occurs if a party fails to do something which is so important that it affects the central purpose of the contract**." Defendants also seek to include the qualifier "materially" in their proposed third paragraph. This statement and the qualifier are a complete misstatement of the law and should be rejected.

According to Defendants' instruction, Plaintiffs cannot recover any damages greater than nominal damages unless they prove that Defendants "materially" breached the agreement – i.e., that "the breach substantially defeat[ed] the purpose of the contract." *Fowler v. A & A Company*, 262 A.2d 344, 347 (D.C. 1970). However, there is no basis for this statement in the law. Whether a breach is material has no impact on the *amount* of damages to which a Plaintiff is entitled; it only relates to whether a party has a right to *terminate* an existing contract. *See* Standardized Civil Jury Instructions for the District of Columbia § 11.17 (explaining the distinction between a "material breach" and a "simple breach" in terms of when the contract can be terminated); *see also George Washington University v. Weintraub*, 458 A.2d 43, 47 (D.C. 1983) ("It is well established in contract law that, in the event of total [or "material"] breach, a party may elect to terminate the contract or, in the alternative, use the contract to sue for

1  damages.").   Plaintiffs are deliberately conflating two separate areas of contract law in order to

2  somehow limit the amount of damages to which Plaintiffs are rightfully entitled.

3        None of the authorities cited by Defendants supports their novel interpretation of a

4  "material breach." Nowhere in Sections 11.02 or 11.17 of the Standardized Civil Jury

5  Instructions for the District of Columbia does the term "nominal damages" even appear.

6  Moreover, as explained above, Section 11.17 only discusses a "material breach" in the context of

7  when a party can elect to continue performing or cease performance under a contract.  It does not

8  say *anything* about the amount of damages to which a plaintiff may be entitled.  On the contrary,

9  the comment section of § 11.17 confirms that a party suffering a non-material breach is entitled

10  to damages, without any limitation on the amount: "A breach that is not 'material,' i.e. one that

11  does not defeat the main purpose of the contract and which may be compensated in damages,

12  does not relieve the non-breaching party of his contractual duties.  The remedy for such breach is

13  damages." Standardized Civil Jury Instructions for the District of Columbia § 11.17 (citing 17A

14  Am. Jur.2d *Contracts* § 562 (2004); *Travis v. Travis*, 203 A.2d 173, 176 (D.C. 1964);

15  Restatement (Second) of Contracts § 236 (1981) (damages for partial breach)).

16        Defendants even mischaracterize the *Fowler* case on which they rely.  *Fowler* correctly

17  defines breach as "'an unjustified failure to perform all or any part of what is promised in a

18  contract'" entitling the injured party to damages." *Fowler v. A & A Company*, 262 A.2d 344, 347

19  (D.C. 1970).  Nowhere in *Fowler* are such damages in any way limited by the nature of the

20  breach.

21        Because Defendants' version of this instruction contains numerous deliberate

22  misstatements of the law, as well as the superfluous qualifier "Retired Player", Plaintiffs

23  respectfully request that their version of this instruction – to which Defendants do not object – be

24  adopted.

25

26

27

28

## DISPUTED INSTRUCTION NO. 4 OFFERED BY PLAINTIFFS
## RE BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiffs are entitled to a jury instruction regarding the breach of covenant of good faith and fair dealing and the one offered is compliant with the authorities cited. All contracts contain an implied duty of good faith and fair dealing. *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308 (D.C. 2008), *citing, Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (internal citation omitted). This duty means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* In addition, a party to a contract may be liable for a breach of the duty of good faith and fair dealing if the party "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party." *Id., see also, Hais v. Smith,* 547 A.2d 986, 987 (D.C. 1988) ("in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing").

It is hard to imagine why Defendants believe that Plaintiffs are not entitled to this instruction. Plaintiffs have complained repeatedly that Defendants evaded the spirit of the GLA and destroyed or injured the right of the GLA Class to receive the fruits of the GLA by failing to create an escrow account, by defining them out of "eligibility" to share in the GLR pool, by refusing to license the retired players where appropriate and, on the other hand, by allowing their identities to be licensed and or used but failing to compensate them—in violation of the promises of the GLA. These actions clearly constitute a breach of the covenant of good faith and fair dealing and the jury instruction should be permitted. The claim has been fairly presented. *See e.g.,* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment 2:15-22; 3:18-5:1; 11:11-14:5; 16:21-21:16; 24:11-26:5.

Defendants offer their own instruction number 4 with the addition: "**however, the implied promise of good faith and fair dealing cannot create obligations that were not contemplated by the parties to the contract.**" Plaintiffs object to this addition to the extent

202078844.1

1     that Defendants are attempting to open the door to their own "contemplation" of the contract that

2     differs from the plain wording of the contract. As discussed in instruction numbers 5 and 6, the

3     rules of contract interpretation for the GLA should hold fast to the objective intent of the parties,

4     as evidenced through the plain words of the contract and should not be a free-for-all on what the

5     GLA drafters, Defendants, might have intended (conveniently) to the contrary.

6          Defendants' second addition to number 4, misstates the contract case by allowing the

7     jurors only one narrow interpretation of breach, despite the myriad evidence of numerous and

8     various breaches of the covenant of good faith and fair dealing implied in the GLA. Defendants'

9     proferred language is, as follows: **Plaintiffs claim that Defendants violated their duty to act**

10     **fairly and in good faith by not granting each GLA Class member an equal share of**

11     **revenues from the GLR pool. Defendants deny that there was any breach of an implied**

12     **covenant of good faith and fair dealing and claim that the GLR pool contained moneys that**

13     **were generated by and related to active player licensing only, and thus it is unrelated to the**

14     **Retired Player GLA."**

15          This is a distortion of the case. While Plaintiffs do claim that Defendants violated their

16     duty to act fairly and in good faith by not granting each GLA Class member an equal share of

17     revenues from the GLR pool, Plaintiffs also claim that Defendants breached the covenant of

18     good faith and fair dealing inherent in the GLA in numerous other notable ways—failure to

19     create an escrow account, failure to pay revenues to the retired players, defining "eligibility" to

20     exclude the GLA Class, failure to report this definition and other pertinent information to the

21     GLA Class, failure to market, failure to collect revenues for the retired players, assisting the

22     Licensees to avoid payment to the retired players by the use of scrambling the images, and the

23     failure to include retired players in active player licenses, among other things. For this reason,

24     the narrowness and limitations placed on the entirety of the breach of covenant claim by

25     Defendants' instruction number 4 is ill-suited to this case and unsupported by the evidence.

26

27

28

## DISPUTED INSTRUCTION NO. 5 OFFERED BY PLAINTIFFS

## RE INTERPRETING THE TERMS OF THE RETIRED PLAYER GLA CONTRACT –CONTRACT CLAIM

Plaintiffs' instruction number 5 is appropriate for the GLA. It is well established that the plain and unambiguous meaning of a contract is controlling.[2] Intent is construed by an objective standard and evidenced from the words of the contract itself. The subjective intent of the parties is not controlling.[3] Where a document is facially unambiguous as with the GLA, its plain language should be relied upon as providing the best objective manifestation of the parties' intent. *Bolling Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 475 A.2d 382, 385 (D.C. 1984). These are universal rules for contract interpretation. For this reason, Plaintiffs' proffered instruction number 5 is the correct one for contract interpretation.

The type of additional instruction offered by Defendants' instruction number 5 is only appropriate where a court has first determined that a contract is ambiguous. This court has not determined (and Defendants have not asked it to determine) that the GLA is ambiguous. *Sobelsohn v. American Rental Management Co.*, 926 A.2d 713, 718 (D.C. 2007.) Only if a contract is first determined by the court to be ambiguous will external evidence be admitted to explain the surrounding circumstances and the position and actions of the parties at the time of contracting. The ultimate interpretation then becomes a question for the finder of fact. *Sobelsohn v. American Rental Management Co.*, 926 A.2d 713, 718 (D.C. 2007); *In re Bailey,* 883 A.2d 106 (D.C. 2005) (In order to determine whether a contract provision has more than one reasonable interpretation, it is necessary to look at the 'face of the language itself, giving the language its plain meaning, without reference to any rules of construction.' [Citations omitted]. If the court finds that the contract has more than one reasonable interpretation and therefore is ambiguous, then the court-after admitting probative extrinsic evidence-must determine what a reasonable person in the position of the parties would have thought the disputed language

---

[2]     Standardized Jury Instructions for the District of Columbia, § 11:14 (modified); *United States v. Baroid Corp.*, 346 F. Supp. 2d 138, 142-43 (D.D.C. 2004) (citing *WMATA v. Mergentime Corp.*, 200 U.S. App. D.C. 95, 626 F.2d 959, 961 (D.C. Cir. 1980)); *Lucas v. U.S. Army Corps of Eng'rs*, 789 F. Supp. 14, 16 (D.D.C. 1992); *see also Quadros & Assocs., P. C. v. City of Hampton*, 268 Va. 50, 597 S.E.2d 90, 93 (Va. 2004).

[3]     *Haralson v. Federal Home Loan Bank Board*, 655 F. Supp. 1550, 1554-55 (D.D.C. 1987).

1    meant.'). Defendants apparently concur with this position, at least when it benefited them to do

2    so. *See* Defendants' Motion for Summary Judgment 20:22-21:4 (arguing that it was appropriate

3    to consider extrinsic evidence only once an ambiguity was determined as a matter of law.)

4         By their own instruction number 5, Defendants are hoping to offer an inappropriate jury

5    instruction in the hopes of confusing the jury and opening the door for them to argue that the

6    contract means something other than what it says. Defendants' true hope is that they can

7    somehow explain away their obligations under the GLA to render them meaningless. *Retail*

8    *Clerks Int'l Ass'n v. NLRB*, 510 F.2d 802, 806 n.15 (D.C. Cir. 1975) ("It is a settled rule of

9    contract interpretation that contract language should not be interpreted to render the contract

10   promise illusory or meaningless.").

11       It is undisputed that the GLA is poorly drafted. But this does not make it ambiguous. As

12   stated in Defendants' own cited case, *In re Bailey,* "An examination of the authorization shows

13   that none of the provisions at issue here are ambiguous, although the agreement is poorly

14   drafted." *In re Bailey,* 883 A.2d 106, 118 (D.C. 2005) *citing, Washington Props., Inc. v. Chin,*

15   *Inc.*, 760 A.2d 546, 548 (D.C. 2000) ("A contract is not ambiguous merely because the parties

16   dispute its meaning, nor is it ambiguous merely because its terms are complex or 'could have

17   been clearer.' ") As a result, Defendants' instruction number 5 is inappropriate and misleading

18   to the jurors.

19       Furthermore, as the drafter of the GLA, Defendants' instruction number 5 belies the

20   cardinal rule of construction that the contract must be construed against the drafter, as discussed

21   in instruction number 6 (see below). As a result, if the Court perchance decides that further

22   contract construction rules apply beyond that of relying on the plain language, Plaintiffs offer

23   instruction number 6.

24

25

26

27

28

## DISPUTED INSTRUCTION NO. 6 OFFERED BY PLAINTIFFS

## RE CONTRACT INTERPRETATION – CONSTRUCTION
## AGAINST DRAFTER

If the court should find any ambiguity within the GLA and finds that Defendants are entitled to an instruction on ambiguity, then all the rules of contract construction should be presented fairly. In that case, Plaintiffs offer instruction number 6 as an appendage to instruction number 5. This instruction, combined with number 5, fairly present the rules of ambiguous contract interpretation including that the GLA must be construed against Defendants. *Affordable Elegance Travel, Inc. v. Worldspan, L.P.*, 774 A.2d 320, 328 (D.C. 2001) (contract is construed against the drafter.) It is preposterous that Defendants wish for an ambiguity instruction, yet also wish to cherry-pick amongst the laws of contract interpretation in an effort to only introduce those that it favors. Any ambiguity instruction must also include the global rule of interpretation that a contract is construed against its drafter, in this case, Defendants.

Further, Defendants' alternate number 6 unfairly overemphasizes extrinsic evidence in contract interpretation, instead of reliance on the plain words of the contract. Further, it fails to identify the drafter as Defendants, hoping instead to create confusion on this issue with the jurors. For those reasons, in the event of a decision by the Court that the GLA is ambiguous, Plaintiffs offer both numbers 5 and 6.

# DISPUTED INSTRUCTION NO. 7 OFFERED BY PLAINTIFFS

## RE CONTRACT INTERPRETATION – DEFENDANTS' LICENSE AGREEMENTS

The rules of contract interpretation are constant and as a result, the jury will not benefit from separate instructions for the GLA and the License Agreements but instead, may find that to be unnecessarily confusing. As a result, Plaintiffs submit that their instruction numbers 5 (or numbers 5 and 6, if ambiguity is found) are the appropriate ones for the License Agreements.

For the same reasons as stated with regard to instruction number 5, Defendants are not entitled to an ambiguity instruction for the License Agreements. In fact, Defendants have stated specifically to this court that the License Agreements should be determined based upon only their plain language. *See* Defendants' Motion for Summary Judgment 18:22-20:19. Furthermore, the License Agreements are *integrated* and therefore, prevent the jury from considering parol evidence. Defendants' license agreements with third parties include an integration clause: "There are no representations, promises, warranties, covenants or undertakings other than those contained in this Agreement, which represents the entire understanding of the parties." *See e.g.*, 2004 EA Agreement §18. Defendants themselves do not dispute this.

Whether an agreement is integrated (such as the License Agreements) is a factual determination, to be made by the trial judge, which in turn establishes whether parol evidence is admissible to the jury. *Segal Wholesale, Inc. v. United Drug Service*, 933 A.2d 780, 784 (D.C. 2007). Where a "document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent." *Segal Wholesale, Inc. v. United Drug Service*, 933 A.2d 780, 784 (D.C. 2007). This is especially true where, as here, the agreement states that all understandings and agreements between the parties are merged in the agreement and that no party had made representations or warranties that were not expressly set forth in the agreement, as exists in these License Agreements. *See Martin & Martin, Inc. v. Bradley Enters., Inc.*, 504 S.E.2d 849, 851 (Va. 1998).

As discussed under instruction numbers 5 and 6, the real reason that Defendants offer number 7 is for the purpose of offering inadmissible parol evidence and opening the door to testimony that the License Agreements do not really mean what they say. Furthermore,

1　Defendants' number 7 is biased and misstates both the facts and issues in this case and, not

2　surprisingly is not supported by legal authority. Defendants' number 7 states: **"As I previously**

3　**instructed you, in order to rule for Plaintiffs on their breach of contract claim, you must**

4　**find that the GLR pool contained licensing revenues that were owed to the GLA Class**

5　**members. To determine this issue, you will be required to interpret the terms of the license**

6　**agreements whose royalties were placed in the GLR pool for distribution to the active NFL**

7　**players (such as the 2005 license agreement between EA and Players Inc). In particular,**

8　**you will need to determine whether those license agreements only conveyed active player,**

9　**as opposed to retired player, licensing rights."**

10　　　This is an obvious distortion of this case. The jury is not required to find that "the GLR

11　pool contained licensing revenues that were owed to the GLA Class." While that is certainly

12　one helpful finding for the jurors to make, the jury need only determine that Defendants breached

13　the terms of the GLA in one of numerous ways—failure to create an escrow account, failure to

14　pay revenues to the retired players, failure to collect revenues for the retired players, and

15　permitting the Licensees to use their images without payment by scrambling their identities,

16　amongst other breaches—in order for the jurors to find favorably for Plaintiffs.

17　　　In addition, Defendants hope to embellish their instruction number 7 with an instruction

18　that Plaintiffs are "strangers" to the third-party license agreements, with no right to interpretation

19　and that therefore, (so their argument goes) Defendants and the Licensees may testify as to a

20　wholly different meaning of the License Agreements contrary to that which is stated in the plain

21　language and that this new, litigation-created "meaning" must govern.

22　　　This creative instruction flies in the face of any accepted rules of contract interpretation.

23　Instead, it amounts to a preposterous argument that the contract does not mean what it says but

24　means only what Defendants and Licensees will tell the jury what it means. While this magic

25　trick would be convenient for any party in litigation, it is especially repugnant here, where

26　Defendants negotiated these third-party licenses while operating as agents of the class members,

27

28

1    and those licenses directly affected Plaintiffs' economic interests.[4] This kind of jury instruction

2    should be prohibited.    Instead, the jurors should be presented with one consistent neutral

3    instruction on contract interpretation, such as Plaintiffs' number 5 (or, in the event it is required,

4    Plaintiffs' numbers 5 and 6, combined).

---

[4] *Shafford v. Otto Sales Co.*, 119 Cal. App. 2d 849, 859-60 (1953), the Court allowed a non-party to a contract to submit evidence as to the meaning of that contract, noting that "mere words, and the ingenuity of contractual expression dreamed up by ingenious businessmen or their lawyers cannot be used to prevent a showing of the real nature of the transaction." *Shafford*, 119 Cal. App. 2d at 860. *See also ViChip Corp. v. Lee*, 438 F.Supp.2d 1087, 1097-98 (N.D. Cal. 2006) (entity with a direct economic interest or involvement in the relationship embodied among the parties to the agreement is not a stranger to the contract); *In re Leisure Corp.*, 2007 WL 607696, *13 (N.D. Cal) (Prochnow was not a stranger to the relationship between Leisure Corporation and Law Finance Group because the Factoring Agreement explicitly required Prochnow to adjust his appellate lien rights in the pending judgment to those of Law Finance Group.)

202078844.1

## DISPUTED INSTRUCTION NO. 8 OFFERED BY PLAINTIFFS
## RE BREACH OF CONTRACT - STATUTE OF LIMITATIONS

Plaintiffs respectfully request that their version of this instruction be adopted.
Defendants have indicated that they do not object to any of the language proposed by Plaintiffs.

There is only one difference between Plaintiffs' version of this instruction and
Defendants' instruction: Defendants seek to add the following to the end of this instruction: **"In
addition, Plaintiffs can seek damages only for the period after February 14, 2004."**
Plaintiffs disagree with this addition.

Statutes of limitations under D.C. law are procedural devices that prescribe the period in
which an action must be brought in order to prevent a potential plaintiff from "sitting on" his
rights for an unreasonable amount of time, and to ensure that a defendant is not forced to defend
an action based on stale evidence. *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d
983, 991-92 (D.C. Cir. 1998); *Construction Interior Sys., Inc. v. Donohoe Cos.*, 813 F. Supp. 29,
34 (D.D.C. 1992) ("The statute of limitations is primarily designed to insure that the evidence
needed to adjudicate a claim will be available and that parties will not be unfairly confronted
with stale claims."); *Farris v. Compton*, 652 A.2d 49, 57-58 (D.C. 1994) ("[L]imitations statutes
have been enacted by legislatures precisely to 'protect defendants and the courts from having to
deal with cases in which the search for truth may be seriously impaired by the loss of evidence,
whether by death or the disappearance of witnesses, fading memories, disappearance of
documents, or otherwise.'") (citation omitted).

Contrary to Defendants' interpretation, statutes of limitations are not and were not
designed to circumscribe damages beyond limiting what breaches of contract may be the proper
subject of an action. See D.C. Code § 12-301(7) (setting the time within an action for breach of
contract must be brought as three (3) years "from the time the right to maintain the action
accrues."). When such breaches occurred and which damages resulted from such breaches are
issues to be presented at trial. Defendants' additional language is misleading and wrongfully
removes this issue from the province of the jury.

| | |
|---|---|
| 1 | None of the cases cited by Defendants – which happen to be the same cases cited by |
| 2 | Plaintiffs – support their novel reading of statutes of limitations. In Material Supply, the court |
| 3 | merely re-affirmed "the general rule that the cause of action accrues and the statute of limitations |
| 4 | begins to run when the defendant breaches the contract." *Material Supply Int'l, Inc. v. Sunmatch* |
| 5 | *Indus. Co.*, 146 F.3d 983, 992 (D.D.C. 1998). It did not discuss this rule in the context of when a |
| 6 | plaintiff is entitled to damages. Similarly, in Capitol Place, the court considered only whether |
| 7 | "as a matter of law, appellant's claims, sounding in both contract and tort, accrued prior to the |
| 8 | expiration of the statutory period." *Capitol Place I Assoc. L.P. v. George Hyman Constr. Co.*, |
| 9 | 672 A.2d 194, 198 (D.C. 1996). The word "damages" does not even appear. Lastly, in Gandal, |
| 10 | the court considered whether, at the outset, a party's breach of contract claim was timely brought. |
| 11 | *Gandal v. Telemundo Group*, 23 F.3d 539, 541 (App. D.C. 1994). As with Defendants' other |
| 12 | two cases, Gandal did not discuss the statute of limitations in the context of when a plaintiff is |
| 13 | entitled to damages. |
| 14 | Defendants' proposed addition is not based on any controlling law. In addition, it has the |
| 15 | potential to confuse and mislead the jury in that it seeks to limit Plaintiffs' right to damages |
| 16 | solely based on year, without any regard to when an alleged breach occurred. |
| 17 | Plaintiffs respectfully request that their version of this instruction be adopted. |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Even though the parties were able to agree with certain elements of this instruction, there remain three primary differences between Plaintiffs' version of this instruction and Defendants' version. Each of these differences is addressed below.

1. Unlike Plaintiffs, Defendants Misstate the Essential Elements of Breach of Fiduciary Duty Claim

Plaintiffs and Defendants have differences of opinion in what constitutes the basic elements for a breach of fiduciary duty claim. As Plaintiffs' instruction makes clear, the first element Plaintiffs must show is simply **"[t]hat Defendants owed a fiduciary duty to the GLA Class members."** In contrast, Defendants' instruction goes one step further by requiring Plaintiffs to prove the *specific form* of fiduciary duty they claim is at issue before a breach of fiduciary duty can be found at all. Specifically, Defendants incorrectly and prematurely claim that Plaintiffs must prove "[t]hat the Retired Player GLAs provided for sufficient control by the GLA Class members over Defendants' licensing activities to give rise to an agency relationship between Plaintiffs and Defendants."

Needless to say, Plaintiffs object to Defendants' definition of what constitutes a fiduciary relationship. However, this issue is addressed in an entirely separate instruction – instruction number 10 – and Plaintiffs' objections to that instruction are included in the corresponding section of this brief. By seeking to include this definition in instruction numbers 9 *and* 10, Defendants are no doubt hoping to get two bites at the apple. Defendants' efforts should not be rewarded.

There is no question that Plaintiffs' proposed instruction number 9 accurately captures the core elements of a breach of fiduciary duty claim. Each of the cases cited by Plaintiffs in support of this instruction – which Defendants also have cited in support of their version of this instruction – makes this clear. *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp.2d 66, 74 (D.D.C. 1998) ("The requirements for stating a breach of fiduciary duty claim are similar. Defendants must allege that plaintiff had a fiduciary duty to them and violated that duty."); *Paul*

1  *v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 5-6 (D.D.C. February 6, 2008) ("To state a claim for
2  breach of fiduciary duty, a plaintiff must allege facts sufficient to establish the following:
3  (1) defendant owed plaintiff a fiduciary duty; (2) defendant breached that duty; and (3) to the
4  extent plaintiff seeks compensatory damages – the breach proximately caused an injury.").

5      None of the other authorities cited by Defendants compels a different result. Three of
6  their authorities relate only to the "preponderance of the evidence" standard; two relate to
7  Defendants' incorrect claim concerning the nature of the damages Plaintiffs have to prove (see
8  argument concerning instruction number 2 and below); and another three are *respondeat*
9  *superior* cases that deal only with the nature of an agency relationship (see argument regarding
10 instruction number 10), not the elements of a breach of fiduciary duty claim in general.

11     Because Plaintiffs' instruction accurately states the elements one must show in order to
12 prevail on a breach of fiduciary duty claim. Plaintiffs respectfully request that their version of
13 this instruction be adopted

14     2.    <u>Unlike Plaintiffs, Defendants' Instruction Incorrectly Requires Proof of the
             Specific Amount of Damages, As Well As Proof By Each Individual GLA Class
15           Member</u>

16     As with instruction number 2, Defendants once again require Plaintiffs to prove the
17 specific amount of damages they have suffered before they can prevail on their breach of
18 fiduciary duty claim. Whereas Plaintiffs believe they must only prove damages to **"the GLA
19 Class members,"** Defendants incorrectly suggest that Plaintiffs must prove the **"amount of
20 damages, if any, suffered."** Defendants also incorrectly require Plaintiffs to prove
21 individualized damages **"by each individual GLA Class member"** instead of class-wide
22 damages, as is proper. Each of these requirements should be disregarded for the same reasons
23 given in detail in connection with instruction number 2.

24     Because Defendants have incorrectly sought to include these two requirements, their
25 instruction also differs from Plaintiffs' instruction by the inclusion of an additional extraneous
26 element – *i.e.*, whereas Plaintiffs' instruction includes three elements, Defendants' includes four.
27 Plaintiffs do not dispute that they must show Defendants' breach proximately caused an injury,
28 which appears to be the purpose of Defendants' element number three. *See Paul v. Judicial*

1     *Watch, Inc.*, 543 F. Supp. 2d 1, 5-6 (D.D.C. February 6, 2008) (the third element of a claim for

2     breach of fiduciary duty is "to the extent plaintiff seeks compensatory damages – the breach

3     proximately caused an injury."). Nonetheless, for the reasons given above and elsewhere in this

4     brief, Plaintiffs respectfully request that their version of this instruction be adopted in its entirety.

5           3.     Plaintiffs' Explanation of the "Preponderance of the Evidence" Standard Comes
                     Verbatim From the *Standardized Civil Jury Instructions for the District of*

6                      *Columbia.*

7         As with instruction number 2, Plaintiffs' proposed instruction number 9 (minus the

8     prefatory clause) includes *verbatim* the following language from the "preponderance of the

9     evidence" standard set forth in the *Standardized Civil Jury Instructions for the District of*

10     *Columbia*:

11        **"As you will recall from Instruction No. 2, to establish a fact by a preponderance of**

12     **the evidence is to prove that it is more likely so than not so. In other words, a**

13     **preponderance of the evidence means that the evidence produces in your mind the belief**

14     **that the thing in question is more likely true than not true. It does not mean proof beyond**

15     **a reasonable doubt as is required in criminal cases.**

16        **"As you will also recall from Instruction No. 2, whether there is a preponderance of**

17     **the evidence depends on the quality, and not the quantity, of evidence. In other words,**

18     **merely having a greater number of witnesses or documents bearing on a certain version of**

19     **the facts does not necessarily constitute a preponderance of the evidence."**

20        In contrast, Defendants once again propose a more concise version with roots in the

21     model jury instructions of other jurisdictions:

22        **"When a party has the burden of proof on any claim by a preponderance of the**

23     **evidence, it means you must be persuaded by the evidence that the claim is more probably**

24     **true than not true.**

25        **"You should base your decision on all of the evidence, regardless of which party**

26     **presented it."**

27        As before, those sections Defendants have chosen *not* to include favor Defendants. For

28     example, Defendants once again conveniently omit an instruction on the potentially misleading

1    "burden of proof" standard in criminal cases, as well as an instruction on the quantity of evidence

2    versus the quality of evidence.  Plaintiffs believe these instructions are necessary for the reasons

3    given in the section of this brief relating to instruction number 2.

4         As before, Plaintiffs respectfully request that their paragraphs on this standard, which,

5    again, come verbatim from the *Standardized Civil Jury Instructions for the District of Columbia*

6    and are very neutral, be adopted.

## DISPUTED INSTRUCTION NO. 10 OFFERED BY PLAINTIFFS
## RE FIDUCIARY RELATIONSHIP

Plaintiffs respectfully request that their version of this instruction be adopted. Unlike Defendants, who offer a narrowly-tailored instruction that unfairly comports with only Defendants' theory of the case, Plaintiffs' draft instruction more accurately addresses fiduciary relationships in the context of collective licensing.

Contrary to Defendants' argument, fiduciary relationships are not limited to those that arise from a principal and agent relationship; rather, more general fiduciary relationships are created when "special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of one reposing the confidence." *See Allen Realty*, 318 S.E.2d 592, 595; *Church of Scientology, Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C. 1994) (whether there exists a fiduciary relationship is a fact-intensive question, involving a searching inquiry into the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties). The *Scientology* Court opined that relationships founded on trust and confidence result in fiduciary duties:

> Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another. . . .

*Church of Scientology*, 848 F. Supp. at 1028 (quoting Schmidt v. Bishop, 779 F. Supp. 321, 325 (S.D.N.Y.1991)).

Courts have found that fiduciary relationships can exist in numerous situations. *See Church of Scientology*, 848 F. Supp. at 1028 (church/public relations firm); *Wagman v. Lee*, 457 A.2d 401, 404-405 (D.C. 1983) (escrow agent/depositor); *Stevenson v. Johnson*, number 90-CL-1, 1993 Va. Cir. LEXIS 744, at *5 (Va. Cir. Ct. Oct. 12, 1993) (clinical psychologist/client, denying summary judgment and noting that "[e]ven though a fiduciary duty usually arises in the context of the management of money, it is not always so. A fiduciary duty is a duty to act for someone else's benefit, while subordinating one's personal interests to those of the other person."). In fact, D.C. Courts have refused to categorically limit fiduciary relationships to well-

1  worn categories. *Hammett v. Minar*, 53 F.2d 144, 146 (D.C. 1931) ("Courts of equity have

2  carefully refrained from defining the particular instances of fiduciary relations in such a manner

3  that other and perhaps new instances might be excluded. It is settled by an overwhelming weight

4  of authority that the principle extends to every possible case in which a fiduciary relation exists

5  as a fact, in which there is confidence reposed on one side and the resulting superiority and

6  influence on the other.")

7        Judge Posner articulated one rationale for imposing fiduciary duties outside of an agency

8  relationship: "The common law imposes [a fiduciary] duty when the disparity between the

9  parties in knowledge or power relevant to the performance of an undertaking is so vast that it is a

10  reasonable inference that had the parties in advance negotiated expressly over the issue they

11  would have agreed that the agent owed the principal the high duty that we have described,

12  because otherwise the principal would be placing himself at the agent's mercy. . . . [If a client] is

13  in no position to supervise or control . . . he must take those actions on trust; the fiduciary

14  principle is designed to prevent that trust from being misplaced." *Burdett v. Miller*, 957 F.2d

15  1375, 1381 (7th Cir. 1992).

16        Here, a jury may properly consider the GLAs and surrounding factual circumstances in

17  determining (1) whether a principal/agent relationship was formed between the Plaintiff class

18  and Defendants, or (2) whether a more general fiduciary relationship, founded on the contractual

19  relationship and course of dealing between the parties, was formed between the Plaintiff class

20  and Defendants. Plaintiffs are entitled to instruct the jury in this regard.

21        Defendants also misstate the law of agency. The existence of an agency relationship is a

22  question of fact. *Smith v. Jenkins*, 452 A.2d 333, 335 (D.C. 1982), overruled on other grounds

23  by *Rolinksi v. Lewis*, 828 A.2d 739 (D.C. 2003). In determining whether an agency relationship

24  exists, and in evaluating the factors that support a finding of agency, the jury is entitled to look at

25  any contracts between the putative principal and agent, the context of their relationship, and their

26  course of dealing. *See Judah v. Burton Reiner and Morris Mgmt., Inc.*, 744 A.2d 1037, 1040

27  (D.C. 2000) ("In deciding [whether there is an agency relationship], courts will look to the terms

28  of any control that may exist and to the actual course of dealings between the parties."). As

1  correctly stated by Plaintiffs and incorrectly stated by Defendants, the right to control an agent is
2  one factor a jury must consider in determining whether there an agency relationship exists
3  between the parties. *See Judah*, 744 A.2d at 1040 (emphasizing the "right to control, rather than
4  its actual exercise").

5       Plaintiffs' instructions emphasize the need to consider the entire relationship between
6  Plaintiffs and Defendants in determining whether an agency relationship has been established.
7  D.C. courts have emphasized the importance of looking at the course of dealing in evaluating a
8  potential agency relationship. *See C&E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 264
9  (D.D.C. 2007) ("[I]n determining whether an agency relationship exists, courts examine both
10  'the terms of [the] contract . . . and . . . the actual course of dealings between the parties.'")
11  (quoting *Judah*, 744 A.2d at 1040).

12       The law of agency takes into account the factual context between the parties. For
13  example, in the context of a parent and a subsidiary, a court has recognized that agency may be
14  found if "the parent exercises its control in a manner more direct than by voting a majority of the
15  stock in the subsidiary or making appointments to the subsidiary's Board of Directors." *See*
16  *TransAmerica Leasing, Inc. v. Venezuela*, 200 F.3d 843, 849-850 (D.C. Cir. 2000). In contrast,
17  in the context of an employer and a security guard, the Court considered the right of the principal
18  to discharge the agent and specific instances of control in determining whether an agency
19  relationship existed. *See Safeway Stores, Inc. v. Kelley*, 448 A.2d 856, 861-62 (D.C. 1982).

20       Defendants wholly ignore the context of this lawsuit -- where hundreds of retired players
21  entered into a relationship with an entity for collective bargaining on the group's behalf --in
22  drafting its instructions concerning agency and control. Although, to Plaintiffs' knowledge, D.C.
23  courts have not considered such a collective representation, there is no indication that D.C. law
24  would require each retired player in such a circumstance to specifically control the day-to-day
25  activities, methods, and details in every licensing decision, especially when, in this context, such
26  a minute level of control by hundreds of individuals would be wholly impractical.

27
28

# DISPUTED INSTRUCTION NO. 11 OFFERED BY PLAINTIFFS
## RE DUTIES OF A FIDUCIARY

As with instruction number 10, Defendants offer a more concise version of this instruction that, unsurprisingly, only includes those discrete elements favorable to Defendants. Even though each of the duties identified by Plaintiffs is rooted in decades of case law and in the Restatements, Defendants urge this Court to reject such duties because, as explained below, they know the record evidence will show that they have breached them. This is not the proper measure for determining whether certain language should be included in a jury instruction. Plaintiffs respectfully request that this instruction be adopted in its entirety.

1.    Plaintiffs' Language That A Fiduciary Owes the *Highest* Duty Should be Included

Plaintiffs offer the following language in connection with this instruction:

**"A fiduciary owes several duties to his principal. A fiduciary must exercise good faith to his principal. A fiduciary is held to a standard of conduct stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is the unbending and inveterate standard of behavior.**

**"A fiduciary must also exercise the highest loyalty toward his principal, and act loyally in the principal's interest as well as on the principal's behalf. This means that the fiduciary must put the principal's interests ahead of his own, as to all matters connected with the relationship. The fiduciary is also required to refrain from conduct that is adverse to or likely to damage the principal's interests."**

It has long been held that a fiduciary owes the *highest* loyalty to his principal, and must subordinate the fiduciary's interests to those of the principal. *See, e.g., Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 365 (D.C. App. 1984) ("The fiduciary duty owed by a real estate agent or subagent requires the exercise of the *highest fidelity* toward the principal.") (emphasis added); *Jenkins v. Strauss*, 931 A.2d 1026, 1033 (D.C. App. 2007) (same); *Restatement (Third) of Agency*, § 8.01(b) ("[T]he general fiduciary principle requires that the agent subordinate the agent's interests to those of the principal and place the principal's interests *first* as to matters

connected with the agency relationship.") (emphasis added). Each of the cases cited by Plaintiffs in support of their proposed language makes this clear.

Even the case relied on by Defendants – *Halvonik v. Dudas*, 398 F.Supp.2d 115, 130 n.30 (D.D.C. 2005) – makes this clear. The *Halvonik* Court stated: "As with any fiduciary relationship, a practitioner has a duty of <u>utmost</u> good-faith and loyalty to his or her client." (emphasis added). *Id.*

Defendants do not want this language included because the evidence will show that Defendants consistently subordinated the interests of the retired players in favor of the active players whose votes Defendants' executives needed to remain in power. Indeed, Gene Upshaw told the Charlotte Observer in January 2006: "I don't work for them [retirees]. They don't hire me and they can't fire me. They can complain about me all day long . . . But the active players have the vote. That's who pays my salary."

Defendants also do not want this language because they have consistently subordinated the interests of retired players in favor of licensees as well. As this Court is aware, one of the best examples of this is a February 20, 2007 e-mail from Clay Walker, Players Inc's Senior Vice-President, to Joe Nahra, Defendants' in-house counsel, in which Mr. Walker admits to obtaining retired player rights at "significantly below market rate" so that licensee EA could edge out one of its competitors. *See* Exhibit E to the Declaration of Ryan S. Hilbert in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, Docket No. 377.

However, simply because Defendants do not want this language is not a valid basis for its rejection, especially when such language is well-grounded in the law. Plaintiffs respectfully request that it be included.

    2.   <u>Plaintiffs' Language Concerning Agents With Specialized Knowledge Should be Included</u>

Plaintiffs propose the following in this instruction: **"If a fiduciary claims to possess special skills or knowledge, the fiduciary has a duty to the principal to act with the care, competence and diligence normally exercised by fiduciaries with such skill or knowledge."**

1   It is a well-known that if a fiduciary claims to possess special skills or knowledge – as

2   Defendants have done when, for example, Gene Upshaw informed retired players that

3   "PLAYERS INC's licensees such as EA Sports are permitted to secure retired player rights <u>only</u>

4   <u>from PLAYERS INC</u>, not from any other source" (emphasis in original) – the fiduciary has a

5   duty to the principal to act with the care, competence and diligence normally exercised by

6   fiduciaries with such skill or knowledge. *Restatement (Third) of Agency*, § 8.08 (2006) ("Special

7   skills or knowledge possessed by an agent are circumstances to be taken into account in

8   determining whether the agent acted with due care and diligence."); *Restatement (Second) of*

9   *Agency*, §379(2) (1958) ("Unless otherwise agreed, a paid agent is subject to a duty to the

10  principal to act with the standard care and with the skill which is standard in the locality for the

11  kind of work which he is employed to perform and, in addition, <u>to exercise any special skills that</u>

12  <u>he has</u>.") (emphasis added); *Aronoff v. Lenkin Co.*, 618 A.2d 669, 687 (D.C. App. 1992) (agent

13  who had special knowledge of principal's affairs had duty to act consistent with that special

14  knowledge).

15      Defendants do not want this instruction because they know that it was they, not the

16  retired players, who possessed special skills and knowledge in the field of licensing NFL player

17  rights. For example, it was Defendants who informed retired players that such players could only

18  receive licensing opportunities through Defendants. Similarly, it was Defendants who

19  contractually prohibited their licensees from contacting retired players except through

20  Defendants. At the same time all this was going on, Plaintiffs had no way of knowing whether,

21  how or when their rights had been licensed. Indeed, Defendants have admitted in discovery that

22  they did not account to any retired player except through the actual disbursement of funds, if any.

23      As before, simply because Defendants do not want this language is not a valid basis for

24  its rejection. Plaintiffs respectfully request that it be included.

25      3.   <u>Plaintiffs' Language Concerning an Agent's Duty to Disclose Material</u>
             <u>Information Should be Included</u>
26

27      Plaintiffs propose the following language: **"A fiduciary has a duty to disclose all**

28  **material facts relating to the relationship that are unknown to his principal, all material**

1  **facts the fiduciary believes the principal does not know, and every material development**

2  **affecting the principal's interest. It is not a defense to a fiduciary's breach of duty to**

3  **disclose material information that his principal could, through investigation, have**

4  **discovered independently."**

5  It is a general rule that "[a] fiduciary has a duty to disclose all material facts relating to

6  the relationship that are unknown to his principal, all material facts the fiduciary believes the

7  principal does not know, and every material development affecting the principal's interest." *See,*

8  *e.g., Aronoff v. Lenkin Co.*, 618 A.2d 669, 687 (D.C. App. 1992) ("[T]he agent owes a duty of

9  good faith and candor in affairs connected with the undertaking, including the duty to disclose to

10  the principal 'all matters coming to [the agent's] notice or knowledge concerning the subject []

11  of the agency, which it is material for the principal to know for his protection or guidance.'");

12  *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 365 (D.C. App. 1984) (fiduciary has

13  "obligation to inform the principal of every development affecting his interest").

14  Defendants do not want this language because of their undisputed history of failing to

15  provide retired players with material information solely within Defendants' knowledge.

16  Plaintiffs will show at trial that Defendants never provided retired players with information on

17  the wealth of licensing opportunities available to them, much less any information about

18  Defendants' (lack of) efforts to license retired player rights to others. Indeed, as explained

19  above, Defendants have admitted in discovery that they did not provide any accountings to

20  retired player except through the actual disbursement of funds, if any.

21  Plaintiffs respectfully request that this well-supported language be included.

22  4.  Plaintiffs' Language Concerning an Agent's Duty Not to Acquire a Material
        Benefit Should be Included

23

24  Plaintiffs propose the following direct quote from the Restatement (Third) of Agency: **"A**

25  **fiduciary has a duty not to acquire a material benefit from a third party in connection with**

26  **transactions conducted or other actions taken on behalf of the principal or otherwise**

27  **through the fiduciary's use of his position."** *Restatement (Third) of Agency*, § 8.02 (2006); *see*

28  *also Restatement (Second) of Agency*, § 388 (1958) ("Unless otherwise agreed, an agent who

1    makes a profit in connection with transactions conducted by him on behalf of the principal is

2    under a duty to give such profit to the principal.").

3          Not only will Plaintiffs show that Defendants wrongfully retained group licensing

4    revenue that should have gone to Plaintiffs, they will also show that Defendants wrongfully

5    misappropriated 64% to 69% of all group licensing revenues for themselves to the detriment of

6    retired players. At one point, Defendants even agreed among themselves to re-allocate the first

7    $8 million of group licensing revenues to themselves without sharing any of it with NFL players.

8    Even though Defendants indicated that they would subsequently conduct an independent third-

9    party appraisal to assess the appropriateness of their decision, Defendants have conceded that no

10    such appraisal occurred.

11          Defendants are obviously aware of their actions and thus want to tailor this instruction so

12    that their behavior hopefully falls outside it. But once again, simply because Defendants are

13    worried that they have engaged in conduct specifically proscribed by well-heeded authorities

14    does not mean that Plaintiffs' proposed language should be rejected.

15          For these reasons, and the reasons given above, Plaintiffs respectfully request that this

16    instruction be adopted in its entirety.

17         5.    <u>Defendants' Reminder That Plaintiffs Bear the Burden of Proving Fiduciary Duty</u>

18             <u>is Unnecessary and Need Not Be Included</u>

19          Unlike Plaintiffs' instruction, Defendants seek to add the following extraneous sentence:

20    **"Plaintiffs must prove that Defendants' conduct constituted a breach of a fiduciary duty."**

21    Plaintiffs believe this sentence is unnecessary, especially in light of current instruction number 9.

22    Therefore, Plaintiffs respectfully request that it not be included.

23

24

25

26

27

28

## DISPUTED INSTRUCTION NO. 12 OFFERED BY PLAINTIFFS
## RE BREACH OF FIDUCIARY DUTY - STATUTE OF LIMITATIONS

Plaintiffs respectfully request that their version of this instruction be adopted. Defendants have indicated that they agree with all but one sentence proposed by Plaintiffs.

There is only one difference between Plaintiffs' version of this instruction and Defendants' instruction. Specifically, Plaintiffs believe that the last sentence in this instruction should read: **"To recover on their breach of fiduciary duty claim, Plaintiffs must have been injured or damaged after February 14, 2004."** Conversely, Defendants propose replacing this last sentence with the following: **"If you decide to award damages, you may award Plaintiffs only those damages actually suffered after February 14, 2004."**

Plaintiffs object to Defendants' proposed sentence for the same reasons given in detail in connection with instruction number 8. Even though the cases cited by the parties in support of this instruction – which happen to be the same for both – are different than the authorities cited with instruction number 8, none of these authorities changes this result. Indeed, whereas each of these new cases supports the arguments previously made by Plaintiffs, none support the novel proposition for which they are being offered by Defendants.

More specifically, three of the cases cited by the parties – *Tolbert v. National Harmony Memorial Park*, 520 F. Supp. 2d 209, 212 (2007); *Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 298-88 (D.C. 2001); *Colbert v. Georgetown University*, 641 A.2d 469, 473 (D.C. 1994) – all re-state the general rule that "where the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." Significantly, none of these cases mention the word "damages" at all.

The fourth case, *Burtoff v. Faris*, 935 A.2d 1086, 1088 (2007), also includes the general rule (described differently) and mentions the word "damages" only in the context of when a case accrues. As with each of the other cases cited by the parties on the statute of limitations, there is no mention of such statutes circumscribing one's ability to claim damages.

As with instruction number 8, and unlike Plaintiffs' version of this instruction, Defendants' proposed addition to instruction number 9 is not based on any controlling law. In

1  addition, it has the potential to confuse and mislead the jury in that it seeks to limit Plaintiffs'

2  right to damages solely based on year, without any regard to when an alleged breach occurred.

3  Plaintiffs respectfully request that their version of this instruction be adopted.

**DISPUTED INSTRUCTION NO. 13 OFFERED BY PLAINTIFFS**

**RE DAMAGES – INTRODUCTION**

Plaintiffs respectfully request that their version of this instruction be adopted. Significantly, Defendants have indicated that they do not object to *any* of the language proposed by Plaintiffs.

There is only one difference between Plaintiffs' version of this instruction and Defendants' instruction: Defendants assert that the jury must once again determine "**whether each individual class member suffered injury**."

Plaintiffs disagree in general that they have to prove individualized, rather than class-wide, damages for the reasons set forth in detail above in instruction number 2.

Plaintiffs also disagree with Defendants' attempt to even include such a requirement in this jury instruction. As explained above in instruction number 2, obtaining damages for a breach of contract claim is a two-step process: first, a plaintiff must prove that a breach has occurred; then, a plaintiff must prove the amount of its damages. *Seton v. United Gold Network, LLC*, 2008 U.S. Dist. LEXIS 35440, *9 (D. Md. Apr. 30, 2008) ("In order to calculate Plaintiff's damages under a breach of contract theory, the Court should first decide whether Plaintiff can recover for the losses incurred by corporations in which she is the sole shareholder. Next, the Court should determine the proper measure of damages given the terms of the contract and the injuries that Plaintiff sustained.").

By requiring Plaintiffs to once again prove individualized, rather than class-wide, damages in this instruction, Defendants are seeking to resurrect an issue that will have already been rendered moot in instruction number 2 (regarding Plaintiffs' breach of contract claim) as well as in instruction number 9 (regarding Plaintiffs' breach of fiduciary duty claim). In doing so, Defendants are merely trying to get two bites at the apple, just as they did with respect to instruction numbers 9 *and* 10 concerning their definition of an agency relationship.

The Court should disregard Defendants' transparent efforts to gain a tactical advantage by proposing any language concerning individualized proof in this instruction, especially when such language already is addressed earlier in these instructions.

1    Plaintiffs respectfully request that their version of this instruction be adopted.

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DISPUTED INSTRUCTION NO. 14 OFFERED BY PLAINTIFFS
## RE COMPENSATORY DAMAGES –BREACH OF CONTRACT CLAIM

Plaintiffs respectfully request that their version of this instruction be adopted. Significantly, Defendants have indicated that they do not object to *any* of the language proposed by Plaintiffs.

There are only two differences between Plaintiffs' version of this instruction and Defendants' instruction. First, Defendants assert that *after* Plaintiffs have proved their breach of contract, "**[the jury] must next determine whether each member of the GLA Class is entitled to a proven amount of damages.**" Stated differently, Defendants believe that Plaintiffs must once again show that each individual GLA Class member has suffered injury.

Plaintiffs disagree in general that they have to prove individualized, rather than class-wide, damages for the reasons set forth in detail above in instruction number 2. Moreover, Plaintiffs disagree that such a requirement should be included in this jury instruction for the reasons set forth in detail in instruction number 13.

This is the third instance in which Defendants have tried to insert a requirement of individualized proof into instructions concerning Plaintiffs' breach of contract claim. Considering that this issue will have been addressed as far back as instruction number 2, there is absolutely no reason any language concerning individualized proof should appear in this instruction.

The second difference concerns Defendants' misguided attempt to include language on the foreseeability of Plaintiffs' damages. Defendants propose the following language: "**If proven, the GLA Class members are entitled to damages that were foreseeable at the time the contract was made. Damages are foreseeable if they are the sort that the parties would have reasonably envisioned, or are the sort that would flow naturally and obviously from the breach of the contract.**"

Defendants have never raised the issue of foreseeability before and did not include this issue as an affirmative defense in their Answer to Plaintiffs' Third Amended Complaint. Nonetheless, Defendants now wish to have this language presented to a jury so that Defendants

1  can (falsely) claim, among other things, that they did not foresee licensees would not be
2  interested in retired player rights.
3         Such recently-introduced language serves no other purpose than to confuse and mislead
4  the jurors. Plaintiffs respectfully request that such language be excluded, and that the Court
5  adopt Plaintiffs' version of this instruction in its entirety.

## DISPUTED INSTRUCTION NO. 15 OFFERED BY PLAINTIFFS
## RE COMPENSATORY DAMAGES – BREACH OF FIDUCIARY DUTY

Plaintiffs respectfully request that their version of this instruction be adopted. Significantly, Defendants have indicated that they do not object to *any* of the language proposed by Plaintiffs.

There is only one primary difference between Plaintiffs' version of this instruction and Defendants' instruction: Defendants assert that Plaintiffs must once again show that "**each member of the**" GLA Class has suffered injury. This requirement is pervasive in Defendants' instruction; in addition to stating that the measure of damages for breach of fiduciary duty is the amount of money necessary to place "**each injured GLA Class member**" in the same economic position he would have been in if Defendants' fiduciary duty had not been breached, Defendants also claim that the jury must find that "**individual**" Plaintiffs suffered economic injury as a result of Defendants' breaches.

Plaintiffs disagree in general that they have to prove individualized, rather than class-wide, damages for the reasons set forth in detail in instruction number 2. Plaintiffs also disagree that such a requirement should be included in this relatively-late jury instruction for the reasons set forth in detail in instruction number 13.

By requiring Plaintiffs to once again prove individualized, rather than class-wide, damages in this instruction, Defendants are seeking to resurrect an issue that will have already been rendered moot in instruction number 9 (Plaintiffs' breach of fiduciary duty claim) and in instruction number 13 (regarding damages in general). Indeed, as with Plaintiffs' breach of contract claim, this is the third time Defendants have tried to include this requirement in connection with Plaintiffs' breach of fiduciary duty claim.

As before, Defendants are once again trying to get multiple bites at the apple in order to gain a tactical advantage. The Court should once again disregard Defendants' transparent efforts.

Plaintiffs respectfully request that their version of this instruction be adopted.

# DISPUTED INSTRUCTION NO. 16 OFFERED BY PLAINTIFFS

## RE NOMINAL DAMAGES[5]

Unlike Defendants' instruction, Plaintiffs' instruction on nominal damages is simple and grounded in the law. Indeed, Plaintiffs rely on the same authorities in support of this instruction as Defendants. Plaintiffs' instruction reads in its entirety:

**"If you find that Defendants breached the Retired Player GLA, or that they breached their fiduciary duties to the GLA Class, Plaintiffs are entitled to damages. However, if you find that Plaintiffs have not proved any actual damages, or that Plaintiffs' proof is vague or speculative, then you may award nominal damages to Plaintiffs. Nominal damages are a small amount of money, such as one dollar, awarded without regard to the amount of loss."**

One of the primary differences between Plaintiffs' version of this instruction and Defendants' is that, whereas Plaintiffs' instruction is neutrally drafted, Defendants' instruction is filled with biased language and argument. For example, Defendants' instruction seeks to narrowly define Plaintiffs' breach of contract claim in a way that clearly favors Defendants. Defendants' instruction states: **"In this case, Plaintiffs have presented to you a damages claim based on their sharing equally in distributions from the so-called GLR pool, which Defendants contend contained revenues generated solely by, and belonging only to, active NFL players."**

Defendants' instruction then directs the jury to award only nominal damages unless Plaintiffs can prove the narrow, biased definition provided by Defendants: **"Accordingly, you cannot award more than nominal damages for breach of contract unless you find that Defendants promised, pursuant to the terms of the Retired Player GLAs, to pay Plaintiffs an equal share of the licensing revenues in the GLR pool and that these equal shares were owed to the GLA Class members, as opposed to just active NFL players."**

---

[5] *Standardized Jury Instructions for the District of Columbia,* § 1132 (modified); *Garcia v. Llerena,* 599 A.2d 1138, 1142 (D.C. 1991); *Roth v. Speck,* 126 A.2d 153, 155 (D.C. 1956).

1    Another primary difference between Plaintiffs' version of this instruction and Defendants
2  is that, unlike Defendants' instruction, Plaintiffs' instruction is actually grounded in the law.  For
3  example, in the first paragraph of Defendants' instruction, they direct the jury that "**if you find**
4  **that Defendants breached the Retired Player GLA, but such breach was immaterial, then**
5  **you may award only nominal damages to Plaintiffs for such an immaterial contract**
6  **breach**."  As explained in more detail in instruction number 3, this statement completely
7  misstates the law as it relates to a material breach of a contract.
8    Defendants also misstate the law as it relates to Plaintiffs' purported duty to prove
9  damages suffered by the GLA Class members.  Defendants' instruction states that "**you cannot**
10 **award more than nominal damages for breach of fiduciary duty unless you find that**
11 **Plaintiffs have proven that Plaintiffs' damages claim based on their receiving equal shares**
12 **to the GLR pool reasonably estimates the injuries actually incurred by each individual**
13 **GLA Class member as a result of any breach of fiduciary duty that you conclude took**
14 **place**."   As before, this instruction is incredibly biased and premised on Defendants' (incorrect)
15 definition of Plaintiffs' breach of fiduciary claim.  More importantly, it is not grounded in the
16 law.  Among other reasons, this language seeks to conflate elements of causation – which are
17 addressed in instruction number 9 – with Plaintiffs' burden of proving actual damages.
18    Because Plaintiffs' instruction on nominal damages is both simple and grounded in the
19 law, Plaintiffs respectfully request that their version of this instruction be adopted.
20
21
22
23
24
25
26
27
28

## DISPUTED INSTRUCTION NO. 17 OFFERED BY PLAINTIFFS

### RE DAMAGES – DISGORGEMENT
### BREACH OF FIDUCIARY DUTY CLAIM

Plaintiffs are entitled to a jury instruction on disgorgement because Defendants, as fiduciaries, violated their duty of loyalty to the GLA Class. *Hendry v. Pelland*, 73 F.3d 397, 401-03 (D.C.Cir. 1996). This claim has been fairly presented in this lawsuit. *See e.g.,* Plaintiffs' Response to Defendants' Motion for Summary Judgment 39:15—40:8. Disgorgement of a disloyal fiduciary's gains has been ordered by the U.S. Supreme Court as far back as 1910. *See United States v. Carter, 217 U.S. 286 (1910)*. Defendants only need show a breach of the duty of loyalty to recover a disgorgement of fees. *Hendry v. Pelland*, 73 F.3d 397, 401-03. The different treatment of compensatory damages and forfeiture of legal fees makes sense. Compensatory damages make plaintiffs whole for the harms that they have suffered as a result of Defendants' actions. Forfeiture of fees serves several different purposes. It deters fiduciary misconduct, a goal worth furthering regardless of whether a particular client has been harmed. Unlike other forms of compensatory damages, however, forfeiture reflects not the harms clients suffer from the tainted representation, but the decreased value of the representation itself. *Id.* Because a breach of the duty of loyalty diminishes the value of the representation as a matter of law, some degree of forfeiture is thus appropriate without further proof of injury. *Id.* Thus, the Defendants' instruction number 17 is misleading in that it implies that the GLA Class must prove "disgorgement damages." This is not so.

Additionally, Defendants' instruction number 17 presents disgorgement only as a backup remedy to compensatory damages: "If you find that: (i) Plaintiffs proved that a fiduciary relationship existed and was breached, and (ii) Plaintiffs cannot prove with required specificity the amount of damages suffered, then you should next determine whether disgorgement is an appropriate remedy." There is no authority cited for this proposition. Plaintiffs are entitled to seek both remedies simultaneously and for that reason, Defendants' Instruction is misleading and unsupported.

1    Defendants' instruction number 17 also unfairly implies that Plaintiffs can only recover

2    either compensatory damages or disgorgement for the breach of fiduciary duty. While the GLA

3    Class does not seek double recovery for any one breach of the duty of loyalty, it may recover

4    compensatory damages for certain breaches and disgorgement for others.[6] The phrasing of

5    Defendants' instruction implies that it must be one or the other with singularity. This is not

6    correct.

7    Finally, Defendants seek to instruct the jury that **"Disgorgement is not a penalty on the**

8    **Defendant."** But a full explanation of the purpose of Disgorgement would include the

9    following explanation, as proffered by Plaintiffs: **"Disgorgement is designed to deter**

10   **fiduciary misconduct, a goal worth furthering regardless of whether a particular client has**

11   **been harmed. Unlike other forms of compensatory damages, however, forfeiture reflects**

12   **not the harms clients suffer from the tainted representation, but the decreased value of the**

13   **representation itself."** *Hendry v. Pelland*, 73 F.3d 397, 402 (D.C. Cir. 1996).

14   Plaintiffs respectfully request that their version of this instruction be adopted.

15

16

17

18

19

20

21

22

23

24

25

26   [6] Defendants have presented no legal authority for their proposition that Plaintiffs are entitled to either damages or disgorgement, but not both. Their citation to *Breezevale Ltd. v. Dickinson*, 879

27   A.2d 957, 970 n.12 (D.C. 2005) is misleading. *Breezevale Ltd. v. Dickinson* actually holds: "it was not an abuse of discretion for the trial court not to reconsider its denial of Breezevale's motion for

28   disgorgement of fees paid by Breezevale *prior to GDC's alleged malpractice.*" *Breezevale Ltd. v. Dickinson*, 879 A.2d 957, 970 n.12 (emphasis added).

# DISPUTED INSTRUCTION NO. 18 OFFERED BY PLAINTIFFS

## RE PLAINTIFF MAY NOT RECOVER DUPLICATE CONTRACT AND TORT DAMAGES

Defendants ask this Court to adopt the following instruction: **"Plaintiffs have made claims against Defendants for breach of contract and breach of fiduciary duty. If you decide that Plaintiffs have proved more than one of these causes of action, the same damages that resulted from multiple claims can be awarded only once."** Plaintiffs object to this instruction on the ground that Defendants have not met their burden of offering adequate support for it. Defendants cite two cases (but no model jury instruction) in support of this instruction. Neither expressly supports their position.

*Doe v. Georgetown Center (II), Inc.*, 708 A.2d 255 (D.C. 1998) is a case involving three defendants. The plaintiff in that case obtained a judgment in an amount the jury deemed would make her whole, but appealed on the ground that such damages should also have been paid by the two defendants who were not found liable. *Id.* at 258. The court acknowledged that "in the absence of punitive damages, a plaintiff can recover no more than the actual loss suffered." *Id.* Because the jury's verdict was already intended to compensate the plaintiff for the injuries she suffered, and, as the court stated in dicta, a plaintiff could only be made whole once, the court rejected the plaintiffs' appeal on this issue. Simply put, this case does not support the proposition for which Defendants are offering it.

The second case, *Franklin Inv. Co., Inc. v. Smith*, 383 A.2d 355 (D.C. 1978), also does not support Defendants' instruction. In *Franklin Inv. Co.*, the court considered whether a party could recover damages for both wrongful sale and wrongful repossession. *Id.* at 358. Even though the court repeated in dicta the general principle that a plaintiff could only be made whole once, the court did not say that "the same damages that resulted from multiple claims can be awarded only once" as Defendants suggest. *Id.* Incidentally, the court indicated that it was up to the plaintiff to determine which measure of damages would make him whole. *Id.* Defendants have conveniently omitted this principle from their proposed instruction.

1    Plaintiffs also object to this instruction on the ground that it is inadequate in that it does
2  not indicate that Plaintiffs may be entitled to punitive damages *in addition* to the damages they
3  are seeking under their breach of contract and breach of fiduciary duty claims. *See Franklin Inv.*
4  *Co., Inc. v. Smith*, 383 A.2d 355 (D.C. 1978) ("[A] plaintiff is not entitled to be made more than
5  whole unless punitive damages are warranted.").

6        Plaintiffs respectfully request that Defendants' proposed instruction not be adopted.

# DISPUTED INSTRUCTION NO. 20 OFFERED BY PLAINTIFFS
## RE GENERAL PUNITIVE DAMAGES – BREACH OF FIDUCIARY DUTY

Defendants object to this instruction globally, presumably because the determination of punitive damages may come at the end of trial after a finding of liability. But any argument that Plaintiffs have not met the standard required to incur punitive damages is premature. For this reason, Plaintiffs submit their instructions numbers 20 and 21.

Plaintiffs have taken instruction 20 from the District of Columbia Model Jury Instructions and combined the standard actually quoted in Defendants' case, *Cambridge Holdings Grp., Inc. v. Federal Ins. Co.*, 357 F. Supp.2d 89, 96 (D.D.C. 2004) for the state of mind required to award punitive damages. For that reason, Plaintiffs' Instruction should prevail.

Defendants also proffer: "Plaintiffs are not seeking an award of punitive damages for their breach of contract claim, and you may not award punitive damages for that claim." Thus, Plaintiffs offer the counterpart: "Breach of fiduciary duty can support a claim for punitive damages." *See Wagman v. Lee,* 457 A.2d 401, 404 (D.C.), *cert. denied,* 464 U.S. 849 (1983).

**DISPUTED INSTRUCTION NO. 21 OFFERED BY PLAINTIFFS**

**RE COMPUTATION OF PUNITIVE DAMAGES – BREACH OF FIDUCIARY DUTY[7]**

On the measure of punitive damages, Plaintiffs have offered instruction number 21, taken verbatim from the Model Jury Instructions, Instruction 16.03. This jury instruction takes into account important factors of calculation such as the relative wealth of Defendants at the time of trial, the nature of the wrong committed, the state of mind of Defendants when the wrong was committed, the cost and duration of the litigation, and any attorneys' fees that the GLA Class members have incurred in this case. These are all important factors for punitive damages and evidence supporting such factors will be offered at trial.

Defendants propose instead, little guidance for punitives: "There is no rigid standard for measuring punitive damages, but the amount of punitive damages awarded should bear some reasonable and proportionate relationship to the actual damages Plaintiffs sustained and to the measure of punishment required for Defendants." Perhaps Defendants wish to prevent evidence of their wealth, the nature of the wrong committed, their state of mind, the cost and duration of the litigation, etc., or at least do not want the jury to consider such factors, but these are important factors for the jury in determining the amount of punitives and should be included as a part of the instruction.

Defendants offer further designer instructions which are unsupported by the Model Instruction and unnecessarily confusing. **"If you do not award Plaintiffs compensatory or nominal damages, you cannot award Plaintiffs punitive damages. If you award punitive damages, you must state separately in you [sic] verdict the amount you allow as compensatory damages and the amount you allow as punitive damages."** In the first instance this is surplusage. In both instances, these instructions are unnecessary and confusing and encroach upon the verdict forms. The Model Instruction 16.03, in this case, is appropriate and complete.

---

[7] Standardized Jury Instructions for the District of Columbia, § 16.03.

1        Finally, Defendants object to two separate jury instructions for a finding of punitive

2  damages and the measure of punitive damages. But this is how the D.C. Standard Jury

3  Instructions are designed and they pattern the verdict form itself.

4        For the foregoing reasons, Plaintiffs respectfully request that the Court adopt Plaintiffs'

5  instruction numbers 20 and 21.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

II.    **CONCLUSION**

For the foregoing reasons, the Court should adopt each of Plaintiffs' Proposed Jury instruction numbers referenced above.

Dated:  October 8, 2008                                    Respectfully submitted,


                                                           MANATT, PHELPS & PHILLIPS, LLP
                                                           By: /s/Ronald S. Katz
                                                                 Ronald S. Katz (SBN 085713)
                                                                 Ryan S. Hilbert (SBN 210549)
                                                           1001 Page Mill Road, Building 2
                                                           Palo Alto, CA  94304-1006
                                                           Telephone:  (650) 812-1300
                                                           Facsimile:  (650) 213-0260
                                                           McKooL smith, P.C.
                                                           Lewis T. LeClair (SBN 077136)
                                                           Jill Adler Naylor (SBN 150783)
                                                           300 Crescent Court
                                                           Dallas, TX 75201
                                                           Telephone:  (214) 978-4984
                                                           Facsimile:  (214) 978-4044

                                                           *Attorneys for Plaintiffs*