MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS III, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE REGARDING PLAINTIFFS' COMPLAINTS RELATING TO "AD HOC" AGREEMENTS**<br><br>Judge: Honorable William H. Alsup<br>Date: October 15, 2008<br>Time: 2:00 p.m.<br>Place: Courtroom 9, 19th Floor |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3

Dallas 260803v3

Although Defendants' third motion in limine is broadly directed to "ad hoc" agreements, the argument focuses on only one agreement: the agreement between Players Inc., Electronic Arts, Inc., and the Pro Football Hall of Fame (the "EA-HOF Agreement"). This agreement, and the negotiations leading up to this agreement, show how Defendants do not negotiate in the best interests of the retired players, as they are obligated to do; rather, Defendants negotiate in their own best interests or even that of a third party (which, in turn, serves the Defendants' best interest). This evidence directly rebuts Defendants' claims that they have adequately represented the class members during negotiations with third parties and that they were not influenced by their conflicts of interests and thereby supports Plaintiffs' claims for breach of fiduciary duty. The Court should allow the jury to consider this evidence in determining whether Defendants have breached their fiduciary duty to the class members.

**I. Defendants' *Conduct* Related to the EA-HOF Agreement, Including the Preceding Negotiations, Show Defendants' Approach to Licensing, and Support Plaintiffs' Claims for Breach of Fiduciary Duty**

The background of the EA-HOF Agreement is laid out in an email exchange between Clay Walker and Joe Nahra:

> For the record, [the EA-HOF Agreement] came up because Take Two went after retired players to create and [sic] "NFL" style videogame after we gave the exclusive to EA. I was able to forge this deal with the HOF that provides them with $400k per year (which is significantly below market rate) in exchange for the HOF player rights. EA owes me a huge favor because that threat was enough to persuade Take Two to back off its plans, leaving EA as the only professional football videogame manufacturer out there.

Garza Decl., Ex. A, at PI 126892. Later, Andy Feffer confirmed that the HOF retired players rights are worth much more than the $400,000 contractual price:

> I can tell you that Clay and Joe's negotiation of these discounted terms was a significant contribution to EA as you more than likely would have paid in excess of $1M for these rights without their involvement and assistance.

Garza Decl., Ex. B, at PI 121593.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 260803v3

2

This email exchange shows the realities of Defendants' approach to licensing -- Defendants are not adequately looking out for player interests, rather, they are looking to protect their own interests by cutting the licensor a "below market" deal. These emails, and the EA-HOF licensing agreement, are powerful evidence of Defendants' conflicts of interests apparent in attempting to serve multiple masters and their willingness to demote the retired players' interests below any other. Defendants brokered an agreement between EA and the HOF such that (1) the licensed retired players did not receive full market value for their rights, and (2) as a result, a possible competitor for retired player rights, Take Two, was persuaded to "back off its plans" to enter the videogame football market. While the retired players at issue received certain compensation in this deal, a reasonable jury may find that Defendants failed to maximize the value of retired players licenses, in this instance, due to its elevated competing interest in pleasing EA, an exclusive licensor.

Defendants' actions in relation to the EA-HOF agreement casts doubt on their defense to Plaintiffs' claim of breach of fiduciary duty. Defendants claim that they adequately attempted to promote retired players rights. *See* Dkt. No. 305 at 33 ("[D]efendants did attempt to promote the GLA Class members . . . [but] there was simply no market for the group rights of most of these individuals."); Garza Decl., Ex. C, at 68:4-10 (Nahra 30(b)(6) deposition) ("[T]here was a hope that licensees would be willing to pay money to get retired player rights in general without regard to who those particular players were but that never happened. Despite our efforts that never happened.") Defendants' approach to licensing, as shown by the negotiations leading up to the EA-HOF Agreement, undercuts these assertions. A reasonable jury may question whether Defendants adequately represent retired player rights if Defendants fail to maximize the value of those rights, by working with EA to dissuade third-parties from becoming viable competitors for licensing rights, or by working with EA to lowball the payments for retired player licensing rights. As a result, evidence related to the EA-HOF Agreement is probative and helpful, and should be considered in determining whether Defendants breached their fiduciary duties to the class members.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 260803v3

3

**II. The *Amounts Paid* to Retired Players in the EA-HOF Agreement, or Any Other Ad Hoc Agreement, Is Not Relevant to Plaintiffs' Claims or the Appropriate Measure of Damages, but the Negotiations of Such Agreements are Highly Relevant.**

As Plaintiffs have consistently maintained throughout this litigation, the amounts paid to retired players under the EA-HOF Agreement, or any other ad hoc agreement, is not relevant in determining the amount of damages Plaintiffs are entitled to in this case under the GLA. However, the background to the ad hoc agreements are certainly relevant in showing the overall payment scheme for retired player licensing deals. Ad hoc agreements ensure that star players are paid additional fees for being highlighted on product packaging, commercials, or other features. Many active players, for example, collect money from equal GLA shares and from individually negotiated ad hoc agreements. As a result, Plaintiffs, as always, do not rely on any ad hoc agreements to show the compensation that Plaintiffs should receive for Defendants' breach of contract and/or fiduciary duties, as the collective group licensing rights implicated by the GLAs are separate and apart from the individual amounts paid pursuant to ad hoc agreements. Therefore, even though the amounts paid pursuant to the EA-HOF Agreement is not relevant to this litigation, Defendants' *conduct* in regards to those negotiations, including Defendants' failure to maximize retired player licensing value in favor of brokering a better deal for EA, calls into question whether Defendants have adequately represented class member rights in other licensing negotiations. This evidence of Defendants' conduct and position toward retired players outweighs any confusion arising from the introduction of the dollar amount bargained for in the EA-HOF license agreement. Indeed, Defendants' position that such evidence is irrelevant is nonsensical. Defendants contend that all licensing of retired players was done pursuant to ad hoc agreements. Thus, the only conduct of the defendants related to retired player licensing is that related to negotiation of ad hoc agreements. To suggest that all such evidence of the Defendants' actions and state of mind is irrelevant means that no evidence of what actually happened related to retired player licensing is relevant.

Thus, this evidence is apposite to the contested issues at the heart of this case, and deserves to be adequately addressed in front of the jury. Plaintiffs and Defendants fundamentally

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 260803v3

4

disagree as to whether Defendants adequately represented the class members' interests in their licensing negotiations. The evidence listed above suggests that they have not. Whether or not the amount of the agreement is adequate in an absolute sense, Defendants contended that EA received a bargain, suggesting that Defendants did not maximize the value of the retired players' rights.

**III.    Defendants' Proposed "Rebuttal" Evidence Does Not Show that Defendants Adequately Represented Class Members' Interests in Licensing Negotiations, and the Court should Consider Excluding Such Evidence**

Defendants may choose, as they have suggested in their motion, to try and rebut evidence of the EA-HOF negotiations by showing that $400,000 is "economic[ally] adequ[ate]"-- despite their own emails to the contrary. But this evidence does nothing to rebut the fundamental inference Plaintiffs will urge the jury to draw from these negotiations -- that Defendants are beholden to multiple masters in licensing negotiations, and thus could not and did not adequately represent the class members' interests in licensing negotiations. Nor does a defined "economic[ally] adequ[ate] amount" answer the breach of fiduciary duty questions posed to the jury. As a result, if the Defendants try to introduce evidence that goes to the economic adequacy of the EA-HOF Agreement, because that evidence would not substantially help the jury in its decisionmaking, the Court should consider excluding such evidence under Rule 403.

**IV.    Conclusion**

Plaintiffs request that the Court deny Defendants' Motion in Limine No. 3.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 260803v3

5

1

2  Dated: October 6, 2008

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: _____
    Ronald S. Katz (SBN 085713)
    Ryan S. Hilbert (SBN 210549)
    Noel S. Cohen (SBN 219645)
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
Lewis T. LeClair (SBN 077136)
Jill Adler Naylor (SBN 150783)
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 260803v3

6