| | |
|---|---|
| 1 | MANATT, PHELPS & PHILLIPS, LLP |
| | RONALD S. KATZ (Bar No. CA 085713) |
| 2 | E-mail: rkatz@manatt.com |
| | RYAN S. HILBERT (California Bar No. 210549) |
| 3 | E-mail: rhilbert@manatt.com |
| 4 | NOEL S. COHEN (California Bar No. 219645) |
| | E-mail: ncohen@manatt.com |
| 5 | 1001 Page Mill Road, Building 2 |
| | Palo Alto, CA 94304-1006 |
| 6 | Telephone: (650) 812-1300 |
| | Facsimile: (650) 213-0260 |
| 7 | McKOOL SMITH, P.C. |
| | LEWIS T. LECLAIR (Bar No. CA 077136) |
| 8 | E-mail: lleclair@mckoolsmith |
| 9 | 300 Crescent Court, Suite 1500 |
| | Dallas, TX 75201 |
| 10 | Telephone: (214) 978-4000 |
| | Facsimile: (214) 978-4044 |
| 11 | Attorneys for Plaintiffs |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS, III on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>DECLARATION OF ANTHONY M. GARZA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE REGARDING PLAINTIFFS' COMPLAINTS RELATING TO "AD HOC" AGREEMENTS. |

DECLARATION OF ANTHONY M. GARZA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE REGARDING PLAINTIFFS' COMPLAINTS RELATING TO "AD HOC" AGREEMENTS.– Page 1
Civil Action No. C07 0943 WHA

Dallas 266897v1

I, Anthony M. Garza, declare as follows:

1. I am an attorney with McKool Smith, P.C., counsel for Plaintiff Herbert Anthony Adderley and the GLA Class in this matter. I have personal knowledge of the matters stated herein.

2. Attached hereto as Exhibit A is a true and correct copy of an e-mail chain between Clay Walker, Joe Nahra, Paul Cairs, Joshua Goodstadt, and Gary Gertzog, dated February 2007, bates-labeled PI 126892-94, and marked as exhibit 521.

3. Attached hereto as Exhibit B is a true and correct copy of an e-mail chain between Paul Cairns, Joe Nahra, and Andy Feffer, dated October 2007 and November 2007, bates-labeled PI 121593-94, and marked as exhibit 522.

4. Attached hereto as Exhibit C is a true and correct copy of an excerpt from the transcript of Mr. Joseph H. Nahra's deposition, taken pursuant to Rule 30(b)(6), dated April 16, 2008.

I declare under penalty of perjury and the laws of the United States that the foregoing is true and correct and that this declaration was executed on October 6, 2008, in Dallas, Texas.

Anthony M. Garza

DECLARATION OF ANTHONY M. GARZA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE REGARDING PLAINTIFFS' COMPLAINTS RELATING TO "AD HOC" AGREEMENTS.– Page 2
Civil Action No. C07 0943 WHA

Dallas 266897v1

# Exhibit A

To: Feffer, Andy[Andy.Feffer@nflplayers.com]
Subject: FW: Hall of Fame
Sent: Thur 11/1/2007 2:23:44 PM
From: Nahra, Joe



**From:** Clay Walker [mailto:cwalker@fantasysportsventures.com]
**Sent:** Tuesday, February 20, 2007 1:27 PM
**To:** Nahra, Joe
**Subject:** RE: Hall of Fame

We never agreed to contribute $100k towards the annual $400k cost. This is about the 10th time that Paul Cairns has brought it up so perhaps he thinks repeating it will make it true. I specifically told Gary that Players Inc was not going to cover any of the cost and he said the NFL would make up the difference. I had that conversation with him on multiple occasions. For the record, this came up because Take Two went after retired players to create and "NFL" style videogame after we gave the exclusive to EA. I was able to forge this deal with the HOF that provides them with $400k per year (which is significantly below market rate) in exchange for the HOF player rights. EA owes me a huge favor because that threat was enough to persuade Take Two to back off its plans, leaving EA as the only professional football videogame manufacturer out there.

**From:** Nahra, Joe [mailto:Joe.Nahra@nflplayers.com]
**Sent:** Tuesday, February 20, 2007 9:28 AM
**To:** Clay Walker
**Subject:** FW: Hall of Fame

Can you please put your PI hat back on and provide some insight here?

**From:** Cairns, Paul [mailto:pcairns@ea.com]
**Sent:** Tuesday, February 20, 2007 7:18 AM
**To:** Goodstadt, Joshua
**Cc:** Nahra, Joe
**Subject:** FW: Hall of Fame

521

HIGHLY CONFIDENTIAL -- ATTORNEYS EYES ONLY    PI126892

Hi Josh – really great to meet you finally in Miami. Hope you enjoyed the rest of the trip.

Dale Jackson told me that he had mentioned this issue of the license we have with the Hall of Fame? As you'll see from my note to Gary Gertzog below, the original agreement was that we would pay $200K per year, with the NFL and Players Inc contributing $100K each per year.

Clay hadn't wanted to include anything about a credit this in the main contract. When I went back through email this morning, I saw one from him where he was going to try and persuade Gary to provide the full $200K credit. I don't know if he ever did anything about that. Gary is out till the end of the week so I can mention it to him. Obviously, we're just keen to ensure that we are only responsible for $200K per year (although we ended up paying a little more than this to cover any new members inducted after our agreement). Copying in Joe also as he may remember this.

I'd be grateful for your thoughts on this. We paid the Hall of Fame the full $400K last year and will be invoiced again by them for 2007 so I need to deal with it fairly soon.

Kind regards

Paul

---

**From:** Cairns, Paul
**Sent:** 19 February 2007 17:40
**To:** 'Gertzog, Gary'
**Subject:** Hall of Fame

Hi Gary

I hope you're well – it was good to see you in Miami for the Super Bowl.

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY       PI126893

I'm sure you'll recall the protracted discussions around the license with the Hall of Fame? One question has come up recently in connection with how the NFL and Players Inc should make their contribution to the overall cost. If you recall, the total fee was $400K per year, with EA contributing $200K and then the NFL and Players Inc putting in $100K each.

At the time, Clay Walker refused to put anything in the contract which dealt with this, saying that we would sort this out separately. Obviously, Clay has now left although I'm not too concerned about this as I have plenty of emails from him on this. I will work this through with our contacts at Players Inc but I wanted to have your thoughts also. It would seem to be easiest to receive a credit or from other payments due but I don't really mind if there's another way that you'd prefer to handle it.

Many thanks

Paul

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. If you have received this message in error, please notify us immediately at administrator@nflplayers.com and delete it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

HIGHLY CONFIDENTIAL -- ATTORNEYS EYES ONLY                                    PI126894

Exhibit B

To: Cairns, Paul[PCairns@ea.com]
Cc: Nahra, Joe[Joe.Nahra@nflplayers.com]
Subject: RE: London NFL Game
Sent: Thur 11/1/2007 3:14:52 PM
From: Feffer, Andy



Unfortunately, I am not in a position where I can assist you with this. I have exhaustively reviewed the issues with Clay, Joe (our counsel) and several others all who make very clear that there was never a commitment from us to pay the $100,000 or any amount as part of this overall deal. In reviewing, I understand that the total payment to HOF is $400,000. I can tell you that Clay and Joe's negotiation of these discounted terms was a significant contribution to EA as you more than likely would have paid in excess of $1M for these rights without their involvement and assistance. While this might not satisfy your request for payment, I hope to convey to you the great value that was brought by us as part of securing this deal. I hope this finally resolves this issue and we can move forward to new initiatives with Madden 08. I look forward to catching up with you on your next trip to the States. Andy

---

From: Cairns, Paul [mailto:PCairns@ea.com]
Sent: Wednesday, October 31, 2007 1:19 PM
To: Feffer, Andy
Subject: RE: London NFL Game

Hi Andy – sorry you missed the game in London. The game wasn't the best I've seen but the overall experience was pretty good.

To answer your other question, that is going exactly the way you predicted. Clay claims that it was all agreed with Gary that they would take on Players Inc.'s share and Gary claims not to know anything about it. The net result is that we get saddled with it. In the overall size of our license deals, it is a small proportion but it becomes a material amount for the development teams (who operate under very strict budgets) and who are now expected to find a further $100K+ per year that they hadn't expected to pay.

Is there anything we can do here? It may sound like nothing but, within our industry, that's not insignificant. I pay much less than $100K for entire leagues in other sports.

Many thanks

Paul

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. If you have received this message in error, please notify us immediately at administrator@nflplayers.com and delete it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

HIGHLY CONFIDENTIAL -- ATTORNEYS EYES ONLY          PI121594

# Exhibit C

```
 1              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
 2                     SAN FRANCISCO
 3    PAUL PARRISH and
      HERBERT ANTHONY ADDERLEY,
 4    on behalf of themselves
      and all others similarly
 5    situated,
 6         Plaintiffs
 7     vs.
 8    NATIONAL FOOTBALL LEAGUE,       CASE NO. 07-0943
      PLAYERS INCORPORATED, d/b/a
 9    PLAYERS, INC., a Virginia
      Corporation,
10
           Defendant
11    ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
12
13              VIDEOTAPED DEPOSITION OF
14
15                  JOSEPH H. NAHRA
16
17                  April 16, 2008
18                    9:00 a.m.
19
20            Manatt, Phelps & Phillips
21                One Metro Center
22        Suite 1100, 700 12th Street, NW
23                Washington, D.C.
24
25        Reported By: T. S. Hubbard, Jr.
```

Page 66

1 talking to Doug Allen, and from talking to Gene
2 Upshaw, and from talking to Clay Walker that
3 there was a hope to be able to generate, through
4 retired player group licensing, revenue, and
5 obviously this language is intended to address
6 that revenue. So that's all I can say.
7 BY MR. LeCLAIR:
8 Q. Well, in fact the retired player group
9 licensing program did generate revenue, didn't
10 it?
11 A. It generated revenue for these specific
12 retired players that were used whose images were
13 used on an individual -- Well, it generated
14 revenue for the specific individual retired
15 players whose images were used.
16 Q. Well, is that revenue not covered by
17 this first sentence of paragraph 5 to your
18 understanding?
19         MR. FEHER: Objection to form.
20         THE WITNESS: Revenue generated for
21 specific use of specific retired players was
22 revenue generated through our group licensing
23 program.
24 BY MR. LeCLAIR:
25     Q. But it is your understanding that that

Page 67

1 specific revenue was not intended to be covered
2 by this language, the first sentence of
3 paragraph 5?
4         MR. FEHER: Objection to form.
5         THE WITNESS: My understanding is that
6 money generated from specific individual retired
7 players was intended to be covered by this form.
8 BY MR. LeCLAIR:
9     Q. But the NFLPA didn't do that, right?
10    A. It didn't do what?
11    Q. It didn't divide the money or create an
12 escrow account.
13        MR. FEHER: Objection to form.
14        THE WITNESS: An escrow account was not
15 created. The money from specific individual
16 retired players was paid to those specific
17 individual retired players.
18 BY MR. LeCLAIR:
19    Q. Is it your understanding, Mr. Nahra,
20 that there was some different kind of revenue
21 that was expected to be obtained that would have
22 been treated in the manner set forth in the
23 first sentence of paragraph 5?
24        MR. FEHER: Objection. You can answer.
25        THE WITNESS: You mean different than

Page 68

1 specific money for specific retired players?
2 BY MR. LeCLAIR:
3     Q. Correct.
4     A. Well, I think there was -- I know there
5 was a hope that licensees would be willing to
6 pay money to get retired player rights in
7 general without regard to who those particular
8 players were but that never happened.
9         Despite our efforts that never
10 happened. There were no licensees that were
11 willing to pay either a guarantee or some sort
12 of flat fee for just getting whatever retired
13 players they got. It was always where the
14 licensees were only interested in obtaining
15 rights to particular retired players.
16    Q. Did the NFLPA ever seek to grant rights
17 to retired players who had in fact signed GLAs?
18 All such players?
19    A. I'm not sure.
20    Q. Did the NFLPA or Players, Inc. to your
21 knowledge ever even tell people who they even
22 had GLAs from?
23        MR. FEHER: Objection to the form.
24 This is starting to go pretty far beyond the
25 drafting process, Lew.

Page 69

1         MR. LeCLAIR: Are you instructing him
2 not to answer?
3         MR. FEHER: I think for this portion of
4 the deposition since it is 30(b)(6), yes, for
5 that purpose.
6 BY MR. LeCLAIR:
7     Q. Was it your understanding, Mr. Nahra,
8 that if license rights were granted to retired
9 players who signed GLAs, that that money would be
10 divided between the player and an escrow account
11 for eligible NFLPA members?
12    A. I don't understand the question. It
13 doesn't make sense. But --
14        MR. FEHER: Objection.
15        THE WITNESS: We don't grant license
16 rights to retired players. We grant rights to
17 companies.
18 BY MR. LeCLAIR:
19    Q. Fair enough. My question is: If
20 rights were granted a licensee for all retired
21 players who had signed a GLA without regard to
22 specific use, was that money to be put into an
23 escrow account and divided among all eligible
24 NFLPA members?
25        MR. FEHER: Objection to form.

Page 294

1             CERTIFICATE
2  STATE OF          :
3  COUNTY/CITY OF     :
4  ☐☐Before me, this day, personally appeared,
5  JOSEPH H. NAHRA, who, being duly sworn,
6  states that the foregoing transcript of his/her Deposition,
7  taken in the matter, on the date, and at the time and
8  place set out on the title page hereof, constitutes a true
9  and accurate transcript of said deposition.
10
11       JOSEPH H. NAHRA
12
13  ☐SUBSCRIBED and SWORN to before me this
14  _____day of_____, 20___ in the
15  jurisdiction aforesaid.
16
17  _____  _____
18  My Commission Expires  Notary Public
19
20  *If no changes need to be made on the following two pages,
21  place a check here ____, and return only this signed page.*

Page 295

1      DEPOSITION ERRATA SHEET
2  RE:     Paulson Reporting & Litigation Services.
3  File No.  7532
4  Case Caption:  PAUL PARRISH, et al.
5  vs. NATIONAL FOOTBALL LEAGUE, et al.
6  Deponent:  JOSEPH H. NAHRA
7  Deposition Date: April 16, 2008
8  To the Reporter:
9  I have read the entire transcript of my Deposition taken
10  in the captioned matter or the same has been read to me.
11  I request that the following changes be entered upon the
12  record for the reasons indicated. I have signed my name to
13  the Errata Sheet and the appropriate Certificate and
14  authorize you to attach both to the original transcript.
15
16  Page No._____Line No._____Change to:_____
17  _____
18  Reason for change:_____
19  Page No._____Line No._____Change to:_____
20  _____
21  Reason for change:_____
22  Page No._____Line No._____Change to:_____
23  _____
24  Reason for change:_____
25

Page 296

1  Deposition of JOSEPH H. NAHRA
2  Page No._____Line No._____Change to:_____
3  _____
4  Reason for change:_____
5  Page No._____Line No._____Change to:_____
6  _____
7  Reason for change:_____
8  Page No._____Line No._____Change to:_____
9  _____
10  Reason for change:_____
11  Page No._____Line No._____Change to:_____
12  _____
13  Reason for change:_____
14  Page No._____Line No._____Change to:_____
15  _____
16  Reason for change:_____
17  Page No._____Line No._____Change to:_____
18  _____
19  Reason for change:_____
20
21  SIGNATURE:_____DATE:_____
22        JOSEPH H. NAHRA