1  Todd Padnos (Bar No. 208202)
   *tpadnos@dl.com*
2  DEWEY & LEBOEUF LLP
   One Embarcadero Center, Suite 400
3  San Francisco, CA 94111
   Tel: (415) 951-1100; Fax: (415) 951-1180
4
5  Jeffrey L. Kessler (*pro hac vice*)
   *jkessler@dl.com*
6  David G. Feher (*pro hac vice*)
   *dfeher@dl.com*
7  David Greenspan (*pro hac vice*)
   *dgreenspan@dl.com*
   DEWEY & LEBOEUF LLP
8  1301 Avenue of the Americas
   New York, NY 10019
9  Tel: (212) 259-8000; Fax: (212) 259-6333

10 Kenneth L. Steinthal (*pro hac vice*)
   *kenneth.steinthal@weil.com*
11 WEIL, GOTSHAL & MANGES LLP
   201 Redwood Shores Parkway
12 Redwood Shores, CA 94065
   Tel: (650) 802-3000; Fax: (650) 802-3100
13
14 Bruce S. Meyer (*pro hac vice*)
   *bruce.meyer@weil.com*
   WEIL, GOTSHAL & MANGES LLP
15 767 Fifth Avenue
   New York, NY 10153
16 Tel: (212) 310-8000; Fax: (212) 310-8007

17 Attorneys for Defendants National Football League Players Association
   and National Football League Players Incorporated d/b/a Players Inc
18

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III, <br><br> Plaintiffs, <br><br> v. <br><br> николаNATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC, <br><br> Defendants. | Case No. C 07 0943 WHA <br><br> **DEFENDANTS' MOTION IN LIMINE NO. 5 TO EXCLUDE THE TESTIMONY OF PHILIP Y. ROWLEY** <br><br> **FILED UNDER SEAL** |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 1, 2008, or as soon thereafter as the matter may be heard in the above-referenced Court, Defendants National Football League Players Association ("NFLPA") and National Football League Players Incorporated d/b/a Players Inc ("Players Inc") (collectively, "Defendants"), will and hereby do move to exclude the testimony of Philip Y. Rowley.

This Motion is based on the accompanying Memorandum of Points and Authorities, the accompanying declarations, the pleadings in this matter, and on such further evidence and argument as may be presented at the hearing on this Motion.

Date: August 19, 2008                           DEWEY & LEBOEUF LLP


BY: __/s/Jeffrey L. Kessler_____
Jeffrey L. Kessler

*Attorneys for Defendants*

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs' have designated Philip Y. Rowley as their damages expert. Mr. Rowley's proposed testimony is nothing more than an inadmissible summary of Plaintiffs' counsels' "assumptions" and some simple arithmetic calculations that require no expertise. In particular, Mr. Rowley <u>assumes</u>, at the direction of Plaintiffs' counsel, that Defendants' conduct was unlawful because they failed to pay an equal share of the Gross Licensing Revenue pool ("GLR pool") to class members. Having been directed by Plaintiffs' counsel to assume the conclusion, he then proceeds to do simple math to calculate equal shares of that pool. His damages "study" consists of nothing more than adding up the total number of eligible active players and the class members from Defendants' documents. Then, he simply divides the licensing revenues in the GLR pool, identified in Defendants' Gross Licensing Revenue calculation spreadsheets ("GLR spreadsheets"), equally among those players.[1]

Mr. Rowley provides no expert analysis linking any of his damages calculations to any particular alleged unlawful conduct by Defendants. He also does not offer any expert analysis to explain why his measure of damages relates to any alleged injuries suffered by class members, and he provides no expert analysis to support the conclusion that an equal share division of the GLR pool is a relevant measure of damages for the GLA class members.

Finally, Mr. Rowley includes damages estimates based on the retired player class members sharing in licensing agreements that do not even refer to retired players. He also relies, as discussed below, on the inadmissible apples to oranges comparisons by Dr. Rascher of what constitutes a "customary" retention of licensing revenues.

---

[1] Using the same model, Mr. Rowley also provides a number of variants of his damages calculation, based on subsets of licensing revenues from the GLR spreadsheets determined by Plaintiffs' counsel, and by reducing the share of the GLR pool revenues retained by Defendants to match the percentages identified by Plaintiffs' other expert, Dr. Rascher, as being "customary." All of these purported "damages calculations" depend entirely on the unsupported and erroneous assumptions provided by Plaintiffs' counsel or Plaintiffs' other expert witness. <u>See</u> Expert Report of Philip Y. Rowley ("Report" or "Rpt.") at 3-4 (Declaration of Jason Clark In Support of Def.'s Mot. In Limine No. 5 ("Clark Decl."), Ex. 1); Deposition of Philip Y. Rowley ("Depo. Tr.") 38:4-10, 56:14-24, 132:17-137:10 (Clark Decl. Ex. 2).

# ARGUMENT

Pursuant to Fed. R. Evid. 702 and Daubert and its progeny, an expert may not be allowed to testify unless that testimony is reasonably based on record facts and is reliable. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589-592 (1993). In order for expert testimony to be admissible, it must apply accepted techniques to record facts so as to produce opinions that are objectively testable for reliability. Guidoz-Brault v. Mo. Pac. R.R. Co., 254 F.3d 825, 829 (9th Cir. 2001). Expert testimony should be excluded where there is too great an analytical gap or it is connected to the data only by the ipse dixit of the expert. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

Where an expert's damages analysis is based on unfounded or unreliable assumptions, the resulting damages opinions and calculations must be excluded.[2] Experts may not rely upon unverified information or merely adopt the theories and assumptions of counsel without independent scrutiny.[3] Mr. Rowley's damages analysis fails these tests.

---

[2] See Domingo v. T.K., M.D., 289 F.3d 600, 606 (9th Cir. 2002) (affirming exclusion of opinion where the expert did not provide support for every necessary link in his theory of causation); Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21-22 (2d Cir. 1996) (excluding damages calculations based on unrealistic and speculative assumptions); City of Vernon v. S. Cal. Edison Co., 955 F.2d 1361, 1372 (9th Cir. 1992) (affirming exclusion of damages study because it did not link the injury suffered to alleged illegal practices); Tech. Licensing Corp. v. Gennum Corp., No. 3:01-CV-4204-RS, 2004 WL 1274391, at *9 (N.D. Cal. Mar. 26, 2004) (excluding damages calculations that were "purely judgmental" and lacked legal or factual foundation); DSU Med. Corp. v. JMS Co. Ltd., 296 F. Supp. 2d 1140, 1157 (N.D. Cal. 2003) (excluding damages calculation where expert ignored market circumstances and the market as it would have been in the but-for world); Am. Booksellers Assn., Inc. v. Barnes & Noble, Inc., 135 F. Supp. 2d 1031, 1040 (N.D. Cal. 2001) (excluding opinion where expert was asked to assume that an entire price differential was illegal and the model failed to show that the alleged conduct caused any actual harm to plaintiffs).

[3] See In re Prempro Prods. Liab. Litig., 554 F. Supp. 2d 871, 887 (E.D. Ark. 2008) (excluding punitive damages testimony where "it tracked Plaintiffs' legal arguments, and there was very little significant analysis"); Astro Tech., Inc. v. Alliant Techsystems, Inc., No. H-03-0745, 2005 WL 6061803, at *8 (S.D. Tex. Sept. 28, 2005) (holding an expert's opinion was neither reliable nor relevant where "[r]ather than conduct and report the results of critical, independent analysis, it appears that [the expert] relied heavily . . . on the representations of" plaintiffs' president and counsel); Intimate Bookshop, Inc. v. Barnes & Noble, Inc., No. 98 CIV 5564 (WHP), 2003 WL 22251312, at *6 (S.D.N.Y. Sept. 30, 2003) (excluding expert testimony where expert's "damages calculations and opinions [were] based merely on an assumption that the . . . alleged violations" caused plaintiff's harm); Rowe Entm't, Inc. v. The William Morris Agency, No. 98 CIV, 8272(RPP), 2003 WL 22124991, at *3 (S.D.N.Y. Sept. 15, 2003) (expert's analysis "was further compromised by his reliance, not on his own independent study and analysis . . . but on Plaintiffs' information").

Mr. Rowley's Expert Report states that he was "asked to assume that liability has been established and to estimate several measures of damages." Rpt. at 1. In his Reply Report ("Reply Rpt."), Mr. Rowley further explains that he has "<u>defined causation</u> as the fact that the retired players did not receive any payments from the general licensing pool." Reply Rpt. at 2 (emphasis added) (Clark Decl. Ex. 3). He goes on to state that his damages theory depends for its validity on "the decision by the trier of fact as to whether or not a retired player who has signed a GLA during the relevant period is entitled to an equal share of the player pool associated with Gross Licensing Revenues (GLR)." Reply Rpt. at 4; <u>see also</u> Depo. Tr. 65:7-66:5 ("I was asked to assume that a question of liability will be, 'Are those the relevant contracts [subset] to which retired players should have received some type of an equal share?' And that's how I built the model.").

Mr. Rowley's damages report is, thus, merely a regurgitation of Plaintiffs' assumptions that Defendants breached their contractual obligations and fiduciary duties by failing to give class members equal shares of the GLR pool. <u>See</u> Reply Rpt. at 1-2. Mr. Rowley has not articulated any independent theory of causation or sought to link any injury or damages allegedly suffered by Plaintiffs to his measure of damages. Instead, he simply accepts Plaintiffs' counsels' direction that he assume that Defendants' alleged failure to pay equal shares of the GLR pool is the violation. Having made that assumption, Mr. Rowley then "defines" causation, in circular logic, as Defendants failure to pay such an equal share to the GLA class members. Indeed, Mr. Rowley testified that even if a jury concluded that every single dollar in the GLR pool is attributable solely to licensing active player rights, his damages model would still assume that the GLA class members should get an equal share of this money.[4] Depo. Tr. 82:23-83:18. Such a lawyer directed tautology is not a substitute for an admissible damages study.[5]

---

[4] When asked what expert principles caused him to conclude that if retired players participated in the GLR pool they would receive the same share as an active player that meets the eligibility requirements, rather than the same share as a practice squad player, who, like retired players, are not on a roster, Mr. Rowley testified that he simply "looked at how it was administered and [made] the assumption that had you included those retired players into that account, they would have been treated equally." Depo. Tr. 90:15-94:21.

[5] <u>See</u> <u>Prempro</u>, 554 F. Supp. 2d at 887 (quoting <u>Minasian v. Standard Chartered Bank, PLC</u>, 109 F.3d 1212, 1216 (7th Cir. 1997)) ("An expert who supplies nothing but a bottom line supplies

-3-

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Mr. Rowley's failure to provide any reliable expert damages analysis linking Defendants' allegedly unlawful conduct to a measure of damages is further demonstrated by his discussion of Defendants' alleged breaches of fiduciary duty. He identifies seven alleged breaches of fiduciary duty, but he provides no expert analysis or explanation regarding how these alleged breaches are linked to the "equal share" damages calculations in his report. See Reply Rpt. at 3.

For example, Mr. Rowley notes that one alleged breach was failing "to accurately report group licensing revenues to members of the GLA class." Reply Rpt. at 3. If a jury were to conclude that this was the only breach that occurred, Mr. Rowley offers no rational explanation regarding why equal shares of the GLR pool would be an appropriate damages award. See Depo. Tr. 67:4-68:1. Similarly, Mr. Rowley notes that Plaintiffs allege that Defendants breached their fiduciary duty by "placing themselves in a position of conflict of interest and acting adversely to the interest of retired NFL players who signed a GLA," Reply Rpt. at 3, but again offers no coherent theory regarding why an equal shares allocation of the GLR pool would be a relevant measure of damages for such a claim. See Depo. Tr. 74:21-75:25. Another alleged breach cited by Mr. Rowley is "failing to create an escrow account for the retired players," Reply Rpt. at 3, but Mr. Rowley provides no credible explanation for how such a failure to create an escrow account would relate to his equal share damages calculations. See Depo. Tr. 56:25-60:18, 102:16-103:13.

Mr. Rowley also could not articulate how his damages calculations reducing the share of the GLR pool retained by Defendants to the percentages identified by Dr. Rascher as being "customary" would have any application to a breach of contract claim in light of the fact that the GLA contract does not contain any language specifying in what percentages retired player licensing revenues would be divided. See Depo. Tr. 29:25-33:8. He also expresses no opinion as to why his damages calculations for the $8 million reallocation between the GLR pool

---

nothing of value to the judicial process"); Astro Tech., 2005 WL 6061803, at *8 (holding that an expert's opinion was "at best an effort to synthesize Plaintiffs' allegations and present them summarily as an expert opinion").

-4-

Defendants' Motion In Limine No. 5 to Exclude            Civ. Action No. C07 0943 WHA
the Testimony of Philip Y. Rowley

and Defendants would be applicable to plaintiffs' breach of contract claim. Depo. Tr. 108:24-109:25. In every damages estimate, he simply followed the direction of Plaintiffs' counsel, prepared the mathematical calculations that were requested by counsel, and "assumed" that they would be applicable to the claims alleged. Depo. Tr. 30:18-31:10, 38:4-10, 56:14-24, 60:1-61:12, 65:10-66:5, 86:25-88:2, 110:18-112:10, 135:15-136:18.

While Mr. Rowley asserted in his first report that "[i]f requested by the court, I could allocate these monies specifically to the eligible individual retired players," in his Reply Report, Mr. Rowley now states that "[t]here is no need to consider the individual merits of the various players, their respective contributions to the size of the GLR pool, and so on. GLR revenues are equally shared." Reply Rpt. at 5. Regardless of whether GLR revenues have been shared equally among eligible active players, Mr. Rowley has no basis for his opinion that all GLA class members suffered equal damages other than the circular assumptions provided by plaintiffs' counsel that the unlawful conduct of Defendants was not paying GLA class members equal shares of the GLR pool.

As Defendants' expert, Stephen Jizmagian, explains, Mr. Rowley has not constructed a proper "but-for" world that seeks to take into account how active players, or retired players who did not sign GLAs, would have reacted if Plaintiffs' claim that all retired players who signed a GLA were entitled to an equal share of the GLR pool were true. See Expert Report of G. Stephen Jizmagian at 7-8 (Clark Decl. Ex. 4). Mr. Rowley states that he agrees that "the role of the damages expert in this matter is to develop a 'but-for' world." Reply Rpt. at 3. However, Mr. Rowley's damages calculations simply assume that for the entire damages period from 2003-2007, active players would not have responded to the substantial decrease in their shares of GLR licensing revenue that would have resulted from thousands of retired players with GLAs receiving an equal share of the GLR pool.[6] He also does not consider how retired players who did not sign GLAs would have reacted to the ability to secure an equal share of the active

---

[6] Mr. Rowley "assumed" that group licensing revenues received by retired players through ad hoc agreements would not be included in the GLR pool in his but-for world simply because "that is how it appears to have been done historically." See Depo. Tr. 42:16-44:22. However, under this same historical rationale, retired players also did not receive any of the GLR pool revenues.

-5-

Defendants' Motion In Limine No. 5 to Exclude            Civ. Action No. C07 0943 WHA
the Testimony of Philip Y. Rowley

player money in the GLR pool by simply signing a GLA.[7]  This failure to take account of market reactions in the "but-for" world renders Mr. Rowley's damages calculations speculative and inadmissible.  See Murphy Tugboat Co. v. Crowley, 658 F.2d 1256, 1262 (9th Cir. 1981); DSU Med. Corp., 296 F. Supp. 2d at 1157.

Even more brazenly, Mr. Rowely has included in his damages calculations licensing revenues in the GLR pool from licensees' whose agreements (unlike the EA and Topps agreements) do not even refer to retired players.  See Rpt. at 6; Reply Rpt. at 7.  He has done this because he "understand[s] that Plaintiffs have argued that all licenses should be included because of the reference to both active and retired players in the GLA."  Reply Rpt. at 7.  Mr. Rowley does not express any independent expert opinion as to whether these revenues should be included in the damages calculations or why GLA class members should be entitled to such active player revenues.  Id.; Depo. Tr. 28:9-29:8.  He also offers no opinion on which of his many damages alternatives – which range from approximately $12.6 to $99.4 million – best measures Plaintiffs' alleged injuries.  Depo. Tr. 28:2-8; Reply Rpt. Ex. 1.

Further, the only basis for Mr. Rowley's calculations increasing Plaintiffs' damages by reducing the percentage of GLR pool licensing revenue retained by Defendants (to either 40%, 25%, or 10%) is the unverified and speculative opinion of Plaintiffs' economist, Dr. Rascher, that such percentages are more "customary."  See Rpt. at 7; Reply Rpt. at 8 n.14; Depo. Tr. 32:20-33:15 ("I have not been asked and nor did I study specifically the reasonableness of the percentages independently from what I gathered from Dr. Rascher").  As shown in Defendants' Motion In Limine No. 4 to Exclude the Testimony of Daniel A. Rascher, there is no reliable or admissible basis for Dr. Rascher's apples to oranges comparison on this point.  Id. at 4-6.  Therefore, to the extent that Mr. Rowley's damages study relies upon the inadmissible opinions of Dr. Rascher, it should be excluded for this additional reason.  See J.B. Hunt Transp. Inc. v.

---

[7] Depo. Tr. 85:11-88:19 (Mr. Rowley testified that he was not asked to consider the reaction of the retired players who did not sign GLAs and he does not "think it's relevant for what we were attempting to do").

Defendants' Motion In Limine No. 5 to Exclude                                    Civ. Action No. C07 0943 WHA
the Testimony of Philip Y. Rowley

Gen. Motors Corp., 243 F.3d 441, 444 (8th Cir. 2001); U.S. v. Batchelor-Robjohns, No. 03-20164-CIV., 2005 WL 1761429, at *5 (S.D. Fla. June 3, 2005).

In sum, Mr. Rowley's "expert" testimony – which is nothing more than a slavish adoption of the assumptions of Plaintiffs' counsel and the application of simple addition and multiplication calculations – does not provide any "expert value," and will not aid the jury in making a damages determination based on anything other than speculation and guesswork. It thus must be excluded as a matter of law. See Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264 (1946) ("jury may not render a verdict based on speculation or guesswork"); DSU Med., 296 F. Supp. 2d at 1158 (excluding expert opinion where "the analytic process . . . lapses into speculation"); Am. Booksellers, 135 F. Supp. 2d at 1042 (expert's conclusions regarding the amount of damages were "too speculative to support a jury verdict").

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant this Motion to exclude the unreliable and inadmissible damages testimony of Mr. Rowley.

Date: August 19, 2008                    DEWEY & LEBOEUF LLP

BY: ___/s/ Jeffrey L. Kessler_____
Jeffrey L. Kessler
*Attorneys for Defendants*