MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS III, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 5 TO EXCLUDE THE TESTIMONY OF PHILIP Y. ROWLEY**<br><br>Judge: Honorable William H. Alsup<br>Date: September 1, 2008 |

20205884.1

Dallas 267092v1

OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE NO. 5
C07 0943 WHA

dockets.Justia.com

## I. INTRODUCTION

Defendants' Motion in Limine No. 5 ("Motion") to exclude the testimony of Plaintiffs' damages expert, Philip Rowley, is completely meritless. Defendants do not object to Rowley's qualifications. Rather, Defendants resort to a series of straw man arguments, raising assumptions that have no basis in the evidence and then attacking Rowley for failing to incorporate those assumptions into his damages model. For instance, Defendants fault Rowley for failing to opine on the cause of Defendants' injury. Yet, that is the clear province of the jury. It is only after the jury determines whether Defendants caused injury to the GLA Class – by not paying them a share of licensing revenues earned from the group licensing of former player rights – that Rowley can then provide the jury with what he was engaged to do: a method for calculating damages suffered by the GLA Class.

Defendants also object to Rowley's testimony on the grounds that his analysis consisted of "simple arithmetic," that "consists of nothing more than adding up the total number of eligible active players and the class members from Defendants' documents." Motion at 1. Yet, such complex financial and accounting calculations should not be thrust wholesale into the jury's lap. Rather, Rowley's testimony provides the jury with a critical synthesis of scores of relevant contracts, reams of accounting documents and spreadsheets, and provides the complex accounting methodology and potential calculations necessary for the jury to make a damages determination

As shown below, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), Rowley's testimony is the type of reliable and relevant evidence that will assist the jury to determine Plaintiffs' damages.

## II. ARGUMENT

To rule on a *Daubert* motion, the Court's task is of a threshold nature: to act as a gatekeeper to bar only such testimony that it deems to be such "rank speculation" that the jury should not be permitted to evaluate its reliability itself. *Daubert*, 509 U.S. at 589-90.[1] That

---

[1] *Daubert* extends to all expert testimony, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); and the question of "scientific" validity must be considered in the context of the specific facts and field of expertise at issue in the case. *See, e.g., U.S. v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000), citing *Skidmore v. Precision Printing & Packaging*, 188 F.3d 606, 618 (5th Cir.

inquiry involves a two-pronged, preliminary assessment of whether the reasoning or methodology underlying the testimony is (1) "scientifically" valid (reliability), and (2) can be applied to the contentions and facts of the case ("relevance").[2] *Id.* at 592. Therefore, "[t]he focus . . . must be solely on principles and methodology, not on the conclusions they generate." *Id.* at 595.

Ultimately, credibility of the expert and the weight accorded to his or her testimony are in the jury's province. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 (9th Cir. 1997). Any doubts as to admissibility should be resolved in favor of letting the jury decide whether the opinion is reliable and to what extent to rely upon the damage estimates advanced. *Popovich v. Sony Mustic Enter., Inc.*, 2005 U.S. Dist. LEXIS 46074, *4 (N.D. Ohio May 8, 2005) (quoting 2000 Advisory Committee Notes to Fed. R. Ev. 702) ("the rejection of expert testimony is the exception not the rule")); *Clark v. Heidrick*, 150 F.3d 912, 914 (8th Cir. 1998) ("doubts . . . should generally be resolved in favor of admissibility"); *see also Wattel v. Browne*, No. 02-CV-2256, 2006 WL 1211186, *1 (D. Ariz. May 3, 2006) ("Federal Rule 702 provides for the liberal admission of expert testimony regarding factual matters. Expert testimony is admissible when it will assist the tier (sic) of fact in understanding the evidence or determining a disputed issue of fact.").

### A. Rowley's Testimony Is Well-Founded And Reliable.

Defendants' objection to Rowley "assuming liability" is nothing more than a red-herring. Rowley stated, "both causes of action, focus upon the determination by the trier of fact as to the

---

1999) ("Whether *Daubert's* suggested indicia of reliability apply to any given testimony depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony. It is a fact-specific inquiry."); *see also, Living Designs, Inc. v. E.I. DuPont de Nemours and Co.*, 431 F.3d 353, 369 n.14 (9th Cir. 2005).

[2] Because the *Daubert* inquiry is designed to be flexible, *see, e.g., Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 597 (9th Cir. 1996), trial courts have broad latitude in determining for any particular case how to test an expert's reliability. *Kumho Tire*, 526 U.S. at 150, 152-53 (trial court must have "considerable leeway" in both "how to determine reliability" and "its ultimate conclusion"); *Hankey*, 203 F.3d at 1169 (*Daubert* factors not applicable to determining reliability of gang expert's testimony on gang "code of silence"; rather, law enforcement background, knowledge of and interaction with gangs, and acquaintance with actual gang members were appropriate criteria). There is no set list of factors to be considered, and no one factor is dispositive or controlling. *Kumho Tire*, 526 U.S. at 150-51.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

interpretation and corresponding obligation of the defendants associated with several key phrases within the GLAs . . . ."[3] As Rowley correctly points out, liability will depend on the GLA interpretation, as well as several other contracts. Contract interpretation is a matter of law for the Court or the jury, and the determination of whether a breach has occurred is an issue solely within the jury's province. Neither of these determinations are appropriate for the damages expert. *U. S. v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("expert testimony is not permitted if it will usurp either the the trial judge's role in instructing the jury as to the applicable law or the jury's role in applying that law to the facts before it. When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's" (citations and internal quotation marks omitted)).[4] Rowley has properly assumed that the jury has performed its function and made necessary determinations.[5] The expert's liability assumption for a damages analysis is entirely appropriate, and does not invade the jurors' province. *See Brill v. Marandola*, 2008 U.S. Dist. LEXIS 2197, *18 (E.D. Pa. Jan. 11, 2008) ("it is more practical for each [damages] expert to base his calculations on a particular factual scenario, presumably as posited by or on behalf of the party offering the expert"); *Rondout Valley Central School Dist. v. The Coneco Corp.*, 321 F. Supp. 2d 469, 480 (N.D.N.Y, 2004) (for damages expert to render his opinion, "he has presumed that the proof will establish that the Defendants did in fact breach many provisions of the [relevant contract]"); *Lyman v. St. Jude Med. S.C., Inc.*, No. 05-CV-122, 2008 WL 2224352, *2 (E.D. Wis. May 27, 2008) (damages expert's role in breach of contract case is to assist the jury in determining damages "assuming an improper termination of the Representative Agreement").

---

[3] *See* Declaration of Jason Clark Supporting Defendants' Motion in Limine No. 5 ("Clark Decl."), Ex. 3 ("Rowley Reply") at 2.
[4] To determine whether Defendants breached the GLA, the jury will have to determine among other things, whether or not Defendants included retired players in licenses to third parties such as EA and Topps, and whether these licenses invoked the GLA payment provision. *See, e.g.*, Order Denying MSJ at 6, Dkt. No. 353. The jury will also have to determine how the monies due under the GLA were to be distributed. *Id.*
[5] *See*, Hilbert Declaration filed herewith ("Hilbert Decl."), Ex. A (Deposition Transcript of Philip Rowley ("Rowley Tr.")) at 27:15 – 29:5 ("I would have anticipated that the jury instructions would have looked to one of the key issues being 'Does breach of contract mean only those contracts or agreements that have specific language referencing retired players versus all contracts,' because that goes to groups larger than six, which I understand from plaintiffs' counsel is one of – is one of their arguments.").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20205884.1

Dallas 267092v1

Not only has Rowley properly assumed liability, his assumption is well-grounded in the factual record. Rowley expressly evaluates each of seven ways in which Plaintiffs claim that Defendants breached their fiduciary duties to them.[6] Defendants do not dispute that Rowley's method of calculating payments from the GLR pool is proper. Rather, Defendants complain that Rowley "provides no expert analysis or explanation regarding how these alleged breaches [of fiduciary duty] are linked to the 'equal share' calculations in his report."[7] But Rowley provides several bases for his opinion that an equal share is the appropriate measure of damages.[8] Given the evidence, Rowley's assumption that any payment to the GLA Class members would be in equal shares is reasonable and appropriate.[9]

Rowley also has created an appropriate "but for" world[10] to calculate the amount of damages.[11] Rowley also explained that he used the GLR pool because it is "the only escrow account that [he could] see that was established."[12] Rowley also applied the GLR pool "exactly

---

[6] Rowley Reply at 3.
[7] Motion at 4-5.
[8] Rowley Tr. at 66:6 – 68:1 (failure to accurately report); 74:10 – 75:25 (conflict of interest); 93:15 – 94:16 (listing the language of the GLA, how Defendants administered the GLR pool for the active players, and how Defendants determined eligibility); 101:14 – 103:3; 149:20 – 150:15.
[9] Defendants also mischaracterize several aspects of Rowley's equal share opinion. Contrary to the Motion (see p. 4, lines 20-24), Rowley's damages model reducing the percentage of the GLR pool kept by Defendants to the percentages identified by Dr. Rascher (i.e., 10%, 25% and 40%) may be applicable to the breach of contract claim if the jury finds that Defendants' withholding of 64%-69% of the GLR pool itself is a breach of the GLA. See Rowley Tr. at 33:5-10. Similarly, Defendants imply that Rowley flip-flopped on his statement that "[i]f requested by the court, [he] could allocate these monies specifically to the eligible individual retired players.Motion at 5, citing Clark Decl., Ex. 1 (Rowley May 23, 2008 Report ("Rowley Report")) at 8. Rowley was not, as Defendants suggest, referring to the value of the individual class members' image rights but instead, was offering to break down damages by individual class member, based on the number of years during the class period he had an operative GLA. See Declaration of Philip Rowley filed herewith, ¶¶ 2-3.
[10] Rowley's "but for" world "identified the potential number of retired players who would have been eligible at different points in time during the class period and determined the monies that they should have received." Rowley Reply at 3.
[11] Notably, while Defendants attack Rowley's assumptions, Defendants do not attack the model itself. Where the only challenge to an expert's testimony is whether certain inferences can be persuasively drawn from the data, the testimony should be admitted. See Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1179 (9th Cir. 2007) ("Daubert does not require a court to admit or exclude evidence based on its persuasiveness, but rather, requires a court to admit or exclude evidence based on its scientific reliability.").
[12] Rowley Tr. at 91:5-6.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20205884.1

Dallas 267092v1

how NFLPA/PI also used it during the relevant time period.[13] Defendants argue that the proper "but for" world would also have considered whether the active players would have "responded to the substantial decrease in their shares of GLR licensing revenues" or whether more retired players would have signed GLAs. Yet such assumptions themselves are pure speculation.[14] *See, e.g., Boucher*, 73 F.3d at 22 (cited by Defendants). At any rate, any dispute as to the assumptions underlying his opinion goes to the weight accorded to the opinion, not its admissibility. *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987) ("the weakness in the underpinnings of [expert] opinions may be developed upon cross-examination,") as "such weakness goes to the weight and credibility of the testimony"); *U.S. v. Chischilly*, 30 F.3d 1144, 1154 (9th Cir. 1994) ("imperfectly conducted procedure goes to the weight of the evidence, not admissibility"); *Lee v. U.S. Taekwondo Union*, No. 04-CV-461, 2006 U.S. Dist. LEXIS 25559, *7-10 (D. Ha. Jan. 26, 2006) (economist's calculation of lost profits was admissible even if assumptions underlying the calculation methodology are incorrect). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 1995); Rowley's examination of all the facts also belie Defendants' claim that his opinions are "merely a regurgitation of Plaintiffs' assumptions".[15] Rather, assuming that the jury will determine liability stemming from the GLA, Rowley reviewed numerous record documents, including financial statements, spreadsheets, license agreements and other documentation provided by Defendants to determine the pool of

---

[13] *Id.* at 46:2-9; *see also id.* at 60:10-18; 91:7-10; 128:11 – 129:16; 150:25 – 151:16 ("Based on how the current account, the GLR equal share account, was established and administered, that's the most reasonable way to measure the damages").

[14] Defendants have not provided evidence as to active players' views of the GLA program or as to how retired players would react to sharing in the GLR pool. *Compare* Rowley Tr. at 86:15-17 ("The class, as I understand it, are only those players who had signed the relevant GLAs, and that's all that's included in my analysis."); 88:6-11 ("I think there's a whole series of analyses, including liability points, around this class as to why others didn't sign up or who did sign up and who stopped signing up, and so to simply assume that there would be 13,000, I don't have – I don't have basis for that.").

[15] Motion at 3.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

money from which payments should have been made to the GLA Class.[16] He calculated the number of eligible active and retired players in each relevant year and then calculated the amount due to the GLA Class members during the period at issue.[17] Unlike the expert in *Rowe Entm't, Inc. v. The Wm. Morris Agency*,[18] Rowley conducted his own, independent analysis of the specific terms of each of those agreements (as well as others), the payments Defendants received, and which portions of the royalty payments derived from those agreements, went into the GLR pool and were distributed.[19]

Defendants condemn Rowley's analysis because it "included in his damages calculations licensing revenues in the GLR pool from licensees whose agreements (unlike the EA and Topps agreements) do not even refer to retired players" and because he "does not express any independent expert opinion as to whether these revenues should be included in the damages calculation."[20] This argument ignores Plaintiffs' claim that Defendants failed to inform licensees that they also had the rights of retired player GLAs. Plaintiffs' damages are the amount they would have received had Defendants licensed retired players rights as they did active player rights. Rowley's purpose in offering this amount is to give the jury a measure of damages should Plaintiffs prevail on this claim.[21] Rowley explains that the wide range of possible jury outcomes

---

[16] *See*, Rowley Report, Ex. 2; Rowley Tr. at 107:8-12; 154:12 – 155:24.
[17] Rowley Report at 3-4 (describing methodology); Rowley Tr. at 37:20 – 38:1 ("there was quite a bit of work that went into [his calculations] – to determine the appropriate shared revenue pool, the adjustments that are made, when those adjustments are made, the number of active players, the number of retired players; if you look to some of the theories here on liability, which contracts or agreements are appropriate in which years. So quite a bit of work went into constructing the damages models."); 130:18 – 138:21 (describing how he created the damages models).
[18] 2003 WL 22124991 (S.D.N.Y. Sept. 15, 2003). Each of Defendants' other cases are inapposite, as well. *See*, Motion at 2, fn. 3., *citing*, *Astro Tech.. Inc. v. Alliant Techsystems, Inc.*, 2005 WL 6061803 (S.D. Tex. Sept. 28, 2005)(expert was excluded because he did not have training in the particular technology at issue, did not apply the correct legal definition, and did not relate his opinions to any particular evidence in the case.); *Intimate Bookshop, Inc. v. Barnes & Noble, Inc.*, 2003 WL 22251312, *4 (S.D.N.Y. Sept. 30, 2003) (plaintiffs' experts were unable to show that "the injury to [plaintiff's] business was not caused by factors unrelated to defendant's price discrimination."). *In re Prempro Prods. Liab. Litig.*, 554 F. Supp.2d 871, 887 (E.D. Ark. 2008) is apparently miscited and counsel could not locate.
[19] *See* Rowley Report at 3-7; Rowley Tr. at 40:5 – 41:17.
[20] Motion at 6.
[21] Rowley Reply at 7.

necessitates a range of damages calculations.[22] Rowley also appropriately relied on Dr. Rascher's opinion of the percentage of licensing revenues that should have been retained by Defendants.[23] An expert is permitted to rely on published tests or other expert's reports. *Ferrara and DiMercurio v. St. Paul Mercury*, 240 F. 3d 1, 8-9 (1st Cir. 2001).

### B. Rowley's Testimony Is Relevant

Rowley's testimony on damages is also relevant under the *Daubert* standard. *Daubert*, 509 U.S. at 591. Defendants argue that Rowley's testimony consists of "simple arithmetic calculations that require no expertise" and that he does not provide any "expert value."[24] Contrary to Defendants' claims, however, Rowley's report provides the jury with invaluable expert analysis, aiding it with voluminous and complex financial and contractual documents from which the license payments are derived.[25] *Total Control, Inc. v. Danaher Corp.*, 338 F. Supp. 2d 566, 569 (E.D. Pa. 2004) (damages expert's "ability to present a vast quantity of calculations derived from disparate sources in an understandable format will assist the jury."). Although the damages can be derived from the evidence, its sheer volume (nearly 100 different license agreements), the detailed accounting, and its application would overwhelm the jury.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.

---

[22] *Id.* at 6 ("[T]here are a number of "decision tree" points for a trier of fact in reaching the ultimate structure of any possible liability finding. As the damages expert, I have attempted to provide estimates that are conditional on which branch of the tree the trier of fact ends up following. .... The expert attempts to identify possible liability "nodes," and seeks to provide damages estimates for each of these nodes. It is therefore not true that the figures are widely divergent – what is divergent is the range of possible liability outcomes"); *see also* Rowley Tr. at 27:15-18 ("what my opinion is, is that if the trier of fact determines certain liabilities, I provided a construct as to what I believe the damages were that were suffered by the plaintiffs.").

[23] For the reasons stated in Plaintiffs' Opp. to Defendants' Motion in Limine No. 4 to Exclude the Testimony of Dr. Rascher, the opinions provided by Dr. Rascher in this case are relevant and reliable, and easily satisfy the *Daubert* standards.

[24] Motion at 1, 7.

[25] Defendants do not contend that any of Mr. Rowley's actual calculations are inaccurate. Hilbert Decl., Ex. B (Deposition Transcript of Dr. G. Stephen Jizmagian) at 136:17-20.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20205884.1
7
OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 5
C07 0943 WHA

Dallas 267092v1

| | |
|---|---|
| Dated: October 8, 2008 | Respectfully submitted, |
| | MANATT, PHELPS & PHILLIPS, LLP |
| | By: /s/ Ryan S. Hilbert |
| | Ronald S. Katz (SBN 085713) |
| | Ryan S. Hilbert (SBN 210549) |
| | 1001 Page Mill Road, Building 2 |
| | Palo Alto, CA 94304-1006 |
| | Telephone: (650) 812-1300 |
| | Facsimile: (650) 213-0260 |
| | MCKOOL SMITH, P.C. |
| | Lewis T. LeClair (SBN 077136) |
| | Jill Adler Naylor (SBN 150783) |
| | 300 Crescent Court |
| | Dallas, TX 75201 |
| | Telephone: (214) 978-4984 |
| | Facsimile: (214) 978-4044 |
| | *Attorneys for Plaintiffs* |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20205884.1

Dallas 267092v1

8

OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE NO. 5
C07 0943 WHA