MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS III, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 4, REQUESTING EXCLUSION OF PAROL EVIDENCE TENDING TO PROVE THE INTENT OF THE PARTIES TO THIRD-PARTY LICENSING AGREEMENTS**<br><br>Judge: Honorable William H. Alsup<br>Date: September 9, 2008<br>Time: 2:00 p.m.<br>Place: Courtroom 9, 19th Floor |

20202979.1
Dallas 258080v3

Dallas 260378v2

## I. The Court Should Exclude Any Evidence, Testimony, Argument or Reference to Parol Evidence of the Meaning of the Agreements Between Players Inc. and EA, or Any Other Third-Party Licensing Agreement.

Plaintiffs intend to introduce licensing agreements between Players Inc. and EA, and licensing agreements between Players Inc. and Topps at trial. Plaintiffs believe that Defendants will attempt to introduce extrinsic evidence to show what the contracting parties intended while drafting the contract, notwithstanding the plain meaning of each contract. The Court should preclude the introduction of this improper parol evidence.

### A. The Contracts Are Facially Unambiguous; Thus, Parol Evidence is Improper.

The Third-Party License Agreements are facially unambiguous, and include retired players within their ambit. The following excerpt is taken from the 2005 EA Agreement, at section 1(A) (Hilbert Decl., Dkt. No. 311, Ex. D):

> PLAYERS INC represents that . . . the NFLPA has been duly appointed and is acting on behalf of the football players of the National Football League who have entered into a Group Licensing Authorization, either in the form attached hereto as Attachment "A" or through the assignment contained in Paragraph 4(b) of the NFL Player Contract, which have been assigned to PLAYERS INC . . . Licensee acknowledges that PLAYERS INC also on occasion secures authorization for inclusion in PLAYERS INC licensing programs from players, including but not limited to retired players, who have not entered into such Group Licensing Authorization, but who, nevertheless, authorize PLAYERS INC to represent such players for designated PLAYERS INC licensed programs.

The following excerpt is taken from the same Agreement, at section 13:

> NON-INTERFERENCE. Except as otherwise provided for herein, Licensee agrees and acknowledges that it shall not secure or seek to secure, directly from any player who is under contract to an NFL club, is seeking to become under contract to an NFL club, or at any time in the past was under contract to an NFL club, or from such player's agent, permission or authorization for the use of such player's name, facsimile signature, image, likeness (including, without limitation, number), photograph or biography in conjunction with the licensed product(s) herein.

The following excerpt is taken from the 2004 Topps Agreement, at section 1(A) (Hilbert Decl., Dkt. No. 311, Ex. U):

> NFLPA represents that the NFLPA has been duly appointed and is acting on behalf of the active and retired players of the National Football League who have entered into a Group Licensing Assignment, either in the form attached hereto as

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 260378v2

2

> Attachment "A" or through the assignment contained in Paragraph 4(b) of the NFL Player Contract, and that in such capacity NFLPA has the right to grant rights and licenses described herein. Licensee acknowledges that NFLPA also on occasion secures authorization for inclusion in NFLPA licensing programs from players, including but not limited to retired players, who have not entered into such Group Licensing Assignment, but who, nevertheless, authorize NFLPA to represent such players for designated NFLPA licensed programs.

Here, the Court or the jury can discern the meaning of these contracts from the plain language of the contracts. The contracts do not employ technical terms or words of art. Both contracts refer to retired players, and contemplate retired players who have signed GLAs in the grant of licensing rights. Thus, the Court should consider these contracts unambiguous. *See Burbridge v. Howard Univ.*, 305 A.2d 245, 247 (D.C. 1973) (noting that a contract is unambiguous "where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends."); *Stuarts Draft Shopping Ctr., L.P. v. S-D Assocs.*, 468 S.E.2d 885, 888-89 (Va. 1996) ("[M]ere disagreement about the meaning of otherwise unambiguous language does not make it ambiguous."); *id.* at 888 (noting that the "indispensable elements" of an ambiguous contract includes language that "admits of being understood in more than one way or refers to two or more things simultaneously . . . or is difficult to comprehend, is of doubtful import, or lacks clearness and definiteness.").[1]

Because the contracts are facially unambiguous, their plain language should be relied upon as providing the best objective manifestation of the parties' intent. *Bolling Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 475 A.2d 382, 385 (D.C. 1984); *Martin & Martin, Inc. v. Bradley Enters., Inc.*, 256 Va. 288, 291 (Va. 1998); *Cook v. Babbitt*, 819 F. Supp. 1, 16 (D.D.C. 1993)

---

[1] In its Order denying Defendants' motion for summary judgment, the Court suggested that a reasonable jury may find that these third-party licensing agreements include retired players on their face. See Dkt. No. 353 at 5 ("Defendants argue that the EA agreement and defendants' similar agreements with other third parties did not include retired player rights. The plain wording of that contract, however, indicates otherwise — or so a jury could reasonably conclude."); *id.* at 6 ("Defendants' arguments that this was merely "boilerplate" language and that the third-party licensees never understood their contracts to include retired player rights do not suffice. Defendants bear the burden of persuasion at this stage, and their claims are directly in conflict with the plain language of the contracts as a reasonable jury could read them."). As such, parol evidence should be excluded to further explain the intent behind these contracts.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

("Though the meaning of contracts is based on the parties' intent, it is the objective manifestations of that intent, strictly construed against the drafter, that are determinative--notwithstanding parol evidence of an alternate, subjectively intended meaning.").

### B. The EA and Topps Agreements Each Have a Merger Clause, Supporting a Finding that Parol Evidence Should Not Be Admitted.

Courts should be particularly wary of allowing admission of parol evidence when, as in the EA and Topps agreements, the agreements state that all understandings and agreements between the parties are merged in the agreement and that no party had made representations or warranties that were not expressly set forth in the agreement. *See Martin & Martin*, 256 Va. at 291; *Bowden v. United States*, 106 F.3d 433, (D.C. Cir. 1997) ("If the district court finds that the agreement is fully integrated, it may not consider extrinsic evidence about the alleged prior oral agreement, since the subject of that agreement clearly falls 'within the scope' of the written agreement."); 2004 EA Agreement § 18 (Hilbert Decl., Dkt. No. 311, Ex. C); 2004 Topps Agreement § 16 (Hilbert Decl., Dkt. No. 311, Ex. U). These contracts are integrated on their faces; thus, the Court should prevent Defendants from introducing parol evidence to reflect an intent contrary to that on the face of these agreements.

### C. Defendants' Evidence Contradicts the Face of the Agreements, and Should Be Excluded

Even if the Court were inclined to allow limited parol evidence, such evidence is only helpful insofar as it clarifies the terms of a contract. As a result, Courts regularly exclude purported parol evidence if it contradicts the face of the agreement. *See Anden Group v. Leesburg Joint Venture*, 377 S.E.2d 452, 458 (Va. 1989) ("The law on parol evidence is clear. It may not be admitted to contradict or vary the clearly expressed terms of a written agreement."); *Am. Fed'n of Gov't Employees, Local 2924 v. Fed. Relations Labor Auth.*, 470 F.3d 375, 383 (D.C. Cir. 2006) ("The Authority plainly erred in considering parol evidence that directly

contradicts the unambiguous meaning of the contractual terms."). Defendants intend to introduce extrinsic evidence that the third-party licensing agreements do not include retired players, which contradicts the plain language of those contracts. *See* Defs.' MSJ Br., Dkt. No. 300, at 21-23 (referencing statements from NFLPA staff counsel and third-party companies that retired player rights were not including in the third-party licensing agreements). The Court should exclude such extrinsic evidence.

## II. Conclusion

Plaintiffs respectfully request that the Court grant its Motions in Limine.

Dated: August 19, 2008

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Ryan S. Hilbert
Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
Noel S. Cohen (SBN 219645)
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
Lewis T. LeClair (SBN 077136)
Jill Adler Naylor (SBN 150783)
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

# PROOF OF SERVICE

I, Daniel Q. Crim, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 1001 Page Mill Road, Building 2, Palo Alto, CA 94304-1006. On August 19, 2008, I served the following documents:

1. **Plaintiffs' Motion In Limine No. 1, Requesting Exclusion Of Evidence And Argument Related To Bernard Parrish;**

2. **Plaintiffs' Motion In Limine No. 2, Requesting Exclusion Of Evidence Or Argument Relating To The Possibility Of Suing Additional Parties For Relief;**

3. **Plaintiffs' Motion In Limine No. 3, Requesting Exclusion Of Evidence And Argument Related To Mr. Adderley's Purported Fiduciary Relationship With Members Of Retired Professional Football Players For Justice;**

4. **Plaintiffs' Motion In Limine No. 4, Requesting Exclusion Of Parol Evidence Tending To Prove The Intent Of The Parties To Third-Party Licensing Agreements;**

5. **Plaintiffs' Motion In Limine No. 5, Requesting Exclusion Of Evidence Or Argument Relating To Dismissed Causes Of Action And The Uncertified Putative Class;**

6. **Plaintiffs' Motion In Limine No. 6, Requesting Exclusion Of Evidence And Arguments Of Legal Conclusions Made By Herb Adderley; and**

7. **Plaintiffs' Motion In Limine No. 7, Requesting Exclusion Of Evidence, Testimony And Argument Related To The Nfl Sponsorship And Internet Agreement.**

☐ By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail, addressed as set forth below.

☐ By transmitting via facsimile the document listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ By placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for overnight delivery.

☒   By electronic mail to the below email addresses:

| Jeffrey L. Kessler, Esq.<br>David G. Feher, Esq.<br>Eamon O'Kelly, Esq.<br>David Greenspan, Esq.<br>Dewey & LeBoeuf LLP<br>1301 Avenue of the Americas<br>New York, NY 10019-6092<br>Email: jkessler@dl.com; dfeher@dl.com;<br>dgreenspan@dl.com; jclark@dl.com;<br>rtaub@dl.com; MDonovan@dl.com;<br>ipapendick@dl.com; lcaplan@dl.com | Kenneth L. Steinthal, Esq.<br>Joseph Wetzel, Esq.<br>Weil, Gotshal & Manges, LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>Email: bruce.meyer@weil.com;<br>Joseph.Wetzel@weil.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 19, 2008, at Palo Alto, California.

_____
Daniel Q. Crim

Todd Padnos (Bar No. 208202)
tpadnos@dl.com
DEWEY & LEBOEUF LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Tel: (415) 951-1100; Fax: (415) 951-1180

Jeffrey L. Kessler (*pro hac vice*)
jkessler@dl.com
David G. Feher (*pro hac vice*)
dfeher@dl.com
David Greenspan (*pro hac vice*)
dgreenspan@dl.com
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 259-8000; Fax: (212) 259-6333

Kenneth L. Steinthal (*pro hac vice*)
kenneth.steinthal@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000; Fax: (650) 802-3100

Bruce S. Meyer (*pro hac vice*)
bruce.meyer@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000; Fax: (212) 310-8007

Attorneys for Defendants National Football League Players Association
and National Football League Players Incorporated d/b/a Players Inc

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC,<br><br>Defendants. | Case No. C 07 0943 WHA<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 4** |

# PRELIMINARY STATEMENT

Through their Motion in Limine No. 4 ("Mot. No. 4"), Plaintiffs seek to prevent Defendants from putting on their defense by moving to exclude the most critical and relevant evidence in this case – testimony by the contracting parties as to whether the third party license agreements at issue conveyed the intellectual property rights of GLA Class Members. Plaintiffs themselves relied on such parol evidence (primarily in the form of distortions of former Players Inc President Doug Allen's deposition testimony) in the Third Amended Complaint and in opposing Defendants' Motion for Summary Judgment, but now proclaim that the license agreements are so clear on their face that any parol evidence must be excluded. See Third Amended Complaint ("TAC") ¶¶ 22, 24, 33 (Nov. 15, 2007); Pls.' Opp'n to Defs.' Mot. for Summ. J. at 8, 10-11, 25, 26 (July 1, 2008). Plaintiffs' position is particularly disingenuous since the Court's Order Denying Defendants' Motion for Summary Judgment relied on the parol evidence that Plaintiffs had presented to the Court, and expressly placed the question of whether Defendants' license agreements conveyed retired player licensing rights as a factual issue in the hands of the jury. See Order Denying Defs.' Mot. for Summ. J. ("Order") at 5-6.

Plaintiffs' Motion No. 4 is an attempt to preclude Defendants' most important evidence, and to exclude from trial the testimony of third party licensees who have unanimously attested that the license agreements at issue did <u>not</u> convey retired players' licensing rights. For example, Plaintiffs would have the Court exclude the following highly probative testimony of EA and Topps:

> "Well, my understanding of what NFL players referred to on the last line of page 1 of [the 2005 agreement between Electronic Arts, Inc. ("EA") and Players Inc] was active NFL players.... Now, you – you may not – you know you may not like that understanding, but I'm telling you, sir, that's my understanding of what it meant."[1]
>
> \* \* \*
>
> Q: Did you have occasion to read that language in paragraph 2-A of the [2004 Topps Agreement]?
> A: Yes.
> Q: And when it says that it is granting a license to the "NFL Players referenced in paragraph 1-A above," what did you understand that phrase to include ... if you had any understanding?

---

[1] Defs.' Mot. for Summ. J. at 22 (June 13, 2008) (quoting Rule 30(b)(6) Deposition of EA's Joel Linzner).

A: Active players.[2]

In fact, if the jury concludes that the parties to the license agreements (i.e., Defendants and the licensees) both intended and understood that their agreements conveyed only active players' licensing rights, such a finding would be dispositive of that issue as a matter of law.[3] The extrinsic evidence that is the subject of Plaintiffs' Motion No. 4 is thus not only relevant and admissible, it is critical to Defendants' ability to have a full and fair opportunity to defend themselves at trial.

**ARGUMENT**

It is "elementary that the [parol evidence] rule does not apply when the writing is on its face ambiguous, vague or indefinite . . . . In such a case, parol evidence is always admissible . . . to establish the real contract between the parties." Shockey v. Westcott, 189 Va. 381, 389 (1949); Sundown, Inc. v. Canal Square Assocs., 390 A.2d 421, 432 (D.C. 1978). A written contract "is ambiguous when . . . it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings . . . ." Sundown, 390 A.2d at 432.

As set forth in Defendants' Motion for Summary Judgment, Defendants believe that the language of the EA, Topps and other license agreements at issue is consistent with the understanding of the parties that retired players' licensing rights were not included in the "grant of rights" clauses in those agreements, but the Court has ruled that Defendants did not meet their "burden of persuasion at this stage." Order at 6. At the very least, therefore, the language of the license agreements must be held to be susceptible to more than one reasonable interpretation as to whether the rights of GLA Class members were conveyed.

The first sentence of Paragraph 1(A), the boilerplate contractual provision primarily relied upon by Plaintiffs to support their argument that the license agreements at issue conveyed the rights of GLA Class members, states as follows:

> Players Inc represents that it is a licensing affiliate of the [NFLPA]; that the NFLPA has been duly appointed and is acting on behalf of the football players of the

---

[2] Defs.' Mot. for Summ. J. at 22 (quoting Rule 30(b)(6) Deposition of Topps's Adam Zucker).
[3] See id. at 20-21.

> National Football League who have entered into a Group Licensing Authorization, either in the form attached hereto as Attachment "A" or through the assignment contained in Paragraph 4(b) of the NFL Player Contract, which have been assigned to Players Inc; <u>and that in such capacity Players Inc has</u> the right to negotiate this contract and <u>the right to grant rights and licenses described herein.</u>

Order at 5 (quoting 2005 EA Agreement) (emphasis added). As the Court held in its Order, it is undisputed that this first sentence of Paragraph 1(A) refers only to <u>active</u> players' licensing rights. See id. at 5. This fact alone establishes that there is at least a reasonable interpretation that only active player rights were licensed in the 2005 EA Agreement since, after representing that "the NFLPA has been duly appointed and is acting on behalf of the [active] football players of the National Football League," Players Inc represents "<u>that in such capacity</u>" it has "<u>the right to grant rights and licenses described herein.</u>" Id.[4]

The second sentence of Paragraph 1(A), which is the same in all of the license agreements at issue, further supports a reasonable interpretation that retired player rights were <u>not</u> conveyed through these license agreements:

> <u>Licensee acknowledges</u> that Players Inc also <u>on occasion</u> secures authorization for inclusion in Players Inc licensing programs from players, including but not limited to retired players, who have not entered into such Group Licensing Authorization, but who, nevertheless, authorize Players Inc to represent such players for <u>designated</u> Players Inc licensed programs.

Id. (emphasis added). Plaintiffs argue, and the Court held, that "a jury could reasonably conclude that" the reference "to retired players, who have not entered into [active player GLAs], but who, nevertheless, authorize Players Inc to represent such players for designated Players Inc licensed programs," is a reference to retired players who signed the Adderley GLA. But unlike the first sentence in Paragraph 1(A), this sentence is not a representation by Players Inc and does <u>not</u> refer to "the right to grant rights and licenses"; it is merely an "<u>acknowledge[ment]</u>" by the "<u>Licensee.</u>" Id.

Indeed, Defendants' reasonable interpretation that retired player rights are <u>not</u> being conveyed is supported by the language of the second sentence of Paragraph 1(A), which only refers to the fact that Players Inc "<u>on occasion</u>" secures authorization to include some retired

---

[4] Plaintiffs have presented the Court with one 2004 license agreement between Topps and the NFLPA that has slightly different language in the first sentence of Paragraph 1(A). See Mot. No. 4 at 2. Defendants address that language below, but note here that the relevant terms of the rest of the 2004 Topps Agreement is the same as the 2005 EA and other license agreements at issue.

players in certain "designated" programs. At a minimum, this language is ambiguous as to whether it was intended to refer to a general grant of rights (i.e., not "on occasion") through the non-program specific Adderley GLA (i.e., not just for "designated Players Inc licensed programs"). Id. This ambiguity is further supported by the fact that it would make no sense for Defendants to so inaptly describe the Adderley GLA when they could have expressly referenced the "Retired Player Group Licensing Authorization Form," or simply appended it to the license agreements, as Defendants did with the active player GLA form. Paragraph 1(A)'s reference to Players Inc, "on occasion," acquiring retired player rights for inclusion in "designated Players Inc licensed programs" can thus be reasonably construed as merely a reference that retired players' licensing rights may be acquired by Players Inc "on occasion" for inclusion in "designated" ad hoc licensing programs. In fact, in response to Plaintiffs' prior use of the very type of parol evidence that they now seek to exclude, this Court previously held that:

> Allen's testimony, however, does not foreclose defendants' interpretation of the agreement because it could still indicate that the language referred to retired players who were parties to different agreements. It may well turn out that defendants' interpretation of this agreement is the correct one . . . .[5]

Defendants' reasonable interpretation of the license agreements is also strongly supported by Paragraph 2(A) – the granting of rights paragraph – which only "grants to Licensee . . . the right, license and privilege of utilizing the . . . names, likenesses (including, without limitation, numbers), pictures, photographs, voices, facsimile signatures and/or biographical information…of the NFL players referenced in Paragraph 1(A) above." 2004 Topps Agreement, ¶ 2(A) (Decl. of Ryan Hilbert in Support of Pls.' Opp'n to Defs.' Mot. for Summ. J., Ex. U (July 1, 2008) (emphasis added)). It is not at all "clear," as Plaintiffs argue, that "the NFL players referenced in Paragraph 1(A) above" refers to retired players. To the contrary, only active players are referred to in Paragraph 1(A) as "the football players of the National Football League." See id.; see also supra p. 1-2 (EA and Topps witnesses testifying that they understand that "the NFL players referenced in Paragraph 1(A) above" meant only active NFL players).

Nor is Defendants' interpretation inconsistent with the reference to "retired players" in

---

[5] Order Granting in Part and Denying in Part Pls.' Mot. for Leave to File an Amended Complaint at 6 (Nov. 14, 2007) (emphasis added).

the non-interference provisions of the license agreements cited by the Court in its summary judgment decision. Order at 6. That provision simply indicates that if a company, like Topps, wanted to add retired players to its Licensed Products it would have to do so through "designated" ad hoc license agreements with Players Inc – exactly what happened in this case. See Defs.' Mot. for Summ. J. at 8.

Plaintiffs have also ignored the "Approvals" provision that appears in all 96 of the license agreements at issue. This provision at a minimum supports a reasonable interpretation in which the rights of retired players were <u>not</u> being conveyed:

> <u>The list of players for whom Players Inc has group licensing authorization</u> (the "Player Agreement Report") <u>is available to the Licensee via the Internet at www.nflplayers.com/licensee</u>. . . . <u>In addition</u>, Players Inc may secure authorization from players <u>not listed on the Player Agreement Report, including</u> but not limited to <u>retired players</u>.

Defs.' Mot. for Summ. J. at 20 (quoting 2005 EA Agreement ¶ 12) (emphases added). The language of this provision refers licensees to a website containing the names of the players whose rights were licensed, and it is <u>undisputed</u> that this website contained only the names of players who had signed the <u>active</u> player GLA form.[6] The undisputed absence of all GLA Class members from the "Player Agreement Report" confirms the need for parol evidence since there is nothing in the language of any of these agreements to identify to EA, Topps, or other licensees which retired players' rights they had allegedly paid to acquire if, in fact, such rights were acquired. Plaintiffs' interpretation of the license agreements would mean that dozens of licensees collectively paid multiple tens of millions of dollars to acquire the rights to GLA Class members when they did not know which retired players had signed GLAs or conveyed their rights. At the very least, this unreasonable interpretation of ambiguous language is open to challenge through parol evidence.

Plaintiffs' interpretation of the license agreements also presents a host of additional ambiguities that compel the admission of parol evidence. For example, Plaintiffs' position that the boilerplate "retired player" reference had the effect of licensing retired players' rights would have the unreasonable consequence – evident from the face of the agreements – that retired

---

[6] See Defs.' Mot. for Summ. J. at 20 n.58.

players were licensed in 21 agreements for fantasy football products and two agreements covering rookie trading cards.[7] Retired players, by definition, cannot be included in such products. Similarly, Plaintiffs' interpretation of the license agreements would mean that dozens of licensees paid twice to acquire the rights of certain GLA Class members (i.e., once through the license agreements allegedly conveying all GLA Class members' rights, and a second time through ad hoc licensing deals). See, e.g., Defs.' Mot. for Summ. J. at 24-25.

Plaintiffs' ever-changing factual allegations further confirm that it is not at all "clear" that the license agreements conveyed retired player rights. For example, Plaintiffs argue in their Motion in Limine No. 2 that EA "scrambled" retired players' images in its video games "to narrowly avoid actual usage of the retired players' identities in an effort to avoid having to pay licensing fees." Pls.' Mot. in Limine No. 2 at 2. But if EA was scrambling retired players' identities "to avoid having to pay licensing fees," then EA would not have paid to acquire the licensing rights of such retired players under the EA Agreements. Plaintiffs cannot simultaneously argue that it is crystal clear that the EA license agreements in fact paid for the conveyance of GLA Class members' rights so that parol evidence on this issue should not be considered.

Plaintiffs' reliance on a sentence fragment from the 2004 Topps Agreement about the NFLPA "acting on behalf of the active and retired players" merely presents more ambiguities that must be resolved by parol evidence. Mot. No. 4 at 2-3. The full sentence from the 2004 Topps Agreement states as follows:

> NFLPA represents that the NFLPA is acting on behalf of the active and retired football players of the National Football League <u>who have entered into a Group Licensing Assignment, either in the form attached hereto as Attachment 'A' or through the assignment contained in Paragraph 4(b) of the NFL Player Contract</u>.

Id. (emphasis added). This language is ambiguous on its face since it is undisputed that there are no retired players or GLA class members "who have entered into a Group Licensing Assignment, either in the form [attached to the 2004 Topps Agreement] or through the

---

[7] See Defs.' Mot. for Summ. J. at 23-24.

assignment contained in Paragraph 4(b) of the NFL Player Contract."[8] Both of these forms were for active player GLAs.

Finally, there is no merit to Plaintiffs' assertion that the Court should be "wary" of admitting parol evidence because of the presence of "merger" clauses in the license agreements. As Plaintiffs' own "authorities" make clear, the existence of a merger clause only weighs against the use of parol evidence to try to show that there are additional promises or warranties not stated in the written agreement.[9] These cases do not deal at all with the present situation, where parol evidence is being offered to assist the fact finder in deciding the meaning of language already in agreements that are, at the very least, ambiguous and susceptible to more than one reasonable interpretation.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion in Limine No. 4 should be denied in its entirety.

Date: October 8, 2008

DEWEY & LEBOEUF LLP

BY: /s/ Jeffrey Kessler
Jeffrey L. Kessler
*Attorneys for Defendants*

---

[8] See Order at 5.

[9] See Mot. No. 4 at 4 (citing Bowden v. United States, 106 F.3d 433, 439-40 (D.C. Cir. 1997) (court held "merger" clause did not necessarily preclude parol evidence) and Martin & Martin, Inc. v. Bradley Enters., Inc., 256 Va. 288, 291 (Va. 1998) (excluding extrinsic evidence regarding an alleged oral promise to include a warranty of annual sales because "[t]he agreement does not contain a warranty of the amount of gross sales that the store generated annually, and, thus, the plaintiff may not seek to establish such warranty with parol evidence")).