Parrish et al v. National Football League Players Incorporated Doc. 445

Todd Padnos (Bar No. 208202)
*tpadnos@dl.com*
DEWEY & LEBOEUF LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Tel: (415) 951-1100; Fax: (415) 951-1180

Jeffrey L. Kessler *(pro hac vice)*
*jkessler@dl.com*
David G. Feher *(pro hac vice)*
*dfeher@dl.com*
David Greenspan *(pro hac vice)*
*dgreenspan@dl.com*
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 259-8000; Fax: (212) 259-6333

Kenneth L. Steinthal *(pro hac vice)*
*kenneth.steinthal@weil.com*
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000; Fax: (650) 802-3100

Bruce S. Meyer *(pro hac vice)*
*bruce.meyer@weil.com*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000; Fax: (212) 310-8007

Attorneys for Defendants National Football League Players Association and National Football League Players Incorporated d/b/a Players Inc.



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III,

Plaintiffs,

v.

NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC,

Defendants.

Case No. C 07 0943 WHA

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR POSITION ON DISPUTED JURY INSTRUCTIONS**



Dockets.Justia.com

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Paragraph 2(c) of "Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases before The Honorable William Alsup" ("Pretrial Guidelines"), the National Football League Players Association ("NFLPA") and National Football League Players Incorporated ("Players Inc.") (collectively "Defendants") submit the following memorandum in support of their position on disputed jury instructions.

**Disputed Instruction No. 1 Re Description of GLA Class Claims and Parties**

Plaintiffs' proposed instruction No. 1 provides the jury with a woefully inaccurate and incomplete description of the parties and the claims at issue in this case and, therefore, should be rejected. For instance, Plaintiffs include two full paragraphs describing who Plaintiffs are and the class they represent, but fail to provide any description at all of Defendants. Defendants' proposed instruction includes a fair and neutral description of Defendants (i.e., that the NFLPA is a labor union and that Players Inc. is a subsidiary of the NFLPA) and should be included.

Next, Plaintiffs' proposed instruction refers to the Retired Player Group Licensing Authorization forms only as the "GLAs." Plaintiffs ignore that the actual and proper title on the face of the retired player GLAs is "Retired Player Group Licensing Authorization." It is especially important that the instructions refer to the retired player GLAs by their proper name because two types of GLAs will be discussed in this case - the active player GLAs and the retired player GLAs. It would confuse the jury on this point if the retired player GLAs were not described by their correct title - "Retired Player GLAs." Defendants' proposal avoids any confusion and should be adopted throughout the instructions.

Finally, Defendants' instruction should be adopted because it properly instructs the jury that Plaintiffs are not seeking any damages in connection with the "ad hoc" or individual license agreements for retired player rights. Indeed, this Court has repeatedly held that the "ad hoc" revenues are not at issue in this case. See, e.g., Order on Pls.' Mot. for Class Certification, R. Doc. 275, Apr. 29, 2008, at 9-10 ("Class Certification Order"). Moreover, Plaintiffs themselves have stated on various occasions that they are not asserting



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

any claim regarding the ad hoc agreements. See, e.g., Pls.' Opp'n to Defs.' Mot. to Decertify, R. Doc. 371, Aug. 21, 2008, at 6-10. Thus, Plaintiffs are now estopped from asserting any theory that they are owed any moneys generated by or in connection with Defendants' ad hoc licensing of retired players' rights. If the jury is not instructed accordingly, i.e., that it may not award Plaintiffs damages with respect to the ad hoc agreements, then there will be a significant risk of juror confusion. Defendants' proposed instruction No. 1 correctly addresses this issue.

**Disputed Instruction No. 2 Re Burden of Proof – Breach of Contract**

In their proposed instruction on the burden of proof for breach of contract, Plaintiffs seek to avoid the requirement that they ultimately must provide – even in a class action – individual proof of injury and damages for each member of the class. This principle is well-settled and must be included in any jury instruction on this issue to prevent reversible legal error. Kline v. Coldwell, Banker & Co., 508 F.2d 226, 236 n.8 (9th Cir. 1974) ("It has been suggested that generalized proof of damages might suffice under Rule 23. But the rule does not eliminate the ultimate need for individual proof of damages by each member of the class."); Abuan v. General Elec. Co., 3 F.3d 329, 334 (9th Cir. 1993) ("It is clear that at some point in the litigation Plaintiffs would be required to prove individual causation and damages."); Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1200 (6th Cir. 1988) ("Although such generic and individual causation may appear to be inextricably intertwined, the procedural device of the class action permitted the court initially to assess the defendant's potential liability for its conduct without regard to the individual components of each plaintiff's injuries. However, from this point forward, it became the responsibility of each individual plaintiff to show that his or her specific injuries or damages were proximately caused by ingestion or otherwise using the contaminated water. We cannot emphasize this point strongly enough because generalized proofs will not suffice to prove individual damages."); Cannon v. Tex. Gulf Sulphur Co., 55 F.R.D. 306, 307 (S.D.N.Y. 1971) ("If it was, potential liability would be established, leaving only the issue of reliance and damages to be determined as to the individual plaintiffs.") (emphasis added). The Court, therefore,

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

must adopt Defendants' proposed instruction, to ensure that the jury follows the law.

Moreover, Plaintiffs' proposed instruction on the "preponderance of the evidence" is far too lengthy and redundant, and crafted in a biased way to Plaintiffs' benefit. For example, Plaintiffs have omitted the points in the Standard Civil Jury Instructions for the District of Columbia (2008) ("D.C. Standard Instructions") that a plaintiff has not met its burden if the evidence is evenly balanced, and that a plaintiff must prove every element of its claim to prevail. Defendants submit that the proper approach is the one reflected in the model jury instructions set out by the Ninth Circuit and the Fifth Circuit, which are far shorter, fairer, easier to understand, and less likely to confuse the jury on this point.[1]

**Disputed Instruction No. 3 Re Breach of Contract Claim**

Plaintiffs' instruction on their breach of contract claim is legally in error because it suggests that the jury may award compensatory (other than nominal) damages even if the jury finds that the only breach committed by Defendants is immaterial. The jury might find that Defendants' failure to establish an escrow account constituted a breach, but Defendants' failure was not a material breach because no monies were owed to the GLA Class members to put into such an escrow account. If that is the jury's conclusion, then no damages - other than nominal damages - may be awarded.

Plaintiffs have only provided an expert damages study based on a jury finding that Defendants failed to pay GLA Class members certain revenues from the GLR pool. See Report of Philip Y. Rowley, May 23, 2008 (Attached as Ex. 1 to the Decl. of Roy Taub in

[1] See, e.g., Ninth Circuit Manual of Model Civil Jury Instructions, No. 1.3 (2007) ("When a party has the burden of proof on any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it."); Fifth Circuit Pattern Jury Instructions – Civil, No. 2.20 (2006) ("In this case, the plaintiff must prove every essential part of his claim by a preponderance of the evidence. A preponderance of the evidence simply means evidence that persuades you that the plaintiff's claim is more likely true than not true. In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. If the proof fails to establish any essential part of the plaintiff's claim by a preponderance of the evidence, you should find for the defendant as to that claim.").



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Supp. of Defs.' Mem. in Supp. of their Position on Disputed Jury Instructions, Oct. 8, 2008 ("Taub Decl.")). Plaintiffs have not alleged (let alone provided any purported expert or other evidentiary support for) any damages claim with respect to the mere failure to create an escrow account that would have had no funds. Nor could there possibly be anything but nominal damages (at most) for Defendants' failure to create an escrow account that would have contained no funds.

Accordingly, if the jury finds that Defendants' only breach was the non-creation of the escrow account, that breach would be immaterial and Plaintiffs would have no damages claim. It is well-settled that a plaintiff is entitled only to a nominal sum when he cannot with reasonable certainty prove actual damages. Garcia v. Llerena, 599 A.2d 1138, 1142 (D.C. 1991) ("Where the plaintiff proves a breach of contractual duty but the proof of damages is vague or speculative, he is entitled only to nominal damages.").

Defendants' proposed instruction properly addresses this issue in accordance with D.C. law. By contrast, Plaintiff's proposed instruction is designed to confuse the jury and prompt an award of damages even in the absence of a breach for which Plaintiffs claim damages.

**Disputed Instruction No. 4 Re Breach of Covenant of Good Faith and Fair Dealing**

The Court should reject in its entirety Plaintiffs' proposed instruction on breach of the implied covenant of good faith and fair dealing. "A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). See also Gen. Elec., Inc. v. Taalohimoineddin, 579 A.2d 729, 734 (D.C. 1990) ("Truck driver was not entitled to instruction concerning traffic regulations for passing on the right in personal injury action brought by taxicab driver absent any evidence that cab driver was passing truck on the right or even attempted to pass it either before or during collision."). Plaintiffs have never asserted in any of their four complaints any claim for breach of the implied covenant of good faith and fair dealing. Nor have Plaintiffs even attempted to advance any evidence in support of such a claim, especially since it was first announced in the parties' pre-trial exchanges, which took

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

place on August 27, 2008, over three months after the close of fact discovery.

In the exact same situation, a District Court rejected a plaintiff's request to instruct the jury on breach of the implied covenant of good faith and fair dealing where its numerous complaints never pleaded such a claim or contained any reference to it. See Travel Ctr. of Fairfield County, Inc. v. Royal Cruise Line Ltd., 154 F. Supp. 2d 281, 289 (D. Conn. 2001) ("Given that four iterations of the complaint have been filed in this case, the Court does not think it overly onerous to require that plaintiff include all its relevant substantive claims in the final version, instead of confronting the defendant with a new theory of liability at trial, after the opportunity for discovery has passed."). Indeed, even the model jury instruction that Plaintiffs originally cited as supporting authority, and then withdrew one week ago, provides that "[t]his instruction should be given only when the plaintiff has brought a separate cause of action for breach of the covenant of good faith and fair dealing." Judicial Council of California Civil Jury Instructions, No. 325 (2008) (emphasis added).

Furthermore, breach of the implied covenant is not a cognizable independent cause of action when the allegations are identical to other claims for relief under an established cause of action. Jacobson v. Oliver, 201 F. Supp. 2d 93, 98 n. 2 (D.D.C. 1996) ("[A] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are 'identical to' a claim for 'relief under an established cause of action.'" (quoting Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 92 (3d Cir. 2000)); see also Wash. Metro. Area Transit Auth. v. Quik Serve Foods, Inc., Civil Nos. 04-838(RCL), 04-687(RCL), 2006 WL 1147933, at *5 (D.D.C. Apr. 28, 2006). That is necessarily the case here, where Plaintiffs' complaint contains no separate allegations for such a claim.

Moreover, Plaintiffs' proposed instruction selectively omits a black-letter principle of law that vitiates any breach of implied covenant claim here – that "the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract." California Civil Jury Instructions, supra, No. 325. But this is exactly what Plaintiffs are attempting to do by asking the jury to imply terms in the Retired Player



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

GLA that are inconsistent with what the contract itself provides. Plaintiff Herb Adderley, the lone GLA Class representative, testified that – like Defendants – he did not interpret the GLA, as written, to provide for an equal share of active player group licensing revenues. See Adderley Depo. 96:13-18, Feb. 20, 2008 (Taub Decl., Ex. 2). Plaintiffs cannot now ask the jury to imply those terms into existence. See, e.g., Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 349-350 (2000) ("[The implied covenant of good faith and fair dealing] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."); Racine & Laramie, Ltd. v. Dept. of Parks & Recreation, 11 Cal. App. 4th 1026, 1032 (Cal. Ct. App. 1992) ("If there exists a contractual relationship between the parties, as was the case here, the implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract.").[2]

In the event the Court is inclined to give some instruction with respect to breach of the implied covenant of good faith and fair dealing, Defendants maintain that Plaintiffs' proposed instruction is improper and an alternate instruction should be given. The instruction should make clear to the jury that the implied covenant of good faith and fair dealing cannot create new obligations not bargained for in the Retired Player GLA, and is aimed instead at ensuring that "'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract'" that had been bargained. Paul v. Howard Univ., 754 A.2d 297, 310 (D.C. 2000) (quoting Hais v. Smith, 547 A.2d 986, 987 (D.C. 1988)). The instruction should also make clear to the jury that the burden of proof is on Plaintiffs, as well as clarify the full nature of Plaintiffs' claim. Thus, any instruction with respect to a claim for breach of the implied covenant of good faith

[2] Defendants have not located, after a diligent search, any decisions applying D.C. law concerning this principle. However, the Ninth Circuit has held, in a decision affirming the rejection of a party's request for an instruction for breach of the implied covenant of good faith and fair dealing, that "[u]nder New York law, or any other jurisdiction, an implied covenant theory does not give a court permission to supply additional terms to a contract for which the parties have not bargained." Monotype Corp. PLC v. Int'l Typeface Corp., 43 F.3d 443, 453 (9th Cir. 1994) (emphasis added).



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

and fair dealing should properly read as follows:

> In every contract or agreement, there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract that had been bargained; however, the implied promise of good faith and fair dealing cannot create obligations that were not contemplated by the parties to the contract.[3]
>
> Plaintiffs claim that Defendants violated their duty to act fairly and in good faith by not granting each GLA Class member an equal share of revenues from the GLR pool. Defendants deny that there was any breach of an implied covenant of good faith and fair dealing and claim that the GLR pool contained only moneys that were generated by and related to active player licensing only, and thus it is unrelated to the Retired Player GLA.
>
> To establish their claim for breach of the covenant of good faith and fair dealing, Plaintiffs must prove by a preponderance of the evidence all of the following elements:
>
> 1. That Plaintiffs did all, or substantially all of the significant things that the Retired Player GLAs required them to do, or that they were excused from having to do those things;
> 2. That all conditions required for Defendants' performance had occurred;
> 3. That Defendants unfairly interfered with Plaintiffs' right to receive the benefits of the Retired Player GLA; and
> 4. That each of the GLA Class members was harmed by Defendants' conduct.[4]

**<u>Disputed Instruction Nos. 5 and 6 Re Interpreting the Terms of the Retired Player GLA Contract</u>**

Plaintiffs propose two instructions on construing the terms of the Retired Player GLAs – Instructions Nos. 5 and 6. Both are misleading and prejudicial, and should be

---

[3] <u>California Civil Jury Instructions</u>, <u>supra</u>, No. 325 (modified to correspond with present facts); <u>Monotype</u>, 43 F.3d at 453 ("Under New York law, <u>or any other jurisdiction</u>, an implied covenant theory does not give a court permission to supply additional terms to a contract for which the parties have not bargained.") (emphasis added); <u>Guz</u>, 24 Cal. 4th at 349-350 ("It [the implied covenant of good faith and fair dealing] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."); <u>Racine & Laramie</u>, 11 Cal. App. 4th at 1032 ("If there exists a contractual relationship between the parties, as was the case here, the implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract.").

[4] <u>Judicial Council of California Civil Jury Instructions</u>, No. 325 (2008) (modified to correspond with present facts); <u>Paul v. Howard Univ.</u>, 754 A.2d 297, 310 (D.C. 2000).



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

rejected.

To start, two types of contracts are at issue in this action – the Retired Player GLAs and Defendants' third-party license agreements. Plaintiffs nonetheless propose instructions on contract interpretation that do not in any way distinguish between these two types of agreements. However, the Retired Player GLAs and Defendants' license agreements are subject to different rules of contract construction because of the different circumstances that they present. See infra discussion pp. 13-15. Thus, to avoid any juror confusion about which rules apply to which contracts, Disputed Instruction No. 5 and, if adopted, Disputed Instruction No. 6, which provide the rules for construing the Retired Player GLAs, must include distinct references to the "Retired Player GLA," which Plaintiffs have refused to include.

Moreover, Plaintiffs' Disputed Instruction No. 5 is a complete misstatement of the law as it applies to the facts in this case. Specifically, Plaintiffs propose that the jury be instructed that "[i]t is well-established that the plain and unambiguous meaning of a contract is controlling. Intent is construed by an objective standard and evidenced from the words of the contract itself. The subjective intent of the parties is not controlling." This proposal is wholly inconsistent with the Court's prior ruling in this action that there is no "plain and unambiguous" meaning of the Retired Player GLAs. See Class Certification Order, at 3 (referring to the Retired Player GLA as a "masterpiece of obfuscation"). Plaintiffs cannot contradict this ruling now and propose that the jury decide the meaning of the Retired Player GLA without regard to extrinsic evidence, e.g., the statements and conduct of the parties with respect to the disputed provisions.[5] See Sobelsohn v. Am. Rental Mgm't Co., 926 A.2d 713, 718 (D.C. 2007) (The "general rule for contract interpretation is that if a contract is determined by the court to be ambiguous, then external evidence may be admitted to explain the surrounding circumstances and the position and actions of the parties at the time of the contracting."); Am. First Inv. Corp. v. Goland, 925 F.2d 1518, 1522 (D.C. Cir. 1991)

[5] U.S. v. Thrasher, 483 F.3d 977, 981 (9th Cir. 2007) ("Under the [law of the case] doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court…").



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

("Because the terms 'loaned amount' and 'commitment' are not free from ambiguity, the contract cannot be interpreted as a matter of law and the case must be remanded so that the fact-finder can determine the parties' true intent.").

Plaintiffs' instruction is designed to have the jury ignore extrinsic evidence that is damaging to their case. This is not a proper instruction and would constitute reversible error if given. The Court should adopt Defendants' proposed instruction, which unlike Plaintiffs' proposal, accurately states the relevant law.

Plaintiffs' Disputed Instruction No. 6 is also wrong and prejudicial. Specifically, Plaintiffs' propose that the jury be given an unqualified instruction that the Retired Player GLAs are to be construed against Defendants as the drafters. Plaintiffs' position is a major departure from D.C. law, which indicates that the jury not be given any instruction at all on this secondary rule of contract interpretation. Indeed, Defendants believe such an instruction has never been approved by any D.C. court, and the D.C. Standard Instructions provide for no such instruction.

Instead, the D.C. Standard Instructions – without any mention at all that ambiguities are to be construed against the drafter – provide that, in determining the terms of a contract, the jury should consider: (i) the contract as a whole, § 11.12, (ii) "what a reasonable person in the position of the parties would have believed was the meaning of the words," id. at § 11.13, (iii) "the circumstances that existed at the time the contract was made, including the apparent purpose of the parties in entering into the contract, the history of negotiations leading up to the contract and the statements of the parties about their understanding of the language of the contract," id., and (iv) "the statements of any agent for a party about [his] [her] actions in negotiating or drafting the contract, or about [his] [her] understanding of the contract," id. In addition, the jury may consider the "conduct of the parties in relation to those disputed words in the contract," "other evidence presented to [it] about the meaning of the provisions" and any "special meaning in accordance with the customs or usages of a particular trade or business." Id. at §§ 11.14-15.

The D.C. Standard Instructions do not include any mention that ambiguities are to



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

be construed against the drafter because, under D.C. law, that rule is strongly disfavored. The principle is only used by courts (not juries) as a last resort and only when all other rules of contract interpretation fail to resolve the ambiguities at issue: "If the court finds that the contract has more than one reasonable interpretation and therefore is ambiguous, then the court – after admitting probative extrinsic evidence – must 'determine what a reasonable person in the position of the parties would have thought the disputed language meant.'"[6] In re Bailey, 883 A.2d 106, 118 (D.C. 2005). The relevant extrinsic evidence may include "the circumstances before and contemporaneous with the making of the contract, all usages – habitual and customary practices – which either party knows or has reason to know, the circumstances surrounding the transaction and the course of conduct of the parties under the contract." Id. Then, "[o]nly if, after applying the rules of contract interpretation, the terms still are not subject to 'one definite meaning,' will the ambiguities be 'construed strongly against the drafter.'" Id. (emphasis added); see also Capital City Mortg. Corp. v. Habana Village Art & Folklore, Inc., 747 A.2d 564, 567 (D.C. 2000) (same).

It is thus not surprising that the D.C. Standard Instructions exclude any mention of the disfavored rule that ambiguities are to be construed against the drafter, since such an instruction would be inherently prejudicial to defendants. The instruction would be, in essence, a direction to the jury to adopt Plaintiffs' interpretation in lieu of Defendants' interpretation, even if the latter is more reasonable and better supported by the relevant evidence. This is not the law of the District of Columbia. Indeed, there is no support under D.C. law for Plaintiffs' proposed instruction on this issue, and the Court should reject it entirely.

---

[6] In Sagalyn v. Foundation for Preservation of Historic Georgetown, 691 A.2d 107, 112 (D.C. 1997), the court stated, "The endeavor to ascertain what a reasonable person in the position of the parties would have thought the words of a contract meant applies whether the language is ambiguous or not. [To determine whether this ambiguity exists], the reasonable person is: (1) presumed to know the circumstances surrounding the making of the contract, and (2) bound by the usages of the term which either party knows or has reason to know and the course of conduct of the parties." (citing Intercounty, Construction Corp. v. District of Columbia, 443 A.2d 29, 32 (D.C. 1982). "We also consider the intent of the parties in entering into the agreement."



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

In the event the Court is inclined to give some instruction about this rule, the instruction should direct the jury to construe ambiguities in the GLA against the drafter only in the event the ambiguities cannot first be resolved by any other rule of contract construction and only if the interpretation presented to it by Plaintiffs is reasonable.[7] Further, contrary to Plaintiffs' proposal, any instruction on this rule of last resort should under no circumstances be given to the jury before any other rule on contract interpretation. Plaintiffs' suggestion otherwise serves only to further prejudice Defendants by treating the more primary rules of construction, e.g., to consider the parties' statements and to construe the contract as a whole, as mere afterthoughts. This is a total distortion of D.C. law.

Accordingly, Defendants propose that the jury be given one instruction on construing the terms of the Retired Player GLAs (see Disputed Instruction No. 5 Offered by Defendants). If the Court decides to give the jury an instruction about construing ambiguities against the drafter (it should not), that instruction should be added at the end of Disputed Instruction No. 5, after the primary rules of contract construction in D.C., and would properly read as follows:[8]

---

[7] Sagalyn, 691 A.2d at 112-114 (the rule that ambiguities are construed against the drafter "applies only after the ordinary rules of construction have been applied and the agreement is still ambiguous;" "[h]ere, the ambiguity is resolved by reference to other rules of construction as previously discussed. Therefore, we need not apply this rule."); Wisconsin Public Power Inc. System v. F.E.R.C., 918 F.2d 225, 1990 WL 183796 at *4 (D.C. Cir. 1990) ("WPPI challenges this interpretation and argues that the Commission should have construed the Agreement against the drafter, WEPCO. But as the Commission noted, 'the mere fact that WEPCO may have drafted the contract does not automatically dictate its interpretation against WEPCO and for WPPI. Contra proferentum has never been and is not now the sole guide to interpretation."); D.C. Dept. Of Housing and Comm. Development v. Pitts, 370 A.2d 1377, 1379-80 (D.C. 1977) (rule that contract ambiguities be resolved against the drafter is a "secondary rule of contract interpretation" that "arises when 'certain other rules (of contract interpretation) have failed to give the writing one definite meaning.'").

[8] One of these primary rules of contract interpretation is that the contract must be construed reasonably and make commercial sense. Nello L. Teer Co. v. Wash. Metropolitan Area Transit Authority, 921 F.2d 300, 302 (D.C. Cir. 1990) ("The Court of Appeals emphasized the 'fundamental principle' that contract provisions be construed so as to honor the parties' reasonable expectations at the time they executed the contract."); A/S Ivarans Rederi v. U.S., 938 F.2d 1365, 1369 (D.C. Cir. 1991) ("Finally, the Commission's construction makes commercial sense. The Atlantic and Gulf Agreements were drafted together and had never



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

If, after you have considered how a reasonable person would understand the ordinary meaning of the GLA, the circumstances that existed when the GLA was made, and the conduct of the parties in performing the GLA,[9] you still have not decided how the GLA should be applied,[10] you may resolve any doubts about the meaning of a word or phrase against the party who prepared the contract, so long as the interpretation you adopt is reasonable.

You may not resolve doubts against the party who prepared the contract in a way that would lead to an unreasonable interpretation of the contract.[11]

**Disputed Instruction No. 7 Re Interpreting the Terms of Defendants' License Agreements**

Plaintiffs assert that the jury should receive no instruction at all about how to construe Defendants' license agreements. Instead, Plaintiffs argue that instructions on contract interpretation should refer generically to "contracts" without distinguishing in any way between the two types of contracts at issue – the Retired Player GLAs and Defendants' license agreements. However, the Retired Player GLAs and Defendants' license agreements are subject to completely different rules of contract construction because of their different

---

overlapped before. The Commission wisely decided on a construction that would preserve commercial expectations by preserving the agreements' symmetry.").

[9] D.C. Standard Instructions § 11.13 (modified from "consider what a reasonable person in the position of the parties would have believed was the meaning of the words," id. at § 11.13, "consider the circumstances that existed at the time the contract was made, including the apparent purpose of the parties in entering into the contract, the history of negotiations leading up to the contract and the statements of the parties about their understanding of the language of the contract," id., "consider the statements of any agent for a party about [his] [her] actions in negotiating or drafting the contract, or about [his] [her] understanding of the contract," id., "consider the conduct of the parties in relation to those disputed words in the contract," and "other evidence presented to you about the meaning of the provisions," id. at § 11.14.).

[10] See, e.g., In re Bailey, 883 A.2d at 118 ("[o]nly if, after applying the rules of contract interpretation, the terms are still subject to 'one definite meaning,' will the ambiguities be 'construed strongly against the drafter'"); see also Capital City Mortg. Corp., 747 A.2d at 567 (citing 1901 Wyoming Ave. Coop. Ass'n, 345 A.2d at 463) (same).

[11] See Restatement (Second) of Contracts § 206 (1981) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds.") (emphasis added).



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

factual circumstances.

For example, testimony from members of the GLA Class about their understanding of the GLAs has probative value because GLA Class members are parties to those agreements. But, testimony from members of the GLA Class about the meaning of Defendants' license agreements – agreements to which Plaintiffs are not parties – has no probative value whatsoever and, in fact, should be rejected outright.

Specifically, it is well-settled that where all of the parties to an agreement have a mutual understanding of its meaning, the contrary interpretation of a stranger (in this case Plaintiffs) must be disregarded.[12] See, e.g., Reliance Standard Life Ins. Co. v. Matula, No. 05-C-0788, 2007 U.S. Dist. LEXIS 24523, at *25 (E.D. Wis. Mar. 30, 2007) ("As strangers to the Agreement, the Schmeling defendants are not in an authoritative position regarding what the Agreement means and how the parties to the Agreement interpret it."); Waddy v. Sears, Roebuck & Co., No. C-92-2903-VRW, 1994 WL 392483, at *11 (N.D. Cal. July 8, 1994) ("The understandings of other employees as to the nature of their employments, however, are irrelevant to the question of whether Tucker himself had an implied for-cause employment contract. Tucker's employment contract is defined by the understanding and intent of Sears and Tucker, not third parties to the contract.") (emphasis in original); Williams Tile & Marble Co., Inc. v. Ra-Lin & Assocs., 426 S.E.2d 598, 600 (Ga. Ct. App. 1992) ("However, the personal interpretation of a contractual provision by a stranger to the contract obviously has no probative relevance whatsoever."); Combs v. Hunt, 125 S.E. 661,

[12] The only parties to Defendants' license agreements are Defendants and their licensees. Any argument by Plaintiffs that they are not strangers to the license agreements because, for instance, the "licenses [purportedly] directly affected the Plaintiffs' economic interests," is without merit. See Pls.' Opp'n to Defs.' Mot. For Summ. J., R. Doc. 310, July 1, 2008, at 27-28 ("Pls.' Opp'n"). Regardless of whether active player license agreements could somehow "affect" retired players' "economic interests" (they could not), Plaintiffs have no legal standing to challenge the shared interpretation of the only parties to the license agreements. Nor can Plaintiffs show that the GLA Class was an intended, third-party beneficiary of the license agreements – the only type of third party with standing to sue for breach of contract. Ft. Lincoln Civic Ass'n, Inc. v. Ft. Lincoln New Town Corp., 944 A.2d 1055, 1064 (D.C. 2008); ("an indirect interest in the performance of the undertakings is insufficient") (quoting German Alliance Ins. Co. v. Home Water Supply Co., 226 U.S. 220, 230 (1912))).



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

665 (Va. 1924) ("'Such insurance contracts as these may be one-sided and unsatisfactory in their operation, but we know of no principle of law or public policy which forbids their operation exactly as stipulated by the parties, with which, as already stated, a stranger to the contract has absolutely no concern.'") (quoting Goodman v. Georgia Life Ins. Co., 66 So. 649, 650 (Ala. 1914))). Cf. Robert C. Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 308 (1959) ("The stevedore is a complete stranger to the contract of carriage, and it is no concern of his whether there is a bill of lading or not, or, if there is, what are its terms."). Accordingly, the jury should be instructed that, with respect to Defendants' license agreements, the jury should reject Plaintiffs' interpretation of the contract if it is contrary to the shared interpretation of the actual parties to that contract – Defendants and their licensees. Moreover, these cases highlight why a separate instruction on contract construction must be given for Defendants' license agreements, i.e., the applicable rules of construction are different for Defendants' license agreements (to which Plaintiffs are not parties) than with respect to the Retired Player GLAs (to which Plaintiffs are parties).

The jury should also be instructed on how to interpret Defendants' license agreements in the event the jury does not conclude that Defendants and their licensees share a mutual understanding about the agreements' meaning. In this regard, the standard rule of contract interpretation is that, in construing the meaning of a contract, the jury should consider the parties' course of performance with respect to the disputed provisions.[13] It is also well-settled that commercial agreements must be construed reasonably so that their terms make makes commercial sense.[14] Finally, any contract should be construed as a whole.[15]

**Disputed Instruction No. 8 Re Breach of Contract – Statute of Limitations**

Plaintiffs seek to avoid in their proposed instruction the fundamental principle that

[13] D.C. Standard Instructions § 11.14 (the jury may consider the "conduct of the parties in relation to those disputed words in the contract.").

[14] See supra text accompanying note 8.

[15] D.C. Standard Instructions § 11.12.



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Plaintiffs can recover only those damages suffered during the limitations period. John McShain, Inc. v. L'Enfant Plaza Prop., Inc., 402 A.2d 1222, 1230-31 (D.C. 1979) (limiting the plaintiff's damages to those suffered during the applicable statutory period). The jury must be given this instruction to avoid any confusion about the amount of damages, if any, that Plaintiffs could receive. Indeed, the Court should adopt Defendants' proposal, which properly addresses this issue.

**Disputed Instruction No. 9 Re Burden of Proof - Breach of Fiduciary Duty**

Plaintiffs' proposed instruction on the burden of proof for their breach of fiduciary duty claim is erroneous in several ways. First, Plaintiffs ignore that, under D.C. law, the dispositive factor in determining whether a principal-agent relationship exists is whether the purported principal had a right to exercise the requisite level of control over the purported agent's activities. See infra discussion pp. 17-19. If the jury in this case does not find that the GLA Class members had such control, it cannot find that Defendants owed Plaintiffs any fiduciary duties under D.C. law. It would be wholly prejudicial to Defendants and reversible error not to instruct the jury accordingly.

Second, Plaintiffs' proposed instruction ignores that proving injury is an element of any cause of action for breach of fiduciary duty. Day v. Avery, 548 F.2d 1018, 1029 n.56 (D.C. Cir. 1976) ("the breach of fiduciary relationship is not actionable unless injury accrues to the beneficiary or the fiduciary profits thereby"); see also Beckman v. Farmer, 579 A.2d 618, 651 (D.C. 1990). Instead, Plaintiffs improperly conflate in their instruction the separate elements of injury and damages. This, too, is prejudicial to Defendants and must be rejected.

Third, Plaintiffs once again ignore the well-established principle that they must provide - even in a class action - individual proof of injury and damages by each member of the class. See supra pp. 3.

Finally, Plaintiffs' proposed instruction on "preponderance of the evidence," as in their breach of contract claim, is confusing and contrary to law. Plaintiffs omit in their proposed instruction any reference as to how a plaintiff must prove every element of its claim to prevail. As discussed above, the proper approach is the one reflected in the model jury



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

instructions set out by the Ninth Circuit and the Fifth Circuit, which are far shorter, fairer, easier to understand, and less likely to confuse the jury on this point. See supra note 1 and accompanying text.

Defendants' proposed instruction No. 9 properly includes all these elements and should be adopted.

**Disputed Instruction No. 10 Re Fiduciary Relationship**

Plaintiffs contend the jury should be instructed that it may find a fiduciary relationship based on one of two alternative theories – that the parties had an agency relationship, or that a fiduciary relationship can be implied "based on surrounding circumstances." The Court already has rejected Plaintiffs' "surrounding circumstances" theory, which grossly misstates D.C. law. The Court should reject it again in the instructions.

With respect to Plaintiffs' agency theory, Plaintiffs state in their proposed instruction that "[o]ne factor in determining whether an agency relationship exists is whether the GLA Class had the ability to control and direct Defendants in the performance of their duties under the Retired Player GLAs; however, it is not necessary for the principal to exercise that control." But, the element of control is not, as Plaintiffs suggest, simply "one factor" in determining whether an agency relationship exists. Rather, according to even the D.C. authority cited by Plaintiffs, the element of control is the determinative factor: "Of these factors, the determinative one is usually 'whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done." Judah v. Reiner, 744 A.2d 1037, 1040 (D.C. 2000) (emphasis added); see also Levy v. Currier, 587 A.2d 205, 212 (D.C. 1991) ("The right to control an employee's conduct in the performance of the task and in its result is determinative in establishing the existence of a master-servant relationship."); Dist. of Columbia v. Hampton, 666 A.2d 30 38-39 (D.C. 1995) ("We have often held, however, that of these five factors 'the determinative factor' is usually the fourth: 'the right to control an employee in the performance of a task and in its result, and not the actual exercise of control or supervision.'"); Environmental Research Int'l Inc. v. Lockwood Greene Engineers, Inc., 355 A.2d 808, 812 n.7 (D.C. 1976) ("The record



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

supports the trial court's conclusion by failing to reveal that degree of control by appellees over appellant's actual performance of its functions which would be necessary for an agency relationship."); LeGrand v. Ins. Co. of North Am., 241 A.2d 734, 735 (D.C. 1968) ("Standing alone, none of these indicia, excepting (4), seem controlling in the determination as to whether such relationship exists. The decisive test . . . is whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done.") (ellipses in original).[16]

Moreover, contrary to Plaintiffs' proposed instruction, the mere "ability to control and direct the agent" is not sufficient to establish an agency relationship. Rather, to establish agency under D.C. law, Plaintiffs must prove they had the right to exercise a specific level of control over Defendants' activities: "An employer-employee relationship can be shown when the employer has control over the day-to-day operations of the alleged employee and can direct the manner in which the work is performed." Ames v. Yellow Cab of D.C., Inc., Civ. No. 00-3116, 2006 WL 2711546, at *5 (D.D.C. Sept. 21, 2006); see also Wells v. Whitaker, 151 S.E.2d 422, 429 (Va. 1966) ("The criterion for determining whether a relationship is one of principal-agent or master-servant, on the one hand, or independent contractor on the other, is control or right to control the methods or details of doing the work, not control of the results."); Judah, 744 A.2d at 1040 ("Of these factors, the determinative one is usually 'whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done."). This rule is recognized even in the

[16] See also Henderson v. Charles E. Smith Mgm't, Inc., 567 A.2d 59, 62 (D.C. 1989) ("Stated differently, to determine whether a principal-agent relationship has been created, the court must analyze the relationship between the parties in its entirety and determine if two factors exist. First, the court must look for evidence of the parties' consent to establish a principal-agent relationship. Second, the court must look for evidence that the activities of the agent are subject to the principal's control."); Giles v. Shell Oil Corp., 487 A.2d 610, 611 (D.C. 1985) ("While it is said that at common law there are four elements which are considered upon the question whether the relationship of a master and servant exists . . . the really essential element of the relationship is the right of control, that is the right of one person, the master, to order and control another, the servant, the performance of work by the latter, and the right to direct the manner in which the work shall be done.") (emphases added; ellipses in original).



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

D.C. authority cited by Plaintiffs. See, e.g., Johnson v. Bechtel Assoc. Professional Corp., 717 F.2d 574, 579-80 (D.C. Cir. 1983) ("the actual day-to-day work performed by Bechtel on the construction sites reinforces the conclusion that Bechtel serves as WMATA's agent"; "in practice [the agent] rarely takes any major action without first consulting WMATA"; "In their daily work, the Bechtel safety personnel are subject to the direction of WMATA officials and function essentially as WMATA employees."). Thus, if Plaintiffs fail to prove they had the right to exercise the necessary level of control over Defendants' activities, the jury must be instructed to find against them on their claim for breach of fiduciary duty.

Additionally, since both parties agree that the jury should be instructed that Plaintiffs must prove that the members of the GLA Class had "the right to control and direct Defendants" - not that they, in fact, controlled Defendants' licensing activities - it is unduly repetitive to instruct the jury also that "it is not necessary [that the GLA Class members] exercise[d] that control."

Plaintiffs also seek to instruct the jury that, in addition to the agency relationship between Plaintiffs and Defendants allegedly arising from the Retired Player GLAs, "[a] fiduciary relationship may also be inferred from the nature of the relationship, the promises made, the type of services or advice given, and the legitimate expectations of the parties." There is simply no basis for such an instruction in this case, which is contrary to this Court's rulings on class certification and summary judgment, and ignores Plaintiffs' own admissions to the Ninth Circuit. This Court has already held, in no uncertain terms, that the GLA Class's breach of fiduciary duty claim was certified "only insofar as [it] arises out of the GLAs between the NFLPA and retired players." Class Certification Order, at 10 & 14. In recognition of this limitation, Plaintiffs subsequently conceded to the Ninth Circuit that "there is no longer an 'agency by estoppel' claim at issue" in this case. Pls.' Opp'n to Pet. for Permission to Appeal Under Fed. R. Civ. P. 23(f), May 21, 2008, at 10 (Taub Decl., Ex. 3).

Plaintiffs' proposed instruction is rehashing an argument Plaintiffs made for the first time in their Opposition to Defendants' Motion for Summary Judgment that "[f]ederal courts in Virginia and D.C. recognize that unions owe fiduciary duties to their members."

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Pls.' Opp'n, at 33. However, this Court effectively rejected this argument by holding that the determination of whether there was a fiduciary relationship will be "dictated by the terms of the GLA." Order Denying Defs.' Mot. for Summ. J., Rec. Doc. 353, Aug. 6, 2008, at 7 (emphasis added). Thus, the only fiduciary duty theory that Plaintiffs may pursue is an "express" or "direct" agency relationship purportedly arising out of the terms of the Retired Player GLA. The authorities cited by Plaintiffs – none of which apply D.C. law – are therefore irrelevant, as the Court has foreclosed, and there is simply no class claim for, any other possible type of fiduciary relationship. Cf. Derewecki v. Penn. R. Co., 353 F.2d 436, 444-45 (3d Cir. 1965) (affirming refusal to charge jury on issue of contributory negligence when there was no supporting evidence and the issue was foreclosed pre-trial).

To the extent Plaintiffs suggest that a fiduciary duty exists simply because some Plaintiffs may have been retired player members of the NFLPA, see Pls.' Opp'n at 33-35, this argument is contrary to law and must be rejected. First, there is no evidence that all or, for that matter, any of the class members were NFLPA members in any relevant year, which would raise significant class issues. Second, the relevant case on this point cited (yet again) by Plaintiffs provides only that a labor union's duty to fairly deal and represent its members in collective bargaining is "in a sense fiduciary in nature," and does not give rise to a cause of action for breach of fiduciary duty. See Int'l Brotherhood of Teamsters v. Wirtz, 346 F.2d 827, 832 (D.C. Cir. 1965) (citing Int'l Union of Elec., R. & M. Workers v. NLRB, 307 F.2d 679, 683 (D.C. Cir. 1962) ("The requirement of fair dealing between a union and its members is in a sense fiduciary in nature;" "the Union is bound by law to represent all employees in the bargaining unit.")). The GLA Class members who were retired members of the NFLPA (if any) were not – and could not have been – represented by the NFLPA in collective bargaining. See generally Allied Chem. and Alkali Workers of Am. v. Pittsburgh Plate Glass Co., 404 U.S. 157 (1971). Moreover, no claim for breach of any labor union's duty of fair representation has been asserted in this case and such a claim would, in any event, be time barred. See, e.g., Henderson v. Office & Prof'l Employees Int'l Union, 143 Fed. App'x. 741, 743 (9th Cir. 2005); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-11 (1985). Plaintiffs'



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

requested instruction is thus wholly inappropriate.

**Disputed Instruction No. 11 Re Duties of a Fiduciary**

Plaintiffs' proposed instruction on the duties of a fiduciary is unduly repetitive, confusing and prejudicial. It also misstates the relevant law and, therefore, must be rejected.

To start, Plaintiffs' instruction that a "fiduciary is held to a standard of conduct stricter than the morals of the market place" and "[n]ot honesty alone, but the punctilio of an honor the most sensitive, is the unbending and inveterate standard of behavior" would not even be comprehensible to the average juror and must be discarded for that reason alone. Moreover, the standard Plaintiffs propose is not the relevant standard. Instead, Plaintiffs' standard comes from an eighty-year-old New York case prescribing the duties of co-venturers and partners, which is not applicable here. See Meinhard v. Salmon, 249 N.E. 458, 463-65 (N.Y. 1928).[17]

Next, Plaintiffs' proposed instruction regarding the duty of loyalty is unduly lengthy, repetitive, and confusing, and prejudicially belabors the simple point that a fiduciary owes a duty of loyalty. Further, Plaintiffs cite in support of their instruction mostly outdated (e.g., Restatement (Second) of Agency (1958) or irrelevant authority (e.g., Vicki Bagley Realty, Inc. v. Laufer, 482 A.2d 359 (D.C. 1984) (prescribing the duties of real estate agents who under D.C. law owe duties different than an ordinary fiduciary); see also Jenkins v. Strauss, 931 A.2d 1026 (D.C. App. 2007)).

The alternative instruction proposed by Defendants – "a fiduciary must exercise good faith and loyalty to his principal" – is clear, comprehensible and supported by relevant modern authority. See Halvonik v. Dudas, 398 F.Supp.2d 115, 130 n.30 (D.D.C. 2005) ("As with any fiduciary relationship, a practitioner has a duty of utmost good-faith and loyalty to his or her client."); Restatement (Third) of Agency § 8.01 (2006) ("An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency

---

[17] Plaintiffs also cite Johnson v. American Gen. Ins. Co., 296 F. Supp 802 (D.D.C. 1969), in support of their proposed instruction. Johnson, however, merely repeats the relevant "punctilio" language from Meinhard, but never suggests that such language would be appropriate in any jury instruction.



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

relationship."). Thus, Defendants' clear and non-prejudicial instruction should be adopted.

Plaintiffs further propose an instruction that, "[i]f a fiduciary claims to possess special skills or knowledge, the fiduciary has a duty to the principal to act with the care, competence and diligence normally exercised by fiduciaries with such skill or knowledge." However, there is no allegation anywhere in the complaint that Defendants claimed to possess any particular special skills or knowledge, nor is there any evidence of such a claim. Thus, this instruction is improper and the Court should instead adopt Defendants' proposal, which omits this inappropriate instruction.

Plaintiffs next assert that the jury be given an instruction that "[a] fiduciary has a duty to disclose all material facts relating to the relationship that are unknown to his principal, all material facts the fiduciary believes the principal does not know, and every material development affecting the principal's interest. It is not a defense to a fiduciary's breach of duty to disclose material information that his principal could, through investigation, have discovered independently." This instruction grossly misstates the law. According even to the Restatement authority cited by Plaintiffs, the law is as follows:

> An agent has a duty to use reasonable effort to provide the principal with facts that the agent knows, has reason to know, or should know when
> (1) subject to any manifestation by the principal, the agent knows or has reason to know that the principal would wish to have the facts or the facts are material to the agent's duties to the principal; and
> (2) the facts can be provided to the principal without violating a superior duty owed by the agent to another person.

Restatement (Third) of Agency § 8.11. The authority Plaintiffs cite for the opposite proposition – that Defendants without qualification owe a duty to disclose "every development affecting the principal's interest" – has to do with real estate agents, and is therefore completely irrelevant. See Vicki Bagley Realty, 482 A.2d at 359. Thus, Plaintiffs' proposed instruction should not be used.

Plaintiffs propose yet another instruction that "[a] fiduciary has a duty not to acquire a material benefit from a third party in connection with transactions conducted or other actions taken on behalf of the principal or otherwise through the fiduciary's use of his



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

position." This is yet another iteration of the duty of loyalty already covered by Defendants' proposed instruction, and is unduly repetitive and confusing.

Finally, Plaintiffs' proposed instruction ignores that the jury must find that Defendants actually breached at least one of these purported duties for Defendants to be held liable. Defendants' proposed instruction, on the other hand, properly addresses this fundamental point and should be adopted.

**Disputed Instruction No. 12 Re Breach of Fiduciary Duty – Statute of Limitations**

Defendants' proposed instruction on the fiduciary duty statute of limitations should be adopted because, unlike Plaintiffs' instruction, it plainly explains the elementary principle that a plaintiff can be awarded damages only for those injuries suffered during the limitations period. John McShain, Inc. v. L'Enfant Plaza Prop., Inc., 402 A.2d 1222, 1230-31 (D.C. 1979) (limiting the plaintiff's damages to those suffered during the applicable statutory period); D.C. Code § 12-301(8) (2008) (prescribing limitations period for breach of fiduciary duty claim). Plaintiffs' proposal confuses the separate requirements of injury and damages, and should be rejected since it does not give the jury any clear guidance on the time period for which damages can be awarded.

**Disputed Instruction Nos. 13, 14 and 15 Re Compensatory Damages**

Plaintiffs' proposed instructions 13, 14 and 15 ignore the requirement that Plaintiffs must provide individual proof of injury and damages for each member of the class. See supra pp. 3.

Plaintiffs' proposed instruction No. 14 also ignores the rule that Plaintiffs are only "entitled to damages that were foreseeable at the time the contract was made. Damages are foreseeable if they are the sort that the parties would have reasonably envisioned, or are the sort that would flow naturally and obviously from the breach of the contract." D.C. Standard Instructions § 11.31. See also Sears, Roebuck & Co. v. Goudie, 290 A.2d 826, 832-33 (D.C. 1972) (quoting Fowler v. A & A Co., 262 A.2d 344, 349 (D.C. 1970)). The deposition testimony of several GLA Class members is damaging to Plaintiffs' case on this front, but that is not a basis to fail to instruct the jury on this important point of D.C. law. See



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Adderley Depo. 87:11-92:17 (Adderley understood his GLA meant at the time he signed it that that he would be paid only if his rights were licensed, and that he had no understanding that his Retired Player GLA entitled him to receive active players' money); Laird Depo. 153:9-155:8 (testifiying that his "new GLA" only entitled him to revenues generated by "new licensing program[s]," "not Topps cards" or any other trading cards) (Taub Decl., Exs. 2 and 4). The Court should adopt Defendants' proposed damages instructions, which correctly state the controlling law.

**Disputed Instruction No. 16 Re Nominal Damages**

Plaintiffs' instruction on nominal damages should be rejected because, once again, it misstates the applicable law. Specifically, Plaintiffs' proposal that "[i]f you find that Defendants breached the Retired Player GLA, or that they breached their fiduciary duties to the GLA Class, Plaintiffs are entitled to damages," is both incorrect and prejudicial because it ignores the fundamental legal rule that injury is a required element of any cause of action for breach of fiduciary duty. Day v. Avery, 548 F.2d 1018, 1029 n.56 (D.C. Cir. 1976) ("[T]he breach of fiduciary relationship is not actionable unless injury accrues to the beneficiary or the fiduciary profits thereby…."); see also Beckman v. Farmer, 579 A.2d 618, 651 (D.C. 1990). That is, Plaintiffs are "entitled to damages" only if Plaintiffs prove that Defendants breached their purported fiduciary duties and that each of the GLA Class members suffered injury as a result. Plaintiffs' proposal, which leaves out the element of injury altogether, should be rejected.

Defendants' alternative instruction, on the other hand, correctly states the law as it should be applied in this case. For example, Plaintiffs have made a damages claim only with respect to their sharing equally in distributions from the GLR pool. They have offered no damages proof with respect to the non-creation of any escrow account, or for any other purported immaterial breach. As a result, Plaintiffs cannot prove without speculation or guesswork their "actual" damages, if any, arising from any immaterial breach in this case, including the non-creation of an escrow account. Plaintiffs, therefore, could receive only to nominal damages for such claims. Garcia v. Llerena, 599 A.2d 1138, 1142 (D.C. 1991)



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

("Where the plaintiff proves a breach of contractual duty but the proof of damages is vague or speculative, he is entitled only to nominal damages."); Maxwell v. Gallagher, 709 A.2d 100, 103-104 (D.C. 1998) (affirming award of nominal damages in the amount of $1 instead of "actual" damages "because the appellees had shown no basis for such compensation"); Damages in Tort Actions § 2.02 (2007) ("[R]ecovery of damages may be limited to a nominal sum if the plaintiff has failed to prove the extent and amount of his damages, even though he has proved that he has been wronged.").

The jury must be instructed accordingly, i.e., that if it finds Defendants' only breach was their immaterial failure to establish an escrow account, the jury cannot award Plaintiffs anything other than nominal damages. Indeed, Plaintiffs have made no claim for (and their experts have not even tried to prove) any damages other than from Defendants' failure to pay GLA Class members an equal share of the GLR pool. Such an instruction is necessary, therefore, to avoid juror confusion and an inappropriate damages award.

Similarly, if Plaintiffs cannot prove that their only damages evidence, which is based on their sharing equally in distributions from the GLR pool, is a reasonable estimate of their actual damages, Plaintiffs are not entitled to anything other than a nominal sum. Garcia, 599 A.2d at 1142 ("A plaintiff is not required to prove the amount of his [or her] damages precisely; however the fact of damage and a reasonable estimate must be established.") (emphasis added). Defendants' proposed instruction avoids juror confusion and prejudice by properly addressing this issue consistent with well-established legal principles.

**Disputed Instruction No. 17 Re Disgorgement**

The Court should not give the jury any instruction about disgorgement as a form of damages for breach of fiduciary duty in this case. "A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002); see also Gen. Elec., Inc. v. Taalohimoineddin, 579 A.2d 729, 734 (D.C. 1990) ("It is a well established and 'elementary' principle of law that an instruction should not be given if there is no evidence to support it."). Plaintiffs have never asserted in any of their four complaints any claim for disgorgement.



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Nor have Plaintiffs advanced any evidence in support of such a claim, which was first mentioned in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, submitted two months after the close of fact discovery. See Pls.' Opp'n at 39-40.

Moreover, Plaintiffs have not offered any damages study or evidence regarding the amount that allegedly should be disgorged. The only damages theory offered by Plaintiffs' expert, Philip Y. Rowley, is for an "equal share" of the "Gross Licensing Revenue pool." See Defs' Mot. In Limine No. 5 at 1; Report of Philip Y. Rowley, May 23, 2008, and Reply Report of Philip Y. Rowley, June 26, 2008 (Taub Decl., Exs. 1 and 5). As the authorities Plaintiffs themselves cite recognize – although Plaintiffs omit any discussion of this from their proposed instruction – disgorgement is a remedy only meant to prevent unjust enrichment by allowing the beneficiary to obtain the benefits derived from the breach. In re Estate of Corriea, 719 A.2d 1234, 1240 (D.C. 1998) ("The remedy of disgorgement, much like that of a constructive trust, is mean to provide just compensation for the wrong, not to impose a penalty; it is given in accordance with the principles governing equity jurisdiction, not to inflict punishment but to prevent an unjust enrichment.") (internal quotations omitted); Restatement (First) of Restitution, (2008) § 138 cmt. a ("As an alternative, the beneficiary is entitled to obtain the benefits derived by the fiduciary through the breach of duty."). Normally a claim of disgorgement is for the "net profits" that were earned as a result of the breach of fiduciary duty. See In re Estate of Corriea, 719 A.2d at 1241. Plaintiffs, however, have offered no analysis about Defendants' alleged profits for any claimed breach, let alone net profits, in this case. Having no evidence or damages theory regarding the purported benefits derived by Defendants from the alleged breach of fiduciary duty, Plaintiffs have no basis for seeking disgorgement in this case.

Even if a jury instruction on disgorgement were justified in this case (which it is not), Plaintiffs' proposed instruction is also improper because it misstates and ignores the law of disgorgement. Plaintiffs' instruction states that disgorgement is "an additional form of damages available to Plaintiffs." However, as the authorities relied upon by Plaintiffs state, disgorgement is an alternative remedy. Restatement (First) of Restitution, (2008) § 138 cmt.



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

a ("A fiduciary who commits a breach of his duty as fiduciary is guilty of tortuous conduct and the beneficiary can obtain redress either at law or in equity for the harm done. As an alternative, the beneficiary is entitled to obtain the benefits derived by the fiduciary through the breach of duty.") (emphasis added).

Plaintiffs' proposed instruction on disgorgement is also incorrect because it omits that, under District of Columbia law, disgorgement is not an available remedy where the plaintiffs have received the benefits they expected. Breezevale Ltd. v. Dickinson, 879 A.2d 957, 970 n.12 (D.C. 2005) (quoting Remsen Partners, Ltd. v. Stephen A. Goldberg Co., 755 A.2d 412, 416 (D.C. 2000) ("There is no equitable reason for ordering disgorgement where plaintiffs have received the benefits they expected.")). The court in Remsen explained, "[R]ecovery is generally not allowed where there is no proof that the services rendered to the party were defective or that in any other way the party did not receive value for the money paid." 755 A.2d at 416. Where, as here, plaintiffs have offered no evidence that the licensing rights of each of the individual GLA class members had any economic value or that the class members did not receive what they expected, disgorgement is not available under D.C. law.

Plaintiffs' proposed instruction also omits that, where a defendant received no fees or other benefit for serving as a fiduciary, there is nothing to disgorge. See In re Randolph-Bray, 942 A.2d 1142, 1147 n.10 (D.C. 2008) (holding that a prior opinion allowing a disgorgement remedy was inapposite because appellant "earned no fees for her service as fiduciary that she could be required to forfeit."). Where, as here, the Defendant received no benefit from acting as an alleged fiduciary of the GLA Class members - and there is no question that the "equal share" to which Plaintiffs claim has already been distributed to active NFL players - there can be no disgorgement remedy. Plaintiffs' effort to cast the money they seek as Defendants' "commissions" in order to augment damages is mere rhetoric that has no basis in the evidence or claims of this case.

Moreover, Plaintiffs severely misstate the law in suggesting that "[f]or each violation of duty of loyalty, Plaintiffs need only to prove only [sic] that Defendants breached



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

their duty of loyalty, not that their breach proximately caused them injury." (emphasis added). Remarkably, the only authority Plaintiffs cite for this proposition flatly rejects applying the principle when a plaintiff seeks compensatory damages in addition to disgorgement, which, as amply demonstrated by Instructions Nos. 13-15, is the case here. See Hendry v. Pelland, 73 F.3d 397, 401-402. As the D.C. Circuit explained, it was solely because plaintiffs in Hendry revised their claims so that they sought only disgorgement of legal fees, and no compensatory damages, that "they needed to prove only that [defendant] breached his duty of loyalty, not that his breach proximately caused them injury." Id. at 401. The D.C. Circuit contrasted that with the general rule "that clients must prove injury and proximate causation in a fiduciary duty claim against their lawyer if they seek compensatory damages, not if, as here, they seek only forfeiture of legal fees." Id. at 401-402 (emphases in original). Indeed, the D.C. Circuit noted a decision from the D.C. Court of Appeals in which it "described the elements of the clients' negligence claim as including a 'causal relationship between the violation and the harm complained of,' Mills v. Cooter, 647 A.2d 1118, 1123 (D.C. 1994); the court stated that its disposition of the negligence claim 'applie[d] with equal force to the [clients'] claim of breach of fiduciary duty," id. at 402 (quoting Mills v. Cooter, 647 A.2d at 1123, 1120 n.6) (emphasis in original). Plaintiffs' own cited authority therefore leaves no doubt that Plaintiffs' proposed instruction is wildly inconsistent with the law.

Because Plaintiffs have no grounds for seeking disgorgement as a remedy, no jury instruction should be given. However, if the Court gives the jury an instruction on disgorgement (it should not), the instruction should be as follows:

> Disgorgement is an alternative form of damages available to Plaintiffs if a breach of fiduciary duty is proven. Plaintiffs are not entitled to both compensatory damages and disgorgement.
>
> If you find that: (i) Plaintiffs proved that a fiduciary relationship existed and was breached, and (ii) Plaintiffs cannot prove with required specificity the amount of damages suffered, then you should next determine whether disgorgement is an appropriate remedy.
>
> Disgorgement may be a remedy if the Defendants received a benefit from the breach which unjustly enriched the Defendants. Disgorgement is not a penalty on the Defendant and must be limited to the amount of any such benefit.



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Disgorgement is not an available remedy if: (i) the Defendants did not retain some benefit to be disgorged or (ii) the principal received the expected benefits from the fiduciary relationship.

Plaintiffs have the burden of proving all elements of their disgorgement damages by a preponderance of the evidence.

**Disputed Instruction No. 18 Re Plaintiffs May Not Recover Duplicate Contract and Tort Damages**

Plaintiffs assert there should be no instruction at all on the well-settled rule that Plaintiffs – even if they assert two different legal theories – may be made whole only once for the same injury. There is no valid basis to exclude this instruction which is necessary to avoid juror confusion, minimize prejudice, and is also a relevant and proper statement of the law. See, e.g., Doe v. Georgetown Center (II), Inc., 708 A.2d 255, 258 (D.C. 1998) (approving jury instruction that "the plaintiff may be made whole only once" because "[a] cardinal principle of law is that, in the absence of punitive damages, a plaintiff can recover no more than the actual loss suffered."); Franklin Inv. Co., Inc. v. Smith, 383 A.2d 355, 358 (D.C. 1978) ("It is elementary that damages for the same injury may be recovered only once, even though recoverable under two theories or for two wrongs, for a plaintiff is not entitled to be made more than whole unless punitive damages are warranted."). The Court should adopt Defendants' proposed instruction.

**Disputed Instruction Nos. 20 & 21 Re Punitive Damages**

Pursuant to the Court's Pretrial Guidelines, the jury will not even consider the issue of punitive damages in their main deliberations. Instead, the jury will decide the issue of punitive damages only in a supplemental proceeding after its main deliberations, and only in the event the jury determines that Defendants have acted with the requisite mental state. See Pretrial Guidelines, at 33. There is thus no reason to consider any punitive damages instruction until such an instruction is needed.

If the Court were to consider the issue at this time, punitive damages are unavailable in this case as a matter of law, and the issue therefore should not under any circumstances be submitted to the jury. Under D.C. law, courts "do not favor punitive

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

damages" and "any award of punitive damages must be supported by the evidence of record and the law." Vassiliades v. Garfinckel's, 492 A.2d 580, 593 (D.C. 1985). Thus, it is the duty of the trial court to determine in the first instance "whether a sufficient legal foundation exists to award punitive damages" and submit the issue to the jury. Id. A sufficient foundation exists only if Plaintiffs are able to submit "credible evidence in support" of the allegations underlying their claim for punitive damages. Washington v. Gov't Employees Ins. Co., 1991 WL 155804, at *1 (D.D.C. 1991) ("Discovery having been completed, Washington is expected to produce some credible evidence to support her claim for punitive damages. That she is unable to do so indicates that no such evidence exists. To allow such an unsubstantiated claim to be presented before the jury would prejudice the defendant, confuse the issues to be tried, and waste the time of this Court.").

Here, there is no evidence whatsoever that Defendants' alleged conduct meets the standard for punitive damages. Indeed, no reasonable jury could find by clear and convincing evidence - and, in fact Plaintiffs have not even alleged - that Defendants acted with the "required malicious intent or willful disregard of another's rights" and "that [Defendants'] conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff." Croley v. Republican Nat'l Committee, 759 A.2d 682, 695 (D.C. 2000) ("We have repeatedly recognized that a plaintiffs' request to submit the issue of punitive damages to the jury is governed by the normal test for a triable issue of fact: whether there was evidence from which a jury reasonably could find the required malicious intent or willful disregard of another's rights."); Cambridge Holdings Grp., Inc. v. Federal Ins. Co., 357 F. Supp.2d 89, 97 (D.D.C. 2004) ("Punitive damages may be awarded for conduct that is 'willful and outrageous, exhibits reckless disregard for the rights of others, or is aggravated by evil motive, actual malice, or deliberate violence or oppression."); Bragdon v.Twenty-Five Twelve Assoc. Ltr. Partnership, 856 A.2d 1165, 1173 (D.C. 2004) ("punitive damages are a form of punishment...And are, accordingly, to be awarded only in cases of outrageous or egregious wrongdoing where the defendant has acted with evil motive, actual malice, or in willful disregard for the rights of the plaintiff. So, for example, in the absence of 'gross

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

fraud' or comparable wrongdoing, proof of even intentional misrepresentation may not suffice to justify punitive damages.") (ellipses in original). Defendants' conduct and intent, as alleged by Plaintiffs, does not even approach this threshold. Nor can Plaintiffs show with any credible evidence that Defendants' conduct and intent meets this standard.

Punitive damages also are unavailable as a matter of law for Plaintiffs' breach of contract claim. Cambridge Holdings Grp., 357 F.Supp.2d at 97 ("[p]unitive damages are unavailable as a matter of law for pure contract actions...."). This is true "even if it is proven that the breach was willful, wanton, or malicious." Bragdon, 856 A.2d at 1173.[18] Thus, the jury should not be instructed at all on punitive damages.

In the event, however, that the Court is inclined to adopt a punitive damages instruction (it should not do so), the instruction would properly read as follows:

> In addition to compensatory damages, Plaintiffs also seek an award of punitive damages against Defendants for their breach of fiduciary duty claim.
>
> Plaintiffs are not seeking an award of punitive damages for their breach of contract claim, and you may not award punitive damages for that claim.[19]
>
> Punitive damages are damages above and beyond the amount of compensatory or nominal damages you may award. Punitive damages are awarded to punish a defendant for his or her conduct and to serve as an example to prevent others from acting in a similar way.
>
> You may award punitive damages for breach of fiduciary duty only if Plaintiffs prove with clear and convincing evidence that Defendants acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of Plaintiffs, and that Defendants' conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of Plaintiffs.[20]

---

[18] The "only exception to that rule recognized in the District of Columbia is that 'where the alleged breach of contract merges with, and assumes the character of, a willful tort...punitive damages will be available." (ellipses in original). Id. Defendants have alleged no such independent willful tort here.

[19] See supra text accompanying note 18.

[20] D.C. Standard Instructions, § 16.01 (modified from "In addition to compensatory damages, the plaintiff also seeks an award of punitive damages against the defendant. Punitive damages are damages above and beyond the amount of compensatory [or nominal] damages you may award. Punitive damages are awarded to punish the defendant for his or her conduct and to serve as an example to prevent others from acting in a similar way. You may award



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

When a party has the burden of proving an issue by clear and convincing evidence, he must produce evidence that creates in your minds a firm belief or conviction that he has proved the issue.[21]

Punitive damages should be considered only in cases which present circumstances of outrageous, grossly fraudulent or reckless conduct or extreme aggravation.[22]

There is no rigid standard for measuring punitive damages, but the amount of punitive damages awarded should bear some reasonable and proportionate relationship to the actual damages Plaintiffs sustained and to the measure of punishment required for Defendants.[23]

If you do not award Plaintiffs compensatory or nominal damages, you cannot award Plaintiffs punitive damages.[24]

If you award punitive damages, you must state separately in your verdict the amount you allow as compensatory damages and the amount you allow as punitive damages.

Defendants' proposed instruction correctly sets forth the relevant standard, while

---

punitive damages only if the plaintiff has proved with clear and convincing evidence: (1) that the defendant acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of the plaintiff; AND (2) that the defendant's conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff.").

[21] In re Ingersoll Trust, 950 A.2d 672, 693 (D.C. 2008).

[22] Dist. Cablevision Ltd. P'shp v. Bassin, 828 A.2d 714, 725-26 (D.C. 2003) ("Punitive damages are, accordingly, to be awarded only in cases of outrageous or egregious wrongdoing where the defendant has acted with evil motive, actual malice, or in willful disregard for the rights of the plaintiff. So, for example, in the absence of "gross fraud" or comparable wrongdoing, proof of even intentional misrepresentation may not suffice to justify punitive damages. To obtain an award of punitive damages, moreover, the plaintiff must prove egregious conduct and the requisite mental state by clear and convincing evidence.") (internal citation omitted).

[23] Daka, Inc. v. McCrae, 839 A.2d 682, 697-699 (D.C. 2003) (an award of punitive damages must be "reasonable" and "proportionate to the wrong committed.").

[24] Maxwell v. Gallagher, 709 A.2d 100, 104 (D.C. 1998) ("A plaintiff must prove a basis for actual damages to justify the imposition of punitive damages. The amount of such damages may be nominal, stemming from the difficulty of quantifying them or from some other cause. But without proof of at least nominal actual damages, punitive damages may not be awarded.") (emphasis in original); Bernstein v. Fernandez, 649 A.2d 1064, 1073 (D.C. 1991) ("An award of punitive damages cannot stand alone, unaccompanied by compensatory damages.").



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Plaintiffs' proposal seriously misstates the law. The standard is not, as Plaintiffs suggest, merely that Defendants' conduct was outrageous or reckless. Instead, the standard, as set forth above, is that (i) Defendants' conduct was "outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff" (not reckless, as Plaintiffs assert, with respect to "the rights of others") and that (ii) Defendants had "evil motive, actual malice, deliberate violence or oppression," "intent to injure," or "willful disregard for the rights of the plaintiff." D.C. Standard Instructions, § 16.01. While Plaintiffs' proposal conflates the two separate requirements of outrageous conduct and evil intent, Defendants' instruction is in accord with the D.C. Standard Instructions, which make clear that the jury must find the requisite level of intent and outrageous conduct before awarding punitive damages. See supra note 20.

Further, there is a significant risk of juror confusion in adopting Plaintiffs' proposed instruction, which does not define the "clear and convincing standard" and does not plainly state that Plaintiffs may not be awarded punitive damages in connection with their breach of contract claim. Defendants' instruction correctly addresses both these points and, therefore, should be adopted.

It also is not necessary, and it would be highly prejudicial, for the jury to receive two separate instructions on punitive damages, as Plaintiffs suggest. Rather, to avoid undue repetition and prejudice to Defendants, the Court should give only one instruction on this issue to the jury, as reflected in Defendants' proposal, if it gives any instruction at all on this point, (which as discussed above, it should not do).

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

## CONCLUSION

For all of the foregoing reasons, the Court should adopt Defendants' proposed instructions and reject the objected to instructions submitted by Plaintiffs.

Date: October 8, 2008

DEWEY & LEBOEUF LLP

BY: /s/ Jeffrey L. Kessler
Jeffrey L. Kessler
*Attorneys for Defendants*



Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111