MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS III, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 6, REQUESTING EXCLUSION OF EVIDENCE AND ARGUMENTS OF LEGAL CONCLUSIONS MADE BY HERB ADDERLEY**<br><br>Judge: Honorable William H. Alsup<br>Date: September 9, 2008<br>Time: 2:00 p.m.<br>Place: Courtroom 9, 19th Floor |

20202979.1
Dallas 258080v3

Dallas 260432v1

## I. The Court Should Exclude Any Evidence, Testimony, Argument or Reference to Legal Conclusions Made by Herb Adderley in his Deposition.

In Herb Adderley's deposition, Defendants' Counsel asked various questions that invited a legal conclusion. However, as a fact witness and former NFL football player, Mr. Adderley is not competent to testify about legal issues, especially without proper foundational questions. Thus, the Court should exclude evidence or argument related to these statements.

### A. Courts Routinely Exclude Evidence of Legal Conclusions.

Statements of law and legal conclusions are not proper testimony for lay witnesses. *See Christiansen v. Nat'l Savs. & Trust Co.*, 683 F.2d 520, 529 (D.C. Cir. 1982) ("The existence of fiduciary duties in the context of this case is a legal conclusion. The duty to issue such conclusions devolve on the courts and lay legal conclusions are inadmissible in evidence."). The Ninth Circuit has recognized as such, and has excluded lay opinion testimony about the proper construction of a contract. *See Evangelista v. Inlandboatman's Union of Pac.*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985) ("Mihalopoulos's opinion as to the correct construction of the collective bargaining agreement -- *i.e.*, what is or is not the proper procedure for handling grievances -- is an inadmissible legal conclusion.") (citing Fed. R. Evid. 701); *see also* Fed. R. Evid. 704 advisory committee notes (Rules 701 and 702 "afford ample assurances against the admission of opinions which would merely tell the jury what result to reach. . . . [The Rules] also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria."). Of course, a lay witness's opinions as to legal conclusions do not assist the factfinder in its determinations, and can be unduly prejudicial, and are therefore excludable under Rules 402 and 403.

### B. Adderley's Legal Conclusions Should be Excluded.

Defendants asked Mr. Adderley multiple questions that asked him for "his understanding" of various issues and allegations in this lawsuit, which called for a legal conclusion. The Court should exclude this testimony as calling for legal conclusions.

First, Defendants asked Mr. Adderley about whether the First Amended Complaint included a claim for breach of a licensing agreement:

```
Page 72
22        Q.    Okay.  Now, did you know
23   that in this First Amended Complaint that
24   was filed, you did not make any claim for
Page 73
1    any breach of your licensing agreement;
2    did you know that, sir?
3              MR. KATZ:  Object.  It calls
4         for a legal conclusion.
5              THE WITNESS:  No.

***

Page 77
13        Q.    Okay.  What did you think,
14   when your lawsuit was first filed, first
15   filed, what claim did you think you were
16   asserting, sir?
17        A.    I was thinking that this
18   referred to the agreement that I signed
19   with player's name with Reebok, that I
20   didn't get paid for, I couldn't get any
21   acknowledgement from, in the beginning.
22        Q.    That's what you thought this
23   was about?
24        A.    Yeah.
Page 78
1              MR. KATZ:  Object.
2    BY MR. KESSLER:
3         Q.    But there's nothing in here
4    about that; right?
5         A.    Right.
```

*See* Garza Decl., Ex. A at 72:22-73:5, 77:13-78:5; *see also id.* at 73:5-73:18, 74:1-75:16, 76:5-78:5 (additional questioning Mr. Adderley's understanding of the First Amended Complaint). Adderley's opinion as to the legal effect of the First Amended Complaint is wholly irrelevant as to the issues remaining in the case. Additionally, Adderley's understanding of the First Amended Complaint -- which is not even the operative pleading at this point -- may supplant the instructions by the Court in the jury's mind, and is therefore highly prejudicial to Plaintiffs. As such, the Court should exclude this testimony under Rules 402, 403, and 701.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 260432v1

3

Second, Defendants presented a series of questions to Mr. Adderley that explored, under the terms of the GLA, (1) whether retired players were entitled to revenues from the use of active player images, and (2) whether retired player images must be "used" to generate revenue:

```
Page 92
 8        Q.    And what you thought you
 9   were agreeing to get was that if your
10   rights were licensed and used, you would
11   get some money; correct?
12        A.    Correct.
13             MR. KATZ:  Object.
14   BY MR. KESSLER:
15        Q.    And that was your
16   understanding of this agreement?
17        A.    Yes.

***

Page 96
13        Q.    Sir, do you believe, as a
14   retired player, you're entitled to any
15   money that's generated by the licensing
16   of active players?
17             MR. KATZ:  Object.
18             THE WITNESS:  No.
```

*See* Garza Decl., Ex. A at 92:8-17, 96:13-18; *see also id.* at 89:13-90:7 (similar testimony). Mr. Addlerley's opinion of the legal effect of the GLA is inadmissible under Rule 701. Furthermore, Mr. Adderley was unable to review confidential documents to prepare for this deposition, including Players Inc. licenses that require payment for the *right* to use player images, even if those images are not actually used. *See* Hilbert Decl., Dkt. No. 311, at ¶ 70. In light of the fact that Mr. Adderley is the class representative, his testimony, given his incomplete access to the facts in the case, is unfairly prejudicial, given the lack of probative value, and should be excluded under Rule 403.

Third, Defendants asked Mr. Adderley whether EA had the right to use his image, at the time that Mr. Adderley had sold the Hall of Fame the right to use his image:

```
Page 109
 6        Q.    Let me ask it this way:  At
 7   the time you gave these rights to the
```

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 260432v1

4

```
 8    Hall of Fame, at that time, you didn't
 9    think then that EA already had your
10    rights; did you?
11         A.   No.
12              MR. KATZ:  Object.
13  BY MR. KESSLER:
14         Q.   You did not believe that?
15              MR. KATZ:  Object.
16              THE WITNESS:  I didn't know
17    whether they had or not.
18  BY MR. KESSLER:
19         Q.   But you didn't think they
20    already had it at that time?
21              MR. KATZ:  Object.
22              THE WITNESS:  That's
23    correct.
```

*See* Garza Decl., Ex. A at 109:6-23. Mr. Adderley's opinion as to whether EA already had the rights to use his image is an opinion on EA's legal rights, and should be excluded under Rule 701 as a lay opinion, and under Rule 402 as irrelevant.

Fourth, Defendants questioned Mr. Adderley as to identify all instances in which defendants or their licensees used his image, and he did not receive payment due for using that payment:

```
Page 121
19              Identify any situation in
20    which defendants or their licensees used
21    your image and did not pay you 100
22    percent of the money due for using your
23    image?
24         A.   The only one I know of is
Page 122
 1    the Reebok jersey that I just explained
 2    about.
 3         Q.   That's the only one you know
 4    of?
 5         A.   Yes.
 6              MR. KATZ:  And I'm going to
 7    object to that question.
```

*See* Garza Decl., Ex. A at 121:19-122:6. This question requires Mr. Adderley to opine as to all agreements in which money was legally due him, under the terms of those agreements. The question requires a legal determination, and should be excluded under Rule 701.

Fifth, Defendants asked Adderley of his analysis of the class's theory of damages:

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 260432v1

5

```
Page 135
24                      Is it your understanding you
Page 136
 1   are seeking damages in this case?
 2        A.    Yes.
```

\* \* \*

```
Page 137
16        Q.    Do you agree if some class
17   members' rights are more valuable, like a
18   Joe Montana, that that person would be
19   more damaged than somebody who just
20   played one game, one year on special
21   teams?
22              MR. KATZ:  Object.
23              THE WITNESS:  Yes.
24   BY MR. KESSLER:
Page 138
 1        Q.    The damages should vary
 2   depending on how valuable your rights
 3   are; correct?
 4        A.    Yes.
 5              MR. KATZ:  Object.
```

*See* Garza Decl., Ex. A at 135:24-136:2, 137:16-138:5. Mr. Adderley's off-the-cuff opinion as to "value" of various players' rights, under the operative theories of this case, are legal conclusions excludable under Rule 701.

Finally, Defendants questioned Adderley about the presence of an "equal share" provision in the GLA:

```
Page 256
13        Q.    There's nothing in the GLA
14   that talks about how it will be divided
15   among any players; right?
16              MR. KATZ:  Object.
17              THE WITNESS:  You just read
18   it.
19   BY MR. KESSLER:
20        Q.    Is there anything in there
21   that says how it will be divided or what
22   portions?
23        A.    No.
24              MR. KATZ:  Objection.
Page 257
 1   BY MR. KESSLER:
 2        Q.    When you read the GLAs, you
 3   read and understood this GLA; correct?
 4        A.    Yes.
```

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 260432v1

```
 5      Q.    Here when you read and
 6   understood it, you didn't see anything
 7   there about how the money might be
 8   divided between particular retired
 9   players; right?
10             MR. KATZ:  Object.
11             THE WITNESS:  Correct.
```

See Garza Decl., Ex. A at 256:13-257:11. Mr. Adderley's opinion as to the construction of his GLA is a classic legal opinion excludable under Rule 701. *See Evangelista*, 777 F.2d at 1398 n.3. Thus, the Court should exclude this testimony.

## II. Conclusion

Plaintiffs respectfully request that the Court grant its Motions in Limine.

Respectfully submitted,

Dated: August 19, 2008

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Ryan S. Hilbert
Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
Noel S. Cohen (SBN 219645)
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
Lewis T. LeClair (SBN 077136)
Jill Adler Naylor (SBN 150783)
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

# PROOF OF SERVICE

I, Daniel Q. Crim, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 1001 Page Mill Road, Building 2, Palo Alto, CA 94304-1006. On August 19, 2008, I served the following documents:

1. **Plaintiffs' Motion In Limine No. 1, Requesting Exclusion Of Evidence And Argument Related To Bernard Parrish;**

2. **Plaintiffs' Motion In Limine No. 2, Requesting Exclusion Of Evidence Or Argument Relating To The Possibility Of Suing Additional Parties For Relief;**

3. **Plaintiffs' Motion In Limine No. 3, Requesting Exclusion Of Evidence And Argument Related To Mr. Adderley's Purported Fiduciary Relationship With Members Of Retired Professional Football Players For Justice;**

4. **Plaintiffs' Motion In Limine No. 4, Requesting Exclusion Of Parol Evidence Tending To Prove The Intent Of The Parties To Third-Party Licensing Agreements;**

5. **Plaintiffs' Motion In Limine No. 5, Requesting Exclusion Of Evidence Or Argument Relating To Dismissed Causes Of Action And The Uncertified Putative Class;**

6. **Plaintiffs' Motion In Limine No. 6, Requesting Exclusion Of Evidence And Arguments Of Legal Conclusions Made By Herb Adderley; and**

7. **Plaintiffs' Motion In Limine No. 7, Requesting Exclusion Of Evidence, Testimony And Argument Related To The Nfl Sponsorship And Internet Agreement.**

☐ By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail, addressed as set forth below.

☐ By transmitting via facsimile the document listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ By placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for overnight delivery.

☒  By electronic mail to the below email addresses:

| Jeffrey L. Kessler, Esq.<br>David G. Feher, Esq.<br>Eamon O'Kelly, Esq.<br>David Greenspan, Esq.<br>Dewey & LeBoeuf LLP<br>1301 Avenue of the Americas<br>New York, NY 10019-6092<br>Email: jkessler@dl.com; dfeher@dl.com;<br>dgreenspan@dl.com; jclark@dl.com;<br>rtaub@dl.com; MDonovan@dl.com;<br>ipapendick@dl.com; lcaplan@dl.com | Kenneth L. Steinthal, Esq.<br>Joseph Wetzel, Esq.<br>Weil, Gotshal & Manges, LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>Email: bruce.meyer@weil.com;<br>Joseph.Wetzel@weil.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 19, 2008, at Palo Alto, California.

_____
*Daniel Q. Crim*

Todd Padnos (Bar No. 208202)
*tpadnos@dl.com*
DEWEY & LEBOEUF LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Tel: (415) 951-1100; Fax: (415) 951-1180

Jeffrey L. Kessler (*pro hac vice*)
*jkessler@dl.com*
David G. Feher (*pro hac vice*)
*dfeher@dl.com*
David Greenspan (*pro hac vice*)
*dgreenspan@dl.com*
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 259-8000; Fax: (212) 259-6333

Kenneth L. Steinthal (*pro hac vice*)
*kenneth.steinthal@weil.com*
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000; Fax: (650) 802-3100

Bruce S. Meyer (*pro hac vice*)
*bruce.meyer@weil.com*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000; Fax: (212) 310-8007

Attorneys for Defendants National Football League Players Association
and National Football League Players Incorporated d/b/a Players Inc

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC,<br><br>Defendants. | Case No. C 07 0943 WHA<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 6** |

# ARGUMENT

In their Motion in Limine No. 6 ("Mot. No. 6"), Plaintiffs seek to exclude evidence of statements and admissions by Plaintiff Herb Adderley that are directly relevant to some of the most important factual issues in the case. These statements include Mr. Adderley's <u>factual</u> understanding of: (1) the meaning of the Retired Player GLA to which he is a party; (2) why it was necessary for Electronic Arts, Inc. ("EA") to enter into an ad hoc license agreement with him; (3) when, if ever, Defendants or their licensees used Mr. Adderley's licensing rights without paying him for that use; (4) the value of Mr. Adderley's licensing rights in comparison to the value of the rights of other GLA Class members; and (5) whether at the time Mr. Adderley filed this lawsuit he had any licensing complaints against Defendants with respect to anything other than his ad hoc license agreement for Reebok jerseys. Mot. No. 6 at 3-7. All of this testimony concerns Mr. Adderley's understanding of some of the central <u>factual</u> issues in the case. There is no basis for Plaintiffs' <u>ipse dixit</u> assertion that this testimony consists of "legal conclusions," and there is no basis to exclude this highly relevant evidence from the trial.

This Court has already determined, in strong language, that the Retired Player GLA is an ambiguous contract. Order Granting in Part and Denying in Part Pls.' Mot. for Class Cert at 3 (Apr. 29, 2008) (describing the Retired Player GLA as a "masterpiece of obfuscation"). It is axiomatic that when a contract, such as the Retired Player GLA, is ambiguous, vague, or indefinite, "parol evidence is <u>always</u> admissible . . . to establish the real contract between the parties." <u>Shockey v. Westcott</u>, 189 Va. 381, 387-89 (1949) (emphasis added); <u>Sundown, Inc. v. Canal Square Assocs.</u>, 390 A.2d 421, 432 (D.C. 1978) (same); 11 Williston on Contracts § 33:39.

Despite this well established principle, Plaintiffs argue that Mr. Adderley's testimony about his understanding of the Retired Player GLAs at the time he entered into them –

including his understanding of how licensing revenues would be generated and distributed under the GLAs – should be excluded as inadmissible legal conclusions under Federal Rule of Evidence 701. Mot. No. 6 at 4, 6-7. The absurdity of Plaintiffs' argument is laid bare by a simple reading of Mr. Adderley's deposition testimony. Mr. Adderley was not asked to opine on the legal effect of his Retired Player GLA. Rather, he testified as to the facts of <u>his own understanding</u> of the Retired Player GLAs at the time he entered into them – e.g., "what [he] thought [he was] agreeing to," what his "understanding of this agreement" was, and what his knowledge was when he "read and understood this GLA." <u>Id.</u> at 4, 6-7. Under black-letter law, such factual testimony by a party to an ambiguous contract is "always admissible," and is not excludable under Federal Rule of Evidence 701. <u>See, e.g., McDowell Welding & Pipefitting, Inc. v. United States Gypsum Co.</u>, 258 B.R. 460, 466-67 (D. Or. 2002) (denying plaintiff's motion to strike defendant's declaration under Fed. R. Evid. 701, and finding defendant's interpretation of contracts at issue to be admissible).[1]

There is also no basis for Plaintiffs' argument that Mr. Adderley's testimony about his understanding of the Retired Player GLA should be excluded because he was "unable to review confidential documents . . . , including Players Inc. licenses . . . ." Mot. No. 6 at 4. First, this purported "explanation" for Mr. Adderley's admissions is not a ground for excluding highly relevant evidence. Second, Plaintiffs do not – and cannot – explain how access to the

---

[1] Plaintiffs cite only two cases to support their misguided argument that Mr. Adderley's testimony is an inadmissible legal conclusion. <u>See</u> Mot. No. 6 at 2 (citing <u>Evangelista v. Inlandboatman's Union of the Pac.</u>, 777 F.2d 1390 (9th Cir. 1985) and <u>Christiansen v. Nat'l Savings & Trust Co.</u>, 683 F.2d 520 (D.C. Cir. 1982)). However, neither case involved a contracting party's understanding of an ambiguous contract at the time he or she entered into it; nor did they concern a witness's factual understanding or knowledge – as Mr. Adderley's testimony did – but instead involved documents purportedly evidencing opinions about the legal consequences of a relevant instrument or the legal status of a party. <u>See Evangelista</u>, 777 F.2d at 1398 (finding inadmissible a declaration opining on the correct interpretation of the grievance procedures in a collective bargaining agreement); <u>Christiansen</u>, 683 F.2d at 529 (finding inadmissible a board resolution stating that a fiduciary relationship existed between Blue Cross/Blue Shield (BC/BS) subscribers and defendant nonprofit corporation member of BC/BS).

license agreements to which Mr. Adderley was not a party (most of which, in any event, were entered into after he signed his Retired Player GLAs) could have any bearing on Mr. Adderley's understanding of the meaning and scope of his Retired Player GLAs at the time he entered into them. Indeed, Mr. Adderley's understanding of the Retired Player GLAs he entered into – which is a critical fact in the case – could not be affected by third-party license agreements that he did not review.

Mr. Adderley's admissions about the only licensing complaints he had against Defendants at the time this action was filed – i.e., that they were limited to complaints about his ad hoc license with Reebok– also are not legal conclusions. Indeed, a review of this testimony reveals that Mr. Adderley simply explained his factual understanding at the time the First Amended Complaint was filed. See Mot. No. 6 at 3. This factual testimony of Mr. Adderley is highly relevant to the credibility of his change of position that he now believes that he was not properly paid under his Retired Player GLAs for the EA, Topps, and other active player license agreements.[2]

There is similarly no basis for Plaintiffs' argument that Mr. Adderley's testimony about his understanding of the meaning of his Retired Player GLAs should be excluded because it "may supplant the instructions given by the Court in the jury's mind." Mot. No. 6 at 3. Plaintiffs offer no authority for the unfounded proposition that a jury cannot be trusted to hear testimony as to a party's understanding of the meaning of an ambiguous contract he has entered into, the interpretation of which is directly at issue in this action. See Jaime v. Tilton, No. 2:05-cv-00933-JKS (HC), 2007 WL 4239504, *12 (E.D. Cal. Nov. 30, 2007) (the court should

---

[2] In this connection, Plaintiffs completely mischaracterize Mr. Adderley's deposition testimony. Mr. Adderley was asked to "[i]dentify any situation" within his knowledge where his rights were licensed without payment. He was not asked, as Plaintiffs claim, "to opine as to all agreements in which money was legally due him . . . ." Mot. No. 6 at 5 (emphases added).

"assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.") (citation omitted).

As for Mr. Adderley's testimony regarding the comparable value of individual retired players' licensing rights, and whether he believed the Retired Player GLA provided for an "equal share" royalty for each retired player who signed it, this too does not involve any inadmissible legal conclusion. Rather, it is clear from his testimony that Mr. Adderley was simply explaining his factual understanding of the different values of retired players' licensing rights and the meaning of the ambiguous terms of his Retired Player GLAs. Mot. No. 6 at 6-7. Such testimony and admissions clearly qualify as relevant factual evidence in this case and there is no basis to exclude this evidence from trial.

Finally, the same conclusion applies to Mr. Adderley's testimony regarding his ad hoc license agreement with the Pro Football Hall of Fame and EA. See Mot. No. 6 at 4-5, 6. Once again, a reading of the transcript shows that what Plaintiffs mischaracterize as legal opinion is actually Mr. Adderley's factual understanding of whether he had previously licensed his rights to EA through his Retired Player GLAs at the time he entered into this ad hoc license agreement with EA. This testimony goes directly to Mr. Adderley's understanding of the meaning of his Retired Player GLA, which the Court has found to be ambiguous, and why he received all of the payments from his ad hoc license with the Pro Football Hall of Fame and EA, rather than divide this money into an escrow account for other retired players who signed GLAs.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion in Limine No. 6 should be denied in its entirety. Mr. Adderley's testimony about his factual understanding of the Retired Player GLAs he entered into is not a legal conclusion. Instead, his factual admissions constitute clearly relevant and admissible evidence.

Date: October 8, 2008

DEWEY & LeBOEUF LLP

BY: /s/ Jeffrey L. Kessler
Jeffrey L. Kessler
*Attorneys for Defendants*