MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

McKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER (Bar No. CA 150783)
E-mail: jadler@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS, III on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4 TO EXCLUDE THE TESTIMONY OF DANIEL A. RASCHER**<br><br>Judge: Honorable William H. Alsup<br>Date: October 15, 2008 |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE NO. 5
C07 0943 WHA

dockets.Justia.com

## I. INTRODUCTION

Defendants ask this Court to disregard Dr. Rascher's well-founded opinions on the ground that they allegedly lack "economic analysis." But the economic analyses Defendants claim Dr. Rascher should have undertaken are not required under *Daubert* and the Federal Rules of Evidence, and the analyses he did perform are specifically allowed under *Daubert*. At base Defendants are merely disagreeing with Dr. Rascher's conclusions and challenging their weight, which is not the function of a *Daubert* motion.

## II. DR. RASCHER'S REPORTS AND OPINIONS MEET THE STANDARDS FOR ADMISSIBILITY.

This Court should admit expert testimony if it ensures that the expert's testimony is "relevant" and "reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999). The *Daubert* inquiry is a flexible one, and must be tied to the facts of the particular case. *U.S. v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (quoting *Skidmore v. Precision Printing & Packaging*, 188 F.3d 606, 618 (5th Cir. 1999)

### A. Dr. Rascher's Opinions Concerning the Value of Retired Players Are Based on an Analysis of Credible Sources.

Defendants first suggest that Dr. Rascher's opinions are invalid because they are not based on "economic analysis."[1] Contrary to Defendants' suggestion, the materials on which Dr. Rascher relied for his opinions are of the type on which economists, including Defendants expert (Roger Noll), commonly rely to demonstrate economic value. Indeed, it is the piecing together of

---

[1] Defendants cite a number of cases in support of their assertion. Each of these cases is distinguishable. In *Lust v. Merrell Dow Pharms.*, for example, the expert in question did not identify a single objective source in support of his opinions, nor did he offer any explanation as to how he reached his conclusions. *Lust*, 89 F.3d 594, 596-98 (9th Cir. 1996) (also pointing out that the conclusions reached by the expert were shared by no other experts). Similarly, in *Colony Holdings, Inc. v. Texaco Ref. & Mktg.*, the expert was a geology expert, for whom rigorous scientific methodology is appropriate. *Colony Holdings*, No. 00-CV-217, 2001 U.S. Dist. LEXIS 26217 at *10 (C.D. Cal. Oct. 29, 2001). Despite this heightened standard, the expert did virtually no work. *Id.* Indeed, the expert's complete explication of his evaluation process in that case was: "After a review and analysis of the information provided, I have developed the following opinions." *Id.* These cases are a far cry from the detailed and supported analysis conducted by Dr. Rascher. In *Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*, the expert at issue was unable to explain his methodology, and there was no evidence that his method was "practiced by even a minority of scientists in this field." *Carnegie Mellon*, 55 F. Supp. 2d 1024, (N.D. Cal 1999). In this case, Defendants have provided no evidence that Dr. Rascher's methodology is outside his field, nor could they. Lastly, in *Jones v. United States*, the expert sought to rely on certain publications to support an opinion that was directly contradicted by those same publications. *Jones*, 933 F. Supp. 894, 897-99 (N.D. Cal. 1996). That is hardly the situation here.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

- 1 -

OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE NO. 5
C07 0943 WHA

such individual data points into a coherent whole that is economic analysis. Such materials – which include numerous peer-reviewed publications,[2] information concerning transactions in the marketplace, and Defendants' own admissions – are also of the type courts consider to be reliable as well. *See* Deposition Transcript of Dr. Daniel A. Rascher ("Rascher Tr.") at 28:12-31:5 (Declaration of Ryan S. Hilbert in Support of Plaintiffs' Opposition to Motion In Limine No. 4 ("Hilbert Decl.") Exh. A) (discussing the materials on which Dr. Rascher relied); *Kennedy v. Collagen Corp.*, 161 F. 3d 1226, 1228 (9th Cir. 1998) (discussing the appropriateness of peer-reviewed articles). All excerpts to the deposition of Dr. Rascher are included in the Hilbert Declaration.

Defendants also suggest that the Court disregard Dr. Rascher's findings at this preliminary stage because Dr. Rascher allegedly failed to focus on several areas, including specific players rather than teams, the economic contribution of individual GLA class members, and whether retired players contributed to active player licensing. Regarding Dr. Rascher's analysis of the impact of history on team licensing, Defendants conveniently omit that portion of Dr. Rascher's testimony in which he explains that the value of a vintage team is derived, in part, from the retired players who played on that team. Rascher Tr. at 20:15-21:3; *see also* Expert Reply Report of Dr. Daniel A. Rascher ("Reply Report") at 4 (Declaration of Jason Clark in Support of Defendants' Motion In Limine No. 4 ("Clark Decl.") Exh. 1) All referenced expert reports or supplemental export reports are attached to the Clark Declaration.

Dr. Rascher's analysis of this economic evidence is exactly how economists analyze qualitative, empirical data. Reply Report at 9-15 (discussing the materials on which Dr. Rascher relied for his conclusions, including evidence presented by Defendants' expert, Dr. Noll). Dr. Rascher then added to this an econometric analysis, based on data used in his own published academic work. *See* Supplemental Rascher Report dated August 27, 2008 and Rascher Tr. at 5:16-13:25.

Defendants claim that "Dr. Rascher conceded that <u>all</u> of the articles he relied upon do not

---

[2] Defendants' expert has drawn conclusions from exactly these types of conventional materials. Reply Report at 13.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

- 2 -

OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE NO. 5
C07 0943 WHA

address the brand equity of NFL player licensing." Motion at 2. This is untrue. Even though Defendants' counsel repeatedly tried to get Dr. Rascher to agree with this conclusion, Dr. Rascher did not agree. Rascher Tr. at 19:22-22:11.

As to the second area – the economic contribution of GLA class members – according to Defendants' expert, the fact that Defendants did not pay GLA Class members pursuant to a GLA indicates that those players lack value. Dr. Rascher clearly showed that this analysis was circular and that Dr. Noll's own analysis of class members' *ad hoc* deals itself demonstrated the aggregate value of retired player licensing. Reply Report at 7-8.

With respect to the third area – active player rights – Defendants claim that Dr. Rascher did not consider whether retired player rights contributed to the value of active player licensing rights. However, this was not the question posed to him, nor is it relevant to the issue at hand. Dr. Rascher considered whether retired players, in the aggregate, have value, which is relevant, for example, to why the NFLPA repeatedly sought out retirees to sign GLAs.

**B. Dr. Rascher's Opinions and Testimony on the Share of the GLR Pool Improperly Retained by Defendants is Reliable and Admissible Because, Among Other Reasons, it is Based on Defendants' Own Documents.**

Defendants challenge Dr. Rascher's opinions concerning Defendants' retention of 64% to 69% of shared gross licensing revenues from 2003 to 2007. This challenge is baseless because Dr. Rascher's calculation is correct, which Defendants do not (and cannot) dispute.

Defendants claim that Dr. Rascher's opinions on this issue are irrelevant because "[e]ither the retired players are, or are not, entitled to a portion of the GLR pool, but how the GLR pool was divided among the Defendants has no bearing on this issue." Motion at 4. On the contrary, one purpose of Dr. Rascher's testimony is to assist the trier of fact by showing that Defendants underfunded the GLR pool by retaining a far greater percentage of licensing revenues than is customary in the industry, which is relevant to the fiduciary duty claim that Defendants improperly withheld funds that should have gone to retired players.

Defendants challenge Dr. Rascher's opinions and testimony on the ground that they are based on the GLR spreadsheets Defendants produced in native format, instead of the audited financial statements Defendants produced. Defendants fail to state that, as the below chart shows,

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

- 3 -

OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE NO. 5
C07 0943 WHA

the audited financial documents Defendants claim Dr. Rascher *should* have relied on provide the same numbers that Dr. Rascher *actually* relied on.

| Player Share of GLR | | | | | |
|---|---|---|---|---|---|
|  | 2003 | 2004 | 2005 | 2006 | 2007 |
| As Reported by Dr. Rascher | 36% | 36% | 36% | 31% | 32% |
| As per Audited Financials[3] | 36% | 36% | 36% | 31% | 32% |

Defendants also attack Dr. Rascher's opinion that the customary percentage of licensing revenue retained by a sports union is within the range of 10% to 40% on the ground that this range is too broad. However, such variation does not make this range less reliable.

Defendants try to discredit Dr. Rascher's analysis on the ground that it includes comparisons to license commission rates for non-union entities. Motion at 5. However, Defendants "present[] no evidence as to why a licensing agency would charge more (or less) to an entity because they share revenues with players or because they are a union." Reply Report at 29.

Defendants claim that Dr. Rascher "merely compared the percentages he was directed to compare by Plaintiffs' counsel without any analysis of whether the non-union entities were comparable." Motion at 5. This is patently false and unsupported by the deposition testimony cited by Defendants. On the contrary, Dr. Rascher states that "[m]y analysis was to look at what was paid out directly to the players and then look at what was customary in different aspects of sports." Rascher Tr. at 63:25-64:2.[4]

Defendants also seek to discredit Dr. Rascher's opinions on the ground that he only

---

[3] *See* PI096261, PI096199, PI096135, PI096071, and PI96010.
[4] Defendants cite two cases to support the proposition that Dr. Rascher did not consider comparable data. Neither is applicable. In *Domingo v. T.K., M.D.*, the expert testimony excluded sought to link animal studies to human patients without adequate explanation for the connection. *Domingo*, 289 F.3d 600 (9th Cir. 2002). In this case, Dr. Rascher has expressly considered and addressed why it is appropriate to consider comparable sports entities in his analysis. In *Boucher v. U.S. Suzuki Motor Corp.*, testimony on lost earnings was excluded because the expert assumed plaintiff would work 40 hours/week, 52 weeks/year with regular pay increases, directly contradicting the record evidence which showed that plaintiff had a sporadic employment history with fluctuating levels of income and long periods of unemployment. *Boucher*, 73 F.3d 18 (2d Cir. 1996). Interestingly, Defendants include a quote from *Boucher* in which the Court mentions an "apples to oranges" comparison. This quote is disingenuous in that Dr. Rascher repeatedly characterized his comparisons as "apples to apples", despite Defendants' counsel's repeated attempts to get Dr. Rascher to say the contrary. Rascher Tr. at 65:14-68:18.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE NO. 5
C07 0943 WHA

considered one other sports union – the MLBPA.[5] Defendants rely on *U.S. Info. Sys. v. IBEW Local Union No. 3* to support the proposition that this sample size is too small. But Defendants misstate Dr. Rascher's study. Dr. Rascher was not attempting a statistical sampling exercise, but rather was estimating a range by looking at a variety of comparable transactions. Rascher Report at 12-13.

Defendants then seek to discredit Dr. Rascher's comparison with the MLBPA by disaggregating the amount of license revenue retained by the MLBPA on year-by-year basis. Motion at 6. They also seek to fault Dr. Rascher for not taking into account the respective union's fluctuating collective bargaining situations and the need to build up "war chests." Motion at 6. However, Dr. Rascher's decision to present his findings as an *average* from 2003 to 2007 is a far superior method to the inaccurate and unpredictable per-year calculation suggested by Defendants, especially given the delay between receipt and disbursement of revenues.

### C. Dr. Rascher's Opinion on the Equal Sharing of GLR is Based on Reliable and Admissible Evidence, Including Defendants' Own Practices.

Defendants challenge Dr. Rascher's opinion that "the custom, across several sports, is that shared licensing revenue pools are generally shared equally," Motion at 6. The crux of Defendants' argument is that Dr. Rascher failed to verify the otherwise authoritative materials on which he relied for his conclusions.[6] Defendants offer no support for the absurd argument that Dr. Rascher was obligated to confirm the underlying sources used in the credible sources on which he relied.

Defendants also complain that Dr. Rascher's opinion concerning equal share royalties is invalid because there are numerous other ways in which such funds could be distributed. This

---

[5] The other cases on which Defendants rely, *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, also favor Plaintiffs. In that case, the issue was not the adequacy of the sample size, but rather whether the sample culled by counsel for use by the expert was biased. *Rowe*, No. 98-CV-8272, 2003 U.S. Dist. LEXIS 15976, *5-8 (S.D.N.Y. Sept. 15, 2003). In this case, Defendants do not allege that the samples Dr. Rascher reviewed were provided by Plaintiffs' counsel, nor could they.

[6] Such materials are clearly of the type on which an expert can rely. *See, e.g., United States v. Floyd*, 281 F. 3d 1346, 1349 (11th Cir. 2002) (interviews); *Stevens v. Cesna Aircraft Co.*, 634 F. Supp. 137, 142-43 (E.D. Pa. 1986), aff'd 806 F. 2d 254 (3rd Cir. 1986) (interviews); *Dukes v. Wal-Mart. Inc.*, 222 F.R.D. 189, 197 (N.D. Cal. 2004) (declarations).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

- 5 -

OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE NO. 5
C07 0943 WHA

flies in the face of *Daubert,* 509 U.S. at 595 (the inquiry is a flexible one, and its "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate").

### D. Defendants Misstate Dr. Rascher's Testimony Concerning Defendants' "Market Power", Which is Based on Reliable and Admissible Documentation.

Defendants claim that Dr. Rascher did not undertake an economic analysis to determine Defendant's market power. Motion at 7. Under the current briefing, however, Defendants completely ignore the directional/qualitative analysis Dr. Rascher did conduct, which does not require cross-elasticities and formal market definitions. Rascher Report at 13-15. Indeed, as Dr. Rascher attests, negotiating leverage can exist in a situation in which, as here, an organization may or may not have broad market power *per se*, but can still exercise leverage by virtue of exclusivity over the rights being licensed. Rascher Report at 13-15.

Lastly, Defendants challenge Dr. Rascher's opinion on the ground that it is irrelevant to Plaintiffs' claim for breach of contract. Even assuming *arguendo* this was true, because Dr. Rascher's opinion also contemplates that Defendants improperly used their "leverage" to provide a lower share of group licensing revenue to their retired player members and to prevent those players from pursuing opportunities in the marketplace, it is still relevant to and reliable in support of Plaintiffs' claim for breach of fiduciary duty.[7]

## III. CONCLUSION

For the reasons given above, Defendants' Motion to exclude the testimony of Dr. Daniel A. Rascher should be denied.

---

[7] Defendants also challenge Dr. Rascher's opinion because he is not an expert on whether there exists a "principal-agent" problem within the NFLPA to give it leverage over its members. Motion at 7. Dr. Rascher raised this point solely in response to Dr. Noll's conclusory statement that the NFLPA was immune to malfeasance against its members simply by virtue of having a representative structure. Noll Report at 55-56. As Dr. Rascher explained in his Reply Report, Dr. Noll's claim is naïve in the face of extensive economic evidence that principal-agent problems often exist even within democratic institutions. Reply Report at 34-36.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

- 6 -

OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE NO. 5
C07 0943 WHA

Dated: October 6, 2008

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Ryan S. Hilbert
Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
Noel S. Cohen (SBN 219645)
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
Lewis T. LeClair (SBN 077136)
Jill Adler Naylor (SBN 150783)
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

20207604.4

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

- 7 -

OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE NO. 5
C07 0943 WHA