Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019-6092

tel   +1 212 259 8050
fax  +1 212 259 7013
jkessler@dl.com

# DEWEY & LEBOEUF

October 17, 2008

The Honorable William Alsup
United States District Court,
Northern District of California
450 Golden Gate Avenue
San Francisco, CA  94102

      Re:    *Parrish v. National Football League Players Association, et al.*
                  Case No. C07-0943 WHA

Dear Judge Alsup,

      As requested by the Court at the Final Pretrial Conference, Defendants NFLPA and Players Inc hereby submit this letter brief in further support of their Opposition to Plaintiffs' Motion in Limine 4.  The law of the District of Columbia, as discussed in detail below, makes it clear that evidence of the "subjective" intent and understanding of the parties to a contract is admissible and highly probative where, as here, a contract is not unambiguous.  <u>Am. Canoe Ass'n, Inc. v. D.C. Water & Sewer Auth.</u>, 306 F. Supp. 2d 30, 43 (D.D.C. 2004) ("When the express terms of a legal document are ambiguous, extrinsic evidence may be used to interpret it. Specifically, extrinsic evidence is used to determine the circumstances surrounding the making of the contract so as to ascertain what a reasonable person in the position of the parties would have thought the words meant.  <u>Therefore, both objective and subjective (the intentions of the parties)</u> evidence can be relevant.") (emphasis added) (quotations omitted).[1]

      Plaintiffs' Motion requests that the Court exclude any evidence "tending to prove the intent of the parties to [Defendants'] third-party licensing agreements," including "evidence to show what the contracting parties intended while drafting the contract."  Pls.' Mot. in Limine No. 4 at 1 & 2. For example, Plaintiffs would have the Court exclude the following highly probative testimony about the licensees' contemporaneous understandings of their respective license agreements with Defendants at the time those agreements were entered into:

> Well, my understanding of what NFL players referred to on the last line of page 1 of [the 2005 agreement between Electronic Arts, Inc. ("EA") and Players Inc] was active NFL players….  Now, you – you may not – you know you may not like that

---

[1] Attached as Exhibit 1 to the Declaration of Molly Donovan filed concurrently herewith ("Donovan Decl.").  For the Court's convenience Defendants have attached as exhibits to this letter brief the relevant sections of the Standard Civil Jury Instructions for the District of Columbia (2008), in addition to other key authorities.

> understanding, but I'm telling you, sir, that's my understanding of what it meant.[2]
>
>          \*      \*      \*
>
> Q: Did you have occasion to read that language in paragraph 2-A of the [2004 Topps Agreement]?
> A: Yes.
> Q: And when it says that it is granting a license to the "NFL Players referenced in paragraph 1-A above," what did you understand that phrase to include … if you had any understanding?
> A: Active players.[3]
>
>          \*      \*      \*
>
> The 2005 [Fathead LLC] License Agreement was not intended to, and did not, include the rights of any retired players…. Fathead's and Players Inc's mutual understanding that the 2005 License Agreement included only active players was discussed orally and is also reflected in the language of the 2005 License Agreement.[4]

It is obvious why Plaintiffs want the Court to exclude such highly probative testimony, but District of Columbia law is clear that when, as here, a contract is ambiguous, evidence about a party's "subjective" understanding and intent in entering into that contract is admissible (see case discussion infra at pp. 4-5). Furthermore, in this case, testimony from the third party licensees about their contemporaneous understandings of the license agreements – coupled with the objective manifestation of such understanding (e.g., their negotiations and course of dealings with respect to retired players) – is perhaps the most probative evidence.

As a threshold matter, even Plaintiffs do not dispute the well-established rule that "[w]here a contract is not 'wholly unambiguous,' the parties have the right under principles of American contract law to present oral testimony and other extrinsic material to aid in its interpretation." Davis v. Chevy Chase Financial Ltr., 667 F.2d 160, 170 (D.C. Cir. 1981); Sundown, Inc. v. Canal Square Assocs., 390 A.2d 421, 432 (D.C. 1978) (extrinsic evidence is admissible to "explain those terms when there is an ambiguity in the language of an agreement") (quoting Trans World Airlines, Inc. v. World Wide Airlines, Inc., 206 A.2d 821, 823 (D.C. 1965)).

And as set forth in detail in Defendants' Opposition to Plaintiffs' Motion in Limine No. 4, there can be no credible dispute that the third party license agreements are ambiguous with respect to whether or not retired player rights were conveyed. Indeed, the Court's rulings clearly

---

[2] Defs.' Mot. for Summ. J. at 22 (June 13, 2008) (quoting Rule 30(b)(6) Deposition of EA's Joel Linzner).

[3] Defs.' Mot. for Summ. J. at 22 (quoting Rule 30(b)(6) Deposition of Topps's Adam Zucker).

[4] See Declaration of Linda Castillon, ¶¶ 3-5 (June 7, 2008) (previously filed as Exhibit 11 to the Declaration of David Greenspan in Support of Defendants' Motion for Summary Judgment).

hold that the license agreements are susceptible to multiple interpretations – i.e., that the agreements may or may not license the rights to retired players who signed Retired Player Group Licensing Authorization forms. Compare Order Granting in Part and Denying in Part Pls.' Mot. For Leave to File an Am. Compl. at 6 (Nov. 14, 2007) ("It may well turn out that defendants' interpretation of this agreement is the correct one . . . .") with Order Denying Defs.' Mot. for Summ. J. at 5 (Aug. 6, 2008) ("Defendants argue that the EA agreement and defendants' similar agreements with other third parties did not include retired player rights. The plain wording of that contract, however, indicates otherwise – or so a jury could reasonably conclude.") (emphases added). Thus, there is no basis under District of Columbia law for excluding extrinsic evidence about the meaning of the relevant license agreements.

Indeed, the Court has already ruled at the Final Pretrial Conference that Defendants may introduce at trial extrinsic evidence such as the course of dealings of the parties to those license agreements, and evidence of anything that was discussed in the negotiations of those license agreements. See In re Bailey, 883 A.2d 106, 118 (D.C. 2005) ("Extrinsic evidence may include the circumstances before and contemporaneous with the making of the contract, all usages-habitual and customary practices-which either party knows or has reason to know, the circumstances surrounding the transaction and the course of conduct of the parties under the contract.") (quotations omitted). See also Standard Civil Jury Instructions for the District of Columbia (2008) ("D.C. Standard Instructions") (stating that when interpreting an ambiguous contract, the jury should consider "the circumstances that existed at the time the contract was made, including the apparent purpose of the parties in entering into the contract, the history of negotiations leading up to the contract," § 11.13, "the conduct of the parties in relation to [the] disputed words in the contract," id. at § 11.14, and evidence about any "special meaning" of the words in the contract "in accordance with the customs or usages of a particular trade or business," id. at § 11.15) (Donovan Decl. Exs. 2, 3 & 4).

The only open question as to the admissibility of extrinsic evidence is with respect to, in particular, the admissibility of evidence about the contracting parties' unexpressed but contemporaneous "subjective" understandings (if any) of the respective license agreements. As counsel for Defendants represented to the Court, it is well-established under D.C. law that such evidence is admissible. See Am. Canoe Ass'n, Inc. v. D.C. Water & Sewer Auth., 306 F. Supp. 2d 30, 43 (D.D.C. 2004) ("When the express terms of a legal document are ambiguous, extrinsic evidence may be used to interpret it. Specifically, extrinsic evidence is used to determine the circumstances surrounding the making of the contract so as to ascertain what a reasonable person in the position of the parties would have thought the words meant. Therefore, both objective and subjective (the intentions of the parties) evidence can be relevant.") (emphasis added) (quotations omitted) (Donovan Decl. Ex. 1); 1010 Potomac Assocs. v. Grocery Manufacturers of Am., 485 A.2d 199, 205 (D.C. 1983) ("Extrinsic evidence of the parties' subjective intent may be resorted to only if the document is ambiguous") (emphasis added) (Donovan Decl. Ex. 5); Am. First Inv. Corp. v. Goland, 925 F.2d 1518, 1522 (D.C. Cir. 1991) ("Because the terms 'loaned amount' and 'commitment' are not free from ambiguity, the contract cannot be interpreted as a matter of law and the case must be remanded so that the fact-finder can determine the parties' true intent.") (emphasis added) (Donovan Decl. Ex. 6); Lamphier v. Wash.

Hospital Center, 524 A.2d 729, 732 (D.C. 1987) ("[I]f the document is ambiguous, extrinsic evidence of the parties' subjective intent may be resorted to.") (Donovan Decl. Ex. 7) accord Noonan v. Williams, 686 A.2d 237, 241 (D.C. 1996); Rastall v. CSX Transp., Inc., 697 A.2d 46, 51-52 (D.C. 1997). See also Howard Univ. v. Lacy, 828 A.2d 733, 737 (D.C. 2003) ("Where an ambiguity is present, the intent and understanding of the parties is of critical importance. Extrinsic evidence of the parties' subjective intent may be resorted to…") (emphasis added) (quotations omitted); Jessamy Fort & Ogletree v. Lenkin, 551 A.2d 830, 831-32 (D.C. 1998) ("Neither of the competing interpretations proposed by the parties appears to us implausible from the face of the lease itself…As the parties' arguments make clear, the language is subject to more than one reasonable interpretation, and thus we cannot discern the intent of the parties without the aid of extrinsic evidence.") (quotations omitted); 1901 Wyoming Ave. Co-op Ass'n v. Lee, 345 A.2d 456, 463 (D.C. 1975) (the fact-finder should consider "the entire contract, the relations of the parties, their intentions, and the circumstances under which they executed the contract.") (emphasis added); Intercounty Constr. Corp. v. D.C., 443 A.2d 29, 32 (D.C. 1982) (in construing an ambiguous contract, "the court should look to the intent of the parties entering into the agreement."); Nofziger Comms., Inc. v. Birks, 989 F.2d 1227, 1230 (D.C. Cir. 1993) ("[W]hen the meaning of a contract provision is facially uncertain, a court may resort to an examination of extrinsic evidence, such as statements, course of conduct, and contemporaneous correspondence, aimed at discerning the intent of the parties.") (emphases added).[5]

       The D.C. Standard Instructions further make it clear that evidence about the contracting parties' subjective understanding of ambiguous terms of a contract is relevant, probative and admissible. As defense counsel highlighted to the Court at the hearing, the D.C. Standard Instructions specifically provide that juries should consider "the circumstances that existed at the time the [ambiguous] contract was made, including the apparent purpose of the parties in entering into the contract, the history of negotiations leading up to the contract and the statements of the parties about their understanding of the contract." D.C. Standard Instructions at § 11.13 (emphasis added). The Court stated at the Final Pretrial Conference that one possible interpretation of this language is that the "statements of the parties about their understanding of the contract" does not refer to statements of a witness testifying at trial, but to statements of a witness made during the contract negotiations. As set forth above, however, D.C. law expressly considers the "subjective" "understanding" of the contracting parties, and, consistent with this legal principle, the above section of the D.C. Standard Instructions identifies "the history of negotiations leading up to the contract" as a separate consideration from "the statements of the parties about their understanding of the contract." Id.

---

[5] This rule – that evidence of the parties' subjective intent with respect to an ambiguous contract is admissible – should not be confused with the rules governing the interpretation of an unambiguous contract, which does not apply here. In construing an unambiguous contract, the standard is an objective one: While it is commonly said that contracts are to be construed to effectuate the intent of the parties, where a contract is unambiguous intent is properly an objective, not a subjective, issue." Lumpkins v. CSL Locksmith, LLC, 911 A.2d 418, 422 (D.C. 2006). Where, however, a contract is ambiguous, evidence of the parties' intent is admissible and presents a question of fact for a jury. Supra at 3-4.

Any uncertainty about this interpretation of the D.C. Standard Instructions is resolved by the next sentence in Section 11.13 (which appears in Defendants' Memorandum in Support of Their Position on Disputed Jury Instructions (Oct. 8, 2008)): "In addition, [the jury] may consider the statements of any agent for a party about [his] [her] actions in negotiating or drafting the contract, or about [his] [her] understanding of the contract." Id. (emphases added); see also id. § 11.14-15 (stating that "other evidence presented to [the jury] about the meaning of the provisions" should be considered, as well as evidence about any "special meaning" of the words in the contract "in accordance with the customs or usages of a particular trade or business"); see also Defs.' Memo. In Support of Their Position on Disputed Jury Instructions at 10.

The admissibility of evidence about the contracting parties' subjective understandings of the agreements is further supported by the fact that Plaintiffs are complete strangers to the license agreements and are attempting to impose their own meaning to the agreements, even though the actual parties to the agreements (Defendants and their licensees) have a shared and contrary understanding (i.e., that retired player rights were not licensed). Courts have long recognized that such a stranger to a contract cannot disrupt the contracting parties' shared understanding. See, e.g., Reliance Standard Life Ins. Co. v. Matula, No. 05-C-0788, 2007 U.S. Dist. LEXIS 24523, *25 (E.D. Wis. Mar. 30, 2007) ("[D]efendants are trying to tell a party to an agreement [plaintiff] that that party's interpretation of its own agreement is wrong. As strangers to the Agreement, the . . . defendants are not in an authoritative position regarding what the Agreement means and how the parties to the Agreement interpret it."); Matsushita Elec. Corp. v. Loral Corp., No. 93-1435, 1994 WL 497955, *2 (Fed. Cir. Sept. 23, 1994) (rejecting a third party's interpretation of a license agreement where the original contracting parties both submitted declarations that they understood the contract to have a different meaning); Waddy v. Sears, Roebuck & Co., Nos. C-92-2903-VRW, 1994 WL 392483, *11 (N.D. Cal. July 8, 1994) ("Tucker's employment contract is defined by the understanding and intent of Sears and Tucker, not third parties to the contract."); Williams Tile & Marble Co., Inc. v. Ra-Lin & Assocs., 426 S.E.2d 598, 600 (Ga. Ct. App. 1992) (refusing to consider testimony by a non-party to an agreement because "the personal interpretation of a contractual provision by a stranger to the contract obviously has no probative relevance whatsoever"); Combs v. Hunt, 140 Va. 627, 640 (1924) ("[W]e know of no principle of law or public policy which forbids [the] operation [of an agreement] exactly as stipulated by the parties, with which, as already stated, a stranger to the contract has absolutely no concern.").

This common sense principle of law, which the Court noted at the Final Pretrial Conference makes intuitive sense, requires the admission of testimony about the contracting parties' subjective understanding of their contracts. In order to determine whether there is a shared understanding by the contracting parties, evidence of the contracting parties' shared understanding must first be adduced and admitted into evidence. Thus, it is especially warranted in this case, where Plaintiffs are complete strangers to the license agreements and are attempting to introduce their own contrary "interpretation," that "[t]estimony as to what the parties to a contract understood it to mean may . . . be admissible." Williams Tile & Marble, 426 S.E.2d at 600 (emphasis in original).

Further, to the extent Plaintiffs argue that the licensees may not testify about their understanding of the license agreements because that understanding was never objectively manifested or otherwise disclosed, they are wrong.[6] The record evidence – which will be further bolstered by the licensees' testimony at trial – unequivocally establishes that the parties' <u>objective</u> behavior and statements also reflect the fact that retired players were <u>not</u> licensed under the agreements at issue. For example, there is not one single example of a licensee ever utilizing a retired player's GLA rights without paying <u>additional</u> money for such rights. <u>See</u>, <u>e.g.</u>, Defs.' Mot. for Summary Judgment at 12-13 (quoting testimony of Topps 30(b)(6) witness: "It's my understanding and it always has been that [Topps] cannot make a trading card unless we obtain the rights individually from that retired player which we have to do through NFLPA. <u>We have never published a picture of a retired player without doing that</u>.") (emphasis added).

Finally, Plaintiffs' suggestion that extrinsic evidence is inadmissible with respect to an integrated agreement with a merger clause is a total distortion of D.C. law and must be rejected. <u>See</u> <u>NRM Corp. v. Hercules, Inc.</u>, 758 F.2d 676, 682 n.15 (D.C. Cir. 1985) ("Even if a contract is 'completely integrated,' the parol evidence rule does not preclude the trier of fact from considering extrinsic evidence in its effort to determine the <u>meaning</u> of an ambiguous contract.") (emphasis in original); <u>1010 Potomac Assocs.</u>, 485 A.2d at 205 (the interpretation of an ambiguous, integrated contract depends on the credibility of extrinsic evidence); <u>Amalgamated Transit Union v. Hinton</u>, 511 A.2d 433, 434-35 (D.C. 1986) (recognizing that extrinsic evidence is admissible in interpreting an integrated agreement); <u>Boomhower, Inc. v. Lavine</u>, 151 F.Supp. 563, 567 (D.D.C. 1957) (recognizing that parol evidence of the understanding of the parties is admissible to explain ambiguous language even in an integrated contract). Indeed, if Plaintiffs' illogical position were correct, extrinsic evidence could <u>never</u> be considered with respect to a contract containing a merger clause. This, as set forth above, is clearly not the law.[7]

---

[6] This issue arises in ordinary contract disputes that are between the contracting parties. In those cases, one party sometimes asserts that his subjective, but secret, intent at the time of the contract was something different than what was reflected in the parties' written agreement. Where that party, however, never before made such an assertion to his counter-party, he is precluded from making it for the first time during litigation in order to vary the clear writing. <u>See</u> <u>e.g.</u>, 11 <u>Williston on Contracts</u> § 33:1 (4th ed. 2008). Those cases are inapposite here where the agreement is ambiguous and the parties to the agreements have objectively manifested their understanding through their statements and course of dealings, in addition to their subjective understanding of the agreements.

[7] Defendants also note that the "authorities" cited in Plaintiffs' Motion in Limine No. 4 do not support their assertion that the Court should be "wary" of admitting parol evidence because of the presence of "merger" clauses in the license agreements. Pls' Mot. In Limine No. 4 at 4. Rather, Plaintiffs' cases simply support the inapposite proposition that a merger clause weighs against the use of parol evidence to try to show that there are <u>additional promises or warranties not stated in the written agreement</u>. <u>See id.</u> (citing <u>Bowden v. United States</u>, 106 F.3d 433, 439-40 (D.C. Cir. 1997) (court held "merger" clause did not necessarily preclude parol evidence) and <u>Martin & Martin, Inc. v. Bradley Enters., Inc.</u>, 256 Va. 288, 291 (1998) (excluding extrinsic evidence regarding an alleged oral promise to include a warranty of annual sales because "[t]he agreement does not contain a warranty of the amount of gross sales that the store generated annually, and, thus, the plaintiff may not seek to establish such warranty with parol

                                                      Respectfully submitted,

                                                     /s/ Jeffrey L. Kessler

                                                     Jeffrey L. Kessler

                                                     Counsel for Defendants

cc:    Peter Parcher, Esq.

---

evidence). These cases do not deal at all with the present situation, where extrinsic evidence is being offered to assist the fact finder in deciding the meaning of language already in agreements that are ambiguous and susceptible to more than one reasonable interpretation.