MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (Bar No. CA 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (Bar No. CA 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
Lewis T. LeClair (Bar No. 077136)
E-mail: lleclair@mckoolsmith.com
Jill Adler Naylor (Bar No. 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS, III on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC, a Virginia corporation,<br><br>Defendants. | No. C07 0943 WHA<br><br>PLAINTIFFS' SUPPLEMENTAL BRIEF ON PLAINTIFFS' MOTION IN LIMINE NO. 4 REQUESTING EXCLUSION OF PAROL EVIDENCE TENDING TO PROVE THE INTENT OF THE PARTIES TO THIRD-PARTY LICENSE AGREEMENTS<br><br>Date: October 17, 2008<br>Judge: Honorable William H. Alsup |

**TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| A. | INTRODUCTION | 1 |
| B. | THE CONTRACTS ARE FACIALLY UNAMBIGUOUS AS WELL AS INTEGRATED; THUS, PAROL EVIDENCE IS LEGALLY IMPROPER | 2 |
| C. | THE EXPRESS TERMS OF THESE AGREEMENTS INCLUDE A COLLECTIVE LICENSE TO BOTH ACTIVE AND RETIRED PLAYER RIGHTS | 2 |
| D. | DEFENDANTS AGREE THAT THE CONTRACT MAY BE CONSTRUED ACCORDING TO ITS PLAIN LANGUAGE | 4 |
| E. | DEFENDANTS' INTERPRETATION IS CONTRARY TO THE PLAIN LANGUAGE, IS NOT REASONABLE, AND DOES NOT CREATE AN AMBIGUITY. | 5 |
| F. | EVEN IF THE COURT FINDS AN AMBIGUITY, THE PARTIES' SUBJECTIVE INTENTIONS ARE NOT ADMISSIBLE | 7 |
| G. | DEFENDANTS ARE NOT PERMITTED TO REINTERPRET THE LICENSE AGREEMENTS TO THE DETRIMENT OF THOSE THEY REPRESENT | 8 |
| H. | CONCLUSION | 8 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bolling Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*,
  475 A.2d 382 (D.C. 1984) ................................................................................................ 2

*Combs v. Hunt*,
  125 S.E. 661 (Va. 1925) .................................................................................................. 8

*Haralson v. Fed. Home Loan Bank Board*,
  655 F. Supp. 1550 (D.D.C. 1987) .......................................................................... 2, 4, 7

*In re Bailey*,
  883 A.2d 106 (D.C. 2005) ......................................................................................4, 6, 7

*In re Leisure Corp.*,
  2007 WL 607696, *13 (N.D. Cal) ................................................................................... 8

*Matshushita Elec. Corp v. Loral Corp.*,
  1994 WL 497955, at *2 (Fed. Cir. Sept. 23, 1994) ....................................................... 8

*Reliance Std. Life Ins. Co. v. Matula*,
  2007 U.S. Dist. LEXIS 24523, *25 (E.D. Wis. Mar. 30, 2007) ..................................... 8

*Segal Wholesale, Inc. v. United Drug Serv.*,
  933 A.2d 780 (D.C. 2007) ............................................................................................. 2

*Shafford v. Otto Sales Co.*,
  119 Cal. App. 2d 849 (1953) ......................................................................................... 8

*Sobelsohn v. Am. Rental Mgmt. Co.*,
  926 A.2d 713 (D.C. 2007) ............................................................................................. 6

*Steele Foundations, Inc. v. Clark Const. Group, Inc.*,
  937 A.2d 148 (D.C. 2007) ............................................................................................. 5

*Tauber v. Quan*,
  938 A.2d 724 (D.C. 2007) ............................................................................................. 2

*ViChip Corp. v. Lee*,
  438 F.Supp.2d 1087 (N.D. Cal. 2006) ........................................................................... 8

*Waddy v. Sears, Roebuck & Co.*,
  1994 WL 392483, *11 (N.D. Cal. July 8, 1994) ............................................................ 8

*Wash. Props., Inc. v. Chin, Inc.*,
  760 A.2d 546 (D.C. 2000) ............................................................................................. 5

*Williams Tile & Marble Co. v. Ra-Lin & Assocs., Inc.*,
  426 S.E.2d 598 (Ga. App. 1992) ................................................................................... 8

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

**A.    Introduction**

Plaintiffs intend to introduce licensing agreements between Defendant PLAYERS INC and third-party licensees, such as Electronic Arts and Topps, at trial. Plaintiffs and Defendants disagree as to whether the Grant of License found at Paragraph 2(A)[1] of each Agreement includes certain retired players and, thus, the GLA Class. Plaintiffs seek to exclude parol evidence showing the subjective intent of the parties.

On its face, the Grant of License in Paragraph 2(A) incorporates all NFL players, including retired players, that are referenced in Paragraph 1(A). Paragraph 1(A), in turn, expressly includes retired players. Thus, the unambiguous language of the License Agreements indicates that retired players were included in the Grant of License.

Defendants offer an unreasonable interpretation of the License Agreement in an effort to exclude retired players from the Grant of License. This disagreement over the meaning of the contracts, however, does not mean that the contracts are ambiguous. In fact, Defendants themselves have stated that the License Agreements can be construed based on their plain language. *See* Defendants' Motion for Summary Judgment Brief ("Defs. MSJ Br."), Docket No. 371 at 18-20 (including a section entitled "It Is Clear from the Face of the License Agreements at Issue That They Do Not License Retired Players' Rights").

Nevertheless, Defendants intend to introduce parol evidence of the contracting parties, including evidence of the licensees' subjective intent when entering into license agreements. In fact, Defendants have called this subjective intent or subjective understanding evidence their "most important evidence".[2] This type of subjective intent evidence is not admissible, even where other extrinsic evidence is allowed to determine an ambiguity, because the District of Columbia follows an objective, "reasonable person" rule of contract interpretation. The Court should preclude the introduction of this and other improper parol evidence, especially since each License Agreement is fully integrated and contains a merger clause.

---

[1] There is no dispute that each of the 96 License Agreements are essentially the same for this purpose. As a result, Plaintiffs will focus on the 2005 Electronic Arts Agreement (Trial Ex. 29, Garza Dec. Ex. A) and the 2004 Topps Agreement (Trial Ex. 36, Garza Dec. Ex. B).

[2] Defendants' Opposition to Plaintiffs' Motion in Limine No. 4, p 1.

**B.  The Contracts Are Facially Unambiguous As Well As Integrated; Thus, Parol Evidence Is Legally Improper.**

The District of Columbia follows the objective law of contracts. This means that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, *regardless of the intent of the parties at the time they entered into the contract*, unless the written language is not susceptible to a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake." *Tauber v. Quan*, 938 A.2d 724, 729 (D.C. 2007) (emphasis added); *Haralson v. Fed. Home Loan Bank Board*, 655 F. Supp. 1550, 1554-55 (D.D.C. 1987) ("The subjective intent of the parties is not controlling."); *Bolling Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 475 A.2d 382, 385 (D.C. 1984) ("If [the contract] is facially unambiguous, we must rely solely upon its language as providing the best objective manifestation of the parties' intent.")

The Court or the jury can discern the meaning of these License Agreements from the plain language of the contracts. Both contracts refer to retired players, and contemplate retired players who have signed GLAs in the grant of licensing rights. Because the contracts are facially unambiguous, their plain language should be relied upon as providing the best objective manifestation of the parties' intent. *Segal Wholesale, Inc. v. United Drug Serv.*, 933 A.2d 780, 784 (D.C. 2007).

Further, each License Agreement contains a merger clause and is fully integrated: "There are no representations, promises, warranties, covenants or undertakings other than those contained in this Agreement, which represents the entire understanding of the parties."[3] The Court should exclude extrinsic evidence to interpret completely integrated agreements. *Segal Wholesale, Inc. v. United Drug Serv.*, 933 A.2d at 784.

**C.  The Express Terms Of These Agreements Include A Collective License To Both Active And Retired Player Rights.**

The License Agreements are facially unambiguous, and include retired players within their licensing provision. For example, the 2004 agreement with TOPPS contains an unequivocal

---
[3] EA Agreement at Paragraph 18 (Trial Ex. 29, Garza Dec. Ex. A); Topps Agreement at Paragraph 16 (Trial Ex. 36, Garza Dec. Ex. B).

representation that PLAYERS INC is acting on behalf of both active and retired players:

"NFLPA represents that the NFLPA has been duly appointed and is acting on behalf of the active *and retired football players . . .* who have entered into a Group Licensing Assignment . . . ."[4]

In each License Agreement, Paragraph 1(A), PLAYERS INC represents that it has acquired group licensing rights for certain active and retired players:

> PLAYERS INC represents that . . . the NFLPA has been duly appointed and is acting on behalf of the football players of the National Football League who have entered into a Group Licensing Authorization, either in the form attached hereto as Attachment "A" or through the assignment contained in Paragraph 4(b) of the NFL Player Contract, which have been assigned to PLAYERS INC . . . Licensee acknowledges that PLAYERS INC also on occasion secures authorization for inclusion in PLAYERS INC licensing programs from players, **including but not limited to retired players,** who have not entered into such Group Licensing Authorization, but who, nevertheless, authorize PLAYERS INC to represent such players for designated PLAYERS INC licensed programs.[5]

The second sentence of Paragraph 1(A) includes those retired players who, like Mr. Adderley, did not sign "such Group Licensing Authorization" (*i.e.*, the specific GLA form attached as Exhibit A, designed for active NFL players, or through the assignment contained in Paragraph 4(b) of the NFL Player Contract), but who instead signed a GLA designed for retired players with slightly different language. Further, in each agreement, PLAYERS INC granted a license in Paragraph 2(A) to the retired players referenced in Paragraph 1(A):

**GRANT OF LICENSE**

> Upon the terms and conditions hereinafter set forth, ***PLAYERS INC hereby grants to Licensee*** and Licensee hereby accepts the exclusive right, license and privilege of utilizing . . . ***the NFL players referenced in Paragraph 1(A) above***, for products(s) in the form of video and computer football simulation, arcade-style, and manager games.[6]

Thus, the Grant of License, *on its face*, is inclusive all of the NFL players referenced in Paragraph 1(A), including the retired players.

---

[4] Topps Agreement at Paragraph 1(A) (Trial Ex. 36, Garza Dec. Ex. B) (emphasis added).

[5] EA Agreement (Trial Ex. 29, Garza Dec. Ex. A) (emphasis added).

[6] EA Agreement at Paragraph 2(A) (Trial Ex. 29, Garza Dec. Ex. A); Topps Agreement at Paragraph 2(A) (Trial Ex. 36, Garza Dec. Ex. B).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

Further, the **"Royalty Payment"** section in each agreement provides that the payment to PLAYERS INC "shall be made by Licensee as specified herein whether or not Licensee uses the rights licensed hereunder."[7] Such payments do not relate to any specific player and, again, make no distinction between active and retired players.

Likewise, the **"Non-Interference Clause"** specifically references retired players: "Licensee agrees and acknowledges that it shall not secure or seek to secure, directly from any player who . . . at any time *in the past* was under contract to an NFL club."[8] As well, the "**Approvals**" paragraph specifically references retired players: "The list of players for whom PLAYERS INC has group licensing authorization is available to Licensee via the Internet. In addition, PLAYERS INC may secure authorization from players not listed on the Player Agreement *including but not* limited *to retired players.*"[9] Further, "jersey numbers for retired players must be submitted to PLAYERS INC for approval."[10]

**D.    Defendants Agree that the Contract May Be Construed According to its Plain Language.**

Defendants themselves have stated specifically to this Court that the License Agreements' meaning can be determined based upon only the Agreements' plain language. *See* Defs. MSJ Br. at 18-20. Although there is disagreement between the parties as to the meaning of the contract, it is not ambiguous simply because the parties disagree on its interpretation. *Haralson*, 655 F. Supp. at 1555 (noting that a contract "is not ambiguous simply because the parties disagree on its interpretation."). In such a case, this Court is compelled to determine what a reasonable person would have intended in entering into this agreement. *Id.* Nor is a poorly drafted document necessarily ambiguous. *In re Bailey*, 883 A.2d 106, 118 (D.C. 2005) (citing *Wash. Props., Inc. v.*

---

[7] EA Agreement at Paragraph 6(C) (Trial Ex. 29, Garza Dec. Ex. A); Topps Agreement at Paragraph 6(B) (Trial Ex. 36, Garza Dec. Ex. B).

[8] EA Agreement at Paragraph 13 (Trial Ex. 29, Garza Dec. Ex. A); Topps Agreement at Paragraph 11 (Trial Ex. 36, Garza Dec. Ex. B).

[9] EA Agreement at Paragraph 12(A) (Trial Ex. 29, Garza Dec. Ex. A); Topps Agreement at Paragraph 9 (Trial Ex. 36, Garza Dec. Ex. B).

[10] EA Agreement at Paragraph 12(A)(i) (Trial Ex. 29, Garza Dec. Ex. A).

*Chin, Inc.*, 760 A.2d 546, 548 (D.C. 2000) ("A contract is not ambiguous merely because the parties dispute its meaning, nor is it ambiguous merely because its terms are complex or 'could have been clearer.'"))

**E.  Defendants' Interpretation is Contrary to the Plain Language, Is Not Reasonable, and Does Not Create An Ambiguity.**

Defendants hope to reinterpret the License Agreements, both by misconstruing the language of the contracts in an unreasonable manner and by relying on unexpressed intentions behind the agreements. Defendants' and their licensees' litigation-driven interpretation of the License Agreements is nonsensical. It reads "retired players" out of the plain language of the contracts, specifically out of the second sentence of paragraph 1(A) and hence, out of paragraph 2(A), the Grant of License. Defendants' proffered interpretation re-invents the meaning of the words "retired players" to mean "not retired players." It directly contradicts the language of the agreements.

For example, in the apparent hope that the words will go away, Defendants first arrive at their destination by simply dismissing the language. They refer to the phrase "retired players" in turn as "boilerplate,"[11] "merely an acknowledgement,"[12] "merely a reference,"[13] or simply a "sentence fragment."[14] But boilerplate, acknowledgements, references and sentence fragments count in contract interpretation. *Steele Foundations, Inc. v. Clark Const. Group, Inc.*, 937 A.2d 148, 154 (D.C. 2007) ("Contractual provisions are interpreted taking into account the contract as a whole, so as to give effect, if possible, to all of the provisions in the contract.")

Secondly, Defendants attempt a distinction between retired players and active players by relying on the words "on occasion" and "designated" in the second sentence of paragraph 1(A). In essence, Defendants try to state that the Grant of License does not include the retired players because they could only participate in "designated PLAYERS INC licensed programs" and only

---

[11] Defs.' Opp'n to Pls. Motion in Limine No. 4, p. 2, 5.

[12] Defs.' Opp'n to Pls. Motion in Limine No. 4, p. 3.

[13] Defs.' Opp'n to Pls. Motion in Limine No. 4, p. 4.

[14] Defs.' Opp'n to Pls. Motion in Limine No. 4, p. 6.

1  sign GLAs "on occasion." But the Grant of License itself makes no such distinction. Moreover,
2  one could reasonably interpret Defendants' Group Licensing Program under the GLAs as a
3  "designated program."

4  Similarly, Defendants argue that this second sentence of paragraph 1(A) refers only to *ad
5  hoc* agreements and that the Licensees would not have paid twice for retired players, once under
6  the GLA program and again for ad hoc agreements. But the evidence has shown that it was
7  customary for the Licensees to pay for both a group licensing fee and "ad hoc" agreements.

8  In its most blatant example, Defendants argue that "retired player" must mean "not retired
9  player" because in the context of fantasy football, only active players are used. But this is not
10 true either. Plaintiffs have provided this Court with at least two examples of fantasy football
11 licensees using retired players.[15] As well, Defendants' argument that the "**Approvals**" internet
12 website lists only active players and therefore, the Grant of License also includes only active
13 players is nonsensical. The "**Approvals**" provision itself refers to retired players: "The list of
14 players for whom PLAYERS INC has group licensing authorization is available to Licensee via
15 the Internet. In addition, PLAYERS INC may secure authorization from players not listed on the
16 Player Agreement *including but not limited to retired players.*"[16]

17 Finally, Defendants rely on the District of Columbia Model Jury Instruction 11:14 for
18 their argument that their extrinsic evidence is warranted and legally permissible. But this type of
19 jury instruction applies only after a legal finding of ambiguity, which this Court has not made.
20 Only if a contract is first determined by the Court to be ambiguous will external evidence be
21 admitted to explain the surrounding circumstances and the position and actions of the parties at
22 the time of contracting. The ultimate interpretation then becomes a question for the finder of fact.
23 *Sobelsohn v. Am. Rental Mgmt. Co.,* 926 A.2d 713, 718 (D.C. 2007); *In re Bailey,* 883 A.2d at
24 118 ("In order to determine whether a contract provision has more than one reasonable
25 interpretation, it is necessary to look at the face of the language itself, giving the language its

---

[15] Defs' MSJ Br. at 28-29.

[16] EA Agreement at Paragraph 12(A) (Trial Ex. 29, Garza Dec. Ex. A); Topps Agreement at Paragraph 9 (Trial Ex. 36, Garza Dec. Ex. B).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

plain meaning, without reference to any rules of construction.") (internal quotation omitted). Even in this event, any contract interpretation must be objective, that is, "what a reasonable person in the position of the parties would have thought the disputed language meant." *Id.* Defendants apparently concur with this position, at least when it benefitted them to do so. *See* Defs. MSJ Br. at 20:22-21:4 (arguing that it was appropriate to consider extrinsic evidence only once an ambiguity was determined as a matter of law).

### F. Even if the Court Finds An Ambiguity, The Parties' Subjective Intentions Are Not Admissible.

Even if the Court finds that the language is ambiguous, the Court should still exclude evidence of unexpressed subjective intentions. *See Haralson*, 655 F. Supp. at 1555 ("[E]ven if Haralson subjectively thought that the Bank Board agreed to relinquish its ability to impose a conservator, this Court is compelled to determine what a reasonable person would have intended in entering into this agreement."); *Bailey,* 883 A.2d at 118 ("Extrinsic evidence may include the circumstances before and contemporaneous with the making of the contract, all usages -- habitual and customary practices -- which either party knows or has reason to know, the circumstances surrounding the transaction and the course of conduct of the parties under the contract.").

This impermissible subjective intention or understanding is the very type of prohibited extrinsic evidence that Defendants seek to introduce. Specifically, Defendants seek to introduce the impermissible subjective "understanding" of EA and Topps through their representatives, Joel Linzner and Adam Zucker. *See* Defs.' Opp'n to Pls.' Mot. In Limine No. 4, p. 1-2, citing Linzner Depo and Zucker Depo. ("Well, my understanding of what NFL players referred to on the last line of page 1 . . . was active NFL players. . . . [T]hat's my understanding of what it meant."); (Q: "And when it says that it is granting a license to the 'NFL Players referenced in paragraph 1-A above,' what did you understand that phrase to include . . . if you had any understanding?" A: "Active Players.").

This type of subjective intent or understanding of the parties should not be admissible under an objective rule of contract interpretation; instead the contract must be interpreted only according to a reasonable person standard.

### G. Defendants Are Not Permitted To Reinterpret The License Agreements To The Detriment Of Those They Represent.

Defendants posit, as well, that because the GLA Class is not a party to the License Agreements, the License Agreements can only mean what Defendants and their Licensees say that they mean. This argument is a red herring and should be ignored. Defendants negotiated these third-party licenses while operating as representatives of the class members, and those licenses directly affected Plaintiffs' economic interests, even if, in the strictest sense, they are not parties to the License Agreements. For that reason, Plaintiffs are entitled to a legitimate contract interpretation. For example, in *Shafford v. Otto Sales Co.*, 119 Cal. App. 2d 849, 859-60 (1953), where a broker's commission was at stake in a third-party contract, the Court allowed the non-party broker to submit evidence as to its true nature, whether a sales or factoring arrangement, because his commission depended on it. *Shafford*, 119 Cal. App. 2d at 860. *See also ViChip Corp. v. Lee*, 438 F. Supp. 2d 1087, 1097-98 (N.D. Cal. 2006) (entity with a direct economic interest or involvement in the relationship embodied among the parties to the agreement is not a stranger to the contract); *In re Leisure Corp.*, 2007 WL 607696, *13 (N.D. Cal) (Prochnow was not a stranger to the relationship between Leisure Corporation and Law Finance Group because the Factoring Agreement explicitly required Prochnow to adjust his appellate lien rights in the pending judgment to those of Law Finance Group.) Defendants' "stranger cases" are inapposite.[17]

### H. CONCLUSION

The jury should be permitted to examine the plain language of the License Agreements

---

[17] None of Defendants' cases cited in Footnote 61 of their Motion for Summary Judgment Brief support their assertions. See Defs.' MSJ Br. at 21 n.61. For example, in four of their cases, the "understanding" offered by the "stranger" was contrary to the plain language of the contract – the exact opposite of what is proffered by defendants in this matter. *See Reliance Std. Life Ins. Co. v. Matula*, 2007 U.S. Dist. LEXIS 24523, *25 (E.D. Wis. Mar. 30, 2007) (whether an insured is covered by a life insurance policy that is part of an employee welfare benefit plan governed by ERISA cannot be changed by understanding of third party that is contrary to all the evidence); *Williams Tile & Marble Co. v. Ra-Lin & Assocs., Inc.*, 426 S.E.2d 598, 600 (Ga. App. 1992) (party cannot offer evidence of stranger to contradict clear and unambiguous terms of a contract); *Combs v. Hunt*, 125 S.E. 661, 640 (Va. 1925) (the injured party cannot convert another's indemnity insurance policy to a liability insurance policy, contrary to the express terms of the insurance contract); *Matshushita Elec. Corp v. Loral Corp.*, 1994 WL 497955, at *2 (Fed. Cir. Sept. 23, 1994) (summary judgment granted where the plain and unambiguous meaning of the written agreement, consistent with other evidence, showed there was simply no genuine issue to be resolved). Defendants' fifth case is simply inapposite. *Waddy v. Sears, Roebuck & Co.*, 1994 WL 392483, *11 (N.D. Cal. July 8, 1994) (summary judgment holding that "the understandings of other employees as to the nature of their employments, however, are irrelevant to the question of whether Tucker himself had an implied for-cause employment contract").

90036323.1                                        8

unencumbered by Defendants' extrinsic evidence.  Even in the event of an ambiguity and the offer of some extrinsic evidence, the Court should prohibit subjective intent or understanding evidence offered by Defendants or third-party licensees.  For the reasons given above, Plaintiffs' Motion In Limine No. 4 to exclude parol testimony related to the License Agreements should be granted.

Dated:  October 17, 2008

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By:   /s/ Ryan S. Hilbert
    Ronald S. Katz (SBN 085713)
    Ryan S. Hilbert (SBN 210549)
    Noel S. Cohen (SBN 219645)
1001 Page Mill Road, Building 2
Palo Alto, CA  94304-1006
Telephone:  (650) 812-1300
Facsimile:  (650) 213-0260

MCKOOL SMITH, P.C.
Lewis T. LeClair (SBN 077136)
Jill Adler Naylor (SBN 150783)
300 Crescent Court
Dallas, TX 75201
Telephone:  (214) 978-4984
Facsimile:  (214) 978-4044

*Attorneys for Plaintiffs*