Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019-6092

tel   +1 212 259 8050
fax  +1 212 259 7013
jkessler@dl.com

# DEWEY & LEBOEUF

October 20, 2008

The Honorable William Alsup
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA  94102

      **Re:**    *Parrish v. National Football League Players Association, et al.*
              **Case No. C07-0943 WHA**

Dear Judge Alsup,

      Defendants NFLPA and Players Inc hereby submit this Letter Brief in response to Plaintiffs' objections to Defendants' deposition designations of Warren Friss, the Rule 30(b)(6) representative of Topps Company, Inc. ("Topps"), whose deposition was taken pursuant to a subpoena issued by Plaintiffs. Topps is a third-party to this action, has no affiliation with either of the Defendants, and is in no way subject to the control of the Defendants.

      On March 31, 2008, Plaintiffs (<u>not</u> Defendants) subpoenaed Mr. Friss in his individual capacity, and also subpoenaed Topps to produce a corporate representative. <u>See</u> Subpoenas of Warren Friss and Topps Company, Inc. (Exhibits A and B, respectively, to Declaration of Roy Taub (filed concurrently herewith) ("Taub Decl.")). Topps designated Mr. Friss (as well as Adam Zucker).

      Plaintiffs took Mr. Friss's deposition on April 4, 2008, where Mr. Friss was defended by Topps's outside counsel. Significantly, it was <u>Plaintiffs' counsel</u> that first put at issue a prior declaration Mr. Friss had submitted in this action during the deposition by marking it as an exhibit at the outset of Mr. Friss's direct examination. <u>See</u> Friss Depo. at 8:10-20 (Taub Decl., Ex. C); <u>See</u> Declaration of Warren Friss at ¶ 2 (Oct. 10, 2007) (Taub Decl., Ex. D) ("It was Topps' understanding that it did not by virtue of the 2004 License Agreement obtain the rights to any retired players. As to retired players, the player would have to individually designate his specific participation in a specific Topps program involving retired players for Topps to have his licensing rights.").

      Plaintiffs' counsel then proceeded to try to discredit the truthfulness of the declaration. For example, Plaintiffs' counsel tried (unsuccessfully) to establish through his questioning that Mr. Friss did not stand by the substance of his declaration because he had not written the original draft of that declaration. <u>See</u> Friss Depo. at 18:20-19:13 (Taub Decl., Ex. C); <u>see also</u> <u>id.</u> at 8:23-11:17 (Plaintiffs' counsel asking who wrote the declaration and who selected the exhibits to be attached to the declaration), 23:7-24:11 (Plaintiffs' counsel asking how Mr. Friss obtained a

particular ad hoc license agreement that was attached to his declaration).  In doing so, Plaintiffs' counsel opened the door for Defendants' counsel to address the accuracy of the declaration on re-direct examination.

Plaintiffs' counsel continued to pursue this line of questioning (and thus further opened the door for responsive re-direct examination) by asking Mr. Friss about the meaning of specific statements in his declaration:

> Q: The next sentence [of the Friss Declaration] says, "As to retired players, the player would have to individually designate his participation in a specific Topps program involving retired players for Topps to have his licensing rights."  What did you mean by the phrase "individually designate his participation"?
> A: That there would have to be an agreement with the retired player that specifically authorized us to use his image.

Friss Depo. at 19:14-24 (Taub Decl., Ex. C); see also id. at 18:20-22 ("Q:  Let's go back to the first page of Exhibit 407, paragraph two of your declaration.  A:  Okay.").

Once Plaintiffs' counsel asked these questions to Mr. Friss (a third party), Defendants responded by asking Mr. Friss about the accuracy of the declaration that Plaintiffs had just tried to discredit.  Moreover, as set forth below, leading questions were proper in this context (Point I), and, regardless, many of the questions on defense counsel's re-direct examination were either (a) not objected to by Plaintiffs' counsel (and thus form objections were not preserved), or (b) not leading (Point II).  Accordingly, Plaintiffs' untimely and/or meritless objections should be overruled.

## I.   Defendants' Questions to Mr. Friss About His Declaration Are Not Objectionable

The questions asked by defense counsel to Mr. Friss and Topps – both third-parties – are not objectionable.  Mr. Friss is not within the control of Defendants, and not within the subpoena power of the Court.  His deposition testimony was given pursuant to subpoenas issued by Plaintiffs, not Defendants.  And, Mr. Friss is now being offered as a witness in Plaintiffs' case-in-chief.  In such circumstances, admitting the testimony at issue is wholly warranted.

In fact, it is well-settled that counsel may propound leading questions even "to his or her own witness when such witness has been called as an adverse witness by opposing counsel."  Stahl v. Sun Microsystems, Inc., 775 F. Supp. 1397, 1398-99 (D. Colo. 1991) (emphasis added) (citing Advisory Committee Notes, 56 F.R.D. 183, 276 (1972); Shultz v. Rice, 809 F.2d 643, 654-55 (10th Cir. 1986); Ardoin v. J. Ray McDermott & Co., 684 F.2d 335, 336 (5th Cir.1982); Oberlin v. Marlin American Corp., 596 F.2d 1322, 1328 (7th Cir.1979); Annotation, Cross-examination by leading questions of witness friendly to or biased in favor of cross-examiner, 38 A.L.R.2d 952 (1954 and Supp.1989 and 1991)).

As the Sixth Circuit has explained in an oft-cited decision,

>[w]hile Federal Rule of Evidence 611(c) permits the use of leading questions when a party calls a witness identified with an adverse party, there is no complimentary provision requiring such a witness to be cross-examined without the use of leading questions by the party to whom that witness is friendly. This matter is within the court's traditional discretion to control the mode of interrogation.

Morvant v. Const. Aggregates Corp., 570 F.2d 626, 635 (6th Cir. 1978).

The Federal Rules of Evidence provide the trial court with "the discretion to implement approaches to ensure a fair, effective, and well-organized trial for the benefit of the fact finder." Stahl, 775 F. Supp. at 1399; see also Alpha Display Paging, Inc. v. Motorola Commc'ns & Elecs., Inc., 867 F.2d 1168, 1171 (8th Cir. 1989) ("[A] district court must be given great discretion in governing the mode of interrogating witnesses."); United States v. Durham, 319 F.2d 590, 592 (4th Cir. 1963) ("[T]he extent to which the use of leading questions may be indulged or limited is a matter primarily for the discretion of the trial judge and an appellate court will intervene only if there is a clear abuse of discretion.").

Such discretion is guided by consideration of the goals delineated in Federal Rule of Evidence 611, which provides that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) to avoid needless consumption of time." Fed. R. Evid. 611(a).

Permitting the leading questions designated by Defendants (and the answers thereto) to be read to the jury at trial is wholly consistent with Federal Rule of Evidence 611. It would both "avoid neeedless consumption of time" and "make the . . . presentation effective for the ascertainment of the truth," (id.), especially since they directly rebut the line of questioning made by Plaintiffs during their questioning of Mr. Friss, namely whether the Friss Declaration accurately portrayed Mr. Friss's conduct and behavior with respect to the 2004 and 2007 Topps license agreements (i.e., whether these license agreements conveyed any retired player rights). Indeed, in the absence of this testimony, the jury would receive a distorted picture of the testimony of Mr. Friss – who is not within Defendants' control and not within the subpoena power of the Court – since Defendants' examination was done only after Plaintiffs opened the door with this third-party witness.

The Eastern District of North Carolina addressed a very similar fact pattern on this issue only a month ago. In that case, the trial court refused to strike deposition excerpts containing leading questions asked at a deposition of two "uninvolved, average citizens, who have been dragged into this matter . . . ." Gell v. Town of Aulander, No. 2:05-cv-21-FL(1), 2008 WL 4200148, *10-12 (E.D.N.C. Sept. 12, 2008). The court noted that "'[t]he evil [in use of leading questions] to be avoided is that of supplying a false memory for the witness.'" Id. at *12 (quoting Durham, 319 F.2d at 592). The court then explained, "[i]n the instant case, however, the leading

questions have been asked primarily upon the basis of previous trial testimony and interview notes." Id.

Likewise, here the leading questions to Mr. Friss did not supply him any "false memory," but were the most effective means of reviewing the contents of the sworn declaration he submitted in this proceeding and which Plaintiffs, who subpoenaed Mr. Friss's deposition, directly challenged during its questioning of Mr. Friss. (Mr. Friss was also represented by separate counsel at his deposition). These questions were simply the most effective means of ascertaining the truth about Mr. Friss's interpretation of the agreements between Topps and the Defendants, which was the subject of Mr. Friss's declaration, and about which Plaintiffs' counsel opened the door. Moreover, to the extent any harm resulted from Defendants' line of questioning, "[opposing] counsel at deposition had the opportunity immediately following cross examination to re-direct [the deponent] and remedy any potential harm from the leading questions asked." 2008 WL 4200148, *12 at n.5.

## II. Regardless of the Court's Ruling as to the Appropriateness of Leading Questions, Much of the Now Objected-to Testimony Was Not Objected To at the Deposition and Thus Should Still be Admitted

Putting aside the question as to the propriety of the form of the questions at issue, many of the now objected-to portions of Mr. Friss's testimony were not objected to at the deposition, and thus Plaintiffs' form objections are waived. For example, no objection was made to the following questions and answers at Mr. Friss's deposition:

> Q: Turning back to your declaration, paragraph four, it says, "Thus, under the 2004 license agreement, Topps acquired the group licensing rights of active NFL players only." Is that consistent with your understanding today?
> A: Yes.
> Q: And have you ever had a different understanding about the rights that were -- that Topps acquired under the 2004 license agreement?
> A: No.[1]
>
>                   \*   \*   \*
>
> Q: Okay. The next paragraph it says, "The pertinent language in paragraph 1-A of another license agreement entered into between the NFLPA and Topps with an effective date of March 1, 2007, a true and accurate copy of which is attached hereto

---

[1] This un-objected to question and answer – asking Mr. Friss about the accuracy of the statement in his declaration – is no different than Plaintiffs' counsel's questions to Mr. Upshaw about the accuracy of his statements in the Charlotte Observer article. Although Defendants are not seeking to introduce the Friss Declaration (just as Plaintiffs are not seeking to introduce the newspaper article quoting Mr. Upshaw), it is proper to introduce Mr. Friss's testimony about the statements in his declaration (particularly after Plaintiffs' counsel opened the door).

>   as Exhibit D, is to the same effect as the 2004 license agreement." Is that an accurate statement?
> A: Yes.
> Q: So your understanding is that paragraph 1-A from the 2004 agreement is the same as paragraph 1-A in the 2007 agreement?
> A: Yes. Effectively, yes.
>
> \* \* \*
>
> Q: Was it Topps' intention to acquire the group licensing rights of retired players under the 2004 license agreement?
> A: No.
> Q: Was it Topps' intention to acquire the group licensing rights of retired players under the 2007 license agreement?
> A: No.

Friss Depo. at 72:3-15, 73:5-17, 77:18-25 (Taub Decl., Ex. C).

There are additional questions and answers for which there is simply no basis to Plaintiffs' objections as to form:

> Q: Do you know whether -- has Topps entered into similar individual designated deals with retired players?
> A: Yes.
> Q: And is it your understanding -- what is your understanding as to whether those individual retired player deals contained grant of rights?
> [PLAINTIFFS' COUNSEL]: Objection to form.
> A: It's my understanding that they always include a grant of rights in addition to the grant of services.
> Q: Okay. Does Topps do individual designated deals with active players?
> A: Yes.
> Q: What is your understanding as to whether those individually designated deals with active players contain a grant of rights?
> A: It's my understanding that they do not.
>
> \* \* \*
>
> Q: Okay. Does Topps -- has -- what is your position with respect to Topps' ability to make a trading card of a retired player like Roger Craig absent an individually negotiated deal like Exhibit B to your declaration?
> [PLAINTIFFS' COUNSEL]: Objection, form.
> A: It's my understanding and it always has been that we cannot make a trading card unless we obtain the rights individually from that retired player which we have to do through NFLPA. We have never published a picture of a retired player without doing that.

      Q: Okay. And I want to be very clear here that we're talking -- I want to put aside -- put aside the issue of autographs. Just focusing on Topps' right or lack of a right to make a trading card bearing a retired player's name, image statistical information, etcetera, what is Topps' position about its right to do so absent an individually negotiated deal like Exhibit B to your declaration?
      [PLAINTIFFS' COUNSEL]: Objection to form.
      A: No, we don't have the right to do so.

Friss Depo. at 70:6-25, 71:2-72:2 (Taub Decl., Ex. C).

    In sum, Defendants submit that Plaintiffs' objections, both formal and substantive, are without merit and should be overruled by the Court. The testimony can, and should, be admitted.

                                      Respectfully submitted,

                                      /s/ Jeffrey L. Kessler_____
                                      Jeffrey L. Kessler
                                      Counsel for Defendants


cc:    Peter Parcher, Esq.