1   Todd Padnos (Bar No. 208202)
    *tpadnos@dl.com*
2   DEWEY & LEBOEUF LLP
    One Embarcadero Center, Suite 400
3   San Francisco, CA 94111
    Tel: (415) 951-1100; Fax: (415) 951-1180
4
5   Jeffrey L. Kessler (*pro hac vice*)
    *jkessler@dl.com*
6   David G. Feher (*pro hac vice*)
    *dfeher@dl.com*
    David Greenspan (*pro hac vice*)
7   *dgreenspan@dl.com*
    DEWEY & LEBOEUF LLP
8   1301 Avenue of the Americas
    New York, NY 10019
9   Tel: (212) 259-8000; Fax: (212) 259-6333

10  Kenneth L. Steinthal (*pro hac vice*)
    *kenneth.steinthal@weil.com*
11  WEIL, GOTSHAL & MANGES LLP
    201 Redwood Shores Parkway
12  Redwood Shores, CA 94065
    Tel: (650) 802-3000; Fax: (650) 802-3100
13
14  Bruce S. Meyer (*pro hac vice*)
    *bruce.meyer@weil.com*
    WEIL, GOTSHAL & MANGES LLP
15  767 Fifth Avenue
    New York, NY 10153
16  Tel: (212) 310-8000; Fax: (212) 310-8007

17  Attorneys for Defendants National Football League Players Association
    and National Football League Players Incorporated d/b/a Players Inc
18
                    **UNITED STATES DISTRICT COURT**
19                 **NORTHERN DISTRICT OF CALIFORNIA**
                      **SAN FRANCISCO DIVISION**
20
    BERNARD PAUL PARRISH, HERBERT          Case No.  C 07 0943 WHA
21  ANTHONY ADDERLEY, WALTER
    ROBERTS III,                          **DEFENDANTS' MEMORANDUM**
22                                         **REGARDING THE COURT'S DRAFT**
                                           **CHARGE TO THE JURY**
23             Plaintiffs,

24          v.

25  NATIONAL FOOTBALL LEAGUE
    PLAYERS ASSOCIATION and NATIONAL
26  FOOTBALL LEAGUE PLAYERS
    INCORPORATED d/b/a/ PLAYERS INC,
27
               Defendants.
28

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

---

Defs.' Memorandum Re: Court's Draft Charge to the Jury          Civ. Action No. C07 0943 WHA

Dockets.Justia.com

Defendants respectfully submit the following critique of the Court's Draft Charge to the Jury. Defendants reserve any other objections until the Court's charging conference.

### 1. Description of Plaintiffs' Claims under the RPGLAs

Defendants respectfully submit that, as currently drafted, the Court's charge presents a very high risk that the jury will be confused and not understand that Plaintiffs are <u>not</u> claiming that there was any breach as a result of Defendants licensing groups of six or more retired players pursuant to ad hoc agreements rather than pursuant to the RPGLA. The Court's charge that "[n]o one in this case is suing to recover any of that money, that is no one contends that any of the ad hoc license revenue should be re-distributed to all class members under the RPGLA," (3:17-19), does not go far enough in explaining to the jury that Plaintiffs have disavowed any claim that Defendants breached any contractual or fiduciary obligations arising from the RPGLA by licensing six or more retired players pursuant to ad hoc agreements. <u>See, e.g.</u>, Pls.' Opp'n to Defs.' Mot. to Decertify, Rec. Doc. 371 (Aug. 21, 2008) at 10 ("Neither the Court nor Plaintiffs have suggested that individual <u>ad hoc</u> agreements themselves are improper or that they require sharing of the individually negotiated payments….").

As the Court knows, Plaintiffs have repeatedly disavowed any claim that, for example, when Mr. Adderley's and approximately 29 other retired players' rights were licensed pursuant to ad hoc agreements to Upper Deck (<u>see</u> Defs.' Mot. for Summary Judgment at 8-9 (June 13, 2008)), Defendants should have instead licensed such rights pursuant to the RPGLAs, and placed the resulting revenues into "an escrow account for all eligible NFLPA members who ha[d] signed a group licensing authorization form." Trial Ex. 110; Pls.' Opp'n to Defs.' Mot. to Decertify at 8-9 (stating that there "is no legal or factual basis" for any claim "that monies received by retired players through <u>ad hoc</u> agreements should have been put in an escrow account and distributed to other GLA Class members"). Indeed, by denying Defendants' Motion to Decertify the Class, the Court has already ruled that Plaintiffs may not assert a legal challenge to Defendants' "use in retired player group licensing of ad hoc agreements, rather than the GLAs." <u>See</u> Defs.' Motion to Decertify, Rec. Doc. 361 (Aug. 15, 2008) at 4; Order Denying Motion to Decertify, Rec. Doc. 391 (Sept. 2, 2008) at 2.

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

In consideration of the above, Defendants request an additional instruction in paragraph 16 that "Plaintiffs have no claim in this case that Defendants violated the RPGLA when they licensed retired players in groups of six or more pursuant to ad hoc licenses, rather than licensing such retired players in groups of six or more pursuant to the RPGLA." Defendants request that the Court insert this language following the draft charge at 2:21-23 because, standing alone, that sentence (beginning "According to the RPGLA…") may confuse the jury that when EA used a total of six or more retired player images through ad hoc licenses, RPGLA rights were violated. There is no such claim in this case.

For similar reasons, Defendants request that the Court's charge on the breach of contract claim (3:7-8) be revised as follows: "That moneys were generated by defendants' licensing of <u>retired player group</u> rights <u>pursuant to</u> the RPGLA at issue." The phrase "retired player group" should be inserted before the word "rights" because that is the language the RPGLA uses. Trial Ex. 110. The words "covered by" should be changed to "pursuant to" because the phrase "covered by the RPGLA" may confuse the jury that there is a claim that the RPGLA should have been used when 6 or more retired players' rights were licensed pursuant to ad hoc license agreements. Similarly, page 4, lines 8-9 should read: "To this, defendants respond that little or no money was ever generated <u>pursuant to</u> licensing <u>under</u> the RPGLA…" (instead of "no money was ever generated <u>by the type of licensing described in</u> the RPGLA").

Finally, Defendants also request a specific instruction that "Plaintiffs seek no damages in this case in connection with any ad hoc licensing program with Reebok, or any ad hoc licensing program with EA, including EA's 2006 Hall of Fame Agreement."

    **2.    The Instructions Should Provide That The Element of Control Is Dispositive of Plaintiffs' Claim for Breach of Fiduciary Duty**

Defendants request that the Court instruct the jury that, under D.C. law, the element of control is a dispositive factor in deciding whether a fiduciary relationship exists, <u>i.e.</u>, if Plaintiffs (the purported principals) did not have the requisite level of control over Defendants (the purported agents), then there can be no fiduciary relationship as a matter of law. <u>See</u> Defs.' Memo. in Support of Disputed Jury Instructions (Oct. 8, 2008), at 15-17 ("Defs.' Jury

Defs.' Memorandum Re: Court's Draft Charge to the Jury        Civ. Action No. C07 0943 WHA

2

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Instructions Memo") <u>citing</u> <u>Judah v. Reiner</u>, 744 A.2d 1037, 1040 (D.C. 2000); <u>Levy v. Currier</u>, 587 A.2d 205, 212 (D.C. 1991); <u>Dist. of Columbia v. Hampton</u>, 666 A.2d 30 38-39 (D.C. 1995); <u>Environmental Research Int'l Inc. v. Lockwood Greene Engineers, Inc.</u>, 355 A.2d 808, 812 n.7 (D.C. 1976). With respect to the requisite level of control, the jury should be instructed that Plaintiffs must have "control over the day-to-day operations…and the manner in which the work is performed." <u>Ames v. Yellow Cab of D.C., Inc.</u>, Civ. No. 00-3116, 2006 WL 2711546, at *5 (D.D.C. Sept. 21, 2006); <u>Judah</u>, 744 A.2d at 1040.

If the Court rejects Defendants' position that control is dispositive, the Court should not describe control as "a second factor to consider," but should instead identify "control" as the "first and most important factor to consider." Moreover, if the Court intends to instruct on any factor other than control, it should instruct on all the relevant factors, including whether there is "payment of wages." <u>Id.</u> Generally, when the principal (<u>i.e.</u>, the GLA Class members) does not pay any wages to the agent (<u>i.e.</u>, Defendants), that fact supports a finding that an agency relationship does not exist. <u>See</u> <u>Ames</u>, 2006 WL 2711546, at *6.

The Court's statement in instruction 39 that "[i]f the activity was one regularly undertaken by the principal, then <u>an agency relationship is less indicated</u>," (emphasis added), is inconsistent with D.C. case law. <u>See</u> <u>Ames</u>, 2006 WL 2711546 at *7 ("Where work performed by an individual is part of the regular business of the employer, <u>an agency relationship is suggested</u>."). More fundamentally, however, this principle is typically limited to the context of the employer/employee relationship and therefore should not be included in the instructions.

Finally, the purported fiduciary's "special skills" are not relevant under D.C. law in determining whether any duties are owed in the first instance – rather, as Plaintiffs' own Disputed Instruction No. 11 makes clear, a fiduciary's "special skills" are relevant only to whether any duty was <u>breached</u>. <u>See</u> Joint Proposed Jury Instructions, Rec. Doc. 459-2 (Oct. 8, 2008), at 29-30. The only exception is when a plaintiff alleges a relationship "based on trust or confidence," but the Court has rejected any such claim in this case. <u>See</u> Order Granting in Part and Denying in Part Pls' Mot. for Leave to File an Am. Compl., Rec. Doc. 176 (Nov. 14, 2007) at 10 ("Adderley has pleaded a fiduciary relationship based on contract, but has failed to plead

Defs.' Memorandum Re: Court's Draft Charge to the Jury                    Civ. Action No. C07 0943 WHA

3

fiduciary duty based on a confidential relationship"); <u>Prunte v. Universal Music Group</u>, 484 F. Supp. 2d 32, 43 (D.D.C. 2007).

> **3.** **The Instructions Should State That Any Shared Understanding Between Defendants and their Licensees about the Meaning of their Third-Party License Agreements is Dispositive**

Defendants request that the Court instruct the jury that if it finds that Defendants and their licensees shared the same understanding about the meaning of the third-party license agreements, <u>i.e.</u>, that those agreements conveyed only active player rights, that understanding is <u>dispositive</u> as to the proper construction of those third-party license agreements, and Plaintiffs' contrary interpretation, <u>i.e.</u>, that those agreements conveyed the rights of all GLA Class members, must be rejected as a matter of law. <u>See</u> Defs' Jury Instructions Memo, at 12-13 citing <u>Reliance Standard Life Ins. Co. v. Matula</u>, No. 05-C-0788, 2007 U.S. Dist. LEXIS 24523, at *25 (E.D. Wis. Mar. 30, 2007); <u>Waddy v. Sears, Roebuck & Co.</u>, No. C-92-2903-VRW, 1994 WL 392483, at *11 (N.D. Cal. July 8, 1994); <u>Williams Tile & Marble Co., Inc. v. Ra-Lin & Assocs.</u>, 426 S.E.2d 598, 600 (Ga. Ct. App. 1992); <u>Combs v. Hunt</u>, 125 S.E. 661, 665 (Va. 1924)); <u>cf.</u> <u>Robert C. Herd & Co. v. Krawill Machinery Corp.</u>, 359 U.S. 297, 308 (1959).

> **4.** **Plaintiffs are Required to Prove Individual Injury and Damages and That Contractual Damages were Foreseeable**

Defendants request that the Court give an additional instruction on damages that Plaintiffs are required to come forward with proof of <u>individual</u> injury and damages for each member of the GLA Class. This principle is well-settled and should be included in any jury instruction on damages. <u>See</u> Defs.' Jury Instructions Memo, at 2 citing <u>Abuan v. General Elec. Co.</u>, 3 F.3d 329, 334 (9th Cir. 1993); <u>Kline v. Coldwell, Banker & Co.</u>, 508 F.2d 226, 236 n.8 (9th Cir. 1974); <u>Sterling v. Velsicol Chem. Corp.</u>, 855 F.2d 1188, 1200 (6th Cir. 1988); <u>Cannon v. Tex. Gulf Sulphur Co.</u>, 55 F.R.D. 306, 307 (S.D.N.Y. 1971)). The Court should also instruct the jury that with respect to their breach of contract claim, Plaintiffs are only "entitled to damages that were foreseeable at the time the contract was made. Damages are foreseeable if they are the sort that the parties would have reasonably envisioned, or are the sort that would

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Defs.' Memorandum Re: Court's Draft Charge to the Jury          Civ. Action No. C07 0943 WHA

4

flow naturally and obviously from the breach of the contract." Standardized Jury Instructions for the District of Columbia § 11.31.

### 5. The Instructions Should Make Clear That There is No Fiduciary Duty Arising from Union Membership

The Court has held that the GLA Class's breach of fiduciary duty claim was certified "only insofar as [it] arises out of the GLAs between the NFLPA and retired players." Order on Pls.' Mot. for Class Certification (April 29, 2008) at 10 & 14. In light of the confusing testimony that Plaintiffs have offered on the union membership issue, Defendants request that the Court add an instruction that "there is no claim in this case that Defendants owed any fiduciary duty to Plaintiffs because some of them at some points were retired player members of the union."

### 6. The Court Should Include Defendants' Responses to the Specific Allegations Made by Plaintiffs

For reasons of fairness and balance, whenever the Court describes the specific allegations made by Plaintiffs, the Court should immediately thereafter include a description of Defendants' response. For example, on page 9, line 27, after the Court instructs that "plaintiff contends that defendants should have made one or more group deals on behalf of all RPGLA retired class members," Defendants request that the Court add that "Defendants contend there was no marketplace interest in paying any money for the rights of all of the RPGLA retired player class members." Similarly, on page 13, line 10, after the Court instructs that "plaintiff's claim is that defendants breached a fiduciary duty by insisting on scrambling rather than by trying to sell the entire group of RPGLA rights to Electronic Arts," Defendants request that the Court add that "Defendants claim that EA had no interest in and had not paid any money for the entire group of RPGLA rights and therefore EA had no right to use such players' names or numbers."

### 7. The Jury Must Adopt a Reasonable Interpretation of the Contracts

Finally, Defendants request that the Court add to paragraph 29 that "you may not resolve doubts against the party who prepared the contract in a way that would lead to an unreasonable interpretation of the contract." Restatement (Second) of Contracts § 206 (1981).

Defs.' Memorandum Re: Court's Draft Charge to the Jury        Civ. Action No. C07 0943 WHA

5

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

DEWEY & LeBOEUF LLP

BY: ___/s/ Jeffrey Kessler_____
Jeffrey L. Kessler
*Attorneys for Defendants*

Defs.' Memorandum Re: Court's Draft Charge to the Jury          Civ. Action No. C07 0943 WHA

6