MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS III, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' BRIEF RE: "COURT'S DRAFT CHARGE TO THE JURY" PROVIDED OCTOBER 31, 2008; OBJECTIONS THERETO** |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3

Dallas 268117v1

Dock...

Plaintiffs respectfully request the following changes to the Court's proposed instructions:

## I. The GLA Should Be the Focus of the Breach of Contract Instructions.

Plaintiffs contend that Defendants breached the GLA. Under the GLA, Plaintiffs contend that Defendants owed a contractual duty to pay GLA signatories if Defendants engaged in "group licensing," which was defined in the GLA as programs that involved "six or more present or former NFL player images." If Defendants engaged in such group licensing, the "players" who signed the GLA should have been paid a share of distributed proceeds from such group licensing from an escrow account. If the jury agrees, the interpretation of the GLA is dispositive of Plaintiffs' contract claim, regardless of the interpretation of the third-party license agreements: Defendants concede that the shared group licensing revenue was funded by third-party licenses that use six active players, which would necessarily entail the use of "six or more *present or former* NFL player images." The Court should instruct the jury on this specific theory, which is supported by the plain language of the GLA and the evidence provided to the jury.

As a result, the jury may not need to focus on the terms of the third-party license agreements. Despite this, the instructions place undue weight on the interpretation of third-party license agreements. Paragraph 31 suggests that the jury *must* consider whether third-party license agreements generated retired player group licensing money. Similarly, at paragraph 20, the instructions read "Whether any such money was due under the RPGLA by any third-party licensing depends on the coverage of the GLA *as well as the coverage of the third-party licenses.*" In these instances, the Court seems to suggest that any interpretation of the GLA requires an interpretation of third-party licensing agreements. In contrast, in paragraph 30, the instructions read that the jury *may* have to decide the meaning of third-party license agreements.

For these reasons, Plaintiffs request that the Court provide specific instructions on duty, breach, and damage under the GLA. Early in the instructions, the Court should instruct the jury as follows:

> You must determine, in light of the text of the GLA and the evidence produced at trial, the specific contractual duties, or obligations, imposed on Defendants by the GLA. Plaintiffs contend that those duties include (1) the creation of an escrow account, (2) the inclusion of shared group licensing revenue in that account, and (3) the sharing of that revenue with Plaintiffs. If Defendants failed to perform a

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

20202979.1
Dallas 258080v3
Dallas 268117v1

1

duty owed under a contract, then Defendants have breached the contract. If you find that Defendants breached the GLA, then Defendants are liable to the GLA Class members for damages in an amount Plaintiffs must prove as I will later instruct you.

Without such an instruction, the jury will be left with the erroneous impression that the third-party licenses govern this claim. Plaintiffs respectfully suggest that the Court provide instructions about the duties imposed on Defendants by the GLA, especially in light of the instructions at paragraph 30 on the parties' contrasting positions on third-party licenses. Additionally, the Plaintiffs suggest that the Court change paragraphs 20 and 31, such that the jury is not *required* to interpret the third-party agreements, but instead, *may* do so, depending on the jury's construction of the GLA.

Additionally, at selected paragraphs throughout the contract instructions, the Court makes factual statements which are not conclusively supported by the evidence. First, at paragraph 16, the Court states that the GLAs are "nonexclusive," such that the "retired player retained a right to make his own deals." This is an incorrect characterization, given that Defendants prevented third-party licensees from directly contracting with the retired players through the third-party license agreements, and given the third paragraph of the GLA, which states that the signatory retains rights to use his image in conjunction with five or less present or former players. Second, at paragraph 19, the instructions read that Defendants treated the third-party licensing revenue as "active" money, which implicitly creates an active/retired dichotomy. Plaintiffs contend there was no such dichotomy; rather, Plaintiffs contend that Defendants used a "shared/ad hoc" dichotomy, and that the third-party licensing revenue was treated as "shared" money. Third, at paragraph 19, the Court states that 75 third-party licenses are in evidence. In fact, there are more than 200 such licenses, and 95 of them are in evidence. Finally, because the parties have consistently referred to the contract at issue as the "GLA" throughout the trial, Plaintiffs request that the Court refer to the GLA as such, instead of the "RPGLA."

At the Court's request, Plaintiffs will propose specific alternative instructions for the breach of contract instructions, including those at paragraphs 16, 19, 20, and 31.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

## II. The Court Should Instruct the Jury about the Duty of Good Faith and Fair Dealing

An implied duty of good faith and fair dealing exists in every contract, under D.C. law. *See Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 321 (D.C. 2008). This duty means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *See id.*

Defendants have entered into GLAs with the Plaintiffs, such that Plaintiffs would be paid subject to, as a practical matter, (1) Defendants' classification of shared revenue generated by active and retired group licensing, (2) Defendants' definition of "eligibility," (3) Defendants' efforts in marketing the class members, and (4) Defendants' ability and willingness to package and promote retired player group licensing rights with active player group licensing rights. D.C. law does not allow Defendants to sign these contracts and file them away; rather, the duty of good faith and fair dealing required Defendants to license the class members where appropriate, and to classify received shared group licensing revenue such that Plaintiffs could enjoy the fruits of these contracts. As a result, Plaintiffs respectfully request that the Court instruct the jury as to this duty.

## III. The Court Should Instruct the Jury about the Duty of Loyalty

D.C. Courts recognize that an agent owes his principal a duty of loyalty. *See*, *e.g.*, *Gov't of Rwanda v. Rwanda Working Group*, 227 F. Supp. 2d 45, 64 (D.D.C. 2002) ("Like other agents, lawyers owe their clients a duty of loyalty and a duty of care.") This duty of loyalty requires that the agent act solely for the benefit of his principal in matters within the scope of that agency, and that the agent avoid conflicts of interest. *See Riggs Inv. Mgmt. Corp. v. Columbia Partners, LLC*, 966 F. Supp. 1250, 1264 (D.D.C. 1997) ("[A]s an agent, von Pentz had a duty to act solely for the benefit of his employer in all matters within the scope of his employment and to avoid conflicts of interest between his duty to his employer and his own self interest.").

Defendants have not upheld this duty of loyalty. Defendants advanced the interest of the active players, the NFLPA, and Players Inc over the class members in determining how to

classify, share, and distribute group licensing revenue. As such, Plaintiffs are entitled to an instruction on the duty of loyalty.

As a corollary, Plaintiffs are entitled to claim disgorgement as a proper measure of damages if Plaintiffs show that Defendants violated their duty of loyalty to the GLA Class. *Hendry v. Pelland*, 73 F.3d 397, 401-03 (D.C. Cir. 1996). Thus, Plaintiffs request that the Court provide a disgorgement instruction.

**IV. The Control Instruction Does Not Reflect the Broad Nature of Agency**

Under D.C. law, agency is a broad concept. Agency covers the employer/employee relationship, and in that context, control is often a key distinction between an employee and an independent contractor. *See Safeway Stores, Inc. v. Kelly*, 448 A.2d 856, 860 (D.C. 1982) (emphasizing control in the determination of a master/servant relationship). Agency also covers the broker/investor relationship, where a determination of agency is *more* likely if the investor does not control the day-to-day activities of the broker, and instead, the broker retains control over those activities. *See Merrill Lynch v. Cheng*, 901 F.2d 1124, 1128 (D.C. Cir. 1990) ("A broker is an agent who owes his principal a duty to act only as authorized."); *Lieb v. Merrill Lynch*, 461 F. Supp. 951, 954 (E.D. Mich. 1978) (considering whether the broker had "usurped actual control over a technically non-discretionary account" in determining the extent of duties owed to the investor); *Robles v. Consolidated Graphics, Inc.*, 965 S.W.2d 552, 557 (Tex. App. 1997) ("Clearly, Robles was hired by both CCI and Gulf Printing on a commission basis to make or negotiate bargains or contracts on their behalf in matters of trade and commerce. Accordingly, Robles was acting as an agent and broker for both Gulf Printing and CCI.").

Here, Defendants were authorized, through the GLAs, to enter into group licensing agreements on the Plaintiffs' behalf. The jury should properly consider whether the 2,000 class members could, in theory or in practice, influence the group licensing activities of Defendants, in determining whether or not an agency relationship was created via the GLA. The absence or presence of control, however, does not definitively cut for or against a finding of agency. If the class members have a high degree of control, a jury could find agency as in an

employer/employee relationship. If the class members do not have this ability, the jury could nonetheless find that the class members entered into an agency relationship of the brokerage ilk, such that the class members authorized Defendants to manage the licensing of Plaintiffs' images, and Defendants were not to misuse those rights.

Given the broad nature of agency, the Court's present instruction at paragraph 38 incorrectly reflects the law. While the absence of control cuts against a finding of agency in a master/servant context, agency as a whole is not so limited. Indeed, although the absence of control *may* support a finding that the GLA is a "mere license," it may also show that Defendants' increased control over Plaintiffs' rights led to a corresponding responsibility to manage those rights prudently, as in a brokerage-type relationship, which supports a finding of agency.

**V. Plaintiffs' Claimed Breach of Fiduciary Duty Is Not Limited to a Failure to Market**

As drafted, paragraph 32 of the instructions suggests that Plaintiffs' *only* claimed breach of fiduciary duty is Defendants' "failure to make reasonable efforts to market the RPGLA class members' images and identies." This is not the case. Plaintiffs claim that Defendants have breached their fiduciary duty by (1) failing to fully disclose their actions, (2) defining "eligibility" such that the retired players are deprived of shared group licensing money, (3) failing to establish an escrow account, (4) failing to accurately report group licensing revenues to the GLA Class, (5) failing to distribute revenues to the GLA Class to which it was entitled, (6) failing to distribute to retired players an equal share of shared group licensing revenue, (7) misappropriating funds totaling eight million dollars or more that should have been paid, in part, to the GLA Class as shared group licensing revenue, (8) misappropriating 64-69% of the shared group licensing revenue for themselves instead of distributing it as revenue to the players, (9) failing to include the retired players who signed a GLA in group licenses; and (10) placing themselves in a position of conflict of interest and acting adversely to the interest of the GLA class.

Plaintiffs request that the Court remove, from paragraph 32 or otherwise, any suggestion that Plaintiffs' claim that Defendants breached their fiduciary duties hinges on proving that Defendants failed to adequately market the class members.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

20202979.1
Dallas 258080v3
Dallas 268117v1

| | | |
|---|---|---|
| 1 | | Respectfully submitted, |
| 2 | Dated:  November 2, 2008 | MANATT, PHELPS & PHILLIPS, LLP |
| 3 | | |

By:\_\_\_/s/ Ronald S. Katz_____
      Ronald S. Katz (SBN 085713)
      Ryan S. Hilbert (SBN 210549)
      Noel S. Cohen (SBN 219645)
1001 Page Mill Road, Building 2
Palo Alto, CA  94304-1006
Telephone:  (650) 812-1300
Facsimile:  (650) 213-0260

MCKOOL SMITH, P.C.
Lewis T. LeClair (SBN 077136)
Jill Adler Naylor (SBN 150783)
300 Crescent Court
Dallas, TX 75201
Telephone:  (214) 978-4984
Facsimile:  (214) 978-4044

*Attorneys for Plaintiffs*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1