Todd Padnos (Bar No. 208202)
*tpadnos@dl.com*
DEWEY & LEBOEUF LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Tel: (415) 951-1100; Fax: (415) 951-1180

Jeffrey L. Kessler (*pro hac vice*)
*jkessler@dl.com*
David G. Feher (*pro hac vice*)
*dfeher@dl.com*
David Greenspan (*pro hac vice*)
*dgreenspan@dl.com*
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 259-8000; Fax: (212) 259-6333

Kenneth L. Steinthal (*pro hac vice*)
*kenneth.steinthal@weil.com*
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000; Fax: (650) 802-3100

Bruce S. Meyer (*pro hac vice*)
*bruce.meyer@weil.com*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000; Fax: (212) 310-8007

Attorneys for Defendants National Football League Players Association
and National Football League Players Incorporated d/b/a Players Inc

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC,<br><br>Defendants. | Case No. C 07 0943 WHA<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' BRIEF RE: "COURT'S DRAFT CHARGE TO THE JURY" PROVIDED OCTOBER 31, 2008; OBJECTIONS THERETO** |

Defs.' Reply to Pls.' Brief Re: "Court's Draft Charge to the Jury"    Civ. Action No. C07 0943 WHA

Dockets.Justia.com

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants respectfully submit this Reply to Plaintiffs' Brief Re: "Court's Draft Charge to the Jury" Provided October 31, 2008 ("Pls.' Br."). As discussed below, Plaintiffs' objections to the Court's Draft Charge improperly seek to inject issues and claims that are inconsistent with the evidence adduced at trial, were never properly asserted, and/or are not permitted by law. For the reasons detailed below, the Court should overrule Plaintiffs' objections.

### 1. The Third-Party Licensees Must be Considered by the Jury

Plaintiffs' first objection with the Court's Draft Charge is that it instructs the jury that in deciding whether the RPGLA was breached, they "must also consider whether any third-party license generated any such money within the meaning of the RPGLA." See Pls.' Br. at 1-2; Draft Charge at 9:16-21. Defendants agree that the RPGLA is the focus of the breach of contract claim, but disagree that the third-party license agreements are only tangentially related to it. Certainly if the jury decides that revenues generated by all third-party license agreements are not subject to the RPGLA, there cannot be any contractual claim of breach. Indeed, as the Court properly sets out, it is important that the jury consider the third-party licenses to decide if the RPGLA was breached because the jury can only find for Plaintiffs if it decides that any of the group licensing revenues Plaintiffs seek were "moneys generated by such licensing of retired player group rights," as the relevant provision of the RPGLA provides. Tr. Ex. 110 (emphasis added).

Plaintiffs' Brief also ignores Defendants' use of ad hoc agreements to license retired players in groups of six or more, and that it is stipulated that "Plaintiffs do not seek to recover in this case any moneys paid to some GLA Class members under separate, so-called 'ad hoc' license agreements." Joint Final Pre-Trial Order at 12 (Stip. No. 13). Plaintiffs thus need to prove that any "licensing of retired player group rights" occurred under the third-party license agreements, separate from the ad hoc license agreements, and that is another reason why the Court is correct in instructing the jury that they must consider the third-party license agreements.

The third-party license agreements are the only alleged source of "moneys generated by such licensing of retired player group rights" that Plaintiffs seek, and the jury must interpret those third-party license agreements to decide Plaintiffs' breach of contract claims.

Plaintiffs' further objections to the Court's description of the RPGLA as "nonexclusive" and that Defendants treated the third-party licensing revenue as "active" player money simply ignore the evidence adduced at trial. The RPGLA states unambiguously on its face that it is "non-exclusive." Tr. Ex. 110. Plaintiffs' reference to the non-interference clauses of the third-party license agreements, which have nothing to do with whether the RPGLA is non-exclusive, is solely aimed at confusing the issue. Finally, numerous witnesses – Doug Allen, Glenn Eyrich, and Richard Berthelsen – have each testified that Defendants treated the third-party licensing revenue as money generated solely from the licensing of active players' group rights. Plaintiffs have presented no contrary evidence, and have no basis to dispute the Court's description of how Defendants treated such revenues.

### 2. The Court Should Not Instruct the Jury on a Never-Asserted Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Despite never asserting in any of their four complaints any claim for breach of the implied covenant of good faith and fair dealing, a claim that Plaintiffs first "raised" in the parties' pre-trial exchanges of August 27, 2008, Plaintiffs now seek an instruction on this very claim. The Court should maintain its rejection of any such instruction. Facing the same situation, another district court rejected a plaintiff's request to instruct the jury on breach of the implied covenant of good faith and fair dealing where its numerous complaints never pleaded such a claim. See Travel Ctr. of Fairfield County, Inc. v. Royal Cruise Line Ltd., 154 F. Supp. 2d 281, 289 (D. Conn. 2001) ("Given that four iterations of the complaint have been filed in this case, the Court does not think it overly onerous to require that plaintiff include all its relevant substantive claims in the final version, instead of confronting the defendant with a new theory of liability at trial, after the opportunity for discovery has passed."). Indeed, even the model jury instruction that Plaintiffs originally cited as supporting authority, and then later withdrew, provides that "[t]his instruction should be given only when the plaintiff has brought a separate

cause of action for breach of the covenant of good faith and fair dealing." Judicial Council of California Civil Jury Instructions, No. 325 (2008) (emphasis added).

Moreover, Plaintiffs' purported "claim" for breach of an implied covenant is identical to their claims for breach of contract and breach of fiduciary duty. Compare Pls.' Br. at 3:7-10 with id. at 3:25-4:1 & 5:15-24. It is black-letter law that a breach of the implied covenant is not a cognizable independent cause of action when the factual allegations are identical to other claims for relief under an established cause of action. Jacobson v. Oliver, 201 F. Supp. 2d 93, 98 n. 2 (D.D.C. 1996) ("[A] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are identical to a claim for relief under an established cause of action." (internal quotations omitted).

### 3. The Court's Instruction of Duty of Loyalty is Sufficient, and the Court Properly Omitted any Instruction on Disgorgement

Plaintiffs object to the Court's alleged failure to instruct the jury on a fiduciary's duty of loyalty. See Pls.' Br. at 3:16-4:6. But the Draft Charge already contains an instruction on duty of loyalty, and it is sufficient. Indeed, the duty of loyalty is the first fiduciary duty mentioned in the Draft Charge. See Draft Charge at 12:12-13. Plaintiffs' objection is simply a poorly disguised attempt to bias the wording of the instruction. The Court's present instruction, which is clear and balanced, is more than adequate on this issue.

Furthermore, no instruction about disgorgement as a form of damages for breach of fiduciary duty would be appropriate in this case. Plaintiffs have never asserted in any of their four complaints any claim for disgorgement. Nor have Plaintiffs advanced any evidence in support of such a claim, which was first mentioned in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment. See Pls.' Opp'n to Defs.' Mot. For Summ. J. (July 1, 2008) at 39-40. Plaintiffs have not offered any damages study or evidence regarding the amount that allegedly should be disgorged. The only damages theory offered by Plaintiffs' expert, Philip Y. Rowley, is for an "equal share" of the gross licensing revenue pool. A claim of disgorgement is for the "net profits" that were earned as a result of the breach of fiduciary duty. See In re Estate of Corriea, 719 A.2d 1234, 1241 (D.C. 1998). Plaintiffs, however, have offered no evidence

Defs.' Reply to Pls.' Brief Re: "Court's Draft Charge to the Jury"  Civ. Action No. C07 0943 WHA

3

about Defendants' alleged profits for any claimed breach, let alone net profits, in this case. Having offered no evidence or damages theory regarding the purported benefits derived by Defendants from the alleged breach of fiduciary duty, Plaintiffs have no basis for seeking disgorgement. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.").

### 4. Plaintiffs Misstate the Law on Fiduciary Duty

Plaintiffs' objection to the Court's instruction on control as a factor in determining whether a fiduciary relationship existed seriously misstates the law. As discussed in Defendants' Memorandum, "under D.C. law, the element of control is a dispositive factor in deciding whether a fiduciary relationship exists . . . ." Defs.' Mem. at 2:22-3:7; see also, e.g., Judah v. Reiner, 744 A.2d 1037, 1040 (D.C. 2000) (finding that the right to control is the "determinative" factor). No D.C. court has limited the consideration of control as the "determinative" factor to simply the employer/employee relationship, as Plaintiffs suggest.

Plaintiffs cite to a completely inapposite line of cases involving a broker/investor relationship to contend that, contrary to the multiple pronouncements of the D.C. courts, lack of control militates in favor of finding that an agency relationship exists. See Pls.' Br. at 4:11-21. This argument is unavailing. First, a broker/investor relationship is a different type of relationship, implicating unique duties arising from the trust and confidence the investor reposes in the broker's special skills, and is not at all relevant to the agency theory which Plaintiffs assert in this case. See, e.g., MidAmerica Fed. Sav. and Loan Ass'n v. Shearson/American Exp., Inc., 886 F.2d 1249, 1258 (10th Cir. 1989) (affirming jury instruction that "[i]n the context of securities investments, a fiduciary duty develops between a broker and a customer when a broker holds itself out to a customer as possessing special knowledge or expertise with respect to security investment advice and recommends an investment by the customer in a particular security.").

Defs.' Reply to Pls.' Brief Re: "Court's Draft Charge to the Jury"    Civ. Action No. C07 0943 WHA

4

Second, under an agency theory, the relevant analysis is whether the principal had the right to exercise control over the agent. Judah, 744 A.2d at 1040. None of Plaintiffs' cited authorities found that a principal's lack of exercise of control created a fiduciary relationship. One case expressly did not find any fiduciary duty. See Merrill Lynch v. Cheng, 901 F.2d 1124, 1129 (D.C. Cir. 1990). Another did not even involve a breach of fiduciary duty claim and, in any event, found the plaintiff to be the defendant's agent because of "proof of Gulf Printing's control over Robles." Robles v. Consolidated Graphics, Inc., 965 S.W.2d 552, 558 (Tex. Ct. App. 1997).

The proper instruction on this point would explain that the element of control is the sole and determinative factor to consider in deciding whether a fiduciary relationship exists, and that the requisite level of control is "control over the day-to-day operations . . . and the manner in which the work is performed." Ames v. Yellow Cab of D.C., Inc., Civ. No. 00-3116, 2006 WL 2711546, *5 (D.D.C. Sept. 21, 2006); see also discussion in Defs.' Mem. at 2:22-3:7.

### 5. Plaintiffs' Breach of Fiduciary Duty Claim is Accurately Described

Finally, Plaintiffs take issue with the Draft Charge's description of their breach of fiduciary duty claim as involving an alleged failure "to market and promote their names, images, and identities as an entire group." See Pls.' Br. at 5:11-27; Draft Charge at 10:3-5. Plaintiffs instead present a litany of "other" alleged breaches of fiduciary duty. But virtually all of the alleged breaches of fiduciary duty cited by Plaintiffs are indistinguishable from the alleged contractual breaches of the RPGLA. Compare Pls.' Br. at 5:14-24 with Joint Final Pre-Trial Order at 6:11-22. Plaintiffs cannot assert a breach of a fiduciary duty that arises from a contract based on acts that they also allege are breaches of that contract. See Jones v. Hartford Life and Accident Ins. Co., 443 F. Supp. 2d 3, 5 (D.D.C. 2006). As to Plaintiffs' "claim" that Defendants "plac[ed] themselves in a position of conflict of interest and act[ed] adversely to the interest of the GLA class," this is just generalized rhetoric without any factual basis. Plaintiffs must allege specific conduct that is not subsumed by their allegations on their breach of contract claim. As such, Plaintiffs' objection to the Court's breach of fiduciary duty instruction should be overruled.

Defs.' Reply to Pls.' Brief Re: "Court's Draft Charge to the Jury"     Civ. Action No. C07 0943 WHA

5

## **CONCLUSION**

For all of the foregoing reasons, the Court should overrule Plaintiffs' objections.

Date: November 3, 2008											DEWEY & LeBOEUF LLP

																BY:   /s/ Jeffrey Kessler
																			Jeffrey L. Kessler
																			*Attorneys for Defendants*

**Dewey & LeBoeuf LLP**
**One Embarcadero Center, Suite 400**
**San Francisco, CA 94111**

Defs.' Reply to Pls.' Brief Re: "Court's Draft Charge to the Jury"     Civ. Action No. C07 0943 WHA

6