MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER ROBERTS III, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' RESPONSE BRIEF RE: "COURT'S DRAFT CHARGE TO THE JURY" PROVIDED OCTOBER 31, 2008** |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3

Dallas 268117v1

Plaintiffs respond to Defendants' brief on the Court's proposed instructions as follows:

**I. Description of Plaintiffs' Claims**

The jury has heard, over and over, that Plaintiffs are not seeking to recover monies that had been paid to individual active and retired players pursuant to ad hoc agreements. Rather, Plaintiffs are suing based on *Defendants'* breaches of contract and breaches of fiduciary duty, and seek a proportionate share of the shared group licensing revenue, of which Defendants retained over 60%. To the extent the Court wishes to clarify this point, Plaintiffs suggest the following instruction:

> Plaintiffs' claims are against Players Inc and the NFLPA. As a result, Plaintiffs only claim that they are entitled to shared licensing revenue that has been distributed to either the NFLPA or Players Inc. Plaintiffs do not claim that they are entitled to any licensing revenue that has been distributed to retired players or active players.

Defendants' proposed instructions as to this point, at 2:1-8 of their brief, are inaccurate. Plaintiffs claim that Defendants failed to include the class in the distribution of shared licensing revenue. Although Plaintiffs' decision to license retired players pursuant to ad hoc licenses is not, in and of itself, a breach of the GLA, the jury is entitled to consider that decision in determining whether Defendants breached their contractual duties under the GLA, their fiduciary duties, and/or their duty of good faith and fair dealing in deciding how to characterize the licensing revenue, and in deciding that no licensing revenue involving retired players was ever classified as "shared."

Additionally, for the reasons stated in section one of Plaintiffs' brief filed on Sunday, Defendants' proposed instructions at pages 2:9-18 are inaccurate. The jury, in interpreting the GLA, need not find that the GLA *required* that "retired player group rights" be licensed for monies to be shared with the GLA signatories, as the second paragraph of the GLA references "six or more *present or former* NFL player images." (emphasis added).

**II. Control Is Not the Preeminent Factor in All Types of Agency**

As noted in Plaintiffs' brief, agency is a broad concept. *See* Restatement (Third) of Agency, § 1.01 ("Agency encompasses a wide and diverse range of relationships and

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

circumstances. . . . Authors, performers, and athletes often retain specialized agents to represent their interests in dealing with third parties. Some industries make frequent use of nonemployee agents to communicate with customers and enter into contracts that bind the customer and a vendor. . . . Some common forms of agency have a personal and noncommercial flavor, exemplified by the relationship created by a power of attorney that confers authority to make decisions regarding an individual's health care, place of residence, or other personal matters."). Defendants understand this and argue that factors which specifically apply to one context should not apply to a broad understanding of agency. *See* Defs.' Br. at 3:19-20.

As a further example of the breadth of agency, the Second Circuit examined the metes and bounds of an advertiser-advertising agency relationship in *Columbia Broadcasting Systems, Inc. v. Stokely-Van Camp, Inc.*, 522 F.2d 369, 374-77 (2d Cir. 1975). In that case, the Court recognized that findings of agency and authority are not governed exclusively by the same considerations as the employee/independent contractor dichotomy. *See id.* at 375 ("We also are fully aware that an independent contractor, one who is not subject to the right of another to control his physical conduct in the performance of an undertaking, may or may not be an agent."). In the context of this particular relationship, the Court noted that "professional agents can properly assume that they have the authority usually exercised by others in the same field." *Id.* at 376.

Defendants' control instruction is improper. Defendants' instruction mistakenly cabins agency as including only the master/servant relationship. As agency encompasses relationships -- such as brokers, sports agents, those that enter contracts on behalf of another, and powers of attorney -- where the principal does not have the same level or expectation of control as a master in the master/servant relationship, Defendants' instruction is improper.

Finally, testimony elicited at trial shows an agency relationship:

Q. Is it true that you understood that they acted as a sort of agent to get merchandising or licensing deals for retired players?

A. Well, at least with respect to us they did. I don't know about other entities.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1

1    Tr. at 1246 (Testimony of Joel Linzner).

2    Q. And is that how you thought of the NFLPA in connection with this deal?

3    A. Yes.

4    Q. They would be acting on your behalf?

5    A. Yes.

Tr. at 980. (Testimony of Bruce Laird). Based on such testimony, the text of the GLA, and the parties' course of dealing, a reasonable jury could find an agency relationship. *See also Hampton Tree Farms v. Jewett*, 892 P.2d 683, 694 (Ore. 1995) (finding that a question of agency survived summary judgment where the purported agent stated that he was to find a buyer for the purported principal's mill, without relying on other indicia of control).

### III. Defendants' Professed Understanding of Their Contracts is Not Dispositive

Defendants' proposed instruction as to the weight to give the Defendants' and licensees' professed understanding of the contract is incorrect. In effect, Defendants argue that the third-party licenses can only mean what Defendants and the licensees tell the jury they mean, contradicting the plain words of the licenses, and other objective indicia of the licenses' meaning. These licenses, however, directly affect Plaintiffs' economic interests. As such, courts allow Plaintiffs to seek a legitimate contract interpretation, based on the express terms of the contract and supporting evidence. For example, in *Shafford v. Otto Sales Co*., 119 Cal. App. 2d 849, 859-60 (1953), where a third-party broker's commission was at stake, the court allowed the non-party broker to submit evidence as to the meaning of that contract, noting that "mere words, and the ingenuity of contractual expression dreamed up by ingenious businessmen or their lawyers cannot be used to prevent a showing of the real nature of the transaction." *Id.* at 860.

Furthermore, the jury is entitled to question Defendants' credibility. If liability hinges on Defendants' employees' understanding of the third-party licensing agreements, a bias is apparent. A jury is free to disregard Defendants' testimony on these points as biased, intentionally or unintentionally, in favor of the objective text of the contract. The jury need not accept Defendants' litigation-driven testimony as dispositive of the licenses' meaning, even if

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Defendants' testimony meshes with that of third-party witnesses, especially if that testimony contradicts the express language of the agreements. *See Hercules & Co. v. Shama Restaurant Corp.*, 613 A.2d 916, 927 (D.C. 1992) ("The first and most important step in ascertaining [the intent of the contracting parties] is examination of the contract itself.").

**IV. Plaintiffs Are Not Required to Prove Individual Injury and Damages**

Defendant's contention that Plaintiffs must "come forward with proof of individual injury and damages for each member of the GLA Class" undermines the purpose of class actions. A recognized commentator has noted that an aggregate damages finding is often the preferable method of determining damages in a class action. *See* 3 Newburg on Class Actions ("Newburg") § 10.02 at 477 (4th ed. 2002) ("[T]he ultimate goal in class actions is to determine the aggregate sum, which fairly represents the collective value of claims of individual class members.") (citing *Peterson v. Davenport Community School Dist.*, 626 N.W.2d 99 (Iowa 2001)); *id.* at 479 ("[I]t is not unusual, and probably more likely in many types of cases, that aggregate evidence of the defendant's liability is more accurate and precise than would be so with individual proofs of loss."). In fact, the same commentator noted that damages common to a class are often computed as an aggregate sum. *See id.* § 10.03 at 479 ("One acknowledged occasion for aggregate proof of monetary relief is the situation in which monetary liability can be demonstrated by a mathematical computation based on a formula common to an identified class."); *see also Allapattah Servs. v. Exxon Corp.*, 157 F. Supp. 2d 1291, 1313 (S.D. Fla. 2001) ("The case law supports the calculation of compensatory damages . . . through a common mathematical factor in a class context."); *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977) (rejecting individualized damages "in cases where the fact of injury and damage breaks down in what may be characterized as 'virtually a mechanical task,' 'capable of mathematical or formula calculation'").

Here, Plaintiffs' damages are demonstrated by a mathematical computation based on a formula common to an identified class. Such class-wide calculations are clearly appropriate, and should be reflected in the jury instructions.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

## V. Defendants' "Reasonableness" Instruction is Not Helpful

Defendants' "reasonableness" argument is not helpful to the jury, as both parties will likely argue that their respective interpretation is reasonable in light of the surrounding facts and circumstances. The balance of the contract instructions are sufficient for the jury to come to an appropriate construction of the GLAs and the third-party licenses (if necessary).

## VI. Plaintiffs Agree That Responses Are Appropriate

Plaintiffs agree that, for the sake of fairness and balance, where any contentions of the parties are identified in the instructions, each parties' contention should be presented. Plaintiffs will be prepared to identify such portions of the instructions at the time of the charging conference.

Additionally, Plaintiffs believe an instruction that a fiduciary duty does not arise from Defendants' status as a union is appropriate, in order to focus the jury's attention on the duties arising under the GLA. This is not to say, however, that the NFLPA's relationship with the players, as their present or former union, is wholly irrelevant to Plaintiffs' breach of fiduciary duty claim. The fact that the football players' union, as compared to a completely unrelated third party, is the contracting party for the GLA, is a fact common to the class that makes it more likely that the GLAs created an agency relationship, and were not just bare licenses.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| Dated: November 3, 2008 | Respectfully submitted,<br><br>MANATT, PHELPS & PHILLIPS, LLP<br><br>By: /s/ Ronald S. Katz<br>　　　Ronald S. Katz (SBN 085713)<br>　　　Ryan S. Hilbert (SBN 210549)<br>　　　Noel S. Cohen (SBN 219645)<br>1001 Page Mill Road, Building 2<br>Palo Alto, CA  94304-1006<br>Telephone:  (650) 812-1300<br>Facsimile:  (650) 213-0260<br><br>MCKOOL SMITH, P.C.<br>Lewis T. LeClair (SBN 077136)<br>Jill Adler Naylor (SBN 150783)<br>300 Crescent Court<br>Dallas, TX 75201<br>Telephone:  (214) 978-4984<br>Facsimile:  (214) 978-4044<br><br>*Attorneys for Plaintiffs* |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1

6