1    Todd Padnos (Bar No. 208202)
      *tpadnos@dl.com*
2    DEWEY & LEBOEUF LLP
      One Embarcadero Center, Suite 400
3    San Francisco, CA 94111
      Tel: (415) 951-1100; Fax: (415) 951-1180
4

5    Jeffrey L. Kessler (*pro hac vice*)
      *jkessler@dl.com*
6    David G. Feher (*pro hac vice*)
      *dfeher@dl.com*
7    David Greenspan (*pro hac vice*)
      *dgreenspan@dl.com*
      DEWEY & LEBOEUF LLP
8    1301 Avenue of the Americas
      New York, NY 10019
9    Tel: (212) 259-8000; Fax: (212) 259-6333

10   Kenneth L. Steinthal (*pro hac vice*)
      *kenneth.steinthal@weil.com*
11   WEIL, GOTSHAL & MANGES LLP
      201 Redwood Shores Parkway
12   Redwood Shores, CA 94065
      Tel: (650) 802-3000; Fax: (650) 802-3100
13

14   Bruce S. Meyer (*pro hac vice*)
      *bruce.meyer@weil.com*
      WEIL, GOTSHAL & MANGES LLP
15   767 Fifth Avenue
      New York, NY 10153
16   Tel: (212) 310-8000; Fax: (212) 310-8007

17   Attorneys for Defendants National Football League Players Association
      and National Football League Players Incorporated d/b/a Players Inc

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III, <br><br>        Plaintiffs,<br><br>  v.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC,<br><br>        Defendants. | Case No. C 07 0943 WHA<br><br>**DEFENDANTS' MOTION FOR AN INSTRUCTION TO THE JURY TO DISREGARD ANY SUGGESTION BY PLAINTIFFS THAT IT WAS A BREACH OF ANY DUTY FOR DEFENDANTS NOT TO ATTEMPT TO TIE RETIRED PLAYER GROUP LICENSING RIGHTS TO ACTIVE PLAYER RIGHTS** |

Dockets.Justia.com

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 5, 2008, or as soon thereafter as the matter may be heard in the above-referenced Court, Defendants National Football League Players Association ("NFLPA") and National Football League Players Incorporated d/b/a Players Inc ("Players Inc") (collectively, "Defendants"), will and hereby do move for an instruction to the jury to disregard any suggestion by Plaintiffs that it was a breach of any duty for Defendants not to attempt to tie retired player group licensing rights to active player group licensing rights.

This Motion is based on the accompanying Memorandum of Points and Authorities and on such further evidence and argument as may be presented at the hearing on this Motion.

Date: November 4, 2008              DEWEY & LEBOEUF LLP


                                    BY:  /s/Jeffrey L. Kessler
                                         Jeffrey L. Kessler
                                    *Attorneys for Defendants*

## MEMORANDUM OF POINTS AND AUTHORITIES

During cross-examination of Defendants' expert economist, Roger Noll, Plaintiffs questioned Professor Noll about his opinion of a hypothetical scenario in which Defendants required Electronic Arts ("EA") to accept a license to all retired players group licensing rights as a condition to a license for active player group rights. See Trial Tr. 2250-2257 (excerpts from the trial transcript are attached hereto as Exhibit 1). Plaintiffs' hypothetical suggests that Defendants breached alleged duties to the GLA class by failing to force EA to accept a license to retired player group licensing rights in order to receive an active player rights license. This hypothetical should not have been presented because it would have required Defendants to undertake actions that pose a substantial risk of antitrust violations and it is not supported by the record evidence Plaintiffs have presented.

The Court's statement to the jury that "I don't want there to be any suggestion in my question that PI had a duty to do such a thing," does not go far enough. Leaving this issue without further instruction, will unfairly prejudice Defendants and confuse the jury. The jury should be further instructed to completely disregard any suggestion by Plaintiffs that Defendants breached any duty by failing to use any purported "monopoly" or "market power" over active player licensing to force EA to take a license to retired players – a course of action that would pose a substantial risk of illegal conduct.

**I. Plaintiffs Cannot Assert a Claim That Defendants' Breached an Alleged Duty to the GLA Class by Failing to Take a Course of Action That Presents Substantial Risk of an Antitrust Violation**

It is well established that an agreement to do something that is illegal or forbidden is void and unenforceable. 15-79 Corbin on Contract § 79.1 ("the general rule [is] that certain contracts, though properly entered into in all other respects, will not be enforced, or at least will not be enforced fully, if found to be contrary to public policy."); 12-64 Corbin on Contracts § 1170 ("A promise to do that which . . . is illegal and forbidden, is usually void from the beginning."); Capital Constr. Co. v. Plaza West Coop. Ass'n., Inc., 604 A.2d 428, 429-430 (D.C. 1992) ("In the District of Columbia, it is a principle of long standing that an illegal contract,

made in violation of a statutory prohibition designed for police or regulatory purposes, is void and confers no right upon the wrongdoer.") (internal quotations omitted); see also In re McKesson HBOC, Inc. ERISA Litig., 2002 U.S. Dist. LEXIS 19473 (N.D. Cal. Sept. 30, 2002) ("The court agrees that the fiduciaries were not obligated to violate the securities laws or other laws merely to protect the interests of Plan participants."). Thus, Defendants cannot be said to have breached the Retired Player Group Licensing Authorization ("GLA"), or their alleged fiduciary duties arising from the GLA, by failing to take actions which would run a substantial risk of being found illegal or against public policy.

The hypothetical posed by Plaintiffs' counsel to Professor Noll assumed that active NFL player group licensing rights are a relevant market and that Defendants have market power in that market. Trial Tr. 2250-2257 ("Now, was there anything to prevent the NFLPA from using the leverage they had a result of that market power to attempt to have licensees take the rights for the GLA retired class members"). It further assumed that Defendants could have used their market power in a relevant market for active player group rights to force EA to accept a license to all retired player group licensing rights. Id. at 2252:12-17 ("And was there anything to prevent – given the value that they were going to place on that right to have a monopoly, was there anything to prevent them from using the NFLPA's power in connection with having all those active players under license to say: 'Hey, take our guys. Take the GLA's guys?'"). However, such a course of action would have posed a substantial risk of violating the prohibition on tying under the Sherman Act § 1. 18 U.S.C. § 1.

A tying arrangement is "an agreement by a party to sell one product [the tying product] but only on the condition that the buyer also purchases a different (or tied) product." N. Pac. Ry. Co. v. U.S., 356 U.S. 1, 5 (1958). A tying arrangement is per se unlawful if (1) two separate products or services are involved, (2) the sale or agreement to sell one product or service is conditioned on the purchase of another, (3) the seller has sufficient economic power in the market for the tying product to enable it to restrain trade in the market for the tied product, and (4) a not insubstantial amount of interstate commerce in the tied product is affected.

Defendants' Motion for an Instruction on Tying  Civ. Action No. C07 0943 WHA

2

Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 461-62 (1992); Jefferson Parrish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 9 (1984); Cascade Health Solutions v. Peacehealth, 502 F.3d 895, 925-26 (9th Cir. 2007).

Evidence shows that Defendants' licensees enter into separate license agreements for active and retired player group licensing rights. Trial Tr. 1295-96 (Joel Linzner testifying that "we did separate licenses" for retired players). Thus, there is a substantial risk that a court would find that conditioning the licensing of active player group rights (the tying product) on accepting a license to all retired player group rights (the tied product) would satisfy the first prong.

The hypothetical proposed by Plaintiffs' counsel assumes that the sale of active player group rights is conditioned on taking a license to all retired player group rights. See e.g., 2252:12-17. Plaintiffs' hypothetical also assumes that Defendants have market power in a market for active player group rights which they are able to leverage to force licensees to accept retired player group rights, and thus under the hypothetical, Defendants could restrain trade in the market for the tied product. Id. at 2250-2257.

Finally, Plaintiffs themselves have alleged that retired players licensing opportunities are primarily available through Defendants. Id. at 2250:23-24 ("If they want to do a group license for a single product, they have to go to NFLPI.") Moreover, they have alleged that the non-interference provision in Defendants' third-party license agreements requires licensees to obtain licensees only through Defendants. Trial Tr. 1666-1667. In light of the assumptions in Plaintiffs' hypothetical, and Plaintiffs' own allegations, there would be a substantial risk that requiring licensees to accept retired player group licensing rights in order to license active player rights would be a tying violation.

Since Plaintiffs have injected this scenario into the minds of the jurors, the Court should make clear to the jury that such a scenario, involving potential illegal activity, should not be considered by the jury in evaluating whether Defendants breached the contract or any fiduciary duty. Moreover, under Fed. R. Evid. 403, this issue – which is far afield from the GLA

issue in this lawsuit – would drag the jury into consideration of complex antitrust issues which have no place in this litigation or before a jury.

**II. Plaintiffs' Expert, Dr. Rascher, Has Conceded That He Did Not Conduct Any Analysis and Is Not Offering Any Opinion Regarding the Defendants' Market Power**

The relief requested should be granted for the further reason that there is simply no foundation for the suggestion in the hypothetical that Defendants had "market power." Even Plaintiffs' own expert witness, Dr. Rascher, that he has not taken the necessary steps, such as defining a relevant market, to offer any opinion that Defendants' have market power. Trial Tr. 1799:7-9 ("Q: So you have no opinion to this jury about market power or monopoly power, right? No opinion at all? A: Correct."). Thus, in evaluating the evidence in this case, there is simply no basis for the jury to consider Defendants' failure to use their purported "market power" over active player licensing to force EA to accept a license to retired players.

**III. The Hypothetical Scenario Is Also Irrelevant**

The jury should receive an instruction on tying for the additional reason that Plaintiffs' hypothetical scenario, i.e., that Defendants should have forced EA to "take" for free the rights to retired players, is irrelevant. No mention was made in Plaintiffs' hypothetical of EA being required to pay for the rights. Plaintiffs' only damages claim is that class members are entitled to moneys that were generated by group licensing and placed by Defendants in the so-called GLR pool. In Plaintiffs' hypothetical where Defendants simply give rights away for free, Defendants would generate no money at all. Thus, the hypothetical is irrelevant, confusing, and inadmissible under Fed. R. Evid. 402 and 403.

## CONCLUSION

For all of the foregoing reasons, this Court should instruct the jury to disregard any suggestion by Plaintiffs that it was a breach of any duty for Defendants not to attempt to tie retired player group licensing rights to active player group licensing rights.

Date: November 4, 2008
DEWEY & LEBOEUF LLP

BY: __/s/ Jeffrey L. Kessler_____
Jeffrey L. Kessler
*Attorneys for Defendants*

**Dewey & LeBoeuf LLP**
**One Embarcadero Center, Suite 400**
**San Francisco, CA 94111**