

**Ronald S. Katz**
Manatt, Phelps & Phillips, LLP
Direct Dial: (650) 812-1346
E-mail: rkatz@manatt.com

November 5, 2008

Client-Matter: 29749-060

**VIA ELECTRONIC FILING**

The Honorable William Alsup
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

       **Re:**    *Parrish v. National Football League Players Association*, **Case No. C07-0943 WHA**

Dear Judge Alsup:

      This responds to Defendants' November 4 "Motion for an Instruction to the Jury to Disregard Any Suggestion by Plaintiffs That It Was A Breach of Any Duty For Defendants Not to Attempt to Tie Retired Player Group Licensing Rights to Active Player Rights" ("Motion"). As detailed below, the Motion should be denied for two independent reasons.

      First, Plaintiffs did not intend to suggest through questioning of Dr. Noll that Defendants should have engaged in conduct that would constitute an illegal "tie" under the antitrust laws. Rather, Plaintiffs contend that Defendants should have done what they were contractually obligated to do under the *Group* Licensing Authorization that they drafted: license active and retired players together as a group. Defendants have absolutely no basis to inject antitrust defenses at this late stage of the litigation as an "excuse" for failing to adequately license retired and active players together.

      Second, even after Defendants filed their Motion and argued to the Court that claims of "tying" are too confusing, defense counsel asked his expert the very same questions that are the subject of the instant Motion. As such, it would now be unfair and prejudicial for the Court to strike Plaintiffs' questions on this topic. Rather, Plaintiffs hereby request an instruction that the jury disregard Mr. Kessler's speaking objection of November 4 that may have misled the jury into believing that if Defendants licensed retired and active players together, such licensing would have violated the antitrust laws.

### Defendants' Own Case Law and Argument Acknowledge That The Issue of An Illegal "Tie" Is Not Currently Before The Jury.

      As Defendants correctly state, a tying arrangement is "an agreement by a party to sell one product [the tying product] but only on the condition that the buyer also *purchases* a different (or tied) product." [Motion at 2:21-22 (emphasis added).] Defendants further contend that a tying arrangement is per se unlawful if (1) two separate products or services are involved, (2) the sale or agreement to sell one product is conditioned on the *purchase* of another, (3) the seller has sufficient economic power in the market for the tying product to enable it to restrain trade in the market for the tied product, *and* (4) a not insubstantial amount of interstate commerce in the tied product is affected. [Motion at 2:23-27 (emphasis added).]

1001 Page Mill Road, Building 2, Palo Alto, California 94304-1006   Telephone: 650.812.1300  Fax: 650.213.0260

Albany  |  Los Angeles  |  New York  |  Orange County  |  Palo Alto  |  Sacramento  |  Washington, D.C.

Dockets.Justia.com



Here, there is no testimony about the ***purchase*** of a second product. As such, there can be no illegal tie. And Defendants have even admitted this fact as they have moved to strike testimony about licensing retired players "for free," not coercing a licensee to pay for the rights of active players only if they also paid for the rights to retired players. Indeed, the hypothetical Defendants move to strike nowhere references the coercive ***sale*** of a second product:

> The jury should receive an instruction on tying for the additional reason that Plaintiffs' hypothetical scenario, i.e. that Defendants should have forced EA to "take" ***for free*** the rights to retired players, is irrelevant. ***No mention was made in Plaintiffs' hypothetical of EA being required to <u>pay</u>*** for the rights."

[Motion at 4:15-18 (emphasis added).]

The phrase "for free" is also misleading and prejudicial. Defendants are no more offering Plaintiffs for free than they are offering active players whose images are not used "for free." It is the nature of a group that some members have more value than others[1], but that is of no legal significance here as to either retired or active players because, under Plaintiffs' theory, all players receive an equal share regardless of their relative stardom.

Both parties have questioned experts on hypothetical situations, and this Court has allowed as much, presumably because experts are asked to make various assumptions in formulating their opinions. Here, Plaintiffs neither expressly or impliedly suggested that Defendants engage in illegal conduct. Rather, Plaintiffs asked Dr. Noll if Defendants could have <u>leveraged</u> their admitted exclusive rights to license all active players into a broader agreement that included the rights of retired players. Simply put, Plaintiffs asked Dr. Noll if there was anything that prevented Defendants "from using NFLPA's power in connection with having all those active players under the license to say: 'Hey, take our guys. Take the GLA guys." [Motion at 2:17-18.] This question is completely appropriate and goes to the heart of Plaintiffs' breach of fiduciary duty claim: that Defendants did nothing to promote this class of retired players <u>as a group with active players</u> despite their legal obligation to do so under the GLA.[2] Further, the issue of leveraging was addressed both in Dr. Rascher's initial report and Dr. Noll's rebuttal report.

To be clear, Plaintiffs do not intend to speak during closing about "tying" the purchase of active player group rights to the purchase of retired player group rights. However, Plaintiffs do intend to argue that by failing to license the entire group of players, both active and retired, Defendants breached their

---

[1] In fact, under Defendants' theory, Defendants themselves should not have "tied" all active players together by "tying" the sale of star active players with active players that purportedly have no value. Perhaps the product market is "star" football players, or perhaps it is some other definition. But this entire issue is irrelevant as neither party has proffered evidence of market power or tying in this case.

[2] This raises a second problem with Defendants' "tying" theory. The fundamental premise of a tying claim is that there are two separate products, one being tied to the other. Here, *Defendants* (not Plaintiffs) set up a group licensing program wherein active and retired players would be licensed *together as a group*. Because there is only one product, a group of active and retired players to be licensed together as contemplated under the GLA, there can be no illegal tie.



manatt | phelps | phillips

fiduciary duties to the class members.  Defendants are then free to rebut that argument -- as they have done numerous times to date -- as it is a key point of contention in this case.  But what Defendants are not entitled to do is (1) suggest an illegal "tie," and (2) ask the Court to strike testimony of Defendants' own expert witness and issue an erroneous instruction about "tying."  Such a directive will only confuse the jury and lead to another debate about what other instructions would then have to be included to combat such confusion.

### Defense Counsel's Subsequent Questions of Dr. Noll On The Issue of "Tying" Warrant Denial of This Motion

After filing their Motion, and arguing to the Court that "tying" has 'no place in this litigation," defense counsel immediately asked Dr. Noll as series of questions related to the exact hypothetical Defendants move to strike.  Specifically, in response to the hypothetical Defendants herein seek to strike, Mr. Kessler asked Dr. Noll if he remembered Plaintiffs' suggestion of yesterday about a licensee taking retired players for free, and then asking, "does that make any sense?"[3]  Dr. Noll responded and this line of questioning continued.  Aside from the fact that none of these questions have anything to do with the coerced sale of a second product or "tie," for Defendants to simultaneously argue that their questions on "tying" are appropriate and Plaintiffs hypothetical on the same issue is inappropriate, patently unfair, and should be rejected.

Finally, if Defendants are truly concerned about "dragging the jury into complex antitrust issues," (Motion at 4:1) even Defendants must concede that belatedly going down this road about what is and is not an illegal tie, days after Dr. Noll answered a hypothetical that did not even involve a "tie," will only confuse the jury on an issue that is not at all confusing.  Whether Defendants acted deliberately or inadvertently, defense counsel's suggestion that the licensing of retired and active players together would have violated antitrust laws, thereby excusing their obligation to do so under the GLA, was improper and misleading.

Accordingly, Defendants' Motion to Strike should be denied.  Additionally, the Court should instruct the jury that any suggestion by Mr. Kessler that the licensing of active and retired players together would have been illegal was inaccurate and should be disregarded.

Respectfully submitted,

/s/ Ronald S. Katz
Ronald S. Katz
Counsel for Plaintiffs

41334949.1

---

[3] The transcript of today's testimony has not yet been provided to the parties, and Plaintiffs are doing their best to recall the exact words of Mr. Kessler in quoting his question.  If the Court wishes to verify Mr. Kessler's question, Plaintiffs note that it was one of the first questions asked by Mr. Kessler of Dr. Noll.