MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HERBERT ANTHONY ADDERLEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' BRIEF RE: "COURT'S DRAFT CHARGE TO THE JURY" PROVIDED NOVEMBER 4, 2008** |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Plaintiffs respectfully request the following changes to the Court's proposed instructions:

2    **I.    Requests for Modifications**

3    <u>Instruction 1</u>:    Instruction 1 has a typographical error: On line 5, the word "you" is

4    omitted from the end of the line.

5    <u>Instruction 10</u>:    Instruction 10 reads that "preponderance of the evidence" is the *only*

6    burden of proof, which is not true, in light of Plaintiffs' claim for punitive damages.

7    <u>Instruction 16</u>:    Instruction 16 is too narrow in that it fails to identify the separate breach

8    of contract of failure to establish an escrow account, as required by the RPGLA.

9    <u>Instruction 17</u>:    This Instruction states that "No one in this case is suing to recover any of

10   that money, that is, no one contends that any of the ad hoc license revenue, including the Reebok

11   deal, should be re-distributed to all class members under the RPGLA or that the ad hoc

12   agreements triggered any right under the RPGLA." Plaintiffs object to this instruction because it

13   does not correctly state their position and unfairly emphasizes Defendants' position. Plaintiffs

14   agree with the first part of the sentence that they do not contend "that any of the ad hoc license

15   revenue, including the Reebok deal, should be re-distributed to all class members under the

16   RPGLA." However, the Court's use of the phrasing that the "ad hoc license agreements triggered

17   any rights under the RPGLA" is potentially confusing and should be deleted. Defendants contend

18   that, under the RPGLA, it was a breach of fiduciary duty for the Defendants to choose to do ad

19   hoc license agreements without including Plaintiffs in the shared group license with that same

20   third party licensee. Defendants instead created a license that generated shared group licensing

21   money only for the active players.  Because the Court would need to offer a more substantial

22   explanation of Plaintiffs position if it were to include the language addressed here, Plaintiffs

23   request that the language be deleted.

24       Plaintiffs also submit that, for a balanced instruction, this language should be modified to

25   add that the use of ad hocs is neither a claim or a defense. Thus, it is requested that this sentence

26   be added:  "As well, the Defendants' payment of funds to certain class members pursuant to ad

27   hoc agreements cannot be a defense to their breach of the RPGLA."  Finally, plaintiffs request

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1
Dallas 268329v1

1

the following typographical corrections: page 8, line 10: where it reads "license agreement," Plaintiffs suggest "contracts," in view of the later discussions on Defendants' contentions that the GLA only constitutes a "license."

Instruction. 27: D.C. law provides that if, after applying the rules of contract interpretation, the terms still are not subject to one definite meaning, the ambiguities will be "construed *strongly* against the drafter." *See In re Bailey*, 883 A.2d 106, 118 (D.C. 2005); *Capital City Mortg. Corp. v. Habana Village Art & Folklore, Inc.*, 747 A.2d 564, 567 (D.C. 2000). The Court's Jury Instruction 27 does not go far enough in this regard and plaintiffs request that it use the quoted wording from the D.C. courts. Defendants' request for a mitigating addition to this jury instruction of "reasonableness" is unsupported by D.C. law and contrary to the indicated authority above and plaintiffs request that that part of the sentence be removed.

Instruction 28: Plaintiffs object to this Instruction because it unnecessarily overemphasizes one witness' testimony and might attach importance or credibility to such testimony, which should be in the domain of the jury. As a result, Plaintiffs request that this sentence be deleted: "As well, the Electronic Arts witness testified that it referred only to *active* players." Because there is no dispute about the meaning of the passage and the Court has explained why it is undisputed, the additional reference to witness testimony is unnecessary.

Instruction 29: Plaintiffs request that the Court add "if you see it as appropriate" after the word "course."

Instruction 30: Instruction 30 has a typographical error: On line 27 "cross" should be "gross".

Instruction. 31: Plaintiffs assert that this instruction confuses the class period with the relevant period for damages in this case. Although the class period extends to people who had a GLA in existence from February 14, 2004 to February 14, 2007, the damages from the breach of such GLAs could extend after the end of the class period. In this case, the number of RPGLAs in effect diminished beginning in 2006 because Defendants changed the form. However, such

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1
Dallas 268329v1

damages as accrued during 2007 are permissible damages for the Class. Instruction 31 also has a typographical error: On line 7, "retired player" is redundant with RPGLA.

Instruction. 32: Instruction 32 has a typographical error. On line 11, "whether or" should be followed by "not".

Instruction 38:

As well, the Plaintiffs request that the Court instruct the jury that the mere presence of control is sufficient, without actual exercise of control. D.C. cases emphasize that the right to control, rather than its actual exercise, is the indicia of agency. *See Judah v. Reiner*, 744 A.2d 1037, 1040 (D.C. 2000).

Furthermore, the type and level of control is dependent upon the type of relationship. Agency covers the employer/employee relationship, and in that context, control is often a key distinction between an employee and an independent contractor. *See Safeway Stores, Inc. v. Kelly*, 448 A.2d 856, 860 (D.C. 1982) (emphasizing control in the determination of a master/servant relationship). Agency also covers the broker/investor relationship, where a determination of agency is *more* likely if the investor does not control the day-to-day activities of the broker, and instead, the broker retains control over those activities. *See Merrill Lynch v. Cheng*, 901 F.2d 1124, 1128 (D.C. Cir. 1990) ("A broker is an agent who owes his principal a duty to act only as authorized."); *Lieb v. Merrill Lynch*, 461 F. Supp. 951, 954 (E.D. Mich. 1978) (considering whether the broker had "usurped actual control over a technically non-discretionary account" in determining the extent of duties owed to the investor); *Robles v. Consolidated Graphics, Inc.*, 965 S.W.2d 552, 557 (Tex. App. 1997) ("Clearly, Robles was hired by both CCI and Gulf Printing on a commission basis to make or negotiate bargains or contracts on their behalf in matters of trade and commerce. Accordingly, Robles was acting as an agent and broker for both Gulf Printing and CCI.").

As noted in Plaintiffs' brief, agency is a broad concept. *See* Restatement (Third) of Agency, § 1.01 ("Agency encompasses a wide and diverse range of relationships and circumstances. . . . Authors, performers, and athletes often retain specialized agents to represent

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1
Dallas 268329v1

3

their interests in dealing with third parties. Some industries make frequent use of nonemployee agents to communicate with customers and enter into contracts that bind the customer and a vendor. . . . Some common forms of agency have a personal and noncommercial flavor, exemplified by the relationship created by a power of attorney that confers authority to make decisions regarding an individual's health care, place of residence, or other personal matters."). Defendants understand this and argue that factors which specifically apply to one context should not apply to a broad understanding of agency.

As a further example of the breadth of agency, the Second Circuit examined the metes and bounds of an advertiser-advertising agency relationship in *Columbia Broadcasting Systems, Inc. v. Stokely-Van Camp, Inc.*, 522 F.2d 369, 374-77 (2d Cir. 1975). In that case, the Court recognized that findings of agency and authority are not governed exclusively by the same considerations as the employee/independent contractor dichotomy. *See id.* at 375 ("We also are fully aware that an independent contractor, one who is not subject to the right of another to control his physical conduct in the performance of an undertaking, may or may not be an agent."). In the context of this particular relationship, the Court noted that "professional agents can properly assume that they have the authority usually exercised by others in the same field." *Id.* at 376.

Thus, plaintiffs request an addition to this instruction: "Plaintiffs do not have to actually exercise any control over the Defendants for you to find the control factor to be present; instead, it is simply the right to control, rather than its actual exercise, that can be indicative of an agency relationship. The level of control necessary depends on the nature and context of the parties' relationship."

Instruction. 39: In this Instruction, the discussion of a "licensor" and "licensee" as related to the RPGLA threatens to confuse the jurors, since this case also involves third-party licensees and licensors. Plaintiffs request that in this discussion that the licensor under the RPGLA be identified as the Retired Player and the licensee identified as the Defendants, for clarification.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1
Dallas 268329v1

4

1    Instruction 41:  Plaintiffs request that this Instruction include the following:  "A fiduciary

2    relationship also may be based in part on a contract if, through the past history of their

3    relationship and conduct, the parties extended their relationship beyond the limits of the

4    contractual obligations."  *Church of Scientology, Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028

5    (D.D.C. 1994) (applying D.C. law); *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 769-

6    70 (S.D.N.Y. 1990); *Schmidt v. Bishop*, 779 F. Supp. 321, 325 (S.D.N.Y. 1991); *Brown v. Coates*,

7    253 F.2d 36, 38 (D.C. Cir. 1958); *Int'l Brotherhood of Teamsters v. Wirtz*, 346 F.2d 827, 832

8    (D.C. Cir. 1965).

9    Instruction 43:  This Instruction should also expressly mention that a fiduciary must avoid

10   conflicts of interest, as provided under D.C. law.  "Ultimately, an agent is subject to a duty not to

11   compete with the principal concerning the subject matter of his agency.  An agent has a duty to

12   act solely for the benefit of his [principal] and to avoid conflicts of interest between his duty to

13   his [principal] and his own self-interest."  *Pm Servs. Co. v. Odoi Assocs., Inc.*, No. 03-1810, 2006

14   U.S. Dist. LEXIS 655, at *85 (D.D.C. Jan. 4, 2006) (quotations and citations omitted).

15   Instruction 45:  Plaintiffs object to the instruction on lines 2-3, and request that it be

16   restated to say that "there is no claim in this case that Electronic Arts violated the intellectual

17   property rights of any retired player by scrambling such players' identity."  As currently stated, it

18   is both confusing and overbroad, as the plaintiffs are indeed claiming that their rights were

19   violated through the defendants' actions with regard to scrambling.

20   Instruction 46:  Instruction 46 has a typographical error:  On line 10, it appears to be

21   missing an "a" between "prove" and "breach".

22   **II.     Requests for Additional Instructions**

23        A.     Breach of the Covenant of Good Faith and Fair Dealing:

24   Plaintiffs are entitled to a jury instruction regarding the breach of covenant of good faith

25   and fair dealing and the one offered is compliant with the authorities cited.  All contracts contain

26   an implied duty of good faith and fair dealing.  *Murray v. Wells Fargo Home Mortg.*, 953 A.2d

27   308 (D.C. 2008), *citing, Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (internal

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1
Dallas 268329v1

5

1  citation omitted).  This duty means that "neither party shall do anything which will have the effect

2  of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.*

3      While defendants claim that the breach of the covenant adds nothing because it is

4  "identical" to the breach of contract claims, that merely reflects a misstatement of the claim.

5  While the breach of contract claim includes the failure to pay under the RPGLA, the breach of the

6  covenant of good faith and fair dealing is different; it is a complaint that instead of ensuring group

7  licensing under the RPGLA, the Defendants designed around the RPGLA with the creative use of

8  ad hoc licenses, in an effort to deprive the Class  from "receiv[ing] the fruits of the contract."

9  Thus, this claim is not identical to the other claims, although it is well developed in this case.

10      As well, the Defendants claim that this was not specifically plead;  however, the claim is

11  included in the Pretrial Order, p. 6, lines 8-9.  *999 v. C.I.T. Corp.*, 776 F.2d 866, 870 (9th Cir.

12  1985); *see also, Ryan v. Illinois Dep.t of children & family Svcs.*, 185 F.3d 751, 763 (7th Cir.

13  1999) (Final pretrial orders have the effect of amending the pleadings).   Furthermore,  the

14  Defendants claim no surprise and, indeed, in making the claim that it is "identical" to the other

15  claims, concede notice and has engaged in full discovery and evidence presentation on point.

16      Thus, the plaintiffs request the following instruction:

17      **In every contract or agreement, there is an implied promise of good faith and fair**

18  **dealing.  This means that each party will not do anything which will interfere with the right**

19  **of any other party to receive the benefits of the contract.**

20      **Plaintiffs claim that Defendants, in addition to breaching the actual terms of the**

21  **GLA, also violated their duty to act fairly and in good faith in carrying out their obligations**

22  **under the GLA, such that the GLA Class members were not able to receive the benefits of**

23  **the GLA.  To establish a breach of the covenant of good faith and fair dealing, Plaintiffs**

24  **must prove the following:**

25      **1.      That the Plaintiffs did all, or substantially all of the significant things that the**

26  **GLAs required them to do, or that they were excused from having to do those things;**

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1
Dallas 268329v1

6

1      **2.**     **That all conditions required for the Defendants' performance under the GLA**

2 **had occurred;**

3      **3.**     **That the Defendants evaded the spirit of the GLA or unfairly interfered with**

4 **the GLA class members' right to receive the benefits of the GLA; and**

5      **4.**     **That the GLA Class members were harmed by Defendants' conduct.**

6      **B.**     <u>Disgorgement</u>

7      The plaintiffs are also entitled to a disgorgement instruction. Plaintiffs are entitled to a

8 jury instruction on disgorgement because Defendants, as fiduciaries, violated their duty of loyalty

9 to the GLA Class. *Hendry v. Pelland*, 73 F.3d 397, 401-03 (D.C.Cir. 1996). Despite Defendants

10 statements to this court otherwise this claim has been fairly presented in this lawsuit. *See* Final

11 Pretrial Order, p. 10, line 20; p. 16, lines 16-17; Ex. A, Response to Interrogatory 12 (seeking

12 disgorgement as an alternative to breach of fiduciary duty damages) filed May 19, 2008. *See*

13 *also,* Plaintiffs' Response to Defendants' Motion for Summary Judgment 39:15-40:8.

14      D.C. recognizes that, if plaintiff breaches his fiduciary duties to the Class, the Class may

15 seek damages *or* disgorgement. *See Beckman v. Farmer*, 579 A.2d 618, 651 (D.C. 1990) (a

16 "breach of fiduciary duty is not actionable unless injury accrues to the beneficiary or the fiduciary

17 profits thereby."); *United States v. Project on Gov't Oversight*, 572 F. Supp. 2d 73, No. 03-96,

18 2008 U.S. Dist. LEXIS 63558, at *3 (D.D.C. Aug. 20, 2008) ("[A]n agent who secretly profits

19 from a breach of fiduciary obligation to his principal must disgorge his ill-gotten gains."). In fact,

20 under a disgorgement theory, Plaintiff need not prove its harm at all, and can instead rely on the

21 amount gained by the fiduciary. *See In re Estate of Corriea*, 719 A.2d 1234, 1241 (D.C. 1998)

22 (*citing Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399 (1940)) (the fact that

23 Avianca was not able to quantify the damages it suffered from the Twin Otter transaction does

24 not disqualify the profits ordered disgorged as just compensation for the wrong. . . .

25 Disgorgement of the net profits rectified that wrong in a manner that "conform[ed] . . . to [its]

26 dimensions."); *Owen v. Shelton*, 277 S.E.2d 189, 192 (Va. 1981) (the price of a violation of the

27 duty to disclose is forfeiture of the broker's right to compensation).

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1
Dallas 268329v1

7

This rule illustrates the high regard the law holds for the fiduciary relationship, founded as it is upon one person's trust in the integrity and fidelity of another. The purpose of the rule is more prophylactic than remedial; it is applied, not to compensate the principal for an injury, but rather to discipline the fiduciary in the conduct of the office entrusted to him. *Id.*; Restatement (Third) Of Agency § 8.02 cmt. b (2006) (To establish that the agent is subject to liability, it is not necessary that the principal show that the agent's acquisition of a material benefit harmed the principal. The benefit realized by the agent can often be calculated more readily than any harm suffered by the principal. However, when the principal can establish that the agent's conduct resulted in harm to the principal, the principal may recover compensatory damages from the agent). *See also Burrow v. Arce*, 997 S.W.2d 229, 238 (Tex. 1999) (the main purpose of forfeiture of compensation when an agent breaches his or her duty of loyalty is not to compensate an injured principal, even though it may have that effect; rather, the central purpose of the equitable remedy of forfeiture is to protect relationships of trust by discouraging agents' disloyalty.)

Here, if the jury finds a fiduciary relationship between Defendants and Plaintiffs, disgorgement becomes a viable measure of damages. The jury has heard sufficient testimony to understand Defendants' profits from such breaches, and the jury is entitled to use disgorgement as a benchmark, rather than Plaintiffs' injuries, if it so chooses. Thus, Plaintiffs request that the Court include their proffered disgorgement instruction:

**An alternative form of damages available to Plaintiffs for Defendants' breach of fiduciary duty is disgorgement. A fiduciary (here, the Defendants) who has acquired a benefit by a breach of his duty as a fiduciary is under a duty of disgorgement to his principal (here, the GLA Class members). The GLA Class members are entitled to obtain the benefits derived by the Defendants through the breach of their fiduciary duties, including, for example, any excess commission to which Defendants may not have been entitled. For each violation of duty of loyalty, the Plaintiffs need only to prove only that the Defendants breached their duty of loyalty, not that their breach proximately caused them injury. Disgorgement is designed to deter fiduciary misconduct, a goal worth furthering**

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1
Dallas 268329v1

8

**regardless of whether a particular client has been harmed.** **Unlike other forms of compensatory damages, however, forfeiture reflects not the harms clients suffer from the tainted representation, but the decreased value of the representation itself.**

Respectfully submitted,

Dated: _November 5, 2008

MANATT, PHELPS & PHILLIPS, LLP

By: _____ /s/ Ronald S. Katz _____ .
       Ronald S. Katz (SBN 085713)
       Ryan S. Hilbert (SBN 210549)
       Noel S. Cohen (SBN 219645)
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
Lewis T. LeClair (SBN 077136)
Jill Adler Naylor (SBN 150783)
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1
Dallas 268329v1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit A

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1
Dallas 268329v1

1



1  MANATT, PHELPS & PHILLIPS, LLP
   RONALD S. KATZ (Bar No. CA 085713)
2  E-mail: rkatz@manatt.com
   RYAN S. HILBERT (California Bar No. 210549)
3  E-mail: rhilbert@manatt.com
   NOEL S. COHEN (California Bar No. 219645)
4  E-mail: ncohen@manatt.com
   1001 Page Mill Road, Building 2
5  Palo Alto, CA 94304-1006
   Telephone: (650) 812-1300
6  Facsimile: (650) 213-0260

7  MCKOOL SMITH, P.C.
   LEWIS T. LECLAIR (Bar No. CA 077136)
8  E-mail: lleclair@mckoolsmith.com
   300 Crescent Court
9  Dallas, TX 75201
   Telephone: (214) 978-4984
10 Facsimile: (214) 978-4044

11 *Attorneys for Plaintiffs*

12                  UNITED STATES DISTRICT COURT

13                      NORTHERN DISTRICT

14                   SAN FRANCISCO DIVISION

15

16 | BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, and WALTER | CIVIL ACTION NO. C07 0943 WHA |

17 ROBERTS III, on behalf of themselves and all others similarly situated, | **PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' THIRD SET OF INTERROGATORIES**

18                 Plaintiffs,

19

20 NATIONAL FOOTBALL LEAGUE
21 PLAYERS ASSOCIATION, a Virginia
   corporation, and NATIONAL FOOTBALL
22 LEAGUE PLAYERS INCORPORATED
   d/b/a PLAYERS INC, a Virginia
23 corporation,

24                 Defendants.

25

26       Plaintiffs hereby serve their objections and responses to Defendants' Third Set of

27 Interrogatories (collectively, the "Interrogatories" and individually, an "Interrogatory"), pursuant

28 to the Federal Rules of Civil Procedure, as follows:

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20201035.1

# PRELIMINARY STATEMENT

The following objections and responses are based upon the information currently known to Plaintiffs, including information ascertained pursuant to Plaintiffs' reasonable inquiry in response to each Interrogatory. Discovery and investigation are on-going and may disclose the existence of additional responsive information. Plaintiffs reserve the right to amend or supplement these responses and objection s as additional information is discovered, revealed, recalled or otherwise ascertained. Plaintiffs specifically reserve the right to utilize subsequently discovered information at trial.

# GENERAL OBJECTIONS

The following General Objections apply to, and are specifically incorporated in, each response to each of the Requests, whether or not expressly stated in each individual response:

1. Plaintiffs object to the Requests to the extent that they seek to impose obligations beyond those set forth in the Federal Rules of Civil Procedure.

2. Plaintiffs object to the definition of the terms "You," "Your" and "Plaintiffs" to the extent that they purport to require the disclosure of information in the possession, custody or control of anyone other than Herbert Anthony Adderley. Plaintiffs further object to the definitions of these terms to the extent that they purport to require the disclosure of information in the possession, custody or control of "attorneys" on the ground and to the extent that such information is protected by the attorney-client privilege, word product doctrine or any other applicable privileges or protections from discovery.

3. Plaintiffs object to the definition of the term "Equal Share Royalty" to the extent that it purports to alter the definition provided by Plaintiffs in their Response to Defendants' Interrogatory No. 8. For purposes of responding to these Interrogatories, Plaintiffs shall interpret

"Equal Share Royalty" to have the same meaning as set forth in Plaintiffs' Responses to Defendants' Interrogatory No. 8.

4.    Plaintiffs object to the Requests to the extent that they seek privileged information, including but not limited to information or documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest privilege, the protection afforded to settlement discussions, any agreement between parties, any court order or any other privilege or immunity. Insofar as the disclosure of information by Plaintiffs in response to any Interrogatory may be deemed to be a waiver of any privilege or right, such waiver shall be deemed to be a limited waiver with respect to that particular information only.

5.    Plaintiffs object to the Interrogatories to the extent they seek information that is not relevant to the claim or defense of any party and not reasonably calculated to lead to the discovery of such information.

6.    Plaintiffs object to the Interrogatories to the extent that they seek information that is publicly available, has already been furnished to, or is in the possession, custody or control of Defendants, or to the extent that they seek information already available to Defendants, available from public records or otherwise in the public domain and available to Defendants.

7.    Plaintiffs object to the Interrogatories to the extent that they seek information that is not within Plaintiffs possession, custody or control. Plaintiffs construe each Interrogatory as requiring it to engage in a reasonable inquiry and base their responses on information that is known or ascertainable through a reasonable inquiry.

8.    Plaintiffs responses to the Interrogatories are based on the information available as of the date hereof, and Plaintiffs reserve the right to supplement and/or amend their responses and objections if necessary.

1  9.  Plaintiffs reserve all objections or other positions they may have as to the

2  competency, relevance, materiality, privilege, or admissibility of any information disclosed in

3  response to the Interrogatories for any purpose whatsoever.

### SPECIFIC RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 9:

Identify each contract (such as the 2004 and 2005 EA AGREEMENTS) for which
ADDERLEY and the putative GLA CLASS contend that they are entitled to an "EQUAL
SHARE" of any royalties paid to DEFENDANTS.

### RESPONSE TO INTERROGATORY NO. 9:

Plaintiffs object to this Interrogatory on the grounds that it calls for a legal conclusion.
Plaintiffs further object to this Interrogatory on the grounds that it is overly broad and unduly
burdensome, and that it calls for information that Defendants can obtain from license agreements
that are within their possession, custody or control. Plaintiffs further object to this Interrogatory
on the grounds that the phrase "such as the 2004 and 2005 EA AGREEMENTS" is vague and
ambiguous, rendering the entire Interrogatory vague and ambiguous. For purposes of responding
hereto, Plaintiffs shall interpret the phrase "such as the 2004 and 2005 EA AGREEMENTS" as
referring to those agreements with language similar to the 2004 and 2005 EA Agreements with
respect to the licensing of retired player rights. Subject to and without waiving these objections
or the General Objections, and pursuant to Rule 33(d) of the Federal Rules of Civil Procedure,
Plaintiffs respond as follows:

Plaintiffs contend that Adderley and the GLA Class are entitled to an equal share of the
royalties paid to Defendants during the statute of limitations period from the license agreements
between Defendants and those licensees identified on Exhibit A hereto. Of those, the licenses

identified on Exhibit B hereto contain language similar to the 2004 and 2005 EA Agreements with respect to the licensing of retired player rights.

**INTERROGATORY NO. 10:**

Describe the bases for ADDERLEY's and the putative GLA CLASS's contention that an "EQUAL SHARE ROYALTY" is an appropriate measure of damages for their breach of contract claim based upon the ADDERLEY GLA.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiffs object to this Interrogatory on the grounds that it calls for a legal conclusion. Plaintiffs also object to this Interrogatory on the grounds that it calls for expert analysis and opinion in violation of the Court's December 7, 2007 Order Re-Setting Deadlines, which does not yet require the disclosure of expert reports. Plaintiffs further object to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable evidentiary privilege. Subject to and without waiving these objections or the General Objections, Plaintiffs respond as follows:

The construct of the "equal share royalty" is one of the NFLPA's creation. Adderley's breach of contract claim is based upon the language of the Adderley GLA in which Adderley and the GLA Class Members licensed to Defendants the right to use their images in group licensing programs. The Adderley GLA defines group licensing programs as "programs in which a licensee utilizes a total of six (6) or more present or former NFL player images in conjunction with or on products that are sold at retail or used as promotional or premium items." The Adderley GLA further provides that "moneys generated by such licensing of retired player group rights will be divided between the player and an escrow account for all eligible NFLPA members who have signed a group licensing authorization form." Defendants admit that "eligible NFLPA members" means active NFL players only. Defendants received royalties from group licensing

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

programs from licenses entered into with at least those licensees identified in response to Interrogatory No. 9. Defendants admit that royalties from such licenses were deposited into an escrow account, which is the only escrow account established by Defendants for such royalties, and paid out to eligible (*i.e.*, active) players on an "equal share" basis. Defendants further admit that no royalties from such licenses or from the escrow account were paid to any retired players. Because the escrow account from which active players are paid an equal share royalty is the only escrow account established "for eligible NFLPA members" who have signed a GLA, pursuant to the Adderley GLA, Adderley and the GLA Class Members should have shared in the royalties in the same manner as active players shared in such royalties, *e.g.*, each receiving an "equal share" of the royalties.

**INTERROGATORY NO. 11:**

If ADDERLEY's and the putative GLA CLASS's damages claim is based – in whole or in part – on any contract(s) other than the ADDERLEY GLA, then identify any such contract(s), and describe how an "EQUAL SHARE ROYALTY" would be an appropriate measure of damages based upon a purported breach of such contract(s).

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiffs object to this Interrogatory on the grounds that it calls for a legal conclusion. Plaintiffs further object to this Interrogatory on the grounds that it is vague and ambiguous. Plaintiffs further object to this Interrogatory on the grounds that it calls for expert analysis and opinion in violation of the Court's December 7, 2007 Order Re-Setting Deadlines, which does not yet require the disclosure of expert reports. Plaintiffs further object to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable evidentiary privilege. Subject to and without waiving these objections or the General Objections, Plaintiffs respond as follows:

The breach of contract claims asserted by Adderley and the GLA Class Members are based on the Adderley GLA and on those additional GLAs signed by GLA Class Members during the statute of limitations period that contain language similar to the Adderley GLA, as well as on those contracts identified in response to Interrogatory No. 9, the 2000 NFLPA-PLAYERS INC Agreement, and all additional agreements which establish the "equal share" royalty as described by Defendants' Rule 30(b)(6) witness.

**INTERROGATORY NO. 12:**

Describe the bases for ADDERLEY's and the putative GLA CLASS's contention that an "EQUAL SHARE ROYALTY" is an appropriate measure of damages for their breach of fiduciary duty claim based upon the ADDERLEY GLA.

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiffs object to this Interrogatory on the grounds that it calls for a legal conclusion. Plaintiffs further object to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable evidentiary privilege. Plaintiffs also object to this Interrogatory on the grounds that it calls for expert analysis and opinion in violation of the Court's December 7, 2007 Order Re-Setting Deadlines, which does not yet require the disclosure of expert reports. Subject to and without waiving these objections or the General Objections, Plaintiffs respond as follows:

Adderley's breach of fiduciary duty claim is based upon Defendants' solicitation of Adderley and the GLA Class Members to sign the Adderley GLA granting Defendants the right to license their images in group licensing programs. Defendants became the representatives of retired players who signed the Adderley GLAs for purposes of group licensing programs. Defendants licensed the right to use retired player images through group licensing programs to at least those licensees identified in response to Interrogatory No. 9. Defendants admit that royalties

1   from such licenses were distributed to active players on an "equal share" basis from an escrow

2   account.  Defendants further admit that no royalties from such licenses were distributed to any

3   retired players, despite Defendants' obligation as agents and fiduciaries, to do so.  Because the

4   right to use the images of Adderley and the GLA Class Member was licensed through a group

5   licensing program to identifiable licensees, Defendants should have distributed such royalties to

6   Adderley and the GLA Class Members in the same manner as active players shared in such

7   royalties, e.g., each receiving an "equal share" of the royalties.  Accordingly, the damages

8   resulting from Defendants' breach of their fiduciary duty to account for and distribute royalties to

9   Adderley and the GLA Class is an "equal share" of all such royalties.

10          Alternatively, should Defendants contend that, contrary to the express language of the

11  license agreements, they did not license the rights of retired members pursuant to the licensing

12  agreements identified in response to Interrogatory No. 9, then Defendants breached their fiduciary

13  duty to Adderley and the GLA Class Members by virtue of the failure to license such rights.

14  Having solicited retired members to grant their rights and having the opportunity to grant a group

15  license for all members who signed a GLA, Defendants breached their duty by electing to license

16  only active players, and by failing to provide adequate information to the licensees about the

17  rights of retired players that had been granted to the Defendants and for which they had authority

18  to license.  Because the licensees would have been willing to pay at least as much, if not more, for

19  the rights of both active players and the retired players who are members of the GLA Class as

20  they paid for the rights that Defendants claim to have granted, the GLA Class members are

21  entitled to recover as damages an amount that would have been their equal share of such revenue.

22  The fact that the license agreements provide that the payments are guaranteed by the licensees

23  without regard to the use of any images by the licensees further supports the claims of the GLA

24  Class.

1   .As a further alternative, Plaintiffs seek disgorgement of the amounts received by the

2 Defendants, in whole or in part.

3     In addition, for the breach of fiduciary duties relating to the reallocation of $8 million and

4 other fees wrongfully collected by the Defendants, Plaintiffs seek disgorgement and will allocate

5 those damages in an equal share amount.

6

7 **INTERROGATORY NO. 13:**

8     Describe the bases for ADDERLEY's and the putative GLA CLASS's contention that

9 their group licensing rights were included within the "exclusive" 2005 EA AGREEMENT

10 (TAC¶ 25) in light of the fact that the ADDERLEY GLA is expressly "non-exclusive."

11 **RESPONSE TO INTERROGATORY NO. 13:**

12     Plaintiffs object to this Interrogatory on the grounds that it calls for a legal conclusion.

13 Plaintiffs further object to this Interrogatory on the grounds that the term "exclusive" is vague and

14 ambiguous. Subject to and without waiving these objections or the General Objections, Plaintiffs

15 respond as follows:

16

17     There are several bases for concluding that the group licensing tights of Adderley and the

18 GLA Class are included within the 2005 EA Agreement. First, the Adderley GLA grants

19 Defendants the exclusive right to use the retired player's image in connection with group

20 licensing. Specifically, the Adderley GLA states that "[t]he undersigned player <u>retains the right</u>

21 to grant the use of his image to another entity for use in a group of five (5) or less present or

22 former players . . ." By defining the rights retained by the retired player, Defendants have

23 necessarily determined the rights that the retired player does not retain, *i.e.*, retired players do not

24 retain the right to grant the use of his image in connection with group licensing programs

25 (licensing "six (6) or more present or former NFL player images). Thus, for purposes of the 2005

26

27

28

1     EA Agreement, Defendants had the ability to and did grant the exclusive right to use retired

2     player images.

3         Second, whether Players Inc conveys "exclusive" rights to EA is separate and independent

4     of whether GLA Class members have granted "non-exclusive" rights to Players Inc. The

5     "exclusive" language in the 2005 EA Agreement means that Players Inc has unilaterally

6     determined that it will not license retired player rights to any other licensee <u>with respect to those</u>

7     <u>goods covered by the 2005 EA Agreement</u>. Players Inc (as well as the GLA Class members)

8     retains the right to license retired player group licensing rights to countless other licensees for

9     different goods. Significantly, Players Inc did not grant to EA the sole (*i.e.*, exclusive) right to

10     use retired player images generally to the exclusion of all other licensees.

11

12     Dated: May 19, 2008                   MANATT, PHELPS & PHILLIPS, LLP

13

14

15                            By: _____
                               Ronald S. Katz (SBN 085713)

16                                Ryan S. Hilbert (SBN 210549)
                               Noel S. Cohen (SBN 219645)

17                                1001 Page Mill Road, Building 2
                               Palo Alto, CA 94304-1006

18                                Telephone: (650) 812-1300
                               Facsimile: (650) 213-0260

19                                MCKOOL SMITH, P.C.
                               Lewis T. Leclair (SBN 077136)

20                                300 Crescent Court
                               Dallas, TX 75201

21                                Telephone: (214) 978-4984
                               Facsimile: (214) 978-4044

22                                *Attorneys for Plaintiffs*

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

BERNARD PAUL PARRISH, HERBERT
ANTHONY ADDERLEY, and WALTER
ROBERTS III, on behalf of themselves and
all others similarly situated,

        Plaintiffs,

NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION, a Virginia
corporation, and NATIONAL FOOTBALL
LEAGUE PLAYERS INCORPORATED
d/b/a PLAYERS INC, a Virginia
corporation,

        Defendants.

CIVIL ACTION NO. C07 0943 WHA

**VERIFICATION**

    I, Laura M. Franco, have reviewed Plaintiffs' Objections and Responses to Defendants'

Third Set of Interrogatories and know the contents thereof. I believe to the best of my knowledge

that the matters stated therein are true and correct.

    Declared under penalty of perjury this 19th day of May, 2008.

                            Laura M. Franco