Todd Padnos (Bar No. 208202)
*tpadnos@dl.com*
DEWEY & LEBOEUF LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Tel: (415) 951-1100; Fax: (415) 951-1180

Jeffrey L. Kessler (*pro hac vice*)
*jkessler@dl.com*
David G. Feher (*pro hac vice*)
*dfeher@dl.com*
David Greenspan (*pro hac vice*)
*dgreenspan@dl.com*
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 259-8000; Fax: (212) 259-6333

Kenneth L. Steinthal (*pro hac vice*)
*kenneth.steinthal@weil.com*
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000; Fax: (650) 802-3100

Bruce S. Meyer (*pro hac vice*)
*bruce.meyer@weil.com*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000; Fax: (212) 310-8007

Attorneys for Defendants National Football League Players Association
and National Football League Players Incorporated d/b/a Players Inc

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a/ PLAYERS INC,<br><br>Defendants. | Case No. C 07 0943 WHA<br><br>**DEFENDANTS' MEMORANDUM AND OBJECTIONS REGARDING THE COURT'S DRAFT CHARGE TO THE JURY AND SPECIAL VERDICT FORM OF NOVEMBER 4, 2008** |

Defs.' Mem. And Objs. Re: Court's Draft Charge to the Jury and Special Verdict Form of November 4, 2008 — Civ. Action No. C07 0943 WHA

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

# MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to the Court's request, Defendants respectfully submit the following objections regarding the Court's draft charge to the jury of November 4, 2008 ("Draft Charge") and Special Verdict Form, all of which are expressly preserved.

### A. Defendants' Objections to the Draft Charge

#### 1. Unfair and Incomplete Descriptions of the RPGLA

Defendants object to Instructions No. 16 and No. 17 as unfair and incomplete descriptions of the RPGLA. The descriptions of the RPGLA should follow the language of the RPGLA, without embellishment by the Court. Thus, rather than having to find that Plaintiffs have proven that "moneys were generated by defendants' licensing of group rights described by the RPGLA at issue," (Draft Charge Instruction No. 16 at 8:4-5), the Court should instruct the jury that it must find that Plaintiffs have proven that "moneys were generated by defendants' licensing of <u>retired player group rights under</u> the RPGLA at issue." (revisions underlined); see Trial Ex. 110. This change must be made because the present description of the finding the jury must make in deciding Plaintiffs' breach of contract claim directs their attention to certain language in the RPGLA (namely paragraph two), relied upon by Plaintiffs, but away from the relevant language, relied upon by Defendants, providing when money must be paid (paragraph five), and thus has the unfair effect of taking away from the jury their role in deciding how the RPGLA should be construed. As presently drafted, Instruction No. 16 is highly prejudicial and would make it impossible for the jury to render a fair and balanced verdict, and therefore must be revised.

The Court's description of the RPGLA and its relationship in this case with ad hoc license agreements is also prejudicial. While Instruction No. 17 now includes a statement about how Plaintiffs have asserted no claim seeking a reallocation of the moneys paid under ad hoc license agreements, it does not adequately diffuse any jury misunderstanding about this issue given the convoluted manner Plaintiffs have addressed this issue during the trial. First, the Court should include as an example of ad hoc license agreements to which Plaintiffs make no claim, not just the Reebok agreement, but also the Pro Football Hall of Fame ad hoc license, which has

Defs.' Mem. and Objs. Re: Court's Draft Charge to the
Jury and Special Verdict Form of November 4, 2008

Civ. Action No. C07 0943 WHA

1

been heavily emphasized by Plaintiffs. Second, the Court should further clarify that there is no claim that any of the ad hoc license agreements "<u>violated</u>" the terms of the RPGLA. Simply stating that Plaintiffs do not contend that Defendants' practice of securing ad hoc license agreements did not "trigger" any terms or rights under the RPGLA is insufficient to dispel juror confusion. Absent this clarification, there is significant risk that the jury could mistakenly find Defendants liable for licensing groups of six or more retired players pursuant to ad hoc license agreements rather than the RPGLAs – a claim that is <u>not</u> in the case, and that could <u>not</u> be class certified. Thus, Instruction No. 17 should be revised at 8:16-17 to read as follows: "including the Reebok deal and <u>Electronic Arts's Hall of Fame deal</u>, should be re-distributed to all class members under the RPGLA or that the ad hoc agreements <u>violated</u> any rights under the RPGLA." (revisions underlined).

### 2. Defendants' Responses Are Either Absent from the Instructions or Inaccurately Described

At various points, the Draft Charge describes Defendants' responses to Plaintiffs' allegations. Some of these descriptions, however, are inaccurate and should be revised to correctly reflect Defendants' positions. Instructions No. 17 and 18 state that Defendants "treated" the group licensing revenues in the GLR pool as "due only to active players." Defendants do not contend that they simply "treated" the GLR pool revenues as active player money. Moreover, this language unfairly suggests to the jury that Defendants engaged in arbitrary conduct. Instead, Defendants contend that the licensing revenues in the GLR pool were only generated by the licensing of active player rights. Thus, the portions in the Instructions that characterize Defendants' positions should do so fairly and be revised to state in Instruction No. 17 at 8:26-27 as follows: "This is the revenue that went into the GLR or Gross Licensing Revenue pool <u>that defendants claim was generated only by</u> active player <u>licensing</u> . . . ." (revisions underlined). Instruction No. 18 at 9:14 should likewise be revised to read "defendants <u>claim were</u> due only to <u>the licensing of</u> active <u>player rights</u>." (revisions underlined).

Instruction No. 45 attempts to describe to the jury the parties' respective contentions with respect to Plaintiffs' accusations about any purported "scrambling" of retired

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Defs.' Mem. and Objs. Re: Court's Draft Charge to the
Jury and Special Verdict Formof November 4, 2008

Civ. Action No. C07 0943 WHA

2

players in the Madden NFL video game. Defendants' position, however, is inaccurately described, and, in the interests of fairness and balance, Instruction No. 45 at 19:5-6 should be revised to read as follows: "Defendants respond that Electronic Arts <u>was not willing to pay any money to license the entire group of RPGLA rights</u> and therefore defendants were acting to protect retired players in insisting on scrambling." (revisions underlined). This is fully consistent with the testimony provided at trial. Trial Tr. at 1280:23-1281:6, 1281:24-1282:8, 1305:22-1306:7.

Likewise, in the interest of fairness and balance, the Draft Charge should provide the jury both sides' contentions whenever one side's is mentioned. At one point in the Draft Charge, only the Plaintiffs' allegations are described. Thus, the Draft Charge should add to Instruction No. 30 at line 27 – after the sentence describing Plaintiffs' argument that ends with "such 'group' money" – the following description of Defendants' position: "Defendants, on the other hand, contend that the class is only entitled to moneys that were generated by the licensing of retired player group rights, and that any moneys so generated were paid to retired players."

### 3. The Instructions Should Leave No Doubt That, Regardless of When They Were Made, Statements about Contemporaneous Understandings of an Agreement Should Be Considered by the Jury

Instruction No. 20, as currently drafted, suggests to the jury that it "may" only consider "the statements of the parties about their understanding of the contract <u>made</u> at the time the contract was entered into." Draft Charge Instruction No. 20 at 10:9-13. The Court has already ruled that a contracting party's testimony about its own contemporaneous understanding of the contract, even if such understanding were previously undisclosed, is proper for the jury to consider. <u>See</u> Trial Tr. at 238:12-13 ("So the Court is going to allow subjective testimony that speaks to the time in question."). Such evidence thus should be considered by the jury, and the Instructions must leave no doubt on this point. Instruction No. 20 should therefore be revised to strike the word "made" at 10:12, and change "may" to "should," so that the relevant sentence reads as follows: "You <u>should</u> consider the circumstances that existed at the time the contract was made, including the apparent purpose of the parties in entering into the contract, the history

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Defs.' Mem. and Objs. Re: Court's Draft Charge to the
Jury and Special Verdict Formof November 4, 2008

Civ. Action No. C07 0943 WHA

3

of negotiations leading up to the contract, and the statements of the parties about their understanding of the contract at the time the contract was entered into." (revision underlined).

### 4. The Court's Instruction on the Third-Party License Agreements

Defendants have two objections to the Draft Charge's instruction on the third-party license agreements, Instruction No. 28. First, the Draft Charge links the discussion of the recitals in these agreements to the "promises or grants" therein. See Draft Charge at 14:3, 15:4. The testimony at trial, however, demonstrated that the recital identified by the Court in Paragraph 1(A) did not relate to the grant of rights in Paragraph 2(A). See Trial Tr. at 1228:13-1229:6 & 1295:8-1296:1 (testimony of Joel Linzner); 679:3-12, 837:14-838:21, 839:17-841:16, 842:25-844:3 (testimony of Doug Allen). To avoid leaving an unfair impression with the jury, the instructions should not specifically link the recital in the third-party license to the concept of "grants," and should be more general in its description by only referring to the terms of the agreement. Therefore, the two full sentences in Instruction No. 28 at 14:2-5 should be revised to read as follows: "A recital is sometimes used in a written contract to set the stage for the terms that follow in the document. The purpose of a recital is to explain at least some of the background and surrounding circumstances so as to place the later terms in a context." (revisions underlined).

Furthermore, Instruction No. 28 presently states that if the jury "find[s] that the actual parties to the Electronic Arts contract itself have consistently and mutually understood and carried out the terms in question as if they meant one thing and not another, then (as I have said earlier), you may give considerable weight to such a practical construction of the parties in carrying out their own contract." Draft Charge Instruction No. 28 at 14:15-19. As Defendants have previously noted, this inaccurately states the law. The law provides that such a consistent and mutual understanding should be given dispositive, and not just considerable, weight. See Reliance Standard Life Ins. Co. v. Matula, No. 05-C-0788, 2007 U.S. Dist. LEXIS 24523, at *25 (E.D. Wis. Mar. 30, 2007); Waddy v. Sears, Roebuck & Co., No. C-92-2903-VRW, 1994 WL 392483, at *11 (N.D. Cal. July 8, 1994); Williams Tile & Marble Co., Inc. v. Ra-Lin & Assocs.,

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Defs.' Mem. and Objs. Re: Court's Draft Charge to the
Jury and Special Verdict Form of November 4, 2008

Civ. Action No. C07 0943 WHA

4

426 S.E.2d 598, 600 (Ga. Ct. App. 1992); <u>Combs v. Hunt</u>, 125 S.E. 661, 665 (Va. 1924); <u>cf. Robert C. Herd & Co. v. Krawill Machinery Corp.</u>, 359 U.S. 297, 308 (1959).

Defendants request a charge on this point that should read as follows:

> If you determine that the parties to Defendants' license agreements share the same understanding of the meaning of their license agreements, you must accept that interpretation and reject any conflicting interpretation presented to you by Plaintiffs, who are strangers to the license agreements. The only parties to Defendants' license agreements are Defendants (the NFLPA or Players Inc) and Defendants' licensees (such as EA or Topps).

Joint Proposed Jury Instructions, Disputed Instruction No. 7 Offered by Defendants (Oct. 8, 2008).

### 5. If Provisions of the Retired Player GLA Are to Be Described, They Should Be Described in a Fair and Balanced Manner

If the Draft Charge is to describe the provisions of the Retired Player GLA, fairness and balance require that they include both the paragraph principally relied upon by Plaintiffs and the paragraph principally relied upon by Defendants. Presently, Instruction No. 14 describes only the second paragraph of the Retired Player GLA form, which Plaintiffs heavily rely upon in their claims, but does not describe the fifth paragraph of the Retired Player GLA form, which is the paragraph that Defendants rely upon and concerns the payments due under the Retired Player GLA. Describing only the paragraph relied upon by Plaintiffs is unbalanced and unfair.

### 6. The Element of Control is Dispositive of Plaintiffs' Claim for Breach of Fiduciary Duty

Defendants reiterate their objection and request that the Court instruct the jury that the element of control is a determinative factor to consider in deciding whether a principal-agent fiduciary relationship exists <u>under D.C. law</u>. See Defs.' Memorandum in Support of Disputed Jury Instructions (Oct. 8, 2008), at 15-17; <u>Giles v. Shell Oil Corp.</u>, 487 A.2d 610, 611 (D.C. 1985) ("While it is said that at common law there are four elements which are considered upon the question whether the relationship of a master and servant exists . . . the really <u>essential</u> element of the relationship is the right of control, that is the right of one person, the master, to

Defs.' Mem. and Objs. Re: Court's Draft Charge to the Jury and Special Verdict Form of November 4, 2008

Civ. Action No. C07 0943 WHA

5

order and control another, the servant, the performance of work by the latter, and the right to direct the manner in which the work shall be done.") (emphases added).

"Generally an agency relationship results when one person authorizes another to act on his behalf <u>subject to his control</u>, and the other consents to do so." <u>Judah v. Reiner</u>, 744 A.2d 1037, 1040 (D.C. 2000) (emphasis added). While D.C. courts will consider other factors, control is a <u>sine qua non</u>: "Standing alone, none of these indicia, <u>excepting (4) [the power to control the servant's conduct], seem controlling</u> in the determination as to whether such relationship exists. <u>The decisive test is whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done.</u>" <u>LeGrand v. Ins. Co. of North Am.</u>, 241 A.2d 734, 734 (D.C. 1968) (finding sufficient control where the purported principal supervised the work done by the purported agent and "instructed [the purported agent] as to the method to be used, both initially and during the performance of the work . . . .") (emphases added) (quotations omitted); <u>see also</u> <u>Judah v. Reiner</u>, 744 A.2d 1037, 1040 (D.C. 2000) ("Of these factors, the <u>determinative</u> one is usually 'whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done.") (emphasis added); <u>Levy v. Currier</u>, 587 A.2d 205, 212 (D.C. 1991) ("The right to control an employee's conduct in the performance of the task and in its result is <u>determinative</u> in establishing the existence of a master-servant relationship."); <u>Dist. of Columbia v. Hampton</u>, 666 A.2d 30 38-39 (D.C. 1995) ("We have often held, however, that of these five factors 'the <u>determinative</u> factor' is usually the fourth: 'the right to control an employee in the performance of a task and in its result, and not the actual exercise of control or supervision.'"); <u>Environmental Research Int'l Inc. v. Lockwood Greene Engineers, Inc.</u>, 355 A.2d 808, 812 n.7 (D.C. 1976) ("The record supports the trial court's conclusion by failing to reveal that degree of control by appellees over appellant's actual performance of its functions which would be <u>necessary</u> for an agency relationship.").

The Court should also instruct the jury on the requisite extent of control that the purported principal must have been able to exercise over the purported agent, that is, "control

Defs.' Mem. and Objs. Re: Court's Draft Charge to the Jury and Special Verdict Formof November 4, 2008

Civ. Action No. C07 0943 WHA

6

over the day-to-day operations . . . and the manner in which the work is performed." Ames v. Yellow Cab of D.C., Inc., Civ. No. 00-3116, 2006 WL 2711546, at *5 (D.D.C. Sept. 21, 2006); Judah, 744 A.2d at 1040. D.C. law is unmistakable and controlling on both these points.

### 7. The Draft Charge's "Financial Arrangements" Instruction is Unsupported by Law

The Court's statement in Instruction 39 that one factor indicating an agency relationship is if the licensor is paid "only through marketing by the licensee to third parties and most or all of any third-party revenue was to be paid to the licensor," (Draft Charge at 17:8-12), is inconsistent with D.C. law. There is no case in which this factor has been applied under D.C. law. Rather, the only financial arrangement that D.C. courts consider when evaluating whether an agency relationship exists is the payments of wages from a principal to the agent, not vice versa, as the payments to a purported agent from a principal is a factor indicative of an agency relationship under D.C. law. See Judah v. Reiner, 744 A.2d 1037, 1040 (D.C. 2000); Ames v. Yellow Cab of D.C., Inc., No. 00-3116 (RWR)(DAR), 2006 WL 2711546, *6 (D.D.C. Sept. 21, 2006) (holding that no agency relationship existed in part because of no payment by purported principal to purported agent).

Additionally, this instruction would effectively mean that any license agreement that calls for the payment of a royalty, rather than a fixed sum at the outset of the licensing relationship, could create a fiduciary relationship. This is not the law in any jurisdiction. See, e.g., Mellencamp v. Riva Music Ltd., 698 F. Supp. 1154, 1159 (S.D.N.Y. 1988) (holding that "the express and implied obligations assumed by a publisher in an exclusive licensing contract [calling for payment of royalties] are not, as a matter of law, fiduciary duties.")

### 8. Undertaking to Act as a Marketing Agent Does Not Create a Fiduciary Relationship

Draft Charge Instruction No. 36 presently provides that a licensee that "undertake[s] to act as a marketing agent to affirmatively promote the rights on behalf of the licensor . . . . is not only a licensee but also an agent with fiduciary duties." Draft Charge at 16:14-17. This instruction is unsupported by law and highly prejudicial. It is well established

Defs.' Mem. and Objs. Re: Court's Draft Charge to the      Civ. Action No. C07 0943 WHA
Jury and Special Verdict Formof November 4, 2008

7

that ordinary commercial transactions, including marketing contracts, do not give rise to fiduciary relationships. See, e.g., Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co., 330 N.Y.S.2d 329, 332 (N.Y. 1972) (overruling finding of fiduciary relationship between an author and publisher who entered into an ordinary contract, even though the contract contained a "best efforts" clause concerning marketing). The same general rule holds true even when the transaction involves the marketing of one party by the other to an outside party. See, e.g., Mellencamp, 698 F. Supp. at 1159 ("[T]he express and implied obligations assumed by a publisher in an exclusive licensing contract are not, as a matter of law, fiduciary duties.").

### 9. Plaintiffs May Only Recover the Damages They Suffered, if Any, for a Three-Year Period

Instruction No. 47 is the introductory damages instruction in the Draft Charge. There are two revisions that should be made to this instruction. First, any instructions the jury receives should be neutral on whether Plaintiffs have suffered any damages, which Defendants of course contend they have not. Thus, Instruction No. 47 should be revised at 19:15-16 so that it reads, "If you find for plaintiff, the RPGLA Class members, on a particular claim, you must determine the amount of damages, if any, they suffered." (revision underlined).

Second, the instruction should make clear that Plaintiffs can only seek damages for any breach in three years (February 14, 2004 to February 14, 2007), the same length as the class period. Simply put, Plaintiffs are seeking to extract four years of damages in a three-year period class action claim. Plaintiffs contend that they can seek four fiscal year payments of damages, but the evidence will not support this. Their damages expert's own report – their only basis for any damages claim in this case – expressly provides that in order for a GLA Class member to be entitled to a portion of the equal share royalty payments in his analysis, that class member must have "had a signed GLA as of the end of [the prior] calendar year. . . . Therefore, if a retired player had a GLA effective through December 31, 2005, I assumed that they were eligible for the pool that would be paid in 2006 . . . ." Expert Report of Philip Y. Rowley at 4 n.6 (May 23, 2008). Plaintiffs therefore cannot have any entitlement to the active player equal share royalty payments made in March of 2004 – when Mr. Armstrong testified that the payment made

Defs.' Mem. and Objs. Re: Court's Draft Charge to the Jury and Special Verdict Form of November 4, 2008

Civ. Action No. C07 0943 WHA

8

in 2004 would be for the licensing revenues generated in 2003 – <u>prior</u> to the class period. Trial Tr. at 2064:6-2065:1.

### 10. The Jury Should Be Instructed That They May Not Award More Than Nominal Damages if They Only Find a Breach of Contract that Does Not Entitle Plaintiffs to an Equal Share of the GLR Pool

The Draft Charge suggests that the jury may award compensatory (other than nominal) damages even if the jury finds that the only breach committed by Defendants has nothing to do with any entitlement to an equal share of the GLR Pool. But there is no damages evidence to support such a damages award. Plaintiffs have only provided an expert damages study based on a jury finding that Defendants failed to pay GLA Class members equal shares of the GLR pool. <u>See</u> Trial Tr. at 1938:11-15. If the jury finds a breach of contract which does not entitle Plaintiffs to an equal share of the GLR pool, then there is no damages evidence to support an award for such a claim and only nominal damages may be considered. The Instructions should thus specifically provide as follows: "The only evidence of claimed damages presented by Plaintiffs is based on the theory that the RPGLR entitles plaintiffs to equal shares of the GLR pool. Accordingly, if you find a breach of contract, but that breach does not include a contractual entitlement for plaintiffs to an equal share of the GLR pool, you may only consider an award of nominal damages, as I will later instruct you."

### 11. Burden of Proof

The Draft Charge's general instruction on burden of proof should be revised to clarify that there are two different burdens of proof in this case – one for liability and compensatory damages, and one for punitive damages – and that Plaintiffs bear all of the burdens of proof. Defendants therefore request that the second sentence in Instruction No. 10 be revised to inform the jury that there are two burdens of proof in this case, one of which is proof by a preponderance of the evidence, and that the Court will instruct the jury later on the other burden of proof. Instruction No. 10 should also be revised so that it concludes, "plaintiffs have all the burdens of proof in this case."

### 12. Plaintiffs are Required to Prove Individual Injury and Damages

Defs.' Mem. and Objs. Re: Court's Draft Charge to the Jury and Special Verdict Form of November 4, 2008

Civ. Action No. C07 0943 WHA

9

Defendants reiterate their request that the Court give an additional instruction on damages that Plaintiffs are required to provide individual proof of injury and damages for each member of the class. Plaintiffs must provide – even in a class action – individual proof of injury and damages for each member of the class. This principle is well-settled in the Ninth Circuit and must be included in any jury instruction on this issue. Kline v. Coldwell, Banker & Co., 508 F.2d 226, 236 n.8 (9th Cir. 1974) ("It has been suggested that generalized proof of damages might suffice under Rule 23. But the rule does not eliminate the ultimate need for individual proof of damages by each member of the class."); Abuan v. General Elec. Co., 3 F.3d 329, 334 (9th Cir. 1993) ("It is clear that at some point in the litigation Plaintiffs would be required to prove individual causation and damages."); Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1200 (6th Cir. 1988) ("Although such generic and individual causation may appear to be inextricably intertwined, the procedural device of the class action permitted the court initially to assess the defendant's potential liability for its conduct without regard to the individual components of each plaintiff's injuries. However, from this point forward, it became the responsibility of each individual plaintiff to show that his or her specific injuries or damages were proximately caused by ingestion or otherwise using the contaminated water. We cannot emphasize this point strongly enough because generalized proofs will not suffice to prove individual damages."); Cannon v. Tex. Gulf Sulphur Co., 55 F.R.D. 306, 307 (S.D.N.Y. 1971) ("If it was, potential liability would be established, leaving only the issue of reliance and damages <u>to be determined as to the individual plaintiffs</u>.") (emphasis added).

### 13. The Jury Should Be Instructed That Plaintiffs Cannot Be Awarded Prejudgment Interest

The damages calculations by Plaintiffs' expert, Philip Y. Rowley, include prejudgment interest. At the direction of counsel, Mr. Rowley applied a 6% interest rate based on D.C. Code § 28-3302. Rowley Reply Report (June 27, 2008) at 7 n.7 ("I understand from Plaintiffs' counsel 6 percent is the correct rate in . . . DC . . . ."); see also Trial Tr. 1933:6-1934:5. The provision upon which Mr. Rowley relies upon, D.C. Code § 28-3302, is not applicable to this case. Section 28-3302 is entitled "Rate of interest not express and on

Defs.' Mem. and Objs. Re: Court's Draft Charge to the           Civ. Action No. C07 0943 WHA
Jury and Special Verdict Form of November 4, 2008

10

judgments," and it provides for a 6% rate of interest "upon the loan or forbearance of money, goods, or things in action in the absence of express contract."

This case, however, does not involve a loan or forbearance of money. In fact, D.C. Code § 15-109 provides that "[i]n an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered <u>from the date of judgment only</u>." While this statute does not preclude the jury from including prejudgment interest "if necessary to fully compensate the plaintiff," (<u>id.</u>), Plaintiffs have not offered any evidence that prejudgment interest is necessary to fully compensate them for the alleged breach of the retired player GLA or any breach of fiduciary duty and Mr. Rowley has offered <u>no</u> opinion on this issue. Rather, the evidence in this case shows that Plaintiffs signed non-exclusive retired player GLAs, at no cost, never made efforts to license their own rights, and were aware that active player rights were being licensed but did not complain that they were entitled to these funds until after this lawsuit was filed. <u>See, e.g.</u>, Trial Tr. 413:3-11, 421:10-12, 1019:22-25, 1020:24-1021-1022:11, 1172:10-1173:10, 1541:7-11, 1563:22-1564:3. Thus, there is no evidence that prejudgment interest is necessary to fully compensate the Plaintiffs and the jury should be instructed that prejudgment interest cannot be awarded.

### 14. There Should Be No Instruction on Punitive Damages

With respect to Instruction No. 53, no instruction should be given on punitive damages because they are unavailable in this case as a matter of law. Under D.C. law, courts "do not favor punitive damages" and "any award of punitive damages must be supported by the evidence of record and the law." <u>Vassiliades v. Garfinckel's</u>, 492 A.2d 580, 593 (D.C. 1985). Thus, it is the duty of the trial court to determine in the first instance "whether a sufficient legal foundation exists to award punitive damages" and submit the issue to the jury. <u>Id</u>. A sufficient foundation exists only if Plaintiffs are able to submit "credible <u>evidence</u> in support" of the allegations underlying their claim for punitive damages. <u>Washington v. Gov't Employees Ins. Co.</u>, 1991 WL 155804, at *1 (D.D.C. 1991) ("Discovery having been completed, Washington is expected to produce some credible evidence to support her claim for punitive damages. That she

Defs.' Mem. and Objs. Re: Court's Draft Charge to the Jury and Special Verdict Form of November 4, 2008

Civ. Action No. C07 0943 WHA

11

is unable to do so indicates that no such evidence exists. To allow such an unsubstantiated claim to be presented before the jury would prejudice the defendant, confuse the issues to be tried, and waste the time of this Court.").

Here, Plaintiffs have presented no evidence whatsoever that Defendants alleged conduct meets the high standard for punitive damages. Indeed, no reasonable jury could find by clear and convincing evidence that Defendants acted with the "required malicious intent or willful disregard of another's rights" and "that [Defendants'] conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff." Croley v. Republican Nat'l Comm., 759 A.2d 682, 695 (D.C. 2000) ("We have repeatedly recognized that a plaintiffs' request to submit the issue of punitive damages to the jury is governed by the normal test for a triable issue of fact: whether there was evidence from which a jury reasonably could find the required malicious intent or willful disregard of another's rights."); Cambridge Holdings Grp., Inc. v. Federal Ins. Co., 357 F. Supp.2d 89, 97 (D.D.C. 2004) ("Punitive damages may be awarded for conduct that is 'willful and outrageous, exhibits reckless disregard for the rights of others, or is aggravated by evil motive, actual malice, or deliberate violence or oppression."); Bragdon v.Twenty-Five Twelve Assoc. Ltr. Partnership, 856 A.2d 1165, 1173 (D.C. 2004) ("punitive damages are a form of punishment…And are, accordingly, to be awarded only in cases of outrageous or egregious wrongdoing where the defendant has acted with evil motive, actual malice, or in willful disregard for the rights of the plaintiff. So, for example, in the absence of 'gross fraud' or comparable wrongdoing, proof of even intentional misrepresentation may not suffice to justify punitive damages.") (ellipses in original). The evidence of Defendants' conduct and intent does not satisfy this threshold. Plaintiffs have failed to present any evidence to support a jury finding that Defendants' conduct and intent could support a punitive damages award.

In the event, however, that the Court decides to adopt a punitive damages instruction over Defendants' objection, the instruction would properly read as follows:

Defs.' Mem. and Objs. Re: Court's Draft Charge to the Jury and Special Verdict Formof November 4, 2008

Civ. Action No. C07 0943 WHA

12

In addition to compensatory damages, Plaintiffs also seek an award of punitive damages against Defendants for their breach of fiduciary duty claim.

Plaintiffs are not seeking an award of punitive damages for their breach of contract claim, and you may not award punitive damages for that claim.

Punitive damages are damages above and beyond the amount of compensatory or nominal damages you may award. Punitive damages are awarded to punish a defendant for his or her conduct and to serve as an example to prevent others from acting in a similar way.

You may award punitive damages for breach of fiduciary duty only if Plaintiffs prove with clear and convincing evidence that Defendants acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of Plaintiffs, <u>and</u> that Defendants' conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of Plaintiffs.

When a party has the burden of proving an issue by clear and convincing evidence, he must produce evidence that creates in your minds a firm belief or conviction that he has proved the issue.

Punitive damages should be considered only in cases which present circumstances of outrageous, grossly fraudulent or reckless conduct or extreme aggravation.

D.C. Standard Instructions, § 16.01 (modified).

### 15. Typographical Errors

Defendants note that the following typical errors should be corrected. In Instruction No. 30, "agreement" should be changed to "argument." See Draft Charge at 14:25. The "or" in Instruction No. 32 at 15:11 should be removed.

### B. <u>Defendants' Objections to the Special Verdict Form</u>

Defendants incorporate the objections asserted to the Draft Charge into their objections to the Special Verdict Form. As set forth below, Defendants specifically object to several aspects of the Special Verdict Form.

#### 1. **Breach of Contract Should Not Be Confused With Breach of "Duty"**

The first question in the Special Verdict Form asks the jury if Plaintiffs have "proven by a preponderance of the evidence a class-wide breach of any duty owed to RPGLA Class members under the RPGLA." Defendants object to the reference to a "duty owed to

Defs.' Mem. and Objs. Re: Court's Draft Charge to the                                    Civ. Action No. C07 0943 WHA
Jury and Special Verdict Formof November 4, 2008

13

RPGLA Class members" in this question, as it will confuse the jury with the separate breach of fiduciary duty claim. D.C. courts define a breach of contract as "an unjustified failure to perform all or any part of what is promised in a contract entitling the injured party to damages." Bembery v. District of Columbia, 758 A.2d 518, 520 (D.C. 2000). Defendants thus request that the Special Verdict Form ask the jury to determine if plaintiffs have proven by a preponderance of the evidence a "breach of the terms of the RPGLA." (revisions underlined).

### 2. Plaintiffs Are Required to Prove Individual Injury and Damages

For the same reasons stated in connection with the Draft Charge, (see discussion at 9-10, supra), Defendants object to all references to class-wide breach or damages. Instead, the Special Verdict Form should require the jury to answer a question, for each claim, whether Plaintiffs have proven by a preponderance of the evidence that each GLA Class member was injured and suffered damages.

### 3. The Special Verdict Form Should Define Fiduciary Duty to Require a Finding of Control

Consistent with D.C. law, the Special Verdict Form should require that the jury find that Plaintiffs had the right to control the day-to-day operations of Defendants' licensing operations in order to find a fiduciary duty. Absent such a finding on this "determinative," "essential," and "controlling" factor, no fiduciary duty under an agency theory could arise. **See discussion at 5-7, supra**.

### 4. The Jury Should Be Asked Whether it Wishes to Award Nominal Damages

In order to be fair and balanced, since nominal damages in this case is a realistic possibility based on the evidence, the special verdict form should include a specific question for each claim that reads as follows: "What is the amount of nominal damages, if any, that GLA class members should receive?".

### 5. The Punitive Damages Question Should be Stricken

Question No. 6 should be stricken for the reasons stated at pp. 11-13, supra. If the Court overrules this objection, it should be revised to describe the type of misconduct that is

Defs.' Mem. and Objs. Re: Court's Draft Charge to the
Jury and Special Verdict Form of November 4, 2008

Civ. Action No. C07 0943 WHA

14

necessary to "trigger" the possible award of punitive damages.  More specifically, rather than asking the jury if punitive damages should be imposed "by way of example" – which is highly prejudicial – Question No. 6 should read as follows:  "If the answers to Questions [pending other objections] are "Yes," then state whether plaintiff has proven by clear and convincing evidence that <u>defendants acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of plaintiff, and that defendants' conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of plaintiff</u>." (revisions underlined).  Under no circumstances should the jury be asked whether punitive damages "should be imposed on defendants <u>by way of example</u>." (emphasis added).  Such an instruction would be highly prejudicial and unfair to Defendants.

## **CONCLUSION**

For all of the foregoing reasons, the Court should adopt Defendants' proposed revisions to the Court's draft charge to the jury.

Date: November 5, 2008                                                                 DEWEY & LEBOEUF LLP

BY: __/s/ Jeffrey Kessler_____
Jeffrey L. Kessler
*Attorneys for Defendants*