# Dewey & LeBoeuf LLP

Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019-6092

tel +1 212 259 8349
fax +1 212 259 6333
jclark@dl.com

November 5, 2008

**BY ELECTRONIC FILING**

The Honorable William Alsup
United States District Court,
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

  Re: *Parrish v. National Football League Players Association, et al.*
    Case No. C07-0943 WHA

Dear Judge Alsup,

  Defendants respectfully submit this response to Plaintiffs' letter, dated November 5, 2008, regarding Defendants' motion for an instruction to the jury to disregard Plaintiffs' hypothetical that Defendants should have used any market power in the market for active player group licensing rights to force licensees to accept a license to all retired player group licensing rights.

  Plaintiffs' argument that a tying claim would not apply because there would not be a "purchase" of a license agreement is not correct. Tying arrangements involving intangible items, such as licenses, may be challenged under Section 1 of the Sherman Act or Section 5 of the FTC Act. Tele Atlas N.V. v. Navteq Corp., 397 F. Supp. 2d 1184, 1191 (N.D. Cal. 2005) (denying motion to dismiss tying claim alleging that Defendant unlawfully tied licensing a patent to licensing data). As the Supreme Court held in Jefferson Parrish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 19 (1984), "the answer to the question whether one or two products are involved turns not on the functional relation between them, but rather on the character of the demand for the two items." As discussed in Defendants' Motion, under the hypothetical proposed by Plaintiffs, the tying product is a license to active player group rights and the tied product is a license to retired player group rights. Mot. at 3. Licensees enter into separate agreements for active player rights and retired player rights. Id. Thus, Plaintiffs assertion that tying is not applicable because there are not two products, or any "purchase," that can be tied is incorrect.

  Plaintiffs also argue that tying law is not applicable because, under their hypothetical, the retired player rights could be included for free, and thus, there would allegedly be no coercive acquisition of a second product. Ltr. Br. at 2. However, the issue is not whether

NEW YORK | LONDON MULTINATIONAL PARTNERSHIP | WASHINGTON, DC
ALBANY | ALMATY | AUSTIN | BEIJING | BOSTON | BRUSSELS | CHARLOTTE | CHICAGO | EAST PALO ALTO
FRANKFURT | HARTFORD | HONG KONG | HOUSTON | JACKSONVILLE | JOHANNESBURG (PTY) LTD. | LOS ANGELES
MILAN | MOSCOW | PARIS MULTINATIONAL PARTNERSHIP | RIYADH AFFILIATED OFFICE | ROME | SAN FRANCISCO | WARSAW

the licensee is separately charged for the tied product. Rather, the issue is that there would be a substantial risk of a tying violation if a licensor with market power refused to license the tying product separately from the tied product. See Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp., No. C93 20613 RMW, 1995 WL 853037, *12 (N.D. Cal. Sept. 7, 1995) ("Typically, an express refusal to sell the tying product without the tied product is the basis for an illegal tying arrangement."). Under Plaintiffs' hypothetical, this is precisely what Defendants would do – refuse to license active player group rights unless licensees also licensed all retired player group rights.

Plaintiffs assertion that, under "Defendants' theory," Defendants should not have been able to "tie" active players together because the relevant market could be "star football players, or perhaps [] some other definition" is speculative nonsense. Ltr. Br. n.1. It was Plaintiffs who proposed the hypothetical that Defendants have market power in "a relevant market for active player [group] licensing rights." Trial Tr. 2242:5-8 (additional excerpts attached hereto as Exhibit 1). As Plaintiffs themselves concede, they have not offered any evidence of a relevant market, Ltr. Br. n.1, and have offered no evidence to support any claim that individual "star" players could be individual relevant markets.

Plaintiffs response states that they do not intend to argue about "tying" during closing. Ltr. Br. at 2-3. However, it is not the term "tying" that gives rise to this issue. If Plaintiffs mean that they are not going to argue that Defendants should have used any leverage or market power over active player group licensing rights to force licensees to license retired player group rights, then Plaintiffs should not object to the Court instructing the jury that there is no claim that Defendants breached any duty by failing to use any alleged market power or leverage to induce licensees to accept a license to retired player rights they did not want.

Finally, Plaintiffs assert that Defendants' examination of Professor Noll today about whether it would be economically reasonable to give retired player group rights to licensees for free warrants denial of the motion. However, Defendants did not raise the issue of using alleged market power or leverage in their examination. Defendants simply asked Professor Noll whether it would be economically rationale for a licensing business to give away licensing rights for free. Professor Noll's response to these questions did not raise tying or any other antitrust issues. Trial Tr. 2322:24-2324:1 ("Q. Okay. As an economist, okay, would it make any sense for Players Inc to throw in retired players for free? A. No. It would make no sense at all to give away something for free . . . Q. Why not? A. First of all, you only let people to have access to things when you're getting compensated for it, obviously . . . almost all the money would go to retired players, and the union would just fold. It would just no longer be in the licensing business because the players wouldn't stand for it.").

In sum, the Plaintiffs' hypothetical has suggested to the jury that Defendants violated a duty by failing to use alleged market power or leverage over active player group rights

to force licensees to license retired player group rights. Such an irrelevant, unsupported and confusing hypothetical warrants a curative instruction under Fed. R. Evid. 403.

Respectfully yours,

/s/ Jeffrey L. Kessler_____
Jeffrey L. Kessler
Counsel for Defendants