MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HERBERT ANTHONY ADDERLEY, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' BRIEF RE: "COURT'S DRAFT CHARGE TO THE JURY" PROVIDED NOVEMBER 4, 2008** |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3

Dallas 268117v1

Dock...

Plaintiffs respond to Defendants' brief addressing the Court's proposed instructions:

*A. Plaintiffs' Responses to Defendants' Objections to the Jury Instructions*

**1) The Court's Descriptions of the RPGLA Are Neither Unfair Nor Incomplete**

Defendants complain that draft instruction No. 16, at 8:4-5, is unfair, because it does not include a reference to "retired player group rights" under the GLA. As Plaintiffs explained in their brief on Sunday, the jury may agree with Plaintiffs' contractual theories, which would not necessarily require an inquiry into "retired player group rights." In particular, Plaintiffs contend that Defendants owed a contractual duty to pay GLA signatories if Defendants engaged in "group licensing," which was defined in the GLA as programs that involved "six or more present or former NFL player images." If Defendants engaged in such group licensing, the "players" who signed the GLA should have been paid a share of distributed proceeds from such group licensing from an escrow account. If the jury agrees, the jury need not conclusively determine whether "retired player group rights" were transferred in any third-party agreements. Thus, the reference to "retired player group rights" is inappropriate, as the jury need not find that such rights were used or licensed for Plaintiffs to recover under the GLA. Even if the phrase "such retired player group rights" were to be given special attention, the phrase can only refer to the prior definition of "group licensing" defined in the RPGLA.

Defendants next complain that the draft instruction No. 17 only includes a reference to the Reebok license, and not the Hall of Fame license. The purpose of this section of the instruction is to ensure that payments pursuant to "ad hoc" agreements are not considered under the GLA, and is not intended to be an exhaustive list of such agreements. If that were the case, trial exhibit 2056, which includes references to all of the "ad hoc" agreements that resulted in payments to class members, would provide such a list. Reebok is a good example of an "ad hoc" agreement, and is a reasonable way to remind the jury of the type of agreement that is an "ad hoc" agreement. The Hall of Fame "ad hoc" agreement, however, is a singularly unfit example for "ad hoc" agreements generally. First, EA is a signatory to the Hall of Fame agreement, and referring to this "ad hoc" at this point may confuse the jury as to whether the EA agreement is, truly, a "third-

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1

1

1 party license." Second, there are multiple references to "Hall of Fame" throughout this trial, including the EA "Hall of Fame" video game and Mr. Adderley's and Mr. Upshaw's membership in the Hall of Fame. Because of these considerations, the "Hall of Fame" is not a helpful exemplar in instructing the jury as to the import of "ad hoc" agreements in this case.

**2) The Court Should Reject Defendants' Proposed Changes to Instructions 17, 18, 30, and 45**

The parties disagree as to how the shared group licensing revenue should have been distributed. Defendants have consistently maintained that such funds were created solely from revenue attributable to active player rights, but Plaintiffs disagree. What is *not* at issue, however, is (whether such revenue was solely attributable to active player rights) Defendants treated the revenue *as if* that were true. Thus, the use of "treated" in instructions at paragraphs 17 and 18 is a reasonable characterization of the evidence. This statement does not comment on whether the licensing revenue was actually attributable to active player rights, which is an issue best left to the jury. Defendants' "fair" corrections inject their arguments into the instructions, instead of providing neutral statements that are currently found at paragraphs 17 and 18.

Defendants' proposed instruction for Instruction No. 45 suffers from similar problems. Defendants' proposed instruction includes the addition "EA was not willing to pay any money to license the entire group of RPGLA rights." As a threshold matter, the jury need not agree with this statement. Additionally, this statement is not entirely accurate – Joel Linzner from EA repeatedly testified that he never received a list of the entire group of RPGLA signers and thus could not have refused to license that of which he was unaware. *See* Trial Transcript 1241:22-1242:15, 1243:11-1244:5, 1245:11-14 and 1262:9-1263:5. Moreover, this statement is simply unnecessary, as the Court's current charge already accurately summarizes Defendants' position.

Defendants' proposed instruction for Instruction No. 30 is also inappropriate. Instruction No. 29 gives the jury detailed instructions on how to interpret third-party license agreements. As an inherent problem, however, instructing the jury as to how to interpret the license agreement suggests that the jury must interpret those license agreements. Instruction No. 30 addresses this,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1

2

and asks the jury to "step back," and realize that such an interpretation may be unnecessary, depending on the jury's interpretation of the GLA. This is not instructing the jury "as to one side," but avoiding the potential problem arising from Instruction No. 29.

**3) Defendants' Attempt to Alter the Contract Interpretation Instruction is Unwarranted.**

Defendants attempt to alter Instruction No. 20 from "may" to "should" in an attempt to mandate that the jury give undue weight to Defendants' alleged contemporaneous understanding of the contracts. However, the Court's Instruction No. 20 is perfectly consistent with the D.C. Standard Jury Instructions, §11.13 and §11.14, which provide that the jury "may" rely on the statements of the parties about their understanding of the contract. It is up to the jury to decide the weight of the evidence and Defendants wish to usurp the jury's function. Defendants' request should be denied.

**4) Defendants' Attempt to Change the Meaning of the Third-Party Licenses Through Jury Instructions Is Inappropriate**

Defendants attempt to add extra language to the jury instruction to alter both the words and the meaning of the written License Agreements. Specifically, they complain that the testimony at trial of Linzner and Allen is inconsistent with the language of the License Agreement and that, therefore, the jury should be instructed that Paragraph 1(A) did not relate to the grant of rights in Paragraph 2(A). Defendants' additional language seeks to explain away these terms, and to make their witnesses' testimony "match" the plain language of the contract. The jury should decide what these contracts mean, not Defendants. Defendants' suggestions also ignore the mandate of contract interpretation, that is, that the plain language of the contract controls. D.C. Standardized Civil Jury Instructions §11.14 ("To determine the meaning of a contract, you must first look a the words and phrases actually in the contract . . . .") Defendants' approach should be rejected.

Nor is there support for Defendants' "shared understanding" Instruction, which they refer to as "dispositive". In effect, Defendants argue that the third-party licenses can only mean what the Defendants and licensees tell the jury they mean, contravening the plain words of the licenses,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

and other objective indicia of the licenses' meaning. These licenses, however, directly affect Plaintiffs' economic interests. As such, courts allow Plaintiffs to seek a legitimate contract interpretation, based on the express terms of the contract and supporting evidence. For example, in *Shafford v. Otto Sales Co.*, 119 Cal. App. 2d 849, 859-60 (1953), where a third-party broker's commission was at stake, the Court allowed the non-party broker to submit evidence as to the meaning of that contract, noting that "mere words, and the ingenuity of contractual expression dreamed up by ingenious businessmen or their lawyers cannot be used to prevent a showing of the real nature of the transaction." *Id.* at 860.

Furthermore, the jury is entitled to question the credibility of the Defendants. If Defendants' liability hinges on Defendants' employees' understanding of the third-party licensing agreements, a bias is apparent. A jury is free to disregard Defendants' testimony on these points as biased, intentionally or unintentionally, in favor of the objective text of the contract. The jury need not accept Defendants' litigation-driven testimony as dispositive of the licenses' meaning, even if Defendants' testimony meshes with that of third-party witnesses, especially if that testimony contradicts the express language of the agreements. *See Hercules & Co. v. Shama Restaurant Corp.*, 613 A.2d 916, 927 (D.C. 1992) ("The first and most important step in ascertaining [the intent of the contracting parties] is examination of the contract itself.").

**5) Instruction No. 14 Is Proper as Written.**

"Fairness and balance" do not require any modifications to paragraph 14. This is simply an introductory paragraph that sets the stage for the extensive instructions on the GLA, at instructions 15-27. There is no reason to add any additional instructions at this particular paragraph.

**6) Relying on Master/Servant Cases, Defendants' "Control" Cases Are Overstated and Inapposite.**

In a determination of agency, control is a factor to consider, and not *the* factor to consider. As Plaintiffs noted to the Court in a previous brief, agency unquestionably covers the employer/employee relationship, and in that context, control is often a key distinction between an

employee and an independent contractor. *See Safeway Stores, Inc. v. Kelly*, 448 A.2d 856, 860 (D.C. 1982) (emphasizing control in the determination of a master/servant relationship). The law in the master/servant context, however, does not accurately describe *all* forms of agency -- even an independent contractor, who cannot (by definition) fulfill the master/servant test may be considered an agent, all the same. *See Columbia Broadcasting Systems, Inc. v. Stokely-Van Camp, Inc.*, 522 F.2d 369, 375 (2d Cir. 1975) ("We also are fully aware that an independent contractor, one who is not subject to the right of another to control his physical conduct in the performance of an undertaking, may or may not be an agent."). As another example, agency also covers the broker/investor relationship, where a determination of agency is *more* likely if the investor does not control the day-to-day activities of the broker, and instead, the broker retains control over those activities. *See Merrill Lynch v. Cheng*, 901 F.2d 1124, 1128 (D.C. Cir. 1990) ("A broker is an agent who owes his principal a duty to act only as authorized."); *Lieb v. Merrill Lynch*, 461 F. Supp. 951, 954 (E.D. Mich. 1978) (considering whether the broker had "usurped actual control over a technically non-discretionary account" in determining the extent of duties owed to the investor); *Robles v. Consolidated Graphics, Inc.*, 965 S.W.2d 552, 557 (Tex. App. 1997) ("Clearly, Robles was hired by both CCI and Gulf Printing on a commission basis to make or negotiate bargains or contracts on their behalf in matters of trade and commerce. Accordingly, Robles was acting as an agent and broker for both Gulf Printing and CCI."); *see also* Restatement (Third) of Agency, § 1.01 (noting that agents may act as representatives or otherwise act on behalf of another).

Defendants certainly perform a brokerage function, through their authorization to bind Plaintiffs to third-party licensing agreements. *See id.* ("A broker is one who is engaged by others on a commission basis and is recognized as an agent employed to make or negotiate bargains or contracts for others in matters of trade and commerce."); *see also* Restatement (Third) of Agency, § 1.01 (recognizing that agency always "contemplates three parties -- the principal, the agent, and the third party with whom the agent is to deal," and that "[I]f a service provider simply furnishes

advice and does not interact with third parties as the representative of the recipient of the advice, the service provider is not acting as an agent.").

Defendants' instructions unduly emphasize control, and cite master/servant cases for support. In such a context, D.C. courts recognize that control is a key distinction. However, D.C. law recognizes that context matters in determining the existence of an agency relationship. *See Judah v. Reiner*, 744 A.2d 1037, 1040 (D.C. 2000) ("In deciding [whether there is an agency relationship], courts will look both to the terms of any contract that may exist and the course of dealing between the parties."). Agency may hinge on day-to-day control in some contexts, but it makes no sense to import that requirement into every conceivable agency context, and other courts have declined to do so. *See* Restatement (Third) of Agency, § 1.01 (recognizing that agency encompasses specialized agents for authors and performers, nonemployee agents that can bind their principal via contract, and powers of attorney); *Lieb*, 461 F. Supp. at 954; *Columbia Broadcasting Systems, Inc.*, 522 F.2d at 375. Agency is broader than the employee context, and in other contexts, day-to-day control is not expected or required.

**7) Financial Arrangements Are Fairly Considered in Determining the Relationship of the Parties**

Instruction 39 is a helpful instruction, tailored to this case, that assists the jury in determining whether the GLA is a bare license, as Defendants contend, or whether it is indicative of an agency relationship, as Plaintiffs contend. This Instruction only provides that the financial arrangements between the parties is one factor that the jury may consider. Defendants' efforts to limit the factors to those that are purely master/servant cases are not helpful. Likewise, Defendants' New York case, *Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1159 (S.D.N.Y. 1988) is not helpful in that it holds that, under New York law, the conventional publisher-author arrangement is not fiduciary relationship *per se*.

**8) Instruction No. 36 Accurately Reflects Agency Law, And Is Not Highly Prejudicial**

Instruction 36 is a helpful instruction that introduces the jury to a hotly-contested issue; namely, whether the GLA is a bare license, as Defendants contend, or whether it is indicative of

an agency relationship, as Plaintiffs contend. Defendants object to one specific sentence: "On the other hand, a licensee *may*, *depending on the circumstances*, also undertake to act as a marketing agent to affirmatively promote the rights on behalf of the licensor. The Court is not making any sort of set proclamation about what factors to consider in an agency relationship; rather, paragraphs 37-42 lay out the particular factors that the jury must consider. Furthermore, the sentence is correct as a matter of law. *Depending on the circumstances* (which the Court expressly instructs the jury to consider) a licensee *may* undertake an agency relationship. Thus, Instruction 36 does not require additional changes, as Defendants suggest, and any suggestion to the contrary should be rejected.

9) **Defendants Contention Regarding the Statute of Limitations Is Incorrect**

Defendants' contention that Plaintiffs are not entitled to recover for four fiscal years of payments for the shared group revenue is incorrect as a matter of law. Plaintiffs are contending that they should have shared in the group licensing revenue that was instead treated as gross licensing revenue and divided on an equal share basis with the active players. Because Defendants wrongly treated the money due to Plaintiffs, the Court should consider when the money came due for purposes of the statute of limitations. Plaintiffs were entitled to receive payment at the same time that the payment was calculated and paid to the active players, which the testimony shows to be in the year following the actual collection of the money from the previous season. Accordingly, the class members who actually had GLAs in effect during calendar year 2003 were entitled to payment in 2004. Even Defendants acknowledge that payment was to be made in March 2004, after the date of the statute of limitations. All members of the Class are also entitled to recover damages for the periods that occur after the date of the statute of limitations, including payments for the fiscal year 2007 because there is no bar to damages that accrued from GLAs that were signed during the class period. As it happened, the Defendants introduced a new form of GLA in late 2005 that was used as the existing GLAs expired during the next two years. For that reason, the number of GLAs covered by the class definition decline significantly after 2006 in any event.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1

7

**10) The Defendants' GLR Nominal Damages Argument Is Inconsistent With the Evidence.**

Defendants' request for an additional instruction on damages is improper. The evidence sufficient to support a damage award to Plaintiffs is more than sufficient to support a verdict and the jurors have been properly instructed as to the appropriate considerations with respect to any award of damages. Defendants are attempting to restrict the jurors in their consideration of the evidence. That suggestion is improper and should be rejected.

**11) Burdens of Proof**

Plaintiffs agree that there are two separate burdens of proof. Defendants wish to add additional language to instruction 10 that the "plaintiffs have all the burdens of proof in this case" is unnecessary and redundant to the Court's Instruction 11 which adequately sets forth Plaintiffs' burden.

**12) Plaintiffs Are Required Only to Prove Classwide Damages; Defendants' Proffered Instruction Defeats the Purpose of Class Actions.**

Damages should be calculated as the aggregate value of the claims for the class where there is a common mathematical factor, as in this case. "[T]he ultimate goal in class actions is to determine the aggregate sum, which fairly represents the collective value of claims of individual class members." 3 *Newburg on Class Actions* ("Newburg") § 10.02 at 477 (4th Ed. 2002) (citing *Peterson v. Davenport Community School Dist.*, 626 N.W.2d 99 (Iowa 2001) ("The goal in all instances is to determine the aggregate sum, which fairly represents the claims of the individual class members.")). Defendants' liability is the total of all its liabilities to individual members. Newburg § 10.02 at 477. To require Plaintiffs to individually prove their damages would be impracticable and frustrate the purpose for allowing class actions in the first place. *Id.* ("In a class action suit, joinder is impracticable by the definition of what suits are maintainable as class actions. Accordingly, proofs of damages are often similarly impracticable."); *see also, e.g., Crown Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983) (among the purposes for class action suits is to promote judicial economy and efficiency by affording aggrieved persons a remedy when it is not economically feasible to obtain relief through the traditional framework of multiple

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1

8

individual actions). "[I]t is not unusual, and probably more likely in many types of cases, that aggregate evidence of the defendant's liability is more accurate and precise than would be so with individual proofs of loss." Newburg § 10.02 at 479. "The paradigmatic example is aggregate proof based on an inspection of the defendant's records of sales and transactions, which would obviously be the best evidence when compared to estimates of loss by individual class members who have not maintained their personal records of the relevant transactions." *Id.* "One acknowledged occasion for aggregate proof of monetary relief is the situation in which monetary liability can be demonstrated by a mathematical computation based on a formula common to an identified class." Newburg § 10.03 at 479; *see also Allapattah Servs. v. Exxon Corp.*, 157 F. Supp. 2d 1291, 1313 (S.D. Fla. 2001) ("The case law supports the calculation of compensatory damages . . . through a common mathematical factor in a class context."); *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977) (rejecting individualized damages "in cases where the fact of injury and damage breaks down in what may be characterized as 'virtually a mechanical task,' 'capable of mathematical or formula calculation'").

Here, Plaintiffs' damages are "demonstrated by a mathematical computation based on a formula common to an identified class." Newburg § 10.03 at 479. Plaintiffs are seeking damages to the GLA Class as a whole based on revenues received by Defendants in their financial documents. The methodology employed, *i.e.*, distribution to each retired player on an equal share basis, is the same methodology Defendants themselves use for active players. Such class-wide calculations are clearly appropriate, and are properly reflected in the court's instructions.

Defendants' cases do not support their proposition. *Abuan v. Gen. Elec. Co.*, 3 F.3d 329, 334 (9th Cir. 1993) (personal injury case where question of whether each member of a class of workers who claimed to be exposed to toxic chemicals was actually exposed to such materials created issues of causation between the toxic source and the victims' injuries); *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 238 n.8 (9th Cir. 1974) (case could not be maintained as a class action of residential home sellers because the individualized nature of each Plaintiff's claim made the class action unmanageable); *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1200 (6th Cir.

1988) (personal injuries and property damage create issues of individualized damages); *Cannon v. Tex. Gulf Sulphur Co.,* 55 F.R.D. 306, 307 (S.D.N.Y. 1971) (plaintiffs who allegedly sold stock during period of nondisclosure of corporation's mineral exploration activities and insiders' purchases were not entitled to maintain class action, for lack of common basis for establishing liability, since each plaintiff would be required to prove causative effect between sale and nondisclosure). Defendants' request for this instruction should be denied.

**13) Prejudgment Interest Can Be Properly Awarded**

Under District of Columbia law, "the court has ample discretion to include prejudgment interest as an element in the damages awarded, if necessary to fully compensate the plaintiff.'" *El-Hadad v. Embassy of the U.A.E.*, 2006 U.S. Dist. LEXIS 21491, at *42 (D.D.C. Mar. 29, 2006), *affirmed in part and reversed in part by* 496 F.3d 658 (2007); *Fed. Mktg. Co. v. Va. Impression Prods. Co.*, 823 A.2d 513, 532 (D.C. 2003). "The purpose of awarding prejudgment interest as part of the damages for breach of contract is to compensate the creditor for the loss of the use of money over time." *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1253 (D.C. 1990). "The court should usually award such delay damages' in such cases absent some justification for withholding such an award.'" *Fed. Marketing Co.*, 823 A.2d at 531-32.

Defendants suggest that Plaintiffs are not entitled to prejudgment interest because of certain acts they attribute to Plaintiffs. This is the wrong standard. The purpose of prejudgment interest is *not* to penalize Plaintiffs for acts they may have committed prior to bringing suit, but rather to prevent Defendants from benefiting from their wrongs. *See Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1253 (D.C. 1990) ("Where the debtor should have paid what he owed but did not do so, a denial of pre-judgment interest would deny full compensation to the creditor while allowing the recalcitrant party to take advantage of his own wrong and become the richer for it.").

Defendants also suggest that Plaintiffs have relied on the wrong statute for determining the amount of prejudgment interest. This too is incorrect. Though Defendants are right that D.C. Code § 15-109 is the statute that *entitles* Plaintiffs to prejudgment interest, the *rate* of

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1

10

prejudgment interest to be applied is set forth in D.C. Code § 28-3302. *El-Hadad*, 2006 U.S. Dist. LEXIS 21491, at *42 (awarding prejudgment interest on a breach of contract claim pursuant to D.C. Code §§ 15-109 and 28-3302); *Ristau v. Madhvani*, 1991 U.S. Dist. LEXIS 18575 (D.D.C. Dec. 19, 1991) (court awarded pre-judgment interest under D.C. Code §§ 15-109 and 28-3302 in an action for breach of contract). Defendants concede that this is the rate applied by Mr. Rowley and that was presented to the jury.

**14) Punitive Damages Are Available For A Breach Of Fiduciary Duty, As Supported By The Evidence In This Case.**

Breach of fiduciary duty can support a claim for punitive damages. *Wagman v. Lee, 457 A.2d 401* (D.C.), *cert. denied*, 464 U.S. 849 (1983). The plaintiffs have presented two weeks of trial testimony and evidence in support of that claim. Plaintiffs assert that it is likely that a jury will find that the defendants' actions towards plaintiffs, as their fiduciaries, support an award of punitive damages. The defendants are asking the court to prejudge the jury's decision and prohibit even an instruction to the jury on punitive damages. But safeguards are already in place for the defendants in Instruction No. 53, as the jury must make certain findings and consider additional evidence and argument, before making an award of punitive damages.

Defendants proffered punitive damages instruction is redundant both with itself and with other instructions. If the Court decides to alter its current punitive damages instruction, the plaintiffs request that it use the model offered below, based upon the D.C. Standard Instruction §16.01 and other current authority:

**In addition to compensatory damages, the GLA Class members also seek an award of punitive damages against Defendants. Punitive damages are damages above and beyond the amount of compensatory damages you may award. Punitive damages are awarded to punish a defendant for its conduct and to serve as an example to prevent others from acting in a similar way.**

**You may award punitive damages only if the plaintiff has proved with clear and convincing evidence that the Defendants' conduct was willful and outrageous, exhibits**

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1 **reckless disregard for the rights of others, or is aggravated by evil motive, actual malice, or deliberate violence or oppression.** You **may conclude that the defendant acted with a state of mind justifying punitive damages based on direct evidence or based on circumstantial evidence from the facts of the case.**

*See* Standardized Jury Instructions for the District of Columbia, § 16.01; *Cambridge Holdings Grp., Inc. v. Federal Ins. Co.*, 357 F. Supp. 2d 89, 96 (D.D.C. 2004).

**B.** *Plaintiffs Responses to Defendants' Objections to the Special Verdict Form*

**1) The Court's Breach Of Contract Special Verdict Form Is Consistent With The Standard Jury Instructions In Referring To A "Duty".**

Defendants complain that the Court's Special Verdict Form No. 1 should not speak of a "duty" in the context of a breach of contract. But the D.C. Standard Instruction, §11.17 "Breach of Contract--Defined" states: "Under the law, if one party, . . . fails to fully perform *a duty* owed under a contract, then that party has breached the contract." *Id.* (emphasis added). The Court's Special Verdict Form is consistent in that regard.

**2) Plaintiffs Are Not Required To Prove Individual Damages.**

For the same reasons stated above in Section A, Paragraph 12, the Court's Special Verdict No. 2 properly addresses classwide damages.

**3) The Special Verdict Form Should Not Require a Separate Finding of "Control".**

Defendants hope fervently to have multiple Instructions and Verdict Forms on the same issue of "control" in an attempt to completely distort the importance of a single element of a claim and confuse the jury. It is inappropriate and unnecessary to repeat the instructions in the jury verdict form.

**4) The Special Verdict Form Should Not Include a Separate Finding of Nominal Damages**

The explanation of Nominal Damages are adequately covered in the Courts Instruction No. 51. Defendants invitation of a separate, confusing nominal damage Special Verdict question is duplicative of the special verdict no. 5 which covers all breach of contract damages. A separate verdict on nominal damages threatens to make any damage verdict ambiguous and confusing.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1

12

### 5) The Punitive Damages Question is Proper.

As discussed above in Section A, Paragraph 14, the Special Verdict form for punitive damages is appropriate. Defendants also object that the phrase "by way of example" is highly prejudicial and should be stricken. But this phrase is consistent with and supported by the D.C. Standard Jury Instructions §16.01: "Punitive damages are awarded to punish a defendant for its conduct *and to serve as an example to prevent others from acting in a similar way." Id.* (emphasis added). Defendants' new special verdict form should be declined.

Respectfully submitted,

Dated: November 5, 2008        MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Ronald S. Katz
    Ronald S. Katz (SBN 085713)
    Ryan S. Hilbert (SBN 210549)
    Noel S. Cohen (SBN 219645)
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
Lewis T. LeClair (SBN 077136)
Jill Adler Naylor (SBN 150783)
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20202979.1
Dallas 258080v3
Dallas 268117v1

13