1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HERBERT ANTHONY ADDERLEY, on behalf of
himself and all others similarly situated,

        Plaintiffs,

  v.

NATIONAL FOOTBALL LEAGUE PLAYERS
ASSOCIATION, a Virginia corporation, and
NATIONAL FOOTBALL LEAGUE PLAYERS
INCORPORATED d/b/a PLAYERS INC., a Virginia
corporation,

        Defendants.

—————————————————————/

No. C 07-00943 WHA

**FINAL CHARGE TO THE JURY**

**(As Provided to Counsel After Charging Conference and Prior to Closing Arguments)**

Dockets.Justia.com

1

2                                                     1.

3          Members of the jury, it is my duty to instruct you on the law that applies to this case.

4   Copies of these instructions will be available in the jury room for you to consult as necessary.

5          It is your duty to find the facts from all the evidence presented in the case. To those facts

6   you must apply the law as I give it to you. You must not be influenced by any personal likes or

7   dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on

8   the evidence before you. In following my instructions, you must follow all of them and not

9   single out some and ignore others; they are all equally important. You must not read into these

10  instructions or into anything the Court may have said or done as suggesting what verdict you

11  should return — that is a matter entirely up to you.

12                                                    2.

13         The evidence from which you are to decide what the facts are consists of:

14             1.      The sworn testimony of witnesses, on both direct and

15  cross-examination, regardless of who called the witness;

16             2.      The exhibits which have been received into evidence;

17             3.      The sworn testimony of witnesses in depositions read into

18  evidence; and

19             4.      Any facts to which all the lawyers have stipulated here in the

20  courtroom before you. You must treat any stipulated facts as having been

21  conclusively proven.

22                                                    3.

23         In reaching your verdict, you may consider only the testimony and exhibits received into

24  evidence. Certain things are not evidence and you may not consider them in deciding what the

25  facts are. I will list them for you:

26             1.      Arguments and statements by lawyers are not evidence.

27  The lawyers are not witnesses. What they have said in their opening statements,

28             closing arguments and at other times is intended to help you interpret the

evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. A suggestion in a question by counsel or the Court is not evidence unless it is adopted by the answer. A question by itself is not evidence. Consider it only to the extent it is adopted by the answer.

3. Objections by lawyers are not evidence.

4. Testimony or exhibits that have been excluded or stricken, or that you have been instructed to disregard, are not evidence and must not be considered.

5. Anything you may have seen or heard when the Court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

4.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may explain the presence of water on the sidewalk. Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in light of reason, experience and common sense. You should consider both kinds of evidence. It is for you to decide how much weight to give to any evidence.

5.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says or part of it or none of it. In considering the testimony of any witness, you may take into account:

1. The opportunity and ability of the witness to see or hear or know the things testified to;

2. The witness' memory;

3. The witness' manner while testifying;

4. The witness' interest in the outcome of the case and any bias or prejudice;

5. Whether other evidence contradicted the witness' testimony;

6. The reasonableness of the witness' testimony in light of all the evidence; and

7. Any other factors that bear on believability.

6.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  Nor does it depend on which side called the witnesses or produced evidence.

7.

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or to do something, that is inconsistent with the witness' present testimony.  If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

8.

Discrepancies in a witness' testimony or between a witness' testimony and that of other witnesses do not necessarily mean that such witness should be discredited.  Inability to recall is common.  Innocent misrecollection is not uncommon.  Two persons witnessing an incident or a transaction sometimes will see or hear it differently.  Whether a discrepancy pertains to an important matter or only to something trivial should be considered by you.

However, a witness willfully false in one part of his or her testimony is to be distrusted in others.  You may reject the entire testimony of a witness who willfully has testified falsely on a material point, unless, from all the evidence, you believe that the probability of truth favors his or her testimony in other particulars.

9.

You have heard testimony from witnesses referred to as "expert witnesses." These are persons who, because of education or experience, are permitted to state opinions and the reasons for their opinions. Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion and all the other evidence in the case. If an expert witness was not present at the events in question, his or her opinion is necessarily based on an assumed set of circumstances. In evaluating the opinion during the trial, you should take into account the extent to which you do agree or do not agree with the circumstances assumed by the expert witness.

10.

In these instructions, I will often refer to the burden of proof. The principal burden of proof in this case is known as a burden of proof by a preponderance of the evidence. When a party has the burden of proof on any issue by a preponderance of the evidence, it means you must be persuaded by the evidence that the issue is more probably true than not true. To put it differently, if you were to put the evidence favoring plaintiff and the evidence favoring defendant on opposite sides of a scale, the party with the burden of proof on the issue would have to make the scale tip somewhat toward its side. If the party fails to meet this burden, then the party with the burden of proof loses on that issue. Preponderance of the evidence basically means "more likely than not."

11.

Plaintiff has the burden of proof on all issues in this case. If you find that plaintiff carried its burden of proof as to an issue your verdict should be for plaintiff on that issue. If you find that plaintiff did not carry its burden of proof, you must find against plaintiff on that issue.

12.

I now will turn to the law that applies to this case. This is a class action lawsuit. A class action lawsuit is one where the plaintiff is allowed to bring a claim on behalf of a large group

1    who share a common interest in the same issue.  As to the claims made in this case, your verdict

2    will govern for the entire class.

3                                                    13.

4           This class action arises out of a form agreement between various individual retired

5    players and the National Football League Players Association which I will refer to as the

6    "NFLPA."  The form is entitled "Retired Player Group Licensing Authorization Form."  I will

7    refer to it as the RPGLA.  Mr. Herb Adderley is the representative of a class of 2,062 retired

8    NFL players who, like Mr. Adderley, signed RPGLAs with the NFLPA that were in effect

9    between February 14, 2004, to February 14, 2007.  The starting date was determined by the

10   statute of limitations, not on any change in format of the RPGLA.  Mr. Adderley and the class he

11   represents are referred to in these instructions as "plaintiff" or the "RPGLA Class members."

12   Your job is to decide the class claims asserted on behalf of the entire class.  There is no claim for

13   any subset of retired players on any particular deal or any isolated evidence.  Rather, since this is

14   a class action, the only claims for you to decide are claims common to the entire class.

15                                                   14.

16          Under the RPGLA, the retired player authorized the NFLPA and Players Inc., to use and

17   to license to third parties his name, image, voice, signature, and biographical information in the

18   "NFLPA Retired Player Group Licensing Program."

19                                                   15.

20          On behalf of the RPGLA class, plaintiff asserts two claims against defendants:  (1)

21   breach of the RPGLA contract and (2) breach of fiduciary duty as it relates to the RPGLA.  On

22   the other hand, defendants claim that there was no breach of contract or breach of any fiduciary

23   duty relating to the RPGLA.  You must apply the following instructions in deciding whether

24   plaintiff has proven these claims.

25                                                   16.

26          On the breach-of-contract claim, plaintiff has the burden of establishing by a

27   preponderance of the evidence the following:

28

                                                      6

1.     That moneys were generated by defendants' licensing of rights to which money the RPGLA class was entitled; and

2.     That at least some of any such money was not paid to the RPGLA class pursuant to the RPGLA.

17.

This case involves many contracts, some of which were license agreements. With respect to the license agreement, I want to explain three different levels that I will identify for you. One is the RPGLA between an individual player and defendants, like the one Mr. Adderley signed.

A second are the so-called "ad hoc" agreements. These were licenses between individual players, a third party like EA, and defendants. Under these agreements, certain retired players received money, seven million of which went to class members. No one in this case is suing to recover any of that money, that is, no one contends that any of the ad hoc license revenue should be re-distributed to all class members under the RPGLA or that the ad hoc agreements triggered any rights under the RPGLA. Rather, the class of retired players is contending that they should have received some of the third-party licensing revenue treated by defendants as for active players only. That leads to the third level of licenses.

The third level are the third-party licenses. These are licenses between defendants and third-party makers or vendors of player cards, video games, and other football products. The individual players were *not* parties to these third-party licenses, for these agreements were between defendants and various third parties, like Electronic Arts. I will refer to these as third-party licenses. There are about 95 of them in evidence. A basic question you will need to consider is the extent to which, if at all, revenues flowing out of the third level of licenses were required to have been paid to class members under the RPGLA. This is the revenue that went into the GLR or Gross Licensing Revenue pool which defendants claim was active player money but which plaintiff asserts should have been shared with class members pursuant to the RPGLA. Your resolution of this question will involve your interpretation of the relevant agreements.

18.

1        In this connection, the RPGLA stated that "the moneys generated by such licensing of

2  retired player group rights will be divided between the player and an escrow account for all

3  eligible NFLPA members who have signed a group licensing authorization form." You have

4  heard evidence that little or no money was ever paid to any retired player pursuant to a RPGLA

5  and that no such escrow account was ever established. To this, defendants respond that little or

6  no money was ever generated or due within the meaning of the RPGLA and therefore, there was

7  nothing, or very little, to put into escrow. By contrast, plaintiff contends that large sums of

8  moneys were, in fact, generated by third-party licenses and put into the GLR but were not shared

9  with retired players under the RPGLA and instead were split only between active players and

10  defendants. Again, the plaintiff class seeks to share in the group licensing revenues that

11  defendants claim was due only to active players.

12        Whether any such money was due to the class under the RPGLA depends on the

13  coverage of the RPGLA as well as, possibly, the coverage of the third-party licenses, questions

14  of coverage for the jury. Plaintiff has the burden to prove liability on the claim and it must do so

15  by a preponderance of the evidence. So I will now give you the rules you must follow in

16  interpreting the various contracts at issue.

17                                    19.

18        Interpretation of a contract is a determination of the reasonable and mutual expectations

19  of the parties to a contract, taking into account the words and phrases used and the circumstances

20  surrounding the formation of the contract. You should start with the words actually used. The

21  express written language of a contract is the primary reference you should consult when

22  interpreting the meaning of the contract. That is because the whole point of a written contract is

23  to reduce the agreement to writing and the only way to do so is through words and phrases.

24  Words and phrases used by the parties in a contract should be given their usual and ordinary

25  meaning unless it is proven that they had a special meaning accepted by those in the business

26  involved, here professional football, or were defined in the contract itself to mean something

27  special. Sometimes, however, words and phrases as used in a contract are subject to two or more

28

possible meanings. This is called ambiguity. To resolve such ambiguities, the law has

developed further guidelines for contract interpretation that I will now discuss.

20.

In determining the reasonable and mutual expectations of the parties to the contract, you

should also consider the relevant facts and circumstances known to the parties at the time of

making the agreement and evaluate how these surrounding circumstances informed the mutual

and reasonable expectations of the parties concerning the agreement. You may consider the

circumstances that existed at the time the contract was made, including the apparent purpose of

the parties in entering into the contract, the history of negotiations leading up to the contract, and

the statements of the parties about their understanding of the contract at the time the contract was

entered into. Facts and circumstances known to both sides of a contract are entitled to more

weight than facts and circumstances known only to one side of the contract. That is because our

goal is to determine the mutual reasonable intent and expectations of both sides.

21.

In determining the reasonable and mutual expectations of the parties to a contract, you

may also consider the conduct of the parties in carrying out the contract before any controversy

arose, that is, how the parties to a contract implemented their contract before any contemplation

of litigation. If *both* sides to a contract consistently acted as if certain words and phrases meant

one thing and not another, then their conduct may be viewed by you as their own practical

construction of those words and phrases and any such consistent and mutual conduct would be

entitled to considerable weight. Similarly, even if only one side acted consistently as if the

words and phrases meant one thing and not another and that action was made known to the other

party and acquiesced in without objection, all prior to any contemplation of litigation, then you

may also consider that course of known and unprotested conduct as the parties own practical

construction of the words and phrases and you may adopt any such interpretation as the proper

interpretation.

22.

The point in time that matters is when the contract was entered into. You must determine the reasonable and mutual expectations of the parties as of that point in time. You may consider subsequent events, such as any practical construction of the parties in implementing the contract, only as it sheds light on the reasonable and mutual expectations of the parties at the time they made the agreement.

23.

You have heard much testimony from both sides as to how various participants individually expected the contracts at issue would work or how they understood the contracts at the time they were signed. You should consider all such evidence but there are caveats. Again, your primary consideration should always be the actual words of the contract. Once litigation arises, witnesses often say they had one understanding or the other of a contract. Such general testimony must be viewed with a measure of skepticism, given the risk that a witness might be tempted simply to testify after the fact in a manner convenient to his interest. If, however, the witness communicated his understanding to the *other* party in the course of the making of the contract itself then such a communication is entitled to greater weight than a statement first expressed only after litigation arose. This is because a disclosure during negotiations of how a party understood a proposed term, assuming it was plausible, put the other side on fair notice and helped inform the reasonable expectations and intent of both parties.

Also, you may consider whether or not the supposed interpretation was ever expressed in a contemporaneous letter or email or other writing, even if it was not communicated to the other side of the transaction. Circumstances known only to one side of a transaction can be considered by you in deciding the reasonable expectations of the party with respect to the meaning of the contract but, if those circumstances were not disclosed or known to the other side, then those circumstances are entitled to less weight in the reasonable expectations of the parties. Such a circumstance could not have influenced the reasonable expectations of the *other* contracting party but it at least could provide corroboration of testimony. Again, the ultimate question is the reasonable and mutual expectations of the parties, not the subjective and unilateral expectations of only one side, although you may consider such evidence in deciding the ultimate issue.

10

24.

In evaluating evidence of an understanding testified to by a party to a contract, you may take into account whether the interpretation was against the interest of that testifying party rather than in the self-interest of that testifying party. An admission against one's own interest is usually of more probative value than a self-serving statement. This is because admissions against interest are usually made only if they are true. A self-serving interpretation, however, may also be accurate. It is entirely up to you to decide how much weight to give any witness testimony.

25.

Again, you have heard much testimony about various "understandings" by witnesses at the time in question. Such testimony should only be evaluated in light of the actual words used in the contract itself. In other words, you should take into account whether the actual words used in the contract were reasonably susceptible to any such understanding, taking into account the circumstances known to the contracting parties. If a contract word or phrase seems ambiguous, meaning that it is susceptible to two or more different meanings, you may use verbal testimony to help select among the alternative meanings. You may not use testimony, however, to adopt a meaning the words and phrases themselves will not reasonably bear or that would lead to absurd results.

26.

The contract should be considered as a whole; no part of it should be ignored. The contract should be interpreted to give effect to all of its parts. No word or phrase in a contract should be treated as meaningless if any meaning which is reasonable and consistent with other parts of the contract can be given to it. If a term of a contract is ambiguous, you are not required to choose between only the interpretations offered by the two sides but you are free to adopt any meaning consistent with the actual words of the contract, using the rules of contract interpretation given above.

27.

If, after applying all of the foregoing rules of construction, you are unable to resolve an

1   ambiguity in the meaning of a word or a phrase in the contract, such doubt or ambiguity may be

2   resolved against the party who drafted the contract so long as you adopt a reasonable

3   interpretation of the contract. This is because the drafter of the contract was in the best position

4   to have avoided an ambiguity in the first place.

5                                                    28.

6          As I instructed you earlier, in evaluating the claims in this case you may have to decide

7   the meaning of the third-party license agreements like the Electronic Arts license agreements. In

8   evaluating that question, if you decide you need to reach it, you should use the same rules of

9   interpretation but, of course, you should apply them from the point of view of the reasonable

10  expectations of the specific parties to the those third-party license agreements.

11         In this connection, there is a recital in various third-party licenses that deserves attention.

12  I will use TX 28 as an example. TX 28 is an Electronic Arts agreement. The first paragraph

13  started with a recital that stated as follows and I will quote:

14              PLAYERS INC represents that it is a licensing affiliate of the
                National Football League Players Association ("NFLPA"); that the
15              NFLPA has been duly appointed and is acting on behalf of the
                football players of the National Football League who have entered
16              into a Group Licensing Authorization, either in the form attached
                hereto as Attachment "A" or through the assignment contained in
17              Paragraph 4(b) of the NFL Player Contract, which have been
                assigned to PLAYERS INC; and that in such capacity PLAYERS
18              INC has the right to negotiate this contract and the right to grant
                rights and licenses described herein.
19
20  Plaintiff and defendants agree in this case that this passage referred only to *active* NFL players.

21  One reason is that the Attachment A referenced in the passage was used exclusively with active

22  players. As well, the Electronic Arts witness testified that it referred only to *active* players.

23  Therefore, you should treat as established that that sentence referred solely to active players.

24  The two sides in this litigation, however, disagree on the meaning of the next sentence in the

25  recital, which stated as follows:

26              Licensee acknowledges that PLAYERS INC also on occasion
                secures authorization for inclusion in PLAYERS INC licensing
27              programs from players, including but not limited to retired players,
                who have not entered into such Group Licensing Authorization,
28              but who, nevertheless, authorize PLAYERS INC to represent such
                players for designated PLAYERS INC licensed programs.

                                                    12

Throughout the trial you have heard the competing interpretations of this sentence. As stated, this was a recital. A recital is sometimes used in a written contract to set the stage for the terms that follow in the document. The purpose of a recital is to explain at least some of the background and surrounding circumstances so as to place the contractual terms in a context. After the recital in TX 28 came the key provision, which was the grant of license. It stated as follows:

> Upon the terms and conditions hereinafter set forth, PLAYERS INC hereby grants to Licensee and Licensee hereby accepts the exclusive right, license, and privilege of utilizing the trademarks and names of PLAYERS INC which may be amended from time to time by PLAYERS INC and the names, likeness (including, without limitation, numbers), pictures, photographs, voices, facsimile signatures and/or biographical information (hereinafter "identity") of the NFL players referenced in Paragraph 1(A) above . . . .

In this lawsuit, plaintiff contends that the phrase, "the NFL players referenced in Paragraph 1(A) above," as just quoted, included both retired and active players whereas defendants contend it included only active players. In resolving this dispute, you should apply the rules of interpretation stated above. Although the parties to this litigation disagree over the meaning of these terms, if you find that the actual parties to the Electronic Arts contract itself have consistently and mutually understood and carried out the terms in question as if they meant one thing and not another, then (as I have said earlier) you should give considerable weight to such a practical construction of the parties in carrying out their own contract.

29.

I have referred to an Electronic Arts agreement but only as an example — you should, of course, consider and evaluate each of the third-party agreements in evidence, of which there are 95.

30.

To be clear and to step back a moment, plaintiff makes a line of argument based on the RPGLA alone regardless of the meaning of the third-party agreements. This argument is that the terms of the RPGLA itself entitled the class to a share of the "group" revenue and that all of the Gross Licensing Revenue was such "group" money. Defendants, on the other hand, contend that

the class was only entitled to moneys generated by licensing of retired player group rights. In evaluating these arguments, you, of course, will not need to construe any third-party license agreements.

31.

With respect to the contract claim, you must decide whether or not plaintiff has proven that moneys were received by defendants' licensing of rights to which the RPGLA class was entitled and, if so, the extent those moneys were payable to the class under the RPGLA.

32.

A separate claim you must decide is a claim for breach of fiduciary duty as it related to the RPGLA. You have heard some testimony relating to whether or not class members were union members. In this regard, please remember that some class members are not union members. Plaintiff's breach of fiduciary claim is not based on union membership. The fiduciary claim is alleged to arise only from the RPGLA. Although you have heard information about pensions, benefits, and collective bargaining, there is no claim in this case for unfair representation by the union of its members. This case involves the RPGLA.

33.

On plaintiff's breach of fiduciary duty claim, plaintiff has the burden of establishing by a preponderance of the evidence the facts necessary to prove the following elements:

1.      That, in connection with the RPGLA, defendants owed a fiduciary duty to the RPGLA class members to market and promote their names, images, and identities as an entire group;

2.      That defendants breached any such fiduciary duty;

3.      That the RPGLA Class members suffered damages as a result.

34.

To establish a fiduciary relationship, plaintiff must prove an agency relationship that required defendants to promote the names and images of the RPGLA class. The mere existence of a license agreement, by itself, does not give rise to a fiduciary or agency relationship.

35.

14

An agency relationship results when one person, called the principal, agrees that another person, called the agent, shall act on the principal's behalf and subject to the principal's control, and the agent agrees to do so. In this case plaintiff alleges they were the principals and the defendants were their agents. Defendants admit that a license was acquired by them but deny that there was any agency or fiduciary relationship requiring defendants to actively promote retired players.

36.

An agency relationship is sometimes created by an express contract. You have heard evidence, for example, that some sports figures have agents to negotiate on their behalf and to promote their interests. A mere license is not the same as an agency contract. A license by itself gives the licensee the option to use or sell rights owned by the licensor and does not necessarily require the licensee to promote those rights or create a fiduciary relationship, it being up to the licensee to decide how to use the rights for its purposes. On the other hand, a licensee may, depending on the circumstances, also undertake to act as a marketing agent and to affirmatively promote the rights on behalf of the licensor. In that case, the licensee is not only a licensee but also an agent with fiduciary duties.

37.

In evaluating whether defendants undertook to be an agent with fiduciary duties, you must consider not only the actual words used in the written agreement but also all of the circumstances surrounding the licensed rights at issue and the parties' relationship.

38.

An important factor to consider is control. In an agency relationship, the principal usually has the ability to control the agent's conduct. For example, the principal may direct the agent to try to make certain deals and not other deals. This is called control. The presence of such control is a factor indicative of an agency relationship. On the other hand, the absence of control is an indication that the relationship was a mere license arrangement whereby the licensee was free to try and market or not market such license rights as it wished. Be aware, however, that the control does not have to be actually exercised; instead it is simply the right to

control, rather than its actual exercise, that can be indicative of an agency relationship.

39.

Another factor you may consider is the financial arrangement between the licensor and the licensee. Remember that pertaining to the RPGLA, the licensors were the RPGLA class members and the licensees were the defendants. To the extent that a licensee paid a sum certain for the rights and was entitled to keep all or most of any third-party revenue, such a circumstance would be indicative of a bare license with no agency relationship. In such a case, the licensee would be making any marketing efforts for its own account and not for the account of the licensor. On the other hand, if the licensor gave consideration to the licensee to go out and market the rights and to pass a large part of the revenues through to the licensor, then that would be indicative of an agency relationship.

40.

Another factor is a right to discharge. In an agency relationship, the principal usually has the right to discharge the agent and to terminate the relationship. One reason is so that the principal can engage someone else to promote him or to make other promotional arrangements. On the other hand, the absence of a right to discharge is more indicative of a bare-license relationship wherein the licensee is free, during the life of the license, to use or not use the rights as it wishes. So another factor you should examine is whether there was or was not a power to discharge.

41.

Another factor you should consider is the reasonable expectations of the parties supported by the relationship, that is, what reasonable persons in the same circumstances would have expected from the other side in the relationship. In evaluating this, you may not impose on defendants a fiduciary duty, if at all, that would exceed the reasonable expectations of the parties in the circumstances of this case.

42.

The basic issue you must decide is, as stated, whether or not in addition to acquiring license rights, defendants also undertook a fiduciary duty to promote or not and to market those

1   retired players who signed RPGLAs.  If you find that there was no such fiduciary undertakings,

2   applying the factors stated above, then you must find for defendants on the fiduciary-duty claim.

3   It is up to you to decide how much weight to give the various factors I have listed in making

4   your decision.  If you find such a duty existed, then you must consider whether that duty was

5   breached, so I will now tell you the duties owed by a fiduciary.

6                                                    43.

7          A fiduciary owes several duties to his principal.  A fiduciary must exercise good faith to

8   his principal. A fiduciary has a duty to act reasonably and with the care, competence and

9   diligence normally exercised by fiduciaries in similar circumstances.  Special skills or

10  knowledge possessed by a fiduciary are circumstances to be taken into account in determining

11  whether the fiduciary acted with due care and diligence.  If a fiduciary claims to possess special

12  skills or knowledge, the fiduciary has a duty to the principal to act with the care, competence and

13  diligence normally exercised by fiduciaries with such skill or knowledge.

14         A fiduciary also has a duty of loyalty toward his principal.  This means that the fiduciary

15  must put the principal's interests ahead of his own, as to all matters connected with the

16  relationship.  The fiduciary is also required to refrain from conduct that is adverse to or likely to

17  damage the principal's interests.

18                                                   44.

19         A fiduciary has a duty to use reasonable effort to provide the principal with facts that the

20  agent knows, has reason to know, or should know when the agent knows or has reason to know

21  that the principal would wish to have the facts or the facts are material to the agent's duties to the

22  principal.  A fiduciary has a duty not to acquire a material benefit from a third party in

23  connection with transactions conducted or other actions taken on behalf of the principal or

24  otherwise through the fiduciary's use of his position.  Finally, a fiduciary has a duty to act in

25  accordance with the express and implied terms of any contract between the fiduciary and the

26  principal.

27                                                   45.

28         Plaintiff has the burden to prove that defendants breached any fiduciary duty.  You have

17

1   heard that Electronic Arts scrambled the names and identities of retired players.  I remind you

2   again that there is no claim in this case that this scrambling by Electronic Arts violated any

3   player's rights.  Instead, plaintiff's claim is that defendants breached a fiduciary duty by insisting

4   on scrambling rather than licensing the entire group of RPGLA rights to Electronic Arts.

5   Defendants respond that Electronic Arts was not willing to pay any money to license the entire

6   group of RPGLA rights and therefore defendants were acting to protect retired players in

7   insisting on scrambling.

8                                                          46.

9        During the cross-examination of Professor Noll, plaintiff's counsel asked questions

10  supposing that defendants had certain monopoly and market power with respect to active player

11  licensing and asked whether there had been anything to prevent defendants from using that

12  power to induce third-party licensees to also take retired players as a group.  In this regard, I

13  instruct you that an agent has no duty to market its principals in a way that would be illegal or

14  that would raise a substantial question of illegality.  On the assumptions of market power and

15  monopoly used in counsel's question, a substantial question of illegality under the antitrust laws

16  would have been raised had defendants refused to license active players to a third-party licensee

17  like Electronic Arts except on condition that it also took a license for all RPGLA class members.

18  On the other hand, no question of illegality would have been presented by a stand-alone offer by

19  defendants to license all RPGLA class members as an entire group.

20                                                         47.

21       I will now instruct you on damages.  It is the duty of the Court to instruct you about the

22  measure of damages.  By instructing you on damages, the Court does not mean to suggest for

23  which party your verdict should be rendered.

24       If you find for plaintiff, the RPGLA Class members, on a particular claim, you must

25  determine the amount of damages, if any, they suffered.  Damages means the amount of money

26  which will compensate the RPGLA Class members for any injury you find was caused by

27  defendants for a particular claim.  You may award plaintiff damages that are based on a just and

28  reasonable estimate derived from relevant evidence.

48.

Under the relevant law, the claims at issue must be brought within three years of the time when the breach occurred. In this case, the limitations period reaches back to February 14, 2004. No damages may be awarded for any contract violation or fiduciary duty violation occurring prior to February 14, 2004.

49.

If you decide that plaintiffs have proved their breach-of-contract claim against defendants, then the RPGLA class members are entitled to recover as damages the sum of money that would put the RPGLA Class members in the same economic position as they would have been if the contract had not been breached by the defendants but only to the extent that such damages were reasonably foreseeable by the parties in the event of breach.

The plaintiff has the burden to prove by a preponderance of the evidence the amount of damages suffered by the RPGLA Class members. You may not award damages based on sympathy, conjecture, speculation, guess work or punishment. On the other hand, the law does not require that plaintiff prove the amount of damages with mathematical precision, but with reasonable certainty.

50.

The purpose of the law of damages is to compensate a plaintiff for the loss, if any, which results from a defendant's conduct. If you find that plaintiff has proven that the defendants breached any fiduciary duty to plaintiff, then plaintiff also has the burden of proving damages by a preponderance of evidence.

The measure of damages for breach of fiduciary duty is the amount of money necessary to place RPGLA Class members in the same economic position they would have been in if defendants' fiduciary duty had not been breached. In other words, the purpose of awarding damages to the RPGLA Class for breach of fiduciary duty is to make them whole for any injuries they suffered.

Plaintiff must first prove that they suffered economic injury as a result of defendants' breach of fiduciary duty. If plaintiff fails to meet their burden, then you may not award any

damages for that claim.  If, however, you find that plaintiff suffered economic injury as a result of defendants' breach of fiduciary duty, then you may next consider whether plaintiff has proven the amount of such damages.

51.

As the party seeking damages, plaintiff has the burden of proving the amount of damages by a preponderance of the evidence.  While plaintiff is not required to prove damages with mathematical precision, it must prove their damages with reasonable certainty.  If plaintiff has met their burden, your damages award should put plaintiff in approximately the financial position they would have been in had the breach not occurred.

You may only award plaintiff damages that are adequate to compensate for the breach. You may not award any more or less damages.  Plaintiff is not entitled to recover damages which are speculative, remote, imaginary, contingent, or merely possible.  Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Nor may you include any amount for the purpose of punishing defendants or setting an example.

52.

Recovery of damages may be limited to a nominal sum if the plaintiff has failed to prove the extent and amount of damages, even though they have proven that they have been wronged. A nominal sum is a small, symbolic amount of money, such as one dollar, awarded as recognition that an injury was sustained.  If you find that defendants breached the RPGLA, or that they breached their fiduciary duties to the RPGLA class members, but that plaintiff has not proved any actual damages, or that plaintiff's proof is vague or speculative, then you may award nominal damages.

53.

Plaintiff has made claims against defendants for breach of contract and breach of fiduciary duty.  If you decide that plaintiff has proved more than one of these causes of action, the same damages that resulted from multiple claims can be awarded only once.

54.

20

In addition to compensatory damages, plaintiff also seeks an award of punitive damages in this case against defendants. Punitive damages are damages above and beyond the amount of compensatory (or nominal) damages you may award. Punitive damages are awarded to punish the defendant for his or her conduct and to serve as an example to prevent others from acting in a similar way.

You may award punitive damages only if plaintiff has proved with clear and convincing evidence:

(1)    that the defendants acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of the RPGLA Class members; AND

(2)    that the defendants' conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of the RPGLA Class members.

You may conclude that the defendants acted with a state of mind justifying punitive damages based on direct evidence or based on circumstantial evidence from the facts of the case.

"Clear and convincing" evidence means evidence of such convincing force that it demonstrates, in contrast to the opposing evidence, a high probability of the truth of the facts for which it is offered as proof. Such evidence requires a higher standard of proof than proof by a preponderance of the evidence.

If you decide that punitive damages should be awarded, you will have a short supplemental proceeding immediately following your verdict in order to receive more evidence and argument as to the amount that should be awarded.

55.

When you begin your deliberations, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in court. I recommend that you select a foreperson who will be good at leading a fair and balanced discussion of the evidence and the issues.

56.

21

In your deliberations it is usually a mistake to take a straw vote early on. This is due to the risk of jury members expressing a premature opinion and then, out of pride, digging their heels. Rather, it is usually better to discuss the evidence, pro and con, on the various issues before proceeding to take even a straw vote. In this way, all the viewpoints will be on the table before anyone expresses a vote. These are merely recommendations, however, and it is up to you to decide on how you wish to deliberate.

57.

Your verdict as to each claim and as to damages, if any, must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

58.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right. It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

59.

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

60.

When you retire to the jury room to deliberate, the Clerk will bring you the following:

      1.     All of the exhibits received into evidence;

      2.     An index of the exhibits assuming that counsel are able to stipulate to such an index;

      3.     A work copy of these jury instructions for each of you;

      4.     A work copy of the verdict form for each of you; and

      5.     An official verdict form.

You do not have to discuss the questions in the strict sequence indicated in the special verdict form, but you must, by the end, answer them unanimously as indicated in the form.

When you recess at the end of a day, please place your work materials in the brown envelope provided and cover up any easels containing your work notes so that if my staff needs to go into the jury room, they will not even inadvertently see any of your work in progress.

61.

A United States Marshal will be outside the jury-room door during your deliberations. If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone — including me — how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the Court.

62.

You have been required to be here each day from 7:45 a.m. to 1:00 p.m. Now that you are going to begin your deliberations, however, you are free to modify this schedule within reason. For example, if you wish to continue deliberating in the afternoons after a reasonable lunch break, that is fine. The Court does, however, recommend that you continue to start your deliberations by 8:00 a.m.

It is very important that you let the Clerk know in advance what hours you will be deliberating so that the lawyers may be present in the courthouse at all times the jury is deliberating.

63.

You may only deliberate when all of you are together. This means, for instance, that in the mornings before everyone has arrived, or when someone steps out of the jury room to go to

the restroom, you may not discuss the case.  As well, the admonition that you are not to speak to anyone outside the jury room about this case still applies during your deliberation.

64.

After you have reached a unanimous agreement on a verdict, your foreperson will fill in, date and sign the verdict form and advise the Court through the marshal that you have reached a verdict.  The foreperson should hold on to the filled-in verdict form and bring it into the courtroom when the jury returns the verdict.  Thank you for your careful attention.  The case is now in your hands.  You may now retire to the jury room and begin your deliberations.

Dated: _____

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE