VOLUME 12

PAGES 2493 – 2620

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

| | |
|---|---|
| BERNARD PAUL PARRISH, HERBERT ANTHONY ADDERLEY, WALTER ROBERTS III, ) ) ) ) | |
| PLAINTIFFS, ) ) | |
| VS. ) ) | NO. C 07-0943 WHA |
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION AND NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED D/B/A PLAYERS INC, ) ) ) ) ) | |
| DEFENDANTS. ) ) _____) | SAN FRANCISCO, CALIFORNIA THURSDAY NOVEMBER 6, 2008 |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFFS:**          MANATT, PHELPS & PHILLIPS
                                        1001 PAGE MILL ROAD, BUILDING 2
                                        PALO ALTO, CALIFORNIA 94304
                          **BY:  RONALD S. KATZ, ESQ.**
                                **RYAN S. HILBERT, ESQ.**

(APPEARANCES CONTINUED ON NEXT PAGE)

**APPEARANCES CONTINUED:**

**ALSO FOR PLAINTIFFS:**    MCKOOL SMITH
                            300 CRESCENT COURT
                            SUITE 1500
                            DALLAS, TEXAS  75201
              BY:  **LEWIS T. LECLAIR, ESQ.**
                   **JILL ADLER NAYLOR, ESQ.**
                   **ANTHONY GARZA, ESQ.**

**FOR DEFENDANTS:**         DEWEY & LEBOEUF
                            1301 AVENUE OF THE AMERICAS
                            NEW YORK CITY, NEW YORK  10019-6092
              BY:  **JEFFREY L. KESSLER, ESQ.**
                   **DAVID G. FEHER, ESQ.**
                   **ROY TAUB, ESQ.**

                            WEIL, GOTSHAL & MANGES LLP
                            767 FIFTH AVENUE
                            NEW YORK, NEW YORK 10153-0119
              BY:  **BRUCE S. MEYER, ESQ.**

**REPORTED BY:**    *KATHERINE POWELL SULLIVAN, CSR # 5812*
                    *OFFICIAL REPORTER - U.S. DISTRICT COURT*

1          **P R O C E E D I N G S**

2     **NOVEMBER 6, 2008**                                    **7:30 A.M.**

3

4          (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT,

5          OUTSIDE THE PRESENCE OF THE JURY.)

6          **THE COURT:**  GOOD MORNING.  WE'RE HERE FOR THE

7     CHARGING CONFERENCE.  AND THE WAY WE WILL PROCEED -- I THANK

8     YOU FOR ALL OF YOUR BRIEFS.

9          NOW, BY NOON WE NEED TO HAVE FINISHED THIS.  ALL GOOD

10    THINGS MUST COME TO AN END.  SO I'LL LET YOU MAKE YOUR BASIC

11    POINTS, BUT THERE WILL NOT BE LONG EXTENDED ARGUMENT.  I HAVE

12    YOUR BRIEFS.  AND AT SOME POINT I'VE JUST GOT TO DECIDE AND

13    MOVE ON.  SO WE ARE GOING TO START WITH --

14         **MR. KATZ:**  EXCUSE ME, YOUR HONOR, WE ALSO HAVE THE

15    TYING BRIEFING.  I DON'T KNOW HOW YOU WANT TO HANDLE THAT.

16         **THE COURT:**  THE TYING THING?

17         **MR. KATZ:**  THERE WAS -- THERE WERE LETTER BRIEFS

18    SUBMITTED TO YOUR HONOR ON THE TYING ISSUE, SO-CALLED "TYING

19    ISSUE."

20         **THE COURT:**  WELL, I DIDN'T SEE THOSE.

21         **MR. KATZ:**  OKAY.

22         **MR. KESSLER:**  IT'S AN INSTRUCTION ISSUE, YOUR HONOR.

23    WE REQUESTED AN INSTRUCTION.  YOU ASKED THEM TO FILE A

24    RESPONSE, WHICH THEY DID, AND WE FILED A REPLY YESTERDAY.

25         **THE COURT:**  I DIDN'T SEE THOSE, BUT I DID DRAFT

1  SOMETHING IN THE MEANTIME.

2  　　　　MR. KESSLER:  OKAY.

3  　　　　THE COURT:  BUT I GUESS I'LL HAVE TO DIG THOSE OUT.

4  　　　　MR. KATZ:  IT WON'T TAKE TOO LONG, YOUR HONOR.

5  THEY'RE JUST 3-PAGE LETTERS.

6  　　　　THE COURT:  OKAY.  WE'LL PUT THAT ASIDE FOR THE

7  MOMENT.

8  　　　　WHAT I WANT TO DO IS GO THROUGH THESE INSTRUCTIONS

9  PARAGRAPH BY PARAGRAPH.

10  　　　　ANY OBJECTION TO NUMBER 1, PARAGRAPH 1?

11  　　　　MR. KESSLER:  NO OBJECTION, YOUR HONOR.

12  　　　　MR. LECLAIR:  YOUR HONOR, I THINK -- WE'D POINT OUT A

13  COUPLE OR AT LEAST A TYPOGRAPHICAL ERROR.

14  　　　　THE COURT:  I'D LIKE TO GET ANY TYPOS.  WHERE?

15  　　　　MR. LECLAIR:  LINE 5, THE WORD "YOU" IS OMITTED FROM

16  THE END OF A LINE.

17  　　　　THE COURT:  LINE 5 ON PAGE 3?  I SEE WHAT YOU MEAN.

18  "TO THOSE FACTS YOU MUST APPLY." CORRECT.  ALL RIGHT.

19  　　　　THAT'S A GOOD CATCH.

20  　　　　ALL RIGHT.  NUMBER 2, ANY OBJECTION?

21  　　　　MR. KESSLER:  NO OBJECTION TO 2.

22  　　　　MR. LECLAIR:  NO OBJECTION, YOUR HONOR.

23  　　　　THE COURT:  NUMBER 3?

24  　　　　MR. KESSLER:  NO OBJECTION, YOUR HONOR.

25  　　　　MR. LECLAIR:  NO OBJECTION.

1          THE COURT:  NUMBER 4?

2          MR. KESSLER:  NO OBJECTION, YOUR HONOR.

3          MR. LECLAIR:  NO OBJECTION.

4          THE COURT:  NUMBER 5?

5          MR. KESSLER:  NO OBJECTION, YOUR HONOR.

6          MR. LECLAIR:  NO OBJECTION.

7          THE COURT:  6?

8          MR. KESSLER:  NO OBJECTION, YOUR HONOR.

9          MR. LECLAIR:  NO OBJECTION.

10          THE COURT:  7?

11          MR. KESSLER:  NO OBJECTION, YOUR HONOR.

12          MR. LECLAIR:  NO OBJECTION.

13          THE COURT:  8?

14          MR. KESSLER:  NO OBJECTION, YOUR HONOR.

15          MR. LECLAIR:  NO OBJECTION, YOUR HONOR.

16          THE COURT:  9?

17          MR. KESSLER:  NO OBJECTION, YOUR HONOR.

18          MR. LECLAIR:  NO OBJECTION.

19          THE COURT:  10?

20          MR. KESSLER:  YOUR HONOR, IN 10 ON LINE 12 YOU SAY

21 THE ONLY BURDEN OF PROOF IS PREPONDERANCE OF THE EVIDENCE.

22          THERE IS A CLEAR AND CONVINCING STANDARD FOR -- FOR

23 PUNITIVE DAMAGES.

24          THE COURT:  RIGHT.

25          MR. KESSLER:  I THINK THAT NEEDS TO BE CORRECTED.

1          AND, SECOND, YOUR HONOR, IT TALKS IN GENERAL WHEN A

2  PARTY HAS THE BURDEN OF PROOF, WHICH IS AN APPROPRIATE

3  INSTRUCTION WHEN THE BURDENS ARE DIFFERENT FOR EACH SIDE.  BUT

4  IN THIS CASE THE PLAINTIFFS HAVE ALL THE BURDENS, SO I THINK IT

5  SHOULD --

6          **THE COURT:**  IS THERE ANY AFFIRMATIVE DEFENSES?

7          **MR. KESSLER:**  THERE ARE NO AFFIRMATIVE DEFENSES, YOUR

8  HONOR, IN WHICH NOTHING WOULD BE ASSERTED THAT WE'D HAVE THE

9  BURDEN ON.

10         SO I THINK IT SHOULD BE INDICATED JUST THAT THE

11  PLAINTIFFS HAVE THE BURDENS, AND THERE ARE TWO DIFFERENT

12  BURDENS, HOWEVER YOUR HONOR WANTS TO DESCRIBE IT.  BUT THERE

13  ARE TWO.  ONE IS CLEAR AND CONVINCING EVIDENCE AND ONE IS --

14         **MS. NAYLOR:**  YOUR HONOR, IN PARAGRAPH 11 IT ALREADY

15  EXPLAINS THAT THE PLAINTIFFS HAVE THE BURDEN OF PROOF.  THERE'S

16  NO REASON TO PUT IT IN TWICE.

17         **MR. KESSLER:**  IT'S CONFUSING.

18         **THE COURT:**  I THINK -- THE COURT REPORTER HAS TO HEAR

19  YOU.  SO PROBABLY THE BEST THING TO DO IS COME TO THE LECTERN.

20         **MR. KESSLER:**  WE'LL STAND UP, YOUR HONOR.

21         **THE COURT:**  WHEN YOU'RE GOING TO SAY MORE THAN "NO

22  OBJECTION," OR "YES," "NO," SOMETHING SHORT, YOU CAN SAY THAT

23  FROM THE TABLE.  OTHERWISE, YOU'VE GOT TO USE THE MICROPHONE AT

24  THE LECTERN.

25         WHAT I'M GOING TO DO ON NUMBER 10 IS SAY THE

1  PRINCIPAL BURDEN OF PROOF IS PREPONDERANCE OF THE EVIDENCE.

2  I'M NOT EVEN GOING TO GET INTO CLEAR AND CONVINCING UNTIL WE

3  GET TO THE PUNITIVE DAMAGE INSTRUCTION, AND THEN I WILL EXPLAIN

4  IT TO THEM THEN.  I THINK IT'S LESS CONFUSING WAY.

5          ACTUALLY, NUMBER 11 DOES NOT SAY THAT PLAINTIFF HAS

6  THE BURDEN OF PROOF.  SO I'M GOING TO PUT IN A SENTENCE IN

7  NUMBER 11 THAT SAYS:  "PLAINTIFF HAS THE BURDEN OF PROOF ON ALL

8  ISSUES IN THIS CASE."

9          BUT I'M GOING TO OTHERWISE LEAVE 10 AS IT IS,

10  CHANGING THE WORD "ONLY" TO "PRINCIPAL."

11          LET ME SAY SOMETHING TO MY LAW CLERK.

12          COUNSEL INFORMED ME THEY ALSO FILED LETTER BRIEFS ON

13  THE SUBJECT OF ANTITRUST TIE-INS.  WE'LL NEED TO PRINT THOSE

14  OUT, TOO.

15          THAT'S THE CHANGE I'M GOING TO MAKE ON 10 AND 11.

16          ANY OBJECTION?

17          **MR. LECLAIR:**  NO OBJECTION.

18          **MR. KESSLER:**  NO OBJECTION.

19          **THE COURT:**  ALL RIGHT.  12.

20          **MR. LECLAIR:**  NO OBJECTION.

21          **THE COURT:**  NUMBER 12?

22          **MR. KESSLER:**  NO OBJECTION, YOUR HONOR.

23          **THE COURT:**  NUMBER 13.

24          **MR. LECLAIR:**  YOUR HONOR, I THINK THE NUMBER IS

25  2,062.  ISN'T THAT WHAT WE ULTIMATELY CONCLUDED IS THE NUMBER

1  OF CLASS MEMBERS?  I THINK THAT'S THE STIPULATED NUMBER.

2        **THE COURT:**  OKAY.

3        **MR. KESSLER:**  WE HAVE TO CHECK THE COMPILATION.  DO

4  WE HAVE THE COMPILATION EXHIBIT?  THAT'S THE NUMBER.

5        **MR. KATZ:**  THEY'VE AGREED TO THIS.  CHECK IT.  GO

6  AHEAD.

7        **MR. KESSLER:**  WHY DON'T WE JUST CHECK THAT, YOUR

8  HONOR, WHILE --

9        **THE COURT:**  I'M GOING TO MAKE THE CHANGE TENTATIVELY

10  TO 2,062.  IF YOU FIND TO THE CONTRARY LET ME KNOW BEFORE THE

11  HEARING IS OVER.

12        **MR. KATZ:**  2,074 MINUS 12 OPT-OUTS.

13        **THE COURT:**  ALL RIGHT.  ANYTHING ELSE ON 13?

14        **MR. KESSLER:**  NO OBJECTION, YOUR HONOR, ONCE WE

15  STRAIGHTEN OUT THE NUMBER.

16        **MR. LECLAIR:**  NO OBJECTION, YOUR HONOR.

17        **THE COURT:**  14?

18        **MR. KESSLER:**  YES, YOUR HONOR.  WE HAD AN OBJECTION

19  TO THIS, YOUR HONOR.

20        IN THIS PARAGRAPH, WHICH IS THE FIRST ONE

21  DISCUSSING -- OR INTRODUCING THE RPGLA, YOUR HONOR ONLY QUOTES

22  THE SECOND PARAGRAPH, WHICH, OF COURSE, IS THE PARAGRAPH THAT

23  PLAINTIFFS PRINCIPALLY RELIED UPON.

24        IF YOUR HONOR IS GOING TO QUOTE THIS PARAGRAPH, THEN

25  WE BELIEVE WE SHOULD ALSO THEN QUOTE THE FOURTH PARAGRAPH

1  IMMEDIATELY AFTER IT, WHICH IS THE PARAGRAPH THAT WE

2  PRINCIPALLY RELY UPON.

3          AND SO --

4          **THE COURT:**  WELL, THAT'S -- ALL RIGHT.  I DON'T MEAN

5  TO FAVOR ONE SIDE OR THE OTHER HERE.  MAYBE I SHOULD JUST LEAVE

6  THAT SECOND SENTENCE OUT TOTALLY.

7          **MR. KESSLER:**  IF YOU LEAVE OUT THE SECOND SENTENCE

8  OUT TOTALLY, THEN WE HAVE NO PROBLEM THEN WITH THIS -- WITH

9  THIS INSTRUCTION.

10          **THE COURT:**  WHY DON'T I JUST DO THAT?  ANY PROBLEM

11  WITH THAT?

12          **MR. LECLAIR:**  WELL, YOUR HONOR, I THINK -- I THINK

13  THE -- THE -- SINCE YOUR HONOR IS TALKING ABOUT THE GROUP

14  LICENSING PROGRAM, IT WAS APPROPRIATE TO DEFINE "GROUP

15  LICENSING," BECAUSE THAT'S THE -- THAT'S THE KEY.  SO WE THINK

16  YOUR HONOR'S INSTRUCTION WAS CORRECT AS WRITTEN.

17          **THE COURT:**  WELL, THE THING IS THOUGH, IT COULD BE --

18  I UNDERSTAND THAT THAT'S THE SENTENCE YOU RELY ON HEAVILY.  IF

19  I CITE THAT SENTENCE OR QUOTE THAT SENTENCE, THEN FOR BALANCE

20  I'VE GOT TO QUOTE THE OTHER ONE.  I'M JUST GOING TO JUST TAKE

21  OUT THAT SENTENCE.

22          IT'S JUST BACKGROUND AND EXPLANATORY.  AND I COULD

23  EITHER DO THAT OR PUT IN BOTH SENTENCES.  BUT I THINK THAT

24  WOULD BE -- I'M GOING TO TENTATIVELY THINK THAT IT'S SIMPLER TO

25  MAKE IT SHORTER THAN LONGER.

1          ALL RIGHT.  15.

2              **MR. KESSLER:**  NO -- NO OBJECTION TO 15, YOUR HONOR.

3              **MR. LECLAIR:**  NO OBJECTION, YOUR HONOR.

4              **THE COURT:**  16?

5              **MR. KESSLER:**  16, YOUR HONOR, OUR OBJECTION IS IN THE

6   DESCRIPTION OF ONE IT SAYS: "THE MONIES THAT WERE GENERATED BY

7   DEFENDANTS' LICENSING OF GROUP RIGHTS."

8              YOUR HONOR, THE ACTUAL LANGUAGE IN THE RETIRED PLAYER

9   GLA IS "RETIRED PLAYER RIGHTS."

10             **THE COURT:**  NO, IT'S "RETIRED PLAYER GROUP RIGHTS."

11             **MR. KESSLER:**  RIGHT.  IF YOU SAY "RETIRED PLAYER

12  GROUP RIGHTS," THEN I'M OKAY.  IN OTHER WORDS, IF YOU QUOTE THE

13  ACTUAL LANGUAGE OF PARAGRAPH 4, I'M FINE.  BUT I THINK LEAVING

14  OUT "RETIRED PLAYER" INDICATES IT FAVORS THEIR ARGUMENT THAT

15  LOOK UP IN PARAGRAPH 2.  AND THIS, IN EFFECT, IT SHOULDN'T BE

16  BIASED ONE WAY OR THE OTHER.

17             IF YOU QUOTE THE LANGUAGE, I THINK YOU'RE FINE.

18             **MR. LECLAIR:**  YOUR HONOR, THIS IS EXACTLY THE PROBLEM

19  THEY HAVE.  IF YOU QUOTE THEIR LANGUAGE, THEN THAT FAVORS THEM.

20  AND WE OBJECT TO THAT.

21             WE THINK THIS IS -- THIS IS OBVIOUSLY REFERRING TO

22  THE RPGLA, AND IT SHOULDN'T FAVOR EITHER SIDE.

23             **THE COURT:**  WHY DON'T I TAKE OUT THE WORD "GROUP" AND

24  SAY "LICENSING OF RIGHTS"?

25             **MR. LECLAIR:**  THAT'S FINE WITH ME, YOUR HONOR.

1          **THE COURT:**  TAKE OUT THE WORD "GROUP" AND JUST SAY

2   "RIGHTS."

3          **MR. KESSLER:**  WE HAVE AN OBJECTION TO THAT, YOUR

4   HONOR.

5          **THE COURT:**  I DON'T UNDERSTAND WHY.

6          **MR. KESSLER:**  WELL, BECAUSE IF YOU SAY "RIGHTS

7   DESCRIBED," THERE ARE RIGHTS DESCRIBED IN PARAGRAPH 2.  OUR

8   POSITION IS THE MERE FACT THAT RIGHTS ARE DESCRIBED DOESN'T DO

9   IT.

10          IF YOU WANT TO SAY "THE MONIES WERE GENERATED BY

11  DEFENDANTS' LICENSING OF THE PLAINTIFFS' RIGHTS," OR SOMETHING

12  LIKE THAT -- IN OTHER WORDS, IF YOU JUST SAY "OF THE RIGHTS

13  DESCRIBED," THEY'RE GOING TO ARGUE THAT, WELL, YOUR HONOR'S

14  INSTRUCTING THEM THAT BECAUSE A GROUP LICENSE IN PARAGRAPH 2 IS

15  DESCRIBED, DESCRIBED ISN'T THE ISSUE.  THE ISSUE IS WHETHER THE

16  RIGHTS GO TO THE PLAINTIFF, NOT THE FACT THE RIGHTS ARE

17  DESCRIBED IN THE ABSTRACT.

18          IT HAS TO BE PLAINTIFFS' RIGHTS.

19          **MR. LECLAIR:**  THAT'S ABSOLUTELY WRONG, YOUR HONOR.

20  THAT'S THE WHOLE CASE.  THAT'S THEIR THEORY OF THE CASE.

21  THAT'S NOT THE CASE THAT WE ARE ASSERTING TO THE JURY.

22          SO IT IS -- THERE'S NOTHING -- THIS SENTENCE SAYS

23  "GROUP RIGHTS DESCRIBED."  THEY'RE PERFECTLY ENTITLED TO ARGUE

24  THAT THE RIGHTS THAT WE CLAIM ARE NOT DESCRIBED BY THE RPGLA.

25          AND THEY CAN REFER TO PARAGRAPH 5, AND MAKE ALL THE

1  ARGUMENTS THEY WANT.  BUT THEY CAN'T HAVE THE JURY INSTRUCTED

2  THAT THEIR THEORY THE OF THE CASE IS CORRECT.

3          **MR. KESSLER:**  LET ME SUGGEST A NEUTRAL REFORMULATION.

4          **THE COURT:**  I HAVE A REFORMULATION MYSELF.  HERE IT

5  IS.  PARAGRAPH 1 WILL READ THAT "MONIES WERE GENERATED BY

6  DEFENDANTS' LICENSING OF RIGHTS TO WHICH THE RPGLA CLASS WAS

7  ENTITLED."

8          **MR. KESSLER:**  OH, OKAY.  YES.

9          **THE COURT:**  ALL RIGHT.  GREAT.

10          **MR. KESSLER:**  COULD YOU READ IT AGAIN?

11          **THE COURT:**  SURE.  NUMBER 1 WILL READ IN PARAGRAPH 16

12  THAT "MONIES WERE GENERATED BY DEFENDANTS' LICENSING OF RIGHTS

13  TO WHICH THE RPGLA CLASS WAS ENTITLED; AND" --

14          **MR. LECLAIR:**  AS I LISTEN TO IT THE SECOND TIME, YOUR

15  HONOR, THE ONLY QUESTION IS WHETHER -- WHETHER "TO WHICH THE

16  RPGLA CLASS WAS ENTITLED" REFERS TO RIGHTS OR MONEY.

17          AND WE'VE GOT TO BE CLEAR THAT IT'S TALKING ABOUT THE

18  MONEY, BECAUSE WE WEREN'T -- WE OBVIOUSLY -- WE DON'T CLAIM

19  THAT NECESSARILY IT HAS TO DO WITH OUR RIGHTS.  IT HAS TO DO

20  WITH WHETHER WE'RE ENTITLED TO THE MONEY.  SO I JUST WANT TO

21  MAKE SURE WE'RE CLEAR --

22          **THE COURT:**  ALL RIGHT.  SAY "TO WHICH MONEY THE RP

23  CLASS WAS ENTITLED."

24          **MR. KESSLER:**  NOW I DON'T UNDERSTAND HOW IT READS.

25  IT SAYS THAT "MONIES ARE GENERATED" --

1          **THE COURT:**  "BY DEFENDANTS' LICENSING OF RIGHTS TO

2   WHICH MONEY THE RPGLA CLASS WAS ENTITLED."

3          **MR. KESSLER:**  "THE LICENSING OF RIGHTS TO WHICH MONEY

4   THE RPGLA CLASS WAS ENTITLED."

5          **THE COURT:**  I THINK IT'S FINE.  WE'RE GOING TO MOVE

6   ON.

7          **MR. KESSLER:**  OKAY.

8          **THE COURT:**  ALL RIGHT.  NUMBER 2, ANYTHING MORE ON

9   NUMBER 16?

10          **MR. LECLAIR:**  YES, YOUR HONOR.  WE BELIEVE THAT WE

11  ARE ENTITLED TO A SEPARATE, ALTERNATIVE BREACH OF CONTRACT FOR

12  THE FAILURE TO SET UP AN ESCROW ACCOUNT, WHICH IS NOT DESCRIBED

13  IN THIS PARAGRAPH.

14          AND SO WE WOULD REQUEST THAT YOUR HONOR PUT IN "OR

15  THAT THEY FAILED TO ESTABLISH AN ESCROW ACCOUNT IN ACCORDANCE

16  WITH THE RPGLA.

17          **THE COURT:**  NO, I'VE READ THE BRIEFS ON THAT.  THAT'S

18  REJECTED.  THAT'S JUST ANCILLARY TO THE MONEY ITSELF.  IF THERE

19  WAS MONEY DUE AND OWING IT SHOULD HAVE BEEN PAID WHETHER OR NOT

20  THERE WAS AN ESCROW.  AND THE MAIN ARGUMENT IN THIS CASE IS

21  THERE WAS NO MONEY, AND THERE WAS MONEY.

22          AND THE ESCROW IS JUST A -- THAT'S A RED HERRING.  SO

23  THAT'S DENIED.

24          PARAGRAPH 17.

25          **MR. KESSLER:**  YES, YOUR HONOR.  WE HAVE A FEW THINGS

1    ON PARAGRAPH 17.

2              FIRST OF ALL, IN THE INSTRUCTION IN THE SECOND

3    PARAGRAPH, STARTING ON LINE 14, IN WHICH IT SAYS "NO ONE IN

4    THIS CASE IS SUING TO RECOVER ANY OF THAT MONEY, THAT IS NO ONE

5    CONTENDS THAT ANY OF THE AD HOC LICENSING REVENUE ..."

6              FIRST OF ALL, WE WOULD PUT IN, IN ADDITION TO

7    INCLUDING THE REEBOK DEAL, THE HALL OF FAME DEAL, BECAUSE THAT

8    HAS BEEN HEAVILY DISCUSSED, YOUR HONOR KNOWS.

9              THIS IS THE ISSUE ABOUT THE E-MAIL TRAIN, THE ALLEGED

10   BELOW MARKET.  AND THERE'S NO MONEY BEING SOUGHT, AS YOUR HONOR

11   KNOWS, WITH RESPECT TO THAT DEAL.  IT'S AN AD HOC LICENSE DEAL,

12   THE HALL OF FAME LICENSE.

13             AND WE THINK THE JURY NEEDS THAT CLARIFICATION,

14   PARTICULARLY BECAUSE THAT'S THE ONE THAT PLAINTIFFS HAVE

15   DISCUSSED IN MUCH OF THE AD HOCS.

16             I THINK EARLIER IN THE CASE YOUR HONOR INDICATED

17   THAT.  IN FACT, WHEN IT FIRST CAME IN TOLD THE JURY ABOUT THAT,

18   AND I THINK IT'S IMPORTANT THAT THE JURY BE REMINDED OF THAT

19   AGAIN.

20             **THE COURT:**  WHY DON'T I TAKE OUT "EVEN INCLUDING THE

21   REEBOK DEAL," AND THEN IT WILL JUST BE A GENERIC STATEMENT?

22             **MR. KESSLER:**  YOUR HONOR, WE BELIEVE IT'S HELPFUL TO

23   NOTE THE TWO DEALS THAT PLAINTIFFS HAVE SUGGESTED THEY

24   BELIEVE -- ARE AD HOC DEALS THAT THEY BELIEVE THERE'S SOME

25   WRONGDOING IN, IS THE REEBOK DEAL, WHERE MR. ADDERLEY CAME IN

1 AND SAID HE THOUGHT THEY PRODUCED HIS JERSEY, WHICH I KNOW

2 THAT'S WHY YOUR HONOR MENTIONED REEBOK.

3   AND THEN, THE SECOND ONE IS THE HALL OF FAME, WHERE

4 THEY HAVE THIS CONTENTION OF BELOW-MARKET PAYMENT."

5   NOW, YOUR HONOR ALLOWED THAT EVIDENCE GOING GENERALLY

6 TO THE FIDUCIARY DUTY OF GOOD FAITH, AS I UNDERSTAND, YOUR

7 HONOR.  OVER OUR OBJECTION, YOU ALLOWED IT.

8   BUT WE DON'T WANT THE JURY TO CONFUSE TO THINK THAT

9 THERE'S A CLAIM OF DAMAGES OR RELIEF RELATING TO THOSE TWO

10 DEALS IN PARTICULAR, WHICH I THINK YOUR HONOR INDICATED WHEN

11 YOU LET IT IN YOU MADE IT CLEAR TO THE JURY THERE IS NO DAMAGE

12 CLAIM FOR THOSE TWO DEALS; THAT THEY CAN CONSIDER THEM IN THE

13 GENERAL CIRCUMSTANCES ON ISSUES OF GOOD FAITH, BUT THERE IS NO

14 DAMAGE CLAIM.

15   CERTAINLY THERE'S NOTHING BEEN PUT IN ON THOSE DEALS,

16 AND IT RAISES THE WHOLE CONFLICT OF THE CLASS ISSUE.

17   FOR EXAMPLE, ON THE HALL OF FAME DEALS, THAT'S THE

18 ONE WITH ONLY 17 CLASS MEMBERS, YOUR HONOR.

19   **THE COURT:**  ALL RIGHT.  WHAT DO YOU SAY, MR. LECLAIR?

20   **MR. LECLAIR:**  YOUR HONOR, I AM FINE WITH WE'RE TAKING

21 OUT REEBOK, AS YOU SUGGESTED.  I STRONGLY OBJECT TO THEIR

22 ATTEMPT TO PUT SPECIFIC MENTION OF THE HALL OF FAME HERE.

23   THEY, OF COURSE, WANT THE JURY TO BE TOLD TO IGNORE

24 THE EVIDENCE, WHICH IS IMPROPER.  IT IS RELEVANT FOR A

25 DIFFERENT PURPOSE, AND THERE'S NO REASON TO SPECIFICALLY

1   REFERENCE THE HALL OF FAME HERE, EXCEPT FOR THE DEFENDANTS'

2   DESIRE TO TRY TO GET THE JURY --

3           **THE COURT:**  HERE'S THE ANSWER.  I'M TAKING OUT

4   "INCLUDING THE REEBOK DEAL."  I'M NOT GOING TO MENTION THE HALL

5   OF FAME.  THERE IS NO NEED TO DO THAT.  THE GENERAL STATEMENT

6   IS FINE.

7           AND IT -- IT WILL HAVE TO BE BALANCED HERE.  AND I

8   THINK THAT THERE IS A SMALL RISK THAT THE JURY WILL THINK THAT

9   I'M SOMEHOW TELLING THEM TO IGNORE THE REEBOK AND THE HALL OF

10  FAME EVIDENCE, EVEN THOUGH THAT'S NOT WHAT I'M REALLY TELLING

11  THEM.

12          I THINK THE GENERAL STATEMENT "NO ONE IN THIS CASE IS

13  SUING TO RECOVER ANY OF THAT MONEY," AND SO FORTH, IS ADEQUATE.

14          **MR. LECLAIR:**  YOUR HONOR, WE HAVE A SEPARATE

15  OBJECTION TO THE LAST CLAUSE, WHICH IS "OR THAT THE AD HOC

16  AGREEMENTS TRIGGERED ANY RIGHTS UNDER THE RPGLA.  WE ARE SAYING

17  THAT WE WERE ENTITLED TO THE GROUP MONEY WHEN THEY DID THESE

18  DEALS.  SO WE REQUEST THAT YOUR HONOR --

19          **THE COURT:**  WAIT A MINUTE.  NO.  WHAT GROUP MONEY?

20          **MR. LECLAIR:**  THE GROUP MONEY -- IN OTHER WORDS --

21          **THE COURT:**  LOOK.  ARE YOU SAYING THE AD HOC DEALS

22  WERE SOMEHOW GROUP MONEY?

23          **MR. LECLAIR:**  NOT THE AD HOC DEALS.  THAT'S MY POINT,

24  YOUR HONOR.  WHAT WE'RE SAYING IS, AS I WAS TRYING TO EXPLAIN

25  YESTERDAY, WHEN THEY HAVE A GROUP LICENSE AND THEY CHOSE NOT TO

1  INCLUDE THE RETIRED PLAYERS SPECIFICALLY IN THE GROUP LICENSE,

2  OR SO THEY CLAIM, OUR POSITION IS WE'RE ENTITLED TO THE GROUP

3  MONEY WHEN SIX OR MORE ARE USED.

4          AND, THEREFORE, IT IS TRUE THAT WE'RE ENTITLED NOT TO

5  THE AD HOC MONEY.  WE'RE NOT CLAIMING THE AD HOC MONEY.  WE ARE

6  CLAIMING WE ARE ENTITLED TO THE GROUP MONEY.  WE WORRY THAT

7  THIS --

8          **THE COURT:**  BE SPECIFIC.  NOW, WE'VE HEARD ALL THE

9  EVIDENCE.  OTHER THAN THE GROSS LICENSING REVENUE, WHAT ARE YOU

10 TALKING ABOUT?

11         **MR. LECLAIR:**  THAT'S ALL I'M TALKING ABOUT.  THAT'S

12 ALL I'M TALKING ABOUT.  BUT WHEN YOUR HONOR SAYS --

13         **THE COURT:**  WE GET INTO THAT MANY TIMES IN HERE ABOUT

14 THE GROSS LICENSING REVENUE.

15         **MR. LECLAIR:**  I UNDERSTAND, YOUR HONOR.  BUT WHEN YOU

16 SAY "OR THAT THE AD HOC AGREEMENTS TRIGGERED ANY RIGHTS UNDER

17 THE RPGLA THAT'S CONTRARY TO -- OUR THEORY OF THE CASE IS IT

18 TRIGGERED OUR RIGHT TO THE GROUP MONEY, WHICH WE ARE ENTITLED

19 TO CLAIM.

20         **THE COURT:**  HOW COULD THE AD HOC AGREEMENTS TRIGGER

21 ANYTHING BY WAY OF GROUP MONEY?

22         **MR. LECLAIR:**  BECAUSE IT'S USE OF SIX OR -- IF THEIR

23 THEORY IS CORRECT, THEY CLAIMED IT HAD TO BE RETIRED PLAYER

24 GROUP RIGHTS, YOUR HONOR.

25         IF SIX OR MORE RETIRED PLAYERS ARE PART OF THE

1   PRODUCT, WE CLAIM WE'RE ENTITLED TO GET THE GROUP MONEY.

2   THAT'S -- THAT'S -- WE SAY WE'RE ENTITLED TO IT WHETHER IT'S

3   ACTIVE OR RETIRED.

4          BUT WE ALSO SAY IF THEY'RE RIGHT THAT IT TAKES SIX

5   RETIRED, WE HAVE SIX RETIRED.  AND, THEREFORE, WE'RE ENTITLED

6   TO SHARE IN THE GROUP MONEY.

7          THAT'S WHY THIS INSTRUCTION IS --

8          **THE COURT:**  LET'S -- I THOUGHT YOU WERE ONLY TRYING

9   TO GET THE ACTIVE -- THE MONEY THAT WENT TO THE ACTIVE.  NOW,

10  YOU'RE TRYING TO REDISTRIBUTE THE MONEY TO --

11         **MR. LECLAIR:**  NO.

12         **THE COURT:**  -- FROM THE RETIRED PLAYERS.

13         **MR. LECLAIR:**  NO, I'M NOT, YOUR HONOR.  THEY KEEP

14  SAYING THAT.  THAT'S COMPLETELY WRONG.

15         **THE COURT:**  GIVE ME A VERY SPECIFIC EXAMPLE THAT I

16  CAN UNDERSTAND FROM THE ACTUAL EVIDENCE IN THE CASE, WHERE --

17  WHERE -- TO MAKE YOUR POINT.

18         **MR. LECLAIR:**  ALL RIGHT.  LET'S TAKE UPPER DECK.

19  UPPER DECK, YOUR HONOR, SIGNED A GROUP LICENSING AGREEMENT WITH

20  THE NFLPA.  AND THEY PAID SIGNIFICANT DOLLARS, MILLIONS OF

21  DOLLARS FOR THE GROUP RIGHTS.

22         **THE COURT:**  FOR WHAT, FOR RETIRED OR --

23         **MR. LECLAIR:**  WELL, THAT'S ONE OF THE ISSUES IN THE

24  CASE, YOUR HONOR.  BUT PART OF THE ISSUE IS:  WAS IT FOR

25  ACTIVES?  WAS IT FOR BOTH?

1          BUT LET'S ASSUME THAT THEY'RE CORRECT AND THEY

2   CONVINCE THE JURY THAT -- THAT THE ACTUAL LICENSE AGREEMENT

3   WHICH THEY STRUCTURED LICENSED ONLY THE ACTIVE PLAYERS.

4          OUR CONTENTION IS THAT IF -- WHICH THE EVIDENCE

5   CLEARLY SUPPORTS, THAT THERE WERE HUNDREDS OF RETIRED PLAYERS

6   WHO SIGNED AD HOC AGREEMENTS.

7          OUR CONTENTION IS THAT WE ARE ENTITLED TO SHARE IN

8   THE GROUP MONEY BECAUSE THERE ARE RETIRED PLAYER GROUP RIGHTS,

9   AND YOU HAVE TO LOOK AT IT COLLECTIVELY.  AND WE'RE ENTITLED TO

10  SHARE IN THE GROUP MONEY.  WE'RE NOT ASKING --

11          **THE COURT:**  SO YOU'RE SAYING THAT IF -- JUST A

12  MINUTE. IF THERE WAS A DEAL WITH, LET'S SAY, TEN PLAYERS ALL

13  RETIRED -- LET'S TAKE THIS ONE EXAMPLE -- ONE OF WHOM WAS A

14  CLASS MEMBER, AND NINE OF WHOM WERE JOE NAMATHS AND SO FORTH.

15          **MR. LECLAIR:**  ACTUALLY, I'LL TAKE SIX OF THE CLASS,

16  YOUR HONOR.  THAT'S OKAY, TOO.  EITHER WAY IS OKAY.

17          **THE COURT:**  ALL RIGHT.  LET'S SAY THEY ARE ALL CLASS

18  MEMBERS.  SO NOW YOU'RE DOING EXACTLY WHAT YOU TOLD THE JURY

19  YOU WERE NOT GOING TO DO.  YOU ARE TRYING TO REDISTRIBUTE THE

20  MONEY THAT WENT TO MR. ADDERLEY AND THE OTHERS UNDER AD HOCS.

21          **MR. LECLAIR:**  NO, I'M NOT, YOUR HONOR.

22          **THE COURT:**  TAKE THAT MONEY AWAY FROM THEM.

23          **MR. LECLAIR:**  I'M NOT.

24          **THE COURT:**  WHAT ARE YOU TRYING TO DO?

25          **MR. LECLAIR:**  I'M TRYING TO CLAIM -- THERE'S A GROUP

1  LICENSE AGREEMENT THAT PAYS $6 MILLION TO THE NFLPA OR PI OR

2  FROM TOPPS OR UPPER DECK, OKAY?

3       THERE ARE SEPARATE AGREEMENTS WITH ACTIVE AND RETIRED

4  PLAYERS THAT ARE AD HOCS.  ALL WE'RE SAYING IS, THE FACT THAT

5  THERE ARE AT LEAST SIX RETIRED PLAYERS USED BY TOPPS IN ITS

6  PRODUCTS MEANS WE'RE ENTITLED TO SHARE IN THE GROUP MONEY, NOT

7  THE AD HOC MONEY.  WE'RE NOT TRYING TO REDISTRIBUTE ANY AD HOC

8  MONEY.

9       **THE COURT:**  WHAT GROUP MONEY IS THERE APART FROM THE

10  AD HOC?

11       **MR. LECLAIR:**  THERE'S MILLIONS OF DOLLARS IN A

12  LICENSE AGREEMENT PAID FOR GROUP RIGHTS.  AND THAT'S WHAT WE'RE

13  TRYING TO CLAIM.

14       **THE COURT:**  I MUST SAY, DO THIS FOR ME.  GO GET THE

15  EASEL.  PUT A CLEAN SHEET OF PAPER THERE, AND DRAW ME A

16  DIAGRAM.  I MUST SAY, MR. LECLAIR, IT SOUNDS LIKE SOME KIND OF

17  CIRCULAR CHASING-YOUR-TAIL ARGUMENT.  SOUNDS LIKE YOU'RE GOING

18  BACK TO YOUR WORD TO THE JURY THAT YOU WERE NOT GOING AFTER THE

19  AD HOC MONEY.

20       **MR. LECLAIR:**  YOUR HONOR, NOT AT ALL.

21       **THE COURT:**  DRAW ME A DIAGRAM AND ILLUSTRATE

22  SOMETHING THAT'S IN EVIDENCE THAT WILL NOT BE CIRCULAR.

23       **MR. FEHER:**  CAN YOU TURN IT SO WE CAN SEE IT?

24       **MR. LECLAIR:**  OKAY.  YOUR HONOR, LET'S SAY THAT UPPER

25  DECK -- DOES SOMEBODY HAVE THE DATE AND AMOUNT OF THE UPPER

1  DECK AGREEMENT?  THAT WOULD BE HELPFUL.

2           UPPER DECK SIGNS A GROUP LICENSE.

3        **THE COURT:**  TELL ME HOW IT WAS ACTUALLY -- WHAT IS

4  THE EXHIBIT NUMBER?

5        **MR. LECLAIR:**  ALL RIGHT.

6        **THE COURT:**  HOW WAS IT ACTUALLY TREATED BY THE

7  PARTIES?

8        **MR. LECLAIR:**  1020, EXHIBIT 1020.  THEY'LL GIVE ME

9  THE AMOUNT IN A MOMENT, BUT IT'S A SIGNIFICANT AMOUNT OF MONEY.

10          DEFENDANTS CLAIM --

11       **THE COURT:**  JUST TELL ME HOW -- WHAT THE EVIDENCE

12 SHOWS THE WAY THE MONEY WAS ACTUALLY TREATED HERE.

13       **MR. LECLAIR:**  OKAY.

14       **THE COURT:**  AND THEN, I'LL LET YOU GET INTO WHAT THE

15 CONTENTIONS ARE.

16       **MR. LECLAIR:**  OKAY.

17       **THE COURT:**  JUST REMIND ME WHAT THE ACTUAL EVIDENCE

18 IS FIRST.

19       **MR. LECLAIR:**  ALL RIGHT.  THAT MONEY -- I DON'T THINK

20 IT MATTERS WHAT IT IS.  LET'S ASSUME IT'S $3 MILLION.  THAT

21 MONEY WENT INTO THE GLR POOL.  AND FROM THERE, 37 PERCENT WENT

22 TO THE PLAYERS, TO THE ACTIVE PLAYERS.

23          WE CLAIM WE SHOULD HAVE GOTTEN OUR SHARE OF THIS

24 MONEY.  AND WE SAY WE GET IT BECAUSE IT DOESN'T MATTER WHETHER

25 IT'S ACTIVES OR RETIREDS.  THAT'S PART OF OUR CONTENTION TO THE

1 JURY.

2          BUT AN ALTERNATIVE IS THAT THERE IS A GROUP LICENSE

3 WHICH INVOLVES -- BECAUSE THERE'S HUNDREDS -- IT DOESN'T MATTER

4 WHAT THE NUMBER IS.  LET'S SAY THERE ARE 300 RETIRED PLAYERS

5 WHO SIGNED SEPARATE AD HOC DEALS WITH UPPER DECK.

6          OUR CONTENTION IS THERE'S PROBABLY 500 ACTIVES WHO

7 SIGNED SEPARATE AD HOC DEALS WITH UPPER DECK.  THEY ALL GOT

8 PAID SEPARATE MONEY.  WE ARE NOT SEEKING ANY OF THAT MONEY.  SO

9 THIS MONEY RIGHT HERE (INDICATING) WE'RE NOT AFTER.

10          WHAT WE ARE SAYING IS THERE'S A GROUP LICENSE OF

11 RETIRED PLAYER GROUP RIGHTS, BECAUSE YOU'VE GOT ACTIVES AND

12 RETIREDS THAT ARE ALL BEING LICENSED.  AND WE'RE ENTITLED TO

13 OUR SHARE OF THE GROUP MONEY.

14          **THE COURT:**  BUT LOOKING AT YOUR DIAGRAM AND THE MONEY

15 THAT YOU INDICATE THAT YOU'RE SEEKING IS THE MONEY THAT WENT

16 INTO THE GLR POOL.  AND I THINK THESE INSTRUCTIONS MAKE CLEAR

17 THAT THAT IS WHAT YOU'RE SEEKING.

18          **MR. LECLAIR:**  I UNDERSTAND, YOUR HONOR, BUT --

19          **THE COURT:**  WHY ARE YOU COMPLAINING ABOUT THE

20 INSTRUCTIONS?

21          **MR. LECLAIR:**  BECAUSE THE INSTRUCTION SAYS THAT THESE

22 DON'T -- DON'T CREATE ANY RIGHTS.  AND THAT'S WRONG.  OUR

23 CONTENTION IS IT DOES CREATE A RIGHT.  NOT FOR THIS MONEY, BUT

24 FOR THIS MONEY (INDICATING).  THAT'S WHAT WE'RE CLAIMING IN THE

25 CASE.

1          **THE COURT:**  SO THE NINTH CIRCUIT WILL UNDERSTAND WHAT

2     YOU MEANT BY "THIS" AND "THIS" --

3          **MR. LECLAIR:**  I APOLOGIZE, YOUR HONOR.

4          **THE COURT:**  NO, I'LL JUST SAY IT.  YOU HAVE -- YOU

5     HAVE ONE CIRCLE THERE WITH THE WORDS -- YOU'RE INDICATING THE

6     AD HOC DEALS.  AND THEN, YOU'VE GOT ANOTHER CIRCLE THERE THAT

7     IS MONEY THAT WENT INTO THE GLR POOL.

8          AND YOU'RE SAYING THAT EVEN THOUGH YOU'RE NOT ASKING

9     FOR MONEY FOR THE AD HOCS, YOU'RE SAYING THAT SOMEHOW THE

10    AD HOCS CREATED GROUP RIGHTS ON THE 3 MILLION THAT WENT INTO

11    THE GLR POOL.

12         MR. LECLAIR, THAT IS INCOMPREHENSIBLE TO ME.  I -- I

13    GOT TO GO SEE A DOCTOR OR SOMETHING.  I CANNOT UNDERSTAND WHAT

14    YOU'RE SAYING.  IT'S INCOMPREHENSIBLE.

15         HOW COULD THAT POSSIBLY BE THAT YOU COULD SAY YOU ARE

16    NOT ASKING FOR THE AD HOC MONEY, YOU DON'T WANT TO REDISTRIBUTE

17    THAT, BUT SOMEHOW THE VERY EXISTENCE OF THOSE AD HOC DEALS

18    CREATED RIGHTS FOR YOUR CLIENTS IN SOME OTHER TRANSACTION?

19         WHY WOULDN'T THEY JUST BE BACKGROUND?  I DON'T GET

20    IT.

21         **MR. LECLAIR:**  THE THEORY IS A SIMPLE TRIGGERING

22    THEORY, YOUR HONOR, BECAUSE THE RPGLA SAYS THAT WE'RE ENTITLED

23    TO SHARE IN GROUP LICENSING MONEY.  THAT'S OUR THEORY OF THE

24    CASE, GROUP LICENSING MONEY.

25         **THE COURT:**  I'VE HEARD YOU OUT.  THIS IS DENIED.

1   THIS IS DENIED.

2           **MR. KESSLER:** YOUR HONOR, WE --

3           **THE COURT:** AT SOME POINT IT'S GOT TO COME TO AN END.

4       ALL RIGHT.  WHAT --

5           **MR. KESSLER:** WE JUST HAVE ONE WORD SUGGESTION, YOUR

6   HONOR, WHICH IS THAT ON LINE 17, THE SAME LANGUAGE DISCUSSED,

7   INSTEAD OF SAYING THAT "THE AD HOC AGREEMENTS TRIGGERED," WE

8   WOULD SUGGEST THE WORD "VIOLATED."

9           WE THINK THAT'S CLEARER TO THE JURY.  IN OTHER WORDS,

10  THERE'S NO CLAIM THAT THE AD HOC AGREEMENTS VIOLATED ANY RIGHTS

11  UNDER THE RPGLA.  AND I THINK THAT WOULD BE MUCH CLEARER.

12          **THE COURT:** ANY OBJECTION TO THAT?  I DON'T --

13          **MR. GARZA:** WE HAVE A RESPONSE TO THAT.  OUR ONE

14  RESPONSE IS --

15          **THE COURT:** LOUDER, PLEASE.

16          **MR. GARZA:** OUR ONE RESPONSE IS, IF YOU DO CHOOSE TO

17  INCLUDE THE LANGUAGE ON AD HOC AGREEMENTS NOT CREATING ANY

18  RIGHTS FOR DEFENDANTS UNDER -- OR PLAINTIFFS UNDER THE RPGLA,

19  THAT YOU SHOULD ALSO INCLUDE AN INSTRUCTION THAT THE FACT THAT

20  DEFENDANTS HAVE PAID MONIES --

21          **THE COURT:** ALL RIGHT.  I'M LEAVING IT JUST AS IT IS.

22          **MR. GARZA:** OKAY.

23          **THE COURT:** ANYTHING MORE?

24          **MR. KESSLER:** ONE MORE, YOUR HONOR, WHICH IS IN LINE

25  27, IT SAYS:  "THIS IS THE REVENUE THAT WENT INTO THE GLR GROSS

1 LICENSING REVENUE POOL TREATED BY DEFENDANTS AS ACTIVE PLAYER

2 MONEY."

3       I THINK WHAT YOU SHOULD SAY: "WHICH DEFENDANTS CLAIM

4 IS ACTIVE PLAYER MONEY," OR WHICH -- YOU CAN MAKE A BALANCE.

5 BUT "TREATED BY" MAKES IT SOUND LIKE WE SHOULDN'T HAVE TREATED

6 IT THAT WAY.

7       **THE COURT:**  THAT'S --

8       **MR. KESSLER:**  27.

9       **THE COURT:**  I GOT IT.

10       **MR. KESSLER:**  OKAY.

11       **THE COURT:**  "WHICH DEFENDANTS CLAIM" --

12       **MR. KESSLER:**  RIGHT.

13       **THE COURT:**  -- "WAS ACTIVE PLAYER MONEY."

14       **MR. KESSLER:**  THAT'S FINE, YOUR HONOR.

15       **THE COURT:**  ALL RIGHT.

16       **MR. KESSLER:**  AND WE WOULD JUST PRESERVE OUR

17 OBJECTION TO 17, SIMPLY FOR OMITTING THE REFERENCE TO "REEBOK"

18 OR "HALL OF FAME."  OTHERWISE, WE HAVE NO OBJECTION.

19       **THE COURT:**  THAT WOULD BE TOO ARGUMENTATIVE, I THINK,

20 SO I'M LEAVING IT IN A MORE GENERIC STATEMENT.

21       PARAGRAPH 18.

22       **MR. LECLAIR:**  NO OBJECTION.

23       **MR. KESSLER:**  WE DO, YOUR HONOR.  JUST ONE SECOND.

24       IN LINE -- IN PARAGRAPH 18, LINE 9, IT SAYS: "TO THIS

25 DEFENDANTS RESPOND THAT LITTLE OR NO MONEY WAS EVER GENERATED

1   DUE WITHIN THE MEANING OF THE RP" -- I'M SORRY, YOUR HONOR.

2   I'M HAVING TROUBLE FINDING IT.

3           MY DRAFT IS NOT CORRESPONDING WITH THE INSTRUCTION,

4   SO --

5           **THE COURT:**  COME BACK --

6           **MR. KESSLER:**  I HAVE IT NOW.  I'LL COME BACK TO THIS

7   IN A SECOND, IF I CAN FIND IT.

8           **THE COURT:**  ANYTHING MORE ON 18?  ANYTHING MORE ON

9   18?

10          **MR. LECLAIR:**  NO OBJECTION.

11          **THE COURT:**  NUMBER 19.

12          **MR. KESSLER:**  NO OBJECTION TO 19, YOUR HONOR.

13          **MR. LECLAIR:**  NO OBJECTION.

14          **THE COURT:**  NUMBER 20?

15          **MR. LECLAIR:**  NO OBJECTION.

16          **THE COURT:**  NUMBER 20?

17          **MR. KESSLER:**  NO OBJECTION.  YES, 20 WE HAVE

18  SOMETHING, YOUR HONOR.

19          WE HAVE TWO THINGS IT, YOUR HONOR.  FIRST,

20  INSTRUCTION 20, AS CURRENTLY DRAFTED, SAYS THAT "THE JURY MAY,

21  MAY ONLY CONSIDER THE STATEMENTS OF THE PARTIES ABOUT THEIR

22  UNDERSTANDINGS OF THE CONTRACT MADE AT THE TIME THE CONTRACT

23  WAS ENTERED INTO."

24          WE BELIEVE THERE ARE TWO PROBLEMS WITH THIS.  FIRST

25  OF ALL, YOU MAY CONSIDER -- WHERE IS THIS?  THIS IS LINE 12:

1    "THE STATEMENTS OF THE PARTIES SHOULD BE ABOUT THEIR

2    UNDERSTANDING OF THE CONTRACT AT THE TIME THE CONTRACT WAS

3    ENTERED INTO."

4            IN OTHER WORDS, THEY DON'T HAVE TO BE MADE AT THE

5    TIME.  YOUR HONOR HAS ALREADY RULED THAT IT HAD TO BE THEIR

6    UNDERSTANDING AT THE TIME, BUT THEY CAN MAKE THE STATEMENTS NOW

7    IF THEY REMEMBER WHAT THEIR UNDERSTANDING WAS.

8            BY PUTTING IN THE WORD "MADE" IT MAKES IT SEEM LIKE

9    THEY HAD TO DO IT THEN.

10           **THE COURT:**  LATER ON, I DO MAKE CLEAR THAT STATEMENTS

11   THAT WERE MADE IN THE COURSE OF THE NEGOTIATIONS ARE ENTITLED

12   TO WAY MORE WEIGHT THAN CONVENIENT STATEMENTS FRIENDS OF THE

13   PARTIES MAKE WHEN THEY COME INTO THE COURT.

14           **MR. KESSLER:**  OH, I HAVE NO PROBLEM, BUT THIS MAKES

15   IT SOUND LIKE --

16           **THE COURT:**  ALL RIGHT.

17           **MR. KESSLER:**  -- THEY -- SO JUST STRIKE "MADE."

18           **THE COURT:**  ALL RIGHT.  ANY OBJECTION TO THAT?

19           **MS. NAYLOR:**  YES, YOUR HONOR.  THE STANDARD JURY

20   INSTRUCTIONS FOR D.C. USES THE WORD "MAY."  HE WANTS TO REWRITE

21   THOSE TO BE "SHOULD."HE'S TRYING TO ALTER THE WEIGHT OF THE

22   EVIDENCE.

23           **MR. KESSLER:**  THAT'S NOT THE ARGUMENT I'M MAKING NOW,

24   YOUR HONOR.  THE ARGUMENT I'M MAKING NOW IS TO STRIKE THE WORD

25   "MADE," M-A-D-E, IN LINE 12.

1          **THE COURT:**  LOOK.  TO BE CONSISTENT WITH THE REST OF

2   WHAT I HAVE SAID IN THESE INSTRUCTIONS, I THINK I'M GOING TO

3   TAKE THE WORD "MADE" OUT, BUT IT WILL STILL SAY "AT THE TIME

4   THE CONTRACT WAS ENTERED INTO."

5          **MR. KESSLER:**  I'M VERY FINE WITH THAT, YOUR HONOR.

6   AND THEN, THE POINT THAT WAS BEING RAISED THAT I DID NOT RAISE

7   YET, BUT WILL RAISE NOW, IS I THINK ON LINE 9 IT SHOULD SAY

8   "YOU SHOULD CONSIDER" INSTEAD OF "YOU MAY CONSIDER," BECAUSE I

9   THINK IT'S PRETTY CLEAR UNDER D.C. LAW THESE ARE ALL THINGS

10  THAT THEY SHOULD CONSIDER.

11         **MS. NAYLOR:**  YOUR HONOR, SORRY I MISHEARD WHAT HE

12  SAID THE FIRST TIME.  BUT THAT WAS MY POINT.  THE D.C.

13  INSTRUCTIONS SAY "MAY," NOT "SHOULD."  HE'S TRYING TO ALTER --

14         **THE COURT:**  I'M JUST GOING TO LEAVE IT AS IT IS.

15         **MS. NAYLOR:**  THANK YOU.

16         **THE COURT:**  NUMBER 21.

17         **MR. KESSLER:**  YOUR HONOR, COULD WE GO BACK TO 18?  I

18  APOLOGIZE.  ON 18, LINE 14, THIS, AGAIN, IS THE SAME AS BEFORE.

19         "THE PLAINTIFFS CLASS SEEKS TO SHARE IN GROUP

20  LICENSING REVENUES," THAT INSTEAD OF "DEFENDANTS TREATED," THAT

21  "DEFENDANTS CLAIM WAS DUE."

22         **THE COURT:**  ALL RIGHT.

23         **MR. KESSLER:**  "CLAIM WAS DUE."  SAME CHANGE.

24  THANK YOU, YOUR HONOR.

25         **THE COURT:**  OKAY.  NUMBER 21.

1          **MR. LECLAIR:**  NO OBJECTION, YOUR HONOR.

2          **THE COURT:**  21.

3          **MR. KESSLER:**  NO OBJECTION, YOUR HONOR.

4          **THE COURT:**  22.

5          **MR. LECLAIR:**  NO OBJECTION.

6          **MR. KESSLER:**  NO OBJECTION, YOUR HONOR.

7          **THE COURT:**  23.

8          **MR. LECLAIR:**  NO OBJECTION.

9          **MR. KESSLER:**  NO OBJECTION, YOUR HONOR.

10          **THE COURT:**  24.

11          **MR. LECLAIR:**  NO OBJECTION.

12          **MR. KESSLER:**  NO OBJECTION, YOUR HONOR.

13          **THE COURT:**  25.

14          **MR. LECLAIR:**  NO OBJECTION.

15          **MR. KESSLER:**  NO OBJECTION, YOUR HONOR.

16          **THE COURT:**  26.

17          **MR. LECLAIR:**  NO OBJECTION.

18          **MR. KESSLER:**  NO OBJECTION, YOUR HONOR.

19          **THE COURT:**  27.

20          **MR. KESSLER:**  NO OBJECTION.

21          **MR. LECLAIR:**  WE HAVE --

22          **THE COURT:**  27.  LET'S PAUSE ON THAT.

23          **MS. NAYLOR:**  YOUR HONOR, IN D.C. LAW WE HAVE CITED

24 SOME CASES, THE ACTUAL WORDINGS THAT THE AMBIGUITIES WILL BE

25 CONSTRUED STRONGLY AGAINST THE DRAFTER.  AND WE WOULD ASK THE

1    COURT TO ADOPT THE CASE LAW FROM THAT CIRCUIT.

2         ADDITIONALLY, THE DEFENDANTS HAVE REQUESTED NOT ONLY

3    THAT THE PROPER WORDING NOT BE USED, BUT THAT IT BE FURTHER

4    WATERED DOWN OR MITIGATED BY ADDING A JURY INSTRUCTION OF

5    REASONABLENESS, WITH NO SUPPORT FROM D.C. LAW.

6         **MR. KESSLER:** YES.  AND, YOUR HONOR, WE BELIEVE THAT

7    EITHER NO INSTRUCTION SHOULD BE GIVEN ON THIS, BECAUSE IN D.C.

8    STANDARD INSTRUCTIONS THERE IS A LOT OF CASE LAW.  THEY DON'T

9    GIVE IT AS A STANDARD INSTRUCTION, BECAUSE THE CASE LAW SAYS

10   THIS IS A DISFAVORED RULE OF CONSTRUCTION.

11        IT'S ONLY USED GENERALLY BY THE COURT, NOT THE JURY,

12   IF ALL OTHER FACTS FAIL WHEN THE COURT IS LOOKING AT ISSUES.

13        BUT IF THERE IS GOING TO BE AN INSTRUCTION, WE

14   BELIEVE 27 IS THE PROPER ONE.  WE WOULD OBJECT TO THIS

15   INSTRUCTION UNDER D.C. LAW, BECAUSE WE DON'T THINK THERE SHOULD

16   BE AN INSTRUCTION UNDER THIS.

17        **MS. NAYLOR:** YOUR HONOR, EVEN THE CASES THEY CITE

18   SUPPORT THE INSTRUCTION.  IF THERE REMAINS AN AMBIGUITY AFTER

19   THE JURY HAS LOOKED AT CERTAIN FACTORS, THEN THE CONTRACT

20   SHOULD BE CONSTRUED STRONGLY AGAINST THE DRAFTER.

21        **THE COURT:** I'M NOT GOING TO PUT IN THE WORD

22   "STRONGLY."  I'M GOING TO LEAVE IT JUST AS IT IS.  I THINK IT'S

23   A FAIR STATEMENT UNDER THE LAW THAT APPLIES.

24        NUMBER 28.

25        **MR. LECLAIR:** YOUR HONOR, WE HAVE ONE OBJECTION TO

28, WHICH IS ON LINE 22.  IN LINES 19 THROUGH 21 OR 20 AND 21,
YOUR HONOR HAS ALREADY STATED THAT "PLAINTIFFS AND DEFENDANTS
AGREE IN THIS CASE THAT THIS PASSAGE REFERRED ONLY TO ACTIVE
NFL PLAYERS."

WE, THEREFORE, THINK IT'S IMPROPER TO ADD THIS
SENTENCE ABOUT THE ELECTRONIC ARTS WITNESS.  IT DRAWS UNDUE
ATTENTION TO THAT TESTIMONY.  IT'S UNNECESSARY, BECAUSE YOU'VE
ALREADY TOLD THE JURY THAT THE PLAINTIFF AND DEFENDANTS AGREE.

**THE COURT:**  WELL, THE REASON -- NO, I THOUGHT ABOUT
THAT.  HERE'S THE CURIOUS PROBLEM THAT, AS A FOOTNOTE TO THE
NINTH CIRCUIT, IF THEY EVER READ THIS TRANSCRIPT.

WE HAVE A SITUATION WHERE THE ACTUAL PARTIES TO THE
CONTRACT ARE -- DO NOT, N-O-T, NOT INCLUDE PLAINTIFF OR
PLAINTIFFS.  RATHER, IT'S BETWEEN THE DEFENDANTS AND SOMEBODY
ELSE, A THIRD PARTY.

NOW, ORDINARILY YOU WOULD THINK THE THIRD PARTIES --
SORRY, YEAH, THE THIRD PARTIES, AND IN THIS CASE
ELECTRONIC ARTS AND THE DEFENDANTS ARE THE CONTRACTING PARTIES,
AND IT'S THEIR INTENT THAT MAKES A DIFFERENCE, AND THAT THE
PLAINTIFF IS REALLY JUST A BUTINSKI HERE, A STRANGER.  THEY ARE
NOT A THIRD-PARTY BENEFICIARY TO THIS CONTRACT, AND YOU'VE
NEVER CONTENDED THAT THEY ARE.

SO IF I JUST SAY "PLAINTIFFS AND DEFENDANTS AGREE IN
THIS CASE," IT SOMEHOW IMPLIES TO THE JURY THAT THE DEFENDANTS'
AND PLAINTIFFS' INTENT IS WHAT MATTERS.  AND, REALLY, WHAT

1  MATTERS IS ELECTRONIC ARTS AND DEFENDANTS, THEIR INTENT.

2  BUT SINCE WE ARE IN LITIGATION AND THE PLAINTIFFS ARE

3  CONTENDING THAT THAT AGREEMENT CREATED A POOL OF MONEY TO WHICH

4  PLAINTIFFS WERE ENTITLED UNDER A DIFFERENT AGREEMENT, I'M

5  FORCED TO EXPLAIN THAT THE PLAINTIFFS AGREED, DEFENDANTS AGREED

6  AND ELECTRONIC ARTS AGREED.

7  I'M GOING TO LEAVE THIS ONE JUST AS IT IS.  I HAVE

8  STRUGGLED WITH TRYING TO SORT OUT IN THESE INSTRUCTIONS TO THE

9  JURY SOME OF THOSE THINGS THAT ARE ROCK SOLID, NOT DISPUTED IN

10  THIS CASE, AND THAT THEY SHOULD KEEP THOSE AS ANCHORS IN AN

11  EVER-CHANGING CONSTELLATION OF ARGUMENTS, CLAIMS AND DEFENSES

12  IN THIS CASE.

13  AND I FEEL THAT THIS WILL HELP THE JURY FIND SOME

14  ANCHOR TO -- SO THAT'S GOING TO STAY JUST AS IT IS.

15  YES, MR. KESSLER.

16  **MR. KESSLER:**  YOUR HONOR, JUST FOR THE RECORD, TO

17  RESERVE FIRST MY OBJECTION, YOUR HONOR KNOWS WE HAVE PROPOSED

18  SEVERAL TIMES AN INSTRUCTION THAT WOULD ACTUALLY INSTRUCT THE

19  JURY THAT IF THEY FIND THAT THE UNDERSTANDING IS SHARED BY THE

20  PARTIES TO THE CONTRACT THAT THAT'S DISPOSITIVE.

21  WE WOULD REQUEST SUCH AN INSTRUCTION.  IF YOUR HONOR

22  DENIES IT, WE WOULD PRESERVE OUR OBJECTION TO THAT.

23  **THE COURT:**  WELL, THAT'S THE NEXT -- WELL --

24  **MR. KESSLER:**  IT WOULD BE AT THIS POINT, YOUR HONOR,

25  SOMEWHERE.

1          **THE COURT:**  THIS IS ONLY ON THAT ONE SENTENCE.

2          NOW, WHEN YOU GET TO THE NEXT SENTENCE, I DO TELL THE

3   JURY HERE THAT THE -- THE ACTUAL PARTIES TO THE CONTRACT --

4   WELL, I SAY "ALTHOUGH THE PARTIES TO THIS LITIGATION DISAGREE

5   OVER THE MEANING OF THESE TERMS, IF YOU FIND THAT THE ACTUAL

6   PARTIES TO THE ELECTRONIC ARTS CONTRACT ITSELF HAVE

7   CONSISTENTLY AND MUTUALLY UNDERSTOOD AND CARRIED OUT THE TERMS

8   IN QUESTION AS IF THEY MEANT ONE THING AND NOT ANOTHER, THEN AS

9   I HAVE SAID EARLIER YOU MAY GIVE" -- I'LL SAY "CONSIDERABLE

10  WEIGHT TO THAT."

11         **MR. KESSLER:**  WE UNDERSTAND, YOUR HONOR.

12         **THE COURT:**  I THINK THAT'S AS STRONG A STATEMENT AS I

13  OUGHT TO MAKE IN THESE CIRCUMSTANCES.

14         **MR. KESSLER:**  WE WILL PRESERVE OUR OBJECTION.  WE

15  WOULD REQUEST AN INSTRUCTION IT BE DISPOSITIVE IF THE JURY

16  FINDS THAT THEY HAVE A COMMON UNDERSTANDING.

17         BUT WE UNDERSTAND THE COURT HAS NOW REJECTED THAT.

18         **THE COURT:**  ALL RIGHT.

19         **MR. KESSLER:**  ON PAGE 14, ON THE SAME INSTRUCTION,

20  LINE 3, IN THE DESCRIPTION OF THE RECITAL WE BELIEVE THAT

21  THE -- THE SENTENCE IS OKAY, EXCEPT FOR THE REFERENCE TO

22  "PROMISES OR GRANTS."

23         THE REASON FOR THAT IS YOUR HONOR KNOWS THE KEY

24  CLAUSE IS THE GRANT CLAUSE WHICH FOLLOWS IT.  AND THIS SEEMS TO

25  SUGGEST THE COURT'S INDICATING THERE'S A LINKAGE BETWEEN THIS

1  RECITAL AND THE GRANT CLAUSE.

2         WE CAN MAKE IT VERY NEUTRAL TO SAY "TO SET THE STAGE

3  FOR THE TERMS THAT FOLLOW IN THE DOCUMENT."  I THINK THAT'S

4  VERY NEUTRAL.  THEN, THERE IS NO LINKAGE BETWEEN ANY PARTICULAR

5  TERMS.

6         **THE COURT:**  ALL RIGHT.  "SET THE STAGE FOR THE TERMS

7  THAT FOLLOW."

8         **MR. KESSLER:**  AND THE SAME ON LINE 4, SO AS TO PLACE

9  THE TERMS IN THE CONTEXT OR TO PLACE THE CONTRACTUAL TERMS IN

10 THE CONTEXT IN LINE 4, INSTEAD OF "GRANTS AND PROMISES."

11        **THE COURT:**  "ACTUAL TERMS."  I'M FINE WITH THAT.

12        **MR. KESSLER:**  THANK YOU, YOUR HONOR.

13        **MR. LECLAIR:**  YOUR HONOR, WE PREFER YOUR LANGUAGE.

14 WE THINK IT'S CORRECT, BECAUSE THAT'S EXACTLY WHAT RECITALS DO.

15 AND WE THINK THAT THAT'S THE BETTER LANGUAGE.

16        **THE COURT:**  WELL, I'LL TELL YOU WHY I -- ACTUALLY, I

17 WAS NOT SO HAPPY WITH THE WAY I HAD WORDED IT.  AND I THINK

18 MR. KESSLER'S SUGGESTION IS A BETTER ONE, BECAUSE THIS IS A

19 CONVEYANCE DOCUMENT AND NOT A PROMISE DOCUMENT, THOUGH IT DOES

20 HAVE THE -- IT PRINCIPALLY -- PRINCIPALLY, A CONVEYANCE

21 DOCUMENT.  BUT THEN THERE IS A PROMISE TO SET UP A -- PAY THE

22 MONEY.

23        SO RATHER THAN SAY "PROMISES OR GRANTS," I WAS GOING

24 TO CHANGE THAT TO "CONVEYANCES," ANYWAY, "PROMISES OR

25 CONVEYANCES."

1          I THINK IT'S BETTER TO JUST SAY "CONTRACTUAL TERMS."

2          **MR. KESSLER:**  YOUR HONOR, JUST ONE LAST POINT.  I

3   APOLOGIZE.  I UNDERSTAND YOUR HONOR HAS REJECTED THAT IT'S

4   DISPOSITIVE, BUT I DO THINK AT LINE 18, THEN, YOU SHOULD AT

5   LEAST SAY, "YOU SHOULD GIVE CONSIDERABLE WEIGHT TO SUCH A

6   PRACTICAL CONSTRUCTION THAT'S THERE," INSTEAD OF "YOU MAY

7   GIVE."  OTHERWISE, IT DOESN'T EVEN INDICATE THAT THE JURY

8   SHOULD GIVE CONSIDERABLE WEIGHT IF THEY FIND THAT IT'S ALL

9   COMMON.

10          THAT WOULD REALLY BE AN UNDERMINING OF WHAT I THINK

11  IS THE D.C. LAW HERE.

12          **MS. NAYLOR:**  YOUR HONOR, THE STANDARD JURY

13  INSTRUCTIONS USE THE WORD "MAY," NOT "SHOULD," THROUGHOUT.

14  HE'S TRYING TO ALTER THE WEIGHT OF THE EVIDENCE FOR THE JURY.

15          **MR. KESSLER:**  AND, YOUR HONOR, THE STANDARD JURY

16  INSTRUCTIONS DON'T COVER THIS UNIQUE CIRCUMSTANCE THAT YOUR

17  HONOR DESCRIBED:  THE BUTINSKI PROBLEM.

18          **MS. NAYLOR:**  YOUR HONOR, THEY DO COVER THE

19  UNDERSTANDING OF THE PARTIES AT THE TIME OF THE AGREEMENT AND

20  THEY SAY "MAY."

21          **THE COURT:**  NO, MR. KESSLER IS RIGHT ON THIS.  I'M

22  GOING TO SAY "SHOULD."

23          **MR. KESSLER:**  THANK YOU.

24          **MR. KATZ:**  YOUR HONOR, I THINK IT'S IMPORTANT TO KEEP

25  IN MIND HERE THAT WITH RESPECT TO 92 OUT OF THE 95, THEY NEVER

1  EVEN APPEARED IN COURT TO SAY WHAT THEIR UNDERSTANDING WAS.

2          AND, NUMBER TWO --

3          **THE COURT:**  WELL, THAT'S TRUE, BUT THERE -- YOU

4  YOURSELF HAVE CHARACTERIZED THE EA AS THE BIG -- THE BIG --

5          **MR. KATZ:**  THAT'S RIGHT.  LET'S NOT FORGET THAT

6  MR. ALLEN ADMITTED THAT THE RETIRED PLAYERS WERE INCLUDED IN

7  THE GRANT OF LICENSE.  HE ADMITTED IT IN HIS DEPOSITION, AND IT

8  WAS READ IN COURT.

9          **THE COURT:**  ALL RIGHT.

10          **MR. KATZ:**  SO TO MAKE THIS AS IF IT'S A FAIT

11  ACCOMPLI, IT IS NOT AT ALL A FAIT ACCOMPLI.  HE ADMITTED IT,

12  YOUR HONOR.  IT'S ON THE RECORD.

13          **MR. KESSLER:**  YOUR HONOR, WE STRONGLY AGREE WITH

14  THAT.  ALL YOU'VE SAID IS "IF THE JURY FINDS THIS."  IT WILL BE

15  UP TO THE JURY TO DECIDE IF THE UNDERSTANDING IS COMMON.

16          **MR. KATZ:**  HE SAID, "I BELIEVE SO."  THAT MEANS, "I

17  BELIEVE SO."

18          **THE COURT:**  I THINK, GIVEN THE -- I THINK THERE IS A

19  HIGH LIKELIHOOD HERE THAT IF THE JURY FOCUSES ON THE EVIDENCE,

20  THEY WILL SAY THAT BOTH ELECTRONIC ARTS AND THE DEFENDANTS

21  CONSISTENTLY UNDERSTOOD THIS CONTRACT IS PERTAINING ONLY TO

22  ACTIVE PLAYERS, PERIOD.

23          **MR. KATZ:**  THEY CERTAINLY CAN'T SAY THAT WITH RESPECT

24  TO 92 OUT OF 95.  THERE IS NO EVIDENCE.

25          **THE COURT:**  WELL, THIS IS ONLY ADDRESSING THE

1  ELECTRONIC ARTS AGREEMENT.

2          AND THEN, IN THE NEXT PARAGRAPH I SAY THAT THEY HAVE

3  TO CONSIDER AND EVALUATE EACH OF THE THIRD-PARTY AGREEMENTS IN

4  EVIDENCE.

5          SO YOU CAN MAKE THAT ARGUMENT.

6          **MR. KATZ:**  NO, I UNDERSTAND.  I JUST THINK THAT

7  DEPARTING FROM THE JURY INSTRUCTION BASED ON THE WEIGHT OF THIS

8  EVIDENCE WHEN, IN FACT, IT'S NOT THAT WEIGHTY, I THINK IS NOT

9  THE THING TO DO.

10         **THE COURT:**  YOU KNOW, I -- I PRACTICED FOR 25 YEARS.

11 I DID A LOT OF CONTRACT LAW, A LOT OF COMMERCIAL CONTRACT LAW

12 ALL OVER THE COUNTRY.  I AM NOT -- I THINK THERE PROBABLY ARE

13 PEOPLE WHO ARE MORE EXPERT ON THIS THAN ME, BUT I THINK I HAVE

14 A VERY GOOD GRASP OF THE GENERAL PRINCIPLES OF CONTRACT LAW AS

15 THEY ARE APPLIED THROUGHOUT THE UNITED STATES.

16         AND ONE OF THE THINGS THAT IS VERY IMPORTANT, I THINK

17 UNIVERSALLY IN CONSTRUING A CONTRACT, IS THAT IF BOTH SIDES TO

18 A CONTRACT HAVE CONSISTENTLY TREATED IT AS MEANING A, AND NOT

19 B, THEN THAT OUGHT TO BE ADOPTED.

20         AND A BUTINSKI SHOULDN'T COME IN AND SAY:  "OH, WAIT

21 A MINUTE.  IT MEANS X, NOT WHAT THE PARTIES TO THE CONTRACT

22 THINK IT MEANS."

23         **MR. KATZ:**  THEY ARE OUR PRINCIPALS, YOUR HONOR.

24 WE'RE NOT A BUTINSKI.  THEY ARE OUR PRINCIPALS.  THEY ARE OUR

25 PRINCIPALS.

1          **THE COURT:**  YOU ARE NOT A THIRD-PARTY BENEFICIARY TO

2   THE CONTRACT.

3          **MR. KATZ:**  WE ARE THE PRINCIPALS OF ONE OF THE

4   NEGOTIATORS OF THE CONTRACT.  THEY ARE NEGOTIATING THESE

5   CONTRACTS SUPPOSEDLY ON OUR BEHALF, EXCEPT THEY HAPPEN TO BE

6   STABBING US IN THE BACK.

7          **THE COURT:**  THIS IS, THOUGH, ON THE CONTRACT CLAIM,

8   NOT ON THE FIDUCIARY CLAIM.

9          **MR. KATZ:**  YOUR HONOR, I REALLY DON'T WANT TO ARGUE

10  THE POINT FURTHER --

11         **THE COURT:**  YOU MADE YOUR POINT.

12         **MR. KATZ:**  -- BECAUSE I DON'T QUESTION YOUR

13  EXPERTISE, BUT I THINK THAT BY A PARITY OF REASONING IT IS ALSO

14  STANDARD THAT THE LANGUAGE IS CONSTRUED AGAINST THE DRAFTER.

15         AND I WOULD URGE YOUR HONOR TO GO BACK AND PUT IN THE

16  WORD, YOU KNOW, "YOU MUST GIVE IT CONSIDERABLE ATTENTION."

17         **THE COURT:**  NO, BECAUSE THAT IS A LAST RESORT, A LAST

18  RESORT, A LAST RESORT ONLY.  AND I DO EXPLAIN THERE THAT -- I

19  DO EXPLAIN THAT "THE DRAFTER OF THE CONTRACT WAS IN THE BEST

20  POSITION TO HAVE AVOIDED THE AMBIGUITY IN THE FIRST PLACE AND,

21  THEREFORE, YOU CAN RESOLVE THE AMBIGUITY AGAINST THE PERSON WHO

22  DRAFTED THE CONTRACT SO LONG AS IT'S A REASONABLE

23  INTERPRETATION."

24         SO I THINK THAT'S PRETTY STRONG IN YOUR FAVOR.  AND

25  IN MY JUDGMENT THERE IS A PLAUSIBLE CHANCE THE JURY WILL GET TO

1   THAT VERY -- AFTER THEY WADE THROUGH ALL THE OTHER RULES ON THE

2   RPGLA -- NOW, THIS IS NOT TRUE ON THE -- ON THE ELECTRONIC ARTS

3   AGREEMENT.

4           I THINK THERE THE TESTIMONY IS QUITE STRONG IN FAVOR

5   OF THE DEFENSE.

6           **MR. KATZ:**  WELL, IT'S SIX OR MORE, SO IT DOESN'T

7   REALLY MATTER.

8           **THE COURT:**  ALL RIGHT.  SO, ANYWAY, THAT'S WHAT I'M

9   GOING TO DO.  YOUR OBJECTION IS PRESERVED.

10          **MR. KATZ:**  ALL RIGHT.  THANK YOU, YOUR HONOR.

11          **THE COURT:**  ALL RIGHT.  WE'RE NOW GOING TO 29.

12  ANYTHING ON 29?

13          **MR. KESSLER:**  NO OBJECTION TO 29.

14          **MR. HILBERT:**  ONE PROBLEM WITH PARAGRAPH 28 AND 29,

15  WHEN READ IN CONNECTION WITH ONE ANOTHER, IS THAT IT SUGGESTS

16  THAT JUST BECAUSE EA HAS TESTIFIED AS TO THEIR INTERPRETATION

17  OF PARAGRAPH 1(A) AND 2(A), THAT ALL LICENSEES ARE GOING TO

18  TESTIFY IN THAT MANNER.

19          AND YOU SAID THAT MR. KATZ --

20          **THE COURT:**  ALL RIGHT.  I WANT THAT.  IF THAT'S A

21  PROBLEM, LET'S FIX IT, BECAUSE YOU ARE RIGHT THAT

22  ELECTRONIC ARTS IS ELECTRONIC ARTS.  AND IT'S NOT LIKE A CLASS

23  ACTION WHERE ELECTRONIC ARTS GETS TO SPEAK FOR EVERYBODY.

24          **MR. HILBERT:**  EXACTLY.

25          **THE COURT:**  SO HOW DO YOU WANT TO FIX IT?

1          **MR. HILBERT:**  I THINK ONE POSSIBLE CHANGE COULD BE TO

2     PARAGRAPH 29.  IT WOULD READ:  "I REFERRED TO AN

3     ELECTRONIC ARTS AGREEMENT, BUT EA IS ONLY ONE OF DEFENDANTS'

4     LICENSEES.  YOU SHOULD, OF COURSE, CONSIDER AND EVALUATE EACH

5     OF THE THIRD-PARTY AGREEMENTS IN EVIDENCE, OF WHICH THERE ARE

6     95."

7          **THE COURT:**  I'LL PUT IN "OF WHICH THERE ARE 95."  BUT

8     I THINK THE REST OF THAT IS JUST A DIFFERENT WAY TO SAY THE

9     SAME THING I'VE ALREADY SAID, "OF WHICH THERE ARE 95."

10          **MR. LECLAIR:**  YOUR HONOR, I THINK THE WAY TO FIX IT

11     IS TO SAY:

12          "THE TESTIMONY OF THE REPRESENTATIVES OF EA AND THE

13     DEFENDANTS ABOUT WHAT THE EA CONTRACT MEANT IS NOT EVIDENCE

14     WITH RESPECT TO THE OTHER LICENSE AGREEMENTS."

15          **MR. KESSLER:**  YOUR HONOR, WE WOULD STRONGLY OBJECT TO

16     THAT BECAUSE THE LANGUAGE TERMS ARE IDENTICAL.  AND PLAINTIFFS

17     HAVE CHOSEN TO USE THE EA AGREEMENT, BOTH IN OPENING AND

18     OTHERWISE, TO SAY THIS IS THE LANGUAGE WHICH APPEARS IN THOSE

19     95 AGREEMENTS.

20          **THE COURT:**  I'M NOT GOING TO ADOPT MR. LECLAIR'S

21     SUGGESTION, BECAUSE THIS MUCH IS AT LEAST CLEAR, AND THAT IS

22     THE LANGUAGE, IF IT'S NOT IDENTICAL, IT'S VERY CLOSE.  AND AT

23     LEAST ON THE DEFENDANTS' SIDE, THEY PRESUMABLY HAD A REASONABLY

24     CONSISTENT INTENT WITH RESPECT TO ALL 95.

25          AS FOR THE OTHER PARTIES' INTENT, WE DON'T HAVE ANY

1 EVIDENCE ON 93 OF THESE AGREEMENTS.  I THINK WE'VE GOT EVIDENCE

2 ON TOPPS.  WE'VE GOT EVIDENCE FROM ELECTRONIC ARTS.  WE DON'T

3 HAVE EVIDENCE OF ANY OF THE OTHER 93.

4 　　　　　**MR. KESSLER:**  WE ACTUALLY HAVE EVIDENCE ON STATS,

5 YOUR HONOR.

6 　　　　　**THE COURT:**  ALL RIGHT.  ALL RIGHT.  92, THEN.

7 　　　　　BUT WE DO HAVE EVIDENCE OF WHAT THE INTENT WAS BY THE

8 DEFENDANTS.

9 　　　　　**MR. LECLAIR:**  YOUR HONOR, THAT'S EXACTLY MY POINT.

10 YOU'VE GOT A WHOLE PARAGRAPH THAT TALKS ABOUT TESTIMONY AND

11 CONSTRUING IT.  AND THE PROBLEM IS THAT DOESN'T APPLY TO 92

12 AGREEMENTS.

13 　　　　　**THE COURT:**  BUT IT APPLIES TO THE BIGGEST DOLLAR

14 AMOUNT AGREEMENT OF ALL, AND IT'S THE ONE THE JURY HEARD THE

15 MOST ABOUT, AND THIS IS SO CONFUSING.  IF WE WERE TO NOT GIVE

16 THE JURY SOME OF THIS ADVICE AND HELP HERE, THE -- THE RISK, IN

17 MY JUDGMENT, OF A MISCARRIAGE OF JUSTICE WOULD BE HIGH.

18 　　　　　SO I'M NOT GOING TO CHANGE THIS, EXCEPT I'M GOING TO

19 SAY "OF WHICH THERE ARE 95."

20 　　　　　ALL RIGHT.  NUMBER 30.

21 　　　　　**MR. KESSLER:**  YOUR HONOR, NUMBER 30, WE JUST HAVE

22 TWO -- ONE SMALL THING AND ONE REQUEST.

23 　　　　　FIRST, THERE'S A TYPO ON LINE 25.  IT SHOULD BE "THIS

24 ARGUMENT," RATHER THAN "THIS AGREEMENT."

25 　　　　　**THE COURT:**  ALL RIGHT.

1          **MR. KESSLER:** AND THE ARGUMENT YOU'RE PRESENTING IS

2    PLAINTIFFS' ARGUMENT.  SO, FOR BALANCE, WE WOULD REQUEST THAT

3    RIGHT AFTER -- ON LINE 27, AFTER THE WORD "MONEY," PERIOD, WE

4    WOULD REQUEST A DESCRIPTION OF DEFENDANTS' ARGUMENT.  AND WE

5    WOULD SUGGEST THE FOLLOWING LANGUAGE:

6          "DEFENDANTS, ON THE OTHER HAND, CONTEND THAT THE

7    CLASS IS ONLY ENTITLED TO MONIES THAT WERE GENERATED BY THE

8    LICENSING OF RETIRED PLAYER GROUP RIGHTS, AND THAT ANY MONIES

9    SO GENERATED WERE PAID TO RETIRED PLAYERS."

10          THAT WOULD BE OUR CONTENTION.

11          **THE COURT:** JUST A SECOND.  SAY IT AGAIN.

12          **MR. KESSLER:** "DEFENDANTS, ON THE OTHER HAND, CONTEND

13   THAT THE CLASS IS ONLY ENTITLED TO MONIES THAT WERE GENERATED

14   BY THE LICENSING OF RETIRED PLAYER GROUP RIGHTS, AND THAT ANY

15   MONIES SO GENERATED WERE PAID TO RETIRED PLAYERS."

16          AND THEN, IT WOULD PICK UP, "IN EVALUATING" -- I

17   GUESS IT SHOULD SAY "THESE ARGUMENTS," RATHER THAN THAT LINE,

18   BECAUSE NOW YOU ARE REFERRING TO BOTH OF THEM IN LINE 27.

19          **THE COURT:** WAIT A MINUTE.  I'M NOT GOING TO PUT IN

20   THE SECOND PART OF THAT.

21          I'M JUST GOING TO SAY:  "DEFENDANTS, ON THE OTHER

22   HAND, CONTEND THAT THE CLASS" -- I'M GOING TO SAY "WAS" NOT

23   "IS" -- "WAS ONLY ENTITLED TO MONIES GENERATED BY THE LICENSING

24   OF RETIRED PLAYER GROUP RIGHTS."  BECAUSE THAT MAKES IT

25   PARALLEL TO WHAT I SAY ABOUT THE -- I THINK IT'S GILDING THE

1  LILY TO GO FURTHER THAN THAT.

2        THEN, I'M GOING TO SAY:  "IN EVALUATING -- IN

3  EVALUATING THESE ARGUMENTS ..."

4        OKAY.  I'LL MAKE THAT CHANGE, IN PART.  YOUR

5  OBJECTION TO THE -- YOUR REQUEST FOR THE REST OF IT IS NOTED.

6        ALL RIGHT, MR. LECLAIR --

7        **MR. LECLAIR:**  YOUR HONOR, I'M SORRY, BUT COULD YOU

8  REPEAT WHAT YOU DID?  I LOST IT.

9        **THE COURT:**  ON LINE 25 I HAD A TYPO.  "AGREEMENT"

10 SHOULD READ "ARGUMENT."

11       I'M SURE YOU DON'T HAVE A PROBLEM WITH THAT.

12       **MR. LECLAIR:**  I DON'T.

13       **THE COURT:**  THEN, WE COME TO AN INSERT.  AND AFTER

14 STATING WHAT YOUR ARGUMENT IS, WHICH I HOPE I HAVE GOT RIGHT,

15 THEN I'M GOING TO SAY:

16       "DEFENDANTS, ON THE OTHER HAND, CONTEND THAT THE

17 CLASS WAS ONLY ENTITLED TO MONIES GENERATED BY THE LICENSING OF

18 RETIRED PLAYER GROUP RIGHTS.  IN EVALUATING THESE ARGUMENTS..."

19 BLAH, BLAH, BLAH.  ALL RIGHT?

20       **MS. NAYLOR:**  YOUR HONOR, THERE'S A TYPO ON 27, ALSO.

21       **THE COURT:**  WHAT'S THAT?

22       **MS. NAYLOR:**  I THINK "CROSS LICENSING" WAS INTENDED

23 TO BE "GROSS LICENSING."

24       **THE COURT:**  YES.  YES.  AND I MEANT TO CAPITALIZE

25 "GROSS LICENSING REVENUE."  THAT'S A TERM OF ART HERE.

1          YES.  THANK YOU FOR CATCHING THAT.

2          OKAY.  NOW, WE'RE GOING TO NUMBER 31.  31.

3          **MR. LECLAIR:**  31, YOUR HONOR, WE HAVE TWO THINGS.

4  FIRST OF ALL, WE DON'T BELIEVE THAT THE -- THAT THE END DATE OF

5  FEBRUARY 14, 2007, IS PROPER BECAUSE THE -- THE CLASS

6  DEFINITION IS WHEN THE GLA'S WERE IN EFFECT.

7          BUT THE ENTITLEMENT TO MONEY CAN -- CAN ACCRUE AT ANY

8  TIME AS A RESULT OF THE GLA'S THAT WERE IN EFFECT.  THIS WAS

9  JUST -- THE STATUTE OF LIMITATIONS STARTS THE FRONT END.  BUT

10  ON THE BACK END IF, FOR EXAMPLE, THEY HAD A GLA IN EFFECT

11  DURING THAT PERIOD OF TIME AND MONEY WAS TRIGGERED AND WAS DUE

12  THEY SHOULD BE ABLE TO COLLECT IT IN 2007.

13          THERE'S NOT THAT MUCH MONEY IN 2007, BECAUSE THERE

14  WEREN'T THAT MANY OF THE GLA'S THAT WERE STILL IN EFFECT.

15          BUT WE BELIEVE WE'RE ENTITLED TO RECOVER.  THERE

16  SHOULD NOT BE AN ACTUAL END DATE ON THE DAMAGE CLAIM, UNLIKE

17  THE EXISTENCE OF THE GLA.

18          **THE COURT:**  WELL, LET ME GIVE YOU THE PRINCIPLE THAT

19  I THINK APPLIES HERE, AND THEN WE'LL WORK BACKWARDS TO SEE WHAT

20  THE DATES ARE.

21          THE PRINCIPLE OUGHT TO BE THAT UP TO THE DATE OF THE

22  EXPERT DAMAGE REPORT, WHICH WAS -- YOU HAVE TO REMIND ME WHEN

23  THAT WAS.

24          **MR. LECLAIR:**  JUNE 1 OF 2008.

25          **THE COURT:**  UP TO JUNE 1 OF 2008, IF THERE WAS MONEY

1  DUE AND PAYABLE AND IT WASN'T PAID, MY INTENTION WAS TO LET THE

2  CLASS TRY TO RECOVER THAT.

3  SO THAT WOULD RUN FROM FEBRUARY 14 OF '04, TO JUNE --

4  LET'S SEE.  PAGE 19 AT LINE 20.

5  MY LAW CLERK IS TELLING ME WE PROBABLY COVERED THIS.

6  **MR. LECLAIR:**  THAT'S TRUE.  THE DATE IS --

7  **THE COURT:**  LATER ON, WE DO.  WE GET INTO THAT.

8  ALL RIGHT.  SO, ANYWAY, MY INTENTION HERE IS THAT AS

9  FOR DAMAGES, THE JURY COULD AWARD ANY MONIES DUE A CLASS MEMBER

10  ALL THE WAY UP TO JUNE 1, AND REACHING ALL THE WAY BACK TO

11  FEBRUARY 14 OF '04.  SO PROBABLY THIS HAS GOT TO BE -- WE'VE

12  GOT TO EDIT THIS.

13  ON THE OTHER HAND, ON THE OTHER HAND, THERE'S A

14  DIFFERENT QUESTION OF DEFINING WHO IT IS THAT -- WHICH GLA'S

15  WERE IN EFFECT IN THAT TIME PERIOD, AND, FRANKLY -- LET ME ASK

16  YOU THIS QUESTION.

17  DID SOME OF THESE GLA'S EXPIRE DURING --

18  **MR. LECLAIR:**  YES.  AND THERE IS A CHART IN EVIDENCE,

19  YOUR HONOR, WHICH SHOWS EXACTLY WHICH GLA'S ARE IN EFFECT WHICH

20  YEARS.  IT SHOWS IT ALL THE WAY FROM 2003 THROUGH 2007.

21  **THE COURT:**  SO WERE THERE ANY OF THESE STILL IN

22  EFFECT AS OF JUNE 1, '08?

23  **MR. LECLAIR:**  NO.  BUT THERE ARE SOME IN 2007.  AND

24  AS A RESULT --

25  **THE COURT:**  WHAT WAS THE LAST DATE THAT ANY -- THAT

1   RAISES --

2           **MR. KESSLER:**  YOUR HONOR, I THINK I COULD HELP YOU,

3   IF I MAY?

4           **THE COURT:**  ALL RIGHT.  HELP ME SOLVE THE PROBLEM.

5           **MR. KESSLER:**  UNFORTUNATELY, THE ONLY EVIDENCE WE

6   HAVE TO CONSIDER IN DAMAGES IS WHAT THEY PUT IN.

7           SO THEY DIDN'T PUT IN, FOR EXAMPLE, ANY EVIDENCE

8   REGARDING '08 AT ALL.  SO YOUR HONOR DOESN'T EVEN HAVE TO THINK

9   ABOUT THAT THEORETICAL ISSUE.

10          WHAT MR. ROWLEY DID WAS THE FOLLOWING, OKAY?  HE

11  INCLUDED FOUR PAYMENTS INTO THE GLR POOL.  THAT'S THE ONLY

12  THING THAT'S ISSUE.  ONE IN MARCH OF 2004, ONE IN MARCH OF

13  2005, ONE IN MARCH OF 2006, AND ONE IN MARCH 2007.

14          WE DON'T DISPUTE THAT THE LAST THREE PAYMENTS, OKAY,

15  RELATE TO THE STATUTE OF LIMITATIONS PERIOD.  SO THERE'S NO

16  PROBLEM WITH THOSE THREE PAYMENTS.

17          IT'S THE FIRST PAYMENT, WHICH WAS IN MARCH OF 2004,

18  WHICH MR. ARMSTRONG TESTIFIED -- AND THERE'S NO EVIDENCE TO THE

19  CONTRARY -- RELATED TO LICENSING RIGHTS IN 2003.  IT WAS A

20  DELAYED PAYMENT.  SO IT'S PRIOR TO THE STATUTE OF LIMITATIONS

21  PERIOD.

22          SO THE ONLY ISSUE FOR THE JURY REALLY HERE IS THE

23  BEGINNING OF THE STATUTE OF LIMITATIONS PERIOD, BECAUSE THERE

24  IS NO EVIDENCE PRESENTED FOR ANYTHING LATER THAN A -- IT'S

25  ACTUALLY SEPTEMBER.  I THINK I'M SAYING "MARCH."  IT'S A

1  SEPTEMBER 2007 PAYMENT, WOULD BE THE LAST ONE.  I SHOULDN'T

2  HAVE SAID "MARCH."

3           THE YEAR CLOSES IN MARCH.  THEY'RE PAID IN SEPTEMBER,

4  AND THEY RELATE BACK TO THE PRIOR YEAR.  SO THERE'S NO DISPUTE

5  ABOUT SEPTEMBER 2007, SEPTEMBER 2006 AND SEPTEMBER 2005.  THOSE

6  ARE WITHIN THE STATUTE.

7           WE DISPUTE THAT SEPTEMBER 2004 COULD POSSIBLY BE

8  COVERED, BECAUSE THE ONLY EVIDENCE IS IT RELATED TO 2003.

9           THAT MIGHT HELP YOUR HONOR IN TERMS OF HOW TO

10 FORMULATE THE INSTRUCTION.

11          **THE COURT:**  WELL, IT HELPS SOME.

12          **MR. LECLAIR:**  YOUR HONOR, I THINK I -- WE AGREE WITH

13 THE FACTS.  WHAT WE DON'T AGREE WITH IS IT'S NOT COVERED WITHIN

14 THE STATUTE, BECAUSE THE STATUTE IS DRIVEN BY THE DATE OF

15 PAYMENT.  AND, THEREFORE, IT IS WITHIN THE STATUTE, BECAUSE

16 WHEN -- WHEN OUR CLAIM ACCRUED IS WHEN IT SHOULD HAVE BEEN

17 PAID.

18          AND, THEREFORE, THE 2004 PAYMENT IS WITHIN THE

19 STATUTE.

20          **THE COURT:**  JUST PUT THAT ALL ON HOLD FOR A SECOND.

21 WHAT WAS THE DATE OF THE LAST PAYMENT?

22          **MR. LECLAIR:**  SEPTEMBER 2007.

23          **THE COURT:**  ALL RIGHT.  SO THAT WAS FOR WHAT YEAR,

24 FOR THE '06 YEAR?

25          **MR. LECLAIR:**  WOULD HAVE BEEN THE '06 YEAR.

1          **THE COURT:**  SO DURING THE '06 TIME FRAME, HOW MANY

2   CLASS MEMBERS WERE THERE?

3          **MR. LECLAIR:**  WE'VE GOT A CHART OF THAT.  IT DROPS

4   OFF IN 2006, AND THEN ALMOST TO ZERO IN 2007 IS MY

5   RECOLLECTION.  IT'S LIKE 17 IN 2007, AND ABOUT HALF IN 2006.

6          **THE COURT:**  HOW DO WE DEAL WITH THIS PROBLEM?  LET'S

7   SAY YOU WIN -- LET'S SAY YOU WIN, AND THE JURY JUST SAYS --

8   GIVES YOU A DOLLAR AMOUNT.

9          DON'T WE HAVE TO SOMEHOW SORT OUT HOW -- IF THERE ARE

10  VERY FEW '06 CLAIMANTS, BUT LET'S SAY THE VAST MAJORITY OF THE

11  MONEY WAS FOR '06, AND THERE ARE A LOT MORE IN THE CLASS FOR

12  '04, BUT NOT AS MUCH MONEY, AND THE JURY JUST GIVES US ONE LUMP

13  SUM --

14         **MR. LECLAIR:**  YOUR HONOR, IT'S VERY TYPICAL TO

15  HAVE --

16         **THE COURT:**  -- HOW ARE WE GOING TO SORT THAT OUT?  I

17  HAVEN'T THOUGHT ABOUT THIS BEFORE.

18         **MR. LECLAIR:**  IT'S VERY TYPICAL, YOUR HONOR, TO DO A

19  PLAN OF ALLOCATION ONCE YOU HAVE A DAMAGE AMOUNT.  AND IT'S

20  VERY EASY TO DO, BECAUSE ROWLEY AS CALCULATED EXACTLY HOW

21  THE -- HOW THE MONEY WOULD BE ALLOCATED BASED ON THE NUMBER OF

22  GLA'S IN EFFECT.

23         SO I DON'T THINK IT'S GOING TO BE A BIG PROBLEM, YOUR

24  HONOR.  I THINK THAT'S JUST PART OF WHAT HAPPENS.  WE TAKE THE

25  MONEY, AND WE PROPOSE A PLAN OF ALLOCATION.

1        **THE COURT:**  LET ME GIVE YOU A TENTATIVE VIEW HERE.

2   NOW, GO BACK TO THE OTHER THING.

3        WE HAVE A THREE-YEAR PERIOD OF LIMITATIONS, AND THERE

4   SHOULD ONLY BE THREE PAYMENTS.  SO I THINK YOU SHOULD JUST MAKE

5   THIS SIMPLE AND GO WITH THE LAST THREE PAYMENTS AND AGREE TO

6   EXCLUDE THAT FIRST PAYMENT.

7        **MR. LECLAIR:**  WELL --

8        **THE COURT:**  OTHERWISE, IT'S OVERREACHING.  IT'S JUST

9   GREED.  AND THERE'S NO ENTITLEMENT.  I'M GOING TO ORDER IT,

10  ANYWAY, SO WHY DON'T YOU AGREE TO THAT?

11       **MR. KATZ:**  BECAUSE IT'S NOT CORRECT.

12       **THE COURT:**  ALL RIGHT.  GIVE ME ONE GOOD ARGUMENT WHY

13  ON A THREE-YEAR PERIOD OF LIMITATIONS YOU COULD SOMEHOW SQUEEZE

14  FOUR YEARS OF PAYMENTS INTO IT.

15       **MR. KATZ:**  IT'S NOT A THREE-YEAR PERIOD OF -- WELL,

16  THE LIMITATION STARTS -- IT HAS TWO ENDS TO IT, OKAY?  WE

17  TALKED ALREADY ABOUT THE END IN 2007.  NOW, LET'S TALK ABOUT

18  THE END IN 2003.

19       LET'S SAY THAT SOMEBODY SIGNED AN AGREEMENT THAT

20  EXPIRED ON DECEMBER 31ST, '03.  HIS PAYMENT WAS DUE IN

21  SEPTEMBER OF '04 OR MARCH '04, SOMETHING WITHIN THE STATUTE OF

22  LIMITATIONS PERIOD.

23       SO WHEN HE WAS NOT PAID, THE WRONG OCCURRED, AND THAT

24  SHOULD DEFINITELY BE INCLUDED.

25       **THE COURT:**  LET'S DO A DIAGRAM.  I WANT TO SEE A

1   TIMELINE.  I WANT TO GIVE BOTH SIDES A CHANCE.  USE THE EASEL

2   OVER THERE, AND DO IT -- A TIMELINE THAT PUSHES IT BACK TO --

3   THE CLASS PERIOD STARTS FEBRUARY 14, 2004.

4            **MR. KATZ:**  WHICH DATE -- OKAY.  FEBRUARY 14TH.

5            **THE COURT:**  FEBRUARY 14TH.  THAT'S THE ONE WE'RE

6   DEALING WITH.  SO IT WOULD BE THE FIRST PAYMENT AFTER THAT,

7   WHICH WOULD BE --

8            **MR. KESSLER:**  SEPTEMBER, YOUR HONOR.

9            **THE COURT:**  -- SEPTEMBER OF '04, WHICH MR. KESSLER

10  SAYS WAS A PAYMENT FOR THE REVENUES RECEIVED DURING '03.

11           **MR. KATZ:**  OKAY.  SO HERE IS -- HERE'S VALENTINE'S

12  DAY OF '04, OKAY?  THAT'S WHEN YOU SAY THE PERIOD STARTS.

13           **THE COURT:**  CORRECT.

14           **MR. KATZ:**  THE PAYMENT THAT WAS TO HAVE BEEN MADE IN

15  '04 -- THEY MADE IT ONCE A YEAR.  I THINK IT OCCURRED IN

16  SEPTEMBER OF '04.  SEPTEMBER OR MARCH.  DOESN'T MATTER.

17           LET'S SAY IT OCCURS IN SEPTEMBER '04.  SO AS OF

18  SEPTEMBER OF '04, SOMEBODY HAS DONE SOMETHING WRONG.  IF THEY

19  SHOULD HAVE MADE A PAYMENT TO US, THAT PAYMENT -- THE WRONG

20  OCCURRED WHEN THE PAYMENT SHOULD HAVE BEEN MADE.  AND THE

21  PAYMENT SHOULD HAVE BEEN MADE --

22           **THE COURT:**  WHAT WAS THE ENTITLED -- IF SOMEBODY --

23  IF SOMEBODY SIGNS THIS, WHY ARE THEY ENTITLED TO THAT MONEY IN

24  '04 IF IT WAS FOR LICENSING RIGHTS THAT WERE SOLD IN '03?

25           **MR. KATZ:**  BECAUSE THAT'S THE WAY THE SYSTEM WORKED.

1  THE PAYMENT WAS DUE IN SEPTEMBER OF '04.

2          **THE COURT:**  IF YOU DO THAT, THEN AT THE TAIL END, YOU

3  HAVE -- YOU SHOULD ONLY BE ABLE TO GET THREE PAYMENTS, NOT

4  FOUR.

5          **MR. KATZ:**  WELL, LET'S LOOK AT THE OTHER END AND SEE

6  WHAT IT IS.  LOOK, I'M NOT HERE TO BE GREEDY.  I'M HERE TO GET

7  IT RIGHT, OKAY?

8          SO AT THE OTHER END, THE LAST PAYMENT -- THE STATUTE

9  ENDS ON 2/14/07.  SO THAT MEANS THAT SOMEBODY HAS AN AGREEMENT,

10  AND BASED ON THAT AGREEMENT THEY ARE TO BE PAID IN, LET'S SAY,

11  SEPTEMBER OF '07.

12          THAT'S WHEN THE WRONG OCCURS.  THAT'S WITHIN THE

13  STATUTE.  THERE'S NO PROBLEM.  IT'S EASILY WITHIN THE STATUTE.

14          SO TO SAY "FOUR THREE," IT DOESN'T WORK.  YOU HAVE TO

15  ANALYZE IT, AND SEE WHAT FALLS WITHIN THE STATUTE.

16          THE ONLY TIME WE HAVE A PROBLEM WITH THE STATUTE OF

17  LIMITATIONS IS HERE AT THE BEGINNING.  WE DON'T HAVE IT AT THE

18  END, BECAUSE AT THE END WE'RE CLOSE TO THE TIME.  I MEAN, IT'S

19  NOT A PROBLEM AT ALL.

20          SO TO SAY "FOUR THREE" DOESN'T REALLY ADVANCE THE

21  BALL.  SO I WOULD JUST SUBMIT TO YOUR HONOR THAT THIS IS THE

22  CORRECT ANALYSIS.  IT HAD NOTHING TO DO WITH GREED, AND IT'S

23  THE RIGHT WAY TO GO.

24          **MR. KESSLER:**  YOUR HONOR, MAY I RESPOND?

25          OKAY.  THE ISSUE UNDER THE STATUTE OF LIMITATIONS

1 WOULD BE: WHEN DID THE WRONG OCCUR? OKAY?

2      THE WRONG WOULD HAVE OCCURRED IN '03, WHEN SOMEBODY

3 HAD A GLA IN EFFECT. IN FACT, WHAT MR. ROWLEY DOES IS HE

4 CALCULATES THAT THOSE WHO ARE ENTITLED IN SEPTEMBER OF '04 ARE

5 THOSE WHO HAD A GLA IN EFFECT IN DECEMBER OF '03.

6      IN OTHER WORDS, HE DOES NOT CALCULATE THAT THOSE WITH

7 GLA'S IN EFFECT IN '04 ARE ENTITLED TO THAT MONEY. HE

8 CALCULATES THAT THOSE WITH GLA'S IN EFFECT PRIOR TO THE STATUTE

9 OF LIMITATIONS PERIOD ARE ENTITLED TO THAT MONEY.

10      IN OTHER WORDS, THE OBLIGATION IS NOT TO PAY IN

11 SEPTEMBER. THAT'S JUST A PRACTICE OF THE UNION. UNTIL THEY

12 FINISH THEIR BOOKS AND RECORDS AND STUFF, THEY SIMPLY DON'T PAY

13 OUT UNTIL LATER.

14      BUT THE DUTY ARISES IN '03, IF IT AROSE AT ALL.

15 OBVIOUSLY, WE DON'T THINK THERE WAS A DUTY. BUT IF IT AROSE,

16 IT AROSE IN '03.

17      SO THEIR OWN EXPERT DIDN'T DO WHAT WOULD BE CORRECT

18 UNDER THE ANALYSIS OF MR. KATZ, BECAUSE UNDER MR. KATZ'S

19 ANALYSIS, WHAT THE EXPERT SHOULD HAVE DONE WOULD SAY: "OKAY,

20 THOSE WHO HAVE GLA'S IN EFFECT IN 9/04 GET THE MONEY."

21      THAT'S NOT WHAT HE DID. HE SAID: "WHAT I'M

22 CALCULATING IS THOSE BACK IN '03, WHICH IS WHEN THE RIGHTS

23 AROSE."

24      **THE COURT:** HOW DID WE DEFINE THE CLASS WHEN WE SENT

25 OUT THE NOTICE? DID WE SAY -- THE CLASS -- THE CLASS NOTICE.

1  DID WE SAY IT'S THOSE PEOPLE WHO SIGNED AFTER FEBRUARY 14, '04,

2  OR THOSE PEOPLE WHO HAD ONE IN EFFECT AFTER '04, WHICH MIGHT

3  CONCEIVABLY BEEN SIGNED IN '03?

4          **MR. KATZ:**  WE SAID "IN EFFECT," YOUR HONOR.  IT SAYS

5  "IN EFFECT."

6          **MR. KESSLER:**  I DON'T -- I JUST DON'T RECALL IN THE

7  CLASS NOTICE.

8          **MR. KATZ:**  YES.

9          **THE COURT:**  IS THAT RIGHT?  LET ME ASK MY LAW CLERK.

10          **MR. KATZ:**  I WILL GET IT FOR YOUR HONOR.

11          **THE COURT:**  HE SAYS "IN EFFECT."

12          SO LET'S SAY SOMEBODY DID SIGN ONE IN '03, AND SO

13  THEY WOULD HAVE BEEN ENTITLED TO PART OF THAT PAYMENT UNDER

14  PLAINTIFFS' THEORY IN '04.

15          **MR. KESSLER:**  NO.  BUT, YOUR HONOR, THEY HAD '03

16  RIGHTS.  THEY HAD '04 RIGHTS.  SO, FOR EXAMPLE, TO GIVE YOUR

17  HONOR AN EXAMPLE, MR. ROWLEY WOULD CALCULATE SOMEONE WHO SIGNED

18  IN '03 GETS IN '04 THE MONEY FOR '03.

19          THE MONEY FOR WHEN IT'S IN EFFECT IN '04, HE

20  CALCULATES IS '05.  IN OTHER WORDS, THAT'S NOT THE MONEY FOR

21  HAVING THEIR RIGHTS IN EFFECT THEN.

22          SO YOU'RE -- IN EFFECT, IT'S DOUBLE COUNTING.  IT HAS

23  TO BE WHEN THE -- THE GLA WAS IN EFFECT.

24          I'LL GIVE YOU A BETTER EXAMPLE.  LET'S SAY SOMEONE

25  SIGNED -- LET'S SAY SOMEONE SIGNED AN AGREEMENT THAT EXPIRED IN

1 DECEMBER OF '03.

2            MR. ROWLEY WOULD SAY:  "OKAY, I'M GIVING THEM THIS

3 PAYMENT FOR '03."

4            THEY DON'T HAVE ANY GLA IN EFFECT AT THIS TIME.  BUT

5 HE WOULD STILL GIVE THEM THE PAYMENT BECAUSE IT'S AN '03

6 PAYMENT.

7            IN OTHER WORDS, WHEN HE LOOKS AT SEPTEMBER '04, HE

8 DOESN'T LOOK AT ALL:  DO THEY HAVE IT IN EFFECT, THE GLA HERE?

9            HE LOOKS:  DO THEY HAVE A GLA EFFECT BACK IN DECEMBER

10 OF '03?

11            THAT'S THE ONLY THING HE LOOKS AT.

12            SO ESSENTIALLY, ESSENTIALLY, THESE ARE '03 RIGHTS.

13 THAT'S WHEN IT GOES.

14            AND, BY CONTRAST, LET'S SAY SOMEONE HAD A GLA IN

15 EFFECT IN SEPTEMBER '04, BUT NOT IN '03.  THE PRODUCTS LICENSED

16 THEN COULDN'T HAVE HIS RIGHTS OR ANY ENTITLEMENT.  THEY DIDN'T

17 EVEN HAVE A LICENSE IN EFFECT THEN IN '03.

18            SO THE FACT THAT YOU HAVE A GLA IN EFFECT IN

19 SEPTEMBER '04 COULDN'T POSSIBLY GIVE YOU ANY RIGHTS TO '03

20 MONEY.  IT COULDN'T POSSIBLY DO THAT.

21            SO MR. ROWLEY IS ACTUALLY CORRECT IN HIS ANALYSIS OF

22 WHICH RIGHTS GO TO WHICH PERIOD.  THE PROBLEM IS ALL THE '03

23 RIGHTS ARE BEFORE THE STATUTE OF LIMITATIONS PERIOD.

24            AND THE ONLY REASON, YOUR HONOR, HE EVEN CALCULATED

25 '03 -- AND THIS IS CORRECT, YOUR HONOR -- IS BECAUSE AT THE

1  TIME HE DID HIS STUDY HE THOUGHT THE STATUTE OF LIMITATIONS WAS

2  FOUR YEARS, BECAUSE THAT'S WHEN THEY WERE ARGUING THAT

3  CALIFORNIA LAW APPLIED WITH RESPECT TO THAT.

4          AND HE THOUGHT THERE WAS A FOUR-YEAR STATUTE OF

5  LIMITATIONS, SO HE CALCULATED THE FOUR-YEAR PAYMENTS.

6          AFTER WE GOT INTO YOUR HONOR'S RULING IT HAD TO BE

7  D.C. OR VIRGINIA LAW, AND WE AGREED ON D.C, AND THAT REDUCED

8  THE STATUTE OF LIMITATIONS TO THREE, THEY HAD TO COME UP WITH

9  SOME WAY TO TRY TO SQUEEZE FOUR PAYMENT OBLIGATIONS INTO THREE

10 YEARS, AS IF THE REDUCTION IN STATUTE HAD NO CONSEQUENCE.

11         THAT'S IMPROPER, YOUR HONOR.  THAT'S NOT THE WAY THIS

12 SHOULD BE DONE.

13         **MR. KATZ:**  YOUR HONOR, THIS IS REALLY JUST AN ABSURD

14 INTERPRETATION OF CONTRACT LAW.

15         IF I PERFORM LEGAL SERVICES FOR SOMEONE FOR THE MONTH

16 OF DECEMBER 31ST, 2003, OR END OF YEAR, AND THEN I SEND THEM A

17 BILL.  AND OUR CONTRACT ENDS THEN, AND I SEND THEM A BILL, AND

18 THEY OWE ME MONEY IN 30 DAYS, AND THEY DON'T PAY ME, THAT'S

19 WHEN THE WRONG OCCURS.

20         IT'S THE SAME THING HERE.  MR. KESSLER WOULD SAY THAT

21 THE '03 AGREEMENTS WERE MEANINGLESS, BECAUSE THEY DON'T EVEN

22 KNOW HOW MUCH THEY OWE ON DECEMBER 31ST OF '03.

23         THEY HAVE A PRACTICE, AND THE WRONG OCCURS WHEN THE

24 PAYMENT IS NOT MADE.  AND NO ONE WOULD HAVE HAD ANY WAY TO KNOW

25 THAT THIS WRONG OCCURRED UNTIL THEY DIDN'T GET THEIR MONEY IN

1  SEPTEMBER OF '04.

2         THAT'S THE WAY CONTRACT LAW WORKS.  THERE'S NO

3  CONTRACT CASE THAT SAYS YOU HAVE TO GET YOUR MONEY EXACTLY ON

4  THE DAY THE CONTRACT ENDS.  THAT'S NOT THE WAY THE LAW WORKS.

5  THAT'S NOT THE WAY THE WORLD WORKS.

6         **MR. HILBERT:**  YOUR HONOR, I HAVE TO CORRECT ONE

7  MISSTATEMENT, AS WELL.  MR. ROWLEY HAS BEEN APPLYING THIS

8  THEORY CONSISTENTLY THROUGHOUT THIS CASE.  IN OUR EARLIER

9  INITIAL EXPERT REPORT, HE INCLUDED ONE YEAR EARLIER THAN THE

10  '03 PAYMENTS.

11         WHEN YOUR HONOR ORDERED THAT D.C. LAW WOULD APPLY, WE

12  SUBMITTED A SUPPLEMENTAL REPORT THAT REMOVED THAT FIRST YEAR.

13         SO WHAT MR. KESSLER SAID IN THAT WE'RE TRYING TO USE

14  SOMETHING THAT WE PREPARED BEFORE AND TRYING TO COME UP WITH AN

15  ARGUMENT TO SHOEHORN THAT THEORY INTO NOW IS INCORRECT.  WE DID

16  ADJUST OUR NUMBERS TO REMOVE THAT FIRST YEAR THAT WOULD HAVE

17  BEEN PROPER UNDER THE LARGER STATUTE OF LIMITATION PERIOD.

18         **MR. KESSLER:**  AND, YOUR HONOR, ONE FINAL POINT IN

19  THIS.  THE ISSUE IS IF YOU HAVE A PRODUCT IN '03, WHOSE RIGHTS

20  COULD POSSIBLY BE INCLUDED IN '03?  IT ONLY COULD BE PEOPLE WHO

21  HAD GLA'S IN EFFECT IN '03, BEFORE THE LIMITATIONS PERIOD.

22  OKAY?

23         AND WE'RE GOING TO GET TO THE ISSUE OF INDIVIDUALIZED

24  INJURY, BUT UNDER THEIR ANALYSIS, THEY HAVE SOMEONE WHO HAD A

25  GLA EXPIRING IN '03, HAD NO GLA IN EFFECT DURING THE -- DURING

1  THE CLASS PERIOD IN '04, AND THEY WOULD BE PAID BECAUSE

2  MR. ROWLEY'S GIVING THEM DAMAGES BECAUSE THEY HAD A GLA IN

3  EFFECT BEFORE THE STATUTE OF LIMITATIONS.  AND THEY -- BECAUSE

4  HE --

5           **THE COURT:**  LOOK, LOOK.

6           **MR. KESSLER:**  OKAY.  WE'VE ARGUED IT.

7           **THE COURT:**  I AM GOING TO THINK ABOUT THIS.  I DON'T

8  HAVE AN ANSWER FOR YOU HERE.

9           I'LL JUST SAY TO THE PLAINTIFFS:  SOMETIME DISCRETION

10  IS THE BETTER PART OF VALOR.  AND YOU SHOULD TRY TO MAKE A

11  CLASS THING WITH ALL THESE MESSY PROBLEMS EASY FOR THE JUDGE

12  AND THE JURY AND NOT HARD.

13          I DON'T KNOW THE ANSWER TO THIS.  AND I'M GOING TO GO

14  THINK ABOUT IT.  AND IF -- THERE'S TWO POSSIBILITIES.  ONE IS

15  THAT I'M GOING TO LEAVE IT MORE OR LESS AS IT IS.  AND,

16  MR. KESSLER, IT WILL BE A POINT OF ARGUMENT.

17          AND I THINK YOU MAKE SOME GOOD ARGUMENTS THAT MAKE IT

18  LOOK -- PLAINTIFFS LOOK EXCEEDINGLY GREEDY HERE.  AND THE JURY

19  COULD THROW THE BABY OUT WITH THE BATHWATER FOR THAT VERY

20  REASON ALONE.

21          BUT I AM NOT CERTAIN THAT YOU'RE RIGHT, SO I'M GOING

22  TO GO THINK ABOUT THIS.  AND I'LL LET YOU KNOW LATER ON.

23          **MR. KATZ:**  YOUR HONOR, WE HAVE TRIED TO MAKE THIS AS

24  EASY AS POSSIBLE.  IT IS A MASTERPIECE OF OBFUSCATION, AS YOUR

25  HONOR HAS NOTED.

1     **THE COURT:**  WELL, YOUR SIDE HAS BEEN A MASTER OF

2  OBFUSCATION AND CIRCULAR ARGUMENTS, AS WELL.  AND I DON'T -- I

3  THINK BOTH SIDES SOMETIMES -- I WISH YOU HAD GIVEN ME MORE

4  ASSISTANCE.  BUT --

5     **MR. KATZ:**  LORD KNOWS WE'VE TRIED.

6     **THE COURT:**  -- I'M GOING HAVE TO TRY TO SORT IT OUT

7  MYSELF, AND I WILL.  AS A CONCESSION TO THE SHORTNESS OF LIFE,

8  WE HAVE TO MOVE ON.

9     ENOUGH ON 31.

10     32.

11     **MR. LECLAIR:**  YOUR HONOR, I'M SORRY.  WE HAVE JUST A

12  SEPARATE PROBLEM ON 31.  AND THIS IS IN THE LINE 6.  WE REQUEST

13  THAT YOUR HONOR STRIKE THE REFERENCE TO LICENSING OF RETIRED

14  PLAYER GROUP RIGHTS.  IT'S THE SAME AS WE HAD IN THE EARLIER --

15  EARLIER PARAGRAPH.

16     IT ADOPTS THE DEFENDANTS' VIEW, AND IT'S EASY TO JUST

17  SAY:  "... WERE RECEIVED BY DEFENDANTS THAT WERE COVERED BY THE

18  RETIRED PLAYER RPGLA."

19     **THE COURT:**  WHAT DID I SAY?  WHAT WAS THAT OTHER

20  PARAGRAPH THAT WE HAD THIS SAME ISSUE?

21     **MR. GARZA:**  PARAGRAPH 16, YOUR HONOR.

22     **THE COURT:**  JUST A MINUTE.  I'M GOING TO USE PARALLEL

23  LANGUAGE.

24     **MR. LECLAIR:**  ALL RIGHT.  THAT'S FINE, YOUR HONOR.

25     THERE'S ALSO A DUPLICATE WORD, YOUR HONOR, "RETIRED

1  PLAYER," THEN IT SAYS "RPGLA."

2          SO YOU PROBABLY WANT TO STRIKE "RETIRED PLAYER."

3          **THE COURT:**  YES.  THANK YOU.

4          ALL RIGHT.  WE'RE UP TO THE FIDUCIARY DUTY POINT, SO

5  WE WILL TAKE A BREAK AT THIS POINT AND COME BACK IN 15 MINUTES.

6          (RECESS WAS TAKEN.)

7          **THE COURT:**  PLEASE BE SEATED.  LET'S GO BACK TO WORK.

8  ALL RIGHT.  WE'RE UP TO PARAGRAPH 32.

9          ANY OBJECTIONS?

10          **MR. KESSLER:**  YOUR HONOR, JUST THAT THERE'S A TYPO IN

11  LINE 11, WHICH SAYS:

12          "YOU'VE HEARD SOME TESTIMONY RELATING TO WHETHER THE

13  WORD 'OR' SHOULD BE STRICKEN."

14          **MS. NAYLOR:**  "OR THE WORD 'NOT' SHOULD BE ADDED."

15          **THE COURT:**  WE WILL SAY "WHETHER OR NOT."  OKAY.

16          ANYTHING MORE ON 32?

17          ALL RIGHT.  33.

18          **MR. KESSLER:**  IN 33, YOUR HONOR, THIS IS THE FIRST

19  TIME THIS COMES UP.  AND I'LL RAISE THE ISSUE NOW.  YOUR HONOR

20  KNOWS THAT IT'S OUR POSITION THAT CLASS-WIDE DAMAGES IS NOT THE

21  APPROPRIATE REQUIREMENT IN THE NINTH CIRCUIT.

22          WE'RE ARGUED THAT.  WE HAVE CITED CONTROLLING NINTH

23  CIRCUIT AUTHORITY.

24          I THINK THE ISSUE THAT HAS COME UP ABOUT THE FACT

25  THAT THEIR EXPERT PUT IN NO EVIDENCE EVEN HOW TO DIVIDE THE

1   MONEY WITH RESPECT TO DIFFERENT -- DIFFERENT CLASS MEMBERS

2   HAVING DIFFERENT GLA'S IN EFFECT IN DIFFERENT YEARS WHICH

3   REQUIRE INDIVIDUAL CALCULATIONS.

4           SO THERE'S BEEN NO PROOF EVEN IF IT WAS A CLASS-WIDE

5   BASIS, A COMPLETE FAILURE PROOF.  WE BELIEVE, YOUR HONOR, THAT

6   IT HAS TO BE SOME TYPE OF INDIVIDUALIZED INJURY SHOWING.

7           AND EVEN IF YOU HAVE A CLEAR -- CASES THAT HAVE

8   ALLOWED CLASS-WIDE THEORIES, WHAT YOU HAVE TO DO IS HAVE

9   EVIDENCE THAT THE CLASS-WIDE THEORY APPLIES TO EACH PARTICULAR

10  CLASS MEMBER IN A PARTICULAR WAY.

11          SO, FOR EXAMPLE, THEY PUT NO EVIDENCE IN THAT THERE

12  WAS A FORMULA, OR WHAT THAT FORMULA WOULD BE FOR THE JURY, AS

13  TO HOW EACH PARTICULAR CLASS MEMBER WAS INJURED.

14          THEY MAY SAY THEIR EXPERT COULD DO IT.  THEY TOLD YOU

15  THE EXPERT COULD DO IT IN THE FUTURE.  THAT EVIDENCE HAS TO BE

16  PRESENTED INTO THE RECORD.

17          THERE'S BEEN NO EFFORT EVEN TO PUT INTO EVIDENCE A

18  FORMULA THE JURY COULD APPLY TO DO THIS.

19          **THE COURT:**  WHAT IS THE DECISION BY THE NINTH CIRCUIT

20  THAT YOU RELY ON?

21          **MR. KESSLER:**  THERE ARE TWO, YOUR HONOR.  LET ME GET

22  MY BRIEF ON THAT, PLEASE.  ONE SECOND.

23          YES, YOUR HONOR.  THE FIRST DECISION --

24          **THE COURT:**  WHAT PAGE SHOULD I LOOK AT?

25          **MR. KESSLER:**  IN MY MOST RECENT MEMORANDUM, PAGE 10,

1  THE TWO NINTH CIRCUIT CASES ARE:

2          KLINE V. COLDWELL BANKER & COMPANY, AND THE SECOND

3  CASE IS ABUAN, A-B-U-A-N V. GENERAL ELECTRIC COMPANY.  AND

4  THESE WERE TWO RULE 23 CASES.

5          WHAT HAPPENED IS, IT HAD TO DO WITH:  WAS

6  INDIVIDUALIZED INJURY REQUIRED?  SO THESE WERE GROUNDS FOR

7  DECERTIFYING THE CLASS, BECAUSE IT WAS AN INDIVIDUAL ISSUE.

8          AND IN BOTH CASES THE NINTH CIRCUIT SAID:  REGARDLESS

9  OF RULE 23, ULTIMATELY THE TRIER OF FACT HAS TO DO THIS

10  PLAINTIFF BY PLAINTIFF.

11          AND THIS TRIER OF FACT HAS BEEN PRESENTED WITH NO

12  EVIDENCE TO DO IT PLAINTIFF BY PLAINTIFF.

13          SO WE HAD A RULE 50 MOTION ON THIS.  YOUR HONOR

14  RESERVED.

15          BUT IN THE INSTRUCTIONS, WE THINK YOUR HONOR HAS TO

16  INSTRUCT THE JURY THAT THERE HAS TO BE INDIVIDUALIZED PROOF.

17  AND IF THEY HAVEN'T PUT IT THERE, WE SHOULD BE ABLE TO ARGUE

18  THAT TO THE JURY, AT A MINIMUM.

19          **THE COURT:**  WHAT DO YOU SAY TO THAT, MR. LECLAIR?

20          **MR. LECLAIR:**  YOUR HONOR, THIS IS --

21          **THE COURT:**  LET ME ASK MY LAW CLERK.

22          PLEASE GO GET ME 508 F.2D.  NOT F.3D, BUT F.2D.

23          ALL RIGHT.  GO AHEAD.

24          **MR. LECLAIR:**  YOUR HONOR, IT'S ENTIRELY PERMISSIBLE

25  TO PUT ON IN A SITUATION WHERE YOU HAVE A CONTRACT AND THE

1    BREACH IS A UNIFORM BREACH AND THE DAMAGES FLOW, OUR EXPERT HAS

2    CALCULATED YEAR BY YEAR WHAT THE DAMAGES ARE FOR THE MEMBERS OF

3    THE CLASS.  THAT'S -- THAT IS ENTIRELY COMPLIANT --

4         **THE COURT:**  DID HE TAKE INTO ACCOUNT THE NUMBER OF

5    PEOPLE WHO HAD GLA'S IN EFFECT?

6         **MR. LECLAIR:**  YES.

7         **THE COURT:**  IN OTHER WORDS, FROM YEAR TO YEAR THE

8    NUMBER CHANGED, HE TOOK THAT INTO ACCOUNT?

9         **MR. LECLAIR:**  HE CERTAINLY DID, YOUR HONOR.  AND

10   THAT'S WHY IT'S AN APPROPRIATE METHODOLOGY AND PERFECTLY

11   SUITABLE UNDER THE NINTH CIRCUIT STANDARD.

12        THE JURY HAS THE BASIS TO DO EXACTLY WHAT THEY'RE

13   REQUIRED TO DO.

14        **THE COURT:**  LET -- I WANT TO BE CLEAR ON SOMETHING.

15   SO HOW MANY -- LET'S JUST TAKE THE 2007 PAYMENT IN SEPTEMBER.

16   HOW MANY -- AS OF SEPTEMBER '07, HOW MANY CLASS MEMBERS WERE

17   THERE?  AND HOW MANY ACTIVE PLAYERS WERE THERE?

18        **MR. LECLAIR:**  THERE WERE, I BELIEVE YOU SAID, 21 IN

19   '07?

20        **MR. KATZ:**  WE HAVE TO GET --

21        **MR. LECLAIR:**  HERE WE GO.  HERE IT IS, YOUR HONOR.

22        IT'S 22 IN '07, 1208 IN '06, 1438 IN '05, 1426 IN

23   '04, AND 1982 IN '03.

24        **THE COURT:**  IS ALL THIS IN EVIDENCE NOW?

25        **MR. LECLAIR:**  YES.

1          THE COURT:  IT'S IN EVIDENCE.  NOT JUST THAT THE

2    EXPERT, BUT IT'S ACTUALLY BEFORE THE JURY?

3          MR. LECLAIR:  IT'S BEFORE THE JURY.  MATTER OF FACT,

4    THERE'S ACTUALLY A CHART, YOUR HONOR, THAT SHOWS THE NAME OF

5    EACH CLASS MEMBER AND THE YEAR IN WHICH THEIR GLA'S WERE IN

6    EFFECT.

7          THE COURT:  DO WE ALSO KNOW WHAT THE NUMBER OF ACTIVE

8    PLAYERS WERE?

9          MR. LECLAIR:  YES, WE HAVE THAT, AS WELL, YOUR HONOR.

10          THE COURT:  SO WHY ISN'T THAT ENOUGH THEN?

11          MR. KESSLER:  YOUR HONOR, THE NUMBER OF ACTIVE

12    PLAYERS IS NOT IN EVIDENCE, NUMBER ONE.  NEVER PUT IN EVIDENCE

13    BY PLAINTIFFS.

14          THE COURT:  MR. LECLAIR JUST TOLD ME IT WAS.

15          MR. KESSLER:  EXCUSE ME?

16          THE COURT:  MR. LECLAIR JUST TOLD ME IT WAS.

17          MR. KESSLER:  I THINK HE MEANT HIS EXPERT DID THAT IN

18    HIS EXPERT REPORT.

19          MR. LECLAIR:  I DO NOT, YOUR HONOR.

20          WE PUT INTO EVIDENCE THE CHARTS OF THE EQUAL SHARE

21    ROYALTY THAT SHOWS EXACTLY THE NUMBER OF ACTIVE PLAYERS THAT

22    WERE INCLUDED IN THE EQUAL SHARE ROYALTY, YEAR BY YEAR.  THAT

23    WAS IN EVIDENCE DURING PAT ALLEN.

24          THE COURT:  WELL, I'M NOT TALKING ABOUT ILLUSTRATIVE

25    CHARTS.

1          **MR. LECLAIR:**  NO, NO.

2          **THE COURT:**  IS IT SOMETHING THAT'S GOING TO BE IN THE

3    JURY ROOM --

4          **MR. LECLAIR:**  IT IS.

5          **THE COURT:**  -- IN TESTIMONY?

6          **MR. HILBERT:**  IT'S EXHIBITS 1296, 1298, 1299 AND

7    1300.

8          **MR. KESSLER:**  YOUR HONOR?

9          **THE COURT:**  WHY THEN -- I MEAN, IF ALL THAT'S TRUE,

10   THEN THE JURY COULD ADD UP HOW MANY THERE WERE RETIRED, HOW

11   MANY THERE WERE ACTIVE, FIGURE OUT THE PER-SHARE BASIS FOR

12   PAYMENT.

13          WHY ISN'T THAT GOOD ENOUGH?

14          **MR. KESSLER:**  YOUR HONOR, LOOKING, FOR EXAMPLE, AT

15   12 --

16          **MR. LECLAIR:**  PAGE NUMBER?

17          **MR. KESSLER:**  -- 96.  DO YOU WANT TO SHOW ME WHAT

18   PAGE NUMBER YOU ARE REFERRING TO?

19          **MR. LECLAIR:**  SURE.

20          IN FACT, I DISPLAYED IT TO THE JURY, YOUR HONOR.

21          **MR. KESSLER:**  WELL, YOUR HONOR, I'LL TELL YOU WHAT --

22   WHAT THE PROBLEM HERE IS.

23          DO WE HAVE THE ABILITY TO DISPLAY?

24          I'LL HAND IT UP TO YOUR HONOR, OKAY?  THIS SHOWS THE

25   TOTAL -- THE TOTAL AMOUNT OF DOLLARS PAID EACH YEAR TO HOW MANY

1  PLAYERS.  IT DOESN'T EXPLAIN HOW MANY PRACTICE SQUAD PLAYERS

2  THERE ARE.  SO YOU HAVE NO WAY OF KNOWING WHAT THE SHARES WERE

3  FOR PRACTICE SQUAD PLAYERS, WHICH IS A THOUSAND DOLLARS,

4  DIFFERENT FROM THE OTHERS.

5        YOU HAVE NO WAY OF KNOWING HOW MANY ARE THE ACTIVE

6  PLAYER SHARES, THE EQUAL SHARES VERSUS THE PRACTICE SQUAD.

7  JUST A FOOTNOTE SAYING THAT THEY WERE PRACTICE SQUAD PLAYERS

8  WHO WERE PAID THAT.

9        AND, MOST IMPORTANTLY, WHAT THEY SHOULD HAVE DONE IS

10  THEIR EXPERT SHOULD HAVE EXPLAINED TO THE JURY WITH EXPERT

11  OPINION SAYING THE WAY IN WHICH YOU SHOULD APPLY THIS

12  METHODOLOGY, IF THEY WERE GOING TO DO THIS, IS THAT YOU TAKE

13  THIS NUMBER, DIVIDE IT BY THIS NUMBER, AND YOU DO THESE

14  CALCULATIONS, AND GIVEN THE JURY SOME BASIS.

15        THE IDEA THAT PLAINTIFFS IN CLOSING ARGUMENT -- THERE

16  IS NO EVIDENCE OF HOW MANY ARE PRACTICE SQUAD PLAYERS.  THEY

17  CAN'T EVEN TELL THE JURY HOW TO MAKE THESE DETERMINATIONS.

18        AND SO, ONE, WE HAVE A PROBLEM WITH THAT.

19        **THE COURT:**  JUST A SECOND.  THE PAGE THAT'S BEEN

20  HANDED TO ME -- LET'S MAKE SURE, MR. LECLAIR.  IS THAT WHAT

21  YOU'RE TALKING ABOUT, THE PAGE THAT HAS THE BATES NUMBER ENDING

22  324?

23        **MR. LECLAIR:**  YES, YOUR HONOR.

24        **THE COURT:**  WHERE DOES THAT TELL US WHAT THE NUMBER

25  OF ACTIVE PLAYERS WERE THAT GOT A -- GOT AN EQUAL SHARE AS

1   OPPOSED TO THE THOUSAND-DOLLAR SHARE?

2          **MR. LECLAIR:**  IT'S -- THE NUMBER IS IN THE FOURTH

3   COLUMN, YOUR HONOR.

4          **THE COURT:**  LET'S JUST TAKE THE VERY LAST ONE.  THIS

5   ONLY GOES UP TO 2002.

6          **MR. LECLAIR:**  WELL, WE PUT IT IN THE FOLLOWING YEARS,

7   ALSO.  THIS WAS JUST AN EXAMPLE, YOUR HONOR.

8          **THE COURT:**  SO THIS SAYS "2,230."

9          WHAT DOES THAT MEAN?  WHAT DOES THAT --

10         **MR. LECLAIR:**  THAT MEANS THAT'S THE NUMBER OF ACTIVE

11  PLAYERS THAT WERE INCLUDED IN THE EQUAL SHARE CALCULATION, YOUR

12  HONOR.

13         **MR. KESSLER:**  YOUR HONOR --

14         **THE COURT:**  THEN, IT SAYS -- OKAY.  SO THAT WOULD BE

15  ACTIVE PLAYERS BUT NOT -- WHAT DOES THAT FOOTNOTE MEAN:

16  "AMOUNT OF CHECK FOR NONPRACTICE SQUAD PLAYERS ONLY"?

17         WHAT DOES THAT MEAN?

18         **MR. LECLAIR:**  THAT MEANS THAT IT DOESN'T INCLUDE THE

19  THOUSAND-DOLLAR CHECKS FOR THE PRACTICE SQUAD PLAYERS.

20         **MR. KESSLER:**  YOUR HONOR, HERE'S THE PROBLEM.  OF

21  COURSE, THERE'S BEEN NO EVIDENCE AS TO WHAT THIS CHART MEANS,

22  SO WE GET LAWYERS' ARGUMENT.  THE CHART WAS IN EVIDENCE BECAUSE

23  THEY PUT THE WHOLE DOCUMENT IN EVIDENCE.

24         BUT WHAT IT SAYS HERE IS:  "THE TOTAL PAID INCLUDES

25  150 TO 200 PRACTICE SQUAD PLAYERS A YEAR."

1          WE HAVE NO IDEA WHETHER IT'S 150 OR WHETHER IT'S 200,

2    OR WHAT THE NUMBER IS.

3          THE AMOUNT OF THE CHECK IS -- IN OTHER WORDS, THE

4    AMOUNT OF CHECK FOR NONPRACTICE SQUAD PLAYERS ONLY, THERE'S NO

5    EXPLANATION.  WE DON'T KNOW.  WE JUST KNOW THE TOTAL INCLUDES

6    THE PRACTICE SQUAD.  WE DON'T KNOW HOW THAT FITS INTO THIS

7    AMOUNT OF CHECK.

8          AND THERE WAS NO QUESTIONS ASKED OF MR. ALLEN TO

9    EXPLAIN THIS CHART.  THERE'S NOTHING THERE.  THIS IS WHAT THEIR

10   EXPERT SHOULD HAVE DONE.

11         **MR. LECLAIR:**  THIS IS WHAT HE --

12         **MR. KESSLER:**  SO EVEN IF YOUR HONOR GIVES A PROPER

13   INSTRUCTION AND TELLS THE JURY TO MAKE THESE CALCULATIONS I

14   DON'T KNOW HOW THE JURY COULD DO IT WITHOUT SPECULATION.

15         **MR. LECLAIR:**  YOUR HONOR, THAT'S WHAT OUR EXPERT DID.

16   HE DID DO THIS CALCULATION.  AND THEY HAD EVERY OPPORTUNITY TO

17   CROSS-EXAMINE HIM IF THEY WANTED TO BRING THINGS OUT TO THE

18   JURY.

19         **MR. KESSLER:**  THAT WASN'T MY --

20         **THE COURT:**  I'M GOING TO DENY THIS MOTION, BECAUSE IT

21   LOOKS TO ME LIKE THERE'S SUFFICIENT EVIDENCE FROM WHICH THE

22   JURY COULD FIGURE OUT FOR EACH PAYMENT INTO THE FUND HOW MANY

23   ACTIVE PLAYERS PARTICIPATED IN IT.  AND WE KNOW HOW MANY CLASS

24   MEMBERS THERE WERE BY YEAR.

25         IT'S TRUE THAT THERE IS SOME LOOSEY-GOOSEY ROOM ON

1   THE PRACTICE SQUAD PEOPLE.  BUT IF YOU LOOK AT THE ACTUAL

2   DOLLARS THAT COULD BE -- IT'S GOING TO BE 150 TO 200 PER YEAR.

3        AND AT A THOUSAND DOLLARS A POP, THAT'S ONLY 200,000,

4   AT MOST, OUT OF 13, $14 MILLION.  IT'S GOING TO BE SO DE

5   MINIMUS THAT THIS IS CLOSE ENOUGH.

6        SO THAT MOTION IS DENIED.  THERE IS -- THERE IS A

7   METHODOLOGY BEFORE THE JURY WHEREBY THEY COULD CRANK THE

8   NUMBERS AND COME UP WITH -- ALL RIGHT.

9        **MR. KESSLER:**  YOUR HONOR, THEN, I WOULD AT LEAST

10  REQUEST THAT THE JURY BE INSTRUCTED THEY HAVE TO MAKE THOSE

11  CALCULATIONS.

12       RIGHT NOW, YOUR HONOR'S INSTRUCTIONS SIMPLY SAY ALL

13  THEY HAVE TO FIND -- IT STARTS IN 33, BUT WE WOULD ASK FOR AN

14  INSTRUCTION ON THIS LATER.  THEY HAVE TO DETERMINE:  HAVE

15  PLAINTIFFS PROVEN, THROUGH A FORMULA OR OTHERWISE, WHAT THE

16  INDIVIDUAL INJURIES ARE SO THAT THE JURY WILL TRY TO MAKE THOSE

17  CALCULATIONS?

18       RIGHT NOW YOU'VE ONLY TOLD THEM IT'S CLASS WIDE.  WE

19  THINK THAT'S INAPPROPRIATE.

20       **THE COURT:**  AT THIS POINT, I'M GOING TO LEAVE IT AS

21  IT IS, AS AN INTRODUCTORY STATEMENT.  WHEN WE GET TO THE MORE

22  DETAILED ONES YOU CAN RENEW THAT POINT.

23       ALL RIGHT.  ALL OBJECTIONS TO 33 ARE OVERRULED.

24       ANY MORE FROM YOU, MR. LECLAIR?

25       HEARING NONE, NUMBER 34.

1          **MR. KESSLER:** ONE MORE, GOING BACK TO 32.

2          **THE COURT:** WHAT DO YOU HAVE?

3          **MR. KESSLER:** LINE 14, WHERE IT SAYS: "A FIDUCIARY

4  DUTY CLAIM ARISES," I THINK YOUR HONOR MEANT TO SAY: "THE

5  FIDUCIARY DUTY CLAIM IS CLAIMED TO ARISE ONLY FROM THE RPGLA."

6          IN OTHER WORDS, IT DOESN'T -- YOUR HONOR IS NOT,

7  SURELY, INSTRUCTING THAT IT DOES ARISE.

8          **THE COURT:** YOU'RE SAYING THE FIDUCIARY CLAIM --

9          **MR. KESSLER:** I JUST THINK IT WOULD BE CONFUSING TO

10  THE JURY. "THE FIDUCIARY DUTY CLAIM IS ALLEGED TO ARISE," OR

11  SOMETHING LIKE THAT.

12          **THE COURT:** ALL RIGHT. "ALLEGED." SAY "IS ALLEGED

13  TO ARISE."

14          **MR. KESSLER:** "TO ARISE."

15          **THE COURT:** ALL RIGHT.

16          **MR. LECLAIR:** WELL, WAIT A MINUTE. I'M SORRY, YOUR

17  HONOR. COULD I HEAR THAT AGAIN?

18          **THE COURT:** ON LINE 13, IT'S GOING TO SAY: "THE

19  FIDUCIARY CLAIM IS ALLEGED TO ARISE ONLY FROM THE RPGLA" AS

20  OPPOSED TO "ARISES."

21          IT MAKES IT SOUND LIKE THE COURT IS VOUCHING FOR THE

22  PLAINTIFFS' THEORY.

23          **MR. LECLAIR:** THE PROBLEM I HAVE WITH THAT, YOUR

24  HONOR, IS THAT, ACTUALLY, THAT SOUNDS LIKE IT'S WHAT WE SAY, AS

25  OPPOSED TO WHAT THE COURT IS SAYING. THIS IS WHAT THE COURT IS

1　TELLING THE JURY.

2　　　　　OUR CLAIM, ACTUALLY, IS THAT -- WELL, HANG ON.  MAYBE

3　THIS IS NOT WORTH IT.

4　　　　　**THE COURT:**  I'M GOING TO OVERRULE THAT OBJECTION.

5　　　　　**MR. LECLAIR:**  FINE, YOUR HONOR.

6　　　　　**THE COURT:**  WE'RE ON TO 34.  ANY OBJECTION?

7　　　　　PLEASE.  WE'VE GOT TO MOVE THIS ALONG.  COME ON.  34.

8　　　　　**MR. KESSLER:**  NO, YOUR HONOR.  I THINK THAT'S OKAY.

9　　　　　**THE COURT:**  HEARING NONE, 35.

10　　　　　**MR. LECLAIR:**  NONE.

11　　　　　**MR. KESSLER:**  YOUR HONOR, ON -- I THINK 35 IS OKAY.

12　　　　　**THE COURT:**  36.

13　　　　　**MR. LECLAIR:**  NO OBJECTION.

14　　　　　**THE COURT:**  36.

15　　　　　**MR. KESSLER:**  36, WE DO.

16　　　　　**THE COURT:**  ALL RIGHT.  WHAT IS IT?

17　　　　　**MR. KESSLER:**  AND THIS WILL COME UP.  IT RELATES TO

18　36 AND 38, AS WELL.

19　　　　　WE BELIEVE, AS YOUR HONOR KNOWS, THAT UNDER D.C. LAW

20　THE PREREQUISITE IS CONTROL.  AND IN 36 IT SAYS:  "AN AGENCY

21　RELATIONSHIP IS SOMETIMES CREATED BY AN EXPRESS CONTRACT WHERE

22　ONE SIDE EXPLICITLY AGREES TO BE THE AGENT TO PROMOTE THE OTHER

23　SIDE."

24　　　　　WE DON'T BELIEVE THAT JUST BECAUSE -- EVEN IF YOU

25　AGREED, EVEN IF THE CONTRACT SAID:  "WE AGREE TO PROMOTE THE

1  OTHER SIDE," THAT WOULD BE A CONTRACTUAL CLAIM, A SIMPLE

2  CONTRACT.  UNDER D.C. LAW IT'S A COMMERCIAL ARRANGEMENT.  IT

3  DOESN'T, BY ITSELF, GIVE RISE TO AN AGENCY RELATIONSHIP WHICH

4  WOULD BE A FIDUCIARY DUTY.

5          SO WE OBJECT TO THE FIRST SENTENCE.  WE OBJECT --

6  REALLY, WE OBJECT --

7          **THE COURT:**  WHAT IF THE CONTRACT SAID:  "I AGREE TO

8  BE YOUR AGENT," AND THEY USE THE WORD "AGENT TO PROMOTE YOU"?

9  HOW COULD YOU SAY THAT'S NOT AN AGENCY?

10         **MR. KESSLER:**  YOUR HONOR, I DON'T DISAGREE.  IF IT

11 SAID "AGENCY CONTRACT," OR "I AGREE TO BE YOUR AGENT."

12         THE PROBLEM IS, OF COURSE, THE REAL-WORLD EVIDENCE

13 HERE, AS YOUR HONOR KNOWS, THERE'S NO SUCH REFERENCE IN THE

14 RETIRED PLAYER GLA.

15         SO THIS MAKES IT SOUND LIKE THAT IF THE JURY WERE TO

16 FIND --

17         **THE COURT:**  I'LL SAY "EXPRESSLY AGREES."  BUT I DON'T

18 SEE HOW I COULD MAKE IT ANY CLEARER.  I'M TALKING ABOUT THE

19 WORD "AGENT" IS USED.

20         **MR. KESSLER:**  WHEN YOU SAY "EXPRESSLY AGREES," SINCE

21 THIS CONTRACT DOESN'T EXPRESSLY AGREE, WHY SHOULD THERE BE THIS

22 INSTRUCTION?

23         IN OTHER WORDS, BECAUSE YOU'RE SUGGESTING THAT

24 PERHAPS THEY SOMEHOW IN THIS AGREEMENT COULD FIND THAT EXPRESS

25 AGREEMENT, THERE'S NO -- THERE'S NOTHING IN THE CONTRACT THAT

1    COULD DO THAT.

2           SO I THINK THIS WHOLE 36, YOUR HONOR, IS MISLEADING

3    THE JURY IN THINKING THEY SHOULD BE SEARCHING THE RPGLA TO SEE

4    IF IT SAYS THE WORD "AGENCY" OR SOMETHING LIKE THAT.

5           **THE COURT:**  NO, I DISAGREE WITH YOU ON THAT.  I DON'T

6    THINK THAT COULD POSSIBLY BE -- THE WHOLE POINT OF THIS IS TO

7    HELP THE JURY SEPARATE OUT SOME -- HELP DEFINE THE ISSUE BY

8    SEPARATING OUT DIFFERENT CIRCUMSTANCES.  AND TO START WITH A

9    BASIC, WHICH IS THAT SOMETIMES, LIKE THESE SPORTS FIGURES, THEY

10   HAVE AN EXPRESS AGENCY CONTRACT.  AND WHAT I'M TRYING TO TELL

11   THE JURY HERE IS:  A MERE LICENSE IS NOT SUCH A CONTRACT.

12          BUT THEN, I GO ON TO SAY:  "HOWEVER, A LICENSEE MAY,

13   DEPENDING ON THE CIRCUMSTANCES, ALSO UNDERTAKE TO ACT AS A

14   MARKETING AGENT."

15          SO YOU HAVE AN AGREEMENT HERE THAT IS SUSCEPTIBLE TO

16   THE ARGUMENT THAT IT WAS, INDEED, AN AGENCY CONTRACT.  AND YOU

17   HAVE AN ARGUMENT TO THE CONTRARY.

18          SO SOMEBODY BACK THERE OUGHT TO LEARN HOW TO DRAFT

19   CONTRACTS SO THAT YOU DON'T CREATE THESE POSSIBLE AMBIGUITIES.

20          **MR. KESSLER:**  YOUR HONOR --

21          **THE COURT:**  WHAT I'M TRYING TO DO IS LAY OUT HERE

22   WHAT THE ISSUE IS SO THAT WE WON'T GET THE JURY CONFUSED.

23          **MR. KESSLER:**  YOUR HONOR, AGAIN, I UNDERSTAND YOU'RE

24   OVERRULING THE OBJECTION.  I WOULD AT LEAST ARGUE THAT

25   EVERYTHING FROM LINE 14, ON THE OTHER HAND, SHOULD BE STRICKEN.

```
1              BECAUSE WHAT YOUR HONOR IS SUGGESTING IS THAT IF THE
2    JURY FOUND THAT WE AGREED TO ACT AS, QUOTE, "A MARKETING
3    AGENT," WHICH IS GOING TO BE A VAGUE AND NEBULOUS CONCEPT, NOT
4    EXPRESSLY MENTIONED --
5              THE COURT:  NO, A MARKETING AGENT TO AFFIRMATIVELY
6    PROMOTE THE RIGHTS ON BEHALF OF THE LICENSORS.  I DON'T THINK
7    THAT'S SUBJECT -- THAT'S VERY CLEAR.
8              MR. KESSLER:  OKAY.  WELL, THEN, YOUR HONOR, COULD WE
9    AT LEAST SOFTEN THE LANGUAGE?
10             FOR EXAMPLE, IN YOUR LAST SENTENCE YOU SAY:  "IN THAT
11   CASE, THE LICENSEE IS NOT ONLY A LICENSE, BUT ALSO AN AGENT
12   WITH FIDUCIARY DUTIES," YOUR HONOR, THAT --
13             THE COURT:  WHAT'S WRONG WITH THAT?
14             MR. KESSLER:  BECAUSE I BELIEVE UNDER D.C. LAW, EVEN
15   IF THE AGREEMENT SAID "WE WILL MARKET YOU," THAT WOULD NOT
16   CREATE A FIDUCIARY DUTY.  I THINK THAT'S COMPLETELY
17   INCONSISTENT WITH D.C. LAW.
18             THE COURT:  YOU CAN BE AN AGENT FOR A SPORTS FIGURE
19   AND NOT HAVE A FIDUCIARY DUTY?
20             MR. KESSLER:  YOUR HONOR, AGAIN, WE HAVE A CONTRACT
21   THAT DOESN'T USE THE WORD "AGENT."
22             I THINK IF IT SAID "AGENCY" -- WHERE THE JURY IS
23   GOING TO GET CONFUSED IS THINK ABOUT IF THIS AGREEMENT IMPLIED
24   SOME AGREEMENT TO MARKET, BUT NOT AS AN AGENT, THEY'RE NOT
25   GOING TO UNDERSTAND THESE DISTINCTIONS BETWEEN AGENT, JUST A
```

1  PROMISE TO MARKET.

2         FOR EXAMPLE, WE CITED IN OUR CASES, D.C. CASES, WHERE

3  PEOPLE UNDERTOOK TO MARKET, AND THAT ALONE DIDN'T GIVE THEM A

4  FIDUCIARY DUTY.

5         I'LL GIVE YOU ONE RIGHT NOW.  THIS HAPPENS TO BE A

6  NEW YORK CASE, BUT IT'S RIGHT ON POINT, WHICH IS THE

7  VAN VALKENBURGH CASE, WHICH SAID THAT WHEN AN AUTHOR AND

8  PUBLISHER ENTERED INTO A CONTRACT, WHICH HAD A BEST EFFORTS

9  CLAUSE -- SAID WE'LL USE OUR BEST EFFORTS TO MARKET -- THAT

10  ALONE DIDN'T CREATE A FIDUCIARY DUTY.

11         AND THE PROBLEM IS THERE'S NOTHING IN D.C. LAW TO

12  SUGGEST THAT JUST AGREEING TO MARKET WOULD CREATE A FIDUCIARY

13  DUTY.  YOU'VE GOT TO HAVE -- THIS MAKES -- THIS IS SORT OF THE

14  REVERSE OF MY POSITION.

15         MY POSITION IS CONTROL'S DISPOSITIVE.  YOUR HONOR HAS

16  REVERSED THAT.  THIS SAYS MARKETING IS DISPOSITIVE.  THAT'S

17  WHAT THIS SAYS.

18         IN THAT CASE, THE LICENSEE IS NOT ONLY A LICENSEE,

19  BUT AN AGENT WITH FIDUCIARY DUTIES.  YOUR.

20         HONOR WOULD BE INSTRUCTING THAT AGREEING TO MARKET IS

21  DISPOSITIVE FACTOR.  THAT CAN'T BE THE LAW UNDER D.C.  JUST

22  CAN'T BE.

23         **THE COURT:**  WHAT'S THE NAME OF YOUR DECISION IN

24  NEW YORK?

25         **MR. KESSLER:**  VAN VALKENBURGH, NOOGER AND NEVILLE --

1  V-A-N V-A-L-K-E-N-B-U-R-G-H, NOOGER, N-O-O-G-E-R, AND NEVILLE,

2  N-E-V-I-L-L-E -- <u>INC. V. HAYDEN PUBLISHING</u>, H-A-Y-D-E-N

3  PUBLISHING.  THAT'S 330 NEW YORK -- NYS 2D, 329, 322.

4        **THE COURT:**  LET'S HEAR FROM THE OTHER SIDE ON THIS

5  POINT.

6        **MR. LECLAIR:**  YOUR HONOR, THERE IS -- WHAT YOUR HONOR

7  IS DOING HERE IS ENTIRELY APPROPRIATE -- WE AGREE WITH IT --

8  WHICH IS YOU'RE SETTING UP THE TWO ALTERNATIVES.  EITHER IT'S A

9  BARE LICENSE, OR IT'S AN AGENCY RELATIONSHIP.

10        WE THINK THAT'S ENTIRELY PROPER.

11        THERE'S NOT A D.C. CASE, WE DON'T BELIEVE, THAT

12  SUGGESTS THERE IS ANY PROBLEM WITH THIS.  IT'S NOT DISPOSITIVE.

13  THIS IS MERELY INTRODUCTORY, WHICH SETS FORTH WHAT THE TWO

14  ALTERNATIVES ARE.  AND THEY ARE THE ONLY TWO ALTERNATIVES THAT

15  ARE AVAILABLE, AND THIS LANGUAGE IS APPROPRIATE.

16        **THE COURT:**  WELL, IS IT TRUE THAT IF YOU HAVE A

17  PUBLISHER WHO SAYS, "I'LL USE THE BEST EFFORTS TO MARKET

18  YOUR..." DOES THAT CREATE A FIDUCIARY DUTY?

19        **MR. LECLAIR:**  IT MIGHT NOT UNDER NEW YORK LAW UNDER

20  PARTICULAR FACTS, YOUR HONOR.

21        BUT THIS IS -- A FIDUCIARY RELATIONSHIP IS INEVITABLY

22  DEPENDENT ON THE SITUATION OF THE PARTICULAR CONTRACT.  AND

23  THIS SITUATION IS A FIDUCIARY DUTY BY VIRTUE OF THEIR

24  REPRESENTATIONS, THEIR STATEMENTS AND THEIR CONTRACT.

25        AND THAT'S EXACTLY WHAT WE'VE ARGUED.  AND THIS IS

1  WHAT YOUR HONOR IS TELLING THE JURY.

2          **MR. KESSLER:**  YOUR HONOR, I WOULD ALSO SAY THAT NO

3  WHERE WHEN THEY ARGUED FIDUCIARY DUTY IN ANY OF THEIR BRIEFS OR

4  ARGUMENTS UP UNTIL NOW HAVE THEY MADE THIS THEORY THAT -- UNTIL

5  IT APPEARED IN THE COURT'S INSTRUCTIONS -- THAT MERELY AN

6  AGREEMENT TO MARKET.  THIS WAS NOT EVEN SUGGESTED BY

7  PLAINTIFFS.

8          FINALLY, YOUR HONOR, AT A MINIMUM, IF YOUR HONOR IS

9  INCLINED TO OVERRULE OUR OBJECTION THAT IT'S NOT RELEVANT AT

10  ALL, IT SHOULD ONLY BE A FACTOR, IF CONTROL IS ONLY A FACTOR.

11          **THE COURT:**  I'M GOING TO THINK ABOUT IT.  I DON'T

12  HAVE AN ANSWER.  I SEE THE ISSUE YOU'RE RAISING.  I'M NOT

13  SAYING I AGREE WITH IT, BUT I'M GOING TO EVALUATE IT.

14          ALL RIGHT.  ANYTHING MORE ON 36?

15          37.

16          **MR. LECLAIR:**  NO OBJECTION.

17          **MR. KESSLER:**  37, NO.  NO OBJECTION.

18          **THE COURT:**  38.

19          **MR. KESSLER:**  38, YOUR HONOR, IS THE CONTROL ISSUE,

20  WHICH, AGAIN, WE BRIEFED EXTENSIVELY.  WE BELIEVE IT SHOULD BE

21  DETERMINATIVE.  AND I THINK YOUR HONOR HAS OVERRULED THAT.  I

22  HAVE TO RAISE THAT OBJECTION NOW.

23          **THE COURT:**  ALL RIGHT.  THANK YOU FOR PRESERVING IT.

24  I AM GOING TO SAY IT'S A FIRST AND IMPORTANT FACTOR TO

25  CONSIDER.  I THINK THAT GIVES IT HEIGHTENED IMPORTANCE.  BUT I

1   DON'T THINK THAT THE -- I'VE LOOKED AT THE D.C. CASES, AND I

2   DON'T THINK THEY GO SO FAR AS TO SAY THIS IS -- THIS IS THE END

3   OF THE INQUIRY.

4          **MR. KESSLER:**  WHAT I WOULD SAY, YOUR HONOR, IF AT

5   LEAST YOU AGREE IT'S THE FIRST -- AN IMPORTANT FACT TO

6   CONSIDER, THEN THE LAST SENTENCE OF 36 HAS TO BE CHANGED,

7   BECAUSE THAT WOULD SUGGEST THAT THAT OVERRULES THE WAY IT'S

8   WRITTEN.

9          **THE COURT:**  AS I'VE SAID, I'M GOING TO CONSIDER

10  ADJUSTING THAT.

11          ALL RIGHT.  WHAT DO YOU HAVE, MR. LECLAIR, ON NUMBER

12  38?

13          **MR. LECLAIR:**  ON 38, YOUR HONOR, WE HAVE BEEN LOOKING

14  AND LOOKING.  AND, IN FACT, WHAT WE'VE DISCOVERED IS THAT D.C.

15  FOLLOWS THE RESTATEMENT OF LAW.  AND THE CASES THAT THEY ALL

16  CITE WITH RESPECT TO CONTROL ARE ALL MASTER/SERVANT CASES.

17  THEY'RE DETERMINING WHETHER SOMEONE IS AN EMPLOYEE.

18          AND WHAT THE RESTATEMENT, WHICH REFERS -- THERE'S A

19  PARTICULAR SECTION ON THIS IN THE RESTATEMENT.  AND IT TALKS

20  ABOUT -- THE HEADING OF IT IS:  "PRINCIPALS, POWER AND THE

21  RIGHT OF INTERIM CONTROL."

22          AND HERE'S THE STATEMENT WHICH IS FROM A CASE.  SAYS:

23  "ON THE DEFINITIONS OF CONTROL, WHEN THE AGENT IS NOT AN

24  EMPLOYEE, SEE GREEN V. H&R BLOCK," WHICH IS A MARYLAND CASE.

25  QUOTE:

1          "IN SUM, THE CONTROL A PRINCIPAL EXERCISES OVER ITS

2    AGENT IS NOT DEFINED 'RIGIDLY' TO MEAN CONTROL OVER THE

3    MINUTIAE OF THE AGENT'S ACTIONS, SUCH AS THE AGENT'S PHYSICAL

4    CONDUCT, AS IS REQUIRED FOR A MASTER/SERVANT RELATIONSHIP.

5          "THE LEVEL OF CONTROL MAY BE VERY ATTENUATED WITH

6    RESPECT TO THE DETAILS.  HOWEVER, THE PRINCIPAL MUST HAVE

7    ULTIMATE RESPONSIBILITY TO CONTROL THE END RESULT OF HIS OR HER

8    AGENT'S ACTIONS.  SUCH CONTROL MAY BE EXERCISED BY PRESCRIBING

9    THE AGENT'S OBLIGATIONS OR DUTIES BEFORE OR AFTER THE AGENT

10   ACTS, OR BOTH."

11         WE WOULD REQUEST YOUR HONOR INSTRUCT THE JURY THAT

12   WAY, WITH THAT LANGUAGE, BECAUSE IT'S EXACTLY WHAT WE BELIEVE

13   D.C. LAW --

14         **THE COURT:**  IS THAT IN YOUR BRIEF SOMEWHERE?

15         **MR. LECLAIR:**  THIS IS NOT, YOUR HONOR, BECAUSE I JUST

16   FOUND IT AT MIDNIGHT LAST NIGHT.  BUT I'M HAPPY TO GIVE THIS

17   LANGUAGE TO YOUR HONOR.

18         **THE COURT:**  IS IT IN YOUR MIDNIGHT FILING?

19         **MR. LECLAIR:**  I'M SORRY?

20         **THE COURT:**  IS IT IN YOUR MIDNIGHT BRIEF?

21         **MR. LECLAIR:**  IT'S NOT IN THE MIDNIGHT BRIEF, YOUR

22   HONOR.

23         **MR. KATZ:**  HE FOUND IT AT 12:01.

24         **MR. KESSLER:**  YOUR HONOR, WE WOULD SAY WE ARE QUITE

25   CONFIDENT IF YOUR HONOR LOOKS AT OUR BRIEF, WHICH WAS IN OUR

1  BRIEF LAST NIGHT, WHICH WE FILED AT 8:00, IS THAT THERE IS NO

2  WAY THAT THAT IS THE LAW OF THE DISTRICT OF COLUMBIA.

3          I WOULD ALSO NOTE, YOUR HONOR, WE HAVE A FURTHER

4  OBJECTION TO THIS CHARGE, WHICH IS IN THE DISTRICT OF COLUMBIA

5  LAW THE CONTROL THAT'S INVOLVED WOULD HAVE TO BE DAY-TO-DAY

6  CONTROL OVER OUR OPERATIONS.

7          SO WE HAVE TWO PARTS TO OUR OBJECTION.  ONE, CONTROL

8  SHOULD BE DISPOSITIVE AS A PREREQUISITE TO FINDING THIS

9  FIDUCIARY DUTY.  AND, TWO, THE DESCRIPTION OF THE CONTROL

10  SHOULD BE CONTROL OVER DAY-TO-DAY OPERATIONS.  AND WE CITED

11  D.C. AUTHORITY FOR THAT IN OUR MEMORANDUM.

12          **THE COURT:**  LET ME ASK YOU JUST A GENERAL PRINCIPLE,

13  THOUGH.

14          LET'S SAY YOU HAVE A SITUATION WHERE YOU HAVE A

15  LAWYER-CLIENT, AND THE CLIENT HIRES THE LAWYER TO GO CONDUCT

16  SOME LITIGATION.

17          I THINK WE ALL WOULD AGREE THAT THE LAWYER IS A

18  FIDUCIARY.

19          **MR. KESSLER:**  I THINK, YOUR HONOR, THERE ARE SPECIAL

20  RULES REGARDING LAWYERS --

21          **THE COURT:**  BUT THERE'S NO CONTROL, IS THE POINT I'M

22  TRYING TO MAKE.  VERY LITTLE CONTROL THE CLIENT EVER EXERCISES

23  OVER THE LAWYER.

24          **MR. KESSLER:**  WELL, NO.  ACTUALLY, AS A LEGAL MATTER,

25  UNDER CODE OF ETHICS YOU'RE UNDER THE COMPLETE CONTROL OF THE

1 CLIENT.

2          IF A CLIENT TELLS YOU NOT TO MAKE AN ARGUMENT, YOU

3 CAN'T MAKE IT.  IF A CLIENT WON'T WAIVE PRIVILEGE, YOU CAN'T

4 WAIVE IT.  IF A CLIENT DIRECTS YOU TO SETTLE, YOU HAVE TO

5 SETTLE.

6          IN OTHER WORDS, YOU'RE UNDER THE COMPLETE LEGAL

7 CONTROL OF THE CLIENT IN THAT SITUATION, YOUR HONOR, I BELIEVE.

8          YOU MAY SAY THAT THE CLIENT DOESN'T EXERCISE THAT

9 CONTROL FREQUENTLY BECAUSE THEY DEFER TO THE LAWYER.  THAT'S

10 NOT THE TEST.  THE TEST IS:  DO YOU HAVE THE POWER TO CONTROL

11 THE -- THE WORK THAT'S BEING DONE FOR YOU?

12          IN THE CASE OF A LAWYER, THE CODE OF ETHICS EVEN

13 PROVIDE THAT.  THERE'S CLEARLY THAT CONTROL.

14          **MR. LECLAIR:**  THE EXAMPLE -- YOUR HONOR IS CORRECT

15 THAT THERE IS A BIG DIFFERENCE BETWEEN EMPLOYEE AGENTS.  THE

16 CASES THEY ALL CITE ARE THESE MASTER/SERVANT CASES.

17 NON-EMPLOYEE AGENTS ARE DIFFERENT.

18          ANOTHER EXAMPLE IS THE DISCRETIONARY BROKER.  IT'S

19 CLEAR WHEN YOU HIRE A BROKER, IF IT'S NONDISCRETIONARY, THEY'RE

20 NOT A FIDUCIARY.  IF IT'S DISCRETIONARY, WHERE THEY GET TO MAKE

21 THE DECISIONS, IT IS FIDUCIARY.

22          SO IT'S NOT AS SIMPLE AS THEY WOULD LIKE TO HAVE YOU

23 THINK IT IS.  IT'S ONE REASON WE'VE BEEN STRUGGLING WITH THIS

24 ISSUE, BECAUSE WE'VE HAD TO LOOK -- AND D.C. LAW IS NOT THE

25 GREATEST, BUT WHAT WE FOUND IS CLEAR.  WHEN YOU GET OUTSIDE OF

1  THE EMPLOYEE MASTER/SERVANT CONTEXT --

2          **THE COURT:**  I HAVE ACTUALLY THOUGHT ABOUT THAT VERY

3  ISSUE.

4          LET'S SAY YOU'VE GOT A BROKER WHO HAS DISCRETIONARY

5  AUTHORITY TO BUY AND SELL THROUGH YOUR ACCOUNT.  SO YOU HAVE

6  EXPRESSLY SAID:  "I'M NOT GOING TO CONTROL THE TRANSACTIONS YOU

7  ENTER INTO.  THAT'S UP TO YOU.  THAT'S WHY I'VE HIRED YOU, SO

8  YOU CAN -- YOU CAN USE YOUR OWN GOOD JUDGMENT AND MAKE ME

9  RICH."

10         BUT, YET, EVERYONE WOULD SAY THAT'S A FIDUCIARY.

11         **MR. KESSLER:**  SURE, YOUR HONOR.  IT'S NOT AN AGENCY

12  THEORY.

13         REMEMBER WHERE WE ARE.  YOUR HONOR ONLY CERTIFIED THE

14  CLASS ON AN AGENCY THEORY.  THERE ARE MANY OTHER THEORIES OF

15  FIDUCIARY DUTY.

16         IN THE BROKER CONTEXT, IF YOU ENTRUST SOMEONE WITH

17  THE SUM OF YOUR MONEY YOU SAY:  "HERE, HERE'S A POOL OF MY

18  MONEY.  WATCH OVER IT LIKE A BANK, OKAY, OR A TRUSTEE, OR A

19  BROKER OVER A DISCRETIONARY ACCOUNT."

20         YOU HAVE A FIDUCIARY DUTY FOR THAT REASON.  HAS

21  NOTHING TO DO WITH AN AGENCY THEORY.

22         WHAT THEY'VE TRIED TO DO IS TAKE THE BROKER-DEALER

23  CASES, WHICH TALK ABOUT A FIDUCIARY DUTY, NOT AN AGENCY THEORY,

24  AND SAY:  "OH, YOU DON'T NEED CONTROL HERE."

25         THAT IS TRUE.  WHEN YOU HAVE A TRUSTEE, YOU DON'T

1    HAVE CONTROL.  TRUSTEE HAS FIDUCIARY DUTIES.  IT'S NOT AN

2    AGENCY THEORY.

3         WE DIDN'T RECEIVE ANY SUM OF MONEY FROM THEM.  WE'RE

4    NOT A TRUSTEE FOR ANY OF THEIR FINANCIAL ACCOUNTS.  THAT'S NOT

5    WHAT -- AND, AGAIN, IT HAS TO BE IN THE GLA.

6         WHAT YOUR HONOR CERTIFIED, WHAT YOUR HONOR CERTIFIED,

7    IT'S IN THE GLA.  THE ONLY THEORY YOUR HONOR CERTIFIED WAS THAT

8    AN EXPRESS AGENCY THEORY.  THAT'S WHAT YOUR HONOR SAID.  SO

9    WHAT THEY HAVE TO DO IS THE JURY HAS TO LOOK AT THE EXPRESS

10   TERMS OF THE RETIRED PLAYER GLA AND HAS TO DECIDE:  DOES THAT

11   MEAN THE STANDARDS OF AGENCY UNDER D.C. LAW, BECAUSE WE ALL

12   AGREE IT'S D.C. LAW.  THAT REQUIRES CONTROL.

13        IT DOES NOT -- AND IT'S DISPOSITIVE.  IT DOES NOT

14   APPLY TO JUST A MARKETING AGENT.  AND WE BELIEVE WE'RE CORRECT

15   IN THIS POSITION, YOUR HONOR.

16        **MR. LECLAIR:**  VERY QUICKLY, YOUR HONOR --

17        **THE COURT:**  MY LAW CLERK HAS POINTED OUT -- AND I

18   THANK HIM FOR DOING THIS -- PLAINTIFFS' OWN PROPOSED

19   INSTRUCTION SHOW THAT CONTROL IS A FACTOR.

20        SO ARE YOU NOW GOING BACK ON YOUR PROPOSED JURY

21   INSTRUCTIONS?

22        **MR. LECLAIR:**  CONTROL IS A FACTOR, YOUR HONOR.  BUT

23   WHAT WE'RE SAYING IS THAT -- THE INSTRUCTION THAT I WAS

24   PROPOSING WITH THAT LANGUAGE IS CONTROL IN A NON-EMPLOYEE

25   CONTEXT IS ATTENUATED, ACCORDING TO THE RESTATEMENT.

1        SO THAT'S ALL WE'RE DOING IS SAYING THE QUESTION OF

2   WHETHER CONTROL IS SOMEHOW PRIMARY IS NOT THE SAME IN A -- IN A

3   NON-EMPLOYEE AGENT.

4        AND TO RESPOND TO MR. KESSLER, HE'S TRYING TO SAY

5   BROKERS AREN'T AGENTS.

6        MERRILL LYNCH VS. CHANG, WHICH WE CITED IN OUR BRIEF,

7   D.C. CIRCUIT, THEY DEFINE BROKERS AS AGENTS.

8        SO IT'S EXACTLY THE SAME, YOUR HONOR.  IT'S THE

9   SAME -- THE PROBLEM IS WHEN YOU TALK ABOUT A NON-EMPLOYEE

10  AGENT, THE CONTROL TEST -- CONTROL IS STILL A FACTOR.  BUT IT'S

11  NOT THE DISPOSITIVE FACTOR THEY INDICATED.

12       **THE COURT:**  WAIT.  NO.  I'M GOING TO ASK YOU A

13  QUESTION.  NOT TO MAKE THIS ANY MORE COMPLICATED THAN IT

14  ALREADY IS, BUT THERE'S YET ANOTHER WRINKLE.  HERE'S THE

15  WRINKLE:  THIS IS A GROUP THING.  I THINK BOTH SIDES AT VARIOUS

16  POINTS HAVE REFERRED TO IT AS A GROUP THING.

17       SO THE PLAINTIFFS' THEORY IS THAT ALL 2,063 CLASS

18  MEMBERS SHOULD HAVE BEEN MARKETED AS A GROUP.

19       THERE IS NO MECHANISM SET UP FOR THE CLASS MEMBERS TO

20  EXERCISE ANY CONTROL OVER THE -- IT'S JUST EACH INDIVIDUAL

21  THROUGH HIS LINE-IN WITH THE REST OF THE GROUP UNDER THAT

22  THEORY.  AND SO IT'S UNLIKE THE JOE MONTANA SITUATION WHERE HE

23  HAS HIS OWN AGENT AND CAN SAY:  "GO DO THIS DEAL AND NOT THAT

24  DEAL."

25       JUST COMMENT ON THAT.  IN OTHER WORDS, WE HAVE A

1  SITUATION WHERE IT'S NOT -- THIS IS A GROUP THING.  AND ALL OF

2  YOUR -- NO ONE HAS CITED ME ANY CASE LAW -- I'M NOW TALKING TO

3  THE NINTH CIRCUIT.

4          I HOPE THEY HAVE MERCY ON ME WHEN THEY FINALLY GET

5  THIS CASE, BECAUSE THE LAWYERS HAVE BEEN OF VERY LITTLE HELP ON

6  THIS.  YOU HAVEN'T GIVEN ME A CASE ON POINT.  YOU HAVE NOT TOLD

7  ME -- AND I'M TALKING TO MR. KESSLER, TOO.  I WANT A CASE THAT

8  HAS A GROUP DEAL AND IS LIKE OUR CASE.

9          AND, INSTEAD, PEOPLE ARE THROWING THINGS AT ME THAT

10 YOU FIND AFTER THE BRIEFS WERE DUE.  YOU'RE THROWING UP IDEAS

11 THAT ARE -- YEAH, THEY'RE GENERAL PRINCIPLES THAT MAY OR MAY

12 NOT HAVE ANYTHING TO DO WITH D.C. LAW.  AND I'M STRUGGLING TO

13 TRY TO GIVE FAIR JURY INSTRUCTIONS ON THESE VARIOUS POINTS.

14         ALL RIGHT.  I'M GOING TO SHUT UP AND LET YOU --

15 MR. LECLAIR, YOU GO AHEAD AND MAKE YOUR COMMENT.

16         **MR. LECLAIR:**  YOUR HONOR, WE THINK THAT THE CONTROL

17 IS -- IS EVIDENCED BY THE CONTEXT.  AND THAT'S WHAT THE JURY IS

18 BEING ASKED TO EXERCISE.

19         FOR EXAMPLE, WE BELIEVE THERE'S A RIGHT TO REVOKE,

20 WHICH IS ONE OF THE FACTORS UNDER THE RESTATEMENT WITH RESPECT

21 TO CONTROL.

22         WE BELIEVE THAT THERE'S THE -- THAT THE FACT THAT

23 THEY LIMITED THEIR ABILITY TO -- TO SIX OR MORE IS ALSO AN

24 EVIDENCE OF CONTROL UNDER D.C. LAW.

25         WE THINK THAT THE PRACTICE OF THE PARTIES IS ALSO

1    DEMONSTRATIVE OF CONTROL, WHICH IS THE DEFENDANTS' EVIDENCE

2    SHOWS THEY ALWAYS WENT BACK AND GOT THE PLAINTIFFS CLASS TO

3    APPROVE, BECAUSE WHAT THEY DID WAS AD HOC DEALS.  SO THAT'S

4    FURTHER EVIDENCE OF CONTROL.

5            SO THE EVIDENCE IS, YOUR HONOR, DEMONSTRATES THE

6    CONTROL, WHICH WE BELIEVE UNDER D.C. LAW, IS ULTIMATE CONTROL.

7    IT DOESN'T MEAN DAY-TO-DAY CONTROL.  DOESN'T MEAN MANNER WHICH

8    WOULD BE APPLICABLE TO EMPLOYEES AND AGENTS.

9            SO THAT'S OUR POSITION, YOUR HONOR.

10            **THE COURT:**  LOOK.  I MUST SAY I AM UNHAPPY WITH THE

11    STATE OF THESE FACTORS.  BY THAT I MEAN THE LAW THAT BOTH SIDES

12    HAVE GIVEN ME FROM THE DISTRICT OF COLUMBIA AND HOW THEY WOULD

13    FIT OUR CIRCUMSTANCES.

14            SO I'M GOING TO CONSIDER WHAT YOU'VE HAD TO SAY, BUT

15    YOU LAWYERS THINK THAT SOMEHOW I CAN DIVINE AND GET IT EXACTLY

16    RIGHT WHEN YOU HAVEN'T GIVEN ME MUCH HELP ON EITHER SIDE.

17            **MR. KATZ:**  YOUR HONOR, MAY I RESPOND?

18            **THE COURT:**  GO AHEAD.

19            **MR. KATZ:**  FIRST OF ALL, FIDUCIARY DUTY HAS BEEN

20    AROUND FOR A LONG TIME.  AND THE LAW OF THE DISTRICT OF

21    COLUMBIA IS NOT EXOTIC AT ALL IN THIS REGARD.  THERE ARE ANY

22    NUMBER OF CASES -- WE CAN CITE THEM FOR YOUR HONOR -- WHERE THE

23    COURTS OF THE DISTRICT OF COLUMBIA SAY:  "WE ACCEPT THE

24    RESTATEMENT OF AGENCY AS THE LAW OF THE DISTRICT OF COLUMBIA."

25            SO YOU GO BACK TO THE LAW OF THE RESTATEMENT OF

1   AGENCY.

2           AND I THINK YOUR HONOR DID A GOOD JOB THE OTHER DAY

3   IN THE DRAFT OF THIS, TOO, TO TAKE A -- WHAT YOUR HONOR WOULD

4   CALL A PRACTICAL APPROACH TO THIS BODY OF LAW.

5           OBVIOUSLY, IF YOU'RE LOOKING AT A RESTATEMENT, YOU'RE

6   LOOKING AT GENERALITIES.

7           IF THERE WERE A CASE, I AM QUITE CONFIDENT THAT --

8   I'M EVEN SPEAKING FOR MR. KESSLER ON THIS -- IF THERE WERE A

9   CASE THAT INVOLVED A GROUP IN THE DISTRICT OF COLUMBIA, ONE

10  SIDE OR THE OTHER WOULD HAVE CITED IT TO YOUR HONOR.

11          SO I WOULD SUBMIT TO YOUR HONOR THAT YOUR PRACTICAL

12  APPROACH IS THE CORRECT ONE, GUIDED BY THE RESTATEMENT, WHICH

13  IS THE LAW OF THE DISTRICT OF COLUMBIA.

14          **MR. KESSLER:**  AND, YOUR HONOR, WE WOULD DISAGREE THAT

15  THE PARTS OF THE RESTATEMENT THAT THEY FOUND AFTER MIDNIGHT

16  LAST NIGHT HAVE ANYTHING TO DO WITH THE LAW OF THE DISTRICT OF

17  COLUMBIA.

18          THE LAW OF DISTRICT OF COLUMBIA IS ACTUALLY SET FORTH

19  IN THE CASE LAW.  AND YOUR HONOR CAN LOOK AT THE CASES BOTH

20  SIDES CITED.

21          WE BELIEVE OUR CASES ARE ABSOLUTELY DISPOSITIVE.  WE

22  CITED, I THINK, SIX DIFFERENT CASES THAT HAVE ALL USED THE

23  SAME --

24          **THE COURT:**  LOOK, YOU ARE JUST REPEATING YOURSELF.

25          **MR. KESSLER:**  SORRY, YOUR HONOR.

1          **THE COURT:**  I'M CERTAIN IT'S NOT DISPOSITIVE, SO THAT

2    PART IS DENIED.

3          **MR. KESSLER:**  OKAY.

4          **THE COURT:**  THE REST OF THIS I NEED TO GIVE SOME MORE

5    THOUGHT TO, AND I WILL DO THAT.

6          ALL RIGHT.  ANYTHING MORE ON 38?

7          **MR. KESSLER:**  JUST THE OBJECTIONS WE STATED, YOUR

8    HONOR.

9          **THE COURT:** ALL RIGHT.  39.

10         **MR. KATZ:**  I'M JUST GETTING YOUR -- I'M NOT

11   E-MAILING.  I JUST WANT TO GET YOUR HONOR A CITE THAT'S ON MY

12   BLACKBERRY.  IS THAT OKAY?

13         **THE COURT:**  GO AHEAD.

14         39.

15         **MR. KESSLER:**  39, YOUR HONOR, WE BELIEVE THIS HAS TO

16   DO WITH FINANCIAL ARRANGEMENTS, AND THAT THE -- IT'S THE

17   REVERSE.

18         IN D.C. THERE IS NO REFERENCE TO THE FACT THAT

19   WHETHER OR NOT A LICENSEE PAID A CERTAIN SUM OF MONEY HAS

20   ANYTHING TO DO WITH THIS.

21         IN FACT, YOUR HONOR, THERE'S NOTHING IN D.C. ABOUT

22   THIS.  THIS MAY BE SOME GENERAL RESTATEMENT PRINCIPLE, BUT IT'S

23   NOT THERE.

24         THE ONLY REFERENCE TO FINANCIAL ARRANGEMENT IN D.C.

25   IN THIS CONTEXT OF AGENCY IS IF THE PLAINTIFFS HAD PAID US A

1  FEE, IF THE RPGLA HAD SAID THAT "WE AGREED TO PAY YOU IN ORDER

2  TO BE OUR AGENT A SPECIFIC AMOUNT," IF IT HAD SAID THAT, THAT

3  WOULD HAVE BEEN A FACTOR TO CONSIDER UNDER D.C. LAW.

4      BUT THERE'S NOTHING ABOUT HOW WE PAY THEM IN D.C.

5  LAW.  THIS TALKS ABOUT WHETHER WE PAID THEM A ROYALTY OR A LUMP

6  SUM.  THERE'S JUST NOTHING IN D.C. LAW ABOUT THAT AT ALL, YOUR

7  HONOR.  AND THIS GENERAL PRINCIPLE, I DON'T THINK, APPLIES TO

8  THIS GROUP ARRANGEMENT IN THIS LICENSE, SO WE OBJECT.

9      **MR. KATZ:**  LET ME JUST GIVE YOU A CITE WHICH SAYS THE

10  D.C. ACCEPTS THE RESTATEMENT, YOUR HONOR.  OF COURSE, WE'VE

11  BEEN CITING THE RESTATEMENT AS LONG AS THIS ISSUE HAS BEEN IN

12  COURT.

13      **THE COURT:**  WHAT IS THAT?

14      **MR. KATZ:**  C&E SERVS. V. BIGGS, 498 F.SUPP 2D, 242,

15  THE DISTRICT OF COLUMBIA, 2007.

16      IT'S PAGE 264, NOTE 12.

17      **MR. KESSLER:**  YOUR HONOR, JUST SO YOU KNOW, THE D.C.

18  CIRCUIT CITES OR THE D.C. COURT CITES FIVE FACTORS FROM THE

19  RESTATEMENT.

20      THE RESTATEMENT HAS LIKE A MUCH LARGER NUMBER OF

21  FACTORS.  THE ONES WE DISCUSSED IN OUR CASES ARE THE FIVE

22  FACTORS THAT APPLY, NOT THE ONES THAT HAVE BEEN ALLUDED TO

23  HERE, LIKE THIS FINANCIAL CONSIDERATION.

24      **THE COURT:**  ALL RIGHT.  MR. LECLAIR, ANYTHING MORE ON

25  39?

1          **MR. LECLAIR:**  TO RESPOND TO THAT, YOUR HONOR, AGAIN

2    THEY ARE CONFUSING -- THEY ARE TRYING TO CONFUSE THE COURT WITH

3    MASTER/SERVANT VERSUS NON-EMPLOYEE AGENT.

4          WHEN HE TALKS ABOUT FINANCIAL ARRANGEMENT, WHAT HE'S

5    TALKING ABOUT IS A REFERENCE IN D.C. LAW IN THE MASTER/SERVANT

6    CONTEXT TO PAYMENT OF WAGES.

7          THAT SHOWS HOW FAR OFF THE MARK THEY ARE.  THEY'RE

8    TRYING TO SAY THAT SOMEHOW THE PAYMENT OF WAGES IS RELEVANT TO

9    THIS NON-EMPLOYEE AGENT CONTEXT, AND THAT'S JUST INAPPROPRIATE.

10          **MR. KESSLER:**  ACTUALLY, YOUR HONOR, WE THINK THE

11    WHOLE PAYMENT ISSUE SHOULD BE STRICKEN.  WHAT OUR POINT WAS THE

12    ONLY REFERENCE IN D.C. WAS IN THE CONTEXT MR. LECLAIR

13    MENTIONED, AND 39 SHOULD JUST NOT BE GIVEN.

14          **THE COURT:**  ALL RIGHT.  I'LL CONSIDER YOUR POINTS.

15    I'M NOT MAKING A RULING NOW.

16          40.  ANYTHING ON 40?

17          **MR. KESSLER:**  NO.  NO OBJECTION TO 40, ASSUMING YOU

18    OVERRULED OUR OBJECTION THAT CONTROL IS DISPOSITIVE.

19          **MR. LECLAIR:**  NO OBJECTION.

20          **THE COURT:**  41.

21          **MR. KESSLER:**  NO OBJECTION.

22          **THE COURT:**  41?

23          **MR. LECLAIR:**  SORRY, YOUR HONOR.  NO, NO OBJECTION.

24          **THE COURT:**  42?

25          **MR. KESSLER:**  YES, YOUR HONOR.  JUST ONE SECOND ON

1  42.

2          I THINK THE PROBLEM, YOUR HONOR, IS ON LINES -- IT

3  STARTS ON PAGE 17.  IT SAYS:  "THE BASIC ISSUE YOU MUST DECIDE

4  AS STATED IS WHETHER DEFENDANTS WERE MERE LICENSEES OR WHETHER

5  IN ADDITION TO ACQUIRING LICENSE RIGHTS, DEFENDANTS ALSO

6  UNDERTOOK THE FIDUCIARY DUTY TO PROMOTE AND MARKET."

7          THIS IS MY SAME POINT.  AT A MINIMUM, IF CONTROL IS

8  THE FIRST AND MOST IMPORTANT, THIS CAN'T BE THE BASIC ISSUE.

9  YOU'VE BASICALLY SET UP A DICHOTOMY FOR THE JURY THAT IT'S

10  EITHER A BARE LICENSE, OR IT'S AN AGREEMENT TO MARKET.  IF IT'S

11  AN AGREEMENT TO MARKET, THERE'S A FIDUCIARY DUTY, AND THAT'S

12  NOT THE LAW OF D.C., AND IT UNDERMINES THE CONTROL TEST.

13          **THE COURT:**  I'M GOING TO CHANGE IT SLIGHTLY TO SAY:

14  "THE BASIC ISSUE YOU MUST DECIDE IS AS STATED," AND THEN JUST

15  SKIP TO: "WHETHER IN ADDITION TO" -- TAKE OUT THE THING ABOUT

16  BARE LICENSES --"WHETHER IN ADDITION TO ACQUIRING THE LICENSE

17  RIGHTS DEFENDANTS ALSO UNDERTOOK A FIDUCIARY DUTY," ET CETERA.

18          SO THAT WAY YOUR DICHOTOMY IS ELIMINATED, BUT THE

19  BASIC ISSUE IS STILL THERE.

20          **MR. KESSLER:**  YOU'RE GOING TO STRIKE "TO PROMOTE OR

21  TO MARKET THOSE RETIRED PLAYERS"?

22          **THE COURT:**  NO, I'M NOT.  I'M GOING TO SAY:

23          "THE BASIC ISSUE YOU MUST DECIDE IS, AS STATED,

24  WHETHER OR NOT IN ADDITION TO ACQUIRING LICENSE RIGHTS,

25  DEFENDANTS ALSO UNDERTOOK A FIDUCIARY DUTY TO PROMOTE AND TO

1   MARKET THOSE RETIRED PLAYERS WHO SIGNED RPGLA'S."

2           **MR. KESSLER:**   AGAIN, I BELIEVE, YOUR HONOR, THAT

3   WOULD OVERRULE THE CONTROL TEST AS BEING -- YOU KNOW, EVEN THE

4   MOST IMPORTANT CONSIDERATION, I WOULD OBJECT.  I DO BELIEVE THE

5   INSTRUCTIONS HAVE TO BE AT LEAST THAT THAT'S THE MOST

6   IMPORTANT.  THIS JUST SAYS: "DECIDE IF IT'S A BASIC LICENSE OR

7   IT'S TO MARKET."  THAT'S WHAT --

8           **THE COURT:**  IT'S CLEAR THAT THEY ARE GOING TO APPLY

9   THE VARIOUS FACTORS I HAVE ALREADY GIVEN THEM, INCLUDING THE

10  CONTROL FACTOR.  ALL I'M DOING IS SUMMARIZING WHAT THE ISSUE IS

11  FOR THEM.

12          **MR. KESSLER:**   COULD YOU AT LEAST SAY, YOUR HONOR,

13  THEN, YOU KNOW:  "PURSUANT TO THE FACTORS I SET FORTH ABOVE,"

14  OR SOMETHING LIKE THAT, SO IT DOESN'T LOOK LIKE THIS IS

15  OVERRIDING IT, AND THIS IS THE ONLY ONE THEY'LL LOOK AT?

16          **THE COURT:**  I'M GOING TO SAY IN THE NEXT SENTENCE:

17          "IF YOU FIND THERE WAS NO SUCH FIDUCIARY UNDERTAKING

18  APPLYING THE STANDARDS STATED ABOVE, THEN" --

19          THAT MAKES IT CLEAR THAT THEY'VE GOT TO APPLY THE

20  STANDARDS I'VE GIVEN THEM.

21          **MR. KESSLER:**  YOUR HONOR, AGAIN, WHAT IF IT SIMPLY

22  SAID -- IT SAID:

23          "THE BASIC ISSUE YOU MUST DECIDE AS IS STATED WHETHER

24  DEFENDANTS WERE LICENSEES UNDER THE RPGLA OR WHETHER, IN

25  ADDITION TO ACQUIRING LICENSE RIGHTS, DEFENDANTS ALSO UNDERTOOK

1  A FIDUCIARY DUTY"?

2          THEN, WE HAVE NO PROBLEM WITH IT.  IT'S THE EMPHASIS

3  ON MARKETING.  AS YOUR HONOR KNOWS, THEY EVEN ALLEGE OTHER

4  FIDUCIARY DUTIES HAVE NOTHING TO DO WITH MARKETING.

5          THAT'S WHAT I THINK CREATES THE CONFUSION TO ELEVATE

6  THE MARKETING ISSUE AS IF IT'S A DISPOSITIVE FACTOR.

7          **THE COURT:**  WELL, I COULD TAKE OUT -- I COULD JUST

8  END IT "ALSO UNDERTOOK A FIDUCIARY DUTY," PERIOD.

9          **MR. LECLAIR:**  YOUR HONOR, I THINK THIS IS EXACTLY

10  WHAT WE'RE CLAIMING.  AND YOUR HONOR IS SIMPLY SAYING TO THE

11  JURY WHAT IT IS.  TO LEAVE IT BLANK IS TO -- DOESN'T GIVE THE

12  JURY ANY CONTEXT.

13          **THE COURT:**  I'M GOING TO LEAVE IT IN.  I THINK THAT'S

14  THE ESSENCE OF THIS CASE, AND I'M GOING TO -- I'M GOING TO

15  CHANGE IT SLIGHTLY, BUT ALL OTHER OBJECTIONS ARE OVERRULED.

16          NUMBER 43.

17          **MR. LECLAIR:**  ON 43, YOUR HONOR, JUST ONE POINT.  WE

18  THINK THAT YOUR HONOR, AS WE PUT IN OUR BRIEF, SHOULD EXPRESSLY

19  MENTION CONFLICTS OF INTEREST BECAUSE WE'VE CITED --

20          **THE COURT:**  I GOT DUTY OF LOYALTY HERE SOMEWHERE.

21          **MR. LECLAIR:**  I AGREE, YOUR HONOR, BUT I DON'T KNOW

22  IF THE JURY UNDERSTANDS THE DUTY OF LOYALTY MEANS TO --

23          **THE COURT:**  YOU CAN ARGUE THAT.  POINT OF ARGUMENT.

24          **MR. LECLAIR:**  THANK YOU, YOUR HONOR.

25          ANYTHING MORE ON 43?

1    **MR. KESSLER:** NO, YOUR HONOR.

2    **THE COURT:** 44.

3    **MR. LECLAIR:** NO OBJECTION.

4    **MR. KESSLER:** NO OBJECTION.

5    **THE COURT:** 45.

6    **MR. KESSLER:** 45, YOUR HONOR -- ONE SECOND, PLEASE.

7  ONE SECOND. WE HAVE SOME LANGUAGE ON THIS, YOUR HONOR.

8    OKAY. FIRST, YOUR HONOR, THIS INSTRUCTION -- NO,

9  THAT'S THEIRS.

10    **THE COURT:** MR. KESSLER, PLEASE.

11    **MR. KESSLER:** I'M SORRY, YOUR HONOR. FORGIVE ME,

12  YOUR HONOR. WHERE IS THIS?

13    IT HAS TO DO, YOUR HONOR, WITH HOW YOU DESCRIBE

14  DEFENDANTS' POSITION, WHICH IS ON PAGE -- IT'S 19/5 TO 6.

15    **THE COURT:** ALL RIGHT.

16    **MR. KESSLER:** SO LET ME JUST FIND THIS.

17    **THE COURT:** I SEE IT. SINCE I'M STATING YOUR

18  POSITION I OUGHT TO STATE IT IN THE WAY YOU WANT.

19    **MR. KESSLER:** YES. AND I WOULD STATE IT AS FOLLOWS,

20  IS THAT, QUOTE:

21    "DEFENDANTS RESPOND THAT ELECTRONIC ARTS WAS NOT

22  WILLING TO PAY ANY MONEY TO LICENSE THE ENTIRE GROUP OF RPGLA

23  RIGHTS."

24    AND THEN, YOU PICK UP: "AND, THEREFORE, DEFENDANTS."

25  THE REST OF IT, WE THOUGHT, WAS FINE. "THEREFORE,

1  DEFENDANTS" --

2         **THE COURT:** I'LL CHANGE IT SINCE IT'S YOUR

3  CONTENTION.

4         ALL RIGHT. "DEFENDANTS RESPOND THAT ELECTRONIC ARTS"

5  WHAT?

6         **MR. KESSLER:** "... WAS NOT WILLING TO PAY ANY MONEY

7  TO LICENSE THE ENTIRE GROUP OF RPGLA RIGHTS, AND, THEREFORE,

8  DEFENDANTS WERE ACTING" -- THAT'S THE LANGUAGE YOU ALREADY

9  HAVE -- "TO PROTECT," ET CETERA.

10        **THE COURT:** TO LICENSE WHAT?

11        **MR. KESSLER:** "THE ENTIRE GROUP OF RPGLA RIGHTS."

12  AND THEN, IT PICKS UP "AND, THEREFORE."

13        **THE COURT:** DO YOU HAVE ANY PROBLEM WITH THAT,

14  MR. LECLAIR?

15        **MR. LECLAIR:** I WOULD WANT TO CHANGE OUR CONTENTION,

16  THEN, YOUR HONOR.

17        **THE COURT:** ALL RIGHT. HOW DO YOU WANT TO CHANGE

18  YOURS?

19        **MR. LECLAIR:** I WANT TO SAY: "BY INSISTING ON

20  SCRAMBLING RATHER THAN BY," THEN STRIKE "TRYING TO SELL" AND

21  SUBSTITUTE "LICENSING."

22        **THE COURT:** WAIT A MINUTE. "BY INSISTING ON

23  SCRAMBLING RATHER THAN," WHAT, TRYING TO LICENSE?

24        **MR. LECLAIR:** "TRYING TO LICENSE." NOT "TRYING TO,

25  RATHER THAN LICENSING THE ENTIRE GROUP."

1          THE COURT:  ALL RIGHT.  LICENSING.  OKAY.  ALL RIGHT.

2     YOU GOT IT.

3          ALL RIGHT.  46.

4          MR. LECLAIR:  THERE'S A TYPOGRAPHICAL ERROR, YOUR

5     HONOR, IN 46.

6          THE COURT:  WHERE IS THAT?

7          MR. LECLAIR:  LET'S SEE.  ON LINE 10 IT APPEARS TO BE

8     MISSING AN "A" BETWEEN "APPROVED" AND "BREACH."

9          THE COURT:  THIS IS PART OF THAT OTHER ISSUE THAT I

10    AM HAVING CONSIDERATION BY THE TIME FRAME.  AND I WILL GIVE YOU

11    AN ANSWER ON THAT BY THE END OF THE DAY.

12         ALL RIGHT.  47.

13         MR. KESSLER:  YES, YOUR HONOR.  FIRST, I THINK THE

14    REFERENCE TO THE JUNE 1, 2008 PERIOD IS COMPLETELY CONFUSING

15    BECAUSE THE ONLY EVIDENCE PRESENTED EVEN WHERE WE DISPUTE THE

16    LAST PAYMENT WAS IN SEPTEMBER OF 2007.

17         SO THERE'S NO CLAIM -- WHILE YOUR HONOR WOULD ALLOW

18    THAT, THERE'S NO EVIDENCE THERE.  SO I THINK JUST STATE:

19    "THROUGH SEPTEMBER OF 2007."

20         THE COURT:  I'M GOING TO TRY TO DEAL WITH THAT

21    PROBLEM.  THERE ARE ONLY FOUR PAYMENTS THAT -- SEPTEMBER '04

22    THROUGH '07 PAYMENTS.

23         MR. KESSLER:  THAT'S CORRECT.

24         THE COURT:  AND WHAT I'VE GOT TO DECIDE IS WHETHER OR

25    NOT THE '04 PAYMENT IS IN PLAY OR NOT.  BUT I DO THINK I SHOULD

1　MAKE IT SIMPLER FOR THE JURY TO JUST SAY:  "THESE ARE THE

2　PAYMENTS.  THIS IS THE GLR MONEY THAT'S AT ISSUE."

3　　　　　ALL RIGHT.

4　　　　　**MR. KESSLER:**  AND, YOUR HONOR --

5　　　　　**MR. KATZ:**  I'M SORRY.  I DIDN'T QUITE FOLLOW IT.  HAS

6　YOUR HONOR MADE UP YOUR MIND?

7　　　　　**THE COURT:**  IT SOUNDS TO ME LIKE THE CLASS MEMBER --

8　THE GLR -- GROSS LICENSING REVENUE MONEY THAT'S IN PLAY ARE THE

9　FOUR PAYMENTS THAT WERE MADE IN '04, '05 AND '06 AND '07, ALL

10　IN SEPTEMBER.

11　　　　　**MR. KATZ:**  CORRECT.

12　　　　　**THE COURT:**  NOW, I STILL HAVE TO DECIDE -- AND I HAVE

13　NOT YET -- WHETHER OR NOT THE '04 ONE IS OFF THE TABLE.

14　　　　　**MR. KATZ:**  RIGHT.

15　　　　　**THE COURT:**  BUT I DO THINK IT WOULD ASSIST THE JURY,

16　INSTEAD OF SAYING IN SOME AMORPHOUS WAY THERE IS THIS LONG TIME

17　PERIOD THAT GOES UP TO JUNE 1, '08, AND THEY ARE LOOKING FOR

18　EVIDENCE MAY OF '08, AND THEY DON'T SEE ANY OF THAT.  RATHER

19　LET'S JUST TELL THEM THERE IS THESE FOUR PAYMENTS.

20　　　　　**MR. KATZ:**  I UNDERSTAND, YOUR HONOR.  THANK YOU.

21　　　　　**MR. KESSLER:**  YOUR HONOR, ON INSTRUCTION 47, THE

22　PARAGRAPH THAT BEGINS WITH -- ON LINE 23.  THIS IS THE ONE THAT

23　MOST CLEARLY RAISES THE ISSUE ABOUT WHETHER THEY HAVE ANY DUTY

24　TO PROVE INDIVIDUAL INJURY TO THE INDIVIDUAL MEMBERS OF THE

25　CLASS EVEN UNDER A FORMULA.

1       AND YOUR HONOR SAID: "WE'RE GOING TO COME BACK TO

2  THAT WHEN WE GET TO IT."

3       I THINK THIS IS WHERE WE GET TO IT.

4       **THE COURT:**  I UNDERSTAND YOUR ARGUMENT, AND I MAY

5  ADJUST THIS LANGUAGE IN SOME WAY TO CONFORM CLOSER TO -- THERE

6  IS A METHODOLOGY HERE.  WE WENT THROUGH IT A WHILE AGO.  AND

7  THE METHODOLOGY ALLOWS YEAR BY YEAR THE NUMBER OF INDIVIDUALS

8  WHO SIGNED THESE THINGS, AND HOW MANY ACTIVE PLAYERS THERE

9  WERE, AND THE AMOUNT OF MONEY.  AND THE JURY, IN THEORY, COULD

10 DO THEIR OWN MATHEMATICS AND CALCULATE IT.

11      SO I AM GOING TO REFINE THIS, BUT YOU'LL JUST HAVE TO

12 WAIT AND SEE WHAT I COME UP WITH.

13      **MR. KESSLER:**  WE UNDERSTAND, YOUR HONOR.  AGAIN, WE

14 ASK THE JURY BE TOLD THEY HAVE TO FIND AS TO HOW MUCH IT WOULD

15 BE FOR EACH CLASS MEMBER.  THAT WILL BE OUR POSITION, AND YOUR

16 HONOR WILL RULE ON IT.

17      **THE COURT:**  I WILL RULE ON IT.  THANK YOU.

18      **MR. KESSLER:**  AT THIS POINT, YOUR HONOR, WE BELIEVE

19 WE PROPOSED AN INSTRUCTION IN OUR MEMORANDUM LAST NIGHT WHICH

20 WE BELIEVE WOULD BE INSERTED HERE.  THIS INSTRUCTION WAS THE

21 FOLLOWING, WHICH IS THAT YOUR HONOR SHOULD INSTRUCT THAT THE

22 ONLY DAMAGE EVIDENCE THAT'S BEEN PRESENTED TO THE JURY IS A

23 CLAIM TO EQUAL SHARES OF THE GLR POOL.

24      SO UNLESS THE JURY FINDS THAT THERE WAS SOME

25 CONTRACTUAL ENTITLEMENT FOR THE BREACH OF CONTRACT CLAIM TO AN

1  EQUAL SHARE OF THE GLR POOL, OR THE JURY FINDS FOR THE BREACH

2  OF FIDUCIARY DUTY CLAIM THAT THERE WAS SOME DUTY TO PROVIDE AN

3  EQUAL SHARE OF THE GLR POOL, THAT THE JURY SHOULD -- CAN ONLY

4  AWARD NOMINAL DAMAGES, EVEN IF THEY FIND A BREACH OF EITHER OF

5  THOSE THINGS.

6          YOUR HONOR, WE'VE ARGUED THIS IN THE CONTEXT OF A

7  RULE 50 MOTION.  BUT THAT'S THE ONLY EVIDENCE HERE.  THEIR

8  EXPERT, MR. ROWLEY, ADMITTED UNDER OATH, AS YOUR HONOR KNOWS,

9  THAT HE STATED IF THE JURY DOESN'T FIND THAT THERE IS SUCH AN

10 ENTITLEMENT TO AN EQUAL SHARE OF THE GLR POOL, THEN HE'S

11 PRESENTED NO DAMAGES EVIDENCE.

12         AND THAT'S THE ONLY CLASS-WIDE FORMULA THAT'S BEEN

13 PUT IN PLAY.  SO WE BELIEVE THE JURY NEEDS TO UNDERSTAND THAT,

14 THAT UNLESS THEY FIND AN ENTITLEMENT TO THOSE EQUAL SHARES

15 SOMEWHERE, EITHER IN BREACH OF CONTRACT OR IN BREACH OF

16 FIDUCIARY DUTY, THEN THEY ONLY CAN AWARD NOMINAL DAMAGES,

17 BECAUSE THERE'S NOTHING ELSE FOR THEM TO FIND HERE.

18         **MR. LECLAIR:**  YOUR HONOR, WE COMPLETELY DISAGREE WITH

19 THIS INSTRUCTION BECAUSE WHAT WE CLAIM IS THE REVENUE.  THEY

20 PUT IT IN THE GLR POOL, WHICH IS WHY OUR DAMAGE EXPERT USED THE

21 METHODOLOGY THAT HE DID.

22         BUT OUR CLAIM IS TO THE REVENUE FROM THE LICENSE

23 AGREEMENTS.  AND TO START INSTRUCTING THE JURY THAT WE HAVE TO

24 BE PART OF THE GLR POOL IS CONFUSING AND MISLEADING TO THE

25 JURY, BECAUSE WHAT WE'RE CLAIMING IS THE REVENUE.  THAT'S

1 CLEAR.

2        OUR EXPERT DIDN'T -- DIDN'T AGREE WITH WHAT

3 MR. KESSLER SAID, BECAUSE THE QUESTION IS:  ARE WE ENTITLED TO

4 THE REVENUE?  THERE'S NO NEED FOR AN INSTRUCTION ON THE GLR

5 POOL.

6        THAT'S THE METHODOLOGY BY WHICH THE AMOUNT IS

7 CALCULATED.  IT'S NOT -- IT'S NOT WHETHER OR NOT WE'RE ENTITLED

8 TO DAMAGES, WHICH IS THE REVENUE FROM THE LICENSE AGREEMENTS.

9        **MR. KESSLER:**  WELL, THEIR EXPERT DID ABSOLUTELY -- I

10 READ IT YESTERDAY, YOUR HONOR -- AGREE WITH WHAT I STATED.

11        MORE IMPORTANTLY, THE METHODOLOGY, AS YOUR HONOR

12 KNOWS, IS BASED ON EQUAL SHARES OF THIS SPECIFIC POOL OF MONEY.

13 HE DIDN'T CALCULATE, AS YOUR HONOR NOTED YESTERDAY:  HOW MUCH

14 WOULD THEY GET FROM THE AGREEMENTS IN SOME OTHER FORM?

15        WE WENT THROUGH THAT AT LENGTH YESTERDAY.

16        THE ONLY THING HE DID IS HE SAID:  "I'M ASSUMING WHAT

17 THEY'RE ENTITLED TO IS EQUAL SHARES OF THIS SPECIFIC POOL OF

18 MONEY, THE GLR POOL," WHICH, AS YOUR HONOR KNOWS, CONTAINS

19 CERTAIN REVENUES, AND NOT OTHER REVENUES.

20        THAT'S THE ONLY CLAIM PRESENTED.

21        SO IF THE JURY DOESN'T FIND THAT THERE IS EITHER A

22 CONTRACTUAL ENTITLEMENT TO EQUAL SHARES OF THAT -- I UNDERSTAND

23 THEY HAVE AN ARGUMENT THERE.  THEY COULD FIND THAT, BUT THEY

24 HAVE TO FIND IT.  OR THAT THERE WAS A FIDUCIARY DUTY TO GIVE

25 THEM AN EQUAL SHARE OF THAT POOL.

1        IF NEITHER OF THOSE ARE TRUE, THEN THERE'S NO DAMAGES

2   EVIDENCE HERE.  IT HAS TO BE NOMINAL DAMAGES.

3        **MR. LECLAIR:**  THIS IS JUST LIKE THE ESCROW ACCOUNT,

4   YOUR HONOR.  IT'S NOT THE LABEL.  IT'S THE DOLLARS.

5        AND WHAT WE'RE ENTITLED TO IS THE LICENSING DOLLARS.

6   AND THEY'RE TRYING TO CONFUSE THE JURY BY GETTING INTO

7   DEFINITIONS OF HOW THEY TREATED THE MONEY.  AND THAT'S NOT

8   APPROPRIATE.

9        **THE COURT:**  ALL RIGHT.  LOOK.  LET'S -- THANK YOU.

10       WHAT'S OUR NEXT PARAGRAPH?  48?  48.

11       **MR. KESSLER:**  YOUR HONOR, I'M SORRY, JUST -- I THINK

12  THIS WON'T BE A PROBLEM.  IN 47, ALSO A DIFFERENT ISSUE ON LINE

13  16.  ELSEWHERE WHEN YOU SAID: "YOU MUST DETERMINE THE AMOUNT OF

14  DAMAGES," YOU PUT IN THE WORD "IF ANY."  IN THIS PARTICULAR ONE

15  YOU DID NOT, BUT I THINK IT BELONGS IN THIS ONE, AS WELL.

16       **THE COURT:**  WHERE?

17       **MR. KESSLER:**  LINE 16.  "YOU MUST DETERMINE THE

18  AMOUNT OF DAMAGES, IF ANY."  YOU'VE DONE THAT FOR THE OTHER

19  INSTRUCTIONS LATER ON THIS.

20       **THE COURT:**  ALL RIGHT.  I'LL PUT IT IN.

21       **MR. KESSLER:**  THANK YOU.

22       **THE COURT:**  OKAY.  NUMBER 48.

23       **MR. LECLAIR:**  NO OBJECTION.

24       **MR. KESSLER:**  NO OBJECTION TO 48, YOUR HONOR.

25       **THE COURT:**  49.

1              **MR. LECLAIR:** NO OBJECTION.

2              **MR. KESSLER:** NO OBJECTION TO 49. WELL, WAIT A

3    MINUTE, YOUR HONOR. ONLY -- ONLY TO THE EXTENT IT TALKS ABOUT

4    THE CLASS, AS OPPOSED TO INDIVIDUAL INJURY. WE HAVE THIS

5    OBJECTION RUNS THROUGH THE DAMAGE CLAIMS.

6              **THE COURT:** ALL RIGHT.

7              **MR. KESSLER:** I JUST WANT TO PRESERVE IT.

8              **THE COURT:** 50.

9              **MR. LECLAIR:** NO OBJECTION.

10             **MR. KESSLER:** NO OBJECTION, OTHER THAN AS STATED --

11             **THE COURT:** ALL RIGHT. 51.

12             **MR. LECLAIR:** NO OBJECTION.

13             **MR. KESSLER:** AGAIN, SUBJECT TO THE SAME OBJECTION

14   UNDER INDIVIDUAL INJURY, NO, WE HAVE NO OBJECTION.

15             **THE COURT:** 52.

16             **MR. LECLAIR:** NO OBJECTION.

17             **MR. KESSLER:** NO OBJECTION TO 52.

18             **THE COURT:** 53.

19             **MR. KESSLER:** 53, YOUR HONOR, I GUESS WE BOTH HAVE

20   OBJECTIONS. I SEE MR. LECLAIR GETTING UP, AS WELL.

21             I'LL STATE MINE. OUR FIRST OBJECTION, AS WE ARGUED

22   THE RULE 50 MOTION, WE DON'T THINK THERE SHOULD BE PUNITIVE

23   DAMAGES --

24             **THE COURT:** I'M GOING TO OVERRULE THAT.

25             **MR. KESSLER:** MY SECOND OBJECTION, YOUR HONOR, IS

1 WE'VE GIVEN TO YOU IN OUR MEMORANDUM EXACTLY WHAT THE D.C.

2 INSTRUCTIONS ARE.

3       **THE COURT:** HOW DOES IT DIFFER FROM WHAT I'VE GOT

4 HERE?

5       **MR. KESSLER:** OKAY. MOST IMPORTANTLY, YOUR HONOR, IS

6 THERE'S A TWO-PART TEST IN THE D.C. INSTRUCTIONS, WHICH IS

7 SOMEWHAT UNIQUE.

8       THE D.C. INSTRUCTIONS TALK ABOUT THE FACT THAT IT HAS

9 TO BE TWO ELEMENTS. ONE, THE REQUIRED MALICIOUS INTENT OR

10 WILLFUL DISREGARD OF ANOTHER'S RIGHTS. AND THAT DEFENDANTS'

11 CONDUCT ITSELF WAS OUTRAGEOUS, GROSSLY FRAUDULENT OR RECKLESS

12 TOWARD THE SAFETY OF THE PLAINTIFF.

13       SO, IN OTHER WORDS, FOR PUNITIVE DAMAGES YOU NEED

14 BOTH OF THOSE ELEMENTS. IT'S AN "AND" STANDARD.

15       AND, AGAIN, WE'VE SET THIS FORTH AT LENGTH THE EXACT

16 LANGUAGE.

17       **THE COURT:** I'M INCLINED TO JUST TAKE MINE OUT AND

18 PUT IN D.C. LAW. IS THERE A STANDARD FORM INSTRUCTION IN D.C.?

19       **MR. KESSLER:** YES, YOUR HONOR. WE SUBMITTED --

20       **THE COURT:** WHERE CAN I FIND IT?

21       **MR. KESSLER:** IN OUR BRIEF, ON PAGE 13, IT'S D.C.

22 STANDARD INSTRUCTION 1601. WE JUST MODIFIED IT TO TAKE OUT --

23 THERE WAS SOME ELEMENTS. THEY HAD INSTRUCTIONS TO AWARD IT

24 NOW, WHICH YOUR HONOR DOESN'T KNOW.

25       IN OTHER WORDS, THEIR INSTRUCTIONS GAVE BOTH THE

1  STANDARD AND THEN THE STANDARD ON HOW TO MEASURE IT.  WE TOOK

2  OUT THE MEASURING PART BECAUSE THAT WOULD BE A SEPARATE

3  PROCEEDING UNDER YOUR HONOR'S RULES.

4          **MR. LECLAIR:**  COULD I HAVE THE ACTUAL -- I'D RATHER

5  YOU WORK FROM THE OFFICIAL COPY THAN THEIRS, YOUR HONOR, IF YOU

6  DON'T MIND.

7          **MR. KESSLER:**  THAT'S FINE, YOUR HONOR.  YOU'LL SEE

8  SOME PARTS DON'T APPLY.

9          **THE COURT:**  OKAY.

10          **MR. KESSLER:**  THE PARTS THAT DON'T APPLY RELATE TO

11  DECIDING NOW.

12          **THE COURT:**  I WILL FIX IT.

13          **MR. LECLAIR:**  THEY'VE ADDED THINGS TO IT, YOUR HONOR

14  WHICH IS WHY WE ARE OBJECTING TO SOME OF THE THINGS THEY ARE

15  ADDING TO IT.  BUT IF YOUR HONOR GIVES THE STANDARD

16  INSTRUCTION, THAT'S FINE.

17          **THE COURT:**  ALL RIGHT.

18          **MR. LECLAIR:**  I HAD SOMETHING MUCH SIMPLER, YOUR

19  HONOR.

20          **THE COURT:**  WHAT'S THAT?

21          **MR. LECLAIR:**  WE WOULD ASK THAT YOUR HONOR NOT GIVE

22  THE LAST SENTENCE OF THIS INSTRUCTION, WHICH SAYS THAT:

23          "IF YOU DECIDE THAT PUNITIVE DAMAGES SHOULD BE

24  AWARDED, YOU'LL HAVE A SHORT SUPPLEMENTAL PROCEEDING

25  IMMEDIATELY FOLLOWING YOUR VERDICT IN ORDER TO RECEIVE MORE

1  EVIDENCE AND ARGUMENT."

2         I THINK THAT, UNFORTUNATELY, INVITES THE JURY TO NOT

3  FIND AN ANSWER BECAUSE --

4         **THE COURT:**  THEN, THEY WILL JUST START SPECULATING:

5  "WELL, WHAT IS THE DOLLAR AMOUNT GOING TO BE, AND HOW ARE WE

6  GOING TO DETERMINE IT?"

7         IN MY EXPERIENCE, I'VE HAD A FEW JURIES THAT COME

8  BACK AND ACTUALLY AWARD PUNITIVE DAMAGES.  AND BY TELLING THEM

9  IT'S GOING TO BE SHORT AND SUPPLEMENTAL, AND NOT LONG AND DRAWN

10  OUT, I THINK THIS IS FAIR.  I'M NOT GOING TO TAKE THAT OUT.

11         **MR. LECLAIR:**  ALL RIGHT, YOUR HONOR.

12         **MR. KESSLER:**  YOUR HONOR, I HAVE A QUESTION ABOUT

13  THAT.  WILL IT LITERALLY BE IMMEDIATELY?  I DON'T KNOW YOUR

14  HONOR'S PROCEDURES.

15         **THE COURT:**  YES.  WELL, ALL THE FINANCIAL INFORMATION

16  IS ALREADY ON THE TABLE HERE.  BUT WHAT WE WOULD DO, IF THEY

17  WERE TO SAY:  "WE THINK PUNITIVE DAMAGES ARE IN ORDER," WHAT

18  I'D PROBABLY DO IS GIVE THE JURY A 15-MINUTE BREAK, AND WE'D

19  COME BACK AND EACH SIDE COULD PUT ON MORE EVIDENCE, IF YOU

20  WANT.  IT'S USUALLY 15 MINUTES.  BUT USUALLY THE EVIDENCE IS

21  ALREADY IN, AND YOU JUST HAVE A SUPPLEMENTAL ARGUMENT.

22         AND YOU WOULD BE SAYING:  "NO, NO, WE'VE SUFFERED

23  ENOUGH."

24         AND THE OTHER SIDE WOULD BE SAYING:  "MAKE THEM PAY

25  FOREVER."

1          AND THEN, THEY GO BACK AND COME BACK AND SAY

2    "$2 BILLION," OR "ZERO," AS THE CASE MAY BE.  AND IT'S ALL OVER

3    IN ABOUT AN HOUR.

4          **MR. KESSLER:**  I TRUST YOUR HONOR WOULD FIX 2 BILLION.

5          **THE COURT:**  MAYBE THE SUPREME COURT.

6          **MR. KESSLER:**  IN ANY EVENT --

7          **MR. KATZ:**  WE DON'T WANT ANYTHING BEFORE 2002, YOUR

8    HONOR.

9          **MR. KESSLER:**  WE DO PRESERVE THE OBJECTION TO THE

10   INSTRUCTION AS A WHOLE FOR THE REASONS WE STATED.

11         **THE COURT:**  GREAT.  NOW --

12         **MR. KESSLER:**  YOUR HONOR, I JUST HAVE ONE -- I'M

13   SORRY, I APOLOGIZE.  I HAVE TWO OTHER INSTRUCTIONS TO PROPOSE.

14         **THE COURT:**  WHAT ARE THEY?

15         **MR. KESSLER:**  OKAY.  ONE INSTRUCTION IS -- AND,

16   AGAIN, THIS IS JUST TO PRESERVE FOR THE RECORD, BECAUSE YOUR

17   HONOR HAS RULED IN A DIFFERENT CONTEXT.  WE DO THINK THE LAW OF

18   ALL 50 STATES SHOULD BE APPLIED TO THE INDIVIDUAL CLAIMS OF THE

19   MEMBERS IN THE STATE.

20         YOUR HONOR HAS REJECTED THAT IN CLASS CERTIFICATION.

21   BUT I THINK I HAVE TO RAISE THAT IN THE JURY INSTRUCTIONS TO

22   PRESERVE.

23         **THE COURT:**  YOU RAISED IT, AND IT'S REJECTED.

24         **MR. KESSLER:**  THANK YOU, YOUR HONOR.  I PRESERVED IT.

25         SECOND, THIS IS MORE FOR THE MOMENT.  WE THINK YOUR

1  HONOR SHOULD INSTRUCT THAT THERE'S NO INTEREST PERMITTED.  AND

2  THE REASON --

3       **THE COURT:**  I'M NOT GOING TO ADDRESS THAT ONE WAY OR

4  ANOTHER.  THAT'S JUST A MATTER FOR DAMAGES.  THEY CAN FIGURE IT

5  OUT ON THEIR OWN.  IF THEY THINK -- IF THEY THINK -- THAT'S

6  JUST A MATTER OF -- IF THE JURY THINKS IT'S BEEN PROVEN THAT

7  THE TIME VALUE OF MONEY HAS BEEN LOST.  DOES D.C. RULE OUT

8  PREJUDGMENT INTEREST?

9       **MR. KESSLER:**  NO.  WHAT D.C. LAW SAYS THERE HAS TO BE

10  EVIDENCE THAT THE DAMAGES ALONE WAS NOT ADEQUATE.

11       THEY PRESENTED NO SUCH EVIDENCE.  THEIR EXPERT

12  OFFERED NO SUCH OPINION.  SO THERE'S AN ABSENCE OF EVIDENCE.

13       **THE COURT:**  I REMEMBER HIM SAYING COUNSEL TOLD HIM TO

14  USE SIX PERCENT.

15       **MR. KESSLER:**  THAT'S WHAT HE GOT.  COUNSEL TOLD HIM.

16  THAT'S THE WHOLE EVIDENCE.

17       **THE COURT:**  BUT MAYBE 6 PERCENT IS NOT OUTRAGEOUS.

18  IT'S PROBABLY A LITTLE HIGH FOR WHAT -- THAT'S A MATTER OF

19  PROOF.

20       **MR. HILBERT:**  YOUR HONOR, WE'VE ACTUALLY ADDRESSED

21  THIS SPECIFIC ISSUE IN OUR BRIEF LAST EVENING, THE ONE THAT I

22  THINK WE FILED AT MIDNIGHT.  WE INCLUDED CASES, AS WELL AS THE

23  STATUTES THAT GOVERN THIS.  THE JURY IS ENTITLED TO AWARD

24  PREJUDGMENT INTEREST IN ITS DISCRETION.

25       THE PRINCIPLE BEHIND THAT IS THE THEORY OF UNJUST

1    ENRICHMENT. THE PRINCIPLES IN THE CASE IS THE STATUTES, IN

2    FACT, THE 6 PERCENT --

3              **THE COURT:** I'M GOING TO LEAVE IT JUST AS IT IS.

4              **MR. HILBERT:** FAIR ENOUGH.

5              **THE COURT:** WHAT ELSE?

6              **MR. LECLAIR:** YOUR HONOR, WE HAVE TWO, ALSO. AGAIN,

7    JUST FOR THE RECORD, I THINK YOU REJECTED THESE, BUT JUST TO BE

8    SURE, ONE WAS A REQUEST FOR AN INSTRUCTION ON THE BREACH OF

9    COVENANT OF GOOD FAITH AND FAIR DEALING.

10             **THE COURT:** I'M GOING TO EXPLAIN THIS. THE COVENANT

11   OF GOOD FAITH AND FAIR DEALING, THERE ARE TWO WAYS IN WHICH IT

12   COMES UP. ONE IS AS A MATTER OF CONSTRUING THE OBLIGATIONS OF

13   THE PARTIES UNDER THE CONTRACT ITSELF ON THE CONTRACT CLAIM,

14   SUCH THAT ONE SIDE IS NOT ALLOWED TO FRUSTRATE THE OTHER SIDE

15   FROM GETTING THE BENEFITS OF THE CONTRACT ON A CONTRACT CLAIM.

16   NOT FIDUCIARY. WE'RE NOT THERE YET.

17             AND THAT IS A -- I DO NOT SEE HOW THAT COMES INTO

18   PLAY IN THIS CASE.

19             THE SECOND WAY ON OUR RECORD, BECAUSE EITHER THE

20   CONTRACT MEANS ONE THING OR IT MEANS ANOTHER, BUT YOU DON'T USE

21   THE -- YOU DON'T USE THE COVENANT OF GOOD FAITH AND FAIR

22   DEALING AS A TOOL FOR CONSTRUING THE CONTRACT.

23             NUMBER TWO, THE -- THE -- THERE IS, IN CALIFORNIA AT

24   LEAST, A NARROW SET OF CIRCUMSTANCES WHERE THERE'S A TORT,

25   T-O-R-T, NOT CONTRACT, BUT A TORT CLAIM. USUALLY THIS IS

1  AGAINST INSURANCE COMPANIES FOR THE BREACH OF THE COVENANT OF

2  GOOD FAITH AND FAIR DEALING.  THERE'S NO WAY THAT APPLIES HERE.

3  THAT'S THE TORT CLAIM.

4        IN TERMS OF A -- THAT -- I KNOW HOW YOU WOULD WIND UP

5  USING IT AND HOW I THINK THE JURY MIGHT GET MISLED ON IT.  YOU

6  WOULD WIND UP USING THAT TO BOOTSTRAP A FIDUCIARY DUTY.  AND

7  THAT IS -- WOULD BE WRONG.  THAT WOULD BE TRYING TO USE IT TO

8  CONSTRUE THE CONTRACT AS TO WHAT THE COMMITMENTS WERE THAT WERE

9  UNDERTAKEN.  AND THAT IS NOT IN MY JUDGMENT A PROPER WAY TO USE

10  IT ON THE FACTS OF THIS CASE.

11        ALL RIGHT.  NOW THAT I HAVE TOLD YOU WHAT I -- I HAVE

12  CONSIDERED IT, BUT IF YOU WANT TO SAY MORE ON THAT SUBJECT, I'M

13  ALL EARS.

14        **MR. LECLAIR:**  ALL RIGHT, YOUR HONOR.  WHILE I DON'T

15  WANT TO TEST YOUR HONOR'S PATIENCE, I'LL SAY ONLY THIS:  WE

16  THINK THE FRUSTRATION IS EXACTLY SHOWN IN THIS CASE, WHICH IS

17  THEY HAD AN OPPORTUNITY TO DO THESE LICENSES TOGETHER.  THEY

18  BROKE THEM OUT TO FRUSTRATE OUR CLIENTS' ABILITY TO SHARE IN

19  THE GROUP REVENUE.  AND THAT'S WHY WE THINK IT'S APPROPRIATE.

20        BUT WE UNDERSTAND YOUR HONOR'S DECISION.

21        **THE COURT:**  THE CLASSIC CASE ON A CONTRACT, FOR

22  EXAMPLE, IS TWO SIDES AGREE TO DO VARIOUS THINGS.  ONE SIDE

23  STARTS TO PROCEED TO PERFORM, AND THEN THE OTHER SIDE DOES

24  SOMETHING THAT PREJUDICES THE ABILITY OF THE OTHER SIDE TO

25  ACTUALLY PERFORM AND GET THE BENEFITS OF THE CONTRACT.

1          NOW, THAT'S NOT THE ONLY WAY IN WHICH THE COVENANT

2   MIGHT COME UP.  BUT THAT IS THE CLASSIC EXAMPLE WHERE UNDER THE

3   COVENANT OF GOOD FAITH AND FAIR DEALING ONE SIDE CANNOT THROW

4   ROADBLOCKS IN THE WAY OF THE OTHER SIDE PERFORMING AND THUS

5   GETTING THE BENEFITS OF THE DEAL.

6          THAT HAS NOTHING TO DO WITH THIS CASE.  SO I'VE

7   CONSIDERED IT VERY CAREFULLY, AND I THINK IT DOES NOT FIT THE

8   RECORD THAT WE HAVE MADE IN THIS CASE.  SO THAT'S OVERRULED.

9          WHAT ELSE DO YOU HAVE?

10         **MR. LECLAIR:**  THE ONLY OTHER ONE, YOUR HONOR, WAS OUR

11  REQUEST FOR AN INSTRUCTION ON DISGORGEMENT.

12         **THE COURT:**  I'M NOT GOING TO GIVE THAT.  I THINK

13  THERE IS SO -- I WILL SAY THIS, THAT IF THE -- IF THE JURY WERE

14  TO FIND A BREACH OF FIDUCIARY DUTY -- NO, I'M NOT EVEN GOING TO

15  SAY THAT YET.

16         I JUST FEEL THAT THIS RECORD DOES NOT PRESENT ANY

17  ISSUE THAT WOULD CONCEIVABLY ALLOW THEM WITH ANY DEGREE OF

18  INTELLIGENCE AND RATIONALITY TO DISGORGE ANYTHING.  SO THAT --

19  OUR RECORD DOESN'T FIT THAT.

20         **MR. KESSLER:**  SHOULD WE RAISE THE VERDICT FORM NOW,

21  YOUR HONOR?

22         **THE COURT:**  NO, NOT YET.

23         I HAVE A COUPLE OF -- WE'RE GOING TO TAKE A SHORT

24  BREAK, BUT BEFORE I DO THAT, WOULD MY LAW CLERK -- DO YOU HAVE

25  THOSE TWO -- I HAVE TWO PROPOSED PARAGRAPHS THAT FLOWED OUT OF

1   OUR DISCUSSIONS YESTERDAY.  I'D LIKE TO GIVE THEM TO YOU NOW

2   AND GET YOUR INPUTS AND COMMENTS ON THESE.

3        ONE IS ON THE DISCUSSION I WAS HAVING WITH

4   MR. LECLAIR, WHO I THINK HE DIDN'T INTEND FOR THIS TO HAPPEN,

5   BUT IN MY DISCUSSION WITH HIM HELPED ME CRYSTALLIZE SOME

6   THINKING AS TO THE RELATIONSHIP BETWEEN THE CONTRACT CLAIM AND

7   THE FIDUCIARY CLAIM.

8        AND I AM -- I'M GIVING -- I'M THINKING ABOUT GIVING

9   THIS INSTRUCTION.

10        NUMBER TWO IS THE ONE ON THE ANTITRUST TIE-IN.  I'M

11   GOING TO GIVE YOU BOTH A CHANCE TO REVIEW THOSE FOR 15 MINUTES,

12   AND THEN WE'LL COME BACK AND CONTINUE WITH OUR DISCUSSION.  AND

13   THEN, WE CAN TAKE UP THE SPECIAL VERDICT FORM.  ALL RIGHT.  SO

14   LET'S TAKE A 15-MINUTE BREAK.

15        (RECESS WAS TAKEN.)

16        **THE COURT:**  ALL RIGHT.  BACK TO WORK.

17        BE SEATED.

18        ALL RIGHT.  ON THE ANTITRUST ONE, ANY OBJECTIONS?

19        **MR. KATZ:**  YES, YOUR HONOR.  WE OBJECT TO IT.

20        I THINK THAT YOUR HONOR HAS SEEN IN THIS CASE THAT

21   THE REAL DIVISION HERE IS NOT BETWEEN RETIREDS AND ACTIVES.

22   IT'S ACTUALLY BETWEEN STARS AND JOURNEYMEN.

23        THE VALUE OF A JOE MONTANA, FOR EXAMPLE, IS FAR

24   GREATER THAN THE VALUE OF THE CURRENT QUARTERBACK OF THE 49ERS,

25   WHOEVER THAT MAY BE.

1    OUR THEORY IS THAT THE PLAINTIFFS, BECAUSE OF THE

2 WORDING OF THE CONTRACT WHICH SAYS "SIX OR MORE PRESENT OR

3 FORMER," SHOULD HAVE OFFERED THE RETIRED AND ACTIVE PLAYERS AS

4 A GROUP.

5    ONE OF THE THINGS YOUR HONOR SAID YESTERDAY THAT

6 CONCERNED ME WAS WHEN THEY WERE TALKING ABOUT OFFERING THE

7 RETIREDS FOR FREE.  IT'S NOT FOR FREE.  THEY ARE JUST BEING

8 OFFERED FOR THE SAME CHARGE.

9    ANYTIME YOU HAVE A GROUP, THERE ARE SOME WHO ARE MORE

10 VALUABLE, SOME OR LESS VALUABLE.

11    OUR WHOLE THEORY IS THAT THEY MUST OFFER THEM AS A

12 GROUP.  AND WHAT THIS INSTRUCTION IS SAYING IS THAT OUR THEORY

13 IS ILLEGAL.  AND I DON'T THINK THAT THAT IS A FAIR INSTRUCTION.

14 IT REALLY IS A DISPOSITIVE INSTRUCTION --

15    **THE COURT:**  WELL, WHERE DID THE DUTY COME FROM EVER

16 THAT THE GLA'S, RETIRED GLA'S AND THE ACTIVE GLA'S, WHERE DOES

17 IT EVER SAY THAT THERE WAS A DUTY TO OFFER THE -- THAT ENTIRE

18 UNIVERSE COMBINED AS A GROUP?

19    **MR. KATZ:**  I THINK THAT'S A FAIR INFERENCE FROM THE

20 CONTRACT WHICH DEFINES GROUP LICENSING AS "SIX OR MORE PRESENT

21 OR FORMER PLAYERS."

22    TO GO IN THERE AND SAY:  "WE HAVE A GROUP OF ACTIVE

23 PLAYERS, AND YOU CAN'T CARVE ANY OUT, YOU MUST TAKE THEM" --

24 AND I COULD SAY, AS YOUR HONOR SAID YESTERDAY:  "WELL, THAT

25 JUST MEANS YOU'RE GIVING THE THIRD-STRINGERS FOR FREE, BECAUSE

1   THEY ARE NEVER USED," THAT'S NOT THE WAY IT WORKS.

2          AND THEN, TO SAY:  "OH, AND HERE'S THIS OTHER GROUP,

3   AND YOU CAN CHERRY-PICK THE GROUP, IF YOU WANT," THEY DON'T

4   HAVE THE RIGHT TO CHERRY-PICK.

5          WE SHOULD BE TREATED THE SAME WAY AS THIS PROGRAM WAS

6   ADMINISTERED FOR ACTIVE PLAYERS, BECAUSE IT SAYS "SIX OR MORE

7   PRESENT OR FORMER PLAYERS."  THERE IS NO RIGHT ANYWHERE IN THIS

8   CASE THAT SAYS THEY CAN TAKE THE ACTIVES AND SAY THAT YOU CAN'T

9   CHERRY-PICK, AND THEY CAN TAKE THE RETIREDS AND SAY YOU CAN

10  CHERRY-PICK.  IT JUST DOESN'T SAY THAT.

11         AND THERE'S NOT AN ANTITRUST ISSUE IN THIS CASE.

12  THERE'S NO PRODUCT DEFINITION.  THERE'S NO MARKET DEFINITION.

13  AND FOR THE COURT TO SAY THAT OUR PRIMARY THEORY, WHICH CAN BE

14  INFERRED FROM THIS, AND WHICH IS ACTUALLY MUCH MORE LOGICAL

15  THAN THEIR THEORY, WHICH IS THAT YOU CAN CHERRY-PICK ONE AND

16  NOT CHERRY-PICK THE OTHER, IS ILLEGAL WITH NO EVIDENCE TO BACK

17  IT UP IS JUST NOT A PROPER INSTRUCTION.

18         AND WE DON'T INTEND -- MR. PARCHER DOES NOT IN THE

19  CLOSING ARGUMENT INTEND TO SAY THAT THEY HAD TO COERCE A

20  PURCHASE OF ONE FOR THE OTHER, WHICH IS WHAT TYING IS.

21         SO THERE'S -- THIS IS JUST AN ENTIRELY IMPROPER

22  INSTRUCTION.

23         **THE COURT:**  LET ME HEAR --

24         **MR. KATZ:**  BUT IF HE DID SAY THAT, THEN I WOULD SAY,

25  OKAY, IF HE SAYS THAT IN THE CLOSING, THEN YOUR HONOR CAN GIVE

1   THIS INSTRUCTION.  BUT IF HE DOESN'T SAY THAT IN THE CLOSING,

2   THEN TO GIVE THIS INSTRUCTION IS TO BASICALLY DECIDE THE CASE.

3          **MR. KESSLER:**  YOUR HONOR, THE INSTRUCTION IS TO CURE

4   WHAT MR. HUMMEL DID, NOT WHAT MAY BE DONE IN CLOSING.  IF THEY

5   DID IT IN CLOSING IT WOULD CREATE A SECOND PROBLEM.

6          IF YOU RECALL WE ASKED FOR THIS IN REGARD TO

7   MR. HUMMEL'S QUESTION, WHICH I WILL READ TO YOUR HONOR, WHICH

8   EXACTLY DID THIS.

9          THE QUESTION AT 2252 OF THE TRANSCRIPT WAS THE

10  FOLLOWING, OKAY:

11          "AND WAS THERE ANYTHING TO PREVENT, GIVEN THE

12          VALUE THAT THEY WERE GOING TO PLACE ON THAT

13          RIGHT TO HAVE A MONOPOLY..."

14          AND WHEN HE WAS REFERRING TO A MONOPOLY, IT WAS THE

15  MONOPOLY OVER ACTIVE PLAYER LICENSING, HIS SERIES OF QUESTIONS

16  WITH PROFESSOR NOLL, SAYING YOU COULDN'T GET ACTIVE PLAYERS,

17  ANYWAY.

18          HE SAID:

19          "GIVEN THE VALUE THAT THEY WERE GOING TO

20          PLACE ON THAT RIGHT TO HAVE A MONOPOLY, WAS

21          THERE ANYTHING TO PREVENT THEM FROM USING THE

22          NFLPA'S POWER IN CONNECTION WITH HAVING ALL

23          THOSE ACTIVE PLAYERS UNDER LICENSE TO SAY,

24          'HEY, TAKE OUR GUYS.  TAKE THE GLA GUYS'?"

25          SO IT SPECIFICALLY WAS A QUESTION TO PROFESSOR

1   NOLL --

2          **THE COURT:**  ALL RIGHT.  GIVE ME THAT.  HAND THAT UP

3   TO ME OR SOMETHING SO THAT I CAN -- I NEED TO SEE THE WORDING

4   OF IT.

5          **MR. KESSLER:**  YOUR HONOR, YOU'LL SEE IT WAS ALL ABOUT

6   MONOPOLY POWER.

7          **THE COURT:**  SORRY.

8          **MR. KESSLER:**  AND IF YOUR HONOR LOOKS AT THE PREVIOUS

9   THINGS, YOU'LL SEE WHAT HE DID IS HE SET UP WITH PROFESSOR NOLL

10  SO THE ONLY PLACE THEY COULD GET ACTIVE PLAYERS IS FROM THE

11  NFLPA.  AND THEN, HE SAID:

12          "ASSUME WITH ME IT'S A RELEVANT MARKET."

13      HE HAD PREDECESSOR QUESTIONS, WHEN HE GOES:

14          "ASSUME IT'S A RELEVANT MARKET."

15      AND HE GOES TO PROFESSOR NOLL:

16          "IF IT'S A RELEVANT MARKET AND THE ONLY SOURCE OF

17  ACTIVE PLAYERS, AND THAT WAS THE RELEVANT MARKET, THEN THERE

18  WOULD BE MONOPOLY POWER AND MARKET POWER, RIGHT?"

19          AND, OF COURSE, IF YOU ASSUME THE RELEVANT MARKET,

20  AND THEY ARE THE ONLY SUPPLIER, THEN PROFESSOR NOLL SAID:

21          "YES, THEN IN THAT HYPOTHETICAL THERE WOULD BE

22  MONOPOLY POWER."

23          AND SO HE LEADS UP TO THIS STRING, AND THEN HE SAYS:

24          "GIVEN THAT MONOPOLY POWER," SAYS "WHY COULDN'T

25  THEY SAY ALL THAT POWER IN THE ACTIVES," SAYS "TAKE THE RETIRED

1  PLAYER GUYS USING THAT POWER OF THE ACTIVES."

2          SO THAT'S EXACTLY THE PROBLEM.

3      **THE COURT:**  I UNDERSTAND BOTH SIDES' POINTS.  WE'VE

4  GOT TO MOVE ON.

5          ON THE NEXT ONE, WHAT ARE YOUR VIEWS ON THAT?

6      **MR. KESSLER:**  DO YOU WANT TO GO FIRST?

7      **MR. KATZ:**  WELL, WE OBJECT TO IT.

8      **THE COURT:**  AND WHY WOULD YOU OBJECT?

9      **MR. KATZ:**  THE -- FIRST OF ALL, IN TERMS OF THE

10  EXPECTATION AT THE TIME THAT THE CONTRACT WAS SIGNED -- WE WENT

11  OVER THIS A LITTLE BIT BEFORE WHEN YOU WERE TALKING ABOUT WHAT

12  MR. LINZNER -- YOU HAD CITED MR. LINZNER'S TESTIMONY IN YOUR

13  INSTRUCTIONS -- OUR WITNESSES ALL TESTIFIED THAT BASICALLY THEY

14  THOUGHT THAT THE CONTRACT MEANT WHAT IT SAID:  "SIX OR MORE

15  PRESENT."

16          THEY WOULDN'T HAVE HAD ANY EXPECTATION ABOUT A GROUP

17  LICENSING REVENUE POOL, BECAUSE THEY HAD NO KNOWLEDGE OF A

18  GROUP LICENSING REVENUE POOL.  THAT WAS NOT KNOWLEDGE THAT

19  WAS -- INFORMATION THAT WAS GIVEN TO THEM BY THE --

20      **THE COURT:**  WELL, WAIT.  DIDN'T THE GROUP

21  LICENSING -- I'M SORRY.  IT'S THE GROSS.  I DON'T KNOW WHY WE

22  KEEP PUTTING IN -- THE GROSS LICENSING REVENUE POOL EXISTED

23  GOING WAY BACK.  AND SO EVERY ONE OF THESE PLAYERS WERE ONCE

24  ACTIVE PLAYERS, AND THEY WOULD HAVE BEEN PARTICIPATING IN THE

25  GROSS LICENSING REVENUE POOL, SO THEY KNEW ALL ABOUT IT.

1          **MR. KATZ:**  I DON'T THINK THAT'S TRUE, YOUR HONOR,

2     BECAUSE THE PI CAME INTO EXISTENCE IN '94.

3          **THE COURT:**  WELL, BUT OUR CASE IS 2004 AND FORWARD.

4     SO ANYONE WHO SIGNED --

5          **MR. KATZ:**  MR. ADDERLEY PLAYED --

6          **THE COURT:**  -- THE GLA, IN EFFECT, WAS AT ONE POINT

7     AN ACTIVE PLAYER AND PARTICIPATED IN THE POOL.

8          **MR. KATZ:**  YOUR HONOR, OUR PLAYERS -- I THINK EVERY

9     PLAYER THAT CAME HERE PLAYED BEFORE 1994.  IN FACT, I KNOW THEY

10    DID.

11         **MR. KESSLER:**  YOUR HONOR, I WOULD SAY THAT FAR MORE

12    THAN 25 PERCENT OF THE CLASS PLAYED AFTER 1994.

13         **MR. KATZ:**  THE PLAYERS -- LOOK, YOUR HONOR.  THERE'S

14    NO EVIDENCE THAT THEY WERE INFORMED OF A GROSS -- GROUP

15    LICENSING REVENUE POOL.  NONE OF THE WITNESSES WHO TESTIFIED

16    HERE, THERE'S NO EVIDENCE OF THAT.

17         AND THEN YESTERDAY, YOUR HONOR, WE GOT OFF ON THIS

18    MR. HOLLYWOOD THEORY, WHICH WAS VERY MUCH ON THE WRONG TRACK.

19    IT'S NOT OUR THEORY.  LET'S PUT IT THAT WAY.

20         OUR THEORY IS THAT THE DEFENDANTS HAVE A FIDUCIARY

21    DUTY TO US, BECAUSE THEY'RE OUR AGENT.  IT'S A DUTY TO ACTIVELY

22    MARKET.  THAT THE DEFENDANTS HAVE A DUTY TO MARKET US AS A

23    GROUP, OR TO SAY THAT THERE'S A CONFLICT OF INTEREST.

24         THEY DID NOT SAY THAT THERE IS A CONFLICT OF

25    INTEREST.  THEY, THEREFORE, HAD TO OFFER US AS A GROUP TO THEIR

LICENSEES.  AND, THEREFORE, THE DAMAGES WOULD BE THE SAME AS

THE CONTRACT DAMAGES, BECAUSE THERE'S NO ADDITIONAL CHARGE FOR

THE GROUP.  JUST AS THERE'S NO ADDITIONAL CHARGE FOR THE

THIRD-STRING CENTER OF THE CURRENT SAN FRANCISCO 49ERS, EVEN

THOUGH NO ONE IS INTERESTED IN HIM, AND NO ONE USES HIM.

THAT'S THE WAY THE SYSTEM WORKS.

     SO THIS WHOLE IDEA THERE HAS TO BE A MR. HOLLYWOOD

OUT THERE IS JUST AN INCORRECT IDEA AND DOES NOT BELONG IN A

JURY INSTRUCTION.

     THAT'S FOR ARGUMENT.  HE CAN ARGUE THAT, IF HE WANTS.

**THE COURT:**  LET'S HEAR FROM MR. KESSLER.

**MR. KESSLER:**  YES, YOUR HONOR.  WE DO BELIEVE SOME

INSTRUCTION LIKE THIS IS NECESSARY FOR THE REASON I ARTICULATED

EARLIER.  THEY CHOSE TO ONLY PUT IN A DAMAGE THEORY THAT IS

BASED ON THE RETIRED PLAYERS SHARING IN AN EQUAL SHARE OF THE

GROSS LICENSING REVENUE POOL.

     NO ONE REQUIRED THEM TO DO THEIR DAMAGE THEORY THAT

WAY.  THEY COULD HAVE DONE IT MANY DIFFERENT WAYS.  BUT THAT'S

WHAT THEY CHOSE.

     HAVING CHOSEN TO DO A DAMAGE THEORY WHERE THE ONLY

THING PRESENTED TO THIS JURY THAT'S NONSPECULATIVE IS THAT --

THAT AN EQUAL SHARE IN THE GROSS LICENSING REVENUE POOL, THEN

WE BELIEVE, AS WE ARGUED BEFORE, THAT UNLESS THE JURY FINDS

THERE WAS SOME ENTITLEMENT TO THE GROSS LICENSING REVENUE POOL

IN EQUAL SHARES, THEN THEY PRESENTED NO EVIDENCE.

1          IN FACT, YOUR HONOR, WE BELIEVE THE FIRST SENTENCE,

2     CHANGING "GROUP" TO "GROSS," IS EXACTLY CORRECT.

3          THE SECOND SENTENCE IS A CORRECT STATEMENT OF THE

4     LAW, BUT THEY PRESENTED NO EVIDENCE IN SUPPORT OF THE SECOND

5     SENTENCE OF THE "RATHER," WHICH IS WHY WE MADE THE RULE 50

6     MOTION.

7          BUT WE UNDERSTAND IF YOU DENY THE RULE 50 MOTION

8     YOU'RE GOING TO WANT BOTH SENTENCES IN THERE.

9          SO WE DON'T DISAGREE WITH THE STATEMENT OF THE LAW IN

10    THE SECOND SENTENCE BEGINNING "RATHER."  WE SIMPLY NOTE THAT

11    THEY PUT IN NO EVIDENCE THAT A JURY COULD CALCULATE THE SECOND

12    SENTENCE, WHICH IS WHY THE INSTRUCTION WE ASKED FOR IS TO SAY

13    THAT UNLESS THE JURY FINDS THAT THERE'S SOME CONTRACTUAL OR

14    FIDUCIARY DUTY ENTITLEMENT TO HAVE EQUAL SHARES OF THE GROSS

15    LICENSING REVENUE POOL, WE THINK THEY SHOULD AWARD NOMINAL

16    DAMAGES.

17         BUT SINCE YOUR HONOR HAS REJECTED THAT, WE BELIEVE

18    THIS INSTRUCTION WOULD BE APPROPRIATE, RESERVING OUR OBJECTION

19    TO HAVING THE OTHER INSTRUCTION.

20         **THE COURT:**  I'M NOT SURE WHAT TO DO.  I WILL THINK

21    ABOUT IT AND LET YOU KNOW BY THE END OF THE DAY.

22         WE'RE UP TO 54.  CAN I JUST ASK AS A GROUP, PARAGRAPH

23    54 IS WHERE WE START WITH THE CONCLUDING INSTRUCTIONS.

24         DOES ANYONE HAVE ANYTHING YOU WANT TO CHANGE ALL THE

25    WAY TO THE END?

1      **MR. KESSLER:**  WE HAD NO OBJECTIONS TO THE END, YOUR

2  HONOR.  I DON'T THINK ANYONE DID.

3      **THE COURT:**  ALL RIGHT.  LET'S GO TO THE SPECIAL

4  VERDICT FORM.  ANY OBJECTIONS TO THE SPECIAL VERDICT FORM?

5      **MR. KESSLER:**  YES, YOUR HONOR.  THE FIRST ISSUE IS

6  THE WAY THE FIRST QUESTION IS PHRASED.  IT TALKS ABOUT A

7  CLASS-WIDE BREACH OF ANY DUTY OWED TO RPGLA CLASS MEMBERS.

8      AND I'M CONCERNED THAT THAT'S GOING TO CONFUSE THE

9  BREACH OF CONTRACT WITH THE BREACH OF FIDUCIARY DUTY.  IT

10  SOUNDS LIKE THERE'S SOME OTHER DUTY.

11      WE THINK THE BEST WAY TO SAY THIS WOULD BE:  "PROVEN

12  BY A PREPONDERANCE OF THE EVIDENCE THAT A CLASS-WIDE BREACH OF

13  ANY TERMS OF THE -- OF ANY TERMS OF THE -- UNDER THE RPGLA."

14      IN OTHER WORDS, YOU BREACH THE TERMS OF THE CONTRACT.

15  WE THINK "DUTY" IS CONFUSING.

16      WE KNOW THERE'S CASE LAW AND OTHER THINGS THAT

17  SUGGESTS YOU COULD HAVE A CONTRACTUAL DUTY.  BUT IN THIS

18  CONTEXT I THINK IT IS CONFUSING TO ASK THE QUESTION THIS WAY,

19  AND I THINK YOU WANT TO FOCUS THEM ON THE TERMS OF THE

20  CONTRACT.

21      **MS. NAYLOR:**  YOUR HONOR, UNDER THE D.C. STANDARD

22  INSTRUCTION, BREACH OF CONTRACT DEFINES STATES UNDER THE LAW:

23      "IF ONE PARTY FAILS TO PERFORM A DUTY OWED UNDER

24  A CONTRACT, THEN THAT PARTY HAS BREACHED THE CONTRACT."

25      I THINK THAT YOUR HONOR GOT IT EXACTLY RIGHT.

1          **MR. KESSLER:**  EXCEPT, YOUR HONOR, THAT'S IN THE

2  INSTRUCTIONS, NOT IN THE VERDICT FORM.

3          THE PROBLEM HERE IS YOU HAVE A FIDUCIARY DUTY CLAIM

4  AND A BREACH OF CONTRACT CLAIM.  SO I THINK TO DISTINGUISH IT

5  IN THE JURY'S MIND IT SHOULD BE ONE SHOULD BE BREACH OF THE

6  TERMS OF THE RPGLA AND ONE SHOULD BE BREACH OF FIDUCIARY DUTY.

7          IT'S PARTICULARLY CONFUSING, YOUR HONOR, BECAUSE

8  HERE, AS YOUR HONOR INSTRUCTED, THE DUTY, FIDUCIARY DUTY HAS TO

9  ARISE OUT OF THE CONTRACT.

10          **THE COURT:**  I'M GOING TO CHANGE IT TO SAY:

11               "ON BEHALF OF THE CLASS, HAS PLAINTIFF PROVEN BY

12  A PREPONDERANCE OF THE EVIDENCE A CLASS-WIDE BREACH OF ANY TERM

13  OF THE RPGLA?"

14          **MR. KESSLER:**  THAT'S FINE, YOUR HONOR.

15          **THE COURT:**  "YES?  NO?"

16          ALL RIGHT.  HOW ABOUT NUMBER 2?

17          **MR. KESSLER:**  I'M SURE YOUR HONOR IS GOING TO

18  OVERRULE --

19          **THE COURT:**  YOU THINK I SHOULD TAKE OUT THE WORD

20  "CLASS-WIDE"?

21          **MR. KESSLER:**  WELL, ONE, I WOULD TAKE OUT

22  "CLASS-WIDE"; AND, TWO, I THINK IT SHOULD SAY "INDIVIDUAL," AND

23  GIVEN YOUR WHOLE RULING ON INSTRUCTIONS --

24          **THE COURT:**  I'M GOING TO FIX THIS WHOLE PROBLEM BY

25  TAKING OUT "CLASS-WIDE," AND JUST SAY "DAMAGES."

1          I HAD ORIGINALLY PUT "CLASS-WIDE" IN THERE, TO KEEP

2   REMINDING THE JURY THAT THE ISSUE IN THE CASE IS NOT ANY

3   PARTICULAR AD HOC DEAL OR ANY PARTICULAR REDISTRIBUTION OF THE

4   AD HOC MONEY, BUT RATHER A CLASS-WIDE THEORY THAT APPLIES TO

5   EVERYBODY.

6          BUT SINCE YOU DON'T WANT THAT, THAT'S FINE WITH ME.

7   I'M JUST GOING TO SAY "AMOUNT OF DAMAGES."

8          **MR. KESSLER:**  AGAIN, WE THINK THE INSTRUCTIONS SHOULD

9   SAY "EACH CLASS MEMBER," BUT I UNDERSTAND YOUR HONOR HAS

10  OVERRULED THAT.

11         **THE COURT:**  THAT'S TOO CUMBERSOME.  I'M NOT GOING TO

12  DO THAT.

13         ANYTHING YOU HAVE, MR. LECLAIR?

14         **MR. LECLAIR:**  THE ONLY THING IS, IF YOUR HONOR IS

15  GOING TO DELETE "CLASS-WIDE" AT THE VERY LEAST YOU NEED TO SAY

16  "PLAINTIFFS," OTHERWISE THEY MIGHT BE CONFUSED AND AWARD ONLY

17  MR. ADDERLEY'S DAMAGES, BECAUSE THERE'S NO DEFINITION.  HE IS

18  THE PLAINTIFF.

19         **MR. KESSLER:**  ACTUALLY, I THINK AT THE BEGINNING YOU

20  DEFINE THEM ALL AS PLAINTIFFS, THE WHOLE CLASS.

21         **THE COURT:**  THAT'S A FAIR POINT, THOUGH.  LET ME

22  THINK --

23         **MR. KESSLER:**  "DAMAGES TO THE CLASS MEMBERS," YOUR

24  HONOR?

25         **THE COURT:**  ALL RIGHT.  "DAMAGES TO CLASS MEMBERS."

1          **MR. KESSLER:**  OKAY.

2          YOUR HONOR, AGAIN, I'M DOING THIS IN PART TO PRESERVE

3  BECAUSE I KNOW HOW YOU READ.  WE WOULD REQUEST THAT THE

4  FIDUCIARY DUTY, INSTEAD OF JUST SAYING "THE DUTY," ACTUALLY USE

5  THE -- THAT YOU FIND THE CONTROL, WHICH WE THINK IS THE

6  ESSENTIAL TEST.

7          I UNDERSTAND YOUR HONOR HAS EITHER RESERVED ON THAT

8  ISSUE, IS REJECTING IT.  BUT THE QUESTION SHOULD COMPLY WITH

9  WHAT THE INSTRUCTIONS ARE.

10          WE THINK "CONTROL" IS DETERMINATIVE, SO WE WOULD

11  ACTUALLY HAVE THE QUESTION ASK THAT.

12          **THE COURT:**  OVERRULED.  I DON'T AGREE THAT IT'S

13  DETERMINATIVE.

14          **MR. KESSLER:**  AND WE WOULD ASK, YOUR HONOR, THAT THE

15  JURY BE GIVEN A CHOICE IN THE FORM OF WHETHER -- WHETHER IT

16  WANTS TO AWARD NOMINAL DAMAGES TO JUST INSTRUCT IT, SO THERE

17  WOULD BE A QUESTION:

18              "WHAT IS THE AMOUNT OF NOMINAL DAMAGES, IF ANY,

19  THAT THEY SHOULD RECEIVE AS AN ALTERNATIVE TO COMPENSATORY?"

20          **MR. LECLAIR:**  YOUR HONOR, WE OBJECT TO THAT.  THERE

21  IS AN INSTRUCTION, VERY CLEAR INSTRUCTION ON NOMINAL DAMAGES.

22  I'VE NEVER SEEN A DAMAGE FORM THAT SEPARATED OUT NOMINAL

23  DAMAGES.

24          **THE COURT:**  I'M GOING TO LEAVE IT AS IT IS.  IT'S

25  ALREADY IN THE INSTRUCTION.

1     **MR. KESSLER:** FINALLY, YOUR HONOR, AGAIN, THIS IS TO

2   PRESERVE -- THERE'S TWO THINGS.  ONE IS, WE WOULD LIKE THE

3   PUNITIVE DAMAGE QUESTION STRICKEN.

4         I UNDERSTAND YOUR HONOR IS NOT GOING TO DO THAT, BUT

5   I'M PRESERVING MY OBJECTION.

6         THE SECOND IS, I THINK YOU SHOULD -- YOU SHOULD

7   REMOVE THE REFERENCE IN THE QUESTION TO "BY WAY OF EXAMPLE,"

8   BECAUSE WHAT THAT TENDS TO DO --

9     **THE COURT:** FINE.  I PUT THAT IN THERE.  ALL RIGHT.

10  WE'LL JUST SAY "IMPOSED ON DEFENDANTS," PERIOD.

11    **MR. KESSLER:** YES.  THANK YOU, YOUR HONOR.

12    **MS. NAYLOR:** YOUR HONOR, I WOULD NOTE THAT THE

13  STANDARD CHARGE ON THAT STATES:

14        "PUNITIVE DAMAGES ARE AWARDED TO PUNISH A

15  DEFENDANT FOR ITS CONDUCT" --

16    **THE COURT:** YES, BUT THAT'S IN THE INSTRUCTIONS.

17    **MR. KESSLER:** YES.

18    **THE COURT:** I WAS JUST PUTTING IT IN THERE -- SOME

19  PEOPLE PUNITIVE -- I THOUGHT IT WOULD JUST HELP MAKE IT CLEAR

20  THAT IT'S TO -- IT'S NOT COMPENSATORY DAMAGES.

21        ALL RIGHT.

22    **MR. KESSLER:** LAST THING, YOUR HONOR.

23        NUMBER 5 ALSO HAS "CLASS-WIDE," SO I ASSUME YOU'LL

24  CHANGE IT TO "STATE THE AMOUNT OF DAMAGES, IF ANY, TO CLASS" --

25  TO CLASS -- "AMOUNT OF DAMAGES TO CLASS MEMBERS, IF ANY."

1          **THE COURT:**  FINE.  I WILL PUT THAT IN.

2          **MR. KESSLER:**  OKAY.

3          **MR. KATZ:**  YOUR HONOR --

4          **MR. KESSLER:**  IT'S IN 4, ALSO, YOUR HONOR.  I'M

5     SORRY.

6          **THE COURT:**  I THINK THERE WE'RE TALKING ABOUT THE

7     BREACH.  IT SHOULD BE A CLASS-WIDE BREACH.

8          **MR. KESSLER:**  OKAY, YOUR HONOR.  I'M SORRY.  THAT'S

9     FINE.

10          **MR. KATZ:**  YOUR HONOR, I WANT TO EXPRESS ONE MORE

11    THOUGHT ON THE ANTITRUST INSTRUCTION.  IF YOUR HONOR IS

12    INCLINED TO GIVE SUCH AN INSTRUCTION I THINK THE APPROPRIATE

13    ONE WOULD BE SIMILAR TO WHAT YOU HAVE GIVEN WITH RESPECT TO THE

14    INTELLECTUAL PROPERTY ASPECT OF THE SCRAMBLING.  INTELLECTUAL

15    PROPERTY IS NOT IN THE CASE.  ANTITRUST IS NOT IN THE CASE.

16          **MR. KESSLER:**  YOUR HONOR, WE DISAGREE.  WE ARE NOT

17    SAYING THEY ARE ASSERTING THE ANTITRUST CLAIM.  WE'RE SAYING

18    THEY CLAIMED THAT WE HAD A DUTY TO DO SOMETHING THAT WOULD

19    VIOLATE OR POSSIBLY VIOLATE THE ANTITRUST LAWS, SO WE THINK

20    YOUR INSTRUCTION IS CORRECT.

21          **MR. KATZ:**  WE MAKE NO SUCH CLAIM.

22          **THE COURT:**  I'M GOING TO ADJUST -- I MAY GIVE SOME

23    VARIATIONS, BUT I'M GOING TO ADJUST IT.  I'M NOT GOING TO GIVE

24    IT IN EXACTLY THE FORM.

25          SO WE HAVE NOW GONE THROUGH ALL OF THIS.  I HAVE SOME

1    WORK TO DO.  I'VE GOT TO GO TRY TO GET YOU A FINAL SET.  I WILL

2    FILE THAT, SO YOU CAN GET IT OFFLINE PROBABLY BY 4:00 O'CLOCK,

3    IS MY GOAL TODAY.

4            BUT I WILL TRY FOR SOONER.  AND THEN, SEE YOU BACK

5    HERE TOMORROW AT 7:30.

6            **MR. KESSLER:**  YOUR HONOR, I JUST HAVE TWO POINTS OF

7    INFORMATION.

8            **THE COURT:**  ALL RIGHT.

9            **MR. KESSLER:**  ONE IS I ASSUME WE HAVE NOW PRESERVED

10   ALL OBJECTIONS SO THAT WE DON'T HAVE TO MAKE NEW OBJECTIONS TO

11   THE FINAL ONES YOU GIVE US, AND IT'S ALL PRESERVED IN THIS

12   CONFERENCE.

13           **THE COURT:**  THE ONES THAT YOU PRESERVED ARE THE ONES

14   THAT WERE IN YOUR MEMORANDUM YESTERDAY AT 4:00 O'CLOCK, YOUR

15   MIDNIGHT FILINGS, AND WHATEVER YOU SAID TODAY.

16           **MR. KESSLER:**  YES.

17           **THE COURT:**  BUT IF IT WASN'T PRESERVED ADEQUATELY

18   THERE, THE MERE FACT THAT YOU BROUGHT IT UP DAYS AGO IN SOME

19   FASHION IS NOT PRESERVED.

20           BUT YOU DON'T HAVE TO -- IF YOU BROUGHT IT UP LAST

21   NIGHT OR AT 4:00 O'CLOCK YESTERDAY OR LAST NIGHT OR THIS

22   MORNING, YOU DO NOT HAVE TO REPEAT IT ON THE SAME -- YOU KNOW,

23   YOU DON'T HAVE TO REPEAT IT ON THE FINAL INSTRUCTIONS.

24           **MR. KESSLER:**  THANK YOU, YOUR HONOR.

25           I'M JUST ASKING BECAUSE THERE ARE SOME COURTS WHO

1 ACTUALLY MAKE YOU DO IT AT THE FINAL INSTRUCTIONS.  AND IT'S ON

2 THE RECORD.

3       **THE COURT:**  YOU DON'T HAVE TO DO THAT.

4       **MR. KESSLER:**  OKAY.

5       AND THEN, MY FINAL QUESTION JUST TIMING, DID THE

6 JURORS ADVISE THE COURT WHETHER THEY ARE DELIBERATING TOMORROW

7 AFTERNOON?

8       **THE COURT:**  DID THEY --

9       **THE CLERK:**  NO, I NEVER SAW THEM AGAIN AFTER THEY

10 LEFT OUT OF THE COURTROOM.

11       **THE COURT:**  I WONDERED ABOUT THAT MYSELF.  I NEVER

12 FOUND OUT.  WE'LL FIND OUT TOMORROW.  BUT IT'S AN HOUR AND 20

13 MINUTES PER SIDE.  YOUR SIDE CAN RESERVE UP TO 30 FOR REBUTTAL.

14       **MR. KESSLER:**  AND WE CAN CONFIRM, YOUR HONOR, THE

15 CORRECT NUMBER OF CLASS MEMBERS IS 2,062.

16       **THE COURT:**  IS THAT WHAT WE SAID?

17       **MR. KESSLER:**  I THINK SO.

18       **MR. KATZ:**  YES.

19       **THE COURT:**  ALL RIGHT.  I HAVE SOME WORK TO DO.  I

20 KNOW YOU ALL HAVE WORK TO DO.

21       I JUST HAVE ONE THING I WANT TO URGE YOU TO DO.  AND

22 THAT IS IF THERE IS SOME PIECE OF EVIDENCE THAT IS IMPORTANT, I

23 WANT YOU TO -- I'M NOT ORDERING, I'M JUST ENCOURAGING IT -- PUT

24 IT ON THE SCREEN AND READ IT SO THAT YOU AVOID THE OTHER SIDE

25 JUMPING UP AND SAYING:  "THAT'S NOT SUPPORTED BY THE EVIDENCE."

1          AND I AM GOING TO PROBABLY GIVE A CAUTIONARY

2   INSTRUCTION BEFOREHAND TO TELL THE JURY THAT NOTHING THAT YOU

3   SAY IS EVIDENCE.  WON'T GO SO FAR AS TO SAY "TAKE IT WITH A

4   GRAIN OF SALT," THOUGH I'M TEMPTED TO.

5          BUT I HAVE -- IN NINE-AND-A-HALF YEARS ON THE JOB,

6   I'VE NEVER SEEN A CASE WHERE THE LAWYERS WENT SO OVERBOARD ON

7   EXTRAVAGANZA, AND IN MY MIND, GOING OUTSIDE THE RECORD.  SO BE

8   CAREFUL ON THAT.  I URGE YOU TO -- IF IT'S SOMETHING IMPORTANT,

9   PUT IT UP ON THE SCREEN SO THERE WON'T BE ANY DOUBT IF IT'S

10  THAT IMPORTANT.

11          YOU CAN'T DO THAT ON EVERYTHING.  YOU CAN'T DO THAT

12  EVEN ON MOST THINGS.  BUT MOST THINGS AREN'T GOING TO BE MUCH

13  IN CONTROVERSY.  IT'S THE THINGS THAT ARE IN GREAT CONTROVERSY

14  THAT I THINK DESERVE SOME READING OF THE EVIDENCE.  BUT I'M NOT

15  ORDERING IT.  I'M JUST GIVING THAT AS A WORD OF CAUTION.

16          HOW YOU WANT TO DO YOUR CLOSINGS, I GUESS, YOU KNOW,

17  IT IS AN ARGUMENT.  THIS IS THE TIME.  YOU CAN ARGUE AND ARGUE

18  AND ARGUE.  YOU CAN USE THE BIBLE.  YOU CAN USE THE

19  MAGNA CARTA.

20          JOE ALIOTO SAID HE ONLY NEEDED TWO DOCUMENTS.  YOU

21  DON'T KNOW WHO JOE ALIOTO IS.

22          **MR. KESSLER:**  I DO, YOUR HONOR, VERY MUCH.

23          **THE COURT:**  WELL, IN ANY EVENT, I'M TALKING ABOUT THE

24  MAYOR NOW.

25          **MR. KESSLER:**  I KNOW, YOUR HONOR.

1    **THE COURT:** HE ONLY NEEDED TWO DOCUMENTS. ALL THE

2    OTHER LAWYERS WOULD BE -- THEY WOULD HAVE THOUSANDS OF PAGES

3    AND DOCUMENTS AND EVERYTHING. HE WOULD SAY: "GIVE ME TWO

4    DOCUMENTS."

5    SO, WHICH ONES ARE THOSE? "FIRST, GIVE ME THE BEST

6    DOCUMENT IN THE CASE, AND THEN GIVE ME THE MAGNA CARTA." AND

7    HE WILL WIN THE CASE. AND HE ALWAYS DID.

8    **MR. KESSLER:** YOUR HONOR, I'VE SEEN HIM IN ACTION,

9    AND FREQUENTLY HE DID.

10    **THE COURT:** SO THIS IS CLOSING ARGUMENT TIME. SO

11    THERE WILL BE A LOT OF LEEWAY, OF COURSE. BUT REMEMBER YOUR

12    DUTIES AS AN OFFICER OF THE COURT.

13    OKAY. SEE YOU TOMORROW AT 7:30.

14    **MR. KESSLER:** THANK YOU, YOUR HONOR.

15    **MR. KATZ:** THANK YOU, YOUR HONOR.

16    (THEREUPON, THIS TRIAL WAS CONTINUED UNTIL FRIDAY,

17    NOVEMBER 7, 2008, AT 7:30 O'CLOCK A.M.)

18    - - - -

19    **CERTIFICATE OF REPORTER**

20    I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

21    FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

22    DATE: THURSDAY, NOVEMBER 6, 2008

23    S/B KATHERINE POWELL SULLIVAN

24    _____

25    KATHERINE POWELL SULLIVAN, CSR #5812, RPR, CRR
     U.S. COURT REPORTER