| | |
|---|---|
| 1 | MANATT, PHELPS & PHILLIPS, LLP |
| | RONALD S. KATZ (Bar No. CA 085713) |
| 2 | E-mail: rkatz@manatt.com |
| | RYAN S. HILBERT (California Bar No. 210549) |
| 3 | E-mail: rhilbert@manatt.com |
| | NOEL S. COHEN (California Bar No. 219645) |
| 4 | E-mail: ncohen@manatt.com |
| | 1001 Page Mill Road, Building 2 |
| 5 | Palo Alto, CA 94304-1006 |
| | Telephone: (650) 812-1300 |
| 6 | Facsimile: (650) 213-0260 |
| 7 | MCKOOL SMITH, P.C. |
| | LEWIS T. LECLAIR (Bar No. CA 077136) |
| 8 | E-mail: lleclair@mckoolsmith.com |
| | JILL ADLER NAYLOR (Bar No. CA 150783) |
| 9 | E-mail: jnaylor@mckoolsmith.com |
| | 300 Crescent Court |
| 10 | Dallas, TX 75201 |
| | Telephone: (214) 978-4984 |
| 11 | Facsimile: (214) 978-4044 |
| 12 | *Attorneys for Plaintiffs* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HERBERT ANTHONY ADDERLEY, on behalf of himself and all others similarly situated, | CIVIL ACTION NO. C07 0943 WHA |
| | **CLASS COUNSELS' APPLICATION FOR PRELIMINARY AND FINAL DETERMINATION OF COSTS, FEES, EXPENSES, AND AN INCENTIVE PAYMENT FOR CLASS REPRESENTATIVE, HERBERT ADDERLEY, AS WELL AS DETERMINATION OF FORM OF CLASS NOTICE AND SCHEDULING ORDER** |
| Plaintiffs, | |
| vs. | |
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC., a Virginia corporation, | |
| Defendants. | Date: January 8, 2009 |
| | Time: 8:00 a.m. |
| | Judge: Honorable William H. Alsup |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20210136.1

APPLICATION FOR PRELIMINARY AND FINAL
DETERMINATION OF COSTS, FEES, EXPENSES,
AND AN INCENTIVE PAYMENT

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. PLAINTIFFS' COUNSEL REQUESTS AN AWARD OF 30% OF THE NET FUND AS ATTORNEYS' FEES ........................................................................................ 2

    A. The Legal Standards Governing The Award Of Attorneys' Fees In Common Fund Cases .................................................................................................. 2

        1. The size of the fund created and the GLA Class ........................................ 4

        2. The Absence of Substantial Objections by Class Members to the Fee Requested ............................................................................................. 5

        3. The Quality of Plaintiffs' Counsel .............................................................. 5

        4. The Novelty and Difficulty of the Questions of Law And Fact and the Skill Required To Perform The Legal Services Properly ..................... 6

        5. The Risks of Nonpayment ........................................................................... 6

        6. The Time and Labor Involved .................................................................... 7

            a. Investigating and Filing of the Complaints ................................... 7

            b. Motion Practice .............................................................................. 7

            c. Document Discovery ..................................................................... 8

            d. Depositions .................................................................................... 9

            e. Experts ........................................................................................... 9

            f. Settlement Negotiations and Agreement ..................................... 10

            g. Trial .............................................................................................. 10

        7. Similar Awards .......................................................................................... 10

        8. Public Interest ............................................................................................ 11

    B. The Requested Fee Is Also Fair And Reasonable Under The Lodestar Method ................................................................................................................. 11

III. PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR THEIR COSTS AND EXPENSES ........................................................................................................... 12

IV. PLAINTIFFS' COUNSEL REQUEST A $60,000 INCENTIVE AWARD FOR HERBERT ADDERLEY ................................................................................................. 13

V. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bebchick v. Wash. Metro. Area Transit Comm'n*,
  805 F.2d 39 (D.C. Cir. 1986) .................................................................................................. 11

*Begin Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) .................................................................................................. 2

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ................................................................................................................. 2

*Cathedral Ave. Co-op., Inc. v. Carter*,
  947 A.2d 1143 (D.C. 2008) ..................................................................................................... 3

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ................................................................................................ 14

*Democratic Cent. Committee of Dist. of Columbia v. Washington Metropolitan
  Area Transit Com'n*,
  3 F.3d 1568 (C.A.D.C. 1993) .................................................................................................. 3

*Equal Rights Center v. Washington Metro. Transit Authority*,
  573 F. Supp. 2d 205 (D.C. 2008) ........................................................................................... 15

*Fischel v. Equitable Life Assur. Society of U.S.*,
  307 F.3d 997 (9th Cir. 2002) .................................................................................................. 12

*Fresh Kist Produce, L.L.C., v. Choi Corp., Inc.*,
  362 F. Supp. 2d 118 (D.C. Cir. 2005) ...................................................................................... 3

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ...................................................................................................... 13

*Henderson v. District of Columbia*,
  493 A.2d 982 (D.C. 1985) ........................................................................................................ 3

*In re Aetna Inc.*,
  2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ................................................................................ 10

*In re Ampicillin Antitrust Litig.*,
  526 F. Supp. 494 (D.D.C. 1981) ............................................................................................ 10

*In re Baan Co. Securities Litigation*,
  288 F. Supp. 2d 14 ( D.D.C. 2003) ........................................................................................ 10

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) ...................................................................................... 13, 15

*In re Dun & Bradstreet*,
  130 F.R.D. 366 (S.D. Ohio 1990) ..................................................................................... 14, 15

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  2003 WL 22037741 (D.D.C. 2002) ................................................................................. passim

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  205 F.R.D. 369 (D.D.C. 2002) ............................................................................................... 11

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N. D. Cal. 2008) .......................................................................... passim

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

20210136.1

ii

APPLICATION FOR PRELIMINARY AND FINAL
DETERMINATION OF COSTS, FEES, EXPENSES,
AND AN INCENTIVE PAYMENT

# TABLE OF AUTHORITIES
## (continued)

| | Page |
|---|---|
| *In re Prudential Ins. Co. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998) | 12 |
| *In re Warner Communic'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) | 5 |
| *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319 (D.C. Cir. 1982) | 11 |
| *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) | 3 |
| *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294 (N.D. Cal. 1995) | 13, 14 |
| *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759 (9th Cir. 1977) | 2 |
| *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349 (D.C. 2007) | 14 |
| *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) | 3 |
| *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1 (D.D.C. 2008) | 4, 11 |

**RULES**

| | |
|---|---|
| F.R.C.P., Rule 23(h) | 4 |

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

20210136.1

iii

APPLICATION FOR PRELIMINARY AND FINAL
DETERMINATION OF COSTS, FEES, EXPENSES,
AND AN INCENTIVE PAYMENT

## I. INTRODUCTION

Through their efforts, risking millions of dollars, Counsel for the GLA Class ("Plaintiffs' Counsel" or "Petitioner") has secured a jury verdict and resultant judgment awarding $28.1 million, plus interest, for the nationwide GLA Class ("Judgment"). The Judgment dated November 12, 2008 represents an outstanding result in an extremely difficult case.

As the Court is aware, the verdict and judgment were achieved after nearly two years of vigorous and hard-fought litigation in the above-captioned action (the "Lawsuit"). During this time, Plaintiffs' Counsel spent a multitude of hours of attorney and paralegal time analyzing thousands of pages of documents; conducted numerous depositions across the country; drafted scores of briefs and motion papers; battled over class certification, pleading amendments, and choice of law; defeated a motion for summary judgment, motions to dismiss, motions for sanctions, and motions to decertify the class; participated in numerous court hearings; consulted with accounting and damage experts, and victoriously prosecuted a three-week trial. Several attorneys and paralegals worked on this case on a nearly exclusive basis for months at a time.

The Lawsuit was hard-fought and intense from beginning to end opposing well-funded, able and tenacious Defense counsel from multiple law firms. The Defendants' contentiousness and certainty of their position was underscored by their refusal to participate in any settlement negotiations. Furthermore, the defendants have promised to continue to attempt to overturn the Judgment.

Plaintiffs' Counsel respectfully petition this Court for a preliminary and final award of attorneys' fees for services in the amount of $8,430,000.00, which is 30% of the net award after expenses. In view of this litigation's complexity, the quality of Plaintiffs' Counsel's representation, and the time and resources that Plaintiffs' Counsel committed to this litigation in the face of a substantial risk of zero recovery, Plaintiffs' Counsel respectfully submit that a fee award of $8,430,000.00 representing 30% of the net Judgment amount is fair and reasonable under either a percentage-of-the-fund standard or a lodestar recovery. Additionally, Plaintiffs' Counsel seek to gain reimbursement of their costs and expenses which are substantial, since the Defendants forced them to trial. Plaintiffs' Counsel further request that the sole class

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

20210136.1

APPLICATION FOR PRELIMINARY AND FINAL
DETERMINATION OF COSTS, FEES, EXPENSES,
AND AN INCENTIVE PAYMENT

representative, Herbert Adderley, be awarded an incentive fee for his generous participation on behalf of the entire GLA Class, in the amount of $60,000. Finally, Plaintiffs' Counsel seek a determination of the form of class notice on the above.

Plaintiffs' Counsel requests that this Court set a hearing to make a preliminary determination on the above matters and to approve a form of class notice to be provided to the Court at a later date. As well, Plaintiffs' Counsel seek a scheduling order for the submission of a form of class notice, objections, and for a final approval hearing.

## II. PLAINTIFFS' COUNSEL REQUESTS AN AWARD OF 30% OF THE NET FUND AS ATTORNEYS' FEES.

Plaintiffs' counsel requests 30% of the net common fund after expenses are deducted.[1] Declaration of Ronald S. Katz ("Katz Decl.") ¶ 22. Petitioners are firms which devote some portion of their legal practice to contingency litigation. *Id.* Customary fees for Petitioners in such contingency cases are typically a percentage of the amounts recovered, typically between 33% and 40%. *Id.*

The straight hour fees in this case or lodestar amount would be $6,907,298.40. Katz Decl. ¶¶ 21, 32-249; Declaration of Lewis LeClair ("LeClair Decl.") ¶¶ 5, 19-218. The requested fee award of 30%, or $8,430,000.00, amounts to a multiplier of approximately 1.22 . Katz Decl. ¶ 22.

### A. The Legal Standards Governing The Award Of Attorneys' Fees In Common Fund Cases

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). It is well established that the "common fund doctrine" allows an attorney whose efforts created, increased or preserved a fund to recover from the fund the costs of his litigation, including attorneys' fees. *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also*

---

[1] *See Begin Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) (explaining that it makes no difference whether attorneys' fees are based on the net or gross recovery, so long as the fee is reasonable).

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Cathedral Ave. Co-op., Inc. v. Carter,* 947 A.2d 1143, 1159-60 (D.C. 2008). The common fund doctrine is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel and encourages counsel to protect the rights of those who may have very small claims. *Id.*

Because D.C. law governed the claims, it also governs the award of fees. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). In awarding reasonable attorneys' fees from a common fund, two different approaches have generally been employed: the percentage method and the "lodestar" method. Under D.C. law, the percentage-of-recovery approach is used in calculating fees in common fund cases. *Swedish Hosp. Corp.*, 1 F.3d at 1268-70 ("We adopt a percentage-of-the-fund methodology ... because it is more efficient, easier to administer, and more closely reflects the marketplace."); *Fresh Kist Produce, L.L.C., v. Choi Corp., Inc.*, 362 F. Supp. 2d 118, 127 (D.C. Cir. 2005) (Since *Swedish Hospital*, the D.C. Circuit has consistently applied the percentage-of-the-fund method to common fund attorneys' fee disputes); *Henderson v. District of Columbia*, 493 A.2d 982, 1002 (D.C. 1985) (a calculation of attorney's fees under the common fund doctrine is based on a percentage of the fund bestowed on the class).[2] *See also, Democratic Cent. Committee of Dist. of Columbia v. Washington Metropolitan Area Transit Com'n*, 3 F.3d 1568, 1573 (C.A.D.C. 1993) (citations omitted)("every Supreme Court case that has addressed the issue has determined reasonable fees payable from a common fund on a percentage of the fund basis.") The percentage-of-the-fund calculation places a lighter burden on the court and the parties than the lodestar method because there is no dispute over billing practices. *Swedish Hosp. Corp.*, 1 F.3d at 1269-70.[3]

---

[2] In the Ninth Circuit, district courts presiding over common fund cases have the discretion to award attorneys' fees based on either the lodestar method (essentially a modification of hourly billing) or the percentage method. *In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1046 (N. D. Cal. 2008) (Conti, J.). Even so, use of the percentage method in common-fund cases appears to be dominant and has been adopted by the United States District Court, Northern District of California. *Id.* ("The advantages of using the percentage method have been described thoroughly by other courts. . . . The Court finds those advantages persuasive, and adopts the percentage method in this matter.")

[3] The lodestar method voraciously consumes enormous judicial resources, unnecessarily complicates already complex litigation, and inaccurately reflects the value of services performed. *See Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1269-70 (D.C.Cir.1993) ("[t]he lodestar method makes considerable demands upon judicial resources since it can be exceptionally difficult for a court to review attorney billing information over the life of a complex

The ultimate goal under either method of determining fees is to reasonably compensate counsel for their efforts in creating the common fund. *See* F.R.C.P. Rule 23(h) ("In a certified class action, the Court may award reasonable attorney's fees and nontaxable costs that are authorized by law. . . ."); *In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). It is not sufficient to arbitrarily apply a percentage; rather, the district court must show why that percentage and the ultimate award are appropriate based on the facts of the case. *Id.*

Courts have looked to several factors in assessing the reasonableness of a fee request, including: (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *8 (D.D.C. 2002) (hereinafter "*Lorazepam*"). Finally, where appropriate, the court may factor in consideration of a particular case's public interest. *Wells v. Allstate Ins. Co*., 557 F. Supp. 2d 1, 8 (D.D.C. 2008) (The settlement serves the public interest by sounding a cautionary note to the insurance industry: policyholders must be treated fairly).

### 1. The size of the fund created and the GLA Class

The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award. *In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1046. Despite Defendants' arduous efforts and numerous lawyers, Plaintiffs' Counsel was able to achieve a momentous jury verdict of $28.1 million, which has been widely praised by the Class members.

---

litigation and make a determination about whether the time devoted to the litigation was necessary or reasonable."). "This Court has reiterated the Supreme Court's warning that " '[a] request for attorney's fees should not result in a second major litigation. " *Id.*,[citations omitted]. as Judge Vance of the Fifth Circuit noted in a separate opinion in *Foster v. Boise-Cascade, Inc.*, 577 F.2d 335, 337 n. 1 (5th Cir.1978): "The hourly rate approach ... frequently [bears] little or no relationship to the value of the services performed in anything but the most routine work. A flash of brilliance by a trial lawyer may be worth far more to his clients than hours or days of plodding effort. Few among us would contend that an operation by a gifted surgeon who removes an appendix in fifteen minutes is worth only one sixth of that performed by his marginal colleagues who require an hour and a half for the same operation." Simply put, the lodestar method rewards plodding mediocrity and penalizes expedient success.

Katz Decl. ¶ 30 and Exh. C.

### 2. The Absence of Substantial Objections by Class Members to the Fee Requested

On behalf of the putative class, Herbert Adderley, as class representative, signed a fee agreement, acknowledging that his lawyers would seek a portion of any recovery for expenses and fees. LeClair Decl. ¶ 3; Katz Decl. ¶ 23 and Exh. A. Additionally, the class notice provided that in the event of a victory, Plaintiffs' Counsel would seek a percentage of funds as attorney's fees. Katz Decl. ¶ 23 and Exh. B.

Plaintiffs' Counsel will mail notice of their intent to seek 30% as a fee award to each Class Member, as well as litigation expenses, and will inform that any Class Member can object to the fee application. Katz Decl. ¶ 23. Plaintiffs' Counsel request that this Court set a hearing on the appropriate form of a class notice and at that time, also set a deadline for objections and a date for a final hearing.

### 3. The Quality of Plaintiffs' Counsel

"The quality of plaintiffs' counsels' representation of the class is a key factor in a court's consideration of counsels' fee request." *In re Warner Communic'ns Sec. Litig*., 618 F. Supp. 735, 748 (S.D.N.Y. 1985). Plaintiffs' Counsel are experienced litigators and they have detailed their efforts in declarations filed herewith. Plaintiffs' Counsel respectfully submit that the quality of their representation is reflected by the excellent results. They successfully defeated several motions to dismiss, motions to deny certification, motions for sanctions, motions for judgment on the pleadings, a motion for summary judgment, an opposition to a motion seeking leave to file amended pleadings, and motions for judgment as a matter of law. Katz Decl. ¶ 25. They were able to wade through thousands of complex and often arcane accounting materials and identify the critical documents that substantiated Plaintiffs' claims. *Id.* ¶ 26. They pushed aggressively for additional documents and depositions in the face of repeated resistance from Defendants' counsel and third parties aligned with Defendants. *Id*. ¶¶ 26, 27. At trial, they faced and overcame innumerable obstacles. *Id.* ¶ 29. The substantial jury verdict evidences Plaintiffs' Counsel's abilities in the face of steep opposition.

Plaintiffs' Counsel were litigating against several of the most prominent and highly-respected law firms in the country that regularly contested virtually every aspect of the litigation and devoted numerous attorneys to the defense of their clients. Plainly, "[t]he caliber of opposing counsel was clearly of the highest order and required that counsel for plaintiffs and the Class be capable of providing comparable services." *Lorazepam*, 2003 WL 22037741, at *8. Accordingly, the quality of representation by Plaintiffs' Counsel weighs strongly in favor of Counsel's fee request.

### 4. The Novelty and Difficulty of the Questions of Law And Fact and the Skill Required To Perform The Legal Services Properly

This Lawsuit was fraught with novel and complex issues related to liability, damages and class certification. Katz Decl. ¶ 25. Factual and legal issues were (and will continue to be) highly contested. *Id.* ¶ 29. The fact that Plaintiffs' Counsel were able to prevail on most of these issues demonstrates significant skill in providing valuable services to Plaintiffs and the Class who will benefit from the Judgment.

### 5. The Risks of Nonpayment.

Despite the most vigorous and competent of efforts, attorneys' success in contingent litigation is never assured. The risk of nonpayment is a factor to be considered in the amount of the award. As noted "[C]ounsel have, without receiving compensation, engaged in extensive motions practice and conducted considerable discovery." *Lorazepam*, 2003 WL 22037741, at *8 (citations omitted). "The risk of nonpayment through either an award of summary judgment to Defendants or loss at trial was significant and real in this case." *Id.* As the Court is also well aware, the "Defendants mounted an aggressive and vigorous defense throughout the course of this litigation." *Id.* (citations omitted). Plaintiffs therefore "faced substantial factual and legal hurdles in establishing their core allegations." *Id.* (citations omitted). The Court in *Lorazepam* concluded: "Accordingly, because this class action was vigorously litigated for a protracted period of time, raised novel and complex issues, involved a substantial risk of absolute non-payment, and demonstrated the quality of Class Counsel's reputation, an award of 30% of the common fund in attorneys' fees is appropriate." *Id.* at 9.

The same factors are present here.  Defendants' contentious opposition presented severe obstacles to any recovery in this case (as an example, Defendants refused all settlement discussions and, to date, have never offered anything to settle this case) and Plaintiffs' Counsel undertook grave risk of nonpayment of millions of dollars.  Katz Decl. ¶ 28.

### 6. The Time and Labor Involved

Throughout the litigation, Petitioners exerted substantial time and effort to obtain an excellent result for the Class.  In large part, this substantial time commitment resulted from the complexity of the case and the large volume of tasks involved, as described more fully in the accompanying declarations.  Katz Decl. ¶¶ 32-249; LeClair Decl. ¶¶ 19-218.

#### a. Investigating and Filing of the Complaints

Plaintiffs' Counsel devoted significant time and effort to the preparation of the four Complaints filed in this Lawsuit, along with Motions for Leave and other responses to the resistant efforts of Defendants.  Katz Decl. ¶ 25.  All of Defendants' materials had to be obtained and carefully reviewed.  *Id.* ¶ 26; LeClair Decl. ¶¶ 75, 81, 99, 102, 115, 140, 169.  Plaintiffs' Counsel also consulted extensively with experts to analyze the complex transactions that were a principal focus of the claims asserted.  Numerous (putative) class members were interviewed.  Katz Decl. ¶ 25.  Legal research under California law, Virginia law and the District of Columbia law had to be performed.  *Id.*; LeClair Decl. ¶¶ 24, 31, 39, 44, 49, 62, 76, 127, 131, 153, 166, 212.  Multiple drafts of each of the Complaints were prepared and revised before the final products were served and filed.  *Id.*

#### b. Motion Practice

The motion practice that took place during the case was extensive and extraordinarily labor-intensive.  Plaintiffs' Counsel researched and prepared memoranda of law in connection with: Opposition to Motion for Sanctions;  Opposition to Motion for Judgment on the Pleadings; Opposition to Motion to Change Venue, Opposition to Motion to Dismiss Second Amended Complaint, letter filings re: production of Defendants' financial statements, Motion for Leave to File a Third Amended Complaint, Motion to Certify Class, Opposition to Motion to Strike the Declaration of Marvin Miller, Letter filings re: document requests and discovery responses,

Opposition to Motion for Leave to File a Supplemental Memorandum on Plaintiffs' Class Certification Motion, letter filings re: documents related to Gene Upshaw, Opposition to Motion for Summary Judgment, Motion to Strike the Declarations of Linda Castillon, Adam Sullins, Jason Brenner, Christine Finch, and Steve Byrd Filed in Support of Defendants' Motion for Summary Judgment, letter filings re: scrambling of player images by EA, as related to Defendants' summary judgment motion, Opposition to Motion to Decertify class, letter filings re: summary judgment arguments, motions in limine and oppositions thereto and various trial briefs and oppositions thereto. Katz Decl. ¶ 25.

The legal research associated with these motions was complex and often involved varying rules of law under different jurisdictions. Katz Decl. ¶ 25.; LeClair Decl. ¶¶ 24, 31, 39, 44, 49, 62, 76, 127, 131, 153, 166, 212.

In addition to preparing scores of legal briefs and memoranda of law, Plaintiffs' Counsel drafted proposed scheduling orders; prepared and responded to several sets of extensive interrogatories and requests for admissions; and sent and received numerous letters to and from opposing counsel regarding deposition scheduling, document discovery, and settlement. Katz Decl. ¶ 25; LeClair Decl. ¶¶ 38, 61, 63, 71, 73, 77, 94, 95, 98, 101, 111, 112, 121. 161.

    c.  Document Discovery

Document review, organization and analysis in this litigation was enormous, both in terms of the number of parties and non-parties producing documents and the volume of documents produced. Katz Decl. ¶¶ 25, 26; LeClair Decl. ¶¶ 75, 81, 99, 102, 115, 140, 169. Plaintiffs' Counsel prepared several successive sets of document requests; prepared non-party subpoenas; negotiated with Defendants' counsel regarding document productions; conducted follow-up review of the adequacy of production; attended meet-and-confer sessions with Defendants' counsel on further production; thoroughly reviewed and analyzed the thousands of documents produced by Defendants and non-parties; and prepared indeces and analyses of the documents in preparation for depositions, motions, and trial. Katz Decl. ¶¶ 25, 26; LeClair Decl. ¶¶ 19-218.

Plaintiffs' Counsel also worked extensively with experts in analyzing the many financial documents produced during the litigation. Katz Decl. ¶ 25. Plaintiffs' Counsel also obtained,

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

20210136.1    8    APPLICATION FOR PRELIMINARY AND FINAL DETERMINATION OF COSTS, FEES, EXPENSES, AND AN INCENTIVE PAYMENT

reviewed and prepared documents for production by each of the Plaintiffs' witnesses in the Lawsuit. *Id.*. All told, Plaintiffs' Counsel devoted thousands of hours of attorney and paralegal time and effort pursuing, reviewing and utilizing the party and non-party documents produced in the Lawsuit. Katz Decl. ¶ 26; LeClair Decl. ¶¶ 75, 81, 99, 102, 115, 140, 169.

And the work is not yet complete. Defendants have indicated that they intend to file another Rule 50 JMOL, to be followed by an appeal. Katz Decl. ¶ 29. Plaintiffs Counsel will supplement this Application as necessary. *Id.* ¶ 3, n.1.

### d. Depositions

The deposition phase of the Lawsuit was similarly time-consuming, hard-fought and intensive. Katz Decl. ¶ 27. Plaintiffs' Counsel conducted numerous depositions in the Lawsuit, including those of the named Defendants, and their former employees and representatives. *Id.*; LeClair Decl. ¶¶ 85, 130, 132, 175, 205-206.

The preparation required for these depositions was substantial. Katz Decl. ¶ 27; LeClair Decl. ¶¶ 78, 81, 86, 95, 109, 112-113, 122, 126, 128-131, 133, 148, 176, 206-207. Databases were reviewed by paralegals to identify and pull the specific documents associated with each particular witness. Katz Decl. ¶ 27. Attorneys would then review those documents for relevance and usefulness. *Id.* Oftentimes, attorneys would consult with Plaintiffs' experts. *Id.* Plaintiffs tried to be efficient and combine travel whenever possible; but even so, it was necessary to conduct depositions in various locations throughout the country. *Id.* For example, depositions were held in California, Philadelphia, Maryland, New York, Texas, and Washington D.C. *Id.* Plaintiffs' Counsel also defended depositions of the class witnesses and experts. Significant time and effort was devoted to reviewing the documents of these witnesses and preparing them for depositions. Katz Decl. ¶ 27.

### e. Experts

Many hours were also devoted by Plaintiffs' Counsel to identifying and consulting with the experts that were retained during the litigation. Katz Decl. ¶ 25. In particular, Plaintiffs' Counsel worked extensively with their experts (i) reviewing and organizing the thousands of pages produced by the Defendants and their representatives; (ii) identifying additional materials

to request; (iii) preparing for financial-related depositions; (iv) analyzing the relevant literature; and (v) reviewing the expert reports submitted on behalf of Defendants. *Id.*.

### f. Settlement Negotiations and Agreement

Plaintiffs' Counsel also prepared a settlement letter and attended a settlement conference in front of Magistrate James Larson. Although plaintiffs were willing to enter into good faith negotiations for settlement and traveled to the conference, Defendants did not engage in settlement negotiations. Katz Decl. ¶ 28.

### g. Trial

Defendants refused all settlement negotiations, leaving the plaintiffs no choice but to proceed to trial. Katz Decl. ¶ 28. During this intense trial in which multiple witnesses were examined and numerous documentary evidence admitted, Plaintiffs faced additional resistance by defendants through motions to decertify, motions for JMOL, and exhaustive jury instruction briefing and argument. *Id.* ¶ 29.

Thus, it is evident that Plaintiffs' Counsel expended significant time and labor in building Plaintiffs' case for trial. At times, those efforts required various members of Plaintiffs' team to devote nearly all of their time to this litigation for extended durations. Katz Decl. ¶ 26. Those concerted efforts were undertaken despite the significant possibility that Plaintiffs would not prevail in this litigation, and that Plaintiffs' Counsel would therefore lose the millions of dollars invested in this case. The time and labor expended by counsel in producing the Judgment therefore support the fee requested by Plaintiffs' Counsel.

### 7. Similar Awards

The normal range of fee recovery is twenty to thirty percent of the common fund. *In re Baan Co. Securities Litigation*, 288 F. Supp. 2d 14, 17 ( D.D.C. 2003). Thirty percent is often warranted. *Lorazepam,* 2003 WL 22037741, *7 (*citing, In re Aetna Inc.,* 2001 WL 20928 (E.D. Pa. Jan. 4, 2001)) (finding thirty percent to constitute a reasonable award); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (noting that several courts have awarded more than forty percent of a settlement fund). Similarly, the Ninth Circuit uses a "benchmark" of 25%; however, it is recognized that in most common fund cases, the award exceeds that

benchmark, equaling 30%. *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1047.

Virtually none of the cases cited involved a three week trial; indeed, most resulted in settlement. *See, e.g., Lorazepam*, 2003 WL 22037741, at *3-8 (in a potential class of over 55,000 members, defendants settled for $35,000,000, and the court granted the attorneys a 30% common fund award). The massive amount of high-quality work in this case against formidable adversaries with an excellent result fully justifies the 30% figure.

### 8. Public Interest

Though the public interest is not always named as a separate factor in the fee-award determination, it is worth serious consideration. *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 8 (D.D.C. 2008). As this Court noted, there was a lot of media interest in this matter; the reason being that Defendants are powerful unions which affect numerous individuals. The jury verdict in this case was widely lauded as a message to the Union: to treat individuals fairly and not engage in an abuse of power. Katz Decl. ¶ 30 and Exh. C.

In sum, this case was especially complex, risky and time consuming, which is why it required a three week trial. It was further of noteworthy public value. Given these factors and the significant time and effort expended in the case, the necessity of trial, the excellent result achieved, and the very real risk of substantial loss, Plaintiffs' Counsel respectfully submit that their request for 30% of the Judgment is fair and reasonable.

### B. The Requested Fee Is Also Fair And Reasonable Under The Lodestar Method

The reasonableness of the requested amount is confirmed when cross-checked with the lodestar approach. *In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 385 (D.D.C. 2002); *see also In re Omnivision Techs.,* 559 F. Supp. 2d at 1048. To support the reasonableness of the fees requested, Plaintiffs' Counsel have submitted affidavits detailing the total hours they have devoted to this case and their lodestars, calculated at current billing rates. *See* Katz Decl. ¶¶ 5-7; LeClair Decl. ¶¶ 5-7. The reasonable hourly rate is that prevailing in the community for similar work. *Bebchick v. Wash. Metro. Area Transit Comm'n,* 805 F.2d 39, 404 (D.C. Cir. 1986). "Of course, the actual rate that applicant's counsel can command on the market is itself highly relevant proof of the prevailing community rate." *Id.* (*quoting Nat'l Ass'n of Concerned*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20210136.1

11

APPLICATION FOR PRELIMINARY AND FINAL
DETERMINATION OF COSTS, FEES, EXPENSES,
AND AN INCENTIVE PAYMENT

*Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1326 (D.C. Cir. 1982)). Under the lodestar method, the court multiplies a reasonable number of hours by a reasonable hourly rate.[4] *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). The total lodestar in this case is $6,907,298.40. Katz Decl. ¶¶ 21, 32-249; LeClair Decl. ¶¶ 5, 19-218. There is a "strong presumption" that the lodestar figure represents a reasonable award. The requested fee award amounts to a multiplier of approximately 1.22 . Katz Decl. ¶ 22. In contrast to this modest multiplier, multipliers ranging up to four are frequently awarded in common fund cases when the lodestar method is applied. *Lorazepam*, 2003 WL 22037741 *9, *citing, In re Prudential Ins. Co. Sales Practices Litig.*, 148 F.3d 283, 341 (3d Cir. 1998). The multiplier included in the requested fee award thus falls near the low end of normal multipliers. *See also In re Omnivision Techs.,* 559 F. Supp. 2d at 1048 (courts have approved multipliers ranging between 1 and 4). Cross-checked against Counsel's lodestar, therefore, the requested fee in this case is eminently fair and reasonable.

### III. PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR THEIR COSTS AND EXPENSES.

Plaintiffs' counsel have heretofore submitted a cost bill. Katz Decl. ¶ 220; LeClair Decl. ¶ 220. Plaintiffs' counsel further requests that, in addition to awarding them reasonable attorneys' fees, the Court grant their application for reimbursement of $1,312,321.55 in costs and expenses incurred by them in connection with the prosecution of this Lawsuit. Katz Decl. ¶ 252; LeClair Decl. ¶ 221. Each of Plaintiffs' law firm's expenses are summarized in the accompanying declarations. Katz Decl. ¶ 252; LeClair Decl. ¶ 221. Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters. *In re Omnivision Techs.,* 559 F. Supp. 2d 1036, 1048-49, *citing, Harris v. Marhoefer,* 24 F.3d 16,

---

[4] Courts consider the following factors in calculating the lodestar figure, as are relevant under the circumstances: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). These factors are similar to the factors considered in the percentage-of-the-fund method and many are subsumed therein.

19 (9th Cir. 1994); *Lorazepam,* 2003 WL 22037741, at *10. "The fact that petitioners were willing to expend their own money, as an investment whose reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Lorazepam,* 2003 WL 22037741, *10.

The expenses sought were reasonable and necessary. The expenses relate to photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel for various attorneys and their staff throughout the case. Katz Decl. ¶ 252; LeClair Decl. ¶ 221. Attorneys routinely bill clients for all of these expenses, and it is therefore appropriate for counsel here to recover these expenses from the common fund. *In re Omnivision Techs.,* 559 F. Supp. 2d at 1048-49. The Adderley fee agreement states that the plaintiffs would seek reimbursement for these expenses. Katz Decl. ¶ 23 and Exh. A; LeClair Decl. ¶ 3. Plaintiffs also note that the trial expenses were made necessary in part by Defendants' unwillingness to discuss settlement, despite Plaintiffs' overtures. Katz Decl. ¶ 28.

### IV. PLAINTIFFS' COUNSEL REQUEST A $60,000 INCENTIVE AWARD FOR HERBERT ADDERLEY.

Plaintiffs' Counsel also seek an incentive award for class representative Herbert Adderley in the amount of $60,000. The purpose of this award is to compensate Mr. Adderley for the significant role he played in helping Plaintiffs achieve the favorable jury verdict reached in this case.

Incentive awards to named plaintiffs are common in class action litigation, particularly where a common fund has been created for the benefit of the entire class. *In re Lorazepam & Clorazepate Antitrust Litigation,* 2003 WL 22037741, at *10. Indeed, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (internal quotation marks omitted). Whether to reward Mr. Adderley for his efforts is within this Court's discretion. *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299-300 (N.D. Cal. 1995), *citing, In re Domestic Air Transp.,* 148 F.R.D. at 357-58 (awarding $142,500 to class representatives out of $50 million

fund); *In re Dun & Bradstreet*, 130 F.R.D. at 373-74 (awarding $215,000 to several class representatives out of an $18 million fund).

The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atlantic Richfield Co*., 901 F.Supp. 294, 299. "In deciding whether to grant incentive awards and the amounts of such awards, courts consider factors such as 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursing the litigation.'" *In re Lorazepam & Clorazepate Antitrust Litigation*, 2003 WL 22037741, at *10. (*quoting Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Plaintiffs' Counsel respectfully request that class representative Herbert Adderley receive an incentive award in the amount of $60,000. Mr. Adderley is a well-known Hall of Fame player who placed his reputation on the line in standing up for a cause in which he believed. *See* Declaration of Herbert Anthony Adderley In Support Of Plaintiffs' Counsels' Application ("Adderley Decl.") ¶ 2. Mr. Adderley did so knowing that there would be those who would criticize him for his efforts. Adderley Decl. ¶ 11. Mr. Adderley also did so despite a very real threat of retaliation by the NFLPA and its former Executive Director, Gene Upshaw. Adderley Decl. ¶ 12.

Notwithstanding these risks, Mr. Adderley devoted a significant amount of time and effort to this case – more than 550 hours – throughout its 20-month duration. *See* Adderley Decl. ¶¶ 2-10; Katz Decl. ¶ 259; *see also Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349 (D.C. 2007) (approving incentive award of $25,000 to named plaintiffs who spent in excess of only 50 hours assisting in prosecution of case). More specifically, Mr. Adderley assisted Plaintiffs' counsel with each of the three complaints in this matter; searched for and collected documents in response to Defendants' document requests; assisted Plaintiffs' counsel in

responding to other discovery requests, including Defendants' Interrogatories; reviewed numerous correspondence and (once he was allowed to do so in May 2008) tens of thousands of pages of Defendants' confidential documents; prepared for and attended his deposition; prepared for and served as a witness at trial; and attended every day of a 3-week trial that took place thousands of miles from his home. *See* Adderley Decl. ¶¶ 2-10. Mr. Adderley often performed these tasks despite physical discomfort from a back operation. *Id.* ¶ 10; *see also Equal Rights Center v. Washington Metro. Transit Authority*, 573 F. Supp. 2d 205 (D.C. 2008) (approving incentive award of $81,000 to named plaintiffs and deposed class members, many of whom had various disabilities that made travel to and from depositions and other court proceedings difficult).

Mr. Adderley's active participation in this lawsuit was a key factor in Plaintiffs' counsels' ability to obtain a favorable jury verdict on behalf of the class. An incentive award to Mr. Adderley in the amount of $60,000 – which represents only .21% of the total judgment – is more than "reasonable in light of [his] investment[] of time, money, and effort on the part of the class." *See Lorazepam*, 2003 WL 22037741 at * 11. It is also less than other incentive awards granted by the courts in other cases. *See id.* (approving incentive award of $80,000 to be shared by 4 class representatives, which was .22% of the total fund); *Equal Rights Center* 573 F. Supp. 2d at 214 n. 10 (approving incentive award of $81,000 to be shared by 13 named plaintiffs and 16 deposed class members, which was .58% of the total fund); *In re Dun & Bradstreet*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (awarding a total of $215,000 to five class representatives, which was 1.2% of an $18 million fund); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357-58 (N.D. Ga. 1993) (awarding a total of $142,500 to 42 individuals, which was .285% of $50 million fund). All of these cases settled such that the class representatives did not need to spend several weeks at trial like Mr. Adderley. Moreover, each of these cases had numerous class representatives such that no one class representative had to bear the entire burden like Mr. Adderley, who was the sole class representative in this matter.

## V. CONCLUSION

Based upon the foregoing, it is respectfully submitted that the requested attorneys' fees ,

costs and other expenses are fair and reasonable under the applicable legal standards and in light of the risks incurred, the result achieved, and the effort expended. As well, it is appropriate to award Herbert Adderley an incentive award.

Plaintiffs' Counsel seeks:

1) a hearing for a preliminary review of attorneys' fees, costs, and expenses, and incentive award for class representative, Herbert Adderley; and

2) a hearing on the form of class notice appropriate on these matters; as well as,

3) a scheduling order for submission of a proposed class notice; mailing of class notice, objections, and a final hearing.

Dated: November 26, 2008

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: _____/s/ Ronald S. Katz__.
Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
Noel S. Cohen (SBN 219645)
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
Lewis T. LeClair (SBN 077136)
Jill Adler Naylor (SBN 150783)
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*