MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail:  rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail:  rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail:  ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA  94304-1006
Telephone:  (650) 812-1300
Facsimile:  (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone:  (214) 978-4984
Facsimile:  (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| HERBERT ANTHONY ADDERLEY, on behalf of himself and all others similarly situated, | CIVIL ACTION NO. C07 0943 WHA |
| Plaintiffs, | |
| vs. | **DECLARATION OF RONALD S. KATZ IN SUPPORT OF CLASS COUNSELS' APPLICATION FOR FEES, EXPENSES, AND AN INCENTIVE PAYMENT FOR CLASS REPRESENTATIVE, HERBERT ADDERLEY** |
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation, | |
| Defendants. | |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

Dockets.Justia.com

I, Ronald S. Katz, declare as follows:

1. I am an attorney duly licensed to practice law before the Courts of the State of California and am a counsel of record in this matter. I am a partner with the law firm of Manatt, Phelps and Phillips, LLP ("Manatt"), co-counsel of record for the Plaintiff Class in this case. I am submitting this Declaration in support of Plaintiffs' Counsels' application for an award of attorneys' fees in connection with services rendered in this action. The following declaration is based upon my personal knowledge. If called as a witness I could and would competently testify to the facts set forth herein.

2. I have been the Manatt billing attorney on this case at all times since it was filed on February 14, 2007. Even though Manatt did not send any bills in this case, I have reviewed all of the detailed billing records prepared by Manatt in connection with this matter and have applied billing judgment. The billing records prepared in connection with this case were generated from Manatt's timekeeping systems and are maintained in the ordinary course of business. Timekeepers at Manatt record their time contemporaneously. Time is recorded and billed in 1/10 of an hour increments.

3. Although the case has evolved through the filing of four separate complaints and three motions to dismiss, all of that work was appropriate and necessary to develop this difficult case to the point that it could be successfully tried and won. I have therefore not written off time for the GLA class that might be related to one or more of the theories of the case that were not ultimately pursued at trial (putting aside write-offs on the classes that were not certified, as explained in paragraphs 250 and 258 below). However, even if such time were to be determined not to be appropriately considered on a lodestar basis, the time actually and reasonably incurred by Manatt on this matter would fully support the percentage of recovery sought in this fee application.

4. Plaintiffs' Counsel devoted thousands of hours of attorney and paralegal time in connection with this matter, and incurred significant costs and expenses. This was a very difficult case where we faced tenacious and aggressive defense counsel. Defendants' counsel fought us hard at every stage in the proceeding. Had Plaintiffs' counsel not prevailed in this matter, they

would not have been able to recover the millions of dollars they incurred in legal fees or the hundreds of thousands of dollars they incurred as costs and expenses.

Calculation of the Lodestar

5.     The lodestar in this case for Manatt is $3,762,245.70.[1]  This includes a ten percent discount to account for my best estimate of time devoted indirectly to the classes that were not certified.  See paragraph 250 below.

6.     The monthly attorneys' fees incurred by Manatt during this matter are as follows:

| | | |
|---|---|---|
| Jan-07 | | $4,687.50 |
| Feb-07 | | $64,466.00 |
| Mar-07 | | $33705.00 |
| Apr-07 | | $37,577.00 |
| May-07 | | $107,636.50 |
| Jun-07 | | $97,832.50 |
| Jul-07 | | $121,900.00 |
| Aug-07 | | $168,071.50 |
| Sep-07 | | $173,840.00 |
| Oct-07 | | $88,768.00 |
| Nov-07 | | $55,384.50 |
| Dec-07 | | $55,373.50 |
| Jan-08 | | $75,602.50 |
| Feb-08 | | $311,681.00 |
| Mar-08 | | $283,845.00 |
| Apr-08 | | $166,011.00 |
| May-08 | | $189,331.00 |
| Jun-08 | | $219,777.50 |
| Jul-08 | | $334,215.00 |
| Aug-08 | | $262,658.50 |
| Sep-08 | | $297,414.00 |
| Oct-08 | | $764,533.00 |
| Nov-08 | | $265,962.50 |
| TOTAL | | $4,180,273.00 |
| **TOTAL LESS 10%** | | **$3,762,245.70** |

---

[1] Petitioners will supplement their motion to include additional time spent on post-judgment motions at the time of the hearing on this motion.

1  The standard annual hourly rates and the total billings for each timekeeper are

2 summarized in the following chart:

| Timekeeper | Position/Years of Attorney Experience | 2007 Hours | 2007 Rate | 2008 Hours | 2008 Rate | Total Billing |
|---|---|---|---|---|---|---|
| R. Katz | Atty – 36 yrs. | 404.4 | $690 | 830.1 | $700 | $860106 |
| P. Parcher | Atty – 47 yrs. | 2.3 | $785 | 390.5 | $850 | $333730.50 |
| C. Hummel | Atty – 20 yrs. | | $650 | 483.6 | $700 | $338520 |
| R. Hilbert | Atty – 8 yrs. | 703.7 | $460 | 1604 | $505 | $1133722 |
| N. Cohen | Atty – 7 yrs. | 265.5 | $435 | 436.7 | $485 | $327292 |
| B. Shatz | Atty – 16 yrs. | .8 | $570 | 125.9 | $580 | $73478 |
| A. Fiero | Atty – 18 yrs. | 638.1 | $415 | 231.6 | $440 | $366715.50 |
| L. Franco | Atty – 13 yrs. | | $520 | 769.8 | $550 | $423390 |
| D. Wishon | Sr. Paralegal | 42.9 | $265 | 775.4 | $280 | $228480.50 |
| K. Hunt | Paralegal | 55.8 | $175 | 171.2 | $210 | $45717 |
| K. Sloane | Paralegal | 11 | $255 | 67.6 | $270 | $21057 |
| D. Crim | Paralegal | | N/A | 151.7 | $185 | $28064.50 |
| TOTAL | | | | | | $4,180,273.00 |
| TOTAL LESS 10% | | | | | | **$3,762,245.70** |

7.  The experience and qualifications of each Manatt timekeeper is summarized below

in paragraphs 8 through 19.  The work done by Manatt and the hours billed by each timekeeper

on a monthly basis are summarized in paragraphs 31 through 249 below.

8.  I am the head of the litigation group in the Palo Alto office.   I am a Rhodes

Scholar and 1972 Harvard Law Graduate.  I specialize in complex commercial dispute resolution

with an emphasis on intellectual property, antitrust and technology matters.  During my career, I

have been involved in high-profile and novel cases for major clients both internationally and in

Northern California.   For example, in *Coscarart v. Major League Baseball*, I represented

approximately 400 retired Major League Baseball Players and won a jury verdict in the California

Superior Court for the County of Alameda.  I have had numerous articles published, I speak at

seminars once or twice a year on average, and I teach at Stanford and Santa Clara Law Schools.  I

have been the lead counsel in this case since its inception.  I have been involved in nearly every

aspect of this case, from discovery to motion practice to pre-trial matters.  I took or defended

many of the depositions in this case.  I was also involved in the trial and was responsible for

preparing and conducting the direct examination of our client, Herb Adderley, as well as for

preparing and conducting the cross-examination of certain of Defendants' witnesses.   I also

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

4

DECLARATION OF RONALD S. KATZ
CASE NO.  C 07-0943 WHA

conducted the punitive damages phase of the trial on behalf of Plaintiffs.

9. Peter Parcher is a special senior partner in Manatt's New York office. He is a nationally renowned trial lawyer, and is a Fellow of the American College of Trial Lawyers and the International Academy of Trial Lawyers, two of the most prestigious organizations of trial lawyers. In addition, Mr. Parcher has been the subject of feature articles in a number of publications, including Forbes, The Wall Street Journal and The American Lawyer. Before joining Manatt, Mr. Parcher was the founding partner of Parcher, Hayes & Snyder, one of the nation's leading litigation firms. Mr. Parcher has been frequently identified as one of the best lawyers in the country. Mr. Parcher was the lead trial counsel in this case and conducted both the opening and closing statements. He also cross-examined one of Defendants' key witnesses, Doug Allen.

10. Chad Hummel is a partner in Manatt's Los Angeles Office. He is Chair of Manatt's Litigation Division, and is a member of Manatt's Board of Directors and Executive Committee. Mr. Hummel represents clients in all phases of complex civil litigation, criminal prosecutions, and government investigations. He has also advised numerous companies in structuring and implementing corporate compliance programs which comply with Sarbanes-Oxley and the Federal Sentencing Guidelines for Organizational defendants. Mr. Hummel was heavily involved in pre-trial preparation and in the trial in this matter. Among other things, Mr. Hummel prepared several of Plaintiffs' witnesses for trial, including Plaintiffs' experts. He also prepared for and conducted the cross-examination of certain of Defendants' witnesses at trial, including Defendants' experts and Joel Linzner from Electronic Arts.

11. Laura Franco is a partner in Manatt's Palo Alto Office. Her practice specializes in representing technology-based, financial services and other clients in federal and state court litigation and in ADR proceedings, including defense of patent and trademark infringement claims and prosecution and defense of business tort disputes. Ms. Franco performed work in connection with several motions in this matter, including Defendants' motions to dismiss, Plaintiffs' motion for class certification and Defendants' motion for summary judgment. Ms. Franco was also involved in pre-trial matters.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

5

DECLARATION OF RONALD S. KATZ
CASE NO. C 07-0943 WHA

12. Benjamin G. Shatz is counsel in Manatt's Los Angeles Office. Mr. Shatz is a member of Manatt's appellate group. He has briefed more than a hundred civil appeals, writs and petitions to the U.S. Supreme Court, U.S. Courts of Appeals, California Supreme Court and California Courts of Appeal, covering areas of law including entertainment, copyright, trademark, employment, land use, banking, insurance, product liability, professional liability, wrongful death, punitive damages, class actions, anti-SLAPP and unfair competition. Mr. Shatz worked on the appellate-related aspects of this case, including Defendants' request to the Ninth Circuit to appeal the Court's order granting certification.

13. Ryan Hilbert is an associate in Manatt's Palo Alto Office. His practice focuses on litigation and counseling in the areas of sports law, trademark and unfair competition, copyright, and other intellectual property and commercial matters. Mr. Hilbert has been involved in this case since its inception. He worked on numerous discovery-related issues as well as in connection with several motions in this matter, including Defendants' motions to dismiss, Plaintiffs' motion for class certification and Defendants' motion for summary judgment. Mr. Hilbert was also involved in pre-trial matters and participated in the trial itself.

14. Noel Cohen is an associate in Manatt's Los Angeles Office. Mr. Cohen also has been involved in this case since its inception. He worked on numerous discovery-related issues as well as in connection with several motions in this matter, including the motions to dismiss, the sanctions motion, the motion to seek leave to amend, the class certification motion and the motion for summary judgment. He helped to defend Mr. Adderley at his deposition and to prepare him for his trial testimony. Mr. Cohen also participated in the trial in this matter.

15. Anne Fiero is a contract attorney with Manatt. She is a graduate of Duke University and of University of Chicago Law School. Ms. Fiero performed work in connection with several motions in this matter, including Defendants' motions to dismiss, the motion for sanctions, the motion to seek leave to amend, and the class certification motion.

16. Donna Wishon is a senior paralegal with over 16 years of experience in litigation, including the last 4 at Manatt. She has a paralegal certificate from Canada College, having graduated with honors. She was the lead paralegal for Manatt on this case. Her responsibilities

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

included, but were not limited to: overseeing document productions; communicating and coordinating with counsel regarding materials for use in hearings before the Court and at depositions; overseeing the document database; and compiling and organizing trial exhibits, deposition transcripts, and witness notebooks for use at trial.

17.     Keysha Hunt is a paralegal with over 8 years of experience in litigation, including the last 2.5 at Manatt.     She was previously in Manatt's Palo Alto Office but now works in Manatt's San Francisco Office.  Her responsibilities included, but were not limited to: overseeing document productions; communicating and coordinating with counsel regarding materials for use in hearings before the Court and at depositions; and assisting in the set-up and maintenance of the document database.

18.     Karen Sloane is a paralegal in Manatt's Los Angeles office.  She assisted Los Angeles-based counsel with document productions and other discovery issues.

19.     Daniel Crim is a junior paralegal in Manatt's Palo Alto office.  He assisted Ms. Wishon with overflow discovery and motion-related tasks.

20.     I am familiar with each of the Manatt attorneys and paralegals who worked on this matter.  Based upon my knowledge and experience, the billing rates for the paralegals and attorneys who worked on this matter are commensurate with their years of experience and skills, and my firm is paid these rates by clients on a regular basis.

21.     The lodestar amount for attorney and paralegal time billed by Manatt during the litigation is $3,762,245.70.     According to the declaration of Lew LeClair filed concurrently herewith, the lodestar amount for attorney and paralegal time billed by Mckool Smith PC during the litigation is $3,145,052.70.  The combined lodestar amount for both Mckool Smith PC and Manatt (collectively "Petitioners") at each firms' hourly rates during the litigation is $6,907,298.40.

22.     Petitioners' requested fee award of 30%, or $8,430,000.00, amounts to a multiplier of approximately 1.22  Petitioners' request for 30% of the net common fund is lower than typical contingency agreements in commercial cases of the magnitude of this case, which typically range from 33% to 40%.  Manatt devotes a small portion of its legal practice to contingency litigation.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

Customary fees in such contingency cases are typically a percentage of the amounts recovered, typically between 33% and 40%.

23.     On behalf of the putative class, Herbert Adderley, as class representative, signed a fee agreement with Manatt, acknowledging that his lawyers would seek a portion of any recovery for expenses and fees.  See fee agreement attached hereto as **Exhibit A**.  The class notice that was mailed to each prospective member of the class in June 2008 explained that counsel for Plaintiffs would seek a percentage of funds as attorneys' fess in the event that Plaintiffs prevailed.  See class notice attached hereto as **Exhibit B**.  In addition, Plaintiffs' counsel intend, with leave of the Court, to notify each member of the class that they intend to seek 30% of the common fund as a fee award and expenses.  Plaintiffs' counsel's letter to the class will explain that each member of the class has the right to object to the fee application.

24.     Plaintiffs' counsel expended significant time and resources in connection with this matter.  Had Plaintiffs' counsel not prevailed in this matter, they would not have been able to recover the millions of dollars they incurred in legal fees or the hundreds of thousands of dollars they incurred as costs and expenses.

25.     This action was fraught with novel and complex issues related to liability, damages and class certification and involved factual and legal issues that were complex and highly contested.  Plaintiffs counsel vigorously litigated this dispute in the following ways:

- Preparation of multiple drafts of each of the four complaints in this action along with motions for leave to amend;

- Review of documents produced by Plaintiffs' class representative and party witnesses;

- Preparation of requests for production to Defendants;

- Preparation of requests for production to non-parties and preparation of non-party subpoenas in connection with same;

- Review of Defendants' document production;

- Review of non-party document productions;

- Preparation of indexes and analysis of documents in preparation for depositions, motions and trial;

- Extensive consultation with experts including (i) review and organization of

thousands of pages of financial documents produced by the Defendants and their representatives; (ii) identification of additional materials to request; (iii) preparation for financial-related depositions; (iv) analysis of relevant literature; and (v) review of the expert reports submitted on behalf of Defendants;

- Numerous interviews of class members;

- Identification of witnesses to be deposed;

- Depositions, including those of the named Defendants, their current and former employees and non-parties;

- Defending depositions of class witnesses and experts;

- Legal research under California Law, Virginia Law and the District of Columbia law;

- Preparation of numerous motions and responses to motions including, but not limited to: (i) Opposition to Motion for Sanctions, filed April 4, 2007 (Dkt. No. 60-62); (ii) Opposition to Motion for Judgment on the Pleadings, filed April 4, 2007 (Dkt. No. 55-56); (iii) Opposition to Motion to Change Venue, filed April 4, 2007 (Dkt. No. 57-59); (iv) Opposition to Motion to Dismiss Second Amended Complaint, filed July 6, 2007 (Dkt. No. 110-11); (v) letter filings re: production of Defendants' financial statements, filed August 10, 2007 (Dkt. Nos. 112, 122); (vi) Letter filings re: Plaintiffs' payments of NFLPA Dues, filed September 4, 2007 (Dkt. Nos. 130-132); (vii) Motion for Leave to File a Third Amended Complaint, filed September 27, 2007 (Dkt. Nos. 139, 141, 147, 169-170); (viii) Motion to Certify Class, filed March 14, 2008 (Dkt. Nos. 217-223, 253-54); (ix) Opposition to Motion to Strike the Declaration of Marvin Miller, filed March 28, 2008 (Dkt. No. 229). Opposition filing is found at Dkt. No. 246); (x) Letter filings re: document requests and discovery responses, filed April 7, 2008 (Dkt. No. 258) (xi) Opposition to Motion for Leave to File a Supplemental Memorandum on Plaintiffs' Class Certification Motion, filed April 8, 2008 (Dkt. No. 268); (xii) letter filings re: documents related to Gene Upshaw, filed June 4, 2008 (Dkt. No. 285); (xiii) Opposition to Motion for Summary Judgment, filed June 13, 2008 (Dkt. No. 310-11) (xiv) Motion to Strike the Declarations of Linda Castillon, Adam Sullins, Jason Brenner, Christine Finch, and Steve Byrd Filed in Support of Defendants' Motion for Summary Judgment, filed July 1, 2008 (Dkt. Nos. 308-309, 326-327); (xv) letter filings re: scrambling of player images by EA, as related to Defendants' summary judgment motion, filed July 30, 2008 (Dkt. Nos. 340-342, 347-348); (xvi) Motion to Dismiss Bernard Parrish's individual claim, filed August 12, 2008 (Dkt. Nos. 358, 360); (xvii) Opposition to Motion to Decertify class, filed August 15, 2008 (Dkt. No. 371-372); (xviii) letter filings re: summary judgment arguments, filed August 22, 2008 (Dkt. Nos. 374-375); (ixx) motions in limine and oppositions thereto (Dkt. Nos. 409, 411-414, 417-419, 423, 427-429, 433-434, 437-442, 444, 446-448, 453, 455, 457, 474, 476); (xx) various trial briefs and oppositions thereto (Dkt. Nos. 483-485, 502, 517, 520, 532, 534, 536, 539-540, 545, 548).

- Preparation of scheduling orders;

- Preparation of interrogatories, requests for admissions and responses to same; and

- Preparation of countless letters to opposing counsel regarding (i) deposition scheduling, (ii) document discovery, and (iii) settlement.

26.     Plaintiffs' counsel devoted thousands of hours of attorney and paralegal time and effort pursuing, reviewing and utilizing the party and non-party documents produced in this Lawsuit.   Plaintiffs were forced to wade through thousands of complex and often arcane accounting materials in order to identify the critical documents that substantiated Plaintiffs' claims.  In addition, Plaintiffs were aggressive in pushing for additional documents in the face of repeated resistance from Defendants and third parties aligned with Defendants.   Plaintiffs' preparation for trial required various members of Plaintiffs' team to devote nearly all of their time to this litigation for extended durations.

27.     The deposition phase of the lawsuit was also time-consuming, hard-fought and intensive.   The preparation required for these depositions was substantial.   Databases were reviewed by paralegals to identify and pull the specific documents associated with each particular witness.    Attorneys would then review those documents for relevance and usefulness. Furthermore, while Plaintiffs tried to be efficient and combine travel whenever possible, Plaintiffs were required to travel significant distances to conduct depositions in this matter.  For example, depositions were held in California, New York, Maryland, Philadelphia, Texas and Washington D.C.

28.     While preparing for trial, Plaintiffs also made efforts to settle the case including by participating in a settlement conference with Magistrate Judge James Larson of the Northern District of California.  Despite Plaintiffs' settlement efforts, Defendants refused all such overtures and Plaintiffs were left with no choice but to proceed to trial.  To date, Defendants have never offered anything to settle this case, despite the fact that (1) the key document in this case was described by the Court as a "masterpiece of obfuscation" and an "empty promise"; (2) Defendants lost each of their several motions to dismiss; (3) Plaintiffs' class was certified over Defendants' strenuous objection; (4) Defendants' attempt to appeal the Court's certification of the class to the Ninth Circuit was denied; (5) Defendants' subsequent motion to de-certify the class was also denied; and (6) Defendants' motion for summary judgment was summarily denied.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

10

DECLARATION OF RONALD S. KATZ
CASE NO.  C 07-0943 WHA

29.     Trial of this matter, which is extremely rare in class action cases, lasted three weeks during which witnesses were examined and dozens of documents were received into evidence.  Plaintiffs faced additional resistance by Defendants through their motions for JMOL and heavily-contested jury instruction briefing and argument.   Plaintiffs expect additional resistance from Defendants in the form of another JMOL motion and appeal.

30.     Based upon my knowledge and experience, given the nature and complexity of the case, the skill of the attorneys on both sides of the case, and the result obtained, it is my opinion that the time expended by Manatt was necessary and the fees billed are reasonable under the circumstances of this case.  Furthermore, the $28.1 million verdict has been widely praised by the Class members (including the class representative, Herbert Adderley).  See articles collectively attached hereto as **Exhibit C**.

<u>MONTHLY DETAIL OF SERVICES PERFORMED BY MANATT</u>

31.     Services performed by Manatt on a monthly basis are summarized, along with billing totals for each month in the paragraphs that follow.

32.     As would be expected on a matter of this magnitude, some of the work performed involved privileged communications, activities or work product.  The services summarized below do <u>not</u> include any references to the substance of such privileged attorney/client communications or work product.   The summaries are derived from Manatt's billing records, which contain references to privileged communications and to the work product strategies of counsel.  For this reason the actual monthly bills are not attached as exhibits.  However, plaintiff is willing to provide copies of all invoices for *in-camera* inspection if deemed necessary under Local Rule 54-6(b)(2).

33.     The services performed by Manatt on a monthly basis are summarized, along with billing totals for each month, in the paragraphs that follow.

<u>Services Performed During January 2007</u>

34.     We began conferring with our clients and reviewing those documents in their possession for use in drafting the complaint.  We also conferred with our co-counsel from the McKool Smith, P.C. law firm on the drafting of the complaint.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

11

DECLARATION OF RONALD S. KATZ
CASE NO.  C 07-0943 WHA

35.     We prepared the first draft of the complaint.  This draft was subsequently revised several times.

36.     The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 1.10 | $435 | $478.50 |
| R. Hilbert | 3.00 | $460 | $1380 |
| R. Katz | 4.10 | $690 | $2829 |
| TOTAL | 8.20 | | $4,687.50 |

Services Performed During February 2007

37.     Plaintiffs' original complaint was filed on February 14, 2007.

38.     In the days leading up to February 14, 2007, we continued to draft and revise the original complaint.  As part of this process, we continued to review those documents in the possession of our clients as well as those that were publicly available.  We also performed legal research in connection with the causes of action in the complaint.  In addition, we conferred with our co-counsel and clients about the draft complaint and possible edits.

39.     Because this was to be a class action, we researched, drafted and revised a motion to be appointed interim class counsel.  We also compiled the materials necessary to support such a motion.  As with the complaint, we conferred with our co-counsel about this motion, and included their feedback into the draft.

40.     We had discussions with the current class representatives and with potential additional class representatives regarding the first amended complaint.

41.     On February 23, 2007, we filed a first amended complaint.  We spent a significant amount of time during the period between approximately February 14 and February 23 drafting, revising and finalizing the first amended complaint, and conferring with our clients and co-counsel about it.

42.     The total fees billed for work done during this month were:

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 8.10 | $435 | $3523.50 |
| R. Hilbert | 49.90 | $460 | $22954 |
| K. Hunt | 2.30 | $175 | $402.50 |
| R. Katz | 51.40 | $690 | $35466 |
| D. Wishon | 8.00 | $265 | $2120 |
| TOTAL | 119.70 | | $64,466.00$64,466.00 |

Services Performed During March 2007

43.     In early March 2007, Defendants sent us a letter indicating that they intended to file a Rule 11 motion unless we agreed to withdraw our first amended complaint.  We conducted significant legal research into the elements of a Rule 11 motion, investigated the facts, and considered our possible response.  We also conferred with our co-counsel on several occasions about Defendants' Rule 11 letter.  We drafted, discussed and revised a response to Defendants' letter.

44.     We continued to review those documents in the possession of our clients as well as those that were publicly available.

45.     We also performed legal research regarding some of the key legal issues in this case.

46.     Sometime in March 2007, we realized that Defendants had altered their website after the filing of our initial complaint.  We corresponded with opposing counsel on this issue and asked them to preserve all versions of their website going forward.

47.     The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 7.40 | $435 | $3219 |
| A. Fiero | 32.00 | $415 | $13280 |
| R. Hilbert | 11.00 | $460 | $5060 |
| K. Hunt | .80 | $175 | $140 |

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

| R. Katz | 17.40 | $690 | $12006 |
| TOTAL | 68.60 | | $33,705.00 |

Services Performed During April 2007

48.     In April 2007, Defendants filed a motion for sanctions under Rule 11, a motion for judgment on the pleadings, and a motion to change venue.

49.     We conferred on numerous occasions both internally and with co-counsel about Defendants' motions and our strategy for responding to them.

50.     We conducted legal research regarding Defendants' motion for judgment on the pleadings and drafted an outline of our response to the motion.  We subsequently drafted the opposition to this motion.  This draft went through several iterations as a result of discussions both internally and with co-counsel.

51.     We reviewed and provided comments to co-counsel regarding Defendants' motion for sanctions under Rule 11 and motion to change venue.  Drafts of these motions also went through several iterations as a result of discussions both internally and with co-counsel.

52.     We received and reviewed Defendants' opposition to our motion to be appointed interim class counsel.   We also conducted legal research on the cases cited in Defendants' opposition, and researched cases favorable to us.  We discussed the results of our research internally and with co-counsel.

53.     We discussed with opposing counsel an appropriate date for the hearing on Defendants' motions, and on our motion to be appointed interim class counsel.   Once we agreed on a specific date, we worked with opposing counsel on an appropriate stipulation to re-set certain dates.

54.     In mid-April 2007, the Court issued an order regarding the joint case management statement.  We considered and discussed an appropriate discovery plan in anticipation of the upcoming Case Management Conference.  We conferred with co-counsel about the details of this discovery plan.

55.     The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 4.20 | $435 | $1827 |
| A. Fiero | 65.50 | $415 | $27182.50 |
| R. Hilbert | 3.20 | $460 | $1472 |
| K. Hunt | 2.30 | $175 | $402.50 |
| R. Katz | 9.70 | $690 | $6693 |
| TOTAL | 84.90 | | $37,577.00 |

Services Performed During May 2007

56.    We continued to review and revise our oppositions to Defendants' motion for sanctions under Rule 11, motion for judgment on the pleadings, and motion to change venue. We also conducted additional legal research regarding these motions, and continued to discuss the oppositions internally and with co-counsel. These documents were eventually finalized, cite-checked and e-filed with the Court.

57.    We worked with our clients in drafting and finalizing declarations in support of our oppositions to Defendants' motions. This included numerous communications between us and our clients and between us and co-counsel.

58.    We continued to conduct legal research regarding Defendants' opposition to our motion to be appointed interim class counsel, and to discuss the results of our research internally and with co-counsel. We drafted our reply in support of our motion, and discussed this draft both internally and with co-counsel. We also drafted and revised declarations in support of our reply.

59.    We finalized our reply and supporting documents and e-filed them with the Court.

60.    We further considered and discussed our discovery plan for this case. We scheduled and participated in a Rule 26 conference with opposing counsel. We discussed the results of this conference internally and with co-counsel.

61.    We received and reviewed Defendants' reply briefs in support of their motion for sanctions under Rule 11, motion for judgment on the pleadings, and motion to change venue. We conducted legal research regarding these reply briefs, and discussed the briefs and the results of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

15

DECLARATION OF RONALD S. KATZ
CASE NO.  C 07-0943 WHA

our research internally and with co-counsel and our clients.

62. We worked with our clients and an outside computer forensic expert to make sure that our clients' computer files were preserved for discovery.

63. We prepared for the upcoming hearing on Defendants' motion for sanctions under Rule 11, motion for judgment on the pleadings, and motion to change venue by reviewing each of the parties' filings in connection with these motions as well as all relevant case law.

64. We prepared an outline of the arguments we intended to make at the hearing, as well as case binders related to the motions.

65. We attended the hearing on Defendants' motions and on our motion to be appointed interim class counsel.

66. The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 55.00 | $435 | $23925 |
| A. Fiero | 87.50 | $415 | $36312.50 |
| R. Hilbert | 30.40 | $460 | $13984 |
| K. Hunt | 4.00 | $175 | $700 |
| R. Katz | 45.80 | $690 | $31602 |
| D. Wishon | 4.20 | $265 | $1113 |
| TOTAL | | | $107,636.50 |

Services Performed During June 2007

67. We received and reviewed the Court's order on Defendants' motions and on our motion to be appointed interim class counsel. We discussed the impact of the Court's order internally and with co-counsel.

68. We conducted legal research into those claims we were considering for our second amended complaint in light of the Court's order. We discussed the results of that research internally and with co-counsel. We drafted a second amended complaint, which we discussed with co-counsel and revised.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

DECLARATION OF RONALD S. KATZ
CASE NO. C 07-0943 WHA

69. We had several communications with our clients and an outside computer forensic expert to make sure that our clients' computer files were preserved for discovery.

70. We reviewed and revised our draft joint case management statement, as well as our initial disclosures. We discussed these documents with co-counsel and with opposing counsel.

71. We researched the requirements under the Court's rules regarding ADR. We drafted and e-filed the appropriate certification forms.

72. We searched for, obtained and reviewed publicly-available documents – such as Players Inc' agreement with the Topps Company – and analyzed their relation and helpfulness to our case.

73. We drafted discovery requests and reviewed those discovery requests with co-counsel. We served those requests on opposing counsel.

74. We received and reviewed Defendants' discovery requests and discussed those requests, and our strategy for responding to those requests, with co-counsel. We also continued to work with our clients and an outside computer forensic expert to make sure that our clients' computer files were preserved for discovery. We reviewed document submitted by our clients in response to Defendants' discovery requests.

75. We prepared for and attended the Case Management Conference.

76. We drafted a second amended complaint and discussed that draft with co-counsel. We finalized the second amended complaint and e-filed it with the Court.

77. We drafted a summons for the NFLPA and oversaw the service of that summons and a copy of the second amended complaint on the NFLPA.

78. We reviewed, revised and served our initial disclosures on opposing counsel, and reviewed the initial disclosures we received from opposing counsel.

79. The total fees billed for work done during this month were:

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

DECLARATION OF RONALD S. KATZ
CASE NO.  C 07-0943 WHA

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 33.60 | $435 | $14616 |
| A. Fiero | 72.80 | $415 | $30212 |
| R. Hilbert | 96.80 | $460 | $44528 |
| K. Hunt | 5.40 | $175 | $945 |
| R. Katz | 10.80 | $690 | $7452 |
| D. Wishon | .30 | $265 | $79.50 |
| TOTAL | 219.70 | | $97,832.50 |

Services Performed During July 2007

80.    We continued to review documents submitted by our clients in response to Defendants' discovery requests.

81.    We received and reviewed Defendants' motions to dismiss our second amended complaint and discussed those motions internally and with co-counsel.  We conducted significant legal research regarding those motions and drafted, reviewed and revised our opposition to those motions.

82.    We worked on identifying potential expert witnesses and conducted conference calls with proposed expert witnesses in the case.

83.    We received and reviewed Defendants' responses to our discovery requests and exchanged meet and confer correspondence with opposing counsel to address deficiencies therein.

84.    We received and reviewed additional discovery requests from Defendants and discussed those requests, and our strategy for responding to those requests, with co-counsel.

85.    We drafted a protective order and discussed that draft with co-counsel and opposing counsel.

86.    We discussed with opposing counsel an appropriate date for the hearing on Defendants' motions.   Once we agreed on a specific date, we worked with opposing counsel on an appropriate stipulation to re-set certain dates.  We also contacted opposing counsel about

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

DECLARATION OF RONALD S. KATZ
CASE NO.  C 07-0943 WHA

stipulating to a consolidated opposition and prepared and e-filed the corresponding stipulation.

87.     The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 21.00 | $435 | $9135 |
| A. Fiero | 83.00 | $415 | $34445 |
| R. Hilbert | 90.00 | $460 | $41400 |
| K. Hunt | 4.70 | $175 | $822.50 |
| R. Katz | 52.20 | $690 | $36018 |
| D. Wishon | .30 | $265 | $79.50 |
| TOTAL | 251.20 | | $121,900.00 |

Services Performed During August 2007

88.     We continued to review and revise our consolidated opposition to Defendants' motions to dismiss our second amended complaint. That opposition was eventually finalized and e-filed with the Court on August 9, 2008.

89.     We continued to exchange meet and confer correspondence with opposing counsel to address deficiencies in their discovery responses. Eventually we prepared and filed a letter brief to the Court on these deficiencies. We prepared for and participated in a hearing on discovery issues that took place on August 17, 2007.

90.     We drafted a subpoena for third-party Doug Allen and oversaw service of that subpoena. We also drafted, discussed and revised a 30(b)(6) notice to Defendants.

91.     We drafted, reviewed and revised our written responses to Defendants' discovery requests.

92.     We received and reviewed documents submitted by Defendants in response to our discovery requests.

93.     We compiled documents and prepared outlines for the depositions of Doug Allen, Gene Upshaw and Howard Skall. We exchanged correspondence with opposing counsel regarding deposition scheduling.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

94.     We prepared for the hearing on Defendants' motions to dismiss by reviewing each of the parties' filings in connection with the motions and all relevant case law.   We also prepared an outline of the arguments we intended to make at the hearing, as well as case binders related to the motions.

95.     We attended the hearing on Defendants' motions to dismiss and related items.

96.     The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
| --- | --- | --- | --- |
| N. Cohen | 36.50 | $435 | $15877.50 |
| A. Fiero | 82.00 | $415 | $34030 |
| R. Hilbert | 134.50 | $460 | $61870 |
| K. Hunt | 18.90 | $175 | $3307.50 |
| R. Katz | 76.60 | $690 | $52854 |
| D. Wishon | .50 | $265 | $132.50 |
| TOTAL | 349.00 | | $168,071.50 |

Services Performed During September 2007

97.     We worked with our clients to prepare and e-file declarations required by the Court.

98.     We continued to review document submitted by our clients in response to Defendants' discovery requests.   We prepared those documents for production to opposing counsel.

99.     We received and reviewed the Court's order on Defendants' motions to dismiss. We discussed the impact of the Court's order internally and with co-counsel.

100.    We conducted legal research into those new/revised claims we were considering for our third amended complaint in light of the Court's order.   We discussed the results of that research internally and with co-counsel.   We drafted a third amended complaint, which we discussed with co-counsel and revised.

101.    We received and reviewed additional documents submitted by Defendants in

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

DECLARATION OF RONALD S. KATZ
CASE NO.  C 07-0943 WHA

response to our discovery requests. We oversaw the inclusion of those documents into an electronic database that could be searched.

102. We communicated with opposing counsel and the Court regarding the status of Doug Allen's deposition. We subsequently received and reviewed the deposition transcript of Doug Allen. We discussed the impact of that deposition transcript on our third amended complaint.

103. We drafted, reviewed and revised our motion for leave to file a third amended complaint and supporting declarations. This motion, and our proposed third amended complaint, was filed on September 27, 2007.

104. The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 51.20 | $435 | $22272 |
| A. Fiero | 102.50 | $415 | $42537.50 |
| R. Hilbert | 108.90 | $460 | $50094 |
| K. Hunt | 11.40 | $175 | $1995 |
| R. Katz | 70.40 | $690 | $48576 |
| P. Parcher | 2.30 | $785 | $1805.50 |
| B. Shatz | .80 | $570 | $456 |
| K. Sloane | 9.70 | $255 | $2473.50 |
| D. Wishon | 13.70 | $265 | $3630.50 |
| TOTAL | 370.90 | | $173,840.00 |

Services Performed During October 2007

105. We received and reviewed Defendants' opposition to our motion for leave to file a third amended complaint and discussed that opposition with co-counsel.

106. We conducted significant legal research regarding Defendants' opposition and reviewed numerous documents and third-party declarations submitted by Defendants in support of their opposition. We drafted a reply in support of our motion and discussed that reply

internally and with co-counsel. We also drafted, reviewed and revised declarations in support of our reply.

107. We drafted, reviewed and revised a motion to strike the declaration of Doug Allen Defendants submitted in support of their opposition.

108. We received and reviewed a letter submitted by Defendants' counsel in response to our motion for leave to file a third amended complaint and prepared and e-filed a response.

109. The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
| --- | --- | --- | --- |
| N. Cohen | 30.10 | $435 | $13093.50 |
| A. Fiero | 58.00 | $415 | $24070 |
| R. Hilbert | 55.40 | $460 | $25484 |
| K. Hunt | 3.00 | $175 | $525 |
| R. Katz | 33.60 | $690 | $23184 |
| D. Wishon | 9.10 | $265 | $2411.50 |
| TOTAL | 189.20 | | $88,768.00 |

Services Performed During November 2007

110. We received and reviewed the Court's order on our motion for leave to file a third amended complaint. We revised our proposed third amended complaint accordingly and e-filed it with the Court.

111. We reviewed with co-counsel those discovery items that were outstanding at the time the Court granted Defendants' motions to dismiss our second amended complaint. We subsequently contacted opposing counsel and proposed a joint stipulation re-setting certain of these deadlines. We also discussed and attempted to work through outstanding discovery disputes with Defendants.

112. We drafted, reviewed and revised new discovery requests to Defendants.

113. We received, reviewed and discussed Defendants' answer to our third amended complaint.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

114.    The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| N. Cohen | 8.70 | $435 | $3784.50 |
| A. Fiero | 41.00 | $415 | $17015 |
| R. Hilbert | 54.30 | $460 | $24978 |
| K. Hunt | 2.00 | $175 | $350 |
| R. Katz | 10.90 | $690 | $7521 |
| K. Sloane | 1.30 | $255 | $331.50 |
| D. Wishon | 5.30 | $265 | $1404.50 |
| TOTAL | 123.50 | | $55,384.50 |

Services Performed During December 2007

115.    We exchanged correspondence with opposing counsel about updating the schedule for our motion for class certification.  This necessitated motion practice before the Court.

116.    We participated in significant discovery efforts during December.  We received additional documents submitted by Defendants in response to our discovery requests.  We oversaw the inclusion of those documents into an electronic database that could be searched, and reviewed those documents.  We also received and reviewed additional discovery responses from Defendants.  We exchanged numerous meet and confer correspondence, and participated in several conference calls, with opposing counsel to address various discovery deficiencies.

117.    We performed extensive work preparing additional discovery requests and subpoenas to third parties such as Electronic Arts.  We also engaged in meet and confer efforts with these third parties about the scope of their responses to our subpoenas.

118.    We drafted correspondence to opposing counsel regarding documents we intended to show our expert.  We also had meetings and conference calls with our expert to discuss various damages theories.

119.    We continued to collect and review documents from our clients, and to prepare those documents for production to opposing counsel.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

DECLARATION OF RONALD S. KATZ
CASE NO.  C 07-0943 WHA

120. The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 8.60 | $435 | $3741 |
| A. Fiero | 13.80 | $415 | $5727 |
| R. Hilbert | 66.30 | $460 | $30498 |
| K. Hunt | 1.00 | $175 | $175 |
| R. Katz | 21.50 | $690 | $14835 |
| D. Wishon | 1.50 | $265 | $397.50 |
| TOTAL | 112.70 | | $55,373.50 |

Services Performed During January 2008

121. January was also a substantial month for discovery issues. We received and reviewed additional documents submitted by Defendants. We also received and reviewed additional discovery responses from Defendants. We conducted legal research in connection with Defendants' discovery responses, drafted meet and confer correspondence, and participated in conference calls designed to cure Defendants' discovery deficiencies. We also worked on additional discovery matters including editing responses and objections to Defendants' discovery requests.

122. We reviewed, revised and sent new 30(b)(6) notices to opposing counsel and exchanged correspondence regarding the scope of our notice. We also exchanged correspondence on scheduling the deposition of Defendants' 30(b)(6) witness and related witnesses. We drafted and served on opposing counsel amended deposition notices and subpoenas for Pat Allen, Howard Skall, Dawn Ridley and Gene Upshaw.

123. We continued to exchange correspondence with Electronic Arts regarding our subpoena.

124. We drafted a settlement conference statement for a settlement conference that was to take place before Magistrate Judge James Larson in February 2008. We discussed this statement with our co-counsel and revised it accordingly.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

DECLARATION OF RONALD S. KATZ
CASE NO. C 07-0943 WHA

125.     We searched for and compiled documents in preparation for the deposition of our client, Herb Adderley.   We also searched for and compiled documents in preparation for our deposition of Dawn Ridley, Howard Skall, Gene Upshaw and Defendants' designated 30(b)(6) witness.

126.     We began drafting the outline for the upcoming deposition of Gene Upshaw, a key witness in this case.

127.     The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 32.30 | $485 | $15665.50 |
| A. Fiero | 26.60 | $440 | $11704 |
| R. Hilbert | 63.00 | $505 | $31815 |
| K. Hunt | 29.80 | $210 | $6258 |
| R. Katz | 8.90 | $700 | $6230 |
| K. Sloane | 13.00 | $270 | $3510 |
| D. Wishon | 1.50 | $280 | $420 |
| TOTAL | | | $75,602.50 |

Services Performed During February 2008

128.     We attended the settlement conference before Magistrate Judge Larson to discuss potential settlement in the action.

129.     February was another substantial month for discovery issues.   We continued to respond to discovery requests and to exchange meet and confer correspondence designed to address various discovery disputes, including issues related to Defendants' document production, the scope and timing of such document production, and related issues.

130.     We received and reviewed Defendants' supplemental initial disclosures, and discussed with co-counsel the impact such disclosures had on our deposition strategy and schedule.

131.     We exchanged communications with co-counsel and opposing counsel regarding

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

scheduling depositions.

132.    We prepared for the deposition of Joel Linzner of Electronic Arts by collecting and reviewing relevant documents, speaking with co-counsel about suggested topics and questions, and preparing a detailed outline.  We deposed Joel Linzner in San Francisco on February 8, 2008.

133.    We prepared for the deposition of Gene Upshaw by collecting and reviewing relevant documents, speaking with co-counsel about suggested topics and questions, and preparing a comprehensive outline.  We deposed Gene Upshaw in Washington, D.C. on February 13, 2008.

134.    We prepared for the deposition of Glenn Eyrich, Defendants' 30(b)(6) witness on damages, by collecting and reviewing relevant documents, speaking with co-counsel and our damages expert about suggested topics and questions, and preparing a detailed outline.  We deposed Glenn Eyrich in Washington, D.C. on February 12, 2008.

135.    We prepared for the deposition of Howard Skall by collecting and reviewing relevant documents, speaking with co-counsel about suggested topics and questions, and preparing a detailed outline.  We deposed Howard Skall in Rockville, Maryland on February 14, 2008.

136.    We worked with our client, Herb Adderley, to prepare him for his deposition, including in connection with responses to document requests and other issues relating to that deposition.  We also defended Mr. Adderley at his deposition in Philadelphia, Pennsylvania on February 20, 2008.

137.    We participated in conference calls with co-counsel to discuss the results of the numerous key depositions we had taken, and their impact on our case.

138.    We exchanged correspondence and participated in meetings with our damages expert about our damages theories.

139.    We reviewed and revised our draft motion for class certification, and discussed this draft both internally and with co-counsel.  We conducted significant legal research in connection with this motion.

140.    We prepared for the deposition of Pat Allen by collecting and reviewing relevant

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

documents, speaking internally and with co-counsel about suggested topics and questions, and preparing a detailed outline. We deposed Pat Allen in Los Angeles, California on February 28, 2008.

141. The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| N. Cohen | 91.30 | $485 | $44280.50 |
| A. Fiero | 99.00 | $440 | $43560 |
| L. Franco | 94.00 | $550 | $51700 |
| R. Hilbert | 152.50 | $505 | $77012.50 |
| K. Hunt | 68.80 | $210 | $14448 |
| R. Katz | 101.20 | $700 | $70840 |
| P. Parcher | .40 | $850 | $340 |
| K. Sloane | 32.80 | $270 | $8856 |
| D. Wishon | 2.30 | $280 | $644 |
| TOTAL | 642.30 | | $311,681.00 |

Services Performed During March 2008

142. We continued to work on the motion for class certification, including drafting certain sections, reviewing and collecting deposition cites, reviewing and collecting important documents and other publicly-available materials in support of the motion, conducting exhaustive legal research, and discussing the motion and related documents internally and with co-counsel.

143. We drafted, reviewed and revised the declaration of Ronald S. Katz in support of our motion for class certification. We also had several discussions with experts Marvin Miller and Phil Rowley and helped draft and revise their declarations in support of the motions.

144. Eventually we finalized the motion for class certification and e-filed it with the Court.

145. We continued to work on discovery issues, including issues related to Defendants' document production and related issues.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

146.     We reviewed the deposition of Herb Adderley and worked with him to prepare and send his errata.  We also participated in a meet and confer call with opposing counsel on this issue.

147.     We met with expert Marvin Miller in New York to discuss his opinions on the case.  While there, we also met with our lead trial counsel, Peter Parcher, to discuss the status of the case and our strategy for trial.

148.     We received and reviewed Defendants' opposition to our motion for class certification.  We discussed Defendants' opposition internally and with co-counsel.  We began conducting legal research regarding Defendants' arguments and in support of our reply brief.

149.     The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 64.60 | $485 | $31331 |
| A. Fiero | 64.00 | $440 | $28160 |
| L. Franco | 100.20 | $550 | $55110 |
| R. Hilbert | 127.40 | $505 | $64337 |
| K. Hunt | 20.60 | $210 | $4326 |
| R. Katz | 69.70 | $700 | $48790 |
| P. Parcher | 13.40 | $850 | $11390 |
| B. Shatz | 48.20 | $580 | $27956 |
| K. Sloane | 18.30 | $270 | $4941 |
| D. Wishon | 26.80 | $280 | $7504 |
| TOTAL | 553.20 | | $283,845.00 |

Services Performed During April 2008

150.     We prepared for the depositions of witnesses for Topps and Upper Deck by conferring with co-counsel and offering suggested topics and questions.  We carefully reviewed the transcripts of those depositions once they were completed.

151.     We reviewed and commented on correspondence with opposing counsel regarding

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

the upcoming depositions of Joe Nahra and Richard Berthelsen. We assisted co-counsel in preparing for those depositions by offering suggested topics and questions.

152. We continued to conduct legal research in connection with our reply in support of our motion for class certification. We also drafted the reply and discussed the draft with co-counsel.

153. We reviewed Defendants' motion to strike the declaration of Marvin Miller. We conducted legal research regarding Defendants' motion. We also prepared a draft opposition to Defendants' motion.

154. Eventually we finalized the opposition to Defendants' motion to strike the declaration of Marvin Miller, and our reply in support of our motion for class certification, and e-filed both with the Court.

155. We received an Order from the Court directing us to file certain previously-confidential documents in the public domain. We collected and reviewed the documents that were the subject of the Court's order and complied.

156. We received Defendants' request to file a supplemental memorandum on class member information. We conducted legal research regarding Defendants' request, and drafted and filed a response with the Court.

157. We also worked on various discovery disputes during this period, including in connection with Defendants' responses to our requests for documents. The parties submitted letter briefs to the Court on this issue and a discovery hearing was held on April 11, 2008.

158. We prepared for the hearing on class certification by reviewing each of the filings associated with the motion, and by meeting with co-counsel in advance of the class certification hearing. We attended the hearing on class certification on April 24, 2008.

159. We received and reviewed an Order from the Court certifying the class. We discussed this Order with co-counsel and considered its impact on the case going forward. We drafted and e-filed a statement agreeing to apply the law of D.C. or Virginia as required by the Court.

160. The total fees billed for work done during this month were:

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 30.30 | $485 | $14695.50 |
| D. Crim | 26.60 | $185 | $4921 |
| A. Fiero | 35.00 | $440 | $15400 |
| L. Franco | 43.00 | $550 | $23650 |
| R. Hilbert | 111.30 | $505 | $56206.50 |
| K. Hunt | 16.00 | $210 | $3360 |
| R. Katz | 53.30 | $700 | $37310 |
| P. Parcher | .20 | $850 | $170 |
| B. Shatz | .50 | $580 | $290 |
| K. Sloane | 1.60 | $270 | $432 |
| D. Wishon | 34.20 | $280 | $9576 |
| TOTAL | 352.00 | | $166,011.00 |

Services Performed During May 2008

161.    We met with co-counsel to discuss the status of the case and the additional discovery to be obtained prior to the close of discovery.  We also discussed possibly deposing those additional witnesses identified by Defendants on their initial disclosures and contacted opposing counsel accordingly.  We exchanged several communications on this issue.

162.    As before, we continued to work on discovery issues, including Defendants' privilege log and the deficiencies inherent therein.  We also continued to receive and review documents in response to our prior discovery requests, and to exchange meet and confer correspondence related thereto and in connection with various deposition issues.  In addition, we reviewed and drafted revised responses to certain of our discovery responses.

163.    We assisted in the drafting of the class notice and reviewed and revised the draft notice.  We also exchanged correspondence with co-counsel and opposing counsel on posting the class notice on Defendants' website.

164.    We prepared for the deposition of Richard Berthelsen by providing co-counsel

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

with suggested topics and questions.

165.   We received and reviewed Defendants supplemental initial disclosures and conferred with co-counsel about them and their impact on our need for additional depositions.

166.   We received and reviewed Defendants' request to the Ninth Circuit to appeal the Court's order granting certification.  We conducted legal research in connection with Defendants' request and discussed the request both internally and with co-counsel.  We drafted and edited an opposition to Defendants' request.  We eventually finalized this opposition and submitted it to the Ninth Circuit.

167.   We had several conference calls and meetings with our damages expert, and with our sports economics expert, in advance of our expert reports.  We reviewed drafts of our expert reports and provided our comments to our experts.  Eventually we finalized the reports and served them on opposing counsel.  We also corresponded with opposing counsel on exchanging those documents relied on by our experts, and on various deposition dates for our expert witnesses.

168.   We reviewed documents produced by third-party Topps but not by Defendants and discussed bringing this matter to Defendants' attention.

169.   We drafted and sent Defendants a letter regarding their refusal to produce documents related to Gene Upshaw and on their select production of certain multimedia materials.

170.   We participated in a conference call with a jury consultant regarding a proposed mock trial in connection with the action.  We discussed issues, themes, and other matters associated with the mock trial.

171.   The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 16.60 | $485 | $8051 |
| D. Crim | 7.00 | $185 | $1295 |
| A. Fiero | 2.00 | $440 | $880 |
| L. Franco | 50.90 | $550 | $27995 |

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

| R. Hilbert | 142.80 | $505 | $72114 |
|---|---|---|---|
| K. Hunt | 33.20 | $210 | $6972 |
| R. Katz | 35.50 | $700 | $24850 |
| P. Parcher | 4.20 | $850 | $3570 |
| B. Shatz | 55.60 | $580 | $32248 |
| K. Sloane | 1.20 | $270 | $324 |
| D. Wishon | 39.40 | $280 | $11032 |
| TOTAL | 388.40 | | $189,331.00 |

Services Performed During June 2008

172.    We exchanged meet and confer correspondence on Defendants' failure to produce documents that were produced by third-party Topps.

173.    We received and reviewed a letter from Defendants regarding their refusal to produce documents related to Gene Upshaw and on their select production of certain multimedia materials.  We drafted and submitted a letter brief to the Court on this issue.  We prepared for and participated in discovery hearing on this issue on June 11, 2008.

174.    We participated in additional conference calls and meetings with a jury consultant and others regarding a proposed mock trial in connection with the action.  Among the topics we discussed was the details of an upcoming meeting on the mock trial and related issues.

175.    We spent a significant amount of time preparing for the mock trial.  More specifically, we prepared outlines of each side's arguments and identified important documents.  We also drafted and discussed jury instructions and a special verdict form.

176.    We drafted, edited and revised responses to certain of our written discovery requests, including document requests and interrogatories.

177.    We continued to work on issues associated with Defendants' request to the Ninth Circuit to appeal the Court's order granting certification.  Along these lines, we exchanged communications with opposing counsel on revising the class definitions.  Upon agreeing on a revised definition, we notified the Ninth Circuit accordingly.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

178.    We exchanged additional meet and confer correspondence with Defendants regarding their failure to produce certain documents in response to our discovery requests.

179.    We received and reviewed Defendants' motion for summary judgment and supporting documents.  We had several communications internally and with co-counsel about Defendants' motion and our strategy for responding to it.  We worked with co-counsel on drafting the opposition to Defendants' motion, including by reviewing and collecting deposition cites, reviewing and collecting important documents and other materials, and conducting exhaustive legal research.

180.    We exchanged correspondence with opposing counsel regarding the deposition schedules of both parties' experts.

181.    In mid-June, we met with a jury consultant and our co-counsel to discuss issues, themes, and other matters associated with the mock trial.  We also discussed potential graphics.

182.    Once Defendants' experts submitted their oppositions to our experts' reports, we worked with our experts to get them appropriate documents and reviewed and provided comments in connection with their draft rebuttal reports.  We had several conference calls and meetings with our experts on their rebuttal reports.  We also suspected that Defendants might file a Daubert motion and thus began conducting research into the standards for such motions.

183.    The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
| --- | --- | --- | --- |
| N. Cohen | 6.00 | $485 | $2910 |
| D. Crim | 16.20 | $185 | $2997 |
| A. Fiero | 5.00 | $440 | $2200 |
| L. Franco | 115.10 | $550 | $63305 |
| R. Hilbert | 117.10 | $505 | $59135.50 |
| C. Hummel | 22.40 | $700 | $15680 |
| K. Hunt | 2.80 | $210 | $588 |
| R. Katz | 66.00 | $700 | $46200 |

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

| P. Parcher | 11.50 | $850 | $9775 |
|---|---|---|---|
| B. Shatz | 5.30 | $580 | $3074 |
| K. Sloane | .30 | $270 | $81 |
| D. Wishon | 49.40 | $280 | $13832 |
| TOTAL | 417.10 | | $219,777.50 |

<u>Services Performed During July 2008</u>

184.    On July 1, 2008, we finalized our opposition to Defendants' motion for summary judgment and e-filed it and supporting documents with the Court.

185.    We continued to exchange correspondence with opposing counsel regarding the deposition schedules of both parties' experts.

186.    We prepared for the depositions of Defendants' experts, Steve Jizmagian and Roger Noll, by collecting and reviewing relevant documents, speaking with co-counsel about suggested topics and questions, and preparing a detailed outline.  We deposed Dr. Jizmagian on July 8 and Dr. Noll on July 9.

187.    On July 10, we received Defendants' reply in support of their motion for summary judgment.  We had several conference calls with co-counsel about Defendants' reply and the upcoming summary judgment hearing.

188.    We conducted a mock trial on July 17, 2008.  Leading up to the mock trial, we drafted and discussed internally and with co-counsel opening argument scripts for Plaintiffs' and Defendants' counsel.  We also reviewed and collected deposition cites and reviewed and collected important documents and other materials.  We worked exhaustively with the jury consultant and others to prepare these materials for use at the mock trial, and did a comprehensive walk-through the day before.

189.    We also exchanged numerous correspondence and participated in several meetings with the jury consultant and co-counsel to discuss the details of the mock trial.  During these meetings, we also discussed preparations for trial of the action, including identification of witnesses, preparation of witness outlines, preparation for exhibit indexes, and other matters

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

DECLARATION OF RONALD S. KATZ
CASE NO.  C 07-0943 WHA

associated with trial.

190. On the day of the mock trial, we played the role of one side while co-counsel played the role of the other side. Once the openings had been completed, we observed mock jury deliberations and discussed the results of the mock trial with the jury consultant.

191. Following the mock trial, we began preparing for the summary judgment hearing by reviewing each of the parties' filings in connection with the motion. We discussed the hearing with co-counsel and conducted additional legal research in connection therewith.

192. We met with our damages expert, Phil Rowley, about his upcoming deposition and prepared him. We defended Mr. Rowley at his deposition on July 22, 2008.

193. We participated in the summary judgment hearing on July 24, 2008.

194. We met with our sports economic expert, Dan Rascher, about his upcoming deposition and prepared him. We defended Dr. Rascher at his deposition on July 25, 2008.

195. We worked on an exhibit to the Court showing those retired player class members who we claimed were featured in the popular Madden video games. We corresponded with Peter Rhee and co-counsel on this project. Pursuant to Court order, we prepared a supplemental letter brief providing this information to the Court. We finalized and oversaw the filing of these documents with the Court.

196. The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| N. Cohen | 5.60 | $485 | $2716 |
| D. Crim | 32.90 | $185 | $6086.50 |
| L. Franco | 176.60 | $550 | $97130 |
| R. Hilbert | 159.30 | $505 | $80446.50 |
| C. Hummel | 29.00 | $700 | $20300 |
| R. Katz | 124.10 | $700 | $86870 |
| P. Parcher | 22.60 | $850 | $19210 |
| B. Shatz | 6.00 | $580 | $3480 |

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

| D. Wishon | 64.20 | $280 | $17976 |
|-----------|-------|------|--------|
| TOTAL | 620.30 | | $334,215.00 |

<u>Services Performed During August 2008</u>

197.    On August 1, 2008, we prepared and filed a motion for leave to file a supplemental declaration in support of our Court-ordered July 30 supplemental letter brief.

198.    We received and reviewed the Court's order denying Defendants' motion for summary judgment on August 6, 2008.  We discussed the impact of this order internally and with co-counsel.

199.    We prepared for and met with retired player and potential class witness Jeff Nixon in Buffalo, New York.  We also participated in conference calls with and about other potential class witnesses located around the country.

200.    We began exhaustive preparations for the trial in this matter.  Along these lines, we exchanged communications with our jury consultant on proposed voir dire questions.  We also exchanged communications and participated in several conference calls with co-counsel on pre-trial issues such as our proposed witness list, stipulated facts, and other pre-trial filings.

201.    We conducted legal research in connection with the draft jury instructions for use in this case and discussed those instructions internally and with co-counsel.  We had several conference calls with opposing counsel and co-counsel on these issues and revised the draft jury instructions accordingly.

202.    We exchanged correspondence with opposing counsel on voir dire and a draft jury questionnaire.  We also exchanged correspondence with the jury consultant on these issues.

203.    We reviewed the deposition transcripts of Phil Rowley and Dan Rascher and worked with them on their errata sheets.

204.    We procured Madden games for various consoles for each year during the statute of limitations period.  We prepared a list summarizing these games for use at trial.

205.    We received and reviewed Defendants' motion for de-certification.   We discussed this motion internally and with co-counsel.  We drafted, reviewed and revised our opposition to

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

DECLARATION OF RONALD S. KATZ
CASE NO.  C 07-0943 WHA

this motion.

206.    We drafted motions in limine and reviewed and revised those motions in limine drafted by co-counsel.

207.    We conducted legal research regarding trial subpoenas to third-party Electronic Arts. We also prepared and served those subpoenas on EA.

208.    We had several conference calls with co-counsel and our jury consultant regarding the death of Gene Upshaw. We also discussed a possible continuance of the case in light of Mr. Upshaw's death, and received and reviewed Defendants' motion for continuance.

209.    Upon receiving Defendants' motions in limine, we proceed to draft oppositions to these motions – including oppositions to Defendants' Daubert motions – and reviewed and revised those oppositions to Defendants' motions in limine that were drafted by co-counsel.

210.    We worked with co-counsel and opposing counsel to finalize and coordinate the exchange of pre-trial documents.

211.    We met with co-counsel and our client, Herb Adderley, in Philadelphia, Pennsylvania to discuss the status of trial and to prepare him for his role at trial.

212.    The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 3.60 | $485 | $1746 |
| D. Crim | 20.40 | $185 | $3774 |
| L. Franco | 119.10 | $550 | $65505 |
| R. Hilbert | 180.10 | $505 | $90950.50 |
| C. Hummel | 35.40 | $700 | $24780 |
| R. Katz | 72.90 | $700 | $51030 |
| P. Parcher | 2.90 | $850 | $2465 |
| B. Shatz | 3.20 | $580 | $1856 |
| D. Wishon | 73.40 | $280 | $20552 |
| TOTAL | 511.00 | | $262,658.50 |

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

213.    We received and reviewed the Court's order denying Defendants' motion to decertify the class.  We discussed this order with co-counsel.

214.    We investigated the possibility of calling individual witnesses at Electronic Arts at trial.  We also exchanged correspondence with Electronic Arts about those EA employees whom we intended to call at trial.

215.    We continued to work exhaustively in preparation for the trial in this matter.  We exchanged additional communications with our jury consultant and opposing counsel on proposed voir dire questions and a draft jury questionnaire.  We also exchanged additional communications and participated in several conference calls internally and with co-counsel on pre-trial issues such as our proposed witness list, stipulated facts, and other pre-trial filings.

216.    We continued to have several calls with co-counsel and opposing counsel regarding our draft jury instructions and continued to revise them accordingly.

217.    We discussed internally and with co-counsel authentication issues concerning certain documents to be used at trial and negotiated the admissibility of such documents with opposing counsel.

218.    We had numerous calls internally and with co-counsel regarding various pre-trial issues, including trial strategy, anticipated witness lists, expected exhibits, and related issues.

219.    We received and reviewed the deposition transcript of Walter Beach in preparation for his role as a witness at trial.

220.    We exchanged numerous correspondence and had meetings with our experts to determine which exhibits they would need at trial and the nature of their anticipated testimony.

221.    We met with co-counsel and our jury consultant in New York to discuss our strategy for the upcoming trial, including witness order, exhibits to be used at trial, and related matters.

222.    We worked extensively on trial exhibits showing those retired player class members who we claimed were featured in the popular Madden video games.  We had numerous communications with Peter Rhee and co-counsel on this project.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

38

DECLARATION OF RONALD S. KATZ
CASE NO.  C 07-0943 WHA

223. We conducted legal research into the relative advantages and disadvantages of D.C. versus Virginia law, and discussed the results of that research with co-counsel. We contacted opposing counsel about stipulating to which law would apply in this case and drafted a stipulation memorializing the parties' decision.

224. We discussed internally and with co-counsel and opposing counsel the date on which we would like Doug Allen to testify at trial.

225. We received and reviewed additional motions in limine from Defendants. We drafted oppositions to those motions, and discussed our draft oppositions with co-counsel.

226. We drafted additional motions in limine and reviewed and revised those additional motions in limine prepared by co-counsel.

227. We prepared retired player and potential witness Bruce Laird for his deposition. We defended Bruce Laird at his deposition in New York on September 24, 2008.

228. We reviewed numerous deposition transcripts and identified deposition excerpts to be used at trial. We also reviewed numerous deposition transcripts for those instances in which witnesses were instructed by Defendants not to answer, and compiled a list of such instances for use at trial.

229. We continued to review, collect and organize documents that we intended to use at trial.

230. The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| N. Cohen | 10.50 | $485 | $5092.50 |
| D. Crim | 17.70 | $185 | $3274.50 |
| L. Franco | 70.40 | $550 | $38720 |
| R. Hilbert | 146.20 | $505 | $73831 |
| C. Hummel | 95.20 | $700 | $66640 |
| R. Katz | 54.60 | $700 | $38220 |
| P. Parcher | 54.20 | $850 | $46070 |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

DECLARATION OF RONALD S. KATZ
CASE NO.  C 07-0943 WHA

| B. Shatz | 2.90 | $580 | $1682 |
|----------|------|------|-------|
| D. Wishon | 85.30 | $280 | $23884 |
| TOTAL | 537.00 | | $297,414.00 |

Services Performed During October 2008

231.    We revised and finalized our oppositions to Defendants' new motions in limine. We also collected Plaintiffs' motions in limine and Defendants' responses and prepared those documents for filing with the Court.

232.    We continued to exchange numerous correspondence and to meet both internally and with co-counsel and our jury consultant on our strategy for the upcoming trial, including witness order, exhibits to be used at trial, and related matters.

233.    We reviewed the deposition transcripts from Steve Saxon and Clifton McNeil.

234.    We continued reviewing numerous deposition transcripts and identifying deposition excerpts to be used at trial.

235.    We continued to exchange communications with opposing counsel on various pre-trial matters, including voir dire questions, a proposed jury questionnaire, draft jury instructions and related issues.  We oversaw the collection and filing of these documents with the Court.

236.    We prepared for and attended the pre-trial conference.  We worked with co-counsel and opposing counsel to draft and revise a summary of the Court's rulings on the parties' motions in limine.

237.    We finalized preparations for trial, including our witness and exhibits lists.  We also drafted, reviewed and revised witness outlines for use at trial.

238.    We drafted, discussed, reviewed and revised miscellaneous pre-trial briefing, including, for example, on statements made by Gene Upshaw on whether he worked on behalf of retired players.

239.    The trial in this matter commenced on October 20.  We attended and participated extensively   Among other things, we prepared and conducted the opening statement at trial and the cross-exam of certain of Defendants' witnesses, including Doug Allen.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

40

DECLARATION OF RONALD S. KATZ
CASE NO.  C 07-0943 WHA

240. We had daily meetings and exchanged numerous e-mails on our trial strategy and anticipated witnesses and exhibits.

241. The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| N. Cohen | 126.60 | $485 | $61401 |
| D. Crim | 30.90 | $185 | $5716.50 |
| L. Franco | .50 | $550 | $275 |
| R. Hilbert | 320.30 | $505 | $161751.50 |
| C. Hummel | 226.10 | $700 | $158270 |
| R. Katz | 159.90 | $700 | $111930 |
| P. Parcher | 211.10 | $850 | $179435 |
| B. Shatz | 3.90 | $580 | $2262 |
| K. Sloane | .40 | $270 | $108 |
| D. Wishon | 297.80 | $280 | $83384 |
| TOTAL | 1,377.50 | | $764,533.00 |

Services Performed During November 2008

242. We continued to prepare for and attend the trial on this matter. We also continued to hold daily meetings and exchange numerous e-mails on our trial strategy and anticipated witnesses and exhibits.

243. We continued to draft, discuss, review and revise miscellaneous pre-trial briefing in connection with various issues that arose during trial.

244. We continued to prepare for the cross-exam of certain of Defendants' witnesses, including Defendants' expert witnesses, and to prepare certain of our witnesses for testifying at trial.

245. We received and reviewed draft jury instructions proposed by the Court and worked with co-counsel on the briefs associated with those instructions. We also prepared for and attended the charging conference.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

246. We prepared the closing arguments and identified those exhibits we intended to use in closing. We also worked with a graphics consultant to prepare and finalize various exhibits and demonstratives.

247. We discussed strategy for a possible punitive damages award and identified and collected documents that we could use during a possible hearing on punitive damages.

248. We received the jury verdict and discussed various post-trial issues.

249. The total fees billed for work done during this month were:

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| N. Cohen | 49.30 | $485 | $23910.50 |
| R. Hilbert | 84.00 | $505 | $42420 |
| C. Hummel | 75.5 | $700 | $52850 |
| R. Katz | 84.00 | $700 | $58800 |
| P. Parcher | 70.00 | $850 | $59500 |
| B. Shatz | .30 | $580 | $174 |
| D. Wishon | 101.10 | $280 | $28308 |
| TOTAL | 464.20 | | $265,962.50 |

250. I have exercised billing judgment on fees in the following ways: 1) I have deleted entries for billers who billed less than $20,000.00 on this matter; 2) I have deleted entries relating to travel time; 3) I have deleted entries directly related to the classes that were not certified; and 4) I have deleted 10% of the resulting fees to account for my best estimate of time devoted indirectly to the classes that were not certified.

OTHER DISBURSEMENTS AND EXPENSES INCURRED IN THIS ACTION

251. Concurrently with this motion, Plaintiffs have filed a cost bill seeking recovery of $92,120.10 in ordinary litigation costs under Fed. R. Civ. Pro. 54(d).

252. Manatt incurred additional expenses and disbursements in successfully prosecuting this case, other than those items included in the cost bill. Manatt is prepared to submit the back-up materials for these additional expenses and disbursements upon request by the Court. A

summary of those other expenses reasonably incurred, are as follows[2]:

| Expense Category | Total Amount |
|---|---|
| Computer Research | 93,699.38 |
| Copying | 18,462.22 |
| Document Production | 7,642.35 |
| Experts/Consultants | 346,613.33 |
| Fax Charges | 692.00 |
| Federal Express | 6,621.13 |
| Messenger | 17,938.27 |
| Mileage/Parking | 2,337.45 |
| Miscellaneous (meals, rental for deposition rooms, assistant to class rep., etc.) | 30,322.33 |
| Mock Trial | 61,077.57 |
| Postage | 455.88 |
| Reproduction | 35,738.00 |
| Supplies (includes purchase of Madden games for research and supplies for war room) | 1,057.25 |
| Tabs | 454.00 |
| Telephone charges | 1,193.71 |
| Travel expenses (airfare and hotel) | 91,516.84 |
| Trial Expense – hotel and incidentals for Manatt personnel, Trial support personnel, and witnesses | 89,009.77 |
| Trial Expenses (TrialGraphix) | 42,924.38 |
| **TOTAL** | **$847,755.86** |

253.    True and correct copies of the bills submitted by Plaintiff's expert Daniel Rascher are attached hereto as **Exhibit D**.

254.    True and correct copies of the bills submitted by Plaintiffs' expert Phil Rowley are attached hereto as **Exhibit E**.

255.    Most of the items listed in the chart above are self-explanatory.  The photocopying charges in this case were substantial due to the number of documents produced and number of exhibits used at depositions and at trial.  Travel included travel and lodging costs incurred by

---

[2]  Manatt is still receiving invoices and bills in connection with its work on this matter.  Manatt reserves its right to supplement its request and/or to make any appropriate adjustments as additional information becomes available to it.

Manatt timekeepers to attend court hearings, depositions, meetings, and trial. Computer research is the cost of performing on-line legal research for motion practice and for trial and post-trial briefs.

256. In addition, to the extent any costs included in the cost bill are disallowed or deemed not recoverable, Plaintiffs alternatively seeks recovery of any such items by this motion.

257. The expenses incurred in connection with this case are reflected on Manatt's books and records that are maintained in the ordinary course of business. These books and records are prepared from expense vouchers and check records and are an accurate record of expenses incurred.

258. I have exercised billing judgment on non-taxable costs in the following ways: 1) I have deleted any costs directly related to the classes that were not certified; 2) I have made a good faith effort to the best of my ability to substitute refundable coach airfares for first-class fares.

### EFFORTS OF CLASS REPRESENTATIVE HERBERT ANTHONY ADDERLEY

259. Class representative, Herbert Anthony Adderley, made significant contributions to the prosecution of this case by devoting his time, effort and reputation to this matter. Mr. Adderley was deposed in the case and attended every day at trial, with some physical discomfort. Additionally, Mr. Adderley assisted with the production of documents and in responding to interrogatories. Based on my discussions with Mr. Adderley, I believe he spent over 550 hours on this matter.

### SUMMARY

260. Plaintiffs seeks recovery of $4,610,001.56 for the attorneys' fees, costs, and other disbursements of Manatt, broken down as follows:

|  |  |
|---|---|
| Attorneys' Fees | $3,762,245.70 |
| Other Expenses and Disbursements | $847,755.86 |

261. Counsel for the parties met and conferred on November 25th in an attempt to resolve any disputes.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

DECLARATION OF RONALD S. KATZ
CASE NO. C 07-0943 WHA

1    I declare under penalty of perjury under the laws of the United States of America that the

2  forgoing is true and correct to the best of my knowledge.

3        Signed this 26th day of November, 2008, at Palo Alto, California.

4                                                    ____/s/ Ronald S. Katz_____

5                                                    Ronald S. Katz

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO