1   MANATT, PHELPS & PHILLIPS, LLP
    RONALD S. KATZ (Bar No. CA 085713)
2   E-mail: rkatz@manatt.com
    RYAN S. HILBERT (California Bar No. 210549)
3   E-mail: rhilbert@manatt.com
    NOEL S. COHEN (California Bar No. 219645)
4   E-mail: ncohen@manatt.com
    1001 Page Mill Road, Building 2
5   Palo Alto, CA 94304-1006
    Telephone: (650) 812-1300
6   Facsimile: (650) 213-0260

7   McKOOL SMITH, P.C.
    LEWIS T. LECLAIR (Bar No. CA 077136)
8   E-mail: lleclair@mckoolsmith
    300 Crescent Court, Suite 1500
9   Dallas, TX 75201
    Telephone: (214) 978-4000
10  Facsimile: (214) 978-4044

11  Attorneys for Plaintiffs

12

13                      UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF CALIFORNIA
14                        SAN FRANCISCO DIVISION

15                                        CIVIL ACTION NO. C07 0943 WHA
    BERNARD PAUL PARRISH,
16  HERBERT ANTHONY ADDERLEY,                DECLARATION OF LEWIS T.
    and WALTER ROBERTS, III on behalf        LeCLAIR
17  of themselves and all others similarly
    situated,
18
                    Plaintiffs
19
    vs.
20
    NATIONAL FOOTBALL LEAGUE
21  PLAYERS ASSOCIATION, a Virginia
    corporation, and NATIONAL
22  FOOTBALL LEAGUE PLAYERS
    INCORPORATED d/b/a PLAYERS
23  INC, a Virginia corporation,

24                  Defendants.

25

26

27

28
                                          **DECLARATION OF LEWIS T. LeCLAIR – Page 1**
                                               **Civil Action No. C07 0943 WHA**

McKOOL SMITH
A PROFESSIONAL CORPORATION • ATTORNEYS
DALLAS, TEXAS

LEWIS T. LeCLAIR declares:

I am an attorney and a member of the bar of the State of California. I am a shareholder at the law firm of McKool Smith, P.C. in Dallas, and served as lead counsel for my firm and co-counsel for plaintiff Herb Adderley and the certified class in this action.

I have personal knowledge of the matters stated in this declaration, and if called as a witness could testify competently to all such matters.

## McKOOL SMITH'S ROLE IN THIS LITIGATION

1.      I was approached by Ron Katz in December 2006 with respect to joining Mr. Katz and his firm in a potential class action on behalf of retired NFL football players. Mr. Katz had been contacted by Bernie Parrish and Mr. Katz was interested in partnering with another firm that had both class action and contingency fee experience. Our firm reviewed a number of documents that were provided by Mr. Parrish and did considerable research and due diligence on the potential claims. We ultimately decided to partner with Mr. Katz and Manatt in bringing a putative class action on behalf of the retired NFL players.

2.      I have been a shareholder of McKool Smith since 1997, having previously practiced with most of the shareholders of McKool Smith at another large firm in Dallas. During my legal career, I have worked on a significant number of class action matters. Our firm took the lead in the case with respect to many of the matters related to class certification, class notice, and decertification. We worked closely with Manatt on all aspects of the case.

3.      In January and February of 2007, Mr. Katz and I executed engagement letters with Bernie Parrish and Herbert Adderley to pursue the putative class action. A copy of the firm's engagement letter with Mr. Adderley is attached hereto as Exhibit "A". Pursuant to that engagement letter, Manatt and McKool advanced all of the costs of the litigation and provided

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

their legal services on a contingency basis pending the outcome of the litigation. It was anticipated and agreed with our clients that the two firms would apply for attorneys fees and costs out of any recovery in the class action.

4.     I have been the billing attorney on this case for McKool Smith at all times since it was filed on February 14, 2007. Even though McKool Smith did not send any bills in this case, I have reviewed the detailed billing records prepared by McKool Smith in connection with this matter.  The billing records prepared in connection with this case were generated from McKool's timekeeping systems and are maintained in the ordinary course of business.  As billing attorney, I have reviewed and approved the amounts sought in this application.

Calculation of the Lodestar

5.     The lodestar in this case for McKool Smith is $3,145,052.70. Timekeepers at McKool Smith maintain their time on a contemporaneous basis.  Time is recorded and billed in 1/10 of an hour increments.  I have applied billing judgment to amounts recorded, writing off or writing down time spent on particular tasks. In particular, I wrote off the entire billing amount for all timekeepers at McKool Smith who billed less than $20,000 to this file and I deleted time entries directly related to classes that were not certified. I made other adjustments as appropriate. Finally, I have deleted 10 percent of the resulting fees to account for a reasonable estimate of time devoted indirectly to the classes that were not certified.  Although the case has evolved through the filing of four separate complaints and three motions to dismiss, all of that work was appropriate and necessary to develop this difficult case to the point that it could be successfully tried and won. I have therefore not written off time that might be related to one or more of the theories of the case that were not ultimately pursued at trial. However, even if such time were to be determined not to be appropriately considered on a lodestar basis, the time actually and

reasonably incurred by McKool on this matter would fully support the fee award sought in this case. Because Manatt and McKool have made the decision to pursue thirty percent of the amount awarded by the jury as attorneys fees, the lodestar amount is substantially equivalent and any multiplier is entirely reasonable. This was a very difficult case where we faced tenacious and aggressive defense counsel. We fought hard with defense counsel at every step of the way and had to take many professional risks in order to pursue this matter to conclusion. For that reason, the percentage of recovery sought in this matter is no more than fair compensation for the effort and risk associated with pursuit of this matter.

6.    The monthly attorneys' fees incurred by McKool Smith during this matter are as follows:

| Month | | Amount |
|---|---|---|
| Dec-06 | | $ 22,650.00 |
| Jan-07 | | $ 31,167.00 |
| Feb-07 | | $ 50,603.50 |
| Mar-07 | | $ 63,965.50 |
| Apr-07 | | $ 91,345.00 |
| May-07 | | $ 98,850.50 |
| Jun-07 | | $ 103,523.50 |
| Jul-07 | | $ 60,138.50 |
| Aug-07 | | $ 63,966.50 |
| Sep-07 | | $ 113,458.50 |
| Oct-07 | | $ 50,265.50 |
| Nov-07 | | $ 12,140.50 |
| Dec-07 | | $ 39,337.50 |
| Jan-08 | | $ 133,133.50 |
| Feb-08 | | $ 121,944.50 |
| Mar-08 | | $ 174,817.50 |
| Apr-08 | | $ 143,221.50 |
| May-08 | | $ 184,297.50 |
| Jun-08 | | $ 302,508.50 |
| Jul-08 | | $ 220,450.00 |
| Aug-08 | | $ 324,835.50 |
| Sep-08 | | $ 235,672.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Oct-08 | | $  612,692.00 | | | | | |
| Nov-08 | | $  239,519.00 | | | | | |
| TOTAL | | $ 3,494,503.50 | | | | | |
| **TOTAL LESS 10%** | | **$3,145,052.70** | | | | | |

The hours billed and annual hourly rates for each timekeeper are summarized in the following chart:

| Timekeeper | Position/Years of Attorney Experience | 2006 Hrs | 2006 Rate | 2007 Hrs | 2007 Rate | 2008 Hrs | 2008 Rate | Total Billing |
|---|---|---|---|---|---|---|---|---|
| L. LeClair | Atty – 32 yrs. | 31.4 | 625 | 573.2 | 660 | 1373.1 | 700 | $1,359,107.00 |
| J. Naylor | Atty – 17 yrs. | | | 911.4 | 425 | 1586.8 | 450 | $1,101,405.00 |
| B. Charhon | Atty – 6 yrs. | | | 7.9 | 350 | 1375.0 | 400 | $  552,765.00 |
| A. Garza | Atty – 3 yrs. | 11.0 | 275 | | | 528.1 | 375 | $  201,062.50 |
| S. Bovine | Sr. Paralegal | | | | | 333.5 | 180 | $   60,030.00 |
| K. Sherrill | Paralegal/Sr. Paralegal | | | 94.0 | 110 | 328.2 | 180 | $   69,416.00 |
| B. Sanders | Paralegal | | | | | 590.4 | 85 | $   50,184.00 |
| C. Alaniz | Paralegal | | | | | 393.4 | 85 | $   33,439.00 |
| M. Ferrari | Paralegal | | | | | 182.0 | 150 | $   27,300.00 |
| O. Moreno | Technology Specialist | | | | | 379.0 | 105 | $   39,795.00 |
| TOTAL | | | | | | | | $3,494,503.50 |
| **TOTAL LESS 10%** | | | | | | | | **$3,145,052.70** |

7.     The experience and qualifications of each McKool Smith timekeeper is summarized below in paragraphs 8 -17.  The work done by McKool Smith and the hours billed by each timekeeper on a monthly basis are summarized in paragraphs 18 -219 below.

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

**DECLARATION OF LEWIS T. LeCLAIR – Page 5**
**Civil Action No. C07 0943 WHA**

Dallas 269126v12

Experience and Qualifications of McKool Smith Timekeepers

8.  I was the lead trial lawyer for McKool Smith in this matter. I graduated from the University of Texas School of Law in 1976 and then clerked for the United States Court of Appeals for the Ninth Circuit. I have been licensed in Texas since 1976 and in California since 1977. I worked in California for three years prior to returning to Texas. I have been a trial lawyer in Dallas, Texas for 28 years specializing in commercial, class and derivative litigation. I am currently a shareholder in McKool Smith, P.C., a litigation firm devoted to complex commercial and intellectual property litigation. I have been recognized by Best Lawyers in America for commercial litigation, by Chambers, and by Texas SuperLawyers. I have handled class litigation in the courts of California, Texas and New York. I handled various hearings in this matter, put on witnesses at trial, and worked on the jury instructions and objections to the jury instructions.

9.  Jill Adler Naylor is a senior counsel with McKool Smith, P.C. She has been licensed to practice law in the State of California since 1990, in the State of Texas since 1992, the United States Supreme Court and various federal courts. Her practice consists of commercial litigation, including class actions and derivative actions, professional liability and malpractice, patent litigation, and arbitrations. Ms. Naylor is peer-reviewed as an AV rated lawyer by Martindale Hubbell. She participated in this litigation since its inception and performed research, briefing, document review, deposition preparation, witness interviews, witness preparation, drafting of pleadings, motions, and issues and participated in the trial.

10.  Brett Charhon is a sixth year associate with McKool Smith. Mr. Charhon received his J.D. degree from Southern Methodist University in 2003 and his undergraduate degree from Tulane University in 1999. Mr. Charhon devoted substantial time in this case to

fact discovery including (i) drafting and responding to interrogatories, requests for production and requests for admission; (ii) document review; (iii) witness interviews; (iv) preparing witnesses for deposition; and (v) organizing Plaintiff's evidence for trial. In addition, Mr. Charhon performed legal research, prepared motions and was heavily involved in pre-trial preparation.

11. Anthony Garza is a third-year associate with McKool Smith. Mr. Garza received his J.D. degree from Columbia Law School in 2005 and his B.S. degree, in Chemical Engineering, from Texas A&M University in 2002. Prior to joining McKool Smith, Mr. Garza served as a law clerk to the Honorable Barbara M.G. Lynn, in the U.S. District Court for the Northern District of Texas. Mr. Garza devoted substantial time in this case to various tasks, including (i) reviewing production of Defendants and third-party witnesses; (ii) drafting and responding to motions; (iii) drafting witness examination outlines; and (iv) various tasks for pre-trial preparation and trial.

12. Suzie Bovine is a senior paralegal at McKool Smith. She received her B.S. degree from the University of Tennessee in 1981 and a certificate from the National Center for Paralegal Training, also in 1981. She has worked as a litigation paralegal in law firms for over 27 years. She has extensive experience in all phases of litigation including preparing cases for filing, handling multi-million page document productions, overseeing teams of attorneys reviewing documents, fact research, locating witnesses, managing cases, creating witness packets for depositions, preparing for and assisting at hearings, arbitrations, mediations, and trials, setting up off-site trial offices, and most any other paralegal tasks. She has worked on a variety of types of litigation including asbestos defense, insurance defense, contract cases, medical

malpractice, legal malpractice, antitrust, securities, SEC investigations, construction cases, class actions, and patent infringement.

13.     Karen Sherrill is a senior paralegal with McKool Smith, P.C. She has been a paralegal since 1986. During her career she has assisted attorneys with complex commercial litigation, including class actions and derivative actions, products liability, insurance defense, and patent litigation. Ms. Sherrill participated in this litigation since April 2007 by working closely with the attorneys on briefing, subpoenas, document review, deposition preparation, witness interview preparation, document production, and preparation for trial.

14.     Betty Sanders is a paralegal with McKool Smith, P.C. She holds a Bachelor of Business Administration and has been employed as a paralegal for over 15 years working primarily in litigation and mass tort. Her work on this case included assistance with document management, deposition preparation, research, trial preparation and trial support.

15.     Mary Ferrari is a paralegal with McKool Smith, P.C. She holds a Bachelor of Science Degree in Legal Studies and has been employed as a paralegal for over 12 years working primarily in civil litigation. Her work on this case included assistance with document management, deposition preparation, research, trial preparation and trial support

16.     Cynthia Alaniz is a paralegal with Mckool Smith, having worked as a paralegal since 2000. She works closely with various teams of paralegals and attorneys assisting in document management, research, deposition and trial preparation in commercial litigation, intellectual property and patent infringement. Her work on this case included assistance with document management, deposition preparation, trial preparation and trial support.

17.     Omar Moreno is a member of McKool Smith's IT group and works as a member of the trial team in cases preparing graphics for presentation and handling technology

presentation during the trial. His work on this case involved joining the trial team in San Francisco in order to create and edit graphics and to coordinate with the lawyers on the trial team to insure a smooth and seamless presentation at trial.

<u>MONTHLY DETAIL ON SERVICES PERFORMED BY McKOOL SMITH</u>

18. Services performed by McKool Smith on a monthly basis are summarized, along with billing totals for each month in the paragraphs that follow.

19. As would be expected on a matter of this magnitude, some of the work performed involved privileged communications, activities or work product. The services summarized below do <u>not</u> include any references to the substance of such privileged attorney/client communications or work product. The summaries are derived from the monthly billing statements which do contain references to privileged communications and to the work product strategies of counsel. For this reason the actual monthly bills are not attached as exhibits. However, plaintiff is willing to provide copies of all invoices for *in-camera* inspection if deemed necessary under Local Rule 54-6(b)(2).

<u>Services Performed During December 2006</u>

20. I first discussed a potential class action on behalf of retired NFL players with Ron Katz of Manatt Phelps during the month of December. I began review of various documents provided to Mr. Katz by Bernie Parrish, a former NFL player, and discussed potential theories of the case with Katz and other lawyers at Manatt.

21. An associate at McKool, Anthony Garza, began initial research regarding potential theories of the case and initial review of documents.

22.     I traveled to Gainesville, Florida for a meeting with Ron Katz, Bernard Parrish and others to discuss the documents in the possession of Mr. Parrish and the relevant facts and issues regarding the potential claims.

23.     We began an initial draft of a potential complaint and considered issues related to jurisdiction and venue.

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L. LeClair | 31.4 | 625.00 | $19,625 |
| Anthony Garza | 11.0 | 275 | $3,025 |

Services Performed During January 2007

24.     We continued research regarding potential claims to be asserted in the proposed class action and discussed alternate theories relating to the case.

25.     We looked further into questions regarding jurisdiction and venue.

26.     We discussed additional class representatives who were potentially interested in becoming a part of the action.

27.     We obtained additional documents that were available as public records regarding the NFLPA and Players Inc and looked at certain website information.

28.     We conducted numerous telephone conferences with co-counsel at Manatt Phelps to consider issues regarding jurisdiction, venue, class representatives, engagement letters with class representatives, and other matters associated with the prospective action.

29.    We conducted a teleconference with prospective class representatives Bernard Parrish and Herb Adderley, drafted and reviewed proposed agreements with the class representatives, and talked about the potential claims.

30.    We continued our preparation of a proposed complaint and researched and considered various matters relating to the 2005 Class Action Fairness Act and issues arising thereunder.

31.    We conducted additional research and provided it to co-counsel regarding the appropriateness of a class action, including research regarding commonality, typicality, and other issues under Rule 23.

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| L. LeClair | 25.2 | 660 | $16,632 |
| J. Naylor | 34.2 | 425.00 | $14,535 |

Services Performed During February 2007

32.    We edited and revised the class action complaint based on the information that had been obtained and conducted additional research regarding potential claims under the law of California.

33.    We conducted telephone conferences with class members who were potentially available to serve as class representatives and obtained additional documents and information related to the complaint.

34.    We worked extensively on the filing of the initial complaint including final review of the draft complaint, review of the Local Rules, various filings associated with the filing of the complaint, and matters related to the post-filing tasks to be completed.

35.    We conducted telephone conferences with additional class members and attorneys for class members regarding the prospective complaint, the theories to be asserted, and the matters associated with the filing of the complaint.

36.    We began work on a potential discovery plan and the requirements of Rule 16 as appropriate for a class action.

37.    We began research regarding appropriate discovery related to class certification and the potential bifurcation of discovery related to class certification versus discovery related to the merits of the action.

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L. LeClair | 46.6 | 660 | $30,756 |
| J. Naylor | 46.7 | 425.00 | $19,848 |

Services Performed During March 2007

38.    We prepared a memorandum related to discovery issues in the putative class action. We also drafted and sent a letter to the NFLPA regarding retention of documents.

39.    We worked on a memorandum regarding the scope of potential discovery pre and post-certification in class actions, researched the burden of proof on Rule 23, researched discovery issues related to absent class members, and did further research regarding damages and class issues.

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

40.     We received and reviewed a motion for sanctions under Rule 11 filed by the defendants and conferred with co-counsel regarding that motion.  We also conducted additional research regarding the claims asserted in the class action and the standards under Rule 11.

41.     We began work on an amended complaint to address the motion to dismiss filed by defendants and conducted research regarding issues in the amended complaint including contract and fiduciary duty issues.

42.     We edited and finalized the second amended complaint and drafted motions for leave related to that second amended complaint.

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| L. LeClair | 39.8 | 660 | $26,268 |
| J. Naylor | 88.7 | 425 | $37,698 |

Services Performed During April 2007

43.     We continued to work on a discovery plan and prepared for the Case Management Conference including issues associated with the scope of discovery, the number of depositions, electronic discovery issues and other matters associated with the Case Management Conference.

44.     We conducted additional legal research regarding fiduciary relationships, agency, and informal fiduciary relationships.

45.     We received and reviewed the defendants' motion regarding venue and conducted significant research regarding that motion, the facts supporting the motion, and the proposed response.

46.     We continued work on drafting the response to the motion to dismiss and conferred extensively with co-counsel regarding that motion and the Rule 11 motion.

47.     We received and reviewed the defendants' motion for judgment on the pleadings and conducted research regarding that motion and a proposed response.

48.     We collected additional evidence through Internet research and other means associated with defendants contacts with the state of California and provided that information as a part of the response to the motion on venue.

49.     With respect to the venue motion, we conferred with co-counsel, researched the question of burden of proof and looked further into issues associated with residency of prospective witnesses and location of such witnesses for purposes of trial.

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| L. LeClair | 44.0 | 660 | $29,040 |
| J. Naylor | 146.6 | 425 | $62,305 |

Services Performed During May 2007

50.     We conducted additional preparation for the Case Management Conference, including preparation of additional materials, review of new Case Management Conference Rules from Judge Alsup, review of authority regarding the Case Management Conference and preparation of a proposed outline for the Case Management Conference.

51.     We continued to work on the response to the Rule 11 Motion including additional research, conference with co-counsel, and editing of the proposed response.

52.     We reviewed the NFLPA website related to changes made with respect to representation of retired players and included such information in our pleadings. We also drafted outlines in connection with the upcoming hearing and conducted additional discussion regarding preparation for the hearing.

53. We conducted research regarding new electronic discovery requirements in connection with the Rule 16 and Case Management Conference.

54. We edited and reviewed filings related to the designation of Interim Class Counsel and continued to work on matters related to the upcoming motion hearings.

55. We compiled case law and cite checked various pleadings and filings with respect to the motions and responses for the upcoming hearings.

56. We reviewed the defendants reply briefs related to the motion for judgment on the pleadings and collected case law and materials related to the information cited in the reply briefs of defendants.

57. We also prepared case binders relating to the various motions set by defendants and the large number of issues to be addressed at the hearing with respect to those motions.

58. We attended a preparatory and strategy meeting with co-counsel in Palo Alto and traveled to and attended a conference with the court in San Francisco regarding the various hearings on the motions set by defendants.

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| L. LeClair | 76.3 | 660 | $50,358 |
| J. Naylor | 114.1 | 425 | $48,492 |

Services Performed During June 2007

59. We worked on preparation of the joint statement of the case including drafting jurisdictional statements and other matters related to the joint statement.

60. We reviewed Judge Alsup's Order denying defendants motions to transfer and for Rule 11 sanctions, and the motion denying in part and granting in part the motions to dismiss

including comparing the Orders to the briefs of the parties in terms of additional work that would be required in connection with renewed pleadings.

61.     We worked on drafting and preparation of the initial disclosures required in the case and the matters necessary to determine those appropriate disclosures.

62.     We conducted additional legal research regarding claims to be asserted in a new complaint and the effect of Judge Alsup's Order regarding the complaint previously filed.

63.     We drafted discovery requests and reviewed those discovery requests with co-counsel and continued working on the joint statement in connection with the upcoming Case Management Conference.

64.     We conferred with the clients regarding the status of the amended pleading and the court's Orders.

65.     We met with co-counsel in Palo Alto to prepare for discovery in the action, prepared for the Case Management Conference, worked on issues regarding the amended complaint and considered new claims to be filed in an amended pleading.

66.     We attended a Case Management Conference in San Francisco with Judge Alsup and received various deadlines for completion of actions in the case.

67.     We conducted further editing, research, and review of the amended complaint and discussed such matters with our co-counsel.

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| L. LeClair | 78.1 | 660 | $51,546 |
| J. Naylor | 122.3 | 425 | $51,977 |

## Services Performed During July 2007

68. We received and reviewed new filings by defendants relating to proposed motions to dismiss the amended complaint and we conferred with co-counsel and conducted research regarding that motion.

69. We worked on the identification of expert witnesses and conducted conference calls with proposed expert witnesses in the case. We began work on damages and other matters related to the proof and evidence required in connection with the action.

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| L. LeClair | 41.6 | 660 | $27,456 |
| J. Naylor | 76.9 | 425 | $32,683 |

## Services Performed During August 2007

70. We began preparations for the August hearing on the renewed motions to dismiss including research, drafting, and editing related to the hearing on the proposed motion to dismiss.

71. We began the process of preparing for discovery and depositions in the case, including review of written discovery, editing of filings, and review of information provided by defendants in connection with initial disclosure.

72. We reviewed request for production served by defendants and began preparation of responses with respect to those discovery requests. We conferred with the clients regarding potential discovery and preservation of documents.

73. We drafted objections to discovery and edited those objections prior to filing.

74. We retained an expert with respect to document preservation and management and conducted conference calls with that expert regarding preservation of plaintiffs' documents.

McKool Smith
A Professional Corporation · Attorneys
Dallas, Texas

We reviewed subpoenas served by defendants relating to witnesses in the case and began preparations for response to those subpoenas, including objections.

75. We reviewed defendants' production of documents and loaded certain documents into a database for management of the information during the case.

76. We conducted initial research regarding class certification issues and reviewed emails from co-counsel regarding potential certification.

77. We conferred with opposing counsel regarding discovery issues including documents and depositions.

78. We began preparation for the deposition of Doug Allen, including review of various documents produced by NFLPA and pleadings and other matters relating to Doug Allen.

79. We conducted final preparations for the hearings on August 30, including preparation and review of case binders, outlines for the hearing, and various matters associated with pending hearings.

80. We attended the hearing on the motion to dismiss and related items in California and conferred with co-counsel.

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| L. LeClair | 44.6 | 660 | $29,436 |
| J. Naylor | 74.7 | 425 | $31,748 |
| K. Sherrill | 25.3 | 110 | $2,783 |

Services Performed During September 2007

81. We conducted extensive review of the documents produced by the defendants in preparation for the deposition of Doug Allen, prepared outlines of issues related to that deposition and conferred with co-counsel.

82.    We worked on issues regarding class certification and began drafting the motion for class certification and conducted research related to that motion.

83.    We coordinated FTP data transfers of document production from the defendants and loaded such production into a database to enable searching and use of the documents during the case.

84.    We began preparation for the deposition of Dawn Ridley and conducted review of various documents related to Dawn Ridley produced by the NFLPA.

85.    We received and reviewed Judge Alsup's Order dismissing the amended complaint during later stages of preparation for Doug Allen's deposition.  We conferred with defendants about postponement of Doug Allen's deposition in light of the dismissal Order and the stay of litigation set to begin on August 10, 2007.  Unable to reach agreement, we arranged a conference call with Judge Alsup to address the Doug Allen deposition and received an Order authorizing us to proceed with the Doug Allen deposition on Friday, September 7.

86.    We conducted final preparations for the deposition of Doug Allen, and then took the Doug Allen deposition on September 7, with the assistance of co-counsel.

87.    We began working on a third amended complaint based on the dismissal Order of Judge Alsup and conferred with co-counsel regarding the issues associated with a third amended complaint.  We conducted additional research regarding new claims and theories with respect to the third amended complaint and began drafting and editing of the third amended complaint.  We received and reviewed additional document production from defendants and coded such document production for inclusion in the database of materials produced by defendants.

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L. LeClair | 98.4 | 660 | $64,944 |
| J. Naylor | 103.1 | 425 | $43,818 |
| K. Sherrill | 42.7 | 110 | $4,697 |

Services Performed During October 2007

88.     We received and reviewed defendants' opposition to the third amended complaint and numerous associated filings.   We began preparation for the reply brief to be filed in connection with the motion to dismiss the third amended complaint and conducted additional research regarding issues associated with the motion.

89.     We conducted legal research regarding discovery in connection with a motion to dismiss that may be converted to summary judgment and addressed the rules regarding attachment of evidence in connection with a motion to dismiss.

90.     We conducted review of documents of the class representatives and prepared such documents for production in the case.

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L. LeClair | 41.9 | 660 | $27,654 |
| J. Naylor | 53.1 | 425 | $22,567 |
| K. Sherrill | 0.4 | 110 | $44 |

Services Performed During November 2007

91.     We worked on issues in connection with related proceedings and conferred with co-counsel regarding same.

92.     We reviewed the court's Order the motion for hearing in connection with proposed dismissal and conferred with co-counsel regarding issues associated with that hearing. We conducted conference calls regarding discovery.

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

93. We worked on expert issues and discovery and preparation of potential damage calculations in the case.

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| L. LeClair | 17.3 | 660 | $11,418 |
| J. Naylor | 1.7 | 425 | $723 |

Services Performed During December 2007

94. We performed extensive work regarding discovery and preparations for discovery, including preparation of discovery requests and subpoenas to third parties, review of documents to identify deposition candidates, review of documents related to third parties and drafting, editing, and further preparation of additional discovery requests.

95. We worked on discovery issues relating to Electronic Arts, including preparation of a 30(b)(6) subpoena and other materials related to that proposed deposition.

96. We conferred with co-counsel and opposing counsel regarding discovery issues and potential disputes regarding the scope of document production.

97. We worked on class certification issues and reviewed Judge Alsup's Order and requirements relating to class certification.

98. We conferred with attorneys for Electronic Arts regarding discovery directed to Electronic Arts and potential witnesses to be produced in the case.

99. We undertook additional tasks regarding document management in the case including coding of documents, key word application, and other matters related to documents produced by defendants.

100. We began work in connection with a potential mediation and the drafting of a mediation statement.

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L. LeClair | 19.4 | 660 | $12,804 |
| J. Naylor | 192.5 | 425 | $20,953 |
| B. Charhon | 7.9 | 350 | $2,765 |
| K. Sherrill | 25.6 | 110 | $2,816 |

Services Performed During January 2008

101.    We continued to work on discovery of third parties including Topps, Electronic Arts, Upper Deck and other third party witnesses. We conferred with counsel for those witnesses and arranged deposition dates and document responses. We continued to draft, edit, and revise a mediation statement in connection with the upcoming ADR Meeting in February 2008.

102.    We continued to engage in document management projects including database coding, key word identification and other related matters.

103.    We continued to work on class certification motion and issues associated therewith and conducted additional research regarding certification issues. We worked on additional discovery matters including drafting and revision of responses to requests for admissions, drafting of responses to interrogatories, and drafting of objections and other responses related to document production.

104.    We began a summary chart relating to potential class members, execution of GLAs during the statute of limitations, potential issues regarding identification of class members, and other issues associated with determination of the class.

105.    We received and reviewed documents produced under subpoena by third parties and loaded such documents into the database for further review and information.

106.    We conferred with counsel for third parties regarding the dates of depositions, documents to be produced, objections to documents and deposition testimony and other matters related to third party depositions.

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| L. LeClair | 9.9 | 700 | $6,930 |
| J. Naylor | 134.9 | 450 | $60,705 |
| B. Charhon | 158.0 | 400 | $63,200 |
| K. Sherrill | 11.4 | 180 | $2,052 |
| C. Alaniz | 2.9 | 85 | $247 |

Services Performed During February 2008

107.    We prepared for and conferred with co-counsel regarding deposition of Electronic Arts, including review of documents and publicly available materials related to Electronic Arts and the Madden football games.

108.    We attended a settlement conference in California with co-counsel and opposing counsel to discuss potential settlement in the action.

109.    We prepared for the deposition of  Gene Upshaw, including review, editing, and suggestions for topics and documents related to that deposition.

110.    We continued to work on issues related to class certification and preparation of the class certification motion.

111.    We continued to respond to discovery requests and conferred with the class representative regarding such discovery.

112.    We worked with class representative Herb Adderley in connection with preparation for his deposition, including response to document requests and other issues relating to that deposition.

113.     We conferred with co-counsel regarding the Adderley deposition, issues associated with that deposition, and additional issues relating to class certification.

114.     We continued to work on issues associated with damages, including review and analysis of the depositions of Doug Allen and Glen Eyrich and the documents produced and utilized in connection with those depositions.

115.     We continued to manage document production from defendants and third parties. We prepared for the deposition of  Howard Skall, including conferences with co-counsel and suggestions of topics and documents for use in that deposition.

116.     We reviewed deposition transcripts and incorporated such information into the class certification motion.

117.     We worked on various discovery disputes, including issues related to document production by defendants, scope and timing of such document production, and related issues.

118.     We worked with damage expert Phil Rowley in connection with preparation for class certification and other issues related to damages and proof of class-wide injury.

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L. LeClair | 13.4 | 700 | $9,380 |
| J. Naylor | 149.0 | 450 | $86,625 |
| B. Charhon | 53.9 | 400 | $21,560 |
| K. Sherrill | 10.4 | 180 | $1,872 |
| C. Alaniz | 29.5 | 85 | $2508 |

Services Performed During March 2008

119.     We continued with extensive work regarding class certification including drafting of declarations, review and collection of deposition sites, additional research, conferences with co-counsel, collection of evidentiary material and other related matters on class certification.

120.	We conducted numerous telephone conferences with co-counsel regarding the class certification motion, documents to be filed, and deposition excerpts.

121.	We continued to work on discovery issues, including issues related to class certification and reviewed and edited responses to discovery.

122.	We continued to work on third party subpoenas, document production, and depositions including conferring with counsel for third parties such as Topps and Electronic Arts.

123.	We drafted, edited, and revised my declaration to accompany the class certification motion, including collection of information regarding prior certification and class work.

124.	We drafted, edited, and revised the declaration of Jill Naylor related to materials and information on class certification.

125.	We met with experts in California relating to damages and the Madden game, and reviewed information for collection and dissemination to experts.

126.	We assisted with preparation for the deposition of Bernie Parrish, including review of documents and research and identification of issues relating to class certification.

127.	We conducted additional research regarding adequacy, typicality, and other issues associated with class certification.

128.	We prepared for the deposition of Topps in New York City and reviewed and analyzed documents produced by Topps.

129.	We revised the subpoena and deposition notice for W. Friss and discussed with counsel for Topps issues associated with the Friss deposition.

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L. LeClair | 95.5 | 700 | $66,850 |
| J. Naylor | 149 | 450 | $67,050 |
| B. Charhon | 82.2 | 400 | $32,880 |
| K. Sherrill | 37.9 | 180 | $6,822 |
| C. Alaniz | 14.3 | 85 | $1,216 |

Services Performed During April 2008

130.    We did additional preparation for the depositions of Topps representatives in New York City, including outlines and review of documents.

131.    We attended and took the depositions of W. Friss and A. Zucker in New York related to the third party subpoenas served on Topps.  We conducted additional research regarding issues in the case, including issues related to the merits of the claim and class certification.

132.    We reviewed and analyzed responsive materials filed by defendants in connection with class certification, including cases and other materials cited by defendants.  We negotiated discovery dates and depositions for additional defense witnesses, including preparation for the depositions of Joe Nahra and Richard Berthelsen.

133.    We prepared for and attended the deposition of Joseph Nahra in Washington, DC, including review of documents, review of publicly available materials, and other items related to that deposition.

134.    We began working on materials related to summary judgment, including research and analysis of issues likely to be raised in summary judgment.

135.    We conferred with co-counsel in advance of the class certification hearing and identified issues and materials to be presented during the hearing on class certification.

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

136.    We attended the hearing on class certification in California, then met with and conferred with co-counsel regarding discovery issues, additional materials, and items to be completed following class certification.

137.    We reviewed Judge Alsup's Order certifying the class and began final case preparations for the completion of discovery and completion of expert witness reports.

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| L. LeClair | 109.50 | 700 | $76,650 |
| J. Naylor | 96.4 | 450 | $43,380 |
| B. Charhon | 45.5 | 400 | $18,200 |
| K. Sherrill | 13.8 | 180 | $2,484 |
| C. Alaniz | 29.5 | 85 | $2,508 |

Services Performed During May 2008

138.    We outlined outstanding discovery tasks prior to the completion of discovery, conferred with co-counsel, and allocated tasks to be completed during the month of May.

139.    We reviewed Judge Alsup's Standing Order on pretrial issues and determined all of the materials that needed to be filed and the time table for filing of such materials.

140.    We continued to manage document production of newly produced materials including indexing and incorporating such materials into the database.

141.    We met with co-counsel in California to review potential expert testimony, met with experts and review draft reports, conferred with co-counsel regarding additional discovery to be obtained prior to the close of discovery, and worked on an outline for a trial plan in connection with the matter.

142.     We began work on a proof outline for trial, including incorporation of exhibits and documents and testimony important to trial of the action.

143.     We met with additional sports marketing experts in Los Angeles and considered including them in the experts to be retained for trial.

144.     We began work on the class notice and drafted, edited, and revised a proposed notice of class certification to class members.

145.     We worked with a class administrator to prepare an appropriate class notice and mailing with respect to class certification.

146.     We conferred with defense counsel regarding obtaining the appropriate list of class members in a suitable format in order to deliver that list to the class administrator.

147.     We conferred with opposing counsel regarding numerous discovery issues, including documents, additional depositions, experts, and other matters.

148.     We prepared for the deposition of Richard Berthelsen, including review of documents, review of deposition testimony, and conferences with co-counsel regarding the issues associated with the Berthelsen deposition.

149.     We continued work on the draft proof outline for trial, including additional documents and testimony to be included therein.

150.     We drafted, edited, and revised responses to additional written discovery requests, including document requests and interrogatories.

151.     We conducted further conferences with expert witnesses in preparation for the filing of expert reports on June 1, including telephone conferences, emails, and other communications regarding expert reports.

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

152.    We conferred with defendants regarding issues in the class notice and GLA list, and compiled a final list for delivery to the class administrator.

153.    We conducted additional research regarding claims of fiduciary duty, documents associated with such claim, and issues that might arise in connection with appeal of certification.

154.    We considered issues regarding fiduciary duty and punitive damages, including expert issues associated with such claims and the potential need to file reports on June 1.

155.    We received and reviewed defendants Rule 26(a)(1) disclosures and conferred with co-counsel regarding same.    We conferred with co-counsel regarding new witnesses, potential issues regarding need for additional depositions, and other associated problems with the close of discovery.

156.    We conferred with defendants regarding the issue of display of the class notice on defendants' website and other issues associated with the class notice.

157.    We conferred with defendants regarding issues associated with documents related to Gene Upshaw's compensation, and prepared, edited, and revised a motion to compel related to documents associated with Gene Upshaw's compensation.

158.    We worked on the appeal of the class certification order and numerous issues associated with such appeal, both procedurally and substantively.

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L. LeClair | 123.3 | 700 | $86,310 |
| J. Naylor | 84.3 | 450 | $37,935 |
| B. Charhon | 125 | 400 | $50,000 |
| K. Sherrill | 26.9 | 180 | $4,842 |
| B. Sanders | 12.7 | 85 | $1,080 |
| C. Alaniz | 48.6 | 85 | $4,131 |

159.    We continued to work on issues associated with class notice, including address issues and other problems identified by the class administrator.

160.    We worked on additional issues associated with the appeal of class certification, including conferences with co-counsel, review of briefs filed by defendants, and other matters associated with class certification.

161.    We reviewed, edited, and revised responses to discovery requests associated with the close of discovery, including discovery requests associated with witness disclosure and damages.

162.    We conferred with defendants regarding summary judgment and the class notice and sent correspondence to opposing counsel regarding the class notice and summary judgment.

163.    We conducted telephone conferences with a jury consultant regarding a proposed mock trial in connection with the action and discussed issues, themes, and other matters associated with the mock trial.

164.    We conferred with defendants regarding inadequacies in discovery responses, including document requests, class member issues, and other associated discovery matters.

165.    We prepared for and attended a hearing in California regarding motion to compel documents of Gene Upshaw and conferred with opposing counsel regarding that motion.

166.    We began research regarding choice of law issues and conducted extensive research regarding the law of Virginia and DC.

167.    We began extensive work on response to the motion for summary judgment filed by defendants, including research, evidence collection, deposition excerpts, and documents.

**McKool Smith**
**A Professional Corporation • Attorneys**
**Dallas, Texas**

168.    We met in California with team members to prepare for the upcoming mock trial, the identification of issues to be included in the mock trial, and other matters associated with trial strategy in connection with the action.

169.    We continued to manage documents newly produced by defendants including loading them into a database and identifying key characteristics and searchable items.

170.    We conducted numerous conferences with co-counsel regarding response to the motion for summary judgment and the mock trial, including exchanges of outlines, research material, evidentiary issues, and other matters.

171.    We did extensive work with experts in connection with filing of reply report in connection with the close of expert discovery.

172.    We assisted with review, editing, and completion of the very extensive filing in response to motion for summary judgment, including collection and identification of the extensive exhibits to be filed with the motion, preparation of declarations, and other work associated with the very extensive filing in response to summary judgment.

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| L. LeClair | 145.5 | 700 | $101,850 |
| J. Naylor | 190.2 | 450 | $85,590 |
| B. Charhon | 144.7 | 400 | $57,880 |
| A. Garza | 54.3 | 375 | $20,363 |
| K. Sherrill | 109.2 | 180 | $19,656 |
| B. Sanders | 123.5 | 85 | $10,498 |
| C. Alaniz | 78.5 | 85 | $6,673 |

Services Performed During July 2008

173.    We began extensive preparations for trial of the action, including identification of witnesses, preparation of witness outlines, preparation for exhibit indexes, and other matters associated with trial.

174.    We did extensive work in preparation for a mock trial conducted in July of 2008 including drafting of jury scripts for both plaintiffs and defendants, collection of and identification of relevant documents, collection of and identification of appropriate deposition excerpts, and other matters associated with the mock trial.

175.    We conducted extensive conference calls with the jury consultant and co-counsel to prepare for and identify the appropriate issues to be tested in the mock trial.

176.    We prepared for and attended expert depositions of both plaintiffs and defendants in connection with the action.

177.    We negotiated a stipulation with defendants to resolve certain discovery disputes, including the identification of additional retired player witnesses to be called at trial, the ability of defendants to call Steve Saxon as a witness, and other related matters.

178.    We began work on preparation of graphics for trial of the action and testing of graphics during the mock trial to be conducted in July.

179.    We conducted a rehearsal of the mock trial one day before the actual mock trial, including extensive run-throughs of presentations, review of graphics, review of depositions and other matters associated with the mock trial.

180.    We conducted an all-day mock trial in South San Francisco and attended jury deliberations to assist with strategy and tactics at trial.

181.    We prepared for the summary judgment hearing in front of Judge Alsup, including extensive conferences with co-counsel regarding summary judgment issues, review of

McKool Smith
A Professional Corporation · Attorneys
Dallas, Texas

exhibits and documents related to the summary judgments, review of expert discovery and depositions, and other matters associated with preparation for the hearing.

182.    We began preparation of an exhibit to Judge Alsup relating to identity of class members scrambled in the Madden game, conferred with co-counsel regarding that issue, and contacted Phillip Rhee to complete summary associated with scrambling in the Madden games.

183.    We edited and revised the letter to Judge Alsup regarding the Rhee summary and the information associated with the Madden games.

184.    We began preparations for depositions of additional class members, including Walter Beach, Clifton McNeil, Jeff Nixon, and Bruce Laird, and conducted interviews and other document collection efforts associated with those witnesses.

185.    We met with Clifton McNeil in Mobile, Alabama.

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L. LeClair | 170.10 | 700 | $119,070 |
| J. Naylor | 95.2 | 450 | $42,840 |
| B. Charhon | 99.4 | 400 | $39,760 |
| A. Garza | 28.2 | 375 | $10,575 |
| K. Sherrill | 14.7 | 180 | $2,646 |
| B. Sanders | 11.7 | 85 | $995 |
| C. Alaniz | 53.7 | 85 | $4,565 |

Services Performed During August 2008

186.    We conducted additional interviews of prospective class members in various locations around the country, prepared them for their deposition, and reviewed and edited deposition transcripts as appropriate.

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

187.    We conducted extensive preparations for trial of the action, including preparation of the extensive pretrial materials including summary of claims, exhibits lists, witness lists, and deposition designations.

188.    We met with class members and potential trial witnesses Walter Beach in Philadelphia and Bruce Laird in Baltimore.

189.    We reviewed the summary judgment order and began further extensive preparations for trial of the action.

190.    We worked on motions in limine and assignment of witnesses at trial.

191.    We selected final witness lists for trial, including Clifton McNeil, Walter Beach, and Bruce Laird.

192.    We received and reviewed defendants' motion to decertify class, conducted legal research regarding that motion, and prepared, edited, and revised a response to the motion to decertify.

193.    We prepared for the deposition of Steve Saxon, including review of documents, preparation of an outline, and other matters associated with that deposition.

194.    We began work on the jury instructions in the case, conducted extensive research regarding those jury instructions, and conferred with co-counsel regarding same.

195.    We finalized the exhibit list for trial and arranged final copies of those exhibits to be prepared and sent to California.

196.    We arranged cancellation of the Steve Saxon deposition because of the death of Gene Upshaw.

197.    We conferred with co-counsel regarding proposed continuance of the case in light of the death of Gene Upshaw, and reviewed and analyzed defendants' motion for continuance.

198.     We finalized preparation for filing of the voluminous pretrial materials and motions in limine in the case, together with all responses.

199.     We met over the course of two days with Herb Adderley in Philadelphia to prepare him for trial of the action.

200.     We dealt with numerous issues associated with finalization of the exhibit list, including conferences with co-counsel, review and elimination of duplicates, review of Judge Alsup's Orders, and other matters related to the exhibit list.

| Timekeeper | Hours | Rate | Total |
| --- | --- | --- | --- |
| L. LeClair | 159.3 | 700 | $111,510 |
| J. Naylor | 217.4 | 450 | $97,830 |
| B. Charhon | 144.4 | 400 | $57,760 |
| A. Garza | 80.9 | $375 | $30,338 |
| K. Sherrill | 26.2 | 180 | $4,716 |
| B. Sanders | 186.9 | 85 | $15,887 |
| C. Alaniz | 71.3 | 85 | $6,061 |

Services Performed During September 2008

201.     We continued extensive preparations for trial, including finalization of exhibits, witnesses, motions in limine and responses, and associated pretrial materials.

202.     We negotiated a stipulation with Electronic Arts and defendants with respect to the proposed testimony of Joel Linzer.

203.     We conferred with defendants regarding the continuance of the trial to October 20, including revised deadlines for exhibit objections, deposition designations, and other matters.

204.     We conferred extensively with co-counsel regarding trial strategy, witness order, exhibits to be used at trial, and other matters of trial strategy.

205. We worked on, edited, and revised the Rule 1006 summaries related to use of retired players in the Madden football games, and conferred with Peter Rhee and other experts regarding such summaries.

206. We prepared for and attended the rescheduled Saxon deposition in New York City, including review of documents, preparation and revision of the amended subpoena, preparation of deposition exhibits, and other matters associated with that deposition.

207. We arranged for and defended depositions of Bruce Laird and Clifton McNeil.

208. We held meetings with and conference calls with expert witnesses in preparation for trial testimony. We prepared outlines for witnesses at trial and began work on the extensive objections to exhibits designated by the defendants.

209. We negotiated final changes to the pretrial order and arranged filing of extensive pretrial materials with the court. We continued working on the jury instructions associated with the issues to be tried in the action.

| Timekeeper | Hours | Rate | Total |
|---|---:|---:|---:|
| L. LeClair | 145.10 | 700 | $101,570 |
| J. Naylor | 49.6 | 450 | $22,320 |
| B. Charhon | 148.1 | 400 | $59,240 |
| A. Garza | 39.3 | 375 | $14,738 |
| K. Sherrill | 57.1 | 180 | $10,278 |
| M. Ferrari | 89.5 | 150 | $13,425 |
| B. Sanders | 136.0 | 85 | $11,560 |
| C. Alaniz | 29.9 | 85 | $2,542 |

Services Performed During October 2008

210. We did extensive work in preparation for trial, including witness outlines, cross outlines, review of exhibits, negotiations with opposing counsel, strategy meetings with

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

co-counsel, preparation of witness packets for trial, final review of deposition binders and exhibits, and other matters associated with the upcoming trial starting on October 20.

211.    We prepared extensively for and attended the pretrial conference with Judge Alsup on October 15, including preparation for argument in connection with extensive motions in limine, and preparation for hearing on objections to exhibits.

212.    We conducted final research on issues likely to be addressed at trial and prepared notes and/or briefing with respect to such issues.

213.    We attended and participated extensively in trial of the action beginning on October 20, 2008.

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L. LeClair | 284.0 | 700 | $198,800 |
| J. Naylor | 247.7 | 450 | $111,465 |
| B. Charhon | 279.0 | 400 | $111,600 |
| A. Garza | 244.9 | 375 | $91,838 |
| S. Bovine | 230.0 | 180 | $41,400 |
| K. Sherrill | 15.0 | 180 | $2700 |
| M. Ferrari | 86.2 | 150 | $12,930 |
| B. Sanders | 117.5 | 85 | $9,988 |
| C. Alaniz | 35.2 | 85 | $2,992 |
| O. Moreno | 276 | 105 | $28,980 |

Services Performed During November 2008

214.    We continued participation in and attendance at trial of the action in November 2008 including preparation for and handling witness testimony, management of exhibits, continued work on jury instructions, and other matters.

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

215.    We prepared for and attended the Charge Conference with Judge Alsup to object to and discuss the proposed jury instructions in the case.

216.    We prepared for and argued the Rule 50 motions for directed verdict at the close of the plaintiffs' case.

217.    We assisted with preparation for closing arguments, including identification, exhibits, testimony, and items to be used during closing argument.  We met with co-counsel to discuss and debate trial strategy and argument strategy for the close of the case.

218.    We assisted with preparation for a potential punitive damages hearing.

219.    We received the verdict and began preparations for post-judgment motions and briefing in the case.

| Timekeeper | Hours | Rate | Total |
|------------|-------|------|-------|
| L. LeClair | 117.5 | 700 | $82,250 |
| J. Naylor | 129.6 | 450 | $58,320 |
| B. Charhon | 94.8 | 400 | $37,920 |
| A. Garza | 80.5 | 375 | $30,188 |
| S. Bovine | 103.5 | 180 | $18,630 |
| K. Sherrill | 5.6 | 180 | $1,008 |
| M. Ferrari | 6.3 | 150 | $945 |
| O. Moreno | 96.0 | 105 | $10,080 |
| B. Sanders | 2.1 | 85 | $590 |

**OTHER DISBURSEMENTS AND EXPENSES INCURRED IN THIS ACTION**

220.    Concurrently with this motion, Plaintiffs have filed a cost bill seeking recovery of $92,120.10  in ordinary litigation costs under Fed. R. Civ. Pro. 54(d).

221.    McKool Smith incurred additional expenses and disbursements in successfully prosecuting the case, other than those items included in the cost bill.  A summary of those other expenses reasonably incurred, are as follows:

| | |
|---|---|
| Computer Research | $ 78,823.84 |
| Copying (Outside Service) | $  7,975.03 |
| Courier | $  9,794.34 |
| Deposition Services | $  1,751.90 |
| Document management Costs | $ 67,069.45 |
| Hotel for trial personnel | $ 53,186.73 |
| Meals | $  1,933.22 |
| Meals in Trial | $  5,000.12 |
| Mileage/Parking | $  1,220.08 |
| Miscellaneous Legal Cost | $  3,809.28 |
| Other Experts/Professionals | $ 24,247.45 |
| Reproduction (In-House Photocopies) | $  3,139.80 |
| Telephone | $    969.30 |
| Travel | $ 98,669.06 |
| Trial Equipment Rentals | $  3,044.14 |
| Mock Trial and Trial Consulting | $ 61,007.59 |
| Trial Consulting | $ 42,924.36 |
| **TOTAL** | **$464,565.69** |

222.    Most of the items listed above are self-explanatory.  The photocopying charges in this case were substantial due to the number of documents produced and number of exhibits used at depositions and trial.  Travel included travel and lodging costs incurred by McKool Smith timekeepers to attend court hearings, depositions, meetings, and trial.  Computer research is the cost of performing on-line legal research for trial and post-trial briefs. TrialGraphix provided trial consulting and assistance with graphics and exhibits for the trial. McKool Smith has not included any expert costs in the amounts set forth above, even though McKool Smith advanced approximately half of such costs. Rather, the full amount of expert costs are contained within the request for non-taxable costs submitted by Manatt and supported by the Katz Declaration.

223.     In addition, to the extent any costs included in the cost bill are disallowed or deemed not recoverable, Plaintiffs alternatively seeks recovery of any such items by this motion.

**SUMMARY**

224.     McKool Smith seeks recovery of $3,609,618.30 for the attorneys' fees, costs, and other disbursements of McKool Smith, broken down as follows:

| | |
|---|---|
| Attorneys' Fees | $3,145,052.70 |
| Other Expenses and Disbursements | $464,565.69 |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on November 26, 200 in Dallas, Texas.

/s/ Lewis T. LeClair