MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| HERBERT ANTHONY ADDERLEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**CLASS COUNSELS' REPLY IN SUPPORT OF THEIR APPLICATION FOR PRELIMINARY AND FINAL DETERMINATION OF COSTS, FEES, EXPENSES, AND AN INCENTIVE PAYMENT FOR CLASS REPRESENTATIVE, HERBERT ADDERLEY**<br><br>Date: January 8, 2009<br>Time: 8:00 a.m.<br>Judge: Honorable William H. Alsup |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

CLASS COUNSELS' REPLY BRIEF
IN SUPPORT OF APPLICATION FOR FEES
CASE NO. C07-0943 WHA

Dockets.Justia.com

Counsel for the GLA Class ("Class Counsel") file this Reply Brief in Support of their Fee Application for Preliminary and Final Determination of Costs, Fees, Expenses, and an Incentive Payment for Class Representative, Herbert Adderley ("Response to Fee Application"). Through their efforts, Plaintiffs' counsel have secured a jury verdict and judgment awarding $28.1 million plus interest for the nationwide GLA Class ("Judgment"). Because this is an outstanding result in an extremely difficult and hard-fought case, the Fee Application should be preliminarily granted.

**A.   Defendants' Interest in the Fee Application is Suspect.**

Defendants have no legitimate interest in the division of a common fund award. Even when common fund fees are contested, they are contested by absent class members or by co-counsel for plaintiffs rather than by defendants who have no interest in the amount of the fee awarded after they have paid over the common fund for the class. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, at 479 n.5 (1980) (though the amount of attorney's fees from the common fund had not yet been set, the aggregate judgment against Boeing "terminated the litigation between Boeing and the class concerning the extent of Boeing's liability."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993) (defendant who contributed to the fund will usually have no interest in how the fund is divided between plaintiffs and class counsel).

Defendants' putative interest stated in Footnote 1 of their Response is pure sophistry. After vigorously challenging the right of the GLA Class to receive *any* money through Defendants' Renewed JMOL and promises of continuing litigation, Defendants now purport to fight on behalf of the GLA Class to receive *more* money putatively because they are "all . . . former NFL players." Defendants do not explain why the Class members' status as former NFL Players gives them any interest in the Fee Award.[1] In fact, Defendants have made the point that not all of the class members are their constituents, *i.e.*, members of the Union whom they purport to represent. *See* Defendants' Reply Brief in Support of Their Motion for Summary Judgment at 15, Docket No. 312 (July 10, 2008).

---

[1] Defendants' new paternalistic "interest" in former NFL players is suspect and might be better directed in redressing their past actions towards them. Indeed, if Defendants truly had the former NFL players' best interests at heart, Defendants would not have engaged in the type of conduct a 10-person jury thought worthy of punitive damages. Furthermore, Class Counsel is unaware that the GLA Class has sought the representation of Defendants for this purpose.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1       Defendants also cannot represent two different sides of a lawsuit. *See* District of
Columbia Rules of Professional Conduct Rule 1.7(a) ("A lawyer shall not advance two or more adverse positions in the same matter."). Rule 1.7(a) mandates "an absolute prohibition of dual or multiple representation when the lawyer would represent clients with 'adverse positions' in the 'same matter.'" *Griva v. Davison*, 637 A.2d 830, 843 (D.C. 1994.) Even client consent cannot cure such a conflict. *Id.* At best, Defendants' new-found allegiance to the Class Members is disingenuous. With so few opt-outs of the Class, Defendants have chosen simply to assert themselves as objectors.[2]

      Furthermore, Defendants themselves contributed in great part to the expense of this litigation, as evidenced most recently by their improper attempt to purport to represent class interests. As described in more detail in the Fee Application, Defendants forced this matter to trial, sought an appellate review of this court's class certification decision, baselessly sought sanctions, and now complain about the fees and expenses Class Counsel incurred as a result of Defendants' actions. Despite Defendants' efforts, Class Counsel achieved an extraordinary result in a very difficult matter.

### B.     A Thirty Percent Fee Award Is Warranted for Class Counsel

      The primary rationale for the common fund doctrine is that "unless the costs of litigation are spread to the beneficiaries of the fund they will be unjustly enriched by the attorney's efforts." *Swedish Hosp. Corp.*, 1 F.3d at 1265. The ultimate goal of determining fees is to reasonably compensate counsel for their efforts in creating the common fund. *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Reasonable fee awards may range from fifteen to forty-five percent of the total class award. *Equal Rights Center v. Washington Metropolitan Area Transit Authority*, 573 F. Supp. 2d 205, 215 (D.D.C. 2008).[3] Although the Ninth Circuit uses a "benchmark" of 25%, it is recognized that in most common

---

[2]     Defendants complain that "there is not yet any basis to know whether the class members will object to the size of the proposed fee." Response at 5. But the class members will each receive notice and an opportunity to object in due time, as ordered by the Court.
[3]     However, in cases regarded as "mega-fund" cases, that is, recoveries of $100 million or more, fees of fifteen percent are common. *In re Lorazepam & Clorazepate Antitrust Litigation*, 205 F.R.D. 369, 383 (D.D.C. 2002) (citing *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 989 (E.D. Tex. 2000)).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

3

CLASS COUNSELS' REPLY BRIEF
IN SUPPORT OF APPLICATION FOR FEES
CASE NO. C07-0943 WHA

fund cases, the award exceeds that benchmark, equaling 30%. *In re Omnivision*, 559 F. Supp. 2d at 1047.

Defendants' counter-arguments in their whisper-thin Response are not supported by the evidence (indeed, they cite to no evidence). Even at that, their arguments give only a lopsided review of the relevant standards and cite to inapposite cases.

### 1. Risk of Nonpayment.

Defendants fail to comment on the significant risk of no recovery in this matter and the importance of this factor in assessing a proper fee award. *See Lorazepam* at 8. Class Counsel undertook significant risk of nonpayment of fees and out-of-pocket expenditures totaling millions of dollars. In fact, Defendants' own assessment of Class Counsels' risks remain extremely high. To date, Defendants remain convinced that there will be no ultimate recovery. Indeed, Defendants recently filed a Renewed Motion for a Judgment As a Matter of Law Under Rule 50, and have promised that this is only the first wave of litigation in this case and that they will ultimately prevail.[4]

### 2. Public Interest

Defendants also ignore the public interest factor, which deserves serious consideration. *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 8 (D.D.C. 2008). There was and continues to be significant media interest in this victory because the NFLPA is a powerful union that affects numerous individuals. The jury verdict in this case was perceived as a message to the Union: to treat individuals fairly and to cease their longstanding practice of engaging in an abuse of power.[5]

---

[4] Defendants issued a press release on November 10, 2008 stating: "The trial in the retired players' licensing suit against the NFLPA ended today with a jury verdict which <u>temporarily</u> gave the retired players $7.1 million in actual damages and $21 million in punitive damages. . . . Richard Berthelsen, the Acting Executive Director of the NFLPA, stated: 'We are obviously not pleased with any award of damages, but <u>we believe that we have solid legal grounds to get this award overturned through post-trial motions and/or on appeal to the Ninth Circuit Court of Appeals</u>. . . .We have learned over the years that court cases are more than a one-round fight, and we fully intend to win this on appeal.' Jeffrey Kessler of Dewey & LeBoeuf, the outside legal firm representing the NFLPA in the case, added: 'This verdict is a complete miscarriage of justice. It will not stand on appeal. The union did nothing but try to help the retired players and there was no basis in the evidence for this jury to reach the verdict that they rendered.'" *See* <http://www.nflplayers.com/user/content.aspx?fmid=178&lmid=443&pid=2479> (emphasis added).

[5] One of the ten jurors, all of whom voted in favor of the retirees, stated. "We felt we had to send a message that the union needs to represent and protect all its members," the juror said. "We

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

4

CLASS COUNSELS' REPLY BRIEF
IN SUPPORT OF APPLICATION FOR FEES
CASE NO. C07-0943 WHA

### 3. Quality of Counsel

"The quality of plaintiffs' counsels' representation of the class is a key factor in a court's consideration of counsels' fee request." *In re Warner*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985). Defendants ignore this factor. In the common fund case, victory is the key factor and the monetary amount of the victory is the true measure of success. *Swedish Hosp. Corp.*, 1 F.3d at 1269. Plaintiffs' Counsel performed well on behalf of the Class, as evidenced by the verdict, and this factor should be given due weight.

### 4. Result

Defendants claim that the result Plaintiffs' Counsel achieved in this matter is not "unusually high." However, that is directly contrary to the arguments Defendants make in their Renewed JMOL Motion, in they which claim that the only correct result in this case is zero. *See, generally,* Defendants' Renewed Motion for Judgment as a Matter of Law, Docket No. 580 (November 26, 2008). Once again, Defendants are trying to speak out of both sides of their mouth.

### 5. Unusual Circumstance/Complexity of Case/Duration of Case

Defendants cite several cases in which class counsel was awarded only twenty percent of the common fund. Significantly, unlike here, none of those cases went to trial. *See, e.g., Lorazepam*, 2003 WL 22037741, at *3-8 (in a potential class of over 55,000 members, defendants settled for $35,000,000, and the court granted the attorneys a 30% common fund award).

Prosecuting a class action through trial is an "unusual circumstance" which warrants an increased fee award. The costs and fees associated with a trial are expensive and account for a large share of the fees accrued in this matter, so far. The fact that the trial lasted three weeks also evidences its overall complexity. Interestingly, it was Defendants, not Plaintiffs, who originally informed the Court that they thought the trial would last four weeks instead of three, and who, during the pre-trial conference on October 15, 2008, asked the Court for more time at trial.[6] *See*

---

felt the players union didn't do that." *See* <http://sports.yahoo.com/nfl/news?slug=ap-nflretirees&prov=ap&type=lgns>.

[6] Even though Defendants now claim that this matter was not complex, they identified in their Rule 26 disclosures almost 50 potential witnesses they intended to call at trial. They also requested, and were granted, *pro hac vice* status for approximately 12 out-of-state attorneys in

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

5

CLASS COUNSELS' REPLY BRIEF
IN SUPPORT OF APPLICATION FOR FEES
CASE NO. C07-0943 WHA

Joint Management Statement, Docket No. 81 (June 7, 2007); Transcript of October 15, 2008 Pre-Trial Hearing 153:9-23 (requesting that the length of the trial be increased by 25%).

Additionally, the choice of law issues were especially complex given that this was a nationwide class action and Defendants resided in different states. At all times before the parties stipulated to the application of D.C. law, each legal issue had to be analyzed under at least two states' laws (Virginia and D.C.) plus the procedural laws of the forum. This is, of course, in addition to the inherent complexities typically found in a nationwide class action of this type.

### 6. Lodestar

Notably, Defendants do not complain that Class Counsels' billing rates or time spent creating the lodestar are excessive. Thus, there is no objection to the "time and labor" factor.[7]

Defendants use the lodestar amount (as of the date of filing the Fee Application) as the ceiling for Class Counsels' recovery. This is contrary to the percentage-of-the-fee method followed by D.C. jurisprudence, which permits the lodestar to be used only as a cross-check against the overall fee awarded. *See Lorazepam* 205 F.R.D. at 385; *Swedish Hosp. Corp.*, 1 F.3d at 1271 ("a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases").

Multiples ranging up to four are frequently awarded in common fund cases when the lodestar method is applied. *Lorazepam*, 2003 WL 22037741 *9 (citing *In re Prudential Ins. Co. Sales Practices Litig.*, 148 F.3d 283, 341 (3d Cir. 1998)). The multiplier of 1.22 included in the requested fee award falls near the low end of normal multipliers. *See also In re Omnivision*, 559 F. Supp. 2d at 1048 (courts have approved multipliers ranging between 1 and 4). Cross-checked against Counsels' lodestar, therefore, the requested fee in this case is eminently fair and reasonable.

---

addition to Defendants' attorneys who reside in California.

[7] It would be ironic if Defendants' counsel did complain about the time or money Class Counsel incurred on this case considering that one of Defendants' law firms, Dewey & LeBeouf, recently submitted a $2.1 million fee application that breaks down to about $100,000 a day in attorney fees, prompting the federal judge in that case to seek more information. *See* <http://abajournal.com/news/judge_questions_dewey_fee_application_seeking_about_100k_a_day/>. It is also worth noting that Dewey apparently bills its "associates" out at hourly rates of $605, which is far above the billing rates of any of Class Counsels' associates. *Id.*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

CLASS COUNSELS' REPLY BRIEF
IN SUPPORT OF APPLICATION FOR FEES
CASE NO. C07-0943 WHA

Defendants' **one** case in support of their argument that the lodestar is the ceiling of "reasonableness" is not a common fund case but instead a case involving a fee-shifting statute. Response at 5 (citing *D.C. v. Patterson*, 667 A.2d 1338, 1346 (D.C. 1995) (quoting *City of Burlington v Dague*, 505 U.S. 557, 561 (1992) ("The fee-shifting statutes at issue do not permit enhancement of a fee award beyond the lodestar amount to reflect the fact that a party's attorneys were retained on a contingent-fee basis.")))). Of course, these fee-shifting statutes have nothing to do with this case. Indeed, common sense dictates that, if this were the standard, it would defeat the percentage-of-the-fund methodology clearly adopted by the D.C. courts and designed as a departure from the lodestar method. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265-71 (criticizing lodestar method).

Additionally, the lodestar as presented to the Court as of the date of the Fee Application is incomplete because Class Counsel continues to accrue fees and expenses as a result of Defendants' refusal to accept the jury's verdict and this Court's judgment. Many hours will be spent by Class Counsel in opposing the Renewed JMOL, the Fee Application Response, and a full appeal.[8]

### 7. Efficiency

The Response devotes substantial space to an "efficiency" argument. Response at 1, 3-5 (citing *Lorazepam*, 2003 WL 22037741 at *8). But *Lorazepam* actually cites to "skill and efficiency" as a possible factor in determining the percentage award. *Id.* "The quality of plaintiffs' counsels' representation of the class is a key factor in a court's consideration of counsels' fee request." *In re Warner*, 618 F. Supp. at 748. In the common fund case, victory is the key factor and the monetary amount of the victory is the true measure of success. *Swedish Hosp. Corp.*, 1 F.3d at 1269. Thus, in the common fund case, if a percentage-of-the-fund calculation controls, inefficiently expended hours only serve to reduce the per-hour compensation

---

[8] Ironically, while promising a full appeal (see n.4 *supra*), Defendants complain that a 30% fee award has not been earned because there has not been an appeal. Response p. 3 (attempting to distinguish *Lorazepam* and stating that "[b]y contrast, in this case, no appeal was fully litigated in any circuit court . . . ."). Furthermore, this case has already been to the appellate court on the class certification issue. *See e.g.*, May 13, 2008 Defendants'-Appellants' Petition For Permission to Appeal.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

7

CLASS COUNSELS' REPLY BRIEF
IN SUPPORT OF APPLICATION FOR FEES
CASE NO. C07-0943 WHA

of the attorney expending them. *Id.* Thus efficiency or inefficiency is already built into the award.

The victory evidences the quality and skill of Class Counsel. It is likely for this reason that *Lorazepam* does not actually discuss an "efficiency" factor other than in passing reference. *See Lorazepam*, 2003 WL 22037741. Indeed, laboring over the hours spent, or an efficiency factor, defeats the purpose of the percentage-of-the-fund methodology. *Swedish Hosp. Corp.*, 1 F.3d at 1268-1269 (Using the lodestar approach in common fund cases encourages significant elements of inefficiency. First, attorneys are given incentive to spend as many hours as possible, billable to a firm's most expensive attorneys. Second, there is a strong incentive against early settlement since attorneys will earn more the longer a litigation lasts.).

Nevertheless, Defendants devote a substantial portion of the Response to whether Class Counsel was "efficient." More specifically, Defendants complain that Plaintiffs had four partners at trial; whereas Defendants (who had judgment entered against them) only had Mr. Kessler and one other partner at trial, neglecting to mention the Weil Gotshal firm and Defendants' two in-house counsel; in reality, Defendants had the same or a similar number of attorneys at trial.[9] And Defendants do not actually complain about the fees spent at trial, only the staffing of the case. In all likelihood, Defendants' attorneys' fees at trial were as much as if not more than those expended by Class Counsel, although Defendants have not volunteered those amounts in their Response.

Further, Defendants complain that Plaintiffs brought theories, including Mr. Parrish's claim, that did not ultimately prevail. But it is typical for a case to espouse many theories, including some in the alternative, not all of which will succeed.[10] *See* Fed. R. Civ. P. 8 (d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). That is not an inefficiency; instead, as here, it can be a successful legal strategy that recognizes that

---

[9] Because Defendants' partner from the Weil Gotshal firm was absent for a few days, Defendants neglect to include him as one of the partners who participated in trial on Defendants' behalf.

[10] Indeed, Mr. Parrish's claims were not certified only because the Court found him to be an unqualified class representative; not because his claims did not have merit. *See* Order Granting In Part and Denying In Part Plaintiffs' Motion for Class Certification, Docket No. 275 (April 29, 2008).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

8

CLASS COUNSELS' REPLY BRIEF
IN SUPPORT OF APPLICATION FOR FEES
CASE NO. C07-0943 WHA

discovery often produces new information.  Class action counsel is not required to somehow divine those theories or discovery arguments with guaranteed results and only pursue those theories.  Moreover, many discovery issues and pleadings are intertwined with both successful and unsuccessful theories and cannot be parsed.

In support of their argument of alleged inefficiency, Defendants quote the Court, leaving out the Court's comment that the trial took less time than allocated.  Response, p. 4. Additionally, Defendants point to one discovery hearing involving issues that remained even during trial and to certain claims that were dismissed early in the lawsuit.  *Id.*  None of this supports a reduction of a percentage award, and all of it ignores the real measure of "skill and efficiency" – victory.

Based upon the foregoing, Class Counsel respectfully submits that the requested attorneys' fees, costs and other expenses are fair and reasonable under the applicable legal standards, as well as in light of the risks incurred, the result achieved, and the effort expended.

**C.  Herb Adderley's Requested Incentive Award of $60,000 is Reasonable.**

Herbert Adderley's incentive award of $60,000 is reasonable and appropriate.  Mr. Adderley served in a capacity often served by multiple individuals.  An incentive award to Mr. Adderley in the amount of $60,000 represents only .21% of the total judgment, which is less than other incentive awards granted by the courts in other cases.  *See Lorazepam*, 2003 WL 22037741 at * 11 (approving incentive award of $80,000 to be shared by 4 class representatives, which was .22% of the total fund); *Equal Rights Center*, 573 F. Supp. 2d at 214 n. 10 (D.C. 2008) (approving incentive award of $81,000 to be shared by 13 named plaintiffs and 16 deposed class members, which was .58% of the total fund).

None of the cases cited by Defendants compel a different result.  In each of those cases, the parties settled so that, unlike Mr. Adderley, the class representative(s) did not need to spend several weeks at trial.  Moreover, each of these cases had numerous class representatives such that, again unlike Mr. Adderley, no one class representative had to bear the entire burden.  *See* Response at 6 (citing *Lorazepam* 2003 WL 22037741 at * 10 ($80,000 to 4 representatives); *Equal Rights Center*, 573 F. Supp. 2d at 214 n. 10 ($81,000 to 13 named plaintiffs and 16

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

CLASS COUNSELS' REPLY BRIEF
IN SUPPORT OF APPLICATION FOR FEES
CASE NO. C07-0943 WHA

deposed class members); *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 124 (D.D.C. 2007) ($15,000 to 2 representatives from common fund of $8.3 million).

Mr. Adderley shouldered this entire case by himself thousands of miles from his home while he was at trial, and in pain from recent back surgery. His active participation was a key factor in Plaintiffs' counsels' ability to obtain a favorable jury verdict on behalf of the class. Class Counsel respectfully submits that the $60,000 incentive award to Mr. Adderley is both reasonable and appropriate.

**D.  Conclusion**

Defendants' late-blooming interest in class members' welfare is not sufficient to overcome the law and facts supporting the Fee Application. Therefore, Plaintiffs respectfully request that the Court grant the following relief:

1) a hearing for a preliminary review of attorneys' fees, costs, and expenses, and incentive award for class representative, Herbert Adderley; and

2) a hearing on the form of class notice appropriate on these matters; as well as,

3) a scheduling order for submission of a proposed class notice; mailing of class notice, objections, and a final hearing.

Dated: December 23, 2008

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By:  /s/ Ronald S. Katz
Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
Noel S. Cohen (SBN 219645)
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Tel: (650) 812-1300; Fax: (650) 213-0260

MCKOOL SMITH, P.C.
Lewis T. LeClair (SBN 077136)
Jill Adler Naylor (SBN 150783)
300 Crescent Court
Dallas, TX 75201
Tel: (214) 978-4984; Fax: (214) 978-4044

*Attorneys for Plaintiffs*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

10

CLASS COUNSELS' REPLY BRIEF
IN SUPPORT OF APPLICATION FOR FEES
CASE NO. C07-0943 WHA