1  MANATT, PHELPS & PHILLIPS, LLP
   RONALD S. KATZ (Bar No. CA 085713)
2  E-mail:  rkatz@manatt.com
   RYAN S. HILBERT (California Bar No. 210549)
3  E-mail:  rhilbert@manatt.com
   NOEL S. COHEN (California Bar No. 219645)
4  E-mail:  ncohen@manatt.com
   1001 Page Mill Road, Building 2
5  Palo Alto, CA  94304-1006
   Telephone:  (650) 812-1300
6  Facsimile:  (650) 213-0260

7  MCKOOL SMITH, P.C.
   LEWIS T. LECLAIR (Bar No. CA 077136)
8  E-mail: lleclair@mckoolsmith.com
   JILL ADLER NAYLOR (Bar No. CA 150783)
9  E-mail: jnaylor@mckoolsmith.com
   300 Crescent Court
10 Dallas, TX 75201
   Telephone:  (214) 978-4984
11 Facsimile:  (214) 978-4044

12 *Attorneys for Plaintiffs*

13                UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                   SAN FRANCISCO DIVISION

16

17 HERBERT ANTHONY ADDERLEY, on          CIVIL ACTION NO. C07 0943 WHA
   behalf of himself and all others similarly
18 situated,                            **CLASS COUNSELS' RENEWED**
                                        **APPLICATION FOR PRELIMINARY AND**
19            Plaintiffs,               **FINAL DETERMINATION OF COSTS,**
                                        **FEES, EXPENSES, AND AN INCENTIVE**
20       vs.                            **PAYMENT FOR CLASS**
                                        **REPRESENTATIVE, HERBERT**
21 NATIONAL FOOTBALL LEAGUE             **ADDERLEY**
   PLAYERS ASSOCIATION, a Virginia
22 corporation, and NATIONAL FOOTBALL   Date:   November 17, 2009
   LEAGUE PLAYERS INCORPORATED          Time:  2:00 p.m.
23 d/b/a PLAYERS INC., a Virginia       Judge: Hon. William H. Alsup
   corporation,
24
            Defendants.
25

26

27

28

MANATT, PHELPS &
  PHILLIPS, LLP        20210136.5
ATTORNEYS AT LAW
   PALO ALTO

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. PLAINTIFFS' COUNSEL REQUESTS AN AWARD OF 30% OF THE NET
FUND AS ATTORNEYS' FEES ............................................................................... 3

    A. The Legal Standards Governing The Award Of Attorneys' Fees In
Common Fund Cases ................................................................................... 3

        1. The size of the fund created and the GLA Class ............................. 6

        2. The Absence of Substantial Objections by Class Members to the
Fee Requested ................................................................................. 6

        3. The Quality of Plaintiffs' Counsel ................................................. 7

        4. The Novelty and Difficulty of the Questions of Law And Fact and
the Skill Required To Perform The Legal Services Properly ............ 8

        5. The Risks of Nonpayment ................................................................ 8

        6. The Time and Labor Involved .......................................................... 8

            a. Investigating and Filing of the Complaints ........................ 9

            b. Motion Practice ................................................................. 9

            c. Document Discovery .......................................................... 10

            d. Depositions ....................................................................... 11

            e. Experts .............................................................................. 11

            f. Pre-Trial Settlement Negotiations and Agreement ............ 11

            g. Trial .................................................................................. 12

            h. Post-Trial Motions ............................................................ 12

            i. Defendants' Appeal ........................................................... 12

            j. Negotiating a Settlement Agreement ................................. 13

        7. Similar Awards .............................................................................. 13

        8. Public Interest ............................................................................... 14

    B. The Requested Fee Is Also Fair And Reasonable Under The Lodestar
Method ...................................................................................................... 14

III. PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR THEIR COSTS
AND EXPENSES ...................................................................................................... 15

IV. PLAINTIFFS' COUNSEL REQUEST A $60,000 INCENTIVE AWARD FOR
HERBERT ADDERLEY ......................................................................................... 16

V. CONCLUSION ......................................................................................................... 18

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20210136.5

i

RENEWED APPLICATION FOR DETERMINATION
OF COSTS, FEES, AND EXPENSES
CASE NO. C 07-0943 WHA

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bebchick v. Wash. Metro. Area Transit Comm'n,*
805 F.2d 39 (D.C. Cir. 1986) ........................................................................... 14

*Begin Powers v. Eichen,*
229 F.3d 1249 (9th Cir. 2000)............................................................................ 3

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ........................................................................................... 4

*Cathedral Ave. Co-op., Inc. v. Carter,*
947 A.2d 1143 (D.C. 2008)................................................................................ 4

*Cook v. Niedert,*
142 F.3d 1004 (7th Cir. 1998)............................................................................ 17

*Equal Rights Center v. Washington Metro. Transit Authority,*
573 F. Supp. 2d 205 (D.C. 2008) ...................................................................... 18

*Fischel v. Equitable Life Assur. Society of U.S.,*
307 F.3d 997 (9th Cir. 2002).............................................................................. 15

*Fresh Kist Produce, L.L.C., v. Choi Corp., Inc.,*
362 F. Supp. 2d 118 (D.C. Cir. 2005) ............................................................... 4

*Harris v. Marhoefer,*
24 F.3d 16 (9th Cir. 1994)................................................................................... 15

*In re Aetna Inc.,*
2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ........................................................... 13

*In re Ampicillin Antitrust Litig.,*
526 F. Supp. 494 (D.D.C. 1981) ........................................................................ 13

*In re Baan Co. Securities Litigation,*
288 F. Supp. 2d 14 ( D.D.C. 2003) .................................................................... 13

*In re Domestic Air Transp. Antitrust Litig.,*
148 F.R.D. 297 (N.D. Ga. 1993)........................................................................ 16, 18

*In re Dun & Bradstreet,*
130 F.R.D. 366 (S.D. Ohio 1990) ...................................................................... 16, 18

*In re Lorazepam & Clorazepate Antitrust Litig.,*
2003 WL 22037741 (D.D.C. 2002) ................................................................. passim

*In re Lorazepam & Clorazepate Antitrust Litig.,*
205 F.R.D. 369 (D.D.C. 2002) ........................................................................... 14

*In re Omnivision Techs., Inc.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... passim

*In re Warner Communic'ns Sec. Litig.,*
618 F. Supp. 735 (S.D.N.Y. 1985)..................................................................... 7

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense,*
675 F.2d 1319 (D.C. Cir. 1982)......................................................................... 14

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5

ii

RENEWED APPLICATION FOR DETERMINATION
OF COSTS, FEES, AND EXPENSES
CASE NO.  C 07-0943 WHA

**TABLE OF AUTHORITIES**
(continued)

Page

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) ................................................................................... 4, 5

*Van Vranken v. Atlantic Richfield Co.*,
   901 F.Supp. 294 (N.D. Cal. 1995) ...................................................................... 16, 17

*Vincent v. Hughes Air W., Inc.*,
   557 F.2d 759 (9th Cir. 1977) .................................................................................... 4

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
   246 F.R.D. 349 (D.C. 2007) ...................................................................................... 17

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .................................................................................. 4

*Wells v. Allstate Ins. Co.*,
   557 F. Supp. 2d 1 (D.D.C. 2008) ......................................................................... 6, 14

**RULES**

Civil L.R. 54-2 ................................................................................................................. 15

Civil L.R. 54-4(b) ............................................................................................................ 15

Fed R. Civ. P. 23(h) ........................................................................................................ 5

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20210136.5

iii

RENEWED APPLICATION FOR DETERMINATION
OF COSTS, FEES, AND EXPENSES
CASE NO.  C 07-0943 WHA

## I.  INTRODUCTION

Through their efforts, risking millions of dollars against insurmountable odds and a fiercely determined opposing counsel, Counsel for the GLA Class ("Plaintiffs' Counsel" or "Petitioner") obtained a $28.1 million jury verdict ("Judgment") on behalf of more than 2,000 retired NFL players against their union and its licensing arm.  This precedent-shattering and precedent-setting case created reverberations throughout the sports industry, causing many to reconsider the relationship between athletes and their unions.[1]  The message to be taken from Plaintiffs' victory could not be more clear: a union *must* take care of its members, active or retired.  If it does not, law firms like Plaintiffs' Counsel can and *will* hold such unions accountable in a court of law.

From the moment this case was filed up through class certification, this case was fought by two law firms – Manatt, Phelps & Phillips LLP and McKool Smith – working as one.  Each firm had only one partner working on the case with a junior partner and a handful of associates assisting them.  On the other side were two well-known, well-funded New York law firms – Dewey & LeBoeuf and Weil, Gotshal & Manges – who had four senior partners working against Plaintiffs' Counsel, including three department chairs, and a number of associates from both coasts.  Defendants' counsel fought ferociously on every issue and filed endless motions seeking to derail the case.  Though outmanned, Plaintiffs' Counsel expended countless hours and resources successfully fighting back motion after motion brought by Defendants' counsel and eventually obtaining certification of the GLA Class.[2]  Because Plaintiffs' Counsel took this case

---

[1]    According to a story published in the *New York Times* on October 2, 2009, a recent study commissioned by the NFL found that dementia-related diseases appear to have been diagnosed in the league's retirees vastly more often than in the national population.  *See* http://www.nytimes.com/2009/10/01/sports/football/01dementia.html.  Issues like these have come to the forefront of the public's conscience, as a result, in part, of the publicity surrounding this case.

[2]    As the Court is aware, the verdict, judgment and settlement in this case were achieved after over two years of vigorous and hard-fought litigation, and subsequent protracted settlement negotiations, against well-funded, able and tenacious Defense counsel from multiple law firms.  During this time, Plaintiffs' Counsel spent a multitude of hours of attorney and paralegal time analyzing thousands of pages of documents; conducted numerous depositions across the country; drafted scores of briefs and motion papers; battled over class certification, pleading amendments, and choice of law; defeated a motion for summary judgment, motions to dismiss, motions for sanctions, motions to decertify the class, and a motion for judgment as a matter of law; participated in numerous court hearings; consulted with accounting and damage experts; victoriously prosecuted a three-week trial; and negotiated a settlement favorable to the GLA Class.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5

RENEWED APPLICATION FOR DETERMINATION OF COSTS, FEES, AND EXPENSES
CASE NO.  C 07-0943 WHA

1   on a contingency basis, there was no guarantee that Plaintiffs' Counsel would ever recover any of

2   the time or resources they were expending.

3       Once the GLA Class was certified, Plaintiffs' Counsel knew from Defendants' words and

4   actions that this case was going to go to trial.  Plaintiffs' Counsel also knew that D.C. law would

5   govern this dispute because it was a condition for certification.  Armed with this knowledge,

6   Plaintiffs' Counsel decided that they would do whatever they could to win this case on behalf of

7   the retired players, even though they also knew that the overall amount to which they might be

8   entitled *if* they won could be capped under the "percentage of the fund" approach used under D.C.

9   law.  Nonetheless, Plaintiffs' Counsel did not shirk on the number of people who participated in

10  this case, dedicating several attorneys and paralegals on a nearly exclusive basis and bringing in

11  two seasoned litigation partners from Manatt for trial (which still did not exceed the total number

12  of people on the other side).  Nor did Plaintiffs' Counsel avoid spending hundreds of thousands of

13  dollars of the firm's own money on expenses because they knew that Defendants' counsel would

14  be spending the same amounts, and likely more, to defeat them.  Instead, Plaintiffs' Counsel did

15  *whatever* they could to win for the players, risking years of their time and millions of dollars in

16  the process.

17      Plaintiffs' Counsel respectfully petition this Court for a final award of attorneys' fees for

18  services in the amount of $7,369,648.90, which is 30% of the settlement amount minus expenses.

19  Plaintiffs' Counsel believes that this amount is fair and justified given the significance and

20  complexity of the case, the quality of Plaintiffs' Counsel's representation, the unrelenting nature

21  of Defendants' counsel, and the time and resources that Plaintiffs' Counsel committed to this

22  litigation in the face of incredible odds and a substantial risk of zero recovery.  It also is worth

23  noting that this amount is less than the lodestar amount – even after each of Plaintiffs' Counsel's

24  firms exercised billing judgment – and is well within the range typically awarded by courts in

25  common fund cases.  That said, Plaintiffs' Counsel realize and respect that it is the role of this

26  Court to determine in its discretion the ultimate amount of attorneys' fees and percent to be

27  awarded.  Plaintiffs' Counsel wish to avoid any unseemly arguments between Plaintiffs' Counsel

28  and the Class, and do not wish to risk tarnishing what has already been widely regarded as a

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5                                    2                    RENEWED APPLICATION FOR DETERMINATION
                                                                   OF COSTS, FEES, AND EXPENSES
                                                                   CASE NO.  C 07-0943 WHA

1    tremendous victory for thousands of retired players everywhere and the counsel who had the

2    honor of representing them.

3        Plaintiffs' Counsel further request that they be awarded their expenses, and that the sole

4    class representative, Herbert Adderley, be awarded an incentive fee in the amount of $60,000 for

5    his substantial and substantive participation on behalf of the entire GLA Class.

6    **II.    PLAINTIFFS' COUNSEL REQUESTS AN AWARD OF 30% OF THE NET FUND
         AS ATTORNEYS' FEES.**
7

8        Plaintiffs' Counsel requests 30% of the net common fund after expenses are deducted.[3]

9    Declaration of Ronald S. Katz ("Katz Decl.") ¶ 56.  Petitioners are firms which devote some

10   portion of their legal practice to contingency litigation.  *Id.*   It is important to note that the

11   percentage of recovery sought, 30%, is less than the standard 33-40% charged for contingency

12   cases in this District, especially very risky cases like this against well-resourced opposition.  *Id.*

13       The straight hour fees in this case or lodestar amount would be $4,531,237.50 for Manatt,

14   which is after $255,290.00 in straight write-offs and another $369, 259.50 in per-project

15   reductions (for a total of $624,549.50 in adjustments).  Katz Decl. ¶¶ 5, 10 and 45.  Similarly, the

16   straight hour fees or lodestar amount for McKool would be $3,253,630.63, which is after

17   $742,124.37 in adjustments.  Declaration of Lewis LeClair ("LeClair Decl.") ¶¶ 6, 7.  The

18   combined lodestar amount for both Mckool Smith and Manatt during the litigation is

19   $7,784,868.13.

20       In contrast, the requested fee award of 30%, or $7,369,648.90, is less than the combined

21   lodestar amount of $7,784,868.13, which already reflects $1,366,673.87 in reductions because of

22   the exercise of billing judgment.

23       **A.    The Legal Standards Governing The Award Of Attorneys' Fees In Common
             Fund Cases**
24

25       The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a

26   common fund for the benefit of persons other than himself or his client is entitled to a reasonable

27   
28   ---

[3]    *See Begin Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) (explaining that it makes no difference whether attorneys' fees are based on the net or gross recovery, so long as the fee is reasonable).

MANATT, PHELPS &
Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5                                          3                    RENEWED APPLICATION FOR DETERMINATION
                                                                         OF COSTS, FEES, AND EXPENSES
                                                                         CASE NO.  C 07-0943 WHA

1   attorney's fee from the fund as a whole."[4]  *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).

2   It is well established that the "common fund doctrine" allows an attorney whose efforts created,

3   increased or preserved a fund to recover from the fund the costs of his litigation, including

4   attorneys' fees.  *Vincent v. Hughes Air W., Inc.,* 557 F.2d 759, 769 (9th Cir. 1977); *see also*

5   *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261 (D.C. Cir. 1993); *Cathedral Ave. Co-op., Inc. v.*

6   *Carter,* 947 A.2d 1143, 1159-60 (D.C. 2008).  The common fund doctrine is designed to prevent

7   unjust enrichment by distributing the costs of litigation among those who benefit from the efforts

8   of the litigants and their counsel and encourages counsel to protect the rights of those who may

9   have very small claims.  *Id.*

10      In awarding reasonable attorneys' fees from a common fund, two different approaches

11   have generally been employed: the percentage method and the "lodestar" method.  Because D.C.

12   law governed the claims, it also governs which of these two approaches should apply.  *See*

13   *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002).

14      Under D.C. law, courts use the percentage-of-recovery approach to calculate fees in

15   common fund cases such as this instead of the "lodestar" method.  *Swedish Hosp. Corp. v.*

16   *Shalala,* 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("In sum, we join the Third Circuit Task Force and

17   the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the

18   appropriate mechanism for determining the attorney fees award in common fund cases."); *Fresh*

19   *Kist Produce, L.L.C., v. Choi Corp., Inc.,* 362 F. Supp. 2d 118, 127 (D.C. Cir. 2005).[5]  This is so

20   because, unlike the lodestar method, which voraciously consumes enormous judicial resources,

21   unnecessarily complicates already complex litigation, and inaccurately reflects the value of

---

[4]      This is a "common fund" case.  The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).  It is well established that the "common fund doctrine" allows an attorney whose efforts created, increased or preserved a fund to recover from the fund the costs of his litigation, including attorneys' fees.  *Vincent v. Hughes Air W., Inc.,* 557 F.2d 759, 769 (9th Cir. 1977); *see also Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261 (D.C. Cir. 1993); *Cathedral Ave. Co-op., Inc. v. Carter,* 947 A.2d 1143, 1159-60 (D.C. 2008).

[5]      Use of the percentage method in common-fund cases also appears to be dominant in the Ninth Circuit and has been adopted by the U.S. District for the Northern District of California.  *In re Omnivision Techs., Inc.,*559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)  ("The advantages of using the percentage method have been described thoroughly by other courts. . . .The Court finds those advantages persuasive, and adopts the percentage method in this matter.").

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5                                4                    RENEWED APPLICATION FOR DETERMINATION
OF COSTS, FEES, AND EXPENSES
CASE NO.  C 07-0943 WHA

services performed, the percentage-of-the-fund calculation places a lighter burden on the court and the parties because there is no dispute over billing practices. *Swedish Hosp. Corp.*, 1 F.3d at 1269-70 ("The lodestar method makes considerable demands upon judicial resources since it can be exceptionally difficult for a court to review attorney billing information over the life of a complex litigation and make a determination about whether the time devoted to the litigation was necessary or reasonable."). Underscoring this point is the fact that *Swedish Hospital* cites with approval the Third Circuit Task Force's criticisms of the lodestar method, which the Court called a "cumbersome, enervating and often surrealistic process of preparing and evaluating fee petitions that now plagues the Bench and Bar." *Id.* at 1266.[6]

The ultimate goal under either method of determining fees is to reasonably compensate counsel for their efforts in creating the common fund. *See* Fed. R. Civ. P. 23(h) ("In a certified class action, the Court may award reasonable attorney's fees and nontaxable costs that are authorized by law. . . ."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). It is not sufficient to arbitrarily apply a percentage; rather, the district court must show why that percentage and the ultimate award are appropriate based on the facts of the case. *Id.*

Courts look to several factors in assessing the reasonableness of a fee request, including: (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *In re Lorazepam & Clorazepate Antitrust Litig.*,

---

[6]   "The task force enumerated nine deficiencies in the lodestar process: (1) it increases the workload of an already overtaxed judicial system; (2) the elements of the process 'are insufficiently objective and produce results that are far from homogeneous'; (3) the process 'creates a sense of mathematical precision that is unwarranted in terms of the realities of the practice of law'; (4) the process 'is subject to manipulation by judges who prefer to calibrate fees in terms of percentages of the settlement fund or the amounts recovered by the plaintiffs or of an overall dollar amount'; (5) the process, although designed to curb abuses, has led to other abuses, such as encouraging lawyers  to expend excessive hours engaging in duplicative and unjustified work, inflating their 'normal' billing rates, and including fictitious hours'; (6) it 'creates a disincentive for the early settlement of cases'; (7) it 'does not provide the district court with enough flexibility to reward or deter lawyers so that desirable objectives, such as early settlement, will be fostered'; (8) the process 'works to the particular disadvantage of the public interest bar' because, for example, the 'lodestar' is set lower in civil rights cases than in securities and antitrust cases; and (9) despite the apparent simplicity of the lodestar approach, 'considerable confusion and lack of predictability remain in its administration.' " *Swedish Hosp. Corp.*, 1 F.3d at 1266-67,

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5                                    5                    RENEWED APPLICATION FOR DETERMINATION
OF COSTS, FEES, AND EXPENSES
CASE NO.  C 07-0943 WHA

2003 WL 22037741, at *8 (D.D.C. 2002) (hereinafter "*Lorazepam*").  Finally, where appropriate, the court may factor in consideration of a particular case's public interest.  *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 8 (D.D.C. 2008) (The settlement serves the public interest by sounding a cautionary note to the insurance industry: policyholders must be treated fairly.).

### 1.    The size of the fund created and the GLA Class

The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award.  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046.  Despite Defendants' arduous efforts and numerous lawyers, Plaintiffs' Counsel was able to achieve a momentous jury verdict of $28.1 million.  Plaintiffs' Counsel also was able to preserve this verdict against repeated attacks by Defendants, including a Rule 50 motion for judgment as a matter of law.  Most recently, Plaintiffs' Counsel successfully negotiated a resolution of this case on terms that are in the best interests of the GLA Class.

### 2.    The Absence of Substantial Objections by Class Members to the Fee Requested

On behalf of the putative class, Herbert Adderley, as class representative, signed a fee agreement, acknowledging that his lawyers would seek a portion of any recovery for expenses and fees.  LeClair Decl. ¶ 3 and Exh. A; Katz Decl. ¶ 2 and Exh. A.  Additionally, in the Notice of Class Action Settlement, Plaintiffs' Counsel informed each of the Class Members of Plaintiffs' Counsel's intent to seek litigation expenses and a fee award of 30% of the Settlement Fund.  *See* Notice of Class Action Settlement at 4-5 (Docket No. 635) ("Class Counsel will apply to the Court for an award from the Settlement Fund, of litigation and settlement expenses incurred on behalf of the Class and attorneys' fees of up to 30% of the Settlement Fund.").  Plaintiffs' Counsel also informed each of the Class Members that they had the right to object to Plaintiffs' Counsel's fee request should they disagree.  *Id.* at 5 ("Any Class Member is entitled to appear and be heard at the Settlement Hearing, either in person or through his or her attorney, and to show cause why the settlement should not be approved as fair, reasonable and adequate, <u>including any objections to the Application for Attorneys' Fees and Expenses</u> . . . .) (emphasis added).

To date, Plaintiffs' Counsel is unaware of any objections filed with the Court by any Class

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5

6

RENEWED APPLICATION FOR DETERMINATION OF COSTS, FEES, AND EXPENSES
CASE NO.  C 07-0943 WHA

1   Member, and Plaintiffs' Counsel also is unaware of any Class Member who objects to the

2   amounts requested by Plaintiffs' Counsel.  Katz Decl. ¶ 37.  On the contrary, many of the retired

3   players who have contacted Plaintiffs' Counsel about the settlement have indicated the exact

4   opposite – *i.e.*, that Plaintiffs' Counsel should receive compensation for the work they have done

5   on behalf of the Class.  *Id.*

6   ### 3.        The Quality of Plaintiffs' Counsel

7           "The quality of plaintiffs' counsels' representation of the class is a key factor in a court's

8   consideration of counsels' fee request."  *In re Warner Communic'ns Sec. Litig.*, 618 F. Supp. 735,

9   748 (S.D.N.Y. 1985).  As the Court is aware, the verdict, judgment and settlement in this case

10  were achieved after over two years of vigorous and hard-fought litigation, and subsequent

11  protracted settlement negotiations, against well-funded, able and tenacious Defense counsel from

12  multiple law firms.  Plaintiffs' Counsel respectfully submit that the quality of their representation

13  is reflected by the excellent results.

14          The tremendous lengths to which Plaintiffs' Counsel went in this case are set forth in great

15  detail in the declarations concurrently filed herewith.  Among other things, Plaintiffs' Counsel

16  successfully defeated several motions to dismiss, motions to deny certification, motions for

17  sanctions, motions for judgment on the pleadings, a motion for summary judgment, an opposition

18  to a motion seeking leave to file amended pleadings, and motions for judgment as a matter of law.

19  Katz Decl. ¶¶ 31-35.  They waded through thousands of complex and often arcane accounting

20  materials and identified critical documents that substantiated Plaintiffs' claims.  *Id.* ¶ 32.  They

21  pushed aggressively for additional documents and depositions in the face of repeated resistance

22  from Defendants' counsel and third parties aligned with Defendants.  *Id.* ¶¶ 30-34.  At trial, they

23  faced and overcame innumerable obstacles.  *Id.* ¶ 35.  The substantial jury verdict and successful

24  settlement evidences Plaintiffs' Counsel's abilities in the face of steep opposition.

25          Plaintiffs' Counsel were litigating against some of the most prominent and highly-

26  respected law firms in the country.  Attorneys from these firms regularly contested virtually every

27  aspect of the litigation and devoted numerous attorneys to the defense of their clients.  Plainly,

28  "[t]he caliber of opposing counsel was clearly of the highest order and required that counsel for

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20210136.5                                    7                    RENEWED APPLICATION FOR DETERMINATION
OF COSTS, FEES, AND EXPENSES
CASE NO.  C 07-0943 WHA

1   plaintiffs and the Class be capable of providing comparable services." *Lorazepam*, 2003 WL

2   22037741, at *8.  In short, the quality of representation by Plaintiffs' Counsel weighs strongly in

3   favor of Counsel's fee request.

### 4.   The Novelty and Difficulty of the Questions of Law And Fact and the Skill Required To Perform The Legal Services Properly

6        This lawsuit was fraught with novel and complex issues related to liability, damages and

7   class certification.  Katz Decl. ¶ 31.  Factual and legal issues were highly contested.  *Id*.  The fact

8   that Plaintiffs' Counsel were able to prevail on most of these issues demonstrates significant skill

9   in providing valuable services to the Class who will benefit from the settlement .

### 5.   The Risks of Nonpayment.

11        Despite the most vigorous and competent of efforts, an attorney's success in contingent

12   litigation is never assured.  The risk of nonpayment is a factor to be considered in the amount of

13   the award.  Here, Plaintiffs' Counsel undertook grave risk of nonpayment of millions of dollars.

14   Katz Decl. ¶ 30.  As noted, "[C]ounsel have, without receiving compensation, engaged in

15   extensive motions practice and conducted considerable discovery." *Lorazepam*, 2003 WL

16   22037741, at *8 (citations omitted).  "The risk of nonpayment through either an award of

17   summary judgment to Defendants or loss at trial was significant and real in this case." *Id.*  As the

18   Court is also well aware, the "Defendants mounted an aggressive and vigorous defense

19   throughout the course of this litigation." *Id.* (citations omitted).  Plaintiffs therefore "faced

20   substantial factual and legal hurdles in establishing their core allegations." *Id.* (citations omitted).

21   "Accordingly, because this class action was vigorously litigated for a protracted period of time,

22   raised novel and complex issues, involved a substantial risk of absolute non-payment, and

23   demonstrated the quality of Class Counsel's reputation, an award of 30% of the common fund in

24   attorneys' fees is appropriate." *Id.* at *9.

### 6.   The Time and Labor Involved

26        Throughout the litigation, Plaintiffs' Counsel exerted substantial time and effort to obtain

27   an excellent result for the Class.  This substantial time commitment resulted, in large part, from

28   the aggressive nature of Defendants' counsel who resisted Plaintiffs' Counsel at all times.  It also

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5                                      8                    RENEWED APPLICATION FOR DETERMINATION
                                                                     OF COSTS, FEES, AND EXPENSES
                                                                     CASE NO.  C 07-0943 WHA

1  resulted from the complexity of the case and the large volume of tasks involved, including those

2  described generally below and in more detail in the accompanying declarations.  Katz Decl. ¶¶

3  31-35; LeClair Decl. ¶¶ 26-30.

4              a.        Investigating and Filing of the Complaints

5         Plaintiffs' Counsel devoted significant time and effort to the preparation of the four

6  Complaints filed in this lawsuit, along with Motions for Leave and other responses to the resistant

7  efforts of Defendants.  Katz Decl. ¶ 31.  All of Defendants' materials had to be obtained and

8  carefully reviewed.  *Id.* ¶¶ 31-32; LeClair Decl. ¶¶ 26-27.  Plaintiffs' Counsel also consulted

9  extensively with experts to analyze the complex transactions that were a principal focus of the

10 claims asserted.  Numerous (putative) class members were interviewed.  Katz Decl. ¶ 31; LeClair

11 Decl. ¶ 26.  Legal research under California law, Virginia law and the District of Columbia law

12 had to be performed.  Katz Decl. ¶ 31; LeClair Decl. ¶ 26.  Multiple drafts of each of the

13 Complaints were prepared and revised before the final products were served and filed.  Katz

14 Decl. ¶ 31; LeClair Decl. ¶ 26.

15             b.        Motion Practice

16        The motion practice that took place during the case was extensive and extraordinarily

17 labor-intensive.  Plaintiffs' Counsel researched and prepared memoranda of law in connection

18 with: Opposition to Motion for Sanctions;  Opposition to Motion for Judgment on the Pleadings;

19 Opposition to Motion to Change Venue, Opposition to Motion to Dismiss Second Amended

20 Complaint, letter filings re: production of Defendants' financial statements, Motion for Leave to

21 File a Third Amended Complaint, Motion to Certify Class, Opposition to Motion to Strike the

22 Declaration of Marvin Miller, Letter filings re: document requests and discovery responses,

23 Opposition to Motion for Leave to File a Supplemental Memorandum on Plaintiffs' Class

24 Certification Motion, letter filings re: documents related to Gene Upshaw, Opposition to Motion

25 for Summary Judgment, Motion to Strike the Declarations of Linda Castillon, Adam Sullins,

26 Jason Brenner, Christine Finch, and Steve Byrd Filed in Support of Defendants' Motion for

27 Summary Judgment, letter filings re: scrambling of player images by EA, as related to

28 Defendants' summary judgment motion, Opposition to Motion to Decertify class, letter filings re:

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5

9

RENEWED APPLICATION FOR DETERMINATION
OF COSTS, FEES, AND EXPENSES
CASE NO.  C 07-0943 WHA

1  summary judgment arguments, motions in limine and oppositions thereto and various trial briefs

2  and oppositions thereto.  Katz Decl. ¶ 31; LeClair Decl. ¶ 26.

3      The legal research associated with these motions was complex and often involved varying

4  rules of law under different jurisdictions.  Katz Decl. ¶ 31; LeClair Decl. ¶ 26.

5      In addition to preparing scores of legal briefs and memoranda of law, Plaintiffs' Counsel

6  drafted proposed scheduling orders; prepared and responded to several sets of extensive

7  interrogatories and requests for admissions; and sent and received numerous letters to and from

8  opposing counsel regarding deposition scheduling, document discovery, and settlement.  Katz

9  Decl. ¶ 31; LeClair Decl. ¶ 26.

10     Following trial, Plaintiffs' Counsel also had to address and, ultimately, successfully

11  overcome a Rule 50 Motion filed by Defendants.  Katz Decl. ¶ 35; LeClair Decl. ¶ 30.

12                    c.      Document Discovery

13     Document review, organization and analysis in this litigation was enormous, both in terms

14  of the number of parties and non-parties producing documents and the volume of documents

15  produced.  Katz Decl. ¶ 32; LeClair Decl. ¶ 27.  Plaintiffs' Counsel prepared several successive

16  sets of document requests; prepared non-party subpoenas; negotiated with Defendants' counsel

17  regarding document productions; conducted follow-up review of the adequacy of production;

18  attended meet-and-confer sessions with Defendants' counsel on further production; thoroughly

19  reviewed and analyzed the thousands of documents produced by Defendants and non-parties; and

20  prepared indeces and analyses of the documents in preparation for depositions, motions, and trial.

21  Katz Decl. ¶¶ 31-32; LeClair Decl. ¶¶ 26-27.

22     Plaintiffs' Counsel also worked extensively with experts in analyzing the many financial

23  documents produced during the litigation.  Katz Decl. ¶ 31; LeClair Decl. ¶ 26.  Plaintiffs'

24  Counsel also obtained, reviewed and prepared documents for production by each of the Plaintiffs'

25  witnesses in the lawsuit.  Katz Decl. ¶ 31; LeClair Decl. ¶ 26.   All told, Plaintiffs' Counsel

26  devoted thousands of hours of attorney and paralegal time and effort pursuing, reviewing and

27  utilizing the party and non-party documents produced in the lawsuit.  Katz Decl. ¶ 32; LeClair

28  Decl. ¶ 27.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20210136.5

10

RENEWED APPLICATION FOR DETERMINATION
OF COSTS, FEES, AND EXPENSES
CASE NO.  C 07-0943 WHA

d.     Depositions

The deposition phase of the lawsuit was similarly time-consuming, hard-fought and intensive.  Katz Decl. ¶ 33; LeClair Decl. ¶ 28.  Plaintiffs' Counsel conducted numerous depositions in the lawsuit, including those of the named Defendants, and their former employees and representatives.  Katz Decl. ¶ 33; LeClair Decl. ¶ 28.

The preparation required for these depositions was substantial.  Katz Decl. ¶ 33; LeClair Decl. ¶ 28.  Databases were reviewed by paralegals to identify and pull the specific documents associated with each particular witness.  Katz Decl. ¶ 33; LeClair Decl. ¶ 28.   Attorneys would then review those documents for relevance and usefulness.  Katz Decl. ¶ 33; LeClair Decl. ¶ 28.  Oftentimes, attorneys would consult with Plaintiffs' experts.  Katz Decl. ¶ 33; LeClair Decl. ¶ 28.  Plaintiffs tried to be efficient and combine travel whenever possible; but even so, it was necessary to conduct depositions in various locations throughout the country.  Katz Decl. ¶ 33; LeClair Decl. ¶ 28.  For example, depositions were held in California, Philadelphia, Maryland, New York, Texas, and Washington D.C.  Katz Decl. ¶ 33; LeClair Decl. ¶ 28.   Plaintiffs' Counsel also defended depositions of the class witnesses and experts.  Significant time and effort was devoted to reviewing the documents of these witnesses and preparing them for depositions.  Katz Decl. ¶ 33; LeClair Decl. ¶ 28.

e.     Experts

Many hours were also devoted by Plaintiffs' Counsel to identifying and consulting with the experts that were retained during the litigation.  Katz Decl. ¶ 33; LeClair Decl. ¶ 28.   In particular, Plaintiffs' Counsel worked extensively with their experts (i) reviewing and organizing the thousands of pages produced by Defendants and their representatives; (ii) identifying additional materials to request; (iii) preparing for financially-related depositions; (iv) analyzing the relevant literature; (v) reviewing the expert reports submitted on behalf of Defendants; and (vi) devising strategies to respond to Defendants' expert reports.  Katz Decl. ¶ 33; LeClair Decl. ¶ 28; *see also* Katz Decl. ¶ 50; LeClair Decl. ¶ 43.

f.     Pre-Trial Settlement Negotiations and Agreement

Plaintiffs' Counsel also prepared a settlement letter and attended a settlement conference

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5                                11                    RENEWED APPLICATION FOR DETERMINATION
                                                               OF COSTS, FEES, AND EXPENSES
                                                               CASE NO.  C 07-0943 WHA

1    in front of Magistrate James Larson.  Although Plaintiffs were willing to enter into good faith

2    negotiations for settlement and traveled to the conference, Defendants did not engage in

3    settlement negotiations at that time.  Katz Decl. ¶ 34; LeClair Decl. ¶ 29.

4                              g.      Trial

5             Defendants refused all settlement negotiations prior to trial, leaving Plaintiffs no choice

6    but to proceed to trial.  Katz Decl. ¶ 34; LeClair Decl. ¶ 29.  During this intense trial in which

7    multiple witnesses were examined and numerous documentary evidence was admitted, Plaintiffs

8    faced additional resistance by Defendants through motions to decertify, motions for JMOL, and

9    exhaustive jury instruction briefing and argument.  Katz Decl. ¶ 35; LeClair Decl. ¶ 30.

10            Thus, it is evident that Plaintiffs' Counsel expended significant time and labor in building

11   Plaintiffs' case for trial.  At times, those efforts required various members of Plaintiffs' team to

12   devote nearly all of their time to this litigation for extended durations.  Katz Decl. ¶ 32; LeClair

13   Decl. ¶ 27.  Those concerted efforts were undertaken despite the significant possibility that

14   Plaintiffs would not prevail in this litigation, and that Plaintiffs' Counsel would therefore lose the

15   millions of dollars invested in this case.  The time and labor expended by counsel in producing

16   the Judgment and subsequent settlement therefore support the fee requested by Plaintiffs'

17   Counsel.

18                              h.      Post-Trial Motions

19            Following Plaintiffs' successful result at trial, Defendants filed a series of motions and

20   other documents to which Plaintiffs' Counsel had to respond, including objections to Plaintiffs'

21   Counsel's bill of costs.  The most significant of Defendants' filings was a 30-page motion for

22   judgment on the pleadings ("JMOL") in which Defendants asked the Court to overturn the jury's

23   verdict and vacate the $28.1 million in damages Plaintiffs' Counsel had obtained on behalf of the

24   GLA Class.  Plaintiffs' Counsel strenuously opposed this motion in writing and in oral arguments

25   before the Court.  On January 13, 2009, the Court issued an Order denying all post-trial motions,

26   thereby preserving the jury's verdict.

27                              i.      Defendants' Appeal

28            Despite having all post-trial motions denied in their entirety, Defendants continued their

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20210136.5                                    12                    RENEWED APPLICATION FOR DETERMINATION
                                                                   OF COSTS, FEES, AND EXPENSES
                                                                   CASE NO.  C 07-0943 WHA

1    efforts to vacate the $28.1 million in damages Plaintiffs' Counsel had obtained on behalf of the

2    GLA Class by filing a notice of appeal with the Ninth Circuit.  Plaintiffs' Counsel expended time

3    and effort monitoring Defendants' appeal and responding to various notices from the clerk of the

4    Ninth Circuit.

5                          j.    Negotiating a Settlement Agreement

6          Plaintiffs' Counsel engaged in protracted settlement negotiations with Defendants'

7    counsel at Latham & Watkins in an effort to resolve this dispute in a manner that was favorable to

8    the GLA Class.  On June 5, 2009, the parties announced to the press that they had agreed to settle

9    this case for $26.25 million, a mere $1.85 million less than the jury verdict Plaintiffs' Counsel

10   had obtained months before.  Plaintiffs' Counsel also has had to draft a number of documents

11   attendant to the settlement and its approval by the Court.

12                          **7.    Similar Awards**

13         The normal range of fee recovery is twenty to thirty percent of the common fund.  *In re*

14   *Baan Co. Securities Litigation*, 288 F. Supp. 2d 14, 17 ( D.D.C. 2003).  Thirty percent of the

15   recovery is normal and often, as here, fully warranted. *In re Baan Co. Securities Litigation*, 288

16   F. Supp. 2d 14, 17 ( D.D.C. 2003); *Lorazepam,* 2003 WL 22037741, *7 (*citing In re Aetna Inc.,*

17   2001 WL 20928 (E.D. Pa. Jan. 4, 2001)) (finding thirty percent to constitute a reasonable award);

18   *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (noting that several courts

19   have awarded more than forty percent of a settlement fund).  Similarly, the Ninth Circuit uses a

20   "benchmark" of 25%; however, it is recognized that in most common fund cases, the award

21   exceeds that benchmark, equaling 30%.  *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036,

22   1047.[7]

23         The massive amount of high-quality work in this case against formidable adversaries with

24   an excellent result fully justifies the 30% figure.

25

26   _____

     [7]      Almost none of the cases cited in the text involved, as here, a three week trial; indeed, most resulted in

27   settlement.  *See, e.g., Lorazepam*, 2003 WL 22037741, at *3-8 (in a potential class of over 55,000 members,
     defendants settled for $35,000,000, and the court granted the attorneys a 30% common fund award).  The massive

28   amount of high-quality work in this case against skilled adversaries with an excellent result fully justifies the 30%
     figure.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5                                   13                    RENEWED APPLICATION FOR DETERMINATION
                                                                   OF COSTS, FEES, AND EXPENSES
                                                                   CASE NO.  C 07-0943 WHA

### 8.   Public Interest

The public interest is not always a separate factor in the fee-award determination, but is worth serious consideration.  *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 8 (D.D.C. 2008).  As this Court noted, there was a lot of media interest in this matter; the reason being that Defendants are powerful unions which affect numerous individuals.  This precedent-shattering and precedent-setting case created reverberations throughout the sports industry, causing many to reconsider the relationship between athletes and their unions.  The jury verdict in this case was widely lauded as a message to the Union: a union *must* take care of its members, active or retired.

In short, this case was especially complex, risky and time consuming, which is why it required a three week trial.  Moreover, it was of noteworthy public value.  Given these factors and the significant time and effort expended in the case, the necessity of trial, the excellent result achieved, and the very real risk of substantial loss, Plaintiffs' Counsel respectfully submit that their request for 30% of the settlement amount minus expenses is fair and reasonable.

### B.   The Requested Fee Is Also Fair And Reasonable Under The Lodestar Method

The reasonableness of the requested amount is confirmed when cross-checked with the lodestar approach.  *In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 385 (D.D.C. 2002); *see also In re Omnivision Techs.,* 559 F. Supp. 2d at 1048.  To support the reasonableness of the fees requested, Plaintiffs' Counsel have submitted declarations detailing the total hours they have devoted to this case and their lodestars, calculated at current billing rates.  Katz Decl. ¶¶ 9, 10 and Exh. C; LeClair Decl. ¶ 7 and Exh. C.  The reasonable hourly rate is that prevailing in the community for similar work.  *Bebchick v. Wash. Metro. Area Transit Comm'n,* 805 F.2d 39, 404 (D.C. Cir. 1986).  "Of course, the actual rate that applicant's counsel can command on the market is itself highly relevant proof of the prevailing community rate."  *Id.* (*quoting Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1326 (D.C. Cir. 1982)).

Under the lodestar method, the court multiplies a reasonable number of hours by a reasonable hourly rate.[8]  *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006 (9th

---

[8]   Courts  consider the following factors in calculating the lodestar figure, as are relevant under the circumstances:  (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5                    14                    RENEWED APPLICATION FOR DETERMINATION
OF COSTS, FEES, AND EXPENSES
CASE NO.  C 07-0943 WHA

Cir. 2002).  The combined lodestar in this case is $7,784,868.13, which reflects $1,366,673.87 in reductions because of billing judgement.  Katz Decl. ¶¶ 5, 10 and 45; LeClair Decl. ¶¶ 6, 7.  There is a "strong presumption" that the lodestar figure represents a reasonable award.  Here, Petitioners' counsel is actually requesting a fee award *less* than the lodestar – $7,369,648.90.  Such an award is fair and reasonable.

## III.   PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR THEIR COSTS AND EXPENSES.

On November 26, 2008, Plaintiffs' Counsel submitted a cost bill.  Katz Decl. ¶ 46; LeClair Decl. ¶ 40.  That cost bill has yet to be ruled upon.  *See, e.g.,* Civ.L.R. 54-4(b) ("No sooner than 10 days after a bill of costs has been filed, the Clerk shall tax costs after considering any objections filed pursuant to Civil L.R. 54-2.").  Plaintiffs' Counsel respectfully request that the Court rule on their bill of costs and award them the costs requested.

Plaintiffs' Counsel further request that, in addition to awarding them reasonable attorneys' fees, the Court grant their application for reimbursement of $1,684,503.67 in expenses incurred by them in connection with the prosecution of this lawsuit.  Katz Decl. ¶ 48; LeClair Decl. ¶ 44.  Each of Plaintiffs' law firm's expenses are summarized in the accompanying declarations.  Katz Decl. ¶ 48; LeClair Decl. ¶ 44.  Each of Plaintiffs' Counsel also has submitted back-up materials for these expenses.  Katz Decl. ¶ 47 and Exh. D; LeClair Decl. ¶ 42 and Exh. D.

Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.  *In re Omnivision Techs.,* 559 F. Supp. 2d 1036, 1048-49, *citing, Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994); *Lorazepam,* 2003 WL 22037741, at *10.  "The fact that petitioners were willing to expend their own money, as an investment whose reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary."  *Lorazepam,* 2003 WL 22037741,

acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). These factors are similar to the factors considered in the percentage-of-the-fund method and many are subsumed therein.

*10.

The expenses sought were reasonable and necessary.  The expenses relate to photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel for various attorneys and their staff throughout the case.  Katz Decl. ¶¶ 48-50 and Exh. D; LeClair Decl. ¶ 42-43.  Attorneys routinely bill clients for all of these expenses, and it is therefore appropriate for counsel here to recover these expenses from the common fund.  *In re Omnivision Techs.,* 559 F. Supp. 2d at 1048-49. The Adderley fee agreement states that the plaintiffs would seek reimbursement for these expenses.  Katz Decl. ¶ 2 and Exh. A; LeClair Decl. ¶ 3 and Exh. A.

## IV.    PLAINTIFFS' COUNSEL REQUEST A $60,000 INCENTIVE AWARD FOR HERBERT ADDERLEY.

Plaintiffs' Counsel also seek an incentive award for class representative Herbert Adderley in the amount of $60,000.  The purpose of this award is to compensate Mr. Adderley for the significant role he played in helping Plaintiffs achieve the favorable jury verdict reached in this case.

Incentive awards to named plaintiffs are common in class action litigation, particularly where a common fund has been created for the benefit of the entire class.  *In re Lorazepam & Clorazepate Antitrust Litigation,* 2003 WL 22037741, at *10.  Indeed, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *Id.* (internal quotation marks omitted). Whether to reward Mr. Adderley for his efforts is within this Court's discretion.  *Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 299-300 (N.D. Cal. 1995), *citing, In re Domestic Air Transp.,* 148 F.R.D. at 357-58 (awarding $142,500 to class representatives out of $50 million fund); *In re Dun & Bradstreet,* 130 F.R.D. at 373-74 (awarding $215,000 to several class representatives out of an $18 million fund).

The criteria courts may consider in determining whether to make an incentive award include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5

16

RENEWED APPLICATION FOR DETERMINATION OF COSTS, FEES, AND EXPENSES
CASE NO.  C 07-0943 WHA

1   of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the

2   personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

3   *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299.  "In deciding whether to grant

4   incentive awards and the amounts of such awards, courts consider factors such as 'the actions the

5   plaintiff has taken to protect the interests of the class, the degree to which the class has benefited

6   from those actions, and the amount of time and effort the plaintiff expended in pursing the

7   litigation.'"  *In re Lorazepam & Clorazepate Antitrust Litigation*, 2003 WL 22037741, at *10.

8   (*quoting Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

9        Plaintiffs' Counsel respectfully request that class representative Herbert Adderley receive

10  an incentive award in the amount of $60,000.  Mr. Adderley is a well-known Hall of Fame player

11  who placed his reputation on the line in standing up for a cause in which he believed.  *See*

12  Declaration of Herbert Anthony Adderley In Support Of Plaintiffs' Counsels' Application

13  ("Adderley Decl.") ¶ 2, Docket No. 587.  Mr. Adderley did so knowing that there would be those

14  who would criticize him for his efforts.  Adderley Decl. ¶ 11.  Mr. Adderley also did so despite a

15  very real threat of retaliation by the NFLPA and its former Executive Director, Gene Upshaw.

16  Adderley Decl. ¶ 12.

17       Notwithstanding these risks, Mr. Adderley devoted a significant amount of time and effort

18  to this case – more than 550 hours – throughout its 20-month duration.  *See* Adderley Decl. ¶¶ 2-

19  10; *see also Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349 (D.C. 2007)

20  (approving incentive award of $25,000 to named plaintiffs who spent in excess of only 50 hours

21  assisting in prosecution of case).  More specifically, Mr. Adderley assisted Plaintiffs' Counsel

22  with each of the three complaints in this matter; searched for and collected documents in response

23  to Defendants' document requests; assisted Plaintiffs' Counsel in responding to other discovery

24  requests, including Defendants' Interrogatories; reviewed numerous correspondence and (once he

25  was allowed to do so in May 2008) tens of thousands of pages of Defendants' confidential

26  documents; prepared for and attended his deposition; prepared for and served as a witness at trial;

27  and attended every day of a 3-week trial that took place thousands of miles from his home.  *See*

28  Adderley Decl. ¶¶ 2-10.  Mr. Adderley often performed these tasks despite physical discomfort

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20210136.5                            17                  RENEWED APPLICATION FOR DETERMINATION
                                                          OF COSTS, FEES, AND EXPENSES
                                                          CASE NO.  C 07-0943 WHA

1  from a back operation.  *Id.* ¶ 10; *see also Equal Rights Center v. Washington Metro. Transit*

2  *Authority*, 573 F. Supp. 2d 205 (D.C. 2008) (approving incentive award of $81,000 to named

3  plaintiffs and deposed class members, many of whom had various disabilities that made travel to

4  and from depositions and other court proceedings difficult).

5        Mr. Adderley's active participation in this lawsuit was a key factor in Plaintiffs' Counsels'

6  ability to obtain a favorable jury verdict on behalf of the class.  An incentive award to Mr.

7  Adderley in the amount of $60,000 – which represents only .21% of the total judgment – is more

8  than "reasonable in light of [his] investment[] of time . . . and effort on the part of the class."  *See*

9  *Lorazepam*, 2003 WL 22037741 at * 11.  It is also less than other incentive awards granted by the

10  courts in other cases.  *See id.* (approving incentive award of $80,000 to be shared by 4 class

11  representatives, which was .22% of the total fund); *Equal Rights Center* 573 F. Supp. 2d at 214 n.

12  10 (approving incentive award of $81,000 to be shared by 13 named plaintiffs and 16 deposed

13  class members, which was .58% of the total fund); *In re Dun & Bradstreet*, 130 F.R.D. 366, 373-

14  74 (S.D. Ohio 1990) (awarding a total of $215,000 to five class representatives, which was 1.2%

15  of an $18 million fund); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357-58

16  (N.D. Ga. 1993) (awarding a total of $142,500 to 42 individuals, which was .285% of $50 million

17  fund).  All of these cases settled such that the class representatives did not need to spend several

18  weeks at trial like Mr. Adderley.  Moreover, each of these cases had numerous class

19  representatives such that no one class representative had to bear the entire burden like Mr.

20  Adderley, who was the sole class representative in this matter.

21  **V.  CONCLUSION**

22        As explained above, this was a precedent-shattering and precedent-setting case that

23  created reverberations throughout the sports industry.   Plaintiffs' Counsel did whatever they

24  could to win for the players, risking millions of dollars against insurmountable odds and a fiercely

25  determined opposing counsel in the process.  Based upon the foregoing, Plaintiffs' Counsel

26  respectfully request they be awarded their attorneys' fees and expenses.  Plaintiffs' Counsel

27

28

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5

18

RENEWED APPLICATION FOR DETERMINATION
OF COSTS, FEES, AND EXPENSES
CASE NO.  C 07-0943 WHA

1    further respectfully request that Herbert Adderley be given an incentive award for the time and

2    hard work he dedicated to this case.

3    Dated: October 2, 2009                         Respectfully submitted,

4                                                   MANATT, PHELPS & PHILLIPS, LLP

5

6                                                   By: _____Ronald S. Katz_____
                                                        Ronald S. Katz (SBN 085713)
7                                                       Ryan S. Hilbert (SBN 210549)
                                                        Noel S. Cohen (SBN 219645)
8                                                   1001 Page Mill Road, Building 2
                                                    Palo Alto, CA  94304-1006
9                                                   Telephone:  (650) 812-1300
                                                    Facsimile:  (650) 213-0260
10
                                                    MCKOOL SMITH, P.C.
11                                                  Lewis T. LeClair (SBN 077136)
                                                    Jill Adler Naylor (SBN 150783)
12                                                  300 Crescent Court
                                                    Dallas, TX 75201
13                                                  Telephone:  (214) 978-4984
                                                    Facsimile:  (214) 978-4044
14
                                                    *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

20210136.5                          19              RENEWED APPLICATION FOR DETERMINATION
                                                    OF COSTS, FEES, AND EXPENSES
                                                    CASE NO.  C 07-0943 WHA