1  MANATT, PHELPS & PHILLIPS, LLP
   RONALD S. KATZ (Bar No. CA 085713)
2  E-mail: rkatz@manatt.com
   RYAN S. HILBERT (California Bar No. 210549)
3  E-mail: rhilbert@manatt.com
   NOEL S. COHEN (California Bar No. 219645)
4  E-mail: ncohen@manatt.com
   1001 Page Mill Road, Building 2
5  Palo Alto, CA 94304-1006
   Telephone: (650) 812-1300
6  Facsimile: (650) 213-0260

7  McKOOL SMITH, P.C.
   LEWIS T. LECLAIR (Bar No. CA 077136)
8  E-mail: lleclair@mckoolsmith
   300 Crescent Court, Suite 1500
9  Dallas, TX 75201
   Telephone: (214) 978-4000
10 Facsimile: (214) 978-4044

11 Attorneys for Plaintiffs

12

13                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA
14                       SAN FRANCISCO DIVISION

15 HERBERT ANTHONY ADDERLEY,        CIVIL ACTION NO. C07 0943 WHA
16 on behalf of himself and all others   **DECLARATION OF LEWIS T.**
   similarly situated,                **LeCLAIR IN SUPPORT OF**
17                                     **CLASS COUNSELS' RENEWED**
                  Plaintiff            **APPLICATION FOR FEES,**
18                                     **EXPENSES, AND AN**
   vs.                                 **INCENTIVE PAYMENT FOR**
19                                     **CLASS REPRESENTATIVE,**
   NATIONAL FOOTBALL LEAGUE           **HERBERT ADDERLEY**
20 PLAYERS ASSOCIATION, a Virginia
   corporation, and NATIONAL
21 FOOTBALL LEAGUE PLAYERS
   INCORPORATED d/b/a PLAYERS
22 INC, a Virginia corporation,

23                  Defendants.

24

25

26

27

28

McKOOL SMITH
A PROFESSIONAL CORPORATION • ATTORNEYS
DALLAS, TEXAS

Dallas 287369v2

LEWIS T. LeCLAIR declares:

I am an attorney and a member of the bar of the State of California.  I am a shareholder at the law firm of McKool Smith, P.C. in Dallas, and served as lead counsel for my firm and co-counsel for plaintiff Herb Adderley and the certified class in this action.

I filed an original declaration in this matter on November 26, 2008 after the jury verdict was rendered earlier that month. By Order dated January 13, 2009, the Court denied our application for attorneys fees and costs without prejudice to renewal after appeal of the judgment. Once the matter settled and the Court preliminarily approved the settlement on August 18, 2009, the Court, by Order dated September 2, 2009, ordered Class Counsel to file a final Application for Attorneys on or before September 24 (extended at Class Counsel's request to October 2). This declaration updates and replaces my previous declaration filed last year and now provides complete information for all relevant time periods through August 31, 2009.

I have personal knowledge of the matters stated in this declaration, and if called as a witness could testify competently to all such matters.

## McKOOL SMITH'S ROLE IN THIS LITIGATION

1.      I was approached by Ron Katz in December 2006 with respect to joining Mr. Katz and his firm in a potential class action on behalf of retired NFL football players. Mr. Katz had been contacted by Bernie Parrish and Mr. Katz was interested in partnering with another firm that had both class action and contingency fee experience. Our firm reviewed a number of documents that were provided by Mr. Parrish and did considerable research and due diligence on the potential claims. We ultimately decided to partner with Mr. Katz and Manatt in bringing a putative class action on behalf of the retired NFL players.

McKOOL SMITH
A PROFESSIONAL CORPORATION • ATTORNEYS
DALLAS, TEXAS

2.      I have been a shareholder of McKool Smith since 1997, having previously practiced with most of the shareholders of McKool Smith at another large firm in Dallas. During my legal career, I have worked on a significant number of class action matters. Our firm took the lead in the case with respect to many of the matters related to class certification, class notice, and decertification. We worked closely with Manatt on all aspects of the case.

3.      In January and February of 2007, Mr. Katz and I executed engagement letters with Bernie Parrish and Herbert Adderley to pursue the putative class action. A copy of the firm's engagement letter with Mr. Adderley is attached hereto as **Exhibit A.** Pursuant to that engagement letter, Manatt and McKool advanced all of the costs of the litigation and provided their legal services on a contingency basis pending the outcome of the litigation. It was anticipated and agreed with our clients that the two firms would apply for attorneys fees and costs out of any recovery in the class action.

4.      Mr. Katz and I also executed a Co-Counsel Agreement in January of 2007, a copy of which is attached hereto as **Exhibit B**. The terms of that agreement are still in effect, however, there is a pending dispute with Sam Mutch, who was a party to the agreement, but then was suspended from the practice of law during a portion of this case. That dispute is subject to arbitration in accordance with the terms of the Co-Counsel Agreement.

5.      I have been the billing attorney on this case for McKool Smith at all times since it was filed on February 14, 2007. Even though McKool Smith did not send any bills in this case, I have reviewed the detailed billing records prepared by McKool Smith in connection with this matter.  The billing records prepared in connection with this case were generated from McKool's timekeeping systems and are maintained in the ordinary course of business.  As billing attorney, I have reviewed and approved the amounts sought in this application.

**McKool Smith**
**A Professional Corporation • Attorneys**
**Dallas, Texas**

**DECLARATION OF LEWIS T. LeCLAIR – Page 3**
**Civil Action No. C07 0943 WHA**

Calculation of the Lodestar

6.     The lodestar in this case for McKool Smith is $3,253,630.63.   Timekeepers at McKool Smith maintain their time on a contemporaneous basis.   Time is recorded and billed in 1/10 of an hour increments.   I have applied billing judgment to amounts recorded, writing off or writing down time spent on particular tasks.   Although the case has evolved through the filing of four separate complaints and three motions to dismiss, all of that work was appropriate and necessary to develop this difficult case to the point that it could be successfully tried and won. I have therefore not written off time that might be related to one or more of the theories of the case that were not ultimately pursued at trial. However, even if such time were to be determined not to be appropriately considered on a lodestar basis, the time actually and reasonably incurred by McKool on this matter would fully support the fee award sought in this case. Because Manatt and McKool have made the decision to pursue thirty percent (30%) of the amount awarded by the jury minus expenses, as attorneys fees, the lodestar amount is substantially equivalent and any multiplier is entirely reasonable.   In fact, Petitioners' request for 30% of the settlement amount minus expenses is lower than typical contingency agreements in commercial cases of this magnitude which range from 33% to 40%.   This was a very difficult case where we faced tenacious and aggressive defense counsel. We fought hard with defense counsel at every step of the way and had to take many professional risks in order to pursue this matter to conclusion. For that reason, the percentage of recovery sought in this matter is no more than fair compensation for the effort and risk associated with pursuit of this matter. Based upon my knowledge and experience, given the nature and complexity of the case, the skill of the attorneys on both sides of the case, and the result obtained, it is my opinion that the time expended by McKool Smith was necessary and the fees billed and for which recovery is sought are reasonable under the circumstances of this case.

7.      The monthly attorneys' fees incurred by McKool Smith during this matter are as follows:

| | |
|---|---|
| 6-Dec | $22,650.00 |
| 7-Jan | $31,167.00 |
| 7-Feb | $50,603.50 |
| 7-Mar | $64,333.50 |
| 7-Apr | $91,765.00 |
| 7-May | $107,458.50 |
| 7-Jun | $104,090.50 |
| 7-Jul | $61,508.50 |
| 7-Aug | $69,690.50 |
| 7-Sep | $126,181.50 |
| 7-Oct | $51,525.50 |
| 7-Nov | $12,140.50 |
| 7-Dec | $40,550.50 |
| 8-Jan | $134,296.00 |
| 8-Feb | $123,557.00 |
| 8-Mar | $176,054.00 |
| 8-Apr | $143,509.00 |
| 8-May | $185,782.50 |
| 8-Jun | $307,131.00 |
| 8-Jul | $225,937.00 |
| 8-Aug | $329,759.00 |
| 8-Sep | $240,019.00 |
| 8-Oct | $631,092.00 |
| 8-Nov | $293,308.00 |
| 8-Dec | $66,828.00 |
| 9-Jan | $65,565.00 |
| 9-Feb | $40,310.00 |
| 9-Mar | $22,815.00 |
| 9-Apr | $7,764.00 |
| 9-May | $20,650.00 |
| 9-Jun | $71,921.00 |
| 9-Jul | $69,702.50 |
| 9-Aug | $6,090.00 |
| **TOTAL** | **$3,995,755.00** |

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

Dallas 287369v2

6.     The hourly rates for each timekeeper for whom we seek to recover fees are summarized in the following chart:

| Attorney Name | Position/Years of Attorney Experience | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|
| Anthony Garza | | $275 | $275 | $375 | $400 |
| Betty E. Sanders | | | $85 | $85 | $85 |
| Brett M. Charhon | | | $350 | $400 | $425 |
| Chris Martin | | | $185 | $185 | $185 |
| Cynthia Alaniz | | | $85 | $85 | $85 |
| Don Gaiser | | | $110 | $115 | $115 |
| Donald Y. Forbes | | | $120 | $125 | $125 |
| Hector Nava | | | $125 | $125 | $125 |
| J. David Smith | | | $125 | $125 | $125 |
| Jill Adler Naylor | | | $425 | $450 | $450 |
| Karen Sherrill | | | $110 | $180 | $180 |
| Lewis T. LeClair | | $625 | $660 | $700 | $700 |
| Marry Ferrari | | | $150 | $150 | $150 |
| Omar Moreno | | | $105 | $105 | $105 |
| Suzie Bovine | | | $180 | $180 | $180 |

7.     The experience and qualifications of each McKool Smith timekeeper for whom wee seek to recover fees in excess of $2,500 is summarized below in paragraphs 8 - 23.  The work done by McKool Smith and the hours billed by each timekeeper on a monthly basis are summarized in paragraphs 18 - 48 below.

Experience and Qualifications of McKool Smith Timekeepers

8.     I was the lead trial lawyer for McKool Smith in this matter. I graduated from the University of Texas School of Law in 1976 and then clerked for the United States Court of Appeals for the Ninth Circuit. I have been licensed in Texas since 1976 and in California since 1977.  I worked in California for three years prior to returning to Texas. I have been a trial lawyer in Dallas, Texas for 28 years specializing in commercial, class and derivative litigation. I am currently a shareholder in McKool Smith, P.C., a litigation firm devoted to complex commercial and intellectual property litigation. I have been recognized by Best Lawyers in

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

America for commercial litigation, by Chambers, and by Texas SuperLawyers. I have handled class litigation in the courts of California, Texas and New York. I handled various hearings in this matter, put on witnesses at trial, and worked on the jury instructions and objections to the jury instructions. In addition, I worked extensively on Plaintiffs' post-trial filings and settlement efforts.

9.      Jill Adler Naylor is a senior counsel with McKool Smith, P.C.  She has been licensed to practice law in the State of California since 1990, in the State of Texas since 1992, the United States Supreme Court and various federal courts.  Her practice consists of commercial litigation, including class actions and derivative actions, professional liability and malpractice, patent litigation, and arbitrations.  Ms. Naylor is peer-reviewed as an AV rated lawyer by Martindale Hubbell.  She participated in this litigation since its inception and performed research, briefing, document review, deposition preparation, witness interviews, witness preparation, drafting of pleadings, motions, and issues and participated in the trial.  In addition, she worked extensively on Plaintiffs' post-trial filings.

10.     Brett Charhon is a sixth year associate with McKool Smith.  Mr. Charhon received his J.D. degree from Southern Methodist University in 2003 and his undergraduate degree from Tulane University in 1999.  Mr. Charhon devoted substantial time in this case to fact discovery including (i) drafting and responding to interrogatories, requests for production and requests for admission; (ii) document review; (iii) witness interviews; (iv) preparing witnesses for deposition; and (v) organizing Plaintiff's evidence for trial.  In addition, Mr. Charhon performed legal research, prepared motions and was heavily involved in pre-trial preparation.

11.    Anthony Garza is a third-year associate with McKool Smith.  Mr. Garza received his J.D. degree from Columbia Law School in 2005 and his B.S. degree, in Chemical Engineering, from Texas A&M University in 2002.  Prior to joining McKool Smith, Mr. Garza served as a law clerk to the Honorable Barbara M.G. Lynn, in the U.S. District Court for the Northern District of Texas.   Mr. Garza devoted substantial time in this case to various tasks, including (i) reviewing production of Defendants and third-party witnesses; (ii) drafting and responding to motions; (iii) drafting witness examination outlines; and (iv) various tasks for pre-trial preparation and trial.

12.    Suzie Bovine is a senior paralegal at McKool Smith.  She received her B.S. degree from the University of Tennessee in 1981 and a certificate from the National Center for Paralegal Training, also in 1981.  She has worked as a litigation paralegal in law firms for over 27 years.  She has extensive experience in all phases of litigation including preparing cases for filing, handling multi-million page document productions, overseeing teams of attorneys reviewing documents, fact research, locating witnesses, managing cases, creating witness packets for depositions,  preparing for and assisting at hearings, arbitrations, mediations, and trials, setting up off-site trial offices, and most any other paralegal tasks.  She has worked on a variety of types of litigation including asbestos defense, insurance defense, contract cases, medical malpractice, legal malpractice, antitrust, securities,  SEC investigations, construction cases, class actions, and patent infringement.

13.    Karen Sherrill is a senior paralegal with McKool Smith, P.C.  She has been a paralegal since 1986.  During her career she has assisted attorneys with complex commercial litigation, including class actions and derivative actions, products liability, insurance defense, and patent litigation.  Ms. Sherrill participated in this litigation since April 2007 by working

closely with the attorneys on briefing, subpoenas, document review, deposition preparation, witness interview preparation, document production, and preparation for trial.

14.     Betty Sanders is a paralegal with McKool Smith, P.C. She holds a Bachelor of Business Administration and has been employed as a paralegal for over 15 years working primarily in litigation and mass tort.  Her work on this case included assistance with document management, deposition preparation, research, trial preparation and trial support.

15.     Mary Ferrari is a paralegal with McKool Smith, P.C. She holds a Bachelor of Science Degree in Legal Studies and has been employed as a paralegal for over 12 years working primarily in civil litigation.  Her work on this case included assistance with document management, deposition preparation, research, trial preparation and trial support

16.     Cynthia Alaniz is a paralegal with Mckool Smith, having worked as a paralegal since 2000. She works closely with various teams of paralegals and attorneys assisting in document management, research, deposition and trial preparation in commercial litigation, intellectual property and patent infringement. Her work on this case included assistance with document management, deposition preparation, trial preparation and trial support.

17.     Omar Moreno is a member of McKool Smith's IT group and works as a member of the trial team in cases preparing graphics for presentation and handling technology presentation during the trial. His work on this case involved joining the trial team in San Francisco in order to create and edit graphics and to coordinate with the lawyers on the trial team to insure a smooth and seamless presentation at trial.

18.     Chris Martin is a member of McKool Smith's IT group that prepares graphics. Mr. Martin's work on this case involved preparation of the trial graphics for Plaintiff's opening statement.

**McKool Smith**
**A Professional Corporation • Attorneys**
**Dallas, Texas**

**DECLARATION OF LEWIS T. LeCLAIR – Page 9**
**Civil Action No. C07 0943 WHA**

19.     David Smith is a member of McKool Smith's litigation support department.  Mr. Smith's work on this case involved preparation of document databases used in connection with both Plaintiff's and Defendants' document productions.

20.     Donald Forbes a member of McKool Smith's litigation support department.  Mr. Smith's work on this case involved preparation of document databases used in connection with both Plaintiff's and Defendants' document productions.

### CALCULATION OF THE LODESTAR--ATTORNEY FEES

21.     I am familiar with each of the McKool Smith attorneys and paralegals who worked on this matter.  Based upon my knowledge and experience, the billing rates for the paralegals and attorneys who worked on this matter are commensurate with their years of experience and skills, and my firm is paid these rates by clients on a regular basis.

22.     The lodestar amount for attorney and paralegal time billed by McKool Smith during the litigation is $3,253,630.63.   According to the declaration of Ron Katz filed concurrently herewith, the lodestar amount for attorney and paralegal time billed by Manatt during the litigation is $4,531,237.50.  The combined lodestar amount for both Mckool Smith PC and Manatt (collectively "Petitioners") at each firms' hourly rates during the litigation is $7,784,868.13.

23.     Petitioners' requested fee award of 30% of the settlement amount minus expenses, or $ 7,369,648.90, is less than Petitioners' lodestar amount.  Petitioners' request for 30% of the settlement amount minus expenses is lower than typical contingency agreements in commercial cases of the magnitude of this case, which typically range from 33% to 40%.  McKool Smith devotes a large portion of its legal practice to contingency litigation.  Customary fees in such

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

contingency cases are typically a percentage of the amounts recovered, typically between 33% and 40%.

24.     Our engagement letter with class representative, Herbert Adderley, acknowledged that we would seek a portion of any recovery for expenses and fees.  *See* McKool's fee agreement letter attached hereto as Exhibit A.  The class notice that was mailed to each prospective member of the class in June 2008 explained that counsel for Plaintiffs would seek a percentage of funds as attorneys' fees in the event that Plaintiffs prevailed.  In the final version of the class notice that was sent to each of the Class Members by Plaintiffs' Counsel on or before September 8, 2009, Plaintiffs' Counsel indicated that the amount they would be seeking was 30% of the common fund as a fee award and expenses.  The final version of the class notice also indicated that each member of the class has the right to object to the fee application.

25.     Plaintiffs' Counsel expended significant time and resources in connection with this matter.  Had Plaintiffs' Counsel not prevailed in this matter, they risked losing the millions of dollars they incurred in legal fees and the hundreds of thousands of dollars they incurred as costs and expenses.

26.     This action was fraught with novel and complex issues related to liability, damages and class certification and involved factual and legal issues that were complex and highly contested.  Plaintiffs counsel vigorously litigated this dispute in the following ways:

- Preparation of multiple drafts of each of the four complaints in this action along with motions for leave to amend;
- Review of documents produced by Plaintiffs' class representative and party witnesses;
- Preparation of requests for production to Defendants;
- Preparation of requests for production to non-parties and preparation of non-party subpoenas in connection with same;

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

- Review of Defendants' document production;

- Review of non-party document productions;

- Preparation of indexes and analysis of documents in preparation for depositions, motions and trial;

- Extensive consultation with experts including (i) review and organization of thousands of pages of financial documents produced by the Defendants and their representatives; (ii) identification of additional materials to request; (iii) preparation for financial-related depositions; (iv) analysis of relevant literature; and (v) review of the expert reports submitted on behalf of Defendants;

- Numerous interviews of class members;

- Identification of witnesses to be deposed;

- Depositions, including those of the named Defendants, their current and former employees and non-parties;

- Defending depositions of class witnesses and experts;

- Legal research under California Law, Virginia Law and the District of Columbia law;

- Preparation of numerous motions and responses to motions including, but not limited to: (i) Opposition to Motion for Sanctions, filed April 4, 2007 (Dkt. No. 60-62); (ii) Opposition to Motion for Judgment on the Pleadings, filed April 4, 2007 (Dkt. No. 55-56); (iii) Opposition to Motion to Change Venue, filed April 4, 2007 (Dkt. No. 57-59); (iv) Opposition to Motion to Dismiss Second Amended Complaint, filed July 6, 2007 (Dkt. No. 110-11); (v) letter filings re: production of Defendants' financial statements, filed August 10, 2007 (Dkt. Nos. 112, 122); (vi) Letter filings re: Plaintiffs' payments of NFLPA Dues, filed September 4, 2007 (Dkt. Nos. 130-132); (vii) Motion for Leave to File a Third Amended Complaint, filed September 27, 2007 (Dkt. Nos. 139, 141, 147, 169-170); (viii) Motion to Certify Class, filed March 14, 2008 (Dkt. Nos. 217-223, 253-54); (ix) Opposition to Motion to Strike the Declaration of Marvin Miller, filed March 28, 2008 (Dkt. No. 229).  Opposition filing is found at Dkt. No. 246); (x) Letter filings re:

document requests and discovery responses, filed April 7, 2008 (Dkt. No. 258) (xi) Opposition to Motion for Leave to File a Supplemental Memorandum on Plaintiffs' Class Certification Motion, filed April 8, 2008 (Dkt. No. 268); (xii) letter filings re: documents related to Gene Upshaw, filed June 4, 2008 (Dkt. No. 285); (xiii) Opposition to Motion for Summary Judgment, filed June 13, 2008 (Dkt. No. 310-11) (xiv) Motion to Strike the Declarations of Linda Castillon, Adam Sullins, Jason Brenner, Christine Finch, and Steve Byrd Filed in Support of Defendants' Motion for Summary Judgment, filed July 1, 2008 (Dkt. Nos. 308-309, 326-327); (xv) letter filings re: scrambling of player images by EA, as related to Defendants' summary judgment motion, filed July 30, 2008 (Dkt. Nos. 340-342, 347-348); (xvi) Motion to Dismiss Bernard Parrish's individual claim, filed August 12, 2008 (Dkt. Nos. 358, 360); (xvii) Opposition to Motion to Decertify class, filed August 15, 2008 (Dkt. No. 371-372); (xviii) letter filings re: summary judgment arguments, filed August 22, 2008 (Dkt. Nos. 374-375); (ixx) motions in limine and oppositions thereto (Dkt. Nos. 409, 411-414, 417-419, 423, 427-429, 433-434, 437-442, 444, 446-448, 453, 455, 457, 474, 476); (xx) various trial briefs and oppositions thereto (Dkt. Nos. 483-485, 502, 517, 520, 532, 534, 536, 539-540, 545, 548); (xxi) oppositions and replies in connection with various post-trial motions (Dkt. Nos. 596-97, 599, 602).

- Preparation of scheduling orders;
- Preparation of interrogatories, requests for admissions and responses to same; and
- Preparation of countless letters to opposing counsel regarding (i) deposition scheduling, (ii) document discovery, and (iii) settlement.

27.     Plaintiffs' Counsel devoted thousands of hours of attorney and paralegal time and effort pursuing, reviewing and utilizing the party and non-party documents produced in this lawsuit.   Plaintiffs were forced to wade through thousands of complex and often arcane accounting materials in order to identify the critical documents that substantiated Plaintiffs'

claims.  In addition, Plaintiffs were aggressive in pushing for additional documents in the face of repeated resistance from Defendants and third parties aligned with Defendants.  Plaintiffs' preparation for trial required various members of Plaintiffs' team to devote nearly all of their time to this litigation for extended durations.

28.     The deposition phase of the lawsuit was also time-consuming, hard-fought and intensive.  The preparation required for these depositions was substantial.  Databases were reviewed by paralegals to identify and pull the specific documents associated with each particular witness.  Attorneys would then review those documents for relevance and usefulness. Furthermore, while Plaintiffs tried to be efficient and combine travel whenever possible, Plaintiffs were required to travel significant distances to conduct depositions in this matter, and often needed to work in combination because of the specialized knowledge possessed by different members of the team. Given the enormous amount of information and documents that needed to be reviewed and understood, it was necessary to have different attorneys specialize in various aspects of the case. But certain witnesses were integrally involved in multiple areas and counsel needed more than one attorney in order to take a comprehensive deposition.  Depositions were held in California, New York, Maryland, Philadelphia, Texas and Washington D.C.

29.     While preparing for trial, Plaintiffs also made efforts to settle the case including participation in a settlement conference with Magistrate Judge James Larson of the Northern District of California.  Despite Plaintiffs' settlement efforts, Defendants refused all such overtures and Plaintiffs were left with no choice but to proceed to trial.

30.     Trial of this matter, which is extremely rare in class action cases, lasted three weeks during which witnesses were examined and dozens of documents were received into evidence.  Even afer the verdict in Plaintiffs favor, Plaintiffs faced additional resistance by

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

**DECLARATION OF LEWIS T. LeCLAIR – Page 14**
**Civil Action No. C07 0943 WHA**

Defendants through their motions for JMOL and heavily-contested jury instruction briefing and argument. Plaintiffs received additional resistance from Defendants in the form of another JMOL motion and appeal. Plaintiffs also engaged in protracted settlement negotiations this year in an effort to resolve this matter.

31.     Based upon my knowledge and experience, given the nature and complexity of the case, the skill of the attorneys on both sides of the case, and the result obtained, it is my opinion that the time expended by McKool Smith was necessary and the fees billed are reasonable under the circumstances of this case.

### PLAINTIFFS' COUNSEL'S FEES ON A "PER-PROJECT" BASIS

32.     The Court's Order of September 2, 2009 requires that time in this matter be organized by discrete project. As instructed by the Court, attached hereto as **Exhibit C** are a series of tables detailing the time and amounts incurred for each project performed by McKool Smith, and, where indicated, by both of Plaintiffs' Counsel's law firms. McKool Smith timekeepers are required to keep track of their time on a contemporaneous basis and fill out time sheets daily, weekly or monthly with all such time. It is important to note that the tables in Exhibit C are not organized the way that McKool Smith attorneys record their time contemporaneously. Rather they represent our best efforts to create such tables from our contemporaneous time records. I have supervised these efforts to the best of my ability consistent with my other professional responsibilities.

33.     The tables in Exhibit C were created from a spreadsheet showing the amount of time recorded by each McKool Smith timekeeper who billed time to this case on a per-entry basis. Each entry, which was recorded contemporaneously, included, *inter alia*, a description of the task(s) performed and the date of performance. However, McKool Smith timekeepers often

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

recorded their time entries in blocks of time that were not limited to a single project, but rather reflecting block billing, with each entry showing the total amount of time billed on a particular date, regardless of the number or nature of the tasks performed.

34.     Using the billing materials available, McKool Smith created a list of projects to which each of these tasks could potentially be allocated, recognizing that some tasks did not neatly fit under a particular project and that some tasks could fit under more than one project. This list of projects was then shared with Manatt and Manatt's attorneys adopted most of the project categories, with certain additions for specific projects or tasks in addition to or separate from the tasks engaged in by McKool Smith. Although McKool Smith has made a major effort to comply with the Court's order for identification of detailed time by individual projects, and we have coordinated that effort with Manatt, the scope and complexity of the project and number of tasks means that Plaintiffs' Counsel cannot not guarantee complete uniformity of the results.

35.     After creating a list of projects, McKool Smith lawyers then engaged in a good faith effort to allocate each of the tasks in a timekeeper's entry to a corresponding project.  To the extent there was a block billed time entry that contained multiple tasks, McKool Smith personnel also engaged in a good faith effort to apportion the time between the various projects. To the extent a single, contemporaneously-recorded task was divided among projects, individual timekeepers occasionally amended the description for a task based on their recollection, given the renewed effort to allocate time to projects.

36.     I have exercised billing judgment on fees in the following ways:  (1) I have deleted and/or reduced entries to account for inefficiency; and (2) I have deleted entries relating solely to travel time.  In addition, I have reduced the percentage of recovery sought for certain projects based on an allocation of time related to claims or theories that were not ultimately

pursued or for which recovery was not obtained. However, I have not treated such time as valueless to the Class nor unworthy of any recovery. In my opinion, class counsels' entitlement to a percentage of a common fund fee recovery is quite different from a recovery in a "fee shifting" recovery where the defendant(s) should not be asked to pay for anything other than theories pursued to ultimate recovery.  Here, the Class was greatly benefited by the evolution of this case and the creative and aggressive assertion of theories by Class Counsel. The point was to succeed in obtaining recovery for the Class on any viable theory, even if not all theories were successful.   Similarly, I treated as valuable and recoverable time spent by counsel in brainstorming and working with jury consultants to find the most effective presentation to the jury. That kind of time is invaluable because it often can be the difference between victory and defeat. Efficiency is important, but effectiveness is much more important because victory is the ultimate goal. Taking into consideration all of these factors, I am requesting 100% reimbursement for those items that are directly related to our successful prosecution of the case, I have sought 0% reimbursement for those items that are directly and solely related to classes that were not certified or if I determined that the amount should not be billable. Where a particular task included work on both the successful class recovery and also related to other matters, such as the claims of Bernard Parrish, I request reimbursement at a rate of 75% as shown in the attached chart. That percentage reflects the fact that, as set forth above, my view is that such time pursuing alternative theories of recovery added value ultimately to the class recovery and involved work that is often difficult to segregate from work on matters clearly related to the successful class recovery.

37.    The total amount of time billed to this matter by each timekeeper (prior to any write-offs) is set forth in the following chart.

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

| Timekeeper | Time | Fees Billed |
|---|---|---|
| Aaron Boals | 0.5 | $ 32.50 |
| Anthony Garza | 541.6 | $ 202,062.50 |
| Betty Sanders | 597.9 | $ 50,821.50 |
| Brett Charhon | 1396.2 | $ 558,150.00 |
| Chris Martin | 14.5 | $ 2,682.50 |
| Cynthia Alaniz | 401.9 | $ 34,161.50 |
| David Bamberger | 3.3 | $1,485.00 |
| Diane Page | 13.9 | $ 1,529.00 |
| Don Gaiser | 75.6 | $ 8,460.00 |
| Donald Forbes | 67.9 | $ 8,409.00 |
| Hector Nava | 28.3 | $ 3,537.50 |
| Heidi L. Peterson | 4.8 | $ 384.00 |
| J. David Smith | 58.5 | $ 7,312.50 |
| Jill  Adler Naylor | 2813.8 | $1,243,425.00 |
| Jodie L. Mow | 2.1 | $ 378.00 |
| Joel L. Thollander | 23.4 | $ 10,530.00 |
| Joel M. Leach | 25.5 | $ 2,932.50 |
| John R. Johnson | 51.5 | $ 4,635.00 |
| Jonathan Yim | 5.5 | $ 495.00 |
| Karen K. Sherrill | 461 | $ 76,400.00 |
| Kristina R. Collins | 3 | $ 540.00 |
| Laura Phelan | 42.8 | $ 3,852.00 |
| Lewis T. LeClair | 2354.3 | $ 1,622,727.00 |
| Mary Ferrari | 182 | $ 27,300.00 |
| Omar Moreno | 379 | $ 39,795.00 |
| Rosemary T. Snider | 10.1 | $ 5,517.50 |
| Stefano J. Milito | 1.9 | $ 161.500 |
| Steven C. Callahan | 3 | $ 1,125.00 |
| Suzie Bovine | 333.5 | $ 60,030.00 |
| Tom Graves | 26.8 | $ 16,884.00 |
| **Grand Total** | **9924.1** | **$ 3,995,755.00** |

38.     The total amount of time that McKool Smith seeks to recover for each timekeeper after my application of billing judgment and the application of the percentages in Exhibit C is set forth in the chart below:

| Timekeeper | Fee Sought |
|---|---|
| Aaron Boals | $ 0.00 |
| Anthony Garza | $ 164,707.50 |
| Betty Sanders | $ 50,062.88 |
| Brett Charhon | $ 481,878.75 |
| Chris Martin | $ 1,232.50 |
| Cynthia Alaniz | $ 21,607.00 |

| David Bamberger | $ 0.00 |
| Diane Page | $ 1,298.00 |
| Don Gaiser | $ 6,689.00 |
| Donald Forbes | $ 8,409.00 |
| Hector Nava | $ 0.00 |
| Heidi L. Peterson | $ 300.00 |
| J. David Smith | $ 3,125.00 |
| Jill  Adler Naylor | $ 1,031,433.75 |
| Jodie L. Mow | $ 378.00 |
| Joel L. Thollander | $ 10,530.00 |
| Joel M. Leach | $ 2,242.50 |
| John R. Johnson | $ 198.00 |
| Jonathan Yim | $ 0.00 |
| Karen K. Sherrill | $ 70,992.00 |
| Kristina R. Collins | $ 540.00 |
| Laura Phelan | $ 1,800.00 |
| Lewis T. LeClair | $ 1,293,662.50 |
| Mary Ferrari | $ 17,550.00 |
| Omar Moreno | $ 30,450.00 |
| Rosemary T. Snider | $ 4,756.25 |
| Stefano J. Milito | $ 0.00 |
| Steven C. Callahan | $ 0.00 |
| Suzie Bovine | $ 49,788.00 |
| Tom Graves | $ 0.00 |
| **Total Fees Sought** | **$ 3,253,630.63** |

39.     The total amount of time that was written-off for each time keeper through my use of billing judgment or through application of the percentages set forth in Exhibit C is set forth in the chart below:

| Timekeeper | Write-Off |
| --- | --- |
| Aaron Boals | $ 32.50 |
| Anthony Garza | $ 37,355.00 |
| Betty Sanders | $ 758.63 |
| Brett Charhon | $ 76,271.25 |
| Chris Martin | $ 1,450.00 |
| Cynthia Alaniz | $ 12,554.50 |
| David Bamberger | $ 1,485.00 |
| Diane Page | $ 231.00 |
| Don Gaiser | $ 1,771.00 |
| Donald Forbes | $ 0.00 |
| Hector Nava | $ 3,537.50 |
| Heidi L. Peterson | $ 84.00 |
| J. David Smith | $ 4,187.50 |

Dallas 287369v2

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

| Jill Adler Naylor | $ 211,991.25 |
|---|---|
| Jodie L. Mow | $ 0.00 |
| Joel L. Thollander | $ 0.00 |
| Joel M. Leach | $ 690.00 |
| John R. Johnson | $ 4,437.00 |
| Jonathan Yim | $ 495.00 |
| Karen K. Sherrill | $ 5,408.00 |
| Kristina R. Collins | $ 0.00 |
| Laura Phelan | $ 2,052.00 |
| Lewis T. LeClair | $ 329,064.50 |
| Mary Ferrari | $ 9,750.00 |
| Omar Moreno | $ 9,345.00 |
| Rosemary T. Snider | $ 761.25 |
| Stefano J. Milito | $ 161.50 |
| Steven C. Callahan | $ 1,125.00 |
| Suzie Bovine | $ 10,242.00 |
| Tom Graves | $ 16,884.00 |
| **Total Write-Off** | **$ 742,124.38** |

## OTHER DISBURSEMENTS AND EXPENSES INCURRED IN THIS ACTION

40. On November 26, 2008, Plaintiffs filed a cost bill seeking recovery of $92,120.10 in ordinary litigation costs under Fed. R. Civ. Pro. 54(d). To date, that cost bill has yet to be addressed by the Court.

41. McKool Smith incurred additional expenses and disbursements in successfully prosecuting the case, other than those items included in the cost bill. The expenses incurred in connection with this case are reflected on McKool's books and records that are maintained in the ordinary course of business. These books and records are prepared from expense vouchers and check records and, although I did not compile the records, they were prepared by accounting personnel of the firm and based on my review of the records, are an accurate compilation of expenses incurred and paid by the firm.

42. Attached as **Exhibit D** is a detailed summary of the expenses by category showing a breakdown of invoices and payments, followed by all of the detailed expense reports

and billings supporting the summary. Most of the items listed in the summaries are self-explanatory.   The photocopying charges in this case were substantial due to the number of documents produced and number of exhibits used at depositions and trial.  Travel included travel and lodging costs incurred by McKool Smith timekeepers to attend court hearings, depositions, meetings, and trial.  However, I have now conducted a more detailed review of such expenses in order to eliminate that portion of the expenses that might be considered unrecoverable because of luxury travel, personal items or other reasons. Airfare pricing is no longer a simple division between "first class" or "economy" travel because airline pricing is not static but instead depends on a variety of factors related to the timing of the purchase and date of travel and the advance purchase requirements. In addition, refundable tickets are often more expensive than non-refundable tickets. Most of the McKool Smith airfare was purchased on American Airlines which offers an unusual option called a "Y-up" fare or "P" class fare that automatically upgrades to first class a ticket purchased in coach at one of the more expensive economy rates.   For business travel on relatively short notice, the price of a "Y-up" fare is often less than an unrestricted economy fare. For that reason, a number of tickets purchased by McKool Smith show as first class tickets but were in fact coach tickets that were automatically upgraded by American. In order to avoid any issues about such travel, I have now made certain deductions for more expensive tickets and capped ticket charges at $800 for travel by our attorneys and personnel to California. That cap resulted in a deduction of $13,974 for airfare costs. I did not apply a similar cap with respect to travel to New York because prices for travel during the business week are notoriously high for coach travel. With respect to hotel charges, I applied a flat reduction of $4,000 to account for certain charges that I thought constituted luxury hotel rates. I also asked our accounting personnel to eliminate bar charges, personal charges and other

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

miscellaneous non-billable items from Exhibit D. In order to be sure that all such charges were removed from our request for reimbursement, I have made an additional deduction of $1250 over and above deductions explained above. Collectively, the additional deductions that I have made reduced the travel expenses by the amount of $19,224 from the amounts that are set forth as travel expenses in Exhibit D.

43.     Computer research is the cost of performing on-line legal research for pre-trial, trial and post-trial briefs. Expert charges were quite significant, but important to our success on behalf of the class.  Philip Rowley, LECG, and Resolution Economics provided assistance with damage and accounting issues. OSKR provided sports and marketing expertise. TrialGraphix provided trial and jury consulting and assistance with graphics and exhibits for the trial. In my original declaration, I did not include any of the expert costs shown above, because, as I explained in my prior declaration, "even though McKool Smith advanced approximately half of such costs . . .the full amount of expert costs are contained within the request for non-taxable costs submitted by Manatt and supported by the Katz Declaration." Upon review of the Katz declaration after it was filed, I discovered that the McKool Smith half of expert fees were not included. Accordingly, they are now included above as a part of my declaration. There are other changes to the numbers from the time of my original declaration, most of them minor. However, the mock trial and trial consulting numbers are higher because of additional bills that were received for services and paid after the date of my original declaration.

44.     The amounts reasonably incurred and for which reimbursement is now being sought , are as follows[1]:

| Computer Research | $ 106,576.81 |
| Copying (Outside Service) | $   7,975.03 |

[1]  This list reflects changes made to the amounts in Exhibit D for further reductions to travel charges as explained above.

| | |
|---|---|
| Courier | $ 11,941.33 |
| Deposition Services | $ 1,751.90 |
| Document management Costs | $ 67,069.45 |
| Expert Fees--OSKR | $190,311.95 |
| Expert Fees-Rowley | $ 31,396.81 |
| Expert Fees-Resolution Economics | $ 87,188.73 |
| Hotel for trial personnel | $ 53,186.73 |
| Miscellaneous legal costs | $ 5,846.73 |
| Other Experts/Professionals | $ 24,743.86 |
| Reproduction (In-House Photocopies) | $ 3,454.40 |
| Telephone | $ 1,059.93 |
| Travel | $ 89,962.07 |
| Trial Equipment Rentals | $ 3,044.14 |
| Mock Trial and Trial Consulting | $134,701.93 |
| **TOTAL** | **$820,211.80** |

45.     In addition, to the extent any costs included in the cost bill are disallowed or deemed not recoverable, Plaintiffs alternatively seeks recovery of any such items by this motion.

## SUMMARY

46.     McKool Smith seeks recovery of its share of a thirty percent (30%) award of attorneys fees, equal to a total attorneys fee award of $7,369,648.90, an award that is fully justified by McKool Smith's lodestar of $3,253,630.63 and Manatt's lodestar of $4,531,237.50 which total $7,369,648.90.   The total amount sought by McKool Smith is broken down as follows:

Attorneys' Fees                    $ 3,253,630.63

Other Expenses and Disbursements    $ 820,211.80

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on October 2, 2009 in Dallas, Texas.


                                   /s/ Lewis T. LeClair

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas

**DECLARATION OF LEWIS T. LeCLAIR – Page 23**
**Civil Action No. C07 0943 WHA**

Dallas 287369v2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McKool Smith
A Professional Corporation • Attorneys
Dallas, Texas