MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| HERBERT ANTHONY ADDERLEY, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC, a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**DECLARATION OF RONALD S. KATZ IN SUPPORT OF CLASS COUNSELS' RENEWED APPLICATION FOR FEES, EXPENSES, AND AN INCENTIVE PAYMENT FOR CLASS REPRESENTATIVE, HERBERT ADDERLEY** |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

RENEWED DECLARATION OF RONALD S. KATZ
CASE NO. C 07-0943 WHA

I, Ronald S. Katz, declare as follows:

1. I am an attorney duly licensed to practice law before the Courts of the State of California and am a counsel of record in this matter. I am a partner with the law firm of Manatt, Phelps and Phillips, LLP ("Manatt"), and served as lead counsel for my firm and co-counsel for plaintiff Herb Adderley and the certified class in this action. I am submitting this Declaration in support of Class Counsels' renewed application for an award of attorneys' fees pursuant to the Court's September 2, 2009 and September 15, 2009 Orders. The following declaration is based upon my personal knowledge. If called as a witness I could and would competently testify to the facts set forth herein.

2. In January and February of 2007, Lewis LeClair and I executed engagement letters with Bernard Parrish and Herbert Adderley to pursue the putative class action. A copy of the firm's engagement letter with Mr. Adderley is attached hereto as **Exhibit A**. Pursuant to that engagement letter, Manatt and McKool advanced all of the costs of the litigation and provided their legal services on a contingency basis pending the outcome of the litigation. It was anticipated and agreed with our clients that the two firms would apply for attorneys fees and costs out of any recovery in the class action.

3. Mr. LeClair and I also executed a Co-Counsel Agreement in January of 2007, a copy of which is attached hereto as **Exhibit B**. The terms of that agreement are still in effect. However, there is a pending dispute with Sam Mutch, who was a party to the agreement, but then was suspended from the practice of law a portion of the time that this case was pending. That dispute is subject to arbitration in accordance with the terms of the Co-Counsel Agreement.

4. I have been the Manatt billing attorney on this case at all times since it was filed on February 14, 2007. Even though Manatt did not send any bills in this case, I have reviewed all of the detailed billing records prepared by Manatt in connection with this matter and have applied billing judgment. The billing records prepared in connection with this case were generated from Manatt's timekeeping systems and are maintained in the ordinary course of business. Timekeepers at Manatt record their time contemporaneously and engage in block billing. Time is recorded and billed in 1/10 of an hour increments. As billing attorney, I have reviewed and

approved the amounts sought in this application. I have also, as explained below, supervised to the best of my ability the re-formatting of this time in the format ordered by the Court.

CALCULATION OF THE LODESTAR

5. The lodestar amount for attorney and paralegal time billed by Manatt during the litigation is $4,531,237.50. This amount is derived by starting with the total amount of Manatt's legal services, $5,155,787.00, and then deducting $255,290.00 in straight write-offs as described in paragraph 45 below, as well as another $369,259.50 in per-project reductions as explained in paragraph 43 below. These adjustments total $624,549.50. According to the declaration of Lew LeClair filed concurrently herewith, the lodestar amount for attorney and paralegal time billed by Mckool Smith PC during the litigation is $3,253,630.63. The combined lodestar amount for both Mckool Smith PC and Manatt (collectively "Petitioners" or "Plaintiffs' Counsel") during the litigation is $7,764,868.13.

6. Timekeepers at Manatt record their time contemporaneously and engage in block billing. Time is recorded and billed in 1/10 of an hour increments. I have applied billing judgment to amounts recorded, writing off or writing down time spent on particular tasks. In particular, I deleted entries for billers who billed less than $20,000.00 on this matter and I deleted entries relating to travel time. I also reduced the percentage of recovery sought for certain tasks based on an allocation of time related to claims or theories which were not ultimately pursued or for which recovery was not obtained.

7. Although the case has evolved through the filing of four separate complaints and three motions to dismiss, all of that work was appropriate and necessary to develop this difficult case to the point that it could be successfully tried and won. I have therefore not written off time that might be related to one or more of the theories of the case that were not ultimately pursued at trial. However, even if such time were determined not to be appropriately considered on a lodestar basis, the time actually and reasonably incurred by Manatt on this matter would fully support the fee award sought in this case. Because Manatt and McKool have made the decision to pursue thirty percent (30%) of the settlement agreement amount, minus expenses, as attorneys fees, the lodestar amount is substantially equivalent and any multiplier is entirely reasonable. In

fact, Petitioners' request for 30% of the settlement amount minus expenses is lower than typical contingency agreements in commercial cases of this magnitude which, in my experience in the Northern District of California, range from 33% to 40%.

8.   This was a very difficult case where we faced tenacious and aggressive defense counsel. We had to fight hard at every step of the way and had to take many professional risks in order to pursue this matter to conclusion. For that reason, the percentage of recovery sought in this matter is no more than fair compensation for the effort and risk associated with pursuit of this matter. Based upon my knowledge and experience, given the nature and complexity of the case, the skill of the attorneys on both sides of the case, and the result obtained, it is my opinion that the time expended by Manatt was necessary and the fees billed and for which recovery is sought are reasonable under the circumstances of this case.

9.   The adjusted monthly attorneys' fees incurred by Manatt during this matter (which do not reflect the $369,259.50 in per-project reductions referred to in paragraph 43 below) are as follows:

| Date | Fees |
|---|---|
| Dec-06 | $0.00 |
| Jan-07 | $4687.50 |
| Feb-07 | $63,983.00 |
| Mar-07 | $33,705.00 |
| Apr-07 | $37,577.00 |
| May-07 | $106,415.00 |
| Jun-07 | $97,187.50 |
| Jul-07 | $123,418.00 |
| Aug-07 | $188,511.00 |
| Sep-07 | $191,821.00 |
| Oct-07 | $89,725.00 |
| Nov-07 | $55,568.50 |
| Dec-07 | $55,833.50 |
| Jan-08 | $75,867.50 |
| Feb-08 | $351,241.00 |
| Mar-08 | $287,121.50 |
| Apr-08 | $170,313.00 |
| May-08 | $198,361.50 |
| Jun-08 | $225,189.50 |
| Jul-08 | $354,027.00 |
| Aug-08 | $281,379.50 |

| | |
|---|---|
| Sep-08 | $333,429.00 |
| Oct-08 | $815,993.00 |
| Nov-08 | $363,987.00 |
| Dec-08 | $102,010.50 |
| Jan-09 | $94,809.50 |
| Feb-09 | $11,372.50 |
| Mar-09 | $23,368.00 |
| Apr-09 | $33,130.00 |
| May-09 | $22,441.00 |
| Jun-09 | $28,966.50 |
| July-09 | $53,870.50 |
| Aug-09 | $25,186.50 |
| TOTAL | $4,900,496.50 |

10. The standard annual hourly rates and the total billings for each Manatt timekeeper (which, again, do not reflect the per-project reductions referred to below) are summarized in the following chart:

| Timekeeper | Position/Years of Attorney Experience | 2007 Hours | 2007 Rate | 2008 Hours | 2008 Rate | 2009 Hours | 2009 Rate | Total Billing |
|---|---|---|---|---|---|---|---|---|
| R. Katz | Atty – 36 yrs. | 414.6 | $690 | 965.3 | $700 | 127.0 | $715 | $1,052,589.00 |
| P. Parcher | Atty – 47 yrs. | 2.3 | $785 | 438.9 | $850 | 22.4 | $850 | $393,911.00 |
| C. Hummel | Atty – 20 yrs. | 0 | $650 | 545.5 | $700 | 64.8 | $715 | $428,182.00 |
| C. de Recat | Atty – 27 yrs. | 0 | N/A | 0 | N/A | 38.9 | $715 | $27,814.00 |
| B. Landsberg | Atty – 29 yrs | 0 | N/A | 31.6 | $700 | .7 | $725 | $22,628.00 |
| R. Hilbert | Atty – 8 yrs. | 767.5 | $460 | 1776.7 | $505 | 66.1 | $515 | $1,284,325.00 |
| N. Cohen | Atty – 7 yrs. | 272.9 | $435 | 552.0 | $485 | 82.5 | $490 | $426,857.00 |
| B. Shatz | Atty – 16 yrs. | .8 | $570 | 142.7 | $580 | 9.1 | $595 | $88,637.00 |
| A. Fiero | Atty – 18 yrs. | 637.1 | $415 | 231.0 | $440 | 0 | N/A | $366,301.00 |
| L. Franco | Atty – 13 yrs. | 0 | $520 | 778.8 | $550 | 0 | N/A | $428,340.00 |
| D. Wishon | Sr. Paralegal | 42.9 | $265 | 881.0 | $280 | 95.2 | $290 | $285,657.00 |
| K. Hunt | Paralegal | 55.8 | $175 | 169.1 | $210 | 0 | N/A | $45,276.00 |
| K. Sloane | Paralegal | 11.0 | $255 | 67.6 | $270 | 1.1 | 275 | $21,360.00 |
| D. Crim | Paralegal | 0 | N/A | 150.1 | $185 | 4.5 | $190 | $28,624.00 |
| TOTAL | | 2204.9 | | 6730.9 | | 512.3 | | **$4,900,497.00** |

11. The experience and qualifications of each Manatt timekeeper is summarized below in paragraphs 12 through 25 immediately below.

### EXPERIENCE AND QUALIFICATIONS OF MANATT TIMEKEEPERS

12. I am the head of the litigation group in the Palo Alto office. I am a Rhodes Scholar and 1972 Harvard Law Graduate. I specialize in complex commercial dispute resolution with an emphasis on intellectual property, antitrust and technology matters. During my career, I

have been involved in high-profile and novel cases for major clients both internationally and in Northern California. For example, in *Coscarart v. Major League Baseball*, I represented approximately 400 retired Major League Baseball Players and won a jury verdict in the California Superior Court for the County of Alameda. I have had numerous articles published, I speak at seminars once or twice a year on average, and I teach at Stanford and Santa Clara Law Schools. I have been the lead counsel in this case since its inception. I have been involved in nearly every aspect of this case, from discovery to motion practice to pre-trial matters. I took or defended many of the depositions in this case. I was also involved in the trial and was responsible for preparing and conducting the direct examination of our client, Herb Adderley, as well as for preparing and conducting the cross-examination of certain of Defendants' witnesses. I also conducted the punitive damages phase of the trial on behalf of Plaintiffs. In addition, I worked extensively on opposing Defendants' post-trial motion and in connection with our efforts at settlement.

13. Peter Parcher is a special senior partner in Manatt's New York office. He is a nationally renowned trial lawyer, and is a Fellow of the American College of Trial Lawyers and the International Academy of Trial Lawyers, two of the most prestigious organizations of trial lawyers. In addition, Mr. Parcher has been the subject of feature articles in a number of publications, including *Forbes*, *The Wall Street Journal* and *The American Lawyer*. Before joining Manatt, Mr. Parcher was the founding partner of Parcher, Hayes & Snyder, one of the nation's leading litigation firms. Mr. Parcher has been frequently identified as one of the best lawyers in the country. Mr. Parcher was the lead trial counsel in this case and conducted both the opening and closing statements. He also cross-examined one of Defendants' key witnesses, Doug Allen. In addition, Mr. Parcher worked extensively on opposing Defendants' post-trial motion.

14. Chad Hummel is a partner in Manatt's Los Angeles Office. He is Chair of Manatt's Litigation Division, and is a member of Manatt's Board of Directors and Executive Committee. Mr. Hummel represents clients in all phases of complex civil litigation, criminal prosecutions, and government investigations. He has also advised numerous companies in structuring and implementing corporate compliance programs which comply with Sarbanes-

Oxley and the Federal Sentencing Guidelines for Organizational defendants. Mr. Hummel was heavily involved in pre-trial preparation and in the trial in this matter. Among other things, Mr. Hummel prepared several of Plaintiffs' witnesses for trial, including Plaintiffs' experts. He also prepared for and conducted the cross-examination of certain of Defendants' witnesses at trial, including Defendants' experts and Joel Linzner from Electronic Arts. Mr. Hummel also played a hand in defending against Defendants' post-trial motion and in settlement.

15. Craig de Recat is a partner in Manatt's Los Angeles Office. He is a member of the Firm's Board of Directors and Co-Chair of the Firm's Trial Practice. Mr. de Recat's practice focuses on complex litigation and he has a wide range of experience handling commercial, environmental, antitrust, insurance, intellectual property, patent/trademark, and related business matter disputes for national and international clients. He also is an experienced trial attorney. Mr. de Recat handled many of the settlement discussions with opposing counsel.

16. Barry Landsberg is a partner in Manatt's Los Angeles Office. He is a member of the firm's Board of Directors and is the firm's National Director of Appellate Litigation. He also is an experienced trial and appellate lawyer, who has has argued and won several first-impression cases before the California Supreme Court and the California Court of Appeal. Mr. Landsberg worked on the appellate-related aspects of this case, including Defendants' request to the Ninth Circuit to appeal the Court's order granting certification and Defendant's post-trial appeal.

17. Laura Franco was a partner in Manatt's Palo Alto Office. While at Manatt, her practice specialized in representing technology-based, financial services and other clients in federal and state court litigation and in ADR proceedings, including defense of patent and trademark infringement claims and prosecution and defense of business tort disputes. Ms. Franco performed work in connection with several motions in this matter, including Defendants' motions to dismiss, Plaintiffs' motion for class certification and Defendants' motion for summary judgment. Ms. Franco was also involved in pre-trial matters.

18. Benjamin G. Shatz is counsel in Manatt's Los Angeles Office. Mr. Shatz is a member of Manatt's appellate group. He has briefed more than a hundred civil appeals, writs and petitions to the U.S. Supreme Court, U.S. Courts of Appeals, California Supreme Court and

California Courts of Appeal, covering areas of law including entertainment, copyright, trademark, employment, land use, banking, insurance, product liability, professional liability, wrongful death, punitive damages, class actions, anti-SLAPP and unfair competition. Mr. Shatz worked on the appellate-related aspects of this case, including Defendants' request to the Ninth Circuit to appeal the Court's order granting certification and Defendant's post-trial appeal.

19. Ryan Hilbert is an associate in Manatt's Palo Alto Office. His practice focuses on litigation and counseling in the areas of sports law, trademark and unfair competition, copyright, and other intellectual property and commercial matters. Mr. Hilbert has been involved in this case since its inception. He worked on numerous discovery-related issues as well as in connection with several motions in this matter, including Defendants' motions to dismiss, Plaintiffs' motion for class certification and Defendants' motion for summary judgment. Mr. Hilbert was also involved in pre-trial matters, participated in the trial itself, and assisted in the preparation and filing of our response to Defendants' post-trial motion.

20. Noel Cohen is an associate in Manatt's Los Angeles Office. Mr. Cohen also has been involved in this case since its inception. He worked on numerous discovery-related issues as well as in connection with several motions in this matter, including the motions to dismiss, the sanctions motion, the motion to seek leave to amend, the class certification motion and the motion for summary judgment. He helped to defend Mr. Adderley at his deposition and to prepare him for his trial testimony. Mr. Cohen also participated in the trial in this matter, assisted in our response to Defendants' post-trial motion (including at oral argument), and in connection with settlement.

21. Anne Fiero is a contract attorney with Manatt. She is a graduate of Duke University and of University of Chicago Law School. Ms. Fiero performed work in connection with several motions in this matter, including Defendants' motions to dismiss, the motion for sanctions, the motion to seek leave to amend, and the class certification motion.

22. Donna Wishon is a senior paralegal with over 16 years of experience in litigation, including the last 4 at Manatt. She has a paralegal certificate from Canada College, having graduated with honors. She was the lead paralegal for Manatt on this case. Her responsibilities

included, but were not limited to: overseeing document productions; communicating and coordinating with counsel regarding materials for use in hearings before the Court and at depositions; overseeing the document database; and compiling and organizing trial exhibits, deposition transcripts, and witness notebooks for use at trial.

23. Keysha Hunt is a paralegal with over 8 years of experience in litigation, including the last 2.5 at Manatt. She was previously in Manatt's Palo Alto Office but now works in Manatt's San Francisco Office. Her responsibilities included, but were not limited to: overseeing document productions; communicating and coordinating with counsel regarding materials for use in hearings before the Court and at depositions; and assisting in the set-up and maintenance of the document database.

24. Karen Sloane is a paralegal in Manatt's Los Angeles office. She assisted Los Angeles-based counsel with document productions and other discovery issues.

25. Daniel Crim is a junior paralegal in Manatt's Palo Alto office. He assisted Ms. Wishon with overflow discovery and motion-related tasks.

## CALCULATION OF THE LODESTAR – ATTORNEYS' FEES

26. I am familiar with each of the Manatt attorneys and paralegals who worked on this matter. Based upon my knowledge and experience, the billing rates for the paralegals and attorneys who worked on this matter are commensurate with their years of experience and skills, and my firm is paid these rates by clients on a regular basis.

27. As explained above, the lodestar amount for attorney and paralegal time billed by Manatt during the litigation is $4,531,237.50, which is derived from the total hours billed on a per-project basis, minus some per-project reductions as described in paragraph 43 below. According to the declaration of Lew LeClair filed concurrently herewith, the lodestar amount for attorney and paralegal time billed by Mckool Smith PC during the litigation is $3,253,630.63. The combined lodestar amount for both Mckool Smith and Manatt during the litigation is $7,764,868.13.

28. Petitioners' requested fee award of 30% of the settlement amount minus expenses, or **$7,369,648.90**, is less than Petitioners' combined lodestar amount. Petitioners' request for

30% of the settlement amount minus expenses is lower than typical contingency agreements in commercial cases of the magnitude of this case, which typically range from 33% to 40%. Manatt devotes a small portion of its legal practice to contingency litigation. Customary fees in such contingency cases are typically a percentage of the amounts recovered, typically between 33% and 40%.

29. Our engagement letter with class representative, Herbert Adderley, acknowledged that we would seek a portion of any recovery for expenses and fees. *See* Manatt's fee agreement attached hereto as Exhibit A. The class notice that was mailed to each prospective member of the class in June 2008 explained that counsel for Plaintiffs would seek a percentage of funds as attorneys' fees in the event that Plaintiffs prevailed. In the final version of the class notice that was sent to each of the Class Members by Plaintiffs' Counsel on or before September 8, 2009, Plaintiffs' Counsel indicated that the amount they would be seeking was 30% of the common fund as a fee award and expenses. The final version of the class notice also indicated that each member of the class has the right to object to the fee application.

30. Plaintiffs' Counsel expended significant time and resources in connection with this matter. Had Plaintiffs' Counsel not prevailed in this matter, they risked losing the millions of dollars they incurred in legal fees and the hundreds of thousands of dollars they incurred as costs and expenses.

31. This action was fraught with novel and complex issues related to liability, damages and class certification and involved factual and legal issues that were complex and highly contested. Factual and legal issues were highly contested. Plaintiffs counsel vigorously litigated this dispute in the following ways:

- Preparation of multiple drafts of each of the four complaints in this action along with motions for leave to amend;
- Review of documents produced by Plaintiffs' class representative and party witnesses;
- Preparation of requests for production to Defendants;
- Preparation of requests for production to non-parties and preparation of non-party subpoenas in connection with same;

- Review of Defendants' document production;
- Review of non-party document productions;
- Preparation of indexes and analysis of documents in preparation for depositions, motions and trial;
- Extensive consultation with experts including (i) review and organization of thousands of pages of financial documents produced by the Defendants and their representatives; (ii) identification of additional materials to request; (iii) preparation for financial-related depositions; (iv) analysis of relevant literature; and (v) review of the expert reports submitted on behalf of Defendants;
- Numerous interviews of class members;
- Identification of witnesses to be deposed;
- Depositions, including those of the named Defendants, their current and former employees and non-parties;
- Defending depositions of class witnesses and experts;
- Legal research under California Law, Virginia Law and the District of Columbia law;
- Preparation of numerous motions and responses to motions including, but not limited to: (i) Opposition to Motion for Sanctions, filed April 4, 2007 (Dkt. No. 60-62); (ii) Opposition to Motion for Judgment on the Pleadings, filed April 4, 2007 (Dkt. No. 55-56); (iii) Opposition to Motion to Change Venue, filed April 4, 2007 (Dkt. No. 57-59); (iv) Opposition to Motion to Dismiss Second Amended Complaint, filed July 6, 2007 (Dkt. No. 110-11); (v) letter filings re: production of Defendants' financial statements, filed August 10, 2007 (Dkt. Nos. 112, 122); (vi) Letter filings re: Plaintiffs' payments of NFLPA Dues, filed September 4, 2007 (Dkt. Nos. 130-132); (vii) Motion for Leave to File a Third Amended Complaint, filed September 27, 2007 (Dkt. Nos. 139, 141, 147, 169-170); (viii) Motion to Certify Class, filed March 14, 2008 (Dkt. Nos. 217-223, 253-54); (ix) Opposition to Motion to Strike the Declaration of Marvin Miller, filed March 28, 2008 (Dkt. No. 229). Opposition filing is found at Dkt. No. 246); (x) Letter filings re: document requests and discovery responses, filed April 7, 2008 (Dkt.

No. 258) (xi) Opposition to Motion for Leave to File a Supplemental Memorandum on Plaintiffs' Class Certification Motion, filed April 8, 2008 (Dkt. No. 268); (xii) letter filings re: documents related to Gene Upshaw, filed June 4, 2008 (Dkt. No. 285); (xiii) Opposition to Motion for Summary Judgment, filed June 13, 2008 (Dkt. No. 310-11) (xiv) Motion to Strike the Declarations of Linda Castillon, Adam Sullins, Jason Brenner, Christine Finch, and Steve Byrd Filed in Support of Defendants' Motion for Summary Judgment, filed July 1, 2008 (Dkt. Nos. 308-309, 326-327); (xv) letter filings re: scrambling of player images by EA, as related to Defendants' summary judgment motion, filed July 30, 2008 (Dkt. Nos. 340-342, 347-348); (xvi) Motion to Dismiss Bernard Parrish's individual claim, filed August 12, 2008 (Dkt. Nos. 358, 360); (xvii) Opposition to Motion to Decertify class, filed August 15, 2008 (Dkt. No. 371-372); (xviii) letter filings re: summary judgment arguments, filed August 22, 2008 (Dkt. Nos. 374-375); (ixx) motions in limine and oppositions thereto (Dkt. Nos. 409, 411-414, 417-419, 423, 427-429, 433-434, 437-442, 444, 446-448, 453, 455, 457, 474, 476); (xx) various trial briefs and oppositions thereto (Dkt. Nos. 483-485, 502, 517, 520, 532, 534, 536, 539-540, 545, 548); (xxi) oppositions and replies in connection with various post-trial motions (Dkt. Nos. 596-97, 599, 602).

- Preparation of scheduling orders;
- Preparation of interrogatories, requests for admissions and responses to same; and
- Preparation of countless letters to opposing counsel regarding (i) deposition scheduling, (ii) document discovery, and (iii) settlement.

32.  Plaintiffs' Counsel devoted thousands of hours of attorney and paralegal time and effort pursuing, reviewing and utilizing the party and non-party documents produced in this lawsuit. Plaintiffs were forced to wade through thousands of complex and often arcane accounting materials in order to identify the critical documents that substantiated Plaintiffs' claims. In addition, Plaintiffs were aggressive in pushing for additional documents in the face of repeated resistance from Defendants and third parties aligned with Defendants. Plaintiffs' preparation for trial required various members of Plaintiffs' team to devote nearly all of their time

to this litigation for extended durations.

33. The deposition phase of the lawsuit was also time-consuming, hard-fought and intensive. The preparation required for these depositions was substantial. Databases were reviewed by paralegals to identify and pull the specific documents associated with each particular witness. Attorneys would then review those documents for relevance and usefulness. Furthermore, while Plaintiffs tried to be efficient and combine travel whenever possible, Plaintiffs were required to travel significant distances to conduct depositions in this matter. For example, depositions were held in California, New York, Maryland, Philadelphia, Texas and Washington D.C.

34. While preparing for trial, Plaintiffs also made efforts to settle the case including by participating in a settlement conference with Magistrate Judge James Larson of the Northern District of California. Despite Plaintiffs' settlement efforts, Defendants refused all such overtures and Plaintiffs were left with no choice but to proceed to trial.

35. Trial of this matter, which is extremely rare in class action cases, lasted three weeks during which witnesses were examined and dozens of documents were received into evidence. Plaintiffs faced additional resistance by Defendants through their motions for JMOL and heavily-contested jury instruction briefing and argument. Plaintiffs received additional resistance from Defendants in the form of another JMOL motion and appeal. Plaintiffs also engaged in protracted settlement negotiations in an effort to resolve this matter.

36. Based upon my knowledge and experience, given the nature and complexity of the case, the skill of the attorneys on both sides of the case, and the result obtained, it is my opinion that the time expended by Manatt was necessary and the fees billed are reasonable under the circumstances of this case.

37. To date, Plaintiffs' Counsel is unaware of any objections filed with the Court by any Class Member, and Plaintiffs' Counsel also is unaware of any Class Member who objects to the amounts requested by Plaintiffs' Counsel. On the contrary, many of the retired players who have contacted Plaintiffs' Counsel about the settlement have indicated the exact opposite – *i.e.*, that Plaintiffs' Counsel should receive compensation for the work they have done on behalf of the

Class.

## PLAINTIFFS' COUNSEL'S FEES ON A "PER-PROJECT" BASIS

38. The Court's Order of September 2, 2009 requires that time in this matter be organized by discrete project. As instructed by the Court, attached hereto as **Exhibit C** is a series of tables detailing the time and amounts incurred for each project performed by Manatt and, where indicated, by both of Plaintiffs' Counsel's law firms. Manatt timekeepers are required to keep track of their time on a contemporaneous basis and fill out time sheets daily, weekly or monthly with all such time. It is important to note that these tables are not organized the way that Manatt attorneys record their time contemporaneously. Rather they represent our best efforts to create such tables from our contemporaneous time records. I have supervised these efforts to the best of my ability consistent with my other professional responsibilities, including, but not limited to, trying a case in Bakersfield, California that began on September 21, 2009 and that is still proceeding.

39. The tables in Exhibit C were retroactively created from a spreadsheet showing the amount of time spent by each Manatt timekeeper who contemporaneously billed time to this case on a per-entry basis. Each entry included, *inter alia*, a description of the task(s) performed and the date of performance. However, Manatt timekeepers often recorded their time entries in blocks of time that were not limited to a single project, but rather reflected block billing, with each entry showing the total amount of time billed on a particular date, regardless of the number or nature of the tasks performed. The contemporaneous block entries were retroactively unblocked to comply with the Court's Order on the fee application.

40. Using the billing materials available, Plaintiffs' Counsel created a list of projects to which each of these tasks could potentially be allocated, recognizing that some tasks did not neatly fit under a particular project and that some tasks could fit under more than one project. Although Manatt has made a major effort to comply with the Court's order for identification of detailed time by individual projects, and we have coordinated that effort with McKool, the scope and complexity of the project and number of tasks means that Plaintiffs' Counsel cannot guarantee complete uniformity of the results.

41. Once Plaintiffs' Counsel had a list of projects, Manatt lawyers then engaged in a good faith effort to allocate each of the tasks in a timekeeper's entry to a corresponding project. To the extent there was a single time entry for which more than one project was included, Manatt personnel also engaged in a good faith effort to apportion the time between the various projects. To the extent a single, contemporaneously-recorded task was divided among projects, individual timekeepers occasionally amended the description for a task based on their recollection.

42. I have exercised billing judgment on fees in the following ways: I have deleted entries for billers who billed less than $20,000.00 on this matter and I have deleted entries relating to travel time.

43. I also reduced the percentage of recovery sought for certain tasks based on an allocation of time related to claims or theories that were not ultimately pursued or for which recovery was not obtained. However, I have not treated such time as valueless to the Class nor unworthy of any recovery. In my opinion, this percentage of a common fund kind of fee recovery is quite different from a recovery in a "fee shifting" recovery where the defendant(s) should not be asked to pay for anything other than theories pursued to ultimate recovery. Here, the Class benefited greatly by the evolution of this case and the creative and aggressive assertion of theories by Plaintiffs' Counsel. The point was to succeed in obtaining recovery for the Class on any viable theory, even if not all theories were successful.

44. Along these lines, I also treated as valuable and recoverable time spent by counsel in brainstorming and working with jury consultants to find the most effective presentation to the jury. That kind of time is invaluable because it often can be the difference between defeat and victory, which is the ultimate goal.

45. The total amounts per timekeeper that were deleted are as follows:

| Name | Amount Written Off |
| --- | --- |
| A Scardina | $5,679.50 |
| AE Brum | $242.00 |
| AM Brunswick | $2,332.00 |
| B Gasik | $187.50 |

| | |
|---|---|
| BG Shatz | $522.00 |
| BS Kelly | $3,630.00 |
| BW Seiling | $11,570.50 |
| CD Brown | $18,350.00 |
| CD LeGras | $3,239.00 |
| CS Hummel | $13,992.00 |
| CV Mercedes | $423.00 |
| D Crim | $370.00 |
| DJ Fitzgerald | $2,945.50 |
| E Curtis | $787.50 |
| EL Hahm | $12,760.00 |
| F Stephenson | $1,482.00 |
| H Nguyen | $787.50 |
| J Sharum | $7,656.00 |
| J Tobias | $132.00 |
| JA Mannisto | $7,735.00 |
| JC Fox | $744.00 |
| JJ Wang | $1,001.00 |
| K McArn Jr. | $200.00 |
| KS Peluso | $312.00 |
| LF Vete | $2,142.50 |
| LM Franco | $7,975.00 |
| LP Parcher | $38,675.00 |
| M Gillette | $315.00 |
| MJ Thompson | $4,420.00 |
| MS Lee | $977.00 |
| NS Cohen | $23,871.50 |
| P Rodriguez | $1,437.50 |
| PN Loyola | $7,125.00 |
| R Gordon | $48.00 |
| RA Gutierrez | $4,654.50 |
| RC Mora | $202.50 |
| RP Daum | $135.00 |
| RS Hilbert | $4,410.00 |
| RS Katz | $36,098.00 |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

16

RENEWED DECLARATION OF RONALD S. KATZ
CASE NO. C 07-0943 WHA

| | |
|---|---:|
| S Sareth | $1,498.00 |
| SP Castillo | $3,103.00 |
| Various E-Filing Analysts | $20,444.50 |
| W Holmes | $98.00 |
| WM Heberer | $580.00 |
| **Total** | **$255,290.00** |

Note that this $255,290.00 write-off before we calculated the amounts in the tables in paragraphs 9 and 10 above. In other words, Manatt actually incurred total fees of $5,155,787.00 before any billing judgment was exercised.

OTHER DISBURSEMENTS AND EXPENSES INCURRED IN THIS ACTION

46. On November 26, 2008, Plaintiffs filed a cost bill seeking recovery of $92,120.10 in ordinary litigation costs under Fed. R. Civ. Pro. 54(d). To date, that cost bill has yet to be ruled upon.

47. Manatt incurred additional expenses and disbursements in successfully prosecuting this case other than those items included in the cost bill. The expenses incurred in connection with this case are reflected on Manatt's books and records that are maintained in the ordinary course of business. These books and records are prepared from expense vouchers and check records and are an accurate record of expenses incurred. Backing up the expenses listed below are an Excel spreadsheet showing each expense as a line item, and back-up materials for the Excel spreadsheet maintained by Manatt's accounting department in the regular course of business. The Excel spreadsheet and back-up materials are attached hereto as **Exhibit D**.

48. A summary of those other expenses reasonably incurred by Manatt are as follows:[1]

| EXPENSE CATEGORY | TOTAL AMOUNT |
|---|---|
| Class Administration | 4,530.79 |
| Computer Research | 116,145.39 |
| Copying | 25,964.87 |
| Courier | 19,853.07 |
| Deposition-related Expenses | 2,580.45 |

---

[1] This list reflects changes made as of Manatt's previous application filed on November 26, 2008. Manatt is still receiving invoices and bills in connection with its work on this matter. Manatt reserves its right to supplement its request and/or to make any appropriate adjustments as additional information becomes available to it.

| EXPENSE CATEGORY | TOTAL AMOUNT |
|---|---|
| Document Production | 8,330.85 |
| Experts - LECG | 41,564.82 |
| Experts – OSKR | 190,312.32 |
| Experts – Resolution Economics | 46,717.67 |
| Experts/Consultants | 50,141.10 |
| Fax Charges | 813.00 |
| Federal Express | 6,952.54 |
| Mock Trial and Trial Consulting | 104,010.32 |
| Postage | 510.95 |
| Reproduction | 36,187.00 |
| Supplies (includes purchase of Madden games for research and supplies for war room) | 1,520.75 |
| Telephone Charges | 1,266.42 |
| Travel Expenses (hotel/airfare/meals/mileage/parking) | 103,794.27 |
| Trial Expense (includes hotel and all incidentals for Manatt personnel, Trial support personnel, and witnesses) | 114,345.29 |
| **TOTAL** | **875,541.87** |
| **TOTAL (Less $11,250 in Adjustments)** | **$864,291.87** |

49. Most of the items listed in the chart above are self-explanatory. The photocopying charges in this case were substantial due to the number of documents produced and number of exhibits used at depositions and at trial. Travel included transport costs, as well as costs related to lodging and meals, incurred by Manatt timekeepers to attend court hearings, depositions, meetings, and trial. Computer research is the cost of performing on-line legal research for pre-trial, trial and post-trial briefs.

50. Expert charges were quite significant, but they were important to our success on behalf of the class. Philip Rowley, LECG, and Resolution Economics provided assistance with damage and accounting issues. OSKR provided sports and marketing expertise. TrialGraphix provided trial and jury consulting and assistance with graphics and exhibits for the trial.

51. I have exercised billing judgment on non-taxable costs in the following ways: (1) I

have deleted any costs directly related to the classes that were not certified; and (2) I deleted entries containing certain *de minimis* costs.

52. Regarding airfare, I deleted all of Peter Parcher's airfare, which was valued at over $10,000. These amounts are reflected in the above chart. In addition, I reduced the total amount of expenses above by another $10,000 in order to account for any first class flights I may have taken. (We looked into, but could not confirm, which of my flights may have been first class instead of coach, as well as what it would have cost to fly coach during the relevant time periods.) As far as I know, no one else from Manatt flew first class in connection with this case.

53. Regarding hotel charges, I adjusted the rates to reflect the amounts that would have been due had everyone stayed at Le Meridien during trial, which is where Defendants' Counsel also stayed. These resulted in a reduction of $4,969.86 that is reflected in the above chart. Plaintiffs' Counsel also searched for and I deleted all obvious in-room movie expenses as well as all obvious alcohol expenses. In an abundance of caution, I also reduced the total amount of expenses by another $1,250 in order to account for any additional alcohol that may have been purchased, however unlikely.

54. In addition, to the extent any costs included in the cost bill are disallowed or deemed not recoverable, Plaintiffs alternatively seeks recovery of any such items by this motion.

### EFFORTS OF CLASS REPRESENTATIVE HERBERT ANTHONY ADDERLEY

55. Class representative, Herbert Anthony Adderley, made significant contributions to the prosecution of this case by devoting his time, effort and reputation to this matter. Mr. Adderley, the sole Class representative, was deposed in the case, was extensively examined at the trial, and attended every day at trial thousands of miles from his home, with physical discomfort because of back surgery. Additionally, Mr. Adderley assisted with the production of documents and in responding to interrogatories. Based on my discussions with Mr. Adderley, I believe he spent over 550 hours on this matter.

### SUMMARY

56. Manatt respectfully requests a fee award of its share of thirty percent (30%) of the settlement amount minus expenses, or **$7,369,648.90**, based on the lodestar amount for its

attorneys' fees, costs, and other disbursements broken down as follows:

| | |
|---|---|
| Attorneys' Fees | $4,531,237.50 |
| Other Expenses and Disbursements | $864,291.87 |

57. Plaintiffs' Counsel also respectfully requests an incentive award for class representative Herbert Adderley in the amount of $60,000.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Signed this 2nd day of October, 2009, at Palo Alto, California.

/s/ Ronald S. Katz
Ronald S. Katz