MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HERBERT ANTHONY ADDERLEY, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC., a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND OF PROPOSED PLAN OF DISTRIBUTION**<br><br>Date: Thursday, November 19, 2009<br>Time: 2:00 p.m.<br>Judge: Honorable William H. Alsup<br>Place: Courtroom 9, 19th Floor |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

Dockets.Justia.com

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................. 1
II. ALL REQUIREMENTS OF THE PRELIMINARY APPROVAL ORDER HAVE BEEN SATISFIED ................................................................................................. 2
III. BACKGROUND OF LITIGATION ..................................................................... 3
    A. Procedural Posture ..................................................................................... 3
    B. Allegations of the Class and Defendants' Response .................................. 4
    C. Litigation and Trial .................................................................................... 5
IV. SUMMARY OF SETTLEMENT TERMS AND ALLOCATION PLAN ............ 5
V. THE SETTLEMENT AGREEMENT IS FAIR ..................................................... 6
    A. The Settlement Agreement is Presumed Fair. ........................................... 7
    B. The Settlement Agreement Also is Fair, Adequate and Reasonable Under the Multi-Factor Balancing Test Employed by the Courts ......................... 7
        1. The Risk, Complexity, and Expense of Further Litigation, Including the Maintenance of Class Status, Demonstrate that the Settlement is Proper ............................................................................................... 8
        2. The Amount of the Settlement Also Demonstrates that the Settlement is Proper ................................................................................................ 9
        3. The Stage of the Proceedings, the Experience and Views of Counsel, and the Reaction of the Class Members to the Proposed Settlement, Warrant Approval. .............................................................................. 10
        4. The Settlement Agreement is Not the Result of Fraud or Collusion ........ 11
VI. THE PLAN OF DISTRIBUTION IS FAIR AND REASONABLE .................... 11
VII. CONCLUSION .................................................................................................... 13

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

i

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

# TABLE OF AUTHORITIES

**Page**

### CASES

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................................ 10

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ................................................................................................... 8

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .............................................................................................. 11

*Glass v. UBS Financial Services, Inc.*,
    2007 WL 221862, *4 (N.D. Cal.) ........................................................................................... 9

*Hanlon v. Chrysler*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................................ 7

*In re Critical Path Inc.*,
    2002 WL 32627559, at *5 (N.D. Cal. June 18, 2002) ............................................................ 7

*In re Heritage Bond Litigation*,
    2005 WL 1594403, 2 (C.D. Cal.) ................................................................................ 7, 11, 12

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .................................................................................................. 9

*In re Omnivision Tech., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................................................... 10, 11

*In re Oracle Securities Litigation*,
    1994 WL 502054 *1 (N.D. Cal. 1994) ............................................................................ 11, 12

*In re Zoran Corp. Derivative Litigation*,
    2008 WL 941897, 2 (N.D. Cal.) ........................................................................................... 11

*Jaffe v. Morgan Stanley*,
    2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008) ................................................................. 10

*Kakani v. Oracle Corp.*,
    2007 WL 2221073, at *3 (N.D. Cal. Aug. 2, 2007) .............................................................. 10

*Linney v. Alaska Cellular P'ship*,
    1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th
    Cir. 1998) ................................................................................................................................ 7

*National Rural Telecomm. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................... 7, 8, 9, 10, 11

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ....................................................................................... 6, 7, 8, 9

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................................... 8, 10

### OTHER AUTHORITIES

4 A Conte & H. Newberg, *Newberg on Class Actions,* § 11:50 at 155 (4th ed.
    2002) .................................................................................................................................. 7, 8

5 *Moore's Federal Practice* § 23.85[2][a] (Matthew Bender 3d ed.) ............................................ 8

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

ii

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

5 *Moore's Federal Practice* § 23.85[2][d] .................................................................................... 11

**RULES**

Fed. Rules of Civ. Proc. 23(e) ........................................................................................................ 6

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

iii

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 19, 2009 at 2:00 p.m. in the above-entitled Court, Plaintiff Herbert Adderley, on behalf of himself and the certified Class (the "GLA Class"), by undersigned counsel ("Class Counsel"), will and hereby does respectfully move the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for an order which: (1) approves the Settlement as fair, reasonable, and adequate and in the best interest of the Class; (2) approves the Plan of Distribution as fair and reasonable; (3) orders the consummation of the settlement subject to its terms; and (4) grants such other and further relief to which the Court believes Class Representatives are entitled.

This Motion is based on the attached Memorandum of Points and Authorities; the Declarations of Ronald Katz, Jennifer M. Keough, and Herbert Anthony Adderley; the Settlement Agreement and Plan of Distribution; all other pleadings and matters of record; and on such additional evidence or argument as may be presented at the hearing.

Dated:   October 15, 2009          MANATT, PHELPS & PHILLIPS, LLP


By:   /s/ Ronald S. Katz          .
      Ronald S. Katz (SBN 085713)
      Ryan S. Hilbert (SBN 210549)
      Noel S. Cohen (SBN 219645)
MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Building 2
Palo Alto, CA  94304-1006
Telephone:    (650) 812-1300
Facsimile:    (650) 213-0260

McKOOL SMITH, P.C.
Lewis T. LeClair, Esq.
Jill Adler Naylor
300 Crescent Court
Suite 1500
Dallas, TX 75201
214-978-4984
214-978-4044 (fax)

*Attorneys for Plaintiff*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1

2

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO.  C 07-0943 WHA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Herbert Adderley ("Plaintiff"), by undersigned counsel ("Class Counsel"), respectfully submits this memorandum in support of his motion for an order finally approving the settlement of this class action with Defendants National Football League Players Association ("NFLPA") and National Football League Players Incorporated d/b/a Players Inc ("Players Inc") (collectively, "Defendants"). Plaintiff also seeks an order finally approving his proposed plan of distribution. Defendants join in the relief that Plaintiff and the Class request in this Motion, but do not stipulate to, and do not necessarily agree with, the statements made in this memorandum.

As the Court is aware, this case involved more than two years of hard-fought litigation against very formidable opponents. Following a multi-week trial on the merits, the jury returned a verdict on November 10, 2008 in favor of the Class and against Defendants. Plaintiff and his counsel have since built upon this excellent result by entering into a settlement with Defendants, under which Defendants have agreed to pay $26,250,000 in cash (the "Settlement Agreement").

The Settlement Agreement, which was executed on June 5, 2009 and preliminarily approved by this Court on August 18, 2009, was achieved through extensive arms-length negotiations by experienced counsel representing sophisticated clients and was based on the parties' comprehensive knowledge of the relative strengths of their respective positions. Had Plaintiff and his counsel not settled, they risked obtaining a recovery substantially smaller than the settlement, or no recovery at all, as a result of Defendants' subsequent appeal. Defendants have strongly denied Plaintiffs' allegations, denied that they engaged in wrong-doing, and denied that they have any liability whatsoever, and, represented by able counsel, have expended substantial resources defending the case.

In light of Defendants' vigorous defense, the settlement – which is 93% of the jury's $28.1 million verdict – amounts to a significant recovery for the Class, without the risk of a reversal or reduction on appeal. Already the Court has preliminarily approved the settlement agreement and found it sufficiently within the range of reasonableness. Plaintiff now seeks final

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1 1

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

approval of the Settlement Agreement and of his proposed plan of distribution, among other things.

## II. ALL REQUIREMENTS OF THE PRELIMINARY APPROVAL ORDER HAVE BEEN SATISFIED

On August 18, 2009, the Court issued an Order (the "Order") preliminarily approving the Settlement Agreement between Plaintiff and Defendants. The Order also:

(2) Required Class Counsel to distribute copies of the Notice of Proposed Settlement and Settlement Hearing (the "Notice") to all Class Members within twenty (20) days of the Order;

(3) Required Defendants' Counsel to publish in a noticeable position on the front page of their website a link to the Notice within twenty (20) days of the Order; and

(4) Required Class Counsel and Defendants' Counsel to serve and file prior to the November 19, 2009 "fairness hearing" sworn statements attesting to compliance with the provisions of items (2) and (3) above.

All requirements of the Preliminary Approval Order have been satisfied. As directed, Class Counsel caused the Claims Administrator, Garden City, to distribute copies of the Notice by first class mail to Class Members. Declaration of Ronald S. Katz ("Katz Decl.") ¶ 2; Declaration of Jennifer M. Keough ("Keough Decl.") ¶ 4. The Notice stated that any objections to the Settlement, including to the Plan of Distribution, must be received by October 29, 2009. Katz Decl., Exh. 1. The Notice also stated that any objections to Plaintiffs' Counsels' fee request must also be received by October 29, 2009. *Id.* Class Counsel will file a sworn statement attesting to their compliance of this requirement prior to the November 19, 2009 fairness hearing.

Class Counsel also caused Garden City to establish and maintain a 24-hour toll-free telephone helpline where Class Members could obtain information about the settlement. Katz Decl. ¶ 3; Keough Decl. ¶ 5. Once a caller connects to the helpline, he or she hears an Interactive Voice Recording ("IVR"). Keough Decl. ¶ 5. The IVR also allows a caller to leave a message and request a call back to be returned by a live operator. *Id.* GCG promptly called each person from whom a return call was requested. *Id.*
MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1

2

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

In addition, Class Counsel caused Garden City to establish and maintain an official website at www.retiredplayerclassaction.com for the purpose of providing the Notice to Class Members via the Interent, to provide further information about the settlement, and to answer those questions most frequently asked by the retired players. Katz Decl. ¶ 3; Keough Decl. ¶ 6.

Regarding those obligations of Defendants, Class Counsel is aware that Defendants have published in a noticeable position on the front page of their website a link to the Notice. Katz Decl. ¶ 4, Exh. 3. Similarly, on October 13, 2009, Defendants filed a notice of compliance with the Class Action Fairness Act. Notice of Compliance with Requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 (Docket No. 647).

## III. BACKGROUND OF LITIGATION

### A. Procedural Posture

On April 29, 2008, the Court ruled that this lawsuit may proceed as a class action and that Herbert Adderley was an adequate class representative. *See* Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification (Docket No. 275). The Court slightly modified this ruling on June 9, 2008, and defined the Class as:

> All retired NFL players who executed a group licensing authorization form (GLA) with the NFLPA that was in effect at any time between February 14, 2003 and February 14, 2007 and which contains the following language: "[T]he moneys generated by such licensing of retired player group rights will be divided between the player and an escrow account for all eligible NFLPA members who have signed a group licensing authorization form."

Stipulation and Order Revising Class Definition and Notice (Docket No. 289).

After extensive discovery and litigation, including the extensive utilization of experts and one-sided settlement discussions initiated by Class Counsel, the parties proceeded to a three-week jury trial in this Court. On November 10, 2008, the jury returned a verdict against Defendants that, among other things, awarded the Class $7.1 million in actual damages and another $21 million in punitive damages, both arising from Defendants' breach of their fiduciary duties. On January 28, 2009, final judgment was entered by the Court in the amount of $28.1 million. *See* Amended Judgment (Docket No. 611). On February 3, 2009, Defendants filed an appeal with the United States Court of Appeals for the Ninth Circuit. Notice of Appeal (Docket No. 612). On

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1

3

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

appeal, Defendants likely would have contested fundamental issues, including class certification and choice of law, as well as various evidentiary issues. Significantly, Defendants also intended to contest the verdict and resultant judgment, and several other potentially dispositive issues.

Pursuant to the Settlement Agreement, the parties filed a joint stipulation to request that the Ninth Circuit dismiss the Defendants' appeal without prejudice to reinstatement on June 15, 2009, pending this Court's consideration of the parties' request for approval of the settlement. The Ninth Circuit granted that request on June 29, 2009, and returned jurisdiction over this case to this Court.

### B. Allegations of the Class and Defendants' Response

Plaintiff Herbert Adderley, individually and as class representative, contends Defendants breached certain contractual and fiduciary obligations owed to Adderley and the Class in connection with a Group Licensing Authorization ("GLA") form. Under the GLA, Defendants were granted the right to use a player's name, signature, facsimile, voice, picture, photograph, likeness and/or biographical information for "group licensing programs." The GLA defines a "group licensing program" as any program or license "in which a licensee utilizes a total of six (6) or more present or former NFL player images in conjunction with or on products that are sold at retail or used as promotional or premium items." Defendants promoted the concept of a "group licensing program" for retired players for over a decade.

After soliciting and acquiring GLAs from thousands of retired players, Defendants entered into profitable group licensing agreements with several third parties, including Electronic Arts, Inc. and the Topps Company, Inc. These agreements generated tens of millions of dollars each year in guaranteed minimum royalties for Defendants. Adderley alleged that Defendants failed to pay Adderley and the Class their share of the licensing revenue generated from such agreements, and that Defendants instead kept those monies for themselves. In the alternative, Adderley alleged that Defendants should have negotiated vigorously for inclusion of retired players in licensing programs, but failed to do so in breach of their obligations as agents of the Class Members. Adderely further claimed that Defendants negotiated for below-market rates for retired player licenses.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1

4

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

1    Defendants have denied all of Adderley's allegations and deny that they engaged in any
2  wrongdoing, or that have any liability, whatsoever. Eventually Defendants agreed to pay $26.25
3  million to settle all claims and put an end to this litigation.

### C. Litigation and Trial

The jury verdict and resultant judgment was achieved after nearly two years of vigorous and hard-fought litigation. Katz Decl. ¶ 5. During this time, Class Counsel spent thousands of hours – which equate to millions of dollars – of attorney and paralegal time analyzing hundreds of thousands of pages of documents; taking and defending multiple depositions across the country; drafting numerous briefs and motion papers, most of which were drafted in response to motions filed by Defendants; battling over class certification and pleading amendments, including a motion for summary judgment and motions to decertify the class; participating in numerous court hearings; consulting repeatedly with damage and sports economics experts; and conducting a three-week jury trial. *Id.*

Based on their extensive knowledge of and familiarity with this case, the potential risk (however remote) that the judgment could be overturned on appeal, and on the fact that the settlement amount is only $1.85 million less than the amount of the jury verdict, Class Counsel and Class representative Herbert Adderley believe that the Settlement Agreement is fair, reasonable, and adequate and in the best interests of the Class. Katz Decl. ¶ 8; Declaration of Herbert Anthony Adderley ("Adderley Decl.") ¶ 5.

## IV. SUMMARY OF SETTLEMENT TERMS AND ALLOCATION PLAN

Subject to Court approval, Defendants have agreed to pay $26,250,000 (Twenty-Six Million Two Hundred Fifty Thousand Dollars) to resolve this matter. Katz Decl., Exh. 4. This amount is to be paid in two installments. *Id.* The first installment of $13,125,000 (Thirteen Million One Hundred Twenty-Five Thousand Dollars), constituting one-half of the settlement amount, was put into an escrow account on July 13, 2009. *Id.* Subject to the Court's approval of the Settlement Agreement, and provided there are no appeals of the Court's ruling, Defendants have agreed to pay the second installment of $13,125,000 (Thirteen Million One Hundred Twenty-Five Thousand Dollars), constituting the other half of the settlement amount, into an

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1

5

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

escrow account by no later than June 5, 2010. *Id.*

The Settlement Agreement further provides that attorney's fees, costs, any incentive fee, and expenses may be paid out of the Settlement Fund (as that term is defined in the Settlement Agreement) after Court approval. Katz Decl., Exh. 4. On October 2, 2009, Class Counsel filed their renewed application for attorneys' fees, expenses and an incentive payment for Herbert Adderley. Class Counsels' Renewed Application for Preliminary and Final Determination of Costs, Fees, Expenses, and an Incentive Payment for Class Representative, Herbert Adderley (Docket No. 642). In that Application, Class Counsel respectfully requested an award of 30% of the settlement amount minus expenses. *Id.* at 3. Plaintiffs' Counsel further request that they be awarded their fees, and that the sole class representative, Herbert Adderley, be awarded an incentive fee in the amount of $60,000 for his substantial and substantive participation on behalf of the entire GLA Class. *Id.*; *see also* Adderley Decl., Exh. A. This amount is approximately .2% of the $26,250,000 settlement amount. The remainder of the settlement amount would then be distributed between the Class Members in accordance with the Plan of Distribution, as approved or amended by the Court. Katz Decl., Exh. 2.

In exchange for Defendants' agreement to pay the Class $26,250,000, each Class Member must agree to release Defendants from any claims, demands and causes of action that were the subject of the certified claims or that were alleged in the Class Action. Katz Decl., Exh. 4. As the Court is aware, expressly excluded from the releases are "[a]ny claims by class members, individually or as a class, against Electronic Arts or any other licensee of defendants concerning misuse of their images or identities, including scrambling . . . ." *Id.*

## V. THE SETTLEMENT AGREEMENT IS FAIR

As protection for absent Class Members, Rule 23(e) requires that a class action only be settled with the approval of the Court. *See Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 623-24 (9th Cir. 1982). It is well established that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625. Indeed, "unless [a] settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1

6

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

*Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004); 4 A Conte & H. Newberg, *Newberg on Class Actions* § 11:50 at 155 (4th ed. 2002). This is especially true of class actions.

### A. The Settlement Agreement is Presumed Fair.

A presumption of fairness arises where: (1) counsel is experienced in similar litigation; (2) the settlement was reached through arm's length negotiations; (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently. *In re Heritage Bond Litigation,* 2005 WL 1594403, 2 (C.D. Cal.); *Linney v. Alaska Cellular P'ship,* 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."), *aff'd,* 151 F.3d 1234 (9th Cir. 1998). Here, the parties' Settlement Agreement is presumed fair. The settlement was reached by experienced, fully-informed counsel after many years of litigation and a jury trial. *See* Katz Decl. ¶ 7. It also took months of continuous arm's length negotiations between experienced counsel and sophisticated parties to reach terms on which both parties could agree. *Id.*

### B. The Settlement Agreement Also is Fair, Adequate and Reasonable Under the Multi-Factor Balancing Test Employed by the Courts.

It is the responsibility of this Court to determine whether the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler*, 150 F.3d 1011, 1026 (9th Cir. 1998). In doing so, the Court should consider a number of factors, including: (1) the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status through trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; and (6) the reaction of the Class Members to the proposed settlement. *Officers for Justice*, 688 F.2d at 625; *In re Critical Path Inc.*, 2002 WL 32627559, at *5 (N.D. Cal. June 18, 2002).

The Court can give varying weight to these or other factors, depending on the circumstances of the particular case. *Officers for Justice*, 688 F.2d at 625; *National Rural Telecomm. Coop.*, 221 F.R.D. at 526 (C.D. Cal. 2004) (*citing,* 5 *Moore's Federal Practice* §

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1

7

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

23.85[2][a] (Matthew Bender 3d ed.)). Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

It is also worth noting that "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Officers for Justice*, 688 F.2d at 625. The Court should not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements." *Id.*

Ultimately, review is limited to the extent necessary "to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* ("Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'") (*quoting City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974)). As demonstrated below, an analysis of each of the factors set forth above strongly supports a finding that the settlement is fair, reasonable and adequate, and is in the best interest of the GLA Class.

**1. The Risk, Complexity, and Expense of Further Litigation, Including the Maintenance of Class Status, Demonstrate that the Settlement is Proper.**

Acceptance and approval of a settlement is preferable to lengthy and expensive litigation with uncertain results. *National Rural Telecomm. Coop.*, 221 F.R.D. at 526 (citing 4 A Conte & H. Newberg, *Newberg on Class Action*, § 11:50 at 155 (4th ed. 2002)). "The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'" *National Rural Telecomm. Coop.*, 221 F.R.D. at 526 (citations omitted). The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators. *Id.*

Here, there is no question that Defendants intended to pursue this matter through the

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1

8

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

appellate process and beyond. Defendants' counsel made numerous statements to this effect in the days and months following the jury verdict against Defendants.[1] Nor is there any question that Plaintiffs risked losing some or all of their judgment on appeal. Defendants previously indicated that they intended to contest the judgment on appeal, as well as a wide range of fundamental issues, including choice of law and class certification. A negative result on the class certification issue could have resulted in Plaintiffs' inability to maintain their class status.

Because Plaintiffs will receive most of their awarded damages through the Settlement Agreement, there is little benefit to them of further costly and unpredictable litigation. At the same time, there is a risk that Plaintiffs could have their award reversed and receive nothing. Settlement is clearly the preferred alternative.

### 2. The Amount of the Settlement Also Demonstrates that the Settlement is Proper.

In assessing the consideration obtained by the class members in a class action settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *National Rural Telecomm. Coop.*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628). In determining whether the amount of a proposed settlement is fair, it has been suggested that the district court compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, *4 (N.D. Cal.) (*citing, In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)). Even a cash settlement amounting to only a fraction of the potential recovery – which is not the case here; Defendants' offer represents 93% of the value of Plaintiffs' judgment – does not per se render the settlement inadequate or unfair. *Id.* (approving settlement of 25% to 35% of the amount plaintiffs hoped to prove at trial).

In the context of settlement, class plaintiffs typically accept some fraction of their

---

[1] Soon after the jury returned a verdict in favor of the retired players and against Defendants, counsel for Defendants told the press that the verdict was "unjust" and that Defendants were "confident it would be overturned." Katz Decl., Exh. 5. Over two months later, in January 2009, counsel for Defendants re-affirmed his position. When asked whether Defendants would drop their appeal, Defendants' Counsel stated "I don't think the union was wrong in that lawsuit." *Id.*, Exh. 6. Moreover, when told by a reporter that "[t]he judge felt the [NFLPA] was wrong," counsel for Defendants stated that he did not "think there was any evidence to support that." *Id.* Defendants' counsel even stated that he would not advise Defendants "just to give up on that lawsuit." *Id.*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1

9

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

1  damages in exchange for avoidance of the risks and costs of trial. *See, e.g.*, *Jaffe v. Morgan
2  Stanley*, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008) ("The settlement amount could
3  undoubtedly be greater [than 40% of predicted damages], but it is not obviously deficient, and a
4  sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that
5  come with litigating a case to trial."); *see also Kakani v. Oracle Corp.*, 2007 WL 2221073, at *3
6  (N.D. Cal. Aug. 2, 2007) (granting preliminary approval to settlement for 12.3% of maximum
7  claims). Here, Defendants' agreement to pay $26.25 million in settlement represents only a slight
8  decrease from the $28.1 million awarded by the jury. At the same time, Plaintiffs avoid the
9  uncertainties, risks, and costs that come with further litigation. This is a strong and credible result
10 for the GLA Class. Indeed, the Court can approve the Settlement Agreement based on this factor
11 alone. *See Torrisi*, 8 F.3d at 1376 (one factor alone may prove determinative in finding sufficient
12 grounds for court approval).

### 3. The Stage of the Proceedings, the Experience and Views of Counsel, and the Reaction of the Class Members to the Proposed Settlement, Warrant Approval.

15 In approving class settlements, courts generally defer to the judgment of experienced
16 counsel who have conducted arms-length negotiations. *In re Omnivision Tech., Inc.*, 559 F. Supp.
17 2d 1036, 1043 (N.D. Cal. 2007); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).
18 Indeed, "[g]reat weight is accorded to the recommendation of counsel, who are most closely
19 acquainted with the facts of the underlying litigation." *National Rural Telecomm. Coop.*, 221
20 F.R.D. at 528. The reason for this is that the "parties represented by competent counsel are better
21 positioned than courts to produce a settlement that fairly reflects each party's expected outcome
22 in the litigation." *Id*. For this same reason, "the trial judge, absent fraud, collusion, or the like,
23 should be hesitant to substitute its own judgment for that of counsel." *Id*.
24 In this case, the settlement reflects the result of extensive, arms-length negotiation
25 between experienced counsel representing sophisticated clients. Katz Decl. ¶ 7. Because of the
26 preparation, investigation and evaluation by a myriad of counsel in this matter on behalf of both
27 Defendants and the Class, and the fact that the evidence and arguments have been thoroughly
28 tested before a jury and in a subsequent motions for judgment as a matter of law, the parties are in

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1

10

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

an excellent position to make a realistic assessment of their strengths and weaknesses.

The reactions of the class members to a proposed settlement also is a proper consideration for the Court. *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1043; *National Rural Telecomm. Coop.*, 221 F.R.D. at 528 (quoting 5 *Moore's Federal Practice* § 23.85[2][d]). The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members. *National Rural Telecomm. Coop.*, 221 F.R.D. at 529.

Here, an overwhelming number of the retired players who have contacted Class Counsel about the settlement have indicated their approval.[2] *Id.* Katz Decl. ¶ 9.

### 4. The Settlement Agreement is Not the Result of Fraud or Collusion.

Collusive settlement "usually come as a cash award to counsel, a broad release of claims, and a cosmetic non-cash recovery for the absent shareholders." *In re Zoran Corp. Derivative Litigation*, 2008 WL 941897, 2 (N.D. Cal. 2008). There is absolutely no hint of any such collusion here. First, the settlement releases only the claims of members of the certified Class, and only relates to those claims that were the subject of the certified claims or that were alleged in the Class Action. Second, Class Counsel acknowledges that any fee and expenses award is based on the amount of the common settlement fund and will be granted at the discretion of the Court. Third, as seen above, because the settlement is based on recovery of 93% of the GLA Class's judgment, the settlement confers substantial benefit upon absent Class Members.

## VI. THE PLAN OF DISTRIBUTION IS FAIR AND REASONABLE

Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992); *In re Heritage Bond Litig.,* 2005 WL 1594403, *11; *see also In re Oracle Securities Litigation,* 1994 WL 502054 *1 (N.D. Cal. 1994). An allocation formula need only have a

---

[2] On October 14, 2009, the Court issued an Order suggesting that some Class Members may have filed comments, positive and negative, in connection with the Settlement Agreement. Notice Re Objections (Docket No. 650). Class Counsel is currently in the process of obtaining and reviewing these comments. Class Counsel reserves their right to more fully respond to these comments at the appropriate time.

reasonable, rational basis, particularly if recommended by experienced and competent counsel. *In re Heritage Bond Litig.,* 2005 WL 1594403, *11 (citations omitted). Generally, a plan of allocation that reimburses class members based on the extent of their injuries is "reasonable." *Id.; In re Oracle Securities Litig.,* 1994 WL 502054 *1. However, it also is reasonable to "allocate more of the settlement to class members with stronger claims on the merits." *In re Heritage Bond Litig.,* 2005 WL 1594403, *11.

The proposed Plan of Distribution is fair, reasonable and adequate. The Plan was drafted by Class Counsel with the input of their economic consulting experts, and has been sent by the Claims Administrator, Garden City, to Class Members via first class mail. As explained in the Plan, Class Members are to be compensated consistent with the way the active players were compensated during the same years at issue in this lawsuit. The Plan states:

> It is the judgment and contention of Class Counsel that the Class Members' alleged damages stem from being denied participation in the royalties shared with active NFL players. Thus, in the judgment of Class Counsel, division of the payout would be most equitable if it mirrors the way in which Class Counsel understands based upon the evidence in this case that the active players received payments from the Gross Licensing Revenue pool for the years 2004 through 2007 that are included in the Class Period. It is Class Counsel's understanding based on the evidence, that the eligible active players received approximately twenty percent (20%) of the total licensing revenue during the class period in 2004, twenty four percent (24%) of the total licensing revenue during the class period in the second year (2005); twenty five percent (25%) of the total licensing revenue was paid in the third year (2006); and thirty one percent (31%) of the total licensing revenue was paid in the fourth year (2007). Class Counsel further understands, based on the evidence, that each year the amounts were divided equally among the eligible active NFL players for that year.

Katz Decl., Exh. 2.

The Plan also seeks to allocate more of the settlement to those Class Members who had GLAs in effect for more than one year or several years on the ground that such Class Members arguably suffered greater harm as a result of Defendants' failure to market or license their rights. For example, a retired player who had a GLA in effect only for 2003 arguably lost out only on the licensing and marketing opportunities that would have been available for that single year, while a retired player who had a GLA in effect 2003 through 2006 lost out on licensing and marketing opportunities for each of those four years.

This formula is reasonable and rational, and intends to allocate more of the settlement to

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1

12

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA

1 | class members with stronger claims on the merits. Class Counsel is of the opinion that this is the
2 | fairest division of Net Settlement proceeds.

3 | **VII. CONCLUSION**

4 | Based on the foregoing, the Class Representative and Class Counsel respectfully request
5 | that the Court, after conducting the Fairness Hearing, enter an order which: (1) approves the
6 | Settlement as fair, reasonable, and adequate and in the best interest of the Class; (2) approves the
7 | Plan of Distribution as fair and reasonable; (3) orders the consummation of the settlement subject
8 | to its terms; and (4) grants such other and further relief to which the Court believes Class
9 | Representatives are entitled.

Dated: October 15, 2009

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Ronald S. Katz .
Ronald S. Katz (SBN 085713)
Ryan S. Hilbert (SBN 210549)
Noel S. Cohen (SBN 219645)
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
Lewis T. LeClair (SBN 077136)
Jill Adler Naylor (SBN 150783)
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20219842.1

13

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF SETTLEMENT
CASE NO. C 07-0943 WHA