MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
RYAN S. HILBERT (California Bar No. 210549)
E-mail: rhilbert@manatt.com
NOEL S. COHEN (California Bar No. 219645)
E-mail: ncohen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MCKOOL SMITH, P.C.
LEWIS T. LECLAIR (Bar No. CA 077136)
E-mail: lleclair@mckoolsmith.com
JILL ADLER NAYLOR (Bar No. CA 150783)
E-mail: jnaylor@mckoolsmith.com
300 Crescent Court
Dallas, TX 75201
Telephone: (214) 978-4984
Facsimile: (214) 978-4044

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HERBERT ANTHONY ADDERLEY, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation, and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a PLAYERS INC., a Virginia corporation,<br><br>Defendants. | CIVIL ACTION NO. C07 0943 WHA<br><br>**CLASS COUNSELS' RESPONSE TO OBJECTIONS AND CLASS COUNSELS' OBJECTION TO PARTICIPATION BY NON-CLASS MEMBERS IN ANY PHASE OF THE SETTLEMENT PROCEEDINGS**<br><br>Date: Thursday, November 19, 2009<br>Time: 2:00 p.m.<br>Judge: Honorable William H. Alsup<br>Place: Courtroom 9, 19th Floor |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1

RESPONSE RE OBJECTIONS
CASE NO. C 07-0943 WHA

Dockets.Justia.com

Counsel for the GLA Class ("Class Counsel" or "Plaintiffs' Counsel") respectfully submit the following response pursuant to the Court's October 14, 2009 Order entitled "Notice Re Objections" and Class Counsel's Notice of Class Settlement.

## I. INTRODUCTION

Despite obtaining a $28.1 million jury verdict against intense opposition and settling for 93.4% of that amount on behalf of over 2,060 retired NFL players, Class Counsel are aware that a small number of class members – and some retired members who are not in the Class – have submitted comments to the Court expressing objections.[1] The overwhelming majority of these comments – 41 of the 53 received overall – are based on an inaccurate form letter provided by Bernard Paul Parrish, a former putative class representative who was deemed inadequate by this Court, in part, because he was "unwilling to make any settlement in this case, even if [, as here,] it were ultimately beneficial to any certified class." Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification, April 29, 2008 (Docket No. 275) ("Certification Order"). Indeed, as this Court noted at the time: "Parrish's personal vendetta against Upshaw and the NFLPA would be a roadblock to any favorable settlement." Id. at 13.

Moreover, Mr. Parrish has no standing in this matter because he is not a class member. *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1113 n.9 (C.D. Cal. 2002) ("[N]on-class members . . . lacked standing to object and their individual rights would not be affected by the settlement."); *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 2001 U.S. Dist. LEXIS 25904, *25 (N.D. Cal. Oct. 24, 2001) ("[P]ersons who are not members of the class have no standing to object to the settlement of a class action."); *Mayfield v. Barr*, 985 F.2d 1090 (D.C. Cir. 1993) (holding "[t]hose who are not class members, because they are outside the definition of the class or have opted out" lack standing to object to class settlement); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) (citations omitted) ("The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals."). Based on this clear and logical authority, Class Counsel objects to the participation of non-class members in any

---

[1] Class Counsel obtained copies of these statements from the Court on two occasions, first on October 19, 2009, and then again on November 4, 2009. Pursuant to the Court's October 14, 2009 Order entitled "Notice Re Objections", a summary of these statements is attached hereto as Exhibit 1.

phase of the settlement process of this matter. This trial, verdict and settlement pertain only to players who signed Group Licensing Authorizations during a certain period of time, which non-class members, including Mr. Parrish, did not do.

Of those twelve comments not attributed to Mr. Parrish's form letter, six are from retired players who are not in the class, one requests that the Court re-calculate the amount of the jury verdict based on a misunderstanding about the damages information considered, and one is a letter that appears to have originated with Mr. Parrish, but for which there is no name of sender or return address. Two more comments are from Mr. Parrish, including a letter dated September 30, 2009 in which he requests a copy of Class Counsel's August 4, 2009 letter to the Court, and a letter dated October 29, 2009 in which he says nothing of substance about the settlement.

The final two comments are from retired players who support the settlement. One of these is from Jeff Nixon, a class member who disseminates blogs supportive of retired player rights. Even though Mr. Nixon will likely receive the lowest amount available under Class Counsel's proposed plan of distribution, he nonetheless strongly supports the settlement, noting that it is 93.4% of the amount awarded by the jury. The other is from Troy Auzenne, who views the settlement as an unexpected windfall for which he thanks the Court.

In short, when one disregards those comments attributed to Mr. Parrish and/or submitted by retired players who are not in the class, one is left with only three comments, two of which are positive. This raises a strong presumption that the terms of the proposed class action settlement are favorable to the class members and thus should be approved. *National Rural Telecom. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").[2]

---

[2] No objections were received to Class Counsels' fee application, which seeks a percentage-of-the-fund approach that reflects D.C. law. That law adopts the Report of the Third Circuit Task Force on this subject. *See* Katz Declaration Exh. B; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("In sum, we join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases."). Also, there were no objections to the Class Representative's incentive fee.

## II. CLASS COUNSELS' RESPONSES TO THE RETIRED PLAYER COMMENTS

### A. The Overwhelming Majority of Retired Player Comments are Inaccurate Form Letters That Were Provided by Mr. Parrish And That Should be Disregarded.

Forty-one of the fifty-three comments submitted by retired players are inaccurate form letters (the "Parrish Letter") that Mr. Parrish made available for download on the Internet as early as September 20, 2009. *See* Declaration of Ronald S. Katz ("Katz Decl.") Exh. A. Of those forty-one, thirteen are from retired players who, like Mr. Parrish, are not in the class. Non-class members have no standing to object to the settlement of a class action. *San Francisco NAACP v. San Francisco Unified Sch. Dist.,* 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) (citing *Gould v. Alleco, Inc.,* 883 F.2d 281, 284 (4th Cir. 1989) ("The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals.")).

There are several reasons Class Counsel respectfully request that the Court disregard these letters.

### 1. The Parrish Letter Was Authored by a Non-Class Member Whom the Court has Ruled Has a "Stated Unwillingness to Ever Settle this Case."

As the Court will recall, Mr. Parrish was the former putative class representative for the retired-member class. In an Order dated April 29, 2008, however, this Court ruled that Mr. Parrish was an inadequate class representative and thus declined to certify the retired-member class. *See* Certification Order. Among the reasons given by the Court for its Order was Mr. Parrish's "stated unwillingness to ever settle this case . . . ." *Id*. at 14:7-10. The Court expressly noted:

- "Parrish's views of the NFLPA demonstrate he would be unwilling to make any settlement in this case, even if it were ultimately beneficial to any certified class." Certification Order at 12:22-23.

- "Parrish's personal vendetta against Upshaw and the NFLPA would be a roadblock to any favorable settlement. It would skew the litigation strategy

pursued on behalf of any class. Any judgment would forever be in doubt by reason of unfit representation." Certification Order at 13:7-9.[3]

Mr. Parrish now wishes to scuttle the current very favorable settlement for the same reason he was previously unwilling to make *any* settlement in this case – there is no amount great enough, and no terms favorable enough, to satisfy Mr. Parrish's long-standing animus toward Defendants. But just because Mr. Parrish is dissatisfied with the amount or nature of the settlement does not mean that it is unfair or inappropriate.

To the contrary, the $26.25 million settlement Class Counsel successfully negotiated will result in an unexpected windfall for many retired players, none of whom had been paid for the program at issue for over fourteen years. Many of these players, like Mr. Adderley, suffer from numerous physical ailments as a result of their playing days and/or make little to no money in retirement benefits. Getting 93.4% of the verdict without the uncertainty and expense of appeal is a very positive result by any standard. As Troy Auzenne said in his comment to the Court: "I did not expect to receive anything, so imagine how I felt when I was notified about the settlement. It was a pleasant surprise. I can definitely use the money. Again, thank you very much."

**2.     The Parrish Letter is Inaccurate.**

<u>Inaccuracy No. 1</u>: The notion that the Settlement and Release Agreement first submitted to the Court released Electronic Arts ("EA").

<u>Response</u>: Class Counsel never attempted to release EA in the settlement agreement. A review of the version of the settlement agreement Class Counsel submitted to the Court on July 13, 2009 – a copy of which is attached as Exhibit C to the Katz Declaration – indicates that "licensees" of Defendants such as EA were *not* among the parties being released by the Class.

---

[3] The Court also noted Mr. Parrish's numerous additional shortcomings in his role as putative class representative:
- "Parrish's conduct and behavior leading up to and during the litigation demonstrate he would be unable to meet his fiduciary duty owed to the putative class." Certification Order at 11:18-19.
- "Parrish is not fit to serve in a fiduciary capacity on behalf of all other retired players." *Id.* at 13:9-10.
- "Parrish's previous track record representing retired NFL players raises another red flag." *Id.* at 13:11-12.
- "Parrish's reckless management of the [Retired Professional Football Players for Justice organization] is hardly befitting of a class representative." *Id.* at 14:1-2.
- "Parrish's vindictive remarks aimed at defendants, the racial slurs in several of his statements, his stated unwillingness to ever settle this case, and his blemished track record of representing retired NFL players – all demonstrate that he cannot be trusted to fulfill his fiduciary duty to the proposed class." *Id.* at 14:7-10.

1  Notice of Motion and Motion for Preliminary Approval of Settlement, Exh. 1, July 13, 2009
2  (Docket No. 623). Moreover, the scope of the release was limited to "the facts, occurrences,
3  transactions, or other matters that were the subject of the certified claims or that were alleged in
4  the Class Action, under federal or state law." *Id*. Because EA was never a party to this action,
5  any potential claim against EA would necessarily fall outside the scope of this release.

6  In a hearing on July 30, 2009, this Court requested explicit confirmation that the
7  settlement agreement proposed by class counsel was not intended to release EA. When the Court
8  made the request, both Plaintiffs' Counsel and defense counsel readily agreed that the release did
9  not release EA. In light of the parties' agreement on this issue, the Court suggested that the
10 settlement agreement be amended to expressly confirm this fact. This was the subject of a letter
11 to the Court from Class Counsel dated August 4, 2009 (*see* Docket No. 626) and the Court's
12 subsequent August 6, 2009 Order.

13 Further, on September 28, 2009, attorneys from the Manatt, Phelps & Phillips law firm
14 filed an amicus brief on behalf of Herb Adderley and James "Jim" Brown in the matter of *Keller*
15 *v. Electronic Arts, Inc.*, Case No. CV-09-1967 CW (N.D. Cal. 2009). *See* Katz Declaration Exh.
16 D. This brief counters EA's arguments that it has a First Amendment right to use the scrambled
17 images of athletes in its games, as well as any release by the retired players against EA. It also
18 contradicts any suggestion by Mr. Parrish or those relying on his inaccuracies that Mr. Adderley
19 or his counsel are not sufficiently adverse to EA.

20 Inaccuracy No. 2: The jury did not have before it the correct information on damages.

21 Response: During trial, the parties showed the jury numerous documents authored or
22 relied upon by Class Counsel's expert, Philip Rowley. These documents included a chart
23 summarizing the various amounts of damages sought by the Class up to an amount of $81.8
24 million. (The $106.9 million amount mentioned in Mr. Parrish's letter was subsequently reduced
25 to $81.8 million in light of the shorter statute of limitations period available under controlling
26 D.C. law.) The fact that the jury chose not to award $81.8 million is squarely within the jury's
27 purview.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

5

RESPONSE RE OBJECTIONS
CASE NO. C 07-0943 WHA

The Court also suggested in its Order denying Defendants' post-trial motions that the high range of Mr. Rowley's numbers might not be appropriate. The Court noted:

> The defense correctly points out that plaintiff's <u>ambitious</u> damage theory at trial was that the *retired* players were entitled to share equally and shoulder to shoulder with the *active* players in dividing up the huge GLR revenue pool. This theory was presented for both the contract claim and the fiduciary duty claim. Plainly, it was rejected by the jury on both accounts. Instead, the jury awarded a far more modest amount, $7.1 million.

Order Denying All Post-Trial Motions, January 13, 2009 (Docket No. 605) (emphasis added) (also stating "While it is true that plaintiff's counsel presented a <u>luxurious</u> damage theory, the instructions themselves supplied the correct measure." (emphasis added)).

<u>Inaccuracy No. 3</u>: Defendants should be obligated to pay the entire $26.25 million settlement amount in one lump sum, rather than in two payments.

<u>Response</u>: This was a point of negotiation between Class Counsel and Defendants. Because Defendants were paying nearly the full amount of judgment, this was one concession given by Class Counsel in exchange. There is nothing improper with this approach, which is typical of compromises found in all settlements.

### B. None of the Remaining Retired Player Comments Justify Rejecting the Settlement Agreement.

Of those twelve comments not attributed to Mr. Parrish, six are from retired players who are not in the Class. Four of those players do not take issue with the settlement, but rather wish to be included in its proceeds.

Of the six remaining comments, two are from Mr. Parrish. One is a letter dated September 30, 2009 in which Mr. Parrish requests a copy of Class Counsel's August 4, 2009 letter to the Court. Unlike the form letter he provided to others, this letter does not raise any issues with the settlement agreement. The other is a letter dated October 29, 2009, in which Mr. Parrish makes no substantive comments about the settlement.

Another letter appears to have originated with Mr. Parrish, but does not contain the name of the sender or a return address. Therefore, Class Counsel will not reply to it unless the Court wishes a reply.

The third-to-last comment is from a retired player who requests that the Court re-calculate the amount of the verdict based on a misunderstanding about the damages information available to the jury. This comment essentially re-casts the second inaccuracy discussed above and should be considered in the same light.

The final two comments are from retired players who support the settlement. One is from a retired player who lives locally and who attended the trial for several days. This player is very appreciative of the unexpected money coming his way.

The other comment is from Jeff Nixon, a class member who, as explained above, disseminates a blog supportive of retired player rights. Even though Mr. Nixon will likely receive the lowest amount available under the proposed plan of distribution, he nonetheless strongly supports the settlement, noting that it "is 93.4% of the money awarded in the court's final judgment. That is a significant amount that could have been lost on appeal." Mr. Nixon also believes that a majority of the retired players would like to see this case effectively resolved so that they can "move forward with other issues that are of great importance to retired players, such the NFL Pension and Disability Plans that will be negotiated in the next Collective Bargaining Agreement between the NFLPA and the NFL."

### III. CONCLUSION

Of the 2,062 retired NFL players who will benefit from the $26.25 million settlement obtained by Class Counsel, only a very small percentage submitted comments to the Court, the vast majority of which are derived from an inaccurate form letter that reflects many misunderstandings of key elements of the case and of the settlement. Moreover, the form letter was drafted by a non-class member who has publicly stated his inalterable opposition to settlement on any terms. As explained above, none of these comments justify disregarding the terms of the settlement. For these reasons and the reasons given above, Class Counsel respectfully request that the settlement agreement be approved.

| | | |
|---|---|---|
| 1 | Dated: November 5, 2009 | Respectfully submitted, |
| 2 | | MANATT, PHELPS & PHILLIPS, LLP |
| 3 | | |
| 4 | | By: _____/s/ Ronald S. Katz_____ . |
| | | Ronald S. Katz (SBN 085713) |
| 5 | | Ryan S. Hilbert (SBN 210549) |
| | | Noel S. Cohen (SBN 219645) |
| 6 | | 1001 Page Mill Road, Building 2 |
| | | Palo Alto, CA 94304-1006 |
| 7 | | Telephone: (650) 812-1300 |
| | | Facsimile: (650) 213-0260 |
| 8 | | MCKOOL SMITH, P.C. |
| | | Lewis T. LeClair (SBN 077136) |
| 9 | | Jill Adler Naylor (SBN 150783) |
| | | 300 Crescent Court |
| 10 | | Dallas, TX 75201 |
| | | Telephone: (214) 978-4984 |
| 11 | | Facsimile: (214) 978-4044 |
| 12 | | *Attorneys for Plaintiffs* |

Lines 13–28 blank.